# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**ALBERTO JOSE RAMIREZ,**

      **Petitioner,**

**vs.**                                   **No. CIV-23-1075 MV/DLM**

**RAÚL TORREZ, Attorney General
for the State of New Mexico,**

      **Respondent.**

## RESPONDENT'S ANSWER TO ALBERTO JOSE RAMIREZ'S INITIAL AND AMENDED *PRO SE* PETITIONS FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2254) [Docs. 1 and 21]

As his timely filed answer to Alberto Jose Ramirez's initial and amended *pro se* petitions for writ of habeas corpus, [see generally Docs. 1 and 21], Respondent, by and through counsel, Jane A. Bernstein, Assistant Attorney General, respectfully asks this Court to find and recommend that the petitions are subject to denial and these proceedings to dismissal with prejudice because both petitions are time-barred; no exception to the statutorily mandated one-year period of limitation applies; and Mr. Ramirez fails to make a credible showing of actual innocence. See 28 U.S.C. § 2244(d); see also Holland v. Florida, 560 U.S. 631, 645 (2010); McQuiggin v. Perkins, 569 U.S. 383, 386 (2013).

Alternatively, and without waiving the time-bar argument, Respondent respectfully submits that Mr. Ramirez has failed to identify any state-court merits decision that was (1) contrary to, or involved an unreasonable application of, clearly established federal law; or (2) based upon an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d); see also Brown v. Davenport, 596 U.S. 118, 122 (2022). Nor has he rebutted the presumption of correctness due the state courts' factual findings. See 28 U.S.C. § 2254(e)(1).

Claims that the state courts have not adjudicated on the merits similarly fail under the applicable *de novo* standard of review. See, e.g., Littlejohn v. Trammell, 704 F.3d 817, 825 (10th Cir. 2013). Respondent asks the Court to recommend that a certificate of appealability be denied.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      The jury trial

On July 11, 2007, Alberto Jose Ramirez approached James Patterson, whom he had not met before, in a Clovis, New Mexico, Walmart, and paid Mr. Patterson $30 to buy him $10 worth of .22 caliber bullets. Mr. Ramirez, who was 18 years old at the time, told Mr. Patterson that he had forgotten his identification and needed the ammunition for camping. [10/9/2013 JT at 9:42:57-9:51:49].[1]

On July 12, 2007, with those bullets loaded into a handgun he had bought from his marijuana supplier after being turned away by a suspicious local gun shop owner, [see 10/9/2013 JT at 4:18:51-4:23:10; see also 10/10/2013 JT at 10:00:07-10:00:33; 1:16:55-1:17:45], Mr. Ramirez executed his mother's longtime partner, Eladio Robledo, by shooting him four times, including twice in the head, both inside and outside the residence Eladio shared with Mr. Ramirez's mother, Debra, at 512 West 6th Street in Clovis. Mr. Ramirez then fled the scene, threw away the gun and his blood-soaked clothing, and hid at a friend's home before being apprehended three days later [10/8/2013 JT at 1:59:35-2:02:50].

---

[1] Undersigned counsel listened to the audio recordings from Mr. Ramirez's 5-day jury trial with FTR Gold software. Citations to the audio in this answer are to "[10/xx/2013 JT at hour:minute:second]." A password-protected electronic version of the audio recordings is being emailed to this Court's proposed text inbox.

On July 20, 2007, the State charged Mr. Ramirez with one count of first-degree murder (willful and deliberate) (Count 1), and two counts of tampering with evidence by disposing of the firearm and the clothes (Counts 2 and 3). [Doc. 102-1 at 1-3].

After entering and then subsequently withdrawing a guilty plea that would have resolved this and a related case,[2] [see Doc. 102-1 at 4-16], Mr. Ramirez proceeded to a jury trial on October 7, 2013, before Judge Teddy L. Hartley.

Sam Saiz was the State's first witness. Mr. Saiz lived across the street from Eladio and Debra on July 12, 2007, and testified that on that day at about 1:30 p.m., he was working in his backyard when he heard four gun shots. He rushed to the front of his house in time to see Mr. Ramirez standing over Eladio and firing two shots into his head. Mr. Saiz ran inside and called 911 before returning to the sidewalk to comfort his dying friend. [10/7/2013 JT at 2:36:33-2:40:54; 2:44:47-2:45:11].

Grace Finkey was driving down West 6th Street at approximately that same time and observed a young, "pretty slender" Hispanic man chasing an older, "kinda slender, tall" Hispanic man. Ms. Finkey, who admittedly was "not really good" at providing physical descriptions, said that she saw the older man fall and the younger man stand before him with one arm extended. She then heard what she described as "two pops," saw the older man on the ground, and watched the younger man run away. [10/7/2013 at 3:45:00-3:51:47].

Charlie Aguirre was a Clovis Police Department patrol officer on July 12, 2007, when he responded to a call about a gunshot victim at 512 West 6th Street. Officer Aguirre told the jury

---

[2] Mr. Ramirez was convicted in No. D-905-CR-2008-748 of two counts of battery on a peace officer for having spat on and head-butted two transport officers. He challenged that judgment of conviction in Alberto Jose Ramirez v. James Mulheron, Warden, et al., No. 15cv244 WJ/KK. This Court can take judicial notice of both facts.

that as he approached, he saw one man lying on the sidewalk, another man kneeling by him, and a woman standing over both men "crying hysterically." Officer Aguirre later learned that the victim, who was bleeding from the head and gasping for air, was Eladio; the kneeling man, who appeared to be in shock, was Sam Saiz, and the distraught woman was Debra Ramirez. [10/8/2013 JT at 9:09:45-9:13:18]. Debra told Officer Aguirre that "my son Albert" shot Eladio and then ran off. [Id. at 9:31:20-9:32:48]. First responders were unable to save Eladio's life. [Doc. 102-1 at 427].

Dr. Ross Reichard performed Eladio's autopsy. He determined cause and manner of death to be multiple gunshot wounds inflicted during a homicide. Dr. Reichard detailed for the jurors the wounds and trauma that Eladio had sustained, testified to having detected no drugs or alcohol in Eladio's system, and said there was no indication that Eladio had been in a fight or physical altercation. [10/9/2013 JT at 8:42:45-9:38:45]. At the time of his death, Eladio stood 72 inches tall and weighed 145 pounds. [Doc. 102-1 at 426].

Law enforcement officials from a variety of agencies testified about their interactions with Mr. Ramirez in both this case and others.

Officer Rafael Aguilar told the jury about having served Mr. Ramirez on April 22, 2007, with a no-trespass order signed by Eladio and barring Mr. Ramirez from returning to 512 West 6th Street. [10/8/2013 JT at 3:52:25-3:56:28].

Detective Daryl Rice testified that on May 31, 2007, he responded to a criminal-damage call to find that Mr. Ramirez had taken a crutch he was using at the time and "busted the windshield" of Eladio's car as Debra sat inside. [10/8/2013 JT at 4:04:38-4:09:37].

Officer Johnny Zamora said that on June 19, 2007, he was dispatched to 512 West 6th Street after Debra reported that Mr. Ramirez broke a window at the residence. [10/8/2013 JT at 4:14:39-4:17:39; see also 10/10/2013 JT at 1:11:05-1:11:22].

Officer Jonathan Howard recalled how, on June 20, 2007, he went to Crosshair Gun and Sport in Clovis in response to the owner's suspicious-circumstances call. [10/9/2013 JT at 11:50:16-11:51:36]. The owner, Dennis Fite, called police after Mr. Ramirez came into the store; insisted he needed a gun; and, when refused for being underage, asked if Mr. Fite knew where he could buy a firearm without completing paperwork. [10/8/2013 JT at 4:20:14-4:23:19].

Lieutenant Robbie Telles explained how information he received on July 15, 2007, led him to the apartment of Mr. Ramirez's friend, Ivan Vasquez. There, Lieutenant Telles found Mr. Ramirez hiding behind a door and arrested him. [10/8/2013 JT at 1:59:36-2:03:14; 2:03:42-2:03:57].

Curry County Deputy Sheriff Sandy Loomis testified to assisting with the post-arrest phase of the investigation. When asked, "What was the purpose of the follow-up investigation?" Deputy Loomis answered, "I had been told Mr. Ramirez had been arrested and I tried to interview him and then do a search of the house where he had been staying." [10/8/2013 JT at 2:12:11-2:12:28].

Deputy Loomis's response prompted a side-bar conference and a motion for mistrial on the ground that his answer amounted to an impermissible comment on Mr. Ramirez's constitutional right to remain silent. According to counsel, the deputy's response made "very clear" that Mr. Ramirez had invoked his rights. [10/8/2013 JT at 2:14:09-2:14:40].

Judge Hartley denied the motion, reasoning that

> the method by which [Deputy Loomis] was asked did not suggest that he was there in search of a statement. He just made a very routine, "I went there, I did this," and asked questions. I don't think it rises to the issue of commenting on his not being a witness.
> . . .
>
> The court is of the opinion that . . . the comments that [Deputy Loomis] was making at that time was basically just an intent or explanation of what his role was . . . routine role. I don't think that

> he indicated to me . . . to focus on trying to interview [Mr. Ramirez]
> at all at that time."
>
> . . .
>
> I'm not gonna declare a mistrial.  Now, I'll give a curative.

[10/8/2013 JT at 2:15:54-2:16:18; 2:24:50-2:25:23].

Defense counsel declined a curative instruction, [see 10/8/2013 JT at 2:25:29], the jury returned, and Deputy Loomis's testimony continued.  The State called several more witnesses before resting its case.  [10/9/2013 JT at 2:21:01-2:21:02].

After Mr. Ramirez's directed-verdict motion as to Counts 2 and 3 was denied, [see 10/9/2013 JT at 2:22:52-2:38:41], defense counsel renewed his previously raised, mid-trial motion for a continuance to allow for a reevaluation of Mr. Ramirez's competency to stand trial.  Counsel feared Mr. Ramirez was decompensating, and expressed concern and frustration over representing a client he said (1) would not communicate or cooperate, (2) insisted on speaking with the court, (3) claimed to be suicidal, and (4) appeared not competent to make a decision about testifying. [Id. at 2:38:42-2:40:03].

Mr. Ramirez also spoke, but when he repeatedly defied Judge Hartley by interrupting and continuing to talk after being told to stop, the judge called a recess.  [10/9/2013 JT at 2:41:20-2:45:45].

Back in session and on the record, Judge Hartley read directly from the case file and summarized the most recent findings on Mr. Ramirez's competency:

> [Mr. Ramirez] was arrested on July 15, 2007, and charged with first-degree murder and two counts of tampering in this case.  Shortly thereafter, the defense counsel filed a request to have [Mr. Ramirez] evaluated to determine if he was competent to stand trial.  The defense had Dr. Maxann Shwartz to evaluate [Mr. Ramirez].  She determined [Mr. Ramirez] was incompetent to stand trial and submitted a report that was provided to the court and the

prosecution. An order finding [Mr. Ramirez] currently incompetent to stand trial and committing [him] to the Las Vegas Behavioral Health Unit for treatment to attain competency was filed April 17, 2008. [Mr. Ramirez] was admitted to that facility on June the fifth, 2008.

On August the eighteenth, 2008, the Las Vegas Behavioral Unit, Behavioral Health Unit, prepared a final report finding [Mr. Ramirez] competent to stand trial. A competency hearing[3] was set based upon the report submitted by Dr. [Joanne] Burness. Dr Burness testified at the competency hearing that it was her opinion that [Mr. Ramirez] was faking his symptoms and was competent to stand trial. The court found [Mr. Ramirez] competent to stand trial and ordered the matter reset for trial.

This court is of the opinion at this juncture that the opinion of Dr. Burness—that [Mr. Ramirez] is faking—continues, and I believe he is competent to stand trial based upon that testimony. Obviously, several years have passed in the interim, but I'm prepared to continue this trial and that's what we're gonna do.

[10/9/2013 JT at 3:11:44-3:13:27].

The next day, Mr. Ramirez took the stand in his own defense. He was rambling, evasive, and non-responsive. He frequently spoke over counsel, verbally sparred with the judge, cried, and repeatedly apologized to everyone in the courtroom for his behavior and manner. Mr. Ramirez purported to be confused as to a number of questions asked, yet argued over the propriety and relevance of others. He displayed sufficient awareness and understanding to insist he be allowed to make his record. [10/10/2013 JT at 9:31:39-9:49:30; 9:50:08-9:50:22; 10:01:53-10:02:08]. Mr. Ramirez claimed not to know the meaning of "demand," [see id. at 1:13:34-1:13:53], but had no problem immediately denying that he had (1) "la[in] in ambush and wait[ed]" for Eladio, (2) "intend[ed] and [thought] and deliberate[d] and premeditate[d] about killing Eladio[,]" or (3) gone to 512 West 6th Street "for the purpose intentionally to kill Eladio[.]" [10/10/2013 JT at

---

[3] A certified transcript of the competency hearing is attached to Exhibit W. [See Doc. 102-1 at 562-603].

7

1:59:35-2:00:09].   Outside the presence of the jury, Mr. Ramirez easily employed medical terminology to deny he was malingering, and to describe himself as "suffering from psychosomatic delusions" and possibly "be[ing] a hypochondriac."  [10/9/2013 JT at 2:42:30-2:43:23].

Offering his version of the events of July 12, 2007, Mr. Ramirez testified that after numerous unsuccessful attempts to contact his mother by telephone that morning, he went to 512 West 6th Street to retrieve some belongings.  He said he was carrying a loaded weapon not because he planned to kill but because he (1) he had stolen a car and was being threatened by the owner, and (2) feared retaliation from a group of people against whom he had defended his cousin in a physical fight.  [10/10/2013 JT at 9:49:30-10:04:26].

Mr. Ramirez told the jury that he was in the garage searching for his clothes when Eladio entered from the house.  Mr. Ramirez claimed they spoke; then began to argue; and Eladio, who was taller and heavier, backhanded him.  Mr. Ramirez said he pushed Eladio and Eladio punched him in the face, causing Mr. Ramirez to fall backwards and out of the garage.  Mr. Ramirez testified that he pulled out his weapon as Eladio, whom Mr. Ramirez tearfully recalled as having a violent nature, came toward him, saying he was going to get his own gun.  Mr. Ramirez then closed his eyes and fired.  [10/10/2013 JT at 10:04:33-10:12:13; 10:12:42-10:12:44].   As Mr. Ramirez recalled, "I was scared . . . in fear for my life."  [Id. at 10:12:29-10:12:32].   He testified that he was having trouble walking when Eladio grabbed and began choking him.  [Id. at 10:13:23-10:13:35].  Firing his weapon again, Mr. Ramirez explained that "my only option was to shoot.  I couldn't overpower him . . . and he tried to take the gun and shoot me, and the gun went off[.]"  [Id. at 10:14:09-10:14:23].   Mr. Ramirez told the jury that he "kn[e]w [Eladio] was gonna to try kill" him.  [Id. at 10:14:58-10:15:00].  He also believed that Eladio "liked to see [him] suffering."  [Id. at 1:50:11-1:50:13].

Mr. Ramirez testified that he attempted to escape, but Eladio continued to come after him "full speed" and grabbed his leg and shoe. [10/10/2013 JT at 10:15:00-10:16:04]. Thinking Eladio was going to catch him as he ran toward the front of the house, Mr. Ramirez shot again. [Id. at 10:18:32-10:19:25]. At that point, Mr. Ramirez "had two choices in [his] opinion. [He] could stay there or [he] could leave. And . . . [he] left, which was a bad decision." [Id. at 10:20:14-10:20:24].

Mr. Ramirez said he tried to run but was unable because of a leg injury, so he walked toward and then through an alley, where he threw away his shorts, his shirt, and the gun. [10/10/2013 JT at 10:20:41-10:25:58]. He described himself as being "in panic . . . in shock . . . in fear for [his] life[,]" considering that he had just "almost died." [Id. at 10:22:16-10:22:23]. He again denied planning to kill Eladio but explained that, in a fight, he would "go out of [his] way to defend [himself] in every way [he could] and if [he] ha[d] to hurt the person that's trying to hurt [him, he's] going to defend" himself. [Id. at 10:28:58-10:29:24; 1:56:28-1:56:35 ("You want this jury to believe that you were defending yourself?" "Uh, yes, I do.")]. He added that he had no reason to hurt Eladio until Eladio hit him. Then he "got in fear for [his] life and angry at the same time." [Id. at 10:30:33-10:30:39].

Prior to cross-examination, the parties met with Judge Hartley in chambers, [see 10/10/2013 JT at 10:40:18-11:05:49], because Mr. Ramirez now was accusing both Eladio and Sam Saiz of having sexually abused him when he was 16 years old, and he wanted to testify to it. [Id. at 10:40:18-10:42:20]. Mr. Ramirez pointed out that he disclosed the abuse to Dr. Shwartz when she evaluated him in 2008, [see Doc. 102-1 at 554], but Judge Hartley disallowed the testimony, explaining that there was no pre-homicide report of abuse and the timing of the allegations was suspect. [10/10/2013 JT at 10:44:15-10:45:39; 10:52:05-10:52:18]

On cross-examination, Mr. Ramirez acknowledged returning multiple times to 512 West 6th Street after having received the no-trespass order, and admitted that he broke both the windshield of Eladio's car and the front window of the residence. He said that he did so because he was angry. [10/10/2013 JT at 1:09:32-1:13:23]. He admitted that within 24 hours of obtaining ammunition for his handgun, he shot and killed Eladio. [Id. at 1:23:17-1:23:45]. He confirmed having made telephone calls while in pretrial detention asking others, in Spanish and using slang, to retrieve the discarded murder weapon. [Id. at 1:34:05-1:35:36]. Asked about his involvement "in altercations," Mr. Ramirez admitted that he had head-butted a transport officer and punched a woman while defending his cousin. [10/10/2013 JT at 1:54:44-1:56:19].

Among the personal items discovered during the search of Mr. Ramirez's car was a sheet of paper with lyrics to a rap song he wrote. [See Doc. 102-1 at 338, 1061]. Though Judge Hartley ultimately sustained counsel's objection to the paper's admission, [see 10/10/2013 JT at 1:45:45-1:46:15], Mr. Ramirez insisted on performing his song, which referred to blasting and spraying people with his "AK," for the jury. [Id. at 1:42:40-1:45:05].

The court also sustained counsel's objection to the prosecutor's inquiry into the "significant amount of legal research [Mr. Ramirez had] done on how to get the jury to buy" his self-defense claim, and the many prison law library requests Mr. Ramirez had made in an effort "to research how to beat [his] charges." [10/10/2013 JT at 1:56:37-1:58:22].

Finally, Mr. Ramirez's brother Jose, his sister Hesiquia, and his aunt Lupe Casillas testified on his behalf. [10/10/2013 JT at 2:03:09-3:37:51]. On cross-examination, Hesiquia confirmed that the day before Eladio's murder, Mr. Ramirez had called Debra "just a bitch and . . . all kinds of names." [Id. at 3:12:51-3:13:08]. She also acknowledged having told a detective that there was no medical reason Mr. Ramirez required crutches, "but in his mind his foot's messed up. The

doctor told him there's nothing wrong with him, and it's still in his mind that he's hurt." Hesiquia continued, "he always thinks there's something wrong with him . . . he's got issues[.]"  [Id. at 3:15:07-3:15:29].

After these three witnesses, the defense rested.  [10/10/2013 JT at 3:39:23].  Once Judge Hartley instructed the jury, [see 10/11/2013 JT at 9:46:39-9:59:59], the parties delivered their closing arguments.  [Id. at 10:00:41-10:48:18; 10:49:03-11:32:30; 11:32:42-11:42:29].

The jury found Mr. Ramirez guilty as charged.  [Doc. 102-1 at 17-20].  He currently is serving a term of life imprisonment plus six years in the custody of the New Mexico Corrections Department.  [Id. at 45-46].

## B.    Proceedings in the state courts

Pursuant to Rule 12-102(A)(1) NMRA, Mr. Ramirez appealed directly to the New Mexico Supreme Court.  He argued that (1) Judge Hartley should have allowed a competency reevaluation; (2) trial counsel was ineffective; (3) Deputy Loomis improperly commented on his right to remain silent; (4) he was prejudiced when, on the first day of trial and in the jury's presence, he fell at counsel table while shackled; (5) Judge Hartley erroneously admitted evidence of prior bad acts; and (6) there was prosecutorial misconduct.  [Doc. 102-1 at 68, 94-117].

The New Mexico Supreme Court affirmed.  [Doc. 102-1 at 183-217].

On March 22, 2017, and April 25, 2017, respectively, Mr. Ramirez filed the first and second of his many *pro se* state habeas petitions.  He repeated his direct-appeal arguments, and added that appellate counsel was ineffective.  [Doc. 102-1 at 219-256].

On May 31, 2017, the state habeas court, the Honorable Drew D. Tatum, presiding, interpreted Mr. Ramirez's assertions as claims for prosecutorial misconduct and ineffective assistance of counsel, and summarily dismissed both petitions.  [Doc. 102-1 at 257-258].

On June 20, 2017, Mr. Ramirez filed his third *pro se* state habeas petition,[4] again alleging ineffective assistance of trial and appellate counsel. [Doc. 102-1 at 259-353]. On July 17, 2017, Mr. Ramirez filed his fourth *pro se* petition. [Id. at 479-507]. In the fourth petition, Mr. Ramirez expressed an understanding of the one-year period of limitation applicable to federal habeas petitions and explained that he was attempting to exhaust available state-court remedies. [Id. at 497 ("I have one year right, well my decision was dec. 1st, 2016 so I see it as I have 4 ½ months[.]"), 499-503].

On May 18, 2018, appointed habeas counsel filed an amended petition. She argued that (1) trial counsel was ineffective for failing to call Dr. Shwartz as a witness, and appellate counsel was ineffective for failing to recognize this issue; (2) admission of uncharged prior bad acts violated Mr. Ramirez's right to due process; (3) Mr. Ramirez was denied due process when the jury saw his restraints; (4) the evidence was insufficient to support Mr. Ramirez's conviction for tampering with the gun; (5) the prosecutor engaged in misconduct by "claim[ing] that Mr. Ramirez was a 'menace to society,' [and] a liar during . . . closing argument[]"; and (6) Counts 2 and 3 violated double jeopardy. [Doc. 102-1 at 510-535].

Judge Tatum denied the amended petition in a 12-page, reasoned order. He first laid out the reasons that the decision not to call Dr. Shwartz was a strategic one. He found that not only did Mr. Ramirez also fail to establish prejudice, but that Judge Hartley had commented that trial counsel "had represented [Mr. Ramirez] expertly and that the handling of the mental health expert witnesses was done in a fair way." [Doc. 102-1 at 680]. Judge Tatum noted that that the New Mexico Supreme Court already had held that Judge Hartley did not abuse his discretion in

---

[4] Because the first two *pro se* petitions did not include a sworn mailing verification, they are not deemed filed when deposited for institutional mailing but, instead, when filed on the docket. See Rule 5-802(F) NMRA

admitting evidence of the no-trespass order; the smashed windshield; and the broken window, and explained that Mr. Ramirez's failure to allege new facts not known at the time of appeal precluded consideration of the issue now. Nonetheless, "[a]fter a meaningful and thorough review, th[e] Court f[ound] that the record [did] not support this claim." [Id. at 681-682]. For the same reasons, Judge Tatum concluded that Mr. Ramirez's prosecutorial-misconduct and restraints-based claims failed. [Id. at 682-684].

On June 5, 2019, Mr. Ramirez deposited *pro se* state habeas petition number five for institutional mailing. [Doc. 102-1 at 893]. He repeated that (1) trial counsel was ineffective, (2) the admission of evidence of prior bad acts violated due process, and (3) the prosecutor engaged in misconduct. He now added that appointed habeas counsel was ineffective. [Id. at 900-908].

Judge Tatum summarily dismissed the petition. [Doc. 102-1 at 1224-26]. He concluded that any claims previously raised were subject to dismissal as second or successive under Rule 5-802(I) NMRA, and that "any claims related to ineffective assistance of habeas counsel [were] not supported by fact or the record[.]" [Id. at 1225-26].

Mr. Ramirez filed his sixth *pro se* state habeas petition on August 18, 2020, repeating that (1) trial and habeas counsel were ineffective; (2) he was prejudiced because the jurors saw his shackles; (3) Deputy Loomis improperly commented on his right to remain silent; (4) evidence of prior bad acts was erroneously admitted; and (5) there was prosecutorial misconduct. Mr. Ramirez revived his double jeopardy claim and also added a challenge to the grand jury indictment. [Doc. 101-2 at 1556-1608].

Judge Tatum again summarily dismissed the petition as second or successive with respect to all previously raised claims, and concluded that Mr. Ramirez's "claim related to his indictment [was] not supported by fact or record[.]" [Doc. 102-1 at 1617-20]

On December 19, 2022, Mr. Ramirez deposited for institutional mailing *pro se* state habeas petitions seven and eight.  These petitions, which are largely identical, were filed on the district court's docket six minutes apart on December 27, 2022.   [Doc. 102-1 at 1669, 1693].  In both, Mr. Ramirez again contended that (1) trial and appellate counsel were ineffective; (2) Deputy Loomis improperly commented on his right to remain silent; (3) he was prejudiced by the jury's having seen his shackles; (4) prior bad acts evidence was erroneously admitted; (5) there was prosecutorial misconduct; (6) the grand jury indictment was invalid; (7) he was subjected to double jeopardy; and (8) there was insufficient evidence.  [Id. at 1679-86, 1704-10].

Judge Tatum had not yet disposed of the seventh and eighth petitions before Mr. Ramirez, on January 9, 2023, filed his ninth *pro se* Rule 5-802 petition, repeating claims from his seventh and eighth, and realleging ineffective assistance of habeas counsel.  On February 10, 2023, Judge Tatum summarily dismissed all three petitions.  [Doc. 102-1 at 1721-38, 1744-46].

On June 30, 2023, Mr. Ramriez deposited for institutional mailing his tenth and final *pro se* state habeas petition.  Now, in addition to his previously asserted claims, Mr. Ramirez maintained that he was actually innocent because he acted in self-defense.  [Doc. 102-1 at 1754 (describing first ground for relief as "[a]ctual innocense [sic] claim defense of self defense")].  Mr. Ramirez explained that he was presenting this claim for the first time because he had "just discovered claim of actual innocense [sic] self defense on dec 12th 2022."  [Id. at 1762].   Again demonstrating an understanding of the one-year period of limitation applicable to federal habeas petitions, Mr. Ramirez cited Miller v Marr[5] for the proposition that "where petitioner claims actual innocense [sic] the limitations period raises serious constitutional questions."  [Id. at 1763].   He

---

[5] 141 F.3d 976 (10th Cir. 1998).

said he was unable to raise his self-defense claim "in January 2023 because [of] confiscation of legal materials by prison staff corruption illegal bad evil people." [Id.].

On August 28, 2023, Judge Tatum summarily dismissed Mr. Ramirez's tenth petition as second or successive; reasoned that Mr. Ramirez's newly presented claim of actual innocence was simply a "reframing [of the] ineffective assistance . . . and prosecutorial misconduct claims denied in his prior petitions"; and concluded that neither an intervening change of law nor the interests of justice warranted reconsideration of Mr. Ramirez's points. [Doc. 102-1 at 1827-30].

The New Mexico Supreme Court denied every petition for writ of certiorari that Mr. Ramirez filed between 2017 and 2023. [Doc. 102-1 at 509, 892, 1555, 1668, 1844].

**C.** **Proceedings in federal court**

Mr. Ramirez has a history in this district of filing and then voluntarily dismissing *pro se* 28 U.S.C. § 2254 petitions challenging the judgment of conviction in State of New Mexico v. Albert Jose Ramirez, No. D-905-CR-2007-434. Before filing the petitions in the instant case, Mr. Ramirez already had docketed but dismissed petitions in the following:

| Cause No. | Case opened (or petition deemed filed by operation of prison mailbox rule) | Dismissal |
|---|---|---|
| 19cv202 MV/CG | March 11, 2019 | November 18, 2019 |
| 19cv671 KWR/LF | June 25, 2019 | March 19, 2021 |
| 21cv731 MIS/KK | August 4, 2021 | December 9, 2022 |
| 22cv585 DHU/KK | July 22, 2022 | January 12, 2023 |
| 23cv232 KWR/SCY | March 17, 2023 | April 4, 2023 |
| 23cv381 DHU/SCY | May 3, 2023 | June 5, 2023 |
| 23cv519 MV/GJF | June 15, 2023 | July 7, 2023 |

On November 27, 2023, Mr. Ramirez signed and deposited for institutional mailing the original petition in the underlying matter. He amended it on July 11, 2024. Respondent understands the petitions to set forth the following grounds for relief: (a) ineffective assistance of trial counsel (Ground One); (b) ineffective assistance of appellate counsel (Ground Two); (c) due process violation resulting from the introduction of prior bad acts evidence (Ground Three); (d) prosecutorial misconduct (Ground Four); (e) improper comment on Mr. Ramirez's right to remain silent (Ground Five); (f) due process violation resulting from "shackles error" (Ground Six); and (g) actual innocence (Ground Seven). [Doc. 1 at 5-17; Doc. 21 at 5-14].

Prior to the docketing of the amended petition, this Court, on June 20, 2024, entered a *Memorandum Opinion and Order* (*MOO*) by which it disposed of then-pending motions. [Doc. 11 at 8]. The Court laid out a timeline; calculated that the applicable one-year period of limitation appeared to have expired on April 7, 2020; and ordered Mr. Ramirez to show cause why the petition should not be dismissed as untimely. [Id. at 2-3, 5-6]. The Court also explained that Mr. Ramirez's self-defense-based actual-innocence claim "pertains to legal innocence, not factual innocence and does not satisfy the actual innocence standard or circumvent the habeas limitation period." [Id. at 7]. Accordingly, the Court expressly provided Mr. Ramirez the opportunity to demonstrate factual innocence in accordance with controlling standards. [See id.].

Between June 21, 2024, and November 18, 2024, in addition to his amended petition, [see Doc. 21], Mr. Ramirez filed nearly 50 motions; letters; appendices/supplements; and notices. [See Docs. 12, 14-20, 22-59].

On November 21, 2024, Senior United States District Judge Martha Vázquez ordered an answer to both the original and amended petitions. [Doc. 60 at 1]. Among other things, Judge Vázquez explained that, in response to the show-cause order, Mr. Ramirez had "filed numerous

documents . . . in which he seeks tolling based on placement in mental health wards for mental health treatment and appointment of a mental health treatment guardian. *See, e.g.,* Docs. 23, 25, 29, 30, 32, 36." [Id.].

Because Mr. Ramirez filed his original and amended petitions after April 24, 1996, they are subject to the terms of the Antiterrorism and Effective Death Penalty Act (the AEDPA). For purposes of the "in custody" requirement of 28 U.S.C § 2254, Mr. Ramirez was in custody at the time he filed the petitions, and remains in custody as of the date of the filing of this answer.

Given the size of the state-court record, the number of state habeas petitions that Mr. Ramriez has filed, and the subtle tweaking of claims between state filings, it is difficult to tell if he has properly exhausted available state-court remedies. The exhaustion analysis is further complicated by the number of subclaims included within Mr. Ramirez's seven federal grounds for relief and the substantial overlap between and among them.[6]

However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). The Tenth Circuit has relied on subsection (b)(2) in acknowledging federal habeas courts' "discretion to bypass complex issues of exhaustion . . . and procedural bar . . . to reject [a petitioner's] claim[s] on the merits." Revilla v. Gibson, 283 F.3d 1203, 1211 (10th Cir. 2002) (internal authorities omitted).

---

[6] For example, Ground Three, "Prior Bad Acts Evidence," overlaps with Mr. Ramirez's claim in Ground Four that the prosecutor engaged in misconduct by, among other things, referring to these acts "in closing argument and rebuttal and cross examination." [Doc. 1 at 10]. Ground Four overlaps with Mr. Ramirez's claim that Deputy Loomis improperly commented on his right to remain silent, as set forth in Ground Five, "Comment on Silence in Cross Examination and During Closing Argument and Rebuttal." [Id. at 12]. Ground Two, "Ineffective Assistance of Appellate Attorney on Appeal[,]" becomes a component of Ground Three by operation of Mr. Ramirez's contention that appellate counsel was ineffective for not challenging trial counsel's failure to object to the reference to Mr. Ramirez's rap song. [Id. at 7, 8].

Undersigned counsel is not waiving the exhaustion requirement, see 28 U.S.C. § 2254(b)(3), but explains below why each of Mr. Ramirez's grounds for relief can be "disposed of in straightforward fashion on substantive grounds." Revilla, 283 F.3d at 1211. Accordingly, Respondent respectfully submits that the most efficient course of action, should this Court reach the merits of Mr. Ramirez's claims,[7] is to ignore any non-exhaustion and recommend the petitions be denied and this matter dismissed with prejudice.

## II.[8]     ANALYSIS

### A.     Mr. Ramirez's original petition (and necessarily his amended petition) is time-barred and no exception applies.

It is undisputed that Mr. Ramirez filed the original petition in this matter out of time. Nevertheless, he asks the Court to accept that pleading as timely (1) under the doctrines of statutory and equitable tolling; and (2) on the basis of actual innocence. However, (1) neither statutory nor equitable tolling applies in these circumstances; and (2) Mr. Ramirez fails to make a credible showing of actual innocence.

"There is a one-year limitation period on the filing of a § 2254 petition[.]" Castillo v. Attorney General of New Mexico, 325 F. Supp. 3d 1222, 1225 (D.N.M. 2018). That period begins to run from the latest of four possible dates: the date on which (1) the petitioner's judgment of conviction became final by conclusion of direct review or the expiration of time to seek same;

---

[7] As stated, Respondent is not waiving his time-bar argument. Still, Respondent denies all material allegations that Mr. Ramirez has suffered a violation of any federal law or federal constitutional provision mandating the granting of federal habeas review and relief. Also, any error that might have been committed in the course of the state-court proceedings must be deemed harmless and without substantial and injurious effect upon the jury's verdict. See Brecht v. Abrahamson, 507 U.S. 619, 622-623 (1993); see also Brown 596 U.S. at 122 (to secure federal habeas relief, petitioner must satisfy both Brecht test "and the one Congress prescribed in AEDPA.").

[8] Because of the length of this answer, and in an effort to facilitate uninterrupted reading, the state-court record, which normally would appear in Section II, is attached as Appendix B.

(2) any Constitution-violating, State-created impediment to the filing of a federal habeas petition was removed; (3) a constitutional right newly recognized by the United States Supreme Court was made retroactive to cases on collateral review; or (4) the factual predicate of the claims presented could have been discovered through exercise of due diligence.  See 28 U.S.C. § 2244(d)(1).  "[T]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under" § 2244(d).  28 U.S.C. § 2244(d)(2); see also Meza v. Martinez, 491 F. Supp. 3d 999, 1003 (D.N.M. 2020) ("Tolling occurs . . . only when a properly filed application for State post-conviction relief is pending.").

Critically, "[t]his 'statutory tolling' is not available . . . during the time period a prior _federal_ habeas proceeding is pending." York v. Galetka, 314 F.3d 522, 524 (10th Cir. 2003) (emphasis in original).   Further, "[w]hen a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005) (_quoting_ Carey v. Saffold, 536 U.S. 214, 226 (2002)).  A state-court petition filed after the limitation period has expired lacks tolling effect because by then, no time remains to be tolled. Similarly, statutory tolling "does not revive the federal limitations period—i.e., restart the clock at zero; it can serve only to pause a clock that has not already run."  Kenneth v. Martinez, No. 17cv1176 MV/CG, 2018 WL 3621033, at *3 (D.N.M. Jul. 30, 2018)) (internal authority omitted).

In accordance with the timeline laid out in its June 20, 2024, _MOO_, [see Doc. 11 at 2-3, 5-6], this Court has found that the one-year limitation period, which began to run no later than March 2, 2017, appears to have expired on April 7, 2020.  [Id. at 5, 6].  Respondent's calculations have yielded the slightly later date of May 15, 2020, as detailed in the timeline that undersigned counsel has constructed and attaches as Appendix A.

However, because Mr. Ramirez did not deposit his original petition for institutional mailing until November 27, 2023, [see Doc. 1 at 23], well after even the most generously calculated expiration date, the 38-day difference between the Court's timeline and Respondent's is inconsequential for present purposes.

    **1.**       **Mr. Ramirez has been ill-served by his habit of repeatedly filing and voluntarily dismissing federal habeas petitions in this district**.

As an initial matter, it bears noting that had Mr. Ramirez not voluntarily dismissed either the petition he filed March 11, 2019, in 19cv202 MV/CG, or the one he filed June 25, 2019, in 19cv671 KWR/LF, he would not be facing the time bar he now confronts. Since those petitions were filed prior to the expiration of the one-year period of limitation in 2020, they both were timely.

Mr. Ramirez, however, voluntarily dismissed those petitions, explaining that he (1) sought to "present any unexhausted claims in the state courts and then return to federal court to proceed with the petition[,]" [see Doc. 4 at 1 (19cv202 MV/CG)]; and (2) was awaiting a decision on a petition for writ of certiorari that was then before the New Mexico Supreme Court. [Doc. 32 at 1 (19cv671 KWR/LF)]. By August 4, 2021, when Mr. Ramirez filed his next § 2254 petition, [see Doc. 1 in 21cv731 MIS/KK], he was more than one year too late. See Pliler v. Ford, 542 U.S. 225, 230-231 (2004) (holding that federal district judges are not required to warn *pro se* litigants of the consequences of dismissing "mixed" 28 U.S.C. § 2254 petitions); accord Sanford v. Figueroa, 306 Fed. Appx. 432, 434 (10th Cir. 2009). By the time he filed the original petition in the underlying matter on November 27, 2023, he was more than three years too late.

As explained below, no exception to the one-year period of limitation applies in this case. For this reason, this Court should recommend that the original and amended petitions be dismissed with prejudice. See Phillips v. Martinez, 434 F. Supp. 3d 1033, 1040-42 (D.N.M. 2020).

## 2. Statutory tolling is inapplicable.

Mr. Ramirez appears to make two arguments in his attempt to invoke statutory tolling. First, he contends that prison officials created an "unconstitutional impediment" to timely filing, [see Doc. 29 at 3], by confiscating his legal materials from February 1, 2023, until July 6, 2023.[9] [See Doc. 23 at 8; Doc. 25 at 2]. Second, he insists that time he already has spent in federal court litigating his many previous § 2254 petitions does not count against him. [See Doc. 25 at 2 ("Mr. Ramirez['s] petition is timely[. C]lock was stopped while in Federal u.s.d.c. Albq. NM[.]"); Doc. 29 at 4 ("Clock was stopped while case pending in federal court October 2019 to December 10th 2022."); Doc. 30 at 7 ("I was in u.s.d.c court from July 2019 to December 2022."); Doc. 32 at 2 ("I was in u.s.dc. case pending from July 2019 to December 2022[.]"); Doc. 36 at 11 ("Ramirez was in u.s.dc. court from July 19th 2019 to Dec. 6th 2022.")].

Mr. Ramirez's first argument fails because, as demonstrated by both this Court's *MOO*, [see Doc. 11 at 6], and Respondent's timeline, [see Appendix A], and even giving Mr. Ramirez every reasonable benefit of the doubt, see, e.g., Cheney v. Judd, 429 F. Supp. 3d 931, 937 (D.N.M. 2019), his one-year period of limitation expired on May 15, 2020, at the latest. [See Doc. 11 at 6; see also Appendix A]. By February 1, 2023, there was no time left to toll. Mr. Ramirez's second argument fails because "'statutory tolling' is not available . . . during the time period a prior federal habeas proceeding is pending." York, 314 F.3d at 524; see also 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for *State* post-conviction or other collateral review . . . is pending shall not be counted toward any period of limitation[.]") (emphasis added). As a consequence, statutory tolling does not save Mr. Ramirez's untimely petitions.

---

[9] This alleged confiscation did not prevent Mr. Ramirez from filing a 518-page document as his tenth state habeas petition, which he deposited for institutional mailing on June 30, 2023. [See Exh. 102-1 at 1767]. Exhibit WW is an attachment-free version of this petition.

### **3.** **Equitable tolling is inapplicable.**

In addition to the tolling contemplated by 28 U.S.C. § 2244(d), the AEDPA's one-year period of limitation may in some instances also be subject to equitable tolling. The doctrine of equitable tolling, however, "is limited to 'rare and exceptional circumstances.'" Laurson v. Leyba, 507 F.3d 1230, 1232 (10th Cir. 2007) (*quoting* Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000)). To be entitled to this doctrine's protections, the petitioner must show that (1) he has been pursuing his rights diligently, but (2) some extraordinary circumstance beyond his control stood in the way and prevented timely filing. Holland v. Florida, 560 U.S. 631, 649–650 (2010); Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000). The habeas petitioner "'bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence.'" Yang v. Archuleta, 525 F.3d 925, 928 (10th Cir. 2008) (*quoting* Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir.2008)).

The Tenth Circuit cautions that while "[m]ental incapacity may be an extraordinary circumstance warranting equitable tolling," United States v. Barger, 784 Fed. Appx. 605, 607 (10th Cir. 2019), "mental impairment is not *per se* a reason to toll a statute of limitations." Id. at 608 (internal authorities omitted). Indeed, "[a]llegations of mental incompetence alone . . . are generally insufficient to warrant equitable tolling." Wiegand v. Zavares, 320 Fed. Appx. 837, 839 (10th Cir. 2009). Rather, "federal courts will apply equitable tolling because of a petitioner's mental condition only in cases of profound mental incapacity such as that resulting in institutionalization or adjudged mental incompetence." O'Bryant v. Oklahoma, 568 Fed. Appx. 632, 636 (10th Cir. 2014); see also Del Rantz v. Hartley, 577 Fed. Appx. 805, 811 (10th Cir. 2014) ("[T]his circuit has yet to apply equitable tolling on the basis of mental incapacity.").

Mr. Ramirez argues that he is entitled to equitable tolling because he was held in various mental health wards from August 2016 to December 2016; November 2019 to February 2021; August 2021 to December 2021, [see Doc. 23 at 2]; and February 1, 2023 to October 10, 2023. [Doc. 25 at 3; Doc. 29 at 1, 3-5; Doc. 32 at 2]. Mr. Ramirez also refers to an "extraordinary circumstance beyond his control that happened 1.29.23 to 10.10.24." [Doc. 29 at 2]. Although Mr. Ramirez does not specify what this circumstance was, the record indicates that he was placed in the care of a treatment guardian in early 2023, and that guardianship was extended by order of May 31, 2024. [See Doc. 36 at 4-8, 10].

Even assuming that Mr. Ramirez's unsupported assertions as to the referenced time periods are sufficient to demonstrate extraordinary circumstances justifying equitable tolling, but see Wiegand, 320 Fed. Appx. at 839, he fails—with one exception—to establish that he was institutionalized during any pertinent time frame, *to wit*, while his one-year period of limitation was still running.

Because Mr. Ramirez's limitation period did not begin to run until March 2, 2017, [see Doc. 11 at 5], it is irrelevant that he was held in a mental health ward in 2016. Because the limitation period expired no later than May 15, 2020, it is equally irrelevant that Mr. Ramirez might have been institutionalized in 2023 or 2024. Instead, "[h]e needs to show that he [was] institutionalized for mental incapacity, judged incompetent, or not capable of pursuing his own claim during the period in which he needed to file his application—that is [March 2, 2017] to [no later than May 15, 2020]." Alvarado v. Smith, 713 Fed. Appx. 739, 743 (10th Cir. 2017). Mr. Ramirez's attachments substantiate that institutionalization might have been a factor between February 1, 2023, and October 10, 2023, only. [Doc. 32 at 8]. This time frame, however, came well after the 2020 expiration of his period of limitation.

Mr. Ramirez does claim to have been committed for mental health treatment at the Penitentiary of New Mexico between November 2019 and February 2021, [see Doc. 23 at 2], a period that would encompass five or six months of his limitation period. But he offers nothing more than his self-serving statement in support. But see Womble v. Braggs, No. 17cv0366 JED/FHM, 2019 WL 3237993, at *5 (N.D. Okla. July 18, 2019) ("The habeas petitioner bears the burden to show that his mental illness was sufficiently severe, during the one-year limitation period, to prevent him from filing a timely habeas petition."). In any event, the record shows that during this time period, Mr. Ramirez was actively litigating both in this district and in state court. [See Docs. 10, 11, 15, 17-20, 22-29 in 19cv671 KWR/LF; see also Doc. 102-1 at 1556-1608, 1622-1664].

Perhaps the strongest indication that Mr. Ramirez was capable of timely filing is that he did, in fact, timely file his petitions in both 19cv202 MV/CG and 19cv671 KWR/LF, attacking the same judgment of conviction he attacks here. That Mr. Ramirez subsequently made the strategic decision to dismiss these actions for the express purpose of attempting to satisfy his exhaustion requirement, [see Doc. 4 at 1 (19cv202 MV/CG); Doc. 32 at 1 (19cv671 KWR/LF)], shows that he was fully able and sufficiently lucid to pursue his claims, and to do so in timely fashion. See Reupert v. Workman, 45 Fed. Appx. 852, 854 (10th Cir. 2002) (reasoning that equitable tolling based on mental incapacity was not warranted where "the record indicate[d] that [petitioner] was . . . pursuing legal remedies during the pertinent time period,[]" and noting that "[c]ourts have been extremely reluctant to apply equitable tolling in such circumstances[]").

This Court should reject the argument that Mr. Ramirez is entitled to equitable tolling on the basis of mental incapacity or incompetence.

**B.      Mr. Ramirez fails to set forth a credible claim of actual innocence.**

While statutory tolling pauses a still-running period of limitation, and equitable tolling extends an otherwise expired limitation period, an actual-innocence "gateway" claim, such as Mr. Ramirez asserts, [see Doc. 23 at 8], serves as "an equitable *exception* to § 2244(d)(1)['s]" one-year period of limitation. McQuiggin, 569 U.S. at 392 (emphasis in original). The exception exists to avoid the fundamental miscarriage of justice that would result from the imprisonment of an innocent person due to constitutional error. See Herrera v. Collins, 506 U.S. 390, 404 (1993). It is a narrow exception subject to a demanding standard that "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" Id. at 395 (*quoting* Schlup v. Delo, 513 U.S. 298, 329 (1995)).

"[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in Schlup and House [v. Bell, 547 U.S. 518 (2006)], or, as in this case, expiration of the statute of limitations." McQuiggin, 569 U.S. at 386. In other words, "a *credible* showing of actual innocence will allow [a petitioner] to overcome . . . his failure to abide by the federal statute of limitations in order to have his [constitutional] claim[s] heard on the merits." Fontenot v. Crow, 4 F.4th 982, 1030 (10th Cir. 2021) (emphasis added). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998). As the Tenth Circuit has stated, "[i]t is essential to recognize that the factual-innocence gateway is an exception to statutory language that provides no such exception. The gateway is a creation of equity." Pacheco v. Habti, 62 F.4th 1233, 1242 (10th Cir. 2023). A stand-alone claim of actual innocence is not cognizable in a federal habeas proceeding.

LaFevers v. Gibson, 238 F.3d 1263, 1265 n.4 (10th Cir. 2001) ("[A]n assertion of actual innocence . . . does not, standing alone, support the granting of the writ of habeas corpus.").

In the actual-innocence context, "new evidence" means not just newly *discovered* evidence that was unavailable at the time of trial but, instead, "'new *reliable* evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not *presented* at trial.'" Fontenot, 4 F.4th at 1031 (10th Cir. 2021) (*quoting* Schlup, 513 U.S. at 324) (emphases added). Impeachment evidence "is [not] persuasive evidence of 'actual innocence.'" Stafford v. Saffle, 34 F.3d 1557, 1561 (10th Cir. 1994). Similarly, "'[s]imply maintaining one's innocence' and 'casting doubt on witness credibility' do not establish actual innocence." Oxford v. Martenez, No. 19cv172 JCH/CG, 2020 WL 4347270, at *5 (D.N.M. July 29, 2020) (*quoting* Frost v. Pryor, 749 F.3d 1212, 1232 (10th Cir. 2014)).

A court weighing the likelihood that no reasonable juror would have found the petitioner guilty does not make this determination on the basis of its independent judgment.

> [R]ather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

Schlup, 513 U.S. at 329.

Nor does the court ignore evidence that actually was presented. Instead, "[i]n assessing the adequacy of a petitioner's showing, the habeas court must consider all the evidence, old and new, incriminating and exculpatory," in a holistic approach that takes account of the impact the entirety of the evidence would likely have had on the jury. See Fontenot, 4 F.4th at 1031-32. Though "a petitioner need not make a case of conclusive exoneration[,]" id. at 1030 (internal quotation omitted), "[t]he gateway should open only when a petition presents 'evidence of

innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" McQuiggin, 569 U.S. at 401 (*quoting* Schlup, 513 U.S. at 316).

Mr. Ramirez raised his actual-innocence claim for the first time in his tenth *pro se* state habeas petition. [See Doc. 102-1 at 1754, 1759-60, 1762, 1763]. Judge Tatum dismissed that petition as second or successive under Rule 5-802(I) NMRA. [Id. at 1829]. "When a state court dismisses a federal claim on the basis of noncompliance with adequate and independent state procedural rules, federal courts ordinarily consider such claims procedurally barred and refuse to consider them." Banks v. Workman, 692 F.3d 1133, 1144 (10th Cir. 2012). Respondent posits that Mr. Ramirez's actual-innocence claim most likely is procedurally barred. See Maldonado v. Martinez, No. 20cv507 MV/GJF, 2024 WL 194963, at *6-7 (D.N.M. Jan. 18, 2024) (Rule 5-802(I) is independent and adequate state procedural rule). However, because it also fails on the merits, this Court need not address the "thorny procedural issue[]" arguably presented. Revilla, 283 F.3d at 1210.

Mr. Ramirez asks this Court to believe that he did not plan to kill Eladio when, with the gun for which he lied to acquire ammunition 24 hours earlier, he shot Eladio twice in his mother's garage; chased Eladio to the street; fired two more bullets into Eladio's head; fled the scene; disposed of evidence, including the murder weapon; and hid at a friend's apartment for the next three days. Instead, he insists the murder "just happ[e]ed while [Mr. Ramirez was] defending himself" against Eladio's violent aggression. [Doc. 1 at 15-17; see also Doc. 23 at 5 ("[T]he murder was not premeditated. Period.")].

In an effort to elaborate on his actual-innocence claim, [see Doc. 11 at 7], Mr. Ramirez argues that he possesses reliable and exculpatory new scientific evidence in the form of Dr.

Shwartz's opinion about his mental state at the time of the offense, and her conclusion that he was not faking mental incompetence or malingering.[10]  [See Doc. 30 at 5; see also Doc. 102-1 at 550-556].  Indeed, he calls Dr. Shwartz's testimony "the very evidence [he] claim[s] proves [his] innocence of the first degree murder." [Doc. 69 at 19].

Mr. Ramirez also refers to a second psychologist, Dr. Richard Fink, and explains that both Drs. Shwartz and Fink "believed Ramirez was sexually abused and mentally ill at time of crime and trial."  [Doc. 23 at 14].  Mr. Ramirez argues that had the jurors heard from the psychologists, the jurors would have deemed him unable to form the specific intent to commit first-degree murder. [Id.; Doc. 69 at 20 ("Ramirez argues he is responsible for a lesser degree of guilt."); Doc. 102-1 at 1811 ("I would have been found innocent not guilty if I would have been allowed to present expert testimony of Maxann Swarts [sic] and Dr. Fink."); ("Mr. Ramirez would have been found innocent and only guilty of 2nd degree murder or manslaughter with[out] violations of his constitutional rights to a fair trial.")].

Mr. Ramirez fails to assert a credible actual-innocence gateway claim because, among other things, he continues to confuse legal and factual innocence.   Further, the Tenth Circuit has rejected the precise argument that Mr. Ramirez makes here.

In Long v. Peterson, the circuit held that Justin Long could not establish an actual-innocence gateway claim on the basis of psychological testimony detailing his mental disorders and inability to understand the consequences of his actions.   First, this testimony, which was presented at trial, was not new.  Additionally, "actual innocence means factual innocence, not legal innocence."  Long v. Peterson, 291 Fed. Appx. 209, 213 (10th Cir. 2008).  Finally, "[b]ecause

_____

[10] Dr. Shwartz's report (or parts of it) appears at several points in the state-court record, [see Doc. 102-1 at, e.g., 238, 239, 303, 305-310, 434, 436-441, 550-556, 833-838, ], and always without page 4.

Long admit[ted] his actions caused his father's death, he [was] not *factually* innocent." Id. (emphasis added).

So too here, where Mr. Ramirez readily admits to having killed Eladio and contests only the *mens rea* element. But see Johnson v. Hargett, 978 F.2d 855, 860 (5th Cir. 1992) ("'[A]ctual' innocence . . . means that the person did not commit the crime."). Importantly, Mr. Ramirez nowhere says that his new evidence would have led to an outright acquittal, just that it would have reduced first-degree murder to second-degree murder, or murder to manslaughter. [See Doc. 102-1 at 1803 ("Mr. Ramirez knows for a fact if given a new trial he would only be convicted of manslaughter or 2nd degree."). In so doing, Mr. Ramirez persists in mistaking for actual innocence what he predicts would have been the State's inability to prove each essential element of first-degree murder beyond a reasonable doubt if only the jury heard the psychological testimony. See Poventud v. City of New York, 750 F.3d 121, 135 n.17 (2d Cir. 2014) (citing dissenting opinion's "inability or unwillingness to distinguish between an argument that Poventud is innocent and an argument that the State did not carry its burden of proving him guilty beyond a reasonable doubt").

The same issue arose in Beavers v. Saffle, where, again, the Tenth Circuit observed that "Mr. Beavers does not claim that he is innocent of killing [the victim]. Rather, he claims that he is not guilty of first degree murder because he was intoxicated and acted in self defense. However, these arguments go to legal innocence, as opposed to factual innocence." Beavers v. Saffle, 216 F.3d 918, 923 (10th Cir. 2000); see also Craft v. Jones, 435 Fed. Appx. 789, 792 (10th Cir. 2011) ("The district court correctly recognized that Craft's argument regarding self-defense implicated legal innocence, not factual innocence.").

Mr. Ramirez took the stand and testified that Eladio was heavier and taller than he, and violent by nature. Mr. Ramirez said that during their confrontation, Eladio backhanded and choked

him and threatened to get his own firearm. Mr. Ramirez told the jury that he closed his eyes and fired in self-defense.

But the jury also heard testimony that Eladio's body at autopsy showed no signs of having been in a physical fight; two eyewitnesses heard shots fired as they observed Mr. Ramirez standing over Eladio with arm extended; Mr. Ramirez ran from the scene, threw away his weapon and bloody clothes, and hid out at a friend's apartment; and displayed other indicators of consciousness of guilt.

In assessing an actual-innocence gateway claim, this Court does not consider the newly discovered evidence in a vacuum, and it does not ignore evidence actually presented. See Fontenot, 4 F.4th at 1031-32 (habeas court considers "all the evidence, old and new, incriminating and exculpatory" in evaluating the likely effect of its totality on the jury). Additionally, Mr. Ramirez's jury was instructed on first-degree murder; second-degree murder; and voluntary manslaughter. [Doc. 102-1 at 24-27]. By their verdict, the jurors demonstrated that the State proved beyond a reasonable doubt that Mr. Ramirez committed first-degree murder when he fatally shot Eladio. [Id. at 18].

Finally, Mr. Ramirez insists that he has "satisfied the gateway of actual innocence under the clear and convincing standard of 2244(b)(2)(B)(ii)" because, presumably, testimony from Drs. Shwartz and Fink would have established that the murder could not have happened as the State argued. [See Doc. 23 at 13].

Section U.S.C. § 2244(b)(2)(B)(ii) pertains to claims presented in second or successive petitions and, consequently, does not apply here. But even if it did, Mr. Ramirez cannot show that "but for constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(B)(ii). To the contrary, Mr. Ramirez concedes that

the jury *still* would have found him guilty of either second-degree murder or manslaughter. [See Doc. 102-1 at 1803, 1811].

Further, the case on which Mr. Ramirez relies, [see Doc. 23 at 13], is distinguishable. There, the newly discovered evidence showed, among other things, that (1) the physical evidence secured at autopsy was inconsistent with the prosecution's timeline of the two charged murders; (2) police knew the sole eyewitness to the events was in a different state at the time; and (3) details in one of several intentionally withheld police reports identified an alternative suspect and laid out a more fitting theory of the case. See Munchinski v. Wilson, 694 F.3d 308, 335-336 (3d Cir. 2012).

Repeating that Eladio was the first aggressor and that Mr. Ramirez shot only after being assaulted, Mr. Ramirez offers—but does not elaborate on—"a different theory that better fits with the evidence." [Doc. 69 at 32]. Yet the trial testimony, including some provided by Mr. Ramirez himself, confirmed the State's general theory that (1) Mr. Ramirez did not like Eladio, was motivated to harm Eladio, and engaged in a pattern of escalating conduct toward Eladio; (2) Mr. Ramirez shot Eladio four times, including twice in the head at a time he was angry with Eladio; and (3) there was no physical evidence that Eladio had been in an altercation. The only disputed issue was intent, and the jury obviously did not believe Mr. Ramirez's insistence that he was a victim acting in self-defense.

In sum, Mr. Ramirez's original and amended § 2254 petitions are untimely, neither statutory nor equitable tolling applies, and Mr. Ramirez has failed to demonstrate a credible actual-innocence gateway claim. Because the timeliness issue is dispositive, this Court need not address the merits of the petitions. See Morris v. Romero, No. 06cv1052 MV/SMV, 2012 WL 12894831, at *11 (D.N.M. July 18, 2012), report and recommendation adopted, No. 06cv1052 MV/SMV, 2012 WL 12895692 (D.N.M. Sept. 28, 2012) ("Having found that the petition is time-barred under

the AEDPA, I need not address the merits of the petition."). Should this Court proceed to the substance of the claims, it still should recommend dismissal for Mr. Ramriez's failure and inability to demonstrate an entitlement to federal habeas relief under any applicable standard of review. See id. ("However, having reviewed the pleadings in this matter in great detail, I find that in the event the petition is not time-barred, it should nevertheless be denied on its merits.").

    **C.**    **If this Court reaches the merits of Mr. Ramirez's claims, it should find and recommend that no matter how reviewed, each one fails.**

    **1.**    **Standards of review**

The AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 19 (2013). Under the statute's "highly deferential standard of review[,]" a petitioner "must show that the [state court's] decision (1) "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate[-]court proceeding." Cortez-Lazcano v. Whitten, 81 F.4th 1074, 1082 (10th Cir. 2023) (quoting 28 U.S.C. § 2254(d)) (alterations original to Cortez-Lazcano)). "Clearly established federal law" refers to United States Supreme Court holdings, as opposed to dicta, existing at the time of the relevant state-court decision. Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court need not cite to or even indicate "*awareness* of [United States Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002) (emphasis in original).

As the Tenth Circuit has explained,

> [a] state court's decision is contrary to clearly established federal law when it applies a rule that contradicts the governing law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from that precedent. And a

state-court decision involves an unreasonable application of clearly established federal law when it correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular [petitioner's] case.

Cortez-Lazcano, 81 F.4th at 1082 (internal authorities and quotation marks omitted).

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law[, and] a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Renico v. Lett, 559 U.S. 766, 773 (2010) (emphases in original) (internal authority omitted). Rather, the state-court decision must "be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011); see also Woodford v. Visciotti, 537 U.S. 19, 24 (2002). The dispositive question is "not whether a federal court believes the state court's determination was incorrect, but whether that determination was unreasonable—'a substantially higher threshold' for a prisoner to meet." Shoop v. Twyford, 142 S. Ct. 2037, 2043 (2022) (*quoting* Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). Put differently, "[t]he petitioner must show that a state court's decision is 'so obviously wrong' that no reasonable judge could arrive at the same conclusion given the facts of the prisoner's case." Frederick v. Quick, 79 F.4th 1090, 1103 (10th Cir. 2023) (*quoting* Shinn v. Kayer, 592 U.S. 111, 118 (2020)).

Federal habeas courts similarly "defer[] to the state court's factual findings unless 'the state court[ ] plainly misapprehend[ed] or misstate[d] the record in making [its] findings, and the misapprehension goes to a material factual issue that is central to [the] petitioner's claim.'" Meek v. Martin, 74 F.4th 1223, 1251 (10th Cir. 2023) (*quoting* Ryder ex rel. Ryder v. Warrior, 810 F.3d 724, 739 (10th Cir. 2016)).

"[T]he ultimate burden of establishing that the state proceeding violated the Constitution of course remains on the petitioner[,]" Beachum v. Tansy, 903 F.2d 1321, 1325 (10th Cir. 1990),

and "deference and reasonableness are [a federal court's] watchwords as [it] review[s]" state-court rulings. Meek, 74 F.4th at 1248. In other words, scrutiny is highly circumscribed; a federal habeas court "does not sit as a super-state appellate court[,]" Harms v. Cline, 1178 (D. Kan. 2014); and "review is limited to the record that was before the state court that adjudicated the claim on the merits." Pinholster, 563 U.S. at 180; see also Honie v. Powell, 58 F.4th 1173, 1192 (10th Cir. 2023), cert. denied, 144 S. Ct. 504 (2023) ("AEDPA's tightly turned screws limit [federal] review.").

Although no deference is due issues *not* decided on the merits by the state courts, any "state-court findings of fact that bear upon the claim are entitled to a presumption of correctness rebuttable only by clear and convincing evidence." Grant v. Royal, 886 F.3d 874, 889 (10th Cir. 2018) (internal authorities omitted); accord Sumpter v. Kansas, 61 F.4th 729, 750 (10th Cir. 2023); see also 28 U.S.C. § 2254(e)(1). For claims the state courts have not decided on the merits, this Court exercises its independent judgment on review. See McCracken v. Gibson, 268 F.3d 970, 975 (10th Cir. 2001).

> **2.** **Under any applicable standard of review, Mr. Ramirez is entitled to no federal habeas relief because his claims all lack merit.**
>
> **a.** **Ineffective assistance of trial counsel (Ground One)**

Mr. Ramirez argues that trial counsel was ineffective because he (1) promised that if Mr. Ramirez took the stand, he could testify to Eladio's and Sam Saiz's alleged sexual abuse, [see Doc. 1 at 5]; and (2) failed to object to the prosecutor's "extensive, repetitive, egregious, prejudicial, severe, [and] pervasive" misconduct during closing and rebuttal. [Id.; see also Doc. 21 at 5].

In Strickland v. Washington, the United States Supreme Court established a two-part standard for assessing ineffective-assistance-of-counsel claims. First, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. Second, he must

demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). The petitioner must satisfy both prongs, and if he fails on one, this Court need not reach the other. See, e.g. United States v. Taylor, 492 Fed. Appx. 941, 945 (10th Cir. 2012); see also Strickland, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed.").

Courts "always start the [ineffective-assistance] analysis" by presuming that counsel acted objectively reasonably, and that the challenged conduct "*might* have been part of a sound trial strategy." Bullock v. Carver, 297 F.3d 1036, 1046 (10th Cir. 2002) (emphasis in original). If the decision in question "was, *in fact,* an adequately informed strategic choice, the presumption that [it] was objectively reasonable becomes 'virtually unchallengeable.'" Id. (emphasis in original). That Strickland demands "an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind[,]" is important because "[a]fter an adverse verdict at trial even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome." Harrington v. Richter, 562 U.S. 86, 109, 110 (2011). Finally, even an "ill-informed" strategy may be deemed objectively reasonable; an unreasonable "fully-informed strategic choice [is one that] 'was so patently unreasonable that no competent attorney would have made it.'" Id. (*quoting* Phoenix v. Matesanz, 233 F.3d 77, 82 n.2 (1st Cir. 2000)) For these reasons,

> [s]urmounting Strickland's high bar is never an easy task. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Establishing that a state court's application of Strickland was unreasonable under

> § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.

Howell v. Trammell, 728 F.3d 1202, 1223 (10th Cir. 2013) (internal quotations and citations omitted). The "doubly deferential" standard means that this Court gives both the state courts and defense counsel the benefit of the doubt. See Cortez-Lazcano, 81 F.4th at 1089.

As a preliminary matter, the argument that trial counsel was ineffective because he "promised if Mr. Ramirez testified he would be able to testify of the sexual assault[,]" [see Doc. 1 at 5], appears to be procedurally barred. The reason is that the New Mexico Supreme Court expressly declined to address this issue after appellate counsel deemed it unsupported and abandoned it. [See Doc. 102-1 at 109 (appellate counsel's recognition that no promises were reflected on the record, and "[m]atters not of record cannot be reviewed on appeal."); at 197 ("Counsel has abandoned the claim[] that trial counsel . . . made promises to [Mr., Ramirez] because these claims are unsupported by the record.")]. The Tenth Circuit has determined that "New Mexico courts have consistently and even handedly applied the rule waiving issues not raised on direct appeal for purposes of post-conviction relief." Jackson v. Shanks, 143 F.3d 1313, 1318 (10th Cir. 1998); see also Cannon v. Gibson, 259 F.3d 1253, 1265 (10th Cir. 2001) (absent showing of cause and prejudice, federal habeas court cannot considered issues defaulted in state court on independent and adequate state ground).

But even if this issue were not procedurally barred, Mr. Ramirez would not be able to demonstrate ineffective assistance because he cannot establish either deficient performance or resulting prejudice, and thus Ground One fails on the merits. See Revilla, 283 F.3d at 1210-11.

It is clear from the record that counsel vigorously sought to introduce evidence of the alleged sexual abuse. Counsel made a tender of the allegations to which Mr. Ramirez planned to

testify, argued in favor of allowing him to do so, and expressly requested a ruling. [10/10/2013 JT at 10:40:40-10:42:21]. After hearing from the State, however, Judge Hartley disallowed the testimony for reasons explained. [Id. at 10:44:13-10:44:50].

Counsel does not perform deficiently merely because he is unable to convince the court of his client's position. See May v. United States, 2016 WL 3033777, at *2 (W.D. Tex. May 25, 2016) ("Just because . . . counsel did not prevail on [his] arguments does not mean his performance was deficient[.]"). Here, the testimony in question was not excluded because of any misstep on counsel's part but because, among other things, the judge was skeptical of the timing of Mr. Ramirez's disclosure. See United States v. Anderson, 483 Fed. Appx. 462, 465 (10th Cir. 2012) (where there is no underlying error, there can be no ineffective assistance of counsel).

In any case, assuming that Mr. Ramirez was hoping the jury would believe his story and therefore have found Eladio's murder justified, he has not shown it reasonably probable that, but for the exclusion of this testimony, his trial would have ended differently. To the contrary, evidence that Mr. Ramirez planned; prepared; meant; and fully intended to kill Eladio on July 12, 2007, was plentiful.

Nor has Mr. Ramirez demonstrated ineffectiveness as a result of counsel's non-objection to what Mr. Ramirez describes as "extensive," egregious," "prejudicial," and "pervasive" prosecutorial misconduct during closing and rebuttal. [See Doc. 1 at 5; Doc. 21 at 5]. The reason, as explained below in Section II.C.2.d., is that the prosecutor's comments did not render the whole of the proceedings fundamentally unfair. See Donnelly v. DeChristoforo, 416 U.S. 637, 642-648 (1974). Mr. Ramirez fails on both Strickland prongs and, accordingly, is entitled to no federal habeas relief with respect to Ground One.

### b.    Ineffective assistance of appellate counsel (Ground Two)

Mr. Ramirez next argues that appellate counsel was ineffective for failing to raise issues that Mr. Ramirez requested, such as (1) prosecutorial misconduct in closing and rebuttal; and (2) the introduction of evidence of prior bad acts.  [Doc. 1 at 7; Doc. 21 at  7].

Strickland's standards also apply to appellate counsel.  See Milton v. Miller, 744 F.3d 660, 669 (10th Cir. 2014).  In the context of an appellate-counsel claim, the petitioner demonstrates deficient performance by showing that counsel "'unreasonably failed to discover [a] nonfrivolous issue[ ] and to file a merits brief raising [it].'"  Id. (quoting Smith v. Robbins, 528 U.S. 259, 285 (2000) (alterations original to Milton).  The petitioner demonstrates prejudice by showing "'a reasonable probability that, but for his counsel's unreasonable failure to' raise a particular nonfrivolous issue, 'he would have prevailed on his appeal.'"  Id. (quoting Smith, 528 U.S. at 285).  But "the Sixth Amendment does not require an attorney to raise every nonfrivolous issue on appeal."  Banks v. Reynolds, 54 F.3d 1508, 1515 (10th Cir. 1995) (citing Jones v. Barnes, 463 U.S. 745, 751 (1983)).

Here, appellate counsel *did* argue that Judge Hartley abused his discretion by admitting evidence of prior bad acts and refusing to declare a mistrial for prosecutorial misconduct.  [See Doc. 102-1 at 111-117].   The New Mexico Supreme Court disagreed, [see id. at 206-216], remarking that "[Mr. Ramirez's] guilt [was] supported by substantial evidence in the record, including eyewitness testimony and evidence of [his] motive and pattern of conduct toward" Eladio.  [Id. at 205].   Otherwise, Mr. Ramirez does not specify what issues for appeal he believes "were stronger" than those raised, [see Doc. 21 at 7], and the Tenth Circuit has "repeatedly held that conclusory allegations are insufficient to warrant habeas relief for ineffective assistance of

counsel." Quintana v. Mulheron, 788 Fed. Appx. 604, 609 (10th Cir. 2019). This Court should find federal habeas relief foreclosed as to Ground Two.

<div align="center">

**c.** **Due process violation resulting from the introduction of prior bad acts evidence (Ground Three)**

</div>

As his third ground for relief, Mr. Ramirez maintains that he was denied due process when the State introduced evidence that he had (1) head-butted a transport officer, (2) broken the car windshield and the house window, (3) been the subject of the no-trespass order, (4) verbally abused Debra, (5) punched the woman he said was fighting his cousin, and (6) composed a rap song in which he sang about shooting people. [See Doc. 1 at 8; Doc. 21 at 8]. Mr. Ramirez raised acts (1) through (3) on direct appeal, though not as constitutional claims. [See Doc. 102-1 at 111-115]. He appear to raise acts (4) through (6) for the first time here.

Evidence of prior bad acts is not admissible if it is offered only to show that a person has acted in conformity with his bad character. See, e.g., United States v. Commanche, 577 F.3d 1261, 1267 (10th Cir. 2009). Because issues relating to the admission of evidence normally implicate only state law, they generally are not cognizable in a federal habeas proceeding. See, e.g., Smallwood v. Gibson, 191 F.3d 1257, 1275 (10th Cir. 1999). Moreover, "[a] habeas applicant cannot transform a state law claim into a federal one merely by attaching a due process label." Leatherwood v. Allbaugh, 861 F.3d 1034, 1043 (10th Cir. 2017); see also Frazier v. DiGuglielmo, No. 01cv1585, 2011 WL 6780689, at *6 (W.D. Pa. Dec. 27, 2011) (commenting on habeas petitioner's "attempts to contort . . . state-law evidentiary rulings into purported violations of his constitutional rights"). Still, an exception to the general rule exists if the alleged wrongful admission was so overly prejudicial and fundamentally unfair as to rise to the level of a due process violation. See Payne v. Tennessee, 501 U.S. 808, 825 (1991) ("In the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due

Process Clause of the Fourteenth Amendment provides a mechanism for relief."). This exception, however, covers only a narrow "'category of infractions'" Garrett v. Raemisch, 601 Fed. Appx. 650, 654 (10th Cir. 2015) (*quoting* Dowling v. United States, 493 U.S. 342, 352 (1990)). Within this narrow category is evidence "so extremely unfair that its admission violates 'fundamental conceptions of justice.'" Dowling, 493 U.S. at 352 (*quoting* United States v. Lovasco, 431 U.S. 783, 790 (1977)).

In this case, the New Mexico Supreme Court rejected Mr. Ramirez's argument as to acts (1) through (3). It held that admission of the head-butting, while error, was harmless. [Doc. 102-1 at 214]. By contrast, evidence of the two instances of property damage was relevant to Mr. Ramirez's pattern of conduct toward Eladio; evidence of the no-trespass order was relevant to his motive; and all incidents were "consequential" to the disputed issue of intent. [Id. at 210]. Though the court did not resolve this point on constitutional grounds, the factual determinations it made in the course of reaching its decision are presumed correct. Also, nothing about the introduction of this highly relevant evidence implicated "those fundamental conceptions of justice which lie at the base of our civil and political institutions . . . and which define the community's sense of fair play and decency." Lovasco, 431 U.S. at 790 (internal authorities omitted).

Nor does introduction of acts (4) through (6) rise to the level of a due process violation.

With respect to act (4), Hesiquia testified that the day before Eladio's murder, Mr. Ramirez had called Debra "just a bitch and . . . all kinds of names." Mr. Ramirez's anger toward Debra was intertwined with his feelings toward Eladio for "trying to prevent [Debra] from helping" him and allegedly enjoying watching Mr. Ramirez suffer.

Otherwise, Mr. Ramirez himself opened the door to evidence of his having punched a woman (act (5)) by telling the jury he bought the murder weapon as protection against the group

he claimed to have fought in defense of his cousin.  As for act (6), given Mr. Ramirez's insistence that he be allowed to recite his rap song for the jury, any error by the prosecutor in later referring to it must be deemed, among other things, invited and thus not chargeable to the State.  See, e.g., United States v. McBride, 94 F.4th 1036, 1041 (10th Cir. 2024) (explaining invited-error doctrine and collecting cases).  Introduction of the complained-of prior acts did not rise to the level of a due process violation here.

### d.        Prosecutorial misconduct (Ground Four)

In Ground Four, Mr. Ramirez says the prosecutor engaged in misconduct by (1) questioning him about the amount of legal research he had done; (2) calling Mr. Ramirez a liar, manipulator, malingerer and menace to society; and (3) introducing evidence of the above-described prior bad acts, which Mr. Ramirez believes was done only to attack his character.  [See Doc. 1 at 10; Doc. 21 at 10].

To obtain federal habeas relief on a prosecutorial misconduct claim, the petitioner must show that the prosecutor's alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly, 416 U.S. at 643.  To determine whether prosecutorial misconduct rendered a trial unfair, this Court evaluates the challenged conduct in the context of the entire trial and considers "the strength of the evidence against the petitioner." Bland v. Sirmons, 459 F.3d 999, 1024 (10th Cir. 2009).

The New Mexico Supreme Court specifically held that questions about Mr. Ramirez's legal research "were isolated and minor[, and] did not deprive [him] of a fair trial." [Doc. 102-1 at 216]. The court more generally held that "[r]eviewing *all* of the comments made, in the context in which they were made, and taking into account those comments' potential effect on the jury, the questions

were isolated and minor. Accordingly, the prosecutor's remarks did not deprive [Mr. Ramirez] of a fair trial." [Id. (emphasis added)].

Because the New Mexico Supreme Court considered Mr. Ramirez's prosecutorial-misconduct claim, "AEDPA standards of review apply, and [this Court] may [disturb] only if the [state court's] decision was 'legally or factually unreasonable.'" Bland, 459 F.3d at 1014 (*quoting* Gipson v. Jordan, 376 F.3d 1193, 1197 (10th Cir. 2004)). Here, each challenged comment finds support in the record.

For example, Hesiquia's testimony that Mr. Ramirez tended to fake symptoms of illness lent support to the prosecutor's remark that Mr. Ramirez was a malingerer. Evidence that Mr. Ramirez lied to James Patterson for the purpose of convincing Mr. Patterson to buy him ammunition justified the comment that Mr. Ramirez was a liar and a manipulator. The fact that Mr. Ramirez was on trial for the first-degree, execution-style murder of Eladio, and the evidence showed that after killing Eladio he (1) immediately fled the scene of the crime; (2) disposed of the murder weapon and his bloody clothes; (3) hid out at a friend's house until he was captured; and (4) asked for assistance in retrieving the murder weapon, warranted any characterization of him as a menace to society. See Parker v. Warden, Broad River Correctional Inst., No. 15-4648 TLW-KDW, 2016 WL 7852482, at *7 (D.S.C. Nov. 3, 2016) ("In the context of the offense for which he was charged and convicted, and the evidence before the jury, the Applicant has failed to prove that the failure to object to this comment [that he was a predator] likely changed the outcome of the trial.").[11]

---

[11] Undersigned counsel twice listened carefully to the prosecutor's closing argument and rebuttal and could discern no reference to Mr. Ramirez as a menace to society. Undersigned heard the prosecutor liken Mr. Ramirez to a predator for shooting Eladio two times in the garage, then, as Eladio ran for his life, "chas[ing] him down in the front yard" to execute him by firing two more shots into his head. [10/11/2013 JT at 10:05:09-10:06:23].

When Mr. Ramirez took the stand and admitted to having fatally shot Eladio on July 12, 2007, the sole remaining question for the jurors with respect to Count 1 was whether he acted "with the deliberate intention to take away" Eladio's life. [See Doc. 102-1 at 24]. This was the context in which the prosecutor made the challenged comments. Because those comments were supported by testimony elicited from a number of witnesses, it cannot be said that the prosecutor's subsequent use of them in service of making the State's case beyond a reasonable doubt so infected the trial with unfairness that due process was violated. To paraphrase the Tenth Circuit, this Court's "interest is in whether Mr. [Ramirez] got a fair trial; 'inappropriate prosecutorial comments, standing alone, [do] not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding.'" Matthews v. Workman, 577 F.3d 1175, 1186 (10th Cir. 2009) (quoting United States v. Young, 470 U.S. 1, 11 (1985)) (alteration original to Matthews). Mr. Ramirez cannot secure federal habeas relief with respect to his prosecutorial-misconduct claim.

### e.     Improper comment on Mr. Ramirez's right to remain silent (Ground Five)

As his fifth ground for relief, Mr. Ramirez emphasizes that "Deputy Loomis testified [that] he tried to interview Mr. Ramirez[,]" and equates this remark with a "[a] comment on [Mr. Ramirez's] post Miranda silence." [Doc. 21 at 12]. Contrary to what he now claims, [see id.], Mr. Ramirez declined Judge Hartley's offer to provide the jury a curative instruction.

Generally, commenting on a defendant's post-arrest, post-Miranda silence amounts to a due process violation. See Doyle v. Ohio, 426 U.S. 610, 618 (2005). But as a sister district court has observed,

> [s]ignificantly, Supreme Court precedent does not establish a rule giving rise to constitutional error in every case in which the prosecutor refers to the defendant's post-arrest silence. In order for

> a witness' remarks to constitute an impermissible comment on silence, the remarks must (1) exhibit a manifest intent to comment on silence or (2) be of such a nature that a jury would naturally and necessarily construe the remarks as a comment on defendant's silence.

Tapscott v. Jones, No. 08cv177 JHP/PJC, 2011 WL 1299355, at *7 (N.D. Okla. Mar. 31, 2011)

(internal authorities omitted).

In this case, there was no due process violation because, as both Judge Hartley and later the New Mexico Supreme Court reasoned, there was no indication that the prosecutor was attempting to elicit commentary on Mr. Ramirez's silence when he asked Deputy Loomis to describe his role in the investigation. As Judge Hartley said,

> the method by which [Deputy Loomis] was asked did not suggest that he was there in search of a statement. He just made a very routine, "I went there, I did this," and asked questions. I don't think it rises to the issue of commenting on his not being a witness.
> . . .
>
> The court is of the opinion that . . . the comments that [Deputy Loomis] was making at that time was basically just an intent or explanation of what his role was . . . routine role. I don't think that he indicated to me . . . to focus on trying to interview [Mr. Ramirez] at all at that time."

[10/8/2013 JT at 2:15:54-2:16:18; 2:24:50-2:25:2]. The state supreme court took a similar view, explaining that Deputy Loomis's

> comments were incorporated within his testimony establishing his connection to the case and his reliability as a witness. The deputy did not mention that his attempt to interview [Mr. Ramirez] had failed because [Mr. Ramirez] invoked his right to remain silent, but simply described how he completed his follow-up investigation. The record does not demonstrate an intent by the deputy to comment specifically on [Mr. Ramirez's] silence, nor that this comment was directly attributable to the prosecutor's question.

[Doc. 102-1 at 202-203].

Indeed, considering the context, Deputy Loomis's statement was "simply . . . a fair reply to" the prosecutor's innocuous inquiry about the deputy's role in investigating Eladio's murder. See United States v. Kaye, 779 F.2d 1461, 1462 (10th Cir. 1985) ("[G]iven the context of the statements, they simply were a fair reply to defense counsel's questioning and statements, and did not constitute inappropriate comment on appellant's silence and right to remain silent."). Under any applicable standard of review, Ground Five fails.

### f. Due process violation resulting from "shackles error" (Ground Six)

Mr. Ramirez next contends that his right to due process was violated because the jurors observed his shackles when he tripped at counsel table on the first day of trial. [See Doc. 1 at 14; Doc. 21 at 14].

"[T]he Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." Deck v. Missouri, 544 U.S. 622, 629 (2005). The Tenth Circuit instructs that "[i]n itself, a juror's brief view of a defendant in shackles does not qualify as a due process violation[.]" United States v. Jones, 468 F.3d 704, 709 (10th Cir. 2006). Instead, the petitioner bears the burden of showing that he has been prejudiced by the incident. Id.

The New Mexico Supreme Court already has concluded that Mr. Ramirez has not made the necessary showing. As that court explained,

> defense counsel concede[d] that a black skirt on the table shielded the jury's view of [Mr. Ramirez's] shackles and that he did not ask the court to make a finding of prejudice or declare a mistrial. Because it is unclear whether the jury saw the leg restraints and if they did, there is no evidence that it was anything other than inadvertent or insignificant exposure, this case is not the exceptional type that goes to the violation of the foundation of presumption of innocence. Further, this case does not shock the conscience as [Mr. Ramirez's] guilt is supported by substantial evidence in the record[.]

[Doc. 102-1 at 205].

While the New Mexico Supreme Court was reviewing for fundamental error, [see Doc. 102-1 at 203], rather than for a due process violation, its determinations that (1) the presumption of innocence was not undermined under the circumstances, and (2) there was substantial record evidence of Mr. Ramirez's guilt, are presumed correct. Further, even if it could be said that due process was violated, any compromising of Mr. Ramirez's presumption of innocence was necessarily rendered harmless when he voluntarily announced to the jury, "I'm in prison." [10/10/2013 JT at 9:57:13].

### g.     Actual innocence (Ground Seven)

Mr. Ramirez's final argument is that he is entitled to federal habeas relief on the basis of actual innocence because he killed Eladio in self-defense. [See Doc. 1 at 15-17; see also Doc. 69 at 11, 13, 15-17].

Respondent has expansively detailed his position on Mr. Ramirez's actual-innocence gateway claim in Section II.B., above and will not repeat that discussion and analysis here.

Respondent notes, however, that in his December 5, 2024, motion to expand on his claim, Mr. Ramirez cites Montoya v. Ulibarri, 2007-NMSC-035. [See Doc. 69 at 11]. In Montoya, the New Mexico Supreme Court held that, under the New Mexico Constitution, it violates both due process and the prohibition against cruel and unusual punishment to imprison an innocent person. Therefore, the New Mexico Constitution allows for a freestanding claim of actual innocence independent of any constitutional violation if the petitioner demonstrates by clear and convincing evidence that no reasonable juror would have convicted in light of new evidence. Montoya v. Ulibarri, 2007-NMSC-035, ¶ 1. Still, the court recognized that because (1) Herrera has been interpreted to mean that "there exists no constitutional prohibition against leaving an innocent

person in jail if the State provides for a pardon based upon innocence[,]" and (2) the New Mexico Constitution includes such a provision, actual innocence as a standalone claim is cognizable in state but not in federal habeas proceedings. See id. ¶¶ 16-17; see also Gutierrez v. Marshel, No. CV 11-865 JCH/GBW, 2012 WL 13076253, at *3 (D.N.M. Oct. 30, 2012) (addressing federal habeas petitioner's actual-innocence claim and distinguishing Montoya because it "addresses claims of actual innocence brought under the New Mexico Constitution rather than 28 U.S.C. § 2254.").

It is not entirely clear why Mr. Ramirez cites Montoya. However, even if Montoya were applicable in this federal habeas proceeding, Mr. Ramirez's actual-innocence claim still would fail because, as detailed above, he cannot show that no reasonable juror considering his "new" evidence would have convicted him of first-degree murder. Indeed, Mr. Ramirez (1) suggests that the jury should have accepted his testimony over that of other witnesses; (2) insists that testimony from Priscilla Lopez and Ricky Jaramillo, two individuals who were not called to the stand, would have raised questions about what Sam Saiz and Grace Finkey swore they observed; and (3) repeats that, had Dr. Shwartz taken the stand, she would have testified about "his state of mind during [the] time of [the] incident[,]" which, in turn, presumably would have outweighed the meticulously built and overwhelming case for first-degree murder that the State presented to the jurors over five days of trial. [See Doc. 1 at 15-17; see also Doc. 69 at 13].

Mr. Ramirez concedes that this proffered testimony is no more than impeachment evidence that he believes would have "cast doubt" on the testimony the jury heard and the evidence it considered. [See Doc. 69 at 13]. As such, Mr. Ramirez's evidence is insufficient as a matter of law to establish actual innocence. See Stafford, 34 F.3d at 1561 ("corroborating evidence,

impeaching evidence, or evidence merely raising some suspicion or doubt of . . . guilt[]" is not persuasive evidence of actual innocence).

For reasons stated in Section II.B. above, Mr. Ramirez fails to demonstrate a credible actual-innocence gateway claim. Inasmuch as his pleadings might be read as attempting to assert a freestanding claim of actual innocence, [see Doc. 1 at 15-17; Doc. 69 at 11; Doc. 101-1 at 1786, 1805], any such claim is not cognizable in a federal habeas proceeding. For these reasons, this Court should reject Ground Seven as meritless.

**III.**    **CONCLUSION**

Alberto Jose Ramirez's original and amended 28 U.S.C. § 2254 petitions are untimely, no exception applies, and Mr. Ramirez cannot demonstrate a credible actual-innocence gateway claim that would let him circumvent the one-year period of limitation. Consequently, this Court should find and recommend that the petitions are subject to denial and these proceedings to dismissal with prejudice. Alternatively, the petitions should be denied and the proceedings dismissed on the merits. Respondent renews his request that a certificate of appealability be denied.

<div align="center" style="margin-left:40%">

Respectfully submitted,

RAÚL TORREZ
Attorney General

Electronically filed

Jane A. Bernstein
Assistant Attorney General
Attorneys for Respondents
201 Third St. NW, Suite 300
Albuquerque, NM 87102
(505) 717-3500
jbernstein@nmag.gov

</div>

## CERTIFICATE OF SERVICE

   I hereby certify that on January 22, 2025, I filed the foregoing *Respondent's Answer to Alberto Jose Ramirez's Initial and Amended Pro Se Petitions for Writ of Habeas Corpus (28 U.S.C. § 2254) [Docs. 1 and 21]*, with exhibits, electronically through the CM/ECF system. I further certify that on such date I served the foregoing on the following non-CM/ECF participant via first-class mail, postage prepaid, and addressed to:

Alberto Jose Ramirez, # 69597
Southern NM Correctional Facility
PO Box 639
Las Cruces, NM 88004-0639

        Jane A. Bernstein
        Assistant Attorney General

# Appendix A

| Date | Event or proceeding (state and federal court) |
|------|------------------------------------------------|
| 12/1/2016 | NM Supreme Court decision affirming guilty verdicts.<br>12/1/2016 + 90 days = Weds. 3/1/2017. One-year period of limitation begins to run next business day, Thurs. 3/2/2017, meaning year will expire no later than Friday, 3/2/2018 absent properly filed tolling motion(s). |
| 3/22/2017 | Ramirez files *pro se* state habeas petition #1, which tolls time, though 20 days (the time between 3/2/2017 and 3/22/2017) of one-year limitation period have run. Date of court filing applies. Mailbox rule does not apply because Ramirez does not verify date he deposits petition for institutional mailing. |
| 4/25/2017 | Ramirez files *pro se* state habeas petition #2. As with petition #1, date of court filing applies for Ramirez's failure to verify deposit date. |
| 5/31/2017 | State district court dismisses both *pro se* habeas petitions ##1 and 2. |
| 6/20/2017 | Ramirez files *pro se* state habeas petition #3. |
| 6/27/2017 | Ramirez files cert. petition #1. Because he is within 30 days of 5/31/2017 denial, and because state habeas petition #3 is pending, time remains tolled. |
| 7/17/2017 | Ramirez files *pro se* state habeas petition #4. |
| 8/11/2017 | NM Supreme Court denies cert. petition #1. Ramirez continues to toll time because state habeas petitions ##3 and 4 both are pending. |
| 5/18/2018 | Appointed counsel files amended state habeas petition for Ramirez. |
| 12/14/2018 | The state district court acknowledges *pro se* habeas petitions ##3 and 4, but limits its analysis to the amended habeas petition, which it dismisses. |
| 1/28/2019 | Ramirez files cert. petition #2, which should have been filed Monday, 1/14/2019. Because nothing was pending before NM Supreme Court for the 14 days between the petition's due date and the date it was filed, these days count against Ramirez. This means a total of 34 days (the initial 20 days + these 14 days) of the one-year limitation period have run, leaving 331 days (365 – 34 = 331) once cert. petition #2 is resolved. |
| 2/5/2019 | NM Supreme Court denies cert. petition #2. Ramirez has 15 days to seek reconsideration, but he does not do so. 2/5/2019 + 15 days = Weds. 2/20/2019. The clock resumes the next business day, Thurs. 2/21/2019**.** Adding 331 days yields Sat. 1/18/2020 as due date for timely 28 U.S.C. § 2254 petition. Monday, 1/20/2020 is MLK Jr. Day. At this point, unless he tolls more time, Ramirez's § 2254 petition must be filed no later than Tuesday, 1/21/2020. |

| | |
|---|---|
| 3/11/2019 | Ramirez files his first § 2254 petition, opening 19cv202 MV/CG. Ramirez's ultimate deadline of 1/21/2020 (notable if he were to return to state court to exhaust) does not change, however, because federal filings lack tolling effect. |
| 5/28/2019 | Ramirez files motion for voluntary "removal" of § 2254 petition in order to return to state court and satisfy exhaustion requirement. |
| 6/5/2019 | Ramirez files *pro se* state habeas petition #5. He tolls time, but he has just used up an additional 104 days, leaving 227 days (365 – 20 – 14 – 104 = 227 days) once #5 is fully resolved. |
| 6/25/2019 | Ramirez files (deposits for institutional mailing) his second § 2254 petition, opening 19cv671 KWR/LF (originally JB/LF). |
| 8/12/2019 | State district court dismisses *pro se* habeas petition #5. |
| 9/3/2019 | Ramirez files cert. petition #3. |
| 9/13/2019 | NM Supreme Court denies cert. petition #3. 9/13/2019 + 15 days to seek reconsideration= Sat. 9/28/2019, making motion for reconsideration due Monday, 9/30/2019. Time (227 days) resumes running next business day. October 1, 2019 + 227 days = **Friday, May 15, 2020 as due date for his § 2254 petition** absent any more properly filed tolling motions. |
| 11/18/2019 | Judge Vázquez treats Ramirez's "removal" motion in 19cv202 MV/CG as one pursuant to Fed.R.Civ.P. 41(a)(1) and grants it. Had Ramirez not voluntarily dismissed this petition, there would be no time-bar issue here. |
| Friday, May 15, 2020 | Because he voluntarily dismissed 19cv202 MV/CG, this is Ramirez's absolute latest date to file a timely § 2254 petition. He currently has no properly filed application pending in state court, and the filing of a federal habeas petition does not stop the clock. In other words, nothing Ramirez files in state court after this date has any tolling effect, and no time spent in mental-health facilities after this date is material for purposes of 28 U.S.C. § 2244(d). |
| 8/18/2020 | Ramirez files *pro se* state habeas petition #6. By this point, there is no time left to toll. |
| 10/5/2020 | State district court dismisses *pro se* habeas petition #6. |
| 10/26/2020 | Ramirez files cert. petition #4. |
| 3/19/2021 | Judge Riggs grants Ramirez's motion for voluntary dismissal in 19cv671 KWR/LF. |
| 4/27/2021 | NM Supreme Court denies cert. petition #4. |
| 8/4/2021 | Ramirez refiles same § 2254 petition that had opened 19cv671 KWR/LF as opening pleading in 21cv731 MIS/KK. This begins his third round in the District of New Mexico. |

| | |
|---|---|
| 7/22/2022 | Ramirez files (deposits for institutional mailing) fourth § 2254 petition, opening 22cv585 DHU/KK. |
| 12/9/2022 | Judge Strickland grants Ramirez's motion for voluntary dismissal in 21cv731 MIS/KK. |
| 12/19/2022 | Ramirez files *pro se* habeas petitions ##7 and 8. |
| 1/9/2023 | Ramirez files *pro se* habeas petition #9. |
| 1/12/2023 | Judge Urias grants Ramirez's motion for voluntary dismissal in 22cv585 DHU/KK. |
| 2/10/2023 | State district court dismisses *pro se* habeas petitions ##7-9. |
| 3/17/2023 | Ramirez files fifth § 2254 petition, opening 23cv232 KWR/SCY. |
| 4/23/2023 | Judge Riggs grants Ramirez's motion for voluntary dismissal in 23cv232 KWR/SCY. |
| 5/3/2023 | Clerk of Court dockets letter from Ramirez as § 2254 petition, his sixth, opening 23cv381 DHU/SCY. |
| 6/5/2023 | Judge Urias grants Ramirez's motion for voluntary dismissal in 23cv381 DHU/SCY. |
| 6/15/2023 | Ramirez files seventh § 2254 petition, opening 23cv519 MV/GJF. |
| 6/30/2023 | Ramirez files *pro se* habeas petition #10. |
| 7/7/2023 | Judge Vázquez grants Ramirez's motion for voluntary dismissal in 23cv519 MV/GJF. |
| 8/28/2023 | State district court dismisses *pro se* habeas petition #10. |
| 9/28/2023 | Ramirez files cert. petition #5. |
| 11/20/2023 | NM Supreme Court denies cert. petition #5. |
| 11/27/2023 | Ramirez files (deposits for institutional mailing) § 2254 petition, his eighth, opening 23cv1075 MV/DLM.  He is more than 3½ years out of time both under this Court's calculations and by Respondent's. |

# Appendix B

The following state-court documents are attached as Document 102-1 and appear in that attachment at the pages noted below in bold:

**Ninth Judicial District, Curry County No. D-905-CR-2007-434**

Exhibit A -  *Grand Jury Indictment* (**pp 1-3 of 1863**), filed July 20, 2007;

Exhibit B -  *Guilty Plea Agreement* (**pp. 4-8 of 1863**), filed January 26, 2009;

Exhibit C -  *Judgment, Sentence and Commitment* (**pp. 9-11 of 1863**), filed February 3, 2009;

Exhibit D -  *Motion to Withdraw Plea of Guilty* (**pp. 12-15 of 1863**), filed February 25, 2009;

Exhibit E -  *Order* (**p. 16 of 1863**), filed September 6, 2011;

Exhibit F -  Verdicts (**pp. 17-20 of 1863**), filed October 11, 2013;

Exhibit G -  Jury Instructions (**pp. 21-44 of 1863**), filed October 11, 2013;

Exhibit H -  *Judgment, Sentence and Commitment* (**pp. 45-56 of 1863**), filed January 8, 2014;

Exhibit I -  *Defendant-Appellant's Statement of Issues* (**pp. 47-65 of 1863**), filed March 7, 2014;

Exhibit J -  *Defendant-Appellant's Brief-in-Chief* (**pp. 66-118 of 1863**), filed August 12, 2014;

Exhibit K -  *State of New Mexico's Answer Brief* (**pp. 119-173 of 1863**), filed January 9, 2015;

Exhibit L -  *Reply Brief* (**pp. 174-182 of 1863**), filed January 20, 2015.

**New Mexico Supreme Court No. S-1-SC-34576**

Exhibit M -  *Decision* (**pp. 183-217 of 1863**), filed December 1, 2016;

Exhibit N -  *Mandate No. S-1-SC-34576* (**p. 218 of 1863**), filed January 11, 2017.

**Ninth Judicial District, Curry County No. D-905-CR-2007-434**

Exhibit O -  *Petition for Writ of Habeas Corpus* (**pp. 219-241 of 1863**), filed March 22, 2017;

Exhibit P -  *Petition for Writ of Habeas Corpus* (**pp. 242-256 of 1863**), filed April 25, 2017;

Exhibit Q - *Decision and Order of Summary Dismissal* (**pp. 257-258 of 1863**), filed May 31, 2017;

Exhibit R - *Petition for Writ of Habeas Corpus* (**pp. 259-355 of 1863**), filed June 20, 2017.

## New Mexico Supreme Court No. S-1-SC-36599

Exhibit S - *Petition for Writ of Certiorari to the District Court from Denial of Habeas Corpus* (**pp. 356-478 of 1863**), filed June 27, 2017.

## Ninth Judicial District, Curry County No. D-905-CR-2007-434

Exhibit T - *Petition for Writ of Certiorari to the District Court from Denial of Habeas Corpus* (treated and docketed as Rule 5-802 NMRA application) (**pp. 479-507 of 1863**), filed July 17, 2017;

Exhibit U - *Order of Appointment for Habeas Corpus Proceedings Under Rule 5-802 NMRA* (**p. 508 of 1863**), filed July 27, 2017.

## New Mexico Supreme Court No. S-1-SC-36599

Exhibit V - *Order* (**p. 509 of 1863**), filed August 11, 2017.

## Ninth Judicial District, Curry County No. D-905-CR-2007-434

Exhibit W - *Amended Petition for Writ of Habeas Corpus* (**pp. 510-646 of 1863**), filed May 18, 2018;

Exhibit X - *Notice That the Court is Not Dismissing any Portion of the Amended Petition at This Time and Order for State to Respond to Amended Petition for Writ of Habeas Corpus* (**pp. 647-648 of 1863**), filed June 15, 2018;

Exhibit Y - *State's Response to Defendant's Amended Petition for Writ of Habeas Corpus* (**pp. 649-673 of 1863**), filed September 10, 2018;

Exhibit Z - *Order Denying Petitioner's Petition for Writ of Habeas Corpus* (**pp. 674-685 of 1863**), filed December 14, 2018.

## New Mexico Supreme Court No. S-1-SC-37501

Exhibit AA - *Petition for Writ of Certiorari to the 9th District Court of New Mexico* (**pp. 686-891 of 1863**), filed January 28, 2019;

Exhibit BB - *Order* (**p. 892 of 1863**), filed February 5, 2019.

**Ninth Judicial District, Curry County No. D-905-CR-2007-434**

Exhibit CC -    *Petition for Writ of Habeas Corpus* (**pp. 893-1219 of 1863**), filed June 24, 2019;

Exhibit DD -    *Notice of 5-802(G)(1) Initial Review* (**pp. 1220-23 of 1863**), filed July 31, 2019;

Exhibit EE -    *Decision and Order of Summary Dismissal* (**pp. 1224-26 of 1863**), filed August 12, 2019.

**New Mexico Supreme Court No. S-1-SC-37887**

Exhibit FF -    *Petition for Writ of Certiorari to the District Court from Denial of Habeas Corpus* (**pp. 1227-1554 of 1863**), filed September 3, 2019;

Exhibit GG -    *Order* (**p. 1555 of 1863**), filed September 13, 2019.

**Ninth Judicial District, Curry County No. D-905-CR-2007-434**

Exhibit HH -    *Amended Petition* (**pp. 1556-1608 of 1863**), filed August 18, 2020;

Exhibit II -    *Notice of 5-802(H)(1) Initial Review* (**pp. 1609-16 of 1863**), filed September 24, 2020;

Exhibit JJ -    *Decision and Order of Summary Dismissal and Order Denying Petitioner's Motion to Expand Record* (**pp. 1617-21 of 1863**), filed October 5, 2020.

**New Mexico Supreme Court No. S-1-SC-8539**

Exhibit KK -    *Petition for Writ of Certiorari to the 9th District Court of New Mexico* (**pp. 1622-29 of 1863**) filed October 26, 2020;

Exhibit LL -    Supplemental pleading (**pp. 1630-41 of 1863**), filed November 4, 2020;

Exhibit MM -    Supplemental pleading (**pp. 1642-56 of 1863**), filed November 16, 2020;

Exhibit NN -    Correspondence (**pp. 1657-62 of 1863**), filed November 20, 2020;

Exhibit OO -    Correspondence (**pp. 1663-64 of 1863**), filed January 4, 2021;

Exhibit PP -    Correspondence (**pp. 1665-67 of 1863**), filed April 7, 2021;

Exhibit QQ -    *Order* (**p. 1668 of 1863**), filed April 27, 2021.

**Ninth Judicial District, Curry County No. D-905-CR-2007-434**

Exhibit RR - *Petition for Writ of Habeas Corpus* (**pp. 1669-92 of 1863**), filed December 27, 2022;

Exhibit SS - *Petition for Writ of Habeas Corpus* (**pp. 1693-1720 of 1863**), filed December 27, 2022;

Exhibit TT - *Petition for Writ of Habeas Corpus* (**pp. 1721-38 of 1863**), filed January 9, 2023;

Exhibit UU - *Notice of Rule 5-802(H)(1) NMRA Pre-Appointment Review* (**pp. 1739-43 of 1863**), filed February 8, 2023;

Exhibit VV - *Decision and Order of Summary Dismissal* (**pp. 1744-46 of 1863**), filed February 10, 2023;

Exhibit WW - *Petition for Writ of Habeas Corpus* (**pp. 1747-1821 of 1863**), filed July 6, 2023;

Exhibit XX - *Notice of 5-802(H)(1) Pre-Appointment Review* (**pp. 1822-26 of 1863**), filed August 21, 2023;

Exhibit YY - *Decision and Order of Summary Dismissal and Order Denying Petitioner's Motion to Expand Record* (**pp. 1827-30 of 1863**), filed August 28, 2023..

**New Mexico Supreme Court, No. S-1-SC-40134**

Exhibit ZZ – Request for extension of time (**pp. 1831-39 of 1863**), filed September 22, 2023;

Exhibit AAA - *Petition for Writ of Certiorari to the 9th District Court of New Mexico* (**pp. 1840-43 of 1863**), filed September 29, 2023;

Exhibit BBB - *Order* (**p. 1844 of 1863**), filed November 20, 2023.

**Docket sheets**

Exhibit DS1 - Ninth Judicial District, Curry County No. D-905-CR-2007-434 (**pp. 1845-56 of 1863**), downloaded December 6, 2024;

Exhibit DS2 - New Mexico Supreme Court No. S-1-SC-34576 (**pp. 1857-58 of 1863**), downloaded December 6, 2024;

Exhibit DS3 - New Mexico Supreme Court No.S-1-SC-37501 (**p. 1860 of 1863**), downloaded December 6, 2024

Exhibit DS4 - New Mexico Supreme Court No. S-1-SC-37887 (**p. 1861 of 1863**), downloaded December 6, 2024;

Exhibit DS5 - New Mexico Supreme Court No. S-1-SC-38359 (**p. 1862 of 1863**), downloaded December 6, 2024;

Exhibit DS6 - New Mexico Supreme Court No. S-1-SC-40134 (**p. 1863 of 1863**), downloaded December 6, 2024.