IN THE NINTH JUDICIAL DISTRICT

STATE OF NEW MEXICO, COUNTY OF CURRY

STATE OF NEW MEXICO,

                Plaintiff,

vs.

ALBERT JOSE RAMIREZ

DOB: ████████, 1988
SOC: ███████
STN: 050100070340

          Defendant.

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

07 JUL 20 PM 12: 15

*Dianna Hunt*
CLERK, DISTRICT COURT

No. D-0905-CR-0200700_434

TEDDY L. HARTLEY

Crime(s):  **Count 1:**  **First Degree Murder (Willful and Deliberate)**
              **Count 2:**  **Tampering with Evidence**
              **Count 3:**  **Tampering with Evidence**

## GRAND JURY INDICTMENT

THE GRAND JURY CHARGES:

Count 1: **First Degree Murder (Willful and Deliberate),** in that on or about, July 12, 2007, in Curry County, New Mexico, the above-named defendant did kill Eladio Robledo, with the deliberate intention to take away the life of or any other human being, N.M.S.A. 1978, contrary to Section 30-2-1(A)(1), a capital offense.

• Count 2: **Tampering with Evidence (Third Degree Felony),** in that on or about, July 12, 2007, in Curry County, New Mexico, the above-named defendant did destroy/change/hide/fabricate/place a firearm with the intent to prevent the apprehension,

**EXHIBIT**

**A**

prosecution or conviction of Albert Ramirez OR create the false impression that another person had committed a crime, NMSA 1978, contrary to Section 30-22-05, a third degree felony.

Count 3: **Tampering with Evidence (Third Degree Felony)**, in that on or about, July 12, 2007, in Curry County, New Mexico, the above-named defendant did destroy/change/hide/fabricate/place jeans with the intent to prevent the apprehension, prosecution or conviction of Albert Ramirez OR create the false impression that another person had committed a crime, NMSA 1978, contrary to Section 30-22-05, a third degree felony.

The names of the witnesses upon whose testimony this Indictment is based are as follows:

1. Brent Aguilar, Clovis Police Department, Clovis, NM 88101;
2. Debra Ramirez, 512 W. 6th Street, Clovis, NM 88101;
3. Ivan Vasquez, 714 W 13th #A, Clovis, NM 88101;
4. Roger Grah, Clovis Police Department, 300 Connelly, Clovis, NM 88101;
5. Sam Saiz, 515 W. 6th, Clovis, NM 88101;
6. Sandy Loomis, Curry County Sheriff's Office, 700 N Main, Clovis, NM 88101;
7. Waldo Casarez, Curry County Sheriff's Department, Clovis, NM 88101;
8. James Patterson, 910 East 6th Street OR 1100 Wallace, Clovis, NM 88101

I hereby certify that the foregoing Indictment is a _Jrue_ Bill.

_Jrudy McLeek_
FOREMAN

DATED: 7-20-07

State vs. Albert Jose Ramirez
Grand Jury Indictment
No.

Defendant's Address: ████████
Defendant's S.S.N.: ████████ 3
D.A. Case Number: 07-471
Magistrate Number: M-12-FR-200700389

APPROVED:

_Matth Chen L_ , D. A.

State vs. Albert Jose Ramirez
Grand Jury Indictment
No.

STATE OF NEW MEXICO
IN THE NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY

STATE OF NEW MEXICO,

            Plaintiff,

v.

**ALBERT JOSE RAMIREZ**
DOB:            1988
SSN:      7793
STN: 050100070340

            Defendant.

FILED IN OPEN COURT
this _26_ day of _Jan_ ,20_09_
at __:__ o'clock __P__ m

_Teddy Hurtle_

**TEDDY L. HARTLEY**
District Judge

No.  D-0905-CR-0200700434
      D-0905-CR-0200800748

## GUILTY PLEA AGREEMENT

        The State of New Mexico and the defendant hereby agree to the following disposition of this

case:

**Plea:**  The defendant agrees to plead guilty to the following offenses:

In **D-0905-CR-0200700434:** Count I: First Degree Murder (Willful and Deliberate);

In **D-0905-CR-0200800748:** Count I: Battery Upon a Peace Officer; Count II: Assault on a Peace

Officer.

**Terms:**  *This agreement is made subject to the following conditions:*

        1.  Agreement as to sentence.  That the following disposition will be made of the charges:

In **D-0905-CR-0200700434:**  Count I:  The Defendant shall be sentenced to Life Imprisonment.

In **D-0905-CR-0200800748:**  Count I:  The Defendant shall be sentenced to eighteen (18) months;

                        Count II: The Defendant shall be sentenced to three hundred and sixty

                        four (364) days.

Cause numbers D-0905-CR-0200700434 and D-0905-CR-0200800748 shall run concurrently.

RP 300

**EXHIBIT**

**B**

Defendant will pay $5.00 for the "Domestic Violence Offender Treatment Fee", pursuant to §34-15-1, NMSA, 1978.

Defendant shall provide a sample of biological material sufficient for DNA testing and pay a $100 DNA testing fee to the New Mexico Department of Corrections for the combined DNA Index System (CODIS) pursuant to the DNA Identification Act §29-16-1, N.M.S.A. 1978 Compilation, as amended.

1.     That the Ninth Judicial District Attorney will make no agreements with regard to recommendations for sentence other than contained herein. That, specifically, the Ninth Judicial District Attorney will file any applicable habitual criminal charge permitted by New Mexico law.

2.     **Additional charges.** None

In D-0905-CR-0200700434: Count II: Tampering with Evidence and Count III.Tampering with Evidence are hereby dismissed. Additionally, Magistrate Cause Number M-12-MR-0200800638 shall be dismissed.

3.     **Restitution:** The defendant agrees to pay restitution as follows: Restitution will be ordered in accordance with §31-17-1, NMSA 1978. The Defendant agrees to make restitution on all charges whether or not dismissed or not filed pursuant to this agreement.

4.     **Effect on charging document.** That this Agreement, unless rejected or withdrawn, serves to amend the Indictment, Information, or Criminal Complaint to charge the offense to which the defendant pleads without the filing of any additional pleading. If the plea is rejected or withdrawn, the original charges are automatically reinstated.

5.     **Wavier of defenses and appeal.** Unless this plea is rejected or withdrawn, the

2

RP 301

defendant hereby gives up any and all motions, defenses, objections or requests which he has made or raised, or could assert hereafter, to the Court's entry of judgment against him and imposition of a sentence consistent with this agreement. The defendant waives the right to appeal the conviction that results from the entry of this plea agreement.

6.     **Withdrawal permitted if agreement rejected.** If after reviewing this Agreement and any presentence report, the Court concludes that any of its provisions are unacceptable, the Court will allow the withdrawal of the plea, and this Agreement shall be null and void. If the plea is withdrawn, neither the plea nor any statements arising from the plea proceedings shall be admissible as evidence against the defendant in any criminal proceedings.

I understand that entry of this plea agreement may have an effect upon my immigration or ~~N/A~~ naturalization status.

I have read and understand the above. I have discussed the case and my constitutional rights with my attorney. I understand that by pleading guilty I will be giving up my right to a trial by jury, to confront, cross-examine, and compel the attendance of witnesses, and my privilege against self-incrimination. ~~I understand that if the court grants me probation, a suspended sentence, a deferred sentence or a conditional discharge, the terms and conditions thereof are subject to modification in the event that I violate any of the terms or conditions imposed.~~ N/A I agree to enter my plea as indicated above on the terms and conditions set forth herein.

01-26-09
_____
DATE

*Alberto Ramirez*
_____
DEFENDANT

3

RP 302

## DEFENSE COUNSEL REVIEW

I have reviewed the plea and disposition agreement with my client. I have discussed this case with my client and I have advised my client of my client's constitutional rights and all possible defenses.

DATE 1-26-09

DEFENSE COUNSEL

## PROSECUTOR REVIEW

I have reviewed this matter and approve this plea and disposition agreement and find that it is appropriate and consistent with the best interests of justice.

DATE 1/26/2009

PROSECUTOR

## DISTRICT COURT APPROVAL

The defendant personally appearing before me and I have concluded as follows:

That the defendant understands the charges set forth in the Indictment.

That the defendant understands the range of possible sentence for the offenses charged, from a suspended sentence to a maximum of life + 9½ years

That the defendant understands the following constitutional rights which the defendant gives up by pleading guilty:

(a) the right to trial by jury, if any.

(b) the right to the assistance of an attorney at all stages of the proceedings, and to an appointed attorney, to be furnished free of charge, if the defendant cannot afford one.

(c) the right to confront the witnesses against him and to cross-examine them as to the truthfulness of their testimony.

(d) the right to present evidence on his own behalf, and to have the state compel witnesses of his choosing to appear and testify.

(e) the right to remain silent and to be presumed innocent until proven guilty beyond a reasonable doubt.

4

RP 303

4.   That the defendant wishes to give up the constitutional rights of which the defendant has been advised.

That there exists a basis in fact for believing the   defendant is guilty of the offenses charged and that an independent record for such factual basis has been made.

That the defendant and the prosecutor have entered into a plea agreement and that the defendant understands and consents to its terms.

That the plea is voluntary and not the result of force, threats or promises other than a plea agreement.

That under the circumstances, it is reasonable that the defendant plead guilty.

That the defendant understands that a conviction may have an effect upon the defendant's immigration or naturalization status.

On the basis of these findings, I conclude that the defendant knowingly, voluntarily and intelligently pleads guilty to the above charges and accepts such plea. These findings shall be made a part of the record in the above-styled case.

_____    _____
District Judge                              Date   1-26-09

MEC/jrg

5

RP 304

01/27/2009 10:19    5057693198                                    PAGE  02/04

NINTH [illegible]
CURRY COUNTY [illegible]
FILED DISTRICT COURT

STATE OF NEW MEXICO
IN THE NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY

2009 FEB -3  PM 3: 34

STATE OF NEW MEXICO,

        Plaintiff,

v.

ALBERT JOSE RAMIREZ                          No.  D-0905-CR-0200700434
DOB: ▮▮▮▮▮ 1988                                   D-0905-CR-0200800748
SSN: ▮▮▮▮▮ 7793
STN: 050100070340

        Defendant.

### JUDGMENT, SENTENCE AND COMMITMENT

THIS MATTER having come before the Court on the 26th day of January, 2009, before the

Honorable Teddy L. Hartley, District Judge, Plaintiff appearing by Matthew Chandler, District

Attorney, and Defendant appearing personally and by his attorney, Brett Carter, and the Defendant

having been convicted on the 26th day of January, 2009, pursuant to a guilty plea agreement accepted

and recorded by the Court of the following crimes: :

    **D-0905-CR-0200700434:**    COUNT I: FIRST DEGREE MURDER;

    **D-0905-CR-0200800748:**    COUNT I: BATTERY ON A PEACE OFFICER; a 4th Felony. *βγ*

                          COUNT II: ASSAULT ON A PEACE OFFICER, a misdemeanor.

Defendant is hereby found and adjudged guilty and convicted of said crimes, and is sentenced to be

imprisoned by the Department of Corrections for the following terms:.

    **D-0905-CR-0200700434:**    COUNT I: FIRST DEGREE MURDER- Life Imprisonment;

State v. Albert Ramirez
Judgment, Sentence and Commitment
Adult .frm

RP 305

EXHIBIT

C

01/27/2009  18:19   5057693198                                          PAGE  03/04

**D-0905-CR-0200800748:**   COUNT I: BATTERY ON A PEACE OFFICER- eighteen (18) months;

COUNT II: ASSAULT ON A PEACE OFFICER- three hundred and sixty four (364) days.

IT IS FURTHER ORDERED that Count I and Count II in cause number D-0905-CR-0200800748 shall run <u>concurrent</u> with Count I in cause number D-0905-CR-0200700434.

In D-0905-CR-0200700434: Count II: Tampering with Evidence and Count III: Tampering with Evidence are hereby dismissed per the plea agreement.

IT IS THEREFORE ORDERED that the defendant be committed to the Department of Corrections for a total term of **Life Imprisonment**.

Defendant shall provide a sample of biological material sufficient for DNA testing and pay a one hundred dollar ($100.00) DNA testing fee to the New Mexico Department of Corrections for the Combined DNA Index System (CODIS) pursuant to the DNA Identification Act pursuant to NMSA 1978, § 29-16-1; and shall pay five dollars ($5.00) for the domestic violence offender treatment fee, pursuant to NMSA 1978, § 31-12-11.

If the defendant is ever granted parole, defendant shall undergo a minimum period of parole of five (5) years pursuant to NMSA 1978, § 31-21-10(B).

Defendant shall receive credit for five hundred and sixty-one (561) days pre-sentence confinement (from July 15, 2007 to January 26, 2009), and for post-sentence confinement from January 27, 2009 until delivery to the Department of Corrections.

Therefore, You, the Sheriff of Curry County, are hereby commanded to take Defendant in

State v. Albert Ramirez
Judgment, Sentence and Commitment
MEC/jg

Pg 2 of 3



custody and deliver Albert Ramirez, together with this commitment, to the Department of Corrections, which is hereby commanded to receive and confine him for the above term.


_____

TEDDY L. HARTLEY
DISTRICT JUDGE, DIVISION III

HAVE SEEN:

_____

MATTHEW CHANDLER
DISTRICT ATTORNEY
ATTORNEY FOR PLAINTIFF

_____

BRETT CARTER
PUBLIC DEFENDER
ATTORNEY FOR DEFENDANT

State v. Albert Ramirez
Judgment, Sentence and Commitment
MFC/jlz

Pg 3 of 3

RP 307

STATE OF NEW MEXICO
IN THE NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY

2009 FEB 25 P 1: 39

STATE OF NEW MEXICO,
                    Plaintiff,                         No.: D-0905-CR-0200700434
                                                             D-0905-CR-0200800748

vs.

ALBERT JOSE RAMIREZ,
                    Defendant.

## MOTION TO WITHDRAW PLEA OF GUILTY

   COMES NOW Defendant Albert Jose Ramirez, by and through his attorneys, and

seeks leave of the Court to withdraw his plea of guilty entered in the above-entitled cause on

January 26, 2009, and as grounds therefore would show:

1.  Defendant was charged with one count of first degree murder and two counts of

   tampering with evidence in cause number D-0905-CR-0200700434.

2.  Defendant was charged with two counts of battery on a peace officer in cause number D-

   0905-CR-0200800748.

3.  Defendant was also charged with one count of assault in Curry County Magistrate Court.

4.  Defendant was arrested July 15, 2007 and has been in custody since his arrest.

5.  An order finding defendant currently incompetent to stand trial and committing

   Defendant to the Las Vegas Medical Center for treatment was filed April 17, 2008.

   Defendant was admitted to that facility on June 5, 2008. On August 18, 2008, The Las

   Vegas Medical Center prepared a final report finding defendant competent to stand trial.

RP 309

EXHIBIT
D

6.    A competency hearing was set based upon the report submitted by the Las Vegas
       Medical Center. After hearing the testimony of Dr. Burness the court found the
       defendant competent to stand trial. The court ordered the matter be set for jury trial.

7.    Attorneys for the defendant then interviewed prosecution witnesses, reviewed the
       evidence and visited the crime scene and then discussed the case with the defendant.
       Defendant requested defense counsel contact the prosecutor with a verbal plea offer of
       twenty five years in custody. That offer was relayed to Chief Deputy Andrea Reed. The
       defendant's offer was rejected by the state the Friday before trial.

8.    The trial for first degree murder started on January 26, 2009. Counsel for the state and
       defendant completed voir dire.  Several jurors then had to be independently examined.
       After lunch the defendant wanted to discuss the case with his brother. During a break the
       defendant was allowed to meet with his brother. Upon returning to the court room the
       defendant stated he wanted to plea. Defendant's counsel roet with the state and requested
       the offer in writing as required by Rule 5-304 NMRA. While the state was putting the
       offer in writing the defendant and his attorneys met. The state then handed a written
       offer to the defendant's counsel. The offer was read to defendant and after having
       discussed the agreement the parties signed it. A plea hearing was heard before the
       Honorable Teddy Hartley. The defendant entered a plea to First Degree Murder, Battery
       on a Peace Officer and Assault on a Peace Officer. The charges were to run concurrent.
       In addition to one count of Battery on a Peace Officer being reduced to a misdemeanor,
       the two counts of tampering were dismissed and an assault charge was dismissed. The
       court after inquiry of the defendant accepted the plea and sentenced the defendant to life
       in prison, with parole eligibility after thirty years.



RP 310

9.     The Judgment, Sentence and Commitment was filed February 3, 2009. The defendant was transported to the New Mexico Department of Corrections.

10.    Counsel for defendant was contacted on February 2 and 3, 2009 and defendant left a message that he wanted to withdraw his plea. Counsel for defendant was then contacted by phone and defendant stated, "He wanted to withdraw his plea since he was not in the right state of mind when he entered the plea." Upon further inquiry by counsel, Defendant stated he was under considerable stress due to the trial, his aunt was severely ill and he was suffering from a mental illness.

11.    The defendant timely brought his motion to withdraw his plea by leaving a message with his attorneys that he desired to withdraw his plea.

12.    Defendant's plea of guilty entered on January 26, 2009 in the above-entitled cause was neither knowing nor intelligent due the stress defendant was under.

13.    Due to defendant's mental health issues the court should allow the defendant to withdraw his plea to avoid a manifest injustice.

14.    There is no prejudice to the state by allowing the withdrawal of the plea. All of the evidence and witnesses are still available and there is no prejudice or harm to the states ability to try the defendant by allowing the plea to be withdrawn.

15.    Entering a plea of guilty requires the waiver of many fundamental constitutional rights. This Court is required to "indulge every reasonable presumption against waiver of fundamental constitutional rights." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).

RP 311

16.   Finally, Defendant, by and through counsel urges this Court to keep foremost in its

considerations the New Mexico Supreme Court's recent declaration: "An essential

function of the courts is to 'serve as the ultimate guardians of an indigent defendant's

constitutional rights'...courts "must enforce the rights guaranteed by the constitution

and further the intent of its provisions," *State v. Young*, 172 P.3d 138, 142 (2007).

WHEREFORE, Defendant respectfully requests that he be permitted to withdraw his plea

of guilty in the above-entitled matter and reset the matter for a jury trial and for any other relief

the court deems appropriate.

Respectfully submitted,

BRETT J. CARTER
District Public Defender

I HEREBY CERTIFY THAT A COPY OF THE FOREGOING WAS DELIVERED/MAILED TO OPPOSING
COUNSEL ON THE DATE OF FILING STAMPED ABOVE.

PUBLIC DEFENDER DEPARTMENT

RP 312

08/29 AUG. 29. 2011 4:31PM FAX 57 PUBLIC DEFENDER DEPT Attorney    . NO. 468    P. 2/2 002/002

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

2011 SEP -6  PM 3: 38

*Shelly Barron*
CLERK

STATE OF NEW MEXICO
COUNTY OF CURRY
IN THE NINTH JUDICIAL DISTRICT COURT

STATE OF NEW MEXICO,

Plaintiff,

v.

ALBERT JOSE RAMIREZ,

Defendant.

No. D-0905-CR-0200700434
D-0905-CR-0200800748

## ORDER

THIS MATTER coming on before the Court this 26th day of August, 2011, the State appearing by Brian Stover, Deputy District Attorney, and Defendant appearing personally and by attorney, Brett Carter, Assistant Public Defender, and the Court being well and sufficiently advised in the premises:

IT IS HEREBY ORDERED that the Defendant is allowed to withdraw from the plea in the above-mentioned cause numbers filed on January 26, 2009.

TEDDY L. HARTLEY
DISTRICT JUDGE

HAVE SEEN:

BRIAN STOVER
DEPUTY DISTRICT ATTORNEY

BRETT CARTER
ATTORNEY FOR THE DEFENSE

D.A. No. 09AP-04-471
BS/jrg

**EXHIBIT**

**E**

RP-3169

08/29/2011 MON 16:33    [JOB NO. 6588]    @002

STATE OF NEW MEXICO
IN THE NINTH JUDICIAL DISTRICT
COUNTY OF CURRY

2013 OCT 11 PM 3:05

STATE OF NEW MEXICO,

       Plaintiff,

v.

ALBERT RAMIREZ             No. D-0905-CR-0200700434

       Defendant.

## SPECIAL VERDICT FORM

Do you unanimously find beyond a reasonable doubt that a firearm was used in the commission of the murder as charged in Count I?

_YES_ (Yes or No)

FOREPERSON   10-11-13

**EXHIBIT**

**F**

STATE OF NEW MEXICO
IN THE NINTH JUDICIAL DISTRICT
COUNTY OF CURRY

2013 OCT 11  PM 3:05

STATE OF NEW MEXICO,

      Plaintiff,

v.

ALBERT JOSE RAMIREZ,                    No. D-0905-CR-0200700434

      Defendant.

<u>VERDICT</u>

We find the defendant, Albert Ramirez, GUILTY of COUNT I:  FIRST DEGREE MURDER.

FOREPERSON _Lisa Labrum_

DATED: 10-11-13

STATE OF NEW MEXICO
IN THE NINTH JUDICIAL DISTRICT
COUNTY OF CURRY

2013 OCT 11  PM 3:05

STATE OF NEW MEXICO,

              Plaintiff,

v.

ALBERT JOSE RAMIREZ,                          No.  D-0905-CR-0200700434

              Defendant.

## VERDICT

    We find the defendant, Albert Ramirez, GUILTY of COUNT II:  TAMPERING WITH

EVIDENCE.

FOREPERSON

DATED:  10-11-13

STATE OF NEW MEXICO
IN THE NINTH JUDICIAL DISTRICT
COUNTY OF CURRY

STATE OF NEW MEXICO,

      Plaintiff,

v.

ALBERT JOSE RAMIREZ,                No.  D-0905-CR-0200700434

      Defendant.

## <u>VERDICT</u>

We find the defendant, Albert Ramirez, GUILTY of COUNT III:  TAMPERING WITH

EVIDENCE.

_Lisa Labour_
FOREPERSON

DATED:  10-11-13

STATE OF NEW MEXICO
COUNTY OF CURRY
FILED IN MY OFFICE

OCT 1 1 2013
AM 11:40

Clerk District Court

Jury Instruction No. ___1___

The law governing this case is contained in these instructions, and it is your

duty to follow that law.  You must consider these instructions as a whole.  You must not pick out

one instruction or part of an instruction and disregard others.

**EXHIBIT**

**G**

Jury Instruction No. _____*1*_____

   The law presumes the Defendant to be innocent unless and until you are satisfied beyond a reasonable doubt of his guilt.

   The burden is always on the State to prove guilt beyond a reasonable doubt. It is not required that the state prove guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense--the kind of doubt that would make a reasonable person hesitate to act in the graver and more important affairs of life.

Jury Instruction No. ___3___

Each crime charged in the information should be considered separately.

Jury Instruction No. _____ 4 _____

For you to find the Defendant guilty of First Degree Murder by a deliberate killing as charged in Count I, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1.    The Defendant killed Eladio Robledo;

2.    The killing was with the deliberate intention to take away the life of Eladio Robledo;

3.    This happened in New Mexico on or about the 12th day of July, 2007.

A deliberate intention refers to the state of mind of the Defendant. A deliberate intention may be inferred from all of the facts and circumstances of the killing. The word deliberate means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action. A calculated judgment and decision may be arrived at in a short period of time. A mere unconsidered and rash impulse, even though it includes an intent to kill, is not a deliberate intention to kill. To constitute a deliberate killing, the slayer must weigh and consider the question of killing and his reasons for and against such a choice.

Jury Instruction No. 5

       For you to find the Defendant guilty of Second Degree Murder, as charged in Count 1, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

    1.    The Defendant killed Eladio Robledo;

    2.    The Defendant knew that his acts created a strong probability of death or great bodily harm to Eladio Robledo;

    3.    The Defendant did not act as a result of sufficient provocation;

    4.    This happened in New Mexico on or about the 12th day of July, 2007.

Jury Instruction No. _6_

        For you to find the Defendant guilty of Voluntary Manslaughter, as charged in Count 1, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

        1.    The Defendant killed Eladio Robledo;

        2.    The Defendant knew that his acts created a strong probability of death or great bodily harm to Eladio Robledo;

        3.    This happened in New Mexico on or about the 12th day of July, 2007.

        The difference between second degree murder and voluntary manslaughter is sufficient provocation. In second degree murder, the defendant kills without having been sufficiently provoked, that is, without sufficient provocation. In the case of voluntary manslaughter the defendant kills after having been sufficiently provoked, that is, as a result of sufficient provocation. Sufficient provocation reduces second degree murder to voluntary manslaughter.

Jury Instruction No.   7

     "Sufficient provocation" can be any action, conduct or circumstances which arouse anger, rage, fear, sudden resentment, terror or other extreme emotions. The provocation must be such as would affect the ability to reason and to cause a temporary loss of self-control in an ordinary person of average disposition. The "provocation" is not sufficient if an ordinary person would have cooled off before acting.

Jury Instruction No. _8_

        Great bodily harm means an injury to a person which creates a high probability of death.

Jury Instruction No. _____9_____

You have been instructed on the crimes of First Degree Murder, Second Degree Murder and Voluntary Manslaughter. You must consider each of these crimes. You should be sure that you fully understand the elements of each crime before you deliberate further.

You will then discuss and decide whether the Defendant is guilty of First Degree Murder. If you unanimously agree that the Defendant is guilty of First Degree Murder, you will return a verdict of guilty of First Degree Murder. If you do not agree, you should discuss the reasons why there is a disagreement.

If, after reasonable deliberation, you do not agree that the Defendant is guilty of First Degree Murder you should move to a discussion of Second Degree Murder. If you unanimously agree that the Defendant is guilty of Second Degree Murder, you will return a verdict of guilty of Second Degree Murder. If you do not agree you should discuss the reasons why there is a disagreement.

If, after reasonable deliberation, you do not agree that the Defendant is guilty of Second Degree Murder you should move to a discussion of Voluntary Manslaughter. If you unanimously agree that the Defendant is guilty of Voluntary Manslaughter, you will return a verdict of guilty of Voluntary Manslaughter.

You may not find the Defendant guilty of more than one of the foregoing crimes. If you have a reasonable doubt as to whether the Defendant committed any one of the crimes, you must determine that he is not guilty of that crime. If you find him not guilty of all of these crimes, you must return a verdict of not guilty.

Jury Instruction No. _____ 10 _____

        For you to find the Defendant guilty of Tampering with Evidence as charged in Count II, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

     1.    The Defendant hid or placed a firearm;

     2.    The Defendant intended to prevent the apprehension, prosecution or conviction of himself;

     3.    This happened in New Mexico on or about the 12th day of July, 2007.

Jury Instruction No. _____ ll _____

        For you to find the Defendant guilty of Tampering with Evidence as charged in Count III, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

    1.    The Defendant hid or placed clothing in a dumpster;

    2.    The Defendant intended to prevent the apprehension, prosecution or conviction of himself;

    3.    This happened in New Mexico on or about the 12th day of July, 2007.

Jury Instruction No. ___12___

You are the sole judges of the facts in this case. It is your duty to determine the facts from the evidence produced here in court. Your verdict should not be based on speculation, guess or conjecture. Neither sympathy nor prejudice should influence your verdict. You are to apply the law as stated in these instructions to the facts as you find them, and in this way decide the case.

Jury Instruction No. _____ 13 _____

        You alone are the judges of the credibility of the witnesses and the weight to be given to the testimony of each of them.  In determining the credit to be given to any witness, you should take into account the witness's truthfulness or untruthfulness,  ability and opportunity to observe, memory, manner while testifying, any interest, bias or prejudice the witness may have and the reasonableness of the witness's testimony considered in the light of all the evidence in the case.

Jury Instruction No. ___14___

An expert witness is a witness who, by knowledge, skill, experience, training or education, has become expert in any subject. An expert witness may be permitted to state an opinion as to that subject.

You should consider each expert opinion and the reasons stated for the opinion, giving them such weight as you think they deserve. You may reject an opinion entirely if you conclude that it is unsound.

Jury Instruction No. 15

You must not concern yourself with the consequences of your verdict.

Jury Instruction No. __16__

Your verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agrees. Your verdict must be unanimous.

It is your duty to consult with one another and try to reach an agreement. However, you are not required to give up your individual judgment. Each of you must decide the case for yourself, but you must do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own view and change your opinion if you are convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of reaching a verdict.

You are judges- judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.

Jury Instruction No. _____17_____

In this case as to Counts II and III, there are two possible verdicts as to each crime charged:

1.    guilty; and

2.    not guilty.

Only one of the possible verdicts may be signed by you as to each charge. If you have agreed upon one verdict as to a particular charge, that form of verdict is the only form to be signed as to that charge. The other form as to that charge is to be left unsigned.

Jury Instruction No. __18__

       If you find the Defendant guilty of Count 1, then you must determine if the crime was committed with the use of a firearm and report your determination. You must complete the special form to indicate your finding. With respect to any crime, for you to make a finding of "yes", the State must prove to your satisfaction beyond a reasonable doubt that the crime was committed with the use of a firearm.

Jury Instruction No. __19__

I will now ask you to retire to the jury room to begin your deliberations. You will be provided a copy of the jury instructions and the exhibits introduced as evidence [will be made available to you].

Prior to beginning your deliberations you will need to select one of you to act as foreperson. That person will preside over your deliberations and will speak for the jury here in court.

Forms of verdict have been prepared for your use.

You will take these forms to the jury room; when you have reached unanimous agreement as to your verdict, the foreperson will sign the forms which express your verdict. You will then return all forms of verdict, these instructions and any exhibits to the courtroom.

_Margaret McDonald_ and _Ruth Schell_ are alternate jurors in this case and therefore will need to remain in the courtroom.

Given _____

Refused _____

State Requested Instruction No. _____

U.J.I. 14-6020

STATE OF NEW MEXICO
IN THE NINTH JUDICIAL DISTRICT
COUNTY OF CURRY

STATE OF NEW MEXICO,

        Plaintiff,

v.

ALBERT JOSE RAMIREZ,                 No.  D-0905-CR-0200700434

        Defendant.

## VERDICT

    We find the defendant, Albert Ramirez, GUILTY of COUNT I:  VOLUNTARY

MANSLAUGHTER.


                                        _____

                                        FOREPERSON

                                        DATED:

STATE OF NEW MEXICO
IN THE NINTH JUDICIAL DISTRICT
COUNTY OF CURRY

STATE OF NEW MEXICO,

      Plaintiff,

v.

ALBERT RAMIREZ                    No.  D-0905-CR-0200700434

      Defendant.

## VERDICT

We find the defendant, Albert Ramirez, NOT GUILTY of COUNT I.


_____
FOREPERSON

DATED:

STATE OF NEW MEXICO
IN THE NINTH JUDICIAL DISTRICT
COUNTY OF CURRY

STATE OF NEW MEXICO,

      Plaintiff,

v.

ALBERT RAMIREZ                                        No. D-0905-CR-0200700434

      Defendant.

## VERDICT

We find the defendant, Albert Ramirez, NOT GUILTY of COUNT II: TAMPERING WITH EVIDENCE.


                      _____

                      FOREPERSON

                      DATED:

STATE OF NEW MEXICO
IN THE NINTH JUDICIAL DISTRICT
COUNTY OF CURRY

STATE OF NEW MEXICO,

          Plaintiff,

v.

ALBERT RAMIREZ

          Defendant.

No. D-0905-CR-0200700434

## VERDICT

We find the defendant, Albert Ramirez, NOT GUILTY of COUNT III: TAMPERING WITH EVIDENCE.

_____
FOREPERSON

DATED:

STATE OF NEW MEXICO
IN THE NINTH JUDICIAL DISTRICT
COUNTY OF CURRY

STATE OF NEW MEXICO,

      Plaintiff,

v.

ALBERT JOSE RAMIREZ,               No.  D-0905-CR-0200700434

      Defendant.

## <u>VERDICT</u>

We find the defendant, Albert Ramirez, GUILTY of COUNT I:  SECOND DEGREE

MURDER.


_____

FOREPERSON

DATED:

NINTH JUDICIAL DISTRICT
CURRY COUNTY NM
FILED IN MY OFFICE

2014 JAN -8  AM II: 11

*Shelly Barger*
CLERK DISTRICT COURT RT

STATE OF NEW MEXICO
COUNTY OF CURRY
IN THE NINTH JUDICIAL DISTRICT COURT

STATE OF NEW MEXICO,

    Plaintiff,

v.

**ALBERT JOSE RAMIREZ,**
DOB: ▮▮▮▮▮
SOC: ▮▮▮▮▮
STN: 050100070340

    Defendant.

No. D-0905-CR-0200700434

## JUDGMENT, SENTENCE AND COMMITMENT

  THIS MATTER coming on for hearing on January 8, 2014, before the Honorable Teddy L. Hartley, District Judge, Plaintiff appearing by Matthew Chandler, District Attorney, and Defendant appearing personally and by his attorney, Jesse R. Cosby, Attorney at Law, the Defendant having been convicted on October 11, 2013, pursuant to guilty verdicts by the jury accepted and recorded by the Court of the following crime(s):

  **Count 1: [0001], Murder in the first degree (willful & deliberate), contrary to §30-02-01(A)(1), NMSA 1978.**

  **Count 2: [4230], Tampering with evidence (highest crime a capital, first or second degree felony), a third degree felony, contrary to §30-22-05, NMSA 1978.**

  **Count 3: [4230], Tampering with evidence (highest crime a capital, first or second degree felony), a third degree felony, contrary to §30-22-05, NMSA 1978.**

**EXHIBIT**

**H**

Defendant is hereby found and adjudged guilty and convicted of said crime(s). and is sentenced to be imprisoned by the Department of Corrections for the following terms:

As to Count 1. a term of life imprisonment.

As to Count 2, a term of three (3) years.

As to Count 3, a term of three (3) years.

Counts 1, 2, and 3, shall run consecutively, one after the other, for a total term of life imprisonment, plus six (6) years. *mental and physical health as available.* *Dept of Corrections should provide mental and physical treatment as available* ~~MC~~

Upon completion of the term provided herein, the Defendant will be subject to release under parole supervision, subject to the statutory provisions relating to condition, supervision and return of parolees.

Therefore, You, the Sheriff of Curry County, are hereby commanded to take Defendant in custody and deliver Albert Jose Ramirez, together with this commitment, to the Department of Corrections, which is hereby commanded to receive him and confine Albert Jose Ramirez for the above term.

Defendant shall receive credit for 2370 days (6 years, 5 months, 25 days) of pre-sentence confinement, from date of arrest on July 15, 2007, until date of sentencing, January 8, 2014, and for post-sentence confinement from January 9, 2014, until delivery to the Department of Corrections.

TEDDY L. HARTLEY
DISTRICT JUDGE

HAVE SEEN:

Matthew Chandler
District Attorney

Jesse R. Cosby
Attorney for Defense

D.A. MC/jwg

IN THE SUPREME COURT
STATE OF NEW MEXICO

**ORIGINAL**

STATE OF NEW MEXICO,

     Plaintiff-Appellee,

                          1 4 / 3 4 5 7 6

v.                               No. _____

                          Curry County No. CR-2007-434

ALBERT JOSE RAMIREZ,          Honorable Teddy Hartley

     Defendant-Appellant.

## DEFENDANT-APPELLANT'S
## STATEMENT OF ISSUES

SUPREME COURT OF NEW MEXICO
FILED

MAR − 7 2014

*[signature]*

Submitted by:
Jesse R. Cosby, Esq.
JESSE R. COSBY, P.C.
Attorney for Appellant
P. O. Box 3330
Roswell, NM 88202-3330
(575) 625-0516

**EXHIBIT**

I

IN THE SUPREME COURT
STATE OF NEW MEXICO

STATE OF NEW MEXICO,

    Plaintiff-Appellee,

v.                              No. _____
                              Curry County No. CR-2007-434

ALBERT JOSE RAMIREZ,           Honorable Teddy Hartley

    Defendant-Appellant.

## TABLE OF CONTENTS

I.     NATURE OF PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    FACTUAL SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.   LEGAL SUPPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V.    APPELLANT'S ISSUES/UNKNOWN . . . . . . . . . . . . . . . . . . . . . . . . . 9

VI.   TAPED PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

i

IN THE SUPREME COURT
STATE OF NEW MEXICO

STATE OF NEW MEXICO,

    Plaintiff-Appellee,

v.                                                       No. _____
                                          Curry County No. CR-2007-434
ALBERT JOSE RAMIREZ,                      Honorable Teddy Hartley

    Defendant-Appellant.

## TABLE OF AUTHORITIES

Cases; New Mexico
*State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1 . . . . . . . . . . . . . . 8, 9
*State v. Flores*, 2010-NMSC-002, 147 N.M. 542, 226 P.3d 641 . . . . . . . . . . . . . 8
*State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982 . . . . . . . . . . 8, 9
*State v. DeGraff*, 2006-NMSC-011, 139 N.M. 211, 131 P.3d 61 . . . . . . . . . . . 8, 9
*State v. Gallegos*, 2007-NMSC-007, 141 N.M. 185, 152 P.3d 828 . . . . . . . . . . . 9
*State v. Gonzales*, 2007-NMSC-059, 143 N.M. 25, 172 P.3d 162 . . . . . . . . . . . . 7
*State v. Gutierrez*, 2007-NMSC-033, 142 N.M. 1, 162 P.3d 156 . . . . . . . . . . . . . 9
*State v. Quick*, 2009-NMSC-015, 146 N.M. 80, 206 P.3d 985 . . . . . . . . . . . . . . 8
*State v. Reyes*, 2002-NMSC-024, 132 N.M. 576, 52 P.3d 948 . . . . . . . . . . . . . . . 8
*State v. Rojo*, 1999-NMSC-001, 126 N.M. 438, 971 P.2d 829 . . . . . . . . . . . . . . 9
*State v. Saiz*, 2008-NMSC-048, 144 N.M. 663, 191 P.3d 521 . . . . . . . . . . . . . . . 8
*State v. Schoonmaker*, 2005-NMCA-012, 136 N.M. 749, 105 P.3d 302,
    rev'd on other grounds, 2008-NMSC-010, 143 N.M. 373, 176 P.3d 1105 . 8
*State v. Torres*, 2005-NMCA-070, 137 N.M. 607, 113 P.3d 877 . . . . . . . . . . . . . 7
*State v. Urioste*, 2011-NMCA-121, _ N.M. _, 267 P.3d 820 . . . . . . . . . . . . . . . 8
*State v. Wilson*, 1993-NMCA-074, 117 N.M. 11, 868 P.2d 656 . . . . . . . . . . . . . 9

Other Authorities/Rules/Regulations
N.M. Const. art. II, § 14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
N.M. Const. art. V, § 14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ii

IN THE SUPREME COURT
STATE OF NEW MEXICO

STATE OF NEW MEXICO,

    Plaintiff-Appellee,

v.                                                              No. _____
                                                      Curry County No. CR-2007-434
ALBERT JOSE RAMIREZ,                                    Honorable Teddy Hartley

    Defendant-Appellant.

## STATEMENT OF ISSUES
## I. <u>NATURE OF PROCEEDINGS</u>

This appeal is from the Ninth Judicial District Court in a criminal matter
wherein the Appellant was convicted of murder in the first degree and two counts of
tampering with evidence.

This appeal concerns a capital case and is directly to the N.M. Supreme Court
pursuant to Article VI, Section 2 of the New Mexico Constitution.

Notice of Appeal was filed February 7, 2014 and this Statement of Issues is
timely if filed on or before March 9, 2014.

The Appellant is indigent and will be represented in this matter by the New
Mexico Public Defender Department Appellate Division. A copy of the Order

1

Appointing Appellate Counsel and Granting Free Process is attached hereto as Exhibit A.

This case was previously before this Court on appeal resulting in a mandate allowing the Appellant to withdraw an earlier plea to first degree murder, Cause No. 31,905 decided June 13, 2011.

## II. FACTUAL SUMMARY

On or about July 12, 2007, in Clovis, New Mexico, a man named Elado Robledo was shot and killed outside his residence at 512 W. Sixth St. He shared the home with his wife/girlfriend, Debra Ramirez, who is the Appellant's biological mother. The Appellant lived at the house, off and on, unless he had been kicked out for disrupting the couple. At or near the time of the shooting, the Appellant had been so removed, but some of the Appellant's belongings remained at the house. There was some disagreement as to whether the mother had continued to permit the Appellant in the home over the deceased's objections.

Appellant, aged 18 at the time of the incident, was a troubled youth with a checkered history of placements at various juvenile foster care and treatment locales. For the most part, he would live with either foster care providers or other family members until he became frustrated or ejected and then either returned home, moved in temporarily with others or lived on the streets.

2

A neighbor, Sam Saiz, Jr., testified he had witnessed the dispute between Appellant and the deceased and saw the Appellant shoot the deceased as he was on the ground. The Appellant's mother allegedly witnessed some or all of the incident, but she failed to appear at trial, though subpoenaed by the State.

A person driving by also witnessed portions of the incident. She testified as to the assailant's clothing and what she'd seen in her mirror as she passed by. Her description of clothing was somewhat inconsistent with the neighbor's description. Both were a little inconsistent with clothing later found in a trash bin in an alley where the Appellant had been seen to flee.

The police located a shoe of the Appellant and a pair of shorts. They subsequently located clothing in a trash bin/dumpster in an alleyway several blocks to the north of the scene. No firearm was located.

The Appellant was arrested a few days after the incident at an acquaintance's house. His socks were seized as were his other clothes.

The Appellant called his relative from the Curry County Detention Center after his arrest. These calls were monitored and recorded. The police intercepted the Appellant telling his relative to go to an area behind a business to remove a "ban-ban", which the Appellant later admitted during his testimony was the gun he'd used in self-defense during the shooting.

3

The disposition of the clothes and the firearm were the basis of the two counts of tampering with evidence. Motions to either merge or dismiss at least one of the two counts were denied.

Before trial, prior counsel had challenged the Appellant's competency to stand trial. One psychologist, Maxann Schwartz, Ph.D., determined he was incompetent. He was transferred to the State Hospital in Las Vegas for treatment to competency. He was found to be malingering and presumptively competent, but difficult to evaluate due to refusal to cooperate. He was evaluated again after trial counsel was appointed following remanded on appeal, and was found to be competent to stand trial by Joanne Burness, Ph.D.

The Appellant was difficult to represent as he continually refused to communicate, at all. He later would talk, but vacillated between high praises for counsel to verbalized dislike and distrust of counsel. He asserted he was mentally challenged due to prior physical inflictions either caused by altercations at the State Hospital with staff, or at least exacerbated by such incident(s) of physical altercations.

He asserted he had a maligned back that was caused by or lead to a different leg length and that he necessitated crutches and/or other care. He insisted his physical issues should be grounds to keep him from being prosecuted. However, he

4

could not explain how he was able to run several blocks down the alleyways behind the scene after the shooting if he was physically crippled.

At trial, the Appellant behaved poorly. He would rest his head on the table or present as if in pain. He, at one point, tried to stand for a recess, and his leg shackles got caught on a table leg and he tripped. The incident occurred in front of the jury, but the court ruled it was not visible to the jury due to screens being around the court tables and, therefore, not grounds for relief. The leg shackles were ordered removed to avoid another such incident.

The State called its witnesses and established the cause of death as multiple gunshot wounds.

The State put on evidence of prior bad acts of the Appellant, over objection. The State had a firearms dealer testify that the Appellant tried, unsuccessfully, in the near past to acquire a gun. Allegedly, this was to show premeditation.

The State put on testimony of the police that someone had broken a front window at the victim's house and it was supposed to have been done by the Appellant. Again, this was offered, over objection, to establish motive.

The State introduced an incident when the Appellant had smashed his mother's car windshield with his crutches in the last week or so. Again, over objection, this was allowed to show intent and motivation.

5

The Appellant argued, unsuccessfully, these prior bad acts prejudiced his case.

The Appellant took the stand. He testified he'd been attacked by his "stepfather" and had acted in self defense. He asserted his physical circumstances made the attack more threatening to him and that he was aware the deceased owned a firearm and threatened to use it. He had seen something in the deceased's hands at the time of the incident and that there were two distinct episodes of confrontation as the evidence was located in front of a garage and near a car in front of the house. He explained his loss of his shoe(s) and clothing at the scene as the deceased's actions in assaulting him and his efforts to leave.

Upon cross examination, the Appellant began to become unresponsive and then to accuse his lawyer of being ineffective. He verbally chastised counsel for his perceived lack of competence and failure to ask the right questions of witnesses. He was admonished by the court to answer the questions and to quit being disruptive.

The Appellant was convicted of murder (first degree) and two counts of tampering with evidence. This appeal follows.

### III.  ISSUES PRESENTED

1. WAS THE APPELLANT DENIED EFFECTIVE ASSISTANT OF COUNSEL?

This issue is raised by Appellant in the record as a whole.

6

2.    <u>WAS THE EVIDENCE SUFFICIENT FOR TWO COUNTS OF</u> <u>TAMPERING?</u>

The Appellant preserved this issue by motion to dismiss or merge and motion for directed verdict.

3.    <u>WAS THE APPELLANT PREJUDICED BY PRIOR BAD ACTS</u> <u>EVIDENCE?</u>

The Appellant objected to the introduction of prior acts and moved for a mistrial. These motions were denied.

4.    <u>WHETHER COMMENT ON SILENCE DENIED A FAIR TRIAL?</u>

Officer Loomis that he attempted to interview the Appellant. The defense objected and moved for a mistrial for commentary on invocation of rights. The court denied the motion.

## IV. <u>LEGAL SUPPORT</u>

1.    <u>Inefficient Counsel.</u>

An indigent counsel is entitled to effective assistance of counsel; N.M. Const. art. II, § 14; U.S. Const. amend. VI and XIV; *State v. Gonzales*, 2007-NMSC-059, 143 N.M. 25, 172 P.3d 162; *State v. Torres*, 2005-NMCA-070, 137 N.M. 607, 113 P.3d 877.

The Appellant has a right to raise any issue he feels merited; *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1; *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982; *see, State v. Reyes*, 2002-NMSC-024,132 N.M. 576, 52 P.3d 948.

2. <u>Sufficient Evidence/Tampering.</u>

A conviction must be supported by substantial evidence for each and every element of the offense; *State v. Saiz*, 2008-NMSC-048, 144 N.M. 663, 191 P.3d 521; *State v. DeGraff*, 2006-NMSC-011, ¶ 34, 139 N.M. 211, 131 P.3d 61; *cf. State v. Quick*, 2009-NMSC-015, ¶ 25, 146 N.M. 80, 206 P.3d 985; *State v. Urioste*, 2011-NMCA-121, ___ N.M. ___, 267 P.3d 820.

3. <u>Prior Bad Acts.</u>

New Mexico Supreme Court Rule 11-404 prohibits the introduction of specific bad acts except if the acts go to establish notice, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident;  Rule 11-404(B)(2) NMRA.

Evidence to establish a bad character trait and action in conformity therewith is prohibited; *State v. Schoonmaker*, 2005-NMCA-012, 136 N.M. 749, 105 P.3d 302; rev'd on other grounds, 2008-NMSC-010, 143 N.M. 373, 176 P.3d 1105; *State v. Flores*, 2010-NMSC-002, 147 N.M. 542, 226 P.3d 641.

The court must determine, even if admissible, whether the evidence's admission is more prejudicial than probative; Rule 11-403 NMRA; *State v. Gallegos*, 2007-NMSC-007, ¶ 22, 141 N.M. 185, 152 P.3d 828; *cf. State v. Rojo*, 1999-NMSC-001, ¶ 48, 126 N.M. 438, 971 P.2d 829. This decision is reviewable for absence of discretion; *State v. Wilson*, 1993-NMCA-074, 117 N.M. 11, 17, 868 P.2d 656, 662; *Rojo, supra.*

4.    Comment on Invocation.

It is highly prejudicial for the State to elicit testimony in front of a jury that the defendant invoked his Fifth Amendment rights; U.S. Const. amend. V; N.M. Const. art. V, § 14; *State v. Gutierrez*, 2007-NMSC-033, 142 N.M. 1, 162 P.3d 156; *State v. DeGraff*, 2006-NMSC-011, 139 N.M. 211, 131 P.3d 61.

## V.  APPELLANT'S ISSUES/UNKNOWN

Counsel attempted to communicate with Appellant as to issues he wanted presented, but was unsuccessful after two telephonic attempts. Appellant may ask appellate counsel to add unknown appellate issues; *see, Franklin*, 1967-NMSC-151; *Boyer*, 1985-NMCA-029.

## VI. **TAPED PROCEEDINGS**

All proceedings were audio recorded by the court's monitor to the best of counsel's knowledge, information and belief.

9

Respectfully submitted,

_____
Jesse R. Cosby, Esq.
JESSE R. COSBY, P.C.
Attorney for Appellant
P.O. Box 3330
Roswell, NM 88202-3330
(575) 625-0516

## CERTIFICATE OF MAILING

I hereby certify that a true and correct copy of the foregoing pleading was mailed to the following persons this _6th_ day of March, 2014, by depositing a copy of the same in the United States mail in a lawfully franked envelope addressed as follows, to wit:

1.    New Mexico Supreme Court
   237 Don Gaspar Ave., Rm. 104
   Santa Fe, NM 87501

2.    Curry County District Court
   700 N. Main St., Ste. 11
   Clovis, NM 88101

3.    Honorable Teddy L. Hartley
   Curry County District Court
   700 N. Main St., Ste. 11
   Clovis, NM 88101

4.    Court Monitor
   Curry County District Court
   700 N. Main St., Ste. 11
   Clovis, NM 88101

5.    District Attorney's Office
   417 Gidding, Ste. 200
   Clovis, NM 88101

6.    NM Attorney General
   Criminal Appeals Division
   P.O. Drawer 1508
   Santa Fe, NM 87504-1508

7.    NMPD - Appellate Division
   301 N. Guadalupe St., #101
   Santa Fe, NM 87501

8.    Albert Jose Ramirez #69597
   c/o LCCF
   6900 W. Millen Dr.
   Hobbs NM 88244

Jesse R. Cosby

11

03-04-14 08:39AM FROM-DIST COURT DIV 3                                575-763-5251    # 1/   1
Case 2:23-cv-01075-MV-DLM   Document 102-1   Filed 01/22/25   Page 61 of 1863
FEB/21/2014/FRI 12:02 PM   jesse r. cosby atty.        FAX No. 5756250364           P. 002

STATE OF NEW MEXICO
COUNTY OF CURRY
FILED IN MY OFFICE

MAR 0 3 2014

Clerk District Court

STATE OF NEW MEXICO
COUNTY OF CURRY
NINTH JUDICIAL DISTRICT

STATE OF NEW MEXICO,

     Plaintiff,

v.                                                          No. CR-2007-434

ALBERT JOSE RAMIREZ,

     Defendant.

## ORDER APPOINTING APPELLATE COUNSEL
## AND GRANTING FREE PROCESS

THIS MATTER having come before the Court on motion of the defense, the Court having

considered the matter and good cause having been shown,

IT IS ORDERED that the New Mexico Public Defender's Office, Appellate Division, be, and

hereby is, appointed as appellate counsel for the Defendant.

IT IS FURTHER ORDERED that the Defendant shall receive free process on his appeal.

_____
DISTRICT JUDGE

Submitted:

_____
Jesse R. Cosby
Attorney for Defendant

## EXHIBIT A

FEB/07/2014/FRI 03:05 PM   jesse   cosby atty.   FAX No. 5756250    P. 002

NINTH JUDICIAL DISTRICT
CURRY
FILED IN COURT

2014 FEB -7 PM 1: 43

*Shelly Barger*
CLERK

STATE OF NEW MEXICO
COUNTY OF CURRY
NINTH JUDICIAL DISTRICT

STATE OF NEW MEXICO,

Plaintiff,

v.                                                          No. CR-2007-434

ALBERT JOSE RAMIREZ,

Defendant.

## NOTICE OF APPEAL

The Defendant appeals to the New Mexico Supreme Court his conviction before the Honorable Teddy L. Hartley filed on January 8, 2014.  A copy of the Judgment, Sentence,  and Commitment upon which this appeal is based is attached as Exhibit A.

This Notice of Appeal is timely if filed on or before February 7, 2014.

The Defendant is indigent and will be represented by the New Mexico Public Defender Appellate Division.  The Defendant will be filing an Order Appointing Appellate Counsel and Granting Free Process.

Respectfully submitted:

Jesse R. Cosby, Esq.
JESSE R. COSBY, P.C.
Attorney for Defendant-Appellant
P. O. Box 3330
Roswell NM  88202-3330
(575) 625-0516

## CERTIFICATE OF MAILING

I hereby certify that a true and correct copy of the foregoing pleading was ~~mailed~~ *faxed or* to the following persons this 7th day of February , 2014, by depositing a copy of the same in the United States mail in a lawfully franked envelope addressed as follows, to wit:

1.  NM Supreme Court
    P.O. Box 848
    Santa Fe, NM 87504-0848

2.  Honorable Teddy L. Hartley
    700 N. Main St., Ste. 11
    Clovis, NM 88101

3.  Court Monitor
    700 N. Main St., Ste. 11
    Clovis, NM 88101

4.  District Attorney's Office
    417 Gidding, Ste. 200
    Clovis, NM 88101

5.  NM Attorney General
    P.O. Drawer 1508
    Santa Fe, NM 87504-1508

6.  NM Public Defender - Appellate Division
    301 N. Guadalupe St., #101
    Santa Fe, NM 87501

7.  Ninth Judicial District Court
    700 N. Main St., Ste. 11
    Clovis, NM 88101

8.  Albert Jose Ramirez #69597
    c/o LCCF
    6900 W. Millen
    Hobbs, NM 88244

Jesse R. Cosby

FEB/07/2014/FRI 03:05 PM    jess●. cosby atty.    FAX No. 575625●●●4    P. 004
01/08/2014 11:55 FAX    ☐0002/0003

STATE OF NEW MEXICO
COUNTY OF CURRY
IN THE NINTH JUDICIAL DISTRICT COURT

NINTH JUDICIAL DISTRICT
CURRY COUNTY NM
FILED IN MY OFFICE

**2014 JAN -8 AM 11:12**

*[signature]*
CLERK DISTRICT COURT

STATE OF NEW MEXICO.

　　　　　　　Plaintiff.

v.

**ALBERT JOSE RAMIREZ,**
DOB: ▓▓▓▓▓▓
SOC: ▓▓▓
STN: 050100070340

No. D-0905-CR-0200700434

　　　　　　　Defendant.

## JUDGMENT, SENTENCE AND COMMITMENT

THIS MATTER coming on for hearing on January 8, 2014, before the Honorable Teddy L. Hartley, District Judge, Plaintiff appearing by Matthew Chandler, District Attorney, and Defendant appearing personally and by his attorney, Jesse R. Cosby, Attorney at Law, the Defendant having been convicted on October 11, 2013, pursuant to guilty verdicts by the jury accepted and recorded by the Court of the following crime(s):

　　　**Count 1: [0001], Murder in the first degree (willful & deliberate),** contrary to §30-02-01(A)(1), NMSA 1978.

　　　**Count 2: [4230], Tampering with evidence (highest crime a capital, first or second degree felony),** a third degree felony, contrary to §30-22-05, NMSA 1978.

　　　**Count 3: [4230], Tampering with evidence (highest crime a capital, first or second degree felony),** a third degree felony, contrary to §30-22-05, NMSA 1978.

## EXHIBIT A

FEB/07/2014/FRI 03:05 PM    jess___. cosby atty.    FAX No. 5756250__4    P. 005
01/08/2014 11:55 FAX    ✏0003/0003

Defendant is hereby found and adjudged guilty and convicted of said crime(s). and is sentenced to be imprisoned by the Department of Corrections for the following terms:

As to Count 1, a term of life imprisonment.

As to Count 2, a term of three (3) years.

As to Count 3, a term of three (3) years.

Counts 1, 2, and 3, shall run consecutively, one after the other, for a total term of life imprisonment, plus six (6) years. *mental and physical health as available. Dept. of corrections should provide mental and physical treatment as available as are*

Upon completion of the term provided herein, the Defendant will be subject to release under parole supervision, subject to the statutory provisions relating to condition, supervision and return of parolees.

Therefore, You. the Sheriff of Curry County, are hereby commanded to take Defendant in custody and deliver Albert Jose Ramirez, together with this commitment, to the Department of Corrections, which is hereby commanded to receive him and confine Albert Jose Ramirez for the above term.

Defendant shall receive credit for 2370 days (6 years, 5 months, 25 days) of pre-sentence confinement, from date of arrest on July 15, 2007, until date of sentencing, January 8, 2014, and for post-sentence confinement from January 9, 2014, until delivery to the Department of Corrections.

TEDDY L. HARTLEY
DISTRICT JUDGE

HAVE SEEN:

Matthew Chandler
District Attorney

Jesse R. Cosby
Attorney for Defense

D.A.  MC/jwg.

ORIGINAL

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

        **Plaintiff-Appellee,**

  **vs.**                                **No. 34,576**

**ALBERT JOSE RAMIREZ,**

        **Defendant-Appellant**

---

## DEFENDANT-APPELLANT'S BRIEF-IN-CHIEF

---

### ON DIRECT APPEAL PURSUANT TO RULE 12-102 (A)(1) NMRA TO THE NEW MEXICO SUPREME COURT

Jorge A. Alvarado
Chief Public Defender

Steven J. Forsberg
Assistant Appellate Defender
Law Office of the Public Defender
505 Marquette NW, Ste 120
Albuquerque, NM 87102
(505) 796-4405

Attorneys for Defendant-Appellant

SUPREME COURT OF NEW MEXICO
FILED

AUG 1 2 2014

**EXHIBIT**

**J**

# TABLE OF CONTENTS

I.    NATURE OF THE CASE ................................................................. 1

11.   STATEMENT OF RELEVANT FACTS AND PROCEEDINGS ................. 3

      **PERTINENT PRETRIAL AND TRIAL TESTIMONY** ...................... 3

      The competency hearing on September 15, 2008...........................3

      **Trial Testimony**...................................................................4

      The first witness......................................................................4

      The second witness.................................................................6

      Witnesses three through eight...................................................6

      Witness nine..........................................................................6

      Witness ten............................................................................8

      Witness eleven........................................................................9

      Witness twelve......................................................................11

      Witness fourteen...................................................................11

      The motions for reevaluation of competency to stand trial..............12

      Mr. Ramirez's initial statement to the court on October 10, 2013.......16

      Testimony of Albert Ramirez...................................................18

III.  ARGUMENT ............................................................................  23

    A. THE DISTRICT COURT ERRED WHEN IT DENIED MR. RAMIREZ A
        REEVALUATION OF HIS COMPETENCY TO STAND TRIAL…...21

        1. When psychologists disagree: mental illness v. personality disorder….24

        2. Legal argument regarding the denial of a reevaluation……………..…29

    B. Mr. Ramirez Received Ineffective Assistance of Counsel……………..…36

    C. There Was Improper Commentary On Mr. Ramirez's Right To Silence...38

    D. Mr. Ramirez was prejudiced by the jury seeing his leg restraints………..40

    E. The court abused its discretion in admitting prior bad acts……………...40

    F. The court abused its discretion by not declaring a mistrial……………...44

IV.  CONCLUSION ............................................................................  46

## STATEMENT REGARDING RECORDED PROCEEDINGS

    Citations to the Fifth Judicial District recordings of proceedings appear in the following form: (date, CD, time-time). Please note that both CDs in the record proper are marked "B." Please note that references to the record proper are cited as (RP ___).

## STATEMENT OF COMPLIANCE

As required by Rule 12-213(F)(3) NMRA, I certify that this brief is proportionally spaced using Times New Roman and the body of the brief contains <u>10,901</u> words (not to exceed 11,000 for a brief in chief). This brief was prepared using Microsoft Word, version 2002.

## TABLE OF AUTHORITIES

### *New Mexico Cases*

*Patterson v. LeMaster*, 2001–NMSC–013, 130 N.M. 179..................34

*State v. Baca*, 1976–NMSC–015, 89 N.M 204.............................37

*State v. Boyer*, 1985-NMCA-029, 103 N.M. 655..........................37

*State v. Castillo*, No. 31,054, (N.M. App. Aug. 28, 2013) (unpublished)....32

*State v. Flores*, 2005-NMCA-135, 138 N.M. 636.........................22

*State v. Foster*, 1998-NMCA-163, 126 N.M. 177.........................37

*State v. Franklin*, 1967-NMSC-151, 78 N.M. 127........................37

*State v. Grogan*, 2007-NMSC-039, 142 N.M. 107.........................34

*State v. Gutierrez*, 2011-NMCA-088, 150 N.M. 505......................39

*State v. Martin*, 1984-NMSC-077, 101 N.M. 595.........................36

*State v. Montoya*, 2010-NMCA-067, 148 N.M. 495........................22

*State v. O'Neal*, 2008-NMCA-022, 143 N.M. 437.........................37

*State v. Otto*, 2007-NMSC-012, 141 N.M. 443...........................38

*State v. Pacheco*, 2007-NMCA-140, 142 N.M. 773..........................37

*State v. Ramirez*, 2011-NMSC-025, 149 N.M. 698.......….......................1

*State v. Rotherham*, 1996-NMSC-048,122 N.M. 246.......…..……..…22

*State v. Schoonmaker*, 2008-NMSC-010, 143 N.M. 373…......…….…....35

*State v. Solomon*, No. 33,975 (N.M. Sup. Ct. Aug 4, 2014)..........…..…22

*State v. Stills*, 1998-NMSC-009, 125 N.M. 66...........................…..42

*State v. Wildgrube*, 2003–NMCA–108, 134 N.M. 262....................…37

### Federal Cases

*Drope v. Missouri*, 420 U.S. 162 (1975).........…...............28

*Pate v. Robinson*, 383 U.S. 375 (1966)....................................28

*Strickland v. Washington*, 466 U.S. 668 (1984)..........................…..34

*U.S. v. Williams*, 113 F.3d 1155 (C.A.10 (N.M.) 1997)..................…..29

### Statutes, Rules and Constitutional Provisions

Rule 5-602(B) NMRA.....................................…......................28

Rule 11-404 NMRA.....................................................…....38

UJI 14-5104 NMRA...........................................................28

### Other Authorities

*Moye v. Warden*, No. CV98412103S  (Conn. Super. March 27, 2014)...36

*People v. Sterling*, 397 N.W.2d 182 (Mich. App. 1986)....................43

*State v. Terrazas*, 944 P.2d 1194 (Ariz. 1997)..................…..………...42

## I.    NATURE OF THE CASE

Albert Ramirez was convicted of first-degree murder and two counts of tampering with evidence. **[2 RP 685-88]** The jury also found that a firearm was used in the commission of the murder. **[2 RP 686]** Mr. Ramirez was sentenced to life for the murder, and to three years for each of the two counts of tampering, all to run consecutively. **[2 RP 711]** Mr. Ramirez makes this direct appeal to the Supreme Court pursuant to NMR 12-102(A)(1) and Article VI, section 2 of the New Mexico Constitution. **[2 RP 721]**

This appeal is from Mr. Ramirez's second trial. Prior to the entry of a guilty plea during the first trial, Mr. Ramirez had been found not competent to stand trial and was sent to the New Mexico Behavioral Health Institute for treatment to competency. **[1 RP 146]** He was admitted at Las Vegas on June 5, 2008, and left there on August 19, 2008. At a hearing on September 15, 2008, the court ruled that Mr. Ramirez had become competent to stand trial. **[1 RP 158]** His first trial commenced on January 26, 2009. **[1 RP 229]** During voir dire a plea agreement was reached and a guilty plea was entered. **[1 RP 294-5]**

Mr. Ramirez subsequently attempted to withdraw his plea, and ultimately the Court ruled that it had not been made knowingly, intelligently, and voluntarily. *State v. Ramirez*, 2011-NMSC-025, 149 N.M. 698. The current appeal is from his retrial. After the remand another competency evaluation was given to Mr. Ramirez. Both parties stipulated to Mr. Ramirez's competency to stand trial. The order finding Mr. Ramirez competent cited a competency report dated January 17, 2013. **[2 RP 405]** On October 7, 2013, the retrial commenced with jury selection. **[2 RP 579]**

On July 12th, 2007, at about 1:30 p.m., Albert Ramirez shot and killed Eladio Robledo, his de facto stepfather. (Though Mr. Robledo had never married Albert's mother, he had lived with her for years while she raised her children, including Albert). Mr. Ramirez did not deny shooting and killing Mr. Robledo. The issue at trial was whether the killing was premeditated (as the State contended) or the result of provocation and done in the heat of the moment (as the defense argued).

Mr. Ramirez is a troubled young man and the trial judge noted his problems can make him a very trying client. **[10-10-2013 CD B 2:07-2:41]** Prior to his first trial he was found incompetent and ordered treated to competency. **[1 RP 146]** During his second trial there were repeated issues with his conduct, including an attempt to "fire" his attorney in front of the

2

jury. *For example see* **[2 RP 649]** Regardless of his problematic and at times self-destructive behavior he had a right to a fair trial, including a due process right to have his competency evaluated when his trial attorney raised the issue during the trial. Mr. Ramirez did not claim an insanity defense nor did he seek a "guilty but mentally ill" verdict. His counsel, however, requested a recess to have his competency for trial reevaluated in light of his problems and behavior during the trial. The judge refused.

Mr. Ramirez also raises ineffective assistance of counsel, improper commentary on his right to remain silent, the possibility that the jury saw his leg restraints, the improper introduction of other bad acts evidence, and the judge's refusal to declare a mistrial due to prosecutorial misconduct. Mr. Ramirez explicitly abandons the double jeopardy issue raised in his docketing statement.

## II.    STATEMENT OF RELEVANT FACTS AND PROCEEDINGS

Albert Ramirez was charged with the murder of Mr. Robledo, occurring on or about July 12, 2007, in Clovis, New Mexico. **[1 RP 1-2]** Mr. Ramirez was also charged with two counts of tampering with evidence. *Id.*

**PERTINENT PRETRIAL AND TRIAL TESTIMONY**

The competency hearing on September 15, 2008

3

Dr. Joanne Burness, a clinical psychologist at NMBHI and employed by the State of New Mexico, testified. On direct examination she described Mr. Ramirez as "[s]o bizarre but not bizarre consistent with mentally ill, just histrionic, dramatic, very much blaming everybody else for his problems, not able to accept a role in his life and his presentation did not provide any of us across the team with any consistent belief that we had a mentally ill person on hand." She then said, "He is a disturbed young man, but in my opinion he is not mentally ill." [9-15-2008 CD A 2:05:00-2:06:35] When asked by the prosecutor for her "diagnostic impression" she testified that she concluded malingering and mood disorder not otherwise specified and "obviously personality disorder." [*Id.* 2:06:40 – 2:07:09] There was no testimony clarifying whether this was merely an "impression" or some more formal or authoritative opinion. When asked if Mr. Ramirez could "handle the stress of testifying," Dr. Burness replied "I think so." [**Id. 2:32:28 – 2:34:00**]

Trial testimony

The first witness

Sam Saiz, Jr. was a neighbor of the victim, Eladio Robledo. He testified that he knew Albert Ramirez by sight and identified him in the courtroom. He was working in the backyard of his house, which was across

4

the street from Mr. Robledo's house, when he heard firecrackers or shots. When he came running from the backyard he saw Albert Ramirez lean over Eladio and shoot him twice in the head. He described what Albert was wearing. He testified that he did not see a gun, but he testified that Albert's hands were out while Eladio lay on the ground. Mr. Saiz then testified that he went into his house and called the police. **[10-07-13 CD B 2:28:03-2:38:09]** He testified that he saw Debra Ramirez come out of her house (or Robledo's house, they lived there together). Mr. Saiz testified that Albert Ramirez left the scene. Shortly thereafter police and an ambulance arrived. **[10-07-13 CD B 2:38:09-2:46:04]**

Following the testimony a recess was called and the jury was excused from the courtroom. There was a discussion of the restraints on Mr. Ramirez's legs. Mr. Ramirez told the court that he thought that the jury might have seen his leg restraints when he stumbled as he got up. The judge ordered that the restraints be removed so there would be no further issues. The prosecution offered for the record that the table Mr. Ramirez was sitting at was draped to the floor with a black skirt and no one could see his feet or legs. The defense counsel agreed, and the judge stated that "I'm sitting right here and I can't see it" but that the restraints would be removed in order not to cause a problem. **[10-07-13 CD B 3:12:42-3:14:40]**

## The second witness

The second witness was Grace Finkey. She was driving by when something caught her eye. She testified that she saw an older man running and a younger man running after him. She testified that the older man had fallen down and the younger man had his arm extended when she heard two pops. She looked back and saw the older man on the ground. She called 911 because she was concerned. **[10-07-13 CD B 3:41:33-3:51:08]**

## Witnesses three through eight.

The next several witnesses were police officers or civilians testifying about investigating the crime and events that happened before and after the crime.

## Witness nine.

During the testimony of Deputy Sandy Loomis, witness number nine, the following exchange took place between him and the prosecutor:

> Deputy: "On the 15th of July I was called in to assist Lt. Grau on some follow up investigation to this case."
>
> Prosecutor: "And what was the purpose of the follow up investigation?"
>
> Deputy: "We, uh, I had been told that Mr. Ramirez had been arrested and I tried to interview him and then did a search of a house where he had been staying."

The defense counsel approached the bench and asked to make a motion outside the presence of the jury. [**10-08-2013 CD B 2:11:40-2:13:15**]

The defense moved for a mistrial based on the deputy's comment on Mr. Ramirez's silence. The defense argued that the only conclusion the jury could reach from the deputy's statement was that Mr. Ramirez had invoked his right to remain silent.

The prosecution argued that there had been no error, or that if there had been it could be cured by a jury instruction if the defense requested one.

The court stated that the question was not suggesting an impermissible answer and the deputy just gave a routine answer that did not rise to the level of being a comment on Mr. Ramirez's silence.

The prosecution argued that the comment did not necessarily lead to a conclusion about Mr. Ramirez's invocation of his rights. The prosecution also argued that even if it did, the proper remedy was a curative instruction and not a mistrial.

The court ruled that the comments by the deputy were a routine recitation of his action and not intended to be a comment on Mr. Ramirez's silence, but that he would give a curative instruction if the defense requested one.

Witness ten.

Witness number ten was Rafael Aguilar. He was employed by the Clovis Police Department. On April 22, 2007 he had made contact with Alberto Ramirez. The officer was responding to a call **[10-08-13 CD B 3:52:20-3:53:57]** and Alberto Ramirez and Mr. Robledo were present. The officer testified that he issued Mr. Ramirez a criminal trespass notice for the residence. The prosecution offered the notice as State's exhibit 87. [the tape log in the Record Proper incorrectly identifies it as exhibit 85] **[10-08-13 CD B 3:53:57-3:55:34]**

The defense objected that this was uncharged conduct and violated "404." The prosecution argued that it went to motive. The judge admitted it. **[10-08-13 CD B 3:55:34-3:55:53]** The officer testified that he gave copies to Mr. Ramirez and Mr. Robledo. The officer did not recall if Mr. Ramirez said anything. He testified that Mr. Ramirez left the residence.

On cross examination the officer testified that he did not recall who owned the residence. The officer testified that Mr. Robledo said he lived there, but the officer did not know if he owned it. The officer testified that he never checked, and testified that a person who resides at a residence can issue a trespass notice. The defense showed the officer a Plateau Wireless document. **[10-08-13 CD B 3:55:53-3:58:12]** The officer testified that

8

Alberto Ramirez had an account authorization on August 21, 2006. The

officer testified that he did not know whether Mr. Ramirez's personal effects

were in the house on the day of the shooting. The officer testified that at the

time of the trespass notice he did not think Mr. Ramirez had established

residence at the house. The officer admitted that he didn't know if Mr.

Ramirez lived there at the time. **[10-08-13 CD B 3:58:12-4:02:43]**

On re-direct examination the State told the witness that "[s]ince

defense counsel asked and opened the door," he was going to ask what

Debra's position was. The defense objected that it had not "opened the

door," and the judge agreed that the defense "hadn't said anything about the

Mom at all." The prosecution asked "Did he [presumably Mr. Robledo] say

anything about Debra, without saying what she said..." and the defense

renewed its objection. The judge permitted the question. The prosecution

asked if anything was said about Debra or her position. The officer testified

that she did not want him (presumably Alberto) at the house. The officer

agreed that Mr. Ramirez was eighteen years old and testified that in New

Mexico a person becomes and adult at eighteen. The officer testified that he

did not recall Mr. Ramirez saying he lived at the residence. **[10-08-13 CD B**

**4:02:43-4:04:02]**

Witness eleven.

Witness number eleven was Officer Daryl Rice, a detective for the city of Clovis. He testified that on May 31, 2007, he came into contact with Alberto Ramirez. The officer was responding to a call about a broken windshield. **[10-08-13 CD B 4:04:45-4:05:55]** After the detective refreshed his memory with his report he testified that Debra Ramirez (Alberto's mother) reported that her son Alberto had broken the windshield of a car. The defense objected that this was "uncharged conduct" that had happened in May (which was well before the murder took place) and asked for a continuing objection. The prosecutor argued that he was "showing a pattern of conduct" and the judge permitted him to continue the questioning. **[10-08-13 CD B 4:05:55-4:06:59]**

The officer testified that the car had actually belonged to her boyfriend. The officer took a report and drove around trying to find Alberto. He later got an estimate for repairs from Glass Doctor. The officer got a call that Alberto had been located and went to speak with him. The officer testified that when he asked Albert what had happened to the windshield Albert had said, "I got mad." **[10-08-13 CD B 4:06:59-4:08-33]**

On cross-examination the officer testified that Alberto was on crutches on that date. The officer did not know what the dispute was over. The officer testified that the mother said Alberto had slammed the window

10

with his crutches and then went off. The officer took the report and the

estimate for damage. The officer testified that he filed charges after he got

the estimate. **[10-08-13 CD B 4:08:33-4:11:18]**

Witness twelve.

Witness number twelve was Johnny Zamora. He testified that had

been a police officer in Clovis, New Mexico. On June 19th, 2013, he was

working as a police officer in Clovis. On that date he responded to a call

about criminal damage. He testified that he made contact with Debra

Ramirez. The officer noticed a broken window and asked Ms. Ramirez what

had happened. He wrote a report on the incident.    **[10-08-13 CD B 4:14:35-**

**4:17:15]** The prosecutor asked, "Did you ever find out whoever did it?" Mr.

Zamora replied, "When I spoke with her she said…," and the defense

objected on confrontation and hearsay grounds. The judge sustained the

objection. Mr. Zamora testified that no one else was there that day and that

he had no further involvement with the case. **[10-08-13 CD B 4:17:15-**

**4:17:40]**

Witness fourteen.

Witness number fourteen was Dr. Ross Reicherd, a medical examiner

for the State of New Mexico. **[10-09-13 CD B 8:39:43-8:43:57]** The doctor

testified that Mr. Robledo died from multiple gunshot wounds and that the

manner of death was homicide. **[10-09-13 CD B 9:24:40-9:25:08]** Further

witnesses, police officers and civilians, were called by the State to testify

about the investigation or events prior to or after the shooting.

The motions for reevaluation of competency to stand trial.

During the State's case in chief (outside the presence of the jury), Mr.

Ramirez's trial counsel made a motion to the court for a recess in order to

permit Mr. Ramirez's competency to be reevaluated. **[10-09-13 CD B**

**10:16:00]** Defense counsel informed the court that he had attempted to

speak with Mr. Ramirez and that Mr. Ramirez had stated he didn't

understand the proceedings. Counsel indicated to the judge that Mr. Ramirez

was not capable of assisting his attorney. Counsel pointed out the prior

finding of incompetency. He reminded the court that Mr. Ramirez had been

treated to competency and noted there had been concerns about malingering.

Counsel pointed out that Mr. Ramirez had been advised to stay on

medications, but counsel did not know if Mr. Ramirez had been receiving

medication.

Defense counsel summarized "Right now I can't function as his

counsel without his ability to cooperate, communicate, participate and I

don't know whether it's malingering or not and I'm not the psychiatrist."

**[10-09-13 CD B 10:17:00]** Counsel moved the court for an immediate

12

reevaluation to see if Mr. Ramirez was receiving his medications and if he had "fallen back" into an area where he was no longer competent. Defense counsel related that he had heard testimony in other cases about marginally competent people "decompensating" and becoming incompetent, particularly when not getting medication or adequate care. Defense counsel stated that in his opinion Mr. Ramirez had decompensated and needed reevaluation.

The prosecution objected to a recess. The prosecution argued that there was no "good faith basis" to doubt Mr. Ramirez's competency. The prosecution told the court "he has not been found incompetent, ever." [This is contrary to the written record in this case. On April 17, 2008, Mr. Ramirez had been found incompetent by examiner Maxann Shwartz, and the prosecution and defense stipulated to his incompetence and dangerousness and agreed that he should be sent to Las Vegas to be treated to competency.] **[RP 146]** The prosecution argued that Mr. Ramirez had been sent to Las Vegas because he wouldn't participate, and further argued that "the report came back" saying that Mr. Ramirez was malingering and was "a fake."[1] **[10-09-13 CD B 10:18:36-10:19:04]**The prosecution argued that Mr. Ramirez had complained of being sick that morning, and that a nurse had

---

[1] This appeal will argue that this was mischaracterization of the testimony given at the hearing.

seen him and said that he was fine.[ *Id.* **10:19:00**] The prosecution argued

that the court had received reports from a psychiatrist that Mr. Ramirez was

feigning his mental illness and that there was "no diagnosis." The

prosecution reiterated its objection that there was no "good faith basis"

pursuant to the rule to allow a reevaluation. [*Id.* **10:19:57**]

The defense pointed out the earlier professional opinion of Maxann

Shwartz that Mr. Ramirez had not been competent to stand trial on that

earlier date.

The judge stated "The file is long, he's been evaluated, and there is

significant information in there that suggests he is a malingerer," and "I

hesitate to stop the trial at this juncture." The judge asked the State how

many witnesses it planned on calling. The judge stated that at Mr. Ramirez's

original plea (the one overturned by this Court) he had been crying. The

judge said "If the big court wants this case tried again that'll be fine, but I'm

not quitting it today." [*Id.* **10:19:57-10:24:04**]

Mr. Ramirez interrupted and defense counsel informed the judge "I

can't stop him." Mr. Ramirez told the court "I was at the hospital I was

participating and a guy threw coffee in my face and started punching me and

gave me a black eye. And a patient gave me a number to call a lawyer and I

called them and after that they shipped me over here and after that I was

14

crying because I was chronically depressed because I'm physically disabled from my neck down…"

Mr. Ramirez continued in a run-on statement that he had been diagnosed as schizophrenic and heard voices sometimes and that he suffered from a physical illness called "psychosomatic delusions" because he thought that he suffered from a "terrible physical illness" and that he was disabled from the neck down, his left leg was shorter than his right leg, and so on. As he burst into tears, Mr. Ramirez said "I think Mr. Cosby [defense counsel] gets mad at me because I don't know how to talk to him and I'm scared that…" [*Id.* 10:24:04- 10:25:58] The judge told Mr. Ramirez that Mr. Cosby was not mad at him.

The prosecution pointed out case law would allow Mr. Ramirez to view the proceedings from another room via video if he disrupted the trial. The defense argued that removal was only appropriate for defendants who were acting willfully. Defense counsel pointed out that Mr. Ramirez was "obviously" going to continue to cry, to not be communicative, and not be able to assist his attorney. Defense counsel stated that he felt that Mr. Ramirez's behavior was possibly from something other than malingering. Defense counsel stated that Mr. Ramirez was "fixated" on his perceived medical problem of having one leg shorter than the other. The defense

15

argued that these things were not to establish a defense but rather were indicative of a medical mental health problem, and that if Mr. Ramirez could not get past his problems he could not assist the defense. [*Id.* **10:25:58**]

Later that day, defense counsel renewed his motion for a recess to get Mr. Ramirez reevaluated. In particular, defense counsel was concerned that Mr. Ramirez was not competent to make the choice of whether or not to testify. Mr. Ramirez told the court that he wanted the jury to be told about his medical problems. He told the court that he felt that everyone was against him. [**10-09-13 CD B 2:36:02- 2:45:40**]

The court read from the file in the case. The judge read that Mr. Ramirez had been found "currently" incompetent by Dr. Shwartzat one time, but subsequently found competent by NMBHI. The judge stated that Dr. Burness testified at the competency hearing that her opinion was that Mr. Ramirez "was faking his symptoms" and was competent for trial. The judge stated that the opinion of Dr. Burness "that the defendant is faking continues." The judge ruled that he would not grant a recess. [**10-09-13 CD B 3:08:40-3:13:45**]

Mr. Ramirez's initial statement to the court on October 10.

Defense counsel informed the court that Mr. Ramirez wanted to address the court, and defense counsel didn't know about what. Mr. Ramirez

told the court that he had been offered a plea of guilty but mentally ill. He stated "Which I was very confused of the charges I have in the first, they said it's… I have no clue what those are for or what they're about, I have no clue about the first three I just know the words, the names and the guilty but mentally I have no idea what it's about or nothing he tried to explain but like I said when they communicate it's hard for me to understand and it takes me a long time I'll read it over but also that, …" Mr. Ramirez paused for a breath and then continued in a run-on fashion that he was told that doctors were going to be called to testify against him and that he was never notified and he was unable to call Dr. Maxann Shwartz in his defense. He also complained that he was unable to get a private investigator to call "plenty of witnesses" which affected his defense.

He also stated that he was a paranoid schizophrenic with paranoid delusions and hallucinations and never got sent for a ninety-day evaluation and was only evaluated for an hour or two, and "that's an improper evaluation in my opinion and I feel like I've been treated unfairly." Mr. Ramirez stated that "there was plenty of media this whole week" that the jury probably heard and "everybody's asking me all kinds of questions and I just say I don't know what's going on because I have no way to see newspapers or radio or anything.…" Mr. Ramirez continued,

"Mr. Cosby is my attorney and he's supposed to be for my defense but like I've said in the past I've asked to fire him, I've asked to get a new attorney which I can't afford it I'm poor, I have no help from my family just basically to get my hygiene and also I asked for a new attorney, I asked for a private investigator, I asked for a neurologist evaluation, I asked for another competency evaluation, I've asked for several motions which I don't know if they were even filed or if they were denied, I don't know if Mr. Cosby, I just feel like maybe I have a big mouth and I sit to open my big mouth and say things and I don't know if I made him angry or upset or frustrated or what I've done but for some reason I don't know if he's going to lose this case because it's a weak case or if it's intentionally or accidental or if I'm just paranoid…"

The judge interrupted and told Mr. Ramirez that he had made his record. Mr. Ramirez told the judge that he had more things to say, but thanked the judge for giving him that time. [**10-10-2013 CD B 9:22:00-9:26:00**]

Testimony of Albert Ramirez

Mr. Ramirez took the stand. His entire testimony was punctuated with run-on and irrelevant statements as well as admonitions from his counsel and the judge. He repeatedly kept raising issues of his health and health history. He stated that he had the flu and didn't feel well. When asked about his height he talked about getting into an accident while driving a car and starting to lift weights, and he was taller in 2007. Shortly thereafter, when defense counsel tried to get Mr. Ramirez to answer who his mother was, Mr. Ramirez objected, "You didn't let me finish where I stayed in July." Mr.

Ramirez described various places he stayed. When asked why he didn't have a place to stay he said, "I was in an accident and they messed up my teeth and I was driving a standard Honda and I was kicked out of my Mom's house but if I could explain to you later why that happened...."

When defense counsel tried to keep him on the subject Mr. Ramirez objected,

> "Can you hold that question because you just asked me a question before that and you said 'How come I was living at these places' and I want to explain to them this is why because I got kicked out and I was looking for a job but I was unable to find a job so I went to a friend who introduced me to another friend that sold marijuana and he gave me marijuana and I was getting a check from my dad for going to high school, five hundred a month, so I was living in my car, and I ended up getting hurt, and later on how I got to be homeless was because I was unable to work, and I was unable to walk, and I was unable to drive, and I could only walk on crutches so I was unable to support myself financially...."

Mr. Ramirez continued that "Everybody said that they tried to help me but I don't see people helping you when they only let you stay at their house for two weeks and make you leave..." and so on. When defense counsel finally interrupted Mr. Ramirez said "I'm having a hard time thinking I'm sorry to you, jury; I'm sorry to everybody in the courtroom." **[10-10-2013 CD B 9:31:40-9:39:25]**

19

Mr. Ramirez often answered in a rambling manner and repeatedly objected that he had more to say or that he was not being allowed to say what he wanted to say. Eventually the judge intervened, telling Mr. Ramirez that "to the extent that you're able you answer the questions direct" and that Mr. Ramirez needed to answer the questions as directly as possible. Mr. Ramirez asked the judge "Can I say something to you, sir?" and the judge said yes. Mr. Ramirez stated, "I feel like Mr. Cosby's knowledge is that he's very smart and intelligent as everybody else in this courtroom but I also feel that he's not going to ask questions that when he asks and that when I answer which answer other questions that...." The prosecution objected to the exchange with the judge in front of the jury and the judge replied that he understood. Mr. Ramirez said "I don't know what's going on in courtrooms, this is my first jury trial...." The judge interrupted and told him to answer the questions he was asked. Mr. Ramirez asked "Who can I ask if there's questions that I have personally that I want to let the jury know?" The judge told Mr. Ramirez that he had to answer the questions asked and said "I don't want to hear any more about it." Mr. Ramirez insisted "That's not fair to me...." Defense counsel interrupted and tried to get Mr. Ramirez back on track. **[10-10-13 CD B 9:48:00-9:49:40]**

Later, during cross-examination the prosecution asked, "It's nothing for you to be involved in altercations, is it?" Mr. Ramirez stated that he did not understand the "big words" and the prosecution asked if he had ever punched a girl in the face. Mr. Ramirez responded that he had once when his cousin was getting beat up. The prosecution asked to approach the bench. At the bench the prosecution stated that it intended to impeach Mr. Ramirez with a prior conviction for battery on a peace officer. The defense responded that it was being offered not for impeachment under 609 but the prosecution had said it was offering it under 404 as prior conduct and that the prosecution as not being consistent with its own offer. The judge ruled that his earlier ruling was that it was not proper but said that the prosecution could ask Mr. Ramirez and see what he says. **[10-10-13 CD B 1:54:30-1:56:15]**

The prosecution asked "Isn't it true that you have also head-butted a police officer?" And Mr. Ramirez answered "Yes." The defense renewed its objection. The prosecution asked Mr. Ramirez if he wanted the jury to believe that Mr. Robledo had assaulted him. The prosecution shortly thereafter asked, "And you've done significant amount of legal research on how to get the jury to buy this?" The defense objected and moved for a mistrial. Mr. Ramirez complained that "I'm not as educated as you all...."

21

The judge interrupted and asked the prosecution to lay a foundation. The prosecution asked Mr. Ramirez "Do you recall giving a lot of requests to go to the law library to research how to beat your charges?" The defense objected and asked to approach. The judge directed the prosecution not to ask those questions but said that he would not declare a mistrial. **[10-10-13 CD B 1:56:15-1:58:25]**

Later on October 10th, when Mr. Ramirez's defense counsel was finished questioning Mr. Ramirez's brother on direct examination, Mr. Ramirez interrupted the proceedings:

> Mr. Ramirez: "Hey, your Honor, I got some questions I need to ask him."
> Judge: "But you can't ask them."
> Mr. Ramirez: "Why didn't you ask... I want to fire..."
> Judge: "We're going to sit you in the other room if I hear anything more from you."
> Mr. Ramirez: (speaking over the judge) "I fire him. He's fired. I want  to represent myself... I have the right to fire him and represent myself! He's not representing me right!"

The Judge ordered Mr. Ramirez from the courtroom and excused the jury. **[10-10-2013 CD B 2:09:45-2:10:30]** Following the recess defense counsel spoke with Mr. Ramirez and the trial resumed with Mr. Ramirez present.

# III.  ARGUMENT

### A.    THE DISTRICT COURT ERRED WHEN IT DENIED MR. RAMIREZ A REEVALUATION OF HIS COMPETENCY TO STAND TRIAL.

Mr. Ramirez argues that the correct standard of review is de novo. The Court of Appeals normally reviews a denial of a motion for a competency evaluation for an abuse of discretion. *State v. Flores*, 2005-NMCA-135, ¶20, 138 N.M. 636 (citations omitted). This court (the Supreme Court) appears to have adopted that standard in a recent non-precedential opinion. *See State v. Solomon*, No. 33,975 (N.M. Sup. Ct. Aug 4, 2014) (non-precedential)

However, "[I]t is a violation of due process to prosecute a defendant who is incompetent to stand trial." *State v. Rotherham*, 1996-NMSC-048, ¶ 13, 122 N.M. 246.  The Court of Appeals has used a de novo standard in cases like Mr. Ramirez's.  "Rather, the questions raised by Defendant on appeal involve his right to raise the issue of competency and the proper process to be afforded him once that issue has been raised. These are matters of due process that we review de novo." *State v. Montoya*, 2010-NMCA-067, ¶¶ 10-11, 148 N.M. 495. Mr. Ramirez is appealing "the proper process to be afforded him once that issue has been raised," and thus the de novo standard should be applied. *Id.*

### 1. When psychologists disagree: Mental illness v. personality disorder.

The courts rely heavily on the opinions of psychologists to help determine the status of individuals in the criminal justice system. Psychologists, however, often disagree not only over individual cases but also over broader issues in the field of psychology itself. Mr. Ramirez provides a case study in just such a disagreement amongst psychologists, and how such disagreements can have dire consequences when attorneys and judges, not schooled in the finer distinctions of the field of psychology, make judgments about criminal defendants. Fortunately this Court does not have to resolve the schism among psychologists over whether the definition of "mental illness" encompasses "personality disorders." That question is moot because having a mental illness is not a prerequisite for being found incompetent. It may be helpful to the Court, however, to show that there is a fundamental disagreement amongst various schools of psychologists and how that disagreement has influenced Mr. Ramirez's treatment by the courts and doctors.

During the competency hearing on September 15, 2008, Dr. Joanne Burness testified for the State about Mr. Ramirez. She stated that Mr.

Ramirez was not mentally ill. However, she then went on to say that he had been prescribed medications and "obviously" had a personality disorder. To Dr. Burness, "mental illness" was apparently distinct from "personality disorder." Yet this conclusion, unexamined at the hearing, is a matter of disagreement in the field of psychology. For many psychologists would say that a "personality disorder" *is* a "mental illness."

Dr. Burness testified that she received much of her education in the United Kingdom, so literature from the UK regarding this issue might be particularly enlightening. In an article in the British Journal of Psychiatry the author addressed the disagreement over terminology and reached the conclusion that "The historical reasons for regarding personality disorders as fundamentally different from mental illnesses are being undermined by both clinical and genetic evidence." R.E. Kedell, FRSE, "The distinction between personality disorder and mental illness," The British Journal of Psychiatry (2002) 180:110-115, online at http://bjp.rcpsych.org/content/180/2/110.full , last viewed June 26, 2014.

Other authorities in the United States have more explicitly adopted the view that "Personality disorders are a group of mental illnesses." MedLine Plus (a service of the National Library of Medicine, National Institute of Health), online at

25

http://www.nlm.nih.gov/medlineplus/personalitydisorders.html , last viewed

June 26, 2014. As that source goes on to explain, "The symptoms of each

personality disorder are different. They can be mild or severe. People with

personality disorders may have trouble realizing that they have a problem.

To them, their thoughts are normal, and they often blame others for their

problems." *Id.*

Even though Dr. Burness did not specify what type of personality

disorder Mr. Ramirez might have had, she used the adjective "histrionic." It

may be informative to quote a text that dealt specifically with the issue of

"deceit" by those with histrionic personality disorder:

> "[those with histrionic personality disorder] are
> constantly seeking attention by their dress or dramatic
> mannerisms. They are emotional rather than intellectual and,
> often in a childish manner, expect others to care for them. They
> often report details about their lives, including medical
> histories, in a dramatic, imprecise manner with more attention
> to performance than to accuracy. For example, instead of saying
> that she had a simple appendectomy, Cindy would dramatically
> tell how she was saved just in the nick of time before her
> appendix ruptured."

> "Persons with histrionic personalities are renowned for
> their skills in lying, but their prevarication does not usually
> have the malignant quality that is evident in the lying of persons
> with antisocial personality. More frequently, it is to create
> dramatic effect, to avoid unpleasantness, or to get  people to
> like them (the ingratiating lie). However, their deceit ultimately
> takes its toll. The superficiality of these people, their lack of

genuine feelings beneath the surface storm of emotion, and the anger engendered in others from being repeatedly deceived (even in minor ways) drive other people away and makes true intimacy difficult, if not impossible.

Charles V. Ford, M.D., "Lies! Lies!! Lies!!! : The psychology of deceit," p. 115, American Psychiatric Press, 1999 (first ed.) (ISBN 0-88048-997-9)

The State's doctor testified that Mr. Ramirez was malingering, but she also testified that he suffered from a personality disorder that, based on her description, might have led Mr. Ramirez to exaggerate or create symptoms even *without* an intention to lie for some gain. This leads to a situation where a person might be *both* thought of as malingering *and* suffering from a problem that causes incompetency. Even an incompetent person can malinger, and distinguishing "malingering" from "psychiatric disorders" is a problematic task for even trained psychologists.  Michael Sharpe, Ch. 12 "Distinguishing malingering from psychiatric disorders," p. 156, in "Malingering and illness deception", Oxford University Press, 2003, found online at:

http://www.meactionuk.org.uk/Malingering_and_Illness_Deception.pdf , last viewed June 26, 2014.

The long and short of it is that the prosecutor's characterization of Mr. Ramirez as a "fake" (a term the doctor did not use) is simplistic and

27

misleading. The judge's adoption of this viewpoint was similarly mistaken. Mr. Ramirez was not "faking" his personality disorder or mood disorder, according to the doctor. The fact that the doctor did not categorize his personality disorder as a "mental illness" did not necessarily mean that he was healthy and could not be incompetent. This is true even if there was malingering *in addition to* the personality disorder.

Fortunately, this Court does not have to resolve this controversy in the psychological community. Nor does it have to (even if it could) diagnose Mr. Ramirez and parse the differences between unwillful illness and willful lying. This Court must simply decide if there was "minimal or no evidence of incompetency." *Flores*, 2005-NMCA-135, ¶20. There was ample evidence of incompetence, as discussed elsewhere in this brief.

What this Court should *not* do is merely attach itself to the term "malingering" and thus decide that Mr. Ramirez was not worthy of or in need of a reevaluation of his competency. Even someone who has been categorized as a malingerer (rightly or wrongly) can also suffer from a mental illness or personality disorder that renders him incompetent. The test for competency does not question *why* a person is incompetent, only *whether* he is incompetent, thus the question of whether Mr. Ramirez had a "mental illness" is moot. Mental illness is not a prerequisite for incompetence. For

28

example, someone in a coma from a blow to the head can be incompetent, or someone with a personality disorder. Thus, just because Mr. Ramirez was not categorized as having a "mental illness" by the State's doctor, it does not follow that he was necessarily "faking" all of his symptoms.

### 2. Legal argument regarding the denial of reevaluation

A failure to make a determination of competency when reasonable grounds appear constitutes fundamental constitutional error. *Pate v. Robinson*, 383 U.S. 375, 385 (1966). The issue may not be waived by the defendant. *See* committee commentary to Rule 5-602. "But it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." *Pate v. Robinson*, 383 U.S. 375, 384.

No competency hearing is required when there is minimal or no evidence of incompetency. *Flores*, 2005-NMCA-135, ¶20 (citation omitted). In this case there was a large amount of evidence pointing to incompetency. A person is competent if he: (1) Understands the nature and significance of the criminal proceedings against him, (2) has a factual understanding of the criminal charges, and (3) is able to assist his attorney in his defense. NMRA UJI 14-5104. In particular, Mr. Ramirez was not able to assist his attorney.

To begin with, Mr. Ramirez had previously been found incompetent and sent to Las Vegas for treatment to competency. When later treated to competency, the State's doctor testified that Mr. Ramirez had a personality disorder and a mood disorder. Additionally, during trial there were repeated manifestations of possible incompetency. Mr. Ramirez made "statements" that resulted in different transport officers being assigned to him during the trial. **[10-08-13 CD B 8:42:10-8:43:50]** He complained of physical illness and the court directed a nurse to check his physical health. **[10-09-13 CD B 8:30:22-8:33:13]** His defense counsel raised competency and requested a recess to have Mr. Ramirez reevaluated. Defense counsel's assertion of the incompetency of his client "is unquestionably a factor which should be considered." *Flores*, 2005-NMCA-135, ¶ 20, *citing Drope v. Missouri*, 420 U.S. 162, 178 n. 13. Mr. Ramirez made a rambling statement about his health and voiced concerns that his defense counsel was "mad at him." **[10-09-13 CD B 10:13:29-10:26:30]**

When defense counsel later renewed his motion for a recess to permit reevaluation, Mr. Ramirez asked to have the jury told about his "medical problems." **[10-09-13 CD B 2:36:02-3:11:09]** Following the testimony of Mr. Ramirez's brother the judge ordered Mr. Ramirez removed from the courtroom and had to recess the jury while the judge and the attorneys had to

deal with his outburst and attempt to fire his own attorney. Mr. Ramirez

needed to be able to assist his attorney. *See State v. Rotherham*, 1996-

NMSC-048, ¶ 13,122 N.M. 246. "Proper assistance encompasses more than

merely providing information but is extended to the comportment in the

courtroom before a jury." *U.S. v. Williams*, 113 F.3d 1155, 1160 (C.A.10

(N.M.) 1997) (citation and internal quotation marks omitted). As this brief

lays out in the accounts of his testimony, Mr. Ramirez lacked the ability to

comport himself during the trial. The judge, in a vast understatement, noted

that Mr. Ramirez was difficult to represent. **[10-10-13 CD B 2:07:30-**

**2:41:36]**

    Earlier, outside the presence of the jury Mr. Ramirez complained that

the trial was "not fair" because he wasn't being asked questions that he

thought were necessary. He made allegations of having been sexually

assaulted by a witness. **[10-10-13 CD B 10:40:41-10:58:56]** The judge

himself stated that he had never seen a defendant act the way Mr. Ramirez

was acting. **[10-10-13 CD B 3:45:47-3:46:20]**

    Defense Counsel had asserted that Mr. Ramirez was incompetent and

made a motion for a recess to allow for a reevaluation of his competency.

"The issue of a defendant's competency to stand trial may be raised by

motion, or upon the court's own motion, at any stage of the proceedings."

Rule 5-602(B)(1) NMRA. Rule 5-602(B)(2)(b) states that if competency to stand trial is raised during trial, the jury "shall be instructed on the issue." In this case no such instruction was proffered or given.

An assertion of incompetency by defense counsel must be substantiated. *Flores*, 2005-NMCA-135, ¶ 20 (citation omitted). The evidence described above substantiates counsel's assertion. "[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required…" *Drope*, 420 U.S. 162, 180. "Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." *Id.* at 181.

Mr. Ramirez's case can be distinguished from the recently issued decision of this Court in *State v. Solomon*, No. 33,975 (N.M. Sup. Ct. Aug 4, 2014) (non-precedential). In *Solomon* this court found that a District Court did not abuse its discretion by not ordering a mental health evaluation to see if the defendant was competent to stand trial. In *Solomon* the defense attorney never actually made a motion for a competency evaluation. *Id.* ¶ 12.

The defense counsel in *Solomon* also did not provide any supporting evidence that his client was incompetent.

Additionally, the defendant in that case spoke to the court himself and asserted that he was competent and also refused to take part in any evaluation. Mr. Ramirez's attorney, on the other hand, made a repeated motion for evaluation and indicated that Mr. Ramirez did not understand and stated that Mr. Ramirez was incapable of assisting the defense. Trial counsel also reminded the court of the previous finding of incompetency, while emphasizing that he himself was not a qualified mental health expert. **[10-09-13 CD B 10:16:00-10:17:00]** Mr. Ramirez's own conduct and statements provided further evidence that an evaluation was needed.

It should be noted that the order finding Mr. Ramirez competent for retrial cited a doctor's report of January 17, 2013, and the actual examination of Mr. Ramirez may have taken place before that. **[2 RP 405]** The retrial did not commence until October 7, 2013. **[2 RP 579]** Thus, there was an interval of at least eight months and twenty days between his last evaluation and the trial date. In *Flores* the court said that "We note that such a substantial interval between assessment and trial may well justify a motion for further evaluation…" *Flores*, 2005-NMCA-135, ¶ 32. As Mr. Ramirez's trial counsel noted, clients can "decompensate" and become worse after an

evaluation, particularly when they are relocated to a jail and may not be receiving treatment or medications.

While the length of the interval was longer in *Flores* (two years), eight months is also a very substantial amount of time during which a person's mental state can change drastically. This is particularly true when people are moved from a specialized facility (NMBHI) to a local jail. "Clearly, the NMMIC [New Mexico mental illness and competency code] contemplates the primacy of the expert's opinion and *makes that opinion time-sensitive* for the district court to determine competency." *State v. Castillo*, No. 31,054, ¶ 10 (N.M. App. Aug. 28, 2013) (non-precedential) (emphasis added). The district court's reliance on an evaluation that was at least eight months old was misplaced.  Shorter time intervals have been used by trial courts in ruling *against* defendants. "In its findings and conclusions, the district court emphasized that [the doctor's] diagnosis and evaluation were relevant only to Defendant's state at the time of evaluation, not the competency hearing held two months later." *Id.*, ¶ 7.

In addition, the court in Flores noted that the defendant there "was treated to competency in only three months." *Id.* Mr. Ramirez spent even less time being treated to competency. A possible reason for this short stay at NMBHI can be found in the professional literature. A professional journal

34

relates that "for more than two decades, there has been the suggestion that mental health clinicians do not like patients with personality disorders..." and that "[t]hese attitudes may adversely affect delivery of health care provision and as such make it more difficult for patients with personality disorder and comorbid mental disorders to access and receive appropriate management for either disorder." Peter Tyrer, Ruger Mulder, et al, "Personality disorder: a new global perspective," World Psychiatry, Feb. 2010; 9(1):56-60, found online at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2816919/ .

The two cases, *Flores* and Mr. Ramirez's, have a parallel structure: The defendant was found incompetent, sent to Las Vegas and hastily treated to competency, then sat in jail (possibly decompensating) for months on end while waiting on a trial date.

In summary, there was substantial evidence that Mr. Ramirez needed to have his competency to stand trial reevaluated. His case more than meets the bar set by *Flores* for a reevaluation. The desire to move his case should not have taken precedence over Mr. Ramirez's need for a reevaluation. The failure to have him reevaluated created a substantial risk that he was tried while incompetent to stand trial, the very risk that raising competency is supposed to ameliorate.

B. Mr. Ramirez Received Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees defendants in criminal proceedings the right to effective assistance of counsel. *Patterson v. LeMaster*, 2001–NMSC–013, ¶ 16, 130 N.M. 179. New Mexico analyzes ineffective assistance of counsel claims under the two part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish the claim of ineffective assistance of counsel, a defendant must show error on the part of counsel and prejudice resulting from that error. *State v. Grogan*, 2007-NMSC-039, ¶ 11, 142 N.M. 107.

Mr. Ramirez's trial counsel was attempting to deal with a difficult situation, but in the end he was unable to be effective because he lacked the necessary assistance of Mr. Ramirez himself: "Right now I can't function as his counsel without his ability to cooperate, communicate, participate and I don't know whether it's malingering or not and I'm not the psychiatrist." **[10-9-13 CD B 10:17:00]** Defense counsel also stated that if Mr. Ramirez could not get past his problems he could not assist the defense. **[10-9-13 CD B 10:25:58]**

Furthermore, defense counsel made no attempt to have Mr. Ramirez evaluated after the judge denied him a recess for that purpose. Regardless of

36

the judge's decision not to grant a recess, the trial attorney had a duty to investigate his client's competence since he had raised it, even if it required action after court hours. Defense counsel failed to "seek the assistance of necessary experts," and if more money was required to seek such assistance on an urgent basis counsel should have requested it. *See State v. Schoonmaker*, 2008-NMSC-010, ¶ 31, 143 N.M. 373 (the basis of an ineffective assistance of counsel argument was the defense counsel's failure to seek funds to obtain an expert).

Mr. Ramirez was prejudiced by the failure of his trial counsel to obtain a reevaluation. "Thus it is the court's view that when the claim is made that the basis of the ineffective assistance claim is counsel's failure to investigate competency the establishment of such a claim incorporates a finding that the second prong of prejudice has been established." *Moye v. Warden*, No. CV98412103S at *5 (Conn. Super. March 27, 2014) (non-precedential).

Defense counsel also attempted to withdraw the motions to have Mr. Ramirez reevaluated for competency. By doing so, he attempted to effectively waive Mr. Ramirez's right to be competent for trial. Such a waiver cannot be made. *See* committee commentary to Rule 5-602; *Pate v. Robinson*, 383 U.S. 375, 384. Defense counsel was apparently trying to

37

forestall testimony by one of the prosecution's expert witnesses (who was present in the courtroom during Mr. Ramirez's testimony). This may have been because the defense did not have any other expert witnesses at trial to testify. Not having expected that Mr. Ramirez's competency to stand trial would arise and having already foregone any defenses that would require expert testimony, defense counsel was simply attempting to keep the state from putting its witness on the stand for rebuttal. **[RP 657-58. The proceedings are summarized in the tape logs, but were in chambers and not included on the audio CD in the record proper]**

Mr. Ramirez also asserts that his counsel failed to call many witnesses he wished to have called, and also that he made promises to Mr. Ramirez if he testified that were not kept. These issues, however, are not reflected in the record. Matters not of record cannot be reviewed on appeal. *See State v. Martin*, 1984-NMSC-077, ¶ 28, 101 N.M. 595.

C.     There was improper commentary on Mr. Ramirez's right to silence

This argument is made pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127 and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655. The review of a district court's denial of a mistrial is for an abuse of discretion. *State v. O'Neal*, 2008-NMCA-022, ¶ 28, 143 N.M. 437. The legal question

of whether there has been an improper comment on a defendant's silence is reviewed de novo. *State v. Pacheco*, 2007-NMCA-140, ¶ 8, 142 N.M. 773.

During direct testimony Deputy Loomis testified that Mr. Ramirez had been arrested when the deputy "attempted" to get a statement from him. **[10-08-2013 CD B 2:11:40-2:13:15]** This would lead the jury to infer that Mr. Ramirez had utilized his Fifth Amendment right to not incriminate himself.

Prosecutorial comment on the post- *Miranda* exercise of the Fifth Amendment right to remain silent is protected against by the Fourteenth Amendment's Due Process Clause. *See State v. DeGraff*, 2006- NMSC-011, ¶ 12, 139 N.M. 211. A prosecutor is not permitted to elicit statements from a witness that the defendant invoked his right to remain silent. *State v. Foster*, 1998-NMCA-163, ¶ 11, 126 N.M. 177. *But see  State v. Baca*, 1976–NMSC–015, ¶ 5, 89 N.M. 204 (holding that reversal was not warranted when a detective made an isolated, unsolicited comment referring to the defendant's post- Miranda refusal to speak with the police); *State v. Wildgrube*, 2003–NMCA–108, ¶¶ 23–24, 134 N.M. 262 (holding that when a police officer made an unsolicited comment regarding the defendant's post-Miranda silence and the prosecutor did not exploit the reference by asking

39

related questions or referring to it in closing argument, there was no

prosecutorial misconduct requiring reversal).

D.    Mr. Ramirez was prejudiced by the jury seeing his leg restraints

During the trial, Mr. Ramirez stumbled when he stood up as the jury

was recessing. This was due to his legs being restrained. Mr. Ramirez told

the court he thought the jury saw his restraints. The prosecution noted for the

record that the table had a black skirt down to the floor so that no one could

see Mr. Ramirez's feet or legs, and defense counsel and the judge agreed. In

order to forestall further problems, the judge ordered the restraints removed.

**[10-07-13 CD B 3:12:42-3:14:40]**

The court reviews this issue for fundamental error. *See State v. Holly*,

2009-NMSC-004, ¶¶ 40, 42, 145 N.M. 513 (applying fundamental error

review under similar circumstances where defendant did not request a

mistrial or seek a finding of prejudice); "inadvertent or insignificant

exposure to a defendant in shackles is not sufficiently prejudicial to merit a

new trial.")


E.    The court abused its discretion in admitting prior bad acts.

The appellate courts review a trial court's decision to admit evidence

under Rule 11-404 for abuse of discretion. *State v. Otto*, 2007-NMSC-012, ¶

40

9, 141 N.M. 443. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* The Court examines "whether the State made a sufficient showing that the evidence would serve a legitimate purpose other than to show character... and whether the probative value was substantially outweighed by the danger of unfair prejudice or other factors." *State v. Gutierrez*, 2011-NMCA-088, ¶ 18, 150 N.M. 505 (citations omitted).

Rule 11-404(B)(1-2) NMRA states that "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." It then says that the evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

During the trial the prosecution bought in evidence of prior bad acts by Mr. Ramirez. Specifically, witnesses ten, eleven and twelve all testified about prior bad acts. Additionally the prosecution asked about a prior bad act during the cross-examination of Mr. Ramirez.

Witness ten was Rafael Aguilar and he testified about issuing a "no trespass" order to Mr. Ramirez. The defense objected that this was "uncharged conduct" and "violated 404" (presumably Rule 11-404 NMRA). The prosecution made a conclusory statement that it went to motive and the judge permitted testimony to continue. **[10-08-13 CD B 3:52:20-4:04:02]**

Witness eleven was Daryl Rice and he testified about investigating a broken windshield on May 31, 2007. The defense again objected that this was "uncharged conduct" and requested a continuing objection. The prosecutor replied that he was showing a pattern of conduct. **[10-08-13 CD B 4:04:45-4:11:18]**

Witness twelve was Johnny Zamora, and he testified about investigating a broken window on June 19th, 2007, at the residence where the killing took place. He testified that he talked to Debra Ramirez and tried to say who she told him had done it. The defense objected on confrontation and hearsay grounds and the judge sustained the objection. The prosecution had no further questions. **[10-08-13 CD B 4:14:35-4:17:40]**

During cross-examination the prosecution asked Mr. Ramirez if he had head-butted a police officer. The defense objected that the prosecution was offering the evidence under Rule 404. **[10-10-13 CD B 1:54:30-1:56:15]**

Cumulatively, the introduction of these acts served to create an impression of Mr. Ramirez as troublesome and a lawbreaker. The testimony about the trespass notice was of no relevance. Mr. Ramirez was never charged with trespassing, and there was no defense that he was on the property by mistake nor testimony that he had been invited on it, though it was unclear if the trespass warning was properly issued.

The testimony about the broken windshield was not linked to the killing. The prosecutor asserted that it was introduced to show "a pattern of conduct" but it was more indicative of criminal propensity evidence. The Court of Appeals has noted that care is needed to avoid confusion over such matter, but has held that it was proper to admit a prior bad act when it was used to prove an element of the crime charged. *State v. Gutierrez*, 2011-NMCA-088, ¶¶ 20-21. In Mr. Ramirez's case, the breaking of a windshield was not an element of any crime charged.

The testimony about the broken window on the house was never explicitly linked to Mr. Ramirez. The witness never stated who had broken the window. He tried to testify that Debra Ramirez had blamed someone but was unable to continue when the judge sustained defense objections. The implication, however, was that Mr. Ramirez had committed the act. Not only

was the broken window not connected with the killing, but the prosecution could not show that Mr. Ramirez had committed the prior bad act.

New Mexico does not appear to have ever explicitly adopted a required level of proof that a person committed a prior bad act before the admission of said bad act. Sister state Arizona has adopted a "clear and convincing" standard of proof. *State v. Terrazas*, 189 Ariz. 580, 583-4, 944 P.2d 1194 (1997) (listing cases in a lengthy discussion of the issue). In Mr. Ramirez's case, there was no evidence other than the implication that the prosecution wouldn't have raised the issue unless Mr. Ramirez had indeed committed the deed.

The question about head-butting a police officer was likewise not connected by the prosecution in any manner to the killing of Mr. Robledo.

F. The court abused its discretion by not declaring a mistrial.

The defense requested a mistrial due to prosecutorial misconduct during the cross-examination of Mr. Ramirez. The standard of review under such circumstances is for an abuse of discretion. *State v. Stills*, 1998-NMSC-009, ¶ 49, 125 N.M. 66.

During the cross-examination of Mr. Ramirez the prosecutor asked "And you've done a significant amount of legal research on how to get the jury to buy this?" The defense objected and moved for a mistrial. The judge

directed the prosecution to lay a foundation and the prosecutor asked Mr.

Ramirez "Do you recall giving a lot of requests to go the law library to

research how to beat your charges?" The defense objected once again and

the judge said that he would not allow those questions, but he stated that he

would not declare a mistrial. **[10-10-13 CD B 1:56:15-1:58:25]**

New Mexico does not appear to have a case directly on point, but

Michigan has dealt with this issue. In that case, during closing argument the

prosecution commented about the defendant's having done legal research

and called him a "jailhouse lawyer" and "manipulative" because he had

assisted in his own defense. *People v. Sterling*, 154 Mich.App. 223, 232, 397

N.W.2d 182 (1986).

In that case the court stated "We fail to see how this evidence could

possibly be relevant to the issue of defendant's guilt. Moreover, the

prosecution's argument tended to chill the defendant's exercise of his

constitutional right to the effective assistance of counsel. That right includes

the right to assist in his own defense. The prosecution's argument shows a

calculated and pervasive strategy of penalizing the defendant for the exercise

of his constitutional rights by characterizing defendant's actions as

manipulative abuses of 'the system.'" *Id.* (citation omitted). The court found

that the prosecution's comments, along with other improper remarks, created

a miscarriage of justice. *Id.*

In Mr. Ramirez's case the prosecutor used cross-examination rather

than closing arguments, but in the posing of his questions he made the same

point. This conduct, combined with the previous introduction of prior bad

acts (including one that could not even be pinned on Mr. Ramirez) warranted

a mistrial.


## IV.    CONCLUSION

For the reasons stated herein, Mr. Ramirez asks this Court to reverse

his convictions in their entirety and remand for retrial.

Respectfully submitted,
Jorge A. Alvarado
Chief Public Defender


*Kelly Chaycook for:*
Steven J. Forsberg
Assistant Appellate Defender
Law Office of the Public Defender
505 Marquette NW, Ste 120
Albuquerque, NM 87102
(505)796-4405


## CERTIFICATE OF SERVICE

46

I hereby certify that a copy of this pleading was served by hand delivery to the Attorney General's Box in the Supreme Court this 12th day of August, 2014.

Public Defender Department

ORIGINAL

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**No. 34,576**
    Prior appeal, *State v. Ramirez*, 2011-NMSC-025, 149 N.M. 698

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

**v.**

**ALBERT JOSE RAMIREZ,**

    Defendant-Appellant.

## <u>STATE OF NEW MEXICO'S ANSWER BRIEF</u>
### (Oral Argument Requested)

**Appeal from the Ninth Judicial District Court
Curry County, New Mexico
The Honorable Teddy L. Hartley, District Judge**

SUPREME COURT OF NEW MEXICO
FILED

JAN – 9 2015

HECTOR H. BALDERAS
Attorney General

YVONNE M. CHICOINE
Assistant Attorney General
P.O. Drawer 1508
Santa Fe, NM   87504-1508
505/827-6928

January 9, 2015

Counsel for Plaintiff-Appellee

**EXHIBIT
K**

# TABLE OF CONTENTS

**Record on Appeal and Transcript** ............................................................ iii

**Statement of Compliance** ....................................................................... iii

**TABLE OF AUTHORITIES** ................................................................... iv

**SUMMARY OF PROCEEDINGS** .............................................................. 1

I.    Nature of the Case ............................................................................. 1
II.   Summary of Facts .............................................................................. 1
III.  Course of Proceedings ....................................................................... 5
IV.   Disposition Below ............................................................................ 20

**ARGUMENT** .......................................................................................... 21

I.    The trial court did not violate Defendant's right to due process when it
      denied Defendant's mid-trial motion for a recess to reevaluate his
      competency to stand trial. ................................................................. 21

II.   Defendant has not satisfied the requirements for consideration of a
      claim of ineffective assistance of counsel on direct appeal. ..................... 33

III.  The trial court did not err when it ruled Deputy Loomis's isolated,
      unsolicited comment that he tried to interview Defendant did not
      constitute prohibited commentary on Defendant's Fifth Amendment
      right to remain silent. ...................................................................... 36

IV.   The record does not support Defendant's claim that the jury saw him
      shackled. : .................................................................................... 37

V.    The trial court did not err when it allowed the prosecution to present
      evidence of Defendant's animus toward Mr. Robledo and to cross-
      examine Defendant regarding previous acts of violence. ......................... 38

VI.   The trial court did not err when it denied Defendant's motion for a
      mistrial after the prosecutor questioned Defendant about the amount
      of time Defendant spent doing legal research. ...................................... 43

CONCLUSION ...................................................................................................47

REQUEST FOR ORAL ARGUMENT ................................................................47

Certificate of Service.........................................................................................47

## Record on Appeal and Transcript

The record on appeal consists of –

1.    a two-volume record proper,

2.    a transcript consisting of two unnumbered CDs, with logs,

3.    a supplemental transcript consisting of a single CD, with log, and

4.    an envelope containing the exhibit from Defendant's September 15, 2008, competency hearing (cited as, e.g., **"Hrg. Ex., Rept. at 2"**), and exhibits from Defendant's October 2013 trial (cited as, e.g., **"Trial Ex. 89"**).

The record on appeal also includes a sealed envelope believed to contain the trial court's notes, which the State did not move to review.  **[*See* July 1, 2014, Notice]**

Citations to the transcript reflect the CD number, the date, and the time, e.g., **"[CD 12-17-2009, 5:09:44 to 5:10:41]**."  The supplemental transcript, which consists of proceedings held in chambers on October 10, 2013, is cited as, e.g., **"[Supp. CD, 10:41:06 to 10:42:18]**."  Times are based on the "TheRecord Player" (FTR) playback clock, which differ from the logs by as much as five minutes.

## Statement of Compliance

Pursuant to Rule 12-213(G) NMRA, this brief was prepared using a proportionally-spaced typeface, Times New Roman.  The body of the brief contains 10,721 words, as calculated by Microsoft Word 2010.

iii

## **TABLE OF AUTHORITIES**

### **New Mexico Cases**

*In re Adoption of Doe,* 1984-NMSC-024, 100 N.M. 764.........................................34

*State v. Balderama,* 2004-NMSC-008, 135 N.M. 329 ............................................39

*State v. Barber,* 2004-NMSC-019, 135 N.M. 621 ..................................................24

*State v. Boyer,* 1985-NMCA-029, 103 N.M. 655....................................................36

*State v. Carter,* 1915-NMSC-084, 21 N.M. 166 .....................................................44

*State v. Castillo,* No. 31,054 (N.M. Ct. App. Aug. 28, 2013)
      (non-precedential), *cert. denied,* 2013-NMCERT-010 (No. 34,342,
      Oct. 30, 2013) .............................................................................................32

*State v. Chavez,* 2008-NMSC-001, 143 N.M. 205 ..................................................29

*State v. Correa,* 2009-NMSC-051, 147 N.M. 291...................................................21

*State v. Crocco,* 2014-NMSC-016 ..........................................................................33

*State v. Cunningham,* 2000-NMSC-009, 128 N.M. 711 ..........................................36

*State v. Flores,* 2005-NMCA-135, 138 N.M. 636............................22, 23, 26, 28, 32

*State v. Franklin,* 1967-NMSC-151, 78 N.M. 127 ..................................................36

*State v. Gallegos,* 2007-NMSC-007, 141 N.M. 185.................................................39

*State v. Garcia,* 2000-NMCA-014, 128 N.M. 721 ...........................................23, 29

*State v. Guerra,* 2012-NMSC-027..................................................................36, 43

*State v. Handa,* 1995-NMCA-042, 120 N.M. 38 ....................................................45

*State v. Holly,* 2009-NMSC-004, 145 N.M. 513...............................................38, 42

*State v. Hovey*, 1969-NMCA-049, 80 N.M. 373 ...................................................23

*State v. Lujan*, 1975-NMSC-017, 87 N.M. 400.......................................................24

*State v. Martinez*, 1999-NMSC-018, 127 N.M. 207................................................39

*State v. Montoya*, 2014-NMSC-032 ......................................................................38

*State v. Montoya*, 2010-NMCA-067, 148 N.M. 495 ..............................................22

*State v. Moreland*, 2008-NMSC-031, 144 N.M. 192 ..............................................28

*State v. Noble*, 1977-NMSC-031, 90 N.M. 360..................................................22, 23

*State v. Ortega*, 2014-NMSC-017 .........................................................................33

*State v. Rael,* 2008-NMCA-067, 144 N.M. 170 .................................................23, 28

*State v. Ramirez*, 2011-NMSC-025, 149 N.M. 698.............................................1, 12

*State v. Ramos-Arenas*, 2012-NMCA-117 ............................................................44

*State v. Rojo*, 1999-NMSC-001, 126 N.M. 438......................................................39

*State v. Samora*, 2013-NMSC-038 .......................................................................37

*State v. Sanchez*, 1995-NMSC-053, 120 N.M. 247 ...............................................34

*State v. Serna*, 2013-NMSC-033 ..........................................................................43

*State v. Smith*, 2001-NMSC-004, 130 N.M. 117....................................................41

*State v. Solomon*, No. 33,975 (N.M. S. Ct. Aug. 4, 2014) (non-precedential)........32

*State v. Tollardo*, 2012-NMSC-008.......................................................................43

*State ex rel. King v. B & B Inv. Group, Inc.*, 2014-NMSC-024..............................27

*Stueber v. Pickard*, 1991-NMSC-082, 112 N.M. 489 ............................................28

## Federal Cases

*Drope v. Missouri*, 420 U.S. 162 (1975) ......................................................26, 27, 28

*Illinois v. Anderson*, 397 U.S. 337 (1970) ...............................................................31

*Indiana v. Edwards*, 554 U.S. 164 (2008) ...............................................................22

*Strickland v. Washington*, 466 U.S. 668 (1984) ......................................................33

*United States v. Boigegrain*, 155 F.3d 1181 (10th Cir. 1998)................................29

## Cases from Other Jurisdictions

*Moye v. Warden*, No. CV98412103S (Conn. Super. Ct. Mar. 27, 2014)
    (non-precedential)........................................................................................34

*People v. Buckley*, 424 Mich. 1, 378 N.W.2d 432 (1985).......................................46

*People v. Sterling*, 154 Mich. App. 223, 397 N.W.2d 182 (1986)....................45, 46

## Federal Constitutional Provisions

U.S. Const., amend V.................................................................................................37

## New Mexico Statutes, Rules and Jury Instructions

NMSA 1978, § 31-9-1 (1993).....................................................................................23

NMSA 1978, § 31-9-1.1 (1993)..................................................................................24

NMSA 1978, § 31-9-1.2 (1993)..................................................................................24

NMSA 1978, § 31-9-4 (repealed 2010) .....................................................................18

Rule 5-602 NMRA...............................................................................................22, 23

Rule 5-802 NMRA......................................................................................................33

Rule 11-404 NMRA..............................................................................................38, 41

Rule 11-405 NMRA ............................................................................................... 41

Rule 12-213 NMRA ......................................................................................... iii, 47

Rule 12-214 NMRA ............................................................................................... 47

Rule 12-216 NMRA .......................................................................................... 24, 41

Rule 12-307 NMRA ............................................................................................... 47

UJI 14-5104 NMRA ........................................................................................... 9, 28

# SUMMARY OF PROCEEDINGS

## I.    Nature of the Case

Following remand, *see State v. Ramirez*, 2011-NMSC-025, ¶ 21, 149 N.M. 698, a jury found Albert Jose Ramirez (Defendant) guilty of the willful and deliberate murder of his mother's long-term boyfriend Eladio Robledo and two counts of tampering with evidence.  The trial court sentenced Defendant to life imprisonment, plus six years.

On appeal, Defendant argues that the trial court violated his right to due process when it denied his mid-trial motion to have his competency reevaluated, and that his trial counsel was ineffective.  Defendant also argues he was denied a fair trial because (1) a law enforcement officer made an unsolicited comment about trying to obtain a post-arrest statement from him, (2) the jury knew he was restrained the first day of trial, (3) the trial court allowed prior bad act evidence to come before the jury, and (4) the prosecutor asked him a question about the amount of legal research he had performed.

The State asks this Court to reject Defendant's claims and affirm his convictions.

## II.    Summary of Facts

Early in the afternoon of July 12, 2007, Defendant went to the Clovis, New Mexico, home owned by his mother, Debra Ramirez, and Mr. Robledo ("the

house") after calling the house thirty or forty times and not getting an answer.  **[CD 10-10-13, 9:51:32 to 9:51:49, 1:27:38 to 1:27:57]**  Defendant believed Mr. Robledo was preventing his mother from helping him and "liked to see [him] suffering."  **[CD 10-10-13, 1:50:00 to 1:50:13]**  Defendant's mother believed Defendant was jealous of Mr. Robledo.[1]  **[Hrg. Ex., Rept. at 4, 7]**

Although his mother's and Mr. Robledo's cars were there, no one answered when Defendant knocked at the front door.  **[CD 10-10-13, 1:47:03 to 1:47:07]**  Defendant tried to enter the house and, finding the door locked, went to the back of the house and followed Mr. Robledo to the garage when he left the house to put away a vacuum cleaner.  **[CD 10-10-13, 1:46:54 to 1:47:03, 1:50:19 to 1:50:36]**

Defendant shot Mr. Robledo, and then chased after Mr. Robledo as he ran to the front of the house.  **[CD 10-7-13, 3:47:50 to 3:48:12]**  When Mr. Robledo fell, Defendant reached out and shot Mr. Robledo twice more in the head.  **[CD 10-7-13, 2:38:12 to 2:38:21, 2:38:35 to 2:39:01, 3:49:50 to 3:51:27]**  Sam Saiz, an across-the-street neighbor, and Grace Finkey, a passing motorist, saw Defendant shoot Mr. Robledo.

After shooting Mr. Robledo, Defendant removed the red shirt and denim shorts he was wearing and ran from the house up an alley.  **[CD 10-8-13, 9:49:10 to 9:49:24, 9:50:25 to 9:50:40]**  About a block away, he threw the gun in a

---

[1]Defendant's mother avoided service of the State's subpoena, and did not appear as a witness at trial.  **[*See* CD 1-8-14, 11:03:20 to 11:04:24]**

2

dumpster behind a Rags to Riches store; two blocks later he threw away his shorts. **[CD 10-8-13, 11:24:43 to 11:25:25, 11:27:03 to 11:27:07]** Defendant threw away his shorts because he "knew [police] were going to be looking for [him]." **[CD 10-10-13, 10:23:42 to 10:24:00]** He threw away the gun because he "did not want to carry the weapon with [him]," "was trying to get away . . . because [he] knew he was in some trouble. . .," and believed law enforcement's inability to find the gun "would help [him] get out of jail." **[CD 10-10-13, 10:23:04 to 10:23:42, 10:26:31 to 10:27:35, 1:29:28 to 1:29:37, 1:36:40 to 1:37:44]**

First responders found Mr. Robledo on the ground bleeding from the head and gasping for air. **[CD 10-8-13, 9:13:10 to 9:13:20]** Mr. Robledo was pronounced dead about twenty-five minutes after being shot. **[*See* CD 10-9-13, 9:38:20 to 9:38:29]** An autopsy showed Mr. Robledo suffered blunt force injuries to his face, and had been shot in the right forehead and the back of the head. **[Trial Ex. 89, 91; CD 10-9-13, 8:51:30 to 8:51:44, 8:53:34 to 8:53:45, 9:04:52 to 9:05:00]** He also suffered a gunshot wound to his left arm and two gunshot wounds to his chest. **[*See* Trial Ex. 95]** The Office of the Medical Investigator (OMI) ruled Mr. Robledo's death a homicide, caused by multiple gunshot wounds. **[CD 10-9-13, 9:24:38 to 9:25:01]**

On July 15, 2013, three days after the murder, police found Defendant hiding in a friend's apartment and arrested him. **[CD 10-8-13, 2:02:40 to 2:02:51]**

Shortly after being booked into the Curry County Detention Center, Defendant telephoned his aunt and one of his "homies," Crimson Maes. **[*See* Trial Ex. 83; Trial Ex. 84]** In the call to his aunt, Defendant told her he needed her to tell his cousin about a "toy" or "present" he left in the dumpster behind Rags to Riches. **[Trial Ex. 83, 5:07 to 6:13, 7:04 to 7:16]**[2] He told his aunt, "If they don't have that, I can get out." **[CD 10-8-13, 3:48:10 to 3:49:05]** Defendant told Mr. Maes he needed to "go right now" to Rags to Riches for "bam bam." **[Trial Ex. 84, 1:20 to 1:49]** Police believed these phone calls related to the gun Defendant used to kill Mr. Robledo, and searched the Rags to Riches' dumpster, but did not find the gun. **[CD 10-8-13, 3:14:48 to 3:15:57]**

On April 22, 2007, three months before Defendant murdered him, Mr. Robledo obtained a criminal trespass notice barring Defendant from returning to the house. **[Trial Ex. 87; CD 10-8-13, 3:52:54 to 3:55:30]** Defendant testified he returned to the house anyway. **[CD 10-10-13, 1:09:47 to 1:10:23]** On May 31, 2007, two months before the murder, Defendant broke the windshield of Mr. Robledo's car and told police he did it because he "got mad." **[CD 10-8-13, 4:05:00 to 4:08:30; CD 10-10-13, 1:12:41 to 1:13:14]** On June 19, 2007, a month before the murder, Ms. Ramirez filed a police report after Defendant broke a front

---

[2]The recordings are cited because they are clearer than the transcript. **[*See* RP 335]**

window of the house when no one answered the door. **[Trial Ex. 1, CD 10-8-13, 4:15:14 to 4:17:45; CD 10-10-13, 1:11:07 to 1:12:41]**

First thing on June 20, 2007, the day after he broke the front window of the house, Defendant went to a local gun shop where he insisted he needed a gun without paperwork. **[CD 10-8-13, 4:20:04 to 4:21:58]** The gun shop manager refused to sell Defendant a handgun, and filed a police report because he believed Defendant's insistence about needing a gun was suspicious and should be investigated. **[CD 10-8-13, 4:22:46 to 4:23:12; 10-9-13, 11:51:00 to 11:52:00]** After asking around for a while, Defendant bought the gun he used to kill Mr. Robledo from the person from whom he bought his "weed." **[CD 10-10-13, 1:17:00 to 1:17:39]**

On July 11, 2007, the day before the murder, Defendant was "mad at everybody" because Mr. Robledo would not allow his mother to answer the phone. **[CD 10-10-13, 3:13:40 to 3:14:01; 3:17:05 to 3:17:15]** That day, he went to Walmart where he paid James Patterson, whom he did not know, to purchase .22 caliber ammunition for him, telling Mr. Patterson he needed the ammunition to go camping. **[CD 10-9-13, 9:43:50 to 9:44:55, 9:53:39 to 9:54:04]**

### III.    Course of Proceedings

Following a preliminary hearing, the State charged Defendant with the willful and deliberate murder of Mr. Robledo, tampering with evidence based on

Defendant's disposal of the gun, and tampering with evidence based on Defendant's disposal of his denim shorts. **[RP 1-3]**

At a December 10, 2007, pre-trial conference Defendant's counsel alerted the trial court that Defendant's competency to stand trial might be an issue. **[CD 12-10-07, 1:35:40 to 1:35:48]** Two weeks later, on December 28, 2007, he filed a notice that Defendant may raise defenses of insanity and the inability to form specific intent. **[RP 127]** He also initiated a civil proceeding to have Defendant evaluated for competency. *See* D-0905-CV-200700713.

On January 14, 2008, Defendant's counsel gave notice to the court that competency proceedings had been initiated "due to [D]efendant's inability to assist counsel in his defense." **[RP 136]** On January 28, 2008, the trial court ordered a forensic evaluation of Defendant. **[RP 141]** The trial court suspended proceedings in Defendant's case pending outcome of that evaluation. **[CD 2-27-08, 9:03:32 to 9:03:45]** Defendant was evaluated on March 10, 2008, and in a March 14, 2008, Dr. Maxann Schwartz concluded Defendant was not competent to stand trial. **[CD 2-27-08, 8:59:00 to 8:59:13; CD 10-9-13, 10:19:57 to 10:20:20]**

On April 17, 2008, after the parties stipulated to Dr. Schwartz's report and to the trial court entering a finding that Defendant was not competent to stand trial and was dangerous, the trial court entered an order committing Defendant to the New Mexico Behavioral Health Institute at Las Vegas (NMBHI) for treatment to

6

competency. **[RP 146-49]** On June 5, 2008, NMBHI admitted Defendant for

round-the-clock observation, evaluation and treatment. **[Hrg. Ex., Rept. at 1; CD**

**9-15-08, 1:49:19 to 1:49:51]**

On August 18, 2008, NMBHI issued its report. **[*See* Hrg. Ex., Rept. at 1]**

The report, prepared by Dr. Joanne Burness, a licensed clinical psychologist,

concluded Defendant was competent to stand trial, and was "feigning and

malingering psychiatric symptoms and cognitive impairment" to avoid

adjudication. **[Hrg. Ex., Rept. 9; *see* CD 9-15-08, 2:12:32 to 2:12:42]** Dr.

Burness explained Defendant –

> tried to present . . . evidence of psychiatric illness, medical and
> physical health problems and cognitive impairment[,] none of which
> in this examiner[']s and the opinion of the medical physician and the
> staff psychiatrist are genuine.

**[Hrg. Ex., Rept. at 1]** She concluded –

> there is substantial evidence that if [Defendant] chooses he can
> demonstrate adequate rational and factual knowledge of his charges,
> the court process and rationally assist in the preparation of his
> defense.

**[Hrg. Ex., Rept. at 1-2]** At the September 15, 2008, hearing on Defendant's

competency, the trial court admitted Dr. Burness's report into evidence without

objection. **[CD 9-15-08, 1:38:50 to 1:38:59]**

At the hearing, Dr. Burness explained Defendant refused to communicate or

cooperate when he arrived at NMBHI, and then refused to come out of his room to

be evaluated; he cooperated in the evaluation only after being told he could not avoid it. **[CD 9-15-08, 2:20:38 to 2:20:55, 2:27:18 to 2:27:26; Hrg. Ex., Rept. at 5-6]** Defendant demanded to see the staff psychiatrist and a medical doctor every day, but non of Defendant's physical complaints could be validated; he admitted feigning illness to avoid evaluation. **[CD 9-15-08, 1:56:00 to 1:57:18; Hrg. Ex., Rept. at 5-6]**

Dr. Burness met with Defendant multiple times, personally observed his behaviors, and spoke regularly with those involved in his treatment and observation. **[CD 9-15-08, 1:42:44 to 1:44:15]** She testified NMBHI staff received information from the jail that Defendant had been asking other inmates how to "fool the system to fake mental illness," and it took the staff only about two weeks to figure out Defendant's statements and behaviors were not consistent with mental illness. **[CD 9-15-08, 1:52:20 to 1:52:32, 2:14:17 to 2:14:32]** In fact, she believed if Defendant had access to the Diagnostic and Statistical Manual of Mental Disorders (DSM) he would decide he had every psychiatric condition it identified. **[CD 9-15-08, 2:06:25 to 2:06:34]** Dr. Burness expressed her opinion that Defendant is a "disturbed young man . . . but he is not mentally ill." **[CD 9-15-08, 1:57:18 to 1:57:48, 2:06:25 to 2:06:34]**

While at NMBHI, Defendant invalidated the Millon Clinical Multiaxial Inventory (Third Edition) (MCMI-III), a self-report measure of 175 true/false

statements for obtaining information on personality functioning and disorders and a range of mental health indicators, by answering "true to pretty much everything." **[CD 9-15-08, 2:01:20 to 2:01:44, 2:27:59 to 2:28:14; Hrg. Ex., Rept. at 6]** He scored forty-seven on the Structured Inventory of Malingering Symptomology (SIMS), a screening measure on which a score greater than fourteen suggests symptom over-exaggeration and reflects "a deliberate effort to be more impaired" than one is in reality. **[CD 9-15-08, 2:03:10 to 2:04:30; Hrg. Ex., Rept. at 6-7]** Defendant regularly attended anger management and substance abuse group sessions, but avoided the competency restoration group, signaling to NMBHI staff that he wanted to avoid being found competent. **[CD 9-15-08, 1:59:29 to 2:00:01]**

Based on Defendant's interactions with NMBHI staff and the Revised Competency Assessment Instrument (R-CAI), Dr. Burness believed Defendant satisfied the statutory requirements for competency: He understood the nature and significance of the criminal proceedings against him, he had a factual understanding of his criminal charges and he would be able to assist in his defense. **[Hrg. Ex., Rept. at 8]** *See* UJI 14-5104 NMRA. For example, while adamantly denying *any* knowledge of court procedures and the trial process, Defendant actively pursued information about how first-degree murder could be reduced to a fourth-degree felony, talked about the types of pleas available to him, and discussed how his charges would be dismissed if he was found incompetent. **[CD**

**9-15-08, 1:52:38 to 1:53:05, 2:08:27 to 2:09:08]** After learning incompetency would not result in dismissal of his charges, Defendant was clear about the outcome he desired: He wanted one year of pre-conviction confinement credit, one year of house arrest, and four years of probation, which he believed was possible if the first-degree murder charge was reduced based on a claim of temporary insanity. **[CD 9-15-08, 1:53:05 to 1:53:39, 2:10:38 to 2:11:00]** He also seemed to decide he would prefer commitment to incarceration, and asked if he should be thinking about claiming he was guilty but mentally ill, or not guilty by reason of insanity. **[CD 9-15-08, 2:07:50 to 2:08:27, 2:13:02 to 2:14:18]** Defendant told staff he was happy to go before a jury, which would be sympathetic after he cried and explained how distressing his life had been. **[CD 9-15-08, 2:11:25 to 2:12:05, 2:10:35 to 2:11:00]**

Dr. Burness believed Defendant was capable of communicating with others, and would be able to testify on his own behalf. **[CD 9-15-08, 2:33:30 to 2:33:56]** She also believed Defendant would be able to assist his attorney, but problems might arise from Defendant's "difficult personality and his unwillingness to accept any responsibility for his actions in addition to his strong tendency to blame others and to [] feign[] mental illness, cognitive and physical impairment in order to [] avoid adjudication." **[Hrg. Ex., Rept. at 9]** She described Defendant's personality style as "very histrionic, very dramatic," and emphasized personality

10

style is, to some degree, voluntary and the result of choice. **[CD 9-15-08, 1:53:54 to 1:54:01, 2:35:30 to 2:35:55; Hrg. Ex., Rept. at 7]** The medications prescribed for Defendant at NMBHI (e.g., Ativan and Zoloft) were not for managing symptoms of a psychotic or thought disorder, but to help Defendant manage his mood. **[CD 9-15-08, 1:57:50 to 1:58:45, 2:15:39 to 2:15:59; Hrg. Ex., Rept. at 8]** Defendant did not testify or offer contrary evidence.

The day after the hearing the trial court entered an order finding Defendant competent to stand trial. **[RP 158-59]**

When Defendant's case first went to trial in January 2009, the parties reached a plea agreement during voir dire covering this and two other cases.[3,4] **[CD 1-26-09 (Chambers), 3:12:42 to 3:13:02;** *see* **RP 300-04]** Under the agreement, Defendant pleaded guilty to first-degree murder, battery on a peace officer, and assault on a peace officer, and the trial court sentenced him concurrently for a sentence of life imprisonment. **[CD 1-26-09 (Chambers), 3:13:34 to 3:14:11; RP 305-07]** The prosecution agreed to dismiss the two counts of tampering with evidence in this case and the assault charge arising out of Defendant's third case. **[CD 1-26-09 (Chambers), 3:14:49 to 3:14:59]**

---

[3]The first of these cases arose out of a February 2008 incident where Defendant battered two officers who were transporting him to court. *See* D-905-CR-200800748.
[4]The other case involved Defendant's assault of an inmate at the jail.

11

On February 25, 2009, Defendant moved to withdraw his plea "since he was not in the right state of mind when he entered the plea." **[RP 309-12, ¶ 10]** Following a June 25, 2009, hearing, at which Defendant stated he wanted another competency evaluation, the trial court denied Defendant's motion. **[CD 6-25-09, 11:01:16 to 11:02:30; RP 320; *see* RP 335]** Defendant appealed. **[RP 325-26]**

On June 13, 2011, this Court vacated Defendant's convictions on the grounds that Defendant's plea not knowing, intelligent and voluntary and remanded his case for trial. ***[See* RP 340]** *See Ramirez*, 2011-NMSC-025, ¶ 21.

On August 18, 2011, when the parties appeared again in trial court, Brett Carter, announced his and the public defender office's withdrawal as Defendant's counsel because Defendant was refusing to speak with him and had claimed ineffective assistance of counsel in his appeal. **[CD 8-18-11, 10:03:30 to 10:04:15]** In court that day, Defendant refused to acknowledge the trial court and was completely non-responsive, prompting the trial court to observe Defendant might need another evaluation. **[CD 8-18-11, 10:01:44 to 10:01:48, 10:06:43 to 10:08:45]**

On September 12, 2011, Defendant's new counsel, Jesse Cosby, appeared and agreed Defendant's competency needed to be reevaluated. **[CD 9-12-11, 10:54:41 to 10:54:51]** Defendant appeared telephonically from the jail, and according to the caseworker "would not speak at all." **[CD 9-12-11, 10:59:11 to**

12

**10:59:29]** On September 26, 2011, in response to Defendant's motion for an evaluation to determine Defendant's competency to stand trial and his sanity at the time of the shooting, the trial court ordered the Department of Health (DOH) to perform a local forensic evaluation of Defendant. **[RP 372-73; RP 374-75]**

At a March 9, 2012, hearing, the trial court indicated Defendant was refusing to leave his cell or say anything. **[CD 3-9-12, 11:02:18 to 11:02:35]** Mr. Cosby explained that Dr. Richard Fink, whom DOH had retained to perform Defendant's evaluation, could not render an opinion because Defendant "would not cooperate with him in any way, shape or form to allow any assessment to be done." **[CD 3-9-12, 11:02:43 to 11:03:05, 11:06:17 to 11:06:46]** Mr. Cosby informed the court Defendant also was refusing to communicate with him. **[CD 3-9-12, 11:03:40 to 11:04:03]** As recommended by Dr. Fink, Mr. Cosby asked the trial court order Defendant transported to NMBHI where he could be evaluated and observed on a continuous basis and where a determination could be made whether Defendant's total lack of cooperation was the result of mental illness or intransigence. **[CD 3-9-12, 11:05:12 to 11:06:22, 11:08:55 to 11:09:08]** The trial court agreed and, on March 15, 2012, ordered Defendant transported to NMBHI for evaluation. **[RP 386-87; RP 388]**

On June 25, 2012, when the parties next appeared, Defendant, appearing telephonically, refused to hold the phone to his ear to participate and the trial court

directed the jail to put the call on speakerphone. **[CD 6-25-12, 2:45:20 to 2:45:45]**
After learning Defendant had not been transported to NMBHI, the trial court
emphasized it was "absolutely essential" for NMBHI to perform an evaluation and
stated it would sign any order and use whatever influence it had to achieve that
purpose. **[CD 6-25-12, 2:51:20 to 2:51:48, 2:52:16 to 2:52:40]**

On July 18, 2012, the Curry County Sheriff's Office transported Defendant
to NMBHI. **[RP 392]** At NMBHI, Defendant refused to participate in the
evaluation, and Dr. Douglas Davis, the examining psychologist, reported
Defendant's "actions seemed quite clearly volitional and not the result of mental
illness."

The trial court set a competency hearing for October 9, 2012, and the State
subpoenaed Dr. Davis to testify. **[RP 395; RP 396]** Defendant sought, and the
trial court ordered, a continuance of the hearing on the basis that Defendant
apparently had agreed to be evaluated, and would meet with Dr. Fink on November
30, 2012. **[RP 400]**

On March 1, 2013, the parties stipulated to an order accepting Dr. Fink's
January 17, 2013, report and agreeing Defendant was competent to stand trial.
**[RP 405; *see also* CD 1-8-14, 10:27:14 to 10:28:47]** On April 11, 2013, the trial
court set Defendant's case for trial from August 5-9, 2013. **[RP 409]**

14

Following the finding of competency and after nearly two years of silence, Defendant became an active participant in the process.  At a July 29, 2013, status conference, he addressed the court regarding the letters he had written stating he wanted new counsel because Mr. Cosby had not fulfilled his duties and he was confused because Mr. Cosby was not telling him what was happening.  **[CD 7-29-13, 9:35:13 to 9:36:25]**  Defendant asked for a continuance to get a new attorney, to prepare his case and to have another psychiatric evaluation, which would show he was suffering from "psychosomatic delusions and hallucinations and severe depression and anxiety."  **[CD 7-29-13, 9:41:06 to 9:41:32, 9:36:58 to 9:37:20, 9:39:58 to 9:40:10]**  The trial court reviewed Defendant's file, stated it was confident Mr. Cosby was providing Defendant competent representation, and denied Defendant's requests for substitute counsel and a continuance.  **[CD 7-29-13, 9:42:31 to 9:43:52]**  Defendant persisted in his desire for a continuance, explaining he had "always been remorseful and everything," and he "would have took the plea, but they gave me two-and-one-half extra years that [he] wasn't supposed to get."  **[CD 7-29-13, 9:46:45 to 9:46:56]**

Ultimately, Defendant's case did not go to trial until October 7, 2013.  The first day of trial, the jury heard testimony from Mr. Saiz, Ms. Finkey and a crime scene investigator.  The second day of trial, after the trial court released the jury for the day, the prosecutor emphasized its first two witnesses the next day needed to

15

testify in a timely manner because of out-of-state travel arrangements and a serious medical condition. **[CD 10-8-13, 4:35:10 to 4:35:50]**

When the parties appeared the third morning of trial, Mr. Cosby told the trial court Defendant had informed him he was feeling unwell, but had not completed the paperwork to be examined by the jail nurse. **[CD 10-9-13, 8:33:05 to 8:33:43]** The trial court refused to delay trial so Defendant could be transported back to the jail for examination, and stated trial would proceed while the nurse was brought to the courthouse. **[CD 10-9-13, 8:33:50 to 8:34:04, 8:35:25 to 8:35:39, 8:38:30 to 8:38:47]** Defendant told the court he was concerned the jury would look at him and think he did not care. **[CD 10-9-13, 8:38:30 to 8:39:00]**

After the nurse examined Defendant and concluded he was fine **[CD 10-9-13, 10:19:18 to 10:19:22]**, Mr. Cosby told the trial court Defendant was telling him "he did not understand," "did not know how to behave," and was "not capable" of assisting in his defense. **[CD 10-9-13, 10:16:15 to 10:16:43, 10:17:28 to 10:17:37]** Mr. Cosby said he did not know whether Defendant was malingering or decompensating, and asked the court to recess trial and order an immediate competency evaluation. **[CD 10-9-13, 10:17:37 to 10:18:35]**

The trial court stated it understood Mr. Cosby's concerns, but his observations of Defendant that morning, coupled with significant information in the file that Defendant was a malingerer, led it to believe Defendant was

malingering. **[CD 10-9-13, 10:21:03 to 10:21:24]** It denied Defendant's motion, and after listening to Defendant's emotional statement about the physical and psychological problems he faced and Mr. Cosby's observations regarding Defendant's behavior, asked everyone to remain alert to anything that might require it to revisit its ruling. **[CD 10-9-13, 10:22:32 to 10:25:43, 10:26:40 to 10:27:35, 10:28:00 to 10:28:52]**

After the State rested four hours later, Mr. Cosby reported Defendant was increasingly difficult to deal with. **[CD 10-9-13, 2:38:44 to 2:40:04]** In response, the court read from the statement of issues filed in Defendant's first appeal **[see RP 332]**, concluded Defendant was persisting in "faking" his symptoms as observed by Dr. Burness, and confirmed its ruling that Defendant was competent to stand trial. **[CD 10-9-13, 3:11:15 to 3:13:24]**

The following morning, at Defendant's behest, Mr. Cosby made a record regarding his decision not to call Josie Cacias, whom Defendant wanted to testify. **[CD 10-10-13, 9:21:04 to 9:22:20]** Defendant also made a statement regarding how his defense had been limited, his mental illnesses, the amount of media his case was receiving, the quality of Mr. Cosby's representation, motions he wanted filed, and other issues he would present in his appeal; he also demanded to be the first defense witness so he could communicate his defense. **[CD 10-10-13, 9:22:30 to 9:25:57, 9:26:18 to 9:27:00]**

17

Defendant was the first defense witness.  Throughout his direct examination,
Defendant refused to answer many questions directly saying he wanted to "explain
everything." [*See* **CD 10-10-13, 9:39:42 to 9:40:17**]  When told he needed to
answer questions directly, Defendant said he did not know what was going on
because it was his first jury trial, and he was entitled to tell the jury his life story,
stating "this is my life on the line." [**CD 10-10-13, 9:48:10 to 9:49:30, 10:03:20
to 10:03:28**]  Defendant apologized to the jury for not crying, saying he may not
appear remorseful just then, but they "should have seen [him] a few days ago
[when he] was in chronic depression." [**CD 10-10-13, 10:26:11 to 10:26:24**]

Trial proceeded, and the defense rested after testimony from Jose Ramirez,
Defendant's brother, Hesiquia Ramirez, Defendant's sister, and Lupe Casillas, an
aunt with whom Defendant lived for a short time. [**CD 10-10-13, 3:39:20 to
3:39:24**]

During the jury instruction conference, the prosecution argued it was entitled
to present a rebuttal case consisting of expert witness testimony regarding
Defendant's competency, his malingering, and the lack of clinical evidence of
mental illness if the trial court gave the jury Defendant's tendered instructions on
competency and a guilty but mentally ill (GBMI).[5] [**Supp. CD, 3:44:20 to
3:45:46**]  Mr. Cosby contested the prosecution's assertion that Defendant was not

---

[5]The Legislature repealed the statute allowing for a GBMI verdict in 2010.
*See* NMSA 1978, § 31-9-4 (repealed 2010).

18

entitled to a GBMI instruction because he had not presented competent testimony regarding mental illness.  **[Supp. CD, 3:46:13 to 3:47:40]**

Mr. Cosby stated the defense was withdrawing its tendered instruction on competency, and would forgo a GBMI instruction because it had no practical effect.  **[Supp. CD, 3:46:33 to 3:46:46, 3:47:55 to 3:48:46, 3:57:00 to 3:57:35, 4:01:10 to 4:01:28]**  He stated the defense was not asking for a self-defense instruction because there was no evidence to support the element of immediate danger, and was withdrawing its proposed instruction that Defendant was unable to form specific intent.  **[Supp. CD, 3:52:03 to 3:52:35]**

On this basis, Mr. Cosby objected to the prosecution presenting a rebuttal case, argued testimony based on NMBHI's 2008 report that Defendant was a malingerer and not suffering from a mental illness was irrelevant, and posited that if the prosecution presented a rebuttal case the defense should be given the opportunity to arrange for Dr. Schwartz's appearance as an expert on sur-rebuttal. **[Supp. CD, 3:48:46 to 3:49:16, 3:50:10 to 3:50:25]**  The prosecution countered that Dr. Burness had been observing Defendant's courtroom behavior that day and would testify Defendant was continuing to fake his symptoms.  **[Supp. CD, 4:09:00 to 4:09:29]**  The trial court ruled the prosecution could present its rebuttal case, and, while withholding a ruling on whether Defendant would be allowed to present a sur-rebuttal case, made clear Defendant would be given time to arrange

for his expert's presence if sur-rebuttal was allowed. **[Supp. CD, 3:55:15 to 3:56:35, 4:02:23 to 4:02:35, 4:08:18 to 4:08:53]**

Shortly thereafter, based on the defense's agreement not to pursue jury instructions or argue competency, insanity or the inability to form specific intent [*See* **Supp. CD, 3:51:56 to 3:52:00**], the prosecution announced it was forgoing presentation of a rebuttal case and releasing its expert witnesses. **[CD 10-10-13, 4:34:39 to 4:36:02]** When Defendant objected to Mr. Cosby's strategy, the trial court assured Defendant he was being well-represented and explained it would not have approved Mr. Cosby's jury instruction decisions if doing so would deny Defendant a fair trial. **[CD 10-10-13, 4:36:02 to 4:39:12]** Defendant persisted Dr. Schwartz's testimony was essential to his having a fair trial and to his appeal. **[CD 10-10-13, 4:41:38 to 4:42:15]**

The trial court instructed the jury on first-degree murder, second-degree murder and, over the prosecution's objection, voluntary manslaughter. **[CD 10-11-13, 9:01:50 to 9:03:07;** *see* **RP 663; RP 664; RP 665-66]**

### IV.    Disposition Below

The jury deliberated approximately three hours before returning verdicts finding Defendant guilty of first-degree murder, and the two counts of tampering with evidence. **[CD 10-11-13, 11:45:13 to 3:06:20]**

20

At sentencing hearing, Defendant argued Mr. Cosby failed to effectively represent him and he did not get a fair trial, submitting the jury would not have convicted him if it fully understood he was the victim. **[CD 1-8-14, 10:48:00 to 10:51:23]** Before imposing a sentence of life imprisonment for the first-degree murder of Mr. Robledo, and consecutive three-year sentences for his tampering with evidence convictions, the trial court assured Defendant once again that he had received excellent representation. **[CD 1-8-14, 10:57:55 to 10:58:15]**

In his appeal, Defendant does not challenge his convictions on sufficiency of the evidence grounds and abandoned his claim that his conviction of two counts of tampering with evidence violates double jeopardy. **[*See* Supp. CD, 4:03:13 to 4:05:45; SOI 7]** *See State v. Correa,* 2009-NMSC-051, ¶ 31, 147 N.M. 291 ("On appeal, issues not briefed are considered abandoned, and we do not raise them on our own.").

## **ARGUMENT**

### I. **The trial court did not violate Defendant's right to due process when it denied his mid-trial motion for a recess to reevaluate his competency to stand trial.**

The trial court did not deny Defendant due process by refusing to recess trial to reevaluate Defendant's competency to stand trial. **[*See* BIC 3, 23-35]**[6]

---

[6]Defendant devotes substantial attention to a discussion of "the schism among psychologists over whether the definition of 'mental illness' encompasses 'personality disorders.'" **[*see* BIC 24-28, 34-35]** This discussion is not relevant to

Where a defendant claims the trial court responded incorrectly when faced with a question of competency, the standard of review depends on whether the defendant bases his claim on "the proper process to be afforded him once [competency has] been raised," or on the trial court's determination of competency. *State v. Montoya*, 2010-NMCA-067, ¶ 11, 148 N.M. 495. Where a defendant's claim is due process-based, the trial court's ruling is subject to de novo review. *Id.* By contrast, where his claim involves the trial court's determination of competency, or its denial of a motion for a competency evaluation, the ruling is reviewed for an abuse of discretion. *State v. Noble*, 1977-NMSC-031, ¶ 7, 90 N.M. 360; *State v. Flores*, 2005-NMCA-135, ¶ 20, 138 N.M. 636. Here, Defendant frames his claim in terms of due process, and as prescribed by *Montoya*, his claim is subject to de novo review. **[BIC 23]** *But see, Flores*, 2005-NMCA-135, ¶ 21 (rejecting the defendant's claim that the issue of whether the trial court erred in refusing further competency proceedings is subject to de novo review).

Defendant's claim first requires a determination of what process Defendant was due. Defendant claims he was denied due process because the trial court did not recess trial. **[BIC 3]** But, Rule 5-602(B)(2)(b) NMRA, which Defendant cites **[BIC 32]**, does not require a recess when competency is raised during trial. Rather, it provides that "[i]f the issue of the defendant's competency to stand trial

his claim. Even those suffering from severe mental illness can be competent to stand trial. *See Indiana v. Edwards*, 554 U.S. 164, 178 (2008).

is raised during trial, the trial jury shall be instructed on the issue." Defendant does not assert Rule 5-602(B)(2)(b) violates due process.

Rule 5-602(B)(2)(b)'s requirement for the jury to be instructed on competency, like the requirement in NMSA 1978, Section 31-9-1 (1993) that proceedings must be suspended when competency is raised, are subject to a threshold showing that the claim of incompetency is supported by good cause. *Flores*, 2005-NMCA-135, ¶ 19 (statutes and rules governing competency "intend that whenever a *legitimate* concern about the present ability of a defendant to consult and understand is brought to the court's attention, the court is required to consider whatever competency-related evidence is before the court and to determine whether there exists a reasonable doubt as to the defendant's competency to stand trial") (emphasis added); *see also State v. Rael*, 2008-NMCA-067, ¶ 6, 144 N.M. 170 ("If the district court finds reasonable doubt as to competency, the issue is submitted to a jury."); *State v. Hovey*, 1969-NMCA-049, ¶ 18, 80 N.M. 373 (a defense counsel's good faith assertion alone is not sufficient to raise the question of competence); Rule 5-602(C) NMRA ("Upon motion and upon good cause shown, the court shall order a mental examination of the defendant before making any determination of competency . . ."). In the absence of a good cause showing, there is no issue for the jury to decide. *Noble*, 1977-NMSC-031, ¶ 7; *State v. Garcia*, 2000-NMCA-014, ¶ 28, 128 N.M. 721.

Here, any due process Defendant was denied was, at most, a jury instruction. But, Defendant did not preserve this claim for review because he did not submit a jury instruction on competency or object to the jury instructions as given. **[Supp. CD, 3:46:33 to 3:46:46]** *See State v. Lujan*, 1975-NMSC-017, ¶¶ 8-9, 87 N.M. 400 (a defendant does not properly preserve his claim that the jury should have been instructed on competency unless he offers an instruction on competency or objects to the jury instructions). Absent preservation, Defendant's claim is subject to fundamental error review. *See* Rule 12-216(B) NMRA.

Defendant did not invoke this Court's discretion to review his claim for fundamental error. Assuming *arguendo* he had, the record demonstrates the trial court did not commit fundamental error. Fundamental error occurs in "cases with defendants who are indisputably innocent, and cases in which a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *State v. Barber*, 2004-NMSC-019, ¶ 17, 135 N.M. 621.

Here, the record does not show the trial court made a "mistake in the process." Every time Defendant's competency was raised, the trial court complied with established procedural requirements before making a determination that Defendant was competent to stand trial.

Immediately after Mr. Carter notified the trial court on January 14, 2008, that he had moved to have Defendant's competency evaluated, the trial court

24

ordered a professional evaluation and suspended proceedings in Defendant's case.

**[RP 141; CD 2-27-08, 9:03:32 to 9:03:40]** *See* NMSA 1978, § 31-9-1.1 (1993).

When that evaluation concluded Defendant was not competent to stand trial, the

trial court, with the concurrence of the parties, found Defendant dangerous and

ordered Defendant transported to NMBHI for treatment to competence. **[RP 146-**

**49]** *See* NMSA 1978, § 31-9-1.2(B) (1993). After NMBHI rendered its report

concluding Defendant was a malingerer and competent to stand trial, the trial court

held a timely evidentiary hearing, proceeded to find Defendant competent, and re-

scheduled Defendant's case for trial. **[RP 158-59]**

On September 26, 2011, after Mr. Cosby succeeded Mr. Carter as

Defendant's counsel and raised a question of Defendant's competency, the trial

court ordered another professional evaluation of Defendant. **[RP 372-73; RP 374-**

**75]** Defendant refused to cooperate in that evaluation, and the trial court, believing

an evaluation was "absolutely essential," ordered Defendant be transported back to

NMBHI for evaluation. **[RP 386-87; RP 388; RP 392; CD 6-25-12, 2:51:20 to**

**2:51:32]** Defendant also refused to participate in the NMBHI evaluation, and the

trial court scheduled an October 9, 2012, hearing on Defendant's competency.

**[*See* RP 395; RP 396]**

The trial court continued that hearing based on Defendant's apparent

agreement to undergo evaluation by Dr. Richard Fink on November 30, 2012. **[RP**

**400]**  On March 1, 2013, based on Dr. Fink's January 17, 2013, report, and after a

delay of nearly two years from the time this Court remanded Defendant's case for

trial, the parties stipulated Defendant was competent to stand trial.  **[RP 405]**

Defendant's case proceeded to trial on October 7, 2013, and, on the third day

of trial, Mr. Cosby moved for a recess so Defendant could be reevaluated.  **[CD**

**10-9-13, 10:17:37 to 10:17:52]**  *See Flores*, 2005-NMCA-135, ¶ 29 (a trial court

"may consider defense counsel's observations and opinions, but [] those

observations and opinions alone cannot trigger reasonable doubt about the

defendant's competency").  The trial court, taking into account Mr. Cosby's

concerns, the history of Defendant's case, Defendant's previous evaluations, and

Defendant's previous and current courtroom behavior, denied the motion.  **[CD 10-**

**9-13, 10:21:03 to 10:21:24, 10:23:22 to 10:23:55]**  *See Drope v. Missouri*, 420

U.S. 162, 180 (1975) ("The import of our decision in *Pate v. Robinson*[, 383 U.S.

375 (1966),] is that evidence of a defendant's irrational behavior, his demeanor at

trial, and any prior medical opinion on competence to stand trial are all relevant in

determining whether further inquiry is required[.]"); *Flores*, 2005-NMCA-135, ¶

19 ("the court is required to consider whatever competency-related evidence is

before the court and to determine whether there exists a reasonable doubt as to the

defendant's competency to stand trial").  Notwithstanding its belief that Defendant

was malingering, but consistent with its responsibilities, the trial court asked

everyone to remain alert to anything that might require it to revisit its ruling.  **[CD 10-9-13, 10:28:00 to 10:28:52]** *Drope*, 420 U.S. at 181 (". . . a trial court must always be alert to circumstances suggesting a change that would render an accused unable to meet the standards of competence to stand trial").

Four hours later, Mr. Cosby raised the issue of Defendant's competency again because Defendant was not assisting in his defense.  **[CD 10-9-13, 2:38:44 to 2:40:05]**  Once again, the trial court complied with the requirement that it consider all the evidence before confirming its ruling that Defendant was competent to stand trial.  **[CD 10-9-13, 3:11:16 to 3:13:24]**  That history included Mr. Carter's January 15, 2009, assessment that Defendant's lack of cooperation was due more to Defendant's unwillingness to cooperate than to an inability to cooperate.  **[CD 1-15-09, 3:29:50 to 3:30:50]**

From this record, it is evident the trial court undertook extraordinary efforts to ensure Defendant received all the process he was due in order to ensure he was not denied a fair trial by being tried while incompetent.

Defendant's claim on appeal is limited to the issue of due process; he waived any claim the trial court abused its discretion when it determined he was competent to stand trial.  **[BIC 23]** *State ex rel. King v. B & B Inv. Group, Inc.*, 2014-NMSC-024, ¶ 47 (a trial court abuses its discretion when its "decision is clearly untenable or contrary to logic and reason").  By not challenging the trial court's

determination that he was competent, Defendant is bound by the trial court's ruling

that he was competent to stand trial. *See Stueber v. Pickard*, 1991-NMSC-082, ¶ 9,

112 N.M. 489 (an unchallenged finding of the district court is binding on appeal).

Irrespective of Defendant's waiver, and notwithstanding his assertion that

there was "ample evidence of incompetence" **[BIC 28, 29]**, the record is replete

with evidence supporting the trial court's ruling. *See State v. Moreland*, 2008-

NMSC-031, ¶ 9, 144 N.M. 192 ("When there exist reasons both supporting and

detracting from a trial court decision, there is no abuse of discretion." (internal

quotation marks and citation omitted)).

"A defendant is presumed competent to stand trial[.]" *Rael,* 2008-NMCA-

067, ¶ 6. "A person is competent to stand trial when he has sufficient present

ability to consult with his lawyer with a reasonable degree of rational

understanding – and . . . he has a rational as well as factual understanding of the

proceedings against him." *Flores,* 2005-NMCA-135, ¶ 16 (internal quotation

marks and citation omitted). More specifically, a defendant is competent to stand

trial if he (1) "understands the nature and significance of the criminal proceedings

against him[,]" (2) "has a factual understanding of the criminal charges[,]" and (3)

"is able to assist his attorney in his defense." UJI 14-5104; *Drope,* 420 U.S. at

171 ("It has long been accepted that a person whose mental condition is such that

he lacks the capacity to understand the nature and object of the proceedings against

him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.").

Assertions of incompetency must be substantiated, and the defendant has the burden of proving by a preponderance of the evidence that he is not competent to stand trial. *State v. Chavez*, 2008-NMSC-001, ¶ 21, 143 N.M. 205 ("existing case law [] long ago established the appropriate standards of proof for the initial determination as well as the redetermination of competency – a preponderance of the evidence" (emphasis omitted)); *Garcia,* 2000-NMCA-014, ¶ 20; *see also United States v. Boigegrain*, 155 F.3d 1181, 1189 (10th Cir. 1998) (competency to stand trial is a factual question).

Here, Mr. Cosby's motion to have Defendant reevaluated came on the heels of the trial court's refusal to recess trial because Defendant claimed he was feeling unwell, a claim reminiscent of the tactic Defendant admitted using at NMBHI to avoid evaluation.  **[Hrg. Ex., Rept. at 5-6]**  After the trial court denied the motion, Defendant appealed to the trial court's sympathy by making an emotional statement regarding his physical and psychological problems **[CD 10-9-13, 10:23:55 to 10:25:43]**, a ploy Defendant announced he would employ while he was at NMBHI **[*see* CD 9-15-08, 2:11:25 to 2:12:05]**, and which he repeated on other occasions during trial.

That afternoon, to demonstrate his lack of competency, Defendant described a litany of psychological ailments **[CD 10-9-13, 1:37:36 to 1:38:55]**, and claimed he was unable to understand the proceedings. **[CD 10-9-13, 1:43:46 to 1:44:11]** Later, notwithstanding Mr. Cosby's expressed concern about Defendant's lack of cooperation, Defendant made statements evincing an understanding of the implications of testifying and of the jury's role in weighing the evidence. **[CD 10-9-13, 2:41:00 to 2:43:54]** He pointedly reminded the trial court that during his previous trial he cried hysterically and told the court he could not function properly when hysterical. **[CD 10-9-13, 2:44:45 to 2:45:18]**

The next day, Defendant demonstrated his continuing understanding of the process, including the value of the appellate record, by forcing creation of a record regarding Mr. Cosby's decisions about the witnesses who would testify, and by making a statement about how he had not been properly evaluated and represented, the trial court's disregard for his outwardly irrational behavior and the trial court's failure to consider how the jury might be affected by media coverage of his trial. **[*See, e.g.*, CD 10-10-13, 9:21:02 to 9:22:38, 9:23:18 to 9:25:59]** Significantly, although Defendant was complaining he could not understand when people communicated with him, he recognized the court's authority by thanking it for allowing him to speak. **[CD 10-10-13, 9:22:35 to 9:22:42]** He telegraphed a clear understanding of the significance of the proceedings by saying he was fighting for

his life and that his life was on the line **[CD 10-9-13, 2:45:11 to 2:45:18; CD 10-10-13, 10:03:25 to 10:03:28]**, and by emphasizing the importance of the jury knowing all the facts he believed were relevant to his case. **[CD 10-9-13, 2:42:00 to 2:34:54; CD 10-10-13, 9:48:17 to 9:49:30, 10:03:11 to 10:03:25, 1:01:41 to 1:02:08, 1:08:07 to 1:08:36; 2:09:50 to 2:09:59]** Both after the jury retired to deliberate, and after it returned its verdict Defendant sought to make on-the-record statements. **[CD 10-11-13, 11:46:10 to 11:46:28, 3:13:04 to 3:13:13]**

In other words, Defendant, through his concerted campaign to demonstrate and make a record that he lacked competency succeeded in proving the opposite. He also validated Dr. Burness's opinion that he was trying to avoid adjudication by "feigning and malingering psychiatric symptoms and cognitive impairment." **[Hrg. Ex., Rept. at 9]** *Cf. Illinois v. Anderson*, 397 U.S. 337, 349 (1970) (Brennan, J., concurring) ("[T]here can be no doubt whatever that the governmental prerogative to proceed with a trial may not be defeated by conduct of the accused that prevents trial from going forward."); *id.* ("It does not seem to us to be consonant with the dictates of common sense that an accused person . . . should be at liberty whenever he pleased, . . . to break up a trial already commenced. The practical result of such a proposition, if allowed to be law, would be to prevent any trial whatever until the accused person himself should be pleased to permit it. . . .

31

This would be a travesty of justice which could not be tolerated." (internal quotation marks and citation omitted)).

Defendant correctly distinguishes the facts of his case from those in *State v. Solomon*, No. 33,975 (N.M. S. Ct. Aug. 4, 2014) (non-precedential) **[BIC 32-33]**, but overlooks a more important distinction: *Solomon* was decided on the basis of whether the trial court abused its discretion in determining the defendant's competence to stand trial, *id.* ¶ 14, an issue Defendant waived here. **[BIC 23]** The same distinction applies to the other cases Defendant cites. **[BIC 33-35]** *See Flores*, 2005-NMCA-135, ¶ 35 (concluding the trial court did not abuse its discretion when it determined there was no reasonable doubt as to the defendant's competency); *State v. Castillo*, No. 31,054, ¶ 9 (N.M. Ct. App. Aug. 28, 2013) (non-precedential) (applying an abuse of discretion standard to the trial court's competency determination), *cert. denied*, 2013-NMCERT-010 (No. 34,342, Oct. 30, 2013).

In the end, Defendant's argument highlights the distinction between an *incompetent* defendant's *incapacity* to understand the system and cooperate, and a *competent* defendant's *contrived efforts* to abuse the system to thwart adjudication and undermine the administration of justice. Defendant's conduct exemplifies the latter. **[*See* CD 9-15-08, 1:52:20 to 1:52:32, 2:14:17 to 2:14:32; CD 1-15-09, 3:29:50 to 3:30:50]** Accordingly, this Court should reject Defendant's claim.

## II.    Defendant has not satisfied the requirements for consideration of a claim of ineffective assistance of counsel on direct appeal.

The facts contained in the record oif Defendant's case do not establish a prima facie case of ineffective assistance of counsel warranting remand of Defendant's case for an evidentiary hearing. *State v. Crocco*, 2014-NMSC-016, ¶ 14. If Defendant wishes to pursue his claim of ineffective assistance of counsel, he should consider pursuing a habeas corpus proceeding. *See id.* ¶ 13; *see* Rule 5-802 NMRA.

When analyzing a claim of ineffective assistance, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). This Court measures a claim of ineffective assistance of counsel against *Strickland*'s two-part test, which requires a defendant to show first that counsel's performance "fell below that of a reasonably competent attorney" and then that he suffered prejudice because of the deficient performance. *State v. Ortega*, 2014-NMSC-017, ¶ 55.

A counsel's performance is not deficient where "a plausible, rational strategy or tactic" could explain counsel's conduct. *Id.* To show prejudice a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

(internal quotation marks and citations omitted). "[A]n assertion of prejudice is not sufficient to demonstrate that a choice caused actual prejudice." *State v. Sanchez*, 1995-NMSC-053, ¶ 20, 120 N.M. 247.

Defendant claims Mr. Cosby's performance was deficient in multiple respects. First, he claims Mr. Cosby was deficient because he did not have him reevaluated for competence mid-trial "even if it required action after court hours" or required additional funds to hire an expert on an urgent basis. **[BIC 36-37]** Defendant cites no authority indicating Mr. Cosby's failure to secure an emergency after-hours evaluation constitutes deficient performance. *In re Adoption of Doe,* 1984-NMSC-024, ¶ 2, 100 N.M. 764 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority.").

To support his claim, Defendant reaches out to an unpublished out-of-state case for the premise that there is a presumption of prejudice where trial counsel fails to investigate competency. **[BIC 37]** *See Moye v. Warden*, No. CV98412103S at 5 (Conn. Super. Ct. Mar. 27, 2014) (non-precedential). Defendant's reliance on *Moye* is unavailing. In *Moye*, the court found trial counsel properly raised the issue of competency and dismissed the petitioner's claim of ineffective assistance of counsel. *Id.* at 16-17. In Defendant's case, this Court should do the same.

Based on the facts in the record, Defendant sensibly does not claim he suffered prejudice from this asserted deficiency in Mr. Cosby's performance. Considering Defendant's history of refusing to cooperate in evaluations, there can be no confidence he would have cooperated even if Mr. Cosby had arranged an emergency evaluation. And, considering the trial court's first-hand observations of Defendant's behavior and dilatory conduct over the course of six years, there is no assurance the trial court would have found Defendant incompetent even if an evaluation concluded otherwise.

Second, Defendant claims Mr. Cosby was deficient because his failure to arrange for expert testimony precluded Defendant from relying on mental illness or lack of capacity defenses. **[BIC 37-38]** At the same time, Defendant effectively concedes Mr. Cosby's performance was not deficient in this regard by acknowledging the prosecution was prepared to offer rebuttal expert testimony to the effect that Defendant was feigning mental illness and cognitive deficiencies. **[Supp. CD, 3:51:50 to 3:52:12, 3:57:00 to 3:57:33, 4:01:06 to 4:01:24, 4:08:54 to 4:09:13]** This indicates Mr. Cosby's decisions may have represented "a plausible, rational strategy or tactic," which is the antithesis of incompetent performance.

This specific claim of deficient performance also lacks support in the record, because Defendant repeatedly refused to cooperate in evaluations that *might* have

35

permitted mental illness or lack of capacity defenses. **[*See, e.g.*, CD 12-1-08, 1:34:45 to 1:35:08, 1:37:18 to 1:37:55; CD 1-15-09, 3:33:40 to 3:35:39]**

Finally, even if deficient performance on this claim was established, Defendant makes no showing to suggest the jury would have returned a different verdict. *See, e.g., State v. Guerra*, 2012-NMSC-027, ¶ 29 (deliberate intent to kill can be inferred from evidence the defendant killed an incapacitated and defenseless victim); *State v. Cunningham*, 2000-NMSC-009, ¶ 28, 128 N.M. 711 (same).

Defendant concedes his final claims of ineffective assistance of counsel – Mr. Cosby's failure to call certain witnesses and his promises to Defendant if Defendant testified **[BIC 38]** – do not find support in the record.

More generally, Defendant's appellate claim that Mr. Cosby's performance was deficient is rebutted by the trial court's repeated observations that Mr. Cosby was representing Defendant in a professional and excellent mannerl. **[*See, e.g.*, CD 7-29-13, 9:42:31 to 9:43:44; CD 10-10-13, 2:14:09 to 2:14:28, 4:38:48 to 4:38:51; CD 1-8-14, 10:57:55 to 10:58:15]**

### III.    The trial court did not err when it ruled Deputy Loomis's isolated, unsolicited comment that he tried to interview Defendant did not constitute prohibited commentary on Defendant's Fifth Amendment right to remain silent.

Defendant argues pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, that the trial court abused its discretion when it denied his motion for mistrial after Deputy Sandy

36

Loomis explained he became involved in the case after Defendant's arrest, and, among other things had "tried to interview" Defendant. **[BIC 38-39;** *see* **CD 10-8-13, 2:12:15 to 2:12:29]** *See State v. Samora*, 2013-NMSC-038, ¶ 22 (denial of a motion for mistrial is reviewed for an abuse of discretion). According to Defendant's claim, Deputy Loomis's testimony represented inappropriate commentary on his Fifth Amendment right to remain silent. **[*See* CD 10-8-13, 2:14:08 to 2:14:24]** *See* U.S. Const., amend V ("No person . . . shall be compelled in any criminal case to be a witness against himself[.]").

The trial court ruled neither the prosecution's question, nor Deputy Loomis's statement, suggested Deputy Loomis was in search of a post-*Miranda* statement from Defendant. **[CD 10-8-13, 2:15:45 to 2:16:18, 2:24:47 to 2:25:22]** It denied Defendant's motion for a mistrial, and offered to give a curative instruction, a remedy Defendant did not accept. **[CD 10-8-13, 2:25:21 to 2:25:28]** Under these circumstances, the trial court did not err. *Samora*, 2013-NMSC-038, ¶ 22 ("In reviewing inadvertent remarks made by witnesses, generally, the trial court's offer to give a curative instruction, even if refused by the defendant, is sufficient to cure any prejudicial effect." (internal quotation marks and citation omitted)).

## IV.   The record does not support Defendant's claim that the jury saw him shackled.

Defendant claims the jury saw him shackled when he stumbled as he stood up at one point during the first day of trial. **[BIC 40;** *see* **CD 10-7-13, 3:12:42 to**

37

**3:13:32]** Defendant's claim lacks factual support in the record because the parties

and the court agreed the table behind which Defendant was sitting was draped to

the floor with black skirting that shielded his shackles from the jury's view. **[*See***

**CD 10-7-13, 3:13:42 to 3:13:58]** Additionally, even if the jury had seen

Defendant's restraints, "an inadvertent or insignificant exposure to a defendant in

shackles" does not give rise to reversal of a defendant's convictions and a new

trial. *See State v. Holly*, 2009-NMSC-004, ¶¶ 41-42, 145 N.M. 513.

> **V.    The trial court did not err by allowing the prosecution to**
> **present evidence of Defendant's animus toward Mr.**
> **Robledo and to cross-examine Defendant regarding**
> **previous acts of violence.**

Defendant challenges the trial court's admission of evidence of the no

trespass order Mr. Robledo took out against Defendant on April 22, 2007, the

evidence Defendant broke the windshield of Mr. Robledo's car on May 31, 2007,

and evidence of the front window of the house being broken on June 19, 2007.

**[BIC 42]**

This Court reviews trial court rulings on the admission of evidence for an

abuse of discretion. *State v. Montoya*, 2014-NMSC-032, ¶ 15.

Rule 11-404(B) NMRA allows the admission of evidence of other crimes,

wrongs, or acts, not to prove that the person had a character trait in conformity

with which he acted, but to prove "motive, opportunity, intent, preparation, plan,

knowledge, identity, or absence of mistake or lack of accident." This list is

illustrative, not exhaustive, because "evidence of other wrongs may be admissible on alternative relevant bases so long as it is not admitted to prove conformity with character." *State v. Martinez*, 1999-NMSC-018, ¶ 27, 127 N.M. 207.

"The initial threshold for admissibility of prior uncharged conduct is whether it is probative on any essential element of the charged crime." *State v. Gallegos*, 2007-NMSC-007, ¶ 35, 141 N.M. 185 (internal quotation marks and citation omitted). "Because deliberation is an essential element of first-degree murder, evidence with any tendency to make the existence of deliberation more probable or less probable is by definition relevant." *State v. Balderama*, 2004-NMSC-008, ¶ 25, 135 N.M. 329; *State v. Rojo*, 1999-NMSC-001, ¶¶ 47-48, 126 N.M. 438 (evidence of the deterioration in a defendant's relationship with his victim has probative value in assessing motive).

The court ruled pre-trial, and without objection, that evidence of the no trespass order Mr. Robledo obtained against Defendant was admissible because it, along with evidence of the broken windshield and the broken window, was relevant to the prosecution's burden of proving deliberate intent. **[CD 1-15-09, 3:41:45 to 3:42:40, 3:44:59 to 3:45:34, 3:47:35 to 3:49:05]** When the prosecution presented evidence of the no trespass order at trial, Defendant only challenged admission of the actual order, not testimony about it, and the trial court ruled the order was admissible as to motive. **[CD 10-8-13, 3:53:16 to 3:55:55]**

After the prosecution presented substantial testimony regarding the broken windshield, Defendant objected on grounds that it was "uncharged conduct" from two months before the murder. **[CD 10-8-13, 4:05:04 to 4:06:51]** The trial court allowed further testimony regarding the incident based on the prosecution's argument that it demonstrated Defendant's pattern of conduct toward Mr. Robledo leading up to the incident. **[CD 10-8-13, 4:06:51 to 4:08:01]** Defendant told the responding police officer he broke the window because he "got mad." **[*See* CD 10-8-13, 4:08:00 to 4:08:30]**

Defendant's objection to testimony regarding the broken front window at the house was limited to objecting to hearsay testimony by the responding officer about who Ms. Ramirez reported as having broken the window. **[CD 10-8-07, 4:15:42 to 4:17:25]** The trial court sustained Defendant's objection. **[CD 10-8-07, 4:17:25 to 4:17:27]** Although the trial court prevented the prosecution from eliciting testimony from the testifying officer that Ms. Ramirez reported Defendant had broken the window **[*see* B1C 43-44]**, Defendant testified he had broken the window when no one came to the door after he knocked. **[CD 10-10-13, 1:11:07 to 1:11:23]**

Contrary to Defendant's argument **[BIC 43-44]**, evidence regarding the no trespass order and the broken windshield was relevant and admissible because it demonstrated a pattern of conduct from which the jury could infer Defendant acted

with a deliberate intention to kill Mr. Robledo. Defendant failed to preserve any argument regarding the broken window of the house because he did not move to have the testimony stricken after the trial court sustained his objection to the officer's hearsay testimony. Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked.").

Defendant also claims the trial court erred when it allowed the prosecution to cross-examine Defendant about head-butting the transport officers, asserting the evidence was improper evidence under Rule 11-404(B). **[BIC 42]** *State v. Smith*, 2001-NMSC-004, ¶ 23, 130 N.M. 117 ("the trial court has broad discretion to control the scope of cross-examination"). The trial court did not abuse its discretion by allowing the cross-examination.

Rule 11-404(A) NMRA specifically allows the prosecution to offer evidence rebutting evidence of a criminal defendant's good character and evidence of a defendant's aggressiveness and violent nature if the defendant has attributed those traits to his victim. Rule 11-405(B) NMRA permits the prosecution to prove a defendant's character by specific instances of conduct.

Here, the prosecutor argued, and the trial court correctly agreed, evidence of Defendant's battery on the peace officer was admissible under Rule 11-404(A) and 11-405 because Defendant, having put Mr. Robledo's character into evidence by

41

testifying Mr. Robledo was the first aggressor, opened the door to specific instances of conduct where Defendant was aggressive and violent. **[CD 10-10-13, 12:52:24 to 12:57:20]** During cross-examination, the prosecution questioned Defendant regarding his use of violence, referring to Defendant's testimony on direct examination about an incident where he had punched a girl in the face. After some deflection, Defendant agreed he struck the girl. **[CD 10-10-13, 1:54:37 to 1:55:09]** The prosecution followed up with a question about whether Defendant had head-butted a peace officer, the Defendant agreed he had, and confirmed he wanted the jury to believe he acted in self-defense when he killed Mr. Robledo. **[CD 10-10-13, 1:55:18 to 1:56:35]**

Based on this record, the trial court did not abuse its discretion when it admitted evidence and allowed cross-examination of Defendant about aggressiveness and violent conduct generally, and specifically with respect to Mr. Robledo.

Assuming *arguendo* the trial court's rulings were in error, Defendant has not shown that he suffered prejudice. *Holly*, 2009-NMSC-004, ¶ 28 (in a harmless error inquiry, defendant bears the initial burden of demonstrating prejudice). The State only has the burden of showing the error was harmless if the defendant demonstrates prejudice. *Id.*

An evidentiary ruling is harmless if there is no probability the error affected the verdict. *State v. Serna*, 2013-NMSC-033, ¶ 22 (improperly admitted evidence is reviewed for non-constitutional harmless error); *State v. Tollardo*, 2012-NMSC-008, ¶ 36 (non-constitutional error is harmless when there is no reasonable probability the error affected the verdict). Among other things to be considered when determining the probable effect of an error on the jury's consideration are the circumstances surrounding the error, including the source of the error, non-objectionable evidence of guilt, and the importance of the erroneously admitted evidence in the prosecution's case. *Serna*, 2013-NMSC-033, ¶ 23.

Here the evidence permitted by the court's rulings complemented and gave context to the eyewitness testimony about how Defendant deliberately chased down Mr. Robledo and shot him twice in the head as he lay helpless on the ground. *See Guerra*, 2012-NMSC-027, ¶ 29. As such, error, if any, is harmless.

**VI.    The trial court did not err when it denied Defendant's motion for a mistrial after the prosecutor questioned Defendant about the amount of time Defendant spent doing legal research.**

The trial court did not abuse its discretion when it denied Defendant's motion for a mistrial after the prosecutor cross-examined Defendant about the legal research he had done about how to get the jury to "buy" his argument that he acted in self-defense when he killed Mr. Robledo. *[See* **BIC 44-45; CD 10-10-13, 1:56:26 to 1:56:44]**

43

Defendant's argument, which he frames on appeal as evidence of prosecutorial misconduct, suggests the law carves out certain relevant topics prosecutors cannot address when impeaching or challenging the credibility of testifying defendants.  Defendant's inability to find authority supporting his argument is an indicator that his argument lacks viability.

This Court reviews a trial court's denial of a motion for mistrial based on an allegation of prosecutorial misconduct for an abuse of discretion.  *State v. Ramos-Arenas*, 2012-NMCA-117, ¶ 1.

It is well settled that in cross-examination, the cross-examiner "is at liberty, and is often compelled, to attack the credibility of the witness, and, for that purpose, must be allowed wide latitude in asking questions which would otherwise be wholly irrelevant to the issue." *State v. Carter*, 1915-NMSC-084, ¶ 13, 21 N.M. 166.  "For the purpose of testing the credibility of the witness, it is permissible to investigate the situation of the witness with respect to the parties and to the subject of litigation, his interest, his motives, inclinations, and prejudices, his means of obtaining a correct and certain knowledge of the facts to which he bears testimony, the manner in which he has used those means, his powers of discernment, memory, and description." *Id.*

Here, after Defendant explicitly agreed his objective was to have the jury believe he killed Mr. Robledo in self-defense, the prosecutor asked Defendant

44

about the amount of legal research he had done on how to present a viable self-defense defense. After Mr. Cosby called for a mistrial and the trial court asked the prosecutor to lay a foundation for his question, the prosecutor asked whether Defendant remembered making lots of requests to go to the law library to research ways in which he could "beat" the charges against him. **[CD 10-10-13, 1:56:43 to 1:57:13]** At the end of the ensuing bench conference, during which Mr. Cosby assured the trial court Defendant was not pursuing a self-defense defense, the trial court denied Defendant's motion for a mistrial and precluded the prosecution from asking further questions about the subject. **[CD 10-10-13, 1:57:23 to 1:58:25]** Defendant did not ask for a curative instruction, and the prosecutor complied immediately with the trial court's directive.

These circumstances do not support a finding of prosecutorial misconduct, particularly after Defendant stated he wanted the jury to believe he acted in self-defense and after he tried to demonstrate to the jury that he lacked understanding about what was happening in the courtroom. *State v. Handa*, 1995-NMCA-042, ¶ 35, 120 N.M. 38 (defendants may not invite error and then later complain).

Defendant analogizes the circumstances supporting his claim to the facts of *People v. Sterling*, 154 Mich. App. 223, 397 N.W.2d 182 (1986). **[BIC 45]** In *Sterling*, the defendant alleged five instances of prosecutorial misconduct, which included extensive questioning and argument about the defendant's substitution of

counsel, the letters he wrote the court about his case, and his assistance with his defense by taking notes and performing legal research. *Id.* at 232. There, "[t]he thrust of the prosecution's closing argument was that defendant was a 'jailhouse lawyer' and 'manipulative' because he had requested new attorneys and assisted in his own defense." *Id.* According to the court, "[t]he strong implication of the prosecution's argument was that these facts somehow tended to prove defendant's guilt." *Id.*

The *Sterling* court failed to see how the evidence was relevant to the issue of guilt and opined that "the prosecution's argument tended to chill the defendant's exercise of his constitutional right to the effective assistance of counsel[, which] includes the right to assist in his own defense[,]" and "show[ed] a calculated and pervasive strategy of penalizing the defendant for the exercise of his constitutional rights by characterizing defendant's actions as manipulative abuses of the 'system.'" *Id.*

The facts of Defendant's case bear no resemblance to those present in *Sterling*. As evidence of this distinction, established Michigan authority makes clear, "Opportunity and motive to fabricate testimony are permissible areas of inquiry of any witness[,]" and can be addressed when they reflect the prosecution's theory that defendant's testimony appeared to reflect a carefully drawn explanation of what occurred. *People v. Buckley*, 424 Mich. 1, 15-16, 378 N.W.2d 432 (1985).

46

## CONCLUSION

Defendant received a fair trial before a fair and impartial jury. The State asks this Court to affirm his convictions.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Rule 12-214(B) NMRA and Rule 12-213(A)(6), the State requests oral argument. The State believes oral argument will be helpful to a full airing of the issues presented by Defendant's claims and the State's response to those claims.

Respectfully submitted,

HECTOR H. BALDERAS
Attorney General

YVONNE M. CHICOINE
Assistant Attorney General
P.O. Drawer 1508
Santa Fe, NM   87504-1508
505/827-6928

Counsel for Plaintiff-Appellee

## Certificate of Service

I certify I delivered a copy of this pleading to counsel for Defendant pursuant to Rule 12-307 NMRA: A copy, addressed to Steven J. Forsberg, was deposited in the Appellate Public Defender's box located at the New Mexico Supreme Court on January 9, 2015

Yvonne M. Chicoine

ORIGINAL

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

> Plaintiff-Appellee,

**vs.**                                    N.M. S. Ct. No. 34,576

**ALBERT JOSE RAMIREZ,**

> Defendant-Appellant.

---

## REPLY BRIEF

---

Oral Argument is requested pursuant to Rule 12-213(C)

---

Direct appeal taken from the Ninth Judicial District Court
Curry County, New Mexico
The Honorable Teddy L. Hartley, District Judge, Presiding

---

**Jorge A. Alavarado**
Chief Public Defender

**Steven J. Forsberg**
Assistant Appellate Defender
505 Marquette NW ste 120
Albuquerque, New Mexico 87102
(505) 796-4405
Attorneys for the Defendant-Appellant

SUPREME COURT OF NEW MEXICO
FILED

JAN 2 0 2015

EXHIBIT
L

# TABLE OF CONTENTS

ARGUMENT..................................................................................1

    **I. The District Court erred when it denied Mr. Ramirez a reevaluation of his competency to stand trial................................................1**

    **II. Mr. Ramirez received ineffective assistance of counsel...............3**

    **III. Deputy Loomis's comment on Mr. Ramirez's silence...............4**

    **IV. Jury observation of defendant in shackles.......................... 4**

    **V. Evidence regarding prior unrelated acts................................4**

    **VI. Improper cross-examination questions by the prosecution..........4**

Conclusion...................................................................................5

# TABLE OF AUTHORITIES

**New Mexico Cases**

*State v. DeGraff*, 2006-NMSC-011, 139 N.M. 211…………………………………..4

*State v. Dilallo*, No. 30,057 (N.M. Ct.App. July 28, 2010) (non-precedential)..3

*State v. Flores*, 2005-NMCA-135, 138 N.M. 636……………………………..……...3

*State v. Holden*, 1941-NMSC-017, 45 N.M. 147……………………………….5

**Federal Cases**

*Doyle v. Ohio*, 426 U.S. 610 (1976)…………………………………………….4

*United States v. Jackson*, 390 U.S. 570, (1968)…………………………….4

**Rules**

Rule 5-602 NMRA………………………………………………………………1

## Statement of Compliance

This pleading was prepared using Microsoft Word, version 2002. The body of this brief is not fifteen pages in length. It was printed in Times New Roman, a proportionally-spaced typeface. Undersigned counsel certifies that it complies with Rule 12-213 NMRA.

## Oral Argument Requested

Oral Argument is requested. Given the number and complexity of issues, oral argument will assist the court in ascertaining the factual and legal underpinnings of the defendant/appellant's appeal.

## ARGUMENT

### I. The District Court erred when it denied Mr. Ramirez a reevaluation of his competency to stand trial.

Rule 5-602(B)(2)(b) states that if competency is raised during trial the jury "shall" be instructed. The only exception is when a defendant has been previously found competent by a jury. Mr. Ramirez has never been found competent by a jury, thus the exception does not apply.

Similarly, 5-602(C) states that upon motion and good cause shown the court "shall" order a mental examination of the defendant. Rule 5-602(B)(2)(b), regarding jury instruction if competency is raised during trial, is additional to the other rules regarding competency, it does not replace them.

The defense agrees with the state that assertions of incompetency must be substantiated and the defendant bears the burden of doing so. **[AB 29]** The purpose of permitting a mental examination is to provide the defendant with an opportunity to do just that – meet his burden. Without a *timely* mental examination an incompetent defendant is left with only his behavior and his counsel's assertions to show incompetency. The prosecution, however, can claim that counsel is making a frivolous motion and that the client is faking. **[AB passim]** Without an opportunity for an examination a defendant is unlikely to prevail, even with a meritorious claim.

The state cites from evaluations that took place in 2008 and 2009. **[AB 11, 27]** However Mr. Ramirez's trial, and the motion for an evaluation, were in the fall of 2013. While there is no bright-line rule regarding the timeliness of evaluations, the passage of years would tend to make the earlier evaluations far less probative. The state also uses the term "personality style" to describe Mr. Ramirez's behavior. **[AB 10, 11]** The doctor testified that Mr. Ramirez had a "personality disorder." The difference between a 'style' and a 'disorder' lies at the root of understanding Mr. Ramirez's behavior and possible incompetence.

As the answer brief points out, one of the state's evaluators stated that "she believed if Defendant had access to the Diagnostic and Statistical Manual of Mental Disorders (DSM) he would decide he had every psychiatric condition it identified." **[AB 8]** Curiously, appellate defense counsel agrees that he probably would, even though to do so would make no sense and would be unlikely to convince anyone that he (Mr. Ramirez) really had literally hundreds of psychiatric disorders. What the state would describe as a cunning plot is actually an example of how ill Mr. Ramirez is.

Similarly, what the state describes as Mr. Ramirez's understanding of "the value of the appellate record" can be more properly interpreted as his desperate attempt to recite his own story, not understanding nor trusting the trial process (or his attorney) to adequately convey what he believed (however erroneously) was

vital information. Mr. Ramirez, at one point, asked the judge, in front of the jury, "Who can I ask if there's questions that I have personally that I want to let the jury know?" This exemplifies his lack of understanding of how a trial worked. **[BIC 20]**

The state would have the courts impose a "catch-22" situation where if an incompetent defendant says nothing there is no record and his competency challenge fails, but if he says something it means he is making an appellate record and thus his competency challenge fails.

There was more than "minimal or no evidence" of incompetency and thus Mr. Ramirez should have been afforded an opportunity to undergo a mental evaluation. *State v. Flores*, 2005-NMCA-135, ¶ 20, 138 N.M. 636 (citation omitted).

### II. Mr. Ramirez received ineffective assistance of counsel.

The defense agrees that should the court find insufficient evidence of ineffective assistance of counsel on direct appeal, Mr. Ramirez should be permitted to raise the issue via habeas proceedings. *See State v. Dilallo*, No. 30,057 (N.M. Ct.App. July 28, 2010) (non-precedential) (finding that habeas was an appropriate venue when ineffective assistance was claimed after defendant's attorney withdrew a request for an evaluation). The defense would point out that in *Dilallo* the court of appeals stated that even if her attorney had withdrawn the evaluation request,

"[defendant] could have either directly asked for an independent evaluation" or asked her doctor specific questions. According to the state's arguments, however, a defendant actually doing so would be demonstrating their mastery of legal process and undermining their request merely by making it.

### III. Deputy Loomis's comment on Mr. Ramirez's silence.

The defense stands on the brief-in-chief in this matter.

### IV. Jury observation of defendant in shackles.

The defense stands on the brief-in-chief in this matter.

### V. Evidence regarding prior unrelated acts.

The defense stands on the brief-in-chief in this matter.

### VI. Improper cross-examination questions by the prosecution.

The state argues that the brief-in-chief "suggests the law carves out certain relevant topics prosecutors cannot address when impeaching or challenging the credibility of testifying defendants." That is correct. One common example is that a prosecutor cannot use a defendant's use of his Fifth Amendment right to remain silent against him. *See, e.g., Doyle v. Ohio*, 426 U.S. 610 (1976), *State v. DeGraff*, 2006-NMSC-011, ¶ 12, 139 N.M. 211. The state can chill a defendant's constitutional rights by highlighting the defendant's exercise of a constitutional right and thereby suggest that the jury draw a negative inference. *See, e.g., United States v. Jackson*, 390 U.S. 570, 581-2 (1968).

Allowing prosecutors to imply that a defendant is guilty because he sought to inform himself about the law chills defendant's right to assist in his own defense. "The trial court, mindful of the dual capacity in which he appears, should limit the cross-examination where its legitimate probative value on the credibility of the accused as a witness seems obviously outweighed by its illegitimate tendency, effect, and often purpose, to prejudice him as a defendant." *State v. Holden*, 1941-NMSC-017, ¶ 46, 45 N.M. 147. Drawing a negative inference from a defendant's attempt to understand the law is akin to drawing a negative inference to his retention of legally trained counsel and any probative value is outweighed by its illegitimate effect.

## CONCLUSION

WHEREFORE Mr. Ramirez prays the Court reverse and remand for the remedies set in the brief in chief.

Respectfully submitted,

Jorge A. Alvarado
Chief Public Defender

Steven J. Forsberg
Assistant Appellate Defender
505 Marquette NW ste 120
Albuquerque, New Mexico 87102
(505) 796-4405

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this brief was served by hand delivery to the Attorney General's Box in the Supreme Court this 20th day of January, 2015.

_____

New Mexico Department of the Public Defender

1    **IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

2    **Filing Date:_____**

3    **STATE OF NEW MEXICO,**

4        Plaintiff-Appellee,

5    v.                                          NO.  S-1-SC-34576

6    **ALBERT JOSE RAMIREZ,**

7        Defendant-Appellant.


8    **APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
9    **Teddy L. Hartley, District Judge**


10   Bennett J. Baur, Chief Public Defender
11   Steven James Forsberg, Assistant Appellate Defender
12   Albuquerque, NM

13   for Appellant

SUPREME COURT OF NEW MEXICO
FILED

DEC 1  2016

14   Hector H. Balderas, Attorney General
15   Yvonne M. Chicoine, Assistant Attorney General
16   Santa Fe, NM

17   for Appellee


**EXHIBIT**

**M**

1 <div align="center">**DECISION**</div>

2 **MAES, Justice.**

3 {1}     In Albert Jose Ramirez' (Defendant) first appeal to this Court, we reversed

4 Defendant's conviction and remanded to the district court for further proceedings

5 because the district court failed to ascertain on the record that Defendant's plea was

6 knowing, intelligent, and voluntary. *See State v. Ramirez*, 2011-NMSC-025, ¶ 21,

7 149 N.M. 698, 254 P.3d 649. Following the remand, Defendant was found competent

8 to stand trial.  A jury convicted Defendant of first-degree willful and deliberate

9 murder and tampering with evidence. The district court sentenced Defendant to life

10 imprisonment plus six years.

11 {2}     In his direct appeal, Defendant raises seven issues and seeks reversal of his

12 convictions and a remand for a new trial.  This Court exercises appellate jurisdiction

13 where life imprisonment has been imposed. *See* N.M. Const. art. VI, § 2; *see also*

14 Rule 12-102(A)(1) NMRA (2000). We affirm the district court's judgment, sentence,

15 and commitment.  Because Defendant raises no questions of law that New Mexico

16 precedent does not already sufficiently address, we issue this nonprecedential

17 decision pursuant to Rule 12-405(B)(1) NMRA.

18 **I.     FACTS AND PROCEDURAL HISTORY**

<div align="center">2</div>

1  {3}    Defendant went to his mother's house on July 12, 2007, after calling the house

2  30 to 40 times with no answer.    Defendant believed that his mother's live-in

3  boyfriend, Eladio Robledo, was preventing Defendant's mother from helping

4  Defendant because Robledo "liked to see [Defendant] suffering." After checking the

5  front door and not getting an answer, Defendant went to the back of the house and

6  followed Robledo as he left the house and entered the garage.

7  {4}    After an argument ensued between the two men, Defendant shot Robledo and

8  chased him to the front of the house. When Robledo fell, Defendant stepped over him

9  and shot him twice in the head. Sam Saiz, a neighbor, and Grace Finkey, a passing

10  motorist, both witnessed the Defendant shoot Robledo. Defendant then disposed of

11  his gun and the denim shorts he was wearing in a dumpster. The State charged

12  Defendant with one count of willful and deliberate murder and two counts of

13  tampering with evidence.    Defendant entered a guilty plea and appealed his

14  conviction to this Court.

15  {5}    In his first appeal to this Court, we held that Defendant's guilty plea was not

16  entered into voluntarily because the district court failed to ascertain on the record that

17  Defendant's plea was knowing, intelligent, and voluntary.    *See Ramirez*,

18  2011-NMSC-025, ¶ 21. We reversed the district court's judgment of conviction and

3

1  remanded for further proceedings. *See id.*

2  {6}      In September 2011, following the remand order from this Court, the district

3  court ordered Defendant to undergo a third confidential forensic evaluation to

4  determine his competency to stand trial. The forensic evaluator, Dr. Richard T. Fink,

5  was not able to render an opinion at that time because Defendant refused to

6  communicate with him.  On other occasions, Defendant had refused to talk to his

7  counsel and to the district court.  The district court ordered a fourth forensic

8  evaluation after which Dr. Fink determined that Defendant was competent to stand

9  trial.  Based on Dr. Fink's report, the district court found that Defendant was

10 competent to stand trial.

11 {7}      In October 2013, following a jury trial, Defendant was found guilty of

12 first-degree murder and two counts of tampering with evidence.  The district court

13 imposed a sentence of life imprisonment plus six years. We include additional facts

14 in the discussion of Defendant's issues on appeal.

15 {8}      In a direct appeal of his conviction to this Court, Defendant argues: (1) the

16 district court erred when it denied Defendant a reevaluation of his competency to

17 stand trial; (2) Defendant received ineffective assistance of counsel; (3) there was

18 improper commentary on Defendant's right to silence; (4) Defendant was prejudiced

4

1  by the jury seeing his leg restraints; (5) the court abused its discretion in admitting

2  prior bad acts; (6) the court abused its discretion by not declaring a mistrial; and (7)

3  there was insufficient evidence to support two counts of tampering with evidence.

4  We do not address the issue of sufficiency of the evidence to support tampering

5  because it has been abandoned by counsel. *See State v. Correa*, 2009-NMSC-051,

6  ¶ 31, 147 N.M. 291, 222 P.3d 1.

7  **II.    STANDARD OF REVIEW**

8  {9}    Because the standard of review for each issue presented is distinct, we address

9  each standard in the corresponding discussion section.

10 **III.   DISCUSSION**

11 **A.    The district court did not err when it denied Defendant a reevaluation of**
12 **his competency to stand trial**

13 {10}   Defendant argues that the district court erred when it denied his motion prior

14 to trial and two motions during trial for a reevaluation of his competency to stand

15 trial.  The State argues that at no time did Defendant meet the burden of proof

16 necessary for another court-ordered evaluation.

17 **1.    Standard of Review**

18 {11}    Defendant argues  that  the  district court's  denial  of  a  reevaluation  of

5

1   competency denied Defendant due process of law and is therefore subject to de novo

2   review. The State argues that the standard of review for competency determinations

3   is abuse of discretion because the district court afforded Defendant all the due process

4   that was required. Additionally, the State argues that Defendant did not preserve his

5   claim that the court abused its discretion in finding that Defendant was competent.

6   {12}    De novo review is applied when the district court fails to provide a defendant

7   notice or an opportunity to be heard on the issue of his competency. *See, e.g., State*

8   *v. Gutierrez*, 2015-NMCA-082, ¶ 7, 355 P.3d 93 (applying de novo review because

9   defendant was deprived of due process where the judge held a competency hearing

10  on its own motion, without notice or an opportunity to be heard by the parties, and

11  entered    a    finding    that    Defendant    was    competent);    *State    v.    Montoya,*

12  2010-NMCA-067, ¶¶ 10-11, 15-16, 148 N.M. 495, 238 P.3d 369 (applying de novo

13  review because judge's refusal to hear the defense's position on competency and

14  immediate continuation of trial without consideration of any evidence regarding

15  defendant's competency was a violation of due process).

16  {13}    However, we review the denial of a motion for a competency evaluation for an

17  abuse of discretion. *State v. Herrera*, 2001-NMCA-073, ¶ 31, 131 N.M. 22, 33 P.3d

18  22. "A trial court abuses its discretion when a ruling is clearly against the logic and

6

1  effect of the facts and circumstances of the case." *State v. Lasner*, 2000-NMSC-038,

2  ¶ 16, 129 N.M. 806, 14 P.3d 1282 (internal quotations and citation omitted).  In

3  applying this standard, we view the evidence in the light most favorable to the judge's

4  decision. *See State v. Lopez*, 1978-NMSC-060, ¶ 7, 91 N.M. 779, 581 P.2d 872.

5  **2.    The district court did not abuse its discretion in denying Defendant's**
6  **motion for a subsequent evaluation of competency**

7  {14}    Because a defendant is presumed competent to stand trial, he bears the burden

8  of demonstrating incompetency by a preponderance of the evidence.  *See State v.*

9  *Chavez*, 2008-NMSC-001, ¶ 11, 143 N.M. 205, 174 P.3d 988; *see also State v. Rael*,

10  2008-NMCA-067, ¶ 6, 144 N.M. 170, 184 P.3d 1064 (citation omitted).  In New

11  Mexico, the procedure for determining a defendant's competency to stand trial is

12  defined in NMSA 1978, Sections 31-9-1 through 31-9-4 (1967, as amended through

13  1999) and Rule 5-602 NMRA.  Rule 5-602(B)(1) provides: "[t]he issue of the

14  defendant's competency to stand trial may be raised . . . at any stage of the

15  proceedings."  Section 31-9-1 states that "[w]henever it appears that there is a

16  question as to the defendant's competency to proceed in a criminal case, any further

17  proceeding in the cause shall be suspended until the issue is determined."  Once an

18  issue of competency to stand trial has been raised, the judge must determine whether

7

1   there is "evidence which raises a reasonable doubt as to the defendant's competency

2   to stand trial." Rule 5-602(B)(2); *see also State v. Noble*, 1977-NMSC-031, ¶ 7, 90

3   N.M. 360, 563 P.2d 1153. "In deciding the reasonable-doubt question, the judge

4   weighs the evidence and draws his or her own conclusions from that evidence." *State*

5   *v. Duarte*, 1996-NMCA-038, ¶ 13, 121 N.M. 553, 915 P.2d 309 (citation omitted).

6   {15}    "If a reasonable doubt as to the defendant's competency to stand trial is raised

7   *prior to trial*, the court shall order the defendant to be evaluated as provided by law."

8   Rule 5-602(B)(2)(a) (emphasis added). "If the issue of the defendant's competency

9   to stand trial is raised *during trial*, the trial jury shall be instructed on the issue."

10  Rule 5-602(B)(2)(b) (emphasis added). "That is, if there is no evidence raising a

11  reasonable doubt, the judge must decide whether a defendant is competent to stand

12  trial. If there is such evidence, other options become available . . . in Rule 5-

13  602(B)(2)(a)-(b), and the choice depends on when the issue is raised." *Rael*, 2008-

14  NMCA-067, ¶ 22. Because the issue of defendant's competency was raised both

15  before and during trial, we must analyze Defendant's claims under both Rule

16  5-602(B)(2)(a) and Rule 5-602(B)(2)(b). *See Rael*, 2008-NMCA-067, ¶ 18.

17  **a.      Prior to trial, Defendant did not establish a reasonable doubt as to his**
18  **           competency**

8

1    {16}    Defendant makes two arguments.  First, Defendant argues that he raised

2    reasonable doubt as to his competency when he spoke directly to the court and asked

3    for a fifth forensic evaluation.  One week prior to trial, despite the finding of

4    competency by Dr. Fink in January 2013, Defendant spoke directly to the court,

5    though he was represented by counsel, and asked for a fifth forensic evaluation to

6    determine his competency. Defendant argued that a new evaluation would show he

7    was suffering from "psychosomatic delusions and hallucinations and severe

8    depression and anxiety." The judge listened to Defendant's request and then denied

9    it.

10   {17}    This case is similar to *State v. Flores*, 2005-NMCA-135, 138 N.M. 636, 124

11   P.3d 1175.  In *Flores,* the Court of Appeals addressed whether an unsupported

12   declaration against competency made prior to trial rose to the level of reasonable

13   doubt.  In that case, just before trial, the defendant's counsel asked the court to find

14   that the defendant was incompetent to stand trial. *See id.* ¶ 7.  The defendant's

15   counsel cited her own experience with the defendant as the basis of the request,

16   stating her belief that his condition had deteriorated because he had been held in

17   isolation since the competency hearing. *See id.* ¶ 8.  The Court held that while "a

18   court may consider defense counsel's observations and opinions . . . those

9

1  observations and opinions alone cannot trigger reasonable doubt about the

2  defendant's competency." *Id.* ¶ 29. The Court also concluded that the testimony of

3  experts is not required to support a contention of incompetency, but "[i]nstead, a

4  defendant could offer an affidavit from someone who has observed the defendant and

5  formulated an opinion about his or her competency, such as a corrections officer or

6  defense counsel's paralegal." *Id.* ¶ 31.

7  {18}    Here, unlike in *Flores*, it was the Defendant, rather than his counsel, who

8  argued his opinion as to his competency. Nevertheless, Defendant did not argue that

9  he was unable to understand the proceedings or assist his counsel, but instead stated

10  that he suffered from mental illness. The standard set forth in *Flores* applies equally

11  to a defense counsel's observations of his client's competency as to the Defendant's

12  freely given statements to the court about his competency. *See Flores*, 2005-NMCA-

13  135, ¶ 29 ("We read the foregoing New Mexico cases to say that a court may consider

14  defense counsel's observations and opinions, but that those observations and opinions

15  alone cannot trigger reasonable doubt about the defendant's competency."); *see also*

16  *State v. Najar*, 1986-NMCA-068, ¶ 12, 104 N.M. 540, 724 P.2d 249 ("When a

17  defendant or his counsel asserts the doubtfulness of that competency, the assertions

18  must be substantiated.") Accordingly, Defendant did not properly substantiate his

10

1  assertion of incompetency.

2  {19}    Second, Defendant argues that because he had previously been found

3  incompetent and eight months had passed since the most recent finding of

4  competency by an evaluator, he was entitled to a new evaluation because of the

5  possibility that a person can decompensate. However, the Court of Appeals has held

6  that while an "interval between the assessment and trial may well justify a motion for

7  further evaluation . . . the burden remains on [d]efendant to raise a reasonable doubt

8  as to competence with substantiated claims." *Flores*, 2005-NMCA-135, ¶ 32. Again,

9  Defendant's general assertions that a defendant *can* decompensate did not provide

10  support that this Defendant *did* decompensate. *See Flores*, 2005-NMCA-135, ¶¶ 28-

11  29.    Accordingly, the district court properly relied on its determination and the

12  previous evaluation eight months prior to deny Defendant's request for a new

13  evaluation.

14  {20}    The burden remains on Defendant to raise a reasonable doubt as to competency

15  with substantiated claims.    Because Defendant did not properly substantiate his

16  assertion of incompetency, the district court did not abuse its discretion in denying

17  Defendant's pretrial motion for a fifth forensic evaluation.

18  **b.    During trial, defense counsel did not establish reasonable doubt as to**

11

**competency**

{21}    During trial, Defendant complained that he was too physically ill to stand trial. Defense counsel asked for a recess to allow Defendant to undergo a physical evaluation by a doctor at the detention center. The court refused to delay trial, but allowed a nurse to come into the courtroom to examine the Defendant. The nurse sent a note to the court stating that the Defendant was not ill and that he was physically able to participate in the trial. The court ordered the trial to continue.

{22}    Later that morning, defense counsel moved the court for another recess and an order for an immediate reevaluation of his client's competency, as Defendant told him "he didn't understand," "doesn't know how to behave," and was "not capable of assisting [counsel] in his defense." Defense counsel reported not knowing whether Defendant was malingering or decompensating, or whether Defendant was receiving his medications.  Defense counsel told the court that he could not effectively represent his client as he was labile, crying, interrupting, and making statements contrary to his interests during trial. The State objected, arguing that there was no good faith basis to require another competency evaluation particularly since Defendant had a history of malingering.  The State also reminded the court that a nurse examined Defendant and concluded that despite his complaints, he was well

12

1    enough to participate in the trial and this was further evidence of his pattern of

2    malingering.  The court heard more arguments from the attorneys and denied the

3    motion.

4    {23}    That afternoon, defense counsel renewed his motion for a recess to have

5    Defendant reevaluated.  Defense counsel indicated his concern that Defendant was

6    not competent to make the choice whether or not he should testify. The court advised

7    Defendant of his right.  Defendant stated that he was mentally imbalanced and he

8    wanted the jury to be told about his medical problems.  The court found that the

9    concerns represented personal issues not rising to the level of incompetence and

10   denied the motion.

11   {24}    Rule 5-602(B)(2)(b) requires that "[i]f the issue of the defendant's competency

12   to stand trial is raised *during trial*, the trial jury shall be instructed on the issue."

13   (emphasis added).  The reasonable doubt requirement "is implied" under Rule

14   5-602(B)(2)(b) when the issue of competency is reraised at trial.  *Rael,*

15   2008-NMCA-067, ¶ 22 ("[I]f a requirement of reasonable doubt were not read into

16   Rule 5-602(B)(2)(b), any defendant would be able to raise the issue of competency

17   and have the jury decide it even in the absence of the slightest bit of evidence that the

18   defendant was incompetent.  Such a result would be contrary to our well-established

13

1  guidelines regarding the interpretation of Supreme Court rules."). However, in the

2  absence of reasonable doubt, the district court need not submit the issue to the jury.

3  *See id.* ¶¶ 22–23, 25. As such, assertions as to the question of incompetency must be

4  properly substantiated to show reasonable doubt. *See Flores*, 2005-NMCA-135, ¶ 29

5  ("[A] court may consider defense counsel's observations and opinions, but that those

6  observations and opinions alone cannot trigger reasonable doubt about the

7  defendant's competency.").

8  {25}     Here, defense counsel merely stated his beliefs that Defendant was not capable

9  of assisting in his own defense and that Defendant did not have the capacity to

10  determine whether or not to testify. In response, throughout the trial, the judge did

11  everything within his power, under the rules, to address the Defendant's concerns

12  with his physical condition and his inability to understand the proceedings, allowing

13  a nurse to examine him during the trial and consistently explaining to the Defendant

14  what was happening. Accordingly, the district court did not abuse its discretion in

15  denying Defendant's request for a forensic evaluation during trial because relying

16  only upon his own observations, defense counsel failed to substantiate his assertions.

17  {26}     Further, had the district court found reasonable doubt as to Defendant's

18  competency to stand trial, Defendant would not have been entitled to a competency

14

1 evaluation after the commencement of trial. Once the jury is sworn, the Defendant's

2 only recourse is to request a jury instruction on the issue of competency. *See* Rule 5-

3 602(B)(2)(b). Defendant failed to preserve this issue by not submitting an instruction

4 on competency to the court or objecting to the instructions as offered. *See State v.*

5 *Lujan*, 1975-NMSC-017, ¶¶ 8-9, 87 N.M. 400, 534 P.2d 1112 ("Defendant did not

6 offer an instruction on competence, nor did he object to the instructions given the

7 jury. Therefore, this issue was not properly preserved for appeal.").

8 **B.    Defendant did not receive ineffective assistance of counsel**

9 {27}    Defendant's second argument is that he was denied effective assistance of

10 counsel because defense counsel "lacked the necessary assistance of [Defendant]

11 himself"; failed to "'seek the assistance of necessary experts,' and if more money was

12 required to seek such assistance on an urgent basis counsel should have requested it"

13 (citation omitted); and failed to obtain a reevaluation and attempted to withdraw the

14 motions to determine competency, resulting in prejudice to Defendant. Counsel has

15 abandoned the claims that trial counsel failed to call other witnesses or made

16 promises to the Defendant because these claims are unsupported by the record. As

17 such, we decline to review these claims.

18 {28}    One week prior to trial, the district court denied Defendant's motion to appoint

15

1  new counsel. Trial commenced as scheduled. On the fourth day of trial, defense

2  counsel informed the court of his decision not to call a witness on the record, as it was

3  against Defendant's wishes. Defendant then addressed the court, against counsel's

4  advice, about how his defense had been limited, how his mental illnesses affected

5  him, the amount of media his case was receiving, the quality of his attorney's

6  representation, motions he wanted filed, and other issues he indicated that he would

7  present in his appeal.

8  {29}    Defendant then demanded to be the first defense witness so he could

9  communicate his defense. During his direct examination, Defendant refused to

10  answer many questions directly saying he wanted to "explain everything." Defendant

11  then attempted to dismiss his counsel in front of the jury, forcing the court to remove

12  the Defendant and recess the trial. Later, after the parties rested, Defendant had

13  another outburst, complaining that he had a right to know what the jury instructions

14  would be so that he could file motions. The court told Defendant that he was being

15  well-represented and the instructions were fair.

16  {30}    At Defendant's sentencing hearing, Defendant complained to the court that his

17  defense counsel had failed to effectively represent him and that he did not receive a

18  fair trial. Defendant argued that the jury would not have convicted him had it fully

16

1  understood that he was the victim.  The district court assured Defendant that he had

2  received excellent representation and pronounced the sentence.

3  {31}  "This Court has repeatedly stated that ineffective assistance of counsel claims

4  are best served through habeas corpus proceedings so that an evidentiary hearing can

5  take place on the record."  *State v. King*, 2015-NMSC-030, ¶ 33, 357 P.3d 949

6  (citation omitted).  "Generally, only an evidentiary hearing can provide a court with

7  sufficient information to make an informed determination about the effectiveness of

8  counsel."  *Id.*; *see also State v. Baca*, 1997-NMSC-059, ¶ 25, 124 N.M. 333, 950 P.2d

9  776 ("A record on appeal that provides a basis for remanding to the trial court for an

10  evidentiary hearing on ineffective assistance of counsel is rare.  Ordinarily, such

11  claims are heard on petition for writ of habeas corpus . . . ."); *State v. Telles*, 1999-

12  NMCA-013, ¶ 25, 126 N.M. 593, 973 P.2d 845 (stating that the "proper avenue of

13  relief [from ineffective assistance of counsel] is a post-conviction proceeding that can

14  develop a proper record").

15  {32}  Though the district court repeatedly observed that defense counsel was

16  providing excellent representation to Defendant, the court did not hold an evidentiary

17  hearing.  Therefore, the record before us is insufficient to establish that defense

18  counsel was ineffective or that the decisions made were a plausible trial tactic or

17

1 strategy. Accordingly, we reject this claim without prejudice to Defendant's ability

2 to bring such a claim via habeas corpus proceedings.

3 **C.    The district court did not abuse its discretion denying a mistrial based on**
4 **Deputy Loomis' commentary on Defendant's silence**

5 {33}    Defendant's third issue is that the court erred in denying his motion for a

6 mistrial based on an alleged improper comment about Defendant's silence after he

7 had been Mirandized. The State responds that there was no error because the court

8 offered a curative instruction and the Defendant failed to take advantage of it.

9 {34}    At trial, in response to a general question about his involvement in the case,

10 Deputy Sandy Loomis explained that he had "tried to interview" Defendant when he

11 went to Defendant's home as part of his follow-up investigation.  Outside the

12 presence of the jury, defense counsel requested that the court declare a mistrial on the

13 basis that Deputy Loomis inappropriately commented on Defendant's Fifth

14 Amendment right to be silent. The State argued that no error had occurred and if

15 anything, an instruction could cure any effect the statement might have had on the

16 jury. The district court found that neither the prosecution's question, nor Deputy

17 Loomis' statement, suggested Deputy Loomis went to the home in search of a post-

18 Miranda statement from Defendant. Rather, the deputy's testimony suggested an

18

1 explanation of the deputy's routine role in the case. The district court denied the

2 motion but offered to give a curative jury instruction, which the Defendant refused.

3 {35}    A district court's denial of a mistrial is reviewed for an abuse of discretion. *See*

4 *State v. Samora*, 2013-NMSC-038, ¶ 22, 307 P.3d 328. The legal question of whether

5 there has been an improper comment on a defendant's silence is reviewed de novo.

6 *See State v. Pacheco*, 2007-NMCA-140, ¶ 8, 142 N.M. 773, 170 P.3d 1011.

7 {36}    "[T]he State is generally prohibited from impeaching a defendant's testimony

8 with evidence of his silence after receiving Miranda warnings." *See Pacheco*, 2007-

9 NMCA-140, ¶ 9. "A two-step analysis is applied. First, we must determine whether

10 the language of the prosecutor's questions on cross-examination . . . were such that

11 the jury would naturally and necessarily have taken them to be comments on the

12 exercise of the right to remain silent." *Id.* ¶ 12 (internal quotation marks and citations

13 omitted).    "If the prosecutor's questions or statements constituted improper

14 commentary on Defendant's silence, we must then determine whether there is a

15 reasonable probability that the error was a significant factor in the jury's deliberations

16 in relation to the rest of the evidence before them." *Id.* (internal quotation marks

17 omitted).    Furthermore, in reviewing inadvertent remarks made by witnesses,

18 generally, "the trial court's offer to give a curative instruction, even if refused by the

19

1    defendant, is sufficient to cure any prejudicial effect." *Samora*, 2013-NMSC-038, ¶

2    22.

3    {37}    We have previously addressed this issue in *State v. Baca*, 1976-NMSC-015, 89

4    N.M. 204, 549 P.2d 282. There, the Defendant argued that the prosecutor asked the

5    investigating officer if he "at any time [interviewed] the defendant." *Id.* ¶ 2. The

6    officer responded, in part, "I then explained a waiver of rights to him and he told me

7    at the time he did not wish to talk to me, he wanted an attorney before he said

8    anything." *Id.* We characterized that testimony as "unsolicited, and possibly

9    inadvertent," holding that "[we] would draw the line between those comments which

10   can be directly attributed to the prosecutor and those comments incorporated within

11   the testimony of a witness." *Id.* ¶¶ 3, 5. *See also State v. Wildgrube*, 2003-NMCA-

12   108, ¶¶ 23-24, 134 N.M. 262, 75 P.3d 862 (holding that prosecutor's reference to a

13   police officer's unsolicited comment regarding defendant's post-Miranda silence was

14   not misconduct requiring a reversal).

15   {38}    Here, the officer's comments were incorporated within his testimony

16   establishing his connection to the case and his reliability as a witness. The deputy did

17   not mention that his attempt to interview Defendant had failed because Defendant

18   invoked his right to remain silent, but simply described how he completed his follow-

20

1  up investigation.  The record does not demonstrate an intent by the deputy to

2  comment specifically on Defendant's silence, nor that this comment was directly

3  attributable to the prosecutor's question.  Due to the additional evidence which

4  inculpated Defendant, such as eyewitness testimony of the event, we cannot say that

5  there is a reasonable probability that the deputy's testimony was a significant factor

6  in the jury's mind when they convicted Defendant.  Accordingly, the district court did

7  not abuse its discretion in denying a mistrial.

8  **D.    Defendant was not prejudiced by the jury seeing his leg restraints**

9  {39}    Defendant's fourth issue is that he was prejudiced when the jury saw his leg

10  restraints when he stumbled as he stood up at one point during the first day of trial.

11  However, he concedes that he did not ask the court to make a finding of prejudice or

12  declare a mistrial and asks this Court to review the possibility that the jury saw his leg

13  restraints for fundamental error.  The State argues that the factual record does not

14  support Defendant's contention that the jury saw him shackled because all the parties

15  agreed that the table skirt blocked the jury's view.

16  {40}    "To preserve a question for review it must appear that a ruling or decision by

17  the district court was fairly invoked."  Rule 12-216(A) NMRA.  When the claim is

18  not properly preserved, we consider the claim under the fundamental error exception

21

1 | to the preservation rule. *See State v. Holly*, 2009-NMSC-004, ¶¶ 40-42, 145 N.M.

2 | 513, 201 P.3d 844 (reviewing defendant's claim that a juror may have seen defendant

3 | handcuffed for fundamental error because the defendant did not request a mistrial, did

4 | not ask the trial court to strike the juror, or seek a finding of prejudice), *State v. Silva*,

5 | 2008-NMSC-051, ¶ 11, 144 N.M. 815, 192 P.3d 1192 (citing Rule 12-216(B)(2)

6 | NMRA).

7 | {41}    In reviewing the fundamental error exception to the preservation rule, we must

8 | first determine whether an error occurred and if so, whether the error was

9 | fundamental. *See id.* Fundamental error "must be such error as goes to the

10 | foundation or basis of a defendant's rights or must go to the foundation of the case

11 | or take from the defendant a right which was essential to his defense and which no

12 | court could or ought to permit him to waive." *State v. Johnson*, 2010-NMSC-016, ¶

13 | 25, 148 N.M. 50, 229 P.3d 523 (citation omitted). "Fundamental error only applies

14 | in exceptional circumstances when guilt is so doubtful that it would shock the judicial

15 | conscience to allow the conviction to stand." *Id.*

16 | {42}    In *Holly*, we held that no fundamental error occurred where it was unclear

17 | whether the juror had actually seen the defendant in handcuffs, and if they had,

18 | whether it was more than "inadvertent or insignificant exposure." 2009-NMSC-004,

22

1  ¶ 42. Similarly, in *Johnson*, because there was no indication that the jury was aware

2  the defendant was wearing leg irons during a trial, the presumption of innocence was

3  not violated, the dignity of the judicial process was not affected, and the district court

4  did not commit fundamental error. 2010-NMSC-016, ¶¶ 25, 29.

5  {43}    Here, defense counsel concedes that a black skirt on the table shielded the

6  jury's view of Defendant's shackles and that he did not ask the court to make a

7  finding of prejudice or declare a mistrial.  Because it is unclear whether the jury saw

8  the leg restraints and if they did, there is no evidence that it was anything other than

9  inadvertent or insignificant exposure, this case is not the exceptional type that goes

10  to the violation of the foundation of presumption of innocence.  Further, this case

11  does not shock the conscience as Defendant's guilt is supported by substantial

12  evidence in the record, including eyewitness testimony and evidence of Defendant's

13  motive and a pattern of conduct toward Robledo. *See State v. Trujillo*, 2002-NMSC-

14  005, ¶ 60, 131 N.M. 709, 42 P.3d 814 (holding that because the Court found

15  "substantial evidence in the record to support Defendant's convictions, and because

16  Defendant failed to demonstrate circumstances that 'shock the conscience' or show

17  a fundamental unfairness," no fundamental error existed).  Accordingly, there was no

18  fundamental error by the district court.

23

**E.    The court did not abuse its discretion in admitting prior bad acts**

{44}    Defendant's fifth issue is that the district court erred in admitting evidence of prior acts, in violation of Rule 11-402 NMRA. Defendant argues that cumulatively, the introduction of this evidence created the impression that Defendant was troublesome and a lawbreaker. The State argues that the district court did not err in allowing the State to present evidence of Defendant's animus toward the victim or in cross-examining Defendant about previous acts of violence. Therefore, the State argues that the evidence was properly admitted to show motive and pattern of conduct.

{45}    When a district court's evidentiary ruling is properly preserved for review, we examine the ruling under an abuse of discretion standard. *See State v. Flores*, 2010-NMSC-002, ¶ 25, 147 N.M. 542, 226 P.3d 641. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks omitted). We will not say that the district court "abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

**1.    Evidence of the trespass order, broken windshield, and broken window**

24

1  {46}    First, Defendant argues that the court improperly admitted testimony about a

2  "no trespass" order Robledo had issued to Defendant, in violation of Rule 11-404.

3  The State responds that evidence regarding the "no trespass" order was relevant and

4  admissible because it demonstrated a pattern of conduct toward Rohledo from which

5  the jury could infer that Defendant acted with deliberate intention to kill Robledo.

6  In addition, the State argues that Defendant did not object to testimony about the

7  order at trial, only to the admission of the actual trespass order.

8  {47}    At trial, the prosecution sought to elicit testimony that three months prior to the

9  murder, Rohledo had obtained a criminal trespass notice barring Defendant from

10  returning to the home.  The district court had previously ruled, prior to trial, that

11  evidence of the no-trespass order issued against Defendant by Robledo was

12  admissible as it was relevant to proving deliberate intent.  During trial, defense

13  counsel objected to the admission of the trespass order.  The court, finding that

14  testimony about the order was admissible as to motive, overruled the objection.

15  {48}    Second, Defendant argues that the court improperly admitted testimony about

16  a prior incident involving a broken windshield.  The State argues that evidence

17  regarding the broken window was relevant and admissible because it demonstrated

25

1  a pattern of conduct toward Robledo from which the jury could infer that Defendant

2  acted with deliberate intention to kill Robledo.

3  {49}    At trial, the prosecution sought to admit evidence that approximately one

4  month before the killing, Defendant broke the windshield of Robledo's car because

5  he "got mad." The defense objected to the testimony at trial regarding the broken

6  windshield, claiming it was "uncharged conduct." The district court allowed the

7  testimony finding that it demonstrated Defendant's pattern of conduct toward

8  Robledo.

9  {50}    Third, the court admitted testimony about a police investigation of a broken

10 window at Robledo's house, although the court did not allow the witness to testify as

11 to who had broken the window. The State argues that Defendant failed to preserve

12 any argument regarding the broken window because he did not move to have the

13 testimony stricken after the district court sustained the objection.

14 {51}    At trial, the prosecution sought to introduce testimony that a month before the

15 killing, Defendant's mother had filed a police report after Defendant had broken the

16 front window of Robledo's home when no one would answer the door. The

17 prosecutor asked the responding officer if he knew who had broken the window.

18 Defense counsel objected, arguing that the responding officer's testimony as to who

1 broke the window was inadmissible hearsay testimony and violated Defendant's

2 confrontation rights. The court sustained the objection. Despite the limitation on the

3 prosecution, the Defendant subsequently testified on cross-examination that after no

4 one answered the door, he had broken the window by knocking on it as it was

5 "flimsy." On appeal, Defendant argues that all of the testimony about the broken

6 window, including the filing of the police report, was improper.

7 {52}    "Evidence of a crime, wrong, or other act is not admissible to prove a person's

8 character in order to show that on a particular occasion the person acted in accordance

9 with the character." Rule 11-404(B)(1) NMRA. However, "[t]his evidence may be

10 admissible for another purpose, such as proving motive, opportunity, intent,

11 preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule

12 11-404(B)(2).

13 {53}    The procedure for admitting evidence under Rule 11-404(B) requires first,

14 identification of the "consequential fact to which the proffered evidence of other acts

15 is directed." *State v. Serna*, 2013-NMSC-033, ¶ 17, 305 P.3d 936 (internal quotation

16 marks and citation omitted). Second, the rule requires a demonstration of the other

17 acts' "relevancy to the consequential facts, and the material issue, such as intent, must

18 in fact be in dispute." *Id.* (internal quotation marks and citation omitted). Third, if

27

1  the evidence offered is of a crime other than the one charged, the other crime must

2  "have a real prohative value, and not just possible worth on issues of intent, motive,

3  absence of mistake or accident, or to establish a scheme or plan." *Id.* (citation

4  omitted). "[T]he rationale for admitting the evidence [must be] to prove something

5  other than propensity." *Id.; see also State v. Martinez*, 1999-NMSC-018, ¶ 27, 127

6  N.M. 207, 979 P.2d 718 ("The list of permissible uses of evidence of other wrongs

7  in Rule 11-404(B) is intended to be illustrative rather than exhaustive, and evidence

8  of other wrongs may be admissible on alternative relevant bases so long as it is not

9  admitted to prove conformity with character." (citation omitted)).

10 {54}    Here, the evidence of the "no trespass" order, testimony about the broken

11 windshield, and the broken window was consequential to the determination of

12 whether Defendant had the intent to kill Robledo, an essential element of first-degree

13 murder.  The State was not attempting to prove that Defendant acted in accordance

14 with his character, but rather that Defendant had motive and the intent to murder

15 Robledo because of their strained relationship.  Such a purpose is permitted under

16 Rule 11-402 NMRA. *See, e.g., State v. Rojo*, 1999-NMSC-001, ¶ 47, 126 N.M. 438,

17 971 P.2d 829 (holding that evidence of the defendant's and victim's deteriorating

18 relationship and the specific actions surrounding her reason for rejecting the

28

1  defendant "directly addresse[d] the motivational theories presented at trial . . . [and

2  t]hus, the trial court did not abuse its discretion by admitting this evidence . . . ."); *see*

3  *also State v. Allen*, 2000-NMSC-002, ¶ 41, 128 N.M. 482, 994 P.2d 728 (holding that

4  "evidence of Defendant's prior crime in 1982 was relevant to prove his motive for the

5  murder in the context of the aggravating circumstance of murdering a witness."

6  (citations omitted)).  Accordingly, we hold that the district court did not abuse its

7  discretion in admitting the evidence of Defendant's prior acts.

8  **2.    Evidence of the head-butt on an officer**

9  {55}    Defendant argues that the district court erred in allowing the prosecution's

10  inquiry during cross-examination about whether Defendant had head-butted a police

11  officer, arguing such evidence was "not connected by the prosecution in any manner

12  to killing of Mr. Robledo." The State argues that Defendant testifying that Robledo

13  was the first aggressor opened the door to being cross-examined on specific instances

14  of conduct where Defendant was aggressive and violent, including the head-butt on

15  an officer.

16  {56}    At trial, Defendant testified that on the day he shot Robledo, he went to his

17  mother's house, saw Robledo, and they began arguing.  Defendant claimed Robledo

18  struck him and hit him.  Defendant also testified that Robledo "picked on" him, that

29

1 the Defendant had heard from his mother that Robledo had killed someone, and that

2 Robledo was not nice and not caring. Defendant stated that he did not plan to kill

3 Robledo, but that he was defending himself and knew that Robledo had a gun.

4 Defendant thought he was in danger when Robledo allegedly threatened to get his

5 pistol.

6 {57} On cross-examination, the prosecution asked the district court to allow

7 evidence of specific instances where the Defendant was aggressive, under Rule 11-

8 404(A)(2)(b)(ii) and Rule 11-405, because Defendant put forth evidence that

9 Robledo, the victim, was the first aggressor and had a violent character. Defense

10 counsel objected to the question, arguing that it did not satisfy any of the purposes of

11 Rule 11-404. The court overruled the objection. The district court granted the

12 prosecution's request to admit evidence of specific instances of conduct and allowed

13 the prosecution to ask the question. The prosecutor asked Defendant, "[i]sn't it true

14 that you have also head-butted a police officer?" Defense counsel, in order to

15 preserve the issue for appeal, renewed his objection.

16 {58} The Rules of Evidence contain an exception in criminal cases to the general

17 rule prohibiting character evidence: if a defendant offers evidence of a victim's

18 pertinent trait, the State can offer rebuttal "evidence of the defendant's same character

1  trait."    Rule 11-404(A)(2)(b)(ii).    "When evidence of a person's character is

2  admissible, it may be offered in the form of reputation or opinion evidence. *See* Rule

3  11-405(A). "On cross-examination of the character witness . . . inquiry into relevant

4  specific instances of the person's conduct" are allowed. Rule 11-405(A). Or "when

5  a person's character or character trait is an essential element of a charge, claim, or

6  defense, the character or trait may also be proved by relevant specific instances of

7  conduct." Rule 11-405(B).

8  {59}    While it is correct that the defendant who offers evidence of a victim's

9  pertinent character trait (e.g., violence) opens the door to allow the prosecution to

10  offer evidence of the defendant's same character trait, under Rules 11-404(A)(2)(b)

11  and 11-404(A)(2)(b)(ii) NMRA, the evidence that is admitted may only be reputation

12  or character evidence, unless the character trait is an essential element of the crime

13  charged.  Here, Defendant offered evidence at trial that he shot Robledo in self-

14  defense because Robledo was the first aggressor.  He supported this assertion by

15  offering evidence of Robledo's character: that Robledo was a violent and aggressive

16  man who had killed a person.  This was evidence of the victim's "pertinent trait": a

17  reputation for violence and aggression.  By offering the evidence of Defendant's

18  head-butt on an officer during cross-examination of Defendant, the State was offering

31

1 evidence that Defendant had the same traits for aggression and violence through an

2 inquiry into specific instances of Defendant's conduct. The evidence of head-butting

3 an officer is not reputation or opinion testimony. Nor is it proving an essential

4 element of the crime charged because violence is not a specific element of murder or

5 self-defense. *State v. Baca*, 1993-NMCA-051, ¶ 16, 115 N.M. 536, 540, 854 P.2d

6 363, 367 ("The victim's violent disposition is not an 'element' of the defense in the

7 strictest sense; rather, it is used circumstantially -- that is, to help prove that the

8 victim acted in the particular manner at the time of the incident in question.") It

9 seems that the information of Defendant head-butting an officer is being used only

10 to show Defendant's propensity for violence. And contrary to the State's argument,

11 under Rule 11-405(A) on cross-examination it is the specific instances of Rohledo's

12 conduct that is allowed to rebut the testimony from Defendant of Robledo's

13 "pertinent trait." See Rule 11-405.

14 {60}    Accordingly, it was error for the district court to admit the evidence of

15 Defendant's prior act of head-butting a police officer. Non-constitutional error is

16 harmless when there is no reasonable probability the error affected the verdict. *State*

17 *v. Tollardo*, 2012-NMSC-008, ¶ 36, 275 P.3d 110. In the context of all the evidence

32

1    in the record as referenced in paragraphs 3 and 4, *supra*, this isolated error was

2    harmless and had no effect on the conviction.

3    **F.    The district court did not abuse its discretion by not declaring a mistrial**
4    **based on questions about Defendant's legal research**

5    {61}    Defendant's sixth issue is that the district court abused its discretion when it

6    denied Defendant's motion for a mistrial after the prosecutor cross-examined

7    Defendant about the amount of legal research he conducted.  Defendant argues that

8    the prosecution's conduct shows a calculated and pervasive strategy of penalizing the

9    Defendant for the exercise of his constitutional rights by characterizing Defendant's

10    actions as manipulative abuses of "the system."  The State argues that because

11    Defendant initially indicated that he was seeking to argue a defense of self-defense,

12    the prosecutor did not cross the line by asking about the amount of legal research

13    Defendant had conducted.

14    {62}    During the cross-examination of Defendant, the prosecutor asked, "And you've

15    done a significant amount of legal research on how to get the jury to buy this?"  The

16    defense objected and moved for a mistrial.  The court directed the prosecution to lay

17    a foundation.  The prosecutor asked Defendant, "Do you recall giving a lot of

18    requests to go to the law library to research how to beat your charges?"  Defense

33

1  counsel objected a second time, arguing that the question rose to prosecutorial

2  misconduct, and again asked for a mistrial. The judge ruled that he would not allow

3  the questions about Defendant's research and would not declare a mistrial.

4  {63}    We examine a district court's denial of a motion for mistrial based on an

5  allegation of prosecutorial misconduct under an abuse of discretion standard. *See*

6  *Allen,* 2000-NMSC-002, ¶ 95 ("the trial court is in the best position to evaluate the

7  significance of any alleged prosecutorial errors" (citation omitted)); *see also State v.*

8  *Ramos-Arenas,* 2012-NMCA-117, ¶ 1, 290 P.3d 733.    "An isolated, minor

9  impropriety ordinarily is not sufficient to warrant reversal . . . because a fair trial is

10  not necessarily a perfect one." *Allen,* 2000-NMSC-002, ¶ 95 (internal quotation

11  marks and citations omitted).

12  {64}    Reviewing all of the comments made, in the context in which they were made,

13  and taking into account those comments' potential effect on the jury, the questions

14  were isolated and minor.    Accordingly, the prosecutor's remarks did not deprive

15  Defendant of a fair trial.

16  **IV.    CONCLUSION**

17  {65}    We hold that the district court did not commit reversible error as to all of

18  Defendant's claims. Accordingly, we affirm Defendant's convictions.

34

1  {66}    **IT IS SO ORDERED.**

2

3

4                                          **PETRA JIMENEZ MAES, Justice**

5

6  **WE CONCUR:**

7

8  **CHARLES W. DANIELS, Chief Justice**

9

10  **EDWARD L. CHAVEZ, Justice**

11

12  **BARBARA J. VIGIL, Justice**

13

14  **JUDITH K. NAKAMURA, Justice**

35

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

## MANDATE NO. S-1-SC-34576

TO THE DISTRICT COURT SITTING IN AND FOR THE COUNTY OF CURRY, GREETINGS:

WHEREAS, in causes numbered D-905-CR-2007-00434 on your criminal docket, wherein State of New Mexico was plaintiff and Albert Jose Ramirez was defendant, the district court entered judgment convicting defendant of willful and deliberate first-degree murder and tampering with evidence; and

WHEREAS, the cause and judgment were afterwards brought into this Court upon notice of appeal and statement of issues filed by defendant, whereupon such proceedings were had that on December 1, 2016, a decision was issued affirming defendant's conviction.

NOW, THEREFORE, this cause is remanded for further proceedings, if any, consistent and in conformity with the judgment of this Court.

IT IS SO ORDERED.

WITNESS, Honorable Charles W. Daniels, Chief Justice of the Supreme Court of the State of New Mexico, and the seal of said Court this 11th day of January, 2017.

(SEAL)

Joey D. Moya, Chief Clerk of the Supreme Court of the State of New Mexico

**EXHIBIT**

**N**

**FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701**

| West's New Mexico Statutes Annotated |
| State Court Rules |
| 9. Criminal Forms |
| Article 7. Special Proceedings |

NMRA, Form 9-701

### FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS

**Currentness**

*[For use with District Court Criminal Rule 5-802 NMRA]*

STATE OF NEW MEXICO

COUNTY OF  CURRY

IN THE DISTRICT COURT

*For Official Use Only*

No. _____

*(To be supplied by the clerk of the court)*

AlBERTE RAMirez

*(Full name of prisoner)*

Petitioner,

v.

WARDEN German Franco

**EXHIBIT**

**O**

**FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701**

(*Name of warden, jailor or other person having power to release the petitioner*)

       Respondent.

*Instructions — Read Carefully*

Make sure that all information provided in this form is true and correct. Make sure that all necessary documents are attached, or explain why the documents are not being included. If you are currently incarcerated, you may file the petition without payment of the filing fee. If you are not incarcerated and are seeking free process, complete Form 9-403.

Finally, you must complete the certificate of service and mail or otherwise serve copies of this petition on the respondent and the district attorney in the county in which the petition is filed. You must file the original petition and one copy with the Clerk of the District Court. You should keep a copy for your own records.

**PETITION FOR WRIT OF HABEAS CORPUS**[1]

1. _ALBERTO L_ _Romero_ (*name of person in custody*) is imprisoned or otherwise restrained at _PNM_ _SCMM_ (*name of facility and county of detention*) by _WARDEN_ (*name and title of person having custody*). _german_ _Franco_

2. This petition

[W] seeks to vacate, set aside or correct an illegal sentence or order of confinement (i.e., ineffective assistance of counsel, illegal search and seizure, involuntary confession, or other matters relating to the trial or sentence the confined person received).

[W] challenges confinement or conditions of confinement or matters other than the sentence or order of confinement. (*This applies only to matters arising after the confined person arrived at the institution, i.e., county jail confinement, mental hospital confinement, detention facility confinement, good time credit, misconduct report, prison due process violation or parole.*)

3. State concisely the facts upon which the confined person bases the claim:

① INeffective assistance of counsel at trial. Ineffective

assistance on appeal by appellate counsel. ② there was improper

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

~~commentary on mr. Ramirez right to speak~~ ① mr. Ramirez was pre-
prejudiced by the jury seeing his leg restraints. ② and falling down
in front of jury ~~[crossed out]~~
~~[crossed out]~~

4. State concisely the grounds and law, or other legal authorities on which the confined person bases the claim:

~~[crossed out]~~ , verbally assaulted by
counsel, promised to be ineffective assistance
if I refused to take plea. promised I could
speak of sex clause if I dont then he lied.

5. Have the grounds being raised in this petition been raised previously in your direct appeal? If so, explain the result. If not, explain why not:

yes and not in detail or specific
I ask for evidentary hearing
to correct the record.

6. Have the grounds raised in this petition been raised previously in another petition for a writ of habeas corpus? If so, explain the result. If not explain why not:

No First habenus I Believe

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

7. Briefly describe the relief requested:

① appointment of counsel to represent me on Habeas proceedings. ② Evidentory Hearing, ③ To REVERSE convictions Rimand FOR A NEW trial ④ To REVERSE FOR a new SENTENCE Hearing. ⑤ TO grant discovery ⑥ grant an attorney to assist

8. State the nature of the court proceeding resulting in the confinement (i.e., criminal prosecution, civil commitment, etc.), including:

(a) case name:

STATE OF NEW MEXICO V. Albert Ramirez Open count Murder. two tampering w evidence

(b) docket number:

dont Know

(c) name of judge:

TEddy. L. HARTLEY

(d) name and location of the court in which the proceeding was held:

701. N. MAiN ST.

9th Judicial District court

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

9. State the date of the final judgment, order or decree for confinement:

Janurary 8th 2014. SENTENCE

10. Attach a copy of the judgment, order or decree. If not, describe your sentence.

Life Eligibility of parole After 30 years.
Two Three years to Run consecutively. 1st degree murder
two tampering with
evidence 3rd degree

11. Was the conviction the result of:

___ Guilty plea

___ No Contest plea (*nolo contendere*)

✓ Finding of guilty by judge or jury

12. Was the confined person represented by an attorney during the proceedings resulting in the confinement?

✓ Yes

_____ No

13. If you answered "yes" to (12), list the name and address of each attorney who represented the confined person:

JESSE. R. COSBY  P.O. BOX 3330
Roswell. N.M. 88201

14. Did you appeal your conviction?

YES.

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

_✓_ Yes *(Go to 15)*

___ No *(Go to 16)*

15. If you answered "yes" to (14), list:

(a) The name of each court to which an appeal was taken:

State of New Mexico Supreme court. / docket statement to
9th judicial district court/

(b) The case name and docket number for each appeal:

State of New Mexico v.s. Alberto Ramirez open court mudell
and two tompany wsomere/.

(c) The date each appeal was filed and decided: *(Attach a copy of each opinion or order)*

Appeal was filed Jan. 12th 2015 I dont Know
IT was decided Dec 1st 2016.

(d) A summary of the grounds upon which each appeal was based:

① Cout Erred when it denied mr ramirez p resorurction to competene
to stand trial. ② mr. ramirez received ineffective assittance
of consel ③ ther was improper conmort on mr ramirez
right to Silence ④ mr ramirez was preudice my sret trails
⑤ The court abused distration in admitting prior bad acts. ⑥ by not
decloring a mistrial

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

(e) The result of each appeal:

denied. as minor Errors. and admissible

evidence and more.

(f) The name and address of the attorney on appeal:

STEVEN. J FORSSBERG.

Assistant Appelate defonced

505. Marans the N.W. 87102  505-796-4405

16. If you answered "no" to (14), state the reasons for not appealing:

17. Apart from any appeals listed in (15), have any other post conviction applications, petitions or motions, been filed with regard to this same imprisonment or restraint?

___ Yes (Go to 18)

√ No (Go to 19)

18. If you answered "yes" to (15), list with respect to each such petition or motion:

(a) The type of proceeding:

**FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701**

......................................................................................................................................................................

......................................................................................................................................................................

(b) The name and date of each case:

......................................................................................................................................................................

(c) the docket number:

......................................................................................................................................................................

(d) the court, the administrative agency, or institutional grievance committee from which relief was sought:

......................................................................................................................................................................

(e) the result of each proceeding. (*Attach a copy of each decision.*)

......................................................................................................................................................................

......................................................................................................................................................................

(f) The issues raised in each proceeding:

......................................................................................................................................................................

......................................................................................................................................................................

(g) State whether a hearing was held in connection with each of these proceedings:

......................................................................................................................................................................

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

(h) State whether the confined person was represented by an attorney in each proceeding and, if so, the attorney's name and address:

_Simon J. Oosterla_ _assistant appelate defender_

_505 Marquette N.W. Ste 120. Albuquerque N.M. 87102_

19. Do you seek the appointment of counsel to represent you?[1]

√ Yes

No

## VERIFICATION

STATE OF NEW MEXICO

COUNTY OF ... _Curry_

I, the undersigned, being first duly sworn upon my oath, state that I am the petitioner in this action. I have read the foregoing petition and know and understand its contents, and the information contained herein is true and correct to the best of my knowledge, information and belief. On _____ , (date), I deposited this petition in the internal mail system of the institution in which I am confined, properly addressed with any necessary postage prepaid, for forwarding to the district court at the following address:

_Ninth_ _District_ Court (name of court)

_Clovis_ (city), New Mexico, _88101_ (zip code).

_R. Belt  Jose PCM.77_

(
**Signature**
)   _P.O. Box 1039  Santa Fe N.M. 87504_

(
**Address**
)   _87491_

PNM No., if applicable

**FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701**

SUBSCRIBED AND SWORN TO before me this _____ day of _____ _____, by

_Alberto Ramirez_

*(Name of petitioner)*

ALBERTO  JOSE  RAMIREZ

Notary Public

My Commission Expires: 4/23/20

## CERTIFICATE OF SERVICE

I hereby certify that true copies of the foregoing petition were served upon the respondent and the district attorney in the county in which the petition is filed by _____ (*describe manner of service*), this ___ day of _____.

(
*Signature of petitioner*
)
**USE NOTE**

**Credits**

[Adopted effective Aug. 1, 1989. Amended effective May 6, 2009; Dec. 31, 2014.]

**Footnotes**

1

> After this petition is reviewed by the Court, the Court will enter the order granting or denying the writ or ordering a response before further action. The order shall be prepared by the Court.

2

> Petitioners who are incarcerated at the time of filing the petition need not file a motion for free process and may file the petition without payment of the applicable filing fee. *See* Rule 5-802(D)(2) NMRA

NMRA, Form 9-701, NM R CR Form 9-701
State court rules are current with amendments received through July 1, 2015.

A true copy was served on all parties or their counsel of record on date filed.

*Joey D. Moya*
Chief Clerk of the Supreme Court of the State of New Mexico

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

## MANDATE NO. S-1-SC-34576

TO THE DISTRICT COURT SITTING IN AND FOR THE COUNTY OF

CURRY, GREETINGS:

WHEREAS, in causes numbered D-905-CR-2007-00434 on your criminal

docket, wherein State of New Mexico was plaintiff and Albert Jose Ramirez was

defendant, the district court entered judgment convicting defendant of willful

and deliberate first-degree murder and tampering with evidence; and

WHEREAS, the cause and judgment were afterwards brought into this

Court upon notice of appeal and statement of issues filed by defendant,

whereupon such proceedings were had that on December 1, 2016, a decision was

issued affirming defendant's conviction.

NOW, THEREFORE, this cause is remanded for further proceedings, if

any, consistent and in conformity with the judgment of this Court.

IT IS SO ORDERED.

WITNESS, Honorable Charles W. Daniels, Chief Justice
of the Supreme Court of the State of New Mexico, and
the seal of said Court this 11th day of January, 2017.

(S E A L)

Joey D. Moya, Chief Clerk of the Supreme Court
of the State of New Mexico

Buy the Paper    Today's Ads    Newsletter and Text Alerts    ePaper Login    Local Business Directory    Newspaper in Education    Maps

Search Obituaries Free
ancestry.com/Obituaries
1) Search anyone's name. 2) View their obituary instantly.

HOME    NEWS    SPORTS    OBITUARIES    BLOGS    CLASSIFIEDS    JUST TV    SECTIONS    AUTOFINDER     JUNE 13, 2014

# Clovis teen charged with shooting

July 20, 2007

By Sharna Johnson: CNJ staff writer

A Clovis grand jury indicted a Clovis teen Friday on charges of first-degree murder in connection with the shooting death of his mother's boyfriend.

District Attorney Matt Chandler said Albert Ramirez, 18, is also charged with three counts of tampering with evidence.

Eladio Robledo died at Plains Regional Medical Center in Clovis after receiving multiple gunshot wounds July 12.

The shooting occurred on the sidewalk in front of Robledo's residence at 512 West Sixth St. in Clovis.

Witnesses told police Robledo, 39, was shot approximately five times and Ramirez was seen fleeing the area, court records show.

Ramirez hid clothing he was wearing at the time of the shooting along with other items of evidence, Chandler said. Those items were found by Clovis patrolman Brent Aguilar approximately two blocks from the homicide.

The gun used in the homicide has not been located, Chandler said.

Ramirez's mother, Debra Ramirez, shared the home on Sixth Street with the victim. They had been together approximately five years and Albert Ramirez had lived with them until recent months, Chandler said.

Debra Ramirez had filed incident reports in recent months telling police she was afraid of her son, Chandler said the victim filed a no-trespass order in April against Albert Ramirez, barring him from the home where the homicide occurred.

Debra Ramirez reported to police she told her son to move out when he turned 18 in September because of his defiance, Chandler said.

Reports also said she told police her son frequently made harassing phone calls to her, according to Chandler.

Ramirez is being held at the Curry County Adult Detention Center on a $100,000 bond.

A trial date will be set in coming weeks, Chandler said.

Share this post:   Email   Facebook   Twitter   Google   Reddit

Filed Under: News    Tagged With: albert, chandler, clovis, homicide, police, ramirez, robledo, shooting, son, told

Search this website…   Search

ADVERTISEMENT


CENEGENICS ELITE HEALTH   Get Your Healthy Aging Kit FREE
Defy your age with Cenegenics
today at age 74

LOCAL WEATHER


CLOVIS
64°
Cloudy
High: 84° Low: 61°
Wind: S 13 mph
Humidity: 83%

ADVERTISEMENT


CENEGENICS ELITE HEALTH   Get Your Healthy Aging Kit FREE
Defy your age with Cenegenics
today at age 74

ADVERTISEMENT

Buy the Paper    Today's Ads    Newsletter and Text Alerts    ePaper Login    Local Business Directory    Newspaper in Education    Maps

New Mexico
gasglance.com
Find Low Gas Prices In Your Area. Save w/ The Gas Calculator! Get App

HOME    NEWS    SPORTS    OBITUARIES    BLOGS    CLASSIFIEDS    JUST TV    SECTIONS    AUTOFINDER     JUNE 13, 2014

# Teen charged with murder has competency issues

July 16, 2008

Courtesy photo Ramirez is charged with first-degree murder in the shooting death of 39-year-old Eladio Robledo in July 2007.

By Sharna Johnson: CNJ staff writer

A year after being charged in the shooting death of his mother's boyfriend, a Clovis 19-year-old's case is on hold pending psychological treatment.

Albert Ramirez is being treated at the Behavioral Health Institute at Las Vegas, N.M., after being declared in April to be incompetent and dangerous. District Judge Ted Hartley made the ruling after reviewing the results of a forensic psychological evaluation.

Ramirez is charged with first-degree murder.

District Attorney Matt Chandler said examiners believe with treatment Ramirez could be brought to a level of competency to stand trial.

Court records do not specify the nature of Ramirez' competency issues.

He is accused of shooting 39-year-old Eladio Robledo in July 2007 outside a Sixth Street home the victim shared with Ramirez' mother.

Robledo died a short time later at the hospital from multiple gunshot wounds.

A witness told police he saw Ramirez shooting at Robledo, who was laying on the sidewalk.

Debra Ramirez told police she feared her son because of his violent tendencies and made him move out when he reached 18. She filed a no-trespass order against him about four months before the shooting, records show.

Debra Ramirez told police her son had been threatening her and told her, "something bad was going to happen and it was going to be her fault," according to a police report.

After the protection order was filed, Ramirez' mother reported her son broke a window at her home because she wouldn't let him in.

Police said Albert Ramirez also admitted on another occasion he broke the windshield of his mother's car because he "got mad."

Debra Ramirez could not be reached for comment.

According to the April order issued by Hartley, Ramirez is to undergo treatment for up to nine months until such point as he attains competency.

Chandler said a defendant is found incompetent to stand trial when it is determined they cannot assist in their own defense or understand the way the judicial system works or the proceedings.

In March, Ramirez was charged with two counts of battery on a peace officer.

According to an arrest affidavit filed in magistrate court, transport officers said they had to carry Ramirez into and out of the courtroom when he refused to walk during a court appearance. After

Search this website…    [Search]

ADVERTISEMENT

Public Arrest Records
beenverified.com/Arrest_Records
Search Any Name for Free! Step 1) Enter Name. 2) View Arrest Records

Nursing School Online

Blog Professionally

Job Openings

LOCAL WEATHER

CLOVIS
64°
Cloudy
High: 84° Low: 61°
Wind: S 13 mph
Humidity: 83%

ADVERTISEMENT

Luxury Consignment
Up to 90% off.



The RealReal     SHOP NOW >

ADVERTISEMENT

Buy the Paper    Today's Ads    Newsletter and Text Alerts    ePaper Login    Local Business Directory    Newspaper in Education    Maps



You're missing the video converter tool.   **Click Here**

HOME   NEWS   SPORTS   OBITUARIES   BLOGS   CLASSIFIEDS   JUST TV   SECTIONS   AUTOFINDER     JUNE 13, 2014

# Accused killer takes witness stand

October 10, 2013

**By Robin Fornoff**

**CMI PROJECTS EDITOR**

rfornoff@cnjonline.com

Accused killer Albert Ramirez spent two hours on the witness stand — against his lawyer's advice — then was removed from the courtroom Thursday for his continued disruptions.

Ramirez took the witness stand for about two hours, telling jurors in rambling and sometimes tearful accounts that he was defending himself when he shot and killed his mother's boyfriend six years ago.

Ramirez is charged with first-degree murder, accused of lying in wait and gunning down Eladio Robledo, 39, of Clovis, in July 2007, as he left his house on west Sixth Street for work.

Ramirez faces life in prison if convicted.



Albert Ramirez
*On trial for murder*

Ramirez continued his efforts that have peppered the trial since it began Monday, trying to speak to District Judge Teddy Hartley despite warnings from the judge and pleas from his defense attorney Jesse Cosby to stop.

Hartley gave Ramirez his final warning after District Attorney Matt Chandler ceased his cross examination and Cosby said he had no questions for redirect. Taking a seat next to Cosby, Ramirez said loud enough for the jury to hear, "Why didn't you ask me more questions?"

"If you don't quit talking," Hartley said, "I'm going to remove you."

Minutes later, Ramirez started talking again as his brother, defense witness Jose Ramirez took the stand. An exasperated Hartley pointed toward Ramirez and ordered sheriff's deputies to "take him out of this courtroom."

Two deputies grabbed Ramirez, who shouted "he's not asking questions ... he's not representing me," as the jury watched.

Until Thursday, Ramirez's disruptions came during periods when the jury was sequestered outside the courtroom. Cosby told Hartley he was now concerned the outburst planted seeds of doubt in the minds of jurors about his representation of Ramirez.

"He's fired me in open court in front of the jury," said Cosby.

Hartley, noting Cosby seemed to have a calming effect on Ramirez outside the proceedings, told him to talk to his client.

After about a 40-minute break, both sides returned and Cosby said Ramirez had decided to keep him as defense attorney. Hartley then warned Ramirez if there was one more outburst or disruption, he would have Ramirez removed and proceed with the defendant watching the rest of the trial in another room by video camera.

**ADVERTISEMENT**

**Nursing School Online**

chamberlain.edu
Earn Your RN To BSN in 3 Semesters. Online, Affordable & User Friendly!

Public Arrest Records

Search Obituaries Free

Job Openings

**LOCAL WEATHER**

CLOVIS
**64°**
Cloudy
High: 84° Low: 61°
Wind: S 13 mph
Humidity: 83%

**ADVERTISEMENT**



FARMERS INSURANCE

Rosalind Riley-Smith

Home • Auto • Life

Request A Quote

www.ClovisInsuranceRileySmith.com

**ADVERTISEMENT**

**Patient:**  **14154.1 - ALBERTO J. RAMIREZ**                                    **Page 2**
**DOB:**
**SSN:**

**Date:**     **04/24/2007 11:30**
**Provider:**  **KIRAN  SHARMA MD**

Anxiety disorder NOS

**PLAN**
Motrin 600 MG TABS, SIG:tid, Qty:21, Days:7, Refills:0
Lexapro 10 MG TABS, SIG:qd, Qty:30, Days:30, Refills:2
Refer to unm orthopaedics
pt has anger issues and is somatising
detailed discussion with brother about pts visits
otc knee brace, pt needs pshychiatric help
refer to MHR, pt is having paranoia

**KIRAN  SHARMA MD**

**Entered data sealed by: KIRAN SHARMA - LCBS     Date: 04/24/2007 11:14**

☐ CNMCF/CMRU/CMU
P.O. Drawer 1328
Los Lunas, NM 87031

☐ GCCF
P.O. Box 520
Santa Rosa, NM 88435

☐ LCCF
6900 W. Millen Dr.
Hobbs, NM 88244

☐ PNM
P.O. Box 1059
Santa Fe, NM 87504

☐ SNMCF
P.O. Box 639
Las Cruces, NM 88004

☐ SNMCF-POU
P.O. Box 20005
Las Cruces, NM 88004

☐ WNMCF
P.O. Drawer 250
Grants, NM 87020

☐ NENMDF
185 Doctor Michael Jenkins Rd.
Clayton, NM 88415

Name _____

No. _____ Unit _____

HABEAS PACKET Date: _____

QUESTION # 3 AND 4 IN

COUNSEL AT TRIAL VERBALLY ASSAULTED I MR RAMIREZ STATING I AM A STUPID LITTLE BITCH AND PROMISED TO BE INEFFECTIVE, IF I MR RAMIREZ CONTINUED TO INSIST ON GOING TO TRIAL RATHER THAN plead guilty AS COUNSEL INSISTED. AND THREATENED MR RAMIREZ BY SAYING I HOPE YOU GET LIFE. COUNSEL WOULD NOT COMMUNICATE WITH I MR RAMIREZ AS I TRIED TO NO AVAIL.

COUNSEL WOULD NOT FILE MOTIONS FOR CHANGE OF VENUE EVEN THOUGH THERE WAS EXTENSIVE media THAT WAS INADMISSIBLE, SAYING MR RAMIREZ THREATNED TO KILL HIS MOTHER AND STEP FATHER AND HIS MOTHER KICKED HIM OUT DUE TO HIS VIOLENT tendencies.

COUNSEL WOULD NOT SUPPRESS EVIDENCE THAT I WAS HIDING IN CAR AND THEY FOUND RAP WORDS TALKING OF SHOOTING PEOPLE.

MR COSBY WOULD NOT CALL DR. MARANNE SWARTZ TO TESTIFY FOR THE DEFENSE OF irrability TO PERFORM SPECIFIC INTENT DUE TO MENTAL ILLNESS. SEVERE depression ANXIETY, SCHIZOPRENIA paranoia, AND MY COMPETENCY TO STAND TRIAL.

I WANTED TO HAVE JURY INSTRUCTION ON THE ISSUE OF COMPETENCY Rule. 5-602 (A)(B) AND refused to OBJECT TO INSTRUCTION I ASKED HIM TO.

I ALSO TOLD COUNSEL I DID FALL DOWN WHEN SHERIFF CALLED ME TO WALK TO HIM AND I WAS COERCED INTO SAYING NO BY SHERIFF docerty AND gestured behind my lawyers back TO SAY NO I ASKED HIM TO request A MISTRIAL TO NO avail.

CHMCF/CMRU/CMU
P.O. Drawer 1328
Los Lunas, NM 87031

GCCF
P.O. Box 520
Santa Rosa, NM 88435

LCCF
6900 W. Millen Dr.
Hobbs, NM 88244

PNM
P.O. Box 1059
Santa Fe, NM 87504

SNMCF
P.O. Box 639
Las Cruces, NM 88004

SNMCF-POU
P.O. Box 20005
Las Cruces, NM 88004

WNMCF
P.O. Drawer 250
Grants, NM 87020

NENMDF
185 Doctor Michael Jenkins Rd.
Clayton, NM 88415

Name _____
No. _____ Unit _____

Date: _____

MR COSBy refused to address court and request a
nistrial which if raised issue probably start trial
Over if lawyer had done a Better Job of
protecting my rights

Also witness Pricilla lopez and Ricky Jaramillo
848 witnesses would of testified that I am
Real skinny and helped prove I was the
one being chased in yard and that dectective
was mis leading witnesses.

Counsel at trial failed to call dr Fink as a witness
at trial as I asked. dr Fink would of testified
that I was Not competent and mentally Ill

I asked counsel to call dr. Jocae Busness To
cross examine.

I asked counsel to investigate mental illness difuse
as I have family History of mental illness.

I did Express disatisfaction with counsel and the
court failed To inquire into The motive.

MR COSBy promised if I testified I would be
able to speak of Sexual abuse by Nicbor and
my moms boyfriend He lied To incriminate me.

If counsel did not lie I would Not have testified
and trial may have Been different togather
those errors all the prejudice I'd be Entitled
to a New Trial.

Counsel at trial failed To Give me the entire
discovery and did Not discuss any of the
case with me. Beuz I woulden take plea.

☐ CNMCF/CMRU/CMU
P.O. Drawer 1328
Los Lunas, NM 87031

☐ GCCF
P.O. Box 520
Santa Rosa, NM 88435

☐ LCCF
6900 W. Millen Dr.
Hobbs, NM 88244

☐ PNM
P.O. Box 1059
Santa Fe, NM 87504

☐ SNMCF
P.O. Box 639
Las Cruces, NM 88004

☐ SNMCF-POU
P.O. Box 20005
Las Cruces, NM 88004

☐ WNMCF
P.O. Drawer 250
Grants, NM 87020

☐ NENMDF
185 Doctor Michael Jenkins Rd.
Clayton, NM 88415

Name _____
No. _____ Unit _____

Date: _____

_____

Counsel did not call Isreal ramirez who would of testified Robledo hit me and was violent when I was 13 and he fought robledo.

Also Jose Ramirez would testify Robledo was aggressive violent + attacked him everytime he tried to go see me

Counsel failed to get Medical records Evidence to show I was physically injured at time of crime.

There was a complete Breakdown in communication.

I want The cout To know I asked twice on record To speak to show I timely moved for removal Of counsel, But The cout refused To let me say anything about conflict Between I and counsel.

I tried to put in record after trial counsel said cetel I tried To Fire him.
Court refused to inquire into it
If The cout had Id of got a New attorney or a mistrial
I asked To represent myself.

I was denied My Sixth admendment right to effective assistance of counsel.

I ask For an Evidentary Hearing to Now allow me to speak on record

Thanks Very much

_____
_____
_____

☐ CNMCF/CMRU/CMU
P.O. Drawer 1328
Los Lunas, NM 87031

☐ GCCF
P.O. Box 520
Santa Rosa, NM 88435

☐ LCCF
6900 W. Millen Dr.
Hobbs, NM 88244

☐ PNM
P.O. Box 1059
Santa Fe, NM 87504

☐ SNMCF
P.O. Box 639
Las Cruces, NM 88004

☐ SNMCF-POU
P.O. Box 20005
Las Cruces, NM 88004

☐ WNMCP
P.O. Drawer 250
Grants, NM 87020

☐ NENMDF
185 Doctor Michael Jenkins Rd.
Clayton, NM 88415

Name _____
No. _____ Unit _____

Date: _____

ineffective assistance of Appelate counsel
Saying in my appeal I abandoned to
Show counsel at trial was ineffective it
Shows on record I asked to call
dr. Maxine Swartz and was denied,
rabey I would of gotten an
Evidentary Hearing on appeal
also he did not argue I did not recieve
a fair Sentencing and double Jeopardy
on tempering with Evidence.

I ask for an Evidentary Hearing.

Communication: His speech was pressured and rambling. At times, he was able to comprehend questions but was unable to provide consistent or appropriate responses.

Sleep/Diet: Mr. Ramirez reported "I can't sleep at all...I have physical pain and mental pain...I hear people talking in my head." He indicated that his appetite fluctuates and that he has lost weight since being incarcerated.

Suicidal Ideation, Intent, or Plans: He denied a history of suicidal ideations, intent, plans, or attempts, stating "No, they'll put me in that little room."

Substance Abuse History: Mr. Ramirez acknowledged using illegal drugs and alcohol in the past.

Current Medical/Physical Concerns and Medications: He denied past or present use of medications, including being prescribed psychotropic medications.

Current Mental Health Status: Mr. Ramirez presented with symptoms associated with a significant mental illness, including heightened instability of mood. Specifically, he evidenced a mixture of characteristic signs and symptoms involving a range of cognitive and emotional disturbances that may be associated with the initial onset of a psychotic disorder.

## DIAGNOSTIC IMPRESSIONS

### RULE OUT-

| Axis I: | 295.30 | Schizophrenia, Paranoid Type |
| | 295.70 | Schizoaffective Disorder, Bipolar Type |
| | 309.81 | Posttraumatic Stress Disorder, Chronic |
| Axis II: | 799.9 | Diagnosis Deferred |
| Axis III: | | Defer to Physician Report |
| Axis IV: | | Legal Problems |
| Axis V: | 30 | |

## CONCLUSION

Mr. Albert Ramirez is a 19 year-old, single, Hispanic male, with no known documented history of mental illness. However, throughout the evaluation, he evidenced a constellation of symptoms characteristic of Schizophrenia, including paranoia, psychoses, loose associations, disorganized thinking, poor reality testing,

MAR 1 8 2008

depersonalization, inappropriate mood and affect, and poor judgment, reasoning, and insight. Mr. Ramirez reported numerous times "There's something wrong with my mind." Because of his current mental state, he was unable to complete a formal evaluation.

Based on his current presentation, Mr. Ramirez is not capable of competently proceeding with adjudication and handling the stress associated with the legal process. In his current state, he has been unable to assist his attorneys in his defense as he is unable to communicate in a logical or rational manner. He is also unable to provide any assistance to his attorneys regarding pertinent circumstances or events that led to his arrest in reference to the alleged charges. It is therefore the opinion of this examiner, that Mr. Albert Ramirez is not competent to stand trial.

Thank you for your referral.

Respectfully submitted by:

Maxann Shwartz, Ph.D.
Licensed Psychologist

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| CNMCF/CMRU/CMU | GCCF | LCCF | PNM | SNMCF | SNMCF-POU | WNMCF | NENMDF |
| P.O. Drawer 1328 | P.O. Box 520 | 6900 W. Millen Dr. | P.O. Box 1059 | P.O. Box 639 | P.O. Box 20005 | P.O. Drawer 250 | 185 Doctor Michael Jenkins Rd. |
| Los Lunas, NM 87031 | Santa Rosa, NM 88435 | Hobbs, NM 88244 | Santa Fe, NM 87504 | Las Cruces, NM 88004 | Las Cruces, NM 88004 | Grants, NM 87020 | Clayton, NM 88415 |

Name _____

No. _____ Unit _____

Date: _____

EXIbITS

IN ClloreSy

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| CNMCF/CMRU/CMU<br>P.O. Drawer 1328<br>Los Lunas, NM 87031 | GCCF<br>P.O. Box 520<br>Santa Rosa, NM 88435 | LCCF<br>6900 W. Millen Dr.<br>Hobbs, NM 88244 | PNM<br>P.O. Box 1059<br>Santa Fe, NM 87504 | SNMCF<br>P.O. Box 639<br>Las Cruces, NM 88004 | SNMCF-POU<br>P.O. Box 20905<br>Las Cruces, NM 88004 | WNMCF<br>P.O. Drawer 250<br>Grants, NM 87020 | NENMDF<br>185 Doctor Michael Jenkins Rd.<br>Clayton, NM 88415 |

Name _____

No. _____ Unit _____

Date: _____

MOTION

REQUSTING ASSISTANCE

OF COUNSEL

TO COURT

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

| | |
|---|---|
| West's New Mexico Statutes Annotated<br>   State Court Rules<br>     9. Criminal Forms<br>      Article 7. Special Proceedings | NINTH JUDICIAL DISTRICT<br>CURRY COUNTY CLERK<br>FILED IN MY OFFICE<br><br>2017 APR 25  PM 1:37<br><br>_CLERK DIST. OF COURT_ |

NMRA, Form 9-701

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS

Currentness

*[For use with District Court Criminal Rule 5-802 NMRA]*

STATE OF NEW MEXICO

COUNTY OF ...C U RRy...

IN THE DISTRICT COURT

For Official Use Only

No. _D-905-CR-2007-00434_

*(To be supplied by the clerk of the court)*

ALBERTO RAMIREZ

*(Full name of prisoner)*

       Petitioner,

v.

WARDEN FRANCO

*(Name of warden, jailor or other person having power to release the petitioner)*

       Respondent.

*Instructions -- Read Carefully*

Make sure that all information provided in this form is true and correct. Make sure that all necessary documents are attached, or explain why the documents are not being included. If you are currently incarcerated, you may file the petition without payment of the filing fee. If you are not incarcerated and are seeking free process, complete Form 9-403.

Finally, you must complete the certificate of service and mail or otherwise serve copies of this petition on the respondent and the district attorney in the county in which the petition is filed. You must file the original petition and one copy with the Clerk of the District Court. You should keep a copy for your own records.

### PETITION FOR WRIT OF HABEAS CORPUS [1]

EXHIBIT

P

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

1. _____ (name of person in custody) is imprisoned or otherwise restrained at _____ (name of facility and county of detention) by _____ (name and title of person having custody).

2. This petition

[W] seeks to vacate, set aside or correct an illegal sentence or order of confinement (i.e., ineffective assistance of counsel, illegal search and seizure, involuntary confession, or other matters relating to the trial or sentence the confined person received).

[W] challenges confinement or conditions of confinement or matters other than the sentence or order of confinement. (*This applies only to matters arising after the confined person arrived at the institution, i.e., county jail confinement, mental hospital confinement, detention facility confinement, good time credit, misconduct report, prison due process violation or parole*).

3. State concisely the facts upon which the confined person bases the claim:

) Prosecutorial misconduct regarding questions about element old. y legal research, CASE U.S. Corkce 236 F3d 77 (6th cir 2011) U.S. v Francis, 170 F3d 546 551 (6th cir 1999) state v.Stephen F. @ 2008-NMSC-037, 71, 144 N.M. 360, 188 2.154. 2) Jury observer defendant in shackles ) @ ineffective assistance of counsel, @ ineffective assistance of appellate counsel @ improper comments on Mr. ruined rights to silence @ prior bad acts. @ denial of reduction of competency to stand trial.

4. State concisely the grounds and law, or other legal authorities on which the confined person bases the claim:

..................................................................
..................................................................
..................................................................
..................................................................

5. Have the grounds being raised in this petition been raised previously in your direct appeal? If so, explain the result. If not, explain why not:

yes, I was told over the phone by appelate attorney appeal was denied and now given the denial of my appeal. Im being done wrong.

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

6. Have the grounds raised in this petition been raised previously in another petition for a writ of habeas corpus? If so, explain the result. If not explain why not:

No

7. Briefly describe the relief requested:

appr counsel to represent me on Hibeaus proceedings 2 Evidentary Harin] 3 to reverse conviction 4 remand new trial 4 review For new Sentincing Heary 5 to grant Habeas 6 Grant appt of attornets cost, ct

8. State the nature of the court proceeding resulting in the confinement (*i.e., criminal prosecution, civil commitment, etc.*), including:

(a) case name:

State of. N.Mex. v. Abeta Ramirg open, count of murder

(b) docket number:

dont know

(c) name of judge:

Teddy . L. Hartley

(d) name and location of the court in which the proceeding was held:

701 N. Main St 9th judical district court,

9. State the date of the final judgment, order or decree for confinement:

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

January 8th 2014 Sentence

10. Attach a copy of the judgment, order or decree. If not, describe your sentence.

1, FC Eligibility of parole chief 30 yRS
2, 3yurs + Run consequent, 1 at approvement
3rd degree tempering evidence

11. Was the conviction the result of:

___ Guilty plea

___ No Contest plea (*nolo contendere*)

✓ Finding of guilty by judge or jury

12. Was the confined person represented by an attorney during the proceedings resulting in the confinement?

✓ Yes

_____ No

13. If you answered "yes" to (12), list the name and address of each attorney who represented the confined person:

JESSE. R COSBY P.O. Box 2730
RoSWELL NM 88201

14. Did you appeal your conviction?

✓ Yes *(Go to 15)*

___ No *(Go to 16)*

15. If you answered "yes" to (14), list:

(a) The name of each court to which an appeal was taken:

State of N.Mx. V. Pablo Ramirez
Diehct Sentment to 9th Judical district court

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

(b) The case name and docket number for each appeal:

State of new mex V. Alao Ramre3
court of murder and two forgery with
2i cute

(c) The date each appeal was filed and decided: (*Attach a copy of each opinion or order*)

appeal was Filed JAN 17th 2015
I don't know
It was decided Dec 1st 2016

(d) A summary of the grounds upon which each appeal was based:

court erred when Id denid mr ramie3 a
reatauexion to campive ① mr ramies recied
ineffective assistive of couise) 2 inproper comment
on shave 4 mr ramez trail preshined of Jury
sub restrans prior bad acts ⑥ court abused
discresion in refusins to
start mistrial

(e) The result of each appeal:

V
denied as minor errors
and admissable purebee and more

(f) The name and address of the attorney on appeal:

STEUSN J Forsberg
assistant appelate defender
SOS marquete NW, 87102
SoS. 77247

16. If you answered "no" to (14), state the reasons for not appealing:

**FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701**

17. Apart from any appeals listed in (15), have any other post conviction applications, petitions or motions, been filed with regard to this same imprisonment or restraint?

___ Yes *(Go to 18)*

___ No *(Go to 19)*

18. If you answered "yes" to (15), list with respect to each such petition or motion:

(a) The type of proceeding:

......................................................................................................................................................................................

......................................................................................................................................................................................

(b) The name and date of each case:

......................................................................................................................................................................................

(c) the docket number:

......................................................................................................................................................................................

(d) the court, the administrative agency, or institutional grievance committee from which relief was sought:

......................................................................................................................................................................................

(e) the result of each proceeding. *(Attach a copy of each decision.)*

......................................................................................................................................................................................

......................................................................................................................................................................................

(f) The issues raised in each proceeding:

......................................................................................................................................................................................

......................................................................................................................................................................................

(g) State whether a hearing was held in connection with each of these proceedings:

......................................................................................................................................................................................

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

(h) State whether the confined person was represented by an attorney in each proceeding and, if so, the attorney's name and address:

_Staven J Farsborg assistant appelcted_
_district 505 marquette n.w. Ste 120_
_Abq. NM 8702_

19. Do you seek the appointment of counsel to represent you?[2]

✓ Yes

___ No

## VERIFICATION

STATE OF NEW MEXICO

COUNTY OF _SANTA FE_

I, the undersigned, being first duly sworn upon my oath, state that I am the petitioner in this action. I have read the foregoing petition and know and understand its contents, and the information contained herein is true and correct to the best of my knowledge, information and belief. On _____, ___ (date), I deposited this petition in the internal mail system of the institution in which I am confined, properly addressed with any necessary postage prepaid, for forwarding to the district court at the following address:

_9th Judicial_
_District_
___ Court (name of court)

_Clovis_ (city), New Mexico, _88101_ (zip code).

( 
Signature )  _Alberto Ramy._

( 
Address )  _P.O. Box 1053 Santa fe 8755-2_

PNM No., if applicable

SUBSCRIBED AND SWORN TO before me this _11_ day of _Jan 2017_, ___ by

_Abeto Ramy_

(Name of petitioner)

_Abto Ramy_

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

Notary Public

My Commission Expires: 4/23/20

## CERTIFICATE OF SERVICE

I hereby certify that true copies of the foregoing petition were served upon the respondent and the district attorney in the county in which the petition is filed by _____ (*describe manner of service*), this ___ day of _____, ___.

(

*Signature of petitioner*

)

## USE NOTE

**Credits**
[Adopted effective Aug. 1, 1989. Amended effective May 6, 2009; Dec. 31, 2014.]

**Footnotes**
1    After this petition is reviewed by the Court, the Court will enter the order granting or denying the writ or ordering a response before further action. The order shall be prepared by the Court.

2    Petitioners who are incarcerated at the time of filing the petition need not file a motion for free process and may file the petition without payment of the applicable filing fee. *See* Rule 5-802(D)(2) NMRA

NMRA, Form 9-701, NM R CR Form 9-701

State court rules are current with amendments received through August 1, 2016

 © 2016 Thomson Reuters. No claim to original U.S. Government Works.

January 12, 2017

To: Alberto Ramirez #69,597

From: Steven J. Forsberg, Assistant Public Defender

Re: Status of your appeal

Dear Mr. Ramirez,

As we discussed on the telephone, the New Mexico Supreme Court has ruled against you on your appeal. Your direct appeal is now over. You can file a writ of habeas corpus, and I recall you said you had the package of paperwork. I cannot represent you on your habeas case, but when you file your request I advise that you ask that an attorney be appointed for you.

You mentioned that a lot of your papers were lost, so I am sending you copies of the brief-in-chief, state's answer, and reply brief in your case.

As I said, I cannot write your habeas petition for you, but I'd suggest you consider adding this to it: In your Brief-in-Chief on page 17 it states that you had asked Doctor Schwartz to be called as a witness on your behalf, but she was not. This is evidence that there were witnesses you wanted called that were not.

You have my name and number if you have any further questions regarding your direct appeal.

Steven J. Forsberg, Assistant Public Defender
505 Marquette Ave. NW ste 120
Albuquerque, NM  87102
Phone: (505)796-4405

Steven Forbes

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

## MANDATE NO. S-1-SC-34576

TO THE DISTRICT COURT SITTING IN AND FOR THE COUNTY OF

CURRY, GREETINGS:

WHEREAS, in causes numbered D-905-CR-2007-00434 on your criminal

docket, wherein State of New Mexico was plaintiff and Albert Jose Ramirez was

defendant, the district court entered judgment convicting defendant of willful

and deliberate first-degree murder and tampering with evidence; and

WHEREAS, the cause and judgment were afterwards brought into this

Court upon notice of appeal and statement of issues filed by defendant,

whereupon such proceedings were had that on December 1, 2016, a decision was

issued affirming defendant's conviction.

NOW, THEREFORE, this cause is remanded for further proceedings, if

any, consistent and in conformity with the judgment of this Court.

IT IS SO ORDERED.

WITNESS, Honorable Charles W. Daniels, Chief Justice
of the Supreme Court of the State of New Mexico, and
the seal of said Court this 11th day of January, 2017.

(S E A L)

Joey D. Moya, Chief Clerk of the Supreme Court
of the State of New Mexico

A true copy was served on all parties
or their counsel of record on date
filed.

Joey D. Moya
Chief Clerk of the Supreme Court
of the State of New Mexico

DECEIVED
JAN 1 2 2017
APPELLATE DIVISION
PUBLIC DEFENDER DEPT.

☐ CHMCF/CMRU/CMU    ☐ GCCF    ☐ LCCF    ☐ PNM    ☐ SNMCF    ☐ SNMCF-POU    ☐ WNMCF    ☐ NENMDF
P.O. Drawer 1328        P.O. Box 520    6900 W. Millen Dr.    P.O. Box 1059    P.O. Box 639    P.O. Box 20005    P.O. Drawer 250    185 Doctor Michael Jenkins Rd.
Los Lunas, NM 87031    Santa Rosa, NM 88435    Hobbs, NM 88244    Santa Fe, NM 87504    Las Cruces, NM 88004    Las Cruces, NM 88004    Grants, NM 87020    Clayton, NM 88415

Name _____
No. _____ Unit _____

HABEAS PACKET Date: _____

QUESTION #3 AND 4 IN

COUNSEL at tRIAL VERBALLY ASSAULTED I MR RAMIREZ
STATING I AM A Stupid little Bitch And
PROMISED TO BE INEFFECTIVE, IF I MR Ramirez
Continued TO inSiSt on going TO Trial rather
than pleed guilty as counsel ynssisted.
And threatened Me Ramirez by Saying I Hope
you Get life. Counsel would Not ConmunicAte
with I MR Ramirez as I tried to NO avail.

COUNSEL WOUld NOT file MOTIONS for CHANGE OF
VENUE EVEN Though There was ExtenSive media
that was incommissible, Saying ME Ramirez
Threatned to Kill His Mother and step Father
and His Mother Kicked him out due TO
His Violent tendencies.

COUNSEL WOULD NOT Suppens Evdence that I was
Hiding in CAR and they fownd Rap Words talking
of Shooting People.

MR COSBY WOULD NOT Call dR. Maranne Swartz to
testify FOR The defense OF inability to perform
Specific intent due to Mentol illness. Severe depression
anxiety, Schizoprenia perrosion, and my competency
to stand trial.

I wanted to have Jury instruction on the iSSue OF
Competency Rule 5-602 (B)(2)(B) and refused to
object to instruction I asked him to.

I also told counsel I did fall down when
Sheriff Called Me TO walk to him and I was
coerced into Saying NO by Sheriff docerty and
gestered behind my lawyers back to Say NO I
asked him to request a mistrial to No avail

CNMCF/CMRU/CMU    GCCF    LCCF    PNM    SNMCF    SNMCF-POU    WNMCF    NENMDF
P.O. Drawer 1328    P.O. Box 520    6900 W. Millen Dr    P.O. Box 1059    P.O. Box 639    P.O. Box 20005    P.O. Drawer 250    185 Doctor Michael Jenkins Rd.
Los Lunas, NM 87031    Santa Rosa, NM 88435    Hobbs, NM 88244    Santa Fe, NM 87504    Las Cruces, NM 88004    Las Cruces, NM 88004    Grants, NM 87020    Clayton, NM 88415

Name _____

No. _____ Unit _____

Date: _____

MR COSBy refused to address Court and request a nistrial which if raised issue probably start trial over if lawyer had done a Better Job of protecting my rights

Also witness Pricella lopez and Ricky Jaramillo 2 witnesses would of testified that I am real skinny and helped prove I was the one being chased in yard and that detective was mis leading witnesses.

Counsel at trial failed to call de Fink as a witness at trial as I asked. de Fink would of testified that I was Not compelent and mentally ill

I asked counsel to call de Joane Burness To cross examine.

I asked counsel to investigate mental illness difuse as I have family History of mental illness.

I did Express disatisfaction with counsel and the Court failed To inquire into the mothive.

MR Cosby promised if I testified I would be able to speak of Sexual Abuse by Nicbar and my moms boyfrend He lied To incriminate me.

If counsel did not lie I would Not have testified and trial may have Been diffrent togather those errors all the prejudice Id be Entitled to a new Trial.

Counsel at trial failed To give me the entire discovery and did Not discuss any of the case with me. Bcue I wouldn take plea.

CNMCF/CMRU/CMU    GCCF         LCCF           PNM            SNMCF          SNMCF-POU       WNMCF          NENMCF
P.O. Drawer 1328  P.O. Box 520 6900 W. Millen Dr, P.O. Box 1059  P.O. Box 639   P.O. Drawer 20005  P.O. Drawer 250  185 Doctor Michael Jenkins Rd.
Los Lunas, NM 87031 Santa Rosa, NM 88435 Hobbs, NM 88244 Santa Fe, NM 87504 Las Cruces, NM 88004 Las Cruces, NM 88004 Grants, NM 87020 Clayton, NM 88415

Name _____
No. _____ Unit _____

Date: _____

counsel did not call Isceal ramirez who would of
testified Robledo hit me and was violent when
I was 13 and He fought robedo.

also jose ramirez would testify Robledo was
aggressive violent + attacked him everytime
He tried to go See me

counsel failed to get Medical records Evidence
To show I was physically injured at time of
crime.

There was a complete Breakdown in Communication.

I want the cart To know I asked twice on

record To speak to show I timely Moved for
removal of counsel, But The court refused To
let me say anything about conflict Between
I and counsel.

I tried to put in record After trial counsel said
After I tried To Fire him.
court refused to inquire into it
If The court had Id of got a New attorney or
a mistrial
I asked To represent myself.

I was denied My Sixth admendment right to
effective assistance of counsel.

I ask for an Evidentary Hearing to Now allow
me to Speak on record

Thanks Very much

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| CNMCF/CMRU/CMU<br>P.O. Drawer 1328<br>Los Lunas, NM 87031 | GCCF<br>P.O. Box 520<br>Santa Rosa, NM 88435 | LCCF<br>6900 W. Millen Dr.<br>Hobbs, NM 88244 | PNM<br>P.O. Box 1059<br>Santa Fe, NM 87504 | SNMCF<br>P.O. Box 639<br>Las Cruces, NM 88004 | SNMCF-POU<br>P.O. Box 20005<br>Las Cruces, NM 88004 | WNMCF<br>P.O. Drawer 250<br>Grants, NM 87020 | NENMDF<br>185 Doctor Michael Jenkins Rd.<br>Clayton, NM 88415 |

Name _____

No. _____ Unit _____

Date: _____

INeffective assistance of Appclte cousel
Saying in my appeal I abandoned to
Shai cousel at trial was ineffective it
Shows oN record I asked to call
dR. Maxine Swartz out was deNued!
rabey I would of gotten CW
EvideNtay Hearig on appeal
aiso Aeard Not argue I did Not recieve
a fair Sentencing and double Jeopardy
oN tempering with EvideNce.

I ask for CW EvideNtay Hearing.

CNMCF/CMRU/CMU
P.O. Drawer 1328
Los Lunas, NM 87031

GCCF
P.O. Box 520
Santa Rosa, NM 88435

LCCF
6900 W. Millen Dr.
Hobbs, NM 88244

PNM
P.O. Box 1059
Santa Fe, NM 87504

SNMCF
P.O. Box 639
Las Cruces, NM 88004

SNMCF-POU
P.O. Box 20005
Las Cruces, NM 88004

WNMCP
P.O. Drawer 250
Grants, NM 87020

NENMDF
185 Doctor Michael Jenkins Rd.
Clayton, NM 88415

Name _____
No. _____ Unit _____

Date: _____

Exhibits
needed

written to
request counsel
to assist

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

2017 MAY 31    PM 12: 21

*[signature]*

CLERK DISTRICT COURT

ALBERT JOSE RAMIREZ,

      Petitioner,

vs.                                    No.    D-0905-CR-2007-00434

STATE OF NEW MEXICO,

      Respondent.

## DECISION AND ORDER OF SUMMARY DISMISSAL

THIS MATTER having come before the Court on Petitioner's pro se Petition for Writ of Habeas Corpus filed March 22, 2017 and Petitioner's pro se Petition for Writ of Habeas Corpus filed April 25, 2017 (hereinafter collectively referred to as "Petition") in the above referenced cause number, and the Court being fully advised, enters its sua sponte order and FINDS:

This Court notes that the Petition is scribbled and nearly illegible. It appears that Petitioner is challenging his conviction based upon prosecutorial misconduct and ineffective assistance of counsel.

A review of the file shows that that Petitioner was convicted of various offenses including Murder in the First Degree in October, 2013. Petitioner appealed his conviction to the New Mexico Supreme Court. The New Mexico Supreme Court affirmed Petitioner's conviction. This case was subsequently assigned to this Court.

As to Petitioner's argument that there was prosecutorial misconduct, this claim is not properly supported by facts in the Petition. This Court finds that Petitioner is not entitled to relief as a matter of law in this regard.

**EXHIBIT**

Q

As to Petitioner's argument that he was denied effective assistance of counsel in this matter, this claim is not properly supported by facts in the Petition.  Further, this issue was part of Petitioner's appeal and the New Mexico Supreme Court affirmed Petitioner's conviction. This Court finds that Petitioner is not entitled to relief as a matter of law in this regard.

### DECISION AND DISMISSAL

After examining the Petition, exhibits, and prior proceedings, and based on the above discussed reasons, this Court finds the Petitioner is not entitled to relief as a matter of law. Therefore, in accordance with Rule 5-802(G)(1) NMRA, the Petitioner's pro se Petition for Writ of Habeas Corpus filed March 22, 2017 and Petitioner's pro se Petition for Writ of Habeas Corpus filed April 25, 2017 are summarily dismissed.  An attorney will not be appointed and a hearing will not be set.

HON. DREW D. TATUM
District Judge, Division II

STATE OF NEW MEXICO
COUNTY OF CURRY
FILED IN

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

JUN 20 2017

Clerk District Court

---

West's New Mexico Statutes Annotated
  State Court Rules
    9. Criminal Forms
      Article 7. Special Proceedings

NMRA, Form 9-701

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS

Currentness

*[For use with District Court Criminal Rule 5-802 NMRA]*

STATE OF NEW MEXICO

COUNTY OF CURRY

IN THE DISTRICT COURT

*For Official Use Only*

No. _____

*(To be supplied by the clerk of the court)*

ALBERT RAMIREZ

*(Full name of prisoner)*

Petitioner,

v.

WARDEN GERMAN FRANCO

EXHIBIT
R
_____

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

*(Name of warden, jailor or other person having
power to release the petitioner)*

Respondent.

### Instructions -- Read Carefully

Make sure that all information provided in this form is true and correct. Make sure that all necessary documents are attached, or explain why the documents are not being included. If you are currently incarcerated, you may file the petition without payment of the filing fee. If you are not incarcerated and are seeking free process, complete Form 9-403.

Finally, you must complete the certificate of service and mail or otherwise serve copies of this petition on the respondent and the district attorney in the county in which the petition is filed. You must file the original petition and one copy with the Clerk of the District Court. You should keep a copy for your own records.

### PETITION FOR WRIT OF HABEAS CORPUS[1]

1. ALBERT RAMIREZ _____ *(name of person in custody)* is imprisoned or otherwise restrained at PNM Penitentiary of New Mexico _____ *(name of facility and county of detention)* by Warden Gesmen Franco *(name and title of person having custody).*

2. This petition

[W] seeks to vacate, set aside or correct an illegal sentence or order of confinement (i.e., ineffective assistance of counsel, illegal search and seizure, involuntary confession, or other matters relating to the trial or sentence the confined person received).

[W] challenges confinement or conditions of confinement or matters other than the sentence or order of confinement. *(This applies only to matters arising after the confined person arrived at the institution, i.e., county jail confinement, mental hospital confinement, detention facility confinement, good time credit, misconduct report, prison due process violation or parole).*

3. State concisely the facts upon which the confined person bases the claim:

INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL AND APPEATZ COUNSEL ON APPEAL →

I TRIED to Speak to Counsel to no Avail, irreconsible conflict.

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

COUNSEL MR. COSBY. BEFORE TRIAL BEGINS And AFTER I TRIED to FIRE HIM IN FRONT OF JURY did VERBALLY ASSUALT And MADE threats Stated, Stupid Little Bitch I promise to be INEFFECTIVE assistance if you Keep on SAYING you want to GO to trial AS I INSIST. I hope you Get LIFE.

4. State concisely the grounds and law, or other legal authorities on which the confined person bases the claim:

(I don't Know what this MEANS. Sir)

I'll Try 2. IT'S A constitutional Right to effectue assistance at trial + ON appeal. I've wrote on Extra Sheets OF Papers to Explain. SOME FACTS Best AS I CAN. + Exbits + Evidence Allegations

5. Have the grounds being raised in this petition been raised previously in your direct appeal? If so, explain the result. If not, explain why not:

YES, I WAS Told appeal WAS denied to File A HABEAUS Packet. NOW HERE is the HABEAUS.

6. Have the grounds raised in this petition been raised previously in another petition for a writ of habeas corpus? If so, explain the result. If not explain why not:

I Raised This ISSUE IN First Habeaus. Now this one is to ~~???~~ Resubmit it And FIX it.

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

7. Briefly describe the relief requested:

TO BE ADPOINTED ASSISTANCE From
Public difenciee post coviction division
to assist ME TO Get AN Evidentary
Hearing to prove the Allegations pr Tile

8. State the nature of the court proceeding resulting in the confinement (*i.e., criminal prosecution, civil commitment, etc.*), including:

(a) case name:

D-090S-CR-2007-00434 IM NOT SUrE

(b) docket number:

D-090S-CR.2007-00434 Dont Know

(c) name of judge:

Teddy. L. HARTLEY

(d) name and location of the court in which the proceeding was held:

700. N. MAINST
9th Judicial district Court

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

9. State the date of the final judgment, order or decree for confinement:

JANUARY 8th 2014.

10. Attach a copy of the judgment, order or decree. If not, describe your sentence.

Life eligibility After 30 yrs plus two 3yrs
two tempering with Evidence,
1st degree Murder
2 tempering w/
Evidence

11. Was the conviction the result of:

___ Guilty plea

___ No Contest plea (*nolo contendere*)

✓ Finding of guilty by judge or jury

12. Was the confined person represented by an attorney during the proceedings resulting in the confinement?

✓ Yes

_____ No

13. If you answered "yes" to (12), list the name and address of each attorney who represented the confined person:

JESSE, P, COSBY

P.O. BOX 3330

14. Did you appeal your conviction?

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

✓ Yes *(Go to 15)*

___ No *(Go to 16)*

15. If you answered "yes" to (14), list:

(a) The name of each court to which an appeal was taken:

9th Judicial District Court.

New Mexico Supreme Court of Appeals.

(b) The case name and docket number for each appeal:

(Don't Know How to do this.)

(c) The date each appeal was filed and decided: *(Attach a copy of each opinion or order)*

Filed Sometime Around August 2013.

Dec 1st 2016.

(d) A summary of the grounds upon which each appeal was based:

Competency Reevaluation, Ineffective assistance of counsel, Improper comments on Silence, prosecutor misconduct, Prior bad acts.

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

(e) The result of each appeal:

denied.

(f) The name and address of the attorney on appeal:

STEVEN J. FORSBERG
505. Marquette N·W 87102
505·796·4405

16. If you answered "no" to (14), state the reasons for not appealing:

17. Apart from any appeals listed in (15), have any other post·conviction applications, petitions or motions, been filed with regard to this same imprisonment or restraint?

✓ Yes (Go to 18)

___ No (Go to 19)

18. If you answered "yes" to (15), list with respect to each such petition or motion:

(a) The type of proceeding: petition Habeas, denied. But I se put an am motion to Recons, cre, amend, revised petition decision

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

petition Habious, But This one is to
Resubmitte it to try to do it propelly

(b) The name and date of each case:

AM Judicial district court, State of r. Mex. v. Abst
Ramirez

(c) the docket number:

NOD—⊗⊗ 0905 - CR - 2007 - 00434

(d) the court, the administrative agency, or institutional grievance committee from which relief was sought:

NA

(e) the result of each proceeding. (*Attach a copy of each decision.*)

denied,

(f) The issues raised in each proceeding:

ineffective assistance of counsel,

(g) State whether a hearing was held in connection with each of these proceedings:

NO

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

(h) State whether the confined person was represented by an attorney in each proceeding and, if so, the attorney's name and address:

NO

19. Do you seek the appointment of counsel to represent you?[2]

✓ Yes

___ No

**VERIFICATION**

STATE OF NEW MEXICO

COUNTY OF ...... SANTA FE

I, the undersigned, being first duly sworn upon my oath, state that I am the petitioner in this action. I have read the foregoing petition and know and understand its contents, and the information contained herein is true and correct to the best of my knowledge, information and belief. On _____, ___ (date), I deposited this petition in the internal mail system of the institution in which I am confined, properly addressed with any necessary postage prepaid, for forwarding to the district court at the following address:

1st Judicial District Court (name of court)

Santa Fe ___ (city), New Mexico, 87501 (zip code).

(
Signature
)      AlBERT JOSE RAMIREZ

(
Address
)      P.O. BOX 1059 SANTA Fe 87501

PNM No., if applicable

*NOTORIZE, PLEASE*

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

SUBSCRIBED AND SWORN TO before me this *12* day of *June 2017* by

...........................................................................................................

*(Name of petitioner)*

ALBERTO RAMIREZ

Notary Public

My Commission Expires: *4/23/2019*

### CERTIFICATE OF SERVICE

I hereby certify that true copies of the foregoing petition were served upon the respondent and the district attorney in the county in which the petition is filed by *mail* *(describe manner of service)*, this *13* day of *June 2017*.

(
*Signature of petitioner*    ALBERTO RAMIREZ
)
**USE NOTE**

Credits

[Adopted effective Aug. 1, 1989. Amended effective May 6, 2009; Dec. 31, 2014.]

Footnotes

1    After this petition is reviewed by the Court, the Court will enter the order granting or denying the writ or ordering a response before further action. The order shall be prepared by the Court.

2    Petitioners who are incarcerated at the time of filing the petition need not file a motion for free process and may file the petition without payment of the applicable filing fee. *See* Rule 5-802(D)(2) NMRA

NMRA, Form 9-701, NM R CR Form 9-701
State court rules are current with amendments received through July 1, 2015.

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

THE WAY TO USE THE EXIBITS WITH THE ISSUES I claim + present. Just Go TO page and OR Exibit or Both. I am Not A lAwyer, I had No more paper to make it Nice + NEAt. I had to Send it Out asap. + copies + All. IM Being Ignore' by law library IN PrISON. PLEASE. EXCUSE MY MISTAKES. I TrIed MY BEST.

facts. Discovery, to prove claim of
Ineffectiness Counsel
See Exibit 4,5

MR. COSBY COUNSEL trial DENIED
~~and~~ and Failed to provide effective
Assistance.

A WEEK BEFORE TRIAL
I ASK TO FIRE My ATTORNEY
DURING TRIAL IN COURT I
fired My ATTORNEY. EAch tIME
thERE NO INQUIRE INTO Why
I was EXpressino dissatifaction
I WAS Told twice by MR
COSBY BEFORE TRIAL StARted
and after I TRIEd TO FIRE
him IN COURT DURING trial
COSBY Stated - I AM A little
Stupid Bitch and ~~made~~ Made
threAts, by SAYING I Hope
you GET liFe, I already told
you to tAke the plan or you
WONt be provided EFFective
assistance of COUNSEL.
I WAS NOt able to put the
allegations on Record.
But SEE ExiBit's (10) page 1,2,34,5
(10) page 38-47

page 2

page 2

See Exibit page 47 page 53, 54 55,
Exibit 13

I TRIED to address court My lawyer was NOT Filing Any OF my motions I Asked him to, ChangE OF VENUE, EVEN though there was pRE-trial publicity concerning the case iN Small community OF chvis, NEW Mexico. Some OF this publicity inaccuratly described Mr ramirez as having attacked alleged victim on prior occassions, THE publicity was in accurate and highly prejudicial Crd defense Cowsel Should have at least raised the issue and requested a HEDriNg. SEE Exisit.

EXBit 3

Counsel Should have at least Filed a motion to suppress Evidence that was illegally Siezed & inadmissible and highly prejudicial SEE Exibit 11 or requested A HEARING ON this issue See 11 Exibit page 48 49 50

COUNSEL did NOT provide me with Pll discovery, would Not discuss WHO He was planning to Call as witnesses And would Not discuss INtent to present the defense OF INSANITY COUNSEL did Not File a Notice OF INtent to present the defense Exibit 1) page-1, 2, 3, 4. 5 See page 3, 4

page 3

Exibit 1, 3, 10 page 4, 10, 12, 15
page 47

Insanity, But Instead of advocating
Zealously on Behalf of I mr ramirez
defense, counsel Informed the
court that he would not be presenting
Expert Psychatrist, or physician,
Because Mr. Ramirz wont discuss
the case with him and is unable
to assist in the defense.
Counsel Failed to alert the court
to important facts in arguing
the case. Mr Ramirz was
Injured in an accident in 2007
Which he began taking anti-
 depressant medication, & other
 medications, this became severe
 depression as he was unable
 to walk, work, or drive, could
 only walk with cruetches, suffered
 from psychosomatic delusions,
 Hallucinations, and counsel did not
 present evidance of the medication
 Mr ramirez was taking.
Mr. Ramirz felt his lawyer was
 against him, see page 4, 10, 12, 13
           Exibit 1, 3,

SEE EXISIT 1, page 10, page (page 4)
EXISIT 10

COUNSEl Failed to File any
WITNESS list whatsoever IN
Support OF MR Ramirez's defense
OF INSANITY and lack of capacity

MR Ramirez had several witnesses
He wished to present IN support of
his defense, Including his Aunt,
Sister, Brothers, Friends, and
doctors who TREATED him after
accidsnt.

COUNSEL failed to Show courts JENNIfer Said wante
I was to cooperative
de Buress lied said I
wouldnts
MR. Ramirez asserts that he cooperate
received INEFfective assistance OF  liars
Counsel For various reasons that
Are, UNFORtwently, Not ON
Record, Because those matters
were Not preserved IN the record.

MR. Ramirez Request ~~~~~ that the
court grant him an attorney to
assist him IN habeas proceedings
and to Hold An Evidentiary
HEARING. ON ineffective OF
COUNSEL.

Exibit 1. 2:12 05
PM
① ⊥ 10/10/2013

AFTER I FIRED COUNSEL IN trial
COUNSEL VERBALLY AssAulted ME I
advised COUNSEL. I did FAll down
IN Front OF Jvey Because OF
The Shackles ON my leg tied to
the table, WHEN I was told All
rise, Shuriff Called ME to door
I FEll, Jvey Saw my shackle,
while my lawyer went to tain tu the
Tudge The Tudge, The SherriFF
docerty Thriatned ME and told
Ms to Say I did NOT FAll.
I was asked by Tudge did you
Fall. I Said yes then NO
Because SherriFF was gesturing
Me to Say NO. ONly d.A
nould SEE. She was Shacking
Head 1 Finger and mouthing NO.
I told my lawyer this And
ask him ⬤ why dont he Say
it to the court.
    HE Said No I Already Made
        up my mind.

page 6

Exibit 1 page 1-5

Counsel Failed to Alert the court that
Told him I did Fall, Jury Saw
my Sheckles, Sheriff docerty
Manipulated me to say no. CHAMBER
(To Go against myself) ask docerty SEEN?
Counsel Failed to Call, dr Fink,
dr. Burkss, dr. Maxione Swarts
who I advised I had Been
Sexually abused my moms
big Frend, + nsibor Sam Saiz
SEE Ex.B.t, 24, 5 pages 6, 7, 8, 12, 13
17, 18 - 27

Counsel Failed to Call witness, Pricilla
lopez, mcvy joromillo, + help prove
I was the one being chased in
yard, to Help prove my testimony
truthFull,

SEE Ex.B.t 7, 8, 10
Counsel Failed to investigate family
History of mental Illness, and
family witnssses to difuse of
Insanity, 4. 5
I would 11 try to call him and
write to talk he ignored me or was
to busy, to. see Ex.B.t. 4, 5, 7,
page 18 to 24 + 27 + 30 + 47

SEE
EXB.t 2
Ex.Bt 4. S page 17 of
of B.t page 25

SEE page 19

Counsel Failed to Keep promises
Made, OF Being able to testify
about Sexual Abuse and that he
Would File motions I asked him
to File
page 47
SEE Exibit 4, S, 10
1, 10

Counsel Failed to call my Father Brother
who would testify Eladio Robledo
was violent and had assaulted me
and them in past.
My father and Brother are willing
to testify to this at hearing.

Counsel Failed to call dr maxine
Swaths as witness who would
testify as to my insanity defense
and sexual abuse and Incompitency
SEE Exibit 9, 10
page 39 to 43 + 47
Counsel Failed to present any
defense at trial.

~~and record of Gabriel~~
Counsel Failed to give me advice when
I asked over I was drunk when I killed
Muster dad. do I tell that or not. He did not
481PM2

page 8

page 8

COUNSEl Failed to GET MEDICAL
REcords  to SHOW I WAS
ON Crutches, unable to work or walk,

COUNSEl Failed to advise Me of
The Plea did Not Explain the
Maximum & Minimum time
I was Facing EVEN though I
tried to ask. (See page 4) 5, 6)

COUNSEl Failed to Be respectFull
and responsible and FullFill his
duty of loyalty and advocate
to me his client.

COUNSSl Failed to Argue I was
The one Being chased by Robledo
That I was 100 pounds and Robledo
175 pounds, Not 145 as medical
Examiner said, page - 7-10
            SEE Exibits 2,

COUNSEl Failed to Alert court
I was hearing voices during trial.
    SEE Ex. Bit, 1, 1A, 4, 5, 6

page 9.

page

SEE EXIBIT —9
page 34.35

APPSICTS COWNSEL Failed to argue that trial COWNSEL Failed to call WITNESSES WHO would have testified to my MENTAL iLLNSS, defence OF INSANITY, or lack of capacity, or counsel made promises NOT keeped.

Appellate CoWSSl Failed to argue I was NOT GIVEN a Fair SenTencing HEARING.

SEE Exibit.

APPLICNT COWSEL Failed To argue on appeal I told him I had been verbally assaulted by TRIAL causeL little bitch, and Threatered me with ineffective assistance if I refused to TAke plea.

OPPAIATE COWPSSL Failed to make aware supreme Court OF appeals of But IN my appeal I wanted to repressent my self.

page 47

SEE Exibit 10

appelate cowsel Failed to cisk in
appeal for an evidentary
HEARING ON all These problems.

Cowsel Failed to argue It was
double Jeopardy to Charge
me twice with 31 degree page 47
tampuing with evidence. Exibit 10

The district court Failed to
inquies into the matter
when it is on record
MR. Ramirez complained on
More than one occassion
To The Judge of his Frustration
with defense counsel. And
even though MR Roming ask
For substitute of cowssl
twice before trial and
fired his attorney once
in trial in Front of
Jury. and asked to
represent hisself.

SEE Exibit 1, , 6
page 1 - S Exibit 1
Exibit 6 - page 28.

page 1 through page 11
5

Exibit 1.

Counsel Failed to communecate
Back with MR. Ramirez, Even
though Mr. Ramirez tried
to No avail.

MR Ramirez recieved Ineffective
assistance of counsel and dwed
his constitutional Rights to
effective assistance of counsel.

I Mr. ramirez ask the court
to appoint attorney to assist
with heibaus process.

Mr ramirez ask for an Evidetary
Hearing to devolpe the record
Nessary to prove allegations
- a disposition Hearato Also. -
Also attached witness Statement by
my Brother Joe Ramirez who Spoke
To MR cosby and Told Me
to fire my attorney.

Sincerly
Albert.
Ramirez

THE EXIBIT'S
ARE ONLY labEIEd
1 to 13 and pages 1-56
I did NOt lable
1A, 1B, 1C, NO.
ONLY, 1 to 13.
They are all relevant
to certain facts
+ allegations to
Support my claim
OF. Ineffectue assistance
OF counsel trial +
appllate attorney.

I ask the courts
all them to Not
dismiss my ~~case~~ ~~pact~~
Habeaus Because
Im pro se, please appoint
me an attorney or grant
an evidutary hearing, or
prelimanary hearing let me
prove my claim I
Nsed A chance.

I do have A witness my
brother who can testify
to the threats made by
Mr. Cosby. Cosby told my
brother to tell me to plea
my brother knows of the threats

COUNSEl did advice me to take
PLEA But would NOT EXPLAIN
what the PLEA WAS.

AlSo COUNSEL did NOT tell
me the maximum time
I was FACING
I did NOT KNOW.
I thought the most
I could get was
15 yes.
            I did NOT KNOW
Mr. COSBY would NOT
answer any of my questions
Or Explain anything to me.

He was disrespectfull,
MEAN, Rude, unprofessional
and did Not provide
    effective assistance.

COUNSEl would not call all witness
er file motions, change venue,
For private investigator, new
Competency evalction, - See Ex. 9 + 16

Page: _____

If not for trials counsels
Ineffective assistance of
counsels Mr. Ramirez would of
had a stronger case going
into trial. Mr. Ramirez
was prejudiced by counsel
lack of effective assistance.
Please I would pry @ for
an attorney if I had
money even at sentencing
counsel failed to provide
effective assistance.
I've been denied a fair
trial. All round.

THIS IS TO HELP PROPERLY PRESENT PETITION FOR HABEAUS. THE FACTS IN RECORD AND OFF RECORD. THE CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL AND INEFFECTIVE ASSISTANCE OF APPEALATE COUNSEL.

I AM TRYING TO SHOW I SHOULD BE GIVING AN OPPURTUNITY TO SHOW and Prove My Claim + allegations and TO Recieve ASSISTANCE FROM Public defender OFFICE. ON POST CONVICTION ASSISTAUCE.

PLEASE and thank you So Much For your time HELP Kindness God Bless

If counsel had effectively represented Mr Ramirez. It is likely that I would of had a Stronger case going into trial and this would have affected Mr ramirez's decision to enter into a plea. Mr Ramirez complained on more than one occasion to the Judge about his Frustration with difense counsel. Mr. Ramirez was denied effective assistance of counsel.

I ask for an attorney to Help. Evidentary Hearing,

I ask to Resubmit my habeaus petition this one to Send to Supreme court. Please and Thank you for Your Time God Bless

PO Box    Alberto
1059      Ramirez
Santa fe nm 87501    69597

ST. VS ALBERT RAMIREZ  CR-07-434          COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 1:58:18 PM | CHANDLER | RXEX - DO YOU UNDERSTAND THE WORD PREMEDITATE, FIRST TIME YOU SHOT ELADIO WAS IN THE GARAGE, YOU PLANNED ON KILLING HIM IN THE GARAGE |
| 1:59:03 PM | COSBY | RDEX - FURTHER COMMENTS |
| 1:59:45 PM | | #2 WITNESS JOSE RAMIREZ JR. CALLED BY D / SWORN / DEX |
| 2:01:11 PM | | HOW OLD WERE YOU WHEN MR. ROBLEDO CAME INTO THE PICTURE |
| 2:01:52 PM | | DID YOU EVER BECOME AWARE OF HIM NOT LIVING IN THE HOUSE, HE CAME TO LIVE WITH ME FOR ABOUT 3 TO 4 MONTHS |
| 2:02:33 PM | | I ASKED HIM TO LEAVE AT THE END, I WAS ASKING HIM TO GO TO SCHOOL AND HE WOULD NOT FOLLOW RULES, |
| 2:03:05 PM | | DID HE HAVE ANY PROBLEMS WITH ELADIO ROBLEDO |
| 2:03:46 PM | | HE DID NOT HAVE ANY HATRED TOWARD'S HIM |
| 2:04:34 PM | | HOW YOU BECAME AWARE OF THE PROBLEM |
| 2:04:52 PM | | BENCH CONFERENCE |
| 2:06:33 PM | COSBY | WERE YOU AWARE OF ISSUES BETWEEN YOUR BROTHER AND SOME OTHER PEOPLE |
| 2:07:37 PM | | REMOVE DFT FROM COURTROOM |
| 2:07:49 PM | | JURY EXCUSED FROM COURTROOM |
| 2:08:47 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY |
| 2:08:56 PM | | THE COURT HAS ORDERED THE DFT TO THE OTHER ROOM TILL WE FIGURE OUT WHAT TO DO |
| 2:09:11 PM | CHANDLER | THERE IS CASE LAW IN NM READS IN TO RECORD |
| 2:10:59 PM | | HAVE A COPY OF CASE , ASKS COURT TO BRING HIM IN HERE AND GIVE HIM A STERN WARNING, IT WOULD BE THE STATES PREFERENCE TO REMAIN IN THE COURTROOM |
| 2:11:42 PM | COURT | WANTS TO SAY THIS ON THE RECORD MR. COSBY IS REPRESENTING THIS DFT AND IT IS DIFFICULT TO WORK WITH |
| 2:12:05 PM | COSBY | AT THIS JUNCTURE BY HIS OWN CONDUCT, HE HAS PUT FORTH TO THE JURY THAT I AM NOT REPRESENTING HIM , I KNOW THAT HE CREATED THE SITUATION, EVEN THOUGH THE COURT HAS ADMONISHED, THE FACT REMAINS HE HAS FIRED ME IN OPEN COURT, IF WE WANTS TO FIRE ME THAT IS HIS PEROGATIVE, IF THAT IS HIS DESIRE HE CAN GO FORWARD REPRESENTING HIMSELF ETC. |
| 2:14:07 PM | | IT IS HIS RIGHT TO REPRESENT HIMSELF, IF THAT IS HIS DESIRE AND HE WANTS TO REPRESENT HIMSELF |

EXIBIT
1

Why

10/10/2013

EXHIBIT ①

page 2

The judge interrupted and asked the prosecution to lay a foundation. The prosecution asked Mr. Ramirez "Do you recall giving a lot of requests to go to the law library to research how to beat your charges?" The defense objected and asked to approach. The judge directed the prosecution not to ask those questions but said that he would not declare a mistrial. **[10-10-13 CD B 1:56:15-1:58:25]**

Later on October 10th, when Mr. Ramirez's defense counsel was finished questioning Mr. Ramirez's brother on direct examination, Mr. Ramirez interrupted the proceedings:

> Mr. Ramirez: "Hey, your Honor, I got some questions I need to ask him."
> Judge: "But you can't ask them."
> Mr. Ramirez: "Why didn't you ask... I want to fire..."
> Judge: "We're going to sit you in the other room if I hear anything more from you."
> Mr. Ramirez: (speaking over the judge) "I fire him. He's fired. I want to represent myself... I have the right to fire him and represent myself! He's not representing me right!"

The Judge ordered Mr. Ramirez from the courtroom and excused the jury. **[10-10-2013 CD B 2:09:45-2:10:30]** Following the recess defense counsel spoke with Mr. Ramirez and the trial resumed with Mr. Ramirez present.

EXHIBIT 1,

EXIBIT 1

"Mr. Cosby is my attorney and he's supposed to be for my defense but like I've said in the past I've asked to fire him, I've asked to get a new attorney which I can't afford it I'm poor, I have no help from my family just basically to get my hygiene and also I asked for a new attorney, I asked for a private investigator, I asked for a neurologist evaluation, I asked for another competency evaluation, I've asked for several motions which I don't know if they were even filed or if they were denied, I don't know if Mr. Cosby, I just feel like maybe I have a big mouth and I sit to open my big mouth and say things and I don't know if I made him angry or upset or frustrated or what I've done but for some reason I don't know if he's going to lose this case because it's a weak case or if it's ~~intentionally or accidental or if I m just paranoid~~."

The judge interrupted and told Mr. Ramirez that he had made his record. Mr. Ramirez told the judge that he had more things to say, but thanked the judge for giving him that time. **[10-10-2013 CD B 9:22:00-9:26:00]**

Testimony of Albert Ramirez

Mr. Ramirez took the stand. His entire testimony was punctuated with run-on and irrelevant statements as well as admonitions from his counsel and the judge. He repeatedly kept raising issues of his health and health history. He stated that he had the flu and didn't feel well. When asked about his height he talked about getting into an accident while driving a car and starting to lift weights, and he was taller in 2007. Shortly thereafter, when defense counsel tried to get Mr. Ramirez to answer who his mother was, Mr. Ramirez objected, "You didn't let me finish where I stayed in July." Mr.

EXIBIT,       EXIBIT 1

Following the finding of competency and after nearly two years of silence, Defendant became an active participant in the process. At a July 29, 2013, status conference, he addressed the court regarding the letters he had written stating he wanted new counsel because Mr. Cosby had not fulfilled his duties and he was confused because Mr. Cosby was not telling him what was happening. [CD 7-29-13, 9:35:13 to 9:36:25] Defendant asked for a continuance to get a new attorney, to prepare his case and to have another psychiatric evaluation, which would show he was suffering from "psychosomatic delusions and hallucinations and severe depression and anxiety." [CD 7-29-13, 9:41:06 to 9:41:32, 9:36:58 to 9:37:20, 9:39:58 to 9:40:10] The trial court reviewed Defendant's file, stated it was confident Mr. Cosby was providing Defendant competent representation, and denied Defendant's requests for substitute counsel and a continuance. [CD 7-29-13, 9:42:31 to 9:43:52] Defendant persisted in his desire for a continuance, explaining he had "always been remorseful and everything," and he "would have took the plea, but they gave me two-and-one-half extra years that [he] wasn't supposed to get." [CD 7-29-13, 9:46:45 to 9:46:56]

Ultimately, Defendant's case did not go to trial until October 7, 2013. The first day of trial, the jury heard testimony from Mr. Saiz, Ms. Finkey and a crime scene investigator. The second day of trial, after the trial court released the jury for the day, the prosecutor emphasized its first two witnesses the next day needed to

15

EX. DIT I

ST. VS ALBERT RAMIREZ  CR-07-434                              COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 2:14:36 PM | COURT | HE HAS BECOME EXPLOSIVE AND SHOOTS OFF HIS MOUTH, GO TALK TO HIM AND SEE WHAT WE WILL DO, WE ARE CLOSE TO THE END |
| 2:15:25 PM | RECESS | |
| 2:36:30 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY DFT AND ALL PARTIES PRESENT |
| 2:37:06 PM | COSBY | HAVE DISCUSSED WITH MY CLIENT HIS OPTIONS HE HAS STATED HE FEELS HE NEEDS ME, I TOLD HIM EITHER I REPRESENT HIM OR HE REPRESENTS HIMSELF, I CAUTIONED HIM HE NEEDS TO OBEY COURT RULES, HE SAID HE WOULD RATHER HAVE SOMEONE ELSE BUT HE NEEDS ME, I EXPLAINED TO HIM AS FAR AS THE LAST WITNESS, THE WITNESS TELLS ME HE DOES NOT REMEMBER IN FRONT OF THE JURY, SO RATHER THAN CALL SOMEONE TO STAND THEY DON'T REMEMBER I JUST DON'T ASK THAT QUESTION, THERE ARE QUESTIONS THAT ARE NOT ASKED FOR REASONS |
| 2:39:17 PM | COURT | LET THE RECORD REFLECT THAT MR. RAMIREZ HAS RETURNED TO THE COURTROOM AND MR. COSBY WILL BE CONTINUING HIS REPRESENTATION, NOT ANOTHER OPPORTUNITY TO CHANGE COUNSEL |
| 2:39:55 PM | | ADVISES DFT THAT THERE IS AUTHORITY THAT ALLOW YOU TO SIT IN ANOTHER ROOM TO WATCH TRIAL, IT IS AN OPTION IF YOU CONTINUE TO BE DISRUPTIVE YOU WILL SIT IN ANOTHER ROOM AND VIEW TRIAL BY VIDEO |
| 2:40:48 PM | COSBY | HE ASKED ME IF IT WAS BETTER TO SIT IN ANOTHER ROOM, I TOLD HIM IT WOULD BE AGAINST HIS INTEREST TO VIEW BY VIDEO |
| 2:41:36 PM | CHANDLER | I DON'T HAVE ANY XEX FOR MR. RAMIREZ BROTHER OF DFT |
| 2:42:28 PM | COSBY | I HAVE TOLD HER WHAT SHE CAN SAY AND CANNOT SAY |
| 2:42:40 PM | | BENCH CONFERENCE |
| 2:44:43 PM | COSBY | REGARDING PHOTO OF IVAN VASQUEZ SHOWING PHOTO OF HIM IN BOOKING, AND RECEIVED THIS LETTER |
| 2:46:00 PM | CHANDLER | RELEVENCE TO THE PICTURE, COURT WILL NOT ALLOW PHOTO |
| 2:47:19 PM | | JURY BEING BROUGHT INTO COURTROOM |
| 2:48:04 PM | | OFF RECORD |
| 2:51:51 PM | | #3 WITNESS HESIQUIA RAMIREZ CALLED BY COSBY / SWORN / DEX |
| 2:52:03 PM | | JURY BEING SEATED IN BOX |
| 2:53:09 PM | CHANDLER | MR. JOSE RAMIREZ, THE STATE DOES NOT HAVE ANY QUESTIONS |

Hip to speak
Why was he able to

page 5

10/10/2013                              EXBIT 1

EXHIBIT 2

Sam Saiz

CSP or statutory rape

90's —

△ lawyer → Cosmo Ripel
DA → BSC
Judge Hensley

DOB: ██████████
SS# ██████████

89-CR-10173
96-CR-10536 — OWI 3RD

THE Nieber
who set
Abused
me at 15 +16,
GAY guy

EXIBIT 2                    page 6

EXIBIT 2   Case #: page

**Booking Report #:** 1025645
**Booking Date/Time:** 06/20/07   19:11
**Name:** RAMIREZ,ALBERT
**DOB:** ▮▮▮▮▮

**City:** CLOVIS,NM 88101
**Phone:**

**Physical Info**

| | |
|---|---|
| Age: | 18 |
| Race: | W |
| Sex: | M |
| Ethnic: | |
| Height: | 5'05" |
| Weight: | 108 |
| Hair: | BLK |
| Eyes: | BRO |
| Skin: | |
| Facial: | |

**Other Info**

| | |
|---|---|
| JRN: | 47316 |
| FBI: | |
| MID: | |
| SID: | NOT REQUIR |
| Mug #: | 47316.JPG |
| SSN: | ▮▮▮▮ |
| Immig#: | |
| Fingerprint: | |
| OLN: | NONE |
| OLN State: | |

**POB:** CLOVIS, NM                    **Religion:** NONE
**School:** CHOICES HIGH
**Grade:** 12    **Stat:** DROP OUT    **GED:** N    **APS:**
**Dangerous:** 2    **Hate/Bias:** NONE
**Gang:** NONE
**Gang Moniker:**
**Scars / Tattoos:** NONE
**Employer**

|  | | | Date | Time |
|---|---|---|---|---|
| Custody Officer | 120 | - MARTINEZ,S | | |
| ...sting Officer | 120 | - MARTINEZ,S | 06/20/07 | 16:15 |
| ...sport Officer | 120 | - MARTINEZ,S | | |
| Probation Officer | | - | | |
| Admitting Officer | D33 | - CARVEY,T | | |
| Fingerprint Officer | D30 | - MARQUEZ,D | | |
| Detain Auth Officer | A48 | - LOZANO,M | 06/20/07 | 19:11 |

**Billing Agency #**   CPD    CLOVIS PD
**Custody Agency #**   CPD    CLOVIS PD
**Housing Facility**   CURRY CTNY ADC
**Arrest Location**   300 N. CONNELLY
**Offense Location**

| | | | |
|---|---|---|---|
| Release Auth Officer | 1 | - MAG COURT | 00:00 |
| Release Officer | | - | 00:00 |
| Release Type: | | Release To: | |
| Detainer I: | | | |
| 2: | | | |

**Class:** DETOX
**Points:** 2
**Reason:** DETOX

**ACTIVE:** Y    **Work Release:** N    **Community Service:** N    **Interpreter:**        **Attorney:**

**Comments:**

## CHARGES/COURT INFORMATION

| IBR # | NCIC # | Violation | Statute | Disposition | Date | Bond Amt/Type | Warrant # | Sentence |
|---|---|---|---|---|---|---|---|---|
| 290 | 048 | CRIMINAL DAMAGE | 30-15 1 | MISD | 06/20/07 | 1000.00 C | M12MR200700472 | MAGISTRATE |

ME- The Sex Abusal Victim.

page 7

Exibit 2


RECEIVED
JUN 2 2 2007



| ROBLEDO, ELADIO<br><br>2007-03764 | **AUTOPSY REPORT**<br>THE UNIVERSITY OF NEW MEXICO & HEALTH SCIENCES CENTER<br>**OFFICE OF THE MEDICAL INVESTIGATOR**<br>School of Medicine     Albuquerque, New Mexico 87131-5091 | 1 |

### POSTMORTEM EXAMINATION

An autopsy is performed on the body of Eladio Robledo at the Office of the Medical Investigator, State of New Mexico, on the 13th day of July 2007, commencing at 10:00 AM.

The examination is performed under the legal authority of the Office of the Medical Investigator of the State of New Mexico.

The body is received within a sealed body bag, with a "State of New Mexico, Office of the Chief Medical Investigator" evidence label, bearing the following printed and handwritten information: "Name of Deceased: Robledo, Eladio; Sealed by: 6.37; Date: 7-12-07".

*MS. ok*

### EXTERNAL EXAMINATION

The body is that of a well developed, well nourished, adult, Hispanic male who weighs 145 pounds, is 72 inches in length, and appears compatible with the reported age of 39 years. There are pink and green OMI identification bands around the right wrist inscribed with identifying information.

The body is received clad in a pair of white brief-style underpants, which are partially cut off the body for resuscitation. There are no accompanying personal effects.

The body is cool. Rigor mortis is fully fixed. Minimally evident, blanchable purple livor mortis extends over the posterior surfaces of the body, except in areas exposed to pressure.

The scalp hair is black, wavy, and measures up to 2 inches in length over the crown. The irides are brown. The pupils are round. The corneae are translucent. The sclerae are white and the conjunctivae are clear. No petechial hemorrhages are identified on the sclerae, bulbar conjunctivae, facial skin or oral mucosa. The nose and ears are normally formed, without pierce marks. The decedent wears trimmed mustache and beard stubble. The teeth are natural and in good condition. The neck is unremarkable.

The thorax is well developed and symmetrical. The abdomen is flat. The anus is free of lesions. The spine is normally formed and the surface of the back is free of lesions.

The external genitalia are those of a normal adult male.

The upper and lower extremities are well developed and symmetrical, without absence of digits.

No identifying marks or scars are readily apparent.

Evidence of medical intervention includes an orotracheal tube (correctly placed), seven electrocardiograph patches and two defibrillator pads over the anterior chest, a right antecubital intravenous line, a left antecubital intravenous line,

*8    The man who set over arred my mom Exhibit 2    page 8*

*Exibit 2*

### Disposition

Transported to  9 PRMC/Clovis

M-  f Transport  1 Ground                      Dest Determined by  06 Protocol

A   ry Tiered With                              Diverted To

Lights/Siren from Scene?  Emergent, with lights or siren    Patient Disposition  01 Treated, Transported by EMS

                                               Pulse on Transfer   2 No

### Insurance

| Type | Policy # | Group # | Insured Name |
|------|----------|---------|--------------|

### Patient Narrative

Ambulance 1 arrived at 512 West 6th with a report of a subject on the ground. Ambulance 3, Bill Baca and myself arrived at the same time. Patient was lying with his head to the north on his left side in a pool of blood. Patient was placed on s LBS board, placed on the stretcher snd taken to the ambulance where IV's, O2 and intubation was being prepsred.

EMS Personnel wss asked to gown up and get ready to transport code 3. K Burns prepsred to intubate the pstient. Ben Black was assisting with sirway procedures, Chris Elam, Mike Nolen and J. Boyd, worked on IV's, Bill Baca was hooking up the monitor, snd spiking IV fluids for the lines that were being attempted. John Bradley was handing personnel equipment that raquested additional supplies. Suction wsa prepared by Bill Baca since the patients airway was full of blood. In trying to suction it wss noted that we would gat a tremendous amount of coagulated blood and mucous. Sour suction was not effective or wers we able to get a clesr site of the vocal cords. A Combi Tube was placed and lung sound were diminished on both sides when bagged with 100% O2.

The initisl pulse was weak at the carotid, with blood and mucous streaming out of the patient's mouth and nose. Once airway wss established we felt for a pulse to find no pulse, but had an organized rhythm on the monitor. PEA was identified and the ACLS protocol was initialsd as we arrived at PRMC.. CPR was started, and bagging with 100 % O2 was continued. We arrived at PRMC with patient moving the patient from the ambulance into C-2 where personnel stsyed and helped staff with patient care.

It was noted that the patient was shot twice in the head, once in the chest, once in the abdomen, and once in the arm. P  nt was naver revived at PRMC and pronounced dead at 1405 by Dr. Pattarson.

----------------------------------------------------------------------

D - DISPATCHED;
On 07/12/2007 at 13:41:00 dispatched to 515 W 6TH ST /Clovis, NM 88101 for Shota Fired. 13:41:00 unit 24 en route.

C - CHIEF COMPLAINT;
13:43:00 unit 24 arrived to find a 39 year old Male with a weight of 79.4kg./175lbs. patient complaining of Gun Shot to Patient.

H- HISTORY;

A - ASSESSMENT;
Ems found Traumatic Injury during assessment.
Patient's sign and symptoms sre:
Rales
Crepitus
Hemorrhage
Contusion

*Look At THIS*
*175 pounds*

R  TMENT;
Ths following medications, treatments, and vitals were performed on the patient:
   Time: 13:44:00  Blood Prassure: 0/Palp  Temperature: Not Assessed G Eye: 1
G '  or: 1  G Verbal: 1  Gcs Total: 3  Notes: Patient waa lying in a pool of

Defense counsel argued at the hearing that the doctor didn't administer neurological or intelligence tests, didn't review Mr. Ramirez's school records, didn't contact the juvenile probation office to find out about any prior psychiatric care or drug use, and only met with him for five or six hours. [CD 9/15/08 2:24:15, 2:31:15, 2:41:00]. Counsel maintained his belief that Mr. Ramirez was unable to assist in his defense and requested that Mr. Ramirez be sent back to Las Vegas for a more thorough competency evaluation, for his medications to stabilize, and to be administered neurological tests. [CD 9/15/08 2:41:00]. The district court denied Mr. Ramirez's request for another competency evaluation and declared him competent to stand trial. [RP 158-59].

Trial on the first degree murder and tampering with evidence charges was set for January 26, 2009. [CD 1/26/09 8:56:00]. That morning, the parties conducted jury selection. [CD 1/26/09 9:07:30-12:05:00]. During a break, the parties discussed a plea offer that had been previously made and were able to come to an agreement. [CD 1/26/09 3:03:15]. Pursuant to the agreement, Mr. Ramirez pled guilty to first degree murder and stipulated to a life sentence. [RP 300-302]. Prior to trial, Mr. Ramirez was also charged in separate cases with two counts of battery upon a detention officer and one count of assault. [RP 300-01, 333]. Under the plea, the two tampering with evidence charges were dismissed, as well as one of the battery charges, but he pled guilty to assault and battery against a detention

EXIBIT 3

Projected Date of Discharge:  Within approximately 9 months.

Patient's Level of Participation in the Plan:  At this time, Mr. Ramirez seems to willing to cooperate with his treatment plan.

Family/Support System Input/Desires:  Evaluation is ongoing.

Legal Considerations Which May Impact Treatment:  Mr. Ramirez has criminal charges pending. He is here on a court order for treatment to attain competency.

Least Constrictive Conditions for Treatment:  Mr. Ramirez was ordered by the court to remain in a secure locked facility during the time of his evaluation and course of treatment.

Criteria for Transfer to a Less Restrictive Setting:  As per court order.

Discharge Criteria:  As per court order.

Potential Barriers to Discharge and Strategies to Overcome Them:  Evaluation is ongoing.

Recommended Follow-up Treatment, Living, Skill, and Support Requirements:  To be reassessed at the time of discharge.

Anticipated Length of Stay:  Approximately 9 months.

Discharge Plan:  As per court order.

_____        Date: 6/16/8
CHRIS S. MANZANARES, LBSW
Staff Social Worker

CSM/AHS-644
D: 06/16/2008 1819                    EXIBIT 3
T: 06/16/2008 2356
J: 532576

---

June 16, 2008                    EXIBIT 3                    RAMIREZ, ALBERT
FTUD                                                         MR: 42819

MULTIDISCIPLINARY ASSESSMENT and
INTERDISCIPLINARY TREATMENT PLAN

page 11

# MENTAL HEALTH RESOURCES, INC.
## OUTPATIENT CLINICAL ASSESSMENT

* Please note: clinical assessment must be completed within 30 days of admission

Initial: [X] | Annual update: 1st year [ ] 2nd year [ ] year [ ] | Client ID # 4393 | Completion Date: 11|8|07

# I. PATIENT INFORMATION

Client Name: (Last) Ramirez | First: Alberto | MI: | Male: [ ] | Female: [ ]

Client's **primary residence**
[ ] Their Home (house, apartment, room) [ ] Friend's home [ ] Relative's home [ ] Group home [ ] Foster Care
[ ] Jail [ ] Nursing home [ ] Assisted Living [ ] Shelter [ ] Currently Homeless [ ] Other

Phone: | Address: ▮▮▮▮▮ | City: ██████ | State: NM | Zip: 85101

Client Age: 19 | DOB ██████ | Soc. Sec ██████ | Marital Status: [ ] Mar. [X] Sin. [ ] Div. [ ] Wid. [ ] Sep [ ] other

Race: [X] White [ ] Native Am. [ ] Black/African | Ethnicity: [X] Hispanic [ ] Mexican [ ] Cuban [ ] Puerto Rican [ ]
[ ] Am Asian [ ] Pacific Islander [ ] Alaska Native | Latino [ ] Not Hispanic Origin [ ] Mexican Am. [ ] Central Am. [ ] South Am.

Parent/Guardian/Custodian/Power of Attorney if Minor (include name & address) | Parent/Guardian/Custodian Phone
NONE | ( ) N/A

Emergency Contact (include name & address) | Relationship to the Client: | Emergency Contact Phone
Hosiguia Ramirez 220 Chaparral Sister | (505) 762-7490

Referral Source (please give specific name): Self | Household Annual Income: 0 | Client Annual Income: 0 | Household income source: 0 | Client incomes source: ✓

Employer's Name: N/A | Phone: N/A | School: N/A | Ed. Level: 12

Current PCP: N/A | Address: N/A | Phone: N/A

Please give a brief description of the presenting problem, including source of distress, precipitating events associated problems and symptoms: Client feeling sad, mad, exp. psychosis mood stability

Legal problems: [ ] No [X] Yes Explain: currently facing charge of murder

If the client is a minor please describe the following in relation to Psychosocial/Developmental history: N/A

Psychological functioning:

Intellectual functioning:

Educational/vocational functioning:

Social functioning:

Developmental functioning:

Substance abuse:

Culture:

Leisure and recreation:

# II. RISK ASSESSMENT

A. [X] No current risk at the time of this assessment

B. Have you ever thought about harming yourself or someone else? [X] No [ ] Yes, if yes, did you have a plan? [X] No [ ] Yes
When was the last time you thought about harming yourself or someone else? November 1, 2007

C. Have you ever harmed/injured yourself or someone else intentionally? [X] No [ ] Yes, if yes, did you have a plan? [ ] No
[ ] Yes. When was the last time you thought about harming yourself or someone else?

ONLY complete the rest of the risk assessment questions, if the response to section B or C is yes
(note: complete section D if the risk is harm to self and/or section E if the risk is harm to others)

D. Risk of harm to Self: Indicate which of the following suicide (harm to self) risk factors apply to the person:

| | | | |
|---|---|---|---|
| Prior suicide attempt: [X] No [ ] Yes | Behavioral cues (isolation, impulsivity, withdrawn etc): [X] No [ ] Yes |
| Repeated attempts: [X] No [ ] Yes | Symptoms of psychosis (command hallucinations): [ ] No [X] Yes |
| Stated plan with intent: [X] No [ ] Yes | Family history of suicide: [X] No [ ] Yes |
| Access to means (e.g., weapon): [X] No [ ] Yes | History of suicide in friend: [X] No [ ] Yes |
| Substance use: [X] No [ ] Yes | Terminal physical illness: [X] No [ ] Yes |
| Other self-injurious behaviors: [X] No [ ] Yes | Current stressors: [ ] No [X] Yes |
| Recent losses/ lack of support: [ ] No [X] Yes | Others: [X] No [ ] Yes |

Please provide explanation(s) for any of the above risk factors that were indicated with a yes response: Client denied

SI/HI but reported ○ on 11/1/07 stating on the back that he would

**Client Name:** Aihuti Kin...3    **File #:** 9393

## IV Psychiatric (cont)

### F. SYMPTOMS SCREENING

| | |
|---|---|
| **Depression** | ☒ usual depressed mood ☐ anhedonia ☐ weight loss ☐ weight gain ☒ sleep disturbance ☐ psychomotor retardation/agitation ☐ fatigue ☒ worthlessness ☐ guilt ☒ poor concentration ☐ suicidal ideation ☒ hopelessness ☒ anxiousness ☐ decreased energy/motivation ☐ uncontrollable crying spells |
| **Anxiety** | ☐ restlessness ☐ easily fatigued ☐ poor concentration ☐ irritability ☐ muscle tension ☐ sleep disturbance ☐ excessive anxiety and worry ☐ inability to control worry. |
| **Phobia/ Panic** | ☐ abrupt development of panic attacks accompanied by palpitations: ☐ sweating ☐ trembling ☐ shortness of breath ☐ feeling of choking ☐ chest pain ☐ nausea ☐ dizziness ☐ light headedness ☐ derealization ☐ fear of losing control ☐ fear of dying ☐ numbness ☐ chills ☐ hot flashes ☐ agoraphobia ☐ excess/persistent fear of stimuli avoidance |
| **Mania** | ☐ grandiosity ☒ decreased sleep ☒ talkativeness ☒ flight of ideas ☒ distractibility ☐ increased goal directed activity ☐ increased anxiety/agitation ☒ elevated/expansive ☒ irritable mood ☒ pressured speech ☒ psychosis ☐ increased compulsive/addictive behavior |
| **Post traumatic stress** | ☐ experienced traumatic event (event:                date:           ) ☐ re-experiencing trauma avoidance of stimuli associated with trauma ☐ increased physical/emotional arousal dissociative symptoms ☐ amnesia |
| **Psychosis** | ☒ hallucinations ☒ delusions ☒ paranoia ☒ disorganized speech ☐ bizarre/catatonic behavior ☒ flat or inappropriate affect |
| **Organicity** | ☐ decreased consciousness ☐ impaired memory ☐ perceptual disturbance ☐ impaired intellectual functioning ☐ impaired judgement ☐ labile affect |
| **Impulse Control** | ☐ property destruction ☐ explosive/assaultive behavior ☐ inability to control destructive impulses ☐ pleasure gained from acting out ☐ gambling ☐ kleptomania ☐ pyromania ☐ trichotillomania |
| **Substance Abuse** | ☒ failure to fulfill major role obligations ☒ physically hazardous use ☒ legal problems ☒ use in spite of negative psychosocial consequences |
| **Substance Dependence** | ☐ tolerance ☐ withdrawal ☒ using more than intended ☐ unsuccessful efforts to quit ☒ increased time spent obtaining/recovering ☒ reduction in psychosocial functioning ☒ continued use in despite negative consequences |
| **Attention Deficit Symptoms** | ☐ inattention ☐ hyperactivity ☐ impulsivity functional impairment at: |
| **Anti-Social Conduct** | ☐ aggressive behavior toward people/ animals ☐ stealing ☐ lying ☐ vandalism ☐ violating rules at school/home/community |
| **Oppositional Conduct** | ☐ losing temper arguing ☐ defiance annoying others ☐ blaming others ☐ denying problems ☐ easily agitated angry/resentful ☐ spiteful/vindictive |
| **Other Symptomology** | ☒ frustration ☒ mood lability ☐ running away ☐ separation anxiety ☐ developmental delay ☐ learning difficulties ☐ adjustment issues ☐ below average IQ ☐ autism ☐ verbal/motor tics ☐ encopresis ☐ enuresis ☐ neurological deficits ☐ school problems ☒ maladaptive family issues ☒ low self esteem ☐ peer relationship issues ☐ gang involvement ☐ blended family issues ☐ truancy ☐ sexual promiscuity ☐ sexual identity ☐ somatization ☐ conversion ☐ hypochondria ☐ producing physical symptoms ☐ malingering ☐ intrusive obsessions/compulsions ☐ pathogenic personality ☐ sexual dysfunction ☐ paraphilia dyssomnias ☐ self mutilation ☐ dissociative states ☐ bereavement ☐ recent physical injury ☐ chronic illness ☐ anorexic bulimic behaviors |

Exhibit 3

*Rational Standard for Competency-to-Stand-Trial Assessments*, 22 Journal of Am. Acad. Psychiatry and Law, 231, 237 (2004).  Mr. Ramirez argues, consistent with the article, that two separate evaluators came to different conclusions and that, in light of the problems in Dr. Burness' methodology—not administering neurological or intelligence tests, not reviewing Mr. Ramirez's school records, not contacting the juvenile probation office to find out about any prior psychiatric care or drug use, and meeting with him for only a few hours—this is like "flipping coins in the courtroom." *Id.*

Because the district court abused its discretion in denying Mr. Ramirez's request for a more thorough competency hearing, this case should be remanded for a new trial with instructions to order another competency evaluation for Mr. Ramirez.

### Issue 3:  Mr. Ramirez Received Ineffective Assistance Of Counsel.

Mr. Ramirez relies upon his arguments in the brief in chief in support of this issue.

## II.    CONCLUSION

For the forgoing reasons, the trial court abused its discretion in denying Mr. Ramirez's motion to withdraw plea, and denying his request for a more thorough competency hearing, and the case should accordingly be remanded to the district court for trial, or alternatively, an evidentiary hearing to determine whether the plea

Ramirez, who was 18 years old when he said he shot Robledo, has a history of mental illness, according to family members, three of whom testified Thursday as defense witnesses.

A psychologist found Ramirez competent to stand trial.

Cosby struggled to keep Ramirez on point through much of his rambling testimony, drawing objections from Chandler and repeated instructions from Hartley to simply answer Cosby's questions.

Ramirez said he purchased the .22 caliber handgun he used in the homicide to protect himself from gang members who had threatened him. He said he had no intention of shooting or killing Robledo.

Ramirez said he went to the home Robledo had kicked him out of to get his clothing and electronic gadgets. No one was in the house and his room was padlocked shut, he said, so he went looking for Robledo in the garage behind the house.

Ramirez said he and Robledo got in an argument and Robledo backhanded him across the face.

"I was scared," said Ramirez, his voice quaking. "He (Robledo) spoke in Spanish and said he was going to get his pistola."

Ramirez said Robledo then hit him with his fists and started choking him.

"My only option was to shoot. He tried to take the gun (away) and shoot me."

During an hour-long grilling by Chandler on cross examination, Ramirez admitted he gave a stranger $30 to purchase a $10 box of bullets for the handgun at the Clovis Walmart the day before the homicide. Chandler also confronted Ramirez with testimony that no bruises were found on his neck when arrested three days later and no bruises were found on the victim's body or hands.

"The fact of the matter," said Chandler, "is it (the fight) didn't happen. He didn't punch you did he?"

"Yes he did," said Ramirez.

Chandler said testimony from previous witnesses was that Ramirez was seen chasing down Robledo after shooting him twice in the chest and the victim fell to the ground.

"Eladio was lying on the ground dying and you shot him in the head," Chandler charged.

"I shot towards the ground," said Ramirez. "I didn't know where I hit him."

A state medical examiner testified earlier that Robledo died of the wounds to his chest and two bullets fired into his right temple.

Ramirez also admitted during Chandler's cross-examination that he hit a girl in the face "who was beating up my cousin" and head-butted a police officer in other unrelated violent confrontations.

Hesiquia Ramirez testified her brother "had his own little issues" with mental illness long before the homicide.

During a confrontational cross examination, Chandler challenged her, noting discrepancies in her testimony and what she told police on the day of the killing.

As her brother was taken from the courtroom at the conclusion of the day, Hesiquia waved to Ramirez and said "Love you" in a hushed tone.

The jury is expected to get the case after closing arguments today.

---

Share this post: | Email | Facebook 6 | Twitter 1 | Google | | Reddit |

Filed Under: Featured News, News

Luxury Consignment
Up to 90% off.

The RealReal          SHOP NOW ›

SOUND OFF

Weekly Web Poll

Do you think non party-affiliated voters should be allowed to vote in primary elections?

○ Yes.

○ No.

[ Vote ]          View Results

CMI PROMOTIONS

Clovis
News Journal



Military
Discount
Map

*home –*
*all 505-331-7224 for 1:30 pm*

*page 16*

*E x, B, +*
*4, 5*

# MAXANN SHWARTZ, PH.D.

### Licensed Psychologist

3228 Los Arboles Ave. NE
Bldg. A, Suite 230
Albuquerque, New Mexico 87111

*All papers*

New Mexico License 0922
California License PSY15845
Telephone: (505) 331-7224

## FORENSIC NEUROPSYCHOLOGICAL EVALUATION

### (CONFIDENTIAL)

This report is confidential, and unless its release is in accord with the rules of criminal
or civil procedure, it should not be released to anyone without written consent of the
defendant. While the defendant does have a right to see this report, it is strongly
recommended that (s) he do so in the presence of the psychologist so that the findings
and results can be properly interpreted and any questions or concerns can be
addressed. If the report is given to the defendant by anyone other than a psychologist,
it is highly likely that (s) he can misunderstand the report's content, and the information
may not necessarily present him/her in a favorable light.

| | |
|---|---|
| **NAME:** | **RAMIREZ, Albert Jose** |
| **DOB:** | ██████ |
| **AGE:** | 19 years-old |
| **SS#:** | ██████ |
| **COURT NUMBER:** | D-905-CR-0200700434 |
| **EXAMINER:** | Maxann Shwartz, Ph.D. |
| **DATE(S) OF EVALUATION:** | 03/10/2008 |
| **DATE OF REPORT:** | 03/14/2008 |
| **REFERRED BY:** | Brett J. Carter |
| | Counsel for Defense |
| | State of New Mexico/Curry County |
| | Ninth Judicial District |

*devused*
*I issued FDR her to be a witness*

MAR 1 8 2008

*13*

*Ex, B+.*
*4.5*
*She would have testified this in court*

*page 16*

ST. VS ALBERT RAMIREZ  CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 10:24:46 AM | | WHO ELSE DID YOU CALL, HE WAS NOT A FRIEND, I TOLD HIM TO GET THE THING, DO YOU KNOW OF ANYBODY HAS THAT GUN |
| 10:25:33 AM | | THERE WAS A GUY IN FRONT OF STORE OF RAGS TO RICHES I BELIEVE HE GOT THE GUN, I JUST HAD SOX AND BOXERS |
| 10:26:34 AM | | DID YOU PLAN ON KILLING MR. ROBLEDO "NO" |
| 10:27:11 AM | | WERE YOU THERE THAT DAY TO AMBUSH YOUR MOM'S BOYFRIEND "CAN I SPEAK MY MIND", IF I WANTED TO KILL MY MOM OR ROBLEDO, I COULD GO IN THERE AND GO TO MY ROOM AND GET SOMETHING TO EAT. ETC. |
| 10:28:14 AM | | WHEN HE TOLD YOU HE WAS GOING TO GET PISTOLA "THAT IS A PISTOL" THAT WAS NOT HIS AMMO IN GARAGE |
| 10:28:59 AM | | I KNEW HE HAD A WEAPON, I USED TO SMOKE MARIJUANA I WAS LOOKING FOR MONEY AND I SAW A GUN IN HIS DRAWER |
| 10:29:40 AM | | I THOUGHT I WAS IN DANGER |
| 10:29:53 AM | | BENCH CONFERENCE |
| 10:30:37 AM | COURT | GONNA TAKE A BREAK |
| 10:31:21 AM | | JURY EXCUSED FROM COURTROOM |
| 10:31:36 AM | OFF RECORD | |
| 11:03:22 AM | | COURT IN SESSION JURY BEING SEATED IN BOX, DFT AND ALL PARTIES PRESENT |
| 11:03:58 AM | COURT | INSTRUCTS JURORS GOING TO AN EARLY LUNCH BE BACK BY 12:45 P.M. |
| 11:04:37 AM | RECESS | |
| 12:49:46 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY, DFT AND ALL PARTIES ARE PRESENT |
| 12:50:29 PM | CHANDLER | DFT PUT FORWARD THAT THE VICTIM WAS A FIRST AGRESSOR, ANY TYPE OF SPECIFIC CONDUCT |
| 12:51:31 PM | | WHAT TRAIT DO YOU THINK IS DELIBERATE AND WILLFUL MURDER |
| 12:51:52 PM | CHANDLER | RESPONDS, NOW WE HAVE AN OPPORTUNITY THAT OUR VICTIM WAS NOT THE AGRESSOR |
| 12:52:26 PM | COSBY | AS FAR AS THE SITUATION OF THE JAILER, HAD NOTHING TO DO WITH HIS CHARACTER ETC. |
| 12:52:50 PM | CHANDLER | READS RULE 404-A-2 SEC. B |
| 12:54:32 PM | COURT | WILL LET YOU GO AHEAD AND DO IT, BETTER WAY TO DO IT |
| 12:54:50 PM | COSBY | I WILL ASK YOU TO RE VISIT SEXUAL ISSUE |
| 12:55:21 PM | COURT | OBJECTION NOTED |
| 12:55:43 PM | DFT | COMMENTS |

10/10/2013




*EXIBIT 4, 5*
*pages 18*

16. Photo (exhibit 10d)
17. Media Advisory Clovis Police Department (exhibit 10e)
18. Grah's notes/ Action Sheet (exhibit 10f)
19. Inmate Calling Solutions (exhibit 10g)
20. Plateau Wireless (exhibit 10h)
21. Call Records 505-309-7772 (exhibit 10i)
22. SMS Records 505-714-2165 (exhibit 10j)
23. Call Records 505-309-4299 (exhibit 10k)
24. Call Records 505-309-7759 (exhibit 10l)
25. Master Name Inquiry (exhibit 10m)
26. Curry County Detention (exhibit 10n)
27. Photo Lineup (exhibit 10o)
28. Curry County Detention (exhibit 10n)
29. #1 Value Inn Guest Registration (exhibit 10r)
30. State of New Mexico, Ninth Judicial District, Office of the District Attorney (exhibit 10s)
31. Information from John Garcia to Roger Grah (exhibit 10t)
32. Photo Lineup (exhibit 10u)
33. The University of New Mexico (UNM) Office of The Medical Investigator (exhibit 10v)
34. Index- List of Exhibits

## PSYCHOLOGICAL TESTS/PROCEDURES ADMINISTERED

- Structured Clinical Interview
- Review of List of Exhibits
- Mental Status Exam (MSE)
- Mini Mental Status Exam (MMSE)
- Trail Making Test
- Clock Face
- Portions of The Revised Competence Assessment Instrument

**Mental Status Examination:**

Behavioral Observations:
Mr. Albert Ramirez is a 19 year-old, single, Hispanic male who was unable to be evaluated due to grossly disorganized behaviors consistent with the positive symptoms associated with a psychotic disorder, including but not limited to: disorganized thinking; rambling, nonsensical speech; paranoia; depersonalization; reports of auditory hallucinations; labile mood; inappropriate affect; loose associations; and poor reality testing. Mr. Ramirez was dressed in the required uniform of the Curry County

*Exibit 4' 5*        MAR 18 2008        *page 18*

*15*

EXIBIT 4,5 page19

Detention Center and had his undershirt on backwards. Mr. Ramirez was unable to perform even simple, goal-directed tasks. He maintained minimal to no eye contact. He evidenced uncontrollable crying throughout the evaluation with uncontrollable shaking. His attorney, Brett Carter, was present in attempt to calm him down and encourage him to participate in the evaluation. Food (McDonald's) was also used as a reinforcer and as an attempt to calm him down. While Mr. Ramirez was eating, he appeared to be more placated and was able to answer several questions. Specifically, he elaborated on being abused by several people, including his foster dad (physical abuse), a neighbor (sexual abuse) and his mother's boyfriend (sexual abuse). However, the majority of his responses to this examiner's questions were answered with "I don't know," or "that's all I know." Otherwise, he attempted to cooperate but eventually would start crying and become hysterical. Occasionally, he was able to provide several coherent and logical responses, however, his thinking would then be followed with tangential remarks with frequent references to his foster dad or paranoid verbalizations, i.e. "I'm scared of everyone. That's all I know. There's something wrong with my mind." For the most part, he was unable to provide any relevant background history. Mr. Ramirez was questioned numerous times about what happened regarding his alleged charge of murder and replied each time with "I used to be a good kid," or "I wasn't like this," and "I just want to talk to my mommy." Mr. Ramirez was unable to read as he could not maintain attention or concentration. He was given the Trail Making Test and was unable to complete one Trail. In sum, he was unable to complete any standardized testing procedures.

Orientation: He was oriented to person, but was poorly oriented to time, date, or location.

Affect/Mood: Mr. Ramirez' mood was labile with congruent affect. He stated that his mood was "very depressed, very bad…I'm so depressed!"

Perception/Thought Process: His thought process was tangential and loose. His thinking was easily derailed as he evidenced paranoia with depersonalization, i.e. "I can't feel my arm that much…I don't know," "I wasn't like this," and ""What happened…the real me is full of pain." He acknowledged that he experiences auditory hallucinations, stating "I hear people talking in my head…saying kill myself." He denied visual hallucinations. He presented with frank paranoid ideations.

Mini Mental Status Exam: Mr. Ramirez was administered the Mini Mental Status Examination (MMSE), a widely used screening instrument used to assess cognitive impairment. His results were within the severely impaired range (16/30) and appeared to be due to the presence of a functional psychosis. Mr. Ramirez exhibited poor immediate memory, concentration, and attention.

Memory: His overall memory appeared questionable, e.g. he could not remember the city where he was born.

Judgment/Insight: Impaired/Impaired

Exibit          page 19

**Communication:** His speech was pressured and rambling. At times, he was able to comprehend questions but was unable to provide consistent or appropriate responses.

**Sleep/Diet:** Mr. Ramirez reported "I can't sleep at all...I have physical pain and mental pain...I hear people talking in my head." He indicated that his appetite fluctuates and that he has lost weight since being incarcerated.

**Suicidal Ideation, Intent, or Plans:** He denied a history of suicidal ideations, intent, plans, or attempts, stating "No, they'll put me in that little room."

**Substance Abuse History:** Mr. Ramirez acknowledged using illegal drugs and alcohol in the past.

**Current Medical/Physical Concerns and Medications:** He denied past or present use of medications, including being prescribed psychotropic medications.

**Current Mental Health Status:** Mr. Ramirez presented with symptoms associated with a significant mental illness, including heightened instability of mood. Specifically, he evidenced a mixture of characteristic signs and symptoms involving a range of cognitive and emotional disturbances that may be associated with the initial onset of a psychotic disorder.

**DIAGNOSTIC IMPRESSIONS**

**RULE OUT-**

| | | |
|---|---|---|
| Axis I: | 295.30 | Schizophrenia, Paranoid Type |
| | 295.70 | Schizoaffective Disorder, Bipolar Type |
| | 309.81 | Posttraumatic Stress Disorder, Chronic |
| Axis II: | 799.9 | Diagnosis Deferred |
| Axis III: | | Defer to Physician Report |
| Axis IV: | | Legal Problems |
| Axis V: | 30 | |

**CONCLUSION**

Mr. Albert Ramirez is a 19 year-old, single, Hispanic male, with no known documented history of mental illness. However, throughout the evaluation, he evidenced a constellation of symptoms characteristic of Schizophrenia, including paranoia, psychoses, loose associations, disorganized thinking, poor reality testing,

Exibit 4+S

page 20

MAR 1 8 2008

EXIBIT 4, page 21

depersonalization, inappropriate mood and affect, and poor judgment, reasoning, and insight. Mr. Ramirez reported numerous times "There's something wrong with my mind." Because of his current mental state, he was unable to complete a formal evaluation.

Based on his current presentation, Mr. Ramirez is not capable of competently proceeding with adjudication and handling the stress associated with the legal process. In his current state, he has been unable to assist his attorneys in his defense as he is unable to communicate in a logical or rational manner. He is also unable to provide any assistance to his attorneys regarding pertinent circumstances or events that led to his arrest in reference to the alleged charges. It is therefore the opinion of this examiner, that Mr. Albert Ramirez is not competent to stand trial.

Thank you for your referral.

Respectfully submitted by:

Maxann Shwartz, Ph.D.
Licensed Psychologist

18                    EXIBIT 4, 5                    page 21

| | |
|---|---|
| **COURT:** | Ninth Judicial District Court<br>Curry County<br>State of New Mexico |
| **PLACE OF EVALUATION:** | Curry County Courthouse<br>Clovis, New Mexico |

### Reason for Referral and Charges

The defendant, Mr. Albert Ramirez, was referred for a Forensic Neuropsychological Evaluation to provide information regarding his current cognitive, psychological, and emotional functioning. Mr. Ramirez' attorneys have expressed concern regarding his competence to stand trial as he has been unable to discuss any aspect of the case with them, despite numerous attempts. They have also described his behavior as bizarre with confused and disorganized thinking. His overall functioning will be evaluated in terms of his competency to stand trial. Mr. Ramirez has been charged with Murder (Open Count) and Tampering with Evidence (2 counts), for events that occurred on or between July 12, 2007, in Curry County, New Mexico. Mr. Ramirez is incarcerated at the Curry County Detention Center (CCDC).

### New Mexico Criteria for Determining Competence

(1) The Client must have a factual understanding of the charges and legal proceedings, (2) The Client must also have a rational understanding of the charges and legal proceedings, and (3) The Client must have the ability to assist his or her attorney (State vs. Rotherham, 1996).

### Note:

The following report and opinions are based on information made available to the psychologist at the time of the evaluation. Unless specifically noted, there has not been a systematic effort made to substantiate the full accuracy of all of the information provided in this report. The report is based on the assumption that the information provided is reasonably accurate, unless noted to the contrary. The psychologist reserves the right to modify opinions or conclusions, if additional information relevant to the findings is provided at a later date.

EXIBIT 4.5

Exibit 4.5          page 22

p.cgt 23

## Disclosure of Limits of Confidentiality and Informed Consent

Prior to the initiation of the forensic evaluation, Mr. Albert Ramirez was informed of the purpose of the evaluation, about my role as a forensic psychologist, that his participation was voluntary, and that the information that he provided in the evaluation may not be confidential. The defendant was unable to communicate that he understood the purpose of the evaluation and that he was going to undergo a forensic evaluation. He was then informed that information from the evaluation would be provided to the Court regarding his current cognitive and intellectual capabilities and that the information he provided was not confidential. The defendant consented to proceed with the evaluation by signing the "Statement of Rights and Limits of Confidentiality" disclosure form, which was explained to him and outlines the purpose of the evaluation.

Mr. Ramirez was informed that he has the right to refuse to participate in the evaluation or answer specific questions, and the fact that in addition to his attorneys, the report and/or information may be disclosed to the Court and/or the prosecution trial attorneys. He was also informed that the psychologist may also be asked to testify with regards to information gathered in the evaluation. The defendant attempted to participate in a structured clinical interview, but was unable to complete the interview or participate in neuropsychological and psychological tests and questionnaires, or complete a competency test due to his current psychological and emotional state. As a result, the testing session lasted a total of 3.0 hours. The evaluation was conducted in an adequate environment and the results are believed to represent a valid measure of the defendant's current cognitive and emotional functioning and status.

## SOURCES OF INFORMATION:

1. Clinical interview with Mr. Albert Ramirez (defendant)
2. Interviews with Brett Carter and Chandler Blair (attorneys for defendant)
3. Request For Expert Witness/Investigator
4. Clovis Police Department
   a. Investigative Report: Randy Pitcock, Detective; 7/12/07
   b. State of New Mexico Uniform Incident Report; 7/12/07
   c. State of New Mexico Supplemental Report; 7/13/07
   d. Supplemental Report Narrative; 7/23/07
   e. Supplemental Report: Homicide; 7/12/07
   f. Supplemental Report: Officer Antonio Bosque; 7/13/07
   g. Felony Case File- Ivan Vasquez (exhibit 9)
   h. Criminal Trespass Notification (exhibit 10p)
   i. State of New Mexico Uniform Incident Report; 6/21/07; (exhibit 10q)

MAR 1 8 2008

Exibit 4S

page 23

consists of five scales, i.e., Psychosis; Neurologic Impairment; Amnestic Disorders; Low Intelligence; and Affective Disorders. The total score on this measure is identified as being the most useful for differentiating exaggerated from non-exaggerated symptoms. SIMS total scores equal to or greater than fourteen are suggestive of symptom exaggeration. Mr. Ranirez's score on this measure was 47.

Additional review of the SIMS scale scores is notable for elevation. Specifically, his scores suggest an endorsement on all five scales with the highest elevations being on the Neurologic impairments and the Amnestic disorders scales, He also over endorsed the Psychosis as well as the Affective functioning scales. The lowest elevation was found on the Low Intelligence scale.

This pattern of responses provides evidence of Mr. Ramirez's tendency to exaggerate a range of cognitive and psychiatric symptoms. Mr. Ramirez has reported to this examiner that he does not want to return to the Detention Center as he describes his previous behavior in Detention as "not good…crying, screaming, yelling, kicking walls I was angry 'cos they wouldn't give me my meds".

## CASE FORMULATION

Mr Ramirez is a 19 year old Hispanic male admitted to the Forensic Division of the New Mexico Behavioral Health Institute at Las Vegas (NMBHI) on 5th June 2008. A Court finding of incompetence to stand trial, and subsequent commitment for treatment to attain competency to proceed in a criminal case was approved on 17th April 2008. Mr. Ramirez is currently charged with one open count of Murder in the first degree, and two counts of Tampering with Evidence for events that allegedly occurred on July 12th 2007.

Mr Ramirez appears to have had a disrupted childhood, despite his assertion that his mother was raising him well the fact that he was in two foster placements suggests that he was demonstrating difficult to manage behaviors. This was confirmed by Mrs Ramirez. Mr Ramirez also attended special education and became involved with the criminal justice system at an early age prior to 16. His behavior appears to have spiraled downwards to the point where he is alleged to have committed first degree murder. Mr Ramirez has reported sexual and physical abuse however given his tendency for over reporting and his clear need to externalize blame for his actions on others it is difficult to ascertain the validity of this reported abuse. Mr Ramirez mother stated that her boyfriend (the victim on the alleged offence) had never abused Mr Ramirez and that he was jealous of her boyfriend.

Mr Ramirez demonstrates difficult to manage behaviors however in this examiner's opinion these are the result of his personality style rather than as a consequence of mental illness. He does demonstrate difficulties in managing his mood and controlling his impulsive behavior but as previously stated in my clinical opinion this is the result of his personality style and an inability to take responsibility and consider the consequences of his actions.

Mrs Ramirez reported that she put Mr Ramirez out of her home as a result of him b
violent manner and smashing windows in her car and house. She also reported that
was verbally abusive toward her and this has been confirmed by staff at this facil
heard Mr Ramirez being verbally abusive toward his mother over the telephone.
reported that she had a restraining order in place against Mr Ramirez following l
her car windows and that he violated this order both on the day of the instant off
day before. She also reported that Mr Ramirez was jealous of her boyfriend.

## MEDICAL HISTORY

Mr Ramirez also provides a highly convoluted and unbelievable story of his arms being
permanently damaged as a result of having to drive a car with manual transmission all day. He
will attempt to present evidence of his physical impairment by showing the examiner his arm,
which has no physical defects. He also has a story of walking on crutches and having his knee
bandaged in a manner that no medical facility would ever sanction. He was examined by the
medical physician back in County Detention in Curry where he made repeated daily efforts to get
medical attention until the physicians refused to grant further medical evaluations. He has also
been examined by the medical physician at this facility and despite continuous complaints of
chronic pain and stating he is hunch backed, he has no acute or chronic medical concerns.

## SUBSTANCE ABUSE HISTORY

Mr Ramirez reported that he has smoked Marijuana and that his prior criminal history has been
associated with smoking marijuana. He has endorsed using cocaine, crack cocaine and
methamphetamines in the past. In addition the police officers reported that they could smell
alcohol on his breath at the time of arrest for prior offences.

## ABUSE HISTORY

Mr Ramirez has reported physical abuse at the hands of his foster father and sexual abuse by his
mother's boyfriend and a neighbor. However, it is notable that he reports that his mothers'
boyfriend (the victim in the alleged offense) and the neighbor were gay and that they were lovers
which is why they abused him. Given that the neighbor is also a witness to the alleged offences
however, it is this examiners opinion that this report of abuse and the sexual orientation of these
two men is highly suspect.

## CRIMINAL HISTORY

Mr Ramirez reports that his only prior criminal history has been in relation to smoking
Marijuana and he alleges that one of these charges was an accident as he did not know the
cigarette contained marijuana. This examiner did not have access to an NCIC or his Juvenile
record however a police report relating to a prior arrest includes the charges of Larceny (under
$250.00, Evading a Peace Officer and Possession of Marijuana.

## PSYCHIATRIC HISTORY

There is no indication from Mr Ramirez's records that he has ever required inpatient or out
patient psychiatric intervention. He reports that he did see a counselor and this was related to
"anger management" however, there is no evidence of any prior mental illness despite Mr
Ramirez reporting a history of depression and anxiety and stating that he was on seven



Based on the facts in the record, Defendant sensibly does not claim he suffered prejudice from this asserted deficiency in Mr. Cosby's performance. Considering Defendant's history of refusing to cooperate in evaluations, there can be no confidence he would have cooperated even if Mr. Cosby had arranged an emergency evaluation. And, considering the trial court's first-hand observations of Defendant's behavior and dilatory conduct over the course of six years, there is no assurance the trial court would have found Defendant incompetent even if an evaluation concluded otherwise.

Second, Defendant claims Mr. Cosby was deficient because his failure to arrange for expert testimony precluded Defendant from relying on mental illness or lack of capacity defenses. **[BIC 37-38]** At the same time, Defendant effectively concedes Mr. Cosby's performance was not deficient in this regard by acknowledging the prosecution was prepared to offer rebuttal expert testimony to the effect that Defendant was feigning mental illness and cognitive deficiencies. **[Supp. CD, 3:51:50 to 3:52:12, 3:57:00 to 3:57:33, 4:01:06 to 4:01:24, 4:08:54 to 4:09:13]** This indicates Mr. Cosby's decisions may have represented "a plausible, rational strategy or tactic," which is the antithesis of incompetent performance.

This specific claim of deficient performance also lacks support in the record, because Defendant repeatedly refused to cooperate in evaluations that *might* have

EXBH 4,5

1  competent to make the choice whether or not he should testify.  The court advised

2  Defendant of his right.  Defendant stated that he was mentally imbalanced and he

3  wanted the jury to be told about his medical problems.  The court found that the

4  concerns represented personal issues not rising to the level of incompetence and

5  denied the motion.

6  {24}    Rule 5-602(B)(2)(b) requires that "[i]f the issue of the defendant's competency

7  to stand trial is raised *during trial*, the trial jury shall be instructed on the issue."

8  (emphasis added).  The reasonable doubt requirement "is implied" under Rule

9  5-602(B)(2)(b) when the issue of competency is reraised at trial.  *Rael*,

10  2008-NMCA-067, ¶ 22 ("[I]f a requirement of reasonable doubt were not read into

11  Rule 5-602(B)(2)(b), any defendant would be able to raise the issue of competency

12  and have the jury decide it even in the absence of the slightest bit of evidence that the

13  defendant was incompetent.  Such a result would be contrary to our well-established

14  guidelines regarding the interpretation of Supreme Court rules.").  However, in the

15  absence of reasonable doubt, the district court need not submit the issue to the jury.

16  *See id.* ¶¶ 22–23, 25.  As such, assertions as to the question of incompetency must be

17  properly substantiated to show reasonable doubt. *See Flores*, 2005-NMCA-135, ¶ 29

18  ("[A] court may consider defense counsel's observations and opinions, but that those

Ex.Bit 13  4, 5

74

EXIBIT #6 page 2 8

ST. VS ALBERT RAMIREZ  CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 9:57:26 AM | CHANDLER | CLOSING ARGUMENT |
| 10:10:27 AM | CHANDLER | CONTINUES CLOSING ARGUMENT |
| 10:45:29 AM | | CONTINUES CLOSING ARGUMENT |
| 10:46:27 AM | COSBY | CLOSING ARGUMENT |
| 10:58:56 AM | | CONTINUES CLOSING ARGUMENT |
| 11:30:00 AM | CHANDLER | BRIEF REBUTTAL |
| 11:39:16 AM | | CONTINUES BRIEF REBUTTAL |
| 11:40:01 AM | COURT | READS INSTRUCTION 19 BEFORE DELIBERATION IS BEGUN |
| 11:41:14 AM | COURT | ANNOUNCES ALTERNATES |
| 11:42:36 AM | | JURY EXCUSED TO BEGIN DELIBERATION AND ALTERANTES EXCUSED |
| 11:43:09 AM | DFT | DFT WANTS TO SAY SOMETHING |
| 11:44:05 AM | COURT | YOU CANNOT SAY ANYTHING |
| 11:44:13 AM | OFF RECORD | |
| 3:03:40 PM | | JURY SEATED IN BOX |
| 3:04:08 PM | COURT | READS THE VERDICT GUILTY COUNT 1 1ST DEGREE MURDER |
| 3:04:45 PM | | GUILTY COUNT 2 TAMPERING WITH EVIDENCE |
| 3:04:58 PM | | GUILTY COUNT 3 TAMPERING WITH EVIDENCE |
| 3:05:14 PM | COURT | DFT WISHES TO HAVE THE JURY POLLED, JURY POLLED BY NUMBER |
| 3:06:35 PM | COURT | READS FINAL INSTRUCTION TO JURY BEFORE EXCUSED |
| 3:07:13 PM | | JURY EXCUSED FROM SERVICE |
| 3:07:51 PM | CHANDLER | STATES REQUESTS TO MOVE INTO SENTENCING |
| 3:08:07 PM | COSBY | ASKS FOR A 60 DAY EVALUATION |
| 3:08:21 PM | CHANDLER | THIS SENTENCE IS A LIFE PLUS SIX YEARS |
| 3:09:02 PM | COURT | IT IS MANDATORY TO LIFE |
| 3:09:15 PM | COSBY | HE HAS A RIGHT TO AN ALLUCITION |
| 3:09:40 PM | COURT | WE WILL SENTENCE AFTER PRESENTENCE REPORT |
| 3:09:59 PM | COSBY | REQUESTING A 60 DAY EVALUATION |
| 3:10:16 PM | COURT | ORDER THE PRE SENTENCE REPORT , |
| 3:10:31 PM | RECESS | |

EXBIT 6    TRIED to ALERT Court OF CONFLICT OF INTERST Between Cowsel and I and Mark Record. I was dineel.

10/11/2013                                    3 of 3    page 2/0

**Patient:**   14154 1 - ALBERTO J. RAMIREZ
**DOB:**
**SSN:**

Page 2

*page 29*

**Date:**    04/17/2007 12:15
**Provider:**   KIRAN SHARMA MD

**Musculoskeletal system:**
General/bilateral: ° Musculoskeletal system: normal
**Knee:**
General/bilateral: • Knees showed abnormalities ° No tenderness on palpation of the knee ° No pain was elicited by motion of the knee ° Knees demonstrated normal movement ° Knees demonstrated no muscle weakness
Right knee: • Examined
Left knee: • Examined

## ASSESSMENT
Bilateral knee pains

*I was INJURED*

## PLAN
KIRAN SHARMA MD ordered
• Urinalysis and urine drug screen
• CBC
• A comprehensive metabolic panel
• Serum TSH level
• An X-ray of both knees
• Consultation with a physical therapist
Refer to MHR for counselling and furtehr evaluation
trying to call mom to find out more about pts mental health, unable to reach her

**KIRAN SHARMA MD**

**Entered data sealed by: KIRAN SHARMA - LCBS    Date: 04/17/2007 14:36**

*Ex-Bit 7.*



Patient:     **14154.1 - ALBERTO J. RAMIREZ**                                    Page 2
DOB:
SSN:

Date:        04/24/2007 11:30
Provider:    **KIRAN  SHARMA MD**

Anxiety disorder NOS

## PLAN
Motrin 600 MG TABS, SIG:tid, Qty:21, Days:7, Refills:0
Lexapro 10 MG TABS, SIG:qd, Qty:30, Days:30, Refills:2
Refer to unm orthopaedics
pt has anger issues and is somatising
detailed discussion with brother about pts visits
otc knee brace, pt needs pshychiatric help
refer to MHR, pt is having paranoia

**KIRAN  SHARMA MD**

**Entered data sealed by: KIRAN SHARMA - LCBS     Date: 04/24/2007 11:14**

Exibit 7

page 30

ST. VS ALBERT RAMIREZ  CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|---|---|---|
| 3:06:50 PM | | AWARE OF BROTHER BEING PLACED IN FOSTERCARE |
| 3:07:31 PM | | GIVING STATEMENT TO DETECTIVE ON JULY 12TH THE DAY OF SHOOTING |
| 3:08:35 PM | | TOLD MEMBERS OF JURY NEVER SAW HIM ACT OUT, HE WOULD GET UPSET |
| 3:09:22 PM | | DOES NOT REMEMBER WHAT SHE TOLD DETECTIVE, NOW SHE REMEMBERS WHAT SHE TOLD DAVID LOERA |
| 3:11:35 PM | | CONTINUES TO REFER TO STATEMENT SHE MADE |
| 3:12:59 PM | | **BENCH CONFERENCE** |
| 3:13:50 PM | CHANDLER | CONTINUES TO REFER TO HER STATEMENT |
| 3:14:33 PM | | GO BACK TO THE PHONE CALL , HE WAS MAD AT YOU THE DAY BEFORE THE SHOOTING,"WHAT IS WRONG WITH BEING MAD EVERYBODY GETS UPSET |
| 3:15:09 PM | | I DID NOT KNOW HE WAS TRYING TO GET A GUN |
| 3:16:00 PM | | REFERS TO HER STATEMENT |
| 3:16:06 PM | COSBY | PAGE AND LINE PLEASE |
| 3:16:20 PM | | NO I DID NOT KNOW, EVERYBODY KNEW NOT TO GIVE HIM A GUN |
| 3:16:55 PM | | TRAINING , EDUCATION AND EXPERIENCE |
| 3:17:05 PM | | YOU WANTED TO KNOW WHY HE DID THAT WHEN HE CALLED FROM JAIL, NOBODY WAS THERE WHEN IT HAPPENED |
| 3:18:13 PM | | YOU DO NOT KNOW WHAT HAPPENED AT 512 W. 6TH, "I WAS NOT THERE" |
| 3:19:18 PM | | YOU HAVE BEEN TALKING TO HIM EVERY NIGHT |
| 3:19:42 PM | | **BENCH CONFERENCE** |
| 3:20:41 PM | COSBY | RDEX - ABOUT YOUR STATEMENT ABOUT WHAT YOU ARE SAYING YOU WERE TELLING YOUR BROTHER TO APOLOGIZE TO YOUR MAMA |
| 3:21:58 PM | | NOT SURE WHY HE WAS WEARING CRUTCHES |
| 3:22:30 PM | CHANDLER | SPECULATION OBJECTION |
| 3:22:40 PM | COSBY | RESPONSE ABOUT WHO GAVE HIM THE GUN "HE WAS HAVING ISSUES ABOUT HE THOUGHT SOMEBODY WAS AFTER HIM" |
| 3:24:25 PM | | SHE ALREADY KNEW ABOUT SHOOTING BECAUSE HER MOM CALLED HIM |
| 3:24:37 PM | | SHE BARELY TALKED TO ELADIO, NEVER CLAIMED HIM AS STEP FATHER |
| 3:24:59 PM | CHANDLER | RXEX - YOUR CONCERN WAS ABOUT ALBERT'S STATE OF MIND |
| 3:25:49 PM | COSBY | OBJECTION |

27    10/10/2013

EXIBIT 7

page 31

ST. VS ALBERT RAMIREZ CR-07-434                          COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 12:56:09 PM | | JURY BEING SEATED IN BOX |
| 12:57:14 PM | | COURT IN SESSION , JURY DFT AND ALL PARTIES PRESENT |
| 12:57:56 PM | CHANDLER | XEX - ABOUT YOUR TIME IN SCHOOL, I DON'T KNOW JUST GOT HELD BACK |
| 12:59:19 PM | | I CANNOT ANSWER IF I DID GOOD IN SCHOOL |
| 12:59:43 PM | | YOUR DAD WOULD PROVIDE YOU $500 A MONTH TO STAY IN SCHOOL, WHEN YOU GET SOCIAL SECURITY, IT IS THE TRUTH IT WAS COMING FROM MY DAD'S MONEY |
| 1:01:03 PM | | YOU HAD A DRIVER'S LICENSE IN 2007, YOU HAD A CELLPHONE, YOU PAID THE CELLPHONE BILL AND YOU HAD A JOB AT MCDONALDS |
| 1:02:25 PM | | ONLY DID CERTAIN THINGS AT MCDONALDS |
| 1:03:05 PM | | YOU SPEAK ENGLISH AND SPANISH , I UNDERSTAND A LITTLE BIT AND CAN SPEAK A LITTLE BIT, I AM AMERICAN |
| 1:04:36 PM | | YOU FIRST MET ELADIO WHEN YOU WERE APPROX. 5 OR 6 YEARS OLD |
| 1:05:36 PM | | YOU DIDN'T LIKE ELADIO ROBLEDO "THAT IS AN IMPROPER QUESTION TO ASK" I LIKE EVERYBODY I JUST DON'T LIKE SOME THINGS PEOPLE DO, THAT IS HOW IT IS SUPPOSED TO BE |
| 1:06:12 PM | | ELADIO AND YOUR MOTHER LIVED AT 512 W. 6TH ST. "WHEN" JULY 2007 |
| 1:07:27 PM | | YOU HEARD THAT OFFICER AGUILAR SERVED YOU THE NO TRESPASS ORDER, "YES" |
| 1:07:44 PM | | AFTER RECEIVING THE NO TRESPASS ORDER YOU RETURNED BACK TO THE HOUSE WHERE DEBRA LIVED |
| 1:08:40 PM | | AT ONE TIME YOU BROKE OUT THE FRONT WINDOW OF YOUR MOTHER AND ELADIO'S HOUSE |
| 1:09:40 PM | | ARE YOU AWARE YOUR MOTHER CALLED THE POLICE ABOUT THAT INCIDENT "NOT AWARE, IF SHE DID OR NOT" |
| 1:10:12 PM | | YOU BROKE OUT A CAR WINDSHIELD WITH YOUR CRUTCHES, DID SHE CALL THE COPS ABOUT THAT "YES" |
| 1:10:58 PM | | YOU KNOW WHERE CROSSHAIR GUN SHOP IS IN CLOVIS "YES" |
| 1:11:15 PM | | YOU WENT IN THERE AND DEMANDING A GUN |
| 1:11:42 PM | | YOU WANTED A REVOLVER "I JUST ASKED FOR GUN" |
| 1:12:27 PM | | YOU FILLED OUT PAPERWORK TO PURCHASE GUN |
| 1:12:46 PM | | YOU DROVE A CAR TO GUN SHOP |
| 1:13:42 PM | | YOU WERE TRYING TO GET THINGS RIGHT |

EXHIBIT 7

Exhibit 8

page 33

1  its discretion in denying a mistrial.

2  **D.    Defendant was not prejudiced by the jury seeing his leg restraints**

3  {39}    Defendant's fourth issue is that he was prejudiced when the jury saw his leg

4  restraints when he stumbled as he stood up at one point during the first day of trial.

5  However, he concedes that he did not ask the court to make a finding of prejudice or

6  declare a mistrial and asks this Court to review the possibility that the jury saw his leg

7  restraints for fundamental error.  The State argues that the factual record does not

8  support Defendant's contention that the jury saw him shackled because all the parties

9  agreed that the table skirt blocked the jury's view.

10  {40}    "To preserve a question for review it must appear that a ruling or decision by

11  the district court was fairly invoked." Rule 12-216(A) NMRA.  When the claim is not

12  properly preserved, we consider the claim under the fundamental error exception to

13  the preservation rule. *See State v. Holly*, 2009-NMSC-004, ¶¶ 40-42, 145 N.M. 513,

14  201 P.3d 844 (reviewing defendant's claim that a juror may have seen defendant

15  handcuffed for fundamental error because the defendant did not request a mistrial, did

16  not ask the trial court to strike the juror, or seek a finding of prejudice), *State v. Silva*,

17  2008-NMSC-051, ¶ 11, 144 N.M. 815, 192 P.3d 1192 (citing Rule 12-216(B)(2)

18  NMRA).

21



Exhibit 8                                            page 33

for his expert's presence if sur-rebuttal was allowed. **[Supp. CD, 3:55:15 to 3:56:35, 4:02:23 to 4:02:35, 4:08:18 to 4:08:53]**

Shortly thereafter, based on the defense's agreement not to pursue jury instructions or argue competency, insanity or the inability to form specific intent **[*See* Supp. CD, 3:51:56 to 3:52:00]**, the prosecution announced it was forgoing presentation of a rebuttal case and releasing its expert witnesses. **[CD 10-10-13, 4:34:39 to 4:36:02]** When Defendant objected to Mr. Cosby's strategy, the trial court assured Defendant he was being well-represented and explained it would not have approved Mr. Cosby's jury instruction decisions if doing so would deny Defendant a fair trial. **[CD 10-10-13, 4:36:02 to 4:39:12]** Defendant persisted Dr. Schwartz's testimony was essential to his having a fair trial and to his appeal. **[CD 10-10-13, 4:41:38 to 4:42:15]**

The trial court instructed the jury on first-degree murder, second-degree murder and, over the prosecution's objection, voluntary manslaughter. **[CD 10-11-13, 9:01:50 to 9:03:07; *see* RP 663; RP 664; RP 665-66]**

## IV.   Disposition Below

The jury deliberated approximately three hours before returning verdicts finding Defendant guilty of first-degree murder, and the two counts of tampering with evidence. **[CD 10-11-13, 11:45:13 to 3:06:20]**

ST. VS ALBERT RAMIREZ CR-07-434                    CR1 CHAMBERS

| Time | Speaker | Note |
|------|---------|------|
| 10:40:24 AM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY DFT AND ALL PARTIES PRESENT |
| 10:40:41 AM | COSBY | HAS ONE OTHER ISSUE, MY CLIENT HAS TOLD ME THAT HE WAS SEXUALLY ASSAULTED ETC. |
| 10:42:10 AM | | HE WANTS TO TESTIFY THAT MR. ROBLEDO AS WELL AS MR. SAIZ SEXUALLY ASSAULTED HIM |
| 10:42:26 AM | CHANDLER | THERE IS NOTHING THAT SUPPORTS THAT PARTICULAR CLAIM, IT HAS NEVER BEEN REPORTED, WHEN DID THE HAPPENED , IT IS THE TIMELINE, |
| 10:43:36 AM | COSBY | UPON ON HIS FIRST STATEMENT, WHEN MY CLIENT FIRST WENT TO HIS HOUSE MY CLIENT TOLD HIM HE HAD BEEN SEXUALLY ASSAULTED, |
| 10:44:17 AM | COURT | HERE IS THE PROBLEM WE RUN INTO, THE KIND OF THE TIMING, THE COURT IS OF THE OPINION THAT I WILL NOT ALLOW IT, THERE WAS NOTHING TO SUGGEST THAT IN HIS OPENING STATEMENT, IF THE STATE IS OF THE OPINION THAT WE CREATE AN ERROR BY EXCLUDING THIS, I WILL RULE AGAINST IT |
| 10:45:42 AM | DFT | ABOUT THIS MATTER, THE REASON I DID NOT SAY ANYTHING IN MY OPENING STATEMENT |
| 10:46:16 AM | COURT | YOUR ATTORNEY MR. COSBY IS DOING AN EXCELLENT JOB, I HAVE LET YOU TALK, THE PART I AM GOING TO RESTICT THAT WE ARE NOT GOING TO GO INTO THIS AREA |
| 10:47:12 AM | DFT | I DID NOT GET ASKED ABOUT BROKEN WINDOW, THIS IS MY LIFE , I FEEL LIKE I AM NOT HAVING A FAIR TRIAL, IF I DID NOT GET ASKED A QUESTION ABOUT SEXUAL ASSAULT |
| 10:48:28 AM | DFT | I LET MAXINE SWARTZ THAT I WAS SEXUALLY ASSAULTED,  ETC |
| 10:49:11 AM | | I TRIED TO EXPLAIN TO DR. FINK, IT IS NOT FAIR I THINK IT IS RELEVENT |
| 10:49:47 AM | COSBY | THERE IS RECORD THAT HE DISCUSSED WITH PSYCOLOGIST OF SEXUAL ASSAULT, THERE IS NO EVIDENCE BEFORE THE HOMICIDE |
| 10:51:54 AM | COURT | WILL GIVE YOU FIVE MINUTES |
| 10:52:21 AM | DFT | WHEN MR. COSBY STATED THAT I WAS MELINGERING , AND PSYCHOLOGIST BELIEVED ME, ABOUT FOSTER CARE I WAS EMBARRASED MY MOTHER KNEW, EXPLAINS WHAT HAPPENED WITH ELADIO |
| 10:54:59 AM | | REGARDING SAM SAIZ HE USED TO GO OVER THERE WHEN HE WAS IN JUNIOR HIGH, ETC. |
| 10:58:18 AM | COURT | I'VE GOT YOUR STORY, AFTER HEARING THE STORY IT IS NOT RELEVENT |

10/10/2013

*Exhibit 1*

## II. **Defendant has not satisfied the requirements for consideration of a claim of ineffective assistance of counsel on direct appeal.**

The facts contained in the record oif Defendant's case do not establish a prima facie case of ineffective assistance of counsel warranting remand of Defendant's case for an evidentiary hearing. *State v. Crocco*, 2014-NMSC-016, ¶ 14. If Defendant wishes to pursue his claim of ineffective assistance of counsel, he should consider pursuing a habeas corpus proceeding. *See id.* ¶ 13; *see* Rule 5-802 NMRA.

When analyzing a claim of ineffective assistance, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). This Court measures a claim of ineffective assistance of counsel against *Strickland*'s two-part test, which requires a defendant to show first that counsel's performance "fell below that of a reasonably competent attorney" and then that he suffered prejudice because of the deficient performance. *State v. Ortega*, 2014-NMSC-017, ¶ 55.

A counsel's performance is not deficient where "a plausible, rational strategy or tactic" could explain counsel's conduct. *Id.* To show prejudice a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*



*Exhibit 9 page 36*

Exibit↑    3 page

That afternoon, to demonstrate his lack of competency, Defendant described

a litany of psychological ailments [**CD 10-9-13, 1:37:36 to 1:38:55**], and claimed

he was unable to understand the proceedings.  [**CD 10-9-13, 1:43:46 to 1:44:11**]

Later, notwithstanding Mr. Cosby's expressed concern about Defendant's lack of

cooperation, Defendant made statements evincing an understanding of the

implications of testifying and of the jury's role in weighing the evidence.  [**CD 10-**

**9-13, 2:41:00 to 2:43:54**]  He pointedly reminded the trial court that during his

previous trial he cried hysterically and told the court he could not function properly

when hysterical.  [**CD 10-9-13, 2:44:45 to 2:45:18**]

The next day, Defendant demonstrated his continuing understanding of the

process, including the value of the appellate record, by forcing creation of a record

regarding Mr. Cosby's decisions about the witnesses who would testify, and by

making a statement about how he had not been properly evaluated and represented,

the trial court's disregard for his outwardly irrational behavior and the trial court's

failure to consider how the jury might be affected by media coverage of his trial.

[*See, e.g.,* **CD 10-10-13, 9:21:02 to 9:22:38, 9:23:18 to 9:25:59**]  Significantly,

although Defendant was complaining he could not understand when people

communicated with him, he recognized the court's authority by thanking it for

allowing him to speak.  [**CD 10-10-13, 9:22:35 to 9:22:42**]  He telegraphed a clear

understanding of the significance of the proceedings by saying he was fighting for



30 Exibit 9   page 37

EXIBIT 9

told the court that he had been offered a plea of guilty but mentally ill. He stated "Which I was very confused of the charges I have in the first, they said it's... I have no clue what those are for or what they're about, I have no clue about the first three I just know the words, the names and the guilty but mentally I have no idea what it's about or nothing he tried to explain but like I said when they communicate it's hard for me to understand and it takes me a long time I'll read it over but also that, ..." Mr. Ramirez paused for a breath and then continued in a run-on fashion that he was told that doctors were going to be called to testify against him and that he was never notified and he was unable to call Dr. Maxann Shwartz in his defense. He also complained that he was unable to get a private investigator to call "plenty of witnesses" which affected his defense.

He also stated that he was a paranoid schizophrenic with paranoid delusions and hallucinations and never got sent for a ninety-day evaluation and was only evaluated for an hour or two, and "that's an improper evaluation in my opinion and I feel like I've been treated unfairly." Mr. Ramirez stated that "there was plenty of media this whole week" that the jury probably heard and "everybody's asking me all kinds of questions and I just say I don't know what's going on because I have no way to see newspapers or radio or anything...." Mr. Ramirez continued,

EXBIT 9

page 38

EXBIT 10 5page

1 observations and opinions alone cannot trigger reasonable doubt about the defendant's

2 competency.").

3 {25}    Here, defense counsel merely stated his beliefs that Defendant was not capable

4 of assisting in his own defense and that Defendant did not have the capacity to

5 determine whether or not to testify.  In response, throughout the trial, the judge did

6 everything within his power, under the rules, to address the Defendant's concerns with

7 his physical condition and his inability to understand the proceedings, allowing a

8 nurse to examine him during the trial and consistently explaining to the Defendant

9 what was happening.  Accordingly, the district court did not abuse its discretion in

10 denying Defendant's request for a forensic evaluation during trial because relying

11 only upon his own observations, defense counsel failed to substantiate his assertions.

12 {26}    Further, had the district court found reasonable doubt as to Defendant's

13 competency to stand trial, Defendant would not have been entitled to a competency

14 evaluation after the commencement of trial.  Once the jury is sworn, the Defendant's

15 only recourse is to request a jury instruction on the issue of competency.  *See* Rule 5-

16 602(B)(2)(b).  Defendant failed to preserve this issue by not submitting an instruction

17 on competency to the court or objecting to the instructions as offered.  *See State v.*

18 *Lujan*, 1975-NMSC-017, ¶¶ 8-9, 87 N.M. 400, 534 P.2d 1112 ("Defendant did not

14



EXBIT 10    page 39

forestall testimony by one of the prosecution's expert witnesses (who was present in the courtroom during Mr. Ramirez's testimony). This may have been because the defense did not have any other expert witnesses at trial to testify. Not having expected that Mr. Ramirez's competency to stand trial would arise and having already foregone any defenses that would require expert testimony, defense counsel was simply attempting to keep the state from putting its witness on the stand for rebuttal. **[RP 657-58. The proceedings are summarized in the tape logs, but were in chambers and not included on the audio CD in the record proper]**

Mr. Ramirez also asserts that his counsel failed to call many witnesses he wished to have called, and also that he made promises to Mr. Ramirez if he testified that were not kept. These issues, however, are not reflected in the record. Matters not of record cannot be reviewed on appeal. *See State v. Martin*, 1984-NMSC-077, ¶ 28, 101 N.M. 595.


C.   There was improper commentary on Mr. Ramirez's right to silence

This argument is made pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127 and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655. The review of a district court's denial of a mistrial is for an abuse of discretion. *State v. O'Neal*, 2008-NMCA-022, ¶ 28, 143 N.M. 437. The legal question



41 page

1 (citation omitted). "Generally, only an evidentiary hearing can provide a court with

2 sufficient information to make an informed determination about the effectiveness of

3 counsel." *Id.*; *see also State v. Baca*, 1997-NMSC-059, ¶ 25, 124 N.M. 333, 950 P.2d

4 776 ("A record on appeal that provides a basis for remanding to the trial court for an

5 evidentiary hearing on ineffective assistance of counsel is rare.  Ordinarily, such

6 claims are heard on petition for writ of habeas corpus . . . ."); *State v. Telles*, 1999-

7 NMCA-013, ¶ 25, 126 N.M. 593, 973 P.2d 845 (stating that the "proper avenue of

8 relief [from ineffective assistance of counsel] is a post-conviction proceeding that can

9 develop a proper record").

10 {32}    Though the district court repeatedly observed that defense counsel was

11 providing excellent representation to Defendant, the court did not hold an evidentiary

12 hearing.  Therefore, the record before us is insufficient to establish that defense

13 counsel was ineffective or that the decisions made were a plausible trial tactic or

14 strategy.  Accordingly, we reject this claim without prejudice to Defendant's ability

15 to bring such a claim via habeas corpus proceedings.

16 **C.    The district court did not abuse its discretion denying a mistrial based on**
17 **Deputy Loomis' commentary on Defendant's silence**

18 {33}    Defendant's third issue is that the court erred in denying his motion for a

19 mistrial based on an alleged improper comment about Defendant's silence after he had



Exhibit 10

page 41

ST. VS ALBERT RAMIREZ CR-07-434                          CR1 CHAMBERS

| Time | Speaker | Note |
|------|---------|------|
| 3:54:07 PM | CHANDLER | GOING TO ASK FOR A RULING FROM THIS COURT IF DEFENSE IS GOING TO ALLOW SUR REBUTTAL |
| 3:54:50 PM | COURT | YOU TAKE POSITION THAT HE IS PRECLUDED, THE COURT HAS LEE WAY |
| 3:55:42 PM | COSBY | YOU ARE CALLING THEM ON REBUTTAL |
| 3:56:04 PM | COURT | I DO NEED TO REMIND EVERYBODY THAT I EXCEPT PLEAS |
| 3:56:17 PM | MORRIS | RESPONDS |
| 3:56:36 PM | COSBY | THERE HAS BEEN NO DISCLOSURE, IF THEY CALL I WILL CALL MS. SWARTZ ON SIR REBUTTAL, LAST FINDING I HAD HE WAS COMPETENT, I AM WITHDRAWING COMPETENCY, AND IF I |
| 3:58:39 PM | COSBY | HE NEVER EXPRESSED ANY HATRED TO PLAN A MURDER |
| 3:59:02 PM | CHANDLER | IF WE CALL OUR EXPERTS |
| 3:59:11 PM | COURT | IT IS A MATTER OF JUSTICE |
| 3:59:32 PM | COURT | WE ARE NOT IN THE KIND OF SITUATION WHERE YOU HAVE A SURPRISE |
| 3:59:55 PM | CHANDLER | WE DID NOT DROP IT JUST NOW, |
| 4:00:09 PM | COURT | THOSE REPORTS ARE AGED |
| 4:01:04 PM | CHANDLER | WHAT HE IS DOING TODAY |
| 4:01:23 PM | COSBY | WILL WITHDRAW COMPETENCY AND GUILTY BUT MENTALLY ILL |
| 4:02:03 PM | CHANDLER | HE CAN WITHDRAW BUT HIS ARGUEMTN HIS CLIENT IS SEEING THINGS AND HEARING THINGS |
| 4:02:25 PM | COURT | IF WE TAKE THIS TESTIMONY AND TAKE WILL TAKE |
| 4:03:14 PM | COSBY | MOTION AS FAR AS THE TWO COUNTS AND DOUBLE JEOPARDY ISSUES, IT WOULD BE A VIOLATION , IT WOULD BE ONE ACT OF TAMPERING WITH EVIDENCE, THE PHONE CALL WAS ATTEMPTING |
| 4:05:00 PM | CHANDLER | THE MOTION THAT MR COSBY MADE |
| 4:05:10 PM | COURT | THERE IS EVIDENCE , THAT THE PANTS AND GUN NOT FOUND WERE PLACED AT A DIFFERENCE PLACE, THE FACT THAT THE BRITCHES WERE FOUND AND NOT THE GUN DENIES THE MOTION |
| 4:05:51 PM | CHANDLER | |
| 4:05:59 PM | MORRIS | WHY DOES HE WANT TO RAISE SIR-REBUTTAL |
| 4:06:31 PM | COSBY | SIR-REBUTTAL IS MATTERS |
| 4:06:50 PM | CHANDLER | HE CHOSE NOT TO CALL WITNESS |
| 4:07:21 PM | COURT | THE RULE AGAINST 90 DAYS, NOT PREPARED RIGHT NOW TO MAKE THE RULE |
| 4:08:21 PM | CHANDLER | ALLOWS US TO PUT ON OUR REBUTTAL |
| 4:08:49 PM | COURT | COMMENTS |

10/10/2013                    EXIBIT   10                    4 of 5

relates that "for more than two decades, there has been the suggestion that

mental health clinicians do not like patients with personality disorders…"

and that "[t]hese attitudes may adversely affect delivery of health care

provision and as such make it more difficult for patients with personality

disorder and comorbid mental disorders to access and receive appropriate

management for either disorder." Peter Tyrer, Ruger Mulder, et al,

"Personality disorder: a new global perspective," World Psychiatry, Feb.

2010; 9(1):56-60, found online at

http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2816919/ .

The two cases, *Flores* and Mr. Ramirez's, have a parallel structure:

The defendant was found incompetent, sent to Las Vegas and hastily treated

to competency, then sat in jail (possibly decompensating) for months on end

while waiting on a trial date.

In summary, there was substantial evidence that Mr. Ramirez needed

to have his competency to stand trial reevaluated. His case more than meets

the bar set by *Flores* for a reevaluation. The desire to move his case should

not have taken precedence over Mr. Ramirez's need for a reevaluation. The

failure to have him reevaluated created a substantial risk that he was tried

while incompetent to stand trial, the very risk that raising competency is

supposed to ameliorate.

Rule 5-602(B)(1) NMRA. Rule 5-602(B)(2)(b) states that if competency to stand trial is raised during trial, the jury "shall be instructed on the issue." In this case no such instruction was proffered or given.

An assertion of incompetency by defense counsel must be substantiated. *Flores*, 2005-NMCA-135, ¶ 20 (citation omitted). The evidence described above substantiates counsel's assertion. "[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required..." *Drope*, 420 U.S. 162, 180. "Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." *Id.* at 181.

Mr. Ramirez's case can be distinguished from the recently issued decision of this Court in *State v. Solomon*, No. 33,975 (N.M. Sup. Ct. Aug 4, 2014) (non-precedential). In *Solomon* this court found that a District Court did not abuse its discretion by not ordering a mental health evaluation to see if the defendant was competent to stand trial. In *Solomon* the defense attorney never actually made a motion for a competency evaluation. *Id.* ¶ 12.



deal with his outburst and attempt to fire his own attorney. Mr. Ramirez

needed to be able to assist his attorney. *See State v. Rotherham*, 1996-

NMSC-048, ¶ 13,122 N.M. 246. "Proper assistance encompasses more than

merely providing information but is extended to the comportment in the

courtroom before a jury." *U.S. v. Williams*, 113 F.3d 1155, 1160 (C.A.10

(N.M.) 1997) (citation and internal quotation marks omitted). As this brief

lays out in the accounts of his testimony, Mr. Ramirez lacked the ability to

comport himself during the trial. The judge, in a vast understatement, noted

that Mr. Ramirez was difficult to represent. **[10-10-13 CD B 2:07:30-**

**2:41:36]**

Earlier, outside the presence of the jury Mr. Ramirez complained that

the trial was "not fair" because he wasn't being asked questions that he

thought were necessary. He made allegations of having been sexually

assaulted by a witness. **[10-10-13 CD B 10:40:41-10:58:56]** The judge

himself stated that he had never seen a defendant act the way Mr. Ramirez

was acting. **[10-10-13 CD B 3:45:47-3:46:20]**

Defense Counsel had asserted that Mr. Ramirez was incompetent and

made a motion for a recess to allow for a reevaluation of his competency.

"The issue of a defendant's competency to stand trial may be raised by

motion, or upon the court's own motion, at any stage of the proceedings."

1  representation, motions he wanted filed, and other issues he indicated that he would

2  present in his appeal.

3  {29}    Defendant then demanded to be the first defense witness so he could

4  communicate his defense.  During his direct examination, Defendant refused to

5  answer many questions directly saying he wanted to "explain everything."  Defendant

6  then attempted to dismiss his counsel in front of the jury, forcing the court to remove

7  the Defendant and recess the trial.  Later, after the parties rested, Defendant had

8  another outburst, complaining that he had a right to know what the jury instructions

9  would be so that he could file motions.  The court told Defendant that he was being

10  well-represented and the instructions were fair.

11  {30}    At Defendant's sentencing hearing, Defendant complained to the court that his

12  defense counsel had failed to effectively represent him and that he did not receive a

13  fair trial.  Defendant argued that the jury would not have convicted him had it fully

14  understood that he was the victim.  The district court assured Defendant that he had

15  received excellent representation and pronounced the sentence.

16  {31}    "This Court has repeatedly stated that ineffective assistance of counsel claims

17  are best served through habeas corpus proceedings so that an evidentiary hearing can

18  take place on the record."  *State v. King,* 2015-NMSC-030, ¶ 33, 357 P.3d 949

EXIBIT 10

1    competency by Dr. Fink in January 2013, Defendant spoke directly to the court,

2    though he was represented by counsel, and asked for a fifth forensic evaluation to

3    determine his competency.  Defendant argued that a new evaluation would show he

4    was suffering from "psychosomatic delusions and hallucinations and severe

5    depression and anxiety."  The judge listened to Defendant's request and then denied

6    it.

7    {17}    This case is similar to *State v. Flores*, 2005-NMCA-135, 138 N.M. 636, 124

8    P.3d 1175.  In *Flores,* the Court of Appeals addressed whether an unsupported

9    declaration against competency made prior to trial rose to the level of reasonable

10   doubt.  In that case, just before trial, the defendant's counsel asked the court to find

11   that the defendant was incompetent to stand trial.  *See id.* ¶ 7.  The defendant's

12   counsel cited her own experience with the defendant as the basis of the request, stating

13   her belief that his condition had deteriorated because he had been held in isolation

14   since the competency hearing.  *See id.* ¶ 8.  The Court held that while "a court may

15   consider defense counsel's observations and opinions . . . those observations and

16   opinions alone cannot trigger reasonable doubt about the defendant's competency."

17   *Id.* ¶ 29.  The Court also concluded that the testimony of experts is not required to

18   support a contention of incompetency, but "[i]nstead, a defendant could offer an

9

EXIBIT 10




1   offer an instruction on competence, nor did he object to the instructions given the jury.

2   Therefore, this issue was not properly preserved for appeal.").

3   **B.    Defendant did not receive ineffective assistance of counsel**

4   {27}    Defendant's second argument is that he was denied effective assistance of

5   counsel because defense counsel "lacked the necessary assistance of [Defendant]

6   himself"; failed to "'seek the assistance of necessary experts,' and if more money was

7   required to seek such assistance on an urgent basis counsel should have requested it"

8   (citation omitted); and failed to obtain a reevaluation and attempted to withdraw the

9   motions to determine competency, resulting in prejudice to Defendant. Counsel has

10  abandoned the claims that trial counsel failed to call other witnesses or made promises

11  to the Defendant because these claims are unsupported by the record. As such, we

12  decline to review these claims.

13  {28}    One week prior to trial, the district court denied Defendant's motion to appoint

14  new counsel. Trial commenced as scheduled. On the fourth day of trial, defense

15  counsel informed the court of his decision not to call a witness on the record, as it was

16  against Defendant's wishes. Defendant then addressed the court, against counsel's

17  advice, about how his defense had been limited, how his mental illnesses affected him,

18  the amount of media his case was receiving, the quality of his attorney's





interview witnesses and other persons.

Contact was made with the 911 caller, Grace Finkey, who witnessed the incident, recognized the shooter, and contacted law enforcement. The victim, Eladio Robledo Valdez was pronounced deceased while at PRMC. According to the mother of the suspect, Albert has a large blue car, containing all his personal belongings. The vehicle was broken down in front of 511 E. 6th Street. Officers responded to the residence and observed the silver blue Cadillac parked on the street in front of the duplex. The vehicle contains a large amount of clothing and other personal items, possibly belonging to Albert Ramirez. The duplex at 511 E. 6th Street is currently vacant. The front window, facing north is open and raised approximately 8". The front and back doors are locked. The window on the east side of the building is unlocked with the screen removed. There are handprints on the exterior of the glass indicating that the window was pushed up to open the window. There are two cinderblocks under the window to provide easy entry into the window. The suspect, Albert Ramirez may be hiding within the vacant duplex to avoid detection and apprehension by law enforcement.

Based on this I believe that evidence relevant to the shooting may be within the residence or the vehicle described, and located at 511 E. 6th Street, Clovis, Curry County, New Mexico.

*[handwritten annotation:]* HEARSAY CANT JUST SEARCH CAUSE WHAT HE BELIEVES, NO matter if he's A COP!!! might be good to try and fight whatever evidence found with the

Affiant is a full-time salaried, sworn Law Enforcement Officer currently employed with the Clovis Police Department. Affiant's current assignment is Detective with the Special Operations Unit, and member of the Major Crimes Unit.

*[handwritten:]* Warrant!

SUBSCRIBED AND SWORN TO BEFORE ME IN THE ABOVE NAMED COUNTY OF THE STATE OF NEW MEXICO,

THIS 12 DAY OF July , 2007.

_____
JUDGE

_____
TITLE

_____
AFFIANT

_____
TITLE    Detective #98

APPROVED BY ASSISTANT DISTRICT ATTORNEY _____Matth Chand____ ON July 12, 2007

*[handwritten:]* EXIBIT 11,

*[handwritten:]* EXIBIT 11

**EXHIBIT (22)**

*[handwritten:]* page 48

*[handwritten:]* 44

*EVIBIT M, 1*

# STATE OF NEW MEXICO
# COUNTY OF CURRY
# IN THE DISTRICT COURT

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

2007 JUL 13  PM 3: 30

STATE OF NEW MEXICO
-VS-

Albert Ramirez,
D.O.B. ▓▓▓
SSN: ▓▓▓

CLERK DISTRICT COURT

D-0905- **SW** 0200 **7** 00 **001**

and a silver blue Cadillac 4-door bearing Texas license W55HHS

## AFFIDAVIT FOR SEARCH WARRANT

I, Ricky M. Smith, being dully aworn, on my oath, state that I have reason to believe that on the premises described below, and/or on the person described above:

**Residence located at 511 E. 6th Street, Clovis Curry County, New Mexico. Residence is tan stucco with white trim, single story, multi-family dwelling that sits on the south side of East 6th Street facing north, and between Wallace Street and Sheldon Street. The residence is identified with 511 E. 6th Street on a white mailbox, atenciled in black letters. The residence has white trim, with a tan composite roof. The front door is a glass and white metal screen door that faces north. The vehicle is parked on the street in front of the residence.**

**IN THE STATE OF NEW MEXICO, COUNY OF CURRY THERE IS NOW BEING CONCEALED CERTAIN PROPERTY, NAMELY:**
Firearms, rifles, shotguns, or pistols, ammunition for firearms, and projectiles and missiles that may have been discharged from a firearm. Blood, blood spatter, other genetic material including saliva or other secretions. Other evidence to include fingerprints, skin, hair, and fibers. Clothing, bloodied clothing, to include shoes, shoeprints, trousers, shirts, undershirts, underwear, and socks, and bloodied towels or other cloth.

Albert Ramirez, Date of Birth: ▓▓▓   Social Security Number ▓▓▓▓▓, Hispanic male, Approximately 5'5" tall, 120 lbs., black hair, brown eyes
The items listed above have been obtained or are being possessed in a manner which constitutes a criminal offense, are designed or intended for use or which have been used as a means of committing a criminal offense, and would be material evidence in a criminal prosecution. The facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows:

On Thursday, July 12, 2007, at about 1339 hours, Officers of the Clovis Police Department were dispatched to the area of 515 W. 6th Street, in Clovis, Curry County, New Mexico, in reference to a 911 call for shots fired. The caller also relayed that there was a subject on the ground and that the suspect in the shooting had run off on foot to the north using the alley. Officers arrived on scene, noted the male body on the ground. The subject on the ground was subsequently identified as Eladio Robledo Valdez. The officers checked the area for the suspect, identified as Albert Ramirez, a Hispanic male, wearing a white shirt and blue jean shorts. The victim, who resides at 512 W. 6th Street, was on the ground in front of the residence. According to preliminary information provided by the caller, the victim had been shot by the suspect, fallen to the ground, and been shot again. Ambulance personnel arrived and the victim was transported to Plains Regional Medical Center Emergency Room. The scene was secured.
The Major Crimes Unit was activated. Investigators were dispatched to the crime scene at the 512 W. 6th Street and other Investigators were dispatched to the Special Operations Unit of the Clovis Police Department, to

*EXB. # 11*

*page 49*

# RETURN AND INVENTORY

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

**STATE OF NEW MEXICO**
          **-VS-**

2007 JUL 13  PM 3: 30

Albert Ramirez,
D.O.B. ▮▮▮▮▮
SSN: ▮▮▮▮▮▮▮▮▮▮▮

D-0905- Su▮▮▮▮▮▮▮ Dept
CLERK DISTRICT COURT

and a silver blue Cadillac 4-door bearing Texas license W55HHS

I received the attached Search Warrant on __07/12/07__    And executed it on __07/12/07__
at __2235__ Hours. I searched the person or premises described in the Warrant and left a copy of the Warrant with:

_____None present at scene_____
(name of the person searched or owner at the place of search)

Together with a copy of the inventory for the items seizes. The following is an inventory of the property taken pursuant to the Warrant:

- 1 photo of suspect and unknown black male (Gang Writings)
- 1 paper with writing about shooting people
- 1 letter to Albert Ramirez denying his SSI benefits

This inventory was made in the presence of       Ricky M. Smith       and       Randy Pitcock
                                                 Applicant for Search Warrant              Owner or other witness

_Randy Pitcock_
Signature of Officer or Detective                                       Signature of Owner or Witness

Return made this _____day of _____, 2007 at _____hours.

_____
     (Judge Clerk)

After a careful search, I could not find at the place, or on the person described, the property described in this Warrant.

_____                    _____
      (Officer)                                         (Date)

EX. B, + 11

**EXHIBIT ((6)**

page 50

ST. VS ALBERT RAMIREZ  CR-07-434                                    CR1 CHAMBERS

| Time | Speaker | Note |
|------|---------|------|
| 10:58:56 AM | CHANDLER | ON XEX GONNA ASK THIS COURT FOR ABOUT 10 OR 15 MINUTES WOULD LIKE TO DISCUSS WITH CO COUNSEL, SAID HE HAS NOT TESTIFIED BEFORE, I RENEW MY |
| 11:00:15 AM | COSBY | IT WAS NOT A JURY TRIAL IT WAS A BENCH TRIAL, HE BATTERED A TRANSPORT OFFICER |
| 11:01:15 AM | COURT | IF XEX TRIGGERS I WILL CHANGE MY RULING |
| 11:01:44 AM | RECESS | |
| 3:44:06 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY, DFT AND ALL PARTIES PRESENT |
| 3:44:27 PM | CHANDLER | DEFENSE HAS RESTED AND HAVE GIVEN US A COUPLE OF INSTRUCTIONS GUILTY BUT MENTALLY ILL, HE IS ATTEMPTING TO RAISE COMPETENCY, OUR REBUTTAL WITNESSES ARE GOING TO TESTIFY THAT THEY HAVE EXAMINED THE DFT, ETC. |
| 3:45:47 PM | COURT | HAVE NOT SEEN A DFT THE WAY THIS TRIAL HAS UNFOLDED |
| 3:46:20 PM | CHANDLER | WE HAVE CASELAW |
| 3:46:30 PM | COSBY | I AM NOT GOING TO SUBMIT A COMPETENCY INSTRUCTION, |
| 3:46:46 PM | CHANDLER | WE ARE NOT OBJECTING, THE ONLY MENTAL ILLNESS THAT PROBABLY COULD HAVE BEEN TESTIFIED, DFT TOOK STAND AND HE DID NOT RAISE ISSUE |
| 3:47:42 PM | COSBY | THE GBMI WAS AVAILABLE, BUT THAT DOES NOT DEPRIVE HIM OF THE RIGHT TO HAVE IT SUBMITTETD, GBMI VERDICT IS NOT SOMETHING TO GIVE, HE IS ENTITLED WE HAVE TENDERED IT, |
| 3:48:58 PM | COSBY | OPPOSES TO REBUTTAL WITNESSES BEING CALLED |
| 3:49:17 PM | COURT | BASIS UPON |
| 3:49:34 PM | MORRIS | THEY WERE CALLED , THEY ALSO CAN TESTIFY AS TO THEIR OPINION |
| 3:50:52 PM | | HE LISTED BOTH OF THESE DOCTORS, HE HAS NOT LISTED DR. SWARTZ |
| 3:51:10 PM | CHANDLER | YOU CANNOT BRING IN AN EXPERT YOU HAVE NOT DISCLOSED |
| 3:51:27 PM | COURT | AS A PRACTICAL MATTER WHAT YOU DO IN YOUR INSTRUCTIONS YOU HAVE A GUILTY AND GUILTY BUT MENTALLY ILL, |
| 3:52:06 PM | COSBY | WE ARE NOT GOING TO ASK FOR SELF DEFENSE, WILL WITHDRAW BECAUSE OF MENTAL ILLNESS OR DEFECT |
| 3:52:52 PM | OFF RECORD | |



10/10/2013                    $\mathcal{E}$x·ib·t 12,

Buy the Paper    Today's Ads    Newsletter and Text Alerts    ePaper Login    Local Business Directory    Newspaper in Education    Maps

# Free Eviction Notice Form

evictionnotice.rocketlawyer.com

Free Eviction Notice. All States. Print, Save, Download 100% Free.

HOME    NEWS    SPORTS    OBITUARIES    BLOGS    CLASSIFIEDS    JUST TV    SECTIONS    AUTOFINDER                    JUNE 13, 2014

# Albert Ramirez sentenced to life in murder of mother's boyfriend

January 8, 2014

By Robin Fornoff
CMI Projects Editor
rfornoff@cnjonline.com

A sobbing Albert Ramirez pleaded for sympathy Wednesday at his sentencing for the 2007 murder of his mother's boyfriend.

District Judge Teddy Hartley responded: "It would be wrong for you to live in society," and gave Ramirez life plus six years in prison for what District Attorney Matt Chandler called the cold-blooded killing of 39-year-old Eladio Robledo of Clovis.

"You take your life now and do the best you can under the circumstances," Hartley told Ramirez. "I wish you luck."

Ramirez was convicted by jury in October after a week-long trial peppered by his repeated outbursts, forcing Hartley to remove him from the courtroom at one point. Ramirez claimed he was ill, that he couldn't comprehend what was happening and he wanted to fire his court-appointed attorney Jesse Cosby of Roswell.

As he did at trial, Hartley praised Cosby for "conducting trial perfectly" under circumstances Ramirez made difficult.

Chandler reminded Hartley before sentencing that evidence at trial showed Ramirez planned the murder of Robledo. It was retaliation for Robledo and Ramirez's mother obtaining a court order to force Ramirez out of their home, he said.

Chandler said Ramirez, then 18, waited outside the home the morning of July 12, 2007, with a loaded .22 caliber pistol. Robledo was confronted outside by Ramirez. There was a fight that left a blood trail from a garage at the rear of the house to the front sidewalk, where witnesses testified they saw Ramirez standing over Robledo firing the gun at his head execution style.

Chandler called the killing "premeditated ... calculated ... and cold-blooded." He noted a pre-sentence report branded Ramirez a malingerer who blamed the system, his attorney, the police, the district attorney and the courts for problems he alone created.

At one point Ramirez's older brother, Israel Ramirez, awaiting trial on multiple felony charges unrelated to the case, was led into the courtroom in shackles and a bright orange jail jumpsuit to plead for a lighter sentence for "my little brother."

"He's a good kid," Israel Ramirez told Hartley. "If I could switch places with him I would."



CNJ staff photo: Robin Fornoff
Albert Ramirez, 25, of Clovis looks over the courtroom Wednesday while awaiting sentencing for the 2007 murder of his mother's boyfriend, Eladio Robledo. District Judge Teddy Hartley gave Ramirez the maximum sentence of life plus six years in prison.

Search this website...    Search

ADVERTISEMENT

LOCAL WEATHER



CLOVIS
64°
Cloudy
High: 84° Low: 81°
Wind: S 13 mph
Humidity: 63%

ADVERTISEMENT

FARMERS
INSURANCE

Rosalind
Riley-Smith
Home • Auto • Life

Request A Quote

www.ClovisInsuranceRileySmith.com

ADVERTISEMENT

Buy the Paper    Today's Ads    Newsletter and Text Alerts    ePaper Login    Local Business Directory    Newspaper in Education    Maps

## Search Obituaries Free

◁⊷ ancestry.com/Obituaries

1) Search anyone's name. 2) View their obituary instantly.

HOME    NEWS    SPORTS    OBITUARIES    BLOGS    CLASSIFIEDS    JUST-IV    SECTIONS    AUTOFINDER    JUNE 13, 2014

# Police arrest shooting suspect

July 16, 2007

Search this website...    Search

ADVERTISEMENT

By Sharna Johnson: Freedom Newspapers

A tip from a citizen led to the arrest of a Clovis teen who police say shot and killed his mother's boyfriend Thursday, police said.

Albert Ramirez, 18, was arrested without incident at 713 W. 13th St. around 8:30 a.m. Sunday morning, a press release from Clovis police said.

He is accused of shooting Eladio Rubledo, 39, multiple times in the front yard of 512 W. 6th St., a residence Rubledo shared with Ramirez' mother Debra Ramirez.

Ramirez is being held at the Curry County Adult Detention Center on $100,000 bond, court records show.

Ramirez told police she was in the house and heard shots. When she looked outside, she saw her son running away carrying a handgun, an arrest affidavit filed in district court Monday said.

A neighbor across the street told investigators he heard three popping noises and went houtside where he saw Robledo laying on the sidewalk "covering his head with his hands and yelling," the affidavit said.

The affidavit said the witness saw Ramirez standing over Robledo with his hands outstretched toward the victim as if he was holding a gun and then two more shots were fired.

The man told police he went to call 911 and when he returned, Ramirez was gone. He tried to help Robledo, who was bleeding from the head and unresponsive, the affidavit said.

Robledo was pronounced dead at the hospital, the affidavit said.

Debra Ramirez told police her son made death threats against her and her boyfriend before, according to the affidavit.

June 22, about three weeks before the shooting, Albert Ramirez was placed on six months probation for smashing the windshield of Robledo's car March 31.

Ramirez admitted smashing the window out of anger, a police report said.

A judge ordered him to attend the next available session of the Alternative Sentencing Programs and Educational Networks program, or ASPEN. Court records do not indicate if he had yet completed the program.

In a separate police report filed June 19, Debra Ramirez called police and told them her son smashed the front window of her home because she wouldn't let him in the house.

She said Ramirez was banging on the door and she didn't let him in because she was afraid he would hurt her, the report said.

Ramirez was not charged in the second incident, according to court records.

Calls to Debra Ramirez seeking comment were not returned Monday.

LOCAL WEATHER

CLOVIS
64°
Cloudy
High: 84°  Low: 61°
Wind: S 13 mph
Humidity: 65%

ADVERTISEMENT

Luxury Consignment
Up to 90% off.



The RealReal    SHOP NOW >

ADVERTISEMENT

Homicide suspect ruled competent enough to stand trial - Clovis News Journal

EXHIBIT 13

page 54

Buy the Paper    Today's Ads    Newsletter and Text Alerts    ePaper Login    Local Business Directory    Newspaper in Education    Maps



You're missing the video converter tool.    **Click Here**

HOME    NEWS    SPORTS    OBITUARIES    BLOGS    CLASSIFIEDS    JUST TV    SECTIONS    AUTOFINDER                JUNE 13, 2014

# Homicide suspect ruled competent enough to stand trial

September 17, 2008

By Sharna Johnson: CNJ staff writer

A judge ruled Tuesday 20-year-old Albert Ramirez, accused of shooting his mother's boyfriend in 2007, is competent to stand trial.

District Judge Teddy Hartley issued the ruling after hearing testimony Monday from a clinical psychologist with the New Mexico Department of Corrections who evaluated Ramirez.

No trial date has been set.

Dr. Joanne Burness told the court Ramirez is a "disturbed young man" who likely has a mood disorder but is not mentally ill, court records showed.

She said Ramirez experiences hyperactivity, is easily angered and seeks sympathy, but that he understands and can assist in his defense, according to a transcript of the hearing.

Burness also told the court that during treatment, Ramirez inquired about how he could get his charges reduced and talked a lot during the three months he was there about the value of being found not competent.

Ramirez is charged with first-degree murder in the shooting death of 39-year-old Eladio Robledo.

Police said Ramirez shot Robledo outside a Sixth Street home the victim shared with Ramirez' mother.

The subsequent investigation revealed a history of violence Ramirez directed at his mother and Robledo. Prior to the shooting, Debra Ramirez had filed no trespass orders against her son and told police she was afraid of him.

At the Monday hearing, defense attorney Brett Carter asked the judge to return Ramirez to Las Vegas for further treatment.

Carter argued that Ramirez was not tested thoroughly and that he does not believe he can assist in his defense.

Ramirez was transferred in June to the Behavioral Health Institute at Las Vegas, N.M., for treatment after he was declared dangerous and incompetent.

Ramirez' criminal case had been put on hold pending the outcome of the evaluations.

**Share this post:** | Email | Facebook | Twitter | Google | Reddit |

Filed Under: News        Tagged With: accused, albert, competent, mother, old, ramirez, ruled, stand, suspect, trial

Search this website…    [Search]

ADVERTISEMENT

Luxury Consignment
Up to 90% off.



The RealReal        SHOP NOW >

LOCAL WEATHER

**CLOVIS**
**64°**
Cloudy
High: 84° Low: 61°
Wind: S 13 mph
Humidity: 63%

ADVERTISEMENT



FARMERS
INSURANCE


Rosalind
Riley-Smith
Home • Auto • Life

Request A Quote

www.ClovisInsuranceRileySmith.com

ADVERTISEMENT



Buy the Paper    Today's Ads    Newsletter and Text Alerts    ePaper Login    Local Business Directory    Newspaper in Education    Maps

⚠ You're missing the video converter tool.    **Click Here**

HOME    NEWS    SPORTS    OBITUARIES    BLOGS    CLASSIFIEDS    JUST TV    SECTIONS    AUTOFINDER                    JULY 13, 2011

# Accused killer takes witness stand

October 10, 2013

**By Robin Fornoff**

**CMI PROJECTS EDITOR**

rfornoff@cnjonline.com

Search this website…    Search

**ADVERTISEMENT**

▷

Nursing School Online

🎓 chamberlain.edu
Earn Your RN To BSN In 3 Semesters. Online,
Affordable & User Friendly!

Public Arrest Records

Search Obituaries Free

Job Openings

Accused killer Albert Ramirez spent two hours on the witness stand — against his lawyer's advice — then was removed from the courtroom Thursday for his continued disruptions.

Ramirez took the witness stand for about two hours, telling jurors in rambling and sometimes tearful accounts that he was defending himself when he shot and killed his mother's boyfriend six years ago.

Ramirez is charged with first-degree murder, accused of lying in wait and gunning down Eladio Robledo, 39, of Clovis, in July 2007, as he left his house on west Sixth Street for work.

Ramirez faces life in prison if convicted.



Albert Ramirez
On trial for murder

Ramirez continued his efforts that have peppered the trial since it began Monday, trying to speak to District Judge Teddy Hartley despite warnings from the judge and pleas from his defense attorney Jesse Cosby to stop.

Hartley gave Ramirez his final warning after District Attorney Matt Chandler ceased his cross examination and Cosby said he had no questions for redirect. Taking a seat next to Cosby, Ramirez said loud enough for the jury to hear, "Why didn't you ask me more questions?"

"If you don't quit talking," Hartley said, "I'm going to remove you."

Minutes later, Ramirez started talking again as his brother, defense witness Jose Ramirez took the stand. An exasperated Hartley pointed toward Ramirez and ordered sheriff's deputies to "take him out of this courtroom."

Two deputies grabbed Ramirez, who shouted "he's not asking questions … he's not representing me," as the jury watched.

Until Thursday, Ramirez's disruptions came during periods when the jury was sequestered outside the courtroom. Cosby told Hartley he was now concerned the outburst planted seeds of doubt in the minds of jurors about his representation of Ramirez.

"He's fired me in open court in front of the jury," said Cosby.

Hartley, noting Cosby seemed to have a calming effect on Ramirez outside the proceedings, told him to talk to his client.

After about a 40-minute break, both sides returned and Cosby said Ramirez had decided to keep him as defense attorney. Hartley then warned Ramirez if there was one more outburst or disruption, he would have Ramirez removed and proceed with the defendant watching the rest of the trial in another room by video camera.

**LOCAL WEATHER**

CLOVIS
64°

Cloudy
High: 84° Low: 61°
Wind: S 13 mph
Humidity: 83%

**ADVERTISEMENT**



**FARMERS**
INSURANCE

**Rosalind
Riley-Smith**

Home • Auto • Life

Request A Quote

www.ClovisInsuranceRileySmith.com

**ADVERTISEMENT**

Exhibit 13
page 55

Teen charged with murder has competency issues - Clovis News Journal

EX, Bit
13

| By the Paper | Today's Ads | Newsletter and Text Alerts | ePaper Login | Local Business Directory | Newspaper In Education | Maps |

# New Mexico
✈ gasglance.com
Find Low Gas Prices In Your Area. Save w/ The Gas Calculator! Get App

| HOME | NEWS | SPORTS | OBITUARIES | BLOGS | CLASSIFIEDS | JUST TV | SECTIONS | AUTOFINDER | JUNE 13, 2014 |

## Teen charged with murder has competency issues

July 16, 2008

Courtesy photo Ramirez is charged with first-degree murder in the shooting death of 39-year-old Eladio Robledo in July 2007.

By Sharna Johnson: CNJ staff writer

A year after being charged in the shooting death of his mother's boyfriend, a Clovis 19-year-old's case is on hold pending psychological treatment.

Albert Ramirez is being treated at the Behavioral Health Institute at Las Vegas, N.M., after being declared in April to be incompetent and dangerous. District Judge Ted Hartley made the ruling after reviewing the results of a forensic psychological evaluation.

Ramirez is charged with first-degree murder.

District Attorney Matt Chandler said examiners believe with treatment Ramirez could be brought to a level of competency to stand trial.

Court records do not specify the nature of Ramirez' competency issues.

He is accused of shooting 39-year-old Eladio Robledo in July 2007 outside a Sixth Street home the victim shared with Ramirez' mother.

Robledo died a short time later at the hospital from multiple gunshot wounds.

A witness told police he saw Ramirez shooting at Robledo, who was laying on the sidewalk.

Debra Ramirez told police she feared her son because of his violent tendencies and made him move out when he reached 18. She filed a no-trespass order against him about four months before the shooting, records show.

Debra Ramirez told police her son had been threatening her and told her, "something bad was going to happen and it was going to be her fault," according to a police report.

After the protection order was filed, Ramirez' mother reported her son broke a window at her home because she wouldn't let him in.

Police said Albert Ramirez also admitted on another occasion he broke the windshield of his mother's car because he "got mad."

Debra Ramirez could not be reached for comment.

According to the April order issued by Hartley, Ramirez is to undergo treatment for up to nine months until such point as he attains competency.

Chandler said a defendant is found incompetent to stand trial when it is determined they cannot assist in their own defense or understand the way the judicial system works or the proceedings.

In March, Ramirez was charged with two counts of battery on a peace officer.

According to an arrest affidavit filed in magistrate court, transport officers said they had to carry Ramirez into and out of the courtroom when he refused to walk during a court appearance. After

Search this website… [Search]

ADVERTISEMENT

Public Arrest Records
🔒 beenverified.com/Arrest_Records
Search Any Name for Free! Step 1) Enter Name. 2) View Arrest Records

Nursing School Online ▾

Blog Professionally ▾

Job Openings ▾

LOCAL WEATHER

CLOVIS
64°
Cloudy
High: 84° Low: 61°
Wind: 3 13 mph
Humidity: 83%

ADVERTISEMENT

Luxury Consignment
Up to 90% off.



The RealReal          SHOP NOW >

ADVERTISEMENT

EX, Bit 13          Page 56

Form CD-180108.1
Revised 06/16/14

# NEW MEXICO CORRECTIONS DEPARTMENT
## Treatment Plan

☒ **Individual** ☐ **Group** ☐ **RDAP** ☐ **Other SUDs**

## TREATMENT PLAN AND CONTRACT:

| TREATMENT GOAL | Date goal set | TREATMENT Intervention and Frequency | Date Goal Met |
|---|---|---|---|
| Decrease symptoms of PTSD, i.e., flashbacks, nightmares, insomnia, numbness, sadness, anger, guilt, fear, etc. | 8/30/16 | Cognitive Behavioral Therapy at least one time per month in individual and/or group therapy to assist in identifying what triggers stressful memories and/or PTSD symptoms | |
| Increase coping skills to help deal more effectively with symptoms of PTSD | 8/30/16 | Assist in the development of positive coping skills at least one time per month in individual and/or group therapy. | |
| Reduction of the effects of traumatic memories on daily functioning. | 8/30/16 | CBT and/or Motivational Interviewing (MI) at least one time per month in individual and/or group therapy to assist in desensitization. | |
| Reduction of Intrusive Symptoms, i.e. intense or prolonged psychological distress or marked physiological reactions at/to exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event (s) | 8/30/16 | CBT, Motivational Interviewing (MI) and/or psychoanalytical therapy at least one time per month in individual therapy. | |
| Medication Compliance | 8/30/16 | Comply with medication prescribed by psychiatrist and cooperate with appropriate feedback, as indicated. | |

## CONTRACT:
I. I will attend scheduled treatment sessions unless I have a mandatory institutional appointment.
2. I will participate in the therapeutic process. There may be times when dealing with my issues may be uncomfortable or difficult.
3. I understand that there are limitations to treatment.
4. I understand that there are potential adverse outcomes to treatment.
5. I understand that I can refuse to participate in any part of this treatment plan if it adversely impacts my safety, security, or health.
6. I understand that my treatment sessions will address my treatment goals.
7. I will complete assigned treatment homework (if any is assigned by my clinician).
8. Other _____

**By signing below, I am consenting to the treatment plan and contract:**

**Ramirez, Alberto**
Inmate (Printed Name)

Inmate Signature: *# 69597 ALBERTO JOSE. RAMIREZ*    Date: 8/30/16

**Beatrice Narcisco, PhD, LPCC**
Clinician (Printed/Typed Name)

Clinician Signature: *B. Narciso, PhD, CPC*    Date: 8/30/16

**Eileen R. Missall, MA, LPCC**
Behavioral Health Reviewer (Printed/Typed Name)

Reviewer Signature: _____    Date: 8/30/16

---

Inmate Name: **Ramirez, Alberto**     NMCD#: **69597**     Facility: **CNMCF/MHTC**

**Treatment Plan**     Form CD-180108.1 (Rev. 06/16/14)

couldman, FL

1) 3 choices Better Same or Worse

2 Take control one person 24 7
myself.

3) (RESPONSIBILITY) ↓
ability to respond
rather than react.

Self Esteem Cope

10-15 emotionally stop acting
trauma steps from past as.

Mental Illness is no excuse 4 bad behavior

Im Sorry     I take responsibility it

im learning my ability to respond.

think re about was very inappropriate

one goal to control one behavioral

I dont think impulsivity.
I Should be charged
twice for the same. double jeopardy.
I didnt mean it was inappropriate

way im impulsive well.
thats what im working
on in therapy.

3 copies of each
page of these

Add of
pages

| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|
| CNMCF/CMRU/CMU<br>P.O. Drawer 1328<br>Los Lunas, NM 87031 | GCCF<br>P.O. Box 520<br>Santa Rosa, NM 88435 | LCCF<br>6900 W. Millen Dr.<br>Hobbs, NM 88244 | PNM<br>P.O. Box 1059<br>Santa Fe, NM 87504 | SNMCF<br>P.O. Box 639<br>Las Cruces, NM 88004 | SNMCF-POU<br>P.O. Box 20005<br>Las Cruces, NM 88004 | WNMCF<br>P.O. Drawer 250<br>Grants, NM 87020 | NENMDF<br>185 Doctor Michael Jenkins Rd.<br>Clayton, NM 88415 |

Name _____

No. _____ Unit _____

START

Date: _____

All these Are
part of old petition that
was denied and No
lawyer to assist denied.

start labeled
1.C. End F
(ABCDE

Copies of
My other Habeas 3.22.17
were lost by prison 4.25.17
officials

Steven Frobes

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

## MANDATE NO. S-1-SC-34576

DECEIVED
JAN 12 2017
APPELLATE DIVISION
PUBLIC DEFENDER DEPT.

TO THE DISTRICT COURT SITTING IN AND FOR THE COUNTY OF CURRY, GREETINGS:

WHEREAS, in causes numbered D-905-CR-2007-00434 on your criminal docket, wherein State of New Mexico was plaintiff and Albert Jose Ramirez was defendant, the district court entered judgment convicting defendant of willful and deliberate first-degree murder and tampering with evidence; and

WHEREAS, the cause and judgment were afterwards brought into this Court upon notice of appeal and statement of issues filed by defendant, whereupon such proceedings were had that on December 1, 2016, a decision was issued affirming defendant's conviction.

NOW, THEREFORE, this cause is remanded for further proceedings, if any, consistent and in conformity with the judgment of this Court.

IT IS SO ORDERED.

WITNESS, Honorable Charles W. Daniels, Chief Justice of the Supreme Court of the State of New Mexico, and the seal of said Court this 11th day of January, 2017.

(SEAL)

Joey D. Moya, Chief Clerk of the Supreme Court of the State of New Mexico

A true copy was served on all parties or their counsel of record on date filed.

Joey D. Moya
Chief Clerk of the Supreme Court of the State of New Mexico

☐ CNMCF/CMR/CMU   ☐ GCCF   ☐ LCCF   ☐ PNM   ☐ SNMCF   ☐ SNMCF-POU   ☐ WNMCF   ☐ NENMDF
P.O. Drawer 1328   P.O. Box 520   6900 W. Millen Dr.   P.O. Box 1059   P.O. Box 639   P.O. Box 20005   P.O. Drawer 250   185 Doctor Michael Jenkins Rd
Los Lunas, NM 87031   Santa Rosa, NM 88435   Hobbs, NM 88244   Santa Fe, NM 87504   Las Cruces, NM 88004   Las Cruces, NM 88004   Grants, NM 87020   Clayton, NM 88415

Name _____
No. _____ Unit _____

Exbits Counsel Issue cosby

HABEAS PACKET Date: _____

QUESTION # 3 AND 4 IN
THIS WAS irreconcilable conflict

COUNSEL at trial VERBALLY ASSAULTED I MR RAMIREZ
STATING I AM A Stupid little Bitch and JetBACK And
PROMISED TO BE INEFFECTIVE, IF I MR Ramirez
CONTINUED TO INSIST ON GOING TO Trial rather
than pleod guilty as counsel insisted.
And threatened ME Ramirez by saying I Hope
you Get life. Counsel would Not Communicate
with I MR Ramirez as I tried to No avail.

COUNSEL WOULD NOT file MOTIONS for CHANGE OF
VENUE EVEN though There WAS EXTENSIVE media
that WAS inadmissible, saying ME Ramirez
Threatened to kill His Mother and step father
and His mother kicked him out due to
His violent tendencies

COUNSEL WOULD NOT Suppers Evidence that I WAS
hiding in CAR and they found KKK words toilng
OF Shooting people.

MR COSBY WOULD NOT Call dR. MAXANNE SWARTZ to
testify for The defense OF irability to perform
Specific intent due to Mental illness. Severe depression
anxiety, schizophrenia paranoia, and my competency
to stand trial.

I Wanted to have jury instruction on the issue of
competency Rule. 5-602 (B)(2)(B) and refused to
object to instruction I asked him to.

I also told counsel I did fall down when
Sheriff called ME TO walk to him and I was
coerced into saying NO by sheriff docerty and
gestured behind my lawyers back to say NO I
asked him to request a mistrial to No avail.
THE JURY SEEN ME Shackled I told My
lawyer to request A Mistrial sheriff docerty
told me to say I did not fall and
lie to insult the State

CNMCF/CMRU/CMU · GCCF · LCCF · PNM · SNMCF · SNMCF-POU · WNMCF · NENMDF

CNMCF/CMRU/CMU
P.O. Drawer 1328
Los Lunas, NM 87031

GCCF
P.O. Box 520
Santa Rosa, NM 88435

LCCF
6900 W. Millen Dr.
Hobbs, NM 88244

PNM
P.O. Box 1059
Santa Fe, NM 87504

SNMCF
P.O. Box 639
Las Cruces, NM 88004

SNMCF-POU
P.O. Box 20005
Las Cruces, NM 88004

WNMCF
P.O. Drawer 250
Grants, NM 87020

NENMDF
185 Doctor Michael Jenkins Rd.
Clayton, NM 88415

Name _____

No. _____ Unit _____

Date: _____

Counsil

MR Cosby refused to address court and request a
mistrial which if raised issue probably start trial
over if lawyer had done a better job of
protecting my rights

Also witness Pricilla Lopez and Ricky Jaramillo
eye witnesses would of testified that I am
real skinny and helped prove I was the
one being chased in yard and that detective
was mis leading witnesses.

Counsel at trial failed to call de Fink as a witness
at trial as I asked. De Fink would of testified
that I was not competent and mentally ill

I asked counsel to call de. Joane Burness to
cross examine.

I asked counsel to investigate mental illness difuse
as I have family history of mental illness + intoxicad
history c-d drugs.
I did express disatisfaction with counsel and the
court failed to inquire into the matter.

Counsil

MR Cosby promised if I testified I wanted be
able to speak of sexual abuse by niebor and
my moms boyfriend He lied to incriminet me.

If counsel did not lie I would not have testified
and trial may have been difrent togather
those errors all the prejudice I'd be entitled
to a new trial.

Counsel at trial failed to give me the entire
discovery and did not discuss any of the
case with me. Beuz I woulden take plea.

| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|
| CNMCF/CMRU/CMU P.O. Drawer 1328 Los Lunas, NM 87031 | GCCF P.O. Box 520 Santa Rosa, NM 88435 | LCCF 6900 W. Millen Dr. Hobbs, NM 88244 | PNM P.O. Box 1059 Santa Fe, NM 87504 | SNMCF P.O. Box 639 Las Cruces, NM 88004 | SNMCF-POU P.O. Box 20005 Las Cruces, NM 88004 | WNMCF P.O. Drawer 250 Grants, NM 87020 | NENMDF 185 Doctor Michael Jenkins Rd. Clayton, NM 88415 |

Name _____

No. _____ Unit _____

22

Date: _____

_____

COUNSEL did NOT call IS/car ramirez who would OF
testified Robledo h.t me and was violent when
I was 13 and He fought Robledo

also Jose Ramirez would testify Robledo was
aggressive violent + attacked him everytime
He tried to go See me

COUNSEL failed to get medical records Evidence
To Show I was Physically injured at time of
CRIME.

Thier was a complete Breakdown in Communication.

I want the court to know I asked twice on

record to Speak to Show I timely moved for
removal of COUNSEL, But The court refused to
let me Say anything about conflict Between
I and counsel.

WHY 1 trial

I tried to put in record after trial counsel Said
after I tried To Fire him.
Court refused to inquire into it
If The court had id of get a new attorney of
a mistrial
I asked To represent myself.

I was denied My Sixth admendment right to
effective assistance of counsel.

I ask For an Evidutory Hearing to now allow
me to speak on record

Thanks Usly much

| □ | □ | □ | □ | □ | □ | □ | □ |
|---|---|---|---|---|---|---|---|
| CNMCF/CMRU/CMU P.O. Drawer 1328 Los Lunas, NM 87031 | GCCF P.O. Box 520 Santa Rosa, NM 88435 | LCCF 6900 W. Millen Dr. Hobbs, NM 88244 | PNM P.O. Box 1059 Santa Fe, NM 87504 | SNMCF P.O. Box 639 Las Cruces, NM 88004 | SNMCF-FOU P.O. Box 20005 Las Cruces, NM 88004 | WNMCF P.O. Drawer 250 Grants, NM 87020 | NENMDF 185 Doctor Michael Jenkins Rd. Clayton, NM 88415 |

Name _____

No. _____ Unit _____

Date: _____

INEFFECTIVE assistance of appleat council
saying in my appeat I abonateal to
show cousel at trial was ineffective it
shous ae record I asked to call
dr. Maxine Suertz and was denied,
rabey I would of goten an
evidenary Hearig on appeat
also Hedid Not argue I did Not recieve
a fair Sentaring and docbe jeopardy
on tempring with Evidenec.

I ask for an evidentary Hearing.
**exca** To Show the true facts, Not Able
to write all the facts.
thery is Alot MoRE.
I want to make a proper
record.

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

2017 MAY 31   PM 12: 21

CLERK DISTRICT COURT

ALBERT JOSE RAMIREZ,

       Petitioner,

vs.

STATE OF NEW MEXICO,

       Respondent.

No.   D-0905-CR-2007-00434

## DECISION AND ORDER OF SUMMARY DISMISSAL

THIS MATTER having come before the Court on Petitioner's pro se Petition for Writ of Habeas Corpus filed March 22, 2017 and Petitioner's pro se Petition for Writ of Habeas Corpus filed April 25, 2017 (hereinafter collectively referred to as "Petition") in the above referenced cause number, and the Court being fully advised, enters its sua sponte order and FINDS:

This Court notes that the Petition is scribbled and nearly illegible. It appears that Petitioner is challenging his conviction based upon prosecutorial misconduct and ineffective assistance of counsel.

A review of the file shows that that Petitioner was convicted of various offenses including Murder in the First Degree in October, 2013. Petitioner appealed his conviction to the New Mexico Supreme Court. The New Mexico Supreme Court affirmed Petitioner's conviction. This case was subsequently assigned to this Court.

As to Petitioner's argument that there was prosecutorial misconduct, this claim is not properly supported by facts in the Petition. This Court finds that Petitioner is not entitled to relief as a matter of law in this regard.

As to Petitioner's argument that he was denied effective assistance of counsel in this matter, this claim is not properly supported by facts in the Petition. Further, this issue was part of Petitioner's appeal and the New Mexico Supreme Court affirmed Petitioner's conviction. This Court finds that Petitioner is not entitled to relief as a matter of law in this regard.

## DECISION AND DISMISSAL

After examining the Petition, exhibits, and prior proceedings, and based on the above discussed reasons, this Court finds the Petitioner is not entitled to relief as a matter of law. Therefore, in accordance with Rule 5-802(G)(1) NMRA, the Petitioner's pro se Petition for Writ of Habeas Corpus filed March 22, 2017 and Petitioner's pro se Petition for Writ of Habeas Corpus filed April 25, 2017 are summarily dismissed. An attorney will not be appointed and a hearing will not be set.

HON. DREW D. TATUM
District Judge, Division II

**12-501**

ORIGINAL

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

S-1-SC-36599

| West's New Mexico Statutes Annotated |
| --- |
| State Court Rules |
| 9. Criminal Forms |
| Article 7. Special Proceedings |

NMRA, Form 9-702

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO THE DISTRICT COURT FROM DENIAL OF HABEAS CORPUS

Currentness

[For use with Appellate Rule 12-501 NMRA]

IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

ALBERTO RAMIREZ

Defendant-Petitioner,

S.Ct. No. D-905-CR-2007-000439

SUPREME COURT OF NEW MEXICO *(leave blank; court will assign)* SUPREME COURT OF NEW MEXICO
RECEIVED                                                                        FILED

vs.

JUN 2 7 2017                                                          JUN 2 7 2017

W. AMAN FRANCO

District Ct. No. ...........................

*(Name of Warden)*

Respondent.

EXHIBIT
S

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

PETITION FOR WRIT OF CERTIORARI TO THE _9th_ DISTRICT COURT OF NEW
MEXICO

_Alberto Ramirez_

Defendant

Petitioner pro se

(
address information )   _P.O. Box 1059 Santa Fe NM 87504_

PETITION FOR WRIT OF CERTIORARI TO THE _9th_ DISTRICT COURT OF NEW
MEXICO

Defendant-Petitioner, appearing pro se and pursuant to the provisions of the New Mexico Constitution, Rule
5-802, and Rule 12-501 NMRA; petitions this Court to issue its Writ of Certiorari to review the order in:

_Alberto Ramirez_   _Warren German Franco_   filed on _June 29th 2017_
_____ (your name v. Warden's name), District Court No. _D-0905 cr. 2007-00434_

QUESTIONS PRESENTED FOR REVIEW

Whether the district court erred in:

_Not Inquiring Into reason as to_

_why inmate Alberto Ramirez Fired his_

_Attorney in middle of trial And_

_ask to represent himself._

_Why not Also if the court_

_Erred in not granting_

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

Assistance of counsel from
public defender post conviction
office to assist in habeus
proceeding and why not grant
the eviedntary hearing to determine
if allegations are true and if so probaly
deserves a new trial with new
counsel.

*(Complete only for issues relevant to the petition. Attach additional sheets if necessary.)*

## DESCRIPTION OF THE PROCEEDINGS

1. Please list the conviction being challenged:

Homicide 1st degree murder life
21 tampering with Evidence 2 3yrs
each 3rd degree.

2. Please list any other petitions you have filed in the New Mexico Supreme Court challenging this conviction *(please include docket numbers and dates):*

d-0905-CR-2007-00454

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

3. **Tell the story of what happened in your court case:**

Got into An Argument and Fought
and my moms boyfriend died
I was high on MArijuana, mentally
Ill, drunk on Alchivol, and my trial
lawyer told me Not to Say I was drunk
I was Also told I was A little bitch and
threatened by Counsel to Not Help me
Because I'd Not take plea As He wanted He
was Not IN my Best interest He did Not
want to go to trial. I did It was Not
premeditated

**BASIS FOR GRANTING THIS PETITION FOR WRIT OF CERTIORARI TO THE DISTRICT COURT**

The decision of the district court on my petition for writ of habeas corpus, filed pro se, raises significant questions of law under state and federal constitutions: whether the errors below deprived petitioner's rights guaranteed by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments and by New Mexico Constitution, art. II, §§ 13, 14, 15, and 18.

**ARGUMENT**

*(Describe your legal claim and cite the law (cases, statutes, constitutional sections) that supports your position. Use plain language.)*

POINT 1:

Ineffective Assistance at trial and

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

On appeal / Sixth amendment violation
But that for counsels unprofessional
Errors, the result of the proceeding
would have Been different. Conflict of
Interest irreconsiable, Before trial
and after I Fired him in court

POINT 2:

Counsel told me I was A stupid
Little bitch, and if I keep insisting to
Go to trial He would not provide
effective assistance. To Either plead
Guilty or go to trial with
Ineffective assistance. CASE.
Daniel Gustavo Ferrel V. United States on Tr
as 18 F3d. 778. 9 m cir 1994
POINT 3:
Dale Skell US Jerry Welch cannon
bill locker cite 718 F3d. 1017 9m cir 2013
Willson v. mistres cite as 761. F2d 275
(1985)

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

Appelate counsel ineffective Faling
to argue to Sentencing and I assured
lawyer in record to call all maxie
Swets and she was not called Ant refusal
to call witness extion info on other swets
*(Attach additional sheets, if necessary.)*
She would of testified I was sexuly counsel
by victim Robella  REQUEST FOR RELIEF  capacity Insanity defens
I am mentally Ill lack of

Defendant-petitioner requests that this Court issue its writ of certiorari to the district court, and:

(W) remand to the district court for a full hearing on the petition, OR

(W) reverse the conviction, OR

(W) remand to the district court to correct the sentence, OR

(W) (other) _TO_ grant assistance of post conviction
public defender assistance

Petitioner asks this Court to grant such relief as may be appropriate. As required by Rule 12-501 NMRA, I am
filing only the original copy of this petition and I have attached the following:

(W) a copy of my petition for writ of habeas corpus filed in district court, AND

(W) a copy of the state's response, if one was filed, AND

(W) a copy of the district court's order.

(W) I have not attached the required documents because
I am trying to do my best

my hearing on
march 24th 2017 april 25th 2017
was lost by
OFFICIALS
PRISON
moved me to
New unit seg was
my fault
documents lost,

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

and ask the Supreme Court to accept this petition without the attachments.

Respectfully submitted,

---

Defendant-Petitioner, pro se

I hereby certify that a copy of this petition was mailed to the Attorney General's Office, P.O. Box 1508, Santa Fe, New Mexico 87504-1508 on this _27_ day of _June 2017_

---

Defendant-Petitioner, pro se

Credits

[Adopted effective Dec. 31, 2014.]

NMRA, Form 9-702, NM R CR Form 9-702
State court rules are current with amendments received through July 1, 2015.

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

*I recieued dismissal*
*OF petition June 5th 2017*
*Its timely sent*

FORM 9-704. ORDER OF APPOINTMENT FOR HABEAS..., NM R CR Form 9-704    S-1-SC-36599

# Exhibits

| West's New Mexico Statutes Annotated |
| State Court Rules |
| 9. Criminal Forms |
| Article 7. Special Proceedings |

NMRA, Form 9-704

## FORM 9-704. ORDER OF APPOINTMENT FOR HABEAS CORPUS PROCEEDINGS UNDER RULE 5-802 NMRA

Currentness

[For use with District Court Criminal Rule 5-802 NMRA]

STATE OF NEW MEXICO

COUNTY OF Curry

4m _____ JUDICIAL DISTRICT COURT

Abelto Ramies

,................................................................

Petitioner,

v.

Warden German Franco

,......................................................

Respondent.

SUPREME COURT OF NEW MEXICO
FILED

JUN 27 2017

No. ........................................................

## ORDER OF APPOINTMENT FOR HABEAS CORPUS PROCEEDINGS UNDER RULE 5-802 NMRA

This matter having come before the court, and the court being fully advised of the circumstances;

THE COURT FINDS THAT:

[W] the petitioner is incarcerated; or

[W] the petitioner is not incarcerated, and is indigent and unable to obtain counsel; and

[W] This is a proceeding which a reasonable person would bring at that person's own expense.[1]

IT IS THEREFORE ORDERED THAT:

[W] the Public Defender Department is hereby appointed to represent the Petitioner in the above-entitled cause without payment of the application fee.

[W] the Public Defender Department, shall appoint an attorney on contract with the department represent the petitioner based on the conflict memorandum reviewed by the court or as disclosed at a status conference with the court.

[W] petitioner's counsel shall file an amended petition or a notice of non-intent to file an amended petition within ninety (90) days of the date of the filing of this order.

------------------------------------------------------------------------------------------

(
*District Judge*
)

### USE NOTE

If the Public Defender Department is appointed, the clerk of the district court shall mail a copy of this order and a copy of the pro se petition to the Post-Conviction/Habeas Division, Office of the Public Defender, 505 Marquette NW, Ste. 120, Albuquerque, NM 87102.

**Credits**

[Adopted effective Dec. 31, 2014.]



FORM 9-704. ORDER OF APPOINTMENT FOR HABEAS..., NM R CR Form 9-704

Footnotes

1

Under the Indigent Defense Act, a person has the limited right to appointed counsel representation in post-conviction matters "unless the court in which the proceeding is brought determines that it is not a proceeding that a reasonable person with adequate means would be willing to bring at his own expense" NMSA 1978, § 31-16-3(B)(3) (1968). Therefore, the Public Defender may not be able to represent a petition in all cases.

NMRA, Form 9-704, NM R CR Form 9-704
State court rules are current with amendments received through July 1, 2015.

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

FORM 9-705. PROCEDURAL ORDER ON PETITION FOR..., NM R CR Form 9-705

| West's New Mexico Statutes Annotated |
| State Court Rules |
| 9. Criminal Forms |
| Article 7. Special Proceedings |

NMRA, Form 9-705

FORM 9-705. PROCEDURAL ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

Currentness

[For use with District Court Criminal Rule 5-802 NMRA]

STATE OF NEW MEXICO

COUNTY OF ___Curry___

___9th___ JUDICIAL DISTRICT COURT

,Brida Dewley                          No. D-0905-CC 2007-
                                              0004134

Petitioner,

v.

Warden German Franco

Respondent.

## PROCEDURAL ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

This matter having come before the court on petitioner's petition for a writ of habeas corpus or other pleading pursuant to Rule 5-802 NMRA of the Rules of Criminal Procedure for the District Courts, the court having reviewed the record and being otherwise fully advised in the premises, FINDS AND ORDERS THAT:

### 1. *SUMMARY DISMISSAL/TRANSFER OF VENUE*

[W] This matter is transferred because of improper venue to the _____ Judicial District Court.

[W] This matter is summarily dismissed because as a matter of law petitioner is not entitled to relief based on a review of the files, pleadings, and records which show that: (*statement of reasons required*)

FORM 9-705. PROCEDURAL ORDER ON PETITION FOR..., NM R CR Form 9-705

_____

.........................................................................................

.........................................................................................

.........................................................................................

.........................................................................................

.........................................................................................

.........................................................................................

**2. *RETURN OF PETITION FOR FURTHER INFORMATION*:**

[W] The petition is returned to petitioner for additional information on the following issues/claims: ...........................

.........................................................................................

.........................................................................................

.........................................................................................

.........................................................................................

.........................................................................................

Pursuant to Rule 5-802(G) NMRA, a revised petition shall be filed within forty-five (45) days after service of this order.

**3. *FREE PROCESS AND APPOINTMENT OF COUNSEL*:**

[W] Petitioner is granted permission to proceed *in forma pauperis* based on Form 9-403 NMRA or because petitioner is an inmate of a correctional facility.

[W] Petitioner is not granted permission to proceed *in forma pauperis*.

FORM 9-705. PROCEDURAL ORDER ON PETITION FOR..., NM R CR Form 9-705

[W] The Public Defender Department is appointed to represent petitioner based on the court's finding that this is a proceeding which a reasonable person would bring at that person's own expense. Upon being properly appointed, the Public Defender Department shall either file an amended petition or a notice of non-intent to file an amended petition within ninety (90) days of this appointment.[2]

4. RESPONSE:[3]

[W] The respondent is directed to file a response within one-hundred and twenty (120) days after the service of an amended petition or a notice that no amended petition will be filed.

[W] The court, having received an amended petition or a notice that no amended petition will be filed, and based upon a review of the files, pleadings, and records, including the amended petition, hereby summarily dismisses the petition. (*statement of reasons required*)

........................................................................................................................................................

........................................................................................................................................................

........................................................................................................................................................

........................................................................................................................................................

........................................................................................................................................................

........................................................................................................................................................

........................................................................................................................................................

........................................................................................................................................................

........................................................................................................................................................

........................................................................................................................................................

........................................................................................................................................................

FORM 9-705. PROCEDURAL ORDER ON PETITION FOR..., NM R CR Form 9-705

..................................................................................................................

..................................................................................................................

[W] The court, having received an amended petition or a notice that no amended petitioner will be filed, and based upon a review of the files, pleadings, and records, including the amended petition, hereby dismisses the following claims:

*(statement of reasons required)*

..................................................................................................................

..................................................................................................................

..................................................................................................................

..................................................................................................................

..................................................................................................................

..................................................................................................................

..................................................................................................................

..................................................................................................................

..................................................................................................................

..................................................................................................................

AND

orders a response from respondent on the following claims:

..................................................................................................................

FORM 9-705. PROCEDURAL ORDER ON PETITION FOR..., NM R CR Form 9-705

................................................................

................................................................

................................................................

................................................................

................................................................

................................................................

................................................................

................................................................

................................................................

**5. HEARING SCHEDULE:**

[W] A status conference will be held on _____ (*date*), at _____ (*time*).

[W] A preliminary disposition hearing will be held on _____ (*date*), at _____ (*time*).

[W] An evidentiary hearing will be held on _____ (*date*), at _____ (*time*).

[W] An evidentiary hearing is not required, but legal argument will be heard on this matter on _____ (*date*), at _____ (*time*).

................................................................

(
*District Judge*
)

USE NOTE

**Credits**

[Adopted effective Dec. 31, 2014.]

FORM 9-705. PROCEDURAL ORDER ON PETITION FOR..., NM R CR Form 9-705

Footnotes

1
  Paragraph 1 should only be used prior to the appointment of counsel and before the filing of any amended petition.

2
  *See* NMSA 1978, § 31-16-3(B)(3) (1968).

3
  After receiving the amended petition or notice that no amended petition will be filed, the court will then decide if a
  response will be ordered, and whether a status conference, a preliminary disposition hearing, or evidentiary hearing
  are required, and will send the parties notice. Paragraph 5 should be used when ordering a response at the time of
  appointment of counsel or after reviewing the amended petition or notice that no amended petition will be filed.

NMRA, Form 9-705, NM R CR Form 9-705
State court rules are current with amendments received through July 1, 2015.

**End of Document**                                     © 2015 Thomson Reuters. No claim to original U.S. Government Works.

DENIZER

Page: ____

THESE PAGES ARE part
OF the NEW HABEAUS
Petition facts to try
Get a NEW decision
based on additional facts
Please clerk let me
KNOW IF I did Not
mail all papers. IN Form
G-701. and please respond

NEW                    1-12
motions
without facts

DEAR COURT CLERK, And
JUdGE dREW tatum, IVE
Filed MOtious I dou+
KNOW what IS correct to
decide ON NEW PETITION ON
Submissia OF Nsw cadltionac
Facts. I NSSd A rESPONSE
Immediatly. I owy have 1
ONE week to File Cert Petitim
I RequCst CSSistANee OF COWSEL
ON post CONUECtiON PEASE ore ThaNS

PIEASE rESpONd ASAP I
ONiY haus 7 days. TO KNOW
if you will grant My MOTiON
My REaucs+. GOd BIESS.
                              AIBErt
                              RAMIrez
        Keep IN ordeR

DEAR. CLERK. THE library OFFicer WHO Made Copies ~~~~ He threw AWAY lots OF important EXIBITS. Facts I wrote. I had NO time to add. its a missing pages. Also CLERK, papers were missing to the D.A. NiNth Judical district court And to WARDEN germon Francs Because library offier clerk did NOT Move the copies I asked FOR. Missing was. pages 9 out OF. Form 9.704. N.M. R.cr. Form 9.704 And. Form 9.705. N.M. R.cr. Forma705 Also pages for the Form 9.705 12-18 And 18 to 32 pages. I am sorry. its not My fault, its The prison StAFF, I will send them asap. I APPRECIATE Your time, + HElP Good Bless you ALL Im very Grateful Thanks

AlBert RAmirez

DEAR cout clerk
I am Alberto Ramirez
I asked The prison law
library to make copies He
lost a papers of mine
and did Not make copies of
everything I told him to do
The Acbeaus packet form q-701
petition for writ of Habeaus q-701
corpus , N.M.R. CR. Form q-701
west:s . New Mexico statues annonter
1. crimal forms.
critice 7. special proceedings

TO: COURT CLERK, Judge drew tatum d.A., WARDEN FRANKO, Att. Genrel SUMPREME Court, Fed. Court. All whom cavern

I DID Not do Not Know how to properly present facts to court in PETITION. I Requested AN ATTORNEY For post conviction to HELP ME. I ask to PLEASE consider I am pro se I am NO lawyer. I ONly HAVE 4th grade education level. AlSO my Hebeus's I sent. 3.22.17 / 4.25.17 Were dismissed, My copy's were lost by prison OFFICIALS, WHEN I was placed INto protective coustody. 5.31.17. I Became aware of lost Hobeas On. 6.1.17 when released to another unit. En Prison. PLEASE SEND ME copies court CIERK, Judge, da. Puble defudes office, I have to send copys of it with cert petiont to Santa Fe Suprime court. I am so scared I NEED HELP. MERCY all the Kindness I can GET. PLEASE Respond ASAP I only have like 7 days left to Send all PAPERS. HELP ME

TO: Judge drew tatum.
2nd court clerk.
Please send me a
response ASAP. For
the motions + Reconsider petition REVISE petition
Resubmit petition / Amend petition / I only
have like one week to
file certeorai petition with
Supreme court. I need a
response immediatly please
I am asking for help.
I am pro se, I have
no assistance I
am lost what to do.
I am innocent.

Motion to Resubmit PETITION And decide based on additional facts and in light of submission of New Facts. To properly present claim OF INEFFECTIVE assistance OF COUNSEL *at trial* And on APPEAL. Thank you very much

Motion to Amend
PETITION And To decide
and to PRESENT or Submit
New additionel facts
Not KNOWN. I did
Not Know how to
prove my claim of
INEFFECTUE assistance
of COUNSEL.
I Dont Know how to ask
court to decide petition
on additional FACTS
I AM INNOLENT

Motion to Amend petitition
Based on new facts, IN
light of submission of
additionel facts. I did
Not Know how to propely
present claim.
please And Thank you

MOTION TO Reconsider
THE decision BASED ON
NEW, 2nd IN light
OF Submission of
additional facts. TO
Properly present claim of
INEFFective assistance
OF Counsel at TRIAL +
Appelate COUNSEL.

BASES ON NEW
PETITION.

Please Thankyou

Motion to Revise ~~and decide~~

NEW PETITION, TO Submit in light OF NEW facts and additional submission facts INFORMATION. I did not know How to Present Facts to Prove CLAIM ON ineffective ASSISTANCE OF trial + Appellate counsel.

I am INNOCENT.

Motion to REVISE Petition Revd in light OF Submission OF NEW additional Facts To support and properly present claim OF INeffect assistance of COUNSEL.

Thank you

— MOTION —

PETITION FOR DISCRETIONARY
REVIEW BEFORE THE HIGHEST
STATE COURT.

I'VE ASKED LAW LIBRARY
IN THE PRISON PNM SOUTH
PENITENTIARY OF NEW MEXICO
I'VE ASKED OTHER INMATES.
NO ONE KNOWS WHAT IS
A PETITION FOR DISCRETIONARY
REVIEW

PETITION FOR DISCRETIONARY
REVIEW.

TO THE courts and all people to know why I am trying to get An attorney to assist, To get my habeaus granted, I am physically crippled, mentally ill, some morphine, PTSD, and from Sex couse, step dad neisor, I had doctors, FAMILY MEMBERS, myself who should say I wasSEX abused on record, the court said No, Cosby failed to do his job I was seen shackled And Fall by Jury it was the courts fault and sheriff doccerty. I did not Fall verbally. ME And told me to say I did not Fall Here Said No, And Cosby said its Fell I Chandler Said No, Harpley sram me fall He owned it, seen him Fall, I said yes, then seen And asked did you Fall, 100king mean Gesturing No, and Stericf doccerty Finger No and mouthing No, shacking Heard one SEEN and let Her manipulate Chandler Myrtis and did Not allow me me, to dery my mistrial, and Eneed, It was double Jeopardy. THE gourment lied, did Something to BenEFit the gourment themselves I Should Be Free All charges dismissed, (wrong) at very least a New trial, This is worse In Justice All ovES, I thought court people And christians told the truth And the cops obeyed the law, they committed Obstruction of Justice. They got away with sending innocent people to prison. No Fair trial Nothing right GO TO PaGE two with

I need someone in the justice process to help me. I dont deserve to be wrongfully convicted, I am a victim of a corrupted, evil system of liars and cheaters, the detective mislead witness investigations, to try to get a first degree conviction, the Las Vegas, hospital dont give me a proper exam because I was assaulted by employer and I was found suc LUBH dr. Bunoss lied / I do have facts documents to show detectives misleaed witness, its just to much papers to show I told cosby that and he never listened or advised me in person, only says what he wants on record to cover his butt, thats why none of them let me speak on record.

There's no justice for mr. Ramirz what if I have showed to the cout an altered secial is true. Nobody cares I am one of the many humans in prison wrongfully convicted, injustice, I just wrote this to let the people in the courts to know.

I wish you all everyone all the best and your familys God will bless you all.
Thank you

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

> West's New Mexico Statutes Annotated
>> State Court Rules
>>> 9. Criminal Forms
>>>> Article 7. Special Proceedings

NMRA, Form 9-701

## FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS

Currentness

*[For use with District Court Criminal Rule 5-802 NMRA]*

STATE OF NEW MEXICO

COUNTY OF ....CURRY....

IN THE DISTRICT COURT

*For Official Use Only*

No. _____

*(To be supplied by the clerk of the court)*

ALBERT RAMIREZ

,......................................

*(Full name of prisoner)*

Petitioner,

v.

WARDEN GERMAN FRANCO

,......................................

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

*(Name of warden, jailor or other person having*
*power to release the petitioner)*

Respondent.

*Instructions -- Read Carefully*

Make sure that all information provided in this form is true and correct. Make sure that all necessary documents are attached, or explain why the documents are not being included. If you are currently incarcerated, you may file the petition without payment of the filing fee. If you are not incarcerated and are seeking free process, complete Form 9-403.

Finally, you must complete the certificate of service and mail or otherwise serve copies of this petition on the respondent and the district attorney in the county in which the petition is filed. You must file the original petition and one copy with the Clerk of the District Court. You should keep a copy for your own records.

## PETITION FOR WRIT OF HABEAS CORPUS[1]

1. _ALBERT RAMIREZ_ (name of person in custody) is imprisoned or otherwise restrained at _PNM Penitentiary of New Mexico_ (name of facility and county of detention) by _Warden Germán Franco_ (name and title of person having custody).

2. This petition

[W] seeks to vacate, set aside or correct an illegal sentence or order of confinement (i.e., ineffective assistance of counsel, illegal search and seizure, involuntary confession, or other matters relating to the trial or sentence the confined person received).

[W] challenges confinement or conditions of confinement or matters other than the sentence or order of confinement. (*This applies only to matters arising after the confined person arrived at the institution, i.e., county jail confinement, mental hospital confinement, detention facility confinement, good time credit, misconduct report, prison due process violation or parole*).

3. State concisely the facts upon which the confined person bases the claim:

INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL
AND APPEALS COUNSEL ON APPEAL ⟶

2

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

I tried to speak to speek i to no Avail + inccessible conflict.

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

COUNSEL MR. COSBY BEFORE TRIAL BEGINS AND AFTER I TRIED to FIRE HIM IN FRONT OF JURY did VERBALLY ASSAULT AND Made threats Stated. STUPID little Bitch I promise to be inEFFECTIVE assistance if you KEEP SAYING you want to GO to trial as if insisting I Hope you Sure iiFe

4. State concisely the grounds and law, or other legal authorities on which the confined person bases the claim:

(I don't KNOW WHAT THIS MEANS. SIC)
Ill Try 2. ITS A constitutional Right to EFFECTIVE ASSISTANCE At trial + ON Appeal
IVE WROTE ON Extra Sheets OF PAPERS TO EXPLAIN. SOME FACTS BEST AS I CAN + EXBits + Evidence Allegations

5. Have the grounds being raised in this petition been raised previously in your direct appeal? If so, explain the result. If not, explain why not:

YES I WAS Told APPEAL WAS denied to File A HABEAUS PACKET. NOW HERE IS the HABEAUS.

6. Have the grounds raised in this petition been raised previously in another petition for a writ of habeas corpus? If so, explain the result. If not explain why not:

I Raised THIS ISSUE IN FICST HABEAUS. NOW this ONE IS TO Resubmit it AND FIX it.

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

7. Briefly describe the relief requested:

TO BE APPOINTED ASSISTANCE FROM
Public difencee post conviction d, vision
to assist ME TO GET AN Evidentary
HEAring toprove the Allegations ARTUK

8. State the nature of the court proceeding resulting in the confinement (*i.e., criminal prosecution, civil commitment, etc.*), including:

(a) case name:

D-0905-CR-2007-00434 IM NOT SURE

(b) docket number:

D-0905-CR-2007-00434 Dont KNOW

(c) name of judge:

TEddy. L. HARTLEY

(d) name and location of the court in which the proceeding was held:

700. N. MAINST
9th Judicial district Court

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

9. State the date of the final judgment, order or decree for confinement:

JANUARY 8th 2014.

10. Attach a copy of the judgment, order or decree. If not, describe your sentence.

Life eligibility After 30 yrs plus two 3yrs
two tempering with Evidence.
1st degree Murder
2 tempering w/Evidence

11. Was the conviction the result of:

___ Guilty plea

___ No Contest plea (*nolo contendere*)

✓ Finding of guilty by judge or jury

12. Was the confined person represented by an attorney during the proceedings resulting in the confinement?

✓ Yes

_____ No

13. If you answered "yes" to (12), list the name and address of each attorney who represented the confined person:

JESSE, R, COSBY

P.O. BOX 3330

14. Did you appeal your conviction?

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

✓___ Yes *(Go to 15)*

___ No *(Go to 16)*

15. If you answered "yes" to (14), list:

(a) The name of each court to which an appeal was taken:

9th Judicial District Court.

New Mexico Supreme court of appeals.

(b) The case name and docket number for each appeal:

(Dont Know How to do this.)

(c) The date each appeal was filed and decided: *(Attach a copy of each opinion or order)*

Filed Sometime Around August 2013.

Dec 1st 2016.

(d) A summary of the grounds upon which each appeal was based:

Competency Reevaluation, Ineffective assistance

of counsel, Improper comments on Silence, prosecutor

misconduct, Prior bad acts

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

(e) The result of each appeal:

denied.

(f) The name and address of the attorney on appeal:

STEVEN J. FORSBERG
505. Marquette N.W 87102
505. 796. 4405

16. If you answered "no" to (14), state the reasons for not appealing:

17. Apart from any appeals listed in (15), have any other post-conviction applications, petitions or motions, been filed with regard to this same imprisonment or restraint?

✓ Yes *(Go to 18)*

___ No *(Go to 19)*

18. If you answered "yes" to (15), list with respect to each such petition or motion:

(a) The type of proceeding: petition Habeas, denied But I've put an motion to Recons. etc, amend, revised petition decision

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

petition Habeas, But This one is to
Resubmitte it to try to do it propily

(b) The name and date of each case:

9th Judical distnct court, State Of y.Mex. v. Abst
Ramiree

(c) the docket number:

NOD - 0905 - CR - 2007 - 00454

(d) the court, the administrative agency, or institutional grievance committee from which relief was sought:

NA

(e) the result of each proceeding. (*Attach a copy of each decision.*)

denied,

(f) The issues raised in each proceeding:

iNeffectiue assistance of causel,

(g) State whether a hearing was held in connection with each of these proceedings:

NO

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

(h) State whether the confined person was represented by an attorney in each proceeding and, if so, the attorney's name and address:

NO

19. Do you seek the appointment of counsel to represent you?

✓ Yes

___ No

## VERIFICATION

STATE OF NEW MEXICO

COUNTY OF SANTA FE

I, the undersigned, being first duly sworn upon my oath, state that I am the petitioner in this action. I have read the foregoing petition and know and understand its contents, and the information contained herein is true and correct to the best of my knowledge, information and belief. On _____, ___ (date), I deposited this petition in the internal mail system of the institution in which I am confined, properly addressed with any necessary postage prepaid, for forwarding to the district court at the following address:

9th Judicial District Court (name of court)

Clovis (city), New Mexico, 88101 (zip code).

( Signature ) AlBERT JOSE RAMIREZ

( Address ) P.O. BOX 1059 SANTA FE 87501

PNM No., if applicable

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

9

*NOTORIZE PLEASE*

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

SUBSCRIBED AND SWORN TO before me this _12_ day of _June 17_ by

...............................................................................................

*(Name of petitioner)*

_ALBERTO RAMIREZ_

.............................................................................................
Notary Public

My Commission Expires: _4/23/2019_

## CERTIFICATE OF SERVICE

I hereby certify that true copies of the foregoing petition were served upon the respondent and the district attorney in the county in which the petition is filed by _MAIL_ *(describe manner of service)*, this _13_ day of _June, 2017_

.............................................................................................
(
*Signature of petitioner* _ALBERTO RAMIREZ_
)
**USE NOTE**

Credits

[Adopted effective Aug. 1, 1989. Amended effective May 6, 2009; Dec. 31, 2014.]

Footnotes

1   After this petition is reviewed by the Court, the Court will enter the order granting or denying the writ or ordering a response before further action. The order shall be prepared by the Court.

2   Petitioners who are incarcerated at the time of filing the petition need not file a motion for free process and may file the petition without payment of the applicable filing fee. *See* Rule 5-802(D)(2) NMRA

NMRA, Form 9-701, NM R CR Form 9-701
State court rules are current with amendments received through July 1, 2015.

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

**End of Document**

WestlawNext® © 2015 Thomson Reuters. No claim to original U.S. Government Works.

☐ CNMCF/CMRU/CMU
P.O. Drawer 1328
Los Lunas, NM 87031

☐ GCCF
P.O. Box 520
Santa Rosa, NM 88435

☐ LCCF
6900 W. Millen Dr
Hobbs, NM 88244

☐ PNM
P.O. Box 1059
Santa Fe, NM 87504

☐ SNMCF
P.O. Box 639
Las Cruces, NM 88004

☐ SNMCF-POU
P.O. Box 20005
Las Cruces, NM 88004

☐ WNMCF
P.O. Drawer 250
Grants, NM 87020

☐ NENMDF
185 Doctor Michael Jenkins Rd
Clayton, NM 88415

Name _____

No. _____ Unit _____

Start

Date: _____

All these pages are
part of old petition that
was denied and no
lawyer to assist denied

Start to
2nd tarded
A.B.C.d.E            3.22.17
                     4.25.17
copies of
my other Habeas's
were lost by prison officials

*Steven Freeburg*

A true copy was served on all parties
or their counsel of record on date
filed.

*Joey D. Moya*
Chief Clerk of the Supreme Court
of the State of New Mexico

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

## MANDATE NO. S-1-SC-34576

TO THE DISTRICT COURT SITTING IN AND FOR THE COUNTY OF

CURRY, GREETINGS:

DECEIVED
JAN 1 2 2017
AFTER HOURS ON
PUBLIC DEFENDER DEPT.

WHEREAS, in causes numbered D-905-CR-2007-00434 on your criminal

docket, wherein State of New Mexico was plaintiff and Albert Jose Ramirez was

defendant, the district court entered judgment convicting defendant of willful

and deliberate first-degree murder and tampering with evidence; and

WHEREAS, the cause and judgment were afterwards brought into this

Court upon notice of appeal and statement of issues filed by defendant,

whereupon such proceedings were had that on December 1, 2016, a decision was

issued affirming defendant's conviction.

NOW, THEREFORE, this cause is remanded for further proceedings, if

any, consistent and in conformity with the judgment of this Court.

IT IS SO ORDERED.

WITNESS, Honorable Charles W. Daniels, Chief Justice
of the Supreme Court of the State of New Mexico, and
the seal of said Court this 11th day of January, 2017.

(SEAL)

Joey D. Moya, Chief Clerk of the Supreme Court
of the State of New Mexico

☐ CNMCF/CMRU/CMU
P.O. Drawer 1328
Los Lunas, NM 87031

☐ GCCF
P.O. Box 520
Santa Rosa, NM 88435

☐ LCCF
6900 W. Millen Dr.
Hobbs, NM 88244

☐ PNM
P.O. Box 1059
Santa Fe, NM 87504

☐ SNMCF
P.O. Box 639
Las Cruces, NM 88004

☐ SNMCF-POU
P.O. Box 20005
Las Cruces, NM 88004

☐ WNMCF
P.O. Drawer 250
Grants, NM 87020

☐ NENMDF
185 Doctor Michael Jenkins Rd.
Clayton, NM 88415

Name _____

No. _____ Unit _____

*Exhibits Counsel Ineffective Cost*

*Mr Cost*

QUESTION #3 AND 4 IN HABEAS PACKET Date: _____

This was irreconcilable conflict

COUNSEL at trial ✓VERBALLY ASSAULTED I MR RAMIREZ
STATING I AM A Stupid little Bitch And KICKBACK And
PROMISED TO BE INEFFECTIVE IF I MR Ramirez
CONTINUED TO INSIST ON going TO Trial rather
than ~~plead~~ plead guilty as counsel insisted. I Hope
And threatend Me Ramirez by saying I Hope
you Get life. Counsel would Not communicate
with I MR Ramirez as I tried to No avail.

COUNSEL WOULD NOT file motions for change of
VENUE even though There was Extensive media
that was incommissible, saying Me Ramirez
Threatned to Kill His Mother and Step Father
and His Mother Kicked him out due to
His violent tendencies.

COUNSEL would Not Supress Evidence that I was
Hiding in Car As they Found top words toing
of Shooting people.

MR COSBY would NOT call dR. Maxann Swartz to
testify for the defense of inability to perform
Specific intent due to Mental illness. Severe deppression
anxiety, schizoprenia paranoia and my competency
to Stand trial.

I WANTED to have Jury instruction on the issue of
competency Rule 5-602 (B)(2)(B) And refused to
object to instruction I asked him to.

I also told counsel I did fall down when
Sheriff called Me To talk to him and I was
coerced into saying No by sheriff directly And
gestured behind my lawyes back to say NO I
asked him to request a mistrial to No avail
THE Jury seen Me shackled I told MY
lawyer to request A Mistrial sheriff also
told Me to say I did not fall Or
... is to insult the State.

Ⓑ

☐ CNMCF/CMR-U/CMU P.O. Drawer 1328 Los Lunas, NM 87031

☐ GCCF P.O. Box 520 Santa Rosa, NM 88435

☐ LCCF 6900 W. Millen Dr. Hobbs, NM 88244

☐ PNM P.O. Box 1059 Santa Fe, NM 87504

☐ SNMCF P.O. Box 639 Las Cruces, NM 88004

☐ SNMCF-POU P.O. Box 20005 Las Cruces, NM 88004

☐ WNMCF P.O. Drawer 250 Grants, NM 87020

☐ NENMDF 185 Doctor Michael Jenkins Rd. Clayton, NM 88415

Name _____

No. _____ Unit _____

Date: _____

counsil

MR COSBY refused to address court and request a mistrial which if raised issue probably start trial over if lawyer had done a better job of protecting my rights

Also witness Pricella lopez and Ricky Jaramillo eye witnesses would of testified that I am real skinny and helped prove I was the one being chased in yard and that detective was mis leading witnesses.

Counsel at trial failed to call de Fink as a witness at trial as I asked. de Fink would of testified that I was not competent and mentally ill

I asked counsel to call de Joan Business to cross examine.

I asked counsel to investigate mental illness defense as I have family history of mental illness + intoxie history e-d drugs.

I did express disatisfaction with counsel and the court failed to inquire into the matter.

counsil

1. MR COSBY promised if I testified I would be able to speak of sexual abuse by Nichor and my moms boyfriend He lied to incriminate me.

If counsel did not lie I would not have testified and trial may have been different togather these errors all the prejudice I'd be entitled to a new trial.

Counsil at trial failed to give me the entire discovery and did not discuss any of the case with me. Becuz I wouldn't take plea.

Ⓒ

☐
CNMCF/CMRU/CMU
P.O. Drawer 1328
Los Lunas, NM 87031

☐
GCCF
P.O. Box 520
Santa Rosa, NM 88435

☐
LCCF
6900 W. Millen Dr.
Hobbs, NM 88244

☐
PNM
P.O. Box 1059
Santa Fe, NM 87504

☐
SNMCF
P.O. Box 639
Las Cruces, NM 88004

☐
SNMCF-FOU
P.O. Box 20005
Las Cruces, NM 88004

☐
WNMCF
P.O. Drawer 250
Grants, NM 87020

☐
NENMDF
185 Doctor Michael Jenkins Rd.
Clayton, NM 88415

??

Name _____

No. _____ Unit _____

Date: _____

Counsel did not call Isreal ramirez who would of
testified Robledo hit me and was violent when
I was 13 and he fought robledo

also jose Ramirez would testify Robledo was
aggressive violent + attacked him everytime
He tried to go see me

Counsel failed to get medical records evidence
to show I was physically involed at time of
crime.

Their was a complete Breakdown in communication.

I want the court to know I asked twice on
record to speak to show I timely moved for
removal of counsel, But the court refused to
let me say anything about conflict Between
I and counsel.     trial
                    WHAT
I tried to put in record after trial counsel said
cafter I tried to fire him.
Court refused to inquire into it
If the court had Id of got a New attorney or
a mistrial
+ asked to represent myself.

I was denied my Sixth admendment right to
effective assistance of counsel.

I ask for an Evidentiary Hearing to now allow
me to speak on record

              Thanks very much

☐ CNMCF/CMRU/CMU  P.O. Drawer 1328  Los Lunas, NM 87031

☐ GCCF  P.O. Box 520  Santa Rosa, NM 88435

☐ LCCF  6900 W. Millen Dr.  Hobbs, NM 88244

☐ PNM  P.O. Box 1059  Santa Fe, NM 87504

☐ SNMCF  P.O. Box 639  Las Cruces, NM 88004

☐ SNMCF-POU  P.O. Box 20005  Las Cruces, NM 88004

☐ WNMCF  P.O. Drawer 250  Grants, NM 87020

☐ NENMDF  185 Doctor Michael Jenkins Rd.  Clayton, NM 88415

Name _____   Unit _____

No. _____

Date: _____

INEffective assistance of appilate counsel
saying in my appeal I abandoned to
show counsel at trial was inneffective it
shows on record I asked to call
dr. Maxine Swartz ont was denied,
rabey I would of gotten an
evidentary Hearing on appeal
also Hedid not argue I did not recieve
a fair sentincing ont duoble jeopardy
on tempring with Evidence.

I ask for an Evidentary Hearing
to show the true facts, not Able
to write all the facts.
thir is Alot more.
I want to make a proper
record.

THE WAY TO USE THE EXIBITS WITH THE ISSUES I claim + present. JUST GO TO page and OR EXIBIT OR Both. I am Not A lawyer, I had no more paper to make it Nice+ NEAt. I had to send it Out asap. + copies+ ALL. IM Being Isnored by law library IN Prison.

PLEASE. EXCUSE MY MISTAKES. I TRIED MY BEST.

EXIBITS ISSUES FACTS

FACTS + transcript, need per-
discovery, to prove claim of
INEFFECTIVENESS counsel
                                    SEE EXIBIT 4,5

MR. COSBY COUNSEL TRIAL DENIED
and FAILED to PROVIDE EFFECTIVE
ASSISTANCE.

        A WEEK BEFORE TRIAL
I ASK TO FIRE MY ATTORNEY
DURING TRIAL IN COURT I
FIRED MY ATTORNEY. EACH TIME
THERE NO INQUIRE INTO WHY
I WAS EXPRESSING DISSATIFACTION
I WAS TOLD twice by MR
COSBY BEFORE TRIAL STARTED
and AFTER I TRIED to FIRE
HIM IN COURT DURING TRIAL
COSBY Stated- I AM A little
Stupid Bitch and made
threats, by SAYING I Hope
you GET life, I already told
you to take the plen or you
WONT be provided EFFECTIVE
ASSISTANCE OF COUNSEL.
I WAS NOT able to put the
allegations on RECORD. page 1, 2, 3,4, 5
But SEE ExiBit's (10) page 38-47
                        (10)

THIS IS
PAGE 0

page 2.

See Exibit 0 Page 47 page 53, 54, 55, 59, 54
Exibit 13    (Page 2)

I TRIED to address court My lawyer was not Filing Any of my motions I Asked him to, Change of venue, Even though there was pre-trial publicity concerning the case in small community of cbus, New mexico. Some of this publicity inaccuratly described Mr ramirez as having attacked alleged victim on prior occassions, The publicity was inaccurate and highly prejudical And defense cowsel should have at least raised the issue and requested a Hearing. SEE Exisit.

Exibit 13

Cowsel Should have at least Fied a Motion to suppress evidence that was illegauy siezed & INadmissible and highly prejudical SEE Exibit 11, or requested A Hearing on this issue

See 11 Exibit page 48 49 50

Cowsel did Not provide me with all discovery, would not discuss who He was planning to call as witnesses And would not discuss intent to present the defense of Insanity Cowsel did Not File a Notice of Intent to present the defense Exibit 1) page - 1, 2, 3, 4, 5

See page 3, 4

page-3

page 5

EXBIT 1, 3, 10 page 4, 10, 12, 13
                        page 47

INSANITY, But INSTEAD OF advocating
Zealously on BEHALF OF I Mr ramirez
defense, counsel INFormed the
Court that HE would Not be presenting
Expert psychatrist, or physician,
Because Mr. Ramirez wont discuss
the CASE with him and is unable
to assist in the defense.
COUNSEl Failed to ALERT the court
to important facts in arguing
the CASE. MR RAMirez was
INJURED IN an accident in 2007
Which he Began taking anti-
depressant medication, & other
medications, this Became severe
depression as he was unable
to walk, work, or drive, could
only walk with crutchis, suffered
From psychosomatic delusions,
Hallucinations, and counsel did not
present Evidence of the medication
Mr Ramirez was taking.
Mr. Ramirez Felt his lawyer was
against him, SEE page 4, 10, 12, 13
EXBIT 1, 3,

page 4

SEE EXIBIT 1, page 1-5
EXIBIT 10, page 1 page 4

COUNSEL Failed to File any
WITNESS list whatsoever IN
Support of MR RAMIREZ'S defense
OF INSANITY and lack of capacity

MR RAMIREZ had several witnesses
he wished to present IN support of
his defense, including his Aunt,
Sister, Brothers, Friends, and
doctors who Treated him After
Accident.

① COUNSEL failed to Shoo courts JENNIFER SAID want
    I wote to coopuative dismiss lied SAID I
    wouldn coppuat liers

MR. RAMIREZ asserts that he
received ineffective assistance OF
COUNSEL For various reasons that
are, unfortunately, NOT ON
Record, Because those matters
wove NOT preserved IN the record.

See EXIBIT 1    Page 1-5

MR. RAMIREZ Request that the
court grant him an attorney to
assist him IN habeas proceeding
and to Hold an Evidentiary
HEARING. ON iNEffective OF
COUNSEL.

EXIBIT I. 2:12 05
PM
1 10/10/2013

AFTER I FIRED COUNSEL IN trial
COUNSEL VERBALLY ASSAULTED ME I
advised COUNSEL. I did FALL DOWN
IN FRONT OF JVEY BECAUSE OF
THE SHACKLES ON MY leg tied to
THE tABLE, WHEN I WAS TOLD All
RISE, SHERIFF CALLED ME to door
I FELL, JVEY SAW MY SHACKLES,
while my lawyer went to talk to the
Judge The Judge, The SHERIFF
docerty threatned ME and told
ME to Say I did NOT FALL.
I was asked by Judge did you
Fall. I Said Yes then NO
Because SHERIFF was gesturing
ME to Say NO. ONLY d.A
nould SEE. She was Shacking
head + Finger and mouning No.
I told my lawyer this And
ask him why don't he Say
it to the court.
HE Said No I Already Made
UP My Mind.

Exibit 1 page 1-5

Counsel Failed to Alert the court that
Told him I did Fall, Jury Saw
my shackles, Sheriof docerty
Manipulated me to say No. CHARACTER
(TO GO AGANS MYSELF) ASk docerty SEEN E1
Counsel Failed to Call, Dr F.M,
dr. Burkss, dr. Maxione swards
Who I advised I had Been
Sexually abused My moms
big Frend, + Nsibor Sam Saiz
SEE Exibit, 24, 5 pages 6,7,8,17,13
17,18-27

Counsel failed to Call witness, Pricilla
Lopez, Mevy Toromillo, to Help prove
I was the one being chased in
yard, to Help prove my testimony
truthfull,
        SEE Exibit 7, 8, 10

Counsel Failed to investigate family
History of mentall Ilness, and
family witnesses to defense of
Insanity, 4, 5,
I would 11 try to call him and
write to taln he Isnored me or was
to busy, to. see Exibit, 4, 5, 7,
        page 18 to 24 + 27 + 30 + 47

page 7.

SEE                    See page 7
          EXB.t 2              page 17 page 19
                    Ex.8t 4. S   Ex. B.t page 25

COUNSEl Failed to Keep Promises
Made, OF Being able to testify.
about Sexual ABuse and that he
Would File Motions I asked him
to File                              page 47
          SEE Exibit 4, S, 10

COUNSEl Failed to call my Father &
Brother who would testify Eladio Fabello
Was violent and had assaulted Me
and them in Past.
   My father and Brother are willing
to testify to this at Hearing.

COUNSEl Failed to Call dr Maxine
Swaffs as witness who would
testify as to my Insanity defense
and Sexual abuse and Incompetency.
          SEE Exibit 9, 10
          page 39 to 43 + 47
COUNSEl Failed to present any
defense at trial.

~~COUNSEl Failed to Record~~
COUNSEl Failed to give Me advice when
I asked over I was drunk when I killed
Muster dad. do I tell that or not. He did not
                                        4&11th

page 8

page 8

COUNSEL FAILED to GET MEDICAL
RECORDS to SHOW I WAS
on Crutches, unable to work or walk,

COUNSEL FAILED to advise me of
The PLEA did Not Explain the
Maximum & Minimum time
I was Facing EVEN though I
tried to ask, (SEE page 4) 5, 6)

COUNSEL FAILED to Be respectful
and responsible and Fulfill his
duty of loyalty and advocate
to me his client.

COUNSEL FAILED to Argue I was
The one Being chased by Robledo
That I was 100 pounds and Robledo
175 pounds, Not 145 as medical
Examiner said, page — 7-10
SEE Exibits 2,

COUNSEL FAILED to Alert court
I was hearing voices during trial,
SEE Exibit, 1,1A, 4, 5, 6

page 9

page 9
APPELLATE COUNSEL

SEE EXIBIT — a
page # 34.35

(APPELLATE COUNSEL Failed to
argue that trial counsel
Failed to call witnesses who
would have testified to my
MENTAL ILLNESS, defence of INSANITY,
or lack of capacity, or counsel
made promises NOT kepped.

Appellate Counsel Failed to argue I was
not given a Frir sentencing
Hearing.

SEE Exibit.

Applicate counsel failed to argue on
appeal I told him I had Been
verbally assaulted by trial counsel
little bitch, and Threatned me
with ineffective assistance if
I refused to take plea.

Appilate counsel Failed to make aware
Supreme court of appeals or put
in my appeal I wanted
to repressat myself.

page 10

page 10

page 47

SEE EXIBIT 10

appelate counsel failed to ask in appeal for an evidentary hearing on all these problems

counsel failed to argue it was access double jeoparday to charge me twice with 31 degree tampuing with evidence. page 47 Exibit 10

The district court failed to inquires into the matter when it is on record MR. Ramirez complained on more than one occassion to the judge of his frustration with defense counsel. and even though MR Ramirz ask for substitute of counsel twice before trial and fired his attorney once in trial in front of jury. and asked to represent hisself.

SEE Exibit. 1, , 6
page 1 - Exibit 1
Exibit 6 - page 28.

Page 24

page 1 through 5    page 11

EX.B.it 1.

Counsel Failed to communcate Back with MR. Ramirez, even though MR. Ramirez tried to no avail.

MR Ramirez recieved INeffectve assistance of counsel and owed his constitutional Rights to effective assistance of counsel.

I MR. ramirez ask the court to appoint attorney to assist with henbeaus process.

MR ramirez ask for an Evidentary Hearing to devolpe the record Nessary to prove allegations - A disposition hearing Also. - Also attached witness statement by my Brother Joe Ramirez who spoke to MR cosby and Told me to fire my attorney.

Sincerly
Albert.
Ramirez

THE EXiBiT'S
ARE ONly labElEd
1 to 13 ond pages 1-56.
I did NOt lable
1A, 1B, 1C, NO.
ONly, 1 to 13.
they are all relevant
to certain facts
+ allegations to
Support my claim
OF. Ineffectue assistance
OF consel trial +
appliate attorney.

I ask the courts all them to Not dismiss my ~~case~~ ~~not~~ Habeaus Because I'm pro se, please appoint me an attorney or grant an evidutary Hearing, or Prelimanary Hearing let me prove my claim I Need A chance.

I do have A WITNESS my Brother who can testify to the THREATS made by MR. COSBY. COSBY told my brother to tell me to plea my Brother knows of the threats

COUNSEl did advice me to take PlEA But would NOT EXPlAiN what the PICA WAS.

AlSo COWNSEL did Not tell me the Maximum time I WAS FACiNG I did NOT KNOW. I thought the most I could get WAS 15yes. I did NOT KNOW Mr. COSBy would NOT ONSWER ANY OF My Questions OR EXPlAIN ANything to me.

He WAS disrespectfull, MEAN, Rude, UNPROFESSIONAl and did NOT PROvide Effective ASSistance.

COUNSEl would NOT CAll All witNSSE or File MOTIONS, change venue, For private investigator, New COMPETENCY EVALUATION, - See Ex. B, + One 1,4's

PAGES — 3,4,5

ST. VS ALBERT RAMIREZ  CR-07-434    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 1:58:18 PM | CHANDLER | RXEX - DO YOU UNDERSTAND THE WORD PREMEDITATE, FIRST TIME YOU SHOT ELADIO WAS IN THE GARAGE, YOU PLANNED ON KILLING HIM IN THE GARAGE |
| 1:59:03 PM | COSBY | **RDEX - FURTHER COMMENTS** |
| 1:59:45 PM | | **#2 WITNESS JOSE RAMIREZ JR. CALLED BY D / SWORN / DEX** |
| 2:01:11 PM | | HOW OLD WERE YOU WHEN MR. ROBLEDO CAME INTO THE PICTURE |
| 2:01:52 PM | | DID YOU EVER BECOME AWARE OF HIM NOT LIVING IN THE HOUSE, HE CAME TO LIVE WITH ME FOR ABOUT 3 TO 4 MONTHS |
| 2:02:33 PM | | I ASKED HIM TO LEAVE AT THE END, I WAS ASKING HIM TO GO TO SCHOOL AND HE WOULD NOT FOLLOW RULES, |
| 2:03:05 PM | | DID HE HAVE ANY PROBLEMS WITH ELADIO ROBLEDO |
| 2:03:46 PM | | HE DID NOT HAVE ANY HATRED TOWARD'S HIM |
| 2:04:34 PM | | HOW YOU BECAME AWARE OF THE PROBLEM |
| 2:04:52 PM | | BENCH CONFERENCE |
| 2:06:33 PM | COSBY | WERE YOU AWARE OF ISSUES BETWEEN YOUR BROTHER AND SOME OTHER PEOPLE |
| 2:07:37 PM | | REMOVE DFT FROM COURTROOM |
| 2:07:49 PM | | JURY EXCUSED FROM COURTROOM |
| 2:08:47 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY |
| 2:08:56 PM | | THE COURT HAS ORDERED THE DFT TO THE OTHER ROOM TILL WE FIGURE OUT WHAT TO DO |
| 2:09:11 PM | CHANDLER | THERE IS CASE LAW IN NM READS IN TO RECORD |
| 2:10:59 PM | | HAVE A COPY OF CASE , ASKS COURT TO BRING HIM IN HERE AND GIVE HIM A STERN WARNING, IT WOULD BE THE STATES PREFERENCE TO REMAIN IN THE COURTROOM |
| 2:11:42 PM | COURT | WANTS TO SAY THIS ON THE RECORD MR. COSBY IS REPRESENTING THIS DFT AND IT IS DIFFICULT TO WORK WITH |
| 2:12:05 PM | COSBY | AT THIS JUNCTURE BY HIS OWN CONDUCT, HE HAS PUT FORTH TO THE JURY THAT I AM NOT REPRESENTING HIM , I KNOW THAT HE CREATED THE SITUATION, EVEN THOUGH THE COURT HAS ADMONISHED, THE FACT REMAINS HE HAS FIRED ME IN OPEN COURT, IF WE WANTS TO FIRE ME THAT IS HIS PEROGATIVE, IF THAT IS HIS DESIRE HE CAN GO FORWARD REPRESENTING HIMSELF ETC. |
| 2:14:07 PM | | IT IS HIS RIGHT TO REPRESENT HIMSELF, IF THAT IS HIS DESIRE AND HE WANTS TO REPRESENT HIMSELF |

The judge interrupted and asked the prosecution to lay a foundation. The prosecution asked Mr. Ramirez "Do you recall giving a lot of requests to go to the law library to research how to beat your charges?" The defense objected and asked to approach. The judge directed the prosecution not to ask those questions but said that he would not declare a mistrial. **[10-10-13 CD B 1:56:15-1:58:25]**

Later on October 10th, when Mr. Ramirez's defense counsel was finished questioning Mr. Ramirez's brother on direct examination, Mr. Ramirez interrupted the proceedings:

> Mr. Ramirez: "Hey, your Honor, I got some questions I need to ask him."
> Judge: "But you can't ask them."
> Mr. Ramirez: "Why didn't you ask... I want to fire..."
> Judge: "We're going to sit you in the other room if I hear anything more from you."
> Mr. Ramirez: (speaking over the judge) "I fire him. He's fired. I want to represent myself... I have the right to fire him and represent myself! He's not representing me right!"

The Judge ordered Mr. Ramirez from the courtroom and excused the jury. **[10-10-2013 CD B 2:09:45-2:10:30]** Following the recess defense counsel spoke with Mr. Ramirez and the trial resumed with Mr. Ramirez present.

Exhibit 1

"Mr. Cosby is my attorney and he's supposed to be for my defense but like I've said in the past I've asked to fire him, I've asked to get a new attorney which I can't afford it I'm poor, I have no help from my family just basically to get my hygiene and also I asked for a new attorney, I asked for a private investigator, I asked for a neurologist evaluation, I asked for another compctency evaluation, I've asked for several motions which I don't know if they were even filed or if they were denied, I don't know if Mr. Cosby, I just feel like maybe I have a big mouth and I sit to open my big mouth and say things and I don't know if I made him angry or upset or frustrated or what I've done but for some reason I don't know if he's going to lose this case because it's a weak case or if it's intentionally or accidental or if I'm just paranoid..."

The judge interrupted and told Mr. Ramirez that he had made his record. Mr. Ramirez told the judge that he had more things to say, but thanked the judge for giving him that time. **[10-10-2013 CD B 9:22:00-9:26:00]**

Testimony of Albert Ramirez

Mr. Ramirez took the stand. His entire testimony was punctuated with run-on and irrclevant statements as well as admonitions from his counsel and the judge. He repeatedly kept raising issues of his health and health history. He stated that he had the flu and didn't feel well. When asked about his height he talked about getting into an accident while driving a car and starting to lift weights, and he was taller in 2007. Shortly thereafter, when defense counsel tried to get Mr. Ramirez to answer who his mother was, Mr. Ramirez objected, "You didn't let me finish where I stayed in July."  Mr.

3

Following the finding of competency and after nearly two years of silence, Defendant became an active participant in the process. At a July 29, 2013, status conference, he addressed the court regarding the letters he had written stating he wanted new counsel because Mr. Cosby had not fulfilled his duties and he was confused because Mr. Cosby was not telling him what was happening. [CD 7-29-13, 9:35:13 to 9:36:25] Defendant asked for a continuance to get a new attorney, to prepare his case and to have another psychiatric evaluation, which would show he was suffering from "psychosomatic delusions and hallucinations and severe depression and anxiety." [CD 7-29-13, 9:41:06 to 9:41:32, 9:36:58 to 9:37:20, 9:39:58 to 9:40:10] The trial court reviewed Defendant's file, stated it was confident Mr. Cosby was providing Defendant competent representation, and denied Defendant's requests for substitute counsel and a continuance. [CD 7-29-13, 9:42:31 to 9:43:52] Defendant persisted in his desire for a continuance, explaining he had "always been remorseful and everything," and he "would have took the plea, but they gave me two-and-one-half extra years that [he] wasn't supposed to get." [CD 7-29-13, 9:46:45 to 9:46:56]

Ultimately, Defendant's case did not go to trial until October 7, 2013. The first day of trial, the jury heard testimony from Mr. Saiz, Ms. Finkey and a crime scene investigator. The second day of trial, after the trial court released the jury for the day, the prosecutor emphasized its first two witnesses the next day needed to

EXHIBIT 1

ST. VS ALBERT RAMIREZ  CR-07-434                                COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 2:14:36 PM | COURT | HE HAS BECOME EXPLOSIVE AND SHOOTS OFF HIS MOUTH, GO TALK TO HIM AND SEE WHAT WE WILL DO, WE ARE CLOSE TO THE END |
| 2:15:25 PM | RECESS | |
| 2:36:30 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY DFT AND ALL PARTIES PRESENT |
| 2:37:06 PM | COSBY | HAVE DISCUSSED WITH MY CLIENT HIS OPTIONS HE HAS STATED HE FEELS HE NEEDS ME, I TOLD HIM EITHER I REPRESENT HIM OR HE REPRESENTS HIMSELF, I CAUTIONED HIM HE NEEDS TO OBEY COURT RULES, HE SAID HE WOULD RATHER HAVE SOMEONE ELSE BUT HE NEEDS ME, I EXPLAINED TO HIM AS FAR AS THE LAST WITNESS, THE WITNESS TELLS ME HE DOES NOT REMEMBER IN FRONT OF THE JURY, SO RATHER THAN CALL SOMEONE TO STAND THEY DON'T REMEMBER I JUST DON'T ASK THAT QUESTION, THERE ARE QUESTIONS THAT ARE NOT ASKED FOR REASONS |
| 2:39:17 PM | COURT | LET THE RECORD REFLECT THAT MR. RAMIREZ HAS RETURNED TO THE COURTROOM AND MR. COSBY WILL BE CONTINUING HIS REPRESENTATION, NOT ANOTHER OPPORTUNITY TO CHANGE COUNSEL |
| 2:39:55 PM | | ADVISES DFT THAT THERE IS AUTHORITY THAT ALLOW YOU TO SIT IN ANOTHER ROOM TO WATCH TRIAL, IT IS AN OPTION IF YOU CONTINUE TO BE DISRUPTIVE YOU WILL SIT IN ANOTHER ROOM AND VIEW TRIAL BY VIDEO |
| 2:40:48 PM | COSBY | HE ASKED ME IF IT WAS BETTER TO SIT IN ANOTHER ROOM, I TOLD HIM IT WOULD BE AGAINST HIS INTEREST TO VIEW BY VIDEO |
| 2:41:36 PM | CHANDLER | I DON'T HAVE ANY XEX FOR MR. RAMIREZ BROTHER OF DFT |
| 2:42:28 PM | COSBY | I HAVE TOLD HER WHAT SHE CAN SAY AND CANNOT SAY |
| 2:42:40 PM | | BENCH CONFERENCE |
| 2:44:43 PM | COSBY | REGARDING PHOTO OF IVAN VASQUEZ SHOWING PHOTO OF HIM IN BOOKING, AND RECEIVED THIS LETTER |
| 2:46:00 PM | CHANDLER | RELEVENCE TO THE PICTURE, COURT WILL NOT ALLOW PHOTO |
| 2:47:19 PM | | JURY BEING BROUGHT INTO COURTROOM |
| 2:48:04 PM | | OFF RECORD |
| 2:51:51 PM | | #3 WITNESS HESIQUIA RAMIREZ CALLED BY COSBY / SWORN / DEX |
| 2:52:03 PM | | JURY BEING SEATED IN BOX |
| 2:53:09 PM | CHANDLER | MR. JOSE RAMIREZ, THE STATE DOES NOT HAVE ANY QUESTIONS |

*WHY WAS I NOT ABLE TO SPEAK*

*Rich #14*

10/10/2013                    EXHIBIT 1                    12 of 16

*page 5*                                                    *page 5*

EXIBIT 2 page 4

Sam Saiz

CSP or statutory rape

90's —

△ lawyer → Cosmo Ripel
DA → BSC
Judge Hensley

DOB: ████████████

SS# ████████████ 3022

89-CR-10173
96-CR-12536-OUI 3RD

THE Pierbor who Set Abused my Cut 15 #10 gay guy

EXIBIT 2                          page 6

- Curry County Detention Center

06/20/07  19:15:04

**Booking Report #:** 1025645
**Booking Date/Time:** 06/20/07    19:11
**Name:** RAMIREZ,ALBERT
**DOB:** ▮▮88
1201 EDWARDS ST

**City:** CLOVIS,NM 88101
**Phone:**



**Physical Info**

| | |
|---|---|
| **Age:** | 18 |
| **Race:** | W |
| **Sex:** | M |
| **Ethnic:** | |
| **Height:** | 5'05" |
| **Weight:** | 108 |
| **Hair:** | BLK |
| **Eyes:** | BRO |
| **Skin:** | |
| **Facial:** | |

**Other Info**

| | |
|---|---|
| **JRN:** | 47316 |
| **FBI:** | |
| **MID:** | |
| **SID:** | NOT REQUIR |
| **Mug #:** | 47316.JPG |
| **SSN:** | ▮▮793 |
| **Immig#:** | |
| **Fingerprint:** | |
| **OLN:** | NONE |
| **OLN State:** | |

**POB:** CLOVIS, NM        **Religion:** NONE
**School:** CHOICES HIGH
**Grade:** 12    **Stat:** DROP OUT    **GED:** N    **APS:**
**Dangerous:** 2    **Hate/Bias:** NONE
**Gang:** NONE
**Gang Moniker:**
**Scars / Tattoos:** NONE
**Employer**

| | | | Date | Time |
|---|---|---|---|---|
| **Custody Officer** | 120 | - MARTINEZ,S | | |
| **·sting Officer** | 120 | - MARTINEZ,S | 06/20/07 | 16:15 |
| **·sport Officer** | 120 | - MARTINEZ,S | | |
| **Probation Officer** | | | | |
| **Admitting Officer** | D33 | - CARVEY,T | | |
| **Fingerprint Officer** | D30 | - MARQUEZ,D | | |
| **Detain Auth Officer** | A48 | - LOZANO,M | 06/20/07 | 19:11 |
| | | | | |
| **Release Auth Officer** | 1 | - MAG COURT | | 00:00 |
| **Release Officer** | | | | 00:00 |
| **Release Type:** | | **Release To:** | | |
| **Detainer 1:** | | | | |
| **2:** | | | | |

**Billing Agency #**    CPD    CLOVIS PD
**Custody Agency #**    CPD    - CLOVIS PD
**Housing Facility**    CURRY CTNY ADC
**Arrest Location**    300 N. CONNELLY
**Offense Location**

**Class:**    DETOX
**Points:**    2
**Reason:**    DETOX

**ACTIVE:** Y    **Work Release:** N    **Community Service:** N    **Interpreter:**        **Attorney:**

**Comments:**

## CHARGES/COURT INFORMATION

| IBR # | NCIC # | Violation | Statute | Disposition | Date | Bond Amt/Type | Warrant # | Sentence |
|---|---|---|---|---|---|---|---|---|
| 290 | 048 | CRIMINAL DAMAGE | 30-15-1 | MISD | 06/20/07 | 1000.00 C | M12MR200700472 | MAGISTRATE |

RECEIVED
JUN 2 2 2007

*Exibit 5*

ROBLEDO, ELADIO

2007-03764

**AUTOPSY REPORT**
THE UNIVERSITY OF NEW MEXICO & HEALTH SCIENCES CENTER
**OFFICE OF THE MEDICAL INVESTIGATOR**

School of Medicine            Albuquerque, New Mexico 87131-5091

1



## POSTMORTEM EXAMINATION

An autopsy is performed on the body of Eladio Robledo at the Office of the Medical Investigator, State of New Mexico, on the 13th day of July 2007, commencing at 10:00 AM.

The examination is performed under the legal authority of the Office of the Medical Investigator of the State of New Mexico.

The body is received within a sealed body bag, with a "State of New Mexico, Office of the Chief Medical Investigator" evidence label, bearing the following printed and handwritten information: "Name of Deceased: Robledo, Eladio; Sealed by: 6.37; Date: 7-12-07".

*145. OK*

### EXTERNAL EXAMINATION

The body is that of a well developed, well nourished, adult, Hispanic male who weighs 145 pounds, is 72 inches in length, and appears compatible with the reported age of 39 years. There are pink and green OMI identification bands around the right wrist inscribed with identifying information.

The body is received clad in a pair of white brief-style underpants, which are partially cut off the body for resuscitation. There are no accompanying personal effects.

The body is cool. Rigor mortis is fully fixed. Minimally evident, blanchable purple livor mortis extends over the posterior surfaces of the body, except in areas exposed to pressure.

The scalp hair is black, wavy, and measures up to 2 inches in length over the crown. The irides are brown. The pupils are round. The corneae are translucent. The sclerae are white and the conjunctivae are clear. No petechial hemorrhages are identified on the sclerae, bulbar conjunctivae, facial skin or oral mucosa. The nose and ears are normally formed, without pierce marks. The decedent wears trimmed mustache and beard stubble. The teeth are natural and in good condition. The neck is unremarkable.

The thorax is well developed and symmetrical. The abdomen is flat. The anus is free of lesions. The spine is normally formed and the surface of the back is free of lesions.

The external genitalia are those of a normal adult male.

The upper and lower extremities are well developed and symmetrical, without absence of digits.

No identifying marks or scars are readily apparent.

Evidence of medical intervention includes an orotracheal tube (correctly placed), seven electrocardiograph patches and two defibrillator pads over the anterior chest, a right antecubital intravenous line, a left antecubital intravenous line,

8    *The man he who sei over Crossed My mar Exibit #2*    *Page 8*

Service No . 306316
Incid 07-0003238    Pt# 0001
· FDID# 09013

OUT OF HOSPITAL CARE REPORT
Clovis Fire Department

Unit No. 24
Alarm Date 07/12/2007

## Disposition

Exibit 2

Transported to  9 PRMC/Clovis
M  f Transport  1 Ground
i  y Tiered With
Lights/Siren from Scene? Emergent, with lights or siren

Dest Determined by  06 Protocol
Diverted To
Patient Disposition 01 Treated, Transported by EMS
Pulse on Transfer    2 No

## Insurance

| Type | Policy # | Group # | Insured Name |
|------|----------|---------|--------------|

### Patient Narrative

Ambulance 1 arrived at 512 West 6th with a report of a subject on the ground. Ambulance 3, Bill Baca and myself arrived at the same time. Patient was lying with his head to the north on his left side in a pool of blood. Patient was placed on a LBS board, placed on the stretcher and taken to the ambulance where IV's, O2 and intubation was being prepared.

EMS Personnel was asked to gown up and get ready to transport code 3. K Burns prepared to intubate the patient.  Ben Black was assisting with airway procedures, Chris Elam, Mike Nolen and J. Boyd, worked on IV's, Bill Baca was hooking up the monitor, and spiking IV fluids for the lines that were being attempted.  John Bradley was handing personnel equipment that requested additional supplies.  Suction was prepared by Bill Baca since the patients airway was full of blood.  In trying to suction it was noted that we would get a tremendous amount of coagulated blood and mucous.  Sour suction was not effective or were we able to get a clear site of the vocal cords.  A Combi Tube was placed and lung sound were diminished on both sides when bagged with 100% O2.

The initial pulse was weak at the carotid, with blood and mucous streaming out the patient's mouth and nose.  Once airway was established we felt for a pulse to find no pulse, but had an organized rhythm on the monitor.  PEA was identified and the ACLS protocol was initialed as we arrived at PRMC..  CPR was started, and bagging with 100 % O2 was continued.   We arrived at PRMC with patient moving the patient from the ambulance into C-2 where personnel stayed and helped staff with patient care.

It  as noted that the patient was shot twice in the head, once in the chest, once in the abdomen, and once in the arm.  P  nt was never revived at PRMC and pronounced dead at 1405 by Dr. Patterson.

------------------------------------------------------------

D - DISPATCHED;
On 07/12/2007 at 13:41:00 dispatched to 515 W 6TH ST /Clovis, NM 88101 for Shots Fired.  13:41:00 unit 24 en route.

C - CHIEF COMPLAINT;
13:43:00 unit 24 arrived to find a 39 year old Male with a weight of 79.4kg./175lbs. patient complaining of Gun Shot to Patient.

H- HISTORY;

A - ASSESSMENT:
Ems found  Traumatic Injury during assessment.
Patient's sign and symptoms are:
Rales
Crepitus
Hemorrhage
Contusion

Look AT THiS
175 pownds

R  ATMENT;
The following medications, treatments, and vitals were performed on the patient;
  Time: 13:44:00  Blood Pressure: 0/Palp  Temperature: Not Assessed G Eye: 1
G  or: 1 G Verbal: 1 Gcs Total: 3 Notes: Patient was lying in a pool of

EXHIBIT 2

Defense counsel argued at the hearing that the doctor didn't administer neurological or intelligence tests, didn't review Mr. Ramirez's school records, didn't contact the juvenile probation office to find out about any prior psychiatric care or drug use, and only met with him for five or six hours. [CD 9/15/08 2:24:15, 2:31:15, 2:41:00]. Counsel maintained his belief that Mr. Ramirez was unable to assist in his defense and requested that Mr. Ramirez be sent back to Las Vegas for a more thorough competency evaluation, for his medications to stabilize, and to be administered neurological tests. [CD 9/15/08 2:41:00]. The district court denied Mr. Ramirez's request for another competency evaluation and declared him competent to stand trial. [RP 158-59].

Trial on the first degree murder and tampering with evidence charges was set for January 26, 2009. [CD 1/26/09 8:56:00]. That morning, the parties conducted jury selection. [CD 1/26/09 9:07:30-12:05:00]. During a break, the parties discussed a plea offer that had been previously made and were able to come to an agreement. [CD 1/26/09 3:03:15]. Pursuant to the agreement, Mr. Ramirez pled guilty to first degree murder and stipulated to a life sentence. [RP 300-302]. Prior to trial, Mr. Ramirez was also charged in separate cases with two counts of battery upon a detention officer and one count of assault. [RP 300-01, 333]. Under the plea, the two tampering with evidence charges were dismissed, as well as one of the battery charges, but he pled guilty to assault and battery against a detention

EXIBIT 3

page 1

Projected Date of Discharge:  Within approximately 9 months.

Patient's Level of Participation in the Plan:  At this time, Mr. Ramirez seems to willing to cooperate with his treatment plan.

Family/Support System Input/Desires:  Evaluation is ongoing.

Legal Considerations Which May Impact Treatment:  Mr. Ramirez has criminal charges pending. He is here on a court order for treatment to attain competency.

Least Constrictive Conditions for Treatment:  Mr. Ramirez was ordered by the court to remain in a secure locked facility during the time of his evaluation and course of treatment.

Criteria for Transfer to a Less Restrictive Setting:  As per court order.

Discharge Criteria:  As per court order.

Potential Barriers to Discharge and Strategies to Overcome Them:  Evaluation is ongoing.

Recommended Follow-up Treatment, Living, Skill, and Support Requirements:  To be reassessed at the time of discharge.

Anticipated Length of Stay:  Approximately 9 months.

Discharge Plan:  As per court order.

Date: 6/16/8

CHRIS S. MANZANARES, LBSW
Staff Social Worker

CSM/AHS-644
D: 06/16/2008 1819
T: 06/16/2008 2356
J: 532576

Exibit 3

RAMIREZ, ALBERT
MR: 42819

June 16, 2008
FTUD

Exibit 3

page

MULTIDISCIPLINARY ASSESSMENT and
INTERDISCIPLINARY TREATMENT PLAN

Exibit 3                                                    page 12

# MENTAL HEALTH RESOURCES, INC.
## OUTPATIENT CLINICAL ASSESSMENT

* Please note: clinical assessment must be completed within 30 days of admission

Initial: [X]  Annual update: 1st year [ ] 2nd year [ ]  year [ ]   Client ID # 4393 | Completion Date: 11/8/07

# I. PATIENT INFORMATION

| Client Name: (Last) Ramirez | First: Alberto | MI: | Male: [ ] | Female: [ ] |
|---|---|---|---|---|

Client's primary residence
[ ] Their Home (house, apartment, room) [ ] Friend's home [ ] Relative's home [ ] Group home [ ] Foster Care
[ ] Jail [ ] Nursing home [ ] Assisted Living [ ] Shelter [ ] Currently Homeless [ ] Other

| Phone: | Address: ▓▓▓▓▓ | City: Clovis | State: NM | Zip: 88101 |
|---|---|---|---|---|

| Client Age: 19 | DOB: ▓▓ 88 | Soc. Se ▓▓▓▓ 793 | Marital Status: [ ] Mar. [X] Sin. [ ] Div. [ ] Wid. [ ] Sep [ ] other |
|---|---|---|---|

Race: [X] White [ ] Native Am. [ ] Black/African [ ] Am Asian [ ] Pacific Islander [ ] Alaska Native
Ethnicity: [X] Hispanic [ ] Mexican [ ] Cuban [ ] Puerto Rican [ ] Latino [ ] Not Hispanic Origin [ ] Mexican Am. [ ] Central Am. [ ] South Am.

| Parent/Guardian/Custodian/Power of Attorney if Minor (include name & address) NONE | Parent/Guardian/Custodian Phone ( ) N/A |
|---|---|

Emergency Contact (include name & address) Hisegua Ramirez 320 Chaparral | Relationship to the Client: Sister | Emergency Contact Phone (505) 762-1490

| Referral/Source (please give specific name): Self | Household Annual Income: 0 | Client Annual Income: 0 | Household income source: 0 | Client incomes source: 0 |
|---|---|---|---|---|

| Employer's Name: N/A | Phone: N/A | School: N/A | Ed. Level: 12 |
|---|---|---|---|

| Current PCP: N/A | Address: N/A | Phone: N/A |
|---|---|---|

Please give a brief description of the presenting problem, including source of distress, precipitating events associated problems and symptoms: Client feeling sad, mad, exp. psychosis mood liability

Le  problems: [ ] No [X] Yes Explain: Currently facing charge of murder

If the client is a minor please describe the following in relation to Psychosocial/Developmental history: N/A

| Psychological functioning: | |
|---|---|
| Intellectual functioning: | |
| Educational/vocational functioning: | |
| Social functioning: | |
| Developmental functioning: | |
| Substance abuse: | |
| Culture: | |
| Leisure and recreation: | |

# II. RISK ASSESSMENT

A. [X] No current risk at the time of this assessment
B. Have you ever thought about harming yourself or someone else? [X] No [X] Yes, if yes, did you have a plan? [X] No [ ] Yes
When was the last time you thought about harming yourself or someone else? November 1, 2007
C. Have you ever harmed/injured yourself or someone else intentionally? [X] No [ ] Yes, if yes, did you have a plan? [X] No
[ ] Yes. When was the last time you thought about harming yourself or someone else?

**ONLY complete the rest of the risk assessment questions, if the response to section B or C is yes**
(note: complete section D if the risk is harm to self and/or section E if the risk is harm to others)

D. Risk of harm to Self: Indicate which of the following suicide (harm to self) risk factors apply to the person:

| | | | |
|---|---|---|---|
| Prior suicide attempt: [X] No [ ] Yes | Behavioral cues (isolation, impulsivity, withdrawn etc): [X] No [ ] Yes |
| Repeated attempts: [X] No [ ] Yes | Symptoms of psychosis (command hallucinations): [ ] No [X] Yes |
| Stated plan with intent: [X] No [ ] Yes | Family history of suicide: [X] No [ ] Yes |
| Access to means (e.g., weapon): [X] No [ ] Yes | History of suicide in friend: [X] No [ ] Yes |
| Substance use: [X] No [ ] Yes | Terminal physical illness: [X] No [ ] Yes |
| Other self-injurious behaviors: [X] No [ ] Yes | Current stressors: [ ] No [X] Yes |
| Recent losses/ lack of support: [ ] No [X] Yes | Others: [X] No [ ] Yes |

Please provide explanation(s) for any of the above risk factors that were indicated with a yes response: Client denied

Page 13

**Client Name:** Alberti Kamilez    **File #:** 9393

## IV Psychiatric (cont)

### F. SYMPTOMS SCREENING

| | |
|---|---|
| **Depression** | [x] usual depressed mood  [ ] anhedonia  [ ] weight loss  [ ] weight gain  [x] sleep disturbance  [ ] psychomotor retardation/agitation  [ ] fatigue  [x] worthlessness  [ ] guilt  [x] poor concentration  [ ] suicidal ideation  [x] hopelessness  [x] anxiousness  [ ] decreased energy/motivation  [ ] uncontrollable crying spells |
| **Anxiety** | [ ] restlessness  [ ] easily fatigued  [ ] poor concentration  [ ] irritability  [ ] muscle tension  [ ] sleep disturbance  [ ] excessive anxiety and worry  [ ] inability to control worry. |
| **Phobia/ Panic** | [ ] abrupt development of panic attacks accompanied by palpitations:  [ ] sweating  [ ] trembling  [ ] shortness of breath  [ ] feeling of choking  [ ] chest pain  [ ] nausea  [ ] dizziness  [ ] light headedness  [ ] derealization  [ ] fear of losing control  [ ] fear of dying  [ ] numbness  [ ] chills  [ ] hot flashes  [ ] agoraphobia  [ ] excess/persistent fear of stimuli avoidance |
| **Mania** | [ ] grandiosity  [x] decreased sleep  [x] talkativeness  [x] flight of ideas  [x] distractibility  [ ] increased goal directed activity  [ ] increased anxiety/agitation  [x] elevated/expansive  [x] irritable mood  [x] pressured speech  [x] psychosis  [ ] increased compulsive/addictive behavior |
| **Post traumatic stress** | [ ] experienced traumatic event (event:                    date:            )  [ ] re-experiencing trauma avoidance of stimuli associated with trauma  [ ] increased physical/emotional arousal dissociative symptoms  [ ] amnesia |
| **Psychosis** | [x] hallucinations  [x] delusions  [x] paranoia  [x] disorganized speech  [ ] bizarre/catatonic behavior  [x] flat or inappropriate affect |
| **Organicity** | [ ] decreased consciousness  [ ] impaired memory  [ ] perceptual disturbance  [ ] impaired intellectual functioning  [ ] impaired judgement  [ ] labile affect |
| **Impulse Control** | [ ] property destruction  [ ] explosive/assaultive behavior  [ ] inability to control destructive impulses  [ ] pleasure gained from acting out  [ ] gambling  [ ] kleptomania  [ ] pyromania  [ ] trichotillomania |
| **Substance Abuse** | [x] failure to fulfill major role obligations  [x] physically hazardous use  [x] legal problems  [x] use in spite of negative psychosocial consequences |
| **Substance Dependence** | [ ] tolerance  [ ] withdrawal  [x] using more than intended  [ ] unsuccessful efforts to quit  [x] increased time spent obtaining/recovering  [x] reduction in psychosocial functioning  [x] continued use in despite negative consequences |
| **Attention Deficit Symptoms** | [ ] inattention  [ ] hyperactivity  [ ] impulsivity functional impairment at: |
| **Anti-Social Conduct** | [ ] aggressive behavior toward people/ animals  [ ] stealing  [ ] lying  [ ] vandalism  [ ] violating rules at school/home/community |
| **Oppositional Conduct** | [ ] losing temper arguing  [ ] defiance annoying others  [ ] blaming others  [ ] denying problems  [ ] easily agitated angry/resentful  [ ] spiteful/vindictive |
| **Other Symptomology** | [x] frustration  [x] mood lability  [ ] running away  [ ] separation anxiety  [ ] developmental delay  [ ] learning difficulties  [ ] adjustment issues  [ ] below average IQ  [ ] autism  [ ] verbal/motor tics  [ ] encopresis  [ ] enuresis  [ ] neurological deficits  [ ] school problems  [x] maladaptive family issues  [x] low self esteem  [ ] peer relationship issues  [ ] gang involvement  [ ] blended family issues  [ ] truancy  [ ] sexual promiscuity  [ ] sexual identity  [ ] somatization  [ ] conversion  [ ] hypochondria  [ ] producing physical symptoms  [ ] sexual dysfunction  [ ] malingering  [ ] intrusive obsessions/compulsions  [ ] pathogenic personality  [ ] paraphilia dyssomnias  [ ] self mutilation  [ ] dissociative states  [ ] bereavement  [ ] recent physical injury  [ ] chronic illness  [ ] anorexic bulimic behaviors |

EXHIBIT 3    page 13

*Rational Standard for Competency-to-Stand-Trial Assessments,* 22 Journal of Am. Acad. Psychiatry and Law, 231, 237 (2004). Mr. Ramirez argues, consistent with the article, that two separate evaluators came to different conclusions and that, in light of the problems in Dr. Burness' methodology—not administering neurological or intelligence tests, not reviewing Mr. Ramirez's school records, not contacting the juvenile probation office to find out about any prior psychiatric care or drug use, and meeting with him for only a few hours—this is like "flipping coins in the courtroom." *Id.*

Because the district court abused its discretion in denying Mr. Ramirez's request for a more thorough competency hearing, this case should be remanded for a new trial with instructions to order another competency evaluation for Mr. Ramirez.

### Issue 3:  Mr. Ramirez Received Ineffective Assistance Of Counsel.

Mr. Ramirez relies upon his arguments in the brief in chief in support of this issue.

## II.    CONCLUSION

For the forgoing reasons, the trial court abused its discretion in denying Mr. Ramirez's motion to withdraw plea, and denying his request for a more thorough competency hearing, and the case should accordingly be remanded to the district court for trial, or alternatively, an evidentiary hearing to determine whether the plea

6/13/2014                                    Accused killer takes witness stand - Clovis News Journal

Ramirez, who was 18 years old when he said he shot Robledo, has a history of mental illness, according to family members, three of whom testified Thursday as defense witnesses.

A psychologist found Ramirez competent to stand trial.

Cosby struggled to keep Ramirez on point through much of his rambling testimony, drawing objections from Chandler and repeated instructions from Hartley to simply answer Cosby's questions.

Ramirez said he purchased the .22 caliber handgun he used in the homicide to protect himself from gang members who had threatened him. He said he had no intention of shooting or killing Robledo.

Ramirez said he went to the home Robledo had kicked him out of to get his clothing and electronic gadgets. No one was in the house and his room was padlocked shut, he said, so he went looking for Robledo in the garage behind the house.

Ramirez said he and Robledo got in an argument and Robledo backhanded him across the face.

"I was scared," said Ramirez, his voice quaking. "He (Robledo) spoke in Spanish and said he was going to get his pistola."

Ramirez said Robledo then hit him with his fists and started choking him.

"My only option was to shoot. He tried to take the gun (away) and shoot me."

During an hour-long grilling by Chandler on cross examination, Ramirez admitted he gave a stranger $30 to purchase a $10 box of bullets for the handgun at the Clovis Walmart the day before the homicide. Chandler also confronted Ramirez with testimony that no bruises were found on his neck when arrested three days later and no bruises were found on the victim's body or hands.

"The fact of the matter," said Chandler, "is it (the fight) didn't happen. He didn't punch you did he?"

"Yes he did," said Ramirez.

Chandler said testimony from previous witnesses was that Ramirez was seen chasing down Robledo after shooting him twice in the chest and the victim fell to the ground.

"Eladio was lying on the ground dying and you shot him in the head," Chandler charged.

"I shot towards the ground," said Ramirez. "I didn't know where I hit him."

A state medical examiner testified earlier that Robledo died of the wounds to his chest and two bullets fired into his right temple.

Ramirez also admitted during Chandler's cross-examination that he hit a girl in the face "who was beating up my cousin" and head-butted a police officer in other unrelated violent confrontations.

Hesiquia Ramirez testified her brother "had his own little issues" with mental illness long before the homicide.

During a confrontational cross examination, Chandler challenged her, noting discrepancies in her testimony and what she told police on the day of the killing.

As her brother was taken from the courtroom at the conclusion of the day, Hesiquia waved to Ramirez and said "Love you" in a hushed tone.

The jury is expected to get the case after closing arguments today.



Luxury Consignment
Up to 90% off.

The RealReal          SHOP NOW ›

SOUND OFF

Weekly Web Poll

Do you think non party-
affiliated voters should be
allowed to vote in primary
elections?

○ Yes.

○ No.

[ Vote ]          View Results

CMI PROMOTIONS

Clovis



Military
Discount
Map

**Share this post:**  [ Email ]  [ Facebook 8 ]  [ Twitter 1 ]  [ Google ]  [ Reddit ]

Filed Under: Featured News, News

Mar 17 2008 4:18PM    Maxann Shwartz, P.H.D.    5059213365    p.3

*[handwritten notes: home - cll 505-331-7224 afs 1:30pm page 11]*

*[handwritten: Exibit 4,5]*

# MAXANN SHWARTZ, PH.D.
## Licensed Psychologist

*[handwritten: All papers]*

3228 Los Arboles Ave. NE
Bldg. A, Suite 230
Albuquerque, New Mexico 87111

New Mexico License 0922
California License PSY15845
Telephone: (505) 331-7224

## FORENSIC NEUROPSYCHOLOGICAL EVALUATION

### (CONFIDENTIAL)

This report is confidential, and unless its release is in accord with the rules of criminal or civil procedure, it should not be released to anyone without written consent of the defendant. While the defendant does have a right to see this report, it is strongly recommended that (s) he do so in the presence of the psychologist so that the findings and results can be properly interpreted and any questions or concerns can be addressed. If the report is given to the defendant by anyone other than a psychologist, it is highly likely that (s) he can misunderstand the report's content, and the information may not necessarily present him/her in a favorable light.

| | |
|---|---|
| **NAME:** | **RAMIREZ**, Albert Jose |
| **DOB:** | ███ 1988 |
| **AGE:** | 19 years-old |
| **SS#:** | ███████ |
| **COURT NUMBER:** | D-905-CR-0200700434 |
| **EXAMINER:** | Maxann Shwartz, Ph.D. |
| **DATE(S) OF EVALUATION:** | 03/10/2008 |
| **DATE OF REPORT:** | 03/14/2008 |
| **REFERRED BY:** | Brett J. Carter |
| | Counsel for Defense |
| | State of New Mexico/Curry County |
| | Ninth Judicial District |

*[handwritten: deued I asked FDR her to be a witness]*

*[handwritten: MAR 1 0 2008]*

*[handwritten: 13]*

*[handwritten: Exibt 4+5 She would have testified this In court page]*

EXIBIL-1,5

page 17

ST. VS ALBERT RAMIREZ  CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 10:24:46 AM | | WHO ELSE DID YOU CALL, HE WAS NOT A FRIEND, I TOLD HIM TO GET THE THING, DO YOU KNOW OF ANYBODY HAS THAT GUN |
| 10:25:33 AM | | THERE WAS A GUY IN FRONT OF STORE OF RAGS TO RICHES I BELIEVE HE GOT THE GUN, I JUST HAD SOX AND BOXERS |
| 10:26:34 AM | | DID YOU PLAN ON KILLING MR. ROBLEDO "NO" |
| 10:27:11 AM | | WERE YOU THERE THAT DAY TO AMBUSH YOUR MOM'S BOYFRIEND "CAN I SPEAK MY MIND", IF I WANTED TO KILL MY MOM OR ROBLEDO, I COULD GO IN THERE AND GO TO MY ROOM AND GET SOMETHING TO EAT. ETC. |
| 10:28:14 AM | | WHEN HE TOLD YOU HE WAS GOING TO GET PISTOLA "THAT IS A PISTOL" THAT WAS NOT HIS AMMO IN GARAGE |
| 10:28:59 AM | | I KNEW HE HAD A WEAPON, I USED TO SMOKE MARIJUANA I WAS LOOKING FOR MONEY AND I SAW A GUN IN HIS DRAWER |
| 10:29:40 AM | | I THOUGHT I WAS IN DANGER |
| 10:29:53 AM | | BENCH CONFERENCE |
| 10:30:37 AM | COURT | GONNA TAKE A BREAK |
| 10:31:21 AM | | JURY EXCUSED FROM COURTROOM |
| 10:31:36 AM | OFF RECORD | |
| 11:03:22 AM | | COURT IN SESSION JURY BEING SEATED IN BOX, DFT AND ALL PARTIES PRESENT |
| 11:03:58 AM | COURT | INSTRUCTS JURORS GOING TO AN EARLY LUNCH BE BACK BY 12:45 P.M. |
| 11:04:37 AM | RECESS | |
| 12:49:46 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY, DFT AND ALL PARTIES ARE PRESENT |
| 12:50:29 PM | CHANDLER | DFT PUT FORWARD THAT THE VICTIM WAS A FIRST AGRESSOR, ANY TYPE OF SPECIFIC CONDUCT |
| 12:51:31 PM | | WHAT TRAIT DO YOU THINK IS DELIBERATE AND WILLFUL MURDER |
| 12:51:52 PM | CHANDLER | RESPONDS, NOW WE HAVE AN OPPORTUNITY THAT OUR VICTIM WAS NOT THE AGRESSOR |
| 12:52:26 PM | COSBY | AS FAR AS THE SITUATION OF THE JAILER, HAD NOTHING TO DO WITH HIS CHARACTER ETC. |
| 12:52:50 PM | CHANDLER | READS RULE 404-A-2 SEC. B |
| 12:54:32 PM | COURT | WILL LET YOU GO AHEAD AND DO IT, BETTER WAY TO DO IT |
| 12:54:50 PM | COSBY | I WILL ASK YOU TO RE VISIT SEXUAL ISSUE |
| 12:55:21 PM | COURT | OBJECTION NOTED |
| 12:55:43 PM | DFT | COMMENTS |

10/10/2013

EXIBIT 9,5     page 57

14

EXIBIT 4, 5
page 18

16. Photo (exhibit 10d)
17. Media Advisory Clovis Police Department (exhibit 10e)
18. Grah's notes/ Action Sheet (exhibit 10f)
19. Inmate Calling Solutions (exhibit 10g)
20. Plateau Wireless (exhibit 10h)
21. Call Records 505-309-7772 (exhibit 10i)
22. SMS Records 505-714-2165 (exhibit 10j)
23. Call Records 505-309-4299 (exhibit 10k)
24. Call Records 505-309-7759 (exhibit 10l)
25. Master Name Inquiry (exhibit 10m)
26. Curry County Detention (exhibit 10n)
27. Photo Lineup (exhibit 10o)
28. Curry County Detention (exhibit 10n)
29. #1 Value Inn Guest Registration (exhibit 10r)
30. State of New Mexico, Ninth Judicial District, Office of the District Attorney (exhibit 10s)
31. Information from John Garcia to Roger Grah (exhibit 10t)
32. Photo Lineup (exhibit 10u)
33. The University of New Mexico (UNM) Office of The Medical Investigator (exhibit 10v)
34. Index- List of Exhibits

## PSYCHOLOGICAL TESTS/PROCEDURES ADMINISTERED

- Structured Clinical Interview
- Review of List of Exhibits
- Mental Status Exam (MSE)
- Mini Mental Status Exam (MMSE)
- Trail Making Test
- Clock Face
- Portions of The Revised Competence Assessment Instrument

**Mental Status Examination:**

Behavioral Observations:
Mr. Albert Ramirez is a 19 year-old, single, Hispanic male who was unable to be evaluated due to grossly disorganized behaviors consistent with the positive symptoms associated with a psychotic disorder, including but not limited to: disorganized thinking; rambling, nonsensical speech; paranoia; depersonalization; reports of auditory hallucinations; labile mood; inappropriate affect; loose associations; and poor reality testing. Mr. Ramirez was dressed in the required uniform of the Curry County

EXIBIT 4'5   MAR 1 8 2008        page 18
15

Mar 17 2008 4:21PM   Maxann Shwartz, PH.D.   5058213388   p.9

EXIBIT 4,5 page 1

Detention Center and had his undershirt on backwards. Mr. Ramirez was unable to perform even simple, goal-directed tasks. He maintained minimal to no eye contact. He evidenced uncontrollable crying throughout the evaluation with uncontrollable shaking. His attorney, Brett Carter, was present in attempt to calm him down and encourage him to participate in the evaluation. Food (McDonald's) was also used as a reinforcer and as an attempt to calm him down. While Mr. Ramirez was eating, he appeared to be more placated and was able to answer several questions. Specifically, he elaborated on being abused by several people, including his foster dad (physical abuse), a neighbor (sexual abuse) and his mother's boyfriend (sexual abuse). However, the majority of his responses to this examiner's questions were answered with "I don't know," or "that's all I know." Otherwise, he attempted to cooperate but eventually would start crying and become hysterical. Occasionally, he was able to provide several coherent and logical responses, however, his thinking would then be followed with tangential remarks with frequent references to his foster dad or paranoid verbalizations, i.e. "I'm scared of everyone. That's all I know. There's something wrong with my mind." For the most part, he was unable to provide any relevant background history. Mr. Ramirez was questioned numerous times about what happened regarding his alleged charge of murder and replied each time with "I used to be a good kid," or "I wasn't like this," and "I just want to talk to my mommy." Mr. Ramirez was unable to read as he could not maintain attention or concentration. He was given the Trail Making Test and was unable to complete one Trail. In sum, he was unable to complete any standardized testing procedures.

Orientation: He was oriented to person, but was poorly oriented to time, date, or location.

Affect/Mood: Mr. Ramirez' mood was labile with congruent affect. He stated that his mood was "very depressed, very bad...I'm so depressed!"

Perception/Thought Process: His thought process was tangential and loose. His thinking was easily derailed as he evidenced paranoia with depersonalization, i.e. "I can't feel my arm that much...I don't know," "I wasn't like this," and ""What happened...the real me is full of pain." He acknowledged that he experiences auditory hallucinations, stating "I hear people talking in my head...saying kill myself." He denied visual hallucinations. He presented with frank paranoid ideations.

Mini Mental Status Exam: Mr. Ramirez was administered the Mini Mental Status Examination (MMSE), a widely used screening instrument used to assess cognitive impairment. His results were within the severely impaired range (16/30) and appeared to be due to the presence of a functional psychosis. Mr. Ramirez exhibited poor immediate memory, concentration, and attention.

Memory: His overall memory appeared questionable, e.g. he could not remember the city where he was born.

Judgment/Insight: Impaired/Impaired

EXIBIT   Page 19

Mar 17 2008 4:22PM    Maxann Shwartz, PH.D.    5058213365

**Communication**: His speech was pressured and rambling. At times, he was able to comprehend questions but was unable to provide consistent or appropriate responses.

**Sleep/Diet**: Mr. Ramirez reported "I can't sleep at all...I have physical pain and mental pain...I hear people talking in my head." He indicated that his appetite fluctuates and that he has lost weight since being incarcerated.

**Suicidal Ideation, Intent, or Plans**: He denied a history of suicidal ideations, intent, plans, or attempts, stating "No, they'll put me in that little room."

**Substance Abuse History**: Mr. Ramirez acknowledged using illegal drugs and alcohol in the past.

**Current Medical/Physical Concerns and Medications**: He denied past or present use of medications, including being prescribed psychotropic medications.

**Current Mental Health Status**: Mr. Ramirez presented with symptoms associated with a significant mental illness, including heightened instability of mood. Specifically, he evidenced a mixture of characteristic signs and symptoms involving a range of cognitive and emotional disturbances that may be associated with the initial onset of a psychotic disorder.

## DIAGNOSTIC IMPRESSIONS

### RULE OUT-

| | | |
|---|---|---|
| Axis I: | 295.30 | Schizophrenia, Paranoid Type |
| | 295.70 | Schizoaffective Disorder, Bipolar Type |
| | 309.81 | Posttraumatic Stress Disorder, Chronic |
| Axis II: | 799.9 | Diagnosis Deferred |
| Axis III: | | Defer to Physician Report |
| Axis IV: | | Legal Problems |
| Axis V: | | 30 |

## CONCLUSION

Mr. Albert Ramirez is a 19 year-old, single, Hispanic male, with no known documented history of mental illness. However, throughout the evaluation, he evidenced a constellation of symptoms characteristic of Schizophrenia, including paranoia, psychoses, loose associations, disorganized thinking, poor reality testing,

*Exibit 4 S pg 21*

depersonalization, inappropriate mood and affect, and poor judgment, reasoning, and insight. Mr. Ramirez reported numerous times "There's something wrong with my mind." Because of his current mental state, he was unable to complete a formal evaluation.

Based on his current presentation, Mr. Ramirez is not capable of competently proceeding with adjudication and handling the stress associated with the legal process. In his current state, he has been unable to assist his attorneys in his defense as he is unable to communicate in a logical or rational manner. He is also unable to provide any assistance to his attorneys regarding pertinent circumstances or events that led to his arrest in reference to the alleged charges. It is therefore the opinion of this examiner, that Mr. Albert Ramirez is not competent to stand trial.

Thank you for your referral.

Respectfully submitted by:

Maxann Shwartz, Ph.D.
Licensed Psychologist

*18*

*Exibit 4, S*

Mar 17 2008 4:18PM    Maxann Shwartz,PH.D.    5059213365    P. 4

| | |
|---|---|
| **COURT:** | Ninth Judicial District Court<br>Curry County<br>State of New Mexico |
| **PLACE OF EVALUATION:** | Curry County Courthouse<br>Clovis, New Mexico |

## Reason for Referral and Charges

The defendant, Mr. Albert Ramirez, was referred for a Forensic Neuropsychological Evaluation to provide information regarding his current cognitive, psychological, and emotional functioning. Mr. Ramirez' attorneys have expressed concern regarding his competence to stand trial as he has been unable to discuss any aspect of the case with them, despite numerous attempts. They have also described his behavior as bizarre with confused and disorganized thinking. His overall functioning will be evaluated in terms of his competency to stand trial. Mr. Ramirez has been charged with Murder (Open Count) and Tampering with Evidence (2 counts), for events that occurred on or between July 12, 2007, in Curry County, New Mexico. Mr. Ramirez is incarcerated at the Curry County Detention Center (CCDC).

## New Mexico Criteria for Determining Competence

(1) The Client must have a factual understanding of the charges and legal proceedings, (2) The Client must also have a rational understanding of the charges and legal proceedings, and (3) The Client must have the ability to assist his or her attorney (State vs. Rotherham, 1996).

## Note:

The following report and opinions are based on information made available to the psychologist at the time of the evaluation. Unless specifically noted, there has not been a systematic effort made to substantiate the full accuracy of all of the information provided in this report. The report is based on the assumption that the information provided is reasonably accurate, unless noted to the contrary. The psychologist reserves the right to modify opinions or conclusions, if additional information relevant to the findings is provided at a later date.

EXIBIT 4.5

EXIBIT 4.5

*page 23*

## Disclosure of Limits of Confidentiality and Informed Consent

Prior to the initiation of the forensic evaluation, Mr. Albert Ramirez was informed of the purpose of the evaluation, about my role as a forensic psychologist, that his participation was voluntary, and that the information that he provided in the evaluation may not be confidential. The defendant was unable to communicate that he understood the purpose of the evaluation and that he was going to undergo a forensic evaluation. He was then informed that information from the evaluation would be provided to the Court regarding his current cognitive and intellectual capabilities and that the information he provided was not confidential. The defendant consented to proceed with the evaluation by signing the "Statement of Rights and Limits of Confidentiality" disclosure form, which was explained to him and outlines the purpose of the evaluation.

Mr. Ramirez was informed that he has the right to refuse to participate in the evaluation or answer specific questions, and the fact that in addition to his attorneys, the report and/or information may be disclosed to the Court and/or the prosecution trial attorneys. He was also informed that the psychologist may also be asked to testify with regards to information gathered in the evaluation. The defendant attempted to participate in a structured clinical interview, but was unable to complete the interview or participate in neuropsychological and psychological tests and questionnaires, or complete a competency test due to his current psychological and emotional state. As a result, the testing session lasted a total of 3.0 hours. The evaluation was conducted in an adequate environment and the results are believed to represent a valid measure of the defendant's current cognitive and emotional functioning and status.

## SOURCES OF INFORMATION:

1. Clinical interview with Mr. Albert Ramirez (defendant)
2. Interviews with Brett Carter and Chandler Blair (attorneys for defendant)
3. Request For Expert Witness/Investigator
4. Clovis Police Department
   a. Investigative Report: Randy Pitcock, Detective; 7/12/07
   b. State of New Mexico Uniform Incident Report; 7/12/07
   c. State of New Mexico Supplemental Report; 7/13/07
   d. Supplemental Report Narrative; 7/23/07
   e. Supplemental Report: Homicide; 7/12/07
   f. Supplemental Report: Officer Antonio Bosque; 7/13/07
   g. Felony Case File- Ivan Vasquez (exhibit 9)
   h. Criminal Trespass Notification (exhibit 10p)
   i. State of New Mexico Uniform Incident Report; 6/21/07; (exhibit 10q)

MAR 1 8 2008

*Exibit 4S*
*page 23*

consists of five scales, i.e., Psychosis; Neurologic Impairment; Amnestic Disorders; Low Intelligence; and Affective Disorders. The total score on this measure is identified as being the most useful for differentiating exaggerated from non-exaggerated symptoms. SIMS total scores equal to or greater than fourteen are suggestive of symptom exaggeration. Mr. Ranirez's score on this measure was 47.

Additional review of the SIMS scale scores is notable for elevation. Specifically, his scores suggest an endorsement on all five scales with the highest elevations being on the Neurologic impairments and the Amnestic disorders scales, He also over endorsed the Psychosis as well as the Affective functioning scales. The lowest elevation was found on the Low Intelligence scale.

This pattern of responses provides evidence of Mr. Ramirez's tendency to exaggerate a range of cognitive and psychiatric symptoms. Mr. Ramirez has reported to this examiner that he does not want to return to the Detention Center as he describes his previous behavior in Detention as "not good…crying, screaming, yelling, kicking walls I was angry 'cos they wouldn't give me my meds".

## CASE FORMULATION

Mr Ramirez is a 19 year old Hispanic male admitted to the Forensic Division of the New Mexico Behavioral Health Institute at Las Vegas (NMBHI) on 5th June 2008. A Court finding of incompetence to stand trial, and subsequent commitment for treatment to attain competency to proceed in a criminal case was approved on 17th April 2008. Mr. Ramirez is currently charged with one open count of Murder in the first degree, and two counts of Tampering with Evidence for events that allegedly occurred on July 12th 2007.

Mr Ramirez appears to have had a disrupted childhood, despite his assertion that his mother was raising him well the fact that he was in two foster placements suggests that he was demonstrating difficult to manage behaviors. This was confirmed by Mrs Ramirez. Mr Ramirez also attended special education and became involved with the criminal justice system at an early age prior to 16. His behavior appears to have spiraled downwards to the point where he is alleged to have committed first degree murder. Mr Ramirez has reported sexual and physical abuse however given his tendency for over reporting and his clear need to externalize blame for his actions on others it is difficult to ascertain the validity of this reported abuse. Mr Ramirez mother stated that her boyfriend (the victim on the alleged offence) had never abused Mr Ramirez and that he was jealous of her boyfriend.

Mr Ramirez demonstrates difficult to manage behaviors however in this examiner's opinion these are the result of his personality style rather than as a consequence of mental illness. He does demonstrate difficulties in managing his mood and controlling his impulsive behavior but as previously stated in my clinical opinion this is the result of his personality style and an inability to take responsibility and consider the consequences of his actions.

08/18/2008
FD/CCU

Curry County
Page 7 of 10

RAMIREZ Albert Jose
HEALTH RECORD #42819

**Final Forensic Report**

THE NEW MEXICO BEHAVIORAL HEALTH INSTITUTE *at Las Vegas*

Exbit 4.5

page 25

Mrs Ramirez reported that she put Mr Ramirez out of her home as a result of him b
violent manner and smashing windows in her car and house. She also reported that
was verbally abusive toward her and this has been confirmed by staff at this facil
heard Mr Ramirez being verbally abusive toward his mother over the telephone.
reported that she had a restraining order in place against Mr Ramirez following l
her car windows and that he violated this order both on the day of the instant off
day before. She also reported that Mr Ramirez was jealous of her boyfriend.

## MEDICAL HISTORY
Mr Ramirez also provides a highly convoluted and unbelievable story of his arms being
permanently damaged as a result of having to drive a car with manual transmission all day. He
will attempt to present evidence of his physical impairment by showing the examiner his arm,
which has no physical defects. He also has a story of walking on crutches and having his knee
bandaged in a manner that no medical facility would ever sanction. He was examined by the
medical physician back in County Detention in Curry where he made repeated daily efforts to get
medical attention until the physicians refused to grant further medical evaluations. He has also
been examined by the medical physician at this facility and despite continuous complaints of
chronic pain and stating he is hunch backed, he has no acute or chronic medical concerns.

## SUBSTANCE ABUSE HISTORY
Mr Ramirez reported that he has smoked Marijuana and that his prior criminal history has been
associated with smoking marijuana. He has endorsed using cocaine, crack cocaine and
methamphetamines in the past. In addition the police officers reported that they could smell
alcohol on his breath at the time of arrest for prior offences.

## ABUSE HISTORY
Mr Ramirez has reported physical abuse at the hands of his foster father and sexual abuse by his
mother's boyfriend and a neighbor. However, it is notable that he reports that his mothers
boyfriend (the victim in the alleged offense) and the neighbor were gay and that they were lovers
which is why they abused him. Given that the neighbor is also a witness to the alleged offences
however, it is this examiners opinion that this report of abuse and the sexual orientation of these
two men is highly suspect.

Exbit 4.5

## CRIMINAL HISTORY
Mr Ramirez reports that his only prior criminal history has been in relation to smoking
Marijuana and he alleges that one of these charges was an accident as he did not know the
cigarette contained marijuana. This examiner did not have access to an NCIC or his Juvenile
record however a police report relating to a prior arrest includes the charges of Larceny (under
$250.00, Evading a Peace Officer and Possession of Marijuana.

## PSYCHIATRIC HISTORY
There is no indication from Mr Ramirez's records that he has ever required inpatient or out
patient psychiatric intervention. He reports that he did see a counselor and this was related to
"anger management" however, there is no evidence of any prior mental illness despite Mr
Ramirez reporting a history of depression and anxiety and stating that he was on seven

08/18/2008
FD/CCU

Curry County
Page 4 of 10

RAMIREZ Albert Jose
HEALTH RECORD #42819

Final Forensic Report

THE NEW MEXICO BEHAVIORAL HEALTH INSTITUTE at Las Vegas

27

page 24

page 24

Based on the facts in the record, Defendant sensibly does not claim he suffered prejudice from this asserted deficiency in Mr. Cosby's performance. Considering Defendant's history of refusing to cooperate in evaluations, there can be no confidence he would have cooperated even if Mr. Cosby had arranged an emergency evaluation. And, considering the trial court's first-hand observations of Defendant's behavior and dilatory conduct over the course of six years, there is no assurance the trial court would have found Defendant incompetent even if an evaluation concluded otherwise.

Second, Defendant claims Mr. Cosby was deficient because his failure to arrange for expert testimony precluded Defendant from relying on mental illness or lack of capacity defenses. [BIC 37-38] At the same time, Defendant effectively concedes Mr. Cosby's performance was not deficient in this regard by acknowledging the prosecution was prepared to offer rebuttal expert testimony to the effect that Defendant was feigning mental illness and cognitive deficiencies. [Supp. CD, 3:51:50 to 3:52:12, 3:57:00 to 3:57:33, 4:01:06 to 4:01:24, 4:08:54 to 4:09:13] This indicates Mr. Cosby's decisions may have represented "a plausible, rational strategy or tactic," which is the antithesis of incompetent performance.

This specific claim of deficient performance also lacks support in the record, because Defendant repeatedly refused to cooperate in evaluations that *might* have

I counted. This all Burgess lied I claim Ev. Bit. 4.5 comply.

35

page 26

EXBH 4,S                                        P^ 27

1  competent to make the choice whether or not he should testify.  The court advised

2  Defendant of his right.  Defendant stated that he was mentally imbalanced and he

3  wanted the jury to be told about his medical problems.  The court found that the

4  concerns represented personal issues not rising to the level of incompetence and

5  denied the motion.

6  {24}    Rule 5-602(B)(2)(b) requires that "[i]f the issue of the defendant's competency

7  to stand trial is raised *during trial*, the trial jury shall be instructed on the issue."

8  (emphasis added).    The reasonable doubt requirement "is implied" under Rule

9  5-602(B)(2)(b) when the issue of competency is reraised at trial.    *Rael*,

10  2008-NMCA-067, ¶ 22 ("[I]f a requirement of reasonable doubt were not read into

11  Rule 5-602(B)(2)(b), any defendant would be able to raise the issue of competency

12  and have the jury decide it even in the absence of the slightest bit of evidence that the

13  defendant was incompetent.  Such a result would be contrary to our well-established

14  guidelines regarding the interpretation of Supreme Court rules.").  However, in the

15  absence of reasonable doubt, the district court need not submit the issue to the jury.

16  *See id.* ¶¶ 22–23, 25.  As such, assertions as to the question of incompetency must be

17  properly substantiated to show reasonable doubt. *See Flores*, 2005-NMCA-135, ¶ 29

18  ("[A] court may consider defense counsel's observations and opinions, but that those

Ex,BH  13  4, C

24                                               paSL 27

EXIBIT #6    page 28

ST. VS ALBERT RAMIREZ  CR-07-434                COURTROOM ONE

| Time | Speaker | Note |
|---|---|---|
| 9:57:26 AM | CHANDLER | **CLOSING ARGUMENT** |
| 10:10:27 AM | CHANDLER | CONTINUES CLOSING ARGUMENT |
| 10:45:29 AM | | CONTINUES CLOSING ARGUMENT |
| 10:46:27 AM | COSBY | **CLOSING ARGUMENT** |
| 10:58:56 AM | | CONTINUES CLOSING ARGUMENT |
| 11:30:00 AM | CHANDLER | **BRIEF REBUTTAL** |
| 11:39:16 AM | | CONTINUES BRIEF REBUTTAL |
| 11:40:01 AM | COURT | READS INSTRUCTION 19 BEFORE DELIBERATION IS BEGUN |
| 11:41:14 AM | COURT | ANNOUNCES ALTERNATES |
| 11:42:36 AM | | **JURY EXCUSED TO BEGIN DELIBERATION AND ALTERANTES EXCUSED** |
| 11:43:09 AM | DFT | DFT WANTS TO SAY SOMETHING |
| 11:44:05 AM | COURT | YOU CANNOT SAY ANYTHING |
| 11:44:13 AM | OFF RECORD | |
| 3:03:40 PM | | JURY SEATED IN BOX |
| 3:04:08 PM | COURT | READS THE VERDICT GUILTY COUNT 1 1ST DEGREE MURDER |
| 3:04:45 PM | | GUILTY COUNT 2 TAMPERING WITH EVIDENCE |
| 3:04:58 PM | | GUILTY COUNT 3 TAMPERING WITH EVIDENCE |
| 3:05:14 PM | COURT | DFT WISHES TO HAVE THE JURY POLLED, JURY POLLED BY NUMBER |
| 3:06:35 PM | COURT | READS FINAL INSTRUCTION TO JURY BEFORE EXCUSED |
| 3:07:13 PM | | **JURY EXCUSED FROM SERVICE** |
| 3:07:51 PM | CHANDLER | STATES REQUESTS TO MOVE INTO SENTENCING |
| 3:08:07 PM | COSBY | ASKS FOR A 60 DAY EVALUATION |
| 3:08:21 PM | CHANDLER | THIS SENTENCE IS A LIFE PLUS SIX YEARS |
| 3:09:02 PM | COURT | IT IS MANDATORY TO LIFE |
| 3:09:15 PM | COSBY | HE HAS A RIGHT TO AN ALLUCITION |
| 3:09:40 PM | COURT | WE WILL SENTENCE AFTER PRESENTENCE REPORT |
| 3:09:59 PM | COSBY | REQUESTING A 60 DAY EVALUATION |
| 3:10:16 PM | COURT | ORDER THE PRE SENTENCE REPORT , |
| 3:10:31 PM | RECESS | |

Exibit 6    TRIED to Alert Court of Conflict of Intrest Between rowsel and I, and mark Record page 28

10/11/2013    I was Dinial.

*Exbit 7*

**Patient:** 14154.1 - ALBERTO J. RAMIREZ                    Page 2
**DOB:** ████ 1988
**SSN:** ████ 793

*Page 29*

**Date:** 04/17/2007 12:15
**Provider:** KIRAN SHARMA MD

**Musculoskeletal system:**
    General/bilateral: ° Musculoskeletal system: normal
    **Knee:**
        General/bilateral: • Knees showed abnormalities ° No tenderness on palpation of the knee ° No
        pain was elicited by motion of the knee ° Knees demonstrated normal movement ° Knees
        demonstrated no muscle weakness
        Right knee: • Examined
        Left knee: • Examined

**ASSESSMENT**
Bilateral knee pains

*I was Injured*

**PLAN**
KIRAN SHARMA MD ordered
• Urinalysis and urine drug screen
• CBC
• A comprehensive metabolic panel
• Serum TSH level
• An X-ray of both knees
• Consultation with a physical therapist
Refer to MHR for counselling and furtehr evaluation
trying to call mom to find out more about pts mental health, unable
to reach her

**KIRAN SHARMA MD**

**Entered data sealed by: KIRAN SHARMA - LCBS    Date: 04/17/2007 14:36**

*Exbit 7.*



*Page 29*

Page 2

Patient:    14154.1 - ALBERTO J. RAMIREZ
DOB:        ████ 1988
SSN:        ████ 7793

Date:       04/24/2007 11:30
Provider:   KIRAN SHARMA MD

Anxiety disorder NOS

## PLAN
Motrin 600 MG TABS, SIG:tid, Qty:21, Days:7, Refills:0
Lexapro 10 MG TABS, SIG:qd, Qty:30, Days:30, Refills:2
Refer to unm orthopaedics
pt has anger issues and is somatising
detailed discussion with brother about pts visits
otc knee brace, pt needs pshychiatric help
refer to MHR, pt is having paranoia

KIRAN  SHARMA MD

Entered data sealed by: KIRAN SHARMA - LCBS    Date: 04/24/2007 11:14

EXIBIT 7

ST. VS ALBERT RAMIREZ  CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 3:06:50 PM | | AWARE OF BROTHER BEING PLACED IN FOSTERCARE |
| 3:07:31 PM | | GIVING STATEMENT TO DETECTIVE ON JULY 12TH THE DAY OF SHOOTING |
| 3:08:35 PM | | TOLD MEMBERS OF JURY NEVER SAW HIM ACT OUT, HE WOULD GET UPSET |
| 3:09:22 PM | | DOES NOT REMEMBER WHAT SHE TOLD DETECTIVE, NOW SHE REMEMBERS WHAT SHE TOLD DAVID LOERA |
| 3:11:35 PM | | CONTINUES TO REFER TO STATEMENT SHE MADE |
| 3:12:59 PM | | **BENCH CONFERENCE** |
| 3:13:50 PM | CHANDLER | CONTINUES TO REFER TO HER STATEMENT |
| 3:14:33 PM | | GO BACK TO THE PHONE CALL , HE WAS MAD AT YOU THE DAY BEFORE THE SHOOTING,"WHAT IS WRONG WITH BEING MAD EVERYBODY GETS UPSET |
| 3:15:09 PM | | I DID NOT KNOW HE WAS TRYING TO GET A GUN |
| 3:16:00 PM | | REFERS TO HER STATEMENT |
| 3:16:06 PM | COSBY | PAGE AND LINE PLEASE |
| 3:16:20 PM | | NO I DID NOT KNOW, EVERYBODY KNEW NOT TO GIVE HIM A GUN |
| 3:16:55 PM | | TRAINING , EDUCATION AND EXPERIENCE |
| 3:17:05 PM | | YOU WANTED TO KNOW WHY HE DID THAT WHEN HE CALLED FROM JAIL, NOBODY WAS THERE WHEN IT HAPPENED |
| 3:18:13 PM | | YOU DO NOT KNOW WHAT HAPPENED AT 512 W. 6TH, "I WAS NOT THERE" |
| 3:19:18 PM | | YOU HAVE BEEN TALKING TO HIM EVERY NIGHT |
| 3:19:42 PM | | **BENCH CONFERENCE** |
| 3:20:41 PM | COSBY | **RDEX -** ABOUT YOUR STATEMENT ABOUT WHAT YOU ARE SAYING YOU WERE TELLING YOUR BROTHER TO APOLOGIZE TO YOUR MAMA |
| 3:21:58 PM | | NOT SURE WHY HE WAS WEARING CRUTCHES |
| 3:22:30 PM | CHANDLER | SPECULATION OBJECTION |
| 3:22:40 PM | COSBY | RESPONSE ABOUT WHO GAVE HIM THE GUN "HE WAS HAVING ISSUES ABOUT HE THOUGHT SOMEBODY WAS AFTER HIM" |
| 3:24:25 PM | | SHE ALREADY KNEW ABOUT SHOOTING BECAUSE HER MOM CALLED HIM |
| 3:24:37 PM | | SHE BARELY TALKED TO ELADIO, NEVER CLAIMED HIM AS STEP FATHER |
| 3:24:59 PM | CHANDLER | **RXEX -** YOUR CONCERN WAS ABOUT ALBERT'S STATE OF MIND |
| 3:25:49 PM | COSBY | OBJECTION |

27    10/10/2013

EXIBIT 7

page 31

Exhibit 7

32 page

ST. VS ALBERT RAMIREZ CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|---|---|---|
| 12:56:09 PM | | JURY BEING SEATED IN BOX |
| 12:57:14 PM | | COURT IN SESSION , JURY DFT AND ALL PARTIES PRESENT |
| 12:57:56 PM | CHANDLER | **XEX -** ABOUT YOUR TIME IN SCHOOL, I DON'T KNOW JUST GOT HELD BACK |
| 12:59:19 PM | | I CANNOT ANSWER IF I DID GOOD IN SCHOOL |
| 12:59:43 PM | | YOUR DAD WOULD PROVIDE YOU $500 A MONTH TO STAY IN SCHOOL, WHEN YOU GET SOCIAL SECURITY, IT IS THE TRUTH IT WAS COMING FROM MY DAD'S MONEY |
| 1:01:03 PM | | YOU HAD A DRIVER'S LICENSE IN 2007, YOU HAD A CELLPHONE, YOU PAID THE CELLPHONE BILL AND YOU HAD A JOB AT MCDONALDS |
| 1:02:25 PM | | ONLY DID CERTAIN THINGS AT MCDONALDS |
| 1:03:05 PM | | YOU SPEAK ENGLISH AND SPANISH , I UNDERSTAND A LITTLE BIT AND CAN SPEAK A LITTLE BIT, I AM AMERICAN |
| 1:04:36 PM | | YOU FIRST MET ELADIO WHEN YOU WERE APPROX. 5 OR 6 YEARS OLD |
| 1:05:36 PM | | YOU DIDN'T LIKE ELADIO ROBLEDO "THAT IS AN IMPROPER QUESTION TO ASK" I LIKE EVERYBODY I JUST DON'T LIKE SOME THINGS PEOPLE DO, THAT IS HOW IT IS SUPPOSED TO BE ι |
| 1:06:12 PM | | ELADIO AND YOUR MOTHER LIVED AT 512 W. 6TH ST. "WHEN" JULY 2007 |
| 1:07:27 PM | | YOU HEARD THAT OFFICER AGUILAR SERVED YOU THE NO TRESPASS ORDER, "YES" |
| 1:07:44 PM | | AFTER RECEIVING THE NO TRESPASS ORDER YOU RETURNED BACK TO THE HOUSE WHERE DEBRA LIVED |
| 1:08:40 PM | | AT ONE TIME YOU BROKE OUT THE FRONT WINDOW OF YOUR MOTHER AND ELADIO'S HOUSE |
| 1:09:40 PM | | ARE YOU AWARE YOUR MOTHER CALLED THE POLICE ABOUT THAT INCIDENT "NOT AWARE, IF SHE DID OR NOT" |
| 1:10:12 PM | | YOU BROKE OUT A CAR WINDSHIELD WITH YOUR CRUTCHES, DID SHE CALL THE COPS ABOUT THAT "YES" |
| 1:10:58 PM | | YOU KNOW WHERE CROSSHAIR GUN SHOP IS IN CLOVIS "YES" |
| 1:11:15 PM | | YOU WENT IN THERE AND DEMANDING A GUN |
| 1:11:42 PM | | YOU WANTED A REVOLVER "I JUST ASKED FOR GUN" |
| 1:12:27 PM | | YOU FILLED OUT PAPERWORK TO PURCHASE GUN |
| 1:12:46 PM | | YOU DROVE A CAR TO GUN SHOP |
| 1:13:42 PM | | YOU WERE TRYING TO GET THINGS RIGHT |

10/10/2013                    Exhibit 7                    7 of 16    page 32

Exibit 8

page 33

its discretion in denying a mistrial.

**D.    Defendant was not prejudiced by the jury seeing his leg restraints**

{39}    Defendant's fourth issue is that he was prejudiced when the jury saw his leg restraints when he stumbled as he stood up at one point during the first day of trial. However, he concedes that he did not ask the court to make a finding of prejudice or declare a mistrial and asks this Court to review the possibility that the jury saw his leg restraints for fundamental error. The State argues that the factual record does not support Defendant's contention that the jury saw him shackled because all the parties agreed that the table skirt blocked the jury's view.

{40}    "To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked." Rule 12-216(A) NMRA. When the claim is not properly preserved, we consider the claim under the fundamental error exception to the preservation rule. *See State v. Holly*, 2009-NMSC-004, ¶¶ 40-42, 145 N.M. 513, 201 P.3d 844 (reviewing defendant's claim that a juror may have seen defendant handcuffed for fundamental error because the defendant did not request a mistrial, did not ask the trial court to strike the juror, or seek a finding of prejudice), *State v. Silva*, 2008-NMSC-051, ¶ 11, 144 N.M. 815, 192 P.3d 1192 (citing Rule 12-216(B)(2) NMRA).



Exibit 8

page 33

page 34

for his expert's presence if sur-rebuttal was allowed. **[Supp. CD, 3:55:15 to 3:56:35, 4:02:23 to 4:02:35, 4:08:18 to 4:08:53]**

Shortly thereafter, based on the defense's agreement not to pursue jury instructions or argue competency, insanity or the inability to form specific intent **[*See* Supp. CD, 3:51:56 to 3:52:00]**, the prosecution announced it was forgoing presentation of a rebuttal case and releasing its expert witnesses. **[CD 10-10-13, 4:34:39 to 4:36:02]** When Defendant objected to Mr. Cosby's strategy, the trial court assured Defendant he was being well-represented and explained it would not have approved Mr. Cosby's jury instruction decisions if doing so would deny Defendant a fair trial. **[CD 10-10-13, 4:36:02 to 4:39:12]** Defendant persisted Dr. Schwartz's testimony was essential to his having a fair trial and to his appeal. **[CD 10-10-13, 4:41:38 to 4:42:15]**

The trial court instructed the jury on first-degree murder, second-degree murder and, over the prosecution's objection, voluntary manslaughter. **[CD 10-11-13, 9:01:50 to 9:03:07;** *see* **RP 663; RP 664; RP 665-66]**

### IV.   Disposition Below

The jury deliberated approximately three hours before returning verdicts finding Defendant guilty of first-degree murder, and the two counts of tampering with evidence. **[CD 10-11-13, 11:45:13 to 3:06:20]**





9X1519

ST. VS ALBERT RAMIREZ  CR-07-434                        CR1 CHAMBERS

| Time | Speaker | Note |
|---|---|---|
| 10:40:24 AM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY DFT AND ALL PARTIES PRESENT |
| 10:40:41 AM | COSBY | HAS ONE OTHER ISSUE, MY CLIENT HAS TOLD ME THAT HE WAS SEXUALLY ASSAULTED ETC. |
| 10:42:10 AM | | HE WANTS TO TESTIFY THAT MR. ROBLEDO AS WELL AS MR. SAIZ SEXUALLY ASSAULTED HIM |
| 10:42:28 AM | CHANDLER | THERE IS NOTHING THAT SUPPORTS THAT PARTICULAR CLAIM, IT HAS NEVER BEEN REPORTED, WHEN DID THE HAPPENED , IT IS THE TIMELINE, |
| 10:43:36 AM | COSBY | UPON ON HIS FIRST STATEMENT, WHEN MY CLIENT FIRST WENT TO HIS HOUSE MY CLIENT TOLD HIM HE HAD BEEN SEXUALLY ASSAULTED, |
| 10:44:17 AM | COURT | HERE IS THE PROBLEM WE RUN INTO, THE KIND OF THE TIMING, THE COURT IS OF THE OPINION THAT I WILL NOT ALLOW IT, THRE WAS NOTHING TO SUGGEST THAT IN HIS OPENING STATEMENT, IF THE STATE IS OF THE OPINION THAT WE CREATE AN ERROR BY EXCLUDING THIS, I WILL RULE AGAINST IT |
| 10:45:42 AM | DFT | ABOUT THIS MATTER, THE REASON I DID NOT SAY ANYTHING IN MY OPENING STATEMENT |
| 10:46:16 AM | COURT | YOUR ATTORNEY MR. COSBY IS DOING AN EXCELLENT JOB, I HAVE LET YOU TALK, THE PART I AM GOING TO RESTICT THAT WE ARE NOT GOING TO GO INTO THIS AREA |
| 10:47:12 AM | DFT | I DID NOT GET ASKED ABOUT BROKEN WINDOW, THIS IS MY LIFE , I FEEL LIKE I AM NOT HAVING A FAIR TRIAL, IF I DID NOT GET ASKED A QUESTION ABOUT SEXUAL ASSAULT |
| 10:48:28 AM | DFT | I LET MAXINE SWARTZ THAT I WAS SEXUALLY ASSAULTED, ETC |
| 10:49:11 AM | | I TRIED TO EXPLAIN TO DR. FINK , IT IS NOT FAIR I THINK IT IS RELEVENT |
| 10:49:47 AM | COSBY | THERE IS RECORD THAT HE DISCUSSED WITH PSYCOLOGIST OF SEXUAL ASSAULT, THERE IS NO EVIDENCE BEFORE THE HOMICIDE |
| 10:51:54 AM | COURT | WILL GIVE YOU FIVE MINUTES |
| 10:52:21 AM | DFT | WHEN MR. COSBY STATED THAT I WAS MELINGERING , AND PSYCHOLOGIST BELIEVED ME, ABOUT FOSTER CARE I WAS EMBARRASED MY MOTHER KNEW, EXPLAINS WHAT HAPPENED WITH ELADIO |
| 10:54:59 AM | | REGARDING SAM SAIZ HE USED TO GO OVER THERE WHEN HE WAS IN JUNIOR HIGH, ETC. |
| 10:58:18 AM | COURT | I'VE GOT YOUR STORY, AFTER HEARING THE STORY IT IS NOT RELEVENT |

10/10/2013                    EXIBIT  9                    page 35

*Exhibit 9*

## II. Defendant has not satisfied the requirements for consideration of a claim of ineffective assistance of counsel on direct appeal.

The facts contained in the record oif Defendant's case do not establish a prima facie case of ineffective assistance of counsel warranting remand of Defendant's case for an evidentiary hearing. *State v. Crocco*, 2014-NMSC-016, ¶ 14. If Defendant wishes to pursue his claim of ineffective assistance of counsel, he should consider pursuing a habeas corpus proceeding. *See id.* ¶ 13; *see* Rule 5-802 NMRA.

When analyzing a claim of ineffective assistance, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). This Court measures a claim of ineffective assistance of counsel against *Strickland*'s two-part test, which requires a defendant to show first that counsel's performance "fell below that of a reasonably competent attorney" and then that he suffered prejudice because of the deficient performance. *State v. Ortega*, 2014-NMSC-017, ¶ 55.

A counsel's performance is not deficient where "a plausible, rational strategy or tactic" could explain counsel's conduct. *Id.* To show prejudice a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*



33    *Exhibit 9* page 36

*Exhibit 9*    *3 case*

That afternoon, to demonstrate his lack of competency, Defendant described a litany of psychological ailments **[CD 10-9-13, 1:37:36 to 1:38:55]**, and claimed he was unable to understand the proceedings. **[CD 10-9-13, 1:43:46 to 1:44:11]** Later, notwithstanding Mr. Cosby's expressed concern about Defendant's lack of cooperation, Defendant made statements evincing an understanding of the implications of testifying and of the jury's role in weighing the evidence. **[CD 10-9-13, 2:41:00 to 2:43:54]** He pointedly reminded the trial court that during his previous trial he cried hysterically and told the court he could not function properly when hysterical. **[CD 10-9-13, 2:44:45 to 2:45:18]**

The next day, Defendant demonstrated his continuing understanding of the process, including the value of the appellate record, by forcing creation of a record regarding Mr. Cosby's decisions about the witnesses who would testify, and by making a statement about how he had not been properly evaluated and represented, the trial court's disregard for his outwardly irrational behavior and the trial court's failure to consider how the jury might be affected by media coverage of his trial. **[*See, e.g.,* CD 10-10-13, 9:21:02 to 9:22:38, 9:23:18 to 9:25:59]** Significantly, although Defendant was complaining he could not understand when people communicated with him, he recognized the court's authority by thanking it for allowing him to speak. **[CD 10-10-13, 9:22:35 to 9:22:42]** He telegraphed a clear understanding of the significance of the proceedings by saying he was fighting for



30 *Exhibit 9*    *page 37*

EXIBIT 9

told the court that he had been offered a plea of guilty but mentally ill. He stated "Which I was very confused of the charges I have in the first, they said it's… I have no clue what those are for or what they're about, I have no clue about the first three I just know the words, the names and the guilty but mentally I have no idea what it's about or nothing he tried to explain but like I said when they communicate it's hard for me to understand and it takes me a long time I'll read it over but also that, …" Mr. Ramirez paused for a breath and then continued in a run-on fashion that he was told that doctors were going to be called to testify against him and that he was never notified and he was unable to call Dr. Maxann Shwartz in his defense. He also complained that he was unable to get a private investigator to call "plenty of witnesses" which affected his defense.

He also stated that he was a paranoid schizophrenic with paranoid delusions and hallucinations and never got sent for a ninety-day evaluation and was only evaluated for an hour or two, and "that's an improper evaluation in my opinion and I feel like I've been treated unfairly." Mr. Ramirez stated that "there was plenty of media this whole week" that the jury probably heard and "everybody's asking me all kinds of questions and I just say I don't know what's going on because I have no way to see newspapers or radio or anything,…" Mr. Ramirez continued,

EXBIT 8

page 38

EXBIT 10    3 4 page

1 observations and opinions alone cannot trigger reasonable doubt about the defendant's

2 competency.").

3 {25}    Here, defense counsel merely stated his beliefs that Defendant was not capable

4 of assisting in his own defense and that Defendant did not have the capacity to

5 determine whether or not to testify. In response, throughout the trial, the judge did

6 everything within his power, under the rules, to address the Defendant's concerns with

7 his physical condition and his inability to understand the proceedings, allowing a

8 nurse to examine him during the trial and consistently explaining to the Defendant

9 what was happening. Accordingly, the district court did not abuse its discretion in

10 denying Defendant's request for a forensic evaluation during trial because relying

11 only upon his own observations, defense counsel failed to substantiate his assertions.

12 {26}    Further, had the district court found reasonable doubt as to Defendant's

13 competency to stand trial, Defendant would not have been entitled to a competency

14 evaluation after the commencement of trial. Once the jury is sworn, the Defendant's

15 only recourse is to request a jury instruction on the issue of competency. *See* Rule 5-

16 602(B)(2)(b). Defendant failed to preserve this issue by not submitting an instruction

17 on competency to the court or objecting to the instructions as offered. *See State v.*

18 *Lujan*, 1975-NMSC-017, ¶¶ 8-9, 87 N.M. 400, 534 P.2d 1112 ("Defendant did not



EXBIT 10    page 34

Exibit 10

forestall testimony by one of the prosecution's expert witnesses (who was present in the courtroom during Mr. Ramirez's testimony). This may have been because the defense did not have any other expert witnesses at trial to testify. Not having expected that Mr. Ramirez's competency to stand trial would arise and having already foregone any defenses that would require expert testimony, defense counsel was simply attempting to keep the state from putting its witness on the stand for rebuttal. **[RP 657-58. The proceedings are summarized in the tape logs, but were in chambers and not included on the audio CD in the record proper]**

Mr. Ramirez also asserts that his counsel failed to call many witnesses he wished to have called, and also that he made promises to Mr. Ramirez if he testified that were not kept. These issues, however, are not reflected in the record. Matters not of record cannot be reviewed on appeal. *See State v. Martin*, 1984-NMSC-077, ¶ 28, 101 N.M. 595.

C.    There was improper commentary on Mr. Ramirez's right to silence

This argument is made pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127 and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655. The review of a district court's denial of a mistrial is for an abuse of discretion. *State v. O'Neal*, 2008-NMCA-022, ¶ 28, 143 N.M. 437. The legal question



Exibit 10

page 40

EXIBIT 10

4 | page

1 (citation omitted). "Generally, only an evidentiary hearing can provide a court with

2 sufficient information to make an informed determination about the effectiveness of

3 counsel." *Id.*; *see also State v. Baca*, 1997-NMSC-059, ¶ 25, 124 N.M. 333, 950 P.2d

4 776 ("A record on appeal that provides a basis for remanding to the trial court for an

5 evidentiary hearing on ineffective assistance of counsel is rare. Ordinarily, such

6 claims are heard on petition for writ of habeas corpus . . . ."); *State v. Telles*, 1999-

7 NMCA-013, ¶ 25, 126 N.M. 593, 973 P.2d 845 (stating that the "proper avenue of

8 relief [from ineffective assistance of counsel] is a post-conviction proceeding that can

9 develop a proper record").

10 {32}    Though the district court repeatedly observed that defense counsel was

11 providing excellent representation to Defendant, the court did not hold an evidentiary

12 hearing. Therefore, the record before us is insufficient to establish that defense

13 counsel was ineffective or that the decisions made were a plausible trial tactic or

14 strategy. Accordingly, we reject this claim without prejudice to Defendant's ability

15 to bring such a claim via habeas corpus proceedings.

16 **C.    The district court did not abuse its discretion denying a mistrial based on**
17 **Deputy Loomis' commentary on Defendant's silence**

18 {33}    Defendant's third issue is that the court erred in denying his motion for a

19 mistrial based on an alleged improper comment about Defendant's silence after he had



EXIBIT 10

page
(4)

EXHIBIT 10    page 11

ST. VS ALBERT RAMIREZ  CR-07-434                    CR1 CHAMBERS

| Time | Speaker | Note |
|------|---------|------|
| 3:54:07 PM | CHANDLER | GOING TO ASK FOR A RULING FROM THIS COURT IF DEFENSE IS GOING TO ALLOW SUR REBUTTAL |
| 3:54:50 PM | COURT | YOU TAKE POSITION THAT HE IS PRECLUDED, THE COURT HAS LEE WAY |
| 3:55:42 PM | COSBY | YOU ARE CALLING THEM ON REBUTTAL |
| 3:56:04 PM | COURT | I DO NEED TO REMIND EVERYBODY THAT I EXCEPT PLEAS |
| 3:56:17 PM | MORRIS | RESPONDS |
| 3:56:36 PM | COSBY | THERE HAS BEEN NO DISCLOSURE, IF THEY CALL I WILL CALL MS. SWARTZ ON SIR REBUTTAL, LAST FINDING I HAD HE WAS COMPETENT, I AM WITHDRAWING COMPETENCY, AND IF I |
| 3:58:39 PM | COSBY | HE NEVER EXPRESSED ANY HATRED TO PLAN A MURDER |
| 3:59:02 PM | CHANDLER | IF WE CALL OUR EXPERTS |
| 3:59:11 PM | COURT | IT IS A MATTER OF JUSTICE |
| 3:59:32 PM | COURT | WE ARE NOT IN THE KIND OF SITUATION WHERE YOU HAVE A SURPRISE |
| 3:59:55 PM | CHANDLER | WE DID NOT DROP IT JUST NOW, |
| 4:00:09 PM | COURT | THOSE REPORTS ARE AGED |
| 4:01:04 PM | CHANDLER | WHAT HE IS DOING TODAY |
| 4:01:23 PM | COSBY | WILL WITHDRAW COMPETENCY AND GUILTY BUT MENTALLY ILL |
| 4:02:03 PM | CHANDLER | HE CAN WITHDRAW BUT HIS ARGUEMTN HIS CLIENT IS SEEING THINGS AND HEARING THINGS |
| 4:02:25 PM | COURT | IF WE TAKE THIS TESTIMONY AND TAKE WILL TAKE |
| 4:03:14 PM | COSBY | MOTION AS FAR AS THE TWO COUNTS AND DOUBLE JEOPARDY ISSUES, IT WOULD BE A VIOLATION , IT WOULD BE ONE ACT OF TAMPERING WITH EVIDENCE, THE PHONE CALL WAS ATTEMPTING |
| 4:05:00 PM | CHANDLER | THE MOTION THAT MR COSBY MADE |
| 4:05:10 PM | COURT | THERE IS EVIDENCE , THAT THE PANTS AND GUN NOT FOUND WERE PLACED AT A DIFFERENCE PLACE, THE FACT THAT THE BRITCHES WERE FOUND AND NOT THE GUN DENIES THE MOTION |
| 4:05:51 PM | CHANDLER | |
| 4:05:59 PM | MORRIS | WHY DOES HE WANT TO RAISE SIR-REBUTTAL |
| 4:06:31 PM | COSBY | SIR-REBUTTAL IS MATTERS |
| 4:06:50 PM | CHANDLER | HE CHOSE NOT TO CALL  WITNESS |
| 4:07:21 PM | COURT | THE RULE AGAINST 90 DAYS, NOT PREPARED RIGHT NOW TO MAKE THE RULE |
| 4:08:21 PM | CHANDLER | ALLOWS US TO PUT ON OUR REBUTTAL |
| 4:08:49 PM | COURT | COMMENTS |

10/10/2013                    EXHIBIT 10



Exhibit 10                                                    Utica p

relates that "for more than two decades, there has been the suggestion that mental health clinicians do not like patients with personality disorders…" and that "[t]hese attitudes may adversely affect delivery of health care provision and as such make it more difficult for patients with personality disorder and comorbid mental disorders to access and receive appropriate management for either disorder." Peter Tyrer, Ruger Mulder, et al, "Personality disorder: a new global perspective," World Psychiatry, Feb. 2010; 9(1):56-60, found online at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2816919/ .

The two cases, *Flores* and Mr. Ramirez's, have a parallel structure: The defendant was found incompetent, sent to Las Vegas and hastily treated to competency, then sat in jail (possibly decompensating) for months on end while waiting on a trial date.

In summary, there was substantial evidence that Mr. Ramirez needed to have his competency to stand trial reevaluated. His case more than meets the bar set by *Flores* for a reevaluation. The desire to move his case should not have taken precedence over Mr. Ramirez's need for a reevaluation. The failure to have him reevaluated created a substantial risk that he was tried while incompetent to stand trial, the very risk that raising competency is supposed to ameliorate.

Exhibit 10

page 4



Rule 5-602(B)(1) NMRA. Rule 5-602(B)(2)(b) states that if competency to stand trial is raised during trial, the jury "shall be instructed on the issue." In this case no such instruction was proffered or given.

An assertion of incompetency by defense counsel must be substantiated. *Flores*, 2005-NMCA-135, ¶ 20 (citation omitted). The evidence described above substantiates counsel's assertion. "[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required…" *Drope*, 420 U.S. 162, 180. "Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." *Id.* at 181.

Mr. Ramirez's case can be distinguished from the recently issued decision of this Court in *State v. Solomon*, No. 33,975 (N.M. Sup. Ct. Aug 4, 2014) (non-precedential). In *Solomon* this court found that a District Court did not abuse its discretion by not ordering a mental health evaluation to see if the defendant was competent to stand trial. In *Solomon* the defense attorney never actually made a motion for a competency evaluation. *Id.* ¶ 12.





Exhibit 10

½page

deal with his outburst and attempt to fire his own attorney. Mr. Ramirez needed to be able to assist his attorney. *See State v. Rotherham*, 1996-NMSC-048, ¶ 13, 122 N.M. 246. "Proper assistance encompasses more than merely providing information but is extended to the comportment in the courtroom before a jury." *U.S. v. Williams*, 113 F.3d 1155, 1160 (C.A.10 (N.M.) 1997) (citation and internal quotation marks omitted). As this brief lays out in the accounts of his testimony, Mr. Ramirez lacked the ability to comport himself during the trial. The judge, in a vast understatement, noted that Mr. Ramirez was difficult to represent. **[10-10-13 CD B 2:07:30-2:41:36]**

Earlier, outside the presence of the jury Mr. Ramirez complained that the trial was "not fair" because he wasn't being asked questions that he thought were necessary. He made allegations of having been sexually assaulted by a witness. **[10-10-13 CD B 10:40:41-10:58:56]** The judge himself stated that he had never seen a defendant act the way Mr. Ramirez was acting. **[10-10-13 CD B 3:45:47-3:46:20]**

Defense Counsel had asserted that Mr. Ramirez was incompetent and made a motion for a recess to allow for a reevaluation of his competency. "The issue of a defendant's competency to stand trial may be raised by motion, or upon the court's own motion, at any stage of the proceedings."

40

Exhibit 10   Page 44

Exhibit 10

1  representation, motions he wanted filed, and other issues he indicated that he would

2  present in his appeal.

3  {29}     Defendant then demanded to be the first defense witness so he could

4  communicate his defense.   During his direct examination, Defendant refused to

5  answer many questions directly saying he wanted to "explain everything." Defendant

6  then attempted to dismiss his counsel in front of the jury, forcing the court to remove

7  the Defendant and recess the trial.   Later, after the parties rested, Defendant had

8  another outburst, complaining that he had a right to know what the jury instructions

9  would be so that he could file motions.   The court told Defendant that he was being

10  well-represented and the instructions were fair.

11  {30}     At Defendant's sentencing hearing, Defendant complained to the court that his

12  defense counsel had failed to effectively represent him and that he did not receive a

13  fair trial.   Defendant argued that the jury would not have convicted him had it fully

14  understood that he was the victim.   The district court assured Defendant that he had

15  received excellent representation and pronounced the sentence.

16  {31}     "This Court has repeatedly stated that ineffective assistance of counsel claims

17  are best served through habeas corpus proceedings so that an evidentiary hearing can

18  take place on the record."   *State v. King*, 2015-NMSC-030, ¶ 33, 357 P.3d 949

16

Express dissatisfaction

Exhibit 3

page 45

EXIBIT 10                                                            UNPROOF

1  competency by Dr. Fink in January 2013, Defendant spoke directly to the court,

2  though he was represented by counsel, and asked for a fifth forensic evaluation to

3  determine his competency. Defendant argued that a new evaluation would show he

4  was suffering from "psychosomatic delusions and hallucinations and severe

5  depression and anxiety." The judge listened to Defendant's request and then denied

6  it.

7  {17}    This case is similar to *State v. Flores*, 2005-NMCA-135, 138 N.M. 636, 124

8  P.3d 1175. In *Flores*, the Court of Appeals addressed whether an unsupported

9  declaration against competency made prior to trial rose to the level of reasonable

10 doubt. In that case, just before trial, the defendant's counsel asked the court to find

11 that the defendant was incompetent to stand trial. *See id.* ¶ 7. The defendant's

12 counsel cited her own experience with the defendant as the basis of the request, stating

13 her belief that his condition had deteriorated because he had been held in isolation

14 since the competency hearing. *See id.* ¶ 8. The Court held that while "a court may

15 consider defense counsel's observations and opinions . . . those observations and

16 opinions alone cannot trigger reasonable doubt about the defendant's competency."

17 *Id.* ¶ 29. The Court also concluded that the testimony of experts is not required to

18 support a contention of incompetency, but "[i]nstead, a defendant could offer an

9

EXIBIT 10                                                            page 4

EXHIBIT 10

1 | offer an instruction on competence, nor did he object to the instructions given the jury.

2 | Therefore, this issue was not properly preserved for appeal.").

3 | **B.    Defendant did not receive ineffective assistance of counsel**

4 | {27}    Defendant's second argument is that he was denied effective assistance of

5 | counsel because defense counsel "lacked the necessary assistance of [Defendant]

6 | himself"; failed to "'seek the assistance of necessary experts,' and if more money was

7 | required to seek such assistance on an urgent basis counsel should have requested it"

8 | (citation omitted); and failed to obtain a reevaluation and attempted to withdraw the

9 | motions to determine competency, resulting in prejudice to Defendant.  Counsel has

10 | abandoned the claims that trial counsel failed to call other witnesses or made promises

11 | to the Defendant because these claims are unsupported by the record.  As such, we

12 | decline to review these claims.

13 | {28}    One week prior to trial, the district court denied Defendant's motion to appoint

14 | new counsel.  Trial commenced as scheduled.  On the fourth day of trial, defense

15 | counsel informed the court of his decision not to call a witness on the record, as it was

16 | against Defendant's wishes.  Defendant then addressed the court, against counsel's

17 | advice, about how his defense had been limited, how his mental illnesses affected him,

18 | the amount of media his case was receiving, the quality of his attorney's


EXHIBIT 15



page 4

interview witnesses and other persons.

Contact was made with the 911 caller, Grace Finkey, who witnessed the incident, recognized the shooter, and contacted law enforcement. The victim, Eladio Robledo Valdez was pronounced deceased while at PRMC. According to the mother of the suspect, Albert has a large blue car, containing all his personal belongings. The vehicle was broken down in front of 511 E. 6th Street. Officers responded to the residence and observed the silver blue Cadillac parked on the street in front of the duplex. The vehicle contains a large amount of clothing and other personal items, possibly belonging to Albert Ramirez. The duplex at 511 E. 6th Street is currently vacant. The front window, facing north is open and raised approximately 8". The front and back doors are locked. The window on the east side of the building is unlocked with the screen removed. There are handprints on the exterior of the glass indicating that the window was pushed up to open the window. There are two cinderblocks under the window to provide easy entry into the window. The suspect, Albert Ramirez may be hiding within the vacant duplex to avoid detection and apprehension by law enforcement.

Based on this I believe that evidence relevant to the shooting may be within the residence or the vehicle described, and located at 511 E. 6th Street, Clovis, Curry County, New Mexico.

Affiant is a full-time salaried, sworn Law Enforcement Officer currently employed with the Clovis Police Department. Affiant's current assignment is Detective with the Special Operations Unit, and member of the Major Crimes Unit.

SUBSCRIBED AND SWORN TO BEFORE ME IN THE ABOVE NAMED COUNTY OF THE STATE OF NEW MEXICO,

THIS _12_ DAY OF _July_ , 2007.

_____
JUDGE

_____
TITLE

_____
AFFIANT

_____
TITLE

APPROVED BY ASSISTANT DISTRICT ATTORNEY _____ ON _July 12, 2007_

EXHIBIT 11,

EXHIBIT 11

EXHIBIT (11)

EV,31+ 11,

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

2007 JUL 13 PM 3: 30

_Diorma Hurst_
CLERK DISTRICT COURT

# STATE OF NEW MEXICO
# COUNTY OF CURRY
# IN THE DISTRICT COURT

STATE OF NEW MEXICO
-VS-

Albert Ramirez,
D.O.B██████'88
SSN: ███-██-7793,

~~and a silver blue Cadillac 4-door bearing Texas license W55HHS~~

D-0905- SW 0200 7 00 001

## AFFIDAVIT FOR SEARCH WARRANT

I, Ricky M. Smith, being dully sworn, on my oath, state that I have reason to believe that on the premises described below, and/or on the person described above:

Residence located at 511 E. 6th Street, Clovis Curry County, New Mexico. Residence is tan stucco with white trim, single story, multi-family dwelling that sits on the south side of East 6th Street facing north, and between Wallace Street and Sheldon Street. The residence is identified with 511 E. 6th Street on a white mailbox, stenciled in black letters. The residence has white trim, with a tan composite roof. The front door is a glass and white metal screen door that faces north. The vehicle is parked on the street in front of the residence.

## IN THE STATE OF NEW MEXICO, COUNY OF CURRY THERE IS NOW BEING CONCEALED CERTAIN PROPERTY, NAMELY:

Firearms, rifles, shotguns, or pistols, ammunition for firearms, and projectiles and missiles that may have been discharged from a firearm. Blood, blood spatter, other genetic material including saliva or other secretions. Other evidence to include fingerprints, skin, hair, and fibers. Clothing, bloodied clothing, to include shoes, shoeprints, trousers, shirts, undershirts, underwear, and socks, and bloodied towels or other cloth.

Albert Ramirez, Date of Birth: ████'88, Social Security Number ████7793, Hispanic male, Approximately 5'5" tall, 120 lbs., black hair, brown eyes

The items listed above have been obtained or are being possessed in a manner which constitutes a criminal offense, are designed or intended for use or which have been used as a means of committing a criminal offense, and would be material evidence in a criminal prosecution. The facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows:

On Thursday, July 12, 2007, at about 1339 hours, Officers of the Clovis Police Department were dispatched to the area of 515 W. 6th Street, in Clovis, Curry County, New Mexico, in reference to a 911 call for shots fired. The caller also relayed that there was a subject on the ground and that the suspect in the shooting had run off on foot to the north using the alley. Officers arrived on scene, noted the male body on the ground. The subject on the ground was subsequently identified as Eladio Robledo Valdez. The officers checked the area for the suspect, identified as Albert Ramirez, a Hispanic male, wearing a white shirt and blue jean shorts. The victim, who resides at 512 W. 6th Street, was on the ground in front of the residence. According to preliminary information provided by the caller, the victim had been shot by the suspect, fallen to the ground, and been shot again. Ambulance personnel arrived and the victim was transported to Plains Regional Medical Center Emergency Room. The scene was secured.

The Major Crimes Unit was activated. Investigators were dispatched to the crime scene at the 512 W. 6th Street and other Investigators were dispatched to the Special Operations Unit of the Clovis Police Department, to

2

# RETURN AND INVENTORY

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

STATE OF NEW MEXICO

-VS-

Albert Ramirez,

D.O.B. ████88

SSN: ████7793,

████████████

and a silver blue Cadillac 4-door bearing Texas license W55HHS

2007 JUL 13  PM 3: 30

D-0905- _____
CLERK DISTRICT COURT

I received the attached Search Warrant on ___07/12/07___ And executed it on ___07/12/07___

at ___2235___ Hours. I searched the person or premises described in the Warrant and left a copy of the Warrant with:

_____None present at scene_____
(name of the person searched or owner at the place of search)

Together with a copy of the inventory for the items seizes. The following is an inventory of the property taken pursuant to the Warrant:

- 1 photo of suspect and unknown black male (Gang Writings)
- 1 paper with writing about shooting people
- 1 letter to Albert Ramirez denying his SSI benefits

This inventory was made in the presence of     **Ricky M. Smith**    and    **Randy Pitcock**

                               Applicant for Search Warrant              Owner or other witness

_____                 _Randy Pitcock_
Signature of Officer or Detective                Signature of Owner or Witness

Return made this _____day of _____, 2007 at _____hours.

_____
(Judge Clerk)

After a careful search, I could not find at the place, or on the person described, the property described in this Warrant.

_____            _____
(Officer)                                     (Date)

EX. B, + 11

**EXHIBIT (()**

Ex ı b ıt 12

3) page

ST. VS ALBERT RAMIREZ  CR-07-434

CR1 CHAMBERS

| Time | Speaker | Note |
|---|---|---|
| 10:58:56 AM | CHANDLER | ON XEX GONNA ASK THIS COURT FOR ABOUT 10 OR 15 MINUTES WOULD LIKE TO DISCUSS WITH CO COUNSEL, SAID HE HAS NOT TESTIFIED BEFORE, I RENEW MY |
| 11:00:15 AM | COSBY | IT WAS NOT A JURY TRIAL IT WAS A BENCH TRIAL, HE BATTERED A TRANSPORT OFFICER |
| 11:01:15 AM | COURT | IF XEX TRIGGERS I WILL CHANGE MY RULING |
| 11:01:44 AM | RECESS | |
| 3:44:06 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY, DFT AND ALL PARTIES PRESENT |
| 3:44:27 PM | CHANDLER | DEFENSE HAS RESTED AND HAVE GIVEN US A COUPLE OF INSTRUCTIONS GUILTY BUT MENTALLY ILL, HE IS ATTEMPTING TO RAISE COMPETENCY, OUR REBUTTAL WITNESSES ARE GOING TO TESTIFY THAT THEY HAVE EXAMINED THE DFT, ETC. |
| 3:45:47 PM | COURT | HAVE NOT SEEN A DFT THE WAY THIS TRIAL HAS UNFOLDED |
| 3:46:20 PM | CHANDLER | WE HAVE CASELAW |
| 3:46:30 PM | COSBY | I AM NOT GOING TO SUBMIT A COMPETENCY INSTRUCTION, |
| 3:46:46 PM | CHANDLER | WE ARE NOT OBJECTING, THE ONLY MENTAL ILLNESS THAT PROBABLY COULD HAVE BEEN TESTIFIED, DFT TOOK STAND AND HE DID NOT RAISE ISSUE |
| 3:47:42 PM | COSBY | THE GBMI WAS AVAILABLE, BUT THAT DOES NOT DEPRIVE HIM OF THE RIGHT TO HAVE IT SUBMITTETD, GBMI VERDICT IS NOT SOMETHING TO GIVE, HE IS ENTITLED WE HAVE TENDERED IT, |
| 3:48:58 PM | COSBY | OPPOSES TO REBUTTAL WITNESSES BEING CALLED |
| 3:49:17 PM | COURT | BASIS UPON |
| 3:49:34 PM | MORRIS | THEY WERE CALLED , THEY ALSO CAN TESTIFY AS TO THEIR OPINION |
| 3:50:52 PM | | HE LISTED BOTH OF THESE DOCTORS, HE HAS NOT LISTED DR. SWARTZ |
| 3:51:10 PM | CHANDLER | YOU CANNOT BRING IN AN EXPERT YOU HAVE NOT DISCLOSED |
| 3:51:27 PM | COURT | AS A PRACTICAL MATTER WHAT YOU DO IN YOUR INSTRUCTIONS YOU HAVE A GUILTY AND GUILTY BUT MENTALLY ILL, |
| 3:52:06 PM | COSBY | WE ARE NOT GOING TO ASK FOR SELF DEFENSE, WILL WITHDRAW BECAUSE OF MENTAL ILLNESS OR DEFECT |
| 3:52:52 PM | OFF RECORD | |

Ex ı b ıt 12,

page 51

Albert Ramirez sentenced to life in murder of mother's boyfriend - Clovis News Journal

Buy the Paper    Today's Ads    Newsletter and Text Alerts    ePaper Login    Local Business Directory    Newspaper in Education    Maps

## Free Eviction Notice Form
R evictionnotice.rocketlawyer.com
Free Eviction Notice. All States. Print, Save, Download. 100% Free.

HOME    NEWS    SPORTS    OBITUARIES    BLOGS    CLASSIFIEDS    HHN TV    BUY IT ALL    E-SUBSCRIBE    JAN 13, 2014

# Albert Ramirez sentenced to life in murder of mother's boyfriend

January 8, 2014

By Robin Fornoff
CMI Projects Editor
rfornoff@cnjonline.com

A sobbing Albert Ramirez pleaded for sympathy Wednesday at his sentencing for the 2007 murder of his mother's boyfriend.

District Judge Teddy Hartley responded: "It would be wrong for you to live in society," and gave Ramirez life plus six years in prison for what District Attorney Matt Chandler called the cold-blooded killing of 39-year-old Eladio Robledo of Clovis.

"You take your life now and do the best you can under the circumstances," Hartley told Ramirez. "I wish you luck."

Ramirez was convicted by jury in October after a week-long trial peppered by his repeated outbursts, forcing Hartley to remove him from the courtroom at one point. Ramirez claimed he was ill, that he couldn't comprehend what was happening and he wanted to fire his court-appointed attorney Jesse Cosby of Roswell.



CNJ staff photo: Robin Fornoff
Albert Ramirez, 25, of Clovis looks over the courtroom Wednesday while awaiting sentencing for the 2007 murder of his mother's boyfriend, Eladio Robledo. District Judge Teddy Hartley gave Ramirez the maximum sentence of life plus six years in prison.

As he did at trial, Hartley praised Cosby for "conducting trial perfectly" under circumstances Ramirez made difficult.

Chandler reminded Hartley before sentencing that evidence at trial showed Ramirez planned the murder of Robledo. It was retaliation for Robledo and Ramirez's mother obtaining a court order to force Ramirez out of their home, he said.

Chandler said Ramirez, then 18, waited outside the home the morning of July 12, 2007, with a loaded .22 caliber pistol. Robledo was confronted outside by Ramirez. There was a fight that left a blood trail from a garage at the rear of the house to the front sidewalk, where witnesses testified they saw Ramirez standing over Robledo firing the gun at his head execution style.

Chandler called the killing "premeditated...calculated...and cold-blooded." He noted a pre-sentence report branded Ramirez a malingerer who blamed the system, his attorney, the police, the district attorney and the courts for problems he alone created.

At one point Ramirez's older brother, Israel Ramirez, awaiting trial on multiple felony charges unrelated to the case, was led into the courtroom in shackles and a bright orange jail jumpsuit to plead for a lighter sentence for "my little brother."

"He's a good kid," Israel Ramirez told Hartley. "If I could switch places with him I would."

Search this website...    Search

ADVERTISEMENT

LOCAL WEATHER

CLOVIS
64°
Cloudy
High: 84° Low: 61°
Wind: S 13 mph
Humidity: 83%

ADVERTISEMENT



FARMERS
INSURANCE

Rosalind
Riley-Smith
Home • Auto • Life
Commercial • Fire • Flood

Request A Quote

www.ClovisInsuranceRileySmith.com

ADVERTISEMENT

√2014    Police arrest shooting suspect - Clovis News Journal    5³ page

Buy the Paper    Today's Ads    Newsletter and Text Alerts    ePaper Login    Local Business Directory    Newspaper in Education    Maps

Search Obituaries Free
⚚ ancestry.com/Obituaries
1) Search anyone's name. 2) View their obituary instantly.

NEWS    SPORTS    CLASSIFIEDS    OPINION    SECTIONS

Search this website...    Search

EX BIT 13

Pretrial Publicity!

# Police arrest shooting suspect

July 16, 2007

By Sharna Johnson: Freedom Newspapers

A tip from a citizen led to the arrest of a Clovis teen who police say shot and killed his mother's boyfriend Thursday, police said.

Albert Ramirez, 18, was arrested without incident at 713 W. 13th St. around 8:30 a.m. Sunday morning, a press release from Clovis police said.

He is accused of shooting Eladio Rubledo, 39, multiple times in the front yard of 512 W. 6th St., a residence Rubledo shared with Ramirez' mother Debra Ramirez.

Ramirez is being held at the Curry County Adult Detention Center on $100,000 bond, court records show.

Ramirez told police she was in the house and heard shots. When she looked outside, she saw her son running away carrying a handgun, an arrest affidavit filed in district court Monday said.

A neighbor across the street told investigators he heard three popping noises and went houtside where he saw Robledo laying on the sidewalk "covering his head with his hands and yelling," the affidavit said.

The affidavit said the witness saw Ramirez standing over Robledo with his hands outstretched toward the victim as if he was holding a gun and then two more shots were fired.

The man told police he went to call 911 and when he returned, Ramirez was gone. He tried to help Robledo, who was bleeding from the head and unresponsive, the affidavit said.

Robledo was pronounced dead at the hospital, the affidavit said.

Debra Ramirez told police her son made death threats against her and her boyfriend before, according to the affidavit.

June 22, about three weeks before the shooting, Albert Ramirez was placed on six months probation for smashing the windshield of Robledo's car March 31.

Ramirez admitted smashing the window out of anger, a police report said.

A judge ordered him to attend the next available session of the Alternative Sentencing Programs and Educational Networks program, or ASPEN. Court records do not indicate if he had yet completed the program.

In a separate police report filed June 19, Debra Ramirez called police and told them her son smashed the front window of her home because she wouldn't let him in the house.

She said Ramirez was banging on the door and she didn't let him in because she was afraid he would hurt her, the report said.

Ramirez was not charged in the second incident, according to court records.

119

Calls to Debra Ramirez seeking comment were not returned Monday.

ADVERTISEMENT

LOCAL WEATHER

CLOVIS
64°
Cloudy
High: 84° Low: 61°
Wind: S 13 mph
Humidity: 83%

ADVERTISEMENT

Luxury Consignment
Up to 90% off.



The RealReal    SHOP NOW ›

ADVERTISEMENT

Homicide suspect ruled competent enough to stand trial - Clovis News Journal

Buy the Paper    Today's Ads    Newsletter and Text Alerts    ePaper Login    Local Business Directory    Newspaper in Education    Maps

! You're missing the video converter tool.    Click Here

# Homicide suspect ruled competent enough to stand trial

September 17, 2008

By Sharna Johnson: CNJ staff writer

A judge ruled Tuesday 20-year-old Albert Ramirez, accused of shooting his mother's boyfriend in 2007, is competent to stand trial.

District Judge Teddy Hartley issued the ruling after hearing testimony Monday from a clinical psychologist with the New Mexico Department of Corrections who evaluated Ramirez.

No trial date has been set.

Dr. Joanne Burness told the court Ramirez is a "disturbed young man" who likely has a mood disorder but is not mentally ill, court records showed.

She said Ramirez experiences hyperactivity, is easily angered and seeks sympathy, but that he understands and can assist in his defense, according to a transcript of the hearing.

Burness also told the court that during treatment, Ramirez inquired about how he could get his charges reduced and talked a lot during the three months he was there about the value of being found not competent.

Ramirez is charged with first-degree murder in the shooting death of 39-year-old Eladio Robledo.

Police said Ramirez shot Robledo outside a Sixth Street home the victim shared with Ramirez' mother.

The subsequent investigation revealed a history of violence Ramirez directed at his mother and Robledo. Prior to the shooting, Debra Ramirez had filed no trespass orders against her son and told police she was afraid of him.

At the Monday hearing, defense attorney Brett Carter asked the judge to return Ramirez to Las Vegas for further treatment.

Carter argued that Ramirez was not tested thoroughly and that he does not believe he can assist in his defense.

Ramirez was transferred in June to the Behavioral Health Institute at Las Vegas, N.M., for treatment after he was declared dangerous and incompetent.

Ramirez' criminal case had been put on hold pending the outcome of the evaluations.

Share this post:    Email    Facebook    Twitter    Google    Reddit

Filed Under: News    Tagged With: accused, albert, competent, mother, old, ramirez, ruled, stand, suspect, trial

Search this website...    Search

ADVERTISEMENT

Luxury Consignment
Up to 90% off.

The RealReal    SHOP NOW >



LOCAL WEATHER

CLOVIS
64°
Cloudy
High: 64°  Low: 61°
Wind: S 13 mph
Humidity: 63%

ADVERTISEMENT

FARMERS INSURANCE

Rosalind
Riley-Smith
Home • Auto • Life
Commercial • Fire • Flood

Request A Quote

www.ClovisinsuranceRileySmith.com



ADVERTISEMENT

page 54

Buy the Paper     Today's Ads     Newsletter and Text Alerts     ePaper Login     Local Business Directory     Newspaper in Education     Maps

! You're missing the video converter tool.     Click Here

HOME     NEWS     SPORTS     OBITUARIES     BLOGS     CLASSIFIED     JUST TV     STUDENTS     AUTOFINDER          JUNE 13, 2014

# Accused killer takes witness stand

October 10, 2013

By Robin Fornoff

CMI PROJECTS EDITOR

rfornoff@cnjonline.com

Accused killer Albert Ramirez spent two hours on the witness stand — against his lawyer's advice — then was removed from the courtroom Thursday for his continued disruptions.

Ramirez took the witness stand for about two hours, telling jurors in rambling and sometimes tearful accounts that he was defending himself when he shot and killed his mother's boyfriend six years ago.

Ramirez is charged with first-degree murder, accused of lying in wait and gunning down Eladio Robledo, 39, of Clovis, in July 2007, as he left his house on west Sixth Street for work.

Ramirez faces life in prison if convicted.

Albert Ramirez
On trial for murder

Ramirez continued his efforts that have peppered the trial since it began Monday, trying to speak to District Judge Teddy Hartley despite warnings from the judge and pleas from his defense attorney Jesse Cosby to stop.

Hartley gave Ramirez his final warning after District Attorney Matt Chandler ceased his cross examination and Cosby said he had no questions for redirect. Taking a seat next to Cosby, Ramirez said loud enough for the jury to hear, "Why didn't you ask me more questions?"

"If you don't quit talking," Hartley said, "I'm going to remove you."

Minutes later, Ramirez started talking again as his brother, defense witness Jose Ramirez took the stand. An exasperated Hartley pointed toward Ramirez and ordered sheriff's deputies to "take him out of this courtroom."

Two deputies grabbed Ramirez, who shouted "he's not asking questions ... he's not representing me," as the jury watched.

Until Thursday, Ramirez's disruptions came during periods when the jury was sequestered outside the courtroom. Cosby told Hartley he was now concerned the outburst planted seeds of doubt in the minds of jurors about his representation of Ramirez.

"He's fired me in open court in front of the jury," said Cosby.

Hartley, noting Cosby seemed to have a calming effect on Ramirez outside the proceedings, told him to talk to his client.

After about a 40-minute break, both sides returned and Cosby said Ramirez had decided to keep him as defense attorney. Hartley then warned Ramirez if there was one more outburst or disruption, he would have Ramirez removed and proceed with the defendant watching the rest of the trial in another room by video camera.

Search this website...     Search

ADVERTISEMENT

Nursing School Online

chamberlain.edu
Earn Your RN To BSN in 3 Semesters. Online,
Affordable & User Friendly!

Public Arrest Records

Search Obituaries Free

Job Openings

LOCAL WEATHER

CLOVIS
64°
Cloudy
High: 84° Low: 61°
Wind: S 13 mph
Humidity: 83%

ADVERTISEMENT

FARMERS
INSURANCE

Rosalind
Riley-Smith
Home • Auto • Life
Commercial • Fire • Flood

Request A Quote

www.ClovisInsuranceRileySmith.com



ADVERTISEMENT

Teen charged with murder has competency issues - Clovis News Journal

y the Paper    Today's Ads    Newsletter and Text Alerts    ePaper Login    Local Business Directory    Newspaper in Education    Maps

## New Mexico
🔍 gasglance.com
Find Low Gas Prices In Your Area. Save w/ The Gas Calculator! Get App

HOME    NEWS    SPORTS    OBITUARIES    BLOGS    CLASSIFIEDS    JUST IN    SECTIONS    AUTOFINDER    JUNE 13, 2014

# Teen charged with murder has competency issues

July 16, 2008

Courtesy photo Ramirez is charged with first-degree murder in the shooting death of 39-year-old Eladio Robledo in July 2007.

By Sharna Johnson; CNJ staff writer

A year after being charged in the shooting death of his mother's boyfriend, a Clovis 19-year-old's case is on hold pending psychological treatment.

Albert Ramirez is being treated at the Behavioral Health Institute at Las Vegas, N.M., after being declared in April to be incompetent and dangerous. District Judge Ted Hartley made the ruling after reviewing the results of a forensic psychological evaluation.

Ramirez is charged with first-degree murder.

District Attorney Matt Chandler said examiners believe with treatment Ramirez could be brought to a level of competency to stand trial.

Court records do not specify the nature of Ramirez' competency issues.

He is accused of shooting 39-year-old Eladio Robledo in July 2007 outside a Sixth Street home the victim shared with Ramirez' mother.

Robledo died a short time later at the hospital from multiple gunshot wounds.

A witness told police he saw Ramirez shooting at Robledo, who was laying on the sidewalk.

Debra Ramirez told police she feared her son because of his violent tendencies and made him move out when he reached 18. She filed a no-trespass order against him about four months before the shooting, records show.

Debra Ramirez told police her son had been threatening her and told her, "something bad was going to happen and it was going to be her fault," according to a police report.

After the protection order was filed, Ramirez' mother reported her son broke a window at her home because she wouldn't let him in.

Police said Albert Ramirez also admitted on another occasion he broke the windshield of his mother's car because he "got mad."

Debra Ramirez could not be reached for comment.

According to the April order issued by Hartley, Ramirez is to undergo treatment for up to nine months until such point as he attains competency.

Chandler said a defendant is found incompetent to stand trial when it is determined they cannot assist in their own defense or understand the way the judicial system works or the proceedings.

In March, Ramirez was charged with two counts of battery on a peace officer.

According to an arrest affidavit filed in magistrate court, transport officers said they had to carry Ramirez into and out of the courtroom when he refused to walk during a court appearance. After

Search this website...    Search

ADVERTISEMENT

Public Arrest Records
🔍 beenverified.com/Arrest_Records
Search Any Name for Free! Step 1) Enter Name.
2) View Arrest Records

Nursing School Online

Blog Professionally

Job Openings

LOCAL WEATHER

CLOVIS
**64°**
Cloudy
High: 64° Low: 61°
Wind: S 13 mph
Humidity: 63%

ADVERTISEMENT

Luxury Consignment
Up to 90% off.



The RealReal    SHOP NOW ›

ADVERTISEMENT

Form CD-180108.1
Revised 06/16/14

## NEW MEXICO CORRECTIONS DEPARTMENT
### Treatment Plan

☒ **Individual**   ☐ **Group** ☐ **RDAP** ☐ **Other SUDs**

## TREATMENT PLAN AND CONTRACT:

| TREATMENT GOAL | Date goal set | TREATMENT Intervention and Frequency | Date Goal Met |
|---|---|---|---|
| Decrease symptoms of PTSD, i.e., flashbacks, nightmares, insomnia, numbness, sadness, anger, guilt, fear, etc. | 8/30/16 | Cognitive Behavioral Therapy at least one time per month in individual and/or group therapy to assist in identifying what triggers stressful memories and/or PTSD symptoms | |
| Increase coping skills to help deal more effectively with symptoms of PTSD | 8/30/16 | Assist in the development of positive coping skills at least one time per month in individual and/or group therapy. | |
| Reduction of the effects of traumatic memories on daily functioning. | 8/30/16 | CBT and/or Motivational Interviewing (MI) at least one time per month in individual and/or group therapy to assist in desensitization. | |
| Reduction of Intrusive Symptoms, i.e. intense or prolonged psychological distress or marked physiological reactions at/to exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event (s) | 8/30/16 | CBT, Motivational Interviewing (MI) and/or psychoanalytical therapy at least one time per month in individual therapy. | |
| Medication Compliance | 8/30/16 | Comply with medication prescribed by psychiatrist and cooperate with appropriate feedback, as indicated. | |

## CONTRACT:
1. I will attend scheduled treatment sessions unless I have a mandatory institutional appointment.
2. I will participate in the therapeutic process. There may be times when dealing with my issues may be uncomfortable or difficult.
3. I understand that there are limitations to treatment.
4. I understand that there are potential adverse outcomes to treatment.
5. I understand that I can refuse to participate in any part of this treatment plan if it adversely impacts my safety, security, or health.
6. I understand that my treatment sessions will address my treatment goals.
7. I will complete assigned treatment homework (if any is assigned by my clinician).
8. Other _____

**By signing below, I am consenting to the treatment plan and contract:**

**Ramirez, Alberto**
Inmate (Printed Name)

*× 69597 Alberto. Jose. Ramirez*  8/30/16
Inmate Signature                    Date

**Beatrice Narcisco, PhD, LPCC**
Clinician (Printed/Typed Name)

*B. Narcisco, PhD, LPCC*   8/30/16
Clinician Signature              Date

**Eileen R. Missall, MA, LPCC**
Behavioral Health Reviewer (Printed/Typed Name)

*[signature]*   8/30/16
Reviewer Signature        Date

| | | |
|---|---|---|
| Inmate Name: **Ramirez, Alberto** | NMCD#: **69597** | Facility: **CNMCF/MHTC** |
| | **Treatment Plan** | Form CD-180108.1 (Rev. 06/16/14) |

3 copies of each page of these

End of Pages

☐ CNMCF/CMRUfC MU
P.O. Drawer 1328
Los Lunas, NM 87031

☐ GCCF
P.O. Box 520
Santa Rosa, NM 88435

☐ LCCF
6900 W. Millen Dr.
Hobbs, NM 88244

☐ PNM
P.O. Box 1059
Santa Fe, NM 87504

☐ SNMCF
P.O. Box 639
Las Cruces, NM 88004

☐ SNMCF-POU
P.O. Box 20005
Las Cruces, NM 88004

☐ WNMCF
P.O. Drawer 250
Grants, NM 87020

☐ NENMDF
185 Doctor Michael Jenkins Rd
Clayton, NM 88415

Name _____
No. _____ Unit _____

Date: _____

IF Not For trial counsels
Ineffective assistance of
counsels mr. ramirez wouldn't
of had a stronger case
going into trials mr ramirez
was prejudiced by counsels lack
of assistance of counsel
I would pay for an attorney
IF I had the money.
Even at sentencing counsel
failed to provide effective
assistance I've been denied
a fair trial all around.

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

STATE OF NEW MEXICO
COUNTY OF CURRY
FILED IN MY OFFICE

JUL 17 2017

West's New Mexico Statutes Annotated
State Court Rules
    9. Criminal Forms
        Article 7. Special Proceedings

*Clerk District Court*

NMRA, Form 9-702

## FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO THE DISTRICT COURT FROM DENIAL OF HABEAS CORPUS

Currentness

[For use with Appellate Rule 12-501 NMRA]

### IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

ALBERTO RAMIREZ

Defendant-Petitioner,                    S.Ct. No. D-905-CR-2007-000434

*(leave blank; court will assign)*

vs.

WARDEN FRANCO                            District Ct. No. _____

*(Name of Warden)*

Respondent.

EXHIBIT

T
_____

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

PETITION FOR WRIT OF CERTIORARI TO THE _9th_ DISTRICT COURT OF NEW
MEXICO

Alberto Ramirez

Defendant

Petitioner pro se

( address information P.O. Box 1059 Santa Fe NM 87504 )

PETITION FOR WRIT OF CERTIORARI TO THE _9th_ DISTRICT COURT OF NEW
MEXICO

Defendant-Petitioner, appearing pro se and pursuant to the provisions of the New Mexico Constitution, Rule
5-802, and Rule 12-501 NMRA; petitions this Court to issue its Writ of Certiorari to review the order in:

Alberto Ramirez   Warden German Franco   June 2nd 2011
_____ (your name v. Warden's name), District Court No. _____ filed on _____.
D-0905-cr-2007-00434

QUESTIONS PRESENTED FOR REVIEW

Whether the district court erred in:

Not Inquiring Into Reason As to
why inmate Alberto Ramirez Fired his
Attorney in middle of trial And
Ask to represent himself.


why not Also if the court
Erred in not Granting

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

Assistance of Counsel from
public divide post conviction
office to assist in habeus
proceeding and city not grant
the evidentary hearing to determine
if allegations are true and if so remedy
deserves A need trial with new
counsel -

*(Complete only for issues relevant to the petition. Attach additional sheets if necessary.)*

## DESCRIPTION OF THE PROCEEDINGS

1. Please list the conviction being challenged:

Homicide 1St degree murder life
21 tampering with Evidence 2 3yrs
each 3rd degree.

2. Please list any other petitions you have filed in the New Mexico Supreme Court challenging this conviction *(please include docket numbers and dates):*

d-OOS. CR- 2007. 00454

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

3. Tell the story of what happened in your court case:

Got into An Arguement and Fought
and my moms boyfriend died
I was high on marijuana, mentally
Ill, drunk on Alchohol, and my trial
lawyer told me not to say I was drunk
I was Also told I was a little bitch and
threatened by counsel to not help me
Because I'd not take plea as He wanted He
was not in my best interest He did not
want to go to trial. I did It was not
premeditaded

**BASIS FOR GRANTING THIS PETITION FOR WRIT OF CERTIORARI TO THE DISTRICT
COURT**

The decision of the district court on my petition for writ of habeas corpus, filed pro se, raises significant
questions of law under state and federal constitutions: whether the errors below deprived petitioner's rights
guaranteed by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments and by New Mexico Constitution,
art. II, §§ 13, 14, 15, and 18.

**ARGUMENT**

*(Describe your legal claim and cite the law (cases, statutes, constitutional sections) that supports your position.
Use plain language.)*

POINT 1:

Ineffectful assistance, at trial and

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

On appeal / Sixth amendment violation
But that for counsels unprofessional
Errors, the result of the proceedings
would have Been different. conflict of
Interest irreconsiable, Before trial
And After I fired him. In court

**POINT 2:**

Counsel told me I was A stupid
little bitch, and if I keep insisting to
Go to trial He would not provide
effective assistance. To Either plead
Guilty or go to trial with
Ineffective assistance. CASE.

Daniel Guguan Frerel V. United States on R
As 185 F 3d. 778, 9th cir 1991

**POINT 3:**

Dale Shell US terry witek warden
bill locher cite 218 F 3d. 1017 9th cir 200

Loilson V. Mintres cite as 761. F 2d 275
(1985)

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

Appelate counsel ineffective Failing
to argue to Sentcing and I asued
lawyer in record to call all Notse
Servts and she was Not called Ant refusal
to call witness Extra info on other Sheets
(Attach additional sheets, if necessary.)
She would of testified I was Scurmy counsel
my victom Rosicelio I am Mentally ill lack of
capacity Insanity defense

REQUEST FOR RELIEF

Defendant-petitioner requests that this Court issue its writ of certiorari to the district court, and:

(W) remand to the district court for a full hearing on the petition, OR

(W) reverse the conviction, OR

(W) remand to the district court to correct the sentence, OR

(W) (other) _TO_ grant assistance of post Conviction
Public defender assistance

Petitioner asks this Court to grant such relief as may be appropriate. As required by Rule 12-501 NMRA, I am filing only the original copy of this petition and I have attached the following:

(W) a copy of my petition for writ of habeas corpus filed in district court, AND

(W) a copy of the state's response, if one was filed, AND

(W) a copy of the district court's order.

(W) i have not attached the required documents because
_I am trying to do my best_

My hearing on
March 24th 25th 2017
was lost by
OFFICALS
PRSON
Moved me to
New writ seg not
my Fault
documents lost,

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

and ask the Supreme Court to accept this petition without the attachments.

Respectfully submitted,

Defendant-Petitioner, pro se

I hereby certify that a copy of this petition was mailed to the Attorney General's Office, P.O. Box 1508, Santa Fe, New Mexico 87504-1508 on this 27 day of June 2017

Defendant-Petitioner, pro se

Credits

[Adopted effective Dec. 31, 2014.]

NMRA, Form 9-702, NM R CR Form 9-702
State court rules are current with amendments received through July 1, 2015.

**End of Document**    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

*I recieved dismissal
OF petition June 5th 2017
Its timely sent*

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

West's New Mexico Statutes Annotated
State Court Rules
9. Criminal Forms
Article 7. Special Proceedings

NMRA, Form 9-702

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO THE DISTRICT COURT FROM
DENIAL OF HABEAS CORPUS

Currentness

[For use with Appellate Rule 12-501 NMRA]

IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

ALBERTO J. RAMIREZ
.....................................................

Defendant-Petitioner,    S.Ct. No. ...D-905-cr-2007-00434...

(leave blank; court will assign)

vs.

WARDEN FRANCO
.....................................................    District Ct. No. ...........................................

(Name of Warden)

Respondent.

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

PETITION FOR WRIT OF CERTIORARI TO THE __9th__ DISTRICT COURT OF NEW
MEXICO

ALBERTO RAMIREZ

Defendant

Petitioner pro se

(
address information  P.O. BOX 1059 SANTA FE. NM 87501
)

PETITION FOR WRIT OF CERTIORARI TO THE __9th__ DISTRICT COURT OF NEW
MEXICO

Defendant-Petitioner, appearing pro se and pursuant to the provisions of the New Mexico Constitution, Rule
5-802, and Rule 12-501 NMRA; petitions this Court to issue its Writ of Certiorari to review the order in:

ALBERTO RAMIREZ v. WARDEN FRANCO GOMEZ

_____ (your name v. Warden's name), District Court No. _____ filed on JULY 27th 2017

D-909-CR200700454

### QUESTIONS PRESENTED FOR REVIEW

Whether the district court erred in:

IN NOT INQUIRING INTO REASON
AS TO WHY INMATE ALBERTO RAMIREZ
~~WAS~~ FIRED HIS ATTORNEY, N
MIDDLE OF TRIAL AND REPRESENT
HIMSELF.

WHY NOT. ALSO IF THE COURT
ERRED IN NOT GRANTING →

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

assistance of cownsel from Public defender post conviction office to assist in habeus proceedings. And why not grant the Evidentiary hearing to determine if allegations are true And if mr ramirez deserves A new trial with new cowsel

*(Complete only for issues relevant to the petition. Attach additional sheets if necessary.)*

## DESCRIPTION OF THE PROCEEDINGS

1. Please list the conviction being challenged:

Homicide 1st degree murder life 2/ tampury with Sudence 2 3yrs each 3rd degree.

2. Please list any other petitions you have filed in the New Mexico Supreme Court challenging this conviction *(please include docket numbers and dates)*:

d-090S - CR 2007- 00434

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

3. Tell the story of what happened in your court case:

Got into An Argument and ~~[scribble]~~
Fought And my moms BoyFriend
Died. I WAS high ON MARIJUANA
~~Mentally Ill~~) DRUNK ON Alcohal my trial
lawyer told Me to Not Say I
WAS DRUNK. I AISO WAS
told ~~[scribble]~~ I was A little brtch And
threated by counsel to Not help me
Becuuse I'd Not take plea ~~[as I was warned]~~
WAS NOT IN MY BEST iNterest. ~~[As I...]~~
He did NOt want to trial. I did.

**BASIS FOR GRANTING THIS PETITION FOR WRIT OF CERTIORARI TO THE DISTRICT COURT**

The decision of the district court on my petition for writ of habeas corpus, filed pro se, raises significant questions of law under state and federal constitutions: whether the errors below deprived petitioner's rights guaranteed by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments and by New Mexico Constitution, art. II, §§ 13, 14, 15, and 18.

**ARGUMENT**

*(Describe your legal claim and cite the law (cases, statutes, constitutional sections) that supports your position. Use plain language.)*

POINT 1:

INEFFECTIVE ASSISTANCE At trial and

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

On appeal / Sixth Admendment Violation
But that For counsels unproffesional
errors, The result of proceedings would
OF BEEN different. Conflict of
Intrest irreconsible, Before trial
And after I ~~xxxxx~~ Fired him to
courts

**POINT 2:**

He told Me I was A Stupid little
Bitch, And If I Keep insisting to
Go to trial He would not provide
effective assistance. To Either plead
guilty or go to trial with
Ineffective Assistance. (cite as 18
F.3d. 778
x 9th cir. 1994
similar(case) Daniel Eugene Frazer v. United States
of America No. 92-SS193, argued submitted
Nov. 2, 1993
**POINT 3:** Decided March 10th, 1994.

Wayne Dale schell v. Larry Wilek warden Bill Tochthe
March 23, 2000.
Cite as. 218. F.3d 1017. 9th cir 2000

Wilson v. Muntzes cite. as 761. F.2d 775
(1985)

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

also appellate counsel ineffective. Failing to argue to sentencing and I asked lawyer in record to call dr. maxane swartz and she was not called. Flat refusal to call a witness

Extra INFO on other sheets

*(Attach additional sheets, if necessary.)*

she would of helped show I was six abused by victim and I was mentally ill lack of capacity. INSANITY diarese

**REQUEST FOR RELIEF**

Defendant-petitioner requests that this Court issue its writ of certiorari to the district court, and:

(W) remand to the district court for a full hearing on the petition, **OR**

(W) reverse the conviction, **OR**

(W) remand to the district court to correct the sentence, **OR**

(W) (other) To grant assistance of post conviction public defender assistance

Petitioner asks this Court to grant such relief as may be appropriate. As required by Rule 12-501 NMRA, I am filing **only the original copy** of this petition and I have attached the following:

(W) a copy of my petition for writ of habeas corpus filed in district court, **AND**

(W) a copy of the state's response, if one was filed, **AND**

(W) a copy of the district court's order.

(W) I have not attached the required documents because )

my habeus on March 24th 2017 con1 1 sept 2017 was lost by prison officals moved me to new unit seg Not my fault documents lost I

I am trying to do my BEST.

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

and ask the Supreme Court to accept this petition without the attachments.

Respectfully submitted,

........................................................................................

Defendant-Petitioner, pro se

I hereby certify that a copy of this petition was mailed to the Attorney General's Office, P.O. Box 1508, Santa Fe, New Mexico 87504-1508 on this 28 day of JUNE .

........................................................................................

Defendant-Petitioner, pro se

**Credits**

[Adopted effective Dec. 31, 2014.]

NMRA, Form 9-702, NM R CR Form 9-702
State court rules are current with amendments received through July 1, 2015.

**End of Document**                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

*I recieved dismissel of petition JUNE 5th 2017. ITs timely sent.*

MR. Honorable drew tatum

I Sent Hobeausus March 14 2017

and April 25th 2017 And

the Officers Employed at pnm

lost my copies IN A move.

I NSEd copies PlaCE. SSNd

ME. copies. Please and Thanks

Happy fathers day Sir

Thanks for your        God Bless

time God Bless        AlBeRto
                      Cavikez

MOTION
SIR
7.14.17

TO district court
JUDGE DREW TATUM;

HELLO. SIR This is
A MOTION to ASK.
FOR COLLATERAL REVIEW
WITH RESPECT to THE
PERTINENT Judgement
OR TO properly File
Application FOR
STATE POST
CONVICTION

TURN
page

I ASK the Judge
court to SEE
My petition I SENT
JUNE 12th 2017.
with All Exibits, NEW
Facts, And NEW
petition, I'm trying
to hAVE my claim
granteed my writ
GRANTED.
PLEASE Thank you.

Would the court write ME Back And LET ME KNOW. WHATS ⬤⬤ - Your decision ° Thank you SiR God Bless

TO 9th district court judge 7.14.17

dear TATUM, SiR, May I please file A Motion for COllATERAl Review with respect The court 9th district withrspect to the pertnert Judgement And Re Allowed A new decision based on New additional Facts_And Exibits And, START all over from Begging of HABeous proceedings Before my time is done, I have one year RighT, WELL my decision was dec-1st, 2016 So I SEE it as I have 4½ montms,

AS to say AS to Court, would I
file my Petition, I sent on
●●.6.12.17, would you All
please do This for ME, I'm
Not being Allowed to make copies
of petition And I need help
From The Court on this
please respond SIR.

X Robert
Ramirey

67597

Add to my cert petition + wet Fats.

TO: NEW MEXICO SUPREME COURT AND 9TH JUDICIAL District court, TO Federal court And to 10th circuit and United States Supreme court. TO ALL COURTS:
• TO Whom it MAY CONCERN.

• I HAVE Had MY PETITION Dismissed by Judge DREW TATUM ON ~~XXXX~~ date JUNE 5th OR JUNE 6th 2017.

• I IMMEDIATly SENT ANOTHER PETITION TO THE court 9th district, With Motions, to Amend, TO reconsider, And to Fix MY Problem OF Not Properly Presenting Claim, and in light OF additional Facts, EXiBITS, Facts NOT KNOWN. I have recieved No reply From 9th district court

• I NOW ASK FOR tolling OF MY exhausted Claims, dismissed Claims, AND I AM Pursing STATE collateral Review ON unexhausted and dismissed claims.

• I Am Physically disabled chronic hip pain, groin, back, NECK, Shoulder pain., Also A Broken Knuckle ON Right hand. I AM MENTAlly ill, PTSD, depression ANXiety, And psychosomatic Deiusional, And Schizophrenic.

• I AM TRYING TO exhaust my Claims and Not have to Move Forward with Claim dismissed, APPOINTMENT OF Counsel denied, "I AM ASKING that Counsel BE appointed, an Eviedentary Hearing, depositionary, Be granted And my WRit granted."

• I dont WANT TO be denied Requests, and PETITION dismissed, I AM NOT properly Filing petition, I am Not recieving and be denied legal access to law library and Books + Forms And copies, and No assistance AT ALL.

- I've tried to grievance the prison law library, But officers are corrupted.
- Material and legal ~~access~~ and factume bases on my claim, when I filed writ 3.22.17 4.25.17, I did not know what or How to file writ properly. "I did not develope my claim as Fully as a petitioner, who is represented by counsel, But I do believe, If I had counsel to assist me, "I would Be entitled to A new trial + with new ~~coun~~ counsel.
- I am absense of legal training And law Knowedge. I am not able to properly present my claims on my own, or propelly represent myself in Habeaus proceedings, It is to complex.
- I have been trying diligatly to alert the courts, what had happend when I filed my writ 3.22.17 4.25.17, I did not have no paper, no pens, to write More facts, I was being denied law library, Books, copies forms, Nobody at Facility would make copies and my Exibits, This prevented me from propelly Filing my claim on ineffective assistance of counsel + and appellate counsel.
- I tried, And ask to return to the 9th district court After my petition was dismissed, To Leave to amend new petition, In light of new addi. tional facts. To properly present my claim and my unexhausted claims to The district court does not respond.
- I've tried to ask for tolling of exhausted claims and try to pursue State collateral Review on unexhausted claims.

dismissing my petition, and denying my request
For counsel would

- This would create a miscarriage of justice
by not granting my writ, my request for
appointment of counsel, and my request
For collateral review to exhaust, unexhausted claims, and to be allowed to
properly present claim, on alleged,
verbal abuse and threats by counsel.

- Fact my defense counsel has died and
I was prejudiced by his performance
and having to be represented by force
AFTER I Fired counsel in trial, And
I ask to represent myself. I had
continously objected and expressed my
dissatisfaction, And when I ask to
Speak on record, after I Fired my
ATTORNEY, every time I was denied
There was no inquiry on the issue
it was not looked into, why I Fired my
DEFENSE counsel, or to represent myself.

- The conflict defense counsel and I
had, counsel, it was irreconciable
it affected his performance my
defense, counsel did not have no
best interest at heart. He had his
I had my interest. He was angry.

- I was denied counsel at critical
stage, by having no inquiry, and to
be represented by counsel who had
stated to me, "you little stupid
Bitch", And said, "I Hope you get life.

- I AM DOING LIFE PLUS 8 yrs or
6yrs. I did not know maximum
And minimum time I was facing
or I'd get if convicted, counsel would
not let me know, I Fired + I asked
to no avail.

- I would obtain counsel, if I had the means funds the money the assests. I am poor indigent, so I get wrongly convicted and denied assistance of defense counsel, appilate counsel, and in petition. "Thats unfair.?"

- Who would not obtain counsel. If in my situation, doing life+ 64 years, and the denied, effective assistance in all critical stages, trial, appeal and Habeas petition?

- Please I ask the courts, to not dismiss my claims, my petition,

- I ask the courts to grant my writ, my request for appointment of counsel, my motions, on, an evidentary hearing, disiposition, and discovery and trial transcript, to expand the record, to amend and reconsider, to do collateral review.

- I am doing my best with what I have, without, law library, books law books, forms, copies, no counsel, no money, no paper and pens at times. Physical disability, mental illness,, no knowledge or training in the law, not able to amend, to properly present my claims. or to resubmit to fix problems.

- I ask the courts to at least allow me to file all my Habeaus and writ, appeals, all the way up to the United States Supreme court, and then, if denied, I ask all the courts to not deny me, to file a new 2nd petition, a new post conviction

opportunity to make my claim on Ineffective assistance of counsel.

- I will try to obtain counsel to represent me in 2nd petition and properly present facts, to prove claim of ineffective assistance of counsel and apppropriate counsel.

- I believe the ends of justice would otherwise be served by rehearing my claim.

- If possible now after dismissed rehear my claim and, if not, after I tried all the way. U.S. Supreme court.

- This is a miscarriage of justice.

- I am not a lawyer, I having no knowledge of law, so my writt is dismissed, all my request denied, all motions denied, this is wrong.

- I appreciate all of your time God bless you all. The courts. Thank you very much.

6959?
Albert Ramirez
P.O. Box 1059
Santa Fe N.M. 87504

This statement was to be added, to my facts in my writt, to all the courts.
Please + and Thank you all.
I am trying diligently to show in my attempt to present writt properly + to be apponted counsel, to exhaust all claims and dismissed claims granted.

Motion to Expand The Record to help prove My Claim And Futher my Claim OF ineffective assistance OF counsel and appeal counsel. In light of additional facts presented to The court June 12th 2017 In petition writ

Motion for discovery to assist in filing Petition, facts, And Exibits to help, prove And Further my claim of ineffective assistance of counsel and Appelate counsel.

In light of Additional facts presented in 2nd amended petition in June 12th 2017.

Motion For trial transcript,
To Assist in Filing Petition,
and appeal, Facts, And Exibits
to HElP Prove, And Future my
Claim OF ineffectue assistance
of' counsel. IN light oF Cedditional
Facts presented to the courts. IN
2nd Amended petition, JWE 17th 2017

MOTION FOR INFORMER PARIS
to proceed free of payment
I AM INDIGENT PRISONER

MOTION FOR appointment of

COUNSEL.

MOTION FOR discretionary Review

MOTION FOR COLLATERAL Review
to Exhaust unexhausted claims. appraised claims
and Be allowed to properly present
claim of ineffective assistance of
COUNSEL on alleged claim of verbal
abuse + threats made by defense counsel

IN light of NEW additional
facts presented to the courts
JUNE 12th 2017.

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

2017 JUL 27  PM 2: 17

*[signature]*
CLERK DISTRICT COURT

ALBERT JOSE RAMIREZ,

       Petitioner,

vs.                                                          No.    D-0905-CR-2007-00434

STATE OF NEW MEXICO,

       Respondent.

## ORDER OF APPOINTMENT FOR HABEAS CORPUS PROCEEDINGS UNDER RULE 5-802 NMRA

THIS MATTER having come before the Court on Petitioner's pro se Petition for Writ of Habeas Corpus filed June 20, 2017 and Petitioner's pro se Petition for Writ of Habeas Corpus filed July 17, 2017 in the above referenced cause number, and the Court being fully advised of the circumstances;

THE COURT FINDS THAT:

[X] The petitioner is incarcerated.

IT IS THEREFORE ORDERED THAT:

[X] The Law Office of the Public Defender is hereby appointed to represent the Petitioner in the above-entitled cause without payment of the application fee.

[X] Petitioner's counsel shall file an amended petition or file a notice of non-intent to file an amended petition within ninety (90) days of the date of the filing of this order.

*[signature]*

DREW D. TATUM
District Judge, Division II

EXHIBIT
U

Filed
Supreme Court of New Mexico
8/11/2017 10:57:06 AM
Office of the Clerk
Joey D. Moya

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**August 11, 2017**

NO. S-1-SC-36599

**ALBERTO RAMIREZ,**

   Petitioner,

v.

**GERMAN FRANCO, Warden,**

   Respondent.

### ORDER

WHEREAS, this matter came on for consideration by the Court upon petition for writ of certiorari filed under Rule 12-501 NMRA, and the Court having considered the petition and being sufficiently advised, Justice Petra Jimenez Maes, Justice Charles W. Daniels, and Justice Barbara J. Vigil concurring;

NOW, THEREFORE, IT IS ORDERED that the petition for writ of certiorari is DENIED.

IT IS SO ORDERED.



WITNESS, the Honorable Judith K. Nakamura, Chief Justice of the Supreme Court of the State of New Mexico, and the seal of said Court this 11th day of August, 2017.

Joey D. Moya, Clerk of Court
Supreme Court of New Mexico

By _Madeline Garcia_
   Chief Deputy Clerk

I CERTIFY AND ATTEST:
A true copy was served on all parties
or their counsel of record on date filed.
_Madeline Garcia_
Clerk of the Supreme Court
of the State of New Mexico

**EXHIBIT**
V

**STATE OF NEW MEXICO**
**CURRY COUNTY**
**NINTH JUDICIAL DISTRICT COURT**

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

2018 MAY 18  AM 10: 04

[signature]
CLERK DISTRICT COURT

**ALBERT RAMIREZ,**

           **Petitioner,**

    v.

**D-0905-CR-2007-00434**

**JAMES MULHERON, warden**

          **Respondent.**

## AMENDED PETITION FOR WRIT OF HABEAS CORPUS

    **COMES NOW** the Petitioner, Albert Ramirez, through his counsel Liane E. Kerr, and

pursuant to NMRA Rule 5-802 and Article II, Sections 7, 12, 14, 15 and 18 of the New Mexico

Constitution and the Fifth, Sixth and Fourteenth Amendments of the United States Constitution; and

respectfully submits this Amended Petition for Writ of Habeas Corpus.

    Mr. Ramirez respectfully requests that this Honorable Court issue a Writ of Habeas Corpus

and vacate, set aside or correct Mr. Ramirez's sentence and order of confinement in D-905-CR-

2007-0434. Mr. Ramirez contends that he was denied his state and federal constitutional right to due

process and a fair trial because the cumulative effects prevented him from proving his innocence. The

following amendments have been made to the pro se petitions filed on March 22, 2017; April 25,

2017; June 20, 2017 and July 17, 2017.

    **1.**    **Place of Confinement**: Mr. Ramirez is detained by Warden James Mulheron at the

Southern New Mexico Correctional Facility in Dona Ana, NM.

    **2.**    **Nature of Proceedings Resulting in Confinement:** Petitioner was found guilty

following a change of plea on the date of his jury trial on January 26, 2009 of two counts of tampering

1

**EXHIBIT**

**W**

with evidence and first degree murder in the first degree. Petitioner moved to withdraw his plea dn the court denied it; however, the Supreme Court remanded the matter, allowing Petitioner to withdraw his plea. Jury trial was ultimately held on October 10, 2013 and lasted four (4) days, after which Petitioner was found guilty of the murder and tampering charges.

    **3.**    **Judgment and Sentence Resulting in Current Confinement.** Petitioner was sentenced in the Ninth Judicial District Court, Honorable Teddy L. Hartley presiding, on January 8, 2014 to a consecutive sentence on each of the counts: a period of Life on the murder count plus six (6) years for each of the tampering counts in the New Mexico Department of Corrections.

    **4.**    **Direct Appeal.** On February 7, 2014, Petitioner appealed his original conviction to the Supreme Court of New Mexico in *State v. Ramirez*, S. Ct. No. 34,576 and a mandate affirming the trial court was issued on January 18, 2017.

    **5.**    **Prior Petitions.** Petitioner filed a Petition for Writ of Habeas Corpus on March 22, 2017; April 25, 2017; June 20, 2017 and July 17, 2017.

    **6.**    **Habeas Representation/Timeliness of Petition:** By Order of the Court, the Public Defender, Amanda Stephenson, entered an appearance on August 27, 2017. Ms. Stephenson filed two requests for extension, one on October 23, 2017 and again on January 19, 2018, making the Petition due on or before April 19, 2018, Due to a conflict, the Pubic Defender's Office recently reassigned the Petitioner's case to Liane E. Kerr, who requested a sixty day extension in order to fully review the case, meet with her client and file the brief. The request was opposed by the State. Consequently, this Petition is filed without fully meeting with Mr. Ramirez.

2

7.    **Relief Requested:** This petition seeks to vacate and set aside Petitioner's criminal convictions on the grounds that he was denied his state and federal constitutional rights to due process and denied the effective assistance of counsel.

## ISSUES PRESENTED IN THIS PETITION:

a.    Whether Petitioner was denied his sixth amendment right to effective assistance of counsel and compulsory process when his attorney refused to call Dr. Maxann Shwartz to testify at either the competency hearing or at trial?

b.    Whether Petitioner's criminal convictions were obtained in violation of his state and federal right to due process and a fair trial when prior uncharged acts were introduced absent a balancing analysis under Rule 11-404b?

c.    Whether Petitioner was denied his right to due process when jurors observed him shackled during trial?

## STATEMENT OF FACTS/PROCEDURAL HISTORY

### A.    Procedural History.

Petitioner was indicted on July 20, 2007 and charged with first degree murder and two counts of tampering with evidence. **[Exhibit A]**. On January 26, 2009, the first day of his jury trial, Mr. Ramirez pled guilty to two counts of tampering with evidence and first degree murder in the first degree, with tampering counts running concurrent to the life sentence.

Mr. Ramirez moved to withdraw his plea on February 25, 2009, a motion the trial court heard on June 25, 2009, but denied on July 29, 2009. Following an appeal of the denial to withdraw plea, the New Mexico Supreme Court reversed the denial on July 6, 2011 and remanded for a trial on the merits which was ultimately held on October 7-11, 2013 where jurors were instructed to find first degree murder. **[Exhibit B]**. Petitioner was found guilty of first degree murder with the use of a firearm (also verdicts of guilt returned on both tampering counts) **[Exhibit C]**. Although Petitioner's

3

plea exposed him to a life sentence only, following trial, Petitioner was sentenced to the life sentence and each tampering count consecutively, earning him an additional six years for a term of life plus six years. **[Exhibit D]**.

### 1)    Facts Regarding Introduction of Prior Bad Acts Evidence

During trial, the State introduced three incidents of bad acts evidence, which Mr. Ramirez maintains was error. Over objection, the State introduced evidence that Mr. Ramirez broke his mother's windshield. **[Exhibit E: Transcript, 10/8/13, 4:03:49-4:08:21; pg. 2-3]**. Again over objection, the State introduced evidence that the victim's home had been burglarized with the implication that it was Mr. Ramirez who made the entry. **[Exhibit E: Transcript, 10/8/13, 4:14:04; 10/11/13, 8:5526-8:59:31; pg. 2-3]**.

### 2)    Facts in Support of Prejudice from Shackles Observation

During a break, as jurors were leaving the courtroom, Mr. Ramirez tripped as a result of wearing shackles. He maintained that jurors observed him fall and saw his shackles as a result. **[Exhibit F: Transcript, 10/7/13, 3:10:07-3:11:12, pg. 1]**.

### 3)    Facts Regarding Petitioner's Competency

A notice to determine competency was filed on January 14, 2008 **[Exhibit G]** and the defendant was evaluated by Dr. Maxann Shwartz and determined incompetent. **[Exhibit H]**[1]. On January 17, 2008, the Defendant was committed to the New Mexico Behavioral Health Institute at Las Vegas (NMBHI) for a period of three months. **[Exhibit I]**. A hearing was held on September 15,

---

[1]    Although confidential, Mr. Ramirez disclosed Dr. Shwartz' report and provided a copy attached to his pro se Petition for Habeas relief and therefore, any concerns about confidentiality are waived.

2008, where Dr. Burness from NMBHI testified that she believed the Petitioner was malingering. **[Exhibit J; Transcript: 10/9/13 CD B-2:41:40, pg. 19]**. By Order of the Court, Petitioner was deemed competent to stand trial on September 16, 2008. **[Exhibit K: competency hearing pgs. 1-42]**. The record does not reflect that Dr. Shwartz was called to rebut the testimony of Dr. Joanne Burness at the final hearing regarding competency. Following the hearing, the Court entered an Order determining Mr. Ramirez competent. **[Exhibit L]**. The State then identified Dr. Burness on its witness list and the Defense filed a Motion in Limine to address statements made to Dr. Burness. **[Exhibit M]**.

Following the remand by the Supreme Court on the plea withdrawal issue, another Motion for Mental Evaluation was filed on September 22, 2011 **[Exhibit N]**; an Order was entered and Petitioner was again sent to NMBHI for an evaluation **[Exhibit O]**. In the interim, further forensic evaluation at NMBHI was ordered by the Court **[Exhibit P]**. Subsequently, Mr. Ramirez was deemed competent to stand trial on March 1, 2013. **[Exhibit Q]**.

During trial, the issue of Mr. Ramirez' competency arose repeatedly. During voir dire, the defense attorney informed jurors that there were matters concerning Mr. Ramirez' mental health and then followed up with the court. **[Exhibit R, Transcript: 10/7/13, 12:05; pg. 9]**. The Court noted that Mr. Ramirez made various statements which resulted in different transport officers being assigned during the trial. **[Exhibit S, Transcript: 10/8/13, CD B 8:42:10-8:43:50; pg. 6]**. Mid-trial, Mr. Ramirez issued a rambling statement about his health and said that he heard voices and was concerned his attorney was mad at him. **[Exhibit T, Transcript: 10/9/13, CD B 10:13:29-10:26:30; 10:24:04-10:25:58; pg. 13, 15-18]**. Also mid-trial, the Defense reminded the Court of competency issues and alerted the Court that Mr. Ramirez did not understand the proceedings and was incapable

5

of assisting in his defense. **[Exhibit U, Transcript: 10/9/13, CD B 10:16:00-10:17:00; 10:25:58;**

**10/10/13, 3:24:59-35:25:49, pg. 9-12]**. In response, the Court; however, opined that Mr. Ramirez

was malingering but noted he had never seen a defendant act the way Mr. Ramirez was acting.

**[Exhibit V, Transcript: 10/9/13, 10:18:36-10:24:04; 10/10/13, CD B 3:45:47-3:46:20; pg. 19, 31]**.

The Defense again asked for a review of competency. **[Exhibit W, Transcript: 10/7/13, 10:13:29-**

**10:14:51; 10/9/13 1:35:36-1:44:46; pgs. 35, 12]**. Mr. Ramirez specifically asked that the jury be told

about his medical problems and specifically told the Court that he did not believe the trial to be fair,

as the right questions were not being asked and Dr. Shwartz' testimony was necessary to him having

a fair trial. **[Exhibit X, Transcript: 10/9/13, CD B 2:36:02-3:13:45; 10/10/13 CD B 10:40:41-**

**10:58:56; 4:41:38-4:42:15; pgs. 20-29, 33]**. The Defense; however, informed the Court and the

State that it would not be submitting a competency instruction. **[Exhibit Y, Transcript: 10/10/13,**

**4:32:27-4:35:41; pgs. 32, 34]**. Excerpts only of the relevant issues are provided herein and were

transcribed by a certified court reporter. **[Exhibit Z]**.

    **B.**    **Facts of the Case.**

    Petitioner, eighteen year old Albert Ramirez, sometimes resided with his mother, Debra

Ramirez and step-father, Elado Robledo at their home in Clovis, New Mexico. Some of his

belongings remained at the residence when he was ordered to leave the home due to a disruption with

his step-father. When Albert Ramirez returned to the home to collect some of his belongings on July

12, 2007, he argued with his step-father and shot and killed Elado Robledo. This was witnessed by

neighbor Sam Saiz, Jr. and another person who was driving by at the time.

    During the investigation, law enforcement located Petitioner's shoe, a pair of shorts and some

clothing in a trash dumpster several blocks from the scene. Although no firearm was located, jail

6

calls were intercepted where Petitioner directed his cousin to an area to remove a "ban ban", something Petitioner admitted was a gun that he used in self-defense during the shooting.

The State introduced prior bad acts during trial. Over objection, the State called a firearms dealer to testify that the defendant had tried to purchase a gun from him in the past to support premeditation. Also over objection, the State introduced evidence that someone had broken a front window at the victim's house and this was allegedly done by the Petitioner to show motive. Yet another incident was introduced to show intent and motive; that is, that Petitioner had used his crutches to crack his mother's windshield.

During his testimony, the Petitioner claimed self-defense and told jurors that the shoe and shorts were a result of his step-father's assault. He said that his step-father had a gun and he had something in his hands, causing the Petitioner to fear for his safety. During cross-examination, Petitioner refused to respond to the prosecutor's questions, electing instead to chastise his defense counsel.

During a break, the Petitioner tripped over a table due to the shackles on his ankles. He complained of prejudice because jurors were present in the courtroom. The trial court held that jurors could not see the shackles, as a skirt covered the trial table. None of the jurors was questioned regarding the incident and what he/she saw, nor did trial counsel request a mistrial.

## ARGUMENT

Petitioner, Albert Ramirez, adequately alleges claims, which entitle him to legal argument and/or an evidentiary hearing on the following grounds: Denial of his sixth amendment right to effective assistance of counsel and denial of his due process right to a representative venire panel.

7

I.    **PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND HIS RIGHT OF COMPULSORY PROCESS WHEN HIS ATTORNEY FAILED TO CALL DR. MAXANN SHWARTZ TO REBUT THE STATE'S MERE ASSERTIONS OF MALINGERING AND TO TESTIFY AT TRIAL ABOUT THE DEFENDANT'S STATE OF MIND.**

A.    **It is Ineffective Assistance of Counsel to Ignore a Defendant's Right of Compulsory Process.**

The Sixth Amendment's right to counsel guarantee requires that effective assistance of counsel be given at all stages of the proceedings, and New Mexico has affirmed this right. U.S. Const. amends VI and XIV; N.M. Const. Art. II § 14; *State v. Robinson*, 99 N.M. 674, 662 P.2d 1341 (1983). Defense counsel's performance is measured against "an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *State v. Orona*, 97 N.M. 232, 638 P.2d 1077 (1982); *State v. Dean*, 105 N.M. 5, 727 P.2d 944 (Ct. App. 1986) (standard is whether defense counsel exercised the skill, judgment, and diligence of a reasonably competent attorney).

As noted by *Strickland v. Washington*, "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction...has two components:

1)    First, the defendant must show that counsel's performance was deficient...

2)    Second, the defendant must show that the deficient performance prejudiced the defense." *Id*. at 687.

In order to prevail on an ineffective assistance claim, the defendant must show her counsel's performance fell below the standard of a reasonably competent attorney and, due to the deficient performance, the defense was prejudiced. *State v. Talley*, 103 N.M. 33, 34, 702 P.2d 353, 354 (Ct. App. 1985). Prejudice is measured by "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland v. Washington*, 466 U.S. 668, 695, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674 (1984). The test for judging any claim

8

of ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686, 104 S. Ct. at 2064. In reviewing an ineffectiveness claim, the entire proceedings must be considered as a whole. *Id.; State v. Talley, State v. Lovato*, 110 N.M. 146, 147, 793 P.2d 276, 277 (Ct. App. 1990).

In cases of egregious failure by trial counsel, defendants are relieved of the burden of establishing prejudice due to "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *United States v. Cronic*, 466 U.S. 648, 659 (1984). The *Cronic* court described three such circumstances:

(1)    denial of counsel altogether;

(2)    defense counsel's failure "to subject the prosecution's case to meaningful adversarial testing"; and

(3)    when the accused is "denied the right of effective cross-examination." *Id*.

This is such a case. Counsel failed to subject the prosecution's case to meaningful adversarial testing. *State v. Aragon*, 2009-NMCA-102, ¶ 15, 147 N.M. 26, 216 P.3d 276 (prima facie demonstration of ineffective assistance where trial counsel failed to secure an expert necessary to explain the State's evidence).

**B.    Trial Counsel Erred in Failing to Call Dr. Maxann Shwartz as a Witness to Rebut the State's Mere Assertions of Malingering and Denied Mr. Ramirez his Rights to Compulsory Process and Fair Trial when he Refused to Call Dr. Shwartz to Testify Regarding Mr. Ramirez' Mens Rea.**

Mr. Ramirez was evaluated by an accredited psychologist, Dr. Maxann Shwartz, who found him incompetent to stand trial and who did not find malingering. Dr. Shwartz was not called at the final hearing to determine competency to testify about Mr. Ramirez' present competency and against the state's assertion of mere malingering. As a result, the Court could only consider the findings of

9

Dr. Burness, from NMBHI, who testified that she believed Mr. Ramirez was pretending not to understand. The Court relied on this testimony to adjudge Mr. Ramirez competent to stand trial.

Although Mr. Ramirez requested that his attorney call Dr. Shwartz as a witness at trial to address his state of mind, his counsel refused to do so. This failure to call Dr. Shwartz to testify as to competency at the time of the event resulted in a denial of Mr. Ramirez' right of compulsory process. Criminal defendants have the right to put before a jury evidence that might influence the determination of guilt.' *Taylor v. Illinois*, 108 S. Ct. 646 (1988) *citing Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987)(criminal defendant's conviction reversed and remanded because he was not allowed to examine government documents that may have affected the outcome of the trial)).

The right to present a defense is "as American as apple pie". Defendants are constitutionally entitled to: be heard, effectively present evidence central to their defense, call-witnesses to testify on their behalf, and rebut evidence presented by the prosecution. It is well established that the Sixth Amendment guarantees the right of Confrontation. As a corollary to the right of confrontation, the Sixth Amendment guarantees defendants the right to call witnesses to testify on their own behalf and if necessary, to use the compulsory process of the judiciary to subpoena witnesses who could provide exculpatory testimony or who have other information that is favorable to the defense. *See* N.M. Const., Art. II, Sec. 14 ("[i]n all criminal prosecutions, the accused shall have the right . . . to have compulsory process to compel the attendance of necessary witnesses in his behalf . . . ."); U.S. Const. amend. VI ("[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor . . . ."). Without this right, Defendant asserts, his broader right to a fair trial, guaranteed by the Fourteenth Amendment to the United States Constitution and

10

by Article II, Section 18 of the New Mexico Constitution, was imperiled. *See generally* Peter Westen,

*The Compulsory Process Clause*, 73 Mich. L. Rev. 71, 166-70 (1974).

Few rights are more fundamental than that of an accused to present his own defense" *Taylor*

*v. Illinois*, 108 S. Ct. 646 (1988); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)). Our United

States Supreme Court has held that the right to present a defense consisted of the right to compel the

attendance of witnesses and offer their testimony and that such a right "'stands on no lesser footing

than other Sixth Amendment rights that we have previously held applicable to the states.'." *Taylor v.*

*Illinois*, 108 S. Ct. at 652-653 (*quoting Washington v. Texas*, 388 U.S. 14, 18 (1967)). Such a right

"is an essential attribute of the adversary system itself." 46 *Id.* (*citing United States v. Nixon*, 418

U.S. 683 (1974)(President's duty violated his constitutional right "to have compulsory process to

compel the attendance of necessary witnesses in his behalf"). *See also* N.M. Const., Art. II, § 14; *see*

*State v. Cooley*, 19 N.M. 91, 140 P. 1111, 52 L.R.A., N.S., 230 (1914).

Mr. Ramirez was charged with first degree murder—a charge that on its face requires a

showing that his actions were willful and deliberate and which requires a showing of premeditation.

[Exhibit B]; *See State v. Montoya*, 1963, 72 N.M. 178, 381 P.2d 963; *State v. Ybarra*, 1918, 24 N.M.

413, 174 P. 212 (essential elements of murder in the first degree include the elements of deliberation

and premeditation). "An abnormal mental condition may influence the probability that a defendant

premeditated and deliberated-and so be taken into account by a jury in determining whether those

states of mind existed in fact (beyond a reasonable doubt)-even though it did not eliminate the

capacity for premeditation." *United States v. Peterson*, 509 F.2d 408, 416-17 (D.C. Cir. 1974).

"[E]xpert testimony is admissible if it merely 'support[s] an inference or conclusion that the defendant

did or did not have the requisite mens rea.'" *United States v. Bennett*, 161 F.3d 171, 183 (3rd Cir.

11

1998) (*quoting United States v. Morales*, 108 F.3d 1031, 1037 (9th Cir. 1997)). Dr. Shwartz' testimony was relevant, we note that New Mexico courts have long allowed such expert testimony relating to a defendant's mental state at the time of the commission of the offense. *See id.; see also State v. Elliot*, 96 N.M. 798, 635 P.2d 1001 (Ct. App. 1981); *State v. Smith*, 80 N.M. 126, 452 P.2d 195 (Ct. App. 1969). Regardless, Dr. Shwartz was not called at trial to testify about Mr. Ramirez' present competency and against the state's assertion of mere malingering. *State v. Balderama*, 88 P.3d 845, 135 N.M. 329 (2004).

Counsel's failure to pursue a potentially meritorious defense raises substantial questions of ineffective assistance counsel. *See State v. Luna*, 1979-NMCA-048, ¶27, 92 N.M. 680 (Court addressed issues relating to ineffective assistance of counsel for failure to file pre-trial motions regarding charge of conspiracy when 3 other co-defendants had that particular charge dismissed, leaving no one to conspire with). "The testing process generally will not function properly unless defense counsel has done some investigation into the prosecution's case and into various defense strategies...counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986)(internal citations omitted); *see also Strickland*, 466 U.S. at 687-88.

Reasonable professional performance includes a duty to investigate all reasonable lines of defense. *Fisher v. Gibson*, 282 F.3d 1283, 1291 (10th Cir. 2002), *citing Strickland*, 466 U.S. at 691. The failure to pursue information from a key witness regarding the basis of the accused's most important defense cannot be considered sound trial strategy. *Sanders v. Ratelle*, 21 F. 3d 1446, 1456 (9th Cir. 1994). Counsel is ineffective if he fails to conduct an adequate investigation into the

defendant's most viable theory of the defense. *Bigelow v. Williams*, 367 F.3d 562 (6th Cir. 2004) (reasonable prudence should lead lawyer to recognize the importance of potential witness testimony). The failure to pursue an adequate defense may establish grounds for finding ineffective assistance of counsel. *State v. Barnett*, 1998-NMCA-105, ¶ 30, 125 N.M. 739 citing ABA Standards for Criminal Justice Pleas of Guilty, Standard 14-3.2 (2nd edition 1980).

Whether defense counsel's actions were unreasonable or caused prejudice cannot be established by the trial record; *State v. Plouse*, 2003-NMCA-048, ¶ 15, 133 N.M. 495, 64 P.3d 522; rather, a habeas proceeding is the appropriate procedure, so that "the defendant may actually develop the record with respect to defense counsel's actions." *State v. Arrendondo*, 2012-NMSC-013, ¶ 38. New Mexico appellate courts frequently remand claims of ineffective assistance of counsel brought on direct appeal for further evidentiary hearings. *State v. Hunter*, 2006-NMSC-043, ¶30, 140 N.M. 406, 143 P.3d 168. "[H]abeas corpus proceedings are the preferred avenue for adjudicating ineffective assistance of counsel claims, because the record before the trial court may not adequately document the sort of evidence essential to a determination of trial counsel's effectiveness." Id. (internal quotation marks and citation omitted). Thus, we have held that an evidentiary hearing in most cases "may be necessary." *Id.* (internal quotation marks and citation omitted).

Defendant's ability to confront his accuser and to obtain compulsory process, protected by the Sixth Amendment to the United States Constitution as well as Article II, Section 14 of the New Mexico Constitution, was compromised. As a result, Mr. Ramirez was denied his right of due process contrary to N.M. Constitution, Art. II, Sec. 18; and the U.S. Constitution, Amend. V and 14 and compulsory process as guaranteed by N.M. Const, Art. II, Sec. 14 and U.S. Const. Amend. VI.

"A defendant is not entitled to an attorney who will 'leave not the smallest stone unturned'

13

...but when the defendant has but one stone, it should at least be nudged." *Coleman v. Brown*, 802 F.2d 1227, 1234 (10th Cir. 1986)(internal citations omitted). Mr. Ramirez submits that failure to call Dr. Shwartz as a witness, per his request, was tantamount to ignoring a boulder. Because the appellate attorney did not fully recognize this issue on direct appeal, Mr. Ramirez also includes his appellate attorney in his ineffective assistance claim, supported by authority provided herein.

## II.    PRIOR BAD ACTS SHOULD NOT HAVE BEEN INTRODUCED AND THEIR INTRODUCTION DENIED THE PETITIONER HIS RIGHT TO A FAIR TRIAL.

A Defendant is presumed innocent and is entitled to due process and a fair trial. U.S. Const., amend V., XIV; N.M. Const., art. II § 18." *State v. Martin*, 1984-NMSC-077, ¶ 17, 101 N.M. 595 (fair trial); U.S. Const., amends VI and VII, and N.M. Const., Art. II, sec. 14 and 18 (presumption of innocence); and N.M. Constitution, Art. II, Sec. 18; and the U.S. Constitution, Amend. V and 14 (due process). Mr. Ramirez maintains that he was denied these rights when, over the Defense objections, the State introduced prior bad acts during trial.

The evidence was not relevant. It is the state's burden to establish the relevancy of the proffered evidence *State v. Herrera*, 92 N.M. 7, 582 P.2d 384 (Ct. App.), *cert. denied*, 91 N.M. 751, 580 P.2d 972 (1978). Rule 404(B) is a specialized rule of relevancy which requires counsel to identify the consequential fact to which the proffered evidence of other acts is directed. *State v. Aguayo*, 114 N.M. 124, 835 P.2d 840 (Ct. App), *cert. denied*, 113 N.M. 744, 832 P.2d 1223 (1992). It is only then, after the proponent has provided the trial court with an adequate basis, that the trial court should decide whether the probative value of the evidence is not substantially outweighed by the prejudicial impact. *State v. Beachum*, 96 N.M. 566, 568-69, 632 P.2d 1204, 1206-07 (Ct. App. 1981)(emphasis added). Such evidence should not be received when "very probably its sole result,

14

or at least its overwhelming result, will be that of establishing defendant's bad character, or his disposition or propensity to commit crime, as the basis for an inference that he committed the crime with which he is charged and for which he is being tried." *State v. Mason*, 79 N.M. 663, 667, 448 P.2d 175, 179 (Ct. App.), *cert. denied*, 79 N.M. 688, 448 P.2d 489 (1968).

As noted by the Court of Appeals in *State v. Andrade*, 1998-NMCA-031, ¶12

> [o]ur rules of evidence, following longstanding legal tradition, insist that a defendant not be convicted by a jury simply on evidence that the defendant is a bad person." *citing* Rule 11-404 NMRA.....[e]vidence of a defendant's prior misconduct ordinarily is not admissible to support the inference that the defendant has a propensity to commit unlawful acts and therefore is likely to have committed the charged act. New Mexico has been particularly strict in limiting evidence of prior crimes." *citing State v. Wrighter*, 1996-NMCA-077.

Although evidence of other bad acts may be relevant, the risk that the jury will convict because Defendant is a bad person and needs to be punished creates a prejudicial effect. Rule 11-404 (b) provides that evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith or to show criminal propensity. *See State v. Roybal*, 115 N.M. 27, 846 P.2d 333 (Ct. App. 1992)("Generally, proof of other crimes has a tendency to prejudice the minds of the trier of facts and predispose them to a belief in the accused's guilt.").

Over objection, the State called a firearms dealer to testify that the defendant had tried to purchase a gun from him in the past to support premeditation. Also over objection, the State introduced evidence that someone had broken a front window at the victim's house and this was allegedly done by the Petitioner to show motive. Yet another incident was introduced to show intent and motive; that is, that Petitioner had used his crutches to crack his mother's windshield. The State presumably sought protection under Rule 11-404 (b) as indicated below.

15

The broken front window was never proven to be the Defendant. Incredibly, the State sought introduction of this act to show motive. The evidence was not relevant to defendant's motive to commit the instant offense, as the State could not prove that it was the Defendant who broke the window and not just a random act. *See e.g. State v. Ruiz*, 119 N.M. 515, 892 P.2d 962 (Ct. App. 1995); *State v. Williams*, 117 N.M. 551, 874 P.2d 12 (1994)(prior relationship with victim or merely enjoying sex is not sufficient to suggest that a defendant had cause to force himself on the victim). Admission of prior acts must be shown to sufficiently be similar to the charged acts to indicate they were likely done by the same person. In order for evidence to be admissible under this exception, the similarity must rise above the level of characteristics common to many incidents of the crime and must indicate a distinct pattern of conduct. The incident was not so distinctive as to constitute a "unique or distinct pattern easily attributable to one person." *State v. Beachum*, 96 N.M. 566, 568, 632 P.2d 1204, 1206 (Ct. App. 1981).

The firearms expert could not recall what kind of weapon Mr. Ramirez allegedly sought to purchase; he could not recall when exactly Mr. Ramirez came to his business; he did not keep a copy of the firearms application form which he claims he received from Mr. Ramirez. Although trial counsel sought to exclude the evidence, the trial court allowed the State to introduce it to support motive and premeditation. This was in violation of Rule 11-404(B) which provides that evidence of a defendant's prior acts is admissible to show proof of motive. Factually similar incidents cannot, alone, prove plan, particularly when the acts are several years apart and the State must be able to prove the act was somehow part of a bigger plan. *State v. Montoya*, 116 N.M. 72, 860 P.2d 202 (Ct. App. 1993).

16

Finally, whether Mr. Ramirez did or did not break his mother's windshield, the evidence was neither relevant nor probative to prove that Mr. Ramirez intended harm to his step-father. The evidence was admitted in violation of Rule 11-404(A) NMRA 2004 (providing that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion"). *See State v. Lucero*, 114 N.M. 489, 492, 840 P.2d 1255, 1258 (Ct. App. 1992); *see also State v. Alberts*, 80 N.M. 472, 474, 457 P.2d 991, 993 (Ct. App. 1969) (finding that if the sole purpose of evidence is to demonstrate bad character, reputation, or disposition, its prejudicial effect makes it inadmissible).

On the whole, the probative value of the evidence did not outweigh the prejudicial effect for which the State introduced it. As noted in *State v. Williams supra*, "[i]f evidence of prior acts is relevant and admissible for a purpose other than proving a defendant's propensity to commit a crime, the probative value of the evidence must outweigh its prejudicial effect". *Id. citing State v. Landers*, 115 N.M. 514, 517, 853 P.3d 1270, 1273 (1993); NMRA 1999, 11-403; *State v. Beachum*, 96 N.M. 566, 567-68, 632 P.2d 1204, 1205-06 (Ct. App. 1981).

Even when admitting prior bad acts evidence under a recognized exception, the trial court must still meet the requisites of 11-403. *State v. Wrighter*, 122 N.M. 200, 922 P.2d 582 (Ct. App. 1996). The trial court may admit evidence under NMRA 1999, Rule 11-404(B) if the probative value of the evidence outweighs any prejudicial effect. *State v. Landers*, 115 N.M. at 518, 853 P.3d at 1274.

There is no indication that the Court balanced the prejudicial effect of the evidence against its probative value to determine if "the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. *See* Rule 11-403, NMRA 2001.

17

Even allowing that evidence of the defendant's prior history was admissible to establish context, *See*

*Jones*, the trial court must engage in a balancing requirement of NMRA 1999, 11-403.

*State v. Rojo*, 1999-NMSC-001, ¶ 47, 126 N.M. 438, 971 P.2d 829 ("Under Rule 11-403, "evidence

may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."

Proof of other crimes has a tendency to prejudice the minds of the triers of fact and to

predispose them to a belief in the accused's guilt. *See State v. Rowell*, 77 N.M. 124, 419 P.2d 966

(1966); *State v. Allen*, 91 N.M. 759, 581 P.2d 22 (Ct. App. 1978).

> The real danger of admitting past conduct is that, if the jury believed the testimony,
> the jury would conclude that the Defendant acted in conformance therewith, and if he
> did so then, it is more likely he did so now. One cannot ignore the long tradition of
> courts and commentators expressing fear that jurors are too likely to give undue
> weight to evidence of a defendant's prior misconduct and perhaps even to convict the
> defendant solely because of a belief that the defendant is a bad person.

*State v. Lamure*, 115 N.M. 61, 71, 846 P.2d 1070, 1080 (Ct. App. 1992), *cert. denied*, 114 N.M. 720,

845 P.2d 814 (1993). Rule 404(B) is designed to prevent this kind of perception. *Id.* Testimony

which amounts to evidence of a defendant's bad character, or disposition to commit the crime

charged, when not offered for a legitimate purpose, is inadmissible and unfairly prejudicial. *State v.*

*Rael*, 117 N.M. 539, 540, 873 P.2d 284, 286 (Ct. App. 1994).

Defendant submits that it was prejudicial error to admit evidence of prior uncharged conduct,

*State v. Ross*, 88 N.M. 1, 536 P.2d 265 (Ct. App. 1975). Any references to other offenses may be

probative, but its probative value is substantially outweighed by the prejudice to the Defendant. *State*

*v. Hogervorst*, 90 N.M. 580, 566 P.2d 828 (Ct. App. 1977). Accordingly, Defendant's rights to fair

trial and due process were violated. U.S. Const., amend V., XIV; N.M. Const., art. II § 18 (fair trial)

and N.M. Constitution, Art. II, Sec. 18; and the U.S. Constitution, Amend. V and 14 (due process).

Mr. Ramirez maintains that he was denied these rights when, over the Defense objections, the State introduced prior bad acts during trial.

III.    THE PETITIONER WAS LIKELY PREJUDICED AND DENIED HIS RIGHT TO A FAIR TRIAL WHEN HIS FALL WAS A DIRECT RESULT OF BEING SHACKLED AND HIS ATTORNEY DID NOT SEEK TO HAVE JURORS POLLED REGARDING WHETHER THEY SAW THE SHACKLES OR NOT.

A person in custody "coming into court for trial is entitled to make his appearance free of shackles or bonds." *State v. Holly*, 2009-NMSC-004, ¶ 41, 145 N.M. 513, 201 P.3d 844 (internal quotation marks and citation omitted); *see also* Rule 5-115(C) NMRA ("Except by order of the court, the defendant may not appear before the jury in any visible restraint devices, including handcuffs, chains or stun belts, a visible bullet proof vest or any other item which, if visible to the jury, would prejudice the defendant in the eyes of the jury."). The record does not reflect that any order was issued by the trial court, until after the fall, whereby the shackles were removed for the remainder of the trial.

Petitioner recognizes that "a defendant's right to appear free of visible restraints is not absolute", *State v. Johnson*, 2010-NMSC-016, ¶ 26, 148 N.M. 50, 229 P.3d 523, as "it must be balanced against the state's interest in maintaining security." *State v. Gomez*, 1971-NMCA-009, ¶¶ 2-7, 82 N.M. 333, 481 P.2d 412 (upholding the district court's denial of mistrial where jurors had viewed the defendant in handcuffs only as safety requirements demanded, "prior to the beginning of trial and during recess"). In this case; however, there were other adequate remedies to ensure the safety of the community and the integrity of security.

While a juror's "inadvertent or insignificant exposure to a defendant in shackles is not sufficiently prejudicial to merit a new trial, " *See Holly*, 2009-NMSC-004, ¶ 41, in this case, there

19

may have been 12 jurors who observed Mr. Ramirez in shackles. In *Holly*, a single juror may have seen the defendant in handcuffs during his escort back to detention. *Id.* ¶ 40. Rather than calling attention to the incident by questioning the jurors, the district court chose to remedy the situation by repeating the general jury instructions to the jurors. *Id.* On appeal, our appellate court concluded that the incident did not constitute fundamental error because "it [was] unclear whether any exposure actually occurred, or if it did, that it was anything more than inadvertent or insignificant exposure." *Id.* ¶ 42. Here, there is nothing indicating that the Defense sought to question jurors regarding what they did/did not see when the defendant fell; rather, an assertion was made and the parties determined that likely none of the jurors saw anything. Another difference is that the defendant in Holly was wearing handcuffs. Shackles are arguably more egregious.

Given the uncertainty, the Defense should have demanded the jurors each be questioned individually and should have moved for a mistrial. In *State v. Mills*, 1980-NMCA-005, ¶ 15, 94 N.M. 17, 606 P.2d 1111, at least one juror viewed the defendant in handcuffs while a bailiff was escorting the defendant from the courtroom during a noon recess. The defendant moved for a mistrial, arguing that the incident deprived him of a fair trial. *Id.* The bailiff explained to the district court that he had waited with the defendant "for the time normally required for the departure of jurors, " and "that the view occurred because some jurors had used the restroom before departing." *Id.* ¶ 16. The district court held that the juror's observation of defendant in handcuffs was inadvertent and denied the defendant's motion for a mistrial, reasoning that "any impropriety resulting from the view was harmless" because the evidence at trial showed that the defendant was incarcerated. *Id.* ¶¶ 16-17. This case differs in three respects: the observation may have been made by all of the jurors; the defendant

20

in *Mills* was cuffed as opposed to shackled; and the evidence at trial did not show that the defendant was incarcerated.

Pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967) and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985)(counsel should set forth contentions urged by a petitioner whether or not counsel feels they have merit ), the Petitioner urges the Court to consider the issue of whether the possibility of seeing him shackled resulted in prejudice to his case.

## IV.    MR. RAMIREZ ADDITIONALLY REQUESTS THE COURT CONSIDER ADDITIONAL ISSUES WHICH WERE INHERENT IN HIS TRIAL, BUT WHICH WERE NOT RAISED BY HIS APPELLATE ATTORNEY.

Undersigned provided Mr. Ramirez with a copy of the Petition and asked that he contact her with any suggestions/changes.  No contact was made; however, in meeting with Mr. Ramirez, he made requests for additional arguments and they are therefore addressed briefly.  *See State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967) and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985). (counsel should set forth contentions urged by a petitioner whether or not counsel feels they have merit ).  Mr. Ramirez asks this Court to consider the following in the context of the entire trial:

I.    **Sufficiency of the Evidence.**  If the State does present evidence sufficient to support a finding of guilt beyond a reasonable doubt, the verdict violates the Due Process Clause. *See Jackson v. Virginia*, 443 U.S. 307, 317-18 (1979). Proof beyond a reasonable doubt is equivalent to proof "to a moral certainty," and refers to the highest degree of confidence with which an historical or physical fact can be known. *Victor v. Nebraska*, 511 U.S. 1, 11-12 (1994).  *See also State v. Silva*, 2008-NMSC-051, ¶¶ 19-20, 144 N.M. 815, 192 P.3d 1192 (prosecution failed to present "any evidence, circumstantial or otherwise, of an overt act" by the defendant from which the jury could infer an intent to defendant), and *State v. Duran*, 2006-NMSC-035, ¶¶ 15-16, 140 N.M. 94, 140 P.3d

515.. 2008-NMSC-051, ¶ 19 (no evidence of any act by the defendant to destroy or hide evidence, with the only support for the tampering charge stemming from the fact that the evidence was not found).

      **2.**      **Prosecutorial Misconduct.** Without objection from trial counsel, the prosecutor claimed that Mr. Ramirez was a "menace to society", a liar and during his closing argument. Prosecutorial misconduct reaches the level of fundamental error when it is egregious and so pervasive and prejudicial that the defendant was deprived of a fair trial and applies only when a defendant's conviction would shock the conscience if allowed to stand, or when an error is such that the fundamental integrity of the judicial process is implicated. *State v. Sosa*, 2009-NMSC-056, ¶ 35, 147 N.M. 351, 223 P.3d 348. Mr. Ramirez maintains that his conviction, when viewed against the prosecutor's comments and conduct, would shock the conscience if allowed to stand.

      **3.**      **Double jeopardy.** Mr. Ramirez believes that being twice charged with evidence tampering was tantamount to double jeopardy. No person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Imposing multiple punishments for tampering charges directed at the same item of evidence, violates the right to be free from double jeopardy. *State v. DeGraff*, 2006-NMSC-011, ¶ 34, 139 N.M. 211, 131 P.3d 61. However, Undersigned recognizes that distinct acts, separated by time and space, do not violate double jeopardy. *See State v. Quick*, 2009-NMSC-015, ¶ 25 (stating that "[d]istinctness may be established by determining whether the acts constituting the two offenses [were] . . . separated by time or space").

### CONCLUSION

      If a petition for writ of habeas corpus demonstrates on its face that a Petitioner may have been deprived of his constitutional rights, the court must address the issue in an evidentiary hearing unless

it plainly appears that the petitioner is not entitled to any relief as a matter of law, based on the facts alleged in the petition, or the uncontroverted facts shown by the court record. *State v. Franklin,* 1967-NMSC-151, ¶6, 78 N.M. 127 *quoting Machibroda v. United States,* 368 U.S. 487 (1962); *see also Duncan v. Kerry,* 1993-NMSC-011, ¶ 3, 115 N.M. 344 (court must hold an evidentiary hearing where a petition adequately alleged ineffective assistance of counsel). Habeas corpus proceedings are the preferred method for adjudicating claims of ineffective assistance of counsel, because such claims often cannot be considered based solely on the record before the trial court. *Duncan,* 1993-NMSC-011, ¶4. Consequently, when a petition for a writ of habeas corpus alleges particular facts which set out a claim of inadequate representation, the petitioner is entitled to a hearing. *State v. Moser,* 1967-NMSC-163, ¶ 6, 78 N.M. 212 (overruled on other grounds).

Respectfully submitted,

LIANE E. KERR, Esq.
PO Box 10491
Albuquerque, NM 87184-0491
(505) 848-9190

23

## VERIFICATION

**STATE OF NEW MEXICO**         )
                                )  ss.
**COUNTY OF DONA ANA**          )

I, the undersigned, being first duly sworn upon my oath, state that I am the Petitioner in this action. I have read the foregoing petition and know and understand its contents, and the information contained therein are true and correct to the best of my knowledge, information, and belief.

_ALBERT Ramirez_

Albert Ramirez, PNM 69597
c/o SNMCF
P.O. Box 639
1983 Joe R. Silva Boulevard
Las Cruces, New Mexico 88004-0639

SUBSCRIBED AND SWORN TO before me this 10th day of May _____, 2018, by _Albert Ramirez_.

_____
NOTARY PUBLIC

My Commission Expires:
_10/12/2021_

## CERTIFICATE OF SERVICE

I hereby certify that true copies of the foregoing petition were served upon the Respondent and the district attorney in the county in which the petition is filed by _____ U.S. mail, postage prepaid, this 14th day of May, 2018

_____
LIANE E. KERR, Esq.

# EXHIBIT LOG

| EXHIBIT | IDENTIFICATION/LOCATION |
|---|---|
| A | Indictment |
| B | Jury Instruction |
| C | Verdicts |
| Q | J&S |
| F | Broke mother's windshield; Transcript, 10/8/13, 4:03:49-4:08:21; pg. 2-3 |
| F | Shackles; Transcript, 10/7/13, 3:10:07-3:11:12; pg. 1 |
| G | Notice to Determine Competency (1/14/07) |
| H | Evaluation by Dr. Maxann Shwartz (incompetent) |
| L | Commitment to NMBHI for 3 months |
| J | Dr. Burness testified that Defendant malingering; Transcript 10/9/13 CD B-2:41:40, pg. 19 |
| K | Competency Hearing: pgs. 1-42 |
| L | Order Determining Competency (9/16/08) |
| M | Motion in Limine re: statements made to Dr. Burness |
| N | 2nd Motion for Mental Evaluation (9/22/2011) |
| Q | Court Order for 2nd Evaluation at NMBHI |
| P | Further forensic testing ordered by court |
| Q | Order deeming Defendant competent to stand trial on March 1, 2013 |
| R | The defense attorney informs court that there were matters concerning Mr. Ramirez' mental health. Transcript: 10/7/13, 12:05 ; pg. 9 |
| S | The Court notes that Mr. Ramirez made various statements which resulted in different transport officers being assigned during the trial.  Transcript: 10/8/13, CD B 8:42:10-8:43:50; pg. 6 |
| T | Mr. Ramirez issues a rambling statement about his health and said that he heard voices and is concerned his attorney is mad at him.  Transcript: 10/9/13, CD B 10:13:29-10:26:30; 10:24:04-10:25:58; pg. 13, 15-18, 20-21 |

1

| U | Defense reminds the Court of competency issues and alerts the Court that Mr. Ramirez does not understand the proceedings and is incapable of assisting in his defense. Transcript: 10/9/13, CD B 10:16:00-10:17:00; 10:25:58; 10/10/13, 3:24:59-35:25:49; pgs. 9-12 |
|---|---|
| V | Court expresses that Mr. Ramirez is malingering, but notes it had never seen a defendant act the way Mr. Ramirez was acting. Transcript: 10/9/13, 10:18:36-10:24:04; 10/10/13, CD B 3:45:47-3:46:20; pg. 19, 31 |
| W | Another Defense request for review of competency. Transcript: 10/7/13, 10:13:29-10:14:51; 10/9/13 1:35:36-1:44:46; pgs. 35, 12 |
| X | Mr. Ramirez asks that jury be told about his medical problems and tells the Court that he does not believe the trial to be fair, as the right questions were not being asked; Dr. Shwartz' testimony is necessary to him having a fair trial. Transcript: 10/9/13, CD B 2:36:02-3:13:45; 10/10/13 CD B 10:40:41-10:58:56; 4:41:38-4:42:15; pgs. 20-33 |
| Y | The Defense informs the Court and the State that it will not be submitting a competency instruction. Transcript: 10/10/13, 4:32:27-4:35:41; pgs. 32, 34 |
| Z | Transcriptionist Certificate |

IN THE NINTH JUDICIAL DISTRICT

STATE OF NEW MEXICO. COUNTY OF CURRY

07 JUL 20  P 12: 16

STATE OF NEW MEXICO.

     Plaintiff.

vs.

          No. D-0905-CR-0200700__434

**ALBERT JOSE RAMIREZ**

           **TEDDY L. HARTLEY**

DOB: [redacted] 1988
SOC: [redacted] 7793
STN: 050100070340

    Defendant.

Crime(s): **Count 1: First Degree Murder (Willful and Deliberate)**
      **Count 2: Tampering with Evidence**
      **Count 3: Tampering with Evidence**

## GRAND JURY INDICTMENT

THE GRAND JURY CHARGES:

Count 1: **First Degree Murder (Willful and Deliberate)**. in that on or about. July 12,

2007. in Curry County. New Mexico. the above-named defendant did kill Eladio Robledo. with

the deliberate intention to take away the life of or any other human being. N.M.S.A. 1978,

contrary to Section 30-2-1(A)(1). a capital offense.

Count 2: **Tampering with Evidence (Third Degree Felony),** in that on or about. July

12. 2007. in Curry County. New Mexico. the above-named defendant did

destroy/change/hide/fabricate/place a firearm with the intent to prevent the apprehension,

*Exhibit A*

*RP 1*

prosecution or conviction of Albert Ramirez OR create the false impression that another person

had committed a crime. NMSA 1978. contrary to Section 30-22-05, a third degree felony.

Count 3: **Tampering with Evidence (Third Degree Felony),** in that on or about. July

12. 2007. in Curry County, New Mexico, the above-named defendant did

destroy/change/hide/fabricate/place jeans with the intent to prevent the apprehension, prosecution

or conviction of Albert Ramirez OR create the false impression that another person had

committed a crime. NMSA 1978. contrary to Section 30-22-05, a third degree felony.

The names of the witnesses upon whose testimony this Indictment is based are as follows:

1.   Brent Aguilar. Clovis Police Department, Clovis, NM 88101;
2.   Debra Ramirez. 512 W. 6th Street, Clovis, NM 88101;
3.   Ivan Vasquez. 714 W 13th #A. Clovis. NM 88101;
4.   Roger Grah. Clovis Police Department, 300 Connelly, Clovis, NM 88101:
5.   Sam Saiz. 515 W. 6th. Clovis, NM 88101;
6.   Sandy Loomis. Curry County Sheriff's Office. 700 N Main, Clovis, NM 88101;
7.   Waldo Casarez. Curry County Sheriff's Department. Clovis, NM 88101;
8.   James Patterson. 910 East 6th Street OR 1100 Wallace. Clovis. NM 88101

I hereby certify that the foregoing Indictment is a _Irue_ Bill.

_Trudy McPeek_
FOREMAN

DATED: 7-20-07

State vs. Albert Jose Ramirez
Grand Jury Indictment
No.

2

RP 2

Defendant's Address: ▮▮▮▮▮▮
Defendant's S.S.N.: ▮▮▮▮ 7793
D.A. Case Number: 07-471
Magistrate Number: M-12-FR-200700389

APPROVED:

_Matth Chew L_, D. A.

State vs. Albert Jose Ramirez
Grand Jury Indictment
No.

3

RP 3

Jury Instruction No. _____4_____

For you to find the Defendant guilty of First Degree Murder by a deliberate killing as charged in Count I, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1.    The Defendant killed Eladio Robledo;

2.    The killing was with the deliberate intention to take away the life of Eladio Robledo;

3.    This happened in New Mexico on or about the 12th day of July, 2007.

A deliberate intention refers to the state of mind of the Defendant.    A deliberate intention may be inferred from all of the facts and circumstances of the killing.    The word deliberate means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action.    A calculated judgment and decision may be arrived at in a short period of time.    A mere unconsidered and rash impulse, even though it includes an intent to kill, is not a deliberate intention to kill.    To constitute a deliberate killing, the slayer must weigh and consider the question of killing and his reasons for and against such a choice.

**Exhibit B**

RPW63

STATE OF NEW MEXICO
IN THE NINTH JUDICIAL DISTRICT
COUNTY OF CURRY

2013 OCT 11  PM 3:05

STATE OF NEW MEXICO,

      Plaintiff,

v.

ALBERT JOSE RAMIREZ,           No. D-0905-CR-0200700434

      Defendant.

## VERDICT

We find the defendant, Albert Ramirez, GUILTY of COUNT I: FIRST DEGREE MURDER.

FOREPERSON _Lisa Labeau_

DATED: 10-11-13

**Exhibit C**

STATE OF NEW MEXICO
IN THE NINTH JUDICIAL DISTRICT
COUNTY OF CURRY

2013 OCT 11  PM 3:05

STATE OF NEW MEXICO,

      Plaintiff,

v.

ALBERT RAMIREZ              No. D-0905-CR-0200700434

      Defendant.

## SPECIAL VERDICT FORM

Do you unanimously find beyond a reasonable doubt that a firearm was used in the commission of the murder as charged in Count I?

YES (Yes or No)

FOREPERSON  10-11-13

STATE OF NEW MEXICO
IN THE NINTH JUDICIAL DISTRICT
COUNTY OF CURRY

2013 OCT 11 PM 2:05

STATE OF NEW MEXICO,

      Plaintiff,

v.

ALBERT JOSE RAMIREZ,                       No. D-0905-CR-0200700434

      Defendant.

## VERDICT

We find the defendant, Albert Ramirez, GUILTY of COUNT II: TAMPERING WITH

EVIDENCE.

FOREPERSON

DATED: 10-11-13

STATE OF NEW MEXICO
IN THE NINTH JUDICIAL DISTRICT
COUNTY OF CURRY

STATE OF NEW MEXICO,

     Plaintiff,

v.

ALBERT JOSE RAMIREZ,              No.  D-0905-CR-0200700434

     Defendant.

## VERDICT

We find the defendant, Albert Ramirez, GUILTY of COUNT III:  TAMPERING WITH
EVIDENCE.

FOREPERSON

DATED:  10-11-13

STATE OF NEW MEXICO
COUNTY OF CURRY
IN THE NINTH JUDICIAL DISTRICT COURT

NINTH JUDICIAL DISTRICT
COURT · CURRY · NM
FILED IN MY OFFICE

**2014 JAN -8  AM 11: 11**

STATE OF NEW MEXICO,

        Plaintiff,

v.

**ALBERT JOSE RAMIREZ,**
DOB: ▮▮▮▮988
SOC: ▮▮▮▮793
STN: 050100070340

        Defendant.

No. D-0905-CR-0200700434

## JUDGMENT, SENTENCE AND COMMITMENT

THIS MATTER coming on for hearing on January 8, 2014, before the Honorable Teddy L Hartley, District Judge, Plaintiff appearing by Matthew Chandler, District Attorney, and Defendant appearing personally and by his attorney, Jesse R. Cosby, Attorney at Law, the Defendant having been convicted on October 11, 2013, pursuant to guilty verdicts by the jury accepted and recorded by the Court of the following crime(s):

    **Count 1: |0001|, Murder in the first degree (willful & deliberate),  contrary to §30-02-01(A)(1), NMSA 1978.**

    **Count 2: |4230|, Tampering with evidence (highest crime a capital, first or second degree felony),  a third degree felony, contrary to §30-22-05, NMSA 1978.**

    **Count 3: |4230|, Tampering with evidence (highest crime a capital, first or second degree felony),  a third degree felony, contrary to §30-22-05, NMSA 1978.**

**Exhibit D**

RP910

Defendant is hereby found and adjudged guilty and convicted of said crime(s), and is sentenced to be imprisoned by the Department of Corrections for the following terms:

As to Count 1, a term of life imprisonment.

As to Count 2, a term of three (3) years.

As to Count 3, a term of three (3) years.

Counts 1, 2, and 3, shall run consecutively, one after the other, for a total term of life imprisonment, plus six (6) years. *mental and physical health as available. Dept of Corrections should provide mental and physical treatment as available. ~ MC*

Upon completion of the term provided herein, the Defendant will be subject to release under parole supervision, subject to the statutory provisions relating to condition, supervision and return of parolees.

Therefore, You, the Sheriff of Curry County, are hereby commanded to take Defendant in custody and deliver Albert Jose Ramirez, together with this commitment, to the Department of Corrections, which is hereby commanded to receive him and confine Albert Jose Ramirez for the above term.

Defendant shall receive credit for 2370 days (6 years, 5 months, 25 days) of pre-sentence confinement, from date of arrest on July 15, 2007, until date of sentencing, January 8, 2014, and for post-sentence confinement from January 9, 2014, until delivery to the Department of Corrections.

TEDDY L. HARTLEY
DISTRICT JUDGE

HAVE SEEN:

Matthew Chandler
District Attorney

Jesse R. Cosby
Attorney for Defense

D.A.  MC jwg

RP711

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1    10/8/13 4:14:04

2    PO:    Uh, I noticed the damage and then I asked her what had happened.

3    MC:    Noticed what damage?

4    PO:    Uh, the window broken.

5    MC:    What window did you notice that was damaged.

6    PO:    This one right here.

7    MC:    The one that appears to have cardboard on it right now?

8    PO:    Yes sir the one with the wind, air-conditioner.

9    MC:    And did you write a report.

10    PO:    Yes sir.

11    MC:    with a copy of the damage?

12    PO:    Yes sir.

13    MC:    Uh, did you ever find out who did it?

14    PO:    When I spoke with her she said ...

15    JC:    Consultation, hearsay we can't ...

16    DT:    I can't, you can't ask him.

17    10/11/13 8:55:25 – 8:59:31 (Talking about some case and provocation instruction) (8:48:14 – 8:58:37)

18    DT:    Are you suggesting that he broke the windows out on the day of the incident that's not my

19            memory.

20    MC:    My suggestion is this. That since the Trespass was given to him in April, he continued to

21            torment and harass them, he broke their windows out. There was testimony that he called

22            repeated to the point where they had to turn off their phones. They locked their doors because of

**Exhibit E.**

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1    him. They padlocked his room. Mr. (inaudible) was trying to avoid him, uh, he was scared of

2    that was the evidence that was presented.

3

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1   DT:   =   Judge Drew Tatum
2   JC:   =   Defense Counsel, Jesse Cosby
3   BC:   =   Defense Counsel, Brett Carter
4   MC:   =   ADA Matthew Chandler
5   UF:   =   Unidentified Female
6
7
8
9
10  10/7/13 3:10:07- 3:11:12  (3:10:35 – 3:11:09)

11  DT:   Now there's some issue about restraints?

12  JC:   He's tied to this table, (inaudible)

13  DT:   And I wonder if it's necessary to have him restrained while he's in this room.

14  UF:   That's, uh, per Lieutenant decided yes.

15  DT:   Do what now?

16  UF:   That's part of Lieutenant.

17  JC:   Well I ask the court to overrule.

18  DT:   Um, yeah.  We're not gonna have him, cause we would be back and forth and I don't want that

19         to be a, an appellate problem so I don't want him restrained in this room.  And-and be careful

20         what the Jury sees.

21

**Exhibit F**

1

NINTH JUDICIAL DISTRICT COURT
STATE OF NEW MEXICO
COUNTY OF CURRY

STATE OF NEW MEXICO,

       Plaintiff,

vs.

ALBERT JOSE RAMIREZ,               NO. D-0905-CR-0200700434

       Defendant.

NINTH ... COUNTY, NM
CURRY ...
FILED ... OFFICE

2009 JAN 14  AM 10: 21

... COURT

## NOTICE OF FILING TO DETERMINE COMPETENCY OF THE DEFENDANT TO STAND TRIAL

     Comes now the defendant and informs the court and counsel for the state that the

defendant has filed a motion for a forensic evaluation due to defendant's inability to

assist counsel in his defense. One of the purposes for the evaluation is to determine

whether the defendant is competent to stand trial. The motion was filed in cause number

D-0905-CV-0200700713.

Brett J. Carter
DISTRICT PUBLIC DEFENDER

Exhibit A

RP 136

# MAXANN SHWARTZ, PH.D.
## Licensed Psychologist

3228 Los Arboles Ave. NE
Bldg. A, Suite 230
Albuquerque, New Mexico 87111

New Mexico License 0922
California License PSY15845
Telephone: (505) 331-7224

## FORENSIC NEUROPSYCHOLOGICAL EVALUATION

### (CONFIDENTIAL)

This report is confidential, and unless its release is in accord with the rules of criminal or civil procedure, it should not be released to anyone without written consent of the defendant. While the defendant does have a right to see this report, it is strongly recommended that (s) he do so in the presence of the psychologist so that the findings and results can be properly interpreted and any questions or concerns can be addressed. If the report is given to the defendant by anyone other than a psychologist, it is highly likely that (s) he can misunderstand the report's content, and the information may not necessarily present him/her in a favorable light.

| | |
|---|---|
| **NAME:** | **RAMIREZ, Albert Jose** |
| **DOB:** | ███ 1988 |
| **AGE:** | 19 years-old |
| **SS#:** | ███████ |
| **COURT NUMBER:** | D-905-CR-0200700434 |
| **EXAMINER:** | Maxann Shwartz, Ph.D. |
| **DATE(S) OF EVALUATION:** | 03/10/2008 |
| **DATE OF REPORT:** | 03/14/2008 |
| **REFERRED BY:** | Brett J. Carter<br>Counsel for Defense<br>State of New Mexico/Curry County<br>Ninth Judicial District |

---

**Exhibit H**

Mar 1' 2008 4:18PM   Maxann Shwartz,PH.D.       505821336S          p.4

COURT:                    Ninth Judicial District Court
                          Curry County
                          State of New Mexico

PLACE OF EVALUATION:      Curry County Courthouse
                          Clovis, New Mexico

## Reason for Referral and Charges

The defendant, Mr. Albert Ramirez, was referred for a Forensic Neuropsychological
Evaluation to provide information regarding his current cognitive, psychological, and
emotional functioning. Mr. Ramirez' attorneys have expressed concern regarding his
competence to stand trial as he has been unable to discuss any aspect of the case with
them, despite numerous attempts. They have also described his behavior as bizarre
with confused and disorganized thinking. His overall functioning will be evaluated in
terms of his competency to stand trial. Mr. Ramirez has been charged with Murder
(Open Count) and Tampering with Evidence (2 counts), for events that occurred on or
between July 12, 2007, in Curry County, New Mexico. Mr. Ramirez is incarcerated at
the Curry County Detention Center (CCDC).

## New Mexico Criteria for Determining Competence

(1) The Client must have a factual understanding of the charges and legal proceedings,
(2) The Client must also have a rational understanding of the charges and legal
proceedings, and (3) The Client must have the ability to assist his or her attorney (State
vs. Rotherham, 1996).

## Note:

The following report and opinions are based on information made available to the
psychologist at the time of the evaluation. Unless specifically noted, there has not been
a systematic effort made to substantiate the full accuracy of all of the information
provided in this report. The report is based on the assumption that the information
provided is reasonably accurate, unless noted to the contrary. The psychologist
reserves the right to modify opinions or conclusions, if additional information relevant
to the findings is provided at a later date.

Mar 17 2008 4:18PM    Maxann Shwartz,PH.D.    5058213365    P.5

<u>Disclosure of **Limits of Confidentiality and Informed Consent**</u>

Prior to the initiation of the forensic evaluation, Mr. Albert Ramirez was informed of the purpose of the evaluation, about my role as a forensic psychologist, that his participation was voluntary, and that the information that he provided in the evaluation may not be confidential. The defendant was unable to communicate that he understood the purpose of the evaluation and that he was going to undergo a forensic evaluation. He was then informed that information from the evaluation would be provided to the Court regarding his current cognitive and intellectual capabilities and that the information he provided was not confidential. The defendant consented to proceed with the evaluation by signing the "Statement of Rights and Limits of Confidentiality" disclosure form, which was explained to him and outlines the purpose of the evaluation.

Mr. Ramirez was informed that he has the right to refuse to participate in the evaluation or answer specific questions, and the fact that in addition to his attorneys, the report and/or information may be disclosed to the Court and/or the prosecution trial attorneys. He was also informed that the psychologist may also be asked to testify with regards to information gathered in the evaluation. The defendant attempted to participate in a structured clinical interview, but was unable to complete the interview or participate in neuropsychological and psychological tests and questionnaires, or complete a competency test due to his current psychological and emotional state. As a result, the testing session lasted a total of 3.0 hours. The evaluation was conducted in an adequate environment and the results are believed to represent a valid measure of the defendant's current cognitive and emotional functioning and status.

**SOURCES OF INFORMATION:**

1. Clinical interview with Mr. Albert Ramirez (defendant)
2. Interviews with Brett Carter and Chandler Blair (attorneys for defendant)
3. Request For Expert Witness/Investigator
4. Clovis Police Department
   a. Investigative Report: Randy Pitcock, Detective; 7/12/07
   b. State of New Mexico Uniform Incident Report; 7/12/07
   c. State of New Mexico Supplemental Report; 7/13/07
   d. Supplemental Report Narrative; 7/23/07
   e. Supplemental Report: Homicide: 7/12/07
   f. Supplemental Report: Officer Antonio Bosque; 7/13/07
   g. Felony Case File- Ivan Vasquez (exhibit 9)
   h. Criminal Trespass Notification (exhibit 10p)
   i. State of New Mexico Uniform Incident Report; 6/21/07; (exhibit 10q)

MAR 1 8 2008

16. Photo (exhibit 10d)
17. Media Advisory Clovis Police Department (exhibit 10e)
18. Grah's notes/ Action Sheet (exhibit 10f)
19. Inmate Calling Solutions (exhibit 10g)
20. Plateau Wireless (exhibit 10h)
21. Call Records 505-309-7772 (exhibit 10i)
22. SMS Records 505-714-2165 (exhibit 10j)
23. Call Records 505-309-4299 (exhibit 10k)
24. Call Records 505-309-7759 (exhibit 10l)
25. Master Name Inquiry (exhibit 10m)
26. Curry County Detention (exhibit 10n)
27. Photo Lineup (exhibit 10o)
28. Curry County Detention (exhibit 10n)
29. #1 Value Inn Guest Registration (exhibit 10r)
30. State of New Mexico, Ninth Judicial District, Office of the District Attorney (exhibit 10s)
31. Information from John Garcia to Roger Grah (exhibit 10t)
32. Photo Lineup (exhibit 10u)
33. The University of New Mexico (UNM) Office of The Medical Investigator (exhibit 10v)
34. Index- List of Exhibits

## PSYCHOLOGICAL TESTS/PROCEDURES ADMINISTERED

- Structured Clinical Interview
- Review of List of Exhibits
- Mental Status Exam (MSE)
- Mini Mental Status Exam (MMSE)
- Trail Making Test
- Clock Face
- Portions of The Revised Competence Assessment Instrument

**Mental Status Examination:**

Behavioral Observations:
Mr. Albert Ramirez is a 19 year-old, single, Hispanic male who was unable to be evaluated due to grossly disorganized behaviors consistent with the positive symptoms associated with a psychotic disorder, including but not limited to: disorganized thinking; rambling, nonsensical speech; paranoia; depersonalization; reports of auditory hallucinations; labile mood; inappropriate affect; loose associations; and poor reality testing. Mr. Ramirez was dressed in the required uniform of the Curry County

MAR 1 8 2008

Detention Center and had his undershirt on backwards. Mr. Ramirez was unable to perform even simple, goal-directed tasks. He maintained minimal to no eye contact. He evidenced uncontrollable crying throughout the evaluation and uncontrollable shaking. His attorney, Brett Carter, was present in attempt to calm him down and encourage him to participate in the evaluation. Food (McDonald's) was also used as a reinforcer and as an attempt to calm him down. While Mr. Ramirez was eating, he appeared to be more placated and was able to answer several questions. Specifically, he elaborated on being abused by several people, including his foster dad (physical abuse), a neighbor (sexual abuse) and his mother's boyfriend (sexual abuse). However, the majority of his responses to this examiner's questions were answered with "I don't know," or "that's all I know." Otherwise, he attempted to cooperate but eventually would start crying and become hysterical. Occasionally, he was able to provide several coherent and logical responses, however, his thinking would then be followed with tangential remarks with frequent references to his foster dad or paranoid verbalizations, i.e. "I'm scared of everyone. That's all I know. There's something wrong with my mind." For the most part, he was unable to provide any relevant background history. Mr. Ramirez was questioned numerous times about what happened regarding his alleged charge of murder and replied each time with "I used to be a good kid," or "I wasn't like this," and "I just want to talk to my mommy." Mr. Ramirez was unable to read as he could not maintain attention or concentration. He was given the Trail Making Test and was unable to complete one Trail. In sum, he was unable to complete any standardized testing procedures.

Orientation: He was oriented to person, but was poorly oriented to time, date, or location.

Affect/Mood: Mr. Ramirez' mood was labile with congruent affect. He stated that his mood was "very depressed, very bad…I'm so depressed!"

Perception/Thought Process: His thought process was tangential and loose. His thinking was easily derailed as he evidenced paranoia with depersonalization, i.e. "I can't feel my arm that much…I don't know," "I wasn't like this," and ""What happened…the real me is full of pain." He acknowledged that he experiences auditory hallucinations, stating "I hear people talking in my head…saying kill myself." He denied visual hallucinations. He presented with frank paranoid ideations.

Mini Mental Status Exam: Mr. Ramirez was administered the Mini Mental Status Examination (MMSE), a widely used screening instrument used to assess cognitive impairment. His results were within the severely impaired range (16/30) and appeared to be due to the presence of a functional psychosis. Mr. Ramirez exhibited poor immediate memory, concentration, and attention.

Memory: His overall memory appeared questionable, e.g. he could not remember the city where he was born.

Judgment/Insight: Impaired/Impaired

Communication: His speech was pressured and rambling. At times, he was able to comprehend questions but was unable to provide consistent or appropriate responses.
Sleep/Diet: Mr. Ramirez reported "I can't sleep at all...I have physical pain and mental pain...I hear people talking in my head." He indicated that his appetite fluctuates and that he has lost weight since being incarcerated.
Suicidal Ideation, Intent, or Plans: He denied a history of suicidal ideations, intent, plans, or attempts, stating "No, they'll put me in that little room."
Substance Abuse History: Mr. Ramirez acknowledged using illegal drugs and alcohol in the past.
Current Medical/Physical Concerns and Medications: He denied past or present use of medications, including being prescribed psychotropic medications.
Current Mental Health Status: Mr. Ramirez presented with symptoms associated with a significant mental illness, including heightened instability of mood. Specifically, he evidenced a mixture of characteristic signs and symptoms involving a range of cognitive and emotional disturbances that may be associated with the initial onset of a psychotic disorder.

## DIAGNOSTIC IMPRESSIONS

### RULE OUT-

| Axis I: | 295.30 | Schizophrenia, Paranoid Type |
| | 295.70 | Schizoaffective Disorder, Bipolar Type |
| | 309.81 | Posttraumatic Stress Disorder, Chronic |
| Axis II: | 799.9 | Diagnosis Deferred |
| Axis III: | | Defer to Physician Report |
| Axis IV: | | Legal Problems |
| Axis V: | | 30 |

## CONCLUSION

Mr. Albert Ramirez is a 19 year-old, single, Hispanic male, with no known documented history of mental illness. However, throughout the evaluation, he evidenced a constellation of symptoms characteristic of Schizophrenia, including paranoia, psychoses, loose associations, disorganized thinking, poor reality testing,

MAR 1 8 2008

depersonalization, inappropriate mood and affect, and poor judgment, reasoning, and insight. Mr. Ramirez reported numerous times "There's something wrong with my mind." Because of his current mental state, he was unable to complete a formal evaluation.

Based on his current presentation, Mr. Ramirez is not capable of competently proceeding with adjudication and handling the stress associated with the legal process. In his current state, he has been unable to assist his attorneys in his defense as he is unable to communicate in a logical or rational manner. He is also unable to provide any assistance to his attorneys regarding pertinent circumstances or events that led to his arrest in reference to the alleged charges. It is therefore the opinion of this examiner, that Mr. Albert Ramirez is not competent to stand trial.

Thank you for your referral.

Respectfully submitted by:

Maxann Shwartz, Ph.D.
Licensed Psychologist

IN THE NINTH JUDICIAL DISTRICT COURT

STATE OF NEW MEXICO, COUNTY OF CURRY



08 APR 17 AM 11: 21

STATE OF NEW MEXICO,

       Plaintiff,

vs.

ALBERT JOSE RAMIREZ,
D.O.B.: ███1988
S.S.N.: ███7793

       Defendant.

No. D-0905-CR-0200700434

### ORDER FOR COMMITMENT TO
### THE NEW MEXICO BEHAVIORAL HEALTH INSTITUTE AT LAS VEGAS
### FOR TREATMENT TO ATTAIN COMPETENCY TO STAND TRIAL

THIS MATTER having come before the Court; the Court having been advised that the parties

stipulate to the Forensic Neuropsychological Evaluation (Confidential), dated March 14, 2008, by

examiner Maxann Shwartz, Ph.D., wherein pursuant to the examiner, the Defendant was found not

competent to stand trial; and further the parties agree and stipulate to the Court entering a finding

that the Defendant is incompetent to stand trial and that the Defendant is dangerous; and the Court

being well and sufficiently advised in the premises;

THE COURT HEREBY FINDS:

1) that the Defendant is currently incompetent to stand trial;

2) that the Defendant is charged with a felony; and,

3) that the Defendant is dangerous as defined in N.M.S.A., 1978, Section 31-9-1.2(B) for

purposes of having the Defendant treated to competency;

RP 146

Exhibit I

ORDER FOR COMMITMENT
D-0905-CR-0200700434
ALBERT JOSE RAMIREZ
D.O.B.: ███ 1988
S.S.N.: ███ 7793
Page 2

4) that the Defendant shall be detained by the Department of Health of the State of New Mexico, in a secure, locked facility, for treatment to enable the Defendant to attain competency to stand trial for a period not to exceed nine (9) months;

5) that the Defendant, during the period of commitment, shall not be released from that secure facility except pursuant to an order from the District Court which committed the Defendant;

6) that within thirty (30) days of receipt of the Court's Order of Commitment of an incompetent Defendant and of the necessary and available documents reasonably required for admission pursuant to the written policies adopted by the Secretary of Health or his designee, the Defendant shall be admitted to a facility designated for the treatment of the Defendants who are incompetent to stand trial and are dangerous;

7) that within thirty (30) days of an incompetent Defendant's admission to a facility to undergo treatment to attain competency to proceed in a criminal case, the person supervising the Defendant's treatment shall furnish to the District Court, the Office of the District Attorney and Defense Counsel an initial assessment and treatment plan and a report on the Defendant's amenability to treatment to render him competent to proceed in a criminal case;

8) that within ninety (90) days of entry of the order committing an incompetent Defendant to undergo treatment, the District Court shall conduct a hearing to address the factors listed in Section 31-9-1.3A and seven (7) days prior to that hearing, the treatment supervisor shall submit a written progress report to the Honorable Teddy L. Hartley, District Judge, Division III, Curry County



ORDER FOR COMMITMENT
D-0905-CR-0200700434
ALBERT JOSE RAMIREZ
D.O.B.: ███ 1988
S.S.N.: ███ 7793
Page 3

Courthouse, 700 North Main Street, Clovis, New Mexico 88101, to Andrea R. Reeb, Chief Deputy

District Attorney, 417 Gidding Street, Suite 200, Clovis, New Mexico 88101, and to Brett J. Carter,

District Public Defender, 800 Pile Street, Suite A, Clovis, New Mexico 88101, addressing the

factors set out in Section 31-9-1.3B(1) (2) and (3), to include but not limited to the following

information:

a) the clinical findings of the treatment supervisor and the facts upon which the

findings are based;

b) the opinion of the treatment supervisor as to whether the Defendant has attained

competency or as to whether the Defendant is making progress under treatment toward attaining

competency within nine (9) months from the date of the original finding of incompetency and

whether there is substantial probability that the Defendant will attain competency within nine (9)

months from the date of the original finding of incompetency;

c) whether the Defendant is dangerous as that term is defined in N.M.S.A., 1978,

Section 31-9-1.2 or whether the Defendant satisfies the criteria for involuntary commitment

contained in the Mental Health and Developmental Disabilities code; and,

d) if the Defendant is receiving medication, information from the prescribing

physician indicating the type, the dosage and the effect of the medication on the Defendant's

appearance, actions and demeanor.



ORDER FOR COMMITMENT
D-0905-CR-0200700434
ALBERT JOSE RAMIREZ
D.O.B.: ███ 988
S.S.N.: █████ 7793
Page 4

9) that the Sheriff of Curry County shall transport the Defendant forthwith to the Department of Health in Las Vegas, New Mexico.

Pursuant to N.M.S.A., 1978, Section 43-1-1.D, documents reasonably required by the Secretary of Health's Forensic Evaluator, to show the medical and/or forensic history of the Defendant, shall be released to the Forensic Evaluator.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Curry County Sheriff's Department shall take custody of the Defendant and transport him to The New Mexico Behavioral Health Institute at Las Vegas and return him to the Curry County Adult Detention Center upon direction of the Las Vegas Medical Center, no later than seventy-two (72) hours after notification by the New Mexico Department of Health (The New Mexico Behavioral Health Institute).

_____
TEDDY L. HARTLEY, District Judge, Division III

HAVE SEEN:

_____
ANDREA R. REEB, Chief Deputy District Attorney

_____
BRETT J. CARTER, District Public Defender
        Attorney For Defendant

D.A. No. 07-471 slh

RP 149

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1    Maxine Schwartz to evaluate the defendant. She determined the defendant was incompetent to

2    stand trial and submitted a report that was provided to the court and the prosecution. An order

3    finding the defendant currently incompetent to stand trial and committing defendant to the Las

4    Vegas Behavioral Health Unit for treatment to obtain competency was filed April 17th, 2008.

5    The defendant was admitted to that facility on June the 5th, 2008. On August the 18th, 2008 the

6    Las Vegas Behavioral Unit, Behavioral Health Unit prepared a final report finding the defendant-

7    defendant competent to stand trial. A competency hearing was set based upon reports submitted

8    by Dr. Burness. Dr. Burness testified at the competency-competency hearing that it was her

9    opinion that the defendant was faking his symptoms and was competent to stand trial. The court

10   found the defendant competent to stand trial automatically set for trial. This court is of the

11   opinion at this juncture that the opinion of Dr. Burnis that the defendant is faking continues and 1

12   believe he is competent to stand trial based upon that testimony. Obviously several years have

13   passed in the interim but, uh, I-I'm prepared to continue this trial, uh, and that's what we're

14   gonna do.

15

**Exhibit J.**

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

| 1 | DT: | = | Judge Drew Tatum |
| 2 | DA: | = | Female District Attorney |
| 3 | MC: | = | DA Matthew Chandler |
| 4 | BC: | = | Defense Counsel, Brett Carter |
| 5 | AR: | = | Albert Ramirez |
| 6 | JB: | = | Dr. Joanne Burness |
| 7 |  |  |  |
| 8 |  |  |  |
| 9 |  |  |  |

10  DT:   And we've got, uh, County of Curry, State of New Mexico, the State of New Mexico versus

11        Albert Jose Ramirez, CR number is in 07-00434. Is that you Mr. Ramirez?

12  AR:   Yes sir.

13  DT:   Mr. Cosby, you be leading this this afternoon?

14  BC:   Yes sir.

15  DT:   Uh, Mr. Chandler will you be presenting for the State?

16  DA:   Yes. This is already been on (inaudible) sir.

17  DT:   Okay, alright. Um, who's got the burden on this case?

18  DA:   The State does Your Honor.

19  DT:   Alright go ahead.

20  DA:   Judge, uh, we would call, uh, Dr. Joanne Burness to the stand.

21  DT:   Alright. Ms. Burness do you swear that under penalty of law the testimony you'll be giving here

22        this afternoon will be the truth, the whole truth and nothing but the truth?

23  JB:   I do sir.

24  DT:   Have a seat.

25  JB:   Thank you.

26  DA:   Judge just before we begin just to remind the Court, um, the defendant was sent up to Las Vegas

27        to be treated for competency in a 9 month period and we have the final report back and we're

1

**Exhibit K**

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1        prepared to go forward and show the Court by a clear and convincing evidence that he is

2        competent at this time.

3   DT:   Alright let the Court advise you that, uh, we weren't doing the (inaudible) some other things, I

4        have not read this report so go forward with the understanding that I will read it before we make

5        a determination but I have not read the report yet.

6   DA:   Judge we have not problem if the defense will stipulate to entering that report at this time, um,

7        it's just gonna be testifying some things in the report.

8   DT:   Any objection to that?

9   BC:   No Judge.

10  DT:   Alright begin.

11  DA:   Okay thank you.

12  BC:   Will that be State's exhibit 1 Judge?

13  DA:   Yes, State's 1.

14  DT:   State's Exhibit number 1.

15  DA:   Can I proceed Your Honor?

16  DT:   You may.

17  DA:   Ma'am would you state your name please?

18  JB:   Certainly, Joanne Allison Burness. My sur name is spelled B-U-R-N-E- double S.

19  DA:   And can you tell the Court your current occupation please.

20  JB:   Yes. I'm a Clinical Psychologist employed by the State of New Mexico, um, working in the

21       Forensic Division at New Mexico Behavioral Health Institute.

22  DA:   And that's Las Vegas?

23  JB:   That's Las Vegas. It used to be formerly called Las Vegas Medical Center.

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1   DA:   Okay. Can you tell the Court a little bit about your education and background, training, things

2          like that.

3   JB:   Certainly. I have a Bachelor of Science in Psychology from the University of Bolton in the

4          United Kingdom, I have a PhD in Neuro-psychology from the University of Sheffield, also

5          United Kingdom, and I have a doctorate in clinical psychology from the University of Teessside

6          in the UK. I moved to the United States in October 2006, uh, initially as an Assistant Professor

7          at a University in Texas, um, then have been employed with New Mexico Behavioral Health

8          since May of last year. I'm licensed in the State of New Mexico by the Board of Psychology

9          Examiners.

10   DA:   And have you ever testified as an expert in this area?

11   JB:   Yes.

12   DA:   Um, how many times?

13   JB:   Um, approximately probably now 10 to 12, maybe 10 to 12, 10 to 15 over the last 12 months.

14   DA:   At any time in Curry County?

15   JB:   Yes I have testified here, um, in Curry County back in, oh earlier this year, maybe 2, 3 months

16         ago, maybe a little longer now.

17   DA:   Alright. Can you tell us a little bit about your duties at Las Vegas? What do you do there?

18   JB:   Certainly as a-a psycho, I'm clinical coordinator which mean that means that I'm, uh, attuned, I-I

19         supervise the other psychologists, um, at Las Vegas which means that I allocate in their cases,

20         um, I also independently perform competency evaluations, uh, dangerousness assessments, um,

21         for the, for the State up there.

22   DA:   Okay. And in fact do you know the defendant in this case, Albert Jose Ramirez?

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1    JB:     Yes I do. He was with us for a period of, um, just around 3 months earlier this year from June to,

2            um, mid-August of this year.

3    DA:     And for what purpose did he come to your unit?

4    JB:     He came for treatment to competence to stand trial. He had been evaluated by Dr. Maxanne

5            Schwartz in the community, one of the community evaluators, she declined that he was not

6            competent to stand trial and a Court Order was then, uh, drawn up and he was sent to us under

7            treatment to competency to stand trial rather than evaluation of competence to stand trial.

8    DA:     At what date did he come to the facility?

9    JB:     Um, the 5th of June, 2008 I believe.

10   DA:     And how long was he there?

11   JB:     Till August 19th.

12   DA:     So approximately 2 months?

13   JB:     Approximately that. Certainly it was under the 3 month framework, um, as per Court Order

14           when anybody comes on a T, what we call TCC, treatment to competence, we have to inform the

15           Court, um, Your Honor that they have arrived 30 days after their arrival at the facility and that's

16           just a brief letter stating basically he's here and we're going to start evaluating him. And then

17           we have to prepare a 90 day report, however, if the individual in our opinion, um, is competent at

18           that point that 90 become a final forensic report. If at the 90 day we're still not convinced either

19           because there's some symptoms of mental illness or there's something that we're concerned

20           about that didn't quite fair the treatment, the individual can stay for a period of up to 9 months,

21           um, when we have to submit the final forensic which at that 9 month period would have to state

22           the individual is, he's either competent at this time or not competent and not restorable.

23   DA:     Okay. And did you do a 90 day report in this matter?

4

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1    JB:    In, um, Mr. Ramirez' case, I believe that the 90 day actually was the final forensic.

2    DA:    Okay. And did you have any hands on experience with this defendant yourself?

3    JB:    Yes. I evaluated Mr. Ramirez, I met with him on a number of occasions, um, stopped by and sat

4         3 or 4 occasions.  I also, uh, as a psychologist there, I spend quite a lot of time, um, on the units

5         themselves, um, wandering around and sort of familiarizing myself with the patients and what

6         they're doing during the day, um, I'm also talking to the staff of course about how individuals

7         are getting on and quite a lot of our patients will stop me in the, when I'm on the unit and ask

8         me, assist with, you know, various signs of, even things like phone calls which is actually the

9         social workers job but they often stop me and ask. And then they will regularly come up and say

10        do you know when I'm gonna be evaluated and who's gonna be evaluating me and that kind of

11        thing so I have quite a lot of contact with all of our patients but I certainly have individual

12        contact with Mr. Ramirez.

13   DA:    Okay. And then other doctors and other people on the shift ...

14   JB:    We have, um, basically we work in an inter-disciplinary manner so we have a medical physician,

15        um, assigned to the floor in each division, we have a staff psychiatrist assigned to the division.

16        Obviously we have nursing staff and psych techs who are there 24 hours, round the clock,

17        observations. Um, we have social workers, each patient's assigned a social worker who will help

18        facilitate visits and phone calls and that's one of their duties. Um, and we also have a (inaudible)

19        have had over this center period four master level psychology interns, um, under my supervision

20        and they fit to be running the group, work on the unit.

21   DA:    Okay. And then they give you all the information that they observe also from an individual?

22   JB:    They do.

23   DA:    And that goes into your report?

5

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1    JB:    They-they do. They document it in, um, a computer program called Avatar, which is basically a-

2           a computerized medical record, so they document but every-every member or staff can document

3           into Avatar so anything that occurs on the unit can be documented. It's also written up in their

4           progress notes, um, on the chart. So we-we can, uh, collect information from-from the written

5           documentation not just verbally but they have to provide verbal information.

6    DA:    Okay. Can you tell the Court when Mr. Ram-Ramirez arrived how the initial intake procedure

7           went with him.

8    JB:    Sure. I didn't do the initial intake eval, uh, admission procedure, we had a, we have a, um, I-I

9           guess just a tried and tested, or has been a tried and tested procedure, where Dr. Bangroll, who's

10          the division elector so psychologist, he admits the patients to the unit, decides which unit they-

11          they are best suited for. We have 3 units or 4 if you include the ladies unit, but 3 units for the

12          gentlemen, um, we have an acute care unit, which as-as it's name suggests if somebody comes in

13          and they are clearly, floridly psychotic or clearly mentally ill, they'll often be assigned to the

14          acute care unit. It's a smaller unit and basically it means that we can spend more time evaluating

15          that-that individual. Um, if they're dangerous when they, when they arrive as a result of mental

16          illness or just behavorial, um, poor behavior, they can be allocated to max-maximum security.

17          Um, and alternatively if they're fairly stable and they're not pre-presenting, not noted from

18          County Detention as presenting difficulties, they'll be assigned to the continuing care unit.

19   DA:    Is that where Mr. Ramirez ...

20   JB:    And that's where Mr. Ramirez was assigned on his arrival. As I said usually that's the slightly

21          more stable individuals from the mental-mental health point of view, it's a larger unit, has up to

22          40 patients at any given point in time on that particular unit. So Dr. Bagwell did the admission

6

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1       and then, um, passed oversee Mr. Ramirez file to myself because then I-I allocate accordingly

2       who's gonna to-to take on his case and in this case it was going to be myself.

3  DA:  Okay. And did you speak with Dr. Bagwell or review his notes about the admission process?

4  JB:  Yes I, yes I did. Um, we, when we admit somebody we actually have to dictate an admission

5       psychiatric evaluation or NAP, that is, that is, um, a piece of paper or-or a set of papers that go

6       into the patient's, um, medical record and also we keep a-a copy of that ourselves so I know what

7       people look like if you like on admission even if I haven't seen them the day that they arrive. On

8       the higher profile cases by which obviously I'm talking about the-the cases where there's, uh,

9       high charges are more severe, um, ....

10  DA:  As in this case?

11  JB:  As in this case. I'll usually try and meet with the person fairly early just to see, and to put a face

12       and a name together but also to see what they look like because how do you measure change if

13       you don't see them early on.

14  DA:  Okay. And what was his mental status on admission?

15  JB:  Um, as I recall and if it's okay ...

16  DA:  Sure.

17  JB:  ... I'll refer back to my-my report, uh, Dr. ... where are we ... um, yeah Dr. Bagwell, um,

18       commented that Mr. Ramirez, um, uh, presented as-as not having any physical problems but he

19       made very poor eye contact, he didn't-didn't want to-to, um, look anybody in the eye. Um, his

20       hygiene and grooming were not particularly good, he was un-unkempt but that's in fact it's not

21       necessarily unusual from-from the Detention Centers. Um, but everything was, uh, in terms of,

22       uh, his-his psycho and motor abilities, ability to-to move and function that seemed to be

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1      unimpaired. Um, he tended to rock and he cried a lot on-on admission, he-he really didn't-didn't

2      communicate well at all, spent a lot of time being very tearful. Um, the time he was being ...

3  DA:  Did he cooperate with the admission process?

4  JB:  No not fully, no.

5  DA:  Okay. Would he answer questions?

6  JB:  No he was pretty, um, uh, not mute but very, very, um, unwilling to-to respond to questions

7      when asked so a full mental status exam if I remember correctly wasn't, um, possible because he

8      was not cooperating.

9  DA:  Okay. Now what criteria are you looking at for the unit to determine if somebody is competent?

10     What are you aiming for?

11  JB:  Okay, the three, the three aspects of competency according to New Mexico Uniform Jury, um,

12     Regulations are that the individual should understand what they're charged with, they should be

13     able to understand how serious those charges are and what the likely outcome and penalty may

14     be for-for whatever they're charged with. They need to have an understanding of the Court

15     process and how it works and what people do in the Courtroom and they have to be able to

16     factually assist their attorney and also the big, the big one that kind of, uh, is the most difficult I

17     guess is to be able to rationally assist their attorney in the preparation of their defense.

18  DA:  Okay. And can you tell the Court the different things the defendant is subject to, um, throughout

19     this stay? As far as what evaluations, um, 24 hour observation, different things you're gonna

20     look at.

21  JB:  Yeah. Well have, certainly we have 24 hour observation of all of our-our patients. Um, there-

22     there are obviously, there's-there's cameras in the rooms and cameras on the units, um, a psych

23     techs and nursing staff are there 24 hours, um, they have med-medical physician who will

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1       examine the individual on their arrival to make sure that there's no medical health problems but

2       who will also meet with the patient if they say I have pain or I have tooth ache or I need an eye

3       exam. So he-he will arrange that. Um, the patients can attend group, are encouraged to attend

4       groups, uh, we have three groups running, we have substance misuse or substance abuse group,

5       anger management group and competency restoration group, um, which the patients are-are as I

6       say encouraged to attend. Um, they run on a weekly basis. Um, what else .... well obviously we

7       have the staff psychiatrist who will again be present on admission, um, and also will meet with

8       the patient in subsequent days or weeks, um, either on the patient's request or more likely just

9       because the staff say this person needs re-evaluating or can you juggle this person's medications

10      or whatever it may be.

11  DA:  Okay. Now I want to talk to you about and I'm gonna kind of go through your report a little bit,

12      the, um, limits of the confidentiality section.

13  JB:  Okay.

14  DA:  Um, did you go over those with Mr. Ramirez? Or did somebody from your unit?

15  JB:  Yes. Um, when somebody's admitted we-we go through all the, all the little bits of

16      confidentiality. (inaudible) made were to explain that, um, the, that basically this is not a

17      doctor/patient relationship as it might be in the community. That, um, anything that they say,

18      um, or any conversation that we have may be reported back to the Court. Um, and that nothing

19      can be kept secret. And that's repeated each time that we meet the individual for an evaluation

20      whichever psychologist meets always explains and then says can you tell me what I've said in

21      your own words. And depending upon on how the individual replies back to that, we get a sense

22      of whether they've understood or not.

9

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1  DA:  Okay. And did he state, the defendant, whether he understood the limits of this confidentiality

2        warning?

3  JB:  Well he claimed, Mr. Ramirez stated that he did not understand the limits of confidentiality,

4        however, given the conversations that he had with some of my-my intern staff and with other

5        members on the unit as well as a report from the Detention Center prior to his arrival at the

6        facility, which I have a-a comment in there, I was quite skeptical that he did not understand.

7  DA:  Can you explain to the Court some of the comments he made on the unit or to the Detention

8        Center.

9  JB:  Well prior to his arrival, we-we always get a-a little, um, a little bit of information from the RN

10       at the, at the Detention Center on-on the individual particularly of course if they're taking

11       medications, what they're taking and what doses. It also how's their behavior being, whilst

12       they're being in detention partly because we need to know for our safety of our own staff if

13       somebody's going to be violent when they arrive. And, uh, the report for Mr. Ramirez actually

14       at the time he was admitted, um, and the behavior the, uh, nurse stated he's in isolation, has

15       asked other inmates there how he can fool the system to fake mental illness and then make

16       statements to nurse like, um, upper body not hooked to his lower body. Um, so on his admission

17       he first started talking to my interns about how he could get his charges reduced from, um, 1st

18       Degree down to 4th Degree. Um, but if he was found not competent that would mean that his

19       charges will be dismissed and he would be able to go home and he made a lot of comments

20       about, um, you know, reducing the severity of the-the charge in terms of the level of felony, um,

21       and the value of being found competent, uh, being found not competent. When one of the interns

22       explained to him that actually not being found not competent does not mean that your charges

23       are dismissed, um, he was quite upset about that and then started talking about well how else

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1        could he get his charges, get the charges reduced. He would also those conversations with

2        myself, he came up to me, um, at one point during his stay and said was it right if the charge, if

3        the charges were reduced, if he was found not competent that he wouldn't be released and I, and

4        I said yes that that's quite for-for a charge as serious as this one that was correct.

5   DA:   So comments like those made you skeptical ...

6   JB:   Yes.

7   DA:   ... of (inaudible) and understand.

8   JB:   Yes.

9   DA:   Alright. Um, there was some background information taken I'm assuming you get kind of

10       history from him?

11   JB:   Yes we try, we do it yes from everybody we do our best.

12   DA:   And were you able to get good history from him?

13   JB:   Not a good history, a very disjointed history.

14   DA:   Why is that?

15   JB:   Uh, Mr. Ramirez in-in his evaluations presented as very histrionic, uh, very dramatic, um, he

16       would, um, spend, he good off on a tan, not really go off on a tangent actually cause he would

17       stay on-on track in relation to the conversation that he was having but he would, um, he would

18       repeat a lot of things over and over again. Um, and very insistent you-you have got this haven't

19       you? You know, you-you are listening to what I'm telling you. And so his history was, uh,

20       predominantly, uh, described in terms of his two foster placements, um, he varied in terms of, a

21       little bit in terms of what age he was, he was actually placed in foster care but the damage that

22       the foster parents had-had done to him and that as a result of them, that's when he, you know,

23       gone-gone and got into trouble with the law.

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1  DA:    What did he say about that?  That his foster parents had done?

2  JB:    He said that his foster parents, specifically he said his foster parents had made him mentally

3        retarded he was not mentally retarded before he went there but after he spent time there, he-he

4        was.  He said that they physically abused him, um, as well as emotionally abused him, they made

5        him like a child.  One-one-one set of foster parents had made him like a child because they made

6        him eat with the little kids and they wouldn't let him, um, watch cable and they'd lock him in his

7        room and wouldn't let him do anything, um, and as a result he became mentally retarded.  I

8        asked if he had a-a formal diagnosis from anybody else of-of MR and he hadn't and his history

9        doesn't reflect, um, a-a genuine mental retardation as according to diagnostic statistical manual.

10       Um, he made a lot of negative comments about both, I guess about both foster placements, um,

11       which tended again to be quite, but he'd, um, at one point they hadn't let, um, they called, they

12       made him the way he was by making him drive a manual car and if they bought an automatic he

13       wouldn't have got into trouble and he-he-he went on to describe a lot of physical health problems

14       to do with his shoulder and his arm and his legs.

15 DA:    And what about that?  This, his medical ...

16 JB:    Well-well that we got a voluminous, a voluminous pile from the Detention Center when he

17       arrived because he repeatedly in Detention asked to meet with the medical physician to the point

18       there's a note saying that the medical physicians wouldn't meet with him any further unless the

19       nursing staff could identify a genuine need and that was similar to-to his presentation, um, at-at

20       Vegas where he, every day he wanted to see the psychiatrist and the medical physician but the

21       one examination actual in particular in relation to medical complaints there were no medical

22       conditions.

23 DA:    Were you ever able to validate any medical ...

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1   JB:   No.

2   DA:   ... with him.

3   JB:   No.

4   DA:   Or any history of medical issues?

5   JB:   No.

6   DA:   What about a physical abuse or sexual abuse? Anything like that?

7   JB:   Nothing that-that's been validated.

8   DA:   So were you skeptical of that information?

9   JB:   Yes. And especially in the way it presents Size was our medical, Size was our-our medical

10        doctor, he-he was, when-when we come up, well every morning we'd meet and-and we would

11        round and again all the disciplines I mentioned earlier were down around the table and we'd go

12        through each of the units and we'd talk about not every patient but every patient that something's

13        happened with over the 24 hour period, if there's been an altercation, if there seems as if they're

14        improving, if they're, actually because if they're not improving, if they're not well, things like

15        that and so every morning, we'd meet every morning our CC unit will come and say, you know,

16        Mr. Ramirez wants to meet with whoever and whoever around the table would be okay but

17        they'd go and they wouldn't be able to identify anything specific.

18  DA:   Alright. What about his psychiatric history? You said that he claimed he was mentally retarded,

19        did he claim anything else?

20  JB:   I'd have to remind myself.

21  DA:   Or were you able to ...

22  JB:   I mean, well-well sorry I don't, yes Mr. Ramirez ever-every-every I met with him or actually

23        members of staff met him, he claimed to be bi-polar, he claimed to have schizophrenia, he

13

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1         claimed to have pretty much every mental illness that, uh, I think truthfully if I had given Mr.

2         Ramirez a-a DSM to read, he would have decided he had every psychiatric condition in there.

3   DA:   Okay. Ever find any proof that he was on any medications of any sort?

4   JB:   He wasn't on any medications on his arrival at the facility, uh, I'm sorry, he, um, he had a-a PRN

5         medication at the facility just which, that was Zoloft, um, it's a mood stabilizer, and I know

6         psychiatrists did prescribe some medication for him as a mood stabilizer because he was, he was

7         quite extreme in his moods, um, very impulsive, um, very active. He's a very active (inaudible),

8         he should be at 19 I guess but he-he'd be quite hyper young man. So it was to try, and-and got

9         angry pretty easily too so just to try to kind of calm him down a little bit, they also County did

10       prescribed a couple of meds.

11   DA:   (inaudible) a-a mind altering medication ....

12   JB:   No.

13   DA:   ... in the sense of competency?

14   JB:   No. Nothing for, there's no-no genuine evidence of-of-of a mental illness of the nature of bi-

15       polar disorder or schizophrenia.

16   DA:   Okay. Um, let's talk about while he was on the continuing care unit. How did he do on the unit

17       as far as interacting?

18   JB:   He did, he did well on the unit. He-he-he had good interactions with other groups, some other

19       patients, uh, he, well he had patients he got along with. He-he did tend to be a little bit, uh, well

20       as I say, impulsive, um, would kind of stand, crowd in the nurses door, very attention, very

21       attention seeking and demanding, uh, from staff and wanting things straight away. Um, he, this,

22       the interns that ran the groups, um, again and he was, um, he was all of, one of the first groups he

14

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

| | | |
|---|---|---|
| 1 | | was making sexually inappropriate gestures which he didn't witness, it was one of the techs and |
| 2 | | he was removed from that group as a result of that at one, at one point. |
| 3 | DA: | Did he participate in the different type of counseling? Anger Management? Substance Abuse? |
| 4 | JB: | He did. He did attend, he did attend the groups. Um, yes. He was reluctant to attend |
| 5 | | competency, um, and my experience is that the, that the-the patients we have who don't want to |
| 6 | | be competent, don't go to that group because they have a vested interest in, you know, obviously |
| 7 | | not getting to that stage so they often will not attend competency group but he did attend anger |
| 8 | | and I think he attended substance but certainly anger, quite regularly. |
| 9 | DA: | Alright. Let's move on to the different tests you performed on competency. Um, well let's talk |
| 10 | | about the MCMI/3 I guess ... |
| 11 | JB: | Yeah third edition. |
| 12 | DA: | Third edition? |
| 13 | JB: | The MCMI is a, is a personality inventory and, um, we-we try and, uh, get a personality, um, |
| 14 | | psychometric from pretty much all of our patients. The MCMI is one, is the simplest, um, and in |
| 15 | | America is the one that's used most regular, the people know of most is the MMPI, um, but it is |
| 16 | | a, it's a huge measure, it's 567 questions, I mean it's pretty daunting, um, and I didn't believe |
| 17 | | that Mr. Ramirez' attention span would have, would have coped well with that even if it had |
| 18 | | been over time. Um, another measure is more complicated in the sense that you have to choose |
| 19 | | on a scale of sort of 1 to 5 where you, whether you've, that you highly agree with a statement to |
| 20 | | highly disagree and again I didn't feel that his attention, he would do well with that and a lot of |
| 21 | | our patients don't, I think it's just a little bit too complex. The MCMI's a simple, fairly simple |
| 22 | | measure, it's true/false response, the instructions are mark each one, you know, read each |
| 23 | | statement and the statement might be something like I feel depressed most of the time, um, and |

15

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1 then you have to decide whether it's true or false for you. And if you can't make your mind up,

2 you're to, you're instructed to-to go for the false and it's 175 questions. Um, Mr. Ramirez

3 invalidated it basically by over endorsing so he-he over endorsed essentially pretty much

4 everything on there in terms of having again all these difficulties and-and life being extremely ...

5 DT: Excuse me. I don't know what you mean by over endorsing.

6 JB: He-he, um, basically said true to pretty much everything. So-so, he-he would state that, um, you

7 know, every-every difficulty being in there. I feel depressed most of the time, true. I have days

8 when I'm, I don't have very many days when I'm not blue, um, I've had trouble with drugs and

9 alcohol. He-he said yes to pretty much everything. And the point really why I'm making that is

10 it's quite difficult to invalidate the MCMI, it's a very flexible little measure, um, in the sense that

11 it-it, you have to, you have to work to over endorse that much on that particular measure. Um,

12 DA: So he invalidated the test completely.

13 JB: Yes. So the, we could, you could get, I mean what happens is when you then put it into the

14 scoring system, if it, if they have a, if the individual has a score over and above a certain value it

15 just, basically the computer just says no I can't do this.

16 DA: Alright. So what did you do after that? What tests?

17 JB: Well after that I mean, yeah if I administered the-the SIMS, the stretched (inaudible) malingering

18 symptomatology.

19 DA: What's malingering mean?

20 JB: Malingering means to feign, uh, to feign something.

21 DA: Meaning like ...

22 JB: But usually feigning mental illness in the context of where I come from. And people will

23 malinger for a number of different reasons. Uh, for example if you have a, um, if you're going

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1        for disability, social, uh, social disability, as a result of an accident, people may over endorse

2        their limp, they over endorse their physical, that would be more, that would be another form of-

3        of malingering but it's basically when you do make conscious effort to or-or deliberate effort I

4        guess to, um, be more impaired than you actually probably are in reality in order to gain, to have

5        a second, uh, to-to gain, to gain something.

6    DA:   And so the SIMS test is designed to pick that up.

7    JB:   It is. It's a screening measure. There are many that are, that are wide range of, and I'm happy to

8        say why I didn't use anything after that, um, but the SIMS is the basic screen and the nice thing

9        about the SIMS is it provides, um, indication, an indication of somebody's tendency to

10       exaggerate, feign or malinger, if you would that word, um, not just psychiatric illness but also

11       neurological impairment or neuro-psychological deficit. So it, and-and it looks cognitive

12       impairment so it tries to pick up both aspects. Many of the other malingering measures are

13       specific to cognitive impairment or psychiatric impairment.

14   DA:   How did he do on this test?

15   JB:   He scored very high and the test has a cut off score of 14, um, in other words anybody who's

16       scoring above 14 on this measure is providing some indication that they are, that they're over

17       exaggerating and he provided I think it was 46 or 47.

18   DA:   So very high.

19   JB:   Very high. I think the highest I've ever seen, I've seen is 56 and he wasn't quite there, he wasn't

20       quite at my record level yet but he was, he was, he was high up there which means that he over

21       endorsed items or he endorsed items on 5 of the sub-scales. The sub-scales are neurologic

22       impairment so the implication being that neurologically he's not intact. Psy-psychosis or

23       psychosis, actually meaning he endorsed all the items indicating that he was psychotic, um, the

17

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1      other three, effective so again emotional mood problems, um, low intellect so endorsing that he,

2      you know, he really didn't understand, he must have done that but intellectually he's so impaired

3      which fits of course with his presentation of telling me consistently about having MR, and, um,

4      there's one other that's escaped me, briefly.

5   DA:   Okay. But based on that test what was your opinion after that test?

6   JB:   Well it's not, it was my opinion prior to but and that's why I screened using that-that particular

7      measure just to see what he'd provide but his-his presentation on the unit, um, and from-from the

8      moment he was admitted was so bizarre but not bizarre in a consistent, not bizarre in a consistent

9      with mentally ill, just histrionic, dramatic, um, very-very much, um, blaming everybody for-for-

10     for his problems, not able to accept it although in-in his life and, um, his presentation did not

11     provide any of us across the team with any consistent belief that we had a mentally ill person on

12     our hand.

13  DA:   And you talk more about seeing more of a personality style ...

14  JB:   Yeah.

15  DA:   ... rather than an mental illness?

16  JB:   I mean I think, I think in fairness there-there's some impulse control issues, there may be some

17     hypo-active issues or may have been in-in-in childhood, there's-there's certainly anger

18     management issues, um, I mean, you know, he's a, he's a not a, you know, he's a disturbed

19     young man but he's not ment, in my opinion, he's not mentally ill.

20  DA:   Okay. Let's talk about, um, well let's first real for the record talk about the diagnostic

21     impressions, um, the diagnosis for that. What did you find after those tests? The Access One

22     and Access Two.

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1   JB:   Uh, on Access One I concluded malingering and also mood disorder, I note-noted or I specified

2         there's mood disorder, yes, there's mood disturbance with, for Mr. Ramirez but and if it's not

3         due to bi-polar disorder, schizophrenia or hence the not otherwise specified. Um, and then

4         obviously personality disorder.

5   DA:   Alright I want to talk about the different things you look at for competency to stand trial. Um,

6         specifically let's start with understanding of the charges and the potential consequences. Um,

7         you gave the opinion in your report what as far as that.

8   JB:   That Mr. Ramirez does understand what he's charged with. Um, the fact that he spent, he-he

9         was very vested in how can I reduce this from a 1st Degree to a 4th Degree and therefore get it

10        dropped. He was also vested in, um, well the reason I did what I did was because and I

11        explained some of that earlier on in-in my testimony, um, because of the family, the foster

12        family, and his up-bringing and not being able to drive a-a manual car and whatever, or I'm

13        sorry, being forced to a manual car not an automatic. Um, he was also very, um, he actually

14        compiled in paperwork and he had written down what guilty but mentally ill means.

15  DA:   Where did he get that paperwork from? Did he look at books? Or did he ...

16  JB:   Competency group, from the comp, the girls, from the, from the girls that were running the group

17        he would ask them what is guilty but mentally ill mean? Oh is that something that I should be

18        thinking about? What does not guilty by reason of insanity and he told me during the evaluation

19        that, uh, he had a-a, the-the charges resulted from, you know, a period of kind of temporary

20        insanity.

21  DA:   Okay so it's your opinion that he understands the charges and the potential consequences.

22  JB:   Oh and the seriousness yes.

23  DA:   Okay. What about understanding the trial process?

19

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1    JB:    Well Mr. Ramirez claimed not to know anything about the Court process and I'm afraid I'm, I

2           am always rather skeptical when somebody does that because he has been adjudicated in the

3           past, um, so he's certainly been through the Court system at some point.  Um, so not to know

4           anything at all when you've been through that system is-is not really very believable unless you

5           have had some sort of traumatic brain injury between the last time at trial, you were in Court

6           and-and the current time.

7    DA:    No evidence of that.

8    JB:    And there's no evidence of that.  Um, so I-I felt that he certainly would know more than he was

9           willing to-to tell me about at all.

10   DA:    How did, how did you figure out whether he did know more?

11   JB:    Um ...

12   DA:    Or if you did.

13   JB:    Well I don't really know that I-I could say because he-he understood some very, when asked

14          specific questions about what does the District Attorney do?  What does the Public Defender do?

15          You get don't know, don't know.  Um, but when ...

16   DA:    Or what the Judge did?

17   JB:    Um, but I get don't know.  But then when you just let him talk about the case and about his, he

18          would give me information, oh yes my family's around in the Courtroom, um, at one point he

19          said, um, I said what happens if you move around or-or, you know, speak out of turn, out of turn

20          in Court, and he said oh I'll get taken out of Court but I won't remember that, somebody will

21          have to remind me of that.  But, I, it's inconsistent.  Very inconsistent with-with his past and

22          with, you know, with what happens in the groups, you know, they run a mock trial in the group,

20

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

| | | |
|---|---|---|
| 1 | | um, so the guys pretty much always have some knowledge even if it's rudimentary or basic so |
| 2 | | don't know, don't know goes against any level of knowledge of what happens in a Courtroom. |
| 3 | DA: | He sounds like he had absolutely no knowledge whatsoever which was skeptical to you. |
| 4 | JB: | Yeah. And, um, also, you know, the-the guys watch television and television's flooded with |
| 5 | | legal and, uh, crime scene and, you know, crime so it's-it's hard to not have that, any of that |
| 6 | | information unless you live in a complete vacuum. |
| 7 | DA: | Did he talk about his, uh, ability to help his attorney? |
| 8 | JB: | Well he talked about what he wanted to get, how he wanted to get a sentence of one year pre- |
| 9 | | confinement, a year house arrest, and a year probation or he said he'd-he'd take a year house |
| 10 | | arrest and 4 years probation. And he said I think I can do that if I can get my charges reduced |
| 11 | | because of the plea of temporary insanity. So he's ... |
| 12 | DA: | So he didn't know anything about the Court process but he knew a lot about his pleas and ... |
| 13 | JB: | And he, and that indicates that he could certainly talk to his attorney, you know, whatever the |
| 14 | | rationality in relation to whether any of those, um, those pleas are appropriate, that's not, nothing |
| 15 | | from where I'm going, but he could sit and talk to his attorney about that which I think shows an |
| 16 | | ability to rationally and factually certainly assist your defense. |
| 17 | DA: | And as far, he said something about, um, he would happy to go to a jury trial and tell them what |
| 18 | | happened and I'll cry too, what was that statement about. |
| 19 | JB: | Well that-that statement was, I mean I think you're guess is as good as mine really I mean it-it's |
| 20 | | not exactly a bizarre statement but there's certainly a sense that Mr. Ramirez always said that if |
| 21 | | he could show people how distressed he was and if he could convey to him all the-the terrible |
| 22 | | things that have happened to him and it's really through the awful life that he had with the foster |
| 23 | | care that-that would be, um, allow, that would give him leeway in the sense that people would be |

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1       more sympathetic and he won't, he thought a jury would be more sympathetic to him in that

2       case.

3  DA:  So is it your opinion that you believe he can assist his attorney-attorney at trial?

4  JB:  I believe he can. I think he-he will need information provided fairly slowly and probably quite

5       concretely where possible and, you know, without a lot of, well with a minimal amount of

6       confusing jar, again all-all legal language but that's I think that is to do with his general level of-

7       of functioning but I think, I don't, I don't see any reason why he should not be able to assist his

8       attorney.

9  DA:  Can you tell the Court what your final opinion was on the defendant's competency to stand trial?

10  JB:  Yeah. In my clinical opinion that Mr. Ramirez is competent to stand trial. I don't think he wants

11       to though, because he doesn't want to stand trial and-and, um, you know, I think he-he-he

12       shocked himself by the charges if that makes sense. But, um, I think he is competent to.

13  DA:  Can you explain, um it says that you feel he's feigning or malingering. Can you explain what

14       you mean by that?

15  JB:  I think that Mr. Ramirez came to us in Vegas with the belief that if he was found not competent

16       then his charges would be dismissed and I think he was, I-I-I, he found out I think fairly early on

17       that that was not necessarily the case. Um, he learned about I.5 commitment and I think he

18       would have preferred, been probably to have stayed in Vegas than to spend time in Detention.

19       He told me that he didn't handle Detention well, he was yelling, screaming, swearing, and-and

20       that was certainly supported by the Detention and we didn't see as much of that behavior because

21       it's a-a freer environment in the sense of that, you know, our patients are not in lock down 23

22       hours out of 24 so and the food's better, everybody says apparently. So most-most of our

23       patients would prefer to be with us than they would actually be in Detention but I, when Mr.

22

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1       Ramirez came he certainly didn't, he might have understood that not being competent meant you

2       didn't go to Detention but I don't think at that point he fully understood that you may end up

3       with a 30 year or a life sentence which you spend in Vegas without any reduced time for parole,

4       without any time reduction for good behavior and so on. Um, but I think when he was weighing

5       of the odds he still felt Vegas was a-a-a better place to be. Um, so he-he came in telling us that

6       he had a lot of mental illness which I don't believe he does.

7  DA:  And it only took you 2 months approximately from the intake procedure to actually when the

8       report came out to figure this out that he was ...

9  JB:  I think it probably took 2 weeks.

10  DA:  Okay. So you're comfortable with your opinion. Is it difficult for somebody to come up there?

11       Have you ever seen someone be able to come up there and fake symptoms like that and be on the

12       unit and get away with it?

13  JB:  Um, they don't get away with it for very long. Um, we normally try and push them out at the, at

14       the 3, maximum of the 3 month mark. Um, sometimes what we find is that we've got somebody

15       with, uh, mental illness and when you treat the mental illness, you still end up with that

16       personality disorder underneath it that results in them acting and behaving in very difficult to

17       manage ways. But you, that's after you've treated so when they first arrive you don't know

18       whether their difficult to manager behavior is mental illness or behavior. And then you treat the

19       illness and you find the behavior's still there. Um, but there was no evidence of that in this case,

20       um, so people don't, the answer I think is no people do not get away with it for-for any potential,

21       I'm testifying in Bernalillo on Friday in a very similar situation as this.

22  DA:  As far as medications you said he's only on, um, what was the medication?

23  JB:  Um, I think our psychiatrist had prescribed Aadvin which is for ...

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1   DA:   Mood?

2   JB:   ... yeah, and maybe still Zoloft or I'd-I'd have to go back and have a look but it was just for

3         mood and I don't know whether Mr. Ramirez of course is currently prescribed anything from

4         County Detention Center.

5   DA:   But that is something that he could take in the Detention Center.

6   JB:   Oh yes.

7   DA:   He does not need to be returned to Vegas ...

8   JB:   No.

9   DA:   ... if the Court finds him not competent pending trial.

10  JB:   No. He doesn't, he doesn't need to-to come to Vegas for that level of medication.

11  DA:   Judge I'll pass the witness.

12  DT:   Alright. Whenever you're ready sir.

13  BC:   Thank you Judge. Uh, you indicated you went to work at the Las Vegas Behavior Institute in

14        May of 2007?

15  JB:   That's correct.

16  BC:   And so you've been t here a little less than a year and a half?

17  JB:   That's correct.

18  BC:   And you testified in, or you've been qualified as an expert less than 15 times in this State?

19  JB:   I would think yes.

20  BC:   And you've only testified as an expert once here in Curry County?

21  JB:   Yes.

22  BC:   Now you indicted when Mr. Ramirez first arrived at the Las Vegas Behavioral Institute that was

23        on June 5th, 2008.

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1    JB:    That's correct.

2    BC:    And that was pursuant to a Court Order treat him to obtain competency?

3    JB:    That's correct.

4    BC:    But you weren't the first person to see him when he was admitted to Las Vegas?

5    JB:    No I wouldn't be the first person to set eyes on him, no.

6    BC:    And that would have been Dr. Bagwell?

7    JB:    That's correct.

8    BC:    And he's the individual that admits patients?

9    JB:    That's correct. We have actually started doing joint, not joint, um, our-our admission on a

10          (inaudible) a couple of weeks ago but-but we did have basically he-he admitted them and I

11          would do the evaluations and, uh, all discharges.

12   BC:    So in this case he's the one that admitted Albert into the facility?

13   JB:    That's correct.

14   BC:    And one of the first things he'll do is make a determination if the individual is a candidate for

15          maximum security?

16   JB:    That's correct.

17   BC:    And in order to be candidate for maximum security you have to be dangerous?

18   JB:    No. You just have to be acting-acting out on your admissions, you have to be threatening

19          yourself, to hurt yourself, or threatening to hurt others or actually often the, um, Sheriff or the

20          transport officer will come and say, you know, on the way up he's been saying he's gonna kill

21          you or he's gonna kill, um, da-da-da, and even if-if there's a verbal threat, we just put somebody

22          in maximum security until we can assess them so it's not worth the raise. We're-we're a

23          hospital, we're not a Detention Center, so we only have security staff, they cannot use handcuffs,

25

·State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

| | | |
|---|---|---|
| 1 | | they cannot use tasers, they cannot use batons, they-they are, they are maybe they just basically |
| 2 | | have their-their bulk and their weight behind them and obviously our-our staff, our nursing staff |
| 3 | | and psych techs, they're not there for, uh, restraint and control purposes. |
| 4 | BC: | Okay. And in this case, Dr. Bagwell found that, uh, he should not be classified as a maximum |
| 5 | | security client? |
| 6 | JB: | That's correct. |
| 7 | BC: | And he was put in the continuing care unit? |
| 8 | JB: | Yes. |
| 9 | BC: | And that's where most individuals are classified and sent? |
| 10 | JB: | Um, when you have 24 beds in the acute care unit and we have 40 beds on the continuing care |
| 11 | | unit, our code, generally our census runs at anywhere between 22 on the 24 bed unit, 22, 23; and |
| 12 | | 36 to 39. So to some extent what-what we're governed by, um, where we've got bed space. But |
| 13 | | we also try and match the individual according to their behavior to the most appropriate unit for |
| 14 | | them. |
| 15 | BC: | And in this particular case, when was the first time you met with Albert? |
| 16 | JB: | Well I met with him the week he was, he was admitted. Um, I was assigned to District Attorney |
| 17 | | I-I will meet with the, I will meet the individual after admission to put a face and a name, um, |
| 18 | | together, um, but I met him formally for the purposes of well he approached me probably 2, 3 |
| 19 | | weeks into his stay, asked me when he was gonna be evaluated, um, asked who his psychologist |
| 20 | | was gonna be, was it going, whether it was gonna be me or somebody else and I, at that point I |
| 21 | | would have told him it would, his case was allocated to myself and I would be coming to meet |
| 22 | | him. And then at some point prior, well-well prior to the final kind of evaluation date he asked |
| 23 | | to meet with me. Um, and, um, I-I agreed. We met for a little while and that was in the, uh, |

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1     when the patients were coming back out of their smoke break, we met in the dining room and

2     they were coming in for-for canteen and he was telling me his story and he was very loud and

3     animated and I said Albert this is gonna have to wait, this is not an appropriate place to be

4     talking about everything you've done and what's happened to you, you know, it-it needs to wait

5     till after the guys have had dinner, you know, or we need to go out of the room. So I said, I said

6     can we meet tomorrow and he said yes and I went to see him the next day, uh, with the purposes

7     of-of starting essentially the evaluation really and-and, uh, just hear-hearing what he had to tell

8     me and at that point staff went to his room, he was lying down, just having a rest, and staff went

9     to his room and he refused to come out. And the nursing staff went down and said to him, you

10    know, there's no point hiding, you know, hiding yourself in your room, you're gonna have to go

11    through this process of talking, you're gonna have to, you're gonna be evaluated like everybody,

12    you can't avoid it. So at that point he came out of the room and we met.

13  BC:  Okay. So getting back to the question I asked, he, the first time you met with him would have

14       been the week of June 5th, 2008?

15  JB:  That's-that's correct.

16  BC:  And how long did you meet with him at that first meeting?

17  JB:  Oh probably only 10 minutes max.

18  BC:  Now in your report you indicated there were sources of information and that would have been

19       the information you were provided from, uh, various different individuals in order to make a

20       determination.

21  JB:  That's correct.

22  BC:  And some of those, some of those information were Grand Jury Indictments?

27

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

| | | |
|---|---|---|
| 1 | JB: | Well I also list all the information that we-we are given when a patient's admitted and that pretty |
| 2 | | much always includes a Grand Jury Indictment, obviously the commitment order, um, any police |
| 3 | | reports, there's usually a, um, a community evaluator's forensic eval, which there was in this |
| 4 | | case, and then the medical records that we generate. |
| 5 | BC: | Okay. Now you testified earlier that there was some records that were sent to you from the jail? |
| 6 | JB: | It's not record, oh sorry yes that's correct. |
| 7 | BC: | And for some reason you didn't list those in your report as a source of information. |
| 8 | JB: | No. |
| 9 | BC: | And do you know who sent those jail records to you? |
| 10 | JB: | I don't know the individual's name, no. Basically when somebody comes in they ask them to |
| 11 | | sign a release, a release of disclosure of information, um, it was, we will zip the release to any |
| 12 | | prior, um ... |
| 13 | BC: | You don't know who sent you the information? |
| 14 | JB: | I don't know who sent that specifically. |
| 15 | BC: | Now you indicated that your office sent the police reports. |
| 16 | JB: | Yes. |
| 17 | BC: | And they consist of approximately 10 pages. |
| 18 | JB: | I believe so yes there's not-not a huge amount. |
| 19 | BC: | So the only information about this particular crime was sent to you was 10 pages of reports? |
| 20 | JB: | Yes. But then the crime itself is not the, is-is not what we do. We-we don't have anything |
| 21 | | particular we need to do about in terms of looking at crimes. As long as somebody, if |
| 22 | | somebody's got felony level charges and they have a-a stipulated Order from the Court for |
| 23 | | evaluation or treatment to competence, that's-that's all we would go on. |

28

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1    BC:    And you're aware now that (inaudible) that he was charged with I$^{st}$ Degree Murder as well as

2          Tampering with Evidence?

3    JB:    Yes. It states so on the, um, um, Grand Jury Indictment.

4    BC:    And did you ever call the DA's Office to see if there were any more reports involved with the,

5          uh, police case file?

6    JB:    No, no I did not.

7    BC:    Do you recall if the DA's Office has discussed this particular case ...

8    JB:    No I did not. If I, if I called the DA's Office I would automatically call yourself.

9    BC:    Okay. And during the process you did, uh, learn that Albert's mother's name was Deborah

10         Ramirez?

11   JB:    That's correct.

12   BC:    And you were able to call and talk with her on August 18th, 2008?

13   JB:    That's correct.

14   BC:    And she had told you during the interview with her that Albert had been in special education in

15         elementary school?

16   JB:    Yes.

17   BC:    And that conflicted with the information Albert gave you?

18   JB:    Um, yes.

19   BC:    And she also told you he had a problem with alcohol and drugs while in school?

20   JB:    That's correct.

21   BC:    And she also indicated to you that he was eventually placed in foster care?

22   JB:    Well yes. I knew he, I-I asked at what age and I believe that, uh, Mrs. Ramirez did tell me what

23         age because Albert had told me two different ages of being placed in foster care so one of these,

29

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1    he said 16 and at one point he said 19 and of course he's just 19 so I was quite confused as to

2    when he went into foster care.

3   BC:   Was it also reported to you that Albert had been on juvenile probation?

4   JB:   Yes. I think Albert did.

5   BC:   Did you ever contact the juvenile probation office to see if they had any information as to a

6    history of Albert?

7   JB:   No.

8   BC:   In-in this particular case you were never provided a copy of the NCIC report involving Albert's

9    prior criminal history?

10  JB:   That's correct.

11  BC:   And you were aware that he had used marijuana in the past?

12  JB:   Yes.

13  BC:   And they also reported that he had a history of abusing substances such as marijuana, cocaine,

14    amphetamines and alcohol?

15  JB:   Yes.

16  BC:   And on page 4 of your report under psychiatric history, you indicate there's no indication from

17    Mr. Ramirez' records has ever required in-patient or out-patient psychiatric information or

18    intervention?

19  JB:   That's right. Whenever we received anything to indicate that he'd-he'd been hospitalized prior.

20  BC:   Okay. So it is possible that he had been hospitalized prior to this, you received that information?

21  JB:   It's possible, yes.

22  BC:   And most of the records you received were either the police reports or the Court records in this

23    case?

30

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1    JB:    Yes. And the, and the medical records from the Detention Center.

2    BC:    Albert's mother did indicate to you that she had some concerns about Albert's mental health

3           prior to the homicide of her boyfriend?

4    JB:    Yes she did.  Yes.  She said ...

5    BC:    She tried to schedule an appointment with mental health resources?

6    JB:    I believe so, that's what she did report to me.

7    BC:    And for some reason they scheduled her an appointment approximately 2 weeks away from her

8           phone call?

9    JB:    I believe so that's what's consistent with what she reported to me.

10   BC:    And prior to that appointment that's when Albert was arrested and charged with the homicide?

11   JB:    Yes.  Yes Mrs. Ramirez was very upset on the phone, um, and, you know, indicated that yes she

12          had some serious concerns about his behavior and-and things he was doing, however, some of

13          the things that you've highlighted, such as the drug and alcohol abuse, could certainly have also

14          resulted in those behaviors occurring.

15   BC:    And you indicated that Dr. Bagwell noted during his mental status examination that, uh, Albert

16          maintained poor eye contact?

17   JB:    Yes.

18   BC:    That his head was bowed down and he would look at the floor?

19   JB:    That's correct.  On admission, um, you may ...

20   BC:    And deficits in both hygiene and grooming?

21   JB:    Yes.

22   BC:    And at the time he appeared in an unkept appearance?

23   JB:    That's correct.

31

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1    BC:    And he was basically rocking back and forth in his chair and crying?

2    JB:    Yes.

3    BC:    And then Dr. Bagwell indicated that he was unable to assess his thought processes due to

4           Albert's refusal to communicate with him?

5    JB:    That's right.

6    BC:    And he also stated Albert's cognitive abilities could not be assessed at that time due to him being

7           uncooperative?

8    JB:    That's correct.

9    BC:    And at some point in time while Albert was at the, uh, Las Vegas Behavioral Institute he was

10          prescribed Zoloft and Zeitz?

11   JB:    Zeitz, yes they're both for mood stabilizing.

12   BC:    Now did he take one or the other or was he taking both at the same time?

13   JB:    Um, I believe the Zeitz would have been, um, daily and Zoloft may well have been, uh, a PRR,

14          in other words on request.

15   BC:    And those are both to stabilize his mood?

16   JB:    Yes. And try, yes.

17   BC:    And at some point in time when the stay was diminished the million category (inaudible)

18          inventory?

19   JB:    That's correct the MCMI.

20   BC:    And did his responses with the MCMI was rated invalid?

21   JB:    That's right.

22   BC:    And you're aware during the evaluation at some point in time that Albert had reported a history

23          of sexual as well as physical abuse?

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1   JB:    I certainly remember the physical abuse, um, I think he did mention sexual abuse to me, um, also

2          yes of course he did.  He mentioned that both his mom's boyfriend and the neighbor, his mom's

3          neighbor, were gay, um, they had sexually abused him.

4   BC:    And during the evaluation you also found out that Albert had difficulty maintaining and

5          managing his behavior?

6   JB:    Yes.  That's the impulsivity I spoke about.

7   BC:    And that would result in his engaging impulsive behavior?

8   JB:    Yes.

9   BC:    And during the evaluation you were able to come up with an access one diagnosis of mood

10         disorder not otherwise specified?

11  JB:    That's correct.

12  BC:    And that'd be because that mood order does not meet the criteria for any other specific mood

13         disorder?

14  JB:    That's correct.

15  BC:    And at times when somebody is diagnosed with a mood disorder not otherwise specified it's

16         because it's difficult to choose between depressive disorder and a bi-polar disorder?

17  JB:    Uh, I think it's particular difficult, I mean depressive disorder and bi-polar disorder most bi-

18         polar, most bi-polar disorders starts off with a, with a, not, if it's in the depressive state, um,

19         people would be often given a diagnosis of major depressive disorder until they cycle back out of

20         the depression and then end up into the more manic state where psychiatrist, the psychiatrist

21         who's treating them will realize that it's bi-polar disorder but mood disorder, anarres, is really

22         it's a, it's a catch all.  It's a catch all for any individual who's showing a lot of mood lability but

23         the actual specific reason for that might not be known so you may get a mood disorder anarres,

33

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1    um, following probably substance dependence or probably substance abuse until those-those

2    substances are flushed out of the system and then the mood disorder may-may stabilize or go

3    away but it is a bit of a catch all that can be used for a number of, um, different, um, emotional

4    states as I say mainly for anybody who's showing mood like lability, so if, you know, going in

5    and out of maybe a depressive mood or-or going from anxious to depressed or back to anxious

6    again.

7    BC:    And so his mood disorder could be caused by the abuse of controlled substances?

8    JB:    Given that, well I can't speak for Detention but given that during the time that, um, he spent with

9    us, for the three months, he was certainly not able to access any illicit substances either drugs or

10    alcohol, um, it, that-that-that it's pretty unlikely that his mood disorder would have lasted to that

11    period of time if it had been the result of substance dependence or substance abuse.

12    BC:    So then his mood disorder would have to have been caused by something other than substance

13    abuse?

14    JB:    Yes. Maybe not have to but most likely.

15    BC:    And during the evaluation of Albert, approximately how many times did you meet with him?

16    JB:    For the actual formal evaluation, I believe 4.

17    BC:    And approximately how much total time did you spend with him while he was in Las Vegas

18    Medical Center?

19    JB:    Personally I would imagine prob, I would say probably around maybe 5-6 hours total.

20    BC:    And during that time did you find that his communicative abilities were very well?

21    JB:    Um, I don't, it depends on, there's a definition of very low. He's not a great communicator, he

22    tends to be, um, very pressured in his speech, tends to want to tell you a lot and repeat a lot of

23    things over and over again. Um, but he-he's not incapable of communication and he-he can, he

34

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1    can find, he's word finding. He doesn't have any word finding difficulties or any problems with

2    aphasia, uh, or understanding, he just tends to be very pressured and want to tell you things very

3    quickly and over and over again.

4    BC:    Did he indicate the questions asked so would have to be fairly basic and simple?

5    JB:    I think it-it's-it's valuable to him if they're-they're simplified.

6    BC:    So essentially he doesn't understand lengthy and complex questions?

7    JB:    Well I don't think I asked any lengthy or complex questions so I don't know that I can comment

8    specifically on-on his, um, ability. I mean in a 90 day (inaudible) I would have done a cognitive

9    assessment, a full cognitive assessment, for race for like (inaudible) assessment but when

10    somebody is not put in full effort and is vested in not being competent and not, they-they won't

11    cooperate and you won't get a true, uh, picture of their actual abilities which is why I didn't do

12    any further psychometric testing.

13    BC:    And because of that he won't have the ability to testify on his own behalf at trial if he was called

14    upon to testify?

15    JB:    Because of what?

16    BC:    His inability to communicate.

17    JB:    Well I don't think he's unable to communicate, I think he's-he's-he's certainly able to

18    communicate. As I said no weird finding difficulties, he's no aphasic, he doesn't have any

19    specific speech problems so I don't think he's not able to communicate.

20    BC:    Because of that mood disorder would he be able to handle the stress of testifying?

21    JB:    I believe so.

22    BC:    Okay. And did you find out what the highest grade that Albert attended when he went to school?

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1    JB:    I think I asked. I'd have to go back and find, look at my notes, ... let's see if I can ... I don't

2            think, if Albert did not tell me that he attended past junior high so I was quite confused as to

3            actually what, at what point he remained in school. His timeline was-was not very well

4            described in terms of what happened to him when and he would tend to change his, um, change

5            his, uh, story on occasion.

6    BC:    And you didn't request review of school records?

7    JB:    No I didn't.

8    BC:    Did you measure any intelligence tests on Albert?

9    JB:    No. I explained my reason for that just a moment ago.

10   BC:    And was he given any neurological examinations while at the Behavioral Institute?

11   JB:    No we didn't send him for an MRI or a CT, there was no, uh, no-no reason, there's no history of

12           trauma brain injury at all. Um, long term drug abuse that might have resulted in cortical atrophy

13           or anything similar so he wasn't sent for any neurological exam.

14   BC:    And would you agree that Albert has a dysfunctional personality style?

15   JB:    Yes.

16   BC:    And that could give him difficulty in rationally and factually assisting his attorney in his

17           defense?

18   JB:    They could give him difficulty but personality style is to-to a degree, um, voluntary. Um, there

19           is volition in there so I don't think, I think that-that he can voluntarily, uh, attend or not and work

20           with you or not and I think it is an element of-of choice in there.

21   BC:    And at some point during your interview with Albert you asked him if he had read the police

22           reports?

23   JB:    Yes.

36

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1    BC:    And he indicated that he had not and did not want to.

2    JB:    That's correct.

3    BC:    Was he ever able to remember anything about the, uh, charges, well the shooting of his mother's

4           boyfriend?

5    JB:    He was able to remember. In fact we tend not to, um, ask specific details about the, uh, charges

6           because obviously it could be prejudicial to the case so we don't go into, we say do you

7           remember what happened; the individual will say yes or no, um, but what do the police reports

8           say that you did because obviously they're approved judication so we're not making assumption

9           of guilt or innocence up there. Um, so we just say what did the police report say and obviously,

10          um, we would encourage somebody to read the police report if they haven't. Um, but clearly

11          some people don't want to go there.

12   BC:    Was he able to tell you what was in the police reports?

13   JB:    Um, let me look at my IRCNl and l can tell you exactly. Um, no so what does the police report

14          say you did? l have not read it and l don't want to read it. What lead the police to arrest you and

15          what did you say to them? l said nothing. Did you confess? Nothing to say. Um, and then what

16          do you say happened? And he said l want to speak to Brett Carter.

17   BC:    Okay. And you indicate a present in order to prevent a deterioration in his mood related

18          symptoms and he needs to remain on his medications.

19   JB:    l don't actually know if-if Albert is currently on medications at Detention, we would always

20          recommend that when somebody leaves us and goes back to Detention that they do stay, if

21          there's medications that have been helpful for them, but obviously we can't speak on behalf of

22          what, uh, formally each Detention Center has.

23   BC:    Okay. Would those medications affect his ability to stay alert in Court?

37

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1   JB:   Not at the doses that he was on.

2   BC:   Okay. And would they affect his ability to communicate in Court?

3   JB:   No they should not. They should, if anything, improve his ability because he should be a little

4          bit calmer.

5   BC:   Okay but at present we don't know if he's been given those medications at the jail?

6   JB:   That's correct. He-he was, he was prescribed Zoloft prior to his arrival at Vegas, so certainly I

7          know that County has that one so I would hope that he's remaining, or that they're remaining on

8          it. They may have, however, made a decision in the, um, medical facil-facility here that they

9          don't think he requires them I don't know.

10  BC:   And you indicated in your direct examination that Albert was a disturbed young man?

11  JB:   Yes.

12  BC:   That there was no evidence of traumatic brain injury?

13  JB:   Not that I'm aware of.

14  BC:   But there were no neurological tests conducted on him?

15  JB:   There were no neurological tests. I said, normally the neuro-neurology would be send him for

16         CT and an MRI and/or an MRI and potential neuro-psychological, a full neuro-psychological

17         evaluation with a battery of psychometrics and that wasn't warranted in this case.

18  BC:   And you indicated because of his mood disorders and personality style Albert would be a

19         difficult person to manage?

20  JB:   Yes. I think that's evidenced through his history.

21  BC:   Judge at this time I don't have any other questions for this witness.

22  DT:   Any follow-up?

23  DA:   No Your Honor.

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1    DT:    Let me see if I have anything. Any further evidence or statements?

2    DA:    No other evidence Your-Your Honor.

3    DT:    Janell.

4    DA:    No other evidence.

5    DT:    Alright you have any evidence you'd like to put on?

6    BC:    Not at this time Judge.

7    DT:    Which time would you want to? I didn't mean next time I came out, you had any statements?

8    BC:    Nothing not for the purpose of this hearing Judge.

9    DT:    Okay, alright. I apologize I made that sound bad. Are we through? Statements?

10   DA:    I just, uh, statements.

11   DT:    Statements?

12   DA:    A few statements. Judge, uh, we feel that the State has proven by clear and convincing evidence

13          that the defendant is competent to stand trial. It appears he has a mood disorder, he does not

14          have a mental ill-illness, um, the testimony's clear he is feigning and malingering psychiatric

15          symptoms so he doesn't have to go to trial. This is clear from the tests that were performed if the

16          Court recalls the SIMS tests, a 14 or greater suggestive of symptom exaggeration, he's a 47.

17          And the other test was invalid due to his over-endorsing of things. Um, he understands his

18          charges and the potential consequences, he understands the trial process, he can rationally assist

19          his attorney, there was testimony he could handle the stress of testifying, uh, he even asked for

20          his attorney when being questioned at Las Vegas which shows he can assist his attorney, um, if

21          anything the testimony has been that he's just going to be a little difficult because of his

22          personality style and that, the testimony was that that's an element of choice. So I believe Your

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1       Honor that there's been no other evidence that, um, he is not competent to stand trial at this time

2       and at this time we would ask the Court to find him competent and move this matter forward.

3  DT:  Mr. Carter.

4  BC:  Judge the State has to provide evidence that would either show to you by a preponderance of

5       evidence a clear and convincing evidence that he's competent to stand trial and the Court entered

6       an Order that he could be treated for up to a period of 9 months. In this case we still don't

7       believe he's able to assist his attorney in his defense under the UJI that, uh, governs the three

8       elements which are required for competency under 14-5104, the third element is able to assist his

9       attorney in his defense. Judge in this particular case, there were no neurological tests conducted,

10      school records weren't reviewed, the probation office was not contacted to determine if there

11      was any sort of prior history other than substance abuse in this case, they indicate that at least

12      right not because of his mood disorder that he should be on medication, we don't know if that

13      medication was being given to him or that he's even taken it while he's at the jail. They've

14      indicated to us Judge through the testimony that the questions proposed to Mr. Ramirez would

15      essentially have to be simple and concrete, this is not a charge such as shoplifting where the

16      evidence is gonna be pretty self-explanatory, it's a homicide charge that we would involve expert

17      witnesses, I'm sure they're gonna have firearm's experts, other types of experts, I just don't think

18      at this point in time that Albert because of his particular disorders has the ability to assist his

19      attorney in his defense. Now obviously he did attend classes while there at the Las Vegas

20      Medical Center, they have made progress and are working with him, uh, through those group

21      sessions, Judge we would ask that he be sent back to Las Vegas Medical Center maybe they can

22      provide those neurological tests and work with him, work on getting him stabilized on the

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

| | | |
|---|---|---|
| 1 | | medication so that he would be able to assist his attorneys in his defense. And Judge I think |
| 2 | | you've got the report that's been admitted into evidence and so. |
| 3 | DT: | Alright I appreciate the-the dilemma that counsel always has in a case like this so. |
| 4 | BC: | Thank you Sir. |
| 5 | DT: | Uh, what I'll do is I will take the, uh, the reports and the entire file, I'll, in fact I'll read those this |
| 6 | | afternoon and have you an answer first thing in the morning so we'll know where we're going. |
| 7 | BC: | That'll be a letter decision Judge or some sort of ... |
| 8 | DT: | It's gonna send you either, yeah I'll just dictate a short, a real short decision and fax it to you in |
| 9 | | the morning. |
| 10 | BC: | That's fine Judge. |
| 11 | DT: | And we won't, we won't ... |
| 12 | DA: | And Judge the Court is aware we are dealing with two numbers, just so that we can, um, CV |
| 13 | | 2008-296, um, which is a Battery on a Peace Officer a matter that was joined with this, uh, for |
| 14 | | competency and then of course the ... |
| 15 | DT: | 434. |
| 16 | DA: | Yes. |
| 17 | DT: | Okay. |
| 18 | DA: | The Court is aware of that? |
| 19 | DT: | Alright. Thank you.   We may reset. |
| 20 | | |
| 21 | END | |
| 22 | | |
| 23 | | |

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Competency Hearing

1   STATE OF NEW MEXICO
2   COUNTY OF CURRY
3                                          Case No.  D-202-CR 2007-00434
4   STATE OF NEW MEXICO,
5                       Plaintiff,
6             v.
7   ALBERT RAMIREZ,
8                       Defendant.
9
10                **CERTIFICATE OF TRANSCRIPTION**
11
12
13
14        I, the undersigned legal transcriptionist, DO HEREBY CERTIFY, that the foregoing transcript is
15   a true and correct record of the Competency Hearing as transcribed by me.  The above-noted statement
16   was transcribed to the best of my ability from a cassette and/or digital recording supplied by defense
17   counsel.
18
19        I, FURTHER CERTIFY, that I am not related to any of the parties or attorneys in this case and I
20   have no interest whatsoever in the final disposition of this case in any court.
21
22
23


24   _____
25   Cecilia M. Bruno
26
27

28

29

42

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

08 SEP 16  PM 3: 59

STATE OF NEW MEXICO,

      Plaintiff,

vs.

ALBERT JOSE RAMIREZ,

      Defendant.

                    No. D-0905-CR-0200700434
                    No. D-0905-CV-0200800296

## ORDER

      THIS MATTER having come before the Court for a competency hearing on the 15th day of September, 2008; the State being represented by Matt Chandler and Andrea Reeb; the defendant being present and represented by Brett Carter and Chandler Blair; and the Court being advised in the premises, FINDS:

      An Order for Commitment to the New Mexico Behavioral Health Institute at Las Vegas for Treatment to Attain Competency to Stand Trial was filed with the Court on April 17, 2008.  This was a stipulated Order based on a finding of incompetency by Maxann Shwartz, Ph.D. suggesting that the defendant be treated to competency.

      On August 19, 2008, this Court received a report from the New Mexico Behavioral Health Institute at Las Vegas opining that this defendant was competent to stand trial.

RP 158

Exhibit L

A hearing was had thereon with live testimony from Dr. Joanne Burness of the New Mexico Behavioral Health Institute at Las Vegas. After reviewing the documents and hearing the testimony of Dr. Burness, this Court is of the opinion that the defendant, Albert Jose Ramirez, is now competent to stand trial.

This defendant shall be held in the Curry County Detention Center without bond pending trial.

TEDDY L. HARTLEY
District Judge, Division III

RP 159

NINTH- ...
CURE ...
FILED ...

2008 MAY 13 PM 3: 34

... ... ...
... ... COURT

**IN THE NINTH JUDICIAL DISTRICT COURT**
**STATE OF NEW MEXICO**
**COUNTY OF CURRY**

**STATE OF NEW MEXICO,**

       **Plaintiff,**

**vs.**                                    **No. D-0905-CR-0200700604**
                                                          **434**

**ALBERT RAMIREZ,**

       **Defendant.**

**MOTION IN LIMINE**

    COMES NOW the defendant, by and through his counsel of record Brett J. Carter,

District Public Defender, and hereby respectfully moves this Court for an order preventing the

State Of New Mexico from presenting testimony of Dr. Joanne Burness and for cause would

state;

1. Counsel for defendant filed a motion to determine competency of the defendant. The
   defendant was at the time found to be currently incompetent to stand trial. The
   defendant was ordered to be transported to the Las Vegas Medical Center to be
   treated to competency.

2. The defendant was evaluated by Dr. Joanne Burness while at the Las Vegas Medical
   Center. That same doctor is now listed as a witness for the state.

3. Any statements made by defendant to Dr. Burness were made while the defendant
   was undergoing treatment or during the course of a mental examination pursuant to
   court order.

4. NMRA- Rule 5-602E. states, "A statement made by a person during a mental
   examination or treatment subsequent to the commission of the alleged crime shall not

**RP 268**       **Exhibit M**

be admissible in evidence against such person in any criminal proceeding on any issue other than that of the person's sanity, ability to form specific intent or competency to stand trial."

5. The testimony of Dr. Burness is not admissible unless and until the defendant presents a claim of lack of specific intent or insanity to the jury.

WHEREFORE, the defendant prays this Court issue an Order requiring the State not to present any statements made by defendant to Dr. Burness at trial and further relief as the Court deems just and proper.

Respectfully Submitted,

HUGH W. DANGLER
CHIEF PUBLIC DEFENDER

By: _Brett J Cater_
BRETT J. CARTER
District Public Defender
Clovis District Office
800 Pile, Suite A
Clovis, NM 88101
(505) 769-1991

I HEREBY CERTIFY THAT A COPY OF THE FOREGOING WAS DELIVERED/MAILED TO OPPOSING COUNSEL ON THE DATE OF FILING STAMPED ABOVE.

_Brett J_
PUBLIC DEFENDER DEPARTMENT

RP 269

STATE OF NEW MEXICO
COUNTY OF CURRY
NINTH JUDICIAL DISTRICT

2011 SEP 22 AM 9: 27

STATE OF NEW MEXICO,

     Plaintiff,

v.

ALBERT JOSE RAMIREZ,

     Defendant.

(Nos. CR-2007-434 &
CR-2008-748)

## MOTION FOR MENTAL EVALUATION

The Defendant, through counsel, pursuant to § 31-9-1 et seq. NMSA (1978) and S.C.R.A. 5-602 or S.C.R.A. 6-507, if the case has not yet been bound over, moves the Court for an order directing the H.E.D.'s contract psychologist to perform a confidential evaluation of the Defendant to determine her:

        __X__        A.     competency to stand trial

        __X__        B.     sanity

As grounds for relief, it is stated:

1.    The Defendant is accused of a crime and has been determined to be indigent;

2.    There exists a reasonable doubt as to the Defendant's competency to stand trial or sanity at the time of the alleged crime;

3.    The basis for questioning competency/sanity is as follows: previous issues with regard to competency, in addition to current concerns based on counsel's review of the file and indications from the Defendant's actions at the last hearing wherein he was represented by N.M. Public Defender Brett Carter.

**Exhibit N**

RP372

SEP/22/2011/THU 08:56 AM  Jesse R. Cosby atty.      FAX No. 5756250004     P. 005

Case 2:23-sv-01075-MV-DLM   Document 102-1   Filed 01/22/25   Page 609 of 1863

4.     A mental examination is needed to determine whether the Defendant is competent to stand trial or enter a plea in this matter.

5.     A confidential assessment of insanity is needed to assist counsel in effectively representing the Defendant in this matter.

WHEREFORE, the Defendant's counsel moves the Court for an order for a mental examination as requested herein and for such other, further and different relief as the Court deems just and proper.

Respectfully submitted:

Jesse R. Cosby, Esq.
JESSE R. COSBY, P.C.
Attorney for Defendant
P.O. Box 3330
Roswell, New Mexico 88202-3330
(575) 625-0516

I hereby certify that I did mail/hand-deliver/fax on
the 22 day of September, 2011, a copy of the foregoing
pleading to the opposing party(ies).

JESSE R. COSBY

RR313

SEP/21/2011/WED 04:06 PM    jess. cosby atty.    FAX No. 575625.      P. 002

NINTH
CLERK
FILE

2011 SEP 26 PM 3: 45

STATE OF NEW MEXICO
COUNTY OF CURRY
NINTH JUDICIAL DISTRICT

CLERK

STATE OF NEW MEXICO,

    Plaintiff,

v.

ALBERT JOSE RAMIREZ,

    Defendant.

Nos. CR-2007-434 &
CR-2008-748

## ***EX PARTE* ORDER FOR CONFIDENTIAL FORENSIC EVALUATION**

THIS MATTER, having come before the court on Motion of counsel for the Defendant for an evaluation pursuant to NMSA 1978, Sections 43-1-1 and 31-9-1.1, and the Court being fully advised and finding good cause for the motion;

IT IS HEREBY ORDERED:

1.)    The Department of Health shall perform a confidential forensic evaluation of the defendant for defense counsel on such issues as defense counsel specifically raises and believes are likely to be a significant factor in the defense. A report of the evaluation shall be prepared. The report shall be trifurcated: Issues regarding competency to stand trial shall be reported separately from all other issues; issues related to sanity and specific intent shall be reported separately from all other issues; and all other issues shall be reported in a third report.

2.)    It is understood that the Secretary of the Department of Health has designated local contractor, _____,
to perform the evaluation. Defense counsel shall serve this order upon said local contractor and this shall be service upon the Secretary as required by § 43-1-1 NMSA (1978).

**Exhibit D**

RP374

Case 2:23-cv-01075-MV-DLM    Document 102-1    Filed 01/22/25    Page 611 of 1863

SEP/21/2011/WED 04:07 PM    jesse R. cosby atty.    FAX No. 575625    P. 003

3.)    The results of the examination are confidential and the Department of Health shall not disclose the results to anyone other than defense counsel. A copy of the competency report shall be provided to the District Attorney's Office and the District Court and labeled as confidential.

4.)    The Department of Health's contractor shall complete a report within sixty (60) days of being served with the Order and shall notify the Court and all parties as soon as the evaluation is complete.

5.)    Rules 5-502 and 5-602, NMRA, 1998, govern disclosure relating to any evaluation conducted.

6.)    Pursuant to NMSA 1978, Section 31-9-1.1, a hearing to determine an incarcerated Defendant's competency to stand trial shall be held within thirty (30) days (if the incarcerated defendant is charged with a felony) and within ten (10) days (if the incarcerated defendant is not charged with a felony) of notification to the Court of completion of the forensic evaluation.

IT IS SO ORDERED.

_____
Teddy L. Hartley
District Judge

Submitted by:

_____
Jesse R. Cosby
Attorney for Defendant


RP375

STATE OF NEW MEXICO
COUNTY OF CURRY
NINTH JUDICIAL DISTRICT

STATE OF NEW MEXICO,

     Plaintiff,

v.                                                                            No. CR-2007-434
                                                                              CR-2008-748

ALBERT JOSE RAMIREZ,

     Defendant.

## ORDER FOR FURTHER
## FORENSIC EVALUATION
## AT NEW MEXICO BEHAVIORAL HEALTH INSTITUTE

    This matter came before the Court at a status hearing on March 9, 2012 regarding a forensic

evaluation of the Defendant and to have the Defendant evaluated by New Mexico Behavioral Health

Institute as recommended by the contract HED psychologist. The State did not oppose this relief if

New Mexico Behavioral Health Institute can be ordered to do the evaluation.

    The HED contract psychologist recommends this relief due to an inability to express an

opinion on competency/sanity due to the Defendant's unwillingness and/or inability to participate

in the evaluation.

    A transport order for the Curry County Sheriff's Office to transport this Defendant to the New

Mexico Behavioral Health Institute for this evaluation shall issue forthwith.

    New Mexico Behavioral Health Institute shall conduct a competency evaluation and sanity

evaluation of this Defendant and report its findings as to competency to the Court and counsel for

the Defendant.  The report as to sanity shall be provided to the Court and the defense but not the

State.

    The defense, it if intends to assert defenses of competency, insanity or mental illness, shall

provide New Mexico Behavioral Health Institute's reports to the State.

*Exhibit P*

RR384

IT IS SO ORDERED.

Honorable Teddy Hartley
District Judge

Submitted by:

Jesse R. Cosby
Attorney for Defendant

Approved by:

telephonically approved 3/12/12
Andrea Reeb, Esq.
Assistant District Attorney

PR387

MAR/12/2012/MON 11:30 AM  Jesse R. Cosby, Atty.    FAX No. 5756505007    P. 001/007

Case 2:23-cv-01075-MV-DLM    Document 102-4    Filed 01/22/25    Page 614 of 1863

STATE OF NEW MEXICO
COUNTY OF CURRY
NINTH JUDICIAL DISTRICT

2012 MAR 15  PM 3:56

STATE OF NEW MEXICO,
    Plaintiff,

v.                                                          No. CR-2007-434
                                                            CR-2008-748

ALBERT RAMIREZ,
    Defendant.

## ORDER TO TRANSPORT TO NEW MEXICO
## BEHAVIORAL HEALTH CENTER FOR FOLLOW-UP EVALUATION

Upon Motion of the Defendant, following a hearing thereon, and upon review of the record,

IT IS ORDERED the Curry County Sheriff's Office shall transport the Defendant to the N.M.

Behavioral Health Center at Las Vegas, New Mexico, on or before the 30th day of March, 2012, for

a competency and sanity assessment as recommended by the HED's contract psychologist, Dr.

Richard Fink.

IT IS ORDERED that the N.M. Behavioral Health Center shall receive the Defendant for said

evaluations, even if a bed is not available, or shall show cause to this Court why they refuse to accept

the Defendant.

IT IS SO ORDERED.

_____
Honorable Teddy Hartley
District Judge

Submitted by:

_____
Jesse R. Cosby
Attorney for Defendant

Approved by:

telephonically approved 3/12/12
Andrea Reeb, Esq.
Assistant District Attorney

RP388

FEB/28/2013/THU 11:40 AM jesse r. cosby atty.     FAX NO. 5750270000     P0002/0002
02/26/2013 10:39 FAX

Case 2:25-cv-01075-MV-DLM     Document 102-1     Filed 01/22/25     Page 615 of 1863

STATE OF NEW MEXICO
COUNTY OF CURRY
IN THE NINTH JUDICIAL DISTRICT COURT

2013 MAR -1  PM 3: 54

STATE OF NEW MEXICO,

               Plaintiff,

v.

ALBERT JOSE RAMIREZ,                                    No. D-0905-CR-0200700434

               Defendant.

## STIPULATED ORDER ON COMPETENCY

     THIS MATTER having come before the Court, by way of stipulation of the parties, the

State represented by Andrea R. Reeb, Chief Deputy District Attorney, and the defendant

represented by his attorney, Jesse R. Cosby, Attorney at Law, and said parties having stipulated

to the report dated ___1-17-13___, from Dr. Richard T. Fink, Ph.D; the parties agree that the

Defendant is competent to stand trial in this matter;

     IT IS HEREBY ORDERED that Defendant is competent to stand trial in this matter, and

that a jury trial shall be scheduled.

TEDDY L. HARTLEY
DISTRICT JUDGE, DIVISION III

Andrea R. Reeb
Chief Deputy District Attorney

Jesse R. Cosby
Attorney for Defense

D.A. No. 11-0539 MC/jwg

**Exhibit Q**

RP405

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1   10/9/13 CD B 10:16 – 19:17:00

2   JC:    Your Honor I'm compelled at this time to move the Court for a recess to evaluate the

3          competency of my client, uh, go ahead and sit down. I have attempted during the break to speak

4          to him regarding his issues. He has, uh, told me he didn't understand, that he doesn't know how

5          to behave, he doesn't know why I tell him that he needs to sit up and that the Jury's watching

6          him. What I'm talking about, he's indicated that he's, uh, not capable of assisting me at this point

7          on his defense. Um, I would have to move the court in light of these reports as you know he, it's

8          been determined once before not to be competent to stand trial, he was sent up to Las Vegas for

9          treatment, they determined, uh, in your opinion that he was malingering and returned him with a

10         recommendation to be found competent to stand trial, however, they made, uh, recommendations

11         that he continue on his medications because his ability to assist counsel was, uh, brought in

12         question and that, uh, without medications that he had some issues there.

13

Exhibit R

· State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1   10/8/13 CD B 8:42:10 – 8:43:50

2   MC:   Thank you Judge. Um, it was to the State's attention this morning just prior to, uh,

3           approximately about 8:20 or so this morning that the defendant made, uh, several spontaneous

4           statements and comments, uh, to the transport officers yesterday at the conclusion of trial. Uh,

5           we believe that those statements are, um, statements that we intend to possibly introduce to the

6           Jury. Um, the individuals, the transport officer that gave the information to me, I advised them

7           that they needed to document it in a report and provide one to myself and the defense. So in

8           light of that there are new, um, transporter or detention officers in here today since those are, the

9           other two are gonna be potential witnesses. It was brought to the State's attention that the

10         defendant advised both of the transport officers that, um, he shot the man, um, but he was more

11         concerned about the tampering, he didn't want to, the (inaudible) because it would cause him to

12         get out at 55 instead of 53 or something of that nature, 52, is they're gonna document it. But I

13         just wanted to put the Court and defense on notice that we do intend to-to based on the

14         testimony.

15



Exhibit-S

· State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1    10/9/13 - 10:23:45 – 10:25:05

2    AR:    I was at the hospital, I was participating and I was taking my meds and a guy threw coffee in my

3            face and started punching me, he gave me a black eye and I called, uh, (inaudible), he gave me a

4            number to call a lawyer, I called him and then after that they shipped me straight over here and

5            then I was crying so much cause I was chronically depressed because I'm physically (inaudible)

6            from my neck down and I'm depressed about what happened, what's happening in my life and I-

7            I don't know how to act around people and I don't want to talk to people and everybody gets

8            mad at me cause I don't know how to act, like I'm 18 years old, I act like I'm a little kid and they

9            shipped me over here and I didn't know what she was saying cause I was crying and I would

10           have said something back then and then the only time I found out was when I seen it on paper

11           that they said I wasn't cooperating, malingering but I was cooperating and then after they sent

12           me to prison they diagnosed me as schizophrenic and I told them that I, uh, I did hear voices

13           sometimes and I told them that I was suffering from physical illness which is psychosomatic

14           delusions cause I thought I had a terrible physical illness, that I was disabled from my neck

15           down, I've been asking for medical attention and they keep denying me and I've been asking for

16           a wheelchair cause my left leg is an inch and a half shorter than my right leg and I'm in chronic

17           pain all, anything I do, I can't do daily tasks and I-I think Mr. Cosby gets mad at me cause I

18           don't know how to talk to him and I'm scared that he might lose my case because I made at me

19           or something.

20   10/9/13 CD B 10:24:94 – 10:25:58

21   MC:    Um, there is a case State of New Mexico versus Karess, uh, where this Court has the ability if the

22           defendant disrupts trial to remove the defendant, um, but I think it's important that he be placed


Exhibit-T

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1    on notice that if he does disrupt he can watch his trial from, uh, video satellite but, uh, the trial

2    Court needs the discretion to control and properly administration of criminal justice and may

3    remove a defendant whenever circumstances so dictate so. I'm not asking for that to happen but

4    I think it's important for all of us to know that that's an option.

5  JC:  Removal of the defendant has to be because he's behaving intentionally, willfully disrupting but

6    and if he's got a medical problem it's making him unable to cooperate and is not intentional,

7    there wouldn't be a justification for removal from the Courtroom. It puts the problem squarely

8    before us. I've got a client here who is obviously going to, uh, continue to cry, uh, not be

9    communicative, not be able to assist me right now in his defense and I feel that that's possibly

10   from some reason other than simply malingering. Now he is fixated on this medical situation of

11   having one leg shorter than another, he is continuing to-to fixate on that and nothing to do with

12   trying to come up with a defense but it shows perhaps that he has a medical mental health

13   problem and if he cannot get aside from that he can't assist me effectively in his own defense

14   today which is why we've made this motion. Thank you for your ruling.

15

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1    10/9/13 1:35:36 -1:44:46

2    AR:    1-1 ate a sandwich but early on I was crying a lot, um, I haven't been taking my psyche meds,

3            um, compared to my schizophrenic and, um, ...

4    JC:    You sound very competent.

5    AR:    I've been hearing, uh, I hear voices telling me to cut my wrists, apparently so kill myself and I

6            just got off suicide watch when I was Hobbs, I was attempting to kill myself and I've been

7            severely depressed and, um, unable to control my emotions and they end up putting me in a pod

8            where I could be alone so I could try to feel better cause I'm (inaudible) a lot of mental illness

9            (inaudible) illness and, um, they, I talked to the psych trying to Los Lunas, um, MHCC, Mental

10            Health Treatment Center, to see if they could help me with mental issues and-and, um, my

11            physical issues as well to LTCU, um, treatment care unit, and, uh, 1-1 just, that's why I was

12            crying a lot cause when I hear voices and they tell me kill myself it makes me feel like I-I don't

13            want to live and there's other issues in my life that make me not want to live as well and I just

14            wanted to say that.

15    DT:    Okay I understand.

16    AR:    Give me my meds.

17    DT:    I understand that you're depressed, I-I can understand that. Just keep-keep yourself together till

18            we get through then you can say whatever you need to and be in touch with your lawyer, he's-

19            he's doing a good job for your, he's-he's not mad at you like you thought earlier, he's not mad at

20            you. (1:30:06)

21

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1    10/9/13 CD B – 2:41:40

2    DT:    Do or do not testify they say is permissible in the court.  If you make the decision to testify fine.

3            If you don't, well nobody's gonna know about it.

4    AR:    I don't know, I don't know what to do.

5    DT:    Well the truth is, nobody knows what to do in your situation sir.  That's a...

6    AR:    I don't know if I should testify or not cause I got a lot of stuff that I don't want to talk about and

7            I want to ask, um, like I-I don't think I'm mentally balanced caused of my mental issues and like

8            sometimes I just cry for no, like out of like-like at strange times, like I cry all the time and, uh, I

9            cry like and if they're watching me in the County but the CO's who know about this have to

10           watch me but I-I want to ask can-can, um, the jury know that, um, I have, um, I'm schizophrenic

11           and, um, I'm severely depressed and I do take psych meds and I'm on my psych meds and, um,

12           I'm physically disabled from my neck down and, um, my spine's crocked and my left leg's an

13           inch, an inch and a half shorter than my right leg and I have time just, um, sitting up or standing

14           and walking doing anything and, uh, I-I do hear voices and I'm still suffering from psycho-

15           somatic delusions.  The-the physical doc, the medical doctor says I'm-I'm physically, um, he

16           says that my leg's shorter than my other leg and my spine's crocked and then the-the psych says

17           that I'm suffering psycho-somatic delusions and I might be a hypo-hypochondriac and then I

18           keep going back to, they send me back and forth so I'm real confusing, it's making me really

19           frustrated and I'm-I'm confused and, um, I want to see if the jury can know about this cause I

20           start acting weird and, uh, I just, I have a lot, I have a lot of things I need help with and, um, like

21           you said earlier that you said that I was malingering and somebody says that I was malingering

22           and I think the DA said I was malingering or something but nobody ever looked into anything

16

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1          that's happened to me because I told them about whenever like they said that I got violated at the

2          hospital, well I got a lawyer, a statement that says that I got attacked at the hospital. I got beaten

3          up and that's when they sent me back right away and then that lady got on the stand and-and she

4          said whatever she said so she wouldn't send me back to the hospital and I feel like it's not fair to

5          me. I feel like I'm the underdog like (inaudible). I feel like I'm the underdog because I got , uh

6          ...

7   DT:    Mr. Ramirez let me, let me, let me, let me, let me, let me let you know that we've listened to you

8          and-and it's fine for you to express yourself. The issues that are concerning to me are personal

9          and they are of concern to you but they, we don't believe or I don't believe they-they rise to the

10         point of affecting this trial so the trial's gonna go on. Whatever happens to you after this,

11         you're-you're-you're not gonna be excluded from treatment or whatever it is so-so, uh, we're

12         gonna continue ...

13  AR:    Yeah I've been excluded from treatment. I still haven't got treatment.

14  DT:    We're gonna, we're gonna ...

15  AR:    They said that ...

16  DT:    ... wait a minute, wait a minute we're gonna go on with the trial and then you take whatever, uh,

17         counsel you can from your lawyer as to whether or not you want to testify. Other than that we're

18         not gonna, we're not gonna talk about any further okay?

19  AR:    I feel like, I feel like, um, I feel like everybody's against me cause you all offering, um, the State

20         versus Albert Ramirez, I offer the State of New Mexico I feel like they're all against me, you all

21         ain't my family, you all ain't my friends, you all don't know me, so you all don't even care about

22         me and ..

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1   DT:   Yeah that's that nature of ...

2   AR:   ... You know, I ain't getting fair treated because Maxine said all ...

3   DT:   That's the nature of the treatment son.

4   AR:   Even Matthew Towner, last time I was here in Court I was crying hysterical and he said Albert is

5         hysterical, he-he-he-he can't even function and you all still went to trial and then this time, um,

6         I'm-I'm not again treated fairly, I'm not but it's okay because, um, that's-that's what you all

7         want to do because I feel like, um, I'm-I'm fighting for my life cause I want to be a productive, I

8         want to be a productive citizen for society, I want to be out in the community of Clovis and I-I

9         want to help people too.

10  DT:   Okay.

11  AR:   And-and, um, I feel like, um, you all are just trying to make careers and-and getting rich off,

12        getting rich while I'm-I'm in prison suffering ...

13  DT:   Alright, alright. That's enough, that's enough son. That's enough.

14  AR:   You just wanted me to suffer and I'm not gonna get no medical help, I've been asking for

15        medical help or for mental health and I'm just, I'm confused.

16  DT:   We'll be in recess, we'll take back up in about 5 minutes.

17  DT:   The Court heard motion and statements there on by Mr. Cosby on behalf of the defendant

18        concerning the, uh, uh, to move the motion of ability of his client at this juncture to continue. In

19        that connection I want to read from the file in this case, uh, which touches on this issue. The

20        defendant was arrested on July 15th, 2007 and charged with 1st degree murder and 2 counts of

21        tampering in this case. Shortly thereafter the defense counsel filed a request to have the

22        defendant evaluated to determine if he was competent to stand trial. The defense hired Dr.

18

· State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1    10/9/13 CD B 10:16 – 19:17:00

2    JC:    Your Honor I'm compelled at this time to move the Court for a recess to evaluate the

3            competency of my client, uh, go ahead and sit down. I have attempted during the break to speak

4            to him regarding his issues. He has, uh, told me he didn't understand, that he doesn't know how

5            to behave, he doesn't know why I tell him that he needs to sit up and that the Jury's watching

6            him. What I'm talking about, he's indicated that he's, uh, not capable of assisting me at this point

7            on his defense. Um, I would have to move the court in light of these reports as you know he, it's

8            been determined once before not to be competent to stand trial, he was sent up to Las Vegas for

9            treatment, they determined, uh, in your opinion that he was malingering and returned him with a

10           recommendation to be found competent to stand trial, however, they made, uh, recommendations

11           that he continue on his medications because his ability to assist counsel was, uh, brought in

12           question and that, uh, without medications that he had some issues there.

13

Exhibit U

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1    10/9/13 CD B 10:18:36 – 10:24;04

2    MC:    Judge, um, we object, um, to-to that at this time.  There's no good faith basis for it other than

3            relying on, um, Albert Ramirez' word which to correct Mr. Cosby he has not been found

4            incompetent ever.  He would not participate the first time so they sent him to Vegas for further

5            observations.  The report came back that he's malingering, he's a fake.  Um, then he went and

6            Jess Cosby asked for a second evaluation.  The second evaluation came back that he's a fake, he

7            fakes this stuff, um, just like he faked it this morning that he's not feeling good or he's sick,

8            came here and told the Court that he wasn't seen by a nurse and for purposes of the record

9            because that was on the record this morning, a note came back and a nurse did see him.  He said

10           he's fine and Judge, you know, he can do this and say this but there has to be a genuine good

11           faith basis, there's no diagnosis for him, he's been seen by psychiatrists that have given reports

12           to this Court that he is feigning his-his ...

13   DT:    Right.

14   MC:    ... mental illness and we've seen it numerous times throughout this proceedings and here we are

15           6 years later, uh, and I, and I don't think there's a good faith basis pursuant to the rule to, um,

16           allow an evaluation at this particular time.  The rule says there must be a good faith basis.

17   JC:     Judge under, um, Maxine Schwartz, PhD's report to the Court dated 3/14/2008 the very last page

18           of which, uh, reflects another, I think in the last paragraph other than thanking you for referral, it

19           is therefore the opinion of this examiner that Mr. Albert Ramirez is not competent to stand trial.

20           So there has been a medical professional to determine that in her opinion the gentlemen is not

21           competent to stand trial, I'm not making this up out of (inaudible)

22   DT:    I understand and I-I ...

10

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1   JC:   And made a finding I believe that he was not competent which is why he got referred to Las

2        Vegas. Now it's my understanding, I wasn't his lawyer.

3   MC:  That was based on the fact that he wouldn't participate with her.

4   JC:   No. Maxine reports that she just went on the theory, anyway. Please would you, this is the

5        problem we are having.

6   DT:   Counsel .

7   AR:   I got beat up by somebody that worked out there. They beat me up and that's why they sent me

8        back with those charges sue him and that's why they sent me back, said I was lying and stuff ...

9   DT:   Sir you'll have to, you'll have to be quiet. You'll have to be quiet. I understand your concerns

10      of-of Mr. Cosby, however, the-the trial is long, he's been evaluated and-and there's significant

11      information in there that suggests that he is a malinger, uh, I'm not an expert and my observation

12      this morning would say that he is a malinger. I hesitate, uh, to stop this trial at this juncture, how

13      much more testimony do you have sir?

14   MC:  Judge we have a ballistics expert, we have a DNA expert, um, based upon issues raised through

15      cross-examination we're going to put on an officer that responded to cross hairs so we can have a

16      time reference to when he came into the gun shop demanding a gun cause Mr. Pike couldn't

17      recall yesterday, um, and we were going to have an officer that collected the clothing of the

18      victim at the hospital which will take probably less than 5 minutes. Um, we possibly will call

19      our case agent and a, uh, cellular records custodian from Platau but we're covering a lot of basis.

20   DT:   I, uh, as a Court I'm certainly not gonna try to tell any lawyers how to try their cases, uh, but

21      there should still be some things in there that maybe you could do without but that's up to you.

22      We will not, uh, stop the trial at this juncture.

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1   JC:   Well I appreciate the Court's ruling but I've made the motion and I'm concerned that I cannot

2         competently and effectively represent my client if he's unable because of the situation just as, he

3         is lay low, he's crying, uh, he interrupts, he wants to, he's already made statements to people that

4         are contrary to his interests. I don't' know what he's gonna do or whether he's doing it

5         intentionally. I know the Court is of the impression that perhaps he's feigning but I'm not gonna

6         make that decision.

7   DT:   No.

8   JC:   Not and that reflects for myself.

9   DT:   No. And I'm not ...

10  JC:   I ask for evaluation.

11  DT:   I' not asking you to-to make any determination other than the one that you're making to be safe

12        and I believe you are acting in good faith counsel, I always have. Uh, history would show that

13        we're retrying this case, uh, he was at the time that we took his guilty plea, he was crying and

14        carrying on just as he appears to be now and, uh, uh, so we are trying this case again. If the

15        Court, uh, uh, the big Court, A Court wants this case tried again, that would be fine but I'm not

16        quitting it today. That's my ruling we'll be going forward.

17  AR:   Can I say something Your Honor please.

18  JC:   I can't stop him Judge.

19  DT:   I understand but what do you want to say briefly, I'll give you 2 minutes.

20

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1    Maxine Schwartz to evaluate the defendant. She determined the defendant was incompetent to

2    stand trial and submitted a report that was provided to the court and the prosecution. An order

3    finding the defendant currently incompetent to stand trial and committing defendant to the Las

4    Vegas Behavioral Health Unit for treatment to obtain competency was filed April 17th, 2008.

5    The defendant was admitted to that facility on June the 5th, 2008. On August the 18th, 2008 the

6    Las Vegas Behavioral Unit, Behavioral Health Unit prepared a final report finding the defendant-

7    defendant competent to stand trial. A competency hearing was set based upon reports submitted

8    by Dr. Burness. Dr. Burness testified at the competency-competency hearing that it was her

9    opinion that the defendant was faking his symptoms and was competent to stand trial. The court

10   found the defendant competent to stand trial automatically set for trial. This court is of the

11   opinion at this juncture that the opinion of Dr. Burnis that the defendant is faking continues and I

12   believe he is competent to stand trial based upon that testimony. Obviously several years have

13   passed in the interim but, uh, I-I'm prepared to continue this trial, uh, and that's what we're

14   gonna do.

15



Exhibit U

19

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1   10/10/13 CD B 3:45:47 – 3:46:20

2   DT:   Uh, I've not seen a situation where the defendant like this, the way this trial's unfolded would-

3         would make, uh, the submission, uh, of jury instruction or, uh, a jury finding of mentally ill.

4

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1    JC:    Well I appreciate the Court's ruling but I've made the motion and I'm concerned that I cannot

2           competently and effectively represent my client if he's unable because of the situation just as, he

3           is lay low, he's crying, uh, he interrupts, he wants to, he's already made statements to people that

4           are contrary to his interests. I don't' know what he's gonna do or whether he's doing it

5           intentionally. I know the Court is of the impression that perhaps he's feigning but I'm not gonna

6           make that decision.

7    DT:    No.

8    JC:    Not and that reflects for myself.

9    DT:    No. And I'm not ...

10   JC:    I ask for evaluation.

11   DT:    I' not asking you to-to make any determination other than the one that you're making to be safe

12          and I believe you are acting in good faith counsel, I always have. Uh, history would show that

13          we're retrying this case, uh, he was at the time that we took his guilty plea, he was crying and

14          carrying on just as he appears to be now and, uh, uh, so we are trying this case again. If the

15          Court, uh, uh, the big Court, A Court wants this case tried again, that would be fine but I'm not

16          quitting it today. That's my ruling we'll be going forward.

17   AR:    Can I say something Your Honor please.

18   JC:    I can't stop him Judge.

19   DT:    I understand but what do you want to say briefly, I'll give you 2 minutes.

20

**Exhibit W**

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1    10/10/13 3:46:30

2    JC:    We have witnesses that testified about his behavior and mental health issues, he's talking to

3            himself in the mirror all of that's sufficient to make a GBMI submission. I'm not gonna submit a

4            competency instruction, that was a proposed instruction, that we don't have, I requested a

5            competency assessment in the middle of this trial and that was denied so-so with that and-and

6            we're not objecting. We understand that once that evidence is raised that it's competent

7            evidence now that's arguable that it was competent evidence that he's mentally ill at the time

8            right now. None of them have been with him so the only mental illness that probably could have

9            been testified to I mean his witnesses all talked about the last time they dealt with him was back

10          in 2007 ...

11   DT:    We took note.

12   MC:    Now the defendant took the stand and he raised no issue about being mentally ill other than not

13          fully understanding and what not so if they get that instruction, guilty but mentally ill obviously

14          we give the rebuttal, uh, Mr. Morrison stepped out, he's not raising the competency at the jury,

15          he's guilty but mentally ill and so if the court's going to allow that instruction, um, you know,

16          that's what our rebuttal witnesses are for. The GBMI is available, was available in '07 when the

17          crime committed. It's been under appeal since this but that doesn't deprive him of the right, uh,

18          to have that submitted.

19

20

21

22

35

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1    10/10/13 CD B 9:20:00 – 9:26:00

2    AR:    Okay Your Honor, with all due respect I want to stand up. Uh, they offered me a plea today, um,

3    it was guilty but mentally ill which I was very confused of the charges I have in the first, uh, they

4    said it's tampering, I have no clue what those are for, what they're about, I have no clue about

5    the first three, I just know the name, the word, the names and the guilty but mentally I have-have

6    no idea what it's about or nothing, he tried to explain but like I said when they communicate it's

7    hard for me to understand and it takes a long time got to write it and I'll read it over, but also

8    that, um, uh, okay they okay that and then also they said they're calling doctors to testify against

9    my-my mental state, Dr. Ness and another doctor but I was never notified they were calling

10    doctors and I was unable to call Dr. Maxine Schwartz in my-my defense and also I was unable to

11    get a private investigator to call some of the witness that I had names to but I was unable to

12    locate cause I was locked up in prison and their-their job is to locate the witnesses for you and I

13    was unable to call plenty of witnesses which affected my defense and I'm sorry to disrespect

14    anybody in the Courtroom, I apologize in advance, and also, um, my meds say I'm a

15    schizophrenic, paranoid schizophrenic, paranoid delusions, hallucinations, I never got sent for 90

16    day evaluation see how I'm acting every day for those 90 days, I got sent there for one hour and

17    maybe two hours evaluated by Dr. Fink and that's it, that's an improper evaluation in my opinion

18    and I-I feel like I've been treated unfairly and also, um, there was plenty of media, um, this

19    whole week which the Jury will probably didn't hear but there's plenty of media about me in the

20    newspapers, the TV, the radios and everybody's asking me all kinds of questions and I'm, I just

21    say I don't know what's going on cause I have no, uh, way to see newspapers or radios or

22    anything but also I don't know, uh, I know Mr. Cosby is my attorney and he's supposed to be for



State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1        my defense but like I said in the past, I've asked to fire him, I've asked to get a new attorney

2        which I can't, I can't afford it I'm poor, I have no help from my family just basically to get my

3        hygiene and that's it and-and also I, um, I asked for a new attorney, I asked for a private

4        investigator, I asked for a neurologist evaluation, I asked for another competency evaluation, I

5        asked for several motions which I don't know if they were, they were even filed or if they were

6        denied, I've asked, uh, I don't know if Mr. Cosby I just feel like maybe I-I have a big mouth and

7        I sit to-to open my big mouth and say things and I don't know if I made him angry or upset or

8        frustrated or what I've done but for some reason I don't know if he's gonna lose this case

9        because it's a weak case or if it's intentionally or accidental or I'm just paranoid or ...

10   DT:   Mr. Ramirez.

11   AR:   ... but-but something Your Honor for that ...

12   DT:   The issues that you wanted to be on the record you've listed them and I think you've listed them

13        well, uh, thank you for all the truth of the situations that-that you face, uh, and-and-and it's tough

14        to understand everything even if you're in the system, but I think that you've made a record ...

15   AR:   Sorry Your Honor.

16   DT:   ... and the Appellate Court will see that record and-and therefore that's-that's what you needed to

17        do and that's what you've done.

18   AR:   Okay. Thank you Your Honor I had more, uh, uh, things to say but thank you for that time I'll-

19        I'll just say them on my appeals, I had more things that I wanted to say but thank you.

20   DT:   Okay thank you sir. Alright (9:25:58)

21

22

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1   10/10/13 CD B I0:45:45 -I0:58:56

2   AR:    Uh, I don't want to throw Mr. Cosby under the bus or anything but the reason I didn't say

3          anything in my opening statements which you just put on the record in my defense was I advised

4          Mr. Cosby yesterday when he visited me, I didn't want to speak about this and I was waiting for

5          him to ask me. I thought he had to ask me a question if I'd been sexually abused or sexually

6          assaulted, I didn't know I had to just say it out of my own ...

7   (Inaudible everyone talking together)

8   DT:    So you-you don't, Mr. Cosby is acting as your attorney and he's doing an excellent job and he's

9          absolutely correct you just don't want in here and say at-at the beginning of the defense case that

10         it's been going on for years and years and years.

11  AR:    Oh but-but ...

12  DT:    And that's what this looks like to me. It looks like to me ...

13  AR:    Well I thought you're supposed to ask questions and I'm supposed to give answers.

14  DT:    You-you need, you need to listen to me cause it's my turn to talk, it's my court.

15  AR:    Oh sorry sir.

16  DT:    I've let you talk, I've-I've heard from and-and you've had plenty of leeway.

17  AR:    I-I have more to say about my ...

18  DT:    I know you've got a whole lot more to say ...

19  AR:    Cause it's my life.

20  DT:    ... and you have the rest of your life to say it.

21  AR:    I want to see it on record.

22  DT:    But we have, we have heard a significant amount of what you have to say and what you want to

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1      say and you're saying some more stuff right now that is on the record. The part that I'm gonna

2      restrict is that you're not gonna go into this area at this juncture in this trial.

3  AR:  It's-it's, uh, relevant to the case and also I didn't get asked about how, about my schooling, like I

4      thought it was maybe it was important to the Jury about how I was doing in school and before

5      how this led up to it and I didn't get asked about why I broke the window to my mom's

6      boyfriend's car, what happened that day, who was there, I didn't get asked, um, several things ...

7  DT:  See those are not relevant to the issue that we are here about.

8  AR:  How come they've used it in court? He brought it up. The prosecution said I broke a window

9      but it's not relevant? It's relevant if the prosecution used it but I can't explain why it's relevant

10     Your Honor and you all a very educated man and I'm a nobody and I'm real low, uh, low IQ but

11     I guess in my life and I feel like I'm not having a fair trial because if-if I would have known that

12     I didn't have to get asked a question about me being sexually assaulted by my neighbor and

13     (inaudible) I would have just said it myself but I just had respect for the courts and for you for

14     Matthew telling everybody I wasn't gonna just throw it out there like that.

15  DT:  You're-you're ...

16  AR:  But I don't feel it's fair.

17  DT:  You have, you've explained this issue and you've been through psychological evaluations and

18     we've had two for sure ...

19  AR:  Okay.

20  DT:  ... did you explain that to them?

21  AR:  Yes. Yes sir. Another thing, thank you for letting me speak, I greatly appreciate it and God

22     bless you all. I've let Maxine Schwartz know that I was sexually assaulted. It's on record, she

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1            knows. I've told her what happened by my neighbor, by my mom's boyfriend, I told Maxine

2            Schwartz that's why I was hurt that I didn't get to have that as my defense today and also ...

3    DT:    And who is Maxine Schwartz.

4    JC:    She's the one, uh, the original determination wasn't competent.

5    AR:    And also ...

6    JC:    Psychologist.

7    AR:    ... Dr. Burness I'm not gonna say whether she asked me or not but like I said I was assaulted over

8            there and battered and they sent me back and found me competent which isn't, wasn't good, was

9            not prop-professional and also Dr. Fink I tried to explain this to Dr. Fink that I was sexually

10           assaulted and-and Dr. Fink stated well that doesn't have anything to do with your case. He said

11           your murdered somebody and that doesn't have nothing to do with your case and he said also he

12           said even if you were incompetent my job as working for the State of New Mexico is to find you

13           competent and whether you get to the hospital or not they're still gonna find you competent

14           because that's the job the State of New Mexico has and I said well I explained everything and I

15           was, I' not get, I'm not, it's not fair and I think it's relevant.

16   JC:    Okay there is ...

17   AR:    If your child was ever assaulted would you want ...

18   JC:    Can-can we finish please? Go ahead but there is record that you discussed with psychologists

19           something about being sexually assaulted in the report and I hesitate to have to do this but in the

20           report the psychologist says that he's malingering and fabricating and that the allegations of

21           sexual abuse is I believe that her term, highly suspect. So it was brought up, it was discussed, it

22           was not, um, commented much upon except when the report that the person said because of his

24

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1          alleged malingering, she felt the report was highly suspect. I can't call a psychologist in just to

2          ...

3    DT:   Say that?

4    JC:   ... have them say in front of the jury that, uh, my client's claim of this is highly suspect because

5          obviously that's gonna weaken his case.

6    AR:   Oh what ...

7    JC:   Excuse me sir.

8    AR:   I'm sorry sir.

9    JC:   Please.

10   AR:   Right I just ...

11   JC:   Please, just relax please.

12   AR:   It's my life sir.

13   JC:   So there are evidence concerning his, uh, discussing this. There is no evidence before the

14         homicide and that we don't have. We don't have police reports, we don't have, uh, reports that

15         his juvenile foster home, we don't have anything of that nature. As a matter as-as discussed

16         with my client we have one report from a juvenile home where he asked whether there was any

17         abuse or neglect in the home and he told that person at the time no. Just that he was spanked.

18         Um, that could have been used perhaps against him and we'd put that person on. So he has a

19         right I think to say this and I'd like to make a proper ...

20   DT:   Alright.

21   JC:   ... of what he would say happened just for the record.

22   AR:   I would like to say.

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1    JC:    Well you're-you're getting your chance sir now.

2    AR:    I would like to speak.

3    JC:    You are. You're, just a second ...

4    DT:    Well I'll give you 5 minutes to tell the story.

5    AR:    I don't want him. I don't, huh?

6    DT:    I'm gonna give you 5 minutes to tell this story.

7    AR:    Tell what story?

8    JC:    About your sexual problems ...

9    DT:    That your sexual ...

10   AR:    Okay. I got 5 minutes.

11   JC:    Sit back, sit back.

12   AR:    I'm not acting up. Okay ...

13   DT:    Sit, sit for it.

14   AR:    I'm not, there ain't nobody, I'm peaceful like everybody else.

15   DT:    They're just doing their job and you're, and you're gonna make a statement, I'm gonna give you

16          5 minutes and you need to understand that this is the statement ...

17   AR:    Yes sir.

18   DT:    ... that will go on the record.

19   AR:    Yes sir.

20   DT:    Because the court is of the opinion that it's an inappropriate thing to bring before the jury and

21          I'm not gonna let you do it.

22   AR:    Okay.

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1    DT:    It is highly suspect for sure in my opinion.

2    AR:    I, uh ...

3    DT:    And (inaudible) against you're done so say what you want to say.

4    AR:    Okay. Mr. Cosby stated that supposedly a psychologist/psychiatrist stated that I was malingering

5           or they didn't believe me which in my opinion when he said that, which it went against me and

6           on the record, okay if there's a psychiatrist/psychologist, Maxine Schwartz which I told and she

7           believed me, um, that would be relevant and that would help my case which would make it

8           allegedly true and what he said about somebody saying that I was malingering makes me look

9           bad but why would he say that Dr. Maxine Schwartz believed me when I told her about the

10          sexual abuse and it makes me right. And also about foster care okay I never told nobody, I was

11          embarrassed. The only person I told was my mother and about this I was about, when

12          (inaudible) done this to me he would give me beers so I started drinking with him and then later

13          on I drunk a lot of beers with him, and, um, I was 16 it was the summer time and, uh, he, uh,

14          tried to kiss me and I told him no and, uh, he got in my face and he threatened to-to punch me, he

15          threatened to hit me and I-I didn't want to get hit, I was scared. So I said okay. Then, uh, he

16          forced me to give him oral sex which I did, which only lasted maybe 2 to 3 minutes at the most

17          and then it was done, it was right in the living room, I was sitting on the couch, he was standing

18          in right in front of me and I did it and he told me not to say nothing but I told my mom and my

19          mom asked him, he denied it. Well then later om about a month later he-he did it again and I

20          told my mom and she said, uh, she was gonna call the cops and-and, um, they got in an argument

21          and I guess he unplugged the phone and they were talking and then my mom sent me to my room

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1       and then nothing ever happened. My mom just said I talked to him, I talked to him and-and that

2       was it.

3   DT:   (inaudible)

4   AR:   And-and-and she told me that she said that she told him that if I ever said anything about him

5       hitting me or any sexual abuse that she was gonna press charges and that I was gonna give, I was

6       gonna have to tell the police and stuff, well not about that, well about Sam Size. I used to go

7       over there because he used to call me over there and when I was between junior high I used to go

8       over there and I always used to like to drink and smoke weed so in order to get beer, I would go

9       to him and I just went over there and I would drink and, um, I would get a beer or two and he'd

10      give me a beer or two and he tried to, he tried to get with me. He just asked for a hug and then

11      he grabbed my, I can't remember if he grabbed my penis and my butt or both and he tried to put

12      his lips on mine, I told him no back up, you know, and I-I ran away with the, with the beer and

13      then I-I ended up going back one more time and, um, I needed some more beers cause I was with

14      my friends and it was Sunday, I don't remember the date, it was summer time, I was 16, he gave

15      me, I went and I said hey man I-I need some beers and, um, I don't remember exactly what was

16      said but I know he gave me like 7 to 8 beers and he tried the same thing on me and he touched up

17      on me and that's assault, he grabbed my penis and my butt and everything and he always tried to

18      invite me over there but I was scared of him. The reason I was scared of Sam Size to go over

19      there was because he told me when I was a little kid, do not, he told me he said, um, cause I used

20      to hang out at the other neighbor's house and he used to just give me beer free, he wouldn't try

21      nothing on me or anything, he just gave me beer for free, just to hang out, smoke and, uh, Sam

22      told me I don't like him, you shouldn't be hanging out with him because he's always talking crap

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

| 1 | | about me, he says that I-I, uh, he-he's saying that I, uh, I can't, I don't want to say something |
|---|---|---|
| 2 | | wrong but he said, and I ain't making this up because I seen it in discovery, this is exact what |
| 3 | | happened. He told me from his mouth that Michael Morales was talking about him and said that |
| 4 | | he raped or, uh, raped or had some kind of sex with two young males between 12 and 18 and |
| 5 | | once he told me this I was really afraid of him because I thought he was gonna try to have sex |
| 6 | | with me and I was real paranoid because he-he's a big man. So I'd be, I'd watch out for myself |
| 7 | | but I know it's hearsay but Mike would tell me the same thing and that's why I believed it to be |
| 8 | | true and whether I can testify to it or not, I mean that's the truth so let it be on the record and ... |
| 9 | DT: | Right. |
| 10 | AR: | ... I just feel like, uh, I know whether you all are upset because I withdrew my plea but we |
| 11 | | wouldn't be here in the first place if I wouldn't have got those extra two and a half years, it's a |
| 12 | | big headache for me as well. |
| 13 | DT: | Alright. |
| 14 | AR: | And, uh, sorry your Honor one more thing is that I feel like it would be fair because this is my |
| 15 | | life and this is what happened and I, it is relevant. I've told plenty of people in mental health |
| 16 | | since I've been locked up in prison about being sexually assaulted and they got it written down |
| 17 | | and they said well we need to get you mental health and I've told them. |
| 18 | DT: | Right. |
| 19 | AR: | And-and Dr. Burness ... |
| 20 | DT: | I've got your story. |
| 21 | AR: | She just ... |
| 22 | DT: | I've got your story. |

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1   AR:   I was beat up over there.

2   DT:   The court, the court continues to be of the opinion that two things well after hearing the story

3         that it-it's still suspect and I'm not sure it'd be relevant.

4

5   10/10/13 3:24:59 -3:25:49

6   UF:   Well as of us, yeah because he had already been having all these issues where he was always

7         thinking somebody was after him.  He would talk to himself, he would hear voices, he would.

8

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1    10/10/13 4:41:38 – 4:42:15

2    AR:    Your Honor I just want 10 second, just want to state something real fast.

3    DT:    Say it.

4    AR:    In my opinion I want to file a motion for review the witness so I can use it in my Court of

5           Appeals and I wanted my, that doctor to come testify in my behalf so I can use it in my Court of

6           Appeals and she's not able to do that and I feel like it's gonna not, I'm not gonna be able to get a

7           fair trial because I want her to be able to come, be-be a witness because, uh, she knows about

8           my, um, sexual abuse which I told her and that I want it down on the record and Your Honor I'd

9           like to speak about that and I didn't get to speak about my mental illness, mental health issues on

10          stand but so thank you Your Honor.

11   DT:    Thank you sir.  Thank you very much.

12

13

14

15

16

17

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1    10/10/13 4:32:27 – 4:36:41

2    MC:   Your Honor with the, um, rule except upon good faith that the defendant is not going to submit a,

3           uh, lack ability to form specific intention instruction, we're also accepting in faith that he's not

4           going to submit a competency instruction, based upon that or insanity instructions, however there

5           will be instruction for guilty of 1st Degree Murder, guilty with mentally, or guilty, um, but

6           mentally ill and then if the Court allows the step-downs or, you know, for 2nd and-and for the

7           provocation and for voluntary. So based upon that the State, uh, does not believe we're going to

8           call in rebuttal witnesses with regards to competency or insane.

9    DT:   Great resolution, makes good sense.

10

Exhibit Y

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1   10/10/13  3:46:30 – 3:52:06

2   MC:  Your Honor with-with the, um, rule except upon good faith that the defendant is not going to

3        submit a, uh, lack ability to form specific intent instruction, we're also accept in good faith that

4        he's not going to submit a competency instruction based upon that or insanity instructions,

5        however, there will be instruction for guilty of 1st degree murder, guilty of a mentally, or guilty,

6        um, but mentally ill and then if the Court allows the step down or, you know, for 2nd and-and for

7        the provocation of involuntary. So based upon that the State, uh, does not believe we're going to

8        call in rebuttal witnesses with regard to competency or insane.

9   10/10/13 3:51:56 – 3:52:00 (INCLUDED IN ABOVE)

10

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1    STATE OF NEW MEXICO
2    COUNTY OF CURRY
3                                              Case No.  D-905-CR 2007-00434
4    STATE OF NEW MEXICO,
5                        Plaintiff,
6            v.
7    ALBERT RAMIREZ,
8                        Defendant.
9
10                **CERTIFICATE OF TRANSCRIPTION**
11
12
13
14        I, the undersigned legal transcriptionist, DO HEREBY CERTIFY, that the foregoing transcript is
15    a true and correct record of the excerpts from the transcript re: competency as transcribed by me. The
16    above-noted statement was transcribed to the best of my ability from a cassette and/or digital recording
17    supplied by defense counsel.
18
19        I, FURTHER CERTIFY, that I am not related to any of the parties or attorneys in this case and I
20    have no interest whatsoever in the final disposition of this case in any court.
21
22
23


24    _____
25    Cecilia M. Bruno
26
27

28

29
30

31

32

33

34                                                            Exhibit Z

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

2018 JUN 15  PM 3: 03

*[signature]*
CLERK DISTRICT COURT

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

ALBERT JOSE RAMIREZ,

   Petitioner,

vs.           No. D-0905-CR-2007-00434

STATE OF NEW MEXICO,

   Respondent.

**NOTICE THAT THE COURT IS NOT DISMISSING ANY PORTION OF THE
AMENDED PETITION AT THIS TIME AND ORDER FOR STATE TO RESPOND TO
AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

   THIS MATTER having come before the Court on Petitioner's pro se Petition for Writ of
Habeas Corpus filed June 20, 2017 and Petitioner's pro se Petition for Writ of Habeas Corpus
filed July 17, 2017, the Court having appointed the Law Office of the Public Defender to
represent the Petitioner, Petitioner's Amended Petition for Writ of Habeas Corpus having been
filed, through Counsel, on May 18, 2018 and the Court limiting its analysis to said Amended
Petition, the Court having reviewed this matter, and being otherwise well and sufficiently
advised in the premises;

   THE COURT HEREBY FINDS:

1. Petitioner is represented by Liane E. Kerr, Attorney at Law.

2. Through Counsel, Petitioner filed an Amended Petition for Writ of Habeas Corpus on
May 18, 2018.

3. "Within thirty (30) days after the filing of an amended petition or a notice of non-intent to
amend the petition, the court may dismiss some or all of the claims in the petition." Rule 5-
802(H)(3) NMRA. This Court has reviewed the Amended Petition and puts all parties on
notice that this Court is not dismissing any of the claims in the Amended Petition at this time.

<div style="border:2px solid black; display:inline-block; padding:4px;">

**EXHIBIT**

**X**

</div>

4.  This Court notes that the New Mexico Supreme Court found that, at least to a portion of the issues raised by Petitioner, that Petitioner retained the ability to bring such a claim via a habeas corpus proceeding. *State v. Ramirez*, 2016 WL 7029226, ¶ 32.

5.  "Within one-hundred and twenty (120) days after filing of the amended petition . . . the respondent shall file a response to any claims not dismissed and provide a copy of the response directly to the assigned judge." Rule 5-802(H)(3) NMRA. Therefore, the Ninth Judicial District Attorney's Office shall file a response to Petitioner's Amended Petition for Writ of Habeas Corpus within one-hundred and twenty (120) days from the date the Amended Petition for Writ of Habeas Corpus was filed (May 18, 2018).

IT IS SO ORDERED.

HON. DREW D. TATUM
DISTRICT JUDGE, DIVISION II

STATE OF NEW MEXICO

IN THE NINTH JUDICIAL DISTRICT COURT

COUNTY OF CURRY

STATE OF NEW MEXICO,

        Plaintiff,

vs.

**ALBERT RAMIREZ,**                   No. D-0905-CR-200700434

        Defendant.

## STATE'S RESPONSE

## TO DEFENDANT'S AMENDED PETITION FOR WRIT OF HABEAS CORPUS

    COMES NOW the State of New Mexico by and through her District Attorney for the 9th Judicial District, Andrea Reeb, and respectfully requests this honorable court to deny the defendant's petition for a writ of Habeas Corpus and in support of this request would offer the following:

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .................................................................................3

**ARGUMENT** ...........................................................................................................5

    I.    PETITIONER'S TRIAL ATTORNEY MADE STRATEGIC AND TACTICAL DECISIONS DURING TRIAL, THEREFORE THERE IS NO VIOLATION OF INEFFECTIVE ASSISTANCE OF COUNSEL OR OF THE COMPULSORY PROCESS ...........................................................................................5

1

**EXHIBIT**

**Y**

II.    PETITIONER'S PRIOR ACTS INTRODUCED DURING TRIAL WERE
       RELEVANT AND RELATED TO THE STATE'S BURDEN OF PROVING
       MOTIVE AND/OR INTENT TO MURDER THE VICTIM ....................................10

III.   THE SHACKLED PETITIONER WAS NOT PREJUDICED WHEN HE FELL
       BECAUSE ALL PARTIES AGREED THAT THE JURY DID NOT SEE THE
       RESTRAINTS AND THE  COURT REMEDIED IT FROM BEING AN FUTURE
       ISSUE BY UNSHACKLING PETITIONER'S ANKLES AFTER THE FALL........12

IV.    THE STATE MET ITS BURDEN BY PROVING BEYOND A REAOSNABLE
       DOUBT THAT EVERY ELEMENT OF TAMPERING WITH EVIDENCE WAS
       PROVEN TO CONVICT PETITIONER AT TRIAL ...............................................13

V.     THE STATE DID NOT COMMIT PROSECUTORIAL MISCONDUCT BECAUSE
       THE STATEMENTS USED IN CLOSING WERE BASED ON EVIDENCE
       ADMITTED DURING TRIAL ..............................................................................14

VI.    DISTRICT COURT FINDS THAT DOUBLE JEOPRARY IS NOT RAISED WHEN
       THE SAME OFFENSE IS CHARGED FOR TWO DIFFERENT INSTANCES......16

CONCLUSION ...............................................................................................................17

## TABLE OF AUTHORITIES

**NEW MEXICO CASES:**

State of Belanger, 2009 NMSC 025

Patterson v. Lemaster, 2001 NMCA 051

Churchman v. Dorsey, 1996 NMCA 033

State v. Cordova, 2016 NMCA 019

State v. Manuelito, 1993 NMCA 045

Duncan v. Kerby, 1993 NMSC 011

State v. Jacobs, 2000 NMSC 026

State v. Jett, 1991 NMSC 011

State v. Price, 1986 NMCA 036

State v. Dietrich, 2009 NMCA 031

State v. Flores, 2010 NMSC 002

State v. Rojo, 1999 NMSC 001

State v. Johnson, 2010 NMSC 016

State v. Sosa, 2009 NMSC 056

State v. Smith, 2001 NMSC 004

State v. Herrera, 1974 NMCA 068

Swafford v. State, 1991 NMSC 043

State v. Bernal, 2006 NMSC 050

State v. DeGraff, 2006 NMSC 011

**NEW MEXICO STATUTES:**

NMSA 1978 § 30-2-1(A)

NMSA 31-9-1.5


NEW MEXICO SUPREME COURT RULES:

Rule 11-404(B) NMRA

Rule 11-403 NMRA


**FEDERAL CASES:**

Deck v. Missouri, 544 U.S. 622

## ARGUMENT

I.    PETITIONER'S TRIAL ATTORNEY MADE STRATEGIC AND TACTICAL DECISIONS DURING TRIAL, THEREFORE THERE IS NEITHER A VIOLATION OF INEFFECTIVE ASSISTANCE OF COUNSEL OR OF THE COMPULSORY PROCESS

A. Introduction and standard of review.

Petitioner claims that the Sixth Amendment Right to Effective Assistance of Counsel and Right to Compulsory Process, furnish Petitioner with the ability to raise ineffective counsel because Petitioner's trial counsel refused to call an expert witness to testify regarding the Petitioner's mental status. The Appellate Court reviews constitutional issues de novo. State v. Belanger, 2009-NMSC-025, ¶ 8, 146 N.M. 357, 210 P.3d 783.

"The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees not only the right to counsel but "the right to the effective assistance of counsel." Patterson v. LeMaster, 2001-NMSC-013, ¶ 16, 130 N.M. 179, 183, 21 P.3d 1032, 1036. The purpose of guaranteeing effective assistance of counsel is to ensure fairness throughout the course of a criminal case. Id. A prima facie case of ineffective assistance is made by showing that defense counsel's performance fell below the standard of a reasonably competent attorney and, due to the deficient performance, the defense was prejudiced. Id. There are two prongs to assess the counsel's reasonableness. A prima facie case of ineffective assistance of counsel requires that a defendant or petitioner in a habeas corpus proceeding is required to establish (1) petitioner's counsel's performance fell below a reasonably competent attorney, and (2) prejudice resulted from the Counsel's incompetence. See State v. Cordova, 2014-NMCA-081, ¶ 9, 331 P.3d 980, 983; State v. Manuelito, 1993-NMCA-045, ¶ 6, 115 N.M. 394, 395, 851 P.2d 516, 517; Duncan v. Kerby, 1993-NMSC-011, ¶ 10, 115 N.M. 344, 348, 851 P.2d 466, 470. To determine whether there was resulting prejudice, the Court must consider the totality of evidence

5

presented. State v. Price, 1986 NMCA 036, 104 N.M. 703, 709, 726 P.2d 857, 863 (Ct.App.1986).

There are two additional factors taken into account when performing the evaluation: strategic decisions made by defendant's counsel and unreliability of trial resulting from counsel's prejudice. The Court does not second guess the counsel's strategic decisions. Patterson quoting Churchman v. Dorsey, 1996-NMSC-033, ¶ 18, 122 N.M. 11, 919 P.2d 1076. Second, the prejudice prong is different for defendants who are convicted at trial than defendants who convictions rest on pleas. A defendant at trial must prove that trial counsel's unreasonable performance calls into doubt "the reliability of the trial results." Patterson *quoting* Jacobs, at 127.

    i.    Meaningful Adversarial Testing.

        In this case, Petitioner acknowledges he is required to prove both ineffectiveness of assistance of counsel by showing petitioner's counsel's performance fell below a reasonable competent attorney and showing how the counsel's ineffective performance resulted in prejudice against the petitioner. Since Petitioner was convicted at trial, he must also show how such prejudice resulted in a doubt that the trial results were reliable. However, Petitioner also claims that this is a case of egregious failure by trial counsel and, as a result, the Petitioner is relieved of the burden of proving prejudice. Petitioner argues egregiousness by claiming Petitioner's counsel failed to subject the prosecution's case to meaningful adversarial testing, by way relieving Petition to prove resulting prejudice.

        The State disagrees. In State v. Dietrich, 2009-NMCA-031, ¶ 82, 145 N.M. 733, 753, 204 P.3d 748, 768, the court analyzed whether the defendant's counsel failed to subject the prosecution's case to meaningful adversarial testing when counsel did not move for a mistrial when it discovered the alleged victim would not be testifying. The court found that because the counsel attempted to impeach the alleged victim's statements brought out as hearsay through one of the State's witnesses, the counsel acted reasonably. The court stated, "counsel's attempt to impeach the alleged victim through a

witness and discover the tenor of the witness's investigation is exactly what defense counsel attempted to do, making that counsel an active participant in the defendant's trial." In addition, the counsel filed pretrial motions, filed a motion to suppress, and participated in hearings arising from his motions.

This case is similar to <u>Dietrich</u>. Petitioner alleges that his counsel was ineffective because he refused to call an expert witness to rebut Petitioner's competency. In 2008, Petitioner raised competency issues and on March 10, 2008. Petitioner was evaluated by Dr. Maxine Shwartz who rendered an opinion that Petitioner was incompetent. The court, ordered the Petitioner to be transported to the New Mexico Behavioral and Health Institute (NMBHI) in Las Vegas, NM, for treatment to attain competency pursuant to § 31-9-1.2 NMSA. On June 5, 2008, Petitioner was admitted to NMBHI, and on August 18, 2008, Dr. Joanne Burness who had evaluated Petitioner, rendered an opinion that Petitioner was competent to stand trial. During a Competency Hearing, Petitioner was deemed competent by the court. Dr. Burness testified during this Hearing. Dr. Shwartz did not.

Petitioner argues that because his counsel did not call Dr. Shwartz as a witness during the hearing and later at trial, that counsel should be deemed ineffective. Petitioner refers to Petitioner's Exhibit J as the "transcript from trial" dating October 9, 2013 where "Dr. Burness from NMBHI testified that she believed the Petitioner was malingering." It is important to clarify that while the Petitioner indicates that Dr. Burness testified to these statements at trial in October 2013, the record would reflect that Dr. Burness did not testify on October 9, 2013 at 2:41:40. In fact, Dr. Burness did not testify at all to the Petitioner's competency during the 2013 trial. The statements made in Petitioner's Exhibit J were made by the trial judge, the Honorable Teddy L. Hartley. This is only one of several errors in the transcript including referring to the trial judge as the Honorable Drew D. Tatum when the trail was presided over by the Honorable Teddy L Hartley.

While Dr. Burness did not testify at the trial, the Doctor did testify during the Competency Hearing, on August 27, 2008, and stated that Petitioner was

7

malingering. The comments in Petitioner's Exhibit J are the trial courts comments regarding his recollection of that hearing.

Petitioner argues its counsel was ineffective because he failed to present Dr. Shwartz's testimony at trial presumable to argue that Petitioner was not malingering. However, at the time of trial, both parties had already stipulated that Petitioner was competent. (Stipulated on January 13, 2013 before the trial in October 2013) (Exhibit 1). The State argues that there would have been no reason, other than to confuse the jurors and delay proceedings, to bring Dr. Shwartz into testify to something, which was already stipulated. Petitioner had already been to Las Vegas, NM and had been treated to competency for trial. There had already been Competency Hearings to establish his competence before the trial took place and counsel for the Petitioner took part in those hearings. Most importantly, the testimony of Dr. Shwartz would be irrelevant at the time of trial. The trial took place October 7 through October 11, 2013. Dr. Shwartz met with the defendant on March 10, 2008. It had been five (5) years six (6) months and twenty seven (27) days between the time that Dr. Shwartz saw the defendant for her report and the trial. Her observations and opinions would have been stale and irrelevant at the time of trial.

In addition, it was clear from the record that in the event that the Petitioner choose to call Dr. Shwartz in the trial, the State would have called Dr. Burness as a rebuttal witness and it was very likely that her opinion that the defendant was malingering would have been admitted into evidence as well. (Exhibit 2) It was only after the State indicated that it intended to call rebuttal witnesses that the defense made the strategic decision not to call Dr. Shwartz. This was trial strategy that prevented the State from being able to call their expert in the trial. Like in <u>Dietrich</u>, the court should find that Petitioner's attorney reasonably acted to further court proceedings. There is no indication or any evidence that trial counsel failed to provide meaningful adversarial testing of the issues.

ii.    <u>Relevance and Strategic Decisions</u>

Petitioner argues that since its counsel failed to provide Dr. Shwartz' testimony during the second competency hearing, such counsel's performance should be deemed ineffective. It is the State's contention that the testimony from Dr. Shwartz was irrelevant and the action of trial counsel to not call her for testimony was a strategic decision. After Petitioner's care at the NMBHI, where he was evaluated for more than 60 days by Dr. Burness who monitored his patterns and psychological state of mind, there would be little if any relevance to the evaluation of Dr. Shwartz that was performed before treatment. Dr Shwartz's testimony would have been regarding five months prior to the most updated and current evaluation at that time. Upon a finding that the defendant is competent to proceed in a criminal case, the court shall continue with the criminal proceeding. The most up to date evaluation, then, would be most relevant and helpful for the court to render a decision that the Petitioner was competent and continue with court proceedings.

iii.    Strategic Decisions by Counsel

Petitioner's trial council's decision not to present Shwartz as a witness to testify at the competency hearing was a strategic decision. A trial counsel may make decisions to move forward an argument, and not prolong proceeding with irrelevant, unhelpful information. Rule 11-401 NMSA tests relevance as having a tendency to make a fact more or less probable than it would be without evidence, and the fact is of consequence in determining the action. Calling a witness who has no relevant information would not assist the Court to make a decision. As stated in Patterson, the Court does not second guess the counsel's strategic decisions.

II.    PETITIONER'S PRIOR ACTS INTRODUCED DURING TRIAL WERE RELEVANT AND RELATED TO THE STATE'S BURDEN OF PROVING MOTIVE AND/OR INTENT TO MURDER THE VICTIM

9

Petitioner was charged and convicted of murder in the first degree, pursuant to §30-2-1(A) NMSA. It is the State's burden to prove every element of the crime charged beyond a reasonable doubt. In this case Murder in the first degree required a showing that someone was killed by the defendant, without lawful justification or excuse by any kind of willful, deliberate and premeditated killing. To determine whether the evidence admitted during trial is related to the issues of the case, the State must relate the evidence to the motives and/or intent of the defendant. "Proof of motive sheds light on the likelihood of a defendant's guilty, and intent is an essential element of murder. Evidence that makes motive or intent more of less probable is therefore relevant." State v. Flores, 2010 NMSC 002, 226 P.3d 641. In Flores, the Court stated that although when viewing the evidence in that case in an isolated manner, it might not have concluded motive, when viewing all of the evidence in the totality of the case, the evidence could help the jury determine if the defendant was motivated to hurt or kill the victim. In this case, it is also necessary to view the evidence in light of all of the evidence in the case.

Intent is subjective and is almost always inferred from other facts in the case. Under Rule 11-404(B), evidence of a defendant's prior acts is admissible to show motive. Under Rule 11-403, evidence may be excluded only if its probative value is substantially outweighed by its prejudicial impact, the potential for confusion of issues, or the danger of misleading the jury. Determining whether the prejudicial impact of evidence outweighs its probative value is left to the sound discretion of the trial court. In State v. Rojo, 1999 NMSC 001, the Court ruled that when the evidence presented was found by the trial court to have probative value to assess a theory of motive for the murder committed, the trial court did not abuse their discretion in admitting the evidence.

In this instance, Petitioner argues that the prior acts of violence and rage he displayed toward the victim and Petitioner's mother leading up to the murder were not relevant. The State disagrees. First, it is important to note that the victim in this case, Eladio Pobledo, was residing with the Petitioner's mother. On multiple instances, Petitioner was violent toward the victim and threatened him, which

10

Petitioner admitted during the testimony at trial. The first act Petitioner argues was not relevant is the broken front window at the victim's home. Petitioner argues that the State could not prove that he broke the window. On October 10, 2013, 1:08:40 PM, Petitioner testified and admitted that he had broken out the window and did not know if his mother called the police on him for doing it. The second act Petitioner argues against being admitted was Petitioner breaking his mother's windshield with crutches. On October 10, 2013PM1:10:12 PM, Petitioner testified and admitted that he had broken out the window and did not know if his mother called the police on him for doing it. One act of violence toward the victim and Petitioner's mother may not point to direct motive, but several instances of violence is relevant to show motive and intent which is a question for the jury.

Lastly, the Petitioner argues that evidence brought in regarding Petitioner visiting a gun shop inquiring about buying a gun was not admissible to prove motive. The State disagrees. Facts that Petitioner searched for a gun at a gun shop was relevant and could have also been used to prove motive and/or intent to inflict serious injury or kill the victim. Less than 24 hours after Petitioner purchased bullets, Petitioner shot and killed the victim execution style in front of the victim's home. It is the determination of the fact finder to evaluate the facts surrounding the case, and determine if such facts conclude the Petitioner murdered the victim intentionally. Facts against the Petitioner may indeed be prejudicial, but until that prejudice substantially outweighs the probative value, they shall be admissible. Since each of these actions on the part of the defendant has probative value the trial court was correct to admit them.

III.    THE SHACKLED PETITIONER WAS NOT PREJUDICED WHEN HE FELL BECAUSE ALL PARTIES AGREED THAT THE JURY DID NOT SEE THE

RESTRAINTS AND THE COURT REMEDIED IT FROM BEING AN FUTURE
ISSUE BY UNSHACKLING PETITIONER'S ANKLES AFTER THE FALL

The Fifth and Fourteenth Amendments prohibit the use of physical restraints
visible to the jury absent a trial court determination, in the exercise of its discretion,
that they are justified by a state interest to a particular trial, including security
concerns. State v. Johnson, 2010-NMSC-016, ¶ 26, 148 N.M. 50, 59, 229 P.3d 523,
532. Where a defendant is restrained in a manner not visible to the jury, prejudice is
not presumed. Id. Generally, a prisoner coming into court for trial is entitled to make
his appearance free of shackles or bonds. However, the defendant's right to appear
free of visible restraints is not absolute. It must be balanced against the state's interest
in maintaining security. Id. The jurors' inadvertent or insignificant exposure to a
defendant in shackles is not sufficiently prejudicial to merit a new trial. In this case, if
the jurors saw anything it would have been brief and inadvertent.

However, the evidence shows that in fact the jury never saw the shackles. A
review of the record indicates that the Petitioner did fall around 3:06:11 P.M. on the
first day of the trial, October 7, 2013. However, when Petitioner fell, all parties
asserted that none of the jurors saw the Petitioner's legs shackled. Petitioner argues
that the Court did not attempt to remedy the possibility that a juror may have seen
Petitioners shackles. However, the Court and the defense attorney were in the best
position to factually know that no juror could have seen the shackles. Questioning
the jurors would only have called more attention to what at most was an inadvertent
moment. In addition, the Court then took action to ensure that there would not be
even an opportunity for a second inadvertent episode. The Court ordered the shackles
off of the Petitioners after the fall to avoid any prejudice against the Petitioner during
the trial, even though all parties, including Defense, agreed that none of the jurors
saw the shackled during the fall.

The Court has stated in State v. Johnson, 2010 NMSC 016, that shackling is
prejudicial when the jury knows the defendant is shackled, and the prosecution failed
to meet its burden of proving beyond a reasonable doubt that the inherently
prejudicial shackling did not contribute to the guilty verdict. Johnson *quoting* Deck.

12

That situation is clearly distinguishable from the facts in this case. The jury in Petitioner's trial did not know that he was shackled and did not see his shackles during a fall. Also, the State met its burden of proving Petitioner murdered the victim execution style while he was lying on the ground, thus committing First Degree Murder. There is no way Petitioner could use the fact the jury saw him with shackles to negate all of the evidence and testimony, including his incriminating testimony, to prove that the convicted him because his ankles were shackled.

IV.    THE STATE MET ITS BURDEN BY PROVING BEYOND A REAOSNABLE DOUBT THAT EVERY ELEMENT OF TAMPERING WITH EVIDENCE WAS ESTABLISHED TO CONVICT PETITIONER AT TRIAL

Petitioner argues that the State did not present evidence sufficient to support a finding of guilt beyond a reasonable doubt that Petitioner tampered with evidence. The State disagrees. During testimony, witnesses told the jury that they saw the Petitioner running from the home where he had shot the victim. The State called witnesses to testify that Petitioner ran through an alley near a store called RAGZ2RICHEZ. Investigators found the Petitioner's belongings in a trash bin in the alley. Petitioner also testified to throwing the gun used to murder the victim, as well as his other belongings into the trash can. This evidence supports the conviction for the first count of tampering.

To address the second count of tampering with evidence, the State called Deputy Sandy Loomis to testify at trial. Loomis conducted the investigation after the shooting and during the time Petitioner was in jail after his arrest for the murder. Loomis produced several recorded phone calls Petitioner's made while in the detention facility that clearly proved the Petitioner was tampering with evidence. After Petitioner was arrested, he made calls telling other people to go and collect a gun behind an alleyway. Petitioner made two phone calls on July 15, 2007, one at 18:30 and another at 18:38. On both calls Petitioner was heard telling his "tia" or aunt that "I threw a", "I bought a present, a toy" and then using Spanish saying he placed it behind RAGZ 2 RICHEZ, where you throw the trash. He also asked for Trompas, Tio, or Shorty to go get it. In the second call,

13

Petitioner requested a male to go get a "Bam Bam" located in the alley of RAGZ 2 RICHEZ.

RAGZ 2 RICHEZ is a store located at 506 West 7th Street. The alley of the store is the same in which Petitioner was seen by witnesses running North after the shooting. The firearm could not be located when investigators returned to locate the gun. On Day 4 of the trial, Petitioner testified to speaking with someone on the prison phone and requesting they go get the gun from the trash can outside of RAGZ 2 RICHEZ. Petitioner also admitted on the stand that he dumped his pants and the gun inside of the dumpster after he fled the scene where he had killed his step father. Petitioner stated the reason why he told someone to go get the gun because he thought that if the police could not locate the gun, he would get out of prison.

Tampering with evidence consists of destroying, changing, hiding, placing or fabricating any physical evidence with intent to prevent the apprehension, prosecution or conviction of any person or to throw suspicion of the commission of a crime upon another. § 30-22-05 NMSA. After the Petitioner testified in trial, his testimony was paramount to the State meeting their burden beyond a reasonable doubt. It could not be clearer to the Court that the State met its burden in proving that the Petitioner committed two counts of tampering with evidence.

## V.    THE STATE DID NOT COMMIT PROSECUTORIAL MISCONDUCT BECAUSE THE STATEMENTS USED IN CLOSING WERE BASED ON EVIDENCE ADMITTED DURING TRIAL

Prosecutorial misconduct rises to the level of fundamental error when it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial. To find fundamental error, we must be convinced that the prosecutor's conduct created a reasonable probability that the error was a significant factor in the jury's deliberation in relation to the rest of the evidence before them. We will reverse a jury verdict only "(1) when guilt is so doubtful as to shock the conscience, or (2) when there has been an error in the process implicating the fundamental integrity of the judicial process. However, an isolated, minor impropriety

14

ordinarily is not sufficient to warrant reversal, because a fair trial is not necessarily a perfect one, State v. Allen, 2000 NMSC 002, ¶ 95,

In assessing whether prosecutorial misconduct has occurred based on statements made by a prosecutor at trial, reviewing courts are to evaluate a prosecutor's challenged statements "objectively in the context of the prosecutor's broader argument and the trial as a whole." State v. Sosa, 2009-NMSC-056, ¶ 26, 147 N.M. 351, 223 P.3d 348. Courts are to start their analysis from the long-accepted proposition that "during closing argument, both the prosecution and defense are permitted wide latitude, and the trial court has wide discretion in dealing with and controlling closing argument. State v. Smith, 2001-NMSC-004, ¶ 38, 130 N.M. 117, 19 P.3d 254. "Remarks by the prosecutor must be based upon the evidence or be in response to the defendant's argument."Id. Indeed, "statements having their basis in the evidence, together with reasonable inferences to be drawn wherefrom, are permissible and do not warrant reversal." State v. Herrera, 1972-NMCA-068, ¶ 8, 84 N.M. 46, 499 P.2d 364.

Petitioner argues that when the State's prosecutor called Petitioner a liar and later stated he was a menace to society, it was an egregious shock to the conscious of a reasonable person. The States disagrees. The statement that the Petitioner is a liar was proven through evidence at trial, included Petitioner's own statements made during his testimony. In one instance, the Petitioner stated, "my whole left side is disabled, 1 can barely walk." However, when the State mentions that he left the scene in less than 30 seconds after murdering the victim, Petitioner affirmed. A menace to society statement, taken as a whole according to the trial was also not egregious. Many witnesses testified to Petitioner having issues getting along with the victim, and Petitioner's mother. Petitioner also admitted during trial he violated a trespass order that forbid him to return to Petitioner's mother's home. Petitioner also admitted to telling various people while in jail to collect evidence after the murder. The statements that Petitioner is a liar and a menace are not egregious to shock the conscience of a reasonable person. Therefore we ask the Court to find the State did not commit prosecutorial misconduct during their closing argument.

VI.   DISTRICT COURT FINDS THAT DOUBLE JEOPRARY IS NOT RAISED WHEN
      THE SAME OFFENSE IS CHARGED FOR TWO DIFFERENT INSTANCES.

If defendant commits two discrete acts volatile of same statutory offense, but separated by sufficient indicia of distinctiveness, double jeopardy clause does not preclude court from imposing separate, consecutive punishments for each offense. Swafford v. State, 112 N.M. 2 (1991-NMSC-043). The test is to determine whether the conduct for which there are multiple charges is unitary or distinguishable.

To determine whether two of the same statutory offense occurred, we must undertake a unit-of-prosecution analysis. For unit-of-prosecution challenges, the only basis for dismissal is proof that a suspect is charged with more counts of the same statutory crime than is statutorily authorized. The inquiry is to determine whether the legislature intended multiple punishments for one continuing act. The unit-of-prosecution analysis is done in two steps. First, we review the statutory language for guidance on the unit of prosecution. If the statutory language spells out the unit of prosecution, then we follow the language, and the unit-of-prosecution inquiry is complete. If the language is not clear, then we move to the second step, in which we determine whether a defendant's acts are separated by sufficient "indicia of distinctness" to justify multiple punishments under the same statute. In examining the indicia of distinctness, courts may inquire as to the interests protected by the criminal statute, since the ultimate goal is to determine whether the legislature intended multiple punishments. If the acts are not sufficiently distinct, then the rule of lenity mandates an interpretation that the legislature did not intend multiple punishments, and a defendant cannot be punished for multiple crimes. State v. Bernal, 2006-NMSC-050.

Petitioner argues that the State violated Double Jeopardy when charging him with two counts of Tampering with Evidence. The State opposes this argument. Petitioner does not acknowledge that when leaving the scene of the crime, Petitioner threw clothing and a gun into the trash can near RAGZ 2 RICHEZ. This crime was considered to be the first count of Tampering with Evidence. Then, after being arrested, Petitioner was heard on the prison phone line telling various family members and friends to return to the alleyway to retrieve the gun before the police located the evidence. This is considered another

16

count of Tampering with Evidence. When asked, during the trial, why he told individuals to retrieve the weapon, Petitioner stated, "I think [they] law enforcement would let me out." Court Transcript October 10, 2013 1:34:56 PM. It is evident in Petitioner's testimony during trial and the acts that Petitioner took immediately after the shooting, Petitioner should be charged with two counts of Tampering with Evidence.

## CONCLUSION

The State respectfully requests this Court to affirm the district court's order dismissing the habeas corpus petition. The Petitioner has not raised any violations on the part of the State that would warrant a reversal of his conviction, or finding any error of the court that tried his case in 2013. It is for this reason and the reasons above, the State respectfully requests that the Court dismiss this petition and affirm the Petitioner's conviction.

Respectfully Submitted,

ANDREA R. REEB
DISTRICT ATTORNEY

I hereby certify that I caused a true and correct copy of this response to opposing counsel on this ___ day of September, 2018.

# Exhibit 1

FEB/28/2013/THU 11:40 AM    jesse r. cosby atty.    FAX No. 5756250964    P. 002/002

02/26/2013 10:39 FAX                                                          02 0002/0002

EXHIBIT 3

STATE OF NEW MEXICO
COUNTY OF CURRY
IN THE NINTH JUDICIAL DISTRICT COURT

2013 MAR -1 PM 3:54

STATE OF NEW MEXICO,

              Plaintiff,

v.

ALBERT JOSE RAMIREZ,                    No. D-0905-CR-0200700434

              Defendant.

## STIPULATED ORDER ON COMPETENCY

    THIS MATTER having come before the Court, by way of stipulation of the parties, the

State represented by Andrea R. Reeb, Chief Deputy District Attorney, and the defendant

represented by his attorney, Jesse R. Cosby,  Attorney at Law, and said parties having stipulated

to the report dated   1-17-13      , from Dr. Richard T. Fink, Ph.D; the parties agree that the

Defendant is competent to stand trial in this matter;

    IT IS HEREBY ORDERED that Defendant is competent to stand trial in this matter, and

that a jury trial shall be scheduled.


_____
TEDDY L. HARTLEY
DISTRICT JUDGE, DIVISION III


_____
Andrea R. Reeb
Chief Deputy District Attorney


_____
Jesse R. Cosby
Attorney for Defense

D.A. No.  11-0539 MC/jwg

# Exhibit 2

**Description** ST. VS ALBERT RAMIREZ CR-07-434

2013 OCT 10 PM 4:45

THE NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

CAUSE NO:D-0905-CR-2007-00434
JUDGE: TEDDY L. HARTLEY
DATE: OCTOBER 10, 2013

STATE OF NEW MEXICO,
            Plaintiff / Petitioner,

vs.

ALBERT RAMIREZ,
            Defendant, Raspondent,

TYPE OF PROCEEDING: MOTIONS ON DAY 4 OF JURY TRIAL
ATTORNEY FOR PLAINTIFF: MATTHEW CHANDLER,  JAROD MORRIS
ATTORNEY FOR DEFENDANT: JESSE COSBY
OTHERS PRESENT:
COURT MONITOR:  IRENE J. RODRIGUEZ

NOTICE:  This log is not the official record.  The official record is the audio cd.
The log is created to assist in locating information on the cd.  The log is not a
verbatim record of the proceedings and could contain errors and omissions.

**Date** 10/10/2013         **Location** CR1 CHAMBERS

ST. VS ALBERT RAMIREZ  CR-07-434                                    CR1 CHAMBERS

| Time | Speaker | Note |
|------|---------|------|
| 10:40:24 AM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY DFT AND ALL PARTIES PRESENT |
| 10:40:41 AM | COSBY | HAS ONE OTHER ISSUE, MY CLIENT HAS TOLD ME THAT HE WAS SEXUALLY ASSAULTED ETC. |
| 10:42:10 AM | | HE WANTS TO TESTIFY THAT MR. ROBLEDO AS WELL AS MR. SAIZ SEXUALLY ASSAULTED HIM |
| 10:42:28 AM | CHANDLER | THERE IS NOTHING THAT SUPPORTS THAT PARTICULAR CLAIM, IT HAS NEVER BEEN REPORTED, WHEN DID THE HAPPENED , IT IS THE TIMELINE, |
| 10:43:36 AM | COSBY | UPON ON HIS FIRST STATEMENT, WHEN MY CLIENT FIRST WENT TO HIS HOUSE MY CLIENT TOLD HIM HE HAD BEEN SEXUALLY ASSAULTED, |
| 10:44:17 AM | COURT | HERE IS THE PROBLEM WE RUN INTO, THE KIND OF THE TIMING, THE COURT IS OF THE OPINION THAT I WILL NOT ALLOW IT, THRE WAS NOTHING TO SUGGEST THAT IN HIS OPENING STATEMENT, IF THE STATE IS OF THE OPINION THAT WE CREATE AN ERROR BY EXCLUDING THIS, I WILL RULE AGAINST IT |
| 10:45:42 AM | DFT | ABOUT THIS MATTER, THE REASON I DID NOT SAY ANYTHING IN MY OPENING STATEMENT |
| 10:46:16 AM | COURT | YOUR ATTORNEY MR. COSBY IS DOING AN EXCELLENT JOB, I HAVE LET YOU TALK, THE PART I AM GOING TO RESTICT THAT WE ARE NOT GOING TO GO INTO THIS AREA |
| 10:47:12 AM | DFT | I DID NOT GET ASKED ABOUT BROKEN WINDOW, THIS IS MY LIFE , I FEEL LIKE I AM NOT HAVING A FAIR TRIAL, IF I DID NOT GET ASKED A QUESTION ABOUT SEXUAL ASSAULT |
| 10:48:28 AM | DFT | I LET MAXINE SWARTZ THAT I WAS SEXUALLY ASSAULTED,  ETC |
| 10:49:11 AM | | I TRIED TO EXPLAIN TO DR. FINK , IT IS NOT FAIR I THINK IT IS RELEVENT |
| 10:49:47 AM | COSBY | THERE IS RECORD THAT HE DISCUSSED WITH PSYCOLOGIST OF SEXUAL ASSAULT, THERE IS NO EVIDENCE BEFORE THE HOMICIDE |
| 10:51:54 AM | COURT | WILL GIVE YOU FIVE MINUTES |
| 10:52:21 AM | DFT | WHEN MR. COSBY STATED THAT I WAS MELINGERING , AND PSYCHOLOGIST BELIEVED ME, ABOUT FOSTER CARE I WAS EMBARRASED MY MOTHER KNEW, EXPLAINS WHAT HAPPENED WITH ELADIO |
| 10:54:59 AM | | REGARDING SAM SAIZ HE USED TO GO OVER THERE WHEN HE WAS IN JUNIOR HIGH, ETC. |
| 10:58:18 AM | COURT | I'VE GOT YOUR STORY, AFTER HEARING THE STORY IT IS NOT RELEVENT |

10/10/2013                                                                  2 of 5

ST. VS ALBERT RAMIREZ  CR-07-434                          CR1 CHAMBERS

| Time | Speaker | Note |
|------|---------|------|
| 10:58:56 AM | CHANDLER | ON XEX GONNA ASK THIS COURT FOR ABOUT 10 OR 15 MINUTES WOULD LIKE TO DISCUSS WITH CO COUNSEL, SAID HE HAS NOT TESTIFIED BEFORE, I RENEW MY |
| 11:00:15 AM | COSBY | IT WAS NOT A JURY TRIAL IT WAS A BENCH TRIAL, HE BATTERED A TRANSPORT OFFICER |
| 11:01:15 AM | COURT | IF XEX TRIGGERS I WILL CHANGE MY RULING |
| 11:01:44 AM | RECESS | |
| 3:44:06 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY, DFT AND ALL PARTIES PRESENT |
| 3:44:27 PM | CHANDLER | DEFENSE HAS RESTED AND HAVE GIVEN US A COUPLE OF INSTRUCTIONS GUILTY BUT MENTALLY ILL, HE IS ATTEMPTING TO RAISE COMPETENCY, OUR REBUTTAL WITNESSES ARE GOING TO TESTIFY THAT THEY HAVE EXAMINED THE DFT, ETC. |
| 3:45:47 PM | COURT | HAVE NOT SEEN A DFT THE WAY THIS TRIAL HAS UNFOLDED |
| 3:46:20 PM | CHANDLER | WE HAVE CASELAW |
| 3:46:30 PM | COSBY | I AM NOT GOING TO SUBMIT A COMPETENCY INSTRUCTION, |
| 3:46:46 PM | CHANDLER | WE ARE NOT OBJECTING, THE ONLY MENTAL ILLNESS THAT PROBABLY COULD HAVE BEEN TESTIFIED, DFT TOOK STAND AND HE DID NOT RAISE ISSUE |
| 3:47:42 PM | COSBY | THE GBMI WAS AVAILABLE, BUT THAT DOES NOT DEPRIVE HIM OF THE RIGHT TO HAVE IT SUBMITTETD, GBMI VERDICT IS NOT SOMETHING TO GIVE, HE IS ENTITLED WE HAVE TENDERED IT, |
| 3:48:58 PM | COSBY | OPPOSES TO REBUTTAL WITNESSES BEING CALLED |
| 3:49:17 PM | COURT | BASIS UPON |
| 3:49:34 PM | MORRIS | THEY WERE CALLED , THEY ALSO CAN TESTIFY AS TO THEIR OPINION |
| 3:50:52 PM | | HE LISTED BOTH OF THESE DOCTORS, HE HAS NOT LISTED DR. SWARTZ |
| 3:51:10 PM | CHANDLER | YOU CANNOT BRING IN AN EXPERT YOU HAVE NOT DISCLOSED |
| 3:51:27 PM | COURT | AS A PRACTICAL MATTER WHAT YOU DO IN YOUR INSTRUCTIONS YOU HAVE A GUILTY AND GUILTY BUT MENTALLY ILL, |
| 3:52:06 PM | COSBY | WE ARE NOT GOING TO ASK FOR SELF DEFENSE, WILL WITHDRAW BECAUSE OF MENTAL ILLNESS OR DEFECT |
| 3:52:52 PM | OFF RECORD | |

ST. VS ALBERT RAMIREZ  CR-07-434                    CR1 CHAMBERS

| Time | Speaker | Note |
|---|---|---|
| 3:54:07 PM | CHANDLER | GOING TO ASK FOR A RULING FROM THIS COURT IF DEFENSE IS GOING TO ALLOW SUR REBUTTAL |
| 3:54:50 PM | COURT | YOU TAKE POSITION THAT HE IS PRECLUDED, THE COURT HAS LEE WAY |
| 3:55:42 PM | COSBY | YOU ARE CALLING THEM ON REBUTTAL |
| 3:56:04 PM | COURT | I DO NEED TO REMIND EVERYBODY THAT I EXCEPT PLEAS |
| 3:56:17 PM | MORRIS | RESPONDS |
| 3:56:36 PM | COSBY | THERE HAS BEEN NO DISCLOSURE, IF THEY CALL I WILL CALL MS. SWARTZ ON SIR REBUTTAL, LAST FINDING I HAD HE WAS COMPETENT, I AM WITHDRAWING COMPETENCY, AND IF I |
| 3:58:39 PM | COSBY | HE NEVER EXPRESSED ANY HATRED TO PLAN A MURDER |
| 3:59:02 PM | CHANDLER | IF WE CALL OUR EXPERTS |
| 3:59:11 PM | COURT | IT IS A MATTER OF JUSTICE |
| 3:59:32 PM | COURT | WE ARE NOT IN THE KIND OF SITUATION WHERE YOU HAVE A SURPRISE |
| 3:59:55 PM | CHANDLER | WE DID NOT DROP IT JUST NOW, |
| 4:00:09 PM | COURT | THOSE REPORTS ARE AGED |
| 4:01:04 PM | CHANDLER | WHAT HE IS DOING TODAY |
| 4:01:23 PM | COSBY | WILL WITHDRAW COMPETENCY AND GUILTY BUT MENTALLY ILL |
| 4:02:03 PM | CHANDLER | HE CAN WITHDRAW BUT HIS ARGUEMTN HIS CLIENT IS SEEING THINGS AND HEARING THINGS |
| 4:02:25 PM | COURT | IF WE TAKE THIS TESTIMONY AND TAKE WILL TAKE |
| 4:03:14 PM | COSBY | MOTION AS FAR AS THE TWO COUNTS AND DOUBLE JEOPARDY ISSUES, IT WOULD BE A VIOLATION , IT WOULD BE ONE ACT OF TAMPERING WITH EVIDENCE, THE PHONE CALL WAS ATTEMPTING |
| 4:05:00 PM | CHANDLER | THE MOTION THAT MR COSBY MADE |
| 4:05:10 PM | COURT | THERE IS EVIDENCE , THAT THE PANTS AND GUN NOT FOUND WERE PLACED AT A DIFFERENCE PLACE, THE FACT THAT THE BRITCHES WERE FOUND AND NOT THE GUN DENIES THE MOTION |
| 4:05:51 PM | CHANDLER | |
| 4:05:59 PM | MORRIS | WHY DOES HE WANT TO RAISE SIR-REBUTTAL |
| 4:06:31 PM | COSBY | SIR-REBUTTAL IS MATTERS |
| 4:06:50 PM | CHANDLER | HE CHOSE NOT TO CALL  WITNESS |
| 4:07:21 PM | COURT | THE RULE AGAINST 90 DAYS, NOT PREPARED RIGHT NOW TO MAKE THE RULE |
| 4:08:21 PM | CHANDLER | ALLOWS US TO PUT ON OUR REBUTTAL |
| 4:08:49 PM | COURT | COMMENTS |

10/10/2013

ST. VS ALBERT RAMIREZ  CR-07-434                          CR1 CHAMBERS

| Time | Speaker | Note |
|------|---------|------|
| 4:09:12 PM | CHANDLER | ONE OF THE DOCTOR'S SAY'S HE IS MELINGERING |
| 4:09:35 PM | COURT | GIVE ME 15 MINUTES |
| 4:09:42 PM | RECESS | |

10/10/2013                                                5 of 5

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

2018 DEC 14  AM 10: 57

*[signature]*

CLERK DISTRICT COURT

ALBERT JOSE RAMIREZ,

      Petitioner,

vs.                         No.    D-0905-CR-2007-00434

STATE OF NEW MEXICO,

      Respondent.

## ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS

THIS MATTER having come before the Court on Petitioner's pro se Petition for Writ of Habeas Corpus filed June 20, 2017 and Petitioner's pro se Petition for Writ of Habeas Corpus filed July 17, 2017 in the above referenced cause number, the Court having appointed the Law Office of the Public Defender to represent the Petitioner, Petitioner's Amended Petition for Writ of Habeas Corpus having been filed through Counsel on May 18, 2018, and the Court limiting its analysis to said Amended Petition, the State's Response to Defendant's Amended Petition for Writ of Habeas Corpus was timely filed on September 10, a Preliminary Disposition Hearing was held on October 29, 2018, Petitioner appeared telephonically with Petitioner's Counsel, Liane E. Kerr, Attorney at Law, the State appeared by and through Brian S. Stover, Chief Deputy District Attorney, this Court having heard argument and taking its decision under advisement, having reviewed the pleadings, researched the issues and the Court being fully advised and after due deliberation, FINDS;

1. Petitioner is represented by Liane E. Kerr, Attorney at Law. Through Counsel, Petitioner filed an Amended Petition for Writ of Habeas Corpus on May 18, 2018.

1

EXHIBIT

Z

2. This Court notes that the New Mexico Supreme Court found that, at least to a portion of the issues raised by Petitioner, that Petitioner retained the ability to bring such a claim via a habeas corpus proceeding. *State v. Ramirez*, 2016 WL 7029226, ¶ 32.

3. This Court entered its Notice that the Court is Not Dismissing Any Portion of the Amended Petition at this Time and Order for State to Respond to Amended Petition for Writ of Habeas Corpus on June 15, 2018.

4. Per Rule 5-802(H)(3) NMRA, the Ninth Judicial District Attorney's Office was ordered to file a response to Petitioner's Amended Petition for Writ of Habeas Corpus within one-hundred and twenty (120) days from the date the Amended Petition for Writ of Habeas Corpus was filed (May 18, 2018).

5. The State's Response to Defendant's Amended Petition for Writ of Habeas Corpus was timely filed on September 10, 2018.

6. This matter was set for a Preliminary Disposition Hearing on October 29, 2018. This Court heard argument from both parties.

7. Following the Preliminary Disposition Hearing, this "court shall then determine whether an evidentiary hearing is required. If it appears that an evidentiary hearing is not required, the court shall dispose of the petition without an evidentiary hearing, but may ask for briefs and/or oral arguments on legal issues." Rule 5-802(H)(4) NMRA. This Court does hereby rule that this matter is ripe for a decision. This Court finds that an evidentiary hearing is not required and no further briefs/argument are required.

8. A review of the file shows that Petitioner was convicted of various offenses including Murder in the First Degree in October, 2013. The Honorable Judge Teddy Hartley presided over the trial in this matter.

9. Petitioner appealed his conviction to the New Mexico Supreme Court. The New Mexico Supreme Court affirmed Petitioner's conviction in its decision, *State v. Ramirez*, 2016 WL 7029226. Said decision is incorporated by reference herein as though fully set forth.

10. In his Amended Petition, Petitioner asks this Court to vacate and set aside Petitioner's criminal convictions on the grounds that he was denied his state and federal constitutional rights to due process and denied the effective assistance of counsel.

11. There are six issues raised in the Amended Petition: 1). Was Petitioner denied his Sixth Amendment right to effective assistance of counsel and his right of compulsory process when his trial attorney failed to call Dr. Maxann Shwartz, Ph.D (hereinafter referred to as "Dr. Shwartz") to testify at either the competency hearing or at trial?; 2). Were Petitioner's convictions obtained in violation of his state and federal right to due process and a fair trial when prior uncharged acts were introduced?; 3). Did it violate Defendant's due process rights when jurors observed him shackled during trial?; 4). Was there sufficient evidence to convict the Defendant?; 5). Was there prosecutorial misconduct during the trial in this matter?; and 6). Was Defendant's right to be free from double jeopardy violated when he was convicted of two counts of Tampering with Evidence?

12. The State's Response addressed all six issues and this Court heard argument related to all six issues at the Preliminary Hearing on October 29, 2018.

13. Petitioner's first argument is that he was denied effective assistance of counsel. This Court notes that Petitioner was originally represented by Brett Carter, Law Office of the Public Defender. Later, Petitioner was represented by Jesse Cosby, Attorney at Law.

14. The issue of ineffective assistance of counsel was directly considered by the Supreme Court. The Supreme Court ruled that "the record before us is insufficient to establish that defense counsel was ineffective or that the decisions made were a plausible trial tactic or strategy. Accordingly, we reject this claim without prejudice to Defendant's ability to bring such a claim via habeas corpus proceedings." *State v. Ramirez*, 2016 WL 7029226 ¶ 32.

15. Through the above described process related to Petitioner's Petition for Writ of Habeas Corpus, this Court finds that Petitioner has been given the opportunity to establish his record related to ineffective assistance of counsel.

16. Petitioner argues that it was ineffective assistance of counsel to not call Dr. Shwartz as a witness at a September 15, 2008 Competency Hearing. Leading up to that hearing, Mr. Carter filed a Notice of Filing to Determine Competency of the Defendant to Stand Trial on January 14, 2008. On March 10, 2018, Petitioner was evaluated by Dr. Schwartz who rendered an opinion that Petitioner was incompetent. The record reflects that Dr. Schwartz spent a matter of hours with the Petitioner during the course of one day. The parties then stipulated that Defendant was incompetent. An Order for Commitment to the New Mexico Behavioral Health Institute at Las Vegas for Treatment to Attain Competency to Stand Trial was entered on April 17, 2008. On June 5, 2008, Petitioner was admitted to the New Mexico Behavioral and Health Institute in Las Vegas, NM, for treatment to attain competency. Petitioner was treated by Dr. Joanne Burness, Ph.D (hereinafter referred to as Dr. Burness). On August 18, 2008, Dr. Burness rendered an opinion that Petitioner was competent to stand trial. The record reflects that Petitioner was at the New Mexico Behavioral and Health Institute from June 5, 2008 through

4

August 19, 2008 (75 days). A Competency Hearing was held on September 15, 2008. Petitioner was represented by Brett Carter. Dr. Burness testified at length about Petitioner's competency and the process that Petitioner went through to attain competency. The Court learned that Dr. Burness evaluated Petitioner and met with him on a number of occasions. She spent additional time evaluating and observing Petitioner. She also learned additional information from others regarding the Petitioner. Amongst other details related to Petitioner's competency, Dr. Burness testified that she believed Petitioner was malingering due to his actions, statements and numerous comments made by Petitioner about getting his charges dismissed once he was found to be incompetent. Petitioner was submitted to testing related specifically to malingering and testimony related to those tests was presented to the Court. Brett Carter cross examined Dr. Burness in great detail. Mr. Carter did not call Dr. Shwartz as a witness. Following the hearing, Petitioner was deemed competent by Judge Hartley. An Order finding Petitioner competent to stand trial was entered on September 16, 2008.

17. This Court notes that Mr. Carter would have been aware that, as of the date of the competency hearing, more than six (6) months had passed since Dr. Shwartz had met with the Petitioner for a matter of hours. Further, Mr. Carter would have been aware that, since Dr. Shwartz met with Petitioner, he had spent seventy-five (75) days at the New Mexico Behavioral and Health Institute being evaluated and observed by Dr. Burness and others. Dr. Burness had spent considerably more time with Petitioner and had subjected him to additional testing/observation related to malingering, etc.

18. This Court finds that Mr. Carter's decision not call Dr. Shwartz as a witness was a strategic decision.

5

19. After an appeal related to the withdrawal of a plea agreement, Jesse Cosby entered his appearance on behalf of the Petitioner in August, 2011.

20. Competency continued to be an issue in this matter including a request by Mr. Cosby to have Petitioner's competency reevaluated in September 22, 2011. Petitioner received further forensic evaluation and treatment at the New Mexico Behavioral and Health Institute. By the time of trial, the parties had stipulated that Petitioner was competent and a Stipulated Order on Competency was filed on March 1, 2013.

21. Trial took place from October 7, 2013 through October 11, 2013. Testimony related to Petitioner's mental health was presented during trial. Petitioner argues that it was ineffective assistance of counsel for Mr. Cosby to not call Dr. Shwartz as a witness during the trial. Some of the factors that may have went into Defense Counsel's decision to not call Dr. Shwartz at trial are reflected on the record. As part of Petitioner's defense, Mr. Cosby elicited testimony from lay witnesses about Petitioner's mental health. In the afternoon on the fourth day of trial, the State began to prepare for up to two expert rebuttal witnesses, including Dr. Burness, to testify regarding Petitioner's mental health and specifically about Petitioner's malingering. Mr. Cosby argued that, if the State called said rebuttal witnesses, it would be necessary for him to call Dr. Shwartz to give surrebuttal testimony. After extensive argument, Defense Counsel began to maneuver in such a way that he would agree not to call Dr. Shwartz if the State did not call their rebuttal witnesses. In the end, Judge Hartley ruled that there would be no rebuttal witnesses and no instruction on competency. Judge Hartley even explained this decision to Petitioner, on the record, outside the presence of the jury.

22. This Court notes that Mr. Cosby would have been aware that, as of the first day of trial, it had been 2,037 days since Dr. Shwartz had met with the Petitioner. Further, Mr. Cosby would have been aware that, in the intervening time since Dr. Shwartz met with Petitioner, he had spent a considerable amount of time at the New Mexico Behavioral and Health Institute being evaluated and observed. Because of this, other mental health professionals had spent considerably more time with Petitioner and had subjected him to additional testing/observation related to malingering, etc. The State argues that Dr. Shwartz's testimony would have been irrelevant.

23. This Court finds that Mr. Cosby's decision not to present Dr. Shwartz's testimony related to Petitioner's mental state at the time of the commission of the offense, malingering, etc. was a strategic decision.

24. This Court notes the record in this matter reflects a statement from Judge Hartley toward the end of the trial that Mr. Cosby had represented Petitioner expertly and that the handling of the mental health expert witnesses was done in a fair way.

25. As noted above, the decisions made by Mr. Carter and Mr. Cosby related to the testimony of Dr. Shwartz were strategic decisions. Counsel's decisions in these areas are trial tactics and counsel is afforded wide latitude as they represented the Petitioner.[1]

---

[1] Courts generally give great deference to counsel's trial decisions, and mistakes of trial strategy or tactics do not render counsel's performance ineffective. The attorney has the basic responsibility for the conduct of the trial on behalf of his client, and he is given wide latitude in the discharge of this responsibility. Effective representation does not require that the defendant prevail or that his lawyer be infallible, and the courts are loathe to judge attorneys on the basis of hindsight. Thus, the mere fact that trial counsel took an action which another attorney might not have taken, or that trial counsel failed to take some action which might have proved advantageous, does not render him incompetent or ineffective. Generally, the attorney's performance will be held ineffective only when there is no tactical or strategic justification for his conduct of the trial. *Ineffective Assistance of Counsel*, 5 Am. Jur. Proof of Facts 2d 267 (Originally published in 1975; updated September, 2015).

26. A defendant is denied effective assistance of counsel only where it can be shown that defense counsel has failed to exercise the skill, judgment and diligence of a reasonably competent defense attorney. *State v. Orona*, 1982-NMSC-002. And the petitioner must also prove that the incompetent representation prejudiced the petitioner's case, rendering the trial court's results unreliable. *State v. Lopez*, 1996-NMSC-036. The main question is whether the allegedly incompetent representation prejudiced the case such that, but for counsel's error, there is a reasonable probability that the result of the conviction proceedings would have been different. *Lopez*, 1996-NMSC-036, ¶ 26. *State v. Baca*, 1997-NMSC-045 (overruled on other grounds).

27. This Court finds that Petitioner has failed to show that, but for counsel's "error," there is a reasonable probability that the result of the conviction proceedings would have been different. This Court finds that the Petitioner cannot show conduct which was not that of a reasonable, competent attorney. This Court is of the opinion that no prejudice to the Petitioner occurred in this regard. After a meaningful and thorough review, this Court finds that the record in this case does not support this claim. This Court finds that, as to this issue, the Petitioner is not entitled to the relief requested in his Amended Petition.

28. Petitioner's second issue is that the district court erred in admitting evidence of prior acts, in violation of Rule 11-402 NMRA. This issue was addressed by the New Mexico Supreme Court in *State v. Ramirez*, 2016 WL 7029226, ¶¶ 44-60. The Supreme Court ruled that Judge Hartley did not abuse his discretion in admitting the evidence of Defendant's prior acts. In his Amended Petition, Petitioner raises the same prior bad acts that were reviewed by the Supreme Court; with the addition of a claim related to the Petitioner attempting to purchase a firearm.

8

29. Petitioner may not seek post-conviction relief for issues raised on appeal that were decided on the merits against the Petitioner. *State v. Gomez*, 1991-NMCA-061. This is the standard rule but it has been modified to allow some leniency in allowing the issue to be brought before the Court subsequent to the appeal. However, for the Court to review the issues, the claim needs to be grounded in facts beyond the record previously presented on appeal and the petitioner must show that the additional facts are those which could not, or customarily would not, be developed in a trial on criminal charges. *Campos v. Bravo*, 2007-NMSC-021. After a thorough review, the Supreme Court affirmed Petitioner's conviction. Petitioner has failed to allege new facts that were not known at the time of trial or appeal. Petitioner has failed to ground his argument in facts beyond the record previously presented on appeal. As to the claim related to the purchase of a firearm, Petitioner has failed to show that any additional facts used to support his Petition are those which could not, or customarily would not, be developed in a trial on criminal charges. This Court finds that, due to the Supreme Court's thorough review of the issue related to Petitioner's prior bad acts, this issue cannot be collaterally attacked through a post-conviction Petition for Writ of Habeas Corpus. After a meaningful and thorough review, this Court finds that the record in this case does not support this claim. This Court finds that, as to this issue, the Petitioner is not entitled to the relief requested in his Amended Petition.

30. Petitioner's third issue is that he was prejudiced when members of the jury may have seen his leg restraints. This issue was addressed by the New Mexico Supreme Court in *State v. Ramirez*, 2016 WL 7029226, ¶¶ 39-43. The Supreme Court ruled that "Because it is unclear whether the jury saw the leg restraints and if they did, there is no evidence

9

that it was anything other than inadvertent or insignificant exposure, this case is not the exceptional type that goes to the violation of the foundation of presumption of innocence. Further, this case does not shock the conscience as Defendant's guilt is supported by substantial evidence in the record, including eyewitness testimony and evidence of Defendant's motive and a pattern of conduct toward Robledo . . . Accordingly, there was no fundamental error by the district court." *Id.*, ¶43

31. Petitioner may not seek post-conviction relief for issues raised on appeal that were decided on the merits against the Petitioner. *State v. Gomez,* 1991-NMCA-061. This is the standard rule but it has been modified to allow some leniency in allowing the issue to be brought before the Court subsequent to the appeal. However, for the Court to review the issues, the claim needs to be grounded in facts beyond the record previously presented on appeal and the petitioner must show that the additional facts are those which could not, or customarily would not, be developed in a trial on criminal charges. *Campos v. Bravo,* 2007-NMSC-021. After a thorough review, the Supreme Court affirmed Petitioner's conviction. Petitioner has failed to allege new facts that were not known at the time of trial or appeal. Petitioner has failed to ground his argument in facts beyond the record previously presented on appeal. As to any additional times that the jury may have seen Petitioner's restraints, Petitioner has failed to show that any additional facts used to support his Petition are those which could not, or customarily would not, be developed in a trial on criminal charges. This Court finds that, due to the Supreme Court's thorough review of the issue related to the jury potentially seeing Petitioner's leg restraints, this issue cannot be collaterally attacked through a post-conviction Petition for

Writ of Habeas Corpus. After a meaningful and thorough review, this Court finds that, as to this issue, the Petitioner is not entitled to the relief requested in his Amended Petition.

32. Petitioner's fourth argument is that there was insufficient evidence to convict him at trial. After a meaningful and thorough review, this Court finds that the record in this case does not support this claim. There was sufficient evidence presented to support Petitioner's convictions. After a meaningful and thorough review, this Court finds that, as to this issue, the Petitioner is not entitled to the relief requested in his Amended Petition.

33. Petitioner's fifth argument is that there was prosecutorial misconduct during the trial in this matter. Petitioner raises comments made by the State about Petitioner being a liar and a menace to society. The Supreme Court, in *State v. Ramirez*, 2016 WL 7029226, ¶ 64, addressed a similar argument raised by Petitioner. The Supreme Court found that, "reviewing all of the comments made, in the context in which they were made, and taking into account those comments' potential effect on the jury, the questions were isolated and minor. Accordingly, the prosecutor's remarks did not deprive Defendant of a fair trial." This Court adopts the Supreme Court's finding. The State's remarks did not deprive the Defendant of a fair trial. After a meaningful and thorough review, this Court finds that the record in this case does not support this claim. This Court finds that, as to this issue, the Petitioner is not entitled to the relief requested in his Amended Petition.

34. Petitioner's sixth argument is that his convictions violate double jeopardy. Petitioner argues that it was error that he he convicted of two counts of tampering with evidence. The Double Jeopardy Clause provides that no one will be "twice put in jeopardy" for the same crime. Principles of double jeopardy protect against both successive prosecutions and multiple punishments for the same offense. *Swafford v. State*, 1991–NMSC–043, ¶ 6.

11

Petitioner alleges that he has received multiple punishments for the same offense. If conduct is separate and distinct, there is no violation of double jeopardy and the inquiry is at an end. *See Id.* ¶ 28. Evidence in this matter showed that one count of tampering with evidence was based upon Petitioner's actions related to a firearm and the other count of tampering was based upon Petitioner's actions related to clothing. This Court finds that each count of tampering with evidence was based upon a distinct act, separated by time and space, and involved different pieces evidence. Therefore, Petitioner's convictions were not premised on unitary conduct, and no double jeopardy violation occurred. *Swafford*, 1991–NMSC–043, ¶ 28. After a meaningful and thorough review, this Court finds that the record in this case does not support this claim. This Court finds that, as to this issue, the Petitioner is not entitled to the relief requested in his Amended Petition.

## DECISION

After examining the Amended Petition, exhibits, prior proceedings, having heard argument from the parties, requiring no further hearing or briefing, and based on the above discussed reasons, this Court finds the Petitioner is not entitled to relief as a matter of law. Therefore, in accordance with Rule 5-802 NMRA, the Petitioner's Amended Petition for Writ of Habeas Corpus filed on May 18, 2018 is DENIED.

HON. DREW D. TATUM
DISTRICT JUDGE, DIVISION II

12

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702


**12-501**

ORIGINAL

> West's New Mexico Statutes Annotated
>   State Court Rules
>     9. Criminal Forms
>       Article 7. Special Proceedings

NMRA, Form 9-702

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO
THE DISTRICT COURT FROM DENIAL OF HABEAS CORPUS

Currentness

[For use with Appellate Rule 12-501 NMRA]

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

AlBERTO RAMIREZ

**Defendant-Petitioner,**

S.Ct. No. S-1-SC-37501

*(leave blank; court will assign)*

vs.

JOHN GAY

*(Name of Warden)*

District Ct. No. ..............................

SUPREME COURT OF NEW MEXICO
FILED

JAN 2 8 2019

**Respondent.**

### PETITION FOR WRIT OF CERTIORARI TO THE
### 9th  DISTRICT COURT OF NEW MEXICO

AlBERTO RAMIREZ

**Defendant**
.
Petitioner pro se     Alberto Ramirez
                      PO Box 1059
                      SANTA Fe NM 87504

> **EXHIBIT**
>
> AA

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

(
*address information*
)

## PETITION FOR WRIT OF CERTIORARI TO THE
____9th____ DISTRICT COURT OF NEW MEXICO

Defendant-Petitioner, appearing pro se and pursuant to the provisions of the New Mexico Constitution, Rule 5-802, and Rule 12-501 NMRA; petitions this Court to issue its Writ of Certiorari to review the order in:

ALBERTO RAMIREZ VS. JOHNSGAJ   D-405-CR-2007-434

_____ *(your name v. Warden's name)*, District Court No. _____ filed on

JAN 27th 2017

## QUESTIONS PRESENTED FOR REVIEW

Whether the district court erred in:

A. denying defendant his Sixth amendment Right to effective Assistance of cowsel and compulsory Process when His attorney refused to call dr makenne Stewartz to testify at either competency Hearing or at trial.

B. Whether petitioners criminal convictions were obtained is violation of His State And federal rights to due process and a fair trial when prior uncharged acts were introduced absent a balancing analysis under Rule 11-404 B?

C. Whether Being Shackled during trial and Jurors observed defendant in shackles as He Fell and denied due process?

d. Sufficiency of Evidence.

E. prosecutorial Misconduct. while prosecutor called defendant a Menace to Society and a liar and Said defendant did Legal Research to get the Jury to buy his story.

........................................................................................................

........................................................................................................

*(Complete only for issues relevant to the petition. Attach additional sheets if necessary.)*

## DESCRIPTION OF THE PROCEEDINGS

**1. Please list the conviction being challenged:**

OPEN court Murder 1st degree murder
2 counts tampering with Evidence
Life plus 6 yrs.

**2. Please list any other petitions you have filed in the New Mexico Supreme Court challenging this conviction (*please include docket numbers and dates*):**

None. I'm not sure.
February 7th 2014 the Supreme
Court of New Mexico state US. Remvr2
S. Ct. No. 34, 576. court issued Jan 18th 2017.

**3. Tell the story of what happened in your court case:**

My Attorney would not speak to ME with deal conflict of interest
would not file motions for change of
venue Even though extensive media
I Fell in front of jury because

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

I was shocked to table Sheriff Counsel, manipulated ME TO say NO I did NOT feel, Trial lawyer said IF I REFUSE to take PLEA He would NOT provide Effective assistance. prior bad acts Evidence adm. teel.

TRIAL lawyer refused to call MAXANN SHWATC to raise lack of capacity or insanity defense

## BASIS FOR GRANTING THIS PETITION FOR WRIT OF CERTIORARI TO THE DISTRICT COURT

The decision of the district court on my petition for writ of habeas corpus, filed pro se, raises significant questions of law under state and federal constitutions: whether the errors below deprived petitioner's rights guaranteed by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments and by New Mexico Constitution, art. II, §§ 13, 14, 15, and 18.

## ARGUMENT

*(Describe your legal claim and cite the law (cases, statutes, constitutional sections) that supports your position. Use plain language.)*

POINT 1:

Petitioner was denied His Sixth amendment Right to counsel Effective assistance. and His right of compulsory process when His attorney failed to called Maxann SwHartz to Rebut the States mis assestions of malingering and to testify at trial about defendant STATE OF miNd

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

Is it INEFFECTIVE assistance to ignore a defendant's right to compulsory process?

**POINT 2:**

Prior bad acts Evidence should not Been admitted introduced and their introduction denied the petitioner His right to A Fair trial.

**POINT 3:**

The petitioner was Likely prejudiced and denied his right to A Fair trial when his fall was a direct result of being Shackled and his attorney did NOT seem to have Jurors polled regarding whether they saw the Shackles or NOT.

*(Attach additional sheets, if necessary.)*

**REQUEST FOR RELIEF**

4. Sufficency of Evidence.
   Jackson. V. Virginia 443,
   U.S. 307 - 317 - 18 1979

5. Prosecutorial Misconduct
   State v. Sosa, 2009 - NMSC
   056 . 35, 147 NM. 351, 223
   P.3d. 348. Defendant was
   called a menace to society
   in closing Argument and
   during cross Examination asked
   about doing legal Research.

6. Double Jeoporay - State. V. degroff
   2006. NMSC - 011, 34, 134 NM
   211, 131 p3d. 61.

Defendant-petitioner requests that this Court issue its writ of certiorari to the district court, and:

(W) remand to the district court for a full hearing on the petition, **OR**

(W) reverse the conviction, **OR**

(W) remand to the district court to correct the sentence, **OR**

(W) (other) _Evidentary Hering or retrial grant Astorney For defendant_

Petitioner asks this Court to grant such relief as may be appropriate. As required by Rule 12-501 NMRA, I am filing **only the original copy** of this petition and I have attached the following:

(W) a copy of my petition for writ of habeas corpus filed in district court, **AND**

(W) a copy of the state's response, if one was filed, **AND**

(W) a copy of the district court's order.

(W) I have not attached the required documents because

_A R_

and ask the Supreme Court to accept this petition without the attachments.

Respectfully submitted, _Alberto Ramirz_
...............................................................................................................
Defendant-Petitioner, pro se
I hereby certify that a copy of this petition was mailed to the Attorney General's Office, P.O. Box 1508, Santa Fe, New Mexico 87504-1508 on this 25ᵗʰ day of _Jan 25th 2019_.

_ALBERTO RAMIREZ 69597_
...............................................................................................................
Defendant-Petitioner, pro se    _P.O. Box 1059_
                                 _Santa Fe. NM. 87504_

**Credits**
[Adopted effective Dec. 31, 2014.]

FORM 9-705. PROCEDURAL ORDER ON PETITION FOR..., NM R CR Form 9-705

# NMRA, Form 9-705, NM R CR Form 9-705
State court rules are current with amendments received through August 1, 2017.

**End of Document**

© 2017 Thomson Reuters. No claim to original U.S. Government Works.



# LIANE E. KERR, LLC

Liane E. Kerr, Attorney at Law

## TRANSMITTAL MEMORANDUM

DATE.        January 10, 2019

TO.          Albert Ramirez, PNM 69597
             c/o PNM
             P.O. Box 1059
             Santa Fe, New Mexico 87504-1059

*Received Jan. 10th 2019*

**RE:**      *State of New Mexico v. Albert Ramirez D-0905-CR-2007-00434*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Enclosed please find the following·

### Order Denying Petitioner's Petition for Writ of Habeas

Please:

\_\_\_\_\_        File and return endorsed copy to this office.

\_\_\_\_\_        Sign and return to this office

\_\_\_\_\_        Check in the amount of $\_\_\_\_\_ for

\_\_\_\_\_        Per your request

\_\_X\_\_        For your information.

\_\_\_\_\_        Please contact the office to schedule an appointment.

\_\_\_\_\_        Pay vendor directly.

\_\_\_\_\_        Other:

Sincerely,

Tarell Greene
Legal Assistant to
LIANE E. KERR LLC

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

2018 DEC 14  AM 10: 57

~~Awdly Droups~~
CLERK DISTRICT COURT

ALBERT JOSE RAMIREZ,

Petitioner,

vs

No.    D-0905-CR-2007-00434

STATE OF NEW MEXICO,

Respondent.

RECEIVED
JAN 1 0 2019
By

## ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS

THIS MATTER having come before the Court on Petitioner's pro se Petition for Writ of Habeas Corpus filed June 20, 2017 and Petitioner's pro se Petition for Writ of Habeas Corpus filed July 17, 2017 in the above referenced cause number, the Court having appointed the Law Office of the Public Defender to represent the Petitioner, Petitioner's Amended Petition for Writ of Habeas Corpus having been filed through Counsel on May 18, 2018, and the Court limiting its analysis to said Amended Petition, the State's Response to Defendant's Amended Petition for Writ of Habeas Corpus was timely filed on September 10, a Preliminary Disposition Hearing was held on October 29, 2018, Petitioner appeared telephonically with Petitioner's Counsel, Liane E. Kerr, Attorney at Law, the State appeared by and through Brian S. Stover, Chief Deputy District Attorney, this Court having heard argument and taking its decision under advisement, having reviewed the pleadings, researched the issues and the Court being fully advised and after due deliberation, FINDS,

1    Petitioner is represented by Liane E. Kerr, Attorney at Law. Through Counsel, Petitioner filed an Amended Petition for Writ of Habeas Corpus on May 18, 2018

1

2. This Court notes that the New Mexico Supreme Court found that, at least to a portion of the issues raised by Petitioner, that Petitioner retained the ability to bring such a claim via a habeas corpus proceeding. *State v. Ramirez*, 2016 WL 7029226, ¶ 32.

3. This Court entered its Notice that the Court is Not Dismissing Any Portion of the Amended Petition at this Time and Order for State to Respond to Amended Petition for Writ of Habeas Corpus on June 15, 2018.

4. Per Rule 5-802(H)(3) NMRA, the Ninth Judicial District Attorney's Office was ordered to file a response to Petitioner's Amended Petition for Writ of Habeas Corpus within one-hundred and twenty (120) days from the date the Amended Petition for Writ of Habeas Corpus was filed (May 18, 2018).

5. The State's Response to Defendant's Amended Petition for Writ of Habeas Corpus was timely filed on September 10, 2018.

6. This matter was set for a Preliminary Disposition Hearing on October 29, 2018. This Court heard argument from both parties.

7. Following the Preliminary Disposition Hearing, this "court shall then determine whether an evidentiary hearing is required. If it appears that an evidentiary hearing is not required, the court shall dispose of the petition without an evidentiary hearing, but may ask for briefs and/or oral arguments on legal issues." Rule 5-802(H)(4) NMRA. This Court does hereby rule that this matter is ripe for a decision. This Court finds that an evidentiary hearing is not required and no further briefs/argument are required.

8. A review of the file shows that Petitioner was convicted of various offenses including Murder in the First Degree in October, 2013. The Honorable Judge Teddy Hartley presided over the trial in this matter.

2

9. Petitioner appealed his conviction to the New Mexico Supreme Court. The New Mexico Supreme Court affirmed Petitioner's conviction in its decision, *State v. Ramirez*, 2016 WL 7029226. Said decision is incorporated by reference herein as though fully set forth.

10. In his Amended Petition, Petitioner asks this Court to vacate and set aside Petitioner's criminal convictions on the grounds that he was denied his state and federal constitutional rights to due process and denied the effective assistance of counsel.

11. There are six issues raised in the Amended Petition: 1). Was Petitioner denied his Sixth Amendment right to effective assistance of counsel and his right of compulsory process when his trial attorney failed to call Dr. Maxann Shwartz, Ph.D (hereinafter referred to as "Dr. Shwartz") to testify at either the competency hearing or at trial?; 2). Were Petitioner's convictions obtained in violation of his state and federal right to due process and a fair trial when prior uncharged acts were introduced?; 3). Did it violate Defendant's due process rights when jurors observed him shackled during trial?; 4). Was there sufficient evidence to convict the Defendant?; 5). Was there prosecutorial misconduct during the trial in this matter?; and 6). Was Defendant's right to be free from double jeopardy violated when he was convicted of two counts of Tampering with Evidence?

12 The State's Response addressed all six issues and this Court heard argument related to all six issues at the Preliminary Hearing on October 29, 2018.

13. Petitioner's first argument is that he was denied effective assistance of counsel. This Court notes that Petitioner was originally represented by Brett Carter, Law Office of the Public Defender. Later, Petitioner was represented by Jesse Cosby, Attorney at Law.

3

14. The issue of ineffective assistance of counsel was directly considered by the Supreme Court. The Supreme Court ruled that "the record before us is insufficient to establish that defense counsel was ineffective or that the decisions made were a plausible trial tactic or strategy. Accordingly, we reject this claim without prejudice to Defendant's ability to bring such a claim via habeas corpus proceedings." *State v. Ramirez*, 2016 WL 7029226 ¶ 32.

15 Through the above described process related to Petitioner's Petition for Writ of Habeas Corpus, this Court finds that Petitioner has been given the opportunity to establish his record related to ineffective assistance of counsel.

16 Petitioner argues that it was ineffective assistance of counsel to not call Dr. Shwartz as a witness at a September 15, 2008 Competency Hearing. Leading up to that hearing, Mr. Carter filed a Notice of Filing to Determine Competency of the Defendant to Stand Trial on January 14, 2008. On March 10, 2018, Petitioner was evaluated by Dr. Schwartz who rendered an opinion that Petitioner was incompetent. The record reflects that Dr. Schwartz spent a matter of hours with the Petitioner during the course of one day. The parties then stipulated that Defendant was incompetent. An Order for Commitment to the New Mexico Behavioral Health Institute at Las Vegas for Treatment to Attain Competency to Stand Trial was entered on April 17, 2008. On June 5, 2008, Petitioner was admitted to the New Mexico Behavioral and Health Institute in Las Vegas, NM, for treatment to attain competency. Petitioner was treated by Dr. Joanne Burness, Ph.D (hereinafter referred to as Dr. Burness). On August 18, 2008, Dr. Burness rendered an opinion that Petitioner was competent to stand trial. The record reflects that Petitioner was at the New Mexico Behavioral and Health Institute from June 5, 2008 through

4

August 19, 2008 (75 days). A Competency Hearing was held on September 15, 2008. Petitioner was represented by Brett Carter. Dr. Burness testified at length about Petitioner's competency and the process that Petitioner went through to attain competency. The Court learned that Dr. Burness evaluated Petitioner and met with him on a number of occasions. She spent additional time evaluating and observing Petitioner. She also learned additional information from others regarding the Petitioner. Amongst other details related to Petitioner's competency, Dr. Burness testified that she believed Petitioner was malingering due to his actions, statements and numerous comments made by Petitioner about getting his charges dismissed once he was found to be incompetent. Petitioner was submitted to testing related specifically to malingering and testimony related to those tests was presented to the Court. Brett Carter cross examined Dr. Burness in great detail. Mr. Carter did not call Dr. Shwartz as a witness. Following the hearing, Petitioner was deemed competent by Judge Hartley. An Order finding Petitioner competent to stand trial was entered on September 16, 2008.

17 This Court notes that Mr. Carter would have been aware that, as of the date of the competency hearing, more than six (6) months had passed since Dr. Shwartz had met with the Petitioner for a matter of hours. Further, Mr. Carter would have been aware that, since Dr. Shwartz met with Petitioner, he had spent seventy-five (75) days at the New Mexico Behavioral and Health Institute being evaluated and observed by Dr. Burness and others. Dr Burness had spent considerably more time with Petitioner and had subjected him to additional testing/observation related to malingering, etc.

18. This Court finds that Mr. Carter's decision not call Dr. Shwartz as a witness was a strategic decision.

5

19  After an appeal related to the withdrawal of a plea agreement, Jesse Cosby entered his appearance on behalf of the Petitioner in August, 2011.

20. Competency continued to be an issue in this matter including a request by Mr. Cosby to have Petitioner's competency reevaluated in September 22, 2011. Petitioner received further forensic evaluation and treatment at the New Mexico Behavioral and Health Institute. By the time of trial, the parties had stipulated that Petitioner was competent and a Stipulated Order on Competency was filed on March 1, 2013.

21. Trial took place from October 7, 2013 through October 11, 2013. Testimony related to Petitioner's mental health was presented during trial. Petitioner argues that it was ineffective assistance of counsel for Mr. Cosby to not call Dr. Shwartz as a witness during the trial. Some of the factors that may have went into Defense Counsel's decision to not call Dr. Shwartz at trial are reflected on the record. As part of Petitioner's defense, Mr. Cosby elicited testimony from lay witnesses about Petitioner's mental health. In the afternoon on the fourth day of trial, the State began to prepare for up to two expert rebuttal witnesses, including Dr. Burness, to testify regarding Petitioner's mental health and specifically about Petitioner's malingering. Mr. Cosby argued that, if the State called said rebuttal witnesses, it would be necessary for him to call Dr. Shwartz to give surrebuttal testimony. After extensive argument, Defense Counsel began to maneuver in such a way that he would agree not to call Dr. Shwartz if the State did not call their rebuttal witnesses. In the end, Judge Hartley ruled that there would be no rebuttal witnesses and no instruction on competency. Judge Hartley even explained this decision to Petitioner, on the record, outside the presence of the jury.

6

22. This Court notes that Mr. Cosby would have been aware that, as of the first day of trial, it had been 2,037 days since Dr. Shwartz had met with the Petitioner. Further, Mr. Cosby would have been aware that, in the intervening time since Dr. Shwartz met with Petitioner, he had spent a considerable amount of time at the New Mexico Behavioral and Health Institute being evaluated and observed. Because of this, other mental health professionals had spent considerably more time with Petitioner and had subjected him to additional testing/observation related to malingering, etc. The State argues that Dr. Shwartz's testimony would have been irrelevant.

23 This Court finds that Mr. Cosby's decision not to present Dr. Shwartz's testimony related to Petitioner's mental state at the time of the commission of the offense, malingering, etc. was a strategic decision.

24. This Court notes the record in this matter reflects a statement from Judge Hartley toward the end of the trial that Mr. Cosby had represented Petitioner expertly and that the handling of the mental health expert witnesses was done in a fair way.

25. As noted above, the decisions made by Mr. Carter and Mr. Cosby related to the testimony of Dr. Shwartz were strategic decisions. Counsel's decisions in these areas are trial tactics and counsel is afforded wide latitude as they represented the Petitioner.[1]

---

[1] Courts generally give great deference to counsel's trial decisions, and mistakes of trial strategy or tactics do not render counsel's performance ineffective. The attorney has the basic responsibility for the conduct of the trial on behalf of his client, and he is given wide latitude in the discharge of this responsibility. Effective representation does not require that the defendant prevail or that his lawyer be infallible, and the courts are loathe to judge attorneys on the basis of hindsight. Thus, the mere fact that trial counsel took an action which another attorney might not have taken, or that trial counsel failed to take some action which might have proved advantageous, does not render him incompetent or ineffective. Generally, the attorney's performance will be held ineffective only when there is no tactical or strategic justification for his conduct of the trial. *Ineffective Assistance of Counsel*, 5 Am. Jur. Proof of Facts 2d 267 (Originally published in 1975; updated September, 2015).

7

26. A defendant is denied effective assistance of counsel only where it can be shown that defense counsel has failed to exercise the skill, judgment and diligence of a reasonably competent defense attorney. *State v. Orona*, 1982-NMSC-002. And the petitioner must also prove that the incompetent representation prejudiced the petitioner's case, rendering the trial court's results unreliable. *State v. Lopez*, 1996-NMSC-036. The main question is whether the allegedly incompetent representation prejudiced the case such that, but for counsel's error, there is a reasonable probability that the result of the conviction proceedings would have been different. *Lopez*, 1996-NMSC-036, ¶ 26. *State v. Baca*, 1997-NMSC-045 (overruled on other grounds).

27 This Court finds that Petitioner has failed to show that, but for counsel's "error," there is a reasonable probability that the result of the conviction proceedings would have been different. This Court finds that the Petitioner cannot show conduct which was not that of a reasonable, competent attorney. This Court is of the opinion that no prejudice to the Petitioner occurred in this regard. After a meaningful and thorough review, this Court finds that the record in this case does not support this claim. This Court finds that, as to this issue, the Petitioner is not entitled to the relief requested in his Amended Petition.

28. Petitioner's second issue is that the district court erred in admitting evidence of prior acts, in violation of Rule 11-402 NMRA. This issue was addressed by the New Mexico Supreme Court in *State v. Ramirez*, 2016 WL 7029226, ¶¶ 44-60. The Supreme Court ruled that Judge Hartley did not abuse his discretion in admitting the evidence of Defendant's prior acts In his Amended Petition, Petitioner raises the same prior bad acts that were reviewed by the Supreme Court; with the addition of a claim related to the Petitioner attempting to purchase a firearm.

8

29. Petitioner may not seek post-conviction relief for issues raised on appeal that were decided on the merits against the Petitioner. *State v. Gomez*, 1991-NMCA-061. This is the standard rule but it has been modified to allow some leniency in allowing the issue to be brought before the Court subsequent to the appeal. However, for the Court to review the issues, the claim needs to be grounded in facts beyond the record previously presented on appeal and the petitioner must show that the additional facts are those which could not, or customarily would not, be developed in a trial on criminal charges. *Campos v Bravo*, 2007-NMSC-021. After a thorough review, the Supreme Court affirmed Petitioner's conviction. Petitioner has failed to allege new facts that were not known at the time of trial or appeal. Petitioner has failed to ground his argument in facts beyond the record previously presented on appeal. As to the claim related to the purchase of a firearm, Petitioner has failed to show that any additional facts used to support his Petition are those which could not, or customarily would not, be developed in a trial on criminal charges. This Court finds that, due to the Supreme Court's thorough review of the issue related to Petitioner's prior bad acts, this issue cannot be collaterally attacked through a post-conviction Petition for Writ of Habeas Corpus. After a meaningful and thorough review, this Court finds that the record in this case does not support this claim. This Court finds that, as to this issue, the Petitioner is not entitled to the relief requested in his Amended Petition.

30. Petitioner's third issue is that he was prejudiced when members of the jury may have seen his leg restraints. This issue was addressed by the New Mexico Supreme Court in *State v Ramirez*, 2016 WL 7029226, ¶¶ 39-43. The Supreme Court ruled that "Because it is unclear whether the jury saw the leg restraints and if they did, there is no evidence

9

that it was anything other than inadvertent or insignificant exposure, this case is not the exceptional type that goes to the violation of the foundation of presumption of innocence. Further, this case does not shock the conscience as Defendant's guilt is supported by substantial evidence in the record, including eyewitness testimony and evidence of Defendant's motive and a pattern of conduct toward Robledo . . . Accordingly, there was no fundamental error by the district court." *Id.*, ¶43

31 Petitioner may not seek post-conviction relief for issues raised on appeal that were decided on the merits against the Petitioner. *State v. Gomez,* 1991-NMCA-061. This is the standard rule but it has been modified to allow some leniency in allowing the issue to be brought before the Court subsequent to the appeal. However, for the Court to review the issues, the claim needs to be grounded in facts beyond the record previously presented on appeal and the petitioner must show that the additional facts are those which could not, or customarily would not, be developed in a trial on criminal charges. *Campos v. Bravo,* 2007-NMSC-021. After a thorough review, the Supreme Court affirmed Petitioner's conviction. Petitioner has failed to allege new facts that were not known at the time of trial or appeal. Petitioner has failed to ground his argument in facts beyond the record previously presented on appeal. As to any additional times that the jury may have seen Petitioner's restraints, Petitioner has failed to show that any additional facts used to support his Petition are those which could not, or customarily would not, be developed in a trial on criminal charges. This Court finds that, due to the Supreme Court's thorough review of the issue related to the jury potentially seeing Petitioner's leg restraints, this issue cannot be collaterally attacked through a post-conviction Petition for

Writ of Habeas Corpus. After a meaningful and thorough review, this Court finds that, as to this issue, the Petitioner is not entitled to the relief requested in his Amended Petition.

32. Petitioner's fourth argument is that there was insufficient evidence to convict him at trial. After a meaningful and thorough review, this Court finds that the record in this case does not support this claim. There was sufficient evidence presented to support Petitioner's convictions. After a meaningful and thorough review, this Court finds that, as to this issue, the Petitioner is not entitled to the relief requested in his Amended Petition.

33. Petitioner's fifth argument is that there was prosecutorial misconduct during the trial in this matter. Petitioner raises comments made by the State about Petitioner being a liar and a menace to society. The Supreme Court, in *State v. Ramirez*, 2016 WL 7029226, ¶ 64, addressed a similar argument raised by Petitioner. The Supreme Court found that, "reviewing all of the comments made, in the context in which they were made, and taking into account those comments' potential effect on the jury, the questions were isolated and minor. Accordingly, the prosecutor's remarks did not deprive Defendant of a fair trial." This Court adopts the Supreme Court's finding. The State's remarks did not deprive the Defendant of a fair trial. After a meaningful and thorough review, this Court finds that the record in this case does not support this claim. This Court finds that, as to this issue, the Petitioner is not entitled to the relief requested in his Amended Petition.

34 Petitioner's sixth argument is that his convictions violate double jeopardy. Petitioner argues that it was error that he be convicted of two counts of tampering with evidence The Double Jeopardy Clause provides that no one will be "twice put in jeopardy" for the same crime. Principles of double jeopardy protect against both successive prosecutions and multiple punishments for the same offense. *Swafford v. State*, 1991–NMSC–043, ¶ 6.

Petitioner alleges that he has received multiple punishments for the same offense. If conduct is separate and distinct, there is no violation of double jeopardy and the inquiry is at an end. *See Id.* ¶ 28. Evidence in this matter showed that one count of tampering with evidence was based upon Petitioner's actions related to a firearm and the other count of tampering was based upon Petitioner's actions related to clothing. This Court finds that each count of tampering with evidence was based upon a distinct act, separated by time and space, and involved different pieces evidence. Therefore, Petitioner's convictions were not premised on unitary conduct, and no double jeopardy violation occurred. *Swafford,* 1991–NMSC–043, ¶ 28. After a meaningful and thorough review, this Court finds that the record in this case does not support this claim. This Court finds that, as to this issue, the Petitioner is not entitled to the relief requested in his Amended Petition.

## DECISION

After examining the Amended Petition, exhibits, prior proceedings, having heard argument from the parties, requiring no further hearing or briefing, and based on the above discussed reasons, this Court finds the Petitioner is not entitled to relief as a matter of law. Therefore, in accordance with Rule 5-802 NMRA, the Petitioner's Amended Petition for Writ of Habeas Corpus filed on May 18, 2018 is DENIED.

HON. DREW D. TATUM
DISTRICT JUDGE, DIVISION II

12

S·1·SC- 37501

**STATE OF NEW MEXICO**

IN THE NINTH JUDICIAL DISTRICT COURT

COUNTY OF CURRY

**STATE OF NEW MEXICO,**

2019 SEP 10 PM 2:06

*[signature]*

FILED DISTRICT COURT

|   |   |   |
|---|---|---|
| | Plaintiff, | |
| vs. | | |

*Exhibits*

**ALBERT RAMIREZ,**    SUPREME COURT OF NEW MEXICO    No. D-0905-CR-200700434
FILED

Defendant.    JAN 28 2019

*[signature]*

**STATE'S RESPONSE**

**TO DEFENDANT'S AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

COMES NOW the State of New Mexico by and through her District Attorney for the 9th Judicial District, Andrea Reeb, and respectfully requests this honorable court to deny the defendant's petition for a writ of Habeas Corpus and in support of this request would offer the following:

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .................................................................................................3

**ARGUMENT** ..........................................................................................................................5

I.    PETITIONER'S TRIAL ATTORNEY MADE STRATEGIC AND TACTICAL DECISIONS DURING TRIAL, THEREFORE THERE IS NO VIOLATION OF INEFFECTIVE ASSISTANCE OF COUNSEL OR OF THE COMPULSORY PROCESS ........................................................................................................5

1

II.     PETITIONER'S PRIOR ACTS INTRODUCED DURING TRIAL WERE
        RELEVANT AND RELATED TO THE STATE'S BURDEN OF PROVING
        MOTIVE AND/OR INTENT TO MURDER THE VICTIM ....................................10

III.    THE SHACKLED PETITIONER WAS NOT PREJUDICED WHEN HE FELL
        BECAUSE ALL PARTIES AGREED THAT THE JURY DID NOT SEE THE
        RESTRAINTS AND THE  COURT REMEDIED IT FROM BEING AN FUTURE
        ISSUE BY UNSHACKLING PETITIONER'S ANKLES AFTER THE FALL........12

IV.     THE STATE MET ITS BURDEN BY PROVING BEYOND A REAOSNABLE
        DOUBT THAT EVERY ELEMENT OF TAMPERING WITH EVIDENCE WAS
        PROVEN TO CONVICT PETITIONER AT TRIAL ...............................................13

V.      THE STATE DID NOT COMMIT PROSECUTORIAL MISCONDUCT BECAUSE
        THE STATEMENTS USED IN CLOSING WERE BASED ON EVIDENCE
        ADMITTED DURING TRIAL .............................................................................14

VI.     DISTRICT COURT FINDS THAT DOUBLE JEOPRARY IS NOT RAISED WHEN
        THE SAME OFFENSE IS CHARGED FOR TWO DIFFERENT INSTANCES......16

CONCLUSION ............................................................................................................17

## TABLE OF AUTHORITIES

**NEW MEXICO CASES:**

State of Belanger, 2009 NMSC 025

Patterson v. Lemaster, 2001 NMCA 051

Churchman v. Dorsey, 1996 NMCA 033

State v. Cordova, 2016 NMCA 019

State v. Manuelito, 1993 NMCA 045

Duncan v. Kerby, 1993 NMSC 011

State v. Jacobs, 2000 NMSC 026

State v. Jett, 1991 NMSC 011

State v. Price, 1986 NMCA 036

State v. Dietrich, 2009 NMCA 031

State v. Flores, 2010 NMSC 002

State v. Rojo, 1999 NMSC 001

State v. Johnson, 2010 NMSC 016

State v. Sosa, 2009 NMSC 056

State v. Smith, 2001 NMSC 004

State v. Herrera, 1974 NMCA 068

Swafford v. State, 1991 NMSC 043

State v. Bernal, 2006 NMSC 050

State v. DeGraff, 2006 NMSC 011

**NEW MEXICO STATUTES:**

NMSA 1978 § 30-2-1(A)

NMSA 31-9-1.5


**NEW MEXICO SUPREME COURT RULES:**

Rule 11-404(B) NMRA

Rule 11-403 NMRA


**FEDERAL CASES:**

Deck v. Missouri, 544 U.S. 622

# ARGUMENT

1. PETITIONER'S TRIAL ATTORNEY MADE STRATEGIC AND TACTICAL DECISIONS DURING TRIAL, THEREFORE THERE IS NEITHER A VIOLATION OF INEFFECTIVE ASSISTANCE OF COUNSEL OR OF THE COMPULSORY PROCESS

### A. Introduction and standard of review.

Petitioner claims that the Sixth Amendment Right to Effective Assistance of Counsel and Right to Compulsory Process, furnish Petitioner with the ability to raise ineffective counsel because Petitioner's trial counsel refused to call an expert witness to testify regarding the Petitioner's mental status. The Appellate Court reviews constitutional issues de novo. State v. Belanger, 2009-NMSC-025, ¶ 8, 146 N.M. 357, 210 P.3d 783.

"The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees not only the right to counsel but "the right to the effective assistance of counsel." Patterson v. LeMaster, 2001-NMSC-013, ¶ 16, 130 N.M. 179, 183, 21 P.3d 1032, 1036. The purpose of guaranteeing effective assistance of counsel is to ensure fairness throughout the course of a criminal case. Id. A prima facie case of ineffective assistance is made by showing that defense counsel's performance fell below the standard of a reasonably competent attorney and, due to the deficient performance, the defense was prejudiced. Id. There are two prongs to assess the counsel's reasonableness. A prima facie case of ineffective assistance of counsel requires that a defendant or petitioner in a habeas corpus proceeding is required to establish (1) petitioner's counsel's performance fell below a reasonably competent attorney, and (2) prejudice resulted from the Counsel's incompetence. See State v. Cordova, 2014-NMCA-081, ¶ 9, 331 P.3d 980, 983; State v. Manuelito, 1993-NMCA-045, ¶ 6, 115 N.M. 394, 395, 851 P.2d 516, 517; Duncan v. Kerby, 1993-NMSC-011, ¶ 10, 115 N.M. 344, 348, 851 P.2d 466, 470. To determine whether there was resulting prejudice, the Court must consider the totality of evidence

presented. <u>State v. Price</u>, 1986 NMCA 036, 104 N.M. 703, 709, 726 P.2d 857, 863 (Ct.App.1986).

There are two additional factors taken into account when performing the evaluation: strategic decisions made by defendant's counsel and unreliability of trial resulting from counsel's prejudice. The Court does not second guess the counsel's strategic decisions. <u>Patterson</u> quoting <u>Churchman v. Dorsey</u>, 1996-NMSC-033, ¶ 18, 122 N.M. 11, 919 P.2d 1076. Second, the prejudice prong is different for defendants who are convicted at trial than defendants who convictions rest on pleas. A defendant at trial must prove that trial counsel's unreasonable performance calls into doubt "the reliability of the trial results." <u>Patterson</u> *quoting* <u>Jacobs</u> at 127.

i.   <u>Meaningful Adversarial Testing.</u>

In this case, Petitioner acknowledges he is required to prove both ineffectiveness of assistance of counsel by showing petitioner's counsel's performance fell below a reasonable competent attorney and showing how the counsel's ineffective performance resulted in prejudice against the petitioner. Since Petitioner was convicted at trial, he must also show how such prejudice resulted in a doubt that the trial results were reliable. However, Petitioner also claims that this is a case of egregious failure by trial counsel and, as a result, the Petitioner is relieved of the burden of proving prejudice. Petitioner argues egregiousness by claiming Petitioner's counsel failed to subject the prosecution's case to meaningful adversarial testing, by way relieving Petition to prove resulting prejudice.

The State disagrees. In <u>State v. Dietrich</u>, 2009-NMCA-031, ¶ 82, 145 N.M. 733, 753, 204 P.3d 748, 768, the court analyzed whether the defendant's counsel failed to subject the prosecution's case to meaningful adversarial testing when counsel did not move for a mistrial when it discovered the alleged victim would not be testifying. The court found that because the counsel attempted to impeach the alleged victim's statements brought out as hearsay through one of the State's witnesses, the counsel acted reasonably. The court stated, "counsel's attempt to impeach the alleged victim through a

witness and discover the tenor of the witness's investigation is exactly what defense counsel attempted to do, making that counsel an active participant in the defendant's trial." In addition, the counsel filed pretrial motions, filed a motion to suppress, and participated in hearings arising from his motions.

This case is similar to <u>Dietrich</u>. Petitioner alleges that his counsel was ineffective because he refused to call an expert witness to rebut Petitioner's competency. In 2008, Petitioner raised competency issues and on March 10, 2008. Petitioner was evaluated by Dr. Maxine Shwartz who rendered an opinion that Petitioner was incompetent. The court, ordered the Petitioner to be transported to the New Mexico Behavioral and Health Institute (NMBHI) in Las Vegas, NM, for treatment to attain competency pursuant to § 31-9-1.2 NMSA. On June 5, 2008, Petitioner was admitted to NMBHI, and on August 18, 2008, Dr. Joanne Burness who had evaluated Petitioner, rendered an opinion that Petitioner was competent to stand trial. During a Competency Hearing, Petitioner was deemed competent by the court. Dr. Burness testified during this Hearing. Dr. Shwartz did not.

Petitioner argues that because his counsel did not call Dr. Shwartz as a witness during the hearing and later at trial, that counsel should be deemed ineffective. Petitioner refers to Petitioner's Exhibit J as the "transcript from trial" dating October 9, 2013 where "Dr. Burness from NMBHI testified that she believed the Petitioner was malingering." It is important to clarify that while the Petitioner indicates that Dr. Burness testified to these statements at trial in October 2013, the record would reflect that Dr. Burness did not testify on October 9, 2013 at 2:41:40. In fact, Dr. Burness did not testify at all to the Petitioner's competency during the 2013 trial. The statements made in Petitioner's Exhibit J were made by the trial judge, the Honorable Teddy L. Hartley. This is only one of several errors in the transcript including referring to the trial judge as the Honorable Drew D. Tatum when the trail was presided over by the Honorable Teddy L Hartley.

While Dr. Burness did not testify at the trial, the Doctor did testify during the Competency Hearing, on August 27, 2008, and stated that Petitioner was

7

malingering. The comments in Petitioner's Exhibit J are the trial courts comments regarding his recollection of that hearing.

Petitioner argues its counsel was ineffective because he failed to present Dr. Shwartz's testimony at trial presumable to argue that Petitioner was not malingering. However, at the time of trial, both parties had already stipulated that Petitioner was competent. (Stipulated on January 13, 2013 before the trial in October 2013) (Exhibit 1). The State argues that there would have been no reason, other than to confuse the jurors and delay proceedings, to bring Dr. Shwartz into testify to something, which was already stipulated. Petitioner had already been to Las Vegas, NM and had been treated to competency for trial. There had already been Competency Hearings to establish his competence before the trial took place and counsel for the Petitioner took part in those hearings. Most importantly, the testimony of Dr. Shwartz would be irrelevant at the time of trial. The trial took place October 7 through October 11, 2013. Dr. Shwartz met with the defendant on March 10, 2008. It had been five (5) years six (6) months and twenty seven (27) days between the time that Dr. Shwartz saw the defendant for her report and the trial. Her observations and opinions would have been stale and irrelevant at the time of trial.

In addition, it was clear from the record that in the event that the Petitioner choose to call Dr. Shwartz in the trial, the State would have called Dr. Burness as a rebuttal witness and it was very likely that her opinion that the defendant was malingering would have been admitted into evidence as well. (Exhibit 2) It was only after the State indicated that it intended to call rebuttal witnesses that the defense made the strategic decision not to call Dr. Shwartz. This was trial strategy that prevented the State from being able to call their expert in the trial. Like in <u>Dietrich</u>, the court should find that Petitioner's attorney reasonably acted to further court proceedings. There is no indication or any evidence that trial counsel failed to provide meaningful adversarial testing of the issues.

ii.    <u>Relevance and Strategic Decisions</u>

8

Petitioner argues that since its counsel failed to provide Dr. Shwartz' testimony during the second competency hearing, such counsel's performance should be deemed ineffective. It is the State's contention that the testimony from Dr. Shwartz was irrelevant and the action of trial counsel to not call her for testimony was a strategic decision. After Petitioner's care at the NMBHI, where he was evaluated for more than 60 days by Dr. Burness who monitored his patterns and psychological state of mind, there would be little if any relevance to the evaluation of Dr. Shwartz that was performed before treatment. Dr Shwartz's testimony would have been regarding five months prior to the most updated and current evaluation at that time. Upon a finding that the defendant is competent to proceed in a criminal case, the court shall continue with the criminal proceeding. The most up to date evaluation, then, would be most relevant and helpful for the court to render a decision that the Petitioner was competent and continue with court proceedings.

iii.    Strategic Decisions by Counsel

Petitioner's trial council's decision not to present Shwartz as a witness to testify at the competency hearing was a strategic decision. A trial counsel may make decisions to move forward an argument, and not prolong proceeding with irrelevant, unhelpful information. Rule 11-401 NMSA tests relevance as having a tendency to make a fact more or less probable than it would be without evidence, and the fact is of consequence in determining the action. Calling a witness who has no relevant information would not assist the Court to make a decision. As stated in Patterson, the Court does not second guess the counsel's strategic decisions.

II.    PETITIONER'S PRIOR ACTS INTRODUCED DURING TRIAL WERE RELEVANT AND RELATED TO THE STATE'S BURDEN OF PROVING MOTIVE AND/OR INTENT TO MURDER THE VICTIM

9

Petitioner was charged and convicted of murder in the first degree, pursuant to §30-2-1(A) NMSA. It is the State's burden to prove every element of the crime charged beyond a reasonable doubt. In this case Murder in the first degree required a showing that someone was killed by the defendant, without lawful justification or excuse by any kind of willful, deliberate and premeditated killing. To determine whether the evidence admitted during trial is related to the issues of the case, the State must relate the evidence to the motives and/or intent of the defendant. "Proof of motive sheds light on the likelihood of a defendant's guilty, and intent is an essential element of murder. Evidence that makes motive or intent more of less probable is therefore relevant." State v. Flores, 2010 NMSC 002, 226 P.3d 641. In Flores, the Court stated that although when viewing the evidence in that case in an isolated manner, it might not have concluded motive, when viewing all of the evidence in the totality of the case, the evidence could help the jury determine if the defendant was motivated to hurt or kill the victim. In this case, it is also necessary to view the evidence in light of all of the evidence in the case.

Intent is subjective and is almost always inferred from other facts in the case. Under Rule 11-404(B), evidence of a defendant's prior acts is admissible to show motive. Under Rule 11-403, evidence may be excluded only if its probative value is substantially outweighed by its prejudicial impact, the potential for confusion of issues, or the danger of misleading the jury. Determining whether the prejudicial impact of evidence outweighs its probative value is left to the sound discretion of the trial court. In State v. Rojo, 1999 NMSC 001, the Court ruled that when the evidence presented was found by the trial court to have probative value to assess a theory of motive for the murder committed, the trial court did not abuse their discretion in admitting the evidence.

In this instance, Petitioner argues that the prior acts of violence and rage he displayed toward the victim and Petitioner's mother leading up to the murder were not relevant. The State disagrees. First, it is important to note that the victim in this case, Eladio Pobledo, was residing with the Petitioner's mother.  On multiple instances, Petitioner was violent toward the victim and threatened him, which

10

Petitioner admitted during the testimony at trial. The first act Petitioner argues was not relevant is the broken front window at the victim's home. Petitioner argues that the State could not prove that he broke the window. On October 10, 2013, 1:08:40 PM, Petitioner testified and admitted that he had broken out the window and did not know if his mother called the police on him for doing it. The second act Petitioner argues against being admitted was Petitioner breaking his mother's windshield with crutches. On October 10, 2013PM1:10:12 PM, Petitioner testified and admitted that he had broken out the window and did not know if his mother called the police on him for doing it. One act of violence toward the victim and Petitioner's mother may not point to direct motive, but several instances of violence is relevant to show motive and intent which is a question for the jury.

Lastly, the Petitioner argues that evidence brought in regarding Petitioner visiting a gun shop inquiring about buying a gun was not admissible to prove motive. The State disagrees. Facts that Petitioner searched for a gun at a gun shop was relevant and could have also been used to prove motive and/or intent to inflict serious injury or kill the victim. Less than 24 hours after Petitioner purchased bullets, Petitioner shot and killed the victim execution style in front of the victim's home. It is the determination of the fact finder to evaluate the facts surrounding the case, and determine if such facts conclude the Petitioner murdered the victim intentionally. Facts against the Petitioner may indeed be prejudicial, but until that prejudice substantially outweighs the probative value, they shall be admissible. Since each of these actions on the part of the defendant has probative value the trial court was correct to admit them.

III.    THE SHACKLED PETITIONER WAS NOT PREJUDICED WHEN HE FELL BECAUSE ALL PARTIES AGREED THAT THE JURY DID NOT SEE THE

RESTRAINTS AND THE COURT REMEDIED IT FROM BEING AN FUTURE
ISSUE BY UNSHACKLING PETITIONER'S ANKLES AFTER THE FALL

The Fifth and Fourteenth Amendments prohibit the use of physical restraints
visible to the jury absent a trial court determination, in the exercise of its discretion,
that they are justified by a state interest to a particular trial, including security
concerns. State v. Johnson, 2010-NMSC-016, ¶ 26, 148 N.M. 50, 59, 229 P.3d 523,
532. Where a defendant is restrained in a manner not visible to the jury, prejudice is
not presumed. Id. Generally, a prisoner coming into court for trial is entitled to make
his appearance free of shackles or bonds. However, the defendant's right to appear
free of visible restraints is not absolute. It must be balanced against the state's interest
in maintaining security. Id. The jurors' inadvertent or insignificant exposure to a
defendant in shackles is not sufficiently prejudicial to merit a new trial. In this case, if
the jurors saw anything it would have been brief and inadvertent.

However, the evidence shows that in fact the jury never saw the shackles. A
review of the record indicates that the Petitioner did fall around 3:06:11 P.M. on the
first day of the trial, October 7, 2013. However, when Petitioner fell, all parties
asserted that none of the jurors saw the Petitioner's legs shackled. Petitioner argues
that the Court did not attempt to remedy the possibility that a juror may have seen
Petitioners shackles. However, the Court and the defense attorney were in the best
position to factually know that no juror could have seen the shackles. Questioning
the jurors would only have called more attention to what at most was an inadvertent
moment. In addition, the Court then took action to ensure that there would not be
even an opportunity for a second inadvertent episode. The Court ordered the shackles
off of the Petitioners after the fall to avoid any prejudice against the Petitioner during
the trial, even though all parties, including Defense, agreed that none of the jurors
saw the shackled during the fall.

The Court has stated in State v. Johnson, 2010 NMSC 016, that shackling is
prejudicial when the jury knows the defendant is shackled, and the prosecution failed
to meet its burden of proving beyond a reasonable doubt that the inherently
prejudicial shackling did not contribute to the guilty verdict. Johnson quoting Deck.

That situation is clearly distinguishable from the facts in this case. The jury in Petitioner's trial did not know that he was shackled and did not see his shackles during a fall. Also, the State met its burden of proving Petitioner murdered the victim execution style while he was lying on the ground, thus committing First Degree Murder. There is no way Petitioner could use the fact the jury saw him with shackles to negate all of the evidence and testimony, including his incriminating testimony, to prove that the convicted him because his ankles were shackled.

IV.  THE STATE MET ITS BURDEN BY PROVING BEYOND A REAOSNABLE DOUBT THAT EVERY ELEMENT OF TAMPERING WITH EVIDENCE WAS ESTABLISHED TO CONVICT PETITIONER AT TRIAL

Petitioner argues that the State did not present evidence sufficient to support a finding of guilt beyond a reasonable doubt that Petitioner tampered with evidence. The State disagrees. During testimony, witnesses told the jury that they saw the Petitioner running from the home where he had shot the victim. The State called witnesses to testify that Petitioner ran through an alley near a store called RAGZ2RICHEZ. Investigators found the Petitioner's belongings in a trash bin in the alley. Petitioner also testified to throwing the gun used to murder the victim, as well as his other belongings into the trash can. This evidence supports the conviction for the first count of tampering.

To address the second count of tampering with evidence, the State called Deputy Sandy Loomis to testify at trial. Loomis conducted the investigation after the shooting and during the time Petitioner was in jail after his arrest for the murder. Loomis produced several recorded phone calls Petitioner's made while in the detention facility that clearly proved the Petitioner was tampering with evidence. After Petitioner was arrested, he made calls telling other people to go and collect a gun behind an alleyway. Petitioner made two phone calls on July 15, 2007, one at 18:30 and another at 18:38. On both calls Petitioner was heard telling his "tia" or aunt that "I threw a", "I bought a present, a toy" and then using Spanish saying he placed it behind RAGZ 2 RICHEZ, where you throw the trash. He also asked for Trompas, Tio, or Shorty to go get it. In the second call,

Petitioner requested a male to go get a "Bam Bam" located in the alley of RAGZ 2 RICHEZ.

RAGZ 2 RICHEZ is a store located at 506 West 7th Street. The alley of the store is the same in which Petitioner was seen by witnesses running North after the shooting. The firearm could not be located when investigators returned to locate the gun. On Day 4 of the trial, Petitioner testified to speaking with someone on the prison phone and requesting they go get the gun from the trash can outside of RAGZ 2 RICHEZ. Petitioner also admitted on the stand that he dumped his pants and the gun inside of the dumpster after he fled the scene where he had killed his step father. Petitioner stated the reason why he told someone to go get the gun because he thought that if the police could not locate the gun, he would get out of prison.

Tampering with evidence consists of destroying, changing, hiding, placing or fabricating any physical evidence with intent to prevent the apprehension, prosecution or conviction of any person or to throw suspicion of the commission of a crime upon another. § 30-22-05 NMSA. After the Petitioner testified in trial, his testimony was paramount to the State meeting their burden beyond a reasonable doubt. It could not be clearer to the Court that the State met its burden in proving that the Petitioner committed two counts of tampering with evidence.

V.   THE STATE DID NOT COMMIT PROSECUTORIAL MISCONDUCT BECAUSE THE STATEMENTS USED IN CLOSING WERE BASED ON EVIDENCE ADMITTED DURING TRIAL

Prosecutorial misconduct rises to the level of fundamental error when it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial. To find fundamental error, we must be convinced that the prosecutor's conduct created a reasonable probability that the error was a significant factor in the jury's deliberation in relation to the rest of the evidence before them. We will reverse a jury verdict only "(1) when guilt is so doubtful as to shock the conscience, or (2) when there has been an error in the process implicating the fundamental integrity of the judicial process. However, an isolated, minor impropriety

ordinarily is not sufficient to warrant reversal, because a fair trial is not necessarily a perfect one, State v. Allen, 2000 NMSC 002, ¶ 95,

In assessing whether prosecutorial misconduct has occurred based on statements made by a prosecutor at trial, reviewing courts are to evaluate a prosecutor's challenged statements "objectively in the context of the prosecutor's broader argument and the trial as a whole." State v. Sosa, 2009-NMSC-056, ¶ 26, 147 N.M. 351, 223 P.3d 348. Courts are to start their analysis from the long-accepted proposition that "during closing argument, both the prosecution and defense are permitted wide latitude, and the trial court has wide discretion in dealing with and controlling closing argument. State v. Smith, 2001-NMSC-004, ¶ 38, 130 N.M. 117, 19 P.3d 254. "Remarks by the prosecutor must be based upon the evidence or be in response to the defendant's argument."*Id.* Indeed, "statements having their basis in the evidence, together with reasonable inferences to be drawn wherefrom, are permissible and do not warrant reversal." State v. Herrera, 1972-NMCA-068, ¶ 8, 84 N.M. 46, 499 P.2d 364.

Petitioner argues that when the State's prosecutor called Petitioner a liar and later stated he was a menace to society, it was an egregious shock to the conscious of a reasonable person. The States disagrees. The statement that the Petitioner is a liar was proven through evidence at trial, included Petitioner's own statements made during his testimony. In one instance, the Petitioner stated, "my whole left side is disabled, I can barely walk." However, when the State mentions that he left the scene in less than 30 seconds after murdering the victim, Petitioner affirmed. A menace to society statement, taken as a whole according to the trial was also not egregious. Many witnesses testified to Petitioner having issues getting along with the victim, and Petitioner's mother. Petitioner also admitted during trial he violated a trespass order that forbid him to return to Petitioner's mother's home. Petitioner also admitted to telling various people while in jail to collect evidence after the murder. The statements that Petitioner is a liar and a menace are not egregious to shock the conscience of a reasonable person. Therefore we ask the Court to find the State did not commit prosecutorial misconduct during their closing argument.

VI.    DISTRICT COURT FINDS THAT DOUBLE JEOPRARY IS NOT RAISED WHEN
THE SAME OFFENSE IS CHARGED FOR TWO DIFFERENT INSTANCES.

If defendant commits two discrete acts volatile of same statutory offense, but separated by sufficient indicia of distinctiveness, double jeopardy clause does not preclude court from imposing separate, consecutive punishments for each offense. Swafford v. State, 112 N.M. 2 (1991-NMSC-043). The test is to determine whether the conduct for which there are multiple charges is unitary or distinguishable.

To determine whether two of the same statutory offense occurred, we must undertake a unit-of-prosecution analysis. For unit-of-prosecution challenges, the only basis for dismissal is proof that a suspect is charged with more counts of the same statutory crime than is statutorily authorized. The inquiry is to determine whether the legislature intended multiple punishments for one continuing act. The unit-of-prosecution analysis is done in two steps. First, we review the statutory language for guidance on the unit of prosecution. If the statutory language spells out the unit of prosecution, then we follow the language, and the unit-of-prosecution inquiry is complete. If the language is not clear, then we move to the second step, in which we determine whether a defendant's acts are separated by sufficient "indicia of distinctness" to justify multiple punishments under the same statute. In examining the indicia of distinctness, courts may inquire as to the interests protected by the criminal statute, since the ultimate goal is to determine whether the legislature intended multiple punishments. If the acts are not sufficiently distinct, then the rule of lenity mandates an interpretation that the legislature did not intend multiple punishments, and a defendant cannot be punished for multiple crimes. State v. Bernal, 2006-NMSC-050.

Petitioner argues that the State violated Double Jeopardy when charging him with two counts of Tampering with Evidence. The State opposes this argument. Petitioner does not acknowledge that when leaving the scene of the crime, Petitioner threw clothing and a gun into the trash can near RAGZ 2 RICHEZ. This crime was considered to be the first count of Tampering with Evidence. Then, after being arrested, Petitioner was heard on the prison phone line telling various family members and friends to return to the alleyway to retrieve the gun before the police located the evidence. This is considered another

count of Tampering with Evidence. When asked, during the trial, why he told individuals to retrieve the weapon, Petitioner stated, "I think [they] law enforcement would let me out." Court Transcript October 10, 2013 1:34:56 PM. It is evident in Petitioner's testimony during trial and the acts that Petitioner took immediately after the shooting, Petitioner should be charged with two counts of Tampering with Evidence.

## CONCLUSION

The State respectfully requests this Court to affirm the district court's order dismissing the habeas corpus petition. The Petitioner has not raised any violations on the part of the State that would warrant a reversal of his conviction, or finding any error of the court that tried his case in 2013. It is for this reason and the reasons above, the State respectfully requests that the Court dismiss this petition and affirm the Petitioner's conviction.


Respectfully Submitted,

ANDREA R. REEB
DISTRICT ATTORNEY


I hereby certify that I caused a true and correct copy of this response to opposing counsel on this 10 day of September, 2018.

# Exhibit 1

FEB/28/2013/THU 11:40 AM    jesse r. cosby atty.    FAX No. 5756390384
02/26/2013 10:39 FAX

EXHIBIT 3

STATE OF NEW MEXICO
COUNTY OF CURRY
IN THE NINTH JUDICIAL DISTRICT COURT

STATE OF NEW MEXICO,

Plaintiff,

v.

ALBERT JOSE RAMIREZ,                                No. D-0905-CR-0200700434

Defendant.

2013 MAR -1  PM 3: 54

## STIPULATED ORDER ON COMPETENCY

THIS MATTER having come before the Court, by way of stipulation of the parties, the

State represented by Andrea R. Reeb, Chief Deputy District Attorney, and the defendant

represented by his attorney, Jesse R. Cosby,  Attorney at Law, and said parties having stipulated

to the report dated  1-17-13 , from Dr. Richard T. Fink, Ph.D; the parties agree that the

Defendant is competent to stand trial in this matter;

IT IS HEREBY ORDERED that Defendant is competent to stand trial in this matter, and

that a jury trial shall be scheduled.


TEDDY L. HARTLEY
DISTRICT JUDGE, DIVISION III


Andrea R. Reeb
Chief Deputy District Attorney


Jesse R. Cosby
Attorney for Defense

D.A. No.  11-0539 MC/jwg

# Exhibit 2

Description ST. VS ALBERT RAMIREZ CR-07-434

2013 OCT 10 PM 4:45

THE NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

CAUSE NO:D-0905-CR-2007-00434
JUDGE: TEDDY L. HARTLEY
DATE: OCTOBER 10, 2013

STATE OF NEW MEXICO,
                    Plaintiff / Petitioner,

vs.

ALBERT RAMIREZ,
                Defendant, Respondent,

TYPE OF PROCEEDING: MOTIONS ON DAY 4 OF JURY TRIAL
ATTORNEY FOR PLAINTIFF: MATTHEW CHANDLER, JAROD MORRIS
ATTORNEY FOR DEFENDANT: JESSE COSBY
OTHERS PRESENT:
COURT MONITOR: IRENE J. RODRIGUEZ

NOTICE: This log is not the official record. The official record is the audio cd.
The log is created to assist in locating information on the cd. The log is not a
verbatim record of the proceedings and could contain errors and omissions.

Date 10/10/2013          Location CR1 CHAMBERS

ST. VS ALBERT RAMIREZ  CR-07-434                    CR1 CHAMBERS

| Time | Speaker | Note |
|------|---------|------|
| 10:40:24 AM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY DFT AND ALL PARTIES PRESENT |
| 10:40:41 AM | COSBY | HAS ONE OTHER ISSUE, MY CLIENT HAS TOLD ME THAT HE WAS SEXUALLY ASSAULTED ETC. |
| 10:42:10 AM | | HE WANTS TO TESTIFY THAT MR. ROBLEDO AS WELL AS MR. SAIZ SEXUALLY ASSAULTED HIM |
| 10:42:28 AM | CHANDLER | THERE IS NOTHING THAT SUPPORTS THAT PARTICULAR CLAIM, IT HAS NEVER BEEN REPORTED, WHEN DID THE HAPPENED , IT IS THE TIMELINE, |
| 10:43:36 AM | COSBY | UPON ON HIS FIRST STATEMENT, WHEN MY CLIENT FIRST WENT TO HIS HOUSE MY CLIENT TOLD HIM HE HAD BEEN SEXUALLY ASSAULTED, |
| 10:44:17 AM | COURT | HERE IS THE PROBLEM WE RUN INTO, THE KIND OF THE TIMING, THE COURT IS OF THE OPINION THAT I WILL NOT ALLOW IT, THRE WAS NOTHING TO SUGGEST THAT IN HIS OPENING STATEMENT, IF THE STATE IS OF THE OPINION THAT WE CREATE AN ERROR BY EXCLUDING THIS, I WILL RULE AGAINST IT |
| 10:45:42 AM | DFT | ABOUT THIS MATTER, THE REASON I DID NOT SAY ANYTHING IN MY OPENING STATEMENT |
| 10:46:16 AM | COURT | YOUR ATTORNEY MR. COSBY IS DOING AN EXCELLENT JOB, I HAVE LET YOU TALK, THE PART I AM GOING TO RESTICT THAT WE ARE NOT GOING TO GO INTO THIS AREA |
| 10:47:12 AM | DFT | I DID NOT GET ASKED ABOUT BROKEN WINDOW, THIS IS MY LIFE , I FEEL LIKE I AM NOT HAVING A FAIR TRIAL, IF I DID NOT GET ASKED A QUESTION ABOUT SEXUAL ASSAULT |
| 10:48:28 AM | DFT | I LET MAXINE SWARTZ THAT I WAS SEXUALLY ASSAULTED,  ETC |
| 10:49:11 AM | | I TRIED TO EXPLAIN TO DR, FINK , IT IS NOT FAIR I THINK IT IS RELEVENT |
| 10:49:47 AM | COSBY | THERE IS RECORD THAT HE DISCUSSED WITH PSYCOLOGIST OF SEXUAL ASSAULT, THERE IS NO EVIDENCE BEFORE THE HOMICIDE |
| 10:51:54 AM | COURT | WILL GIVE YOU FIVE MINUTES |
| 10:52:21 AM | DFT | WHEN MR. COSBY STATED THAT I WAS MELINGERING , AND PSYCHOLOGIST BELIEVED ME, ABOUT FOSTER CARE I WAS EMBARRASED MY MOTHER KNEW, EXPLAINS WHAT HAPPENED WITH ELADIO |
| 10:54:59 AM | | REGARDING SAM SAIZ HE USED TO GO OVER THERE WHEN HE WAS IN JUNIOR HIGH, ETC. |
| 10:58:18 AM | COURT | I'VE GOT YOUR STORY, AFTER HEARING THE STORY IT IS NOT RELEVENT |

10/10/2013                                              2 of 5

ST. VS ALBERT RAMIREZ  CR-07-434                          CR1 CHAMBERS

| Time | Speaker | Note |
|------|---------|------|
| 10:58:56 AM | CHANDLER | ON XEX GONNA ASK THIS COURT FOR ABOUT 10 OR 15 MINUTES WOULD LIKE TO DISCUSS WITH CO COUNSEL, SAID HE HAS NOT TESTIFIED BEFORE, I RENEW MY |
| 11:00:15 AM | COSBY | IT WAS NOT A JURY TRIAL IT WAS A BENCH TRIAL, HE BATTERED A TRANSPORT OFFICER |
| 11:01:15 AM | COURT | IF XEX TRIGGERS I WILL CHANGE MY RULING |
| 11:01:44 AM | RECESS | |
| 3:44:06 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY, DFT AND ALL PARTIES PRESENT |
| 3:44:27 PM | CHANDLER | DEFENSE HAS RESTED AND HAVE GIVEN US A COUPLE OF INSTRUCTIONS GUILTY BUT MENTALLY ILL, HE IS ATTEMPTING TO RAISE COMPETENCY, OUR REBUTTAL WITNESSES ARE GOING TO TESTIFY THAT THEY HAVE EXAMINED THE DFT, ETC. |
| 3:45:47 PM | COURT | HAVE NOT SEEN A DFT THE WAY THIS TRIAL HAS UNFOLDED |
| 3:46:20 PM | CHANDLER | WE HAVE CASELAW |
| 3:46:30 PM | COSBY | I AM NOT GOING TO SUBMIT A COMPETENCY INSTRUCTION, |
| 3:46:46 PM | CHANDLER | WE ARE NOT OBJECTING, THE ONLY MENTAL ILLNESS THAT PROBABLY COULD HAVE BEEN TESTIFIED, DFT TOOK STAND AND HE DID NOT RAISE ISSUE |
| 3:47:42 PM | COSBY | THE GBMI WAS AVAILABLE, BUT THAT DOES NOT DEPRIVE HIM OF THE RIGHT TO HAVE IT SUBMITTETD, GBMI VERDICT IS NOT SOMETHING TO GIVE, HE IS ENTITLED WE HAVE TENDERED IT, |
| 3:48:58 PM | COSBY | OPPOSES TO REBUTTAL WITNESSES BEING CALLED |
| 3:49:17 PM | COURT | BASIS UPON |
| 3:49:34 PM | MORRIS | THEY WERE CALLED , THEY ALSO CAN TESTIFY AS TO THEIR OPINION |
| 3:50:52 PM | | HE LISTED BOTH OF THESE DOCTORS, HE HAS NOT LISTED DR. SWARTZ |
| 3:51:10 PM | CHANDLER | YOU CANNOT BRING IN AN EXPERT YOU HAVE NOT DISCLOSED |
| 3:51:27 PM | COURT | AS A PRACTICAL MATTER WHAT YOU DO IN YOUR INSTRUCTIONS YOU HAVE A GUILTY AND GUILTY BUT MENTALLY ILL, |
| 3:52:06 PM | COSBY | WE ARE NOT GOING TO ASK FOR SELF DEFENSE, WILL WITHDRAW BECAUSE OF MENTAL ILLNESS OR DEFECT |
| 3:52:52 PM | OFF RECORD | |

ST. VS ALBERT RAMIREZ  CR-07-434                        CR1 CHAMBERS

| Time | Speaker | Note |
|------|---------|------|
| 3:54:07 PM | CHANDLER | GOING TO ASK FOR A RULING FROM THIS COURT IF DEFENSE IS GOING TO ALLOW SUR REBUTTAL |
| 3:54:50 PM | COURT | YOU TAKE POSITION THAT HE IS PRECLUDED, THE COURT HAS LEE WAY |
| 3:55:42 PM | COSBY | YOU ARE CALLING THEM ON REBUTTAL |
| 3:56:04 PM | COURT | I DO NEED TO REMIND EVERYBODY THAT I EXCEPT PLEAS |
| 3:56:17 PM | MORRIS | RESPONDS |
| 3:56:36 PM | COSBY | THERE HAS BEEN NO DISCLOSURE, IF THEY CALL I WILL CALL MS. SWARTZ ON SIR REBUTTAL, LAST FINDING I HAD HE WAS COMPETENT, I AM WITHDRAWING COMPETENCY, AND IF I |
| 3:58:39 PM | COSBY | HE NEVER EXPRESSED ANY HATRED TO PLAN A MURDER |
| 3:59:02 PM | CHANDLER | IF WE CALL OUR EXPERTS |
| 3:59:11 PM | COURT | IT IS A MATTER OF JUSTICE |
| 3:59:32 PM | COURT | WE ARE NOT IN THE KIND OF SITUATION WHERE YOU HAVE A SURPRISE |
| 3:59:55 PM | CHANDLER | WE DID NOT DROP IT JUST NOW, |
| 4:00:09 PM | COURT | THOSE REPORTS ARE AGED |
| 4:01:04 PM | CHANDLER | WHAT HE IS DOING TODAY |
| 4:01:23 PM | COSBY | WILL WITHDRAW COMPETENCY AND GUILTY BUT MENTALLY ILL |
| 4:02:03 PM | CHANDLER | HE CAN WITHDRAW BUT HIS ARGUEMTN HIS CLIENT IS SEEING THINGS AND HEARING THINGS |
| 4:02:25 PM | COURT | IF WE TAKE THIS TESTIMONY AND TAKE WILL TAKE |
| 4:03:14 PM | COSBY | MOTION AS FAR AS THE TWO COUNTS AND DOUBLE JEOPARDY ISSUES, IT WOULD BE A VIOLATION , IT WOULD BE ONE ACT OF TAMPERING WITH EVIDENCE, THE PHONE CALL WAS ATTEMPTING |
| 4:05:00 PM | CHANDLER | THE MOTION THAT MR COSBY MADE |
| 4:05:10 PM | COURT | THERE IS EVIDENCE , THAT THE PANTS AND GUN NOT FOUND WERE PLACED AT A DIFFERENCE PLACE, THE FACT THAT THE BRITCHES WERE FOUND AND NOT THE GUN DENIES THE MOTION |
| 4:05:51 PM | CHANDLER | |
| 4:05:59 PM | MORRIS | WHY DOES HE WANT TO RAISE SIR-REBUTTAL |
| 4:06:31 PM | COSBY | SIR-REBUTTAL IS MATTERS |
| 4:06:50 PM | CHANDLER | HE CHOSE NOT TO CALL  WITNESS |
| 4:07:21 PM | COURT | THE RULE AGAINST 90 DAYS, NOT PREPARED RIGHT NOW TO MAKE THE RULE |
| 4:08:21 PM | CHANDLER | ALLOWS US TO PUT ON OUR REBUTTAL |
| 4:08:49 PM | COURT | COMMENTS |

10/10/2013

ST. VS ALBERT RAMIREZ  CR-07-434                                    CR1 CHAMBERS

| Time | Speaker | Note |
|------|---------|------|
| 4:09.12 PM | CHANDLER | ONE OF THE DOCTOR'S SAY'S HE IS MELINGERING |
| 4.09:35 PM | COURT | GIVE ME 15 MINUTES |
| 4:09 42 PM | RECESS | |

**STATE OF NEW MEXICO**
**CURRY COUNTY**
**NINTH JUDICIAL DISTRICT COURT**

**ALBERT RAMIREZ,**

        **Petitioner,**

v.                                                **D-0905-CR-2007-00434**

**JAMES MULHERON, warden**

        **Respondent.**

## AMENDED PETITION FOR WRIT OF HABEAS CORPUS

**COMES NOW** the Petitioner, Albert Ramirez, through his counsel Liane E. Kerr, and pursuant to NMRA Rule 5-802 and Article II, Sections 7, 12, 14, 15 and 18 of the New Mexico Constitution and the Fifth, Sixth and Fourteenth Amendments of the United States Constitution; and respectfully submits this Amended Petition for Writ of Habeas Corpus.

Mr. Ramirez respectfully requests that this Honorable Court issue a Writ of Habeas Corpus and vacate, set aside or correct Mr. Ramirez's sentence and order of confinement in D-905-CR-2007-0434 Mr. Ramirez contends that he was denied his state and federal constitutional right to due process and a fair trial because the cumulative effects prevented him from proving his innocence. The following amendments have been made to the pro se petitions filed on March 22, 2017; April 25, 2017; June 20, 2017 and July 17, 2017.

1.      **Place of Confinement:** Mr Ramirez is detained by Warden James Mulheron at the Southern New Mexico Correctional Facility in Dona Ana, NM.

2.      **Nature of Proceedings Resulting in Confinement:** Petitioner was found guilty following a change of plea on the date of his jury trial on January 26, 2009 of two counts of tampering

1

with evidence and first degree murder in the first degree. Petitioner moved to withdraw his plea dn the court denied it; however, the Supreme Court remanded the matter, allowing Petitioner to withdraw his plea. Jury trial was ultimately held on October 10, 2013 and lasted four (4) days, after which Petitioner was found guilty of the murder and tampering charges.

3.    **Judgment and Sentence Resulting in Current Confinement.** Petitioner was sentenced in the Ninth Judicial District Court, Honorable Teddy L. Hartley presiding, on January 8, 2014 to a consecutive sentence on each of the counts: a period of Life on the murder count plus six (6) years for each of the tampering counts in the New Mexico Department of Corrections.

4.    **Direct Appeal.** On February 7, 2014, Petitioner appealed his original conviction to the Supreme Court of New Mexico in *State v Ramirez*, S. Ct. No. 34,576 and a mandate affirming the trial court was issued on January 18, 2017.

5.    **Prior Petitions.** Petitioner filed a Petition for Writ of Habeas Corpus on March 22, 2017; April 25, 2017; June 20, 2017 and July 17, 2017.

6.    **Habeas Representation/Timeliness of Petition:** By Order of the Court, the Public Defender, Amanda Stephenson, entered an appearance on August 27, 2017. Ms. Stephenson filed two requests for extension, one on October 23, 2017 and again on January 19, 2018, making the Petition due on or before April 19, 2018. Due to a conflict, the Pubic Defender's Office recently reassigned the Petitioner's case to Liane E. Kerr, who requested a sixty day extension in order to fully review the case, meet with her client and file the brief. The request was opposed by the State. Consequently, this Petition is filed without fully meeting with Mr. Ramirez.

2

7.    **Relief Requested:** This petition seeks to vacate and set aside Petitioner's criminal

convictions on the grounds that he was denied his state and federal constitutional rights to due process

and denied the effective assistance of counsel.

### ISSUES PRESENTED IN THIS PETITION:

a    Whether Petitioner was denied his sixth amendment right to effective assistance of
counsel and compulsory process when his attorney refused to call Dr Maxann
Shwartz to testify at either the competency hearing or at trial?

b.    Whether Petitioner's criminal convictions were obtained in violation of his state and
federal right to due process and a fair trial when prior uncharged acts were introduced
absent a balancing analysis under Rule 11-404b?

c.    Whether Petitioner was denied his right to due process when jurors observed him
shackled during trial?

### STATEMENT OF FACTS/PROCEDURAL HISTORY

#### A.    Procedural History.

Petitioner was indicted on July 20, 2007 and charged with first degree murder and two counts

of tampering with evidence. **[Exhibit A]**  On January 26, 2009, the first day of his jury trial, Mr.

Ramirez pled guilty to two counts of tampering with evidence and first degree murder in the first

degree, with tampering counts running concurrent to the life sentence.

Mr. Ramirez moved to withdraw his plea on February 25, 2009, a motion the trial court heard

on June 25, 2009, but denied on July 29, 2009  Following an appeal of the denial to withdraw plea,

the New Mexico Supreme Court reversed the denial on July 6, 2011 and remanded for a trial on the

merits which was ultimately held on October 7-11, 2013 where jurors were instructed to find first

degree murder and Petitioner was found guilty of first degree murder. **[Exhibit B]**. Although

Petitioner's plea exposed him to a life sentence only, following trial, Petitioner was sentenced to the

3

life sentence and each tampering count consecutively, earning him an additional six years for a term of life plus six years. **[Exhibit C]**.

## 1)   Facts Regarding Introduction of Prior Bad Acts Evidence

During trial, the State introduced three incidents of bad acts evidence, which Mr. Ramirez maintains was error. Over objection, the State introduced evidence that Mr. Ramirez broke his mother's windshield. **[Exhibit D: Transcript, 10/8/13, 4:03:49-4:08:21]**. Again over objection, the State introduced evidence that the victim's home had been burglarized with the implication that it was Mr. Ramirez who made the entry. **[Exhibit E: Transcript, 10/8/13, 4:14:04; 10/11/13, 8:5526-8:59:31]** A final bad acts reference was introduced when the State called a firearms dealer, who testified that Mr. Ramirez sought to purchase a firearm from him. **[Exhibit F: Transcript, 10/8/13, 4:15:55-4:25:21]**.

## 2)   Facts in Support of Prejudice from Shackles Observation

During a break, as jurors were leaving the courtroom, Mr. Ramirez tripped as a result of wearing shackles. He maintained that jurors observed him fall and saw his shackles as a result. **[Exhibit G: Transcript, 10/7/13, 3:10:07-3:11:12]**.

## 3)   Facts Regarding Petitioner's Competency

A notice to determine competency was filed on January 14, 2008 **[Exhibit H]** and the defendant was evaluated by Dr. Maxann Shwartz and determined incompetent. **[Exhibit I]**[1]. On January 17, 2008, the Defendant was committed to the New Mexico Behavioral Health Institute at

---

[1]   Although confidential, Mr. Ramirez disclosed Dr. Shwartz' report and provided a copy attached to his pro se Petition for Habeas relief and therefore, any concerns about confidentiality are waived.

4

Las Vegas (NMBHI) for a period of three months. **[Exhibit J]**. A hearing was held on September 15, 2008, where Dr. Burness from NMBHI testified that she believed the Petitioner was malingering. **[Exhibit K, L]** By Order of the Court, Petitioner was deemed competent to stand trial on September 16, 2008. **[Exhibit M]** The record does not reflect that Dr. Shwartz was called to rebut the testimony of Dr. Joanne Burness at the final hearing regarding competency. The State then identified Dr. Burness on its witness list and the Defense filed a Motion in Limine to address statements made to Dr. Burness. **[Exhibit N]**.

Following the remand by the Supreme Court on the plea withdrawal issue, another Motion for Mental Evaluation was filed on September 22, 2011 **[Exhibit O]**; an Order was entered and Petitioner was again sent to NMBHI for an evaluation **[Exhibit P]** In the interim, further forensic evaluation at NMBHI was ordered by the Court **[Exhibit Q]**. Subsequently, Mr Ramirez was deemed competent to stand trial on March 1, 2013. **[Exhibit R]**

During trial, the issue of Mr Ramirez' competency arose repeatedly. During voir dire, the defense attorney informed jurors that there were matters concerning Mr. Ramirez' mental health. **[Exhibit S, Transcript: 10/7/13, 12:05]**. The Court noted that Mr. Ramirez made various statements which resulted in different transport officers being assigned during the trial. **[Exhibit T, Transcript: 10/8/13, CD B 8:42:10-8:43:50]**. Mid-trial, Mr. Ramirez issued a rambling statement about his health and said that he heard voices and was concerned his attorney was mad at him. **[Exhibit U, Transcript: 10/9/13, CD B 10:13:29-10:26:30; 10:24:04-10:25:58]**. Also mid-trial, the Defense reminded the Court of competency issues and alerted the Court that Mr. Ramirez did not understand the proceedings and was incapable of assisting in his defense. **[Exhibit V, Transcript: 10/9/13, CD B 10:16:00-10:17:00; 10:25:58; 10/10/13, 3:24:59-35:25:49]**. In response, the Court; however,

5

opined that Mr. Ramirez was malingering but noted he had never seen a defendant act the way Mr. Ramirez was acting. **[Exhibit W, Transcript: 10/9/13, 10:18:36-10:24:04; 10/10/13, CD B 3:45:47-3:46:20]**. The Defense again asked for a review of competency. **[Exhibit X, Transcript: 10/7/13, 10:13:29-10:14:51; 10/9/13 1:35:36-1:44:46]**. Mr. Ramirez specifically asked that the jury be told about his medical problems and specifically told the Court that he did not believe the trial to be fair, as the right questions were not being asked and Dr. Shwartz' testimony was necessary to him having a fair trial. **[Exhibit Y, Transcript: 10/9/13, CD B 2:36:02-3:13:45; 10/10/13 CD B 10:40:41-10:58:56; 4:41:38-4:42:15]** Throughout, the Defense alerted the Court that Mr. Ramirez was difficult to represent. **[Exhibit Z, Transcript: 10/10/13, CD B 2:06:30-2:41:36]**. The Defense; however, informed the Court and the State that it would not be submitting a competency instruction. **[Exhibit AA, Transcript: 10/10/13, 4:32:27-4:35:41]**.

### B.   Facts of the Case.

Petitioner, eighteen year old Albert Ramirez, sometimes resided with his mother, Debra Ramirez and step-father, Elado Robledo at their home in Clovis, New Mexico. Some of his belongings remained at the residence when he was ordered to leave the home due to a disruption with his step-father. When Albert Ramirez returned to the home to collect some of his belongings on July 12, 2007, he argued with his step-father and shot and killed Elado Robledo. This was witnessed by neighbor Sam Saiz, Jr. and another person who was driving by at the time.

During the investigation, law enforcement located Petitioner's shoe, a pair of shorts and some clothing in a trash dumpster several blocks from the scene. Although no firearm was located, jail calls were intercepted where Petitioner directed his cousin to an area to remove a "ban ban", something Petitioner admitted was a gun that he used in self-defense during the shooting

The State introduced prior bad acts during trial. Over objection, the State called a firearms dealer to testify that the defendant had tried to purchase a gun from him in the past to support premeditation. Also over objection, the State introduced evidence that someone had broken a front window at the victim's house and this was allegedly done by the Petitioner to show motive. Yet another incident was introduced to show intent and motive; that is, that Petitioner had used his crutches to crack his mother's windshield

During his testimony, the Petitioner claimed self-defense and told jurors that the shoe and shorts were a result of his step-father's assault. He said that his step-father had a gun and he had something in his hands, causing the Petitioner to fear for his safety. During cross-examination, Petitioner refused to respond to the prosecutor's questions, electing instead to chastise his defense counsel

During a break, the Petitioner tripped over a table due to the shackles on his ankles. He complained of prejudice because jurors were present in the courtroom. The trial court held that jurors could not see the shackles, as a skirt covered the trial table. None of the jurors was questioned regarding the incident and what he/she saw, nor did trial counsel request a mistrial.

## ARGUMENT

Petitioner, Albert Ramirez, adequately alleges claims, which entitle him to legal argument and/or an evidentiary hearing on the following grounds: Denial of his sixth amendment right to effective assistance of counsel and denial of his due process right to a representative venire panel.

**I.    PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND HIS RIGHT OF COMPULSORY PROCESS WHEN HIS ATTORNEY FAILED TO CALL DR. MAXANN SHWARTZ TO REBUT THE STATE'S MERE ASSERTIONS OF MALINGERING AND TO TESTIFY AT TRIAL ABOUT THE DEFENDANT'S STATE OF MIND.**

7

## A.    It is Ineffective Assistance of Counsel to Ignore a Defendant's Right of Compulsory Process.

The Sixth Amendment's right to counsel guarantee requires that effective assistance of counsel be given at all stages of the proceedings, and New Mexico has affirmed this right. U.S. Const. amends VI and XIV; N.M. Const. Art. II § 14; *State v. Robinson*, 99 N.M. 674, 662 P.2d 1341 (1983). Defense counsel's performance is measured against "an objective standard of reasonableness." *Strickland v Washington*, 466 U.S 668, 688 (1984), *State v Orona*, 97 N.M. 232, 638 P.2d 1077 (1982); *State v Dean*, 105 N.M. 5, 727 P.2d 944 (Ct. App. 1986) (standard is whether defense counsel exercised the skill, judgment, and diligence of a reasonably competent attorney).

As noted by *Strickland v Washington*, "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction...has two components:

1)    First, the defendant must show that counsel's performance was deficient...

2)    Second, the defendant must show that the deficient performance prejudiced the defense." *Id*. at 687.

In order to prevail on an ineffective assistance claim, the defendant must show her counsel's performance fell below the standard of a reasonably competent attorney and, due to the deficient performance, the defense was prejudiced. *State v Talley*, 103 N.M. 33, 34, 702 P.2d 353, 354 (Ct. App 1985). Prejudice is measured by "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland v. Washington*, 466 U.S. 668, 695, 104 S. Ct 2052, 2068, 80 L Ed. 2d 674 (1984). The test for judging any claim of ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686, 104

8

S. Ct. at 2064. In reviewing an ineffectiveness claim, the entire proceedings must be considered as a whole. *Id., State v Talley, State v Lovato*, 110 N.M 146, 147, 793 P.2d 276, 277 (Ct. App. 1990).

In cases of egregious failure by trial counsel, defendants are relieved of the burden of establishing prejudice due to "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *United States v Cronic*, 466 U.S. 648, 659 (1984). The *Cronic* court described three such circumstances:

(1)    denial of counsel altogether;

(2)    defense counsel's failure "to subject the prosecution's case to meaningful adversarial testing"; and

(3)    when the accused is "denied the right of effective cross-examination." *Id*

This is such a case. Counsel failed to subject the prosecution's case to meaningful adversarial testing. *State v Aragon*, 2009-NMCA-102, ¶ 15, 147 N.M. 26, 216 P.3d 276 (prima facie demonstration of ineffective assistance where trial counsel failed to secure an expert necessary to explain the State's evidence).

**B.    Trial Counsel Erred in Failing to Call Dr. Maxann Shwartz as a Witness to Rebut the State's Mere Assertions of Malingering and Denied Mr. Ramirez his Rights to Compulsory Process and Fair Trial when he Refused to Call Dr. Shwartz to Testify Regarding Mr. Ramirez' Mens Rea.**

Mr. Ramirez was evaluated by an accredited psychologist, Dr. Maxann Shwartz, who found him incompetent to stand trial and who did not find malingering. Dr. Shwartz was not called at the final hearing to determine competency to testify about Mr Ramirez' present competency and against the state's assertion of mere malingering. As a result, the Court could only consider the findings of Dr. Burness, from NMBHI, who testified that she believed Mr. Ramirez was pretending not to understand. The Court relied on this testimony to adjudge Mr. Ramirez competent to stand trial

9

Although Mr. Ramirez requested that his attorney call Dr. Shwartz as a witness at trial to address his state of mind, his counsel refused to do so. This failure to call Dr. Shwartz to testify as to competency at the time of the event resulted in a denial of Mr. Ramirez' right of compulsory process. Criminal defendants have the right to put before a jury evidence that might influence the determination of guilt.' *Taylor v Illinois*, 108 S. Ct. 646 (1988) *citing Pennsylvania v Ritchie*, 480 U.S. 39, 56 (1987)(criminal defendant's conviction reversed and remanded because he was not allowed to examine government documents that may have affected the outcome of the trial)).

The right to present a defense is "as American as apple pie". Defendants are constitutionally entitled to. be heard, effectively present evidence central to their defense, call-witnesses to testify on their behalf, and rebut evidence presented by the prosecution. It is well established that the Sixth Amendment guarantees the right of Confrontation. As a corollary to the right of confrontation, the Sixth Amendment guarantees defendants the right to call witnesses to testify on their own behalf and if necessary, to use the compulsory process of the judiciary to subpoena witnesses who could provide exculpatory testimony or who have other information that is favorable to the defense. *See* N.M. Const., Art. II, Sec. 14 ("[i]n all criminal prosecutions, the accused shall have the right . . to have compulsory process to compel the attendance of necessary witnesses in his behalf . . . ."); U.S. Const. amend. VI ("[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor . . . ."). Without this right, Defendant asserts, his broader right to a fair trial, guaranteed by the Fourteenth Amendment to the United States Constitution and by Article II, Section 18 of the New Mexico Constitution, was imperiled. *See generally* Peter Westen, *The Compulsory Process Clause*, 73 Mich. L. Rev. 71, 166-70 (1974).

10

Few rights are more fundamental than that of an accused to present his own defense" *Taylor v Illinois*, 108 S. Ct. 646 (1988); *Chambers v Mississippi*, 410 U.S. 284, 302 (1973)). Our United States Supreme Court has held that the right to present a defense consisted of the right to compel the attendance of witnesses and offer their testimony and that such a right "'stands on no lesser footing than other Sixth Amendment rights that we have previously held applicable to the states.'." *Taylor v Illinois*, 108 S. Ct. at 652-653 *(quoting Washington v Texas*, 388 U.S. 14, 18 (1967)). Such a right "is an essential attribute of the adversary system itself " 46 *Id.* *(citing United States v. Nixon*, 418 U.S 683 (1974)(President's duty violated his constitutional right "to have compulsory process to compel the attendance of necessary witnesses in his behalf"). *See also* N.M. Const., Art. II, § 14; *see State v Cooley*, 19 N.M. 91, 140 P. 1111, 52 L.R.A., N.S., 230 (1914).

Mr. Ramirez was charged with first degree murder—a charge that on its face requires a showing that his actions were willful and deliberate and which requires a showing of premeditation. [Exhibit B], *See State v Montoya*, 1963, 72 N M. 178, 381 P.2d 963; *State v Ybarra*, 1918, 24 N M. 413, 174 P 212 (essential elements of murder in the first degree include the elements of deliberation and premeditation). "An abnormal mental condition may influence the probability that a defendant premeditated and deliberated-and so be taken into account by a jury in determining whether those states of mind existed in fact (beyond a reasonable doubt)-even though it did not eliminate the capacity for premeditation." *United States v Peterson*, 509 F.2d 408, 416-17 (D.C Cir. 1974). "[E]xpert testimony is admissible if it merely 'support[s] an inference or conclusion that the defendant did or did not have the requisite mens rea.'" *United States v Bennett*, 161 F.3d 171, 183 (3rd Cir. 1998) *(quoting United States v Morales*, 108 F.3d 1031, 1037 (9th Cir. 1997)). Dr. Shwartz' testimony was relevant, we note that New Mexico courts have long allowed such expert testimony

11

relating to a defendant's mental state at the time of the commission of the offense *See id.; see also State v. Elliot*, 96 N.M. 798, 635 P 2d 1001 (Ct. App. 1981); *State v. Smith*, 80 N.M. 126, 452 P.2d 195 (Ct. App. 1969). Regardless, Dr. Shwartz was not called at trial to testify about Mr. Ramirez' present competency and against the state's assertion of mere malingering. *State v Balderama*, 88 P 3d 845, 135 N.M. 329 (2004).

Counsel's failure to pursue a potentially meritorious defense raises substantial questions of ineffective assistance counsel *See State v Luna*, 1979-NMCA-048, ¶27, 92 N M. 680 (Court addressed issues relating to ineffective assistance of counsel for failure to file pre-trial motions regarding charge of conspiracy when 3 other co-defendants had that particular charge dismissed, leaving no one to conspire with). "The testing process generally will not function properly unless defense counsel has done some investigation into the prosecution's case and into various defense strategies ..counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Kimmelman v Morrison*, 477 U.S 365, 384 (1986)(internal citations omitted); *see also Strickland*, 466 U.S. at 687-88.

Reasonable professional performance includes a duty to investigate all reasonable lines of defense *Fisher v Gibson*, 282 F.3d 1283, 1291 (10th Cir. 2002), *citing Strickland*, 466 U S. at 691 The failure to pursue information from a key witness regarding the basis of the accused's most important defense cannot be considered sound trial strategy. *Sanders v Ratelle*, 21 F. 3d 1446, 1456 (9th Cir. 1994). Counsel is ineffective if he fails to conduct an adequate investigation into the defendant's most viable theory of the defense. *Bigelow v Williams*, 367 F.3d 562 (6th Cir. 2004) (reasonable prudence should lead lawyer to recognize the importance of potential witness testimony).

12

The failure to pursue an adequate defense may establish grounds for finding ineffective assistance of counsel *State v Barnett*, 1998-NMCA-105, ¶ 30, 125 N.M. 739 citing ABA Standards for Criminal Justice Pleas of Guilty, Standard 14-3.2 (2nd edition 1980)

Whether defense counsel's actions were unreasonable or caused prejudice cannot be established by the trial record; *State v. Plouse*, 2003-NMCA-048, ¶ 15, 133 N.M. 495, 64 P.3d 522; rather, a habeas proceeding is the appropriate procedure, so that "the defendant may actually develop the record with respect to defense counsel's actions." *State v Arrendondo*, 2012-NMSC-013, ¶ 38. New Mexico appellate courts frequently remand claims of ineffective assistance of counsel brought on direct appeal for further evidentiary hearings. *State v. Hunter*, 2006-NMSC-043, ¶30, 140 N.M. 406, 143 P.3d 168. "[H]abeas corpus proceedings are the preferred avenue for adjudicating ineffective assistance of counsel claims, because the record before the trial court may not adequately document the sort of evidence essential to a determination of trial counsel's effectiveness." Id. (internal quotation marks and citation omitted). Thus, we have held that an evidentiary hearing in most cases "may be necessary." *Id.* (internal quotation marks and citation omitted).

Defendant's ability to confront his accuser and to obtain compulsory process, protected by the Sixth Amendment to the United States Constitution as well as Article II, Section 14 of the New Mexico Constitution, was compromised. As a result, Mr. Ramirez was denied his right of due process contrary to N.M. Constitution, Art. II, Sec 18; and the U.S. Constitution, Amend. V and 14 and compulsory process as guaranteed by N.M. Const, Art. II, Sec. 14 and U.S. Const. Amend. VI.

"A defendant is not entitled to an attorney who will 'leave not the smallest stone unturned'

13

..but when the defendant has but one stone, it should at least be nudged." *Coleman v. Brown*, 802 F 2d 1227, 1234 (10th Cir. 1986)(internal citations omitted). Mr. Ramirez submits that failure to call Dr. Shwartz as a witness, per his request, was tantamount to ignoring a boulder.

## II.   PRIOR BAD ACTS SHOULD NOT HAVE BEEN INTRODUCED AND THEIR INTRODUCTION DENIED THE PETITIONER HIS RIGHT TO A FAIR TRIAL.

A Defendant is presumed innocent and is entitled to due process and a fair trial. U.S. Const., amend V., XIV; N.M. Const., art. II § 18." *State v. Martin*, 1984-NMSC-077, ¶ 17, 101 N.M. 595 (fair trial); U.S. Const., amends VI and VII, and N.M. Const., Art. II, sec. 14 and 18 (presumption of innocence); and N.M. Constitution, Art. II, Sec. 18; and the U.S. Constitution, Amend V and 14 (due process). Mr. Ramirez maintains that he was denied these rights when, over the Defense objections, the State introduced prior bad acts during trial.

The evidence was not relevant. It is the state's burden to establish the relevancy of the proffered evidence *State v Herrera*, 92 N.M 7, 582 P.2d 384 (Ct. App.), *cert. denied*, 91 N.M. 751, 580 P.2d 972 (1978). Rule 404(B) is a specialized rule of relevancy which requires counsel to identify the consequential fact to which the proffered evidence of other acts is directed. *State v Aguayo*, 114 N M 124, 835 P.2d 840 (Ct. App), *cert denied*, 113 N.M. 744, 832 P.2d 1223 (1992). It is only then, after the proponent has provided the trial court with an adequate basis, that the trial court should decide whether the probative value of the evidence is not substantially outweighed by the prejudicial impact. *State v. Beachum*, 96 N.M. 566, 568-69, 632 P.2d 1204, 1206-07 (Ct. App. 1981)(emphasis added). Such evidence should not be received when "very probably its sole result, or at least its overwhelming result, will be that of establishing defendant's bad character, or his disposition or propensity to commit crime, as the basis for an inference that he committed the crime

14

with which he is charged and for which he is being tried." *State v. Mason*, 79 N.M. 663, 667, 448

P 2d 175, 179 (Ct. App.), *cert denied*, 79 N M. 688, 448 P.2d 489 (1968).

As noted by the Court of Appeals in *State v Andrade*, 1998-NMCA-031, ¶12

> [o]ur rules of evidence, following longstanding legal tradition, insist that a defendant
> not be convicted by a jury simply on evidence that the defendant is a bad person."
> *citing* Rule 11-404 NMRA.....[e]vidence of a defendant's prior misconduct ordinarily
> is not admissible to support the inference that the defendant has a propensity to
> commit unlawful acts and therefore is likely to have committed the charged act. New
> Mexico has been particularly strict in limiting evidence of prior crimes." *citing State
> v Wrighter*, 1996-NMCA-077.

Although evidence of other bad acts may be relevant, the risk that the jury will convict

because Defendant is a bad person and needs to be punished creates a prejudicial effect. Rule 11-404

(b) provides that evidence of other crimes, wrongs or acts is not admissible to prove the character of

a person in order to show action in conformity therewith or to show criminal propensity. *See State

v Roybal*, 115 N.M. 27, 846 P.2d 333 (Ct. App. 1992)("Generally, proof of other crimes has a

tendency to prejudice the minds of the trier of facts and predispose them to a belief in the accused's

guilt.").

Over objection, the State called a firearms dealer to testify that the defendant had tried to

purchase a gun from him in the past to support premeditation. Also over objection, the State

introduced evidence that someone had broken a front window at the victim's house and this was

allegedly done by the Petitioner to show motive. Yet another incident was introduced to show intent

and motive; that is, that Petitioner had used his crutches to crack his mother's windshield. The State

presumably sought protection under Rule 11-404 (b) as indicated below.

The broken front window was never proven to be the Defendant Incredibly, the State sought

introduction of this act to show motive. The evidence was not relevant to defendant's motive to

15

commit the instant offense, as the State could not prove that it was the Defendant who broke the window and not just a random act. *See e g. State v Ruiz*, 119 N.M. 515, 892 P.2d 962 (Ct. App. 1995); *State v. Williams*, 117 N.M. 551, 874 P.2d 12 (1994)(prior relationship with victim or merely enjoying sex is not sufficient to suggest that a defendant had cause to force himself on the victim). Admission of prior acts must be shown to sufficiently be similar to the charged acts to indicate they were likely done by the same person. In order for evidence to be admissible under this exception, the similarity must rise above the level of characteristics common to many incidents of the crime and must indicate a distinct pattern of conduct. The incident was not so distinctive as to constitute a "unique or distinct pattern easily attributable to one person." *State v Beachum*, 96 N.M. 566, 568, 632 P.2d 1204, 1206 (Ct. App. 1981).

The firearms expert could not recall what kind of weapon Mr. Ramirez allegedly sought to purchase; he could not recall when exactly Mr. Ramirez came to his business; he did not keep a copy of the firearms application form which he claims he received from Mr. Ramirez. Although trial counsel sought to exclude the evidence, the trial court allowed the State to introduce it to support motive and premeditation This was in violation of Rule 11-404(B) which provides that evidence of a defendant's prior acts is admissible to show proof of motive. Factually similar incidents cannot, alone, prove plan, particularly when the acts are several years apart and the State must be able to prove the act was somehow part of a bigger plan. *State v. Montoya*, 116 N.M. 72, 860 P.2d 202 (Ct. App. 1993).

Finally, whether Mr. Ramirez did or did not break his mother's windshield, the evidence was neither relevant nor probative to prove that Mr. Ramirez intended harm to his step-father. The evidence was admitted in violation of Rule 11-404(A) NMRA 2004 (providing that "[e]vidence of

16

a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion"). *See State v Lucero*, 114 N.M. 489, 492, 840 P.2d 1255, 1258 (Ct. App. 1992); *see also State v Alberts*, 80 N M. 472, 474, 457 P.2d 991, 993 (Ct. App. 1969) (finding that if the sole purpose of evidence is to demonstrate bad character, reputation, or disposition, its prejudicial effect makes it inadmissible).

On the whole, the probative value of the evidence did not outweigh the prejudicial effect for which the State introduced it. As noted in *State v Williams supra*, "[i]f evidence of prior acts is relevant and admissible for a purpose other than proving a defendant's propensity to commit a crime, the probative value of the evidence must outweigh its prejudicial effect". *Id citing State v Landers*, 115 N M 514, 517, 853 P.3d 1270, 1273 (1993); NMRA 1999, 11-403; *State v. Beachum*, 96 N.M. 566, 567-68, 632 P.2d 1204, 1205-06 (Ct. App 1981).

Even when admitting prior bad acts evidence under a recognized exception, the trial court must still meet the requisites of 11-403. *State v Wrighter*, 122 N.M. 200, 922 P.2d 582 (Ct. App. 1996). The trial court may admit evidence under NMRA 1999, Rule 11-404(B) if the probative value of the evidence outweighs any prejudicial effect *State v Landers*, 115 N.M. at 518, 853 P.3d at 1274.

There is no indication that the Court balanced the prejudicial effect of the evidence against its probative value to determine if "the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. *See* Rule 11-403, NMRA 2001. Even allowing that evidence of the defendant's prior history was admissible to establish context, *See Jones*, the trial court must engage in a balancing requirement of NMRA 1999, 11-403.

17

*State v Rojo*, 1999-NMSC-001, ¶ 47, 126 N.M. 438, 971 P.2d 829 ("Under Rule 11-403, "evidence

may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."

Proof of other crimes has a tendency to prejudice the minds of the triers of fact and to

predispose them to a belief in the accused's guilt *See State v Rowell*, 77 N.M. 124, 419 P.2d 966

(1966); *State v. Allen*, 91 N.M. 759, 581 P 2d 22 (Ct. App. 1978).

> The real danger of admitting past conduct is that, if the jury believed the testimony,
> the jury would conclude that the Defendant acted in conformance therewith, and if he
> did so then, it is more likely he did so now. One cannot ignore the long tradition of
> courts and commentators expressing fear that jurors are too likely to give undue
> weight to evidence of a defendant's prior misconduct and perhaps even to convict the
> defendant solely because of a belief that the defendant is a bad person.

*State v. Lamure*, 115 N.M. 61, 71, 846 P.2d 1070, 1080 (Ct. App. 1992), *cert. denied*, 114 N M. 720,

845 P.2d 814 (1993). Rule 404(B) is designed to prevent this kind of perception. *Id.* Testimony

which amounts to evidence of a defendant's bad character, or disposition to commit the crime

charged, when not offered for a legitimate purpose, is inadmissible and unfairly prejudicial. *State v.*

*Rael*, 117 N.M. 539, 540, 873 P.2d 284, 286 (Ct. App. 1994).

Defendant submits that it was prejudicial error to admit evidence of prior uncharged conduct,

*State v Ross*, 88 N.M. 1, 536 P 2d 265 (Ct. App. 1975). Any references to other offenses may be

probative, but its probative value is substantially outweighed by the prejudice to the Defendant. *State*

*v. Hogervorst*, 90 N.M. 580, 566 P.2d 828 (Ct. App. 1977). Accordingly, Defendant's rights to fair

trial and due process were violated. U.S. Const., amend V., XIV; N M Const., art. II § 18 (fair trial)

and N.M. Constitution, Art II, Sec. 18; and the U.S. Constitution, Amend V and 14 (due process).

Mr. Ramirez maintains that he was denied these rights when, over the Defense objections, the State

introduced prior bad acts during trial

18

## III.    THE PETITIONER WAS LIKELY PREJUDICED AND DENIED HIS RIGHT TO A FAIR TRIAL WHEN HIS FALL WAS A DIRECT RESULT OF BEING SHACKLED AND HIS ATTORNEY DID NOT SEEK TO HAVE JURORS POLLED REGARDING WHETHER THEY SAW THE SHACKLES OR NOT.

A person in custody "coming into court for trial is entitled to make his appearance free of shackles or bonds." *State v Holly*, 2009-NMSC-004, ¶ 41, 145 N.M. 513, 201 P.3d 844 (internal quotation marks and citation omitted); *see also* Rule 5-115(C) NMRA ("Except by order of the court, the defendant may not appear before the jury in any visible restraint devices, including handcuffs, chains or stun belts, a visible bullet proof vest or any other item which, if visible to the jury, would prejudice the defendant in the eyes of the jury."). The record does not reflect that any order was issued by the trial court, until after the fall, whereby the shackles were removed for the remainder of the trial.

Petitioner recognizes that "a defendant's right to appear free of visible restraints is not absolute", *State v Johnson*, 2010-NMSC-016, ¶ 26, 148 N M  50, 229 P.3d 523, as "it must be balanced against the state's interest in maintaining security." *State v Gomez*, 1971-NMCA-009, ¶¶ 2-7, 82 N.M. 333, 481 P 2d 412 (upholding the district court's denial of mistrial where jurors had viewed the defendant in handcuffs only as safety requirements demanded, "prior to the beginning of trial and during recess"). In this case; however, there were other adequate remedies to ensure the safety of the community and the integrity of security.

While a juror's "inadvertent or insignificant exposure to a defendant in shackles is not sufficiently prejudicial to merit a new trial, " *See Holly*, 2009-NMSC-004, ¶ 41, in this case, there may have been 12 jurors who observed Mr. Ramirez in shackles. In *Holly*, a single juror may have seen the defendant in handcuffs during his escort back to detention. *Id.* ¶ 40. Rather than calling

19

attention to the incident by questioning the jurors, the district court chose to remedy the situation by repeating the general jury instructions to the jurors. *Id* On appeal, our appellate court concluded that the incident did not constitute fundamental error because "it [was] unclear whether any exposure actually occurred, or if it did, that it was anything more than inadvertent or insignificant exposure." *Id.* ¶ 42. Here, there is nothing indicating that the Defense sought to question jurors regarding what they did/did not see when the defendant fell, rather, an assertion was made and the parties determined that likely none of the jurors saw anything. Another difference is that the defendant in *Holly* was wearing handcuffs. Shackles are arguably more egregious.

Given the uncertainty, the Defense should have demanded the jurors each be questioned individually and should have moved for a mistrial. In *State v. Mills*, 1980-NMCA-005, ¶ 15, 94 N.M. 17, 606 P.2d 1111, at least one juror viewed the defendant in handcuffs while a bailiff was escorting the defendant from the courtroom during a noon recess. The defendant moved for a mistrial, arguing that the incident deprived him of a fair trial. *Id.* The bailiff explained to the district court that he had waited with the defendant "for the time normally required for the departure of jurors, " and "that the view occurred because some jurors had used the restroom before departing." *Id* ¶ 16. The district court held that the juror's observation of defendant in handcuffs was inadvertent and denied the defendant's motion for a mistrial, reasoning that "any impropriety resulting from the view was harmless" because the evidence at trial showed that the defendant was incarcerated *Id.* ¶¶ 16-17. This case differs in three respects: the observation may have been made by all of the jurors; the defendant in *Mills* was cuffed as opposed to shackled; and the evidence at trial did not show that the defendant was incarcerated.

20

Pursuant to *State v Franklin*, 78 N M. 127, 428 P.2d 982 (1967) and *State v. Boyer*, 103 N.M.

655, 712 P.2d 1 (Ct. App. 1985)(counsel should set forth contentions urged by a petitioner whether

or not counsel feels they have merit ), the Petitioner urges the Court to consider the issue of whether

the possibility of seeing him shackled resulted in prejudice to his case.

## CONCLUSION

If a petition for writ of habeas corpus demonstrates on its face that a Petitioner may have been

deprived of his constitutional rights, the court must address the issue in an evidentiary hearing unless

it plainly appears that the petitioner is not entitled to any relief as a matter of law, based on the facts

alleged in the petition, or the uncontroverted facts shown by the court record. *State v Franklin*,

1967-NMSC-151, ¶6, 78 N.M. 127 *quoting Machibroda v United States*, 368 U.S. 487 (1962); *see*

*also Duncan v. Kerry*, 1993-NMSC-011, ¶3, 115 N.M. 344 (court must hold an evidentiary hearing

where a petition adequately alleged ineffective assistance of counsel). Habeas corpus proceedings

are the preferred method for adjudicating claims of ineffective assistance of counsel, because such

claims often cannot be considered based solely on the record before the trial court. *Duncan*,

1993-NMSC-011, ¶4. Consequently, when a petition for a writ of habeas corpus alleges particular

facts which set out a claim of inadequate representation, the petitioner is entitled to a hearing. *State*

*v. Moser*, 1967-NMSC-163, ¶ 6, 78 N M. 212 (overruled on other grounds).

Respectfully submitted,

LIANE E. KERR, Esq.
PO Box 10491
Albuquerque, NM 87184-0491
(505) 848-9190

21

## **VERIFICATION**

**STATE OF NEW MEXICO** )
                              ) ss.
**COUNTY OF DONA ANA** )

     I, the undersigned, being first duly sworn upon my oath, state that I am the Petitioner in this action. I have read the foregoing petition and know and understand its contents, and the information contained therein are true and correct to the best of my knowledge, information, and belief.

                                               Albert Ramirez, PNM 69597
                                               c/o SNMCF
                                               P.O. Box 639
                                             1983 Joe R. Silva Boulevard
                                             Las Cruces, New Mexico 88004-0639

     SUBSCRIBED AND SWORN TO before me this ____ day of _____, 2018, by _____.

                                               NOTARY PUBLIC

My Commission Expires:

_____

## **CERTIFICATE OF SERVICE**

     I hereby certify that true copies of the foregoing petition were served upon the Respondent and the district attorney in the county in which the petition is filed by _____ (described manner of service), this 19th day of May, 2018

                                               LIANE E. KERR, Esq.

22

in *Mills* was cuffed as opposed to shackled; and the evidence at trial did not show that the defendant was incarcerated.

Pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967) and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985)(counsel should set forth contentions urged by a petitioner whether or not counsel feels they have merit ), the Petitioner urges the Court to consider the issue of whether the possibility of seeing him shackled resulted in prejudice to his case.

## IV. MR. RAMIREZ ADDITIONALLY REQUESTS THE COURT CONSIDER ADDITIONAL ISSUES WHICH WERE INHERENT IN HIS TRIAL, BUT WHICH WERE NOT RAISED BY HIS APPELLATE ATTORNEY.

Undersigned provided Mr. Ramirez with a copy of the Petition and asked that he contact her with any suggestions/changes. No contact was made; however, in meeting with Mr. Ramirez, he made requests for additional arguments and they are therefore addressed briefly. *See State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967) and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985). (counsel should set forth contentions urged by a petitioner whether or not counsel feels they have merit ). Mr. Ramirez asks this Court to consider the following in the context of the entire trial:

1. **Sufficiency of the Evidence.** If the State does present evidence sufficient to support a finding of guilt beyond a reasonable doubt, the verdict violates the Due Process Clause. *See Jackson v. Virginia*, 443 U.S. 307, 317–18 (1979). Proof beyond a reasonable doubt is equivalent to proof "to a moral certainty," and refers to the highest degree of confidence with which an historical or physical fact can be known. *Victor v. Nebraska*, 511 U.S. 1, 11-12 (1994). *See also State v Silva*, 2008-NMSC-051, ¶¶ 19-20, 144 N.M. 815, 192 P.3d 1192 (prosecution failed to present "any evidence, circumstantial or otherwise, of an overt act" by the defendant from which the jury could infer an intent to defendant), and *State v. Duran*, 2006-NMSC-035, ¶¶ 15-16, 140 N.M. 94, 140 P.3d

21

515.. 2008-NMSC-051, ¶ 19 (no evidence of any act by the defendant to destroy or hide evidence, with the only support for the tampering charge stemming from the fact that the evidence was not found).

2.    **Prosecutorial Misconduct.** Without objection from trial counsel, the prosecutor claimed that Mr. Ramirez was a "menace to society", a liar and  during his closing argument. Prosecutorial misconduct reaches the level of fundamental error when it is egregious and so pervasive and prejudicial that the defendant was deprived of a fair trial and applies only when a defendant's conviction would shock the conscience if allowed to stand, or when an error is such that the fundamental integrity of the judicial process is implicated. *State v. Sosa*, 2009-NMSC-056, ¶ 35, 147 N.M. 351, 223 P.3d 348. Mr. Ramirez maintains that his conviction, when viewed against the prosecutor's comments and conduct, would shock the conscience if allowed to stand.

3.    **Double jeopardy.** Mr. Ramirez believes that being twice charged with evidence tampering was tantamount to double jeopardy. No person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Imposing multiple punishments for tampering charges directed at the same item of evidence, violates the right to be free from double jeopardy. *State v. DeGraff*, 2006-NMSC-011, ¶ 34, 139 N.M. 211, 131 P.3d 61. However, Undersigned recognizes that distinct acts, separated by time and space, do not violate double jeopardy. *See State v. Quick*, 2009-NMSC-015, ¶ 25 (stating that "[d]istinctness may be established by determining whether the acts constituting the two offenses [were] . . . separated by time or space").

## CONCLUSION

If a petition for writ of habeas corpus demonstrates on its face that a Petitioner may have been deprived of his constitutional rights, the court must address the issue in an evidentiary hearing unless

22

it plainly appears that the petitioner is not entitled to any relief as a matter of law, based on the facts alleged in the petition, or the uncontroverted facts shown by the court record. *State v. Franklin*, 1967-NMSC-151, ¶6, 78 N.M. 127 *quoting Machibroda v. United States*, 368 U.S. 487 (1962); *see also Duncan v. Kerry*, 1993-NMSC-011, ¶ 3, 115 N.M. 344 (court must hold an evidentiary hearing where a petition adequately alleged ineffective assistance of counsel). Habeas corpus proceedings are the preferred method for adjudicating claims of ineffective assistance of counsel, because such claims often cannot be considered based solely on the record before the trial court. *Duncan*, 1993-NMSC-011, ¶4. Consequently, when a petition for a writ of habeas corpus alleges particular facts which set out a claim of inadequate representation, the petitioner is entitled to a hearing. *State v. Moser*, 1967-NMSC-163, ¶ 6, 78 N.M. 212 (overruled on other grounds).

Respectfully submitted,

LIANE E. KERR, Esq.
PO Box 10491
Albuquerque, NM 87184-0491
(505) 848-9190

# LIANE E. KERR, LLC

Liane E. Kerr, Attorney at Law

April 18, 2018

Albert Ramirez, PNM 69597
c/o SNMCF
P O. Box 639
1983 Joe R. Silva Boulevard
Las Cruces, New Mexico 88004-0639

RE·    *State of New Mexico v. Albert Ramirez, D-0905-CR-2007-00434*

Dear Mr. Ramirez:

Thank you for your recent letter. I agree we need more time prior to filing the Petition. We did finally get your discovery from the PD's office. I finished reviewing your notes last night We also received a copy of your appellate file, on loan from the court. I was hoping to go through the file in its entirety before visiting with you in Las Cruces. Our Petition was due April 19, 2018.

Because of the late receipt of discovery, I requested a 60 day extension (since Ms. Stephenson requested two separate 90 day extensions but filed nothing, I didn't want to push things and ask for a full 90 days). Unfortunately, the State would not agree to my request. The judge gave us only 30 days, making our new Petition due May 19, 2018

I have been working furiously to pull the Petition together so we will not miss the deadline. I sent the audio CDs to a transcriptionist to transcribe only those portions of the trial which support the habeas argument. I made reference to the transcripts by citing to the CD and counter number. Once I have the transcripts. I will replace the CD counter number with the actual transcripts as exhibits on receipt of same   Because I am still pulling together the exhibits, I have not labeled them yet. Regardless, I am providing you the Petition, together with the exhibits I do have.

Consequently, you will need to review the Petition, which is included, carefully and expeditiously and give me your thoughts as soon as possible. I have made arrangements to visit with you in Las Cruces on May 10, 2018. I hope to have things finalized prior to our meeting, so please review the document prior to our upcoming meeting.

I look forward to working with you.

Sincerely,

LIANE E. KERR

w/Petition

COPY

STATE OF NEW M...
COUNTY OF CUR...
FILED IN

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

JUN 20 2017

Clerk District Court

| West's New Mexico Statutes Annotated |
| State Court Rules |
| 9. Criminal Forms |
| Article 7. Special Proceedings |

NMRA, Form 9-701

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS

Currentness

*[For use with District Court Criminal Rule 5-802 NMRA]*

STATE OF NEW MEXICO

COUNTY OF CURRY

IN THE DISTRICT COURT

*For Official Use Only*

No. _____

*(To be supplied by the clerk of the court)*

AlBERT RAMIREZ

*(Full name of prisoner)*

Petitioner,

v.

WARDEN GERMAN FRANCO

WestlawNext © 2015 Thomson Reuters No claim to original U.S. Government Works

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

*(Name of warden, jailor or other person having
power to release the petitioner)*

Respondent.

## Instructions — Read Carefully

Make sure that all information provided in this form is true and correct. Make sure that all necessary documents are attached, or explain why the documents are not being included. If you are currently incarcerated, you may file the petition without payment of the filing fee. If you are not incarcerated and are seeking free process, complete Form 9-403.

Finally, you must complete the certificate of service and mail or otherwise serve copies of this petition on the respondent and the district attorney in the county in which the petition is filed. You must file the original petition and one copy with the Clerk of the District Court. You should keep a copy for your own records.

## PETITION FOR WRIT OF HABEAS CORPUS[1]

I. _____ (name of person in custody) is imprisoned or otherwise restrained at _____ (name of facility and county of detention) by _____ (name and title of person having custody).

2. This petition

[W] seeks to vacate, set aside or correct an illegal sentence or order of confinement (i.e., ineffective assistance of counsel, illegal search and seizure, involuntary confession, or other matters relating to the trial or sentence the confined person received).

[W] challenges confinement or conditions of confinement or matters other than the sentence or order of confinement. *(This applies only to matters arising after the confined person arrived at the institution, i.e., county jail confinement, mental hospital confinement, detention facility confinement, good time credit, misconduct report, prison due process violation or parole).*

3. State concisely the facts upon which the confined person bases the claim:

INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL
Ja APPEALS COUNSEL ON APPEAL →

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

I TRIED to > PLAY
to COUNSEL ITO NO
AVAIL + IRRECOOSIBLE
COUFLICTO

**FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701**

COUNSEL MR. COSBY. BEFORE TRIAL BEGINS AND AFTER I

TRIED to FIRE MM IN FRONT OF JUCY did VEEBAILY

ASSUAULT And Made threats Stated, Stupol Little Bitch
I promise to be iNEFFEctive assistance if you Keep on
I SAYING you WANT to GO to trial AS I INSIST. I HOPE

4. State concisely the grounds and law, or other legal authorities on which the confined person bases the claim:

you Get
LIFE.

( I don't KNOW what this MEANS. SIE)

III TRY 2 I TJ A constitutionall Right to

eFFective assIstance at trial+ ON appeal

IVE WROTE ON Extra Shuers of papers to

explain. Some Facts BEST AS I CAN.
+ Exbits & Evidence
Allegations

5. Have the grounds being raised in this petition been raised previously in your direct appeal? If so, explain the result. If not, explain why not:

YES I WAS Told appeal. was denied to File

A HABEAUS PACKET. NOW HERS is the

HABEAUS.

6. Have the grounds raised in this petition been raised previously in another petition for a writ of habeas corpus? If so, explain the result. If not explain why not:

I raised This issue IN First Habeaus.

NOW this one is to and Resubmit it

And Fix it.

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

7. Briefly describe the relief requested:

TO BE APPOINTED ASSISTANCE for
Public difenciEE post convicion division
to assist ME TO Get AN Evidentiary
Hearing to prove the Allegations are true

8. State the nature of the court proceeding resulting in the confinement (i.e., criminal prosecution, civil commitment, etc.), including:

(a) case name:

D- 0905 - CR - 2007 - 00454 IM NOT SURE

(b) docket number:

D- 0905 - CR. 2007 - 00434 NOT SURE

(c) name of judge:

Teddy . L. HARTLEY

(d) name and location of the court in which the proceeding was held:

700. N. MAINST
9th Judicial district Court

4

FORM 9-701, PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

**9.** State the date of the final judgment, order or decree for confinement:

JANUARY 8th 2014.

10. Attach a copy of the judgment, order or decree. If not, describe your sentence.

Life eligibility AFTER 30 yrs plus. two 3yrs
two tempering with evidence,
1 St degree Murder
2 temper evidence

11. Was the conviction the result of:

____ Guilty plea

____ No Contest plea (nolo contendere)

✓ Finding of guilty by judge or jury

12. Was the confined person represented by an attorney during the proceedings resulting in the confinement?

✓ Yes

_____ No

13. If you answered "yes" to (12), list the name and address of each attorney who represented the confined person:

JESSE, P., COSBY

P.O. Box 3330

14. Did you appeal your conviction?

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

___ Yes *(Go to 15)*

___ No *(Go to 16)*

15. If you answered "yes" to (14), list:

(a) The name of each court to which an appeal was taken:

9th Judll. al district cort.

New Mexico Supreme cort of appeals.

(b) The case name and docket number for each appeal:

(Don't know How to do this.)

(c) The date each appeal was filed and decided: *(Attach a copy of each opinion or order)*

Filed Sometime Around August 2013.

Dec 1st 2016.

(d) A summary of the grounds upon which each appeal was based:

Competency Reevaluations, Ineffective assistance

of cousel, Improper comments on silence, prosecutor

misconduct, Prior bad acts.

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.                    6

(e) The result of each appeal:

denied .

(f) The name and address of the attorney on appeal:

STEVEN J. FORSBERG

505. marquette N·W 87102

505. 796. 4405

16. If you answered "no" to (14), state the reasons for not appealing:

17. Apart from any appeals listed in (15), have any other post conviction applications, petitions or motions, been filed with regard to this same imprisonment or restraint?

✓ Yes *(Go to 18)*

___ No *(Go to 19)*

18. If you answered "yes" to (15), list with respect to each such petition or motion:

(a) The type of proceeding: petition Habeas, denied. But I se put new motion to Recon's. ace, answer, pev. sed. petition

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

Petition Habious, But This one is to
Resubmitte it to try to do it properly

(b) The name and date of each case:

RM Judicial district court, State of N. Mex. v. Abst Ramirez

(c) the docket number:

NOD- 09 090 5 - CR - 2007 - 00434

(d) the court, the administrative agency, or institutional grievance committee from which relief was sought:

NA

(e) the result of each proceeding (*Attach a copy of each decision.*)

denied,

(f) The issues raised in each proceeding:

Ineffective assistance of counsel,

(g) State whether a hearing was held in connection with each of these proceedings:

NO

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

(h) State whether the confined person was represented by an attorney in each proceeding and, if so, the attorney's name and address:

NO

19. Do you seek the appointment of counsel to represent you?

✓ Yes

___ No

**VERIFICATION**

STATE OF NEW MEXICO

COUNTY OF _____ SANTA FE

I, the undersigned, being first duly sworn upon my oath, state that I am the petitioner in this action. I have read the foregoing petition and know and understand its contents, and the information contained herein is true and correct to the best of my knowledge, information and belief. On _____, ___ (date), I deposited this petition in the internal mail system of the institution in which I am confined, properly addressed with any necessary postage prepaid, for forwarding to the district court at the following address:

_____ Court (name of court)

87101

_____ (city), New Mexico, ___ (zip code).

(
Signature
)        AIBERT JOSE ROMIREZ

(
Address
)        D.O. BOX. 1059 SANTO Fe 87°

PNM No., if applicable

*Notorizey please*

**FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701**

SUBSCRIBED AND SWORN TO before me this _1 2_ day of _June_ _2017_ by

*(Name of petitioner)*

ALBERTO RAMIREZ

Notary Public

My Commission Expires: 4/23/2019

## CERTIFICATE OF SERVICE

I hereby certify that true copies of the foregoing petition were served upon the respondent and the district attorney in the county in which the petition is filed by _mail_ (*describe manner of service*), this _15_ day of _July_, _2017_

*Signature of petitioner* ALBERTO RAMIREZ

**USE NOTE**

**Credits**

[Adopted effective Aug. 1, 1989. Amended effective May 6, 2009; Dec. 31, 2014.]

**Footnotes**

1

After this petition is reviewed by the Court, the Court will enter the order granting or denying the writ or ordering a response before further action. The order shall be prepared by the Court.

2

Petitioners who are incarcerated at the time of filing the petition need not file a motion for free process and may file the petition without payment of the applicable filing fee. *See* Rule 5-802(D)(2) NMRA

NMRA, Form 9-701, NM R CR Form 9-701
State court rules are current with amendments received through July 1, 2015.

WestlawNext © 2015 Thomson Reuters No claim to original U.S. Government Works.

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

End of Document

© 2015 Thomson Reuters. No claim to original U.S Government Works.

"THE WAY TO USE THE EXIBITS with the ISSUES I claim + present. Just Go TO page and OR Exibit or Both. I am Not A lawyer, I had no more paper to make it Nice+ Neat. I had to Send it Out asap. + copies+ ALL. IM Being Ignorced by law library IN Prison.

Please. Excuse My Mistakes. I Tried My Best.

Facts to prove claim of discovery, to prove ineffectiveness counsel

See Exibit 4,5

MR. COSBY COUNSEL TRIAL DENIED and failed to provicle effective Assistance.

A WEEK BEFORE TRIAL I ASK TO FIRE MY ATTORNEY DURING TRIAL IN COURT I fired MY ATTORNEY. EACh tIME there NO INQUIRE INTO WHY I was Expressing dissatisfaction I WAS Told twice by MR COSBY BEFORE TRIAL StArted and after I TRIEd to FIRE HIM IN COURT During triAl COSBY Stated - I AM A little Stupid Bitch and Madc threAts, by SAYING I Hope you GET liFe, I already told you to tAke the plea or you WONt be provided EFFECtive assistance of COUNSEL.
I WAS NOt able to put the allegations on Record.
But SEE Exibit's (1) page 1,2,3,4,5
(10) page 38-47

See Exibit
Page 47 page 53, 54 55, 57
page 2
Exisit 13

I TRIed to address court my lawyer was
NOT Filing ANY of my motions I Asked him
to. Change of venue, even though there
was pre-trial publicity concerning the
case in small community of Clous, New
Mexico. Some of this publicity inaccuratly
described Mr remirez as having attached
alleged victim on prior occassions, THE
publicity was inaccurate and highly
prejudicial and defense cowsel should
have at least raised the issue and
requested a Hearing. SEE Exisit ⓩ
Exibit 3

Counsel Should have at least Fired a
Motion to suppress Evidence that →  See 11
was illegauy Siezed + inadmissible  Exist
and highly prejudicial  See Exibit 11,  page
or requested A Hearing on this issue  48
49
50

Cowsel did Not provide me with all
discovery, would not discuss who
He was planning to call as witnesses
And would not discuss intent to  See →
present the defense of insanity  page
Counsel did not File a notice  3,4
of Intent to present the defense
Exibit 1) page - 1,2,3,4.5

Exibit 1, 3, 10 page 4,10,12 15
page 7

Insanity, But Instead of adoracating
Zealously on BEHAIF of I mr romineg
defense, counsel Informed the
court that HE would not be presenting
Expert psychatrist, or physician,
Because Mr. Ramirz wout discuss
the CASE with him and is unable
to assist in the defense.
counsel Failed to Alert the court
to important facts in arguing
the CASE. MR Ramirez was
Injured in on accident in 2007
Which he Began taking anti-
deppresant medication, & other
Medicctions, this Became severe
depression as he was unable
to walk, work, or drive, could
only walk with cructches, suffered
From psychosomatic delusions,
Hollucinotious, and cousel did not
presut Evdero of the medrection
Mr ramirez was taking.
Mr Ramirz feit his lawyer was
againts him, See page 4, 10,12,18
Exbit 1, 3,

SEE EXSIT 1, page 10, page (page 4)
EXISIT 10

COUNSEl Failed to File any
WITNESS list whatsoever in
Support of MR Ramirez's defense
OF INSANITY and lack of Capacity

ME RAMREZ had several witnesses
He wished to present in support of
his defense, Including his Aunt,
Sistee, Brothers, Friends, and
doctors who TREATEAL him after went
accidsns.

⊙ COUNSEL faiked to shoo courts Jennifer said went
I wore to coopuativl I
de. bress lied send would
MR. Remiree assents that he coopuati
received ineffective assistance OF
Counsel For various reasons that
ase, unFor + wrong, not on
Record, because those mattus
were not preserved in the record.

MR Ramirez Request that the
court grant him an attorney to
assist him in habeas procecdngs
and to Hold an Evidentary
HEARING. on ineffective of
Counsel.

page 5

EXiBiT 1. 2:12 05
PM
® ↓ 10/10/2013

AFTER I FiRed COUNSEL iN triAL
COUNSEL VERbAlly ASSAulted ME I
advised COUNSEL. I did FAll down
IN Front OF JURY BECAUSE OF
The ShacklES ON My leg tIEd to
The tAblE, WHEN I WAS told AU
RISE, ShURiFF CAllEd ME to door
I FEll, JURY SAW My ShaclUE,
While My lawyer went to tAlN to the
Judge The Tudge, The SheriFF
doCERty ThReatred ME and told
Me to Say I did NOt FAll.
I WAS asked by Judge did you
Fall. I SAid yes then NO
Because SherriFF WAS gesturing
Me to Say NO. ONly d.A
nourd SEE. She WAS Shacking
Head 1 Finger and moving NO.
I told My lowyer this And
ask him ® why dont he say
it to the court.
HE Said NO I Already MAde
UP My MiND.

page 6

Exibit 1 page 1-5

Counsel Failed to Alert the court that
Told him I did Fail, Juy Saw
my Shuckles, Sherirf docelty
Manipulated me to say No. Changer
(To Go against Myself) ask docelty Secne
Counssl Failed to Call, Dr FnN,
de. Burness, de. Maxione swarts
who I advised I had been
Sexually absused My moms
big Frend, + Nsibor Sam saiz
See Ex.B.t, 24, 5 paxes 4,7,8,17,13
17,18-27

Counsel Failed to Call witness, Pricilla
lopez, riley Tormillo, to Help prove
I was the one being chused in
yard, to Help prove my testimony
truthFull,
See Ex.Bit 7, 8, 10
Counsel Failed to investigate fomily
History of mental Illness, God
Fanily witnesses to difuse of
Insanty, 4.5.
I would 11 try to Call him and
write to talk he Ignored me or was
to busy, to. see Ex.Bit. 4,5,7,
page 18 to 24+ 27+30, 47.

SEE
EXB.+ 2
Ex.8+ 4.5 page 17 pg 19
SEE page
QV.B.+ page 25

Counsel Failed to Keep promises
Made, OF Bing able to testify.
About Serual Abuse and that he
would File motions I asked him.
to File
page 47
SEE Exibit 4,5, 10
1, 1A

Counsel Failed to Call my Father Brother
who would testify Eladio Robledo
was violent and had assaulted me
and them In past.
My Father and Brother are willing
to testify to this at Hearing.

Counsel Failed to Call dr maxine
swatts as witness who would
testify as to my Insanity defense
and sexual abuse and Incompitucy
SEE Ex.B+, 9,10
page 39 to 43, 47
Counsel Failed to present my
defense at trial.

Counsel Failed to give me advice when
I asked over I was drunk when I killed
Mustie dad. do I tell that or not. He didnt
answer

page 8

Counsel failed to get medical
records to show I was
on crutches, unable to work or walk,

Counsel failed to advise me of
the plea did not explain the
maximum & minimum time
I was facing even though I
tried to ask. (see page 4) 3,4)

Counsel failed to be respectfull
and responsible and fulfill his
duty of loyalty and advocate
to me his client.

Counsel failed to argue I was
the one being chased by Robledo
that I was 100 pounds and Robledo
175 pounds, not 145 as medical
examiner said, page 7-10
         see exhibits 2,

Counsel failed to alert court
I was hearing voices during trial.
   see Ex. Bit, 1, 1A, 4, 5, 6

page 9

SEE EXIBIT —9
page 34.35

APPSICTS COUNSEL Failed to
argue that trial counsel
Failed to call witnesses who
would have testified to my
Mental illness, defence of insanity,
or lack of capacity, or counsel
made promises not kept.

Applient Counsel Failed to argue I was
not given a Fair Sentencing
Hearing.

SEE Exibit.

Appliont Counsel failed to argue on
appeal I told him I had Been
verbally assaulted by Trial counsel
little bitch, and threatned me
with ineffectue assistance if
I refused to take pwa.

Appliont Counsel Failed to make aware
Supreme court of appeals of put
in my appeal I wanted
to represent myself.

page 47

page 10

SEE EXIBIT 10

appelate counsel failed to ask n
appeal for an evidentary
hearing on all these problems.

counsel failed to argue it was
double jeopardy to charge 47
me twice with 31 otegree   page
tampuing with evidence   Exibit 10

The district court failed to
inquire into the matter
when it is on record
Mr. Ramiez complained on
more than one occassion
to the judge of his frustration
with defense counsel. And
even though Mr. Romirz ask
for substitute of counsel
twice before trial and
fired his attorney once
in trial in front of
jury. and asual to
represent hisself.
        SEE Exibit. 1, 100, 6
page 1 - S Exibit 1
            Exibit 6 - page 28.

page 1 through 5

Exibit 1,

Counsel Failed to communicate Back. with Mr. Rmirez, Evan though Mr. Ramirez tried to no avail.

Mr Ramirez recieved Ineffective assistance of counsel and owed his constitutional Rights to effective assistance of counsel.

I Mr. ramirez ask the court to appoint attorney to assist with heneous process.

Mr Ramirez ask for an Evidentary Hearing to develpe the record nessary to prove Allejations - a dispostion Hearing Also. - Also attached witness Statement by my Brother Joe Ramirez who spoke to me cosBy and Told me to Fier my attorney.

Sincerly
Albert.
Ramirez

PACE
12

THE EXIBIT'S
ARE ONLY labeled
1 to 13 and pages 1-56
I did NOT lable
1A, 1B, 1C, NO.
ONLY, 1 to 13.
They are all relevant
to certain facts
+ allegations to
Support my claim
OF. Ineffective assistance
OF counsel trial +
appilate attorney.

I ask the courts all them to Not dismiss my ~~case part~~ Habiaus Because Im pro se, please appoint me on attorney or grant an Evidutary hearing, or Prelimanary hearing let me prove my claim I Need A chance.

I do have A witness my brother who can testify to the threats made by MR COSBY. COSBY told my brother to tell me to plea my Brother knows of the threats

Counsel did advice me to take
plea But would NOT Explain
what the plea WAS.

Also Counsel did Not tell
Me the Maximum time
I was Facing
I did Not Know.
I thought the most
I could get was
15yes.
I did Not Know
Mr. Cosby would Not
answer any of my questions
or Explain anything to me.

He was disrespectfull,
Mean, Rude, unprofessional
and did Not provide
effective assistance.

Counsel would Not call all witness
Er file motions, change venue,
for private investigator, or to
compel Such Of-an, - See Ex. 5) +16

Page: _____

If not for trials counsels
Ineffective assistance of
counsels Mr. Ramirez would of
had a stronger case going
into trial. Mr. Ramirez
was prejudiced by counsel
lack of effective assistance
Please I would pray @ for
an attorney if I had
money even at sentencing
counsel failed to provide
effective assistance.
Is Ramirez denied a fair

THis is to HEIP properly PRESENT PETITION foR HABEAUS. THE FACTS IN RECORD AND OFF RECORd. THE CIAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL ANd INEFFECTIVE ASSISTANCE OF APPEAIATE COUNSEL.

I AM TRYING TO SHOW I Should BE gIVING AN OPPURtuNity to SHOW and Drove MY Claim + allegations and to Recieve ASSIStANCE FROM Public defender OFFICE. ON POST CONVICTION ASSISTANCE.

PleASE And thank you So Much FoR your time HEIP KindNess God BIESS

If cousel had effectivly represented me Ramirez. It is likely thet I would of had a stronger case going into trial and this would have affected Mr ramirez's decision to enter into a plea. Mr Ramirez complained on more than one occasion to the Judge about his frustration with difense counsel. MR. Ramirez was denied effective assistance of counsel.

I ask for an attornsy to help. Evidentary Hearing,

I ask to Resubmit my habeaus petition this one to send to suprime court. Please and Thanke you for your Time. God Bless

PO Box 1059
Santa Fe nm 87504

Albert0
Ramirez
69897

COURTROOM ONE

ST. VS ALBERT RAMIREZ CR-07-434

| Time | Speaker | Note |
|---|---|---|
| 1:58:18 PM | CHANDLER | RXEX - DO YOU UNDERSTAND THE WORD PREMEDITATE, FIRST TIME YOU SHOT ELADIO WAS IN THE GARAGE, YOU PLANNED ON KILLING HIM IN THE GARAGE |
| 1:59:03 PM | COSBY | RDEX - FURTHER COMMENTS |
| 1:59:45 PM | | #2 WITNESS JOSE RAMIREZ JR. CALLED BY D / SWORN / DEX |
| 2:01:11 PM | | HOW OLD WERE YOU WHEN MR. ROBLEDO CAME INTO THE PICTURE |
| 2:01:52 PM | | DID YOU EVER BECOME AWARE OF HIM NOT LIVING IN THE HOUSE, HE CAME TO LIVE WITH ME FOR ABOUT 3 TO 4 MONTHS |
| 2:02:33 PM | | I ASKED HIM TO LEAVE AT THE END, I WAS ASKING HIM TO GO TO SCHOOL AND HE WOULD NOT FOLLOW RULES, |
| 2:03:05 PM | | DID HE HAVE ANY PROBLEMS WITH ELADIO ROBLEDO |
| 2:03:46 PM | | HE DID NOT HAVE ANY HATRED TOWARD'S HIM |
| 2:04:34 PM | | HOW YOU BECAME AWARE OF THE PROBLEM |
| 2:04:52 PM | | BENCH CONFERENCE |
| 2:06:33 PM | COSBY | WERE YOU AWARE OF ISSUES BETWEEN YOUR BROTHER AND SOME OTHER PEOPLE |
| 2:07:37 PM | | REMOVE DFT FROM COURTROOM |
| 2:07:49 PM | | JURY EXCUSED FROM COURTROOM |
| 2:08:47 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY |
| 2:08:56 PM | | THE COURT HAS ORDERED THE DFT TO THE OTHER ROOM TILL WE FIGURE OUT WHAT TO DO |
| 2:09:11 PM | CHANDLER | THERE IS CASE LAW IN NM READS IN TO RECORD |
| 2:10:59 PM | | HAVE A COPY OF CASE , ASKS COURT TO BRING HIM IN HERE AND GIVE HIM A STERN WARNING, IT WOULD BE THE STATES PREFERENCE TO REMAIN IN THE COURTROOM |
| 2:11:42 PM | COURT | WANTS TO SAY THIS ON THE RECORD MR. COSBY IS REPRESENTING THIS DFT AND IT IS DIFFICULT TO WORK WITH |
| 2:12:05 PM | COSBY | AT THIS JUNCTURE BY HIS OWN CONDUCT, HE HAS PUT FORTH TO THE JURY THAT I AM NOT REPRESENTING HIM , I KNOW THAT HE CREATED THE SITUATION, EVEN THOUGH THE COURT HAS ADMONISHED, THE FACT REMAINS HE HAS FIRED ME IN OPEN COURT, IF WE WANTS TO FIRE ME THAT IS HIS PEROGATIVE, IF THAT IS HIS DESIRE HE CAN GO FORWARD REPRESENTING HIMSELF ETC. |
| 2:14:07 PM | | IT IS HIS RIGHT TO REPRESENT HIMSELF, IF THAT IS HIS DESIRE AND HE WANTS TO REPRESENT HIMSELF |

10/10/2013

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

2017 MAY 31  PM 12: 21

CLERK DISTRICT COURT

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

ALBERT JOSE RAMIREZ,

Petitioner,

vs.                                                    No.    D-0905-CR-2007-00434

STATE OF NEW MEXICO,

Respondent.

## DECISION AND ORDER OF SUMMARY DISMISSAL

THIS MATTER having come before the Court on Petitioner's pro se Petition for Writ of Habeas Corpus filed March 22, 2017 and Petitioner's pro se Petition for Writ of Habeas Corpus filed April 25, 2017 (hereinafter collectively referred to as "Petition") in the above referenced cause number, and the Court being fully advised, enters its sua sponte order and FINDS:

This Court notes that the Petition is scribbled and nearly illegible. It appears that Petitioner is challenging his conviction based upon prosecutorial misconduct and ineffective assistance of counsel.

A review of the file shows that that Petitioner was convicted of various offenses including Murder in the First Degree in October, 2013. Petitioner appealed his conviction to the New Mexico Supreme Court. The New Mexico Supreme Court affirmed Petitioner's conviction. This case was subsequently assigned to this Court.

As to Petitioner's argument that there was prosecutorial misconduct, this claim is not properly supported by facts in the Petition. This Court finds that Petitioner is not entitled to relief as a matter of law in this regard.

CNMCWC&RCIFC&IJ
P O. Drawer 1328
Las Lunas, NM 87031

GCCF
P.O. Box 520
Santa Rosa, NM 88435

LCCF
6900 W Millon Dr
Hobbs, NM 88244

PNM
P.O. Box 1059
Santa Fe, NM 87504

SNMCF
P O Box 639
Las Cruces, NM 88004

SNMCF-POU
P.O. Box 30085
Las Cruces, NM 88006

WNMCF
P.O. Drawer 250
Grants, NM 87020

NENMDF
165 Doctor Michael Jenkins Rd.
Clayton, NM 88415

Name _____

No. _____ Unit _____

Date: _____

Ineffective assistance of appriate cou fel
Saying in my appeal I abandoned to
Shal counsel at trial Das ineffective it
shous as retoral I asked to call
dr. Maxine Swartz ora was dinued,
Rabel I would of gotton an
Evidentary Hearing on appeal
also Fedid not orgue I did not recieve
a fair Sentencing ora double Jeopardy
on tempering with Evidence.
I ask for an Evidentiary Hearing.

* To Show the true facts, Not Able
to write all the facts.
Thry is Alot more.
I want to make a proper
record.

Name _____

No. _____ Unit _____

Date: _____

Counsel did not call TS/cai nowitre who would of testified Robledo h.t ne ard was violet who I was 13 and the fought rovalcedo.

also TOR Komirez would testify Robledo was aggressive violent + attacked him everytime. He tried to go see me.

Counsel failed to get Medical records Evidence to show I was physically inturied at time of crime.

Thier was a complete breakdown in communication. I want The court To know I asked twice on record to speak to show I timely moved for removal of counsel, But the court refused to let me say anything about conflict between I and counsel.

I tried to put in record what trial counsel said after I tried to fire him. Court refused to inquire into it If The court had Id of got a New attorney of a Notice I asked to represt myself.

I was denied my Sixth admendment right to effective assistance of counsel.

I ask for an evidutory Hearing to Not allow me to speak on record.

Thanks vsey much

☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐

CNMCF/CMRU/CMU    GCCF    LCCF    FNM    SNMCF    SNMCF-POU    WNMCF    NENMDF
P.O. Drawer 1328    P.O. Box 520    6900 W. Millan Dr    P.O. Box 1050    P.O. Box 639    P.O. Box 20005    P.O. Drawer 250    105 Doctor Michael Jenkins Rd.
Las Lunas, NM 87031    Santa Rosa, NM 88435    Hobbs, NM 88244    Santa Fe, NM 87504    Las Cruces, NM 88004    Las Cruces, NM 88004    Grants, NM 87020    Clayton, NM 88415

```
Name _____
No. _____ Unit _____
                                        Date. _____
```

X rousi

MR COSBY  refused to address court and request a
Nistrial which if raised issue probably start trial
ouve if lawyer had done in Bettik joe of
protecting my rights

Also witness Pricilla lopez and Ricky Twamillo
949 witnesses would of testified that I am
Rial Skinny and helped prove I was the
one being chased in yard and that detectant
was mis leading witnesses.

Count at trial failed to call de Fmk as a witness
of trial as I asked. de Fmk would of testified
that I was Not completelt and Megtmily ell

I asked counsel to call de. Doar Busness 70
cross examine.

I asked counsel to investigate mental illness difusc
as I have family history of mental illess. + ___tuxican
History and drugs.
I did Express disatisfaction with counsel and the
court failed to inquire into the mattue.

Emr cosby promised if I testified I wamid be
able to speak of seruai abuse by Nibor and
my moms bayfriend He lied To wcrmment me.
If counsel did not lie I would Not have testified
and trial may have been different together
these errors all the prajudice Id be Entitled
to a new time.

Counsi at trial failed To give me the entire
discovery and did Not discuss any of the
case with Me. Beut I would take plea.

CNMCF/CMRU/CMU    GCCF    LCCF    PNM    SNMCF    SNMCF-PCU    WNMCF    NENMCF
P.O. Drawer 1328    P.O Box 520    6900 W Million Dr    P.O Box 1059    P.O. Box 639    P.O. Box 78005    P.O. Drawer 250    185 Doctor Michael Jenkins
Los Lunas, NM 87031    Santa Rosa, NM 08435    Hobbs, NM 88244    Santa Fe, NM 87504    Las Cruces, NM 88004    Las Cruces, NM 88004    Grants, NM 87020    Clayton, NM 88415

Exhibits Counse...

Name _____

No. _____ Unit _____

HABEAS PACKET Date: _____

QUESTION # 3 AND 4 IN THIS WAS INTEROFFICE COMPLAINT

COUNSEL at TRIAL VERBALY ASSAULTED I MR RAMIREZ
STATING I AM A STUPID little Bitch and IETBACK And
PROMISED TO BE INEFFECTIVE, IF I MR Ramirez
CONTINUED TO INSIST ON going TO TRIAL rather
than plead guilty as counsel insisted.
And threatened Me Ramirez by saying I Hope
you get life. Counsel would Not communicate
with I MR Ramirez as I tried to no avail.

Counsel would Not file Motions for Change of
venue even though there was Extensive Media
that was inadmissible, saying me Ramirez
threatened to kill His Mother and Step Father
and His Mother asked him out due to
His violent tendencies.

Counsel would Not suppress Evidence that I was
hiding in Car and they found FBP words talking
of shooting people.

MR Cosey would NOT call dr. Maranne Swartz to
testify for the defense of inability to perform
specific intent due to Mental illness. Severe depression
anxiety. Schizophrenia Paranoia, and my competency
to Stand trial.

I wanted to have Jury instruction of the issue of
competency Rule. 5-602 (B)(2)(B) and refused to
object to instruction I asked him to.

I also told counsel I did fall down when
Shuriff Called Me to walk to him and I was
coerced into Saying NO by Sherrif docerty and
gestured behind my lawyers back to say NO I
asked him to request a Mistrial to No avail.
THE Jury Seen ME Shocked I told My
lawyer to request A Mistral sheriff docerty
told Me to say I did Not fall and
I 12 to raise Me The State.                               FR

Steven Frobus

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

## MANDATE NO. S-1-SC-34576

TO THE DISTRICT COURT SITTING IN AND FOR THE COUNTY OF CURRY, GREETINGS:

RECEIVED
JAN 1 2 2017
APPELLATE DIVIS ON
PUBL'C DEFENDER DEPT.

WHEREAS, in causes numbered D-905-CR-2007-00434 on your criminal docket, wherein State of New Mexico was plaintiff and Albert Jose Ramirez was defendant, the district court entered judgment convicting defendant of willful and deliberate first-degree murder and tampering with evidence; and

WHEREAS, the cause and judgment were afterwards brought into this Court upon notice of appeal and statement of issues filed by defendant, whereupon such proceedings were had that on December 1, 2016, a decision was issued affirming defendant's conviction.

NOW, THEREFORE, this cause is remanded for further proceedings, if any, consistent and in conformity with the judgment of this Court.

IT IS SO ORDERED.

WITNESS, Honorable Charles W. Daniels, Chief Justice of the Supreme Court of the State of New Mexico, and the seal of said Court this 11th day of January, 2017.

(SEAL)

Joey D. Moya, Chief Clerk of the Supreme Court of the State of New Mexico

☐ CNMCF/CMRU/CMRI
P.O. Drawer 1328
Los Lunas, NM 87031

☐ GCCF
P.O. Box 520
Santa Rosa, NM 88435

☐ LCCF
6900 W Millen Dr
Hobbs, NM 88244

☐ PNM
P.O. Box 1059
Santa Fe, NM 87504

☐ SNMCF
P.O. Box 639
Las Cruces, NM 88004

☐ SNMCP-POU
P.O. Box 20035
Las Cruces, NM 88004

☐ WNMCF
P.O. Drawer 250
Grants, NM 87020

☐ NENMDF
185 Doctor Michael Jenkins Rd
Clayton, NM 88415

Name _____

No. _____ Unit _____

START

Date: _____

All these are that
part of old petition
was denied and No
lawyer to assist denied.

Abele

start

1.C End

ABCdE

Copies of

My Other Hospitals   3.22.17
                     4.25.17

Lverelost by prison
officials

3 copies of each page of these 1"

add of pages

Couldman, AZ

1) 3 choices Better Same or Worse
2) Take control one person 24/7.
   myself.
3) (RESPONSIBILITY)
   Ability to respond
   rather than react.
   10-15. emotionally. Stop doing my
   1 min steps from anxiety.

Self Esteem
Cope

Mental illness is no Excuse 4 bad behavior

I'm Sorry    I take responsibility.
in learning my ability to respond.
Think ne about was very inappropriate
one good to control one behavioral
I don't think I should be coming
twice per M same. of do seriously.
I didn't mean it in an inappropriate
I impulsive way.
[vey] in impulsive way.
thats what I'm working
on in therapy.

Form CD-180108.1
Revised 06/16/14

# NEW MEXICO CORRECTIONS DEPARTMENT

## Treatment Plan

☒ **Individual** ☐ **Group** ☐ **RDAP** ☐ **Other SUDs**

### TREATMENT PLAN AND CONTRACT:

| TREATMENT GOAL | Date goal set | TREATMENT Intervention and Frequency | Date Goal Met |
|---|---|---|---|
| Decrease symptoms of PTSD, i.e., flashbacks, nightmares, insomnia, numbness, sadness, anger, guilt, fear, etc. | 8/30/16 | Cognitive Behavioral Therapy at least one time per month in individual and/or group therapy to assist in identifying what triggers stressful memories and/or PTSD symptoms | |
| Increase coping skills to help deal more effectively with symptoms of PTSD | 8/30/16 | Assist in the development of positive coping skills at least one time per month in individual and/or group therapy. | |
| Reduction of the effects of traumatic memories on daily functioning. | 8/30/16 | CBT and/or Motivational Interviewing (MI) at least one time per month in individual and/or group therapy to assist in desensitization. | |
| Reduction of Intrusive Symptoms, i.e. intense or prolonged psychological distress or marked physiological reactions at/to exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event (s) | 8/30/16 | CBT, Motivational Interviewing (MI) and/or psychoanalytical therapy at least one time per month in individual therapy. | |
| Medication Compliance | 8/30/16 | Comply with medication prescribed by psychiatrist and cooperate with appropriate feedback, as indicated. | |

### CONTRACT:

1.  I will attend scheduled treatment sessions unless I have a mandatory institutional appointment.
2.  I will participate in the therapeutic process. There may be times when dealing with my issues may be uncomfortable or difficult.
3.  I understand that there are limitations to treatment.
4.  I understand that there are potential adverse outcomes to treatment.
5.  I understand that I can refuse to participate in any part of this treatment plan if it adversely impacts my safety, security, or health.
6.  I understand that my treatment sessions will address my treatment goals.
7.  I will complete assigned treatment homework (if any is assigned by my clinician).
8.  Other _____

**By signing below, I am consenting to the treatment plan and contract:**

| | |
|---|---|
| **Ramirez, Alberto**<br>Inmate (Printed Name) | *6 9892 AIBEPTO JOSE. RAMEREZ  8/30/16<br>Inmate Signature                                    Date |
| **Beatrice Narcisco, PhD, LPCC**<br>Clinician (Printed/Typed Name) | B. Narcisco, PhD, CPC   8/30/16<br>Clinician Signature                          Date |
| **Eileen R. Missall, MA, LPCC**<br>Behavioral Health Reviewer (Printed/Typed Name) | Reviewer Signature                   8/30/16<br>Date |

Inmate Name: **Ramirez, Alberto**

NMCD#: **69597**

Treatment Plan

Facility: **CNMCF/MHTC**

Form CD-180108 1 (Rev 06/16/14)

Today's Ads | Newsletter and Text Alerts | ePaper Login | Local Business Directory | Newspaper in Education | Maps

## New Mexico
### a gasglance.com
Find Low Gas Prices In Your Area. Save w/ The Gas Calculator! Get App

HOME   NEWS   SPORTS   OBITUARIES   BLOGS   CLASSIFIEDS   JUST TV   SECTIONS   AUTOFINDER

JUNE 13, 2014

# Teen charged with murder has competency issues

July 16, 2008

Courtesy photo Ramirez is charged with first-degree murder in the shooting death of 39-year-old Eladio Robledo in July 2007.

By Sharna Johnson; CNJ staff writer

A year after being charged in the shooting death of his mother's boyfriend, a Clovis 19-year-old's case is on hold pending psychological treatment.

Albert Ramirez is being treated at the Behavioral Health Institute at Las Vegas, N.M., after being declared to be incompetent and dangerous. District Judge Ted Hartley made the ruling after reviewing the results of a forensic psychological evaluation.

Ramirez is charged with first-degree murder.

District Attorney Matt Chandler said examiners believe with treatment Ramirez could be brought to a level of competency to stand trial.

Court records do not specify the nature of Ramirez' competency issues.

He is accused of shooting 39-year-old Eladio Robledo in July 2007 outside a Sixth Street home the victim shared with Ramirez' mother.

Robledo died a short time later at the hospital from multiple gunshot wounds.

A witness told police he saw Ramirez shooting at Robledo, who was laying on the sidewalk.

Debra Ramirez told police she feared her son because of his violent tendencies and made him move out when he reached 18. She filed a no-trespass order against him about four months before the shooting, records show.

Debra Ramirez told police her son had been threatening her and told her, "something bad was going to happen and it was going to be her fault," according to a police report.

After the protection order was filed, Ramirez' mother reported her son broke a window at her home because she wouldn't let him in.

Police said Albert Ramirez also admitted on another occasion he broke the windshield of his mother's car because he "got mad."

Debra Ramirez could not be reached for comment.

According to the April order issued by Hartley, Ramirez is to undergo treatment for up to nine months until such point as he attains competency.

Chandler said a defendant is found incompetent to stand trial when it is determined they cannot assist in their own defense or understand the way the judicial system works or the proceedings.

In March, Ramirez was charged with two counts of battery on a peace officer.

According to an arrest affidavit filed in magistrate court, transport officers said they had to carry Ramirez into and out of the courtroom when he refused to walk during a court appearance. After

Search this website ...   Search

ADVERTISEMENT



## Public Arrest Records

@ beenverified.com/Arrest_Records
Search Any Name for Free! Step 1) Enter Name.
2) View Arrest Records

Nursing School Online

Blog Professionally

Job Openings

### LOCAL WEATHER

CLOVIS
64°
Cloudy
High: 84° Low: 61°
Wind: 3 16 mph
Humidity: 63%

ADVERTISEMENT

Luxury Consignment
Up to 90% off.



The RealReal   SHOP NOW »

ADVERTISEMENT

buy the Paper   Today's Ads   Newsletter and Text Alerts   ePaper Login   Local Business Directory   Newspaper in Education   Maps

You're missing the video converter tool.   **Click Here**

HOME   NEWS   SPORTS   OBITUARIES   BLOGS   CLASSIFIEDS   JUST TV   SECTIONS   AUTOFINDER                                    JUN. 13, 2014

# Accused killer takes witness stand

October 10, 2013

**By Robin Fornoff**

CMI PROJECTS EDITOR

rfornoff@cnjonline.com

Accused killer Albert Ramirez spent two hours on the witness stand — against his lawyer's advice — then was removed from the courtroom Thursday for his continued disruptions.

Ramirez took the witness stand for about two hours, telling jurors in rambling and sometimes tearful accounts that he was defending himself when he shot and killed his mother's boyfriend six years ago

Ramirez is charged with first-degree murder, accused of lying in wait and gunning down Eladio Robledo, 39, of Clovis, in July 2007, as he left his house on west Sixth Street for work.

Ramirez faces life in prison if convicted.


Albert Ramirez
On trial for murder

Ramirez continued his efforts that have peppered the trial since it began Monday, trying to speak to District Judge Teddy Hartley despite warnings from the judge and pleas from his defense attorney Jesse Cosby to stop.

Hartley gave Ramirez his final warning after District Attorney Matt Chandler ceased his cross examination and Cosby said he had no questions for redirect. Taking a seat next to Cosby, Ramirez said loud enough for the jury to hear, "Why didn't you ask me more questions?"

"If you don't quit talking," Hartley said, "I'm going to remove you."

Minutes later, Ramirez started talking again as his brother, defense witness Jose Ramirez took the stand. An exasperated Hartley pointed toward Ramirez and ordered sheriff's deputies to "take him out of this courtroom."

Two deputies grabbed Ramirez, who shouted "he's not asking questions ... he's not representing me," as the jury watched.

Until Thursday, Ramirez's disruptions came during periods when the jury was sequestered outside the courtroom. Cosby told Hartley he was now concerned the outburst planted seeds of doubt in the minds of jurors about his representation of Ramirez.

"He's fired me in open court in front of the jury," said Cosby.

Hartley, noting Cosby seemed to have a calming effect on Ramirez outside the proceedings, told him to talk to his client.

After about a 40-minute break, both sides returned and Cosby said Ramirez had decided to keep him as defense attorney. Hartley then warned Ramirez if there was one more outburst or disruption, he would have Ramirez removed and proceed with the defendant watching the rest of the trial in another room by video camera.

Search this website ..   Search

ADVERTISEMENT

Nursing School Online
chamberlain.edu
Earn Your RN To BSN in 3 Semesters Online, Affordable & User Friendly!

Public Arrest Records
Search Obituaries Free
Job Openings

LOCAL WEATHER

CLOVIS
64°
Cloudy
High 84° Low 61°
Wind: E 13 mph
Humidity 80%

ADVERTISEMENT


FARMERS INSURANCE
Rosalind Riley-Smith
Home • Auto • Life
Request A Quote
www.OneInsuranceRileySmith.com

ADVERTISEMENT

Buy the Paper    Today's Ads    Newsletter and Text Alerts    ePaper Login    Local Business Directory    Newspaper in Education    Maps

EXIBIT 13

You're missing the video converter tool.    **Click Here**

HOME   NEWS   SPORTS   OBITUARIES   BLOGS   CLASSIFIEDS   JUST TV   SECTIONS   AUTOFINDER          JUNE 13, 2014

# Homicide suspect ruled competent enough to stand trial

September 17, 2008

Search this website...   [Sea rch]

By Sharna Johnson: CNJ staff writer

ADVERTISEMENT



Luxury Consignment
Up to 90% off.

The RealReal          SHOP NOW >

A judge ruled Tuesday 20-year-old Albert Ramirez, accused of shooting his mother's boyfriend in 2007, is competent to stand trial.

District Judge Teddy Hartley issued the ruling after hearing testimony Monday from a clinical psychologist with the New Mexico Department of Corrections who evaluated Ramirez.

No trial date has been set.

Dr. Joanne Burness told the court Ramirez is a "disturbed young man" who likely has a mood disorder but is not mentally ill, court records showed.

She said Ramirez experiences hyperactivity, is easily angered and seeks sympathy, but that he understands and can assist in his defense, according to a transcript of the hearing.

Burness also told the court that during treatment, Ramirez inquired about how he could get his charges reduced and talked a lot during the three months he was there about the value of being found not competent.

Ramirez is charged with first-degree murder in the shooting death of 39-year-old Eladio Robledo

Police said Ramirez shot Robledo outside a Sixth Street home the victim shared with Ramirez' mother.

The subsequent investigation revealed a history of violence Ramirez directed at his mother and Robledo. Prior to the shooting, Debra Ramirez had filed no trespass orders against her son and told police she was afraid of him.

At the Monday hearing, defense attorney Brett Carter asked the judge to return Ramirez to Las Vegas for further treatment.

Carter argued that Ramirez was not tested thoroughly and that he does not believe he can assist in his defense.

Ramirez was transferred in June to the Behavioral Health Institute at Las Vegas, N.M., for treatment after he was declared dangerous and incompetent.

Ramirez' criminal case had been put on hold pending the outcome of the evaluations.

**Share this post:**   | Email |   Facebook |   Twitter |   Google |   Reddit |

Filed Under: News          Tagged With: accused, albert, competent, mother, old, ramirez, ruled, stand, suspect, trial

LOCAL WEATHER



CLOVIS
64°
Cloudy
High: 86° Low: 61°
Wind: 3-13 mph
Humidity: 85%

ADVERTISEMENT



FARMERS
INSURANCE

Rosalind
Riley-Smith
Home • Auto • Life

Request A Quote

www.ClovisInsuranceRileySmith.com

ADVERTISEMENT

page 54

Buy the Paper    Today's Ads    Newsletter and Text Alerts    ePaper Login    Local Business Directory    Newspaper in Education    Maps

## Search Obituaries Free

ancestry.com/Obituaries

1) Search anyone's name. 2) View their obituary instantly.

HOME    NEWS    SPORTS    OBITUARIES    BLOGS    CLASSIFIEDS    JUST-TV    SECTIONS    AUTOFINDER

JUNE 13 2014

# Police arrest shooting suspect

July 16, 2007

Search this website    Search

ADVERTISEMENT

By Sharna Johnson: Freedom Newspapers

A tip from a citizen led to the arrest of a Clovis teen who police say shot and killed his mother's boyfriend Thursday, police said

Albert Ramirez, 18, was arrested without incident at 713 W. 13th St. around 8:30 a.m. Sunday morning, a press release from Clovis police said.

He is accused of shooting Eladio Robledo, 39, multiple times in the front yard of 512 W. 6th St., a residence Robledo shared with Ramirez' mother Debra Ramirez.

Ramirez is being held at the Curry County Adult Detention Center on $100,000 bond, court records show.

Ramirez told police she was in the house and heard shots. When she looked outside, she saw her son running away carrying a handgun, an arrest affidavit filed in district court Monday said.

A neighbor across the street told investigators he heard three popping noises and went houtside where he saw Robledo laying on the sidewalk "covering his head with his hands and yelling," the affidavit said.

The affidavit said the witness saw Ramirez standing over Robledo with his hands outstretched toward the victim as if he was holding a gun and then two more shots were fired.

The man told police he went to call 911 and when he returned, Ramirez was gone. He tried to help Robledo, who was bleeding from the head and unresponsive, the affidavit said.

Robledo was pronounced dead at the hospital, the affidavit said.

Debra Ramirez told police her son made death threats against her and her boyfriend before, according to the affidavit.

June 22, about three weeks before the shooting, Albert Ramirez was placed on six months probation for smashing the windshield of Robledo's car March 31.

Ramirez admitted smashing the window out of anger, a police report said.

A judge ordered him to attend the next available session of the Alternative Sentencing Programs and Educational Networks program, or ASPEN. Court records do not indicate if he had yet completed the program.

In a separate police report filed June 19, Debra Ramirez called police and told them her son smashed the front window of her home because she wouldn't let him in the house

She said Ramirez was banging on the door and she didn't let him in because she was afraid he would hurt her, the report said.

Ramirez was not charged in the second incident, according to court records.

Calls to Debra Ramirez seeking comment were not returned Monday

LOCAL WEATHER



CLOVIS
64°

Cloudy
High: 84° Low: 61°
Wind: 8 15 mph
Humidity: 93%

ADVERTISEMENT

Luxury Consignment
Up to 90% off.



The RealReal    SHOP NOW »

ADVERTISEMENT

## Free Eviction Notice Form

🅡 evictionnotice.rocketlawyer.com

Free Eviction Notice. All States. Print, Save, Download 100% Free.

# Albert Ramirez sentenced to life in murder of mother's boyfriend

January 8, 2014

By Robin Fernoff
CMI Projects Editor
rfernoff@cnjonline.com

A sobbing Albert Ramirez pleaded for sympathy Wednesday at his sentencing for the 2007 murder of his mother's boyfriend.

District Judge Teddy Hartley responded: "It would be wrong for you to live in society," and gave Ramirez life plus six years in prison for what District Attorney Matt Chandler called the cold-blooded killing of 39-year-old Eladio Robledo of Clovis.

"You take your life now and do the best you can under the circumstances," Hartley told Ramirez. "I wish you luck."



CNJ staff photo: Robin Fernoff
Albert Ramirez, 25, of Clovis looks over the courtroom Wednesday while awaiting sentencing for the 2007 murder of his mother's boyfriend, Eladio Robledo. District Judge Teddy Hartley gave Ramirez the maximum sentence of life plus six years in prison.

Ramirez was convicted by jury in October after a week-long trial peppered by his repeated outbursts, forcing Hartley to remove him from the courtroom at one point. Ramirez claimed he was ill, that he couldn't comprehend what was happening and he wanted to fire his court-appointed attorney Jesse Cosby of Roswell

As he did at trial, Hartley praised Cosby for "conducting trial perfectly" under circumstances Ramirez made difficult.

Chandler reminded Hartley before sentencing that evidence at trial showed Ramirez planned the murder of Robledo. It was retaliation for Robledo and Ramirez's mother obtaining a court order to force Ramirez out of their home, he said.

Chandler said Ramirez, then 18, waited outside the home the morning of July 12, 2007, with a loaded .22 caliber pistol. Robledo was confronted outside by Ramirez. There was a fight that left a blood trail from a garage at the rear of the house to the front sidewalk, where witnesses testified they saw Ramirez standing over Robledo firing the gun at his head execution style.

Chandler called the killing "premeditated ... calculated ... and cold blooded." He noted a pre-sentence report branded Ramirez a malingerer who blamed the system, his attorney, the police, the district attorney and the courts for problems he alone created.

At one point Ramirez's older brother, Israel Ramirez, awaiting trial on multiple felony charges unrelated to the case, was led into the courtroom in shackles and a bright orange jail jumpsuit to plead for a lighter sentence for "my little brother."

"He's a good kid," Israel Ramirez told Hartley. "If I could switch places with him I would."

Search this website ..   Search

ADVERTISEMENT

## LOCAL WEATHER

CLOVIS
64°

Cloudy
High: 84° Low: 61°
Wind: S 15 mph
Humidity: 83%

ADVERTISEMENT

**FARMERS**
INSURANCE

Rosalind
Riley-Smith

Home • Auto • Life

Request A Quote

www.ClovisInsuranceRileySmith.com

ADVERTISEMENT

Ex(B)+

ST VS ALBERT RAMIREZ CR-07-434                          CR1 CHAMBERS

| Time | Speaker | Note |
|------|---------|------|
| 10:58:56 AM | CHANDLER | ON XEX GONNA ASK THIS COURT FOR ABOUT 10 OR 15 MINUTES WOULD LIKE TO DISCUSS WITH CO COUNSEL, SAID HE HAS NOT TESTIFIED BEFORE, I RENEW MY |
| 11:00:15 AM | COSBY | IT WAS NOT A JURY TRIAL IT WAS A BENCH TRIAL, HE BATTERED A TRANSPORT OFFICER |
| 11:01:15 AM | COURT | IF XEX TRIGGERS I WILL CHANGE MY RULING |
| 11:01:44 AM | RECESS | |
| 3:44:06 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY, DFT AND ALL PARTIES PRESENT |
| 3:44:27 PM | CHANDLER | DEFENSE HAS RESTED AND HAVE GIVEN US A COUPLE OF INSTRUCTIONS GUILTY BUT MENTALLY ILL, HE IS ATTEMPTING TO RAISE COMPETENCY, OUR REBUTTAL WITNESSES ARE GOING TO TESTIFY THAT THEY HAVE EXAMINED THE DFT, ETC. |
| 3:45:47 PM | COURT | HAVE NOT SEEN A DFT THE WAY THIS TRIAL HAS UNFOLDED |
| 3:46:20 PM | CHANDLER | WE HAVE CASELAW |
| 3:46:30 PM | COSBY | I AM NOT GOING TO SUBMIT A COMPETENCY INSTRUCTION, |
| 3:46:46 PM | CHANDLER | WE ARE NOT OBJECTING, THE ONLY MENTAL ILLNESS THAT PROBABLY COULD HAVE BEEN TESTIFIED, DFT TOOK STAND AND HE DID NOT RAISE ISSUE |
| 3:47:42 PM | COSBY | THE GBMI WAS AVAILABLE, BUT THAT DOES NOT DEPRIVE HIM OF THE RIGHT TO HAVE IT SUBMITTETD, GBMI VERDICT IS NOT SOMETHING TO GIVE, HE IS ENTITLED WE HAVE TENDERED IT, |
| 3:48:58 PM | COSBY | OPPOSES TO REBUTTAL WITNESSES BEING CALLED |
| 3:49:17 PM | COURT | BASIS UPON |
| 3:49:34 PM | MORRIS | THEY WERE CALLED , THEY ALSO CAN TESTIFY AS TO THEIR OPINION |
| 3:50:52 PM | | HE LISTED BOTH OF THESE DOCTORS, HE HAS NOT LISTED DR. SWARTZ |
| 3:51:10 PM | CHANDLER | YOU CANNOT BRING IN AN EXPERT YOU HAVE NOT DISCLOSED |
| 3:51:27 PM | COURT | AS A PRACTICAL MATTER WHAT YOU DO IN YOUR INSTRUCTIONS YOU HAVE A GUILTY AND GUILTY BUT MENTALLY ILL, |
| 3:52:06 PM | COSBY | WE ARE NOT GOING TO ASK FOR SELF DEFENSE, WILL WITHDRAW BECAUSE OF MENTAL ILLNESS OR DEFECT |
| 3:52:52 PM | OFF RECORD | |

10/10/2013                 Ex:(B)+ 12,                    3 of 5

# RETURN AND INVENTORY

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

2007 JUL 13 PM 3: 30

STATE OF NEW MEXICO
-VS-
Albert Ramirez,
D.O.B.     /88
SSN:     7793,

D-0905- Susan Aragon-Gout
CLERK DISTRICT COURT

and a silver blue Cadillac 4-door bearing Texas license W55HHS

I received the attached Search Warrant on __07/12/07__    And executed it on __07/12/07__
at __2235__ Hours. I searched the person or premises described in the Warrant and left a copy of the Warrant with:

_____None present at scene_____
(name of the person searched or owner at the place of search)

Together with a copy of the inventory for the items seizes. The following is an inventory of the property taken pursuant to the Warrant:

- 1 photo of suspect and unknown black male (Gang Writings)
- 1 paper with writing about shooting people
- 1 letter to Albert Ramirez denying his SSI benefits

This inventory was made in the presence of        Ricky M. Smith        and        Randy Pitcock
                                                  Applicant for Search Warrant                Owner or other witness

_____                                        _Randy Pitcock_
Signature of Officer or Detective                                Signature of Owner or Witness

Return made this _____ day of _____, 2007 at _____ hours.

_____
(Judge Clerk)

After a careful search, I could not find at the place, or on the person described, the property described in this Warrant.

_____                                        _____
(Officer)                                                      (Date)

E.V.B. + 11                                                     EXHIBIT (U)
                                                               page 5

$EVIBIT$ $11$

## STATE OF NEW MEXICO
## COUNTY OF CURRY
## IN THE DISTRICT COURT

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

2007 JUL 13 PM 3:30

_Deonna Grant_
, CLERK DISTRICT COURT

D-0905- _SW_/ 0200 _7_ 00 _001_

STATE OF NEW MEXICO

-VS-

Albert Ramirez,
D.O.B.          88
SSN:          7793,
511 E. 6th Street, Clovis, Curry County, New Mexico,
and a silver blue Cadillac 4-door bearing Texas license W55HHS

## AFFIDAVIT FOR SEARCH WARRANT

I, Ricky M. Smith, being dully sworn, on my oath, state that I have reason to believe that on the premises described below, and/or on the person described above:

Residence located at 511 E. 6th Street, Clovis Curry County, New Mexico. Residence is tan stucco with white trim, single story, multi-family dwelling that sits on the south side of East 6th Street facing north, and between Wallace Street and Sheldon Street. The residence is identified with 511 E. 6th Street on a white mailbox, stenciled in black letters. The residence has white trim, with a tan composite roof. The front door is a glass and white metal screen door that faces north. The vehicle is parked on the street in front of the residence.

### IN THE STATE OF NEW MEXICO, COUNY OF CURRY THERE IS NOW BEING CONCEALED CERTAIN PROPERTY, NAMELY:

Firearms, rifles, shotguns, or pistols, ammunition for firearms, and projectiles and missiles that may have been discharged from a firearm. Blood, blood spatter, other genetic material including saliva or other secretions. Other evidence to include fingerprints, skin, hair, and fibers. Clothing, bloodied clothing, to include shoes, shoeprints, trousers, shirts, undershirts, underwear, and socks, and bloodied towels or other cloth.

Albert Ramirez, Date of Birth:          88, Social Security Number          7793, Hispanic male, Approximately 5'5" tall, 120 lbs., black hair, brown eyes

The items listed above have been obtained or are being possessed in a manner which constitutes a criminal offense, are designed or intended for use or which have been used as a means of committing a criminal offense, and would be material evidence in a criminal prosecution. The facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows:

On Thursday, July 12, 2007, at about 1339 hours, Officers of the Clovis Police Department were dispatched to the area of 515 W. 6th Street, in Clovis, Curry County, New Mexico, in reference to a 911 call for shots fired. The caller also relayed that there was a subject on the ground and that the suspect in the shooting had run off on foot to the north using the alley. Officers arrived on scene, noted the male body on the ground. The subject on the ground was subsequently identified as Eladio Robledo Valdez. The officers checked the area for the suspect, identified as Albert Ramirez, a Hispanic male, wearing a white shirt and blue jean shorts. The victim, who resides at 512 W. 6th Street, was on the ground in front of the residence. According to preliminary information provided by the caller, the victim had been shot by the suspect, fallen to the ground, and been shot again. Ambulance personnel arrived and the victim was transported to Plains Regional Medical Center Emergency Room. The scene was secured.

The Major Crimes Unit was activated. Investigators were dispatched to the crime scene at the 512 W. 6th Street and other Investigators were dispatched to the Special Operations Unit of the Clovis Police Department, to

2

$EXB.+11$

page 49

interview witnesses and other persons.

Contact was made with the 911 caller, Grace Finkey, who witnessed the incident, recognized the shooter, and contacted law enforcement. The victim, Eladio Robledo Valdez was pronounced deceased while at PRMC. According to the mother of the suspect, Albert has a large blue car, containing all his personal belongings. The vehicle was broken down in front of 511 E. 6th Street. Officers responded to the residence and observed the silver blue Cadillac parked on the street in front of the duplex. The vehicle contains a large amount of clothing and other personal items, possibly belonging to Albert Ramirez. The duplex at 511 E. 6th Street is currently vacant. The front window, facing north is open and raised approximately 8". The front and back doors are locked. The window on the east side of the building is unlocked with the screen removed. There are handprints on the exterior of the glass indicating that the window was pushed up to open the window. There are two cinderblocks under the window to provide easy entry into the window. The suspect, Albert Ramirez may be hiding within the vacant duplex to avoid detection and apprehension by law enforcement.

Based on this I believe that evidence relevant to the shooting may be within the residence or the vehicle described, and located at 511 E. 6th Street, Clovis, Curry County, New Mexico.

*HEARSAY CANT JUST SEARCH CAUSE WHAT HE BELIEVES, NO matter if he's A cop!!! might be good to try and fight whatever evidence found within the*

Affiant is a full-time salaried, sworn Law Enforcement Officer currently employed with the Clovis Police Department. Affiant's current assignment is Detective with the Special Operations Unit, and member of the Major Crimes Unit. *Warrant!*

SUBSCRIBED AND SWORN TO BEFORE ME IN THE ABOVE NAMED COUNTY OF THE STATE OF NEW MEXICO,

THIS __12__ DAY OF __July__ , 2007.

_____
JUDGE

_____
TITLE

_____
AFFIANT

_____
TITLE

APPROVED BY ASSISTANT DISTRICT ATTORNEY __Matthew Chandler__ ON __July 12, 2007__

EXHIBIT 11,

EXHIBIT 11

EXHIBIT

page 4448



EX·BIt 10

1 offer an instruction on competence, nor did he object to the instructions given the jury.

2 Therefore, this issue was not properly preserved for appeal.").

3 **B.    Defendant did not receive ineffective assistance of counsel**

4 {27}    Defendant's second argument is that he was denied effective assistance of

5 counsel because defense counsel "lacked the necessary assistance of [Defendant]

6 himself"; failed to "'seek the assistance of necessary experts,' and if more money was

7 required to seek such assistance on an urgent basis counsel should have requested it"

8 (citation omitted); and failed to obtain a reevaluation and attempted to withdraw the

9 motions to determine competency, resulting in prejudice to Defendant. Counsel has

10 abandoned the claims that trial counsel failed to call other witnesses or made promises

11 to the Defendant because these claims are unsupported by the record. As such, we

12 decline to review these claims.

13 {28}    One week prior to trial, the district court denied Defendant's motion to appoint

14 new counsel. Trial commenced as scheduled. On the fourth day of trial, defense

15 counsel informed the court of his decision not to call a witness on the record, as it was

16 against Defendant's wishes. Defendant then addressed the court, against counsel's

17 advice, about how his defense had been limited, how his mental illnesses affected him,

18 the amount of media his case was receiving, the quality of his attorney's



EXIBIt 15



page 47

EXBIT 10

1 competency by Dr. Fink in January 2013, Defendant spoke directly to the court,

2 though he was represented by counsel, and asked for a fifth forensic evaluation to

3 determine his competency. Defendant argued that a new evaluation would show he

4 was suffering from "psychosomatic delusions and hallucinations and severe

5 depression and anxiety." The judge listened to Defendant's request and then denied

6 it.

7 {17}    This case is similar to *State v. Flores*, 2005-NMCA-135, 138 N.M. 636, 124

8 P.3d 1175. In *Flores*, the Court of Appeals addressed whether an unsupported

9 declaration against competency made prior to trial rose to the level of reasonable

10 doubt. In that case, just before trial, the defendant's counsel asked the court to find

11 that the defendant was incompetent to stand trial. *See id.* ¶ 7. The defendant's

12 counsel cited her own experience with the defendant as the basis of the request, stating

13 her belief that his condition had deteriorated because he had been held in isolation

14 since the competency hearing. *See id.* ¶ 8. The Court held that while "a court may

15 consider defense counsel's observations and opinions . . . those observations and

16 opinions alone cannot trigger reasonable doubt about the defendant's competency."

17 *Id.* ¶ 29. The Court also concluded that the testimony of experts is not required to

18 support a contention of incompetency, but "[i]nstead, a defendant could offer an

9

EXBIT 10



1 representation, motions he wanted filed, and other issues he indicated that he would

2 present in his appeal.

3 {29} Defendant then demanded to be the first defense witness so he could

4 communicate his defense. During his direct examination, Defendant refused to

5 answer many questions directly saying he wanted to "explain everything." Defendant

6 then attempted to dismiss his counsel in front of the jury, forcing the court to remove

7 the Defendant and recess the trial. Later, after the parties rested, Defendant had

8 another outburst, complaining that he had a right to know what the jury instructions

9 would be so that he could file motions. The court told Defendant that he was being

10 well-represented and the instructions were fair.

11 {30} At Defendant's sentencing hearing, Defendant complained to the court that his

12 defense counsel had failed to effectively represent him and that he did not receive a

13 fair trial. Defendant argued that the jury would not have convicted him had it fully

14 understood that he was the victim. The district court assured Defendant that he had

15 received excellent representation and pronounced the sentence.

16 {31} "This Court has repeatedly stated that ineffective assistance of counsel claims

17 are best served through habeas corpus proceedings so that an evidentiary hearing can

18 take place on the record." *State v. King,* 2015-NMSC-030, ¶ 33, 357 P.3d 949

deal with his outburst and attempt to fire his own attorney. Mr. Ramirez

needed to be able to assist his attorney. *See State v. Rotherham*, 1996-

NMSC-048, ¶ 13,122 N.M. 246. "Proper assistance encompasses more than

merely providing information but is extended to the comportment in the

courtroom before a jury." *U.S. v. Williams*, 113 F.3d 1155, 1160 (C.A.10

(N.M.) 1997) (citation and internal quotation marks omitted). As this brief

lays out in the accounts of his testimony, Mr. Ramirez lacked the ability to

comport himself during the trial. The judge, in a vast understatement, noted

that Mr. Ramirez was difficult to represent. **[10-10-13 CD B 2:07:30-**

**2:41:36]**

Earlier, outside the presence of the jury Mr. Ramirez complained that

the trial was "not fair" because he wasn't being asked questions that he

thought were necessary. He made allegations of having been sexually

assaulted by a witness. **[10-10-13 CD B 10:40:41-10:58:56]** The judge

himself stated that he had never seen a defendant act the way Mr. Ramirez

was acting. **[10-10-13 CD B 3:45:47-3:46:20]**

Defense Counsel had asserted that Mr. Ramirez was incompetent and

made a motion for a recess to allow for a reevaluation of his competency.

"The issue of a defendant's competency to stand trial may be raised by

motion, or upon the court's own motion, at any stage of the proceedings."

31

Rule 5-602(B)(1) NMRA. Rule 5-602(B)(2)(b) states that if competency to stand trial is raised during trial, the jury "shall be instructed on the issue." In this case no such instruction was proffered or given.

An assertion of incompetency by defense counsel must be substantiated. *Flores*, 2005-NMCA-135, ¶ 20 (citation omitted). The evidence described above substantiates counsel's assertion. "[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required…" *Drope*, 420 U.S. 162, 180. "Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." *Id.* at 181.

Mr. Ramirez's case can be distinguished from the recently issued decision of this Court in *State v. Solomon*, No. 33,975 (N.M. Sup. Ct. Aug 4, 2014) (non-precedential). In *Solomon* this court found that a District Court did not abuse its discretion by not ordering a mental health evaluation to see if the defendant was competent to stand trial. In *Solomon* the defense attorney never actually made a motion for a competency evaluation. *Id.* ¶ 12.



relates that "for more than two decades, there has been the suggestion that mental health clinicians do not like patients with personality disorders…" and that "[t]hese attitudes may adversely affect delivery of health care provision and as such make it more difficult for patients with personality disorder and comorbid mental disorders to access and receive appropriate management for either disorder." Peter Tyrer, Ruger Mulder, et al, "Personality disorder: a new global perspective," World Psychiatry, Feb. 2010; 9(1):56-60, found online at

http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2816919/ .

The two cases, *Flores* and Mr. Ramirez's, have a parallel structure: The defendant was found incompetent, sent to Las Vegas and hastily treated to competency, then sat in jail (possibly decompensating) for months on end while waiting on a trial date.

In summary, there was substantial evidence that Mr. Ramirez needed to have his competency to stand trial reevaluated. His case more than meets the bar set by *Flores* for a reevaluation. The desire to move his case should not have taken precedence over Mr. Ramirez's need for a reevaluation. The failure to have him reevaluated created a substantial risk that he was tried while incompetent to stand trial, the very risk that raising competency is supposed to ameliorate.

35

ST. VS ALBERT RAMIREZ  CR-07-434                                    CR1 CHAMBERS

| Time | Speaker | Note |
|------|---------|------|
| 3:54.07 PM | CHANDLER | GOING TO ASK FOR A RULING FROM THIS COURT IF DEFENSE IS GOING TO ALLOW SUR REBUTTAL |
| 3:54:50 PM | COURT | YOU TAKE POSITION THAT HE IS PRECLUDED, THE COURT HAS LEE WAY |
| 3:55:42 PM | COSBY | YOU ARE CALLING THEM ON REBUTTAL |
| 3:56:04 PM | COURT | I DO NEED TO REMIND EVERYBODY THAT I EXCEPT PLEAS |
| 3:56:17 PM | MORRIS | RESPONDS |
| 3:56.36 PM | COSBY | THERE HAS BEEN NO DISCLOSURE, IF THEY CALL I WILL CALL MS. SWARTZ ON SIR REBUTTAL, LAST FINDING I HAD HE WAS COMPETENT, I AM WITHDRAWING COMPETENCY, AND IF I |
| 3.58:39 PM | COSBY | HE NEVER EXPRESSED ANY HATRED TO PLAN A MURDER |
| 3.59:02 PM | CHANDLER | IF WE CALL OUR EXPERTS |
| 3.59:11 PM | COURT | IT IS A MATTER OF JUSTICE |
| 3:59:32 PM | COURT | WE ARE NOT IN THE KIND OF SITUATION WHERE YOU HAVE A SURPRISE |
| 3.59.55 PM | CHANDLER | WE DID NOT DROP IT JUST NOW, |
| 4:00:09 PM | COURT | THOSE REPORTS ARE AGED |
| 4 01:04 PM | CHANDLER | WHAT HE IS DOING TODAY |
| 4:01:23 PM | COSBY | WILL WITHDRAW COMPETENCY AND GUILTY BUT MENTALLY ILL |
| 4:02:03 PM | CHANDLER | HE CAN WITHDRAW BUT HIS ARGUEMTN HIS CLIENT IS SEEING THINGS AND HEARING THINGS |
| 4.02:25 PM | COURT | IF WE TAKE THIS TESTIMONY AND TAKE WILL TAKE |
| 4:03:14 PM | COSBY | MOTION AS FAR AS THE TWO COUNTS AND DOUBLE JEOPARDY ISSUES, IT WOULD BE A VIOLATION , IT WOULD BE ONE ACT OF TAMPERING WITH EVIDENCE, THE PHONE CALL WAS ATTEMPTING |
| 4 05 00 PM | CHANDLER | THE MOTION THAT MR COSBY MADE |
| 4:05 10 PM | COURT | THERE IS EVIDENCE , THAT THE PANTS AND GUN NOT FOUND WERE PLACED AT A DIFFERENCE PLACE, THE FACT THAT THE BRITCHES WERE FOUND AND NOT THE GUN DENIES THE MOTION |
| 4:05 51 PM | CHANDLER | |
| 4 05.59 PM | MORRIS | WHY DOES HE WANT TO RAISE SIR-REBUTTAL |
| 4:06:31 PM | COSBY | SIR-REBUTTAL IS MATTERS |
| 4.06 50 PM | CHANDLER | HE CHOSE NOT TO CALL WITNESS |
| 4:07.21 PM | COURT | THE RULE AGAINST 90 DAYS, NOT PREPARED RIGHT NOW TO MAKE THE RULE |
| 4:08.21 PM | CHANDLER | ALLOWS US TO PUT ON OUR REBUTTAL |
| 4.08 49 PM | COURT | COMMENTS |

 

41 page

1 (citation omitted). "Generally, only an evidentiary hearing can provide a court with

2 sufficient information to make an informed determination about the effectiveness of

3 counsel." *Id.*; *see also State v. Baca*, 1997-NMSC-059, ¶ 25, 124 N.M. 333, 950 P.2d

4 776 ("A record on appeal that provides a basis for remanding to the trial court for an

5 evidentiary hearing on ineffective assistance of counsel is rare. Ordinarily, such

6 claims are heard on petition for writ of habeas corpus . . . ."); *State v. Telles*, 1999-

7 NMCA-013, ¶ 25, 126 N.M. 593, 973 P.2d 845 (stating that the "proper avenue of

8 relief [from ineffective assistance of counsel] is a post-conviction proceeding that can

9 develop a proper record").

10 {32}     Though the district court repeatedly observed that defense counsel was

11 providing excellent representation to Defendant, the court did not hold an evidentiary

12 hearing. Therefore, the record before us is insufficient to establish that defense

13 counsel was ineffective or that the decisions made were a plausible trial tactic or

14 strategy. Accordingly, we reject this claim without prejudice to Defendant's ability

15 to bring such a claim via habeas corpus proceedings.

16 **C.     The district court did not abuse its discretion denying a mistrial based on**
17 **Deputy Loomis' commentary on Defendant's silence**

18 {33}     Defendant's third issue is that the court erred in denying his motion for a

19 mistrial based on an alleged improper comment about Defendant's silence after he had

17

Exhibit 10

page 41

forestall testimony by one of the prosecution's expert witnesses (who was present in the courtroom during Mr. Ramirez's testimony). This may have been because the defense did not have any other expert witnesses at trial to testify. Not having expected that Mr. Ramirez's competency to stand trial would arise and having already foregone any defenses that would require expert testimony, defense counsel was simply attempting to keep the state from putting its witness on the stand for rebuttal. **[RP 657-58. The proceedings are summarized in the tape logs, but were in chambers and not included on the audio CD in the record proper]**

Mr. Ramirez also asserts that his counsel failed to call many witnesses he wished to have called, and also that he made promises to Mr. Ramirez if he testified that were not kept. These issues, however, are not reflected in the record. Matters not of record cannot be reviewed on appeal. *See State v. Martin*, 1984-NMSC-077, ¶ 28, 101 N.M. 595.

C.    There was improper commentary on Mr. Ramirez's right to silence

This argument is made pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127 and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655. The review of a district court's denial of a mistrial is for an abuse of discretion. *State v. O'Neal*, 2008-NMCA-022, ¶ 28, 143 N.M. 437. The legal question



38

$\xi \times \beta_1 + 10$

$S'pcs$

1  observations and opinions alone cannot trigger reasonable doubt about the defendant's

2  competency.").

3  {25}    Here, defense counsel merely stated his beliefs that Defendant was not capable

4  of assisting in his own defense and that Defendant did not have the capacity to

5  determine whether or not to testify. In response, throughout the trial, the judge did

6  everything within his power, under the rules, to address the Defendant's concerns with

7  his physical condition and his inability to understand the proceedings, allowing a

8  nurse to examine him during the trial and consistently explaining to the Defendant

9  what was happening. Accordingly, the district court did not abuse its discretion in

10  denying Defendant's request for a forensic evaluation during trial because relying

11  only upon his own observations, defense counsel failed to substantiate his assertions.

12  {26}    Further, had the district court found reasonable doubt as to Defendant's

13  competency to stand trial, Defendant would not have been entitled to a competency

14  evaluation after the commencement of trial. Once the jury is sworn, the Defendant's

15  only recourse is to request a jury instruction on the issue of competency. *See* Rule 5-

16  602(B)(2)(b). Defendant failed to preserve this issue by not submitting an instruction

17  on competency to the court or objecting to the instructions as offered. *See State v.*

18  *Lujan*, 1975-NMSC-017, ¶¶ 8-9, 87 N.M. 400, 534 P.2d 1112 ("Defendant did not

14

$2 \times 1 \beta 1 + 10$

page 39

told the court that he had been offered a plea of guilty but mentally ill. He stated "Which I was very confused of the charges I have in the first, they said it's... I have no clue what those are for or what they're about, I have no clue about the first three I just know the words, the names and the guilty but mentally I have no idea what it's about or nothing he tried to explain but like I said when they communicate it's hard for me to understand and it takes me a long time I'll read it over but also that, ..." Mr. Ramirez paused for a breath and then continued in a run-on fashion that he was told that doctors were going to be called to testify against him and that he was never notified and he was unable to call Dr. Maxann Shwartz in his defense. He also complained that he was unable to get a private investigator to call "plenty of witnesses" which affected his defense.

He also stated that he was a paranoid schizophrenic with paranoid delusions and hallucinations and never got sent for a ninety-day evaluation and was only evaluated for an hour or two, and "that's an improper evaluation in my opinion and I feel like I've been treated unfairly." Mr. Ramirez stated that "there was plenty of media this whole week" that the jury probably heard and "everybody's asking me all kinds of questions and I just say I don't know what's going on because I have no way to see newspapers or radio or anything...." Mr. Ramirez continued,

$Ex18.19$

$3\ pose.$

That afternoon, to demonstrate his lack of competency, Defendant described a litany of psychological ailments **[CD 10-9-13, 1:37:36 to 1:38:55]**, and claimed he was unable to understand the proceedings. **[CD 10-9-13, 1:43:46 to 1:44:11]** Later, notwithstanding Mr. Cosby's expressed concern about Defendant's lack of cooperation, Defendant made statements evincing an understanding of the implications of testifying and of the jury's role in weighing the evidence. **[CD 10-9-13, 2:41:00 to 2:43:54]** He pointedly reminded the trial court that during his previous trial he cried hysterically and told the court he could not function properly when hysterical. **[CD 10-9-13, 2:44:45 to 2:45:18]**

The next day, Defendant demonstrated his continuing understanding of the process, including the value of the appellate record, by forcing creation of a record regarding Mr. Cosby's decisions about the witnesses who would testify, and by making a statement about how he had not been properly evaluated and represented, the trial court's disregard for his outwardly irrational behavior and the trial court's failure to consider how the jury might be affected by media coverage of his trial. **[See, e.g., CD 10-10-13, 9:21:02 to 9:22:38, 9:23:18 to 9:25:59]** Significantly, although Defendant was complaining he could not understand when people communicated with him, he recognized the court's authority by thanking it for allowing him to speak. **[CD 10-10-13, 9:22:35 to 9:22:42]** He telegraphed a clear understanding of the significance of the proceedings by saying he was fighting for

$page 37$



30 $Ex.B\ 14\ \textcircled{}$ 9

*Ex,8it 1*

## II. Defendant has not satisfied the requirements for consideration of a claim of ineffective assistance of counsel on direct appeal.

The facts contained in the record oif Defendant's case do not establish a prima facie case of ineffective assistance of counsel warranting remand of Defendant's case for an evidentiary hearing. *State v. Crocco*, 2014-NMSC-016, ¶ 14. If Defendant wishes to pursue his claim of ineffective assistance of counsel, he should consider pursuing a habeas corpus proceeding. *See id.* ¶ 13; *see* Rule 5-802 NMRA.

When analyzing a claim of ineffective assistance, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). This Court measures a claim of ineffective assistance of counsel against *Strickland*'s two-part test, which requires a defendant to show first that counsel's performance "fell below that of a reasonably competent attorney" and then that he suffered prejudice because of the deficient performance. *State v. Ortega*, 2014-NMSC-017, ¶ 55.

A counsel's performance is not deficient where "a plausible, rational strategy or tactic" could explain counsel's conduct. *Id.* To show prejudice a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*



33     *Ex. 6it B, 9*   page 36

EXISTing

ST. VS ALBERT RAMIREZ CR-07-434                    CR1 CHAMBERS

| Time | Speaker | Note |
|------|---------|------|
| 10:40:24 AM | | COURT IN SESSION, OUTSIDE PRESENCE OF JURY DFT AND ALL PARTIES PRESENT |
| 10:40:41 AM | COSBY | HAS ONE OTHER ISSUE, MY CLIENT HAS TOLD ME THAT HE WAS SEXUALLY ASSAULTED ETC. |
| 10:42:10 AM | | HE WANTS TO TESTIFY THAT MR. ROBLEDO AS WELL AS MR. SAIZ SEXUALLY ASSAULTED HIM |
| 10:42:28 AM | CHANDLER | THERE IS NOTHING THAT SUPPORTS THAT PARTICULAR CLAIM, IT HAS NEVER BEEN REPORTED, WHEN DID THE HAPPENED, IT IS THE TIMELINE, |
| 10:43:36 AM | COSBY | UPON ON HIS FIRST STATEMENT, WHEN MY CLIENT FIRST WENT TO HIS HOUSE MY CLIENT TOLD HIM HE HAD BEEN SEXUALLY ASSAULTED, |
| 10:44:17 AM | COURT | HERE IS THE PROBLEM WE RUN INTO, THE KIND OF THE TIMING, THE COURT IS OF THE OPINION THAT I WILL NOT ALLOW IT, THRE WAS NOTHING TO SUGGEST THAT IN HIS OPENING STATEMENT, IF THE STATE IS OF THE OPINION THAT WE CREATE AN ERROR BY EXCLUDING THIS, I WILL RULE AGAINST IT |
| 10:45:42 AM | DFT | ABOUT THIS MATTER, THE REASON I DID NOT SAY ANYTHING IN MY OPENING STATEMENT |
| 10:46:16 AM | COURT | YOUR ATTORNEY MR. COSBY IS DOING AN EXCELLENT JOB, I HAVE LET YOU TALK, THE PART I AM GOING TO RESTICT THAT WE ARE NOT GOING TO GO INTO THIS AREA |
| 10:47:12 AM | DFT | I DID NOT GET ASKED ABOUT BROKEN WINDOW, THIS IS BY ONE, I TELLING I AM NOT HAVING A FAIR TRIAL, IF I DID NOT GET ASKED A QUESTION ABOUT SEXUAL ASSAULT |
| 10:48:26 AM | DFT | I LET MAXINE SWARTZ THAT I WAS SEXUALLY ASSAULTED, ETC |
| 10:49:11 AM | | I TRIED TO EXPLAIN TO DR. FINE, IT IS NOT FAIR I THINK IT IS RELEVENT |
| 10:??:47 AM | COSBY | THERE IS RECORD THAT HE DISCUSSED WITH PSYCOLOGIST OF SEXUAL ASSALUT, THERE IS NO EVIDENCE BEFORE THE HOMICIDE |
| 10:51:54 AM | COURT | WILL GIVE YOU FIVE MINUTES |
| 10:52:21 AM | DFT | WHEN MR. COSBY STATED THAT I WAS MELINGERING, AND PSYCHOLOGIST BELIEVED ME, ABOUT FOSTER CARE I WAS EMBARRASED MY MOTHER KNEW, EXPLAINS WHAT HAPPENED WITH ELADIO |
| 10:54:59 AM | | REGARDING SAM SAIZ HE USED TO GO OVER THERE WHEN HE WAS IN JUNIOR HIGH, ETC. |
| 10:58:18 AM | COURT | I'VE GOT YOUR STORY, AFTER HEARING THE STORY IT IS NOT RELEVENT |

10/10/2013          EXIBIT 9

SEX abuse

for his expert's presence if sur-rebuttal was allowed. [Supp. CD, 3:55:15 to

3:56:35, 4:02:23 to 4:02:35, 4:08:18 to 4:08:53]

Shortly thereafter, based on the defense's agreement not to pursue jury

instructions or argue competency, insanity or the inability to form specific intent

[*See* Supp. CD, 3:51:56 to 3:52:00], the prosecution announced it was forgoing

presentation of a rebuttal case and releasing its expert witnesses. [CD 10-10-13,

4:34:39 to 4:36:02] When Defendant objected to Mr. Cosby's strategy, the trial

court assured Defendant he was being well-represented and explained it would not

have approved Mr. Cosby's jury instruction decisions if doing so would deny

Defendant a fair trial. [CD 10-10-13, 4:36:02 to 4:39:12] Defendant persisted Dr.

Schwartz's testimony was essential to his having a fair trial and to his appeal. [CD

10-10-13, 4:41:38 to 4:42:15]

The trial court instructed the jury on first-degree murder, second-degree

murder and, over the prosecution's objection, voluntary manslaughter. [CD 10-11-

13, 9:01:50 to 9:03:07; *see* RP 663; RP 664; RP 665-66]

## IV.    Disposition Below

The jury deliberated approximately three hours before returning verdicts

finding Defendant guilty of first-degree murder, and the two counts of tampering

with evidence. [CD 10-11-13, 11:45:13 to 3:06:20]

Exibit 8

1 | its discretion in denying a mistrial.

2 **D.    Defendant was not prejudiced by the jury seeing his leg restraints**

3 {39}    Defendant's fourth issue is that he was prejudiced when the jury saw his leg

4 restraints when he stumbled as he stood up at one point during the first day of trial.

5 However, he concedes that he did not ask the court to make a finding of prejudice or

6 declare a mistrial and asks this Court to review the possibility that the jury saw his leg

7 restraints for fundamental error. The State argues that the factual record does not

8 support Defendant's contention that the jury saw him shackled because all the parties

9 agreed that the table skirt blocked the jury's view.

10 {40}    "To preserve a question for review it must appear that a ruling or decision by

11 the district court was fairly invoked." Rule 12-216(A) NMRA. When the claim is not

12 properly preserved, we consider the claim under the fundamental error exception to

13 the preservation rule. *See State v. Holly*, 2009-NMSC-004, ¶¶ 40-42, 145 N.M. 513,

14 201 P.3d 844 (reviewing defendant's claim that a juror may have seen defendant

15 handcuffed for fundamental error because the defendant did not request a mistrial, did

16 not ask the trial court to strike the juror, or seek a finding of prejudice), *State v. Silva*,

17 2008-NMSC-051, ¶ 11, 144 N.M. 815, 192 P.3d 1192 (citing Rule 12-216(B)(2)

18 NMRA).

21

Exibit 8

ST. VS ALBERT RAMIREZ  CR-07-434                          COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 12:56:09 PM | | JURY BEING SEATED IN BOX |
| 12:57:14 PM | | COURT IN SESSION , JURY DFT AND ALL PARTIES PRESENT |
| 12:57:56 PM | CHANDLER | XEX - ABOUT YOUR TIME IN SCHOOL, I DON'T KNOW JUST GOT HELD BACK |
| 12:59:19 PM | | I CANNOT ANSWER IF I DID GOOD IN SCHOOL |
| 12:59:43 PM | | YOUR DAD WOULD PROVIDE YOU $500 A MONTH TO STAY IN SCHOOL, WHEN YOU GET SOCIAL SECURITY, IT IS THE TRUTH IT WAS COMING FROM MY DAD'S MONEY |
| 1:01:03 PM | | YOU HAD A DRIVER'S LICENSE IN 2007, YOU HAD A CELLPHONE, YOU PAID THE CELLPHONE BILL AND YOU HAD A JOB AT MCDONALDS |
| 1:02:25 PM | | ONLY DID CERTAIN THINGS AT MCDONALDS |
| 1:03:05 PM | | YOU SPEAK ENGLISH AND SPANISH , I UNDERSTAND A LITTLE BIT AND CAN SPEAK A LITTLE BIT, I AM AMERICAN |
| 1:04:36 PM | | YOU FIRST MET ELADIO WHEN YOU WERE APPROX. 5 OR 6 YEARS OLD |
| 1:05:36 PM | | YOU DIDN'T LIKE ELADIO ROBLEDO "THAT IS AN IMPROPER QUESTION TO ASK" I LIKE EVERYBODY I JUST DON'T LIKE SOME THINGS PEOPLE DO, THAT IS HOW IT IS SUPPOSED TO BE ] |
| 1:06:12 PM | | ELADIO AND YOUR MOTHER LIVED AT 512 W. 6TH ST. "WHEN" JULY 2007 |
| 1:07:27 PM | | YOU HEARD THAT OFFICER AGUILAR SERVED YOU THE NO TRESPASS ORDER, "YES" |
| 1:07:44 PM | | AFTER RECEIVING THE NO TRESPASS ORDER YOU RETURNED BACK TO THE HOUSE WHERE DEBRA LIVED |
| 1:08:40 PM | | AT ONE TIME YOU BROKE OUT THE FRONT WINDOW OF YOUR MOTHER AND ELADIO'S HOUSE |
| 1:09:40 PM | | ARE YOU AWARE YOUR MOTHER CALLED THE POLICE ABOUT THAT INCIDENT "NOT AWARE, IF SHE DID OR NOT" |
| 1:10:12 PM | | YOU BROKE OUT A CAR WINDSHIELD WITH YOUR CRUTCHES, DID SHE CALL THE COPS ABOUT THAT "YES" |
| 1:10:58 PM | | YOU KNOW WHERE CROSSHAIR GUN SHOP IS IN CLOVIS "YES" |
| 1:11:15 PM | | YOU WENT IN THERE AND DEMANDING A GUN |
| 1:11:42 PM | | YOU WANTED A REVOLVER "I JUST ASKED FOR GUN" |
| 1:12:27 PM | | YOU FILLED OUT PAPERWORK TO PURCHASE GUN |
| 1:12:46 PM | | YOU DROVE A CAR TO GUN SHOP |
| 1:13:42 PM | | YOU WERE TRYING TO GET THINGS RIGHT |

EXIBIT 7

ST. VS ALBERT RAMIREZ CR-07-434                                    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 3 06:50 PM | | AWARE OF BROTHER BEING PLACED IN FOSTERCARE |
| 3.07 31 PM | | GIVING STATEMENT TO DETECTIVE ON JULY 12TH THE DAY OF SHOOTING |
| 3:08 35 PM | | TOLD MEMBERS OF JURY NEVER SAW HIM ACT OUT, HE WOULD GET UPSET |
| 3 09:22 PM | | DOES NOT REMEMBER WHAT SHE TOLD DETECTIVE, NOW SHE REMEMBERS WHAT SHE TOLD DAVID LOERA |
| 3:11 35 PM | | CONTINUES TO REFER TO STATEMENT SHE MADE |
| 3:12 59 PM | | BENCH CONFERENCE |
| 3.13 50 PM | CHANDLER | CONTINUES TO REFER TO HER STATEMENT |
| 3:14.33 PM | | GO BACK TO THE PHONE CALL, HE WAS MAD AT YOU THE DAY BEFORE THE SHOOTING, "WHAT IS WRONG WITH BEING MAD EVERYBODY GETS UPSET |
| 3.15:09 PM | | I DID NOT KNOW HE WAS TRYING TO GET A GUN |
| 3:16.00 PM | | REFERS TO HER STATEMENT |
| 3:16:06 PM | COSBY | PAGE AND LINE PLEASE |
| 3:16:20 PM | | NO I DID NOT KNOW, EVERYBODY KNEW NOT TO GIVE HIM A GUN |
| 3:16:55 PM | | TRAINING, EDUCATION AND EXPERIENCE |
| 3.17.05 PM | | YOU WANTED TO KNOW WHY HE DID THAT WHEN HE CALLED FROM JAIL, NOBODY WAS THERE WHEN IT HAPPENED |
| 3:18:13 PM | | YOU DO NOT KNOW WHAT HAPPENED AT 512 W. 6TH, "I WAS NOT THERE" |
| 3:19:18 PM | | YOU HAVE BEEN TALKING TO HIM EVERY NIGHT |
| 3.19.42 PM | | BENCH CONFERENCE |
| 3:20:41 PM | COSBY | RDEX - ABOUT YOUR STATEMENT ABOUT WHAT YOU ARE SAYING YOU WERE TELLING YOUR BROTHER TO APOLOGIZE TO YOUR MAMA |
| 3 21 58 PM | | NOT SURE WHY HE WAS WEARING CRUTCHES |
| 3:22:30 PM | CHANDLER | SPECULATION OBJECTION |
| 3:22:40 PM | COSBY | RESPONSE ABOUT WHO GAVE HIM THE GUN "HE WAS HAVING ISSUES ABOUT HE THOUGHT SOMEBODY WAS AFTER HIM" |
| 3:24 25 PM | | SHE ALREADY KNEW ABOUT SHOOTING BECAUSE HER MOM CALLED HIM |
| 3:24:37 PM | | SHE BARELY TALKED TO ELADIO, NEVER CLAIMED HIM AS STEP FATHER |
| 3:24:59 PM | CHANDLER | RXEX - YOUR CONCERN WAS ABOUT ALBERT'S STATE OF MIND |
| 3 25.49 PM | COSBY | OBJECTION |

27        10/10/2013

EXIB. + 7

**Patient:**    **14154.1 - ALBERTO J. RAMIREZ**
**DOB:**          988
**SSN:**          7793

Page 2

**Date:**       **04/24/2007 11:30**
**Provider:**   **KIRAN SHARMA MD**

} Anxiety disorder NOS

**PLAN**
Motrin 600 MG TABS, SIG:tid, Qty:21, Days.7, Refills:0
Lexapro 10 MG TABS, SIG:qd, Qty:30, Days:30, Refills:2
Refer to unm orthopaedics
pt has anger issues and is somatising
detailed discussion with brother about pts visits
otc knee brace, pt needs pshychiatric help
refer to MHR, pt is having paranoia

**KIRAN SHARMA MD**

**Entered data sealed by: KIRAN SHARMA - LCBS    Date: 04/24/2007 11:14**

page 30

Exbit 7

**Patient:** **14154.1 - ALBERTO J. RAMIREZ**
**DOB:** 988
**SSN:** 7793

Page 2

**Date:** 04/17/2007 12:15
**Provider:** KIRAN SHARMA MD

**Musculoskeletal system:**
General/bilateral: ° Musculoskeletal system: normal
Knee:
General/bilateral: • Knees showed abnormalities ° No tenderness on palpation of the knee ° No pain was elicited by motion of the knee ° Knees demonstrated normal movement ° Knees demonstrated no muscle weakness
Right knee: • Examined
Left knee: • Examined

**ASSESSMENT**
Bilateral knee pains

**PLAN**
KIRAN SHARMA MD ordered
• Urinalysis and urine drug screen
• CBC
• A comprehensive metabolic panel
• Serum TSH level
• An X-ray of both knees
• Consultation with a physical therapist
Refer to MHR for counselling and furtehr evaluation
trying to call mom to find out more about pts mental health, unable
to reach her

**KIRAN SHARMA MD**

**Entered data sealed by: KIRAN SHARMA - LCBS    Date: 04/17/2007 14:36**

EXIBIT@ #@ page 28

ST. VS ALBERT RAMIREZ  CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 9:57:26 AM | CHANDLER | CLOSING ARGUMENT |
| 10:10:27 AM | CHANDLER | CONTINUES CLOSING ARGUMENT |
| 10:45:29 AM | | CONTINUES CLOSING ARGUMENT |
| 10:46:27 AM | COSBY | CLOSING ARGUMENT |
| 10:58:56 AM | | CONTINUES CLOSING ARGUMENT |
| 11:30:00 AM | CHANDLER | BRIEF REBUTTAL |
| 11:39:16 AM | | CONTINUES BRIEF REBUTTAL |
| 11:40:01 AM | COURT | READS INSTRUCTION 19 BEFORE DELIBERATION IS BEGUN |
| 11:41:14 AM | COURT | ANNOUNCES ALTERNATES |
| 11:42:36 AM | | JURY EXCUSED TO BEGIN DELIBERATION AND ALTERANTES EXCUSED |
| 11:43:09 AM | DFT | DFT WANTS TO SAY SOMETHING |
| 11:44:05 AM | COURT | YOU CANNOT SAY ANYTHING |
| 11:44:13 AM | OFF RECORD | |
| 3:03:40 PM | | JURY SEATED IN BOX |
| 3:04:08 PM | COURT | READS THE VERDICT GUILTY COUNT 1 1ST DEGREE MURDER |
| 3:04:45 PM | | GUILTY COUNT 2 TAMPERING WITH EVIDENCE |
| 3:04:58 PM | | GUILTY COUNT 3 TAMPERING WITH EVIDENCE |
| 3:05:14 PM | COURT | DFT WISHES TO HAVE THE JURY POLLED, JURY POLLED BY NUMBER |
| 3:06:35 PM | COURT | READS FINAL INSTRUCTION TO JURY BEFORE EXCUSED |
| 3:07:13 PM | | JURY EXCUSED FROM SERVICE |
| 3:07:51 PM | CHANDLER | STATES REQUESTS TO MOVE INTO SENTENCING |
| 3:08:07 PM | COSBY | ASKS FOR A 60 DAY EVALUATION |
| 3:08:21 PM | CHANDLER | THIS SENTENCE IS A LIFE PLUS SIX YEARS |
| 3:09:02 PM | COURT | IT IS MANDATORY TO LIFE |
| 3:09:15 PM | COSBY | HE HAS A RIGHT TO AN ALLUCITION |
| 3:09:40 PM | COURT | WE WILL SENTENCE AFTER PRESENTENCE REPORT |
| 3:09:59 PM | COSBY | REQUESTING A 60 DAY EVALUATION |
| 3:10:16 PM | COURT | ORDER THE PRE SENTENCE REPORT , |
| 3:10:31 PM | RECESS | |

ExiBit TRiEd to AlERt Court OF
. 6   CONFliCt OF INTEREST BetwEEN
10/11/2013  Cowsel and I and move  3 of 3
        RecorD. I was dweel.

EXBX 4,5

1  competent to make the choice whether or not he should testify. The court advised

2  Defendant of his right. Defendant stated that he was mentally imbalanced and he

3  wanted the jury to be told about his medical problems. The court found that the

4  concerns represented personal issues not rising to the level of incompetence and

5  denied the motion.

6  {24}    Rule 5-602(B)(2)(b) requires that "[i]f the issue of the defendant's competency

7  to stand trial is raised *during trial*, the trial jury shall be instructed on the issue."

8  (emphasis added). The reasonable doubt requirement "is implied" under Rule

9  5-602(B)(2)(b) when the issue of competency is reraised at trial. *Rael*,

10  2008-NMCA-067, ¶ 22 ("[I]f a requirement of reasonable doubt were not read into

11  Rule 5-602(B)(2)(b), any defendant would be able to raise the issue of competency

12  and have the jury decide it even in the absence of the slightest bit of evidence that the

13  defendant was incompetent. Such a result would be contrary to our well-established

14  guidelines regarding the interpretation of Supreme Court rules."). However, in the

15  absence of reasonable doubt, the district court need not submit the issue to the jury.

16  *See id.* ¶¶ 22–23, 25. As such, assertions as to the question of incompetency must be

17  properly substantiated to show reasonable doubt. *See Flores*, 2005-NMCA-135, ¶ 29

18  ("[A] court may consider defense counsel's observations and opinions, but that those

Ex.Bx 13  4, C

7\

page 2

Based on the facts in the record, Defendant sensibly does not claim he suffered prejudice from this asserted deficiency in Mr. Cosby's performance. Considering Defendant's history of refusing to cooperate in evaluations, there can be no confidence he would have cooperated even if Mr. Cosby had arranged an emergency evaluation. And, considering the trial court's first-hand observations of Defendant's behavior and dilatory conduct over the course of six years, there is no assurance the trial court would have found Defendant incompetent even if an evaluation concluded otherwise.

Second, Defendant claims Mr. Cosby was deficient because his failure to arrange for expert testimony precluded Defendant from relying on mental illness or lack of capacity defenses. [BIC 37-38] At the same time, Defendant effectively concedes Mr. Cosby's performance was not deficient in this regard by acknowledging the prosecution was prepared to offer rebuttal expert testimony to the effect that Defendant was feigning mental illness and cognitive deficiencies. [Supp. CD, 3:51:50 to 3:52:12, 3:57:00 to 3:57:33, 4:01:06 to 4:01:24, 4:08:54 to 4:09:13] This indicates Mr. Cosby's decisions may have represented "a plausible, rational strategy or tactic," which is the antithesis of incompetent performance.

This specific claim of deficient performance also lacks support in the record, because Defendant repeatedly refused to cooperate in evaluations that *might* have

I counted this all.
Burgess lied I clot v, 8, t. 4.5
conply.

35

page 24

Mrs Ramirez reported that she put Mr Ramirez out of her home as a result of him b
violent manner and smashing windows in her car and house. She also reported that
was verbally abusive toward her and this has been confirmed by staff at this facil
heard Mr Ramirez being verbally abusive toward his mother over the telephone.
reported that she had a restraining order in place against Mr Ramirez following l
her car windows and that he violated this order both on the day of the instant of]
day before. She also reported that Mr Ramirez was jealous of her boyfriend.

## MEDICAL HISTORY

Mr Ramirez also provides a highly convoluted and unbelievable story of his arms being
permanently damaged as a result of having to drive a car with manual transmission all day. He
will attempt to present evidence of his physical impairment by showing the examiner his arm,
which has no physical defects. He also has a story of walking on crutches and having his knee
bandaged in a manner that no medical facility would ever sanction. He was examined by the
medical physician back in County Detention in Curry where he made repeated daily efforts to get
medical attention until the physicians refused to grant further medical evaluations. He has also
been examined by the medical physician at this facility and despite continuous complaints of
chronic pain and stating he is hunch backed, he has no acute or chronic medical concerns.

## SUBSTANCE ABUSE HISTORY

Mr Ramirez reported that he has smoked Marijuana and that his prior criminal history has been
associated with smoking marijuana. He has endorsed using cocaine, crack cocaine and
methamphetamines in the past. In addition the police officers reported that they could smell
alcohol on his breath at the time of arrest for prior offences.

## ABUSE HISTORY

Mr Ramirez has reported physical abuse at the hands of his foster father and sexual abuse by his
mother's boyfriend and a neighbor. However, it is notable that he reports that his mothers
boyfriend (the victim in the alleged offense) and the neighbor were gay and that they were lovers
which is why they abused him. Given that the neighbor is also a witness to the alleged offences
however, it is this examiners opinion that this report of abuse and the sexual orientation of these
two men is highly suspect.

## CRIMINAL HISTORY

Mr Ramirez reports that his only prior criminal history has been in relation to smoking
Marijuana and he alleges that one of these charges was an accident as he did not know the
cigarette contained marijuana. This examiner did not have access to an NCIC or his Juvenile
record however a police report relating to a prior arrest includes the charges of Larceny (under
$250.00, Evading a Peace Officer and Possession of Marijuana.

## PSYCHIATRIC HISTORY

There is no indication from Mr Ramirez's records that he has ever required inpatient or out
patient psychiatric intervention. He reports that he did see a counselor and this was related to
"anger management" however, there is no evidence of any prior mental illness despite Mr
Ramirez reporting a history of depression and anxiety and stating that he was on seven

| 08/18/2008 | Curry County | RAMIREZ Albert Jose |
|------------|--------------|---------------------|
| FD/CCU | Page 4 of 10 | HEALTH RECORD #42819 |



**Final Forensic Report**

THE NEW MEXICO BEHAVIORAL HEALTH INSTITUTE *at Las Vegas*
FORENSIC DIVISION



consists of five scales, i.e., Psychosis; Neurologic Impairment; Amnestic Disorders; Low Intelligence; and Affective Disorders. The total score on this measure is identified as being the most useful for differentiating exaggerated from non-exaggerated symptoms. SIMS total scores equal to or greater than fourteen are suggestive of symptom exaggeration. Mr. Ranirez's score on this measure was 47.[i]

Additional review of the SIMS scale scores is notable for elevation. Specifically, his scores suggest an endorsement on all five scales with the highest elevations being on the Neurologic impairments and the Amnestic disorders scales, He also over endorsed the Psychosis as well as the Affective functioning scales. The lowest elevation was found on the Low Intelligence scale.

This pattern of responses provides evidence of Mr. Ramirez's tendency to exaggerate a range of cognitive and psychiatric symptoms. Mr. Ramirez has reported to this examiner that he does not want to return to the Detention Center as he describes his previous behavior in Detention as "not good...crying, screaming, yelling, kicking walls I was angry 'cos they wouldn't give me my meds".

## CASE FORMULATION

Mr Ramirez is a 19 year old Hispanic male admitted to the Forensic Division of the New Mexico Behavioral Health Institute at Las Vegas (NMBHI) on 5th June 2008. A Court finding of incompetence to stand trial, and subsequent commitment for treatment to attain competency to proceed in a criminal case was approved on 17th April 2008. Mr. Ramirez is currently charged with one open count of Murder in the first degree, and two counts of Tampering with Evidence for events that allegedly occurred on July 12th 2007.

Mr Ramirez appears to have had a disrupted childhood, despite his assertion that his mother was raising him well the fact that he was in two foster placements suggests that he was demonstrating difficult to manage behaviors. This was confirmed by Mrs Ramirez. Mr Ramirez also attended special education and became involved with the criminal justice system at an early age prior to 16. His behavior appears to have spiraled downwards to the point where he is alleged to have committed first degree murder. Mr Ramirez has reported sexual and physical abuse however given his tendency for over reporting and his clear need to externalize blame for his actions on others it is difficult to ascertain the validity of this reported abuse. Mr Ramirez mother stated that her boyfriend (the victim on the alleged offence) had never abused Mr Ramirez and that he was jealous of her boyfriend.

Mr Ramirez demonstrates difficult to manage behaviors however in this examiner's opinion these are the result of his personality style rather than as a consequence of mental illness. He does demonstrate difficulties in managing his mood and controlling his impulsive behavior but as previously stated in my clinical opinion this is the result of his personality style and an inability to take responsibility and consider the consequences of his actions.

$$\mathcal{E} \, \text{Yi} \, \text{B} \, \text{I} + \quad 4.5$$

$P^{c}\frac{qu}{23}$

## Disclosure of Limits of Confidentiality and Informed Consent

Prior to the initiation of the forensic evaluation, Mr. Albert Ramirez was informed of the purpose of the evaluation, about my role as a forensic psychologist, that his participation was voluntary, and that the information that he provided in the evaluation may not be confidential. The defendant was unable to communicate that he understood the purpose of the evaluation and that he was going to undergo a forensic evaluation. He was then informed that information from the evaluation would be provided to the Court regarding his current cognitive and intellectual capabilities and that the information he provided was not confidential. The defendant consented to proceed with the evaluation by signing the "Statement of Rights and Limits of Confidentiality" disclosure form, which was explained to him and outlines the purpose of the evaluation.

Mr. Ramirez was informed that he has the right to refuse to participate in the evaluation or answer specific questions, and the fact that in addition to his attorneys, the report and/or information may be disclosed to the Court and/or the prosecution trial attorneys. He was also informed that the psychologist may also be asked to testify with regards to information gathered in the evaluation. The defendant attempted to participate in a structured clinical interview, but was unable to complete the interview or participate in neuropsychological and psychological tests and questionnaires, or complete a competency test due to his current psychological and emotional state. As a result, the testing session lasted a total of 3.0 hours. The evaluation was conducted in an adequate environment and the results are believed to represent a valid measure of the defendant's current cognitive and emotional functioning and status.

## SOURCES OF INFORMATION:

(4)

1. Clinical interview with Mr. Albert Ramirez (defendant)
2. Interviews with Brett Carter and Chandler Blair (attorneys for defendant)
3. Request For Expert Witness/Investigator
4. Clovis Police Department
   a. Investigative Report: Randy Pitcock, Detective; 7/12/07
   b. State of New Mexico Uniform Incident Report; 7/12/07
   c. State of New Mexico Supplemental Report; 7/13/07
   d. Supplemental Report Narrative; 7/23/07
   e. Supplemental Report: Homicide; 7/12/07
   f. Supplemental Report: Officer Antonio Bosque; 7/13/07
   g. Felony Case File- Ivan Vasquez (exhibit 9)
   h. Criminal Trespass Notification (exhibit 10p)
   i. State of New Mexico Uniform Incident Report; 6/21/07; (exhibit 10q)

MAR 1 8 2008

$\gamma'$

$Ex_1B_1+4S$

$page 23$

| COURT: | Ninth Judicial District Court<br>Curry County<br>State of New Mexico |
|---|---|
| PLACE OF EVALUATION: | Curry County Courthouse<br>Clovis, New Mexico |

## Reason for Referral and Charges

The defendant, Mr. Albert Ramirez, was referred for a Forensic Neuropsychological Evaluation to provide information regarding his current cognitive, psychological, and emotional functioning. Mr. Ramirez' attorneys have expressed concern regarding his competence to stand trial as he has been unable to discuss any aspect of the case with them, despite numerous attempts. They have also described his behavior as bizarre with confused and disorganized thinking. His overall functioning will be evaluated in terms of his competency to stand trial. Mr. Ramirez has been charged with Murder (Open Count) and Tampering with Evidence (2 counts), for events that occurred on or between July 12, 2007, in Curry County, New Mexico. Mr. Ramirez is incarcerated at the Curry County Detention Center (CCDC).

## New Mexico Criteria for Determining Competence

(1) The Client must have a factual understanding of the charges and legal proceedings, (2) The Client must also have a rational understanding of the charges and legal proceedings, and (3) The Client must have the ability to assist his or her attorney (State vs. Rotherham, 1996).

### Note:

The following report and opinions are based on information made available to the psychologist at the time of the evaluation. Unless specifically noted, there has not been a systematic effort made to substantiate the full accuracy of all of the information provided in this report. The report is based on the assumption that the information provided is reasonably accurate, unless noted to the contrary. The psychologist reserves the right to modify opinions or conclusions, if additional information relevant to the findings is provided at a later date.

EXIBIT 4.5

Exibit 4.5     page 22

Exhibit 4 page 21

depersonalization, inappropriate mood and affect, and poor judgment, reasoning, and insight. Mr. Ramirez reported numerous times "There's something wrong with my mind." Because of his current mental state, he was unable to complete a formal evaluation.

Based on his current presentation, Mr. Ramirez is not capable of competently proceeding with adjudication and handling the stress associated with the legal process. In his current state, he has been unable to assist his attorneys in his defense as he is unable to communicate in a logical or rational manner. He is also unable to provide any assistance to his attorneys regarding pertinent circumstances or events that led to his arrest in reference to the alleged charges. It is therefore the opinion of this examiner, that Mr. Albert Ramirez is not competent to stand trial.

Thank you for your referral.

Respectfully submitted by:

Maxann Shwartz, Ph.D.
Licensed Psychologist

Exhibit 4,5

page 21

Communication: His speech was pressured and rambling. At times, he was able to comprehend questions but was unable to provide consistent or appropriate responses.
Sleep/Diet: Mr. Ramirez reported "I can't sleep at all...I have physical pain and mental pain...I hear people talking in my head." He indicated that his appetite fluctuates and that he has lost weight since being incarcerated.
Suicidal Ideation, Intent, or Plans: He denied a history of suicidal ideations, intent, plans, or attempts, stating "No, they'll put me in that little room."
Substance Abuse History: Mr. Ramirez acknowledged using illegal drugs and alcohol in the past.
Current Medical/Physical Concerns and Medications: He denied past or present use of medications, including being prescribed psychotropic medications.
Current Mental Health Status: Mr. Ramirez presented with symptoms associated with a significant mental illness, including heightened instability of mood. Specifically, he evidenced a mixture of characteristic signs and symptoms involving a range of cognitive and emotional disturbances that may be associated with the initial onset of a psychotic disorder.

## DIAGNOSTIC IMPRESSIONS

**RULE OUT-**

| | | |
|---|---|---|
| Axis I: | 295.30 | Schizophrenia, Paranoid Type |
| | 295.70 | Schizoaffective Disorder, Bipolar Type |
| | 309.81 | Posttraumatic Stress Disorder, Chronic |
| Axis II: | 799.9 | Diagnosis Deferred |
| Axis III: | | Defer to Physician Report |
| Axis IV: | | Legal Problems |
| Axis V: | | 30 |

## CONCLUSION

Mr. Albert Ramirez is a 19 year-old, single, Hispanic male, with no known documented history of mental illness. However, throughout the evaluation, he evidenced a constellation of symptoms characteristic of Schizophrenia, including paranoia, psychoses, loose associations, disorganized thinking, poor reality testing,

EXิBิ+ 4 ı5 page1'

Detention Center and had his undershirt on backwards. Mr. Ramirez was unable to perform even simple, goal-directed tasks. He maintained minimal to no eye contact. He evidenced uncontrollable crying throughout the evaluation with uncontrollable shaking. His attorney, Brett Carter, was present in attempt to calm him down and encourage him to participate in the evaluation. Food (McDonald's) was also used as a reinforcer and as an attempt to calm him down. While Mr. Ramirez was eating, he appeared to be more placated and was able to answer several questions. Specifically, he elaborated on being abused by several people, including his foster dad (physical abuse), a neighbor (sexual abuse) and his mother's boyfriend (sexual abuse). However, the majority of his responses to this examiner's questions were answered with "I don't know," or "that's all I know." Otherwise, he attempted to cooperate but eventually would start crying and become hysterical. Occasionally, he was able to provide several coherent and logical responses, however, his thinking would then be followed with tangential remarks with frequent references to his foster dad or paranoid verbalizations, i.e. "I'm scared of everyone. That's all I know. There's something wrong with my mind." For the most part, he was unable to provide any relevant background history. Mr. Ramirez was questioned numerous times about what happened regarding his alleged charge of murder and replied each time with "I used to be a good kid," or "I wasn't like this," and "I just want to talk to my mommy." Mr. Ramirez was unable to read as he could not maintain attention or concentration. He was given the Trail Making Test and was unable to complete one Trail. In sum, he was unable to complete any standardized testing procedures.

Orientation: He was oriented to person, but was poorly oriented to time, date, or location.

Affect/Mood: Mr. Ramirez' mood was labile with congruent affect. He stated that his mood was "very depressed, very bad...I'm so depressed!"

Perception/Thought Process: His thought process was tangential and loose. His thinking was easily derailed as he evidenced paranoia with depersonalization, i.e. "I can't feel my arm that much...I don't know," "I wasn't like this," and ""What happened...the real me is full of pain." He acknowledged that he experiences auditory hallucinations, stating "I hear people talking in my head...saying kill myself." He denied visual hallucinations. He presented with frank paranoid ideations.

Mini Mental Status Exam: Mr. Ramirez was administered the Mini Mental Status Examination (MMSE), a widely used screening instrument used to assess cognitive impairment. His results were within the severely impaired range (16/30) and appeared to be due to the presence of a functional psychosis. Mr. Ramirez exhibited poor immediate memory, concentration, and attention.

Memory: His overall memory appeared questionable, e.g. he could not remember the city where he was born.

Judgment/Insight: Impaired/Impaired

EXิBิ+      page 19

EX, B1T 4, 5
page 18

16. Photo (exhibit 10d)
17. Media Advisory Clovis Police Department (exhibit 10e)
18. Grah's notes/Action Sheet (exhibit 10f)
19. Inmate Calling Solutions (exhibit 10g)
20. Plateau Wireless (exhibit 10h)
21. Call Records 505-309-7772 (exhibit 10i)
22. SMS Records 505-714-2165 (exhibit 10j)
23. Call Records 505-309-4299 (exhibit 10k)
24. Call Records 505-309-7759 (exhibit 10l)
25. Master Name Inquiry (exhibit 10m)
26. Curry County Detention (exhibit 10n)
27. Photo Lineup (exhibit 10o)
28. Curry County Detention (exhibit 10n)
29. #1 Value Inn Guest Registration (exhibit 10r)
30. State of New Mexico, Ninth Judicial District, Office of the District Attorney (exhibit 10s)
31. Information from John Garcia to Roger Grah (exhibit 10t)
32. Photo Lineup (exhibit 10u)
33. The University of New Mexico (UNM) Office of The Medical Investigator (exhibit 10v)
34. Index- List of Exhibits

## PSYCHOLOGICAL TESTS/PROCEDURES ADMINISTERED

- Structured Clinical Interview ⁵
- Review of List of Exhibits
- Mental Status Exam (MSE)
- Mini Mental Status Exam (MMSE)
- Trail Making Test
- Clock Face
- Portions of The Revised Competence Assessment Instrument

**Mental Status Examination:**

Behavioral Observations:
Mr. Albert Ramirez is a 19 year-old, single, Hispanic male who was unable to be evaluated due to grossly disorganized behaviors consistent with the positive symptoms associated with a psychotic disorder, including but not limited to: disorganized thinking; rambling, nonsensical speech; paranoia; depersonalization; reports of auditory hallucinations; labile mood; inappropriate affect; loose associations; and poor reality testing. Mr. Ramirez was dressed in the required uniform of the Curry County

EXIBIT 4⁵  MAR 1 0 2008

15

page 18

ST. VS ALBERT RAMIREZ  CR-07-434                                    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 10:24:46 AM | | WHO ELSE DID YOU CALL, HE WAS NOT A FRIEND, I TOLD HIM TO GET THE THING, DO YOU KNOW OF ANYBODY HAS THAT GUN |
| 10:25:33 AM | | THERE WAS A GUY IN FRONT OF STORE OF RAGS TO RICHES I BELIEVE HE GOT THE GUN, I JUST HAD SOX AND BOXERS |
| 10:26:34 AM | | DID YOU PLAN ON KILLING MR. ROBLEDO "NO" |
| 10:27:11 AM | | WERE YOU THERE THAT DAY TO AMBUSH YOUR MOM'S BOYFRIEND "CAN I SPEAK MY MIND", IF I WANTED TO KILL MY MOM OR ROBLEDO, I COULD GO IN THERE AND GO TO MY ROOM AND GET SOMETHING TO EAT. ETC. |
| 10:28:14 AM | | WHEN HE TOLD YOU HE WAS GOING TO GET PISTOLA "THAT IS A PISTOL" THAT WAS NOT HIS AMMO IN GARAGE |
| 10:28:59 AM | | I KNEW HE HAD A WEAPON, I USED TO SMOKE MARIJUANA I WAS LOOKING FOR MONEY AND I SAW A GUN IN HIS DRAWER |
| 10:29:40 AM | | I THOUGHT I WAS IN DANGER |
| 10:29:53 AM | | BENCH CONFERENCE |
| 10:30:37 AM | COURT | GONNA TAKE A BREAK |
| 10:31:21 AM | | JURY EXCUSED FROM COURTROOM |
| 10:31:36 AM | OFF RECORD | |
| 11:03:22 AM | | COURT IN SESSION JURY BEING SEATED IN BOX, DFT AND ALL PARTIES PRESENT |
| 11:03:58 AM | COURT | INSTRUCTS JURORS GOING TO AN EARLY LUNCH BE BACK BY 12:45 P.M. |
| 11:04:37 AM | RECESS | |
| 12:49:46 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY, DFT AND ALL PARTIES ARE PRESENT |
| 12:50:29 PM | CHANDLER | DFT PUT FORWARD THAT THE VICTIM WAS A FIRST AGRESSOR, ANY TYPE OF SPECIFIC CONDUCT |
| 12:51:31 PM | | WHAT TRAIT DO YOU THINK IS DELIBERATE AND WILLFUL MURDER |
| 12:51:52 PM | CHANDLER | RESPONDS, NOW WE HAVE AN OPPORTUNITY THAT OUR VICTIM WAS NOT THE AGRESSOR |
| 12:52:26 PM | COSBY | AS FAR AS THE SITUATION OF THE JAILER, HAD NOTHING TO DO WITH HIS CHARACTER ETC. |
| 12:52:50 PM | CHANDLER | READS RULE 404-A-2 SEC. B |
| 12:54:32 PM | COURT | WILL LET YOU GO AHEAD AND DO IT, BETTER WAY TO DO IT |
| 12:54:50 PM | COSBY | I WILL ASK YOU TO RE VISIT SEXUAL ISSUE |
| 12:55:21 PM | COURT | OBJECTION NOTED |
| 12:55:43 PM | DFT | COMMENTS |

10/10/2013

EXBIT PAGES
4.5

*home-*
*all 505-331-7224 for 1:50pm*     *page1*

$Ex_1 8, +$
*4,5*

# MAXANN SHWARTZ, PH.D.
## Licensed Psychologist

3228 Los Arboles Ave. NE
Bldg. A, Suite 230
Albuquerque, New Mexico 87111

*All paper*

New Mexico License 0922
California License PSY15845
Telephone: (505) 331-7224

## FORENSIC NEUROPSYCHOLOGICAL EVALUATION

### (CONFIDENTIAL)

This report is confidential, and unless its release is in accord with the rules of criminal or civil procedure, it should not be released to anyone without written consent of the defendant. While the defendant does have a right to see this report, it is strongly recommended that (s) he do so in the presence of the psychologist so that the findings and results can be properly interpreted and any questions or concerns can be addressed. If the report is given to the defendant by anyone other than a psychologist, it is highly likely that (s) he can misunderstand the report's content, and the information may not necessarily present him/her in a favorable light.

| | |
|---|---|
| **NAME:** | RAMIREZ, Albert Jose |
| **DOB:** | 1988 |
| **AGE:** | 19 years-old |
| **SS#:** | |
| **COURT NUMBER:** | D-905-CR-0200700434 |
| **EXAMINER:** | Maxann Shwartz, Ph.D. |
| **DATE(S) OF EVALUATION:** | 03/10/2008 |
| **DATE OF REPORT:** | 03/14/2008 |
| **REFERRED BY:** | Brett J. Carter |
| | Counsel for Defense |
| | State of New Mexico/Curry County |
| | Ninth Judicial District |

*devoted*
*I issued FOR the witness*
*be a witness*

Page 1    Forensic Neuropsychological Evaluation    MAR 1 0 2008    RAMIREZ, Albert J.

13

*Ex. B.+. 4,5*
*She would have*
*testified this court*
*In*
*page1*

Ramirez, who was 18 years old when he said he shot Robledo, has a history of mental illness, according to family members, three of whom testified Thursday as defense witnesses.

A psychologist found Ramirez competent to stand trial.

Cosby struggled to keep Ramirez on point through much of his rambling testimony, drawing objections from Chandler and repeated instructions from Hanley to simply answer Cosby's questions.

Ramirez said he purchased the .22 caliber handgun he used in the homicide to protect himself from gang members who had threatened him. He said he had no intention of shooting or killing Robledo.

Ramirez said he went to the home Robledo had locked him out of to get his clothing and electronic gadgets. No one was in the house and his room was padlocked shut, he said, so he went looking for Robledo in the garage behind the house.

Ramirez said he and Robledo got in an argument and Robledo backhanded him across the face.

"I was scared," said Ramirez, his voice quaking. "He (Robledo) spoke in Spanish and said he was going to get his pistole."

Ramirez said Robledo then hit him with his fists and started choking him.

"My only option was to shoot. He tried to take the gun (away) and shoot me."

During an hour-long grilling by Chandler on cross examination, Ramirez admitted he gave a stranger $30 to purchase a $10 box of bullets for the handgun at the Clovis Walmart the day before the homicide. Chandler also confronted Ramirez with testimony that no bruises were found on his neck when arrested three days later and no bruises were found on the victim's body or hands.

"The fact of the matter," said Chandler, "is it (the fight) didn't happen. He didn't punch you did he?"

"Yes he did," said Ramirez.

Chandler said testimony from previous witnesses was that Ramirez was seen chasing down Robledo after shooting him twice in the chest and the victim fell to the ground.

"Eladio was lying on the ground dying and you shot him in the head," Chandler charged.

"I shot towards the ground," said Ramirez. "I didn't know where I hit him."

A state medical examiner testified earlier that Robledo died of the wounds to his chest and two bullets fired into his right temple.

Ramirez also admitted during Chandler's cross examination that he hit a girl in the face "who was beating up my cousin" and head-butted a police officer in other unrelated violent confrontations.

Hesiquia Ramirez testified her brother "had his own little issues" with mental illness long before the homicide.

During a confrontational cross examination, Chandler challenged her, noting discrepancies in her testimony and what she told police on the day of the killing.

As her brother was taken from the courtroom at the conclusion of the day, Hesiquia waved to Ramirez and said "Love you" in a hushed tone.

The jury is expected to get the case after closing arguments today.

Share this post:   [ Email ]   Facebook 0   Twitter 1   Google   Reddit

Filed Under: Featured News, News



Luxury Consignment
Up to 90% off.

The RealReal    SHOP NOW

### SOUND OFF

Weekly Web Poll

Do you think non party affiliated voters should be allowed to vote in primary elections?

O Yes

O No

[ Vote ]    View Results

### CMI PROMOTIONS

Clovis

Military
Discount
Map



EXIBIT 4:5

page 15

*Rational Standard for Competency-to-Stand-Trial Assessments,* 22 Journal of Am. Acad. Psychiatry and Law, 231, 237 (2004). Mr. Ramirez argues, consistent with the article, that two separate evaluators came to different conclusions and that, in light of the problems in Dr. Burness' methodology—not administering neurological or intelligence tests, not reviewing Mr. Ramirez's school records, not contacting the juvenile probation office to find out about any prior psychiatric care or drug use, and meeting with him for only a few hours—this is like "flipping coins in the courtroom." *Id.*

Because the district court abused its discretion in denying Mr. Ramirez's request for a more thorough competency hearing, this case should be remanded for a new trial with instructions to order another competency evaluation for Mr. Ramirez.

### Issue 3:  Mr. Ramirez Received Ineffective Assistance Of Counsel.

Mr. Ramirez relies upon his arguments in the brief in chief in support of this issue.

## II.    CONCLUSION

For the forgoing reasons, the trial court abused its discretion in denying Mr. Ramirez's motion to withdraw plea, and denying his request for a more thorough competency hearing, and the case should accordingly be remanded to the district court for trial, or alternatively, an evidentiary hearing to determine whether the plea

4

| **Client Name:** Albuti, Kam... d? | **File #:** 97343 |

## IV Psychiatric (cont)

### F. SYMPTOMS SCREENING

| | |
|---|---|
| **Depression** | ☒ usual depressed mood   ☐ anhedonia   ☐ weight loss   ☐ weight gain   ☒ sleep disturbance<br>☐ psychomotor retardation/agitation   ☐ fatigue   ☒ worthlessness   ☐ guilt<br>☒ poor concentration   ☐ suicidal ideation   ☒ hopelessness   ☒ anxiousness<br>☐ decreased energy/motivation   ☐ uncontrollable crying spells |
| **Anxiety** | ☐ restlessness   ☐ easily fatigued   ☐ poor concentration   ☐ irritability   ☐ muscle tension<br>☐ sleep disturbance   ☐ excessive anxiety and worry   ☐ inability to control worry |
| **Phobia/ Panic** | ☐ abrupt development of panic attacks accompanied by palpitations:   ☐ sweating   ☐ trembling<br>☐ shortness of breath   ☐ feeling of choking   ☐ chest pain   ☐ nausea   ☐ dizziness<br>☐ light headedness   ☐ derealization   ☐ fear of losing control   ☐ fear of dying   ☐ numbness<br>☐ chills   ☐ hot flashes   ☐ agoraphobia   ☐ excess/persistent fear of stimuli avoidance |
| **Mania** | ☐ grandiosity   ☒ decreased sleep   ☒ talkativeness   ☒ flight of ideas   ☒ distractibility<br>☐ increased goal directed activity   ☐ increased anxiety/agitation   ☒ elevated/expansive<br>☒ irritable mood   ☒ pressured speech   ☒ psychosis   ☐ increased compulsive/addictive behavior |
| **Post traumatic stress** | ☐ experienced traumatic event (event:                    date:                    )<br>☐ re-experiencing trauma avoidance of stimuli associated with trauma<br>☐ increased physical/emotional arousal dissociative symptoms   ☐ amnesia |
| **Psychosis** | ☒ hallucinations   ☒ delusions   ☒ paranoia   ☒ disorganized speech<br>☐ bizarre/catatonic behavior   ☒ flat or inappropriate affect |
| **Organicity** | ☐ decreased consciousness   ☐ impaired memory   ☐ perceptual disturbance<br>☐ impaired intellectual functioning   ☐ impaired judgement   ☐ labile affect |
| **Impulse Control** | ☐ property destruction   ☐ explosive/assaultive behavior<br>☐ inability to control destructive impulses   ☐ pleasure gained from acting out   ☐ gambling<br>☐ kleptomania   ☐ pyromania   ☐ trichotillomania |
| **Substance Abuse** | ☒ failure to fulfill major role obligations   ☒ physically hazardous use   ☒ legal problems<br>☒ use in spite of negative psychosocial consequences |
| **Substance Dependence** | ☐ tolerance   ☐ withdrawal   ☒ using more than intended   ☐ unsuccessful efforts to quit<br>☒ increased time spent obtaining/recovering   ☒ reduction in psychosocial functioning<br>☒ continued use in despite negative consequences |
| **Attention Deficit Symptoms** | ☐ inattention   ☐ hyperactivity   ☐ impulsivity functional impairment at |
| **Anti-Social Conduct** | ☐ aggressive behavior toward people/ animals   ☐ stealing   ☐ lying   ☐ vandalism<br>☐ violating rules at school/home/community |
| **Oppositional Conduct** | ☐ losing temper arguing   ☐ defiance annoying others   ☐ blaming others   ☐ denying problems<br>☐ easily agitated angry/resentful   ☐ spiteful/vindictive |
| **Other Symptomology** | ☒ frustration   ☒ mood lability   ☐ running away   ☐ separation anxiety   ☐ developmental delay<br>☐ learning difficulties   ☐ adjustment issues   ☐ below average IQ   ☐ autism<br>☐ verbal/motor tics   ☐ encopresis   ☐ enuresis   ☐ neurological deficits   ☐ school problems<br>☒ maladaptive family issues   ☒ low self esteem   ☐ peer relationship issues<br>☐ gang involvement   ☐ blended family issues   ☐ truancy   ☐ sexual promiscuity   ☐ sexual identity<br>☐ somatization   ☐ conversion   ☐ hypochondria   ☐ producing physical symptoms<br>☐ malingering   ☐ intrusive obsessions/compulsions   ☐ pathogenic personality   ☐ sexual dysfunction<br>☐ paraphilia dyssomnias   ☐ self mutilation   ☐ dissociative states<br>☐ bereavement   ☐ recent physical injury   ☐ chronic illness   ☐ anorexic bulimic behaviors |

Ex19H 3

# MENTAL HEALTH RESOURCES, INC.
## OUTPATIENT CLINICAL ASSESSMENT

* Please note clinical assessment must be completed within 30 days of admission

Initial ☒   Annual update 1ˢᵗ year ☐   2ⁿᵈ year ☐   year ☐     Client ID # 4303   Completion Date 11811 2 7

## I. PATIENT INFORMATION

Client Name: (Last) Kamira     First Q 616110     MI.     Male: ☐     Female ☐

**Client's primary residence**
☐ Their Home (house, apartment, room)   ☐ Friend's home   ☐ Relative's home   ☐ Group home   ☐ Foster Care
☐ Jail   ☐ Nursing home   ☐ Assisted Living   ☐ Shelter   ☐ Currently Homeless   ☐ Other

Phone·     Address     City:( 'LOVR     State: NM   Zip 86111

Client Age 19   DOB [    ] 88   Soc. Sec [    ] 7793   Marital Status: ☐Mar ☒Sin ☐Div ☐Wid ☐Sep ☐other

Race.   ☒ White   ☐ Native Am.   ☐ Black/African   Ethnicity: ☒Hispanic ☐Mexican ☐Cuban ☐Puerto Rican ☐
☐ Am Asian   ☐ Pacific Islander   ☐ Alaska Native   Latino ☐Not Hispanic Origin ☐Mexican Am. ☐Central Am ☐
                                                    South Am.

Parent/Guardian/Custodian/Power of Attorney if Minor (include name & address)     Parent/Guardian/Custodian Phone
NONE     ( ) N/A

Emergency Contact (include name & address)   Relationship to the Client.   Emergency Contact Phone
Usicula Kamira 220 Chaparral   Sister   (505) 142-1490

Referral/Source (please give specific   Household Annual   Client Annual   Household income   Client incomes
name): SIH   Income Ø   income Ø   source: Ø   source ✓

Employer's Name. N/A   Phone: N/A   School: N/A   Ed Level 13

Current PCP· N/A   Address: N/A   Phone. N/A

Please give a brief description of the presenting problem, including source of distress, precipitating events associated
problems and symptoms: Client feeling sad, mad, eye psychosis most liability

Le · problems· ☐ No ☒ Yes   Explain. currently facing charge of murder

If the client is a minor please describe the following in relation to Psychosocial/Developmental history·     N/A

Psychological functioning·

Intellectual functioning:

Educational/vocational functioning:

Social functioning·

Developmental functioning·

Substance abuse

Culture:

Leisure and recreation·

## II. RISK ASSESSMENT

A. ☒ No current risk at the time of this assessment     Yes

B. Have you ever thought about harming yourself or someone else? ☒ No ☒ Yes, if yes, did you have a plan? ☒No ☐Yes
When was the last time you thought about harming yourself or someone else? November 1, 2007

C. Have you ever harmed/injured yourself or someone else intentionally? ☒ No ☐ Yes, if yes, did you have a plan? ☒No
☐ Yes   When was the last time you thought about harming yourself or someone else?

**ONLY complete the rest of the risk assessment questions, if the response to section B or C is yes**
(note: complete section D if the risk is harm to self and/or section E if the risk is harm to others)

D. Risk of harm to Self·  Indicate which of the following suicide (harm to self) risk factors apply to the person·

| | | |
|---|---|---|
| Prior suicide attempt ☒ No ☐ Yes | Behavioral cues (isolation, impulsivity, withdrawn etc).☒ No ☐ Yes | |
| Repeated attempts. ☒ No ☐ Yes | Symptoms of psychosis (command hallucinations): ☐ No ☒ Yes | |
| Stated plan with intent ☒ No ☐ Yes | Family history of suicide. ☒ No ☐ Yes | |
| Access to means (e.g., weapon) ☒ No ☐ Yes | History of suicide in friend: ☒ No ☐ Yes | |
| Substance use· ☒ No ☐ Yes | Terminal physical illness· ☒ No ☐ Yes | |
| Other self-injurious behaviors ☒ No ☐ Yes | Current stressors ☐ No ☒ Yes | |
| Recent losses/ lack of support ☐ No ☒ Yes | Others: ☒ No ☐ Yes | |

Please provide explanation(s) for any of the above risk factors that were indicated with a yes response. Client divided

I/H1 but content to + 8 (1) 11/1/67 sad time on the break 4711 lu wart

Projected Date of Discharge: Within approximately 9 months.

Patient's Level of Participation in the Plan: At this time, Mr. Ramirez seems to willing to cooperate with his treatment plan.

Family/Support System Input/Desires: Evaluation is ongoing.

Legal Considerations Which May Impact Treatment: Mr. Ramirez has criminal charges pending. He is here on a court order for treatment to attain competency.

Least Constrictive Conditions for Treatment: Mr. Ramirez was ordered by the court to remain in a secure locked facility during the time of his evaluation and course of treatment.

Criteria for Transfer to a Less Restrictive Setting: As per court order.

Discharge Criteria: As per court order.

Potential Barriers to Discharge and Strategies to Overcome Them: Evaluation is ongoing.

Recommended Follow-up Treatment, Living, Skill, and Support Requirements: To be reassessed at the time of discharge.

Anticipated Length of Stay: Approximately 9 months.

Discharge Plan: As per court order.

CHRIS S. MANZANARES, LBSW
Staff Social Worker

Date: 6/16/08

CSM/AHS-644
D: 06/16/2008 1819
T: 06/16/2008 2356
J: 532576

$Ex.151+3$

June 16, 2008
FTUD

Exhibit 3

RAMIREZ, ALBERT
MR: 42819

page 11

Page 8

**MULTIDISCIPLINARY ASSESSMENT and
INTERDISCIPLINARY TREATMENT PLAN**

Defense counsel argued at the hearing that the doctor didn't administer neurological or intelligence tests, didn't review Mr. Ramirez's school records, didn't contact the juvenile probation office to find out about any prior psychiatric care or drug use, and only met with him for five or six hours. [CD 9/15/08 2:24:15, 2:31:15, 2:41:00]. Counsel maintained his belief that Mr. Ramirez was unable to assist in his defense and requested that Mr. Ramirez be sent back to Las Vegas for a more thorough competency evaluation, for his medications to stabilize, and to be administered neurological tests. [CD 9/15/08 2:41:00]. The district court denied Mr. Ramirez's request for another competency evaluation and declared him competent to stand trial. [RP 158-59].

Trial on the first degree murder and tampering with evidence charges was set for January 26, 2009. [CD 1/26/09 8:56:00]. That morning, the parties conducted jury selection. [CD 1/26/09 9:07:30-12:05:00]. During a break, the parties discussed a plea offer that had been previously made and were able to come to an agreement. [CD 1/26/09 3:03:15]. Pursuant to the agreement, Mr. Ramirez pled guilty to first degree murder and stipulated to a life sentence. [RP 300-302]. Prior to trial, Mr. Ramirez was also charged in separate cases with two counts of battery upon a detention officer and one count of assault. [RP 300-01, 333]. Under the plea, the two tampering with evidence charges were dismissed, as well as one of the battery charges, but he pled guilty to assault and battery against a detention

Disposition

Ex, 8, rz

Transported to 9 FRMC/Clovis                          Dust Determined by  06 Protocol
№  f Transport 1 Ground                               Diverted To
£  -y flared With                                     Patient Disposition 01 Treated, Transported by EMS
Lights/Siren from Scene? Emergent, with lights or siren    False en Transfer  2 No

Insurance

| Type | Policy # | Group # | Insured Name |
|------|----------|---------|--------------|

## Patient Narrative

Ambulance 1 arrived at 512 West 6th with a report of a subject on the ground. Ambulance 3, Bill Baca and myself arrived at the same time. Patient was lying with his head to the north on his left side in a pool of blood  Patient was placed on a LBS board, placed on the stretcher and taken to the ambulance where IV's, O2 and intubation was being prepared.

EMS Personnel was asked to gown up and get ready to transport code 3.  K Burns prepared to intubate the patient.  Ben Black was assisting with airway procedures, Chris Elam, Mike Nolen and J. Boyd, worked on IV's, Bill Baca was hooking up the monitor, and spiking IV fluids for the lines that were being attempted.  John Bradley was handing personnel equipment that requested additional supplies.  Suction was prepared by Bill Baca since the patients airway was full of blood.  In trying to suction it was noted that we would get a tremendous amount of coagulated blood and mucous.  Sour suction was not effective or were we able to get a clear site of the vocal cords.  A Combi Tube was placed and lung sound were diminished on both sides when bagged with 100% O2.

The initial pulse was weak at the carotid, with blood and mucous streaming out the patient's mouth and nose.  Once airway was established we felt for a pulse to find no pulse, but had an organized rhythm on the monitor.  PEA was identified and the ACLS protocol was initialed as we arrived at FRMC..  CPR was started, and bagging with 100 % O2 was continued.  We arrived at FRMC with patient moving the patient from the ambulance into C-2 where personnel stayed and helped staff with patient care.

It ~~ noted that the patient was shot twice in the head, once in the chest, once in the abdomen, and once in the arm R. at was never revived at FRMC and pronounced dead at 1409 by Dr. Patterson:

------------------------------------------------------------------------------------

D - DISPATCHED:
On 07/12/2007 at 13:41:00 dispatched to 315 W 6TH ST /Clovis, NM 99101 for Shots Fired.  13:42:00 unit 24 en roste.

C - CHIEF COMPLAINT:
13:43:00 unit 24 arrived to find a 39 year-old male with a weight of 79.4kg./1752bs. patient complaining of Gun Shot to Patient.

A- HISTORY:

A - ASSESSMENT:
Was found Traumatic Injury during assessment.

Look at THIS
175 pounds

Patient's sign and symptoms are:
Rales
Crepitus
Hemorrhage
Contusion

R    TATMENT:
The following medications, treatments, and vitals were performed on the patient:
Time: 13:44:00  Blood Pressure: 0/Palp  Temperature: Not Assessed  G Eye: 1
G ·  ar: 1  G Verbal: 1  Gcs Total: 3  Notes: Patient was lying in a pool of

EXHIBIT  2

ROBLEDO, ELADIO

2007-03764



**AUTOPSY REPORT**
THE UNIVERSITY OF NEW MEXICO # HEALTH SCIENCES CENTER
**OFFICE OF THE MEDICAL INVESTIGATOR**

School of Medicine          Albuquerque, New Mexico 87131-5091

1

## POSTMORTEM EXAMINATION

An autopsy is performed on the body of Eladio Robledo at the Office of the Medical Investigator, State of New Mexico, on the 13th day of July 2007, commencing at 10:00 AM.

The examination is performed under the legal authority of the Office of the Medical Investigator of the State of New Mexico.

The body is received within a sealed body bag, with a "State of New Mexico, Office of the Chief Medical Investigator" evidence label, bearing the following printed and handwritten information: "Name of Deceased: Robledo, Eladio; Sealed by: 6.37; Date: 7-12-07".

### EXTERNAL EXAMINATION

The body is that of a well developed, well nourished, adult, Hispanic male who weighs 145 pounds, is 72 inches in length, and appears compatible with the reported age of 39 years. There are pink and green OMI identification bands around the right wrist inscribed with identifying information.

The body is received clad in a pair of white brief-style underpants, which are partially cut off the body for resuscitation. There are no accompanying personal effects.

The body is cool. Rigor mortis is fully fixed. Minimally evident, blanchable purple livor mortis extends over the posterior surfaces of the body, except in areas exposed to pressure.

The scalp hair is black, wavy, and measures up to 2 inches in length over the crown. The irides are brown. The pupils are round. The corneae are translucent. The sclerae are white and the conjunctivae are clear. No petechial hemorrhages are identified on the sclerae, bulbar conjunctivae, facial skin or oral mucosa. The nose and ears are normally formed, without pierce marks. The decedent wears trimmed mustache and beard stubble. The teeth are natural and in good condition. The neck is unremarkable.

The thorax is well developed and symmetrical. The abdomen is flat. The anus is free of lesions. The spine is normally formed and the surface of the back is free of lesions.

The external genitalia are those of a normal adult male.

The upper and lower extremities are well developed and symmetrical, without absence of digits.

No identifying marks or scars are readily apparent.

Evidence of medical intervention includes an orotracheal tube (correctly placed), seven electrocardiograph patches and two defibrillator pads over the anterior chest, a right antecubital intravenous line, a left antecubital intravenous line,

**Booking Report #:** 1025645
**Booking Date/Time:** 08/20/07    19:11
**Name:** RAMIREZ,ALBERT
**DOB:** /88
/ ~: 1201 EDWARDS ST
.    :
**City:** CLOVIS,NM 88101
**Phone:**

Case #: page

EV.3H

┌─Physical Info────────┐
| **Age:** 18 |
| **Race:** W |
| **Sex:** M |
| **Ethnic:** |
| **Height:** 5'05" |
| **Weight:** 108 |
| **Hair:** BLK |
| **Eyes:** BRO |
| **Skin:** |
| **Facial:** |

┌─Other Info──────────┐
| **JRN:** 47315 |
| **FBI:** |
| **MID:** |
| **SID:** NOT REQUIR |
| **Mug #:** 47316 JPG |
| **SSN:** 793 |
| **Immigt:** |
| **Fingerprint:** |
| **OLN:** NONE |
| **OLN State:** |

**POB:** CLOVIS NM          **Religion:** NONE
**School:** CHOICES HIGH
**Grade:** 12   **Stat:** DROP OUT   **GED:** N   **APS:**
**Dangerous:** 2   **Hate/Bias:** NONE
**Gang:** NONE
**Gang Moniker:**
**Scars / Tattoos:** NONE
**Employer**

|  |  |  | Date | Time |
|---|---|---|---|---|
| **Custody Officer** | 120 | - MARTINEZ,S |  |  |
| **...uing Officer** | 120 | - MARTINEZ,S | 06/20/07 | 18:15 |
| **sport Officer** | 120 | - MARTINEZ,S |  |  |
| **Probation Officer** |  | - |  |  |
| **Admitting Officer** | D33 | - CARVEY,T |  |  |
| **Fingerprint Officer** | D30 | - MARQUEZ D |  |  |
| **Detain Auth Officer** | A48 | - LOZANO M | 06/20/07 | 19 11 |

**Billing Agency #**     CPD     CLOVIS PD
**Custody Agency #**    CPD   - CLOVIS PD
**Housing Facility**      CURRY CTNY ADC
**Arrest Location**       300 N CONNELLY
**Offense Location**

| **Release Auth Officer** | 1 | - MAG COURT |  | 00:00 |
|---|---|---|---|---|
| **Release Officer** |  | - |  | 00:00 |
| **Release Type:** |  | **Release To:** |  |  |
| **Detainer 1:** |  |  |  |  |
| 2: |  |  |  |  |

**Class:** DETOX
**Points:** 2
**Reason:** DETOX

**ACTIVE:** Y     **Work Release:** N     **Community Service:** N     **Interpreter:**     **Attorney:**

**Comments:**

## CHARGES/COURT INFORMATION

| IBR # | NCIC # | Violation | Statute | Disposition | Date | Bond Amt/Type | Warrant # | Sentence |
|---|---|---|---|---|---|---|---|---|
| 290 | 048 | CRIMINAL DAMAGE | 30-15-1 | MISD | 06/20/07 | 1000.00 C | M12MR200700472 | MAGISTRATE |

ME the set Abused
victim.

page 7

EXIBIT 2



RECEIVED

JUN 2 2 2007

Case

EXIBIT 2

Sam Saiz

CSP or statutary rape

90's —

⊲ lawyer → Cosmo Ripl
DA → BSC
Judge Hensley

DOB: ████████
SS# ████████ 3022

89-CR-10173
96-CR-12536 OUT 3RD

(THE NIEBOR
WHO SET
Abuced at 15 +16,
ME GAY guy)

exibit 2                    page 6



EX:BIT I

ST. VS ALBERT RAMIREZ CR-07-434                                    COURTROOM ONE

| Time | Speaker | Note |
|---|---|---|
| 2:14:36 PM | COURT | HE HAS BECOME EXPLOSIVE AND SHOOTS OFF HIS MOUTH, GO TALK TO HIM AND SEE WHAT WE WILL DO, WE ARE CLOSE TO THE END |
| 2:15 25 PM | RECESS | |
| 2:36:30 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY DFT AND ALL PARTIES PRESENT |
| 2:37:06 PM | COSBY | HAVE DISCUSSED WITH MY CLIENT HIS OPTIONS HE HAS STATED HE FEELS HE NEEDS ME, I TOLD HIM EITHER I REPRESENT HIM OR HE REPRESENTS HIMSELF, I CAUTIONED HIM HE NEEDS TO OBEY COURT RULES, HE SAID HE WOULD RATHER HAVE SOMEONE ELSE BUT HE NEEDS ME, I EXPLAINED TO HIM AS FAR AS THE LAST WITNESS, THE WITNESS TELLS ME HE DOES NOT REMEMBER IN FRONT OF THE JURY, SO RATHER THAN CALL SOMEONE TO STAND THEY DON'T REMEMBER I JUST DON'T ASK THAT QUESTION, THERE ARE QUESTIONS THAT ARE NOT ASKED FOR REASONS |
| 2:39:17 PM | COURT | LET THE RECORD REFLECT THAT MR. RAMIREZ HAS RETURNED TO THE COURTROOM AND MR. COSBY WILL BE CONTINUING HIS REPRESENTATION, NOT ANOTHER OPPORTUNITY TO CHANGE COUNSEL |
| 2:39:55 PM | | ADVISES DFT THAT THERE IS AUTHORITY THAT ALLOW YOU TO SIT IN ANOTHER ROOM TO WATCH TRIAL, IT IS AN OPTION IF YOU CONTINUE TO BE DISRUPTIVE YOU WILL SIT IN ANOTHER ROOM AND VIEW TRIAL BY VIDEO |
| 2:40:48 PM | COSBY | HE ASKED ME IF IT WAS BETTER TO SIT IN ANOTHER ROOM, I TOLD HIM IT WOULD BE AGAINST HIS INTEREST TO VIEW BY VIDEO |
| 2 41:36 PM | CHANDLER | I DON'T HAVE ANY XEX FOR MR. RAMIREZ BROTHER OF DFT |
| 2:42 28 PM | COSBY | I HAVE TOLD HER WHAT SHE CAN SAY AND CANNOT SAY |
| 2 42:40 PM | | **BENCH CONFERENCE** |
| 2:44:43 PM | COSBY | REGARDING PHOTO OF IVAN VASQUEZ SHOWING PHOTO OF HIM IN BOOKING, AND RECEIVED THIS LETTER |
| 2:46:00 PM | CHANDLER | RELEVENCE TO THE PICTURE, COURT WILL NOT ALLOW PHOTO |
| 2:47:19 PM | | JURY BEING BROUGHT INTO COURTROOM |
| 2:48:04 PM | | OFF RECORD |
| 2:51:51 PM | | #3 WITNESS HESIQUIA RAMIREZ CALLED BY COSBY / SWORN / DEX |
| 2 52:03 PM | | JURY BEING SEATED IN BOX |
| 2:53:09 PM | CHANDLER | MR. JOSE RAMIREZ, THE STATE DOES NOT HAVE ANY QUESTIONS |

*(handwritten margin notes: "why was HL to P to Speak", "read xif", "pchl S")*

Following the finding of competency and after nearly two years of silence, Defendant became an active participant in the process. At a July 29, 2013, status conference, he addressed the court regarding the letters he had written stating he wanted new counsel because Mr. Cosby had not fulfilled his duties and he was confused because Mr. Cosby was not telling him what was happening. [CD 7-29-13, 9:35:13 to 9:36:25] Defendant asked for a continuance to get a new attorney, to prepare his case and to have another psychiatric evaluation, which would show he was suffering from "psychosomatic delusions and hallucinations and severe depression and anxiety." [CD 7-29-13, 9:41:06 to 9:41:32, 9:36:53 to 9:37:20, 9:39:58 to 9:40:10] The trial court reviewed Defendant's file, stated it was confident Mr. Cosby was providing Defendant competent representation, and denied Defendant's requests for substitute counsel and a continuance. [CD 7-29-13, 9:42:31 to 9:43:52] Defendant persisted in his desire for a continuance, explaining he had "always been remorseful and everything," and he "would have took the plea, but they gave me two-and-one-half extra years that [he] wasn't supposed to get." [CD 7-29-13, 9:46:45 to 9:46:56]

Ultimately, Defendant's case did not go to trial until October 7, 2013. The first day of trial, the jury heard testimony from Mr. Saiz, Ms. Finkey and a crime scene investigator. The second day of trial, after the trial court released the jury for the day, the prosecutor emphasized its first two witnesses the next day needed to

15

Exibit 1

"Mr. Cosby is my attorney and he's supposed to be for my defense but like I've said in the past I've asked to fire him, I've asked to get a new attorney which I can't afford it I'm poor, I have no help from my family just basically to get my hygiene and also I asked for a new attorney, I asked for a private investigator, I asked for a neurologist evaluation, I asked for another competency evaluation, I've asked for several motions which I don't know if they were even filed or if they were denied, I don't know if Mr. Cosby, I just feel like maybe I have a big mouth and I sit to open my big mouth and say things and I don't know if I made him angry or upset or frustrated or what I've done but for some reason I don't know if he's going to lose this case because it's a weak case or if it's intentionally ~~or accidental or if I'm just paranoid.~~"

The judge interrupted and told Mr. Ramirez that he had made his record. Mr. Ramirez told the judge that he had more things to say, but thanked the judge for giving him that time. **[10-10-2013 CD B 9:22:00-9:26:00]**

**Testimony of Albert Ramirez**

Mr. Ramirez took the stand. His entire testimony was punctuated with run-on and irrelevant statements as well as admonitions from his counsel and the judge. He repeatedly kept raising issues of his health and health history. He stated that he had the flu and didn't feel well. When asked about his height he talked about getting into an accident while driving a car and starting to lift weights, and he was taller in 2007. Shortly thereafter, when defense counsel tried to get Mr. Ramirez to answer who his mother was, Mr. Ramirez objected, "You didn't let me finish where I stayed in July." Mr.

3

Exibit 1   Exibit 1

The judge interrupted and asked the prosecution to lay a foundation. The prosecution asked Mr. Ramirez "Do you recall giving a lot of requests to go to the law library to research how to beat your charges?" The defense objected and asked to approach. The judge directed the prosecution not to ask those questions but said that he would not declare a mistrial. **[10-10-13 CD B 1:56:15-1:58:25]**

Later on October 10th, when Mr. Ramirez's defense counsel was finished questioning Mr. Ramirez's brother on direct examination, Mr. Ramirez interrupted the proceedings:

> Mr. Ramirez: "Hey, your Honor, I got some questions I need to ask him."
> Judge: "But you can't ask them."
> Mr. Ramirez: "Why didn't you ask... I want to fire..."
> Judge: "We're going to sit you in the other room if I hear anything more from you."
> Mr. Ramirez: (speaking over the judge) "I fire him. He's fired. I want to represent myself... I have the right to fire him and represent myself! He's not representing me right!"

The Judge ordered Mr. Ramirez from the courtroom and excused the jury. **[10-10-2013 CD B 2:09:45-2:10:30]** Following the recess defense counsel spoke with Mr. Ramirez and the trial resumed with Mr. Ramirez present.

EXBIT 1,

22



# Law Offices of the Public Defender

**Bennett J. Baur**
**Chief Public Defender**

January 24, 2018

Alberto Ramirez
DOC #69597
Penitentiary of New Mexico
PO Box 1059
Santa Fe, NM 87504

RE:    Alberto Ramirez v. State of New Mexico
       Cause No. D-905-CR-2007-00434

Dear Mr. Ramirez,

Enclosed is a copy of the Stipulated Extension Order that was filed in your case. Also, be advised that we have copied your discovery and will be sending it back to you. It will be in 2 parts.

Please call me at (505)369-3612 to schedule an appointment if you have any questions.

Sincerely,

Amanda Stephenson

Assistant Public Defender
Post-Conviction Habeas Unit

AS/tg

Enclosure(s)

Xc: file

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

NINTH JUDICIAL
CURRY COU
FILED IN 1577

ALBERTO RAMIREZ,

Petitioner,

No. D-905-CR-2007-00434

vs.

STATE OF NEW MEXICO,

Respondents.

## SECOND STIPULATED EXTENSION ORDER

This matter comes before the Court on the request of habeas counsel for Petitioner,

Amanda Stephenson, Assistant Public Defender, for an extension of time for the filing of an

amended Petition for Writ of Habeas Corpus or Notice of Non-Intent, and the Court being

advised that further investigation and collection of materials is required, counsel for the State

having no objection,

It is therefore ORDERED that counsel for Petitioner is allowed an additional 90 days

from the filing of this Order for the preparation of an Amended Petition.

Drew Tatum
DISTRICT JUDGE

APPROVED:

Amanda Stephenson
Counsel for Petitioner

Approved via email 1/16/18
Andrea Reeb
District Attorney

Form CD-150301 1
Revised 06/09/16

## NEW MEXICO CORRECTIONS DEPARTMENT
### Attorney Telephone Call Request

Inmate Name: _AIBERT RAMIREZ_ NMCD #: _69547_

HU/Cell/Bunk #: _58F 107_ Date of Request: _5/21/18_

Attorney to be called: _LIANE KERR / SECERTCEY. SCHOUK CIPPO. NIMENT_

Attorney telephone #: (_505_) _848 - 9190_

I understand that if the attorney listed above does not accept collect calls, I will be charged
$0.20 per minute (long distance only), to be deducted from my inmate account through a
Debit Memo authorized by my signature. _A·R_
                                        Inmate Initials
Inmate's Signature: _AIBERTO RAMIREZ_

---

Classification Officer: _Bluna_ _BRuna_  _5·22·18_
                          (Print)          (Sign)      Date

Call was:    **APPROVED** (X)    **DENIED** ( ) Spoke w/ Ramirez on 5/22/18 @ 58-she will
                                             call me back regarding scheduling once she
Full explanation if denied: _Speaks w/ attorney._

---

(A copy of all denied attorney calls shall be forwarded to the Deputy Warden for review.)

If call was approved but not placed or accepted by the attorney, please explain in detail: _____

---

Call placed: _5.22-18_   _12.10_      _12.28_       _5B Closs PR._
              Date        Start Time    End Time      Location

'Staff member placing call: _Bluna_               _BRuna_
                              (Print)                (Sign)

STAFF MEMBERS, CUSTODY AND NON-CUSTODY, MAY NOT REMAIN IN THE OFFICE AREA
WHEN AN ATTORNEY PHONE CALL IS PLACED. THIS DOES NOT PRECLUDE VISUAL
OBSERVATION BY DEPARTMENT STAFF MEMBERS DURING THE TELEPHONE CALL.
ATTORNEY PHONE CALLS SHALL NOT ARBITRARILY OR UNREASONABLY BE LIMITED TO 15
MINUTES UNLESS JUSTIFIED.

Attorney call was approximately _18_ minutes, due to _Call Concluded_
                                           (If limited to 15 minutes or less, state the reason)

_I verify that my Attorney phone call was handled as documented above:_
Inmate Signature: _ABERTO Ramirez_ Date: _5/28/18_ Time: _12.28_

RCVD 5/31/18

Form CD-150301 1
Revised 06/09/16

## NEW MEXICO CORRECTIONS DEPARTMENT
### Attorney Telephone Call Request

Inmate Name: _ALBERT Ractiez_ NMCD #: _69597_

HU/Cell/Bunk #: _5BE 1•7_ Date of Request: _3/27.16_

Attorney to be called: _Brian Tucke². Coupugion attorney_
POSL Convicter Remedy

Attorney telephone #:(_505_) _369·3611_

I understand that if the attorney listed above does not accept collect calls, I will be charged
$0.20 per minute (long distance only), to be deducted from my inmate account through a
Debit Memo authorized by my signatu1e. _AR_

Inmate's Signature· _AIBER_ Inmate Initials _Rcmir82_

---

Classification Officer· _D lune_ _I. BLune_ _4-4-18 rcv d_
(Pιint)   (Sıgn)   Date

Call was.    APPROVED (√)    DENIED    ( 1 ~ -(2-18 Lft msg
4.9-18 - 1 25pm spoloed Atty Tucke -w H call
brck to Schedule cw thec computer was down
Full explanation if denied: _4/9/18@ 1:5le - Scholuded fw 4-25-18 @ 10:30 Am_

---

(A copy of all denied attorney calls shall be forwarded to the Deputy Warden for review )

If call was approved but not placed or accepted by the attorney, please explain in detail· ___

---

Call placed: _4·25·18_    _1D35_    _10:52_    _5B Class18_
Date    Start Time    End Time    Location

Staff member placing call: _5.lune_    / _BRlune_
(Print)    (Sıgn)

STAFF MEMBERS, CUSTODY AND NON-CUSTODY, MAY NOT REMAIN IN THE OFFICE AREA
WHEN AN ATTORNEY PHONE CALL IS PLACED. THIS DOES NOT PRECLUDE VISUAL
OBSERVATION BY DEPARTMENГ STAFF MEMBERS DURING THE TELEPHONE CALL.
ATTORNEY PHONE CALLS SHALL NOT ARBITRARILY OR UNREASONABLY BE LIMITED TO 15
MINUTES UNLESS JUSTIFIED.

Attorney call was approximately _17_ minutes, due to _Call Concluded_.
(If limited to 15 minutes or less, state the reason)

*I verify that my Attorney phone call was handled as documented above:*

Inmate Signature: _Albert Ramirez_    Date: _4/25/18_    Time: _0:52_

Form CD 150301 1
Revised 06 09 '16

NEW MEXICO CORRECTIONS DEPARTMENT
Attorney Telephone Call Request

Inmate Name. _AIBERT RAMIREZ_ NMCD # _69597_

HU/Cell Bunk # _5BF167_ Date of Request _3/21/18_

Attorney to be called _Liane KERR_

Attorney telephone # _Al, AIBERT Ramirez 505 8459190_

I understand that if the attorney listed above does not accept collect calls, I will be charged $0.20 per minute (long distance only), to be deducted from my inmate account through a Debit Memo authorized by my signature. _AR_

Inmate's Signature. _AIBERT RAMIREZ_

Classification Officer _B lum_    _B Luno_    _3-9-18_
(Print)              (Sign)         Date  @ 8 x2an

Call was    APPROVED  (√)   DENIED  ( )   Spoke w/ Yaralu-cades: he was pwds, she will get back w/m Scheduled 8/12/18 & 2.30p Yaru cates in 3/21/18 @ 11 A

I ull explanation if denied·

( A copy of all denied attorney calls shall be forwarded to the Deputy Warden for review )

If call was approved but not placed or accepted by the attorney, please explain in detail·

Call placed·  _3-12-18_   _2.43_   _3 09_   _5B Class Office_
Date        Start Time   End Time   Location

Staff member placing call _D. Luna_   _B Luna_   Atty Calloo In
(Print)         (Sign)

STAFF MEMBERS, CUSTODY AND NON-CUSTODY, MAY NOT REMAIN IN THE OFFICE AREA WHEN AN ATTORNEY PHONE CALL IS PLACED. THIS DOES NOT PRECLUDE VISUAL OBSERVATION BY DEPARTMENT STAFF MEMBERS DURING THE TELEPHONE CALL. ATTORNEY PHONE CALLS SHALL NOT ARBITRARILY OR UNREASONABLY BE LIMITED TO 15 MINUTES UNLESS JUSTIFIED

Attorney call was approximately _24_ minutes, due to _Call Concluded_
(If limited to 15 minutes or less, state the reason)

I verify that my Attorney phone call was handled as documented above:

Inmate Signature: _AIROSC Kelly_   Date. _3.12.18_   Time· _2 CF1_

Form CD-150301 I
Revised 06/09/16

## NEW MEXICO CORRECTIONS DEPARTMENT
### Attorney Telephone Call Request

Inmate Name: Alberto Ramirez                    NMCD #: 69597

HU/Cell/Bunk #: 5B-F107                    Date of Request: 3-2-18

Attorney to be called: Leanne Kerr (Contract City)

Attorney telephone #: (505) 848-9190

I understand that if the attorney listed above does not accept collect calls, I will be charged
$0.20 per minute (long distance only), to be deducted from my inmate account through a
Debit Memo authorized by my signature.

Inmate Initials

Inmate's Signature: _____

Classification Officer: B llna                    3.2-18
                        (Print)          (Sign)          Date

                                        Left VM -3/2/18 @ 2:40 pm
Call was:    APPROVED  (✓)    DENIED  ( )    Scheduled 3/9/18 @ 8 15am
                                            spoke w/ Yaraeli

Full explanation if denied: _____

(A copy of all denied attorney calls shall be forwarded to the Deputy Warden for review.)

If call was approved but not placed or accepted by the attorney, please explain in detail: _____

Call placed:  3-9-18        8:19 am        8:29        5B Class Office
              Date          Start Time     End Time    Location

Staff member placing call: B luna                    _____
                          (Print)                      (Sign)

STAFF MEMBERS, CUSTODY AND NON-CUSTODY, MAY NOT REMAIN IN THE OFFICE AREA
WHEN AN ATTORNEY PHONE CALL IS PLACED. THIS DOES NOT PRECLUDE VISUAL
OBSERVATION BY DEPARTMENT STAFF MEMBERS DURING THE TELEPHONE CALL.
ATTORNEY PHONE CALLS SHALL NOT ARBITRARILY OR UNREASONABLY BE LIMITED TO 15
MINUTES UNLESS JUSTIFIED.

Attorney call was approximately  10  minutes, due to  Call Concluded .
                                                    (If limited to 15 minutes or less, state the reason)

*I verify that my Attorney phone call was handled as documented above:*

Inmate Signature: ALBERT RAMIREZ        Date: 3/7/18        Time: 8:29

Form CD-150301 1
Revised 08/21/13

## NEW MEXICO CORRECTIONS DEPARTMENT
### Attorney Telephone Call Request

Inmate Name: A IBERT RomiEZ,          NMCD # 69507

HU/Cell/Bunk #: IBH H7 F107   Date of Request: _____

Attorney to be called: Amonda Stephenson

Attorney telephone #: 55·369·3612        Tanya. Asst 505-369-36l

I understand that if the attorney listed above does **not** accept collect calls, I will be charged $0.20 per minute (long distance only), to be deducted from my inmate account through a Debit Memo authorized by my signature.

Inmate's Signature: ALBERT Romiez,     Inmate Initals

Classification Officer: Bluna (Print)   BRune (Sign)   2-26-18 -rcvd  Date

Call was·   **APPROVED** ( )   **DENIED** (✓)   Left VM on 2/27/18@ 1 16pm
Lest VM on 3-1-18@ 8:57am

Full explanation if denied: Ms Stephenson returned call on 3-2-18 @ 11:13-She no longer represents
Inmate Romiez. District Atty Joann Kerr 505-848-9190 has taken over case.
(A copy of all denied attorney calls shall be forwarded to the Deputy Warden for review.)

If call was approved but not placed or accepted by the attorney, please explain in detail: _____

Call placed: _____   _____   _____   _____
        Date        Start Time   End Time    Location

Staff member placing call. _____   /
                        (Print)              (Sign)

**STAFF MEMBERS, CUSTODY AND NON-CUSTODY, MAY NOT REMAIN IN THE OFFICE AREA WHEN AN ATTORNEY PHONE CALL IS PLACED. THIS DOES NOT PRECLUDE VISUAL OBSERVATION BY DEPARTMENT STAFF MEMBERS DURING THE TELEPHONE CALL. ATTORNEY PHONE CALLS SHALL NOT ARBITRARILY OR UNREASONABLY BE LIMITED TO 15 MINUTES UNLESS JUSTIFIED.**

Attorney call was approximately _____ minutes, due to _____
                                    (If limited to 15 minutes or less, state the reason)

*I verify that my Attorney phone call was handled as documented above.*

Inmate Signature: _____   Date: _____   Time: _____

STATE OF NEW MEXICO
COUNTY OF CURRY
NINTH JUDICIAL DISTRICT

STATE OF NEW MEXICO,

     Plaintiff,

v.                                                                                    No. CR-2007-434

ALBERT RAMIREZ,

     Defendant.

## DESIGNATION OF EXHIBITS

Pursuant to Rule 12-212 NMRA, the Defendant designates the following exhibits:

1.    State's Exhibits #1 - #110.

Respectfully submitted:

Jesse R. Cosby, Esq.
JESSE R. COSBY, P.C.
Attorney for Defendant
P.O. Box 3330
Roswell, New Mexico 88202-3330
(575) 625-0516

# LIANE E. KERR, LLC

Liane E. Kerr, Attorney at Law

April 18, 2018

Albert Ramirez, PNM 69597
c/o SNMCF
P.O. Box 639
1983 Joe R. Silva Boulevard
Las Cruces, New Mexico 88004-0639

RE·   *State of New Mexico v. Albert Ramirez ,D-0905-CR-2007-00434*

Dear Mr Ramirez:

Thank you for your recent letter. I agree we need more time prior to filing the Petition. We did finally get your discovery from the PD's office. I finished reviewing your notes last night. We also received a copy of your appellate file, on loan from the court. I was hoping to go through the file in its entirety before visiting with you in Las Cruces. Our Petition was due April 19, 2018.

Because of the late receipt of discovery, I requested a 60 day extension (since Ms. Stephenson requested two separate 90 day extensions but filed nothing, I didn't want to push things and ask for a full 90 days). Unfortunately, the State would not agree to my request. The judge gave us only 30 days, making our new Petition due May 19, 2018.

I have been working furiously to pull the Petition together so we will not miss the deadline. I sent the audio CDs to a transcriptionist to transcribe only those portions of the trial which support the habeas argument. I made reference to the transcripts by citing to the CD and counter number. Once I have the transcripts, I will replace the CD counter number with the actual transcripts as exhibits on receipt of same. Because I am still pulling together the exhibits, I have not labeled them yet. Regardless, I am providing you the Petition, together with the exhibits I do have.

Consequently, you will need to review the Petition, which is included, carefully and expeditiously and give me your thoughts as soon as possible. I have made arrangements to visit with you in Las Cruces on May 10, 2018. I hope to have things finalized prior to our meeting, so please review the document prior to our upcoming meeting.

I look forward to working with you.

Sincerely,

LIANE E. KERR .

w/Petition

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

2017 OCT 23 - AM 9: 53

CLERK DISTRICT COURT

ALBERTO RAMIREZ,

Petitioner,

vs.

No. D-905-CR-2007-00434

STATE OF NEW MEXICO,

Respondents.

## STIPULATED EXTENSION ORDER

This matter comes before the Court on the request of habeas counsel for Petitioner,

Amanda Stephenson, Assistant Public Defender, for an extension of time for the filing of an

amended Petition for Writ of Habeas Corpus or Notice of Non-Intent, and the Court being

advised that further investigation and collection of materials is required, counsel for the State

having no objection,

It is therefore ORDERED that counsel for Petitioner is allowed an additional 90 days

from the filing of this Order for the preparation of an Amended Petition.

Drew Tatum
DISTRICT JUDGE

APPROVED

Amanda Stephenson
Counsel for Petitioner

Approved via email 10/17/17
Andrea Reeb
District Attorney



# Law Offices of the Public Defender

**Bennett J. Baur**
**Chief Public Defender**

October 26, 2017

Alberto Ramirez
DOC #69597
Penitentiary of New Mexico
PO Box 1059
Santa Fe, NM 87504

RE:    Alberto Ramirez v. State of New Mexico
       Cause No. D-905-CR-2007-00434

Dear Mr. Ramirez,

Enclosed is a copy of the Stipulated Extension Order that was filed in your case.

Please call me at (505)369-3612 to schedule an appointment if you have any questions.

Sincerely,

Amanda Stephenson
Assistant Public Defender
Post-Conviction Habeas Unit

AS/tg

Enclosure(s)

Xc: file

## FEDERAL PUBLIC DEFENDER
## DISTRICT OF NEW MEXICO

Margaret Katze
Supervisory Assistant
Albuquerque Office
111 Lomas NW, Suite 501
Albuquerque NM 87102
Tel (505) 346-2489
Fax (505) 346-2494
Toll Free 877-511-4686

Stephen P McCue
Federal Public Defender
Albuquerque

Barbara Mandell
Supervisory Assistant
Las Cruces Office
506 S Main St Suite 600
Las Cruces, NM 88001
Tel (575) 527-6930
Fax (575) 527-6933
Toll Free 855-527-6930

August 28, 2017

Albert Ramirez # 69597
Penitentiary of New Mexico
P.O. Box 1059
Santa Fe, NM 87504

Dear Mr. Ramirez,

I heard the phone message you left on August 24, 2017. It sounds like you want an explanation of the time limits that apply to federal habeas corpus. That is a complicated subject that I will try to explain.

The one-year time limit begins 90 days after the state supreme court decides the direct appeal. In your case, I believe that date would be February 29, 2017, because the Supreme Court affirmed your convictions on December 1, 2016. The one-year clock runs whenever you do not have a properly filed habeas petition pending in state court. It stops when state habeas proceedings are ongoing. It begins again when those proceedings have ended. If you file a second habeas proceeding before the one year time ends, then the clock stops again. In short, filing another habeas petition will not cause you to be untimely as long as the one year clock has not run out. I hope this is understandable.

If you have any other questions or requests, please feel free to contact me

Sincerely,

Chuck McCormack
Research and Writing Specialist

cmc/mhp

## COYTE LAW P.C.

201 Third St NW, Suite 1920
Albuquerque, NM 87102
Tel (505) 244-3030 Fax (505) 242-4339
mcoyte@earthlink.net

September 14, 2016

Albert Ramirez (#69597)
CNMCF
P.O. Drawer 1328
1525 Morris Rd.
Los Lunas, NM 87031-1328

Dear Mr. Ramirez,

Thank you for considering Coyte Law P.C. (Matthew E. Coyte, Esq.) to represent you in pursuit of your claims. Unfortunately, I am too busy at this time to take your case and will be unable to represent you.

Because I will not be representing you, I wish to urge you to seek the assistance of other counsel quickly to ensure that your rights and claims are protected. There may be one or more statutes of limitation that may be about to expire on your claims. I am not in a position to advise you on which deadlines apply to your case because I do not have enough information to advise you and because I am not representing you. Please note that if such deadlines expire before you act, you may lose valuable rights. You should therefore take immediate steps to contact other attorneys to preserve whatever rights you may have.

In declining this representation, this law firm is not expressing an opinion on the merits of this case. I am sorry that we will be unable to represent you or take any action on your claims. I wish you luck in finding an attorney or pursuing your claims on your own behalf.

Yours truly,

Matthew E. Coyte
Coyte Law P.C.

# STATE OF NEW MEXICO
## Corrections Department
## Southern New Mexico Correctional Facility
# MEMORANDUM

**SUSANA MARTINEZ, Governor**

David Jablonski,
Secretary of Corrections

James Mulheron
SNMCF Warden



Post Office Box 639
Las Cruces, NM 88004
Phone: (575) 523-3200
Fax Number: (575) 523-3349

TO:      Alberto Ramirez #69597
         5B-F107

FROM:    Bayola Luna
         5B Classification Officer

DATE:    3/2/18

RE:      Attorney Call

Your request for an attorney telephone call to Attorney Stephenson has been denied by Ms. Stephenson. She advised she no longer represents you. Your case has been assigned to Contract Attorney Leann Kerr.

I will be attempting to get a hold of Ms. Kerr to schedule the call for you. I will notify you when this has been scheduled.

# STATE OF NEW MEXICO
## *Corrections Department*
## *Southern New Mexico Correctional Facility*
# MEMORANDUM

**SUSANA MARTINEZ, Governor**

David Jablonski,
Secretary of Corrections

James Mulheron
SNMCF Warden



Post Office Box 639
Las Cruces, NM 88004
Phone: (575) 523-3200
Fax Number: (575) 523-3349

TO:     Alberto Ramirez #69597
        5B-F107

FROM:   Bayola Luna
        5B Classification Officer

DATE:   3/9/18

RE:     Attorney Call

I have scheduled an attorney phone call for you with Attorney Tucker for
Wednesday, April 25, 2018 @ 10:30 am. Please ensure you are in my office 5
minutes prior to the scheduled time.

Brian Tucker
contract attorneys
505-345.2892
legal Services
Request additional Funding
Transcript, Medical Mental Health
records, court pays not lawyer
Need to contact collections
Sign waiver lawyer Get them. L



# LIANE E. KERR, LLC
Liane E. Kerr, Attorney at Law

## TRANSMITTAL MEMORANDUM

DATE:      October 5, 2018

TO:        Albert Ramirez, PNM 69597
           c/o PNM
           P.O. Box 1059
           Santa Fe, New Mexico 87504-1059

RE:        *State of New Mexico v. Albert Ramirez D-0905-CR-2007-00434*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Enclosed please find the following

### State's Response

Please·

_____    File and return endorsed copy to this office.

_____    Sign and return to this office.

_____    Check in the amount of $_____ for

_____    Per your request.

__X__       For your information.

_____    Please contact the office to schedule an appointment.

_____    Pay vendor directly.

_____    Other:

Sincerely
Yareli Ojegue
Legal Assistant to
LIANE E. KERR LLC



# Law Offices of The Public Defender

**Bennett J. Baur**
**Chief Public Defender**

February 23, 2018

**Albert Jose Ramirez**
**DOC #69597**
**Southern New Mexico Correctional Facility**
**PO Box 639**
**Las Cruces, NM 88004**

Re:   ALBERT RAMIREZ vs. State of New Mexico
       Cause No. D-905-CR-2007-00434

Dear Mr. Ramirez:

This office has recently opened a file on your habeas case, and I have determined that your case should be assigned to a contract attorney outside of this Department. If you have any questions about this issue, you may contact me to discuss it at 505-369-3611.

Your new attorney on this habeas matter is: Liane Kerr, PO Box 10491, Albuquerque, NM 87184; phone # (505) 848-9190. Please contact this lawyer regarding further proceedings in the case.

Sincerely,

*Brian Tucker*

Supervising Attorney/Post-Conviction Habeas Unit

xc: File

Affidavit

5/9/18

I contacted Amanda Stephenson several times let her know the deadline would be soon to file the Amended Habeas Petition Each time she would say she would file it and Requested the transcript from the court Closing and opening Arguments Rebuttal and of Specific witnesses Sam said, Dennis Fite. officer Howard. Tony berauez. Sandylooms, dale rice But Never got the trascript or discovery of my Mental Health Records from prison NM.dept corr. To Show I was Suffering From Schizophrenia + PTSD + depression at time of trial + possibly time of crime I was Insane or Incapacitated and Not competent I was deceived by amanda Srephenson poor communication Habeas Attorney She end Nothing Filed Nothing only lied continuously → To ME. No loyalty. And this caused me not to be able to Propely ⇒

5/9/18

consult with my New private
Attorney Liam Hill and
Also Appellate counsel was
ineffective for Not claiming
Insufficient Evidence to convict
and double Jeoppardy on the
two counts of tampering w/
Evidence and I told him
to Check closing Arguments
this was prosecutorial
Misconduct. By colling me
a menance to society, liar,
manipulator, cold blooded killer No
Evidence to support this and
asking witness Sam Saiz in
direct exam oil you telling the
trull and at the time of incident?
There is no reason for you to lie?
Vouch for witness. Boasting credibility
And of exibit 110 letter stating
of shooting people, Jacking stealing
drugs killing, was admitted read
to Jury then excluded, but used
in closing Argument →

Showing pictures of deceased gruesome
Sebould of objections.
ask for hearing of couver change too
5/9/110

And appelate causel failed to argue
There was conflict of Interest
between myself and trial consul
I wanted de Maxave Swastz called
as a witness to my sanity + competency,
mental illness, and im not Fulury,
Liar and Truthful my credibility
character witness.
    All This was ineffective
    assistance of cansel.

Trpl counsel failed to question
poll Juey members After I Fell
down coad they saw my leg
Shachues. Failed to request A
mistrial And failed to object
in closing Argument + Rebutal
And examination of my witnesses
I was proserved and
devied my right to effective
assistance of counsel

I was denied my due process
Rights And A fair trial ⇒

5/9/20

5th and 14th admentmednet And

6th admerdment And Violation

of Federal law And Federal Rights

and Federal and United States

laws And Constitution.

Between. Jan. 15th and Feb 29th 2018

I had NO pens And paper to write

And Not able to speck to

MY Habemus attorney have kick

I Spoke to HER 10 minutes in

about 2½ months, We had

About No time prope to File

5/9/2018

petihon, research, go our voluminous

transcript, records, discovery to

Fully claim All of our claims raised.

Ineffective assistance of trial counsel
Ineffective assistance of appelate
counsel

Improp/comment on silence
Improper prior Bad acts Evidence
    Tempering w/Evidence double jeopardy
    Prosecutorial Misconduct
    cross examination, direct examination,
    closing Argument,
    Incompetency to Stand trial
    revocation of competency
    Insufficient evidence to convict
    court improper exclusion of
    Sex Abuse.
        Jury Saw me Shackled, in court
        and Fall down.
    Challenge Grand-Jury Indictment

5/9/2018

Trial counsel Failed to ask for
Motion For change of venue even
though extensive News media
as alleged attacked victim on previous
occasions.
Failed For Motion pretrial discovery
or give me all discovery
failed to suppress evidence,
Exabits, 110, 357 Bullets, cellphone video
failed to get all physch exams.

~~also~~ district court abused discretion
inproperly denied Motion For
extension to File Amended petition
to Meet with + discuss issues
review, transcript, conduct Research
and discovery idwnoug, And dishonesty
dirroption by Amanda Stephenson
I told Her to File it in Dec 2017
she said she would and did
nothing. No Research, No request
For transcripts, No discovery
requests, only extensions to
do nothing.

5/9/18

THIS AFFidavit is to Show I did
Not have enough time to consult with
Licae Kerr Habeaus Atonrneyappt.
2/28/218 / I AM going to do my Best I
ask THE district court And Federal
court to Not deny my petition of
dismiss it bcue I did Not Say
what witnesses Would Say at our Evicletry
Hearing, or what Evidence I'd Show
to prove Im wrongfully convicted
If I'd of bit a 60 day Extension
this would of been possible
THERE will be a Miscarriage of
Justice by Not allowing me 60
day extension Od to give me an
Evidentary Hearing And propery
able to present My issues Tevidence
documents, witnesses And discovery
And trial transcript.

State of New Mexico         Thank you Loy mec
County of Dona Ana              Albert Ramirez

Signed and sworn before me
on May 10, 2018 by Albert/Ramirez
Notary: William Adkins
My Commission Expires 12-18-18

OFFICIAL SEAL
William Adkins
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires

5/9/18

I was in an accident 2007. left me unable to walk walk or drive. Hallucenatory, demstroll, paranoid, seury deppressed. tarry several medicatious.

There would be a myscarriage of Justice to not allow me an 60 day extension to propurly talk with my Hobbeus lawyer and raise issues in fed. district court. + I need trial traoscript, discovery to research.

Im being done wrous by Amardastephuson and the court. I needed more time. I beime wloyly denied.

Thank you vuy much
God Bless you

## EXHIBIT LOG

| EXHIBIT | IDENTIFICATION/LOCATION |
|---------|-------------------------|
| A | Indictment |
| B | Jury Instruction |
| C | Verdicts |
| D | J&S |
| E | Broke mother's windshield; Transcript, 10/8/13, 4:03:49-4:08:21; pg. 2-3 |
| F | Shackles; Transcript, 10/7/13, 3 10 07-3:11:12, pg. 1 |
| G | Notice to Determine Competency (1/14/07) |
| H | Evaluation by Dr. Maxann Shwartz (incompetent) |
| I | Commitment to NMBHI for 3 months |
| J | Dr. Burness testified that Defendant malingering; Transcript 10/9/13 CD B-2:41:40, pg 19 |
| K | Competency Hearing: pgs. 1-42 |
| L | Order Determining Competency (9/16/08) |
| M | Motion in Limine re: statements made to Dr Burness |
| N | 2nd Motion for Mental Evaluation (9/22/2011) |
| O | Court Order for 2nd Evaluation at NMBHI |
| P | Further forensic testing ordered by court |
| Q | Order deeming Defendant competent to stand trial on March 1, 2013 |
| R | The defense attorney informs court that there were matters concerning Mr. Ramirez' mental health. Transcript: 10/7/13, 12:05 ; pg 9 |
| S | The Court notes that Mr. Ramirez made various statements which resulted in different transport officers being assigned during the trial. Transcript: 10/8/13, CD B 8:42:10-8.43:50; pg 6 |
| T | Mr. Ramirez issues a rambling statement about his health and said that he heard voices and is concerned his attorney is mad at him. Transcript: 10/9/13, CD B 10:13:29-10:26:30; 10:24:04-10:25:58, pg. 13, 15-18, 20-21 |

| U | Defense reminds the Court of competency issues and alerts the Court that Mr. Ramirez does not understand the proceedings and is incapable of assisting in his defense. Transcript: 10/9/13, CD B 10:16:00-10:17:00; 10:25:58; 10/10/13, 3:24:59-35:25:49; pgs. 9-12 |
|---|---|
| V | Court expresses that Mr Ramirez is malingering, but notes it had never seen a defendant act the way Mr. Ramirez was acting. Transcript: 10/9/13, 10 18:36-10:24:04; 10/10/13, CD B 3:45:47-3:46:20; pg. 19, 31 |
| W | Another Defense request for review of competency. Transcript: 10/7/13, 10:13:29-10:14:51; 10/9/13 1:35.36-1:44:46; pgs. 35, 12 |
| X | Mr. Ramirez asks that jury be told about his medical problems and tells the Court that he does not believe the trial to be fair, as the right questions were not being asked; Dr. Shwartz' testimony is necessary to him having a fair trial Transcript: 10/9/13, CD B 2.36:02-3:13.45; 10/10/13 CD B 10:40:41-10:58:56; 4:41:38-4:42:15; pgs. 20-33 |
| Y | The Defense informs the Court and the State that it will not be submitting a competency instruction. Transcript. 10/10/13, 4 32.27-4.35:41; pgs. 32, 34 |
| Z | Transcriptionist Certificate |

2

IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Supreme Court of New Mexico
8/11/2017 10 57 06 AM
Office of the Clerk
Joey D. Moya

**August 11, 2017**

**NO. S-1-SC-36599**

**ALBERTO RAMIREZ,**

Petitioner,

v

**GERMAN FRANCO, Warden,**

Respondent.

## ORDER

WHEREAS, this matter came on for consideration by the Court upon petition for writ of certiorari filed under Rule 12-501 NMRA, and the Court having considered the petition and being sufficiently advised, Justice Petra Jimenez Maes, Justice Charles W. Daniels, and Justice Barbara J Vigil concurring;

NOW, THEREFORE, IT IS ORDERED that the petition for writ of certiorari is DENIED.

IT IS SO ORDERED.



WITNESS, the Honorable Judith K. Nakamura, Chief Justice of the Supreme Court of the State of New Mexico, and the seal of said Court this 11th day of August, 2017.

Joey D Moya, Clerk of Court
Supreme Court of New Mexico

By _Madeline Garcia_

Chief Deputy Clerk

I CERTIFY AND ATTEST
A true copy was served on all parties
or their counsel of record on date filed
Madeline Garcia
Clerk of the Supreme Court
of the State of New Mexico

STATE OF NEW MEXICO
COUNTY OF CURRY
IN THE NINTH JUDICIAL DISTRICT COURT

NINTH JUDICIAL DISTRICT
CURRY COUNTY NM
FILED IN MY OFFICE

2014 JAN -8 AM 11: 12

STATE OF NEW MEXICO.

Plaintiff.
\

v

**ALBERT JOSE RAMIREZ**,
DOB ▮▮▮▮▮ ▮88
SOC ▮▮▮▮▮ 7793
STN· 050100070340

Defendant

No D-0905-C R-0200700434

## JUDGMENT, SENTENCE AND COMMITMENT

THIS MATTER coming on for hearing on January 8. 2014. before the Honorable Teddy I

Hartley. District Judge, Plaintiff appearing by Matthew Chandler. District Attorney. and Defendant

appearing personally and by his attorney, Jesse R Cosby, Attorney at Law. the Defendant having

been convicted on October 11, 2013. pursuant to guilty verdicts by the jury accepted and recorded

by the Court of the following crime(s):

Count 1: [0001], **Murder in the first degree (willful & deliberate)**, contrary to

§30-02-01(A)(1), NMSA 1978.

Count 2: [4230], **Tampering with evidence (highest crime a capital, first or secor**

**degree felony), a third degree felony, contrary to §30-22-03, NMSA 1978.**

Count 3: [4230], **Tampering with evidence (highest crime a capital, first**

**degree felony), a third degree felony, contrary to §30-22-05, NMSA 1978.**

Defendant is hereby found and adjudged guilty and convicted of said crime(s), and is sentenced to be imprisoned by the Department of Corrections for the following terms

As to Count 1, a term of life imprisonment

As to Count 2, a term of three (3) years.

As to Count 3, a term of three (3) years

Counts 1, 2, and 3, shall run consecutively, one after the other, for a total term of life imprisonment, plus six (6) years *mental and physical health as available. Dept of corrections should provide medical of physical treatment as available all the time*

Upon completion of the term provided herein, the Defendant will be subject to release under parole supervision, subject to the statutory provisions relating to condition, supervision and return of parolees.

Therefore, You the Sheriff of Curry County, are hereby commanded to take Defendant in custody and deliver Albert Jose Ramirez, together with this commitment, to the Department of Corrections, which is hereby commanded to receive him and confine Albert Jose Ramirez for the above term.

Defendant shall receive credit for 2370 days (6 years, 5 months 25 days) of pre-sentence confinement, from date of arrest on July 15, 2007 until date of sentencing, January 8 2014 and for post-sentence confinement from January 9 2014, until delivery to the Department of Corrections

TEDDY L HARTLEY
DISTRICT JUDGE

HAVE SEEN

Matthew Chandler
District Attorney

Jesse R Cosby
Attorney for Defense

D A. MC/jwg

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

CURRY COUNTY, NM
FILED 'N MY OFFICE

2017 MAY 31  PM 12: 21

CLERK DISTRICT COURT

ALBERT JOSE RAMIREZ,

Petitioner,

vs.                                No.    D-0905-CR-2007-00434

STATE OF NEW MEXICO,

Respondent.

## DECISION AND ORDER OF SUMMARY DISMISSAL

THIS MATTER having come before the Court on Petitioner's pro se Petition for Writ of Habeas Corpus filed March 22, 2017 and Petitioner's pro se Petition for Writ of Habeas Corpus filed April 25, 2017 (hereinafter collectively referred to as "Petition") in the above referenced cause number, and the Court being fully advised, enters its sua sponte order and FINDS.

This Court notes that the Petition is scribbled and nearly illegible. It appears that Petitioner is challenging his conviction based upon prosecutorial misconduct and ineffective assistance of counsel.

A review of the file shows that that Petitioner was convicted of various offenses including Murder in the First Degree in October, 2013. Petitioner appealed his conviction to the New Mexico Supreme Court. The New Mexico Supreme Court affirmed Petitioner's conviction. This case was subsequently assigned to this Court.

As to Petitioner's argument that there was prosecutorial misconduct, this claim is not properly supported by facts in the Petition. This Court finds that Petitioner is not entitled to relief as a matter of law in this regard.

As to Petitioner's argument that he was denied effective assistance of counsel in this matter, this claim is not properly supported by facts in the Petition. Further, this issue was part of Petitioner's appeal and the New Mexico Supreme Court affirmed Petitioner's conviction. This Court finds that Petitioner is not entitled to relief as a matter of law in this regard.

## DECISION AND DISMISSAL

After examining the Petition, exhibits, and prior proceedings, and based on the above discussed reasons, this Court finds the Petitioner is not entitled to relief as a matter of law. Therefore, in accordance with Rule 5-802(G)(1) NMRA, the Petitioner's pro se Petition for Writ of Habeas Corpus filed March 22, 2017 and Petitioner's pro se Petition for Writ of Habeas Corpus filed April 25, 2017 are summarily dismissed. An attorney will not be appointed and a hearing will not be set.

HON DREW D. TATUM
District Judge, Division II

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

2017 JUL 27  PM 2: 17

CLERK DISTRICT COURT

ALBERT JOSE RAMIREZ,

Petitioner,

vs.                                    No.    D-0905-CR-2007-00434

STATE OF NEW MEXICO,

Respondent.

### ORDER OF APPOINTMENT FOR HABEAS CORPUS PROCEEDINGS UNDER RULE 5-802 NMRA

THIS MATTER having come before the Court on Petitioner's pro se Petition for Writ of Habeas Corpus filed June 20, 2017 and Petitioner's pro se Petition for Writ of Habeas Corpus filed July 17, 2017 in the above referenced cause number, and the Court being fully advised of the circumstances;

THE COURT FINDS THAT:

[X] The petitioner is incarcerated.

IT IS THEREFORE ORDERED THAT:

[X] The Law Office of the Public Defender is hereby appointed to represent the Petitioner in the above-entitled cause without payment of the application fee.

[X] Petitioner's counsel shall file an amended petition or file a notice of non-intent to file an amended petition within ninety (90) days of the date of the filing of this order.

DREW D. TATUM
District Judge, Division II

As to Petitioner's argument that he was denied effective assistance of counsel in this matter, this claim is not properly supported by facts in the Petition. Further, this issue was part of Petitioner's appeal and the New Mexico Supreme Court affirmed Petitioner's conviction. This Court finds that Petitioner is not entitled to relief as a matter of law in this regard.

## DECISION AND DISMISSAL

After examining the Petition, exhibits, and prior proceedings, and based on the above discussed reasons, this Court finds the Petitioner is not entitled to relief as a matter of law. Therefore, in accordance with Rule 5-802(G)(1) NMRA, the Petitioner's pro se Petition for Writ of Habeas Corpus filed March 22, 2017 and Petitioner's pro se Petition for Writ of Habeas Corpus filed April 25, 2017 are summarily dismissed. An attorney will not be appointed and a hearing will not be set.

HON. DREW D. TATUM
District Judge, Division II

STATE OF NEW MEXICO
COUNTY OF CURRY
IN THE NINTH JUDICIAL DISTRICT COURT

2014 JAN -8 AM 11: 12

STATE OF NEW MEXICO.

Plaintiff

v                          )

ALBERT JOSE RAMIREZ,
DOB          988
SOC          -7793
STN· 050100070340

No D-0905-CR 0200700434

Defendant

## JUDGMENT, SENTENCE AND COMMITMENT

THIS MATTER coming on for hearing on January 8. 2014 before the Honorable Teddy I

Hartley. District Judge, Plaintiff appearing by Matthew Chandler. District Attorney. and Defendant,

appearing personally and by his attorney. Jesse R Cosby. Attorney at Law. the Defendant having

been convicted on October 11, 2013. pursuant to guilty verdicts by the jury accepted and recorded

by the Court of the following crime(s)·

Count 1: {0001}, Murder in the first degree (willful & deliberate), contrary to
§30-02-01(A)(1), NMSA 1978.

Count 2: {4230}, Tampering with evidence (highest crime a capital, first or secor

degree felony), a third degree felony, contrary to §30-22-05, NMSA 1978.

Count 3: {4230}, Tampering with evidence (highest crime a capital, first

degree felony), a third degree felony, contrary to §30-22-05, NMSA 1978.

Defendant is hereby found and adjudged guilty and convicted of said crime(s). and is sentenced to be imprisoned by the Department of Corrections for the following terms

As to Count 1, a term of life imprisonment

As to Count 2. a term of three (3) years

As to Count 3. a term of three (3) years

Counts 1. 2, and 3. shall run consecutively. one after the other, for a total term of life imprisonment. plus six (6) years   mental and physical health as available. Dept bluendes should provide mental & physical treatment as available alter years

Upon completion of the term provided herein. the Defendant will be subject to release under parole supervision, subject to the statutory provisions relating to condition. supervision and return of parolees.

Therefore. You. the Sheriff of Curry County. are hereby commanded to take Defendant in custody and deliver Albert Jose Ramirez. together with this commitment. to the Department of Corrections. which is hereby commanded to receive him and confine Albert Jose Ramirez for the above term

Defendant shall receive credit for 2370 days (6 years. 5 months. 25 days) of pre-sentence confinement. from date of arrest on July 15 2007. until date of sentencing. January 8. 2014. and for post-sentence confinement from January 9 2014. until delivery to the Department of Corrections

TEDDY L. HARTLEY
DISTRICT JUDGE

HAVE SEEN

Matthew Chandler
District Attorney

Jesse R. Cosby
Attorney for Defense

D A.  MC/pwg

Filed
Supreme Court of New Mexico
2/5/2019 9:48 AM
Office of the Clerk
Joey D. Moya

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO
## February 05, 2019

NO. S-1-SC-37501

**ALBERT RAMIREZ,**

    Petitioner,

v.

**JOHN GAY, Warden,**

    Respondent.

## ORDER

WHEREAS, this matter came on for consideration by the Court upon petition for writ of certiorari filed under Rule 12-501 NMRA, and the Court having considered the petition and being sufficiently advised, Chief Justice Judith K. Nakamura, Justice Barbara J. Vigil, and Justice Michael E. Vigil concurring;

NOW, THEREFORE, IT IS ORDERED that the petition for writ of certiorari is DENIED.

IT IS SO ORDERED.



WITNESS, the Honorable Judith K. Nakamura, Chief Justice of the Supreme Court of the State of New Mexico, and the seal of said Court this 5th day of February, 2019.

Joey D. Moya, Clerk of Court
Supreme Court of New Mexico

By _Madeline Garcia_

Chief Deputy Clerk

I CERTIFY AND ATTEST:
A true copy was served on all parties
or their counsel of record on date filed.
_Madeline Garcia_
Clerk of the Supreme Court
of the State of New Mexico

**EXHIBIT**

BB

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED

2019 JUN 24  AM 10: 58

*[signature]*
CLERK DISTRICT COURT

West's New Mexico Statutes Annotated
State Court Rules
9. Criminal Forms
Article 7. Special Proceedings

NMRA, Form 9-701

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS

Currentness

*[For use with District Court Criminal Rule 5-802 NMRA]*

STATE OF NEW MEXICO

COUNTY OF  CURRY

IN THE DISTRICT COURT

*For Official Use Only*

D-0905  CR  020 07 00  434
No. _____

*(To be supplied by the clerk of the court)*

ALBERT RAMIREZ
_____

*(Full name of prisoner)*

Petitioner,

v.

WARDEN GERMAN FRANCO

┌─────────────────────┐
│   **EXHIBIT**       │
│                     │
│       CC            │
│   _____   │
└─────────────────────┘

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

*(Name of warden, jailor or other person having*
*power to release the petitioner)*

Respondent.

### Instructions -- Read Carefully

Make sure that all information provided in this form is true and correct. Make sure that all necessary documents are attached, or explain why the documents are not being included. If you are currently incarcerated, you may file the petition without payment of the filing fee. If you are not incarcerated and are seeking free process, complete Form 9-403.

Finally, you must complete the certificate of service and mail or otherwise serve copies of this petition on the respondent and the district attorney in the county in which the petition is filed. You must file the original petition and one copy with the Clerk of the District Court. You should keep a copy for your own records.

### PETITION FOR WRIT OF HABEAS CORPUS[1]

1. ALBERT RAMIREZ ____ (name of person in custody) is imprisoned or otherwise restrained at PNM Penetentiary of New Mexico _____ (name of facility and county of detention) by WARDEN German Franco (name and title of person having custody).

2. This petition

(W) seeks to vacate, set aside or correct an illegal sentence or order of confinement (i.e., ineffective assistance of counsel, illegal search and seizure, involuntary confession, or other matters relating to the trial or sentence the confined person received).

(W) challenges confinement or conditions of confinement or matters other than the sentence or order of confinement. *(This applies only to matters arising after the confined person arrived at the institution, i.e., county jail confinement, mental hospital confinement, detention facility confinement, good time credit, misconduct report, prison due process violation or parole).*

3. State concisely the facts upon which the confined person bases the claim:

PA INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL AND APPEALTE COUSEL ON APPEAL →

I TRIED to speak
to Council to no
Avail. Irrecrousible
Conflict.

FORM 9-701, PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

COUNSEL MR. COSBY. BEFORE TRIAL BEGINS AND AFTER I

TRIED to FIRE HIM IN FRONT OF JURY did VERBALLY

ASSAULT And Made threats Stated, Stupid little Bitch

I promise to be inFFective assistance if you kep on

SAYING you want to GO to trial AS I INSIST. I Hope

you meet life.

4. State concisely the grounds and law, or other legal authorities on which the confined person bases the claim:

( I dON'T KNOW WHAT This MEANS. SIR)

I'll TRY 2 IT IS A constitutional Right to

effective ASSIStance at trial + ON Appeal

IVE WROTE ON Extra Sheets OF PAPERS to

explain. SOME FACTS BEST AS I CAN.
+ Exibits + Evidence
Allegations

5. Have the grounds being raised in this petition been raised previously in your direct appeal? If so, explain the result. If not, explain why not:

YES, I WAS Told APPEAL WAS denied to File

A HABEAUS PACKET. NOW HERE IS the

HABEAUS.

6. Have the grounds raised in this petition been raised previously in another petition for a writ of habeas corpus? If so, explain the result. If not explain why not:

I Raised This ISSUE IN First HABEAUS.

NOW this ONE is to ~~~~ Resubmit it

And FIX it.

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

7. Briefly describe the relief requested:

TO BE APPOINTED ASSISTANCE FROM
Public difencieE post conviction d,vision
to assist ME TO Get AN Euidentary
Hearing to prove the Allegations arctru

8. State the nature of the court proceeding resulting in the confinement (*i.e.*, *criminal prosecution, civil commitment, etc.*), including:

(a) case name:

D-0905-CR-2007-00434 IM NOT
SURE

(b) docket number:

D-0905-CR-2007-00434 Dont
Know

(c) name of judge:

Teddy. L. HARTLEY

(d) name and location of the court in which the proceeding was held:

700. N. MAIN ST
9th Judicial district Court

2017

FIRST HABEAUS JUNE 20th
GRANTED HABEAUS lawyer
But HABEAUS failed to
raise Issues and Grounds
so I sud NEW Habeaus
Asking the court for a
NEW attorney to
assist IN HABEAUS
Proceedings
1st Original petition argued
I had conflict of
INTEREST with trial
counsel



being included. If you are currently incarcerated, you may file the petition without payment of the filing fee. If you are not incarcerated and are seeking free process, complete Form 9-403.

Finally, you must complete the certificate of service and mail or otherwise serve copies of this petition on the respondent and the district attorney in the county in which the petition is filed. You must file the original petition and one copy with the Clerk of the District Court. You should keep a copy for your own records.

## PETITION FOR WRIT OF HABEAS CORPUS[1]

ALBERT JOSE
1. RAMIREZ___ (*name of person in custody*) is imprisoned or otherwise restrained at Lea COUNTY. CORR. (*name of facility and county of detention*) by _____ (*name and title* Facility *of person having custody*).              DWAYNE SANTESTEVAN

2. This petition

[W] seeks to vacate, set aside or correct an illegal sentence or order of <u>confinement</u> (i.e., <u>ineffective assistance of counsel</u>, illegal search and seizure, involuntary confession, or other matters relating to the trial or sentence the confined person received).

[W] challenges confinement or conditions of confinement or matters other than the sentence or order of confinement. (*This applies only to matters arising after the confined person arrived at the institution, i.e., county jail confinement, mental hospital confinement, detention facility confinement, good time credit, misconduct report, prison due process violation or parole*).

3. State concisely the facts upon which the confined person bases the claim:
ISSUE 1.
INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL, APPELATE CUNNSEL, AND HABEAUS COUNSEL ON AMENDED PETITION.

ISSUE 2. DISTRICT COURT ERRED IN ITS JUDICIAL DISCRETION IN DENYING PETITIONER MR RAMIREZ AN INQUIRY INTO HIS dispute AND IRRECONSILIBLE CONFLICT WITH PETITIONERS COUNSEL, PLEASE. SEE ATTACH PAGE TO EXPLAIN FACTS THANK YOU.

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

4. State concisely the grounds and law, or other legal authorities on which the confined person bases the claim:

I DONT KNOW WHAT THIS MEANS. ILL TRY MY BEST.

I BELIEVE its MY Constitutional RIGHTS TO A FAIR TRIAL AND

TO EFFECTIVE ASSISTANCE OF COUNSEL at TRIAL, on appeal, and

HABEAS petition, SEE Attach PAGES TO EXPLAIN FACTS And

Evidence And Exibits. And OTHER Grounds and basis of claims.

5. Have the grounds being raised in this petition been raised previously in your direct appeal? If so, explain the result. If not, explain why not: NO and

YES SOME Where. BUT HABEAS ATTORNEY WAS Rushed And Failed

TO raise Issues that were on MY Original petition.

HABEAS ATTORNEY Requested A 60DAY EXTENSION And was

denied. SHe did NOT Fully MEET with petitioner.

6. Have the grounds raised in this petition been raised previously in another petition for a writ of habeas corpus? If so, explain the result. If not explain why not: NO grounds have NOT BEEN Raised And

Yes, SOME NOT BECAUSE HABEAS ATTORNEY WAS Rushed

And Failed TO raise 3 OR 4 ISSUES ON MY original petition

And failed to attach documents. HaBeas Lawyer Requested

60 day extension But was denied.

7. Briefly describe the relief requested:

WANT an Evidentary HEARING appointed HaBeas ATTORNEY TO

assist IN HABEAS PROceedings, A RETRIAL.

3. STATE CONCISLEY THE FACTS UPON WHICH THE CONFINED
   PERSON BASES THE CLAIM.

   THE JUDGE IGNORED PETITIONERS REQUESTS FOR
   SUBSTITUTIN OF COUNSEL AND DEMANDS TO FIRE HIS
   ATTORNEY. TWO WEEKS BEFORE TRIAL. TWICE IN TRIAL.
   PETITIONER EXPRESSED DISATISFACTION, COMPLAINED
   OF COUNSEL NOT FILING MOTIONS FOR CHANGE OF VENUE.
   WHEN THERE WAS INACCURATE EVIDENCE OF MR RAMEREZ
   ATTACKING THE VICTIM BEFORE INCIDENT. ALSO OTHER
   HIGHLY PREJUDICIAL INADMISSBLE EVIDENCE. OF MR RAMIREZ
   BREAKING WINDOWS, AND ASSAUTING BATTEY OFFICES IN
   SMALL COMMUNITY OF CLOVIS, PETITIONER ALSO
   COMPLAINED ABOUT BEING CONFUSED OF PROCEDURES
   AND COUNSEL NOT EXPLAINING PROCEDURES. MR. RAMIRZ
   PETITIONER COMPLAINED OF A SERIOUS BREAKDOWN
   IN COMMUNICATION BETWEEN COUNSEL AND PETITIONER.
   PETITIONER TRIED TO COMMUNICATE TO COUNSEL
   TO NO AVAIL. COUNSEL FAILED TO ADVISE PETITIONER
   OF PLEA DEAL OR EXPLAIN THE MAXIMUM AND MINIMUM
   TIME FACING. COUNSEL FAILED TO BE RESPECTFULL AND
   RESPONSIBLE AND FUFULL HIS DUTY OF LOYALTY TO
   ADVOCATE TO PETITIONER BY NOT CALLING OTHER
   WITNESS PETITONER WANTED CALLED AS WITNESSES.
   COUNSEL THREATENED PETITIONER THAT IF
   HE DID NOT TAKE PLEA AND KEEP ON INSISTING
   TO GO TO TRIAL HE WOULD NOT PROVIDE
   EFFECTIVE ASSISTANCE OF COUNSEL.

Petitioner told counsel and physciatrist and family of being sexually abused by victim as a young child.

Counsel failed to alert the court that petitioner told him he fall down Jury saw his shackles and he fell down. And that Sherriff docerty manipulated ~~the~~ threatened petitioner to say he did not fall down and that the jury did not see his shackles.

Petitioner asked counsel to request a mistrial and to put this on record. Counsel refused to do it.

Counsel failed to call witness's Pricilla Lopez Nubor eye witness, and Ricky Jaramillo eye witness to help prove I was the one being chased and I shot in fear for my life I did not chase victim.

Counsel failed to investigate family history of mentall illnese in family(- and to defense.

Petitioner called counsel and write to him counsel would not speak to me at all, and ignored me to busy.

Counsel would Not discuss trial Strategy
OR Anything.

Counsel Told petitioner He Hoped He Got
Life.

PETITIONER TRIED TO Speak ON Record
twice to put This on Record but
was denied.

PETITIONER Request that the court GRANT
Him an ATTORNEY to assist him IN
HABEAS proceedings And TO Hold An
Evidentary Hearing ON INeffective
assistance OF counsel Because
unfortuncly all Facts, and allegations
are NOT on the record to properly
decide CASE.

COUNSEL PROMISED PETITIONER IF HE
TESTIFIED PETITIONER WOULD be able
TO Testify OF being Sexually Abused
by VICTIM AND Neibor eyewitness Sen sara

COUNSEL FAILED TO Call FATHER JOSE RAMIREZ
who would OF testified victim attacked him
twice and was Aggressive,
Also BROTHER Israel Ramirez was attacked by
Victim to show aggression.

COUNSEL KNEW I Had been drinking alchuhal
day of INCIDENT and TOLD ME TO NOT
talk of being drunk IT would Not
HELP.

PETITIONER Had several witnesses He wished to
Call. to present iN support of His defense
Awnt, Sister, Brothers, Friends. doctors who
TREATED Him after accident.
COUNSEL Failed to Alert court to IMPORTANT
Facts in arguing case. Petitioner was iN AN
accident iN 2007 whch began taking
antiddeppresant Medication, & other Medication
THIS Became Severe depression, He was unable to
walk only with Crutches, suffered delisions
Hallucinations. ptsd.

State consisley the Facts upon which the confined person bases the claim.

✱ The trial court Abused its discretion In denying petitioner request, demands to Fire or substitute counsel

① There was no Inquiry by Judge
② No consideration of Issue of delay
③ The Extent of conflict created


OTHER FACTS

✱ WHETHER I Beleive petitioners CRiminAl convictions were obtained in violation of his state And Federal Right to due process and a Fair trial, when prior charged And wronged acts were introduced absent a balancing anaysis was rue 11-404.B?

Evidence Of Head Butted A police officer inadmissible Evidence of letter Exibit 110 writings of Showing people to prove Element of premeditation


✱ Facts

Prosecutorial misconduct in closing Argument Say mr Ramirez petitioner IS a Menace to society And A liAR No Evidence to prove this its Prosecutorial Misconduct.

✱ Also Closing ARGUMENT Evidence on prior bad acts on inadmissible Evidence of breaking windows, Aeri Batt Battery on officers, And dong legal research in Closing Argument After Judge told him To Not use This Evidence.

prosecutor used prior bad acts to show character of propensity and it Amounts to prosecutorial misconduct

✗ Also prosecutor cross EXAMINATION on Petitioner DOING legal Research To BEAT His CHARGES. They asked Right after you did legal research to Get the Jury to buy This. ITs A comment ON petitioners Right To assist iN ASSIST.

OTHER Facts OF CASE

✗ Habeas counsel Failed to discuss ISSUES Petitioner wanted added, And ARGued properly, 1st Habeas lawyer Amanda Stephenson Refused to Request trial transcript OF closing ARGument Had case 6 months Would Not Request or File anything or discuss Case with Petitioner,

2nd Petitioner Liane KERR was Substituted because of CONFict OF INTEREST.

Habeas ATTORNEY RUSHED Petition because She was denied 60 day extension request and did Not meet Fully With ME. Was to busy to talk ON PHONE.

Form 9-701 petition for page 3 of writ of habeaus corpus NM, R, CR Form 9-701

(4)

State concisely the Grounds

and law, or OTHER legal authorites

on which the CONFINED PERSON

BASES THE CLAIM.

See attach PAPERS.

FACTS + TRANSCRIPTS + Record +
News paper clippings + Some discovery
to prove Claims and Facts OF
Grounds And ISSUES.

2. INEFFECTIVE ASSISTANCE OF TRIAL
COUNSEL. CONFLICT OF ENTREST OR Irreconcible
Conflict

B. WHETHER THE TRIAL COURT ABUSED
its discretion in denying MR
RAMIREZ Request and demand to
Fire or Substitute OF COUNSEL.
① THERE was NO INQUIRY ② NO
Consideration OF lenght OF delay TO
Substitute COUNSEL. ③ THE Extent
OF CONFlict CREATEd.

C. WHETHER PETITIONER'S CRIMINAL
Convictions were Obtained in Violation
OF His State and fedeal Right
to due process and A Fair trial
When prior uncharged acts were
Introduced absent a balancing
analysis under Rule 11-404.B.?

D. THE COURT Abused its discretion IN NOT declaring A MISTRIAL ON Comments OF prosecutorIAL misconduct iN Cross EXAMINATION, And DURING Closing ARGUMENTS.

See exibits. documents Need transcript also. Things on record

E. MR RAMIREZ PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF HABEAUS AMANDED PETITION COUNSEL.

SEE EXIBITS. FActs. documents.

F. THE errors all TOGETHER Added up TO Cumulative Error And denied petitioner of a fair trial And denial OF due process.

SEE EXibITS. documents Records Notes. To prove claims.

I would like to able to properly present issues and grounds to prove my claims. Please thank you.

8. State the nature of the court proceeding resulting in the confinement (*i.e., criminal prosecution, civil commitment, etc.*), including:

(a) case name:

STATE OF NEW MEXICO US. ALBERTO J. RAMIREZ

(b) docket number:

D-0905 -CR - 2007 - 00434

(c) name of judge:

TEDDY L. HARTIEY

(d) name and location of the court in which the proceeding was held:

700. N. MAIN ST Clovis NM 88101

9. State the date of the final judgment, order or decree for confinement:

JANUARY 8th 2014.

10. Attach a copy of the judgment, order or decree. If not, describe your sentence.

...........................................................................................................

11. Was the conviction the result of:

___ Guilty plea

___ No Contest plea (*nolo contendere*)

✓ Finding of guilty by judge or jury

12. Was the confined person represented by an attorney during the proceedings
resulting in the confinement?

✓ Yes

_____ No

13. If you answered "yes" to (12), list the name and address of each attorney who
represented the confined person:

JESSE R. COSBY

P.O. Box 3330 Roswell NM 88201

14. Did you appeal your conviction?

✓ Yes (*Go to 15*)

___ No (*Go to 16*)

15. If you answered "yes" to (14), list:

(a) The name of each court to which an appeal was taken:

9th Judicial district court And NEW Mexico supreme court
OF appeals.

...........................................................................................

**(b) The case name and docket number for each appeal:**

_STATE OF NEW MEXICO US. Alberto jose RAMIREZ_

_No - S - 1 - Sc - 34576_

**(c) The date each appeal was filed and decided:** (*Attach a copy of each opinion or order*)

_FILed AUGUST 2014 Dont know ExactoDay_

_Decided december 1st 2016_

...........................................................................................

**(d) A summary of the grounds upon which each appeal was based:**

_Competexy reevaluction, inEFFective assistance of Cousel_

_Improply comments on Sileuce, prosecutorial misconduct,_

_Prior bad acts, Shackles Error, Judge Failed to grant_

_Misprial due to prosecutorial misconduct_

**(e) The result of each appeal:**

_Denied AFFIRMED_

...........................................................................................

...........................................................................................

**(f) The name and address of the attorney on appeal:**

---

STEVEN J. FORSBERG

505 MARQUETTE N.W 87102

505 - 796 . 4405

16. If you answered "no" to (14), state the reasons for not appealing:

.........................................................................................................................

.........................................................................................................................

17. Apart from any appeals listed in (15), have any other post conviction applications, petitions or motions, been filed with regard to this same imprisonment or restraint?

✓ Yes *(Go to 18)*

___ No *(Go to 19)*

18. If you answered "yes" to (15), list with respect to each such petition or motion:

(a) The type of proceeding:

Habeas petition, Petition OF Certorari denied Now I come Back with New Habeas Corpus petition Issues.

(b) The name and date of each case:

STATE of New Mexico US ALBERTO Jese Ramirez

(c) the docket number:

NO - D- 0905 - CR - 2007 - 00434

Form of 701 petition, FFE CASE HABEAS CORPUS, NM Ru. CP Form 9-701

See Page 8. (F)

F. N.M. Supreme court. Ineffective assistance of counsel, improper commentary on Right to Remain Silent the jury saw him in shackles and fall. Improper introduction on prior bad acts. Judge refused to declare a mistrial due to prosecutorial misconduct on Amended petition — whether was denied 6th Amend Right to effective assistance of counsel and compulsory process

6. A disposition HEARING was Scheduled But HABEAS Denied.

(d) the court, the administrative agency, or institutional grievance committee from which relief was sought:

9th Judicial district court of clovis NM 88101

(e) the result of each proceeding. (*Attach a copy of each decision.*)

Denied I DONT BELIEVE I have ONE. Sorry

(f) The issues raised in each proceeding:

Ineffective assistance of counsel, prior badacts, prosecutional misconduct, Incompetency reevaluation, double jeopardy tampery w/ evidence

(g) State whether a hearing was held in connection with each of these proceedings:

ON Habeaus Amended petition while represented by Habeaus attorney a disposition Hearing

(h) State whether the confined person was represented by an attorney in each proceeding and, if so, the attorney's name and address:

In appeal STEVEN J FORSBERG 5-5 MARQUETTE NW 81102 ALBUQUERQUE NM

ON Habeaus petition Liane E. KERR P.O. BOX 10791 Albuquerque NM 87184-0791

19. Do you seek the appointment of counsel to represent you?[2]

√ Yes

__ No

## VERIFICATION

STATE OF NEW MEXICO

COUNTY OF ..... Curry Lea .....

I, the undersigned, being first duly sworn upon my oath, state that I am the petitioner in this action. I have read the foregoing petition and know and understand its contents, and the information contained herein is true and correct to the best of my knowledge, information and belief. On _6/5_ , _2019_ (date), I deposited this petition in the internal mail system of the institution in which I am confined, properly addressed with any necessary postage prepaid, for forwarding to the district court at the following address:

9th Judicial district court
__ Court (*name of court*)

Clovis (*city*), New Mexico, 88101 (*zip code*).

..... Alberto J. RAMIREZ .....
(
*Signature*
)
..... Alberto J. Ramirez .....
(
*Address*
) 6900 B W. Millen dR. Hobbs. N. M 80244

PNM No., if applicable
SUBSCRIBED AND SWORN TO before me this 5th day of *June* , 2019 by

.....

(*Name of petitioner*) Alberto. J. Ramirez

Dwayne Burris

**Notary Public**

OFFICIAL SEAL
DWAYNE BURRIS
Notary Public
State of New Mexico
My Comm. Expires 11 30 2021

..............................................................................................................

My Commission Expires: 11/30/2021

## CERTIFICATE OF SERVICE

I hereby certify that true copies of the foregoing petition were served upon the respondent and the district attorney in the county in which the petition is filed by _Mail_ *(describe manner of service)*, this 11ᵗʰ day of _June_, 2019

..............................................................................................................

(

*Signature of petitioner*

) Alberto J. Ramirez

### USE NOTE

**Credits**

[Adopted effective Aug. 1, 1989. Amended effective May 6, 2009; Dec. 31, 2014.]

**Footnotes**

1  After this petition is reviewed by the Court, the Court will enter the order granting or denying the writ or ordering a response before further action. The order shall be prepared by the Court.

2  Petitioners who are incarcerated at the time of filing the petition need not file a motion for free process and may file the petition without payment of the applicable filing fee. *See* Rule 5-802(D)(2) NMRA

NMRA, Form 9-701, NM R CR Form 9-701

State court rules are current with amendments received through August 1, 2017.

---

End of Document                                                © 2017 Thomson Reuters. No claim to original U.S. Government Works.

> West's New Mexico Statutes Annotated
>   State Court Rules
>     9. Criminal Forms
>       Article 7. Special Proceedings

NMRA, Form **9-704**

FORM **9-704**. ORDER OF APPOINTMENT FOR HABEAS
CORPUS PROCEEDINGS UNDER RULE 5-802 NMRA

Currentness

[For use with District Court Criminal Rule 5-802 NMRA]


STATE OF NEW MEXICO

COUNTY OF _____

_____ JUDICIAL DISTRICT COURT

,....................................................    No. .........................................

Petitioner,

v.

,....................................................

Respondent.

### ORDER OF APPOINTMENT FOR HABEAS CORPUS PROCEEDINGS UNDER RULE 5-802 NMRA

This matter having come before the court, and the court being fully advised of the circumstances;

THE COURT FINDS THAT:

[W] the petitioner is incarcerated; or

[W] the petitioner is not incarcerated, and is indigent and unable to obtain counsel; and

[W] This is a proceeding which a reasonable person would bring at that person's own expense. [1]

IT IS THEREFORE ORDERED THAT:

[W] the Public Defender Department is hereby appointed to represent the Petitioner in the above-entitled cause without payment of the application fee.

[W] the Public Defender Department, shall appoint an attorney on contract with the department represent the petitioner based on the conflict memorandum reviewed by the court or as disclosed at a status conference with the court.

[W] petitioner's counsel shall file an amended petition or a notice of non-intent to file an amended petition within ninety (90) days of the date of the filing of this order.

..............................................................................................................................

(
*District Judge*
)

## USE NOTE

[1] Under the Indigent Defense Act, a person has the limited right to appointed counsel representation in post-conviction matters "unless the court in which the proceeding is brought determines that it is not a proceeding that a reasonable person with adequate means would be willing to bring at his own expense" NMSA 1978, § 31-16-3(B)(3) (1968). Therefore, the Public Defender may not be able to represent a petition in all cases.

If the Public Defender Department is appointed, the clerk of the district court shall mail a copy of this order and a copy of the pro se petition to the Post-Conviction/ Habeas Division, Office of the Public Defender, 505 Marquette NW, Ste. 120, Albuquerque, NM 87102.

Credits
[Adopted effective Dec. 31, 2014.]

---

West's New Mexico Statutes Annotated
State Court Rules
9. Criminal Forms
Article 7. Special Proceedings

NMRA, Form 9-705

FORM 9-705. PROCEDURAL ORDER ON
PETITION FOR WRIT OF HABEAS CORPUS

Currentness

[For use with District Court Criminal Rule 5-802 NMRA]

STATE OF NEW MEXICO

COUNTY OF _____

_____ JUDICIAL DISTRICT COURT

,........................................................    No. ........................................

Petitioner,

v.

,........................................................

Respondent.

PROCEDURAL ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

This matter having come before the court on petitioner's petition for a writ of habeas corpus or other pleading pursuant to Rule 5-802 NMRA of the Rules of Criminal Procedure for the District Courts, the court having reviewed the record and being otherwise fully advised in the premises, FINDS AND ORDERS THAT:

1. *SUMMARY DISMISSAL/TRANSFER OF VENUE* [1]

THIS PAGE

INTENTIONALLY

LEFT

BLANK

[W] This matter is transferred because of improper venue to the _____
Judicial District Court.

[W] This matter is summarily dismissed because as a matter of law petitioner is not
entitled to relief based on a review of the files, pleadings, and records which show
that: (*statement of reasons required*)

........................................................................................

........................................................................................

........................................................................................

........................................................................................

........................................................................................

........................................................................................

........................................................................................

........................................................................................

........................................................................................

........................................................................................

........................................................................................

........................................................................................

........................................................................................

........................................................................................

........................................................................................

........................................................................................

THIS PAGE

INTENTIONALLY

LEFT

BLANK

## 2. *RETURN OF PETITION FOR FURTHER INFORMATION*:

[W] The petition is returned to petitioner for additional information on the following issues/claims: ............................................................................................

............................................................................................................

............................................................................................................

............................................................................................................

............................................................................................................

............................................................................................................

Pursuant to Rule 5-802(G) NMRA, a revised petition shall be filed within forty-five (45) days after service of this order.

## 3. *FREE PROCESS AND APPOINTMENT OF COUNSEL*:

[W] Petitioner is granted permission to proceed *in forma pauperis* based on Form 9-403 NMRA or because petitioner is an inmate of a correctional facility.

[W] Petitioner is not granted permission to proceed *in forma pauperis*.

[W] The Public Defender Department is appointed to represent petitioner based on the court's finding that this is a proceeding which a reasonable person would bring at that person's own expense. Upon being properly appointed, the Public Defender Department shall either file an amended petition or a notice of non-intent to file an amended petition within ninety (90) days of this appointment. [2]

## 4. RESPONSE: [3]

THIS PAGE

INTENTIONALLY

LEFT

BLANK

[W] The respondent is directed to file a response within one-hundred and twenty (120) days after the service of an amended petition or a notice that no amended petition will be filed.

[W] The court, having received an amended petition or a notice that no amended petition will be filed, and based upon a review of the files, pleadings, and records, including the amended petition, hereby summarily dismisses the petition. (*statement of reasons required*)

...........................................................................................................................

...........................................................................................................................

...........................................................................................................................

...........................................................................................................................

...........................................................................................................................

...........................................................................................................................

...........................................................................................................................

...........................................................................................................................

...........................................................................................................................

...........................................................................................................................

...........................................................................................................................

...........................................................................................................................

...........................................................................................................................

...........................................................................................................................

[W] The court, having received an amended petition or a notice that no amended petitioner will be filed, and based upon a review of the files, pleadings, and records, including the amended petition, hereby dismisses the following claims:

THIS PAGE

INTENTIONALLY

LEFT

BLANK

*(statement of reasons required)*

..............................................................................................................

..............................................................................................................

..............................................................................................................

..............................................................................................................

..............................................................................................................

..............................................................................................................

..............................................................................................................

..............................................................................................................

..............................................................................................................

..............................................................................................................

**AND**

orders a response from respondent on the following claims:

..............................................................................................................

..............................................................................................................

..............................................................................................................

..............................................................................................................

..............................................................................................................

..............................................................................................................

..............................................................................................................

THIS PAGE

INTENTIONALLY

LEFT

BLANK

FORM 9-705. PROCEDURAL ORDER ON PETITION FOR..., NM R CR Form 9-705

..................................................................................................................

..................................................................................................................

## 5. HEARING SCHEDULE:

[W] A status conference will be held on _____ (*date*), at _____ (*time*).

[W] A preliminary disposition hearing will be held on _____ (*date*), at _____ (*time*).

[W] An evidentiary hearing will be held on _____ (*date*), at _____ (*time*).

[W] An evidentiary hearing is not required, but legal argument will be heard on this matter on _____ (*date*), at _____ (*time*).

..................................................................................................................

(

*District Judge*

)

## USE NOTE

1. Paragraph 1 should only be used prior to the appointment of counsel and before the filing of any amended petition.

2. *See* NMSA 1978, § 31-16-3(B)(3) (1968).

3. After receiving the amended petition or notice that no amended petition will be filed, the court will then decide if a response will be ordered, and whether a status conference, a preliminary disposition hearing, or evidentiary hearing are required, and will send the parties notice. Paragraph 5 should be used when ordering a response at the time of appointment of counsel or after reviewing the amended petition or notice that no amended petition will be filed.

Credits

[Adopted effective Dec. 31, 2014.]

THIS PAGE

INTENTIONALLY

LEFT

BLANK

NMRA, Form 9-705, NM R CR Form 9-705
State court rules are current with amendments received through August 1, 2017.

---

**End of Document**                                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

THIS PAGE

INTENTIONALLY

LEFT

BLANK

> West's New Mexico Statutes Annotated
>   State Court Rules
>     9. Criminal Forms
>       Article 7. Special Proceedings

NMRA, Form 9-704

FORM 9-704. ORDER OF APPOINTMENT FOR HABEAS
CORPUS PROCEEDINGS UNDER RULE 5-802 NMRA

Currentness

[For use with District Court Criminal Rule 5-802 NMRA]

STATE OF NEW MEXICO

COUNTY OF _____

_____ JUDICIAL DISTRICT COURT

,....................................................    No. ...........................................

        Petitioner,

v.

,....................................................

        Respondent.

ORDER OF APPOINTMENT FOR HABEAS CORPUS
PROCEEDINGS UNDER RULE 5-802 NMRA

This matter having come before the court, and the court being fully advised of the
circumstances;

THE COURT FINDS THAT:

[W] the petitioner is incarcerated; or

NMRA, Form 9-704, NM R CR Form 9-704
State court rules are current with amendments received through August 1, 2017.

End of Document                              © 2017 Thomson Reuters. No claim to original U.S. Government Works.

---

> West's New Mexico Statutes Annotated
> State Court Rules
> 9. Criminal Forms
> Article 7. Special Proceedings

NMRA, Form 9-702

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO
THE DISTRICT COURT FROM DENIAL OF HABEAS CORPUS

Currentness

[For use with Appellate Rule 12-501 NMRA]

IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

........................................................

Defendant-Petitioner,        S.Ct. No. ......................................

                             *(leave blank; court will assign)*

vs.

.......................................        District Ct. No. .............................

*(Name of Warden)*

Respondent.

PETITION FOR WRIT OF CERTIORARI TO THE
_____ DISTRICT COURT OF NEW MEXICO

............................................................................................................

Defendant

-

Petitioner pro se

............................................................................................................
............................................................................................................
............................................................................................................

---

THIS PAGE

INTENTIONALLY

LEFT

BLANK

(
*address information*
)

## PETITION FOR WRIT OF CERTIORARI TO THE
## _____ DISTRICT COURT OF NEW MEXICO

Defendant-Petitioner, appearing pro se and pursuant to the provisions of the New Mexico Constitution, Rule 5-802, and Rule 12-501 NMRA, petitions this Court to issue its Writ of Certiorari to review the order in:

_____ (*your name v. Warden's name*), District Court No. _____ filed on _____.

### QUESTIONS PRESENTED FOR REVIEW

Whether the district court erred in:

................................................................................................................

................................................................................................................

................................................................................................................

................................................................................................................

................................................................................................................

................................................................................................................

................................................................................................................

................................................................................................................

................................................................................................................

................................................................................................................

................................................................................................................

................................................................................................................

THIS PAGE

INTENTIONALLY

LEFT

BLANK

..................................................................................................................

..................................................................................................................

*(Complete only for issues relevant to the petition. Attach additional sheets if necessary.)*

## DESCRIPTION OF THE PROCEEDINGS

1. Please list the conviction being challenged:

..................................................................................................................

..................................................................................................................

..................................................................................................................

2. Please list any other petitions you have filed in the New Mexico Supreme Court challenging this conviction (*please include docket numbers and dates*):

..................................................................................................................

..................................................................................................................

..................................................................................................................

..................................................................................................................

3. Tell the story of what happened in your court case:

..................................................................................................................

..................................................................................................................

..................................................................................................................

..................................................................................................................

THIS PAGE

INTENTIONALLY

LEFT

BLANK

......................................................................................................

......................................................................................................

......................................................................................................

......................................................................................................

......................................................................................................

......................................................................................................

## BASIS FOR GRANTING THIS PETITION FOR
## WRIT OF CERTIORARI TO THE DISTRICT COURT

The decision of the district court on my petition for writ of habeas corpus, filed pro se, raises significant questions of law under state and federal constitutions: whether the errors below deprived petitioner's rights guaranteed by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments and by New Mexico Constitution, art. II, §§ 13, 14, 15, and 18.

## ARGUMENT

*(Describe your legal claim and cite the law (cases, statutes, constitutional sections) that supports your position. Use plain language.)*

## POINT 1:

......................................................................................................

......................................................................................................

......................................................................................................

......................................................................................................

......................................................................................................

......................................................................................................

# THIS PAGE

# INTENTIONALLY

# LEFT

# BLANK

**POINT 2:**

..........................................................................................................................

..........................................................................................................................

..........................................................................................................................

..........................................................................................................................

..........................................................................................................................

..........................................................................................................................

..........................................................................................................................

**POINT 3:**

..........................................................................................................................

..........................................................................................................................

..........................................................................................................................

..........................................................................................................................

..........................................................................................................................

..........................................................................................................................

..........................................................................................................................

*(Attach additional sheets, if necessary.)*

### REQUEST FOR RELIEF

THIS PAGE

INTENTIONALLY

LEFT

BLANK

Defendant-petitioner requests that this Court issue its writ of certiorari to the district court, and:

(W) remand to the district court for a full hearing on the petition, OR

(W) reverse the conviction, OR

(W) remand to the district court to correct the sentence, OR

(W) (other) _____.

Petitioner asks this Court to grant such relief as may be appropriate. As required by Rule 12-501 NMRA, I am filing only the original copy of this petition and I have attached the following:

(W) a copy of my petition for writ of habeas corpus filed in district court, AND

(W) a copy of the state's response, if one was filed, AND

(W) a copy of the district court's order.

(W) I have not attached the required documents because

_____

and ask the Supreme Court to accept this petition without the attachments.

Respectfully submitted,

............................................................................................

Defendant-Petitioner, pro se
I hereby certify that a copy of this petition was mailed to the Attorney General's Office, P.O. Box 1508, Santa Fe, New Mexico 87504-1508 on this ___ day of

_____

............................................................................................

Defendant-Petitioner, pro se

Credits
[Adopted effective Dec. 31, 2014.]

# THIS PAGE

# INTENTIONALLY

# LEFT

# BLANK

> West's New Mexico Statutes Annotated
>   State Court Rules
>     9. Criminal Forms
>       Article 7. Special Proceedings

NMRA, Form 9-704

## FORM 9-704. ORDER OF APPOINTMENT FOR HABEAS CORPUS PROCEEDINGS UNDER RULE 5-802 NMRA

Currentness

[For use with District Court Criminal Rule 5-802 NMRA]

STATE OF NEW MEXICO

COUNTY OF _____

_____ JUDICIAL DISTRICT COURT

,.......................................     No. ...........................................

    Petitioner,

v.

,.......................................

    Respondent.

### ORDER OF APPOINTMENT FOR HABEAS CORPUS PROCEEDINGS UNDER RULE 5-802 NMRA

This matter having come before the court, and the court being fully advised of the circumstances;

THE COURT FINDS THAT:

[W] the petitioner is incarcerated; or

THIS PAGE

INTENTIONALLY

LEFT

BLANK

[W] the petitioner is not incarcerated, and is indigent and unable to obtain counsel; and

[W] This is a proceeding which a reasonable person would bring at that person's own expense. [1]

IT IS THEREFORE ORDERED THAT:

[W] the Public Defender Department is hereby appointed to represent the Petitioner in the above-entitled cause without payment of the application fee.

[W] the Public Defender Department, shall appoint an attorney on contract with the department represent the petitioner based on the conflict memorandum reviewed by the court or as disclosed at a status conference with the court.

[W] petitioner's counsel shall file an amended petition or a notice of non-intent to file an amended petition within ninety (90) days of the date of the filing of this order.

..................................................................................................................

(
*District Judge*
)

## USE NOTE

[1] Under the Indigent Defense Act, a person has the limited right to appointed counsel representation in post-conviction matters "unless the court in which the proceeding is brought determines that it is not a proceeding that a reasonable person with adequate means would be willing to bring at his own expense" NMSA 1978, § 31-16-3(B)(3) (1968). Therefore, the Public Defender may not be able to represent a petition in all cases.

If the Public Defender Department is appointed, the clerk of the district court shall mail a copy of this order and a copy of the pro se petition to the Post-Conviction/ Habeas Division, Office of the Public Defender, 505 Marquette NW, Ste. 120, Albuquerque, NM 87102.

Credits
[Adopted effective Dec. 31, 2014.]

THIS PAGE

INTENTIONALLY

LEFT

BLANK

NMRA, Form 9-704, NM R CR Form 9-704
State court rules are current with amendments received through August 1, 2017.

End of Document                                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

THIS PAGE

INTENTIONALLY

LEFT

BLANK

@ # Ground A.

PAGE 1

TRIAL COUNSEL TOLD MR. RAMIREZ THAT
HE WOULD NOT PROVIDE EFFECTIVE
ASSISTANCE OF COUNSEL IF I MR.
RAMIREZ CONTINUED TO INSIST ON
GOING TO TRIAL AND WOULD NOT
TAKE THE PLEA." AISO TRIAL COUNSEL
DID NOT EXPLAIN THE MINIMUM AND
MAXIMUM TIME MR. RAMIREZ WAS FACING,
MR. RAMIREZ AISO TRIED TO FIRE HIS
ATTORNEY ONCE IN FRONT OF THE
JURY IN MIDDLE OF TRIAL,
COMPLETE breakdown in communication.
THE district COURT Abused its discretion
IN THE fact the Judge Neither question
The trial attorney or MR Ramirez
privately Nor IN depth of to the
dissatisfaction And of the complaints
and Request to Change Substitute
COUNSEL.
AISO. Judge court did NOT INQUIRY
INTO MR. Ramirez Request.

# Ground 2

page 12

The Judge does not even appear to have considered the lenght of delay that would have been Necessary to substitute a New Attorney. The Fact that the Jury pool was ready For selection does not automatically outweigh Mr. Ramirez 6th admnment Right.

The Judge ignored the problems Between Mr. Ramirez And His Attorney. Commenting He was being well represented And would not substitute counsel.

1. Under standards For denying a motion to substitute counsel. the district court Erred.

I want the court to Review the denial OF a motion or request For Substitution OF counsel For Abuse OF distreretion.

TURN PAGE →

# Ground A

PAGE 3

SEE United STATES V. CORONA - GARCIA, 210 ~~280~~ F.3d 973, 976 (9th CiR 2000), Cert. denied, 531 U.S. 898 121 S.ct. 231, 148 L.E.d. 2d. 165 (2000).

In Reviewing a denial OF Substition OF COUNSEL.

① The timelensss OF The motion

② The Adequacy OF The trial Courts INquiry

③ THE EXTENT OF CONFLICT created IN MR. Ramirez case The Judge failed to adequatly balance MR Ramirez 6th admendment Rights against any INCONVINENCE and delay from granting a Continuence.

ALSO, I Bring This as Not A Lawyer.

Issue maybe. irreconsible conflict OR Conflict OF INTEREST And abuse OF discretion.

Thank you ⟶

Ground A                          PAGE 4

SEE. U.S. ADELZO - GONZALEZ
Cite as 208 F. 3d. 772
(9TH CIR 2001)

· ABSENT Compelling purpose. It is
violation OF Sixth Amendment to
deny Motion to Substitute
Counsel ; is error that must
be reversed. regardless OF whether
prejudiced results.

MR. Ramirez States. trial counsel
used bad language threatened to
provide effective assistance of
Counsel if MR. ramirez insisted
to Go to Trial , instead OF
taking plea.
Trial called MR Ramirez A
a Lying Stupid mexican SON
OF a Bitch. and Hoped Mr.
ramirez Gets life.

page 5    Ground 2

THIS IS EXTRA INFORMATION THAT NEEDS TO BE READ FOR THIS PETITION.

TRIAL COUNSEL DENIED A FAILED TO PROVIDE EFFECTIVE ASSISTANCE OF COUNSEL.

TWO WEEKS BEFORE TRIAL MR. RAMIREZ REQUESTED SUBSTITUTE OF COUNSEL AND EXPRESSED DISSATISFACTION and, that there was A breakdown IN COMMUNICATION

SEE CASE TRUNG TRAN NGUYEN V. UNITED STATES OF AMERICA
   NO. 00-10272
   United States court of appeals
   Ninth Circuit
   Submitted Dec. 12, 2000
   Filed August 28th 2001

TURN PAGE →

Page B.    ⑥ Ground 2.

Under the Standards For denying a Motion To Substitute Counsel The district court Erred.

United States v. Corona - Garcia, 210 F.3d. 973, 976 (9th cir 2000). Cert, denied, 531 U.S. 898, 121. S.at. 731, 148 L.E.d. 2d. 165. 2000.

In denying Substitution of Counsel. The court Should OF Considered

① The timeliness OF The Motion

② The adequacy of the trial courts Inquiry; and the extent of conflict Created.

With regard to timeliness, as mentioned above The district Judge Failed to adequatly balance Mr. ramirez 6th Amendment Rights any INCONVENIENCE and delay From granting The continuance. Moore, 159, F.3d. at 1160    In Mr. ramirez case the District court Judge DID not even appeal to consider the lenght OF delay that would have been

IT WAS INEFFECTIVE ASSISTANCE

FOR trial ATTORNEY TO NOT object

to Closing Argument inadmissible

Evidence Presented. BATTERY on officer,

Exibit 110 Letter stating of SHOOTING

People killing people,

Broken Windows, And INEFFective

assistance OF HABEAUS COUNSEL

NOT arguing this in amended

petition.

St v. A. Ramirez - CR07-434                                    COURTROOM ONE

| Time | Speak | Note |
|---|---|---|
| 9:32:20 AM | CT | COURT IN SESSION/COURT REMARKS<br>PARTIES PRESENT/PURPOSE OF HEARING - TRIAL STARTS A WEEK FROM TODAY |
| 9:32:43 AM | | CT RECEIVED 2 LETTERS FROM DEFENDANT, BUT DON'T HAVE COPIES OF LETTERS, DA DIDNT BRING COPY EITHER. SHARE WITH ME YOUR CONCERNS |
| 9:33:08 AM | JC | DEF IS ON THE LINE WITH US. DEF CAN HEAR PROCEEDINGS. LETTERS FROM DEFENDANT. I MET WITH HIM AT THE PRISON, HE WANTED NEW COUNSEL, HE WOULD HAVE TO MOTION THE COURT AND YOU WOULD HAVE TO DETERMINE. |
| 9:33:53 AM | CT | DOES DEF FEEL FREE TO RELAY CONCERNS |
| 9:34:05 AM | DEF | I FEEL THAT COUNSEL HAS NOT FULFILLED DUTIES AS MY ATTY, HAS NOT LET ME KNOW ABOUT ANYTHING GOING ON IN COURT. BEEN CONFUSED AND HE DOESN'T EXPLAIN THINGS TO ME. I ASKED HIM TO FILE MOTIONS FOR PHYSICAL EXAMINATION, LEFT LEG SHORT, UPPER BODY IS CROOKED, LIMITED DISABILITY. BEEN THIS WAY BEFORE ACCIDENT. I ALSO EXPLAINED FOR PSYCH EVAL, SUFFERED BEFORE ACCIDENT AND CRIME, SUFFER FROM DELUSIONS, HALLUCINATIONS, DEPRESSION. LAST TIME I WAS ASSAULTED BY EMPLOYER AT HOSPITAL, ONE OF THE REASONS I BELIEVE HE LIED TO COURT ABOUT ME, I WASN'T COOPERATING, MALINGERING. I'VE BEEN FOUND W/MENTAL AND PHYSICAL ILLNESS. I TALK TO DR FINK AND HE SAID THE STATES JOB IS TO FIND ME COMPETENT. THEY WANT ME COMPETENT TO SEND ME TO TRIAL. NOT FAIR TO TALK TO ME ABOUT NOTHING. |
| 9:36:38 AM | DEF | DON'T FEEL I WAS PROPERLY EVALUATED, ALSO, NEUROLOGICAL EXAMINATION, SEVERLY ILL, MENTALLY AND PHYSICALLY. FEEL COURT DOESN'T CARE ABOUT THAT. COUNSEL HAS NOT FILED MOTIONS, I WANTED PRIVATE INVESTIGATOR. CASE WORKER HAS BEEN HERE, CALLING FOR ME, THEY WERE BUSY, COUNSEL NOT IN, GIVING ME A RUN AROUND. I TOLD COUNSEL I WANTED TO KNOW WHAT WAS GOING ON WITH MOTIONS AND INVESTIGATOR. I DIDN'T KNOW WHEN I WAS GOING TO TRIAL. I DIDN'T HAVE ENOUGH TIME TO PREPARE FOR MY CASE. DRS TREATED ME THAT SAID I WAS DISABLED. BEEN IN WHEELCHAIR FOR 2 YRS. DON'T KNOW THE DRS. I WANTED NEW COUNSEL. HE SAID THEY PROBABLY WOULDN'T LET ME HAVE NEW COUNSEL. FEEL LIKE I'M GOING TO LOOSE THIS CASE. HE HASN'T TALKED TO ME ENOUGH ABOUT THIS CASE. |

7/29/2013                                                        2 of 4

St v. A. Ramirez - CR07-434                                    COURTROOM ONE

| Time | Speak | Note |
|------|-------|------|
| 9:38:59 AM | DEF | I'M DISSATISFIED. THANK YOU FOR LETTING ME SPEAK. WANT TO ANNOUNCE THAT IF I COULD POSTPONE THE COURT, GET NEW ATTY. IF YOU WOULD BE WILLING TO, BUT IF NOT I WILL GO TO COURT WITH HIM. IF I LOOSE THIS CASE, DON'T WANT HIM TO BE MAD AT ME OR LOOSE CASE FOR ME, ASKING FOR NEW ATTY. NOT DOING HIS DUTIES AS ATTY. THAT IS HOW I FEEL. I SAID IT AND I JUST FEEL HE MIGHT LOOSE THIS CASE FOR ANY REASON. I DON'T HAVE A GOOD FEELING ABOUT GOING TO TRIAL. THANK YOU, THAT'S ALL I HAVE TO SAY. |
| 9:40:29 AM | CT | ANY OTHER COMMENTS - NONE. LET ME ASSURE YOU OF SOME THINGS. FILE DEMONSTRATES THAT ATTY WOULD AND SHOULD DO IN YOUR CASE, HE IS A PROFESSIONAL AND WILL WORK AS HARD AS HE CAN. HE WONT' BE MAD AT YOU FOR TRYING TO CHANGE LAWYERS. HE IS A SEASONED TRIAL LAWYER. CAN'T THINK ANYONE WHO WOULD DO YOU A BETTER JOB, YOU ARE AS WELL REPRESENTED AS YOU CAN BE. DON'T WANT YOU TO BELIEVE YOU WON'T GET A FAIR TRIAL. BASED ON THAT, COURT WON'T SUBSTITUTE COUNSEL AT THIS JUNCTURE. GO TO TRIAL |
| 9:41:52 AM | DEF | NO WAY I CAN POSTPONE COURT |
| 9:42:00 AM | CT | THE FILE IS OLD AS YOU KNOW IT. DON'T THINK WITNESSES WOULD BE SURPRISES, LEGITIMATE WITNESS WILL BE HERE FOR TRIAL. THAT WILL BE TAKEN CARE OF. DON'T BLAME YOU FOR BEING CONCERNED |
| 9:42:38 AM | DEF | ANY WAY THE DR CAN EXAMINE ME, FEEL I AM ILL. DON'T FEEL YOU WANT TO GIVE ME A CHANCE |
| 9:42:54 AM | CT | YOU HAVE BEEN EXAMINED, YOU HAVE COMPLAINTS, WE ALL HAVE THEM. THE COMPLAINTS YOU HAVE VOICED, AND DRS EXAMINED YOU SAY YOU ARE ABLE TO GO TO COURT. YOU ARE ABLE TO GO TO TRIAL AND ABLE TO PROCEED AND THAT IS WHAT WE WILL DO. |
| 9:43:32 AM | DEF | NO WAY TO POSTPONE THE COURT |
| 9:43:38 AM | CT | NO REASON TO DO THAT, ALL PREPARED. IT WILL BE ON MONDAY. |
| 9:43:50 AM | DEF | THANK YOU TO COSBY, AND DA - |
| 9:44:08 AM | CT | WHAT YOU GOT IS NOT THE WAY IT IS. SUPREME COURT HAS APPT ME TO THIS CASE. |
| 9:44:24 AM | DEF | I WANT YOU ON THIS CASE, YOU KNOW WHAT I WAS GOING THROUGH. |
| 9:44:37 AM | CT | I WAS THERE THAT WE HAD THE HEARING, THE PLEA. REMEMBER YOU WERE CRYING. |
| 9:44:52 AM | DEF | ALWAYS BEEN REMORSEFUL. WHEN BRETT CARTER GAVE ME EXTRA YEARS. I'M SORRY I WITHDREW MY PLEA. |

7/29/2013                                                      3 of 4

*COUNSEL did not explain this to me*

following:

      (1) the nature of the charge to which the plea is offered;

      (2) the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law for the offense to which the plea is offered, including any possible sentence enhancements.

(Emphasis added.) In order to ensure that the defendant understands "the nature of the charge[s]," *id.*, the district court must be satisfied that the defendant understands the essential elements of the charges that are subject to the plea. *See Garcia*, 121 N.M. at 548, 915 P.2d at 304. A related requirement directs the district court to "[make an] inquiry as shall satisfy it that there is a factual basis for the plea." Rule 5-304(G) NMRA; *State v. Willis*, 1997-NMSC-014, ¶ 9, 123 N.M. 55, 933 P.2d 854. Finally, the record must contain an "affirmative showing that [the] plea was knowingly and voluntarily given." *Garcia*, 121 N.M. at 547, 915 P.2d at 303; *see also Boykin*, 395 U.S. at 242-43.

{10}    At the January 2009 plea hearing in this case, the district court tried to satisfy the requirements of Rules 5-303(F) and 5-304(G) by establishing, inter alia, a factual basis for the charges and engaging Defendant in an exchange intended to confirm the knowing, intelligent, and voluntary character of his plea. At the beginning of the plea hearing, the judge asked Defendant whether he understood the charges. The district

RP347

1 right to a jury trial and the right to confront one's accusers. *Id.* at 242-43; *State v.*

2 *Montler*, 85 N.M. 60, 61, 509 P.2d 252, 253 (1973). In addition, "we review the trial

3 court's denial of a defendant's motion to withdraw his guilty plea for an abuse of

4 discretion." *State v. Barnett*, 1998-NMCA-105, ¶ 12, 125 N.M. 739, 965 P.2d 323.

5 The "trial court abuses its discretion when it acts unfairly or arbitrarily, or commits

6 manifest error." *Id.* "A denial of a motion to withdraw a guilty plea constitutes

7 manifest error when the undisputed facts establish that the plea was not knowingly

8 and voluntarily given." *State v. Garcia*, 1996-NMSC-013, 121 N.M. 544, 546, 915

9 P.2d 300, 302.

10 {9}    A plea is not knowing, intelligent, and voluntary unless the defendant

11 "understand[s] his guilty plea and its consequences." *Id.* at 547, 915 P.2d at 303; *see*

12 *also Boykin*, 395 U.S. at 243-44 (explaining that state trial courts should "make sure

13 [a defendant] has a full understanding of what the plea connotes and of its

14 consequence[s]"). Rule 5-303(F) NMRA codifies the matters our district courts must

15 address to ascertain that a defendant grasps the contents and consequences of a plea.

16 In relevant part, Rule 5-303(F) provides:

17        The court shall not accept a plea of guilty or no contest without first, by
18        addressing the defendant personally in open court, informing the
19        defendant of *and determining that the defendant understands* the

RP344

ST. VS ALBERT RAMIREZ  CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 2:26:46 PM | CHANDLER | RESPONDS, WITH REGARD TO THE DOUBLE JEOPARDY MOTION, THESE ARE TWO DISTINCT ACTS OVER A PERIOD OF TIME, THE MOST APPROPRIATE CASES STATE VS. DERRICK IRVIN, THE APPELATE COURTS SAID EACH TIME WEATHER THERE WAS SOME DIFFERENT ITEMS DIFFERENT MOVEMENT IN BETWEEN THE TWO, ETC. |
| 2:29:32 PM | | WHY WOULD YOU THROW AWAY A PERFECTLY GOOD PAIR OF SHORTS WITH YOUR ID IN THE DUMPSTER , THERE IS NO DOUBLE JEOPARDY ISSUE |
| 2:30:37 PM | COSBY | PARAGRAPH PAGE 55 IN THE OPINION FROM 2006 OF SUPREME COURT CASE THERE WERE 5 COUNTS CHARGED ETC. |
| 2:34:16 PM | COURT | IS OF THE OPINION , IN MY MIND THERE COULD BE TWO DIFFERENT THINGS, THE FACTS WOULD SUPPORT THAT HE DISPOSED OF HIS CLOTHING IMMEDIATELY AFTER THE INCIDENT, WILL NOT GRANT THE MOTION ON THE DOUBLE JEOPARDY, SEES YOUR POINT , THAT THERE IS SUFFICIENT EVIDENCE |
| 2:35:30 PM | COSBY | WE HAVE A DIFFERENT TIME WHEN PHONE CALLS WERE MADE, |
| 2:36:02 PM | | AS TO THE FIRST DEGREE, RENEWS MOTIONS OF PSYCOLOGICAL EVALUATION OF HIS CLIENT, I AM GETTING FRUSTRATED BECAUSE IT IS VERY DIFFICULT TO REPRESENT A CLIENT WHO IS. |
| 2:37:30 PM | | CONCERNED THAT HE IS NOT COMPETENT TO MAKE CHOICE TO TESTIFY |
| 2:37:42 PM | COURT | ADVISES DFT THAT HE HAS RIGHT NOT TO TESTIFY, YOU DO NOT HAVE TO TESTIFY, IF YOU EXERCISE THAT RIGHT NOT TO TESTIFY, IT IS TABOO, IF YOU MAKE DECISION TO TESTIFY |
| 2:39:05 PM | DFT | I DON'T KNOW WHAT TO DO, I DON'T THINK I AM MENTALLY BALANCED, I WANT TO ASK CAN JURY KNOW ABOUT MY MEDICAL PROBLEMS |
| 2:41:22 PM | COURT | WE HAVE LISTENED TO YOU, THE ISSUES CONCERNING TO YOU ARE PERSONAL, THEY DO NOT ARISE TO THE POINT , WE ARE GOING TO GO FORWARD WITH THE TRIAL |
| 2:42:07 PM | DFT | I FEEL THAT YOU ARE ALL AGAINST ME ETC. |
| 2:43:11 PM | RECESS | |
| 3:08:40 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY, COURT HAS MADE RULINGS ON MOTION FOR DIRECTIVE VERDICT, WANTS TO READ FROM THE FILE ON THIS CASE, |
| 3:10:45 PM | | BELIEVES THAT DFT IS COMPETENT TO STAND TRIAL, PREPARED TO CONTINUE THIS TRIAL, DOES THE DEFENSE INTEND TO PRESENT A DEFENSE |

10/9/2013                                                    14 of 15

ST. VS ALBERT RAMIREZ  CR-07-434                              COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 2:08:49 PM | COSBY | **RXEX** - WHAT IS A WASH "IT IS A THIN COATING OF THAT PARTICULAR MATERIAL, A JACKET IS GOING TO BE THICKER AND WEIGH MORE AND BE AN ACTUAL PART OF THAT BULLET ETC. |
| 2:11:28 PM | | **WITNESS EXCUSED** |
| 2:12:28 PM | | **#20 WITNESS KEITH BESETTE CALLED BY CHANDLER / SWORN / DEX** |
| 2:13:15 PM | | WORKS WITH CURRY COUNTY SHERIFF'S OFFICE LITTLE OVER 17 YEARS |
| 2:13:39 PM | | RESPONDED TO PLAINS REGIONAL HOSPITAL, AND TO COLLECT CLOTHING |
| 2:14:20 PM | | WHEN HE ARRIVED AT HOSPITAL WHAT DID HE SEE, HIS CLOTHING WAS UNDERNEATH HIM, DOES NOT KNOW HOW HIS CLOTHING WAS REMOVED |
| 2:15:24 PM | | DOES NOT RECALL IF CLOTHING WAS CUT OR NOT , COLLECTED IT AND BAGGED IT, AS HE REMEMBERS THERE WAS BLOOD ON IT, COLLECTED A WALLET AND A SET OF KEYS, HE HAD BOOTS |
| 2:16:10 PM | | DID NOT FIND ANY WEAPONS IN THE CLOTHING NOTHING BUT A SET OF KEYS AND HIS WALLET |
| 2:16:38 PM | COSBY | **XEX** - DID YOU PUT THE CLOTHING IN EVIDENCE, DID YOU SEND IT TO THE CASE MANAGER , AT TIME THE COMMANDER WAS ROGER GRAU |
| 2:17:29 PM | | DOES NOT REMEMBER WHO HE GAVE CLOTHING TOO, GAVE THE BAG NOT THE ARTICLE |
| 2:18:10 PM | | **WITNESS EXCUSED** |
| 2:18:33 PM | CHANDLER | **STATE ANNOUNCES REST** |
| 2:19:07 PM | | JURY EXCUSED FROM COURTROOM |
| 2:20:13 PM | COSBY | MOTIONS CONCERNING FIRST THE TWO COUNTS OF TAMPERING OF EVIDENCE, DOUBLE JEOPARDY MULTIPLE CHARGES, STATE VS SILVA 2008 NM SUPREME COURT, FURTHER SITES CASES, |
| 2:22:00 PM | | BASICALLY OF WHAT IS ISSUE OF DOUBLE JEOPARDY, STATE HAS CHARGED TWO COUNTS OF TAMPERING, ONE WITH THE CLOTHING |
| 2:22:57 PM | | THERE IS NOT EVIDENCE THAT THEY WERE TAKEN INTENTIONALY |
| 2:23:17 PM | | WHAT WE HAVE HERE IS A DISPOSITION OF SOME SHORTS, NOBODY DESCRIBED A RED BELT, NO EVIDENCE MY CLIENT DISPOSED OF THEM WITH SPECIFIC INTENT, IF HE DISPOSED OF THEM, AS FAR AS THE FIREARM, IT WAS DISPOSED OF BASED ON PHONE CALLS OF BAM BAM AND RAGS TO RICHES |
| 2:25:11 PM | | AS FAR AS HIM CALLING FROM THE JAIL, THEY TOOK INTERPRETATION OF BAM BAM BEING A GUN |

ST. VS ALBERT RAMIREZ  CR-07-434                                    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 1:58:18 PM | CHANDLER | RXEX - DO YOU UNDERSTAND THE WORD PREMEDITATE, FIRST TIME YOU SHOT ELADIO WAS IN THE GARAGE, YOU PLANNED ON KILLING HIM IN THE GARAGE |
| 1:59:03 PM | COSBY | **RDEX - FURTHER COMMENTS** |
| 1:59:45 PM | | **#2 WITNESS JOSE RAMIREZ JR. CALLED BY D / SWORN / DEX** |
| 2:01:11 PM | | HOW OLD WERE YOU WHEN MR. ROBLEDO CAME INTO THE PICTURE |
| 2:01:52 PM | | DID YOU EVER BECOME AWARE OF HIM NOT LIVING IN THE HOUSE, HE CAME TO LIVE WITH ME FOR ABOUT 3 TO 4 MONTHS |
| 2:02:33 PM | | I ASKED HIM TO LEAVE AT THE END, I WAS ASKING HIM TO GO TO SCHOOL AND HE WOULD NOT FOLLOW RULES, |
| 2:03:05 PM | | DID HE HAVE ANY PROBLEMS WITH ELADIO ROBLEDO |
| 2:03:46 PM | | HE DID NOT HAVE ANY HATRED TOWARD'S HIM |
| 2:04:34 PM | | HOW YOU BECAME AWARE OF THE PROBLEM |
| 2:04:52 PM | | **BENCH CONFERENCE** |
| 2:06:33 PM | COSBY | WERE YOU AWARE OF ISSUES BETWEEN YOUR BROTHER AND SOME OTHER PEOPLE |
| 2:07:37 PM | | REMOVE DFT FROM COURTROOM |
| 2:07:49 PM | | JURY EXCUSED FROM COURTROOM |
| 2:08:47 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY |
| 2:08:56 PM | | THE COURT HAS ORDERED THE DFT TO THE OTHER ROOM TILL WE FIGURE OUT WHAT TO DO |
| 2:09:11 PM | CHANDLER | THERE IS CASE LAW IN NM READS IN TO RECORD |
| 2:10:59 PM | | HAVE A COPY OF CASE , ASKS COURT TO BRING HIM IN HERE AND GIVE HIM A STERN WARNING, IT WOULD BE THE STATES PREFERENCE TO REMAIN IN THE COURTROOM |
| 2:11:42 PM | COURT | WANTS TO SAY THIS ON THE RECORD MR. COSBY IS REPRESENTING THIS DFT AND IT IS DIFFICULT TO WORK WITH |
| 2:12:05 PM | COSBY | AT THIS JUNCTURE BY HIS OWN CONDUCT, HE HAS PUT FORTH TO THE JURY THAT I AM NOT REPRESENTING HIM , I KNOW THAT HE CREATED THE SITUATION, EVEN THOUGH THE COURT HAS ADMONISHED, THE FACT REMAINS HE HAS FIRED ME IN OPEN COURT, IF WE WANTS TO FIRE ME THAT IS HIS PEROGATIVE, IF THAT IS HIS DESIRE HE CAN GO FORWARD REPRESENTING HIMSELF ETC. |
| 2:14:07 PM | | IT IS HIS RIGHT TO REPRESENT HIMSELF, IF THAT IS HIS DESIRE AND HE WANTS TO REPRESENT HIMSELF |

10/10/2013

ST. VS ALBERT RAMIREZ  CR-07-434                     COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 1:45:20 PM | | YOU WERE NOT HOMELESS "YES I WAS HOMELESS SINCE JANUARY 2007" YOUR BROTHER SAID YOU COULD NOT STAY THERE BECAUSE YOU WERE NOT FOLLOWING THE RULES, MY SISTER HAS TO MANY MOUTHS TO FEED ETC. |
| 1:46:31 PM | | YOU HAD A HOTEL YOU STAYED AT VALUE INN, DID NOT COST YOU ANYTHING BECAUSE SOMEONE WAS PAYING YOUR ROOM, MY MOM SAID SHE WOULD GET ME THE MOTEL FOR A WEEK, |
| 1:47:32 PM | | I DID NOT FEEL ANGRY, I WAS DEPRESSED |
| 1:47:55 PM | | ELADIO WENT INTO GARAGE TO PUT UP VACUUM AND YOU LIFTED UP YOUR SHIRT, HE DID NOT LEAVE ANY MARKS ON YOU ETC. |
| 1:48:58 PM | COSBY | OBJECTION ARGUMENTATIVE |
| 1:49:06 PM | CHANDLER | YOU SHOT HIM IN THE CHEST AREA "I DON'T KNOW MY EYES WERE CLOSED, "WHAT HAPPENED HE DID CHOKE ME AT ONE POINT" YOU DON'T GET SCRATCHED WHEN SOMEBODY IS CHOKING YOU |
| 1:50:06 PM | | GRACE FINKEY SAID SHE DROVE BY AND YOU WERE CHASING ELADIO WITH A GUN |
| 1:50:32 PM | | WHEN ELADIO WAS DOWN ON THE FROUND YOU SHOT HIM IN THE HEAD "WHEN HE CAME AFTER ME I SHOT" |
| 1:51:26 PM | | IF ELADIO WAS LAYING IN GROUND , "I SHOT TOWARDS THE GROUND I DON'T KNOW WHERE IT HIT HIM. |
| 1:52:01 PM | | IT IS NOTHING NEW FOR YOU TO BE INVOLVED IN ALTERCATIONS |
| 1:52:51 PM | | **BENCH CONFERENCE** |
| 1:53:29 PM | CHANDLER | ISN'T IT TRUE THAT YOU HEAD BUTTED A POLICE OFFICER "YES" |
| 1:53:58 PM | | YOU WANT THIS JURY TO BELIEVE YOU WERE DEFENDING YOURSELF |
| 1:54:13 PM | COSBY | MOVES FOR A MISTRIAL |
| 1:54:31 PM | CHANDLER | YOU RECALL A LOT OF REQUESTS TO GO TO THE LAW LIBRARY TO RESEARCH |
| 1:54:51 PM | | **BENCH CONFERENCE / NOT GOING TO GRANT A MIS TRIAL JUST DON'T ASK QUESTIONS** |
| 1:56:06 PM | CHANDLER | YOU TESTIFIED THAT IF YOU REALLY WANTED TO HURT OR KILL ELADIO OR DEBRA YOU COULD OF WALKED IN THE HOUSE AND DONE IT " |
| 1:56:42 PM | COSBY | RDEX - YOU UNDERSTAND WHAT YOU ARE CHARGED WITH |
| 1:57:07 PM | | DID YOU AMBUSH ELADIO ROBLEDO THAT DAY, NO IT JUST HAPPENED, I HAD THAT GUN FOR MY PROTECTION IT JUST HAPPENED |
| 1:58:08 PM | | DID YOU DO ANYTHING TO PLAN THIS KILLING |

ST. VS ALBERT RAMIREZ  CR-07-434                    CR1 CHAMBERS

| Time | Speaker | Note |
|------|---------|------|
| 10:58:56 AM | CHANDLER | ON XEX GONNA ASK THIS COURT FOR ABOUT 10 OR 15 MINUTES WOULD LIKE TO DISCUSS WITH CO COUNSEL, SAID HE HAS NOT TESTIFIED BEFORE, I RENEW MY |
| 11:00:15 AM | COSBY | IT WAS NOT A JURY TRIAL IT WAS A BENCH TRIAL, HE BATTERED A TRANSPORT OFFICER |
| 11:01:15 AM | COURT | IF XEX TRIGGERS I WILL CHANGE MY RULING |
| 11:01:44 AM | RECESS | |
| 3:44:06 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY, DFT AND ALL PARTIES PRESENT |
| 3:44:27 PM | CHANDLER | DEFENSE HAS RESTED AND HAVE GIVEN US A COUPLE OF INSTRUCTIONS GUILTY BUT MENTALLY ILL, HE IS ATTEMPTING TO RAISE COMPETENCY, OUR REBUTTAL WITNESSES ARE GOING TO TESTIFY THAT THEY HAVE EXAMINED THE DFT, ETC. |
| 3:45:47 PM | COURT | HAVE NOT SEEN A DFT THE WAY THIS TRIAL HAS UNFOLDED |
| 3:46:20 PM | CHANDLER | WE HAVE CASELAW |
| 3:46:30 PM | COSBY | I AM NOT GOING TO SUBMIT A COMPETENCY INSTRUCTION, |
| 3:46:46 PM | CHANDLER | WE ARE NOT OBJECTING, THE ONLY MENTAL ILLNESS THAT PROBABLY COULD HAVE BEEN TESTIFIED, DFT TOOK STAND AND HE DID NOT RAISE ISSUE |
| 3:47:42 PM | COSBY | THE GBMI WAS AVAILABLE, BUT THAT DOES NOT DEPRIVE HIM OF THE RIGHT TO HAVE IT SUBMITTETD, GBMI VERDICT IS NOT SOMETHING TO GIVE, HE IS ENTITLED WE HAVE TENDERED IT, |
| 3:48:58 PM | COSBY | OPPOSES TO REBUTTAL WITNESSES BEING CALLED |
| 3:49:17 PM | COURT | BASIS UPON |
| 3:49:34 PM | MORRIS | THEY WERE CALLED , THEY ALSO CAN TESTIFY AS TO THEIR OPINION |
| 3:50:52 PM | | HE LISTED BOTH OF THESE DOCTORS, HE HAS NOT LISTED DR. SWARTZ |
| 3:51:10 PM | CHANDLER | YOU CANNOT BRING IN AN EXPERT YOU HAVE NOT DISCLOSED |
| 3:51:27 PM | COURT | AS A PRACTICAL MATTER WHAT YOU DO IN YOUR INSTRUCTIONS YOU HAVE A GUILTY AND GUILTY BUT MENTALLY ILL, |
| 3:52:06 PM | COSBY | WE ARE NOT GOING TO ASK FOR SELF DEFENSE, WILL WITHDRAW BECAUSE OF MENTAL ILLNESS OR DEFECT |
| 3:52:52 PM | OFF RECORD | |

ST. VS ALBERT RAMIREZ  CR-07-434                              CR1 CHAMBERS

| Time | Speaker | Note |
|---|---|---|
| 10:40:24 AM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY DFT AND ALL PARTIES PRESENT |
| 10:40:41 AM | COSBY | HAS ONE OTHER ISSUE, MY CLIENT HAS TOLD ME THAT HE WAS SEXUALLY ASSAULTED ETC. |
| 10:42:10 AM | | HE WANTS TO TESTIFY THAT MR. ROBLEDO AS WELL AS MR. SAIZ SEXUALLY ASSAULTED HIM |
| 10:42:28 AM | CHANDLER | THERE IS NOTHING THAT SUPPORTS THAT PARTICULAR CLAIM, IT HAS NEVER BEEN REPORTED, WHEN DID THE HAPPENED , IT IS THE TIMELINE, |
| 10:43:36 AM | COSBY | UPON ON HIS FIRST STATEMENT, WHEN MY CLIENT FIRST WENT TO HIS HOUSE MY CLIENT TOLD HIM HE HAD BEEN SEXUALLY ASSAULTED, |
| 10:44:17 AM | COURT | HERE IS THE PROBLEM WE RUN INTO, THE KIND OF THE TIMING, THE COURT IS OF THE OPINION THAT I WILL NOT ALLOW IT, THRE WAS NOTHING TO SUGGEST THAT IN HIS OPENING STATEMENT, IF THE STATE IS OF THE OPINION THAT WE CREATE AN ERROR BY EXCLUDING THIS, I WILL RULE AGAINST IT |
| 10:45:42 AM | DFT | ABOUT THIS MATTER, THE REASON I DID NOT SAY ANYTHING IN MY OPENING STATEMENT |
| 10:46:16 AM | COURT | YOUR ATTORNEY MR. COSBY IS DOING AN EXCELLENT JOB, I HAVE LET YOU TALK, THE PART I AM GOING TO RESTICT THAT WE ARE NOT GOING TO GO INTO THIS AREA |
| 10:47:12 AM | DFT | I DID NOT GET ASKED ABOUT BROKEN WINDOW, THIS IS MY LIFE , I FEEL LIKE I AM NOT HAVING A FAIR TRIAL, IF I DID NOT GET ASKED A QUESTION ABOUT SEXUAL ASSAULT |
| 10:48:28 AM | DFT | I LET MAXINE SWARTZ THAT I WAS SEXUALLY ASSAULTED, ETC |
| 10:49:11 AM | | I TRIED TO EXPLAIN TO DR, FINK , IT IS NOT FAIR I THINK IT IS RELEVENT |
| 10:49:4X AM | COSBY | THERE IS RECORD THAT HE DISCUSSED WITH PSYCOLOGIST OF SEXUAL ASSAULT, THERE IS NO EVIDENCE BEFORE THE HOMICIDE |
| 10:51:54 AM | COURT | WILL GIVE YOU FIVE MINUTES |
| 10:52:21 AM | DFT | WHEN MR. COSBY STATED THAT I WAS MELINGERING , AND PSYCHOLOGIST BELIEVED ME, ABOUT FOSTER CARE I WAS EMBARRASED MY MOTHER KNEW, EXPLAINS WHAT HAPPENED WITH ELADIO |
| 10:54:59 AM | | REGARDING SAM SAIZ HE USED TO GO OVER THERE WHEN HE WAS IN JUNIOR HIGH, ETC. |
| 10:58:18 AM | COURT | I'VE GOT YOUR STORY, AFTER HEARING THE STORY IT IS NOT RELEVENT |

10/10/2013                                                           2 of 5

Exibit 2 page 4

Sam Saiz

CSP or Statutory rape

90's —

△ Lawyer → Cosmo Ripol

DA → BSC

Judge Hensley

DOB: ███████ 58

SS# ████████ 3022

89-CR-10173

96-CR-12536-OLDT 3RD

THE nicker
who Set
Abused me at 15 the
gay guy

Exibit 2                    page 4

UNITED STATES of America,
Plaintiff–Appellee,

v.

Trung Tran NGUYEN, Defendant–
Appellant.

No. 00–10272.

United States Court of Appeals,
Ninth Circuit.

Submitted Dec. 12, 2000 *

Filed Aug. 28, 2001

Defendant was convicted in the Unit-
ed States District Court for the District of
Guam, Harold D. Vietor, J., of three
methamphetamine offenses. Defendant ap-
pealed. The Court of Appeals, Ferguson,
Circuit Judge, held that: (1) denial of con-
tinuance violated defendant's due process
rights, and (2) denial of motion to substi-
tute counsel violated defendant's Sixth
Amendment rights.

Reversed.

1. Criminal Law ⚖1151

The Court of Appeals reviews the de-
nial of a continuance for abuse of discre-
tion.

2. Constitutional Law ⚖268(3)
Criminal Law ⚖590(2), 610

Denial of continuance in prosecution
for narcotics offenses violated defendant's
due process rights; district court denied
continuance at meeting that defendant did
not attend, when private defense attorney
arrived on first day of trial indicating that
he had been contacted by defendant's
family, the continuance was denied with-
out hearing despite defendant's repeated
complaints to the court about his public
defender, and public defender's acknowl-

edgment that the attorney-client commu-
nications had broken down, and trial judge
stated that he did not travel halfway
around the world to continue defendant's
trial. U.S.C.A. Const.Amend. 5.

3. Criminal Law ⚖1166(7)

In the absence of a sufficient sum-
mary on the record, the Court of Appeals
affirms the denial of a continuance only if
the district court displays adequate care
and concern for the defendant's rights.

4. Criminal Law ⚖641.10(2)

Generally, district judges have broad
latitude to deny a motion for substitution
of counsel on the eve of trial when the
request would require a continuance; how-
ever, this discretion must be balanced
against the defendant's Sixth Amendment
right to counsel. U.S.C.A. Const.Amend.
6.

5. Criminal Law ⚖641.12(1)

An unreasoning and arbitrary insis-
tence upon expeditiousness in the face of a
justifiable request for delay violates the
right to the assistance of counsel.
U.S.C.A. Const.Amend. 6.

6. Criminal Law ⚖641.10(2)

A defendant is denied his Sixth
Amendment right to counsel when he is
forced into a trial with the assistance of a
particular lawyer with whom he is dissatis-
fied, with whom he will not cooperate, and
with whom he will not, in any manner
whatsoever, communicate. U.S.C.A.
Const.Amend. 6.

7. Criminal Law ⚖641.12(1)

Even if present counsel is competent,
a serious breakdown in communications
can result in an inadequate defense.
U.S.C.A. Const.Amend. 6.

---

* The panel unanimously finds this case suitable
for decision without oral argument. Fed.

R.App. P. 34(a)(2).

Ineffective
assistance
of counsel
6
SAME

SCHELL v. WITEK
Cite as 218 F.3d 1017 (9th Cir. 2000)

1017

may state a claim cognizable under the
APA that the Secretary of State has
breached her duty, imposed by the FARR
Act, to implement Article 3 of the Torture
Convention. Such a claim, brought in a
petition for habeas corpus, becomes ripe as
soon as the Secretary of State determines
that the fugitive is to be surrendered to
the requesting government.

[18] We may not reach the merits of
Cornejo–Barreto's claim at this time. Ha-
beas corpus review is available only when
no other relief is available.

We therefore AFFIRM the district
court's denial of the petition for habeas
corpus but direct that it should be without
prejudice to the filing of a new petition
should the Secretary of State decide to
surrender Cornejo–Barreto.

KOZINSKI, Circuit Judge, concurring:

I do not join Section III of the opinion,
because the question of whether petitioner
would be entitled to judicial review of an
extradition decision by the Secretary of
State is not before us. I would hold only
that the district court does not have juris-
diction to review petitioner's claim under
the Torture Convention, because the
FARR Act does not authorize judicial en-
forcement of the Convention, see *Sandhu
v. Burke*, No. 97 Civ. 4608, 2000 WL
191707, at *9 (S.D.N.Y. Feb. 10, 2000), and
the Convention is not self-executing under
the four-part test of *Saipan v. United
States Dep't of Interior*, 502 F.2d 90, 97
(9th Cir.1974). *See Barapind v. Reno*, 72
F.Supp.2d 1132, 1148–49 (E.D.Cal.1999);
*see also Sandhu*, 2000 WL 191707, at *10.



Wayne Dale SCHELL, Petitioner–
Appellant,

v.

Larry WITEK, Warden; Bill Lockyer,
Attorney General, State of Califor-
nia,[1] Respondents–Appellees.

No. 97–56197.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 23, 2000

Filed July 11, 2000

Petitioner convicted of burglary filed
pro se petition for writ of habeas corpus.
The United States District Court for the
Central District of California, John G. Da-
vies, J., denied relief. Petitioner appealed.
The Court of Appeals affirmed in part,
reversed in part, and remanded. On en
banc review, the Court of Appeals, Trott,
Circuit Judge, held that: (1) evidence sup-
ported conviction; (2) petitioner did not
waive and abandon his claim that state
court violated his Sixth Amendment right
to counsel by failing to rule on his pretrial
motion requesting substitute counsel; (3)
trial court's failure to inquire into request
for substitute appointed counsel was sub-
ject to review to determine whether error
actually violated petitioner's constitutional
rights, overruling *Bland v. California
Dep't of Corrections*, 20 F.3d 1469; *Cran-
dell v. Bunnell*, 144 F.3d 1213; (4) petition-
er was entitled to evidentiary hearing on
claims of irreconcilable conflict; and (5)
petitioner was entitled to hearing on
claims of ineffective assistance of counsel.

Affirmed in part, reversed in part, and
remanded.

Opinion superseded, 181 F.3d 1094.

1. Bill Lockyer is substituted for his predeces-
sor, Daniel E. Lungren, as Attorney General

for the State of California. Fed. R.App. P.
43(c)(2).

Ineffective assistance of counsel . .
in fact that Mr. Ramirez had a conflict
of interest with his trial attorney
and expressed dissatisfaction in requesting
substitution of counsel and to fire him?

whom he [is] dissatisfied, with whom he [will] not cooperate, and with whom he [will] not, in any manner whatsoever, communicate." *Brown v. Craven,* 424 F.2d 1166, 1169 (9th Cir.1970).

There is no question in this case that there was a complete breakdown in the attorney-client relationship. By the time of trial, the defense attorney had acknowledged to the Court that Nguyen "just won't talk to me anymore." In light of the conflict, Nguyen could not confer with his counsel about trial strategy or additional evidence, or even receive explanations of the proceedings. In essence, he was "left to fend for himself," *United States v. Gonzalez,* 113 F.3d 1026, 1029 (9th Cir.1997), in violation of his Sixth Amendment right to assistance of counsel. Nonetheless, the District Judge ignored the problems between Nguyen and his attorney, commenting that Nguyen's "strike" was not ground for a continuance, explaining to Nguyen that "the Federal Public Defenders provide very good representation to defendants," and remarking that he was "totally comfortable" with the public defender representing Nguyen. The issue in this case is the attorney-client relationship and not the comfort of the court or the competency of the attorney.

Finally, the District Judge commented that any problems with his decision not to grant a continuance for the substitution of counsel could be remedied on appeal by a challenge regarding the effective assistance of counsel. For a judge to maintain that the only solution to an attorney-client conflict is an appeal based on ineffective assistance is destructive of fundamental due process. By incorrectly limiting the defendant's arguments, the suggestion risks undermining the defendant's rights on appeal and on retrial after an appeal. *See Taylor v. Reno,* 164 F.3d 440, 446 (9th Cir.1998) (addressing, but rejecting on the facts, the argument that the judge's com-

ments might violate due process by lulling the defendant out of pursuing a particular challenge).

For these reasons, the District Court abused its discretion in denying a reasonable continuance for a substitute counsel to prepare for trial.

**B.**

[8–10] Under the standards for denying a motion to substitute counsel, the District Court also erred. We review the denial of a motion for substitution of counsel for abuse of discretion. *United States v. Corona-Garcia,* 210 F.3d 973, 976 (9th Cir.2000), *cert. denied,* 531 U.S. 898, 121 S.Ct. 231, 148 L.Ed.2d 165 (2000). In reviewing a denial of substitution of counsel, we consider (1) the timeliness of the motion; (2) the adequacy of the trial court's inquiry; and (3) the extent of conflict created. *Id.*

[11] With regard to timeliness, as mentioned above, the District Judge failed to adequately balance Nguyen's Sixth Amendment rights against any inconvenience and delay from granting the continuance. *Moore,* 159 F.3d at 1160. In fact, the District Judge does not even appear to have considered the length of delay that would have been necessary to substitute a new attorney. The mere fact that the jury pool was ready for selection or even that the jury was ready for trial does not automatically outweigh Nguyen's Sixth Amendment right.

[12] The District Judge also failed to conduct a sufficient inquiry into Nguyen's request. For an inquiry regarding substitution of counsel to be sufficient, the trial court should question the attorney or defendant "privately and in depth," *Moore,* 159 F.3d at 1160, and examine available witnesses, *Gonzalez,* 113 F.3d at 1028. The District Judge did neither here. Al-

dant's right to counsel. U.S.C.A. Const.
Amend. 6.

**7. Criminal Law ⊜641.10(2)**

Before ruling on a motion to substi-
tute counsel due to an irreconcilable con-
flict, a district court must conduct such
necessary inquiry as might ease the defen-
dant's dissatisfaction, distrust, and con-
cern, and the inquiry must also provide a
sufficient basis for reaching an informed
decision.

**8. Criminal Law ⊜641.10(2)**

Before ruling on a motion to substi-
tute counsel due to an irreconcilable con-
flict, the district court may need to eval-
uate the depth of any conflict between
defendant and counsel, the extent of any
breakdown in communication, how much
time may be necessary for a new attor-
ney to prepare, and any delay or incon-
venience that may result from substitu-
tion.

**9. Criminal Law ⊜641.10(2)**

While open-ended questions are not
always inadequate for a district court to
rule on a motion to substitute counsel due
to an irreconcilable conflict, in most cir-
cumstances a court can only ascertain the
extent of a breakdown in communication
by asking specific and targeted questions.

**10. Criminal Law ⊜641.10(2)**

Where defendant's attorney opposed
defendant's motion to substitute counsel,
district court should have stayed proceed-
ings and appointed separate attorney to
advise and represent defendant as to in-
quiries necessary for court to rule on mo-
tion.

**11. Criminal Law ⊜641.10(2)**

The fact that a motion to substitute
counsel was made on the eve of trial alone
is not dispositive of issue of whether mo-
tion was untimely.

———

Phillip A. Trevino, Law Offices of Phillip
A. Trevino, Beverly Hills, California, for
the defendant-appellant.

John S. Gordon and Michael S. Lowe,
Assistant United States Attorneys, Los
Angeles, California, for the plaintiff-appel-
lee.

Appeal from the United States District
Court for the Central District of Califor-
nia; Carlos R. Moreno, District Judge,
Presiding. D.C. No. 98–0790–CRM.

Before: Before: HUG and B.
FLETCHER, Circuit Judges, and
ILLSTON, District Judge.*

ILLSTON, District Judge:

Carlos Adelzo–Gonzalez appeals his con-
viction following a plea of guilty to crimi-
nal charges of hostage taking, transport-
ing illegal aliens, and harboring illegal
aliens. At issue is whether the district
court abused its discretion in denying
Adelzo–Gonzalez's repeated requests for
appointment of substitute counsel. We
conclude that the district court did not
make an adequate inquiry and failed to
recognize the material breakdown in trust
and communication between defendant
and his court-appointed attorney. Despite
clear indications of an irreconcilable con-
flict between defendant and his attorney,
the district court denied Adelzo–Gonzalez's
requests for a new attorney on three occa-

———

* The Honorable Susan Illston, United States
District Judge for the Northern District of

California, sitting by designation.

counsel's loyalty to his own interests rather than those of his client adversely affected his performance in terms of appearance before the jury as well as his tactical conduct of the case.

[21] Second, in *Cronic,* 104 S.Ct. at 2047, the Court has reaffirmed that no specific showing of prejudice is required when an accused is deprived of his sixth amendment right to effective cross-examination. *Davis v. Alaska,* 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974). Prejudice need not be shown since denial of such a right is of such magnitude that "no amount of showing of want of prejudice would cure it." *Smith v. Illinois,* 390 U.S. 129, 131, 88 S.Ct. 748, 749, 19 L.Ed.2d 956 (1968) (quoting *Brookhart v. Janis,* 384 U.S. 1, 3, 86 S.Ct. 1245, 1246, 16 L.Ed.2d 314 (1966)). If prejudice is presumed when a trial judge denies a defendant the right of cross-examination, reason dictates that such presumption be of equal force when a trial judge unreasonably refuses a defendant's request to remove counsel who flatly refuses to cross-examine a witness because of his running feud with the judge.[20] Therefore, even if a showing of prejudice were a prerequisite to reversal, the conflict of interest between counsel and client along with counsel's flat refusal to cross-examine a witness require a presumption of prejudice in this case.

### III.

We establish no novel right or theory of constitutional law, but rely on tried and true principles as old as the document we expound. The Court has recognized that "Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation...." *Morrison,* 449 U.S. at 364, 101 S.Ct. at 667. The accused has demonstrated that his right to choose the counsel to present his defense was unconstitutionally abridged. There-

fore, having concluded that the trial court's decision was arbitrary and unreasonable, we hold that appropriate respect for Wilson's right of choice can be accorded only by directing the district court to grant the writ.

Accordingly, the judgment of the district court is REVERSED and the case is REMANDED to the district court with instructions to grant the writ of habeas corpus.

ENGEL, Circuit Judge, dissenting.

I respectfully dissent.

In our original opinion we stated "the issue presented is whether the petitioner was deprived of effective assistance of counsel when the trial judge denied petitioner's repeated requests for substitute counsel." *Wilson v. Mintzes,* 733 F.2d 424, 425 (6th Cir.1984). When the Supreme Court vacated that judgment and remanded for our consideration in light of *Strickland v. Washington,* — U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the majority shifted ground away from the effective assistance issue and moved toward the Sixth Amendment denial of an accused's right to counsel of his choice. The majority now asserts that "Wilson has not claimed that, and the parties have not argued whether, counsel was constitutionally ineffective. The [state] trial judge, however, apparently believed that counsel's competency was implicated." Actually, the issue as presented to the Michigan Court of Appeals was whether the trial court erred in "not granting a mistrial or holding a full hearing on the competency issue." The same issue was stated in Wilson's petition filed in the district court as "whether the trial court erred in failing to hold a full evidentiary hearing on the matter of competency of defense counsel." Wilson's brief to this court reflects a similar shift in emphasis from that in the state court and in his habeas petition in the district court:

---

20. While deprivation of his sixth amendment right to effective cross-examination may entitle an accused to a presumption of prejudice, an accused must establish an abuse of discretion

under the standards set out in Part I B above to be entitled to reversal based on denial of his motion for substitution of counsel.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert D'AMORE, Defendant-Appellant.

No. 94–10091.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 16, 1995.

Decided June 12, 1995.

Government sought to revoke defendant's probation. The United States District Court for the District of Nevada, Lloyd D. George, Chief Judge, denied defendant's motion to substitute private for appointed counsel and revoked probation. Defendant appealed. The Court of Appeals, William A. Norris, Circuit Judge, held that: (1) district court made inadequate inquiry before denying defendant's motion to substitute counsel; (2) evidence showed substantial breakdown of communications between defendant and appointed counsel; and (3) denial of motion was not warranted on grounds of untimeliness.

Reversed and remanded; order of revocation vacated.

**1. Criminal Law ☞1152(1)**

District court's denial of motion to substitute counsel is reviewed for abuse of discretion; such discretion must be exercised, however, within limitations of Sixth Amendment, which grants criminal defendants qualified constitutional right to hire counsel of their choice. U.S.C.A. Const.Amend. 6.

**2. Criminal Law ☞641.10(1)**

Criminal defendants' constitutional right to hire counsel of their choice is qualified in that right may be abridged to serve some compelling purpose; such compelling purpose may be found when granting motion would lead to delay in proceedings and government's interest in prompt and efficient administration of justice outweighs defendant's need for new counsel to adequately defend himself. U.S.C.A. Const.Amend. 6.

**3. Criminal Law ☞641.5(.5), 641.10(1)**

Court may override defendant's choice of counsel in order to maintain integrity of judicial system by prohibiting representations that involve conflict of interest or ethically unfit lawyer. U.S.C.A. Const.Amend. 6.

**4. Criminal Law ☞641.10(2), 1166.10(1)**

Absent compelling purpose, it is violation of Sixth Amendment to deny motion to substitute counsel and is error that must be reversed, regardless of whether prejudice results. U.S.C.A. Const.Amend. 6.

**5. Criminal Law ☞641.10(2)**

When substitution of defense counsel does not threaten any delay in proceedings, there is no reason to deny substitution whether or not defendant has complaints against, or irrevocable conflict with, appointed counsel. U.S.C.A. Const.Amend. 6.

**6. Criminal Law ☞641.10(2)**

When granting motion for substitution of defense counsel would require continuance, court must weigh defendant's Sixth Amendment interest against any delay or inconvenience caused by request for substitution, even when request is made at last minute. U.S.C.A. Const.Amend. 6.

**7. Criminal Law ☞1134(3)**

In reviewing district court's denial of late motion to substitute private for appointed counsel, Court of Appeals focuses on considerations of adequacy of district court's inquiry, extent of conflict between defendant and counsel, and timeliness of motion and extent of any inconvenience or delay that would result from granting motion. U.S.C.A. Const.Amend. 6.

**8. Criminal Law ☞641.10(2)**

Before district court can engage in measured exercise of discretion, upon defendant's motion to substitute private for appointed counsel, court must conduct inquiry adequate to create sufficient basis for reaching informed decision. U.S.C.A. Const.Amend. 6.

**9. Criminal Law ☞641.10(2)**

District court conducted unsatisfactory inquiry prior to denial of defendant's motion

INEFFECTIVE
2nd STANDBY
COUNSEL

tion was not adequately proven, we need not consider the applicability of California strict liability law.

AFFIRMED.



UNITED STATES of America,
Plaintiff–Appellee,

v.

Carlos ADELZO–GONZALEZ,
Defendant–Appellant.

No. 99–50152.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 5, 2001

Filed Sept. 26, 2001

Defendant plead guilty in the United States District Court for the Central District of California, Carlos R. Moreno, J., to hostage taking, transporting illegal aliens, and harboring illegal aliens and was sentenced to 63 months of imprisonment. Defendant appealed. The Circuit Court, Illston, District Judge, sitting by designation, held that the district court abused its discretion in denying defendant's motions for substitution of counsel.

Reversed, vacated, and remanded.

1. Criminal Law ⟺1134(3)

Claim of ineffective assistance of counsel is generally inappropriate on direct appeal. U.S.C.A. Const.Amend. 6.

2. Criminal Law ⟺1134(3)

There are two exceptions to general rule against raising ineffective assistance of counsel claims on direct appeal: (1) when the record on appeal is sufficiently developed to permit review and determination of the issue; and (2) when the representation is so inadequate that it obviously denies a defendant his Sixth Amendment right to counsel. U.S.C.A. Const.Amend. 6.

3. Criminal Law ⟺1134(3)

Where defendant raised arguments that district court erred each time it denied his motions for appointment for substitute counsel and deprived him of his Sixth Amendment right to counsel as two separate grounds for appeal, Court of Appeals would treat arguments as interrelated and review only decision to deny substitute counsel. U.S.C.A. Const.Amend. 6.

4. Criminal Law ⟺1152(1)

Court of Appeals reviews a district court's denial of a motion for substitution of counsel for abuse of discretion.

5. Criminal Law ⟺1158(1)

District court's factual findings are reviewed on appeal under the clearly erroneous standard.

6. Criminal Law ⟺641.10(2)

District court abused its discretion in denying defendant's motions to substitute counsel; court's open-ended questions were inadequate to probe into nature of attorney-client relationship after defendant explained his attorney used bad language and threatened to "sink him for 105 years so that he wouldn't be able to see his wife and children," extent of conflict interfered with attorney's ability to provide representation as shown by his calling defendant a liar and defendant stating he would rather represent himself, and any delay in substituting counsel was outweighed by defen-

to hold a second hearing, "fairminded jurists" could conclude that the trial judge's inquiry was still adequate and that the extent of the conflict did not mandate the substitution of counsel. *Harrington v. Richter*, ——U.S. ——, ——, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)) (internal quotation marks omitted).

31      Petitioner does not assert that his reasons for requesting a second hearing for substitute counsel differed in any respect from the complaints he made during the prior *Marsden* hearing. (See Pet. 10, 50–51.)

 **\*24** Furthermore, "fairminded jurists" could also conclude that the trial judge's observations did not require him to "delve deeper into the nature of [Petitioner's] relationship with the appointed counsel." *United States v. Adelzo–Gonzalez*, 268 F.3d 772, 778 (9th Cir.2001). Although Petitioner expressed dissatisfaction with counsel's performance while he was on the stand, (see Lodgment 24, at 246–47, 275–79), "there were [no] clear indications of serious discord and friction between [Petitioner] and his attorney ." *Adelzo Gonzalez*, 268 F.3d at 778 (emphasis added). Petitioner's disapproval of his attorney's conduct pales in comparison to the threats, foul language, and insults on the part of counsel in *Adelzo–Gonzalez. See id.* at 774–76, 778–80 (holding that trial judge needed to inquire further into defendant's allegations concerning irreconcilable conflict.) Furthermore, "[t]he fact that [P]etitioner testified at his trial is evidence that the lines of communication between [him] and [counsel] were open[,]" *Shepard v. Chavez*, No. 10–3249, 2012 WL 4038446, at \*29 (E.D.Cal. Sept.12, 2012), especially given Petitioner's acknowledgement that counsel had informed him beforehand that taking the stand would be unwise. (See Lodgment 24, at 211–12.) Thus, it was not unreasonable to conclude that the trial judge's observations, along with Petitioner's complaints during the first *Marsden* hearing, provided a "sufficient basis" to make an informed decision that Petitioner and counsel did not have an irreconcilable conflict. *See Smith*, 282 F.3d at 764 (quoting *McClendon*, 782 F.2d at 789).

Additionally, "fairminded jurists" could easily conclude that Petitioner's request, which was made after the close of evidence, was untimely. *See United States v. Carter*, 560 F.3d 1107, 1113 (9th Cir.2009). Therefore, AEDPA's

deferential standard of review bars habeas relief on Ground Fifteen.

### 3. Petitioner's Other Claims of Ineffective Assistance of Counsel

Ground Sixteen alleges that trial counsel was ineffective because he "concealed evidence, refused to investigate evidence, refused to present expert witnesses, allowed the prosecutor to deceive the court and jury and refused to act as ... [d]efense [c]ounsel as defined in the relevant [G]rounds 1–15 of this [P]etition." (Pet.10, 52.) Petitioner also asserts that defense counsel's closing argument was constitutionally deficient. (*See id.* 52–53.) The Superior Court rejected Ground Sixteen, reasoning that:

> In order to establish ineffective assistance of counsel based on failure to 'call additional witnesses' or 'present additional evidence[,]'[ ] [P]etitioner must show that his counsel's representation was so deficient that it resulted in a total breakdown of the adversarial process and not just trial tactics. Further[,] [Petitioner must show] that the additional evidence or witnesses would have yielded a more favorable result. The [P]etitioner's writ fails to allege facts or present evidence establishing a prima facie case of habeas relief.

 **\*25** (*Id.* at 3, 5.) As the following analysis demonstrates, the Superior Court's holding was neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. [32]

32      Grounds One through Twelve each include specific allegations concerning trial counsel's purported deficient performance. (*See* Pet. 17–18, 20, 22, 24–25, 27–28, 30, 32, 34, 36, 38, 40–41, 43–44.) The Court considers some of these allegations in the context of the deficient performance analysis, whereas others are addressed in the prejudice discussion. Moreover, defense counsel's closing argument is analyzed in the deficient performance section.

    Apart from the allegations in Grounds One through Twelve and the assertion that defense

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

mine who was telling the truth, and the trial court gave the proper instruction on how to view expert opinion testimony.

During its case in chief, Dr. Roll again testified for the State. He stated that he interviewed the complainant and conducted a series of psychological tests. Dr. Roll concluded that the complainant suffered from PTSD "consistent with chronic sexual abuse." In addition to repeating several statements by the complainant concerning her fear of her stepfather and her statements regarding sexual abuse by him, Dr. Roll also specifically stated that the complainant's symptoms were consistent with sexual abuse by her stepfather, the defendant Marquez. He found that the complainant suffered from several stressors, but he stated that sexual trauma was the most severe stressor or cause of her symptoms.

Dr. Roll stated that it was not the function of the examining psychologist to determine if an alleged victim was telling the truth, but he testified that it was virtually impossible for the complainant to be faking her symptoms. Dr. Roll also stated that psychologists do not check for external inconsistencies; that is, they do not reference extrinsic sources to determine whether the complainant is lying. Rather, he testified, they check for internal consistencies; that is, whether the complainant's story is plausible or whether it is inherently inconsistent.

Dr. Lenssen also testified for the State at trial and concluded from her evaluation that the complainant suffered from PTSD. She stated that although several stressors may be present, the cause could be traced, and she believed that the complainant's symptoms could be traced to sexual abuse. Unlike Dr. Roll, she did not directly inculpate Marquez. She did recount, however, some of the complainant's statements regarding sexual abuse by her stepfather.

Dr. Lenssen also testified that in her opinion, the complainant was not fabricating her story. As in *Alberico*, however, she testified that the PTSD diagnosis is not a credibility assessment and that it makes a difference whether the complainant is tell-

ing the truth. The qualifications of both Dr. Roll and Dr. Lenssen were not challenged.

Dr. Siegel, also a clinical psychologist, testified for the defense at trial. While he did not contest the other expert witnesses' diagnoses that the complainant exhibited PTSD symptoms, he stated that the complainant suffered from several stressors, all of which cumulatively could have caused PTSD. He also testified that a PTSD diagnosis depends in large part upon what the complainant is saying and whether she is telling the truth. In addition, Dr. Siegel stated that DSM III-R contains a cautionary note about its use in a forensic setting.

### III.  ISSUES

#### A.  *Arguments for the Defense*

On appeal, both defendants make similar arguments against the admission of PTSD testimony. They claim that the State failed to lay the proper scientific foundation for its admission, arguing that PTSD evidence is not generally accepted as a reliable means for determining whether sexual abuse has occurred. Both defendants advocate the continued use of the *Frye* test as a predicate for the admission of expert opinion testimony.

The defendants also argue that PTSD evidence is not relevant because the experts' testimony went beyond the scope of what their expertise allows. They concede that PTSD testimony may be admitted if its purpose is to explain the victim's delayed reporting of the incident or her initial denial or subsequent recantation of the incident. They maintain, however, that an expert may not testify that an alleged victim's symptoms of PTSD are consistent with those exhibited by someone who has been sexually abused because such testimony lacks an objective scientific foundation. They assert that PTSD evidence regarding causation was improper because PTSD was not intended to be used as a forensic tool in a court of law. In addition, the defendants claim that such testimony amounts to improper evidence regarding the complain-

**276**    **781 FEDERAL REPORTER, 2d SERIES**

tunity to secure counsel of his own choice. U.S.C.A. Const.Amend. 6.

**3. Criminal Law ⟺641.10(1)**

When a court unreasonably denies defendant counsel of choice, denial can rise to level of a constitutional violation. U.S.C.A. Const.Amend. 6.

**4. Constitutional Law ⟺268.1(5)**

Denial of an accused's right to counsel of his choice may so offend concept of the basic requirements of a fair hearing as to amount to a denial of due process of law. U.S.C.A. Const.Amends. 5, 6, 14.

**5. Criminal Law ⟺641.10(1)**

When an accused is financially able to obtain an attorney, choice of counsel to assist him rests ultimately in his hands and not in the hands of the state. U.S.C.A. Const.Amend. 6.

**6. Criminal Law ⟺641.10(1)**

While an accused's right to choose counsel to assist him at trial is an essential component of the Sixth Amendment right to assistance of counsel, such right is not absolute. U.S.C.A. Const.Amend. 6.

**7. Criminal Law ⟺641.10(2)**

When an accused seeks substitution of counsel in midtrial, he must show good cause such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with his attorney in order to warrant substitution. U.S.C.A. Const.Amend. 6.

**8. Criminal Law ⟺641.10(2)**

Consideration of motions to substitute counsel in midtrial requires a balancing of accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice. U.S.C.A. Const.Amend. 6.

**9. Criminal Law ⟺641.10(1)**

A trial court, acting in the name of calendar control, cannot arbitrarily and unreasonably interfere with a client's right to be represented by the attorney he has selected. U.S.C.A. Const.Amend. 6.

**10. Criminal Law ⟺593**

Whether a continuance is appropriate in a particular case depends on the facts and circumstances of that case, with the trial judge considering the length of delay, previous continuances, inconvenience to litigants, witnesses, counsel and the court, whether delay is purposeful or is caused by the accused, the availability of other competent counsel, the complexity of the case, and whether denying continuance will lead to identifiable prejudice.

**11. Criminal Law ⟺1166.11(5)**

Evidence of unreasonable or arbitrary interference with an accused's right to counsel of his choice ordinarily mandates reversal without a showing of prejudice. U.S.C.A. Const.Amend. 6.

**12. Criminal Law ⟺586, 641.10(2)**

Motions for continuance and order to substitute counsel are directed to sound discretion of trial judge and will be reversed only for an abuse of discretion.

**13. Criminal Law ⟺641.10(2)**

Trial judge, after questioning competence of petitioner's counsel and provoking counsel into acts inconsistent with his duty of loyalty to his client, acted unreasonably in failing to heed petitioner's expression of dissatisfaction. U.S.C.A. Const.Amend. 6.

**14. Criminal Law ⟺641.13(1)**

In order to obtain relief for ineffective assistance of counsel, an accused must show first that counsel's representation fell below an objective standard of reasonableness, and that counsel's performance prejudiced accused's defense.

**15. Criminal Law ⟺641.5, 641.13(1)**

In assessing prejudice arising from alleged ineffective representation, question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt; however, when counsel labors under a conflict of interest, prejudice may be presumed.

whom he [is] dissatisfied, with whom he [will] not cooperate, and with whom he [will] not, in any manner whatsoever, communicate." *Brown v. Craven,* 424 F.2d 1166, 1169 (9th Cir.1970).

There is no question in this case that there was a complete breakdown in the attorney-client relationship. By the time of trial, the defense attorney had acknowledged to the Court that Nguyen "just won't talk to me anymore." In light of the conflict, Nguyen could not confer with his counsel about trial strategy or additional evidence, or even receive explanations of the proceedings. In essence, he was "left to fend for himself," *United States v. Gonzalez,* 113 F.3d 1026, 1029 (9th Cir.1997), in violation of his Sixth Amendment right to assistance of counsel. Nonetheless, the District Judge ignored the problems between Nguyen and his attorney, commenting that Nguyen's "strike" was not ground for a continuance, explaining to Nguyen that "the Federal Public Defenders provide very good representation to defendants," and remarking that he was "totally comfortable" with the public defender representing Nguyen. The issue in this case is the attorney-client relationship and not the comfort of the court or the competency of the attorney.

Finally, the District Judge commented that any problems with his decision not to grant a continuance for the substitution of counsel could be remedied on appeal by a challenge regarding the effective assistance of counsel. For a judge to maintain that the only solution to an attorney-client conflict is an appeal based on ineffective assistance is destructive of fundamental due process. By incorrectly limiting the defendant's arguments, the suggestion risks undermining the defendant's rights on appeal and on retrial after an appeal. *See Taylor v. Reno,* 164 F.3d 440, 446 (9th Cir.1998) (addressing, but rejecting on the facts, the argument that the judge's com-

ments might violate due process by lulling the defendant out of pursuing a particular challenge).

For these reasons, the District Court abused its discretion in denying a reasonable continuance for a substitute counsel to prepare for trial.

### B.

[8–10] Under the standards for denying a motion to substitute counsel, the District Court also erred. We review the denial of a motion for substitution of counsel for abuse of discretion. *United States v. Corona-Garcia,* 210 F.3d 973, 976 (9th Cir.2000), *cert. denied,* 531 U.S. 898, 121 S.Ct. 231, 148 L.Ed.2d 165 (2000). In reviewing a denial of substitution of counsel, we consider (1) the timeliness of the motion; (2) the adequacy of the trial court's inquiry; and (3) the extent of conflict created. *Id.*

[11] With regard to timeliness, as mentioned above, the District Judge failed to adequately balance Nguyen's Sixth Amendment rights against any inconvenience and delay from granting the continuance. *Moore,* 159 F.3d at 1160. In fact, the District Judge does not even appear to have considered the length of delay that would have been necessary to substitute a new attorney. The mere fact that the jury pool was ready for selection or even that the jury was ready for trial does not automatically outweigh Nguyen's Sixth Amendment right.

[12] The District Judge also failed to conduct a sufficient inquiry into Nguyen's request. For an inquiry regarding substitution of counsel to be sufficient, the trial court should question the attorney or defendant "privately and in depth," *Moore,* 159 F.3d at 1160, and examine available witnesses, *Gonzalez,* 113 F.3d at 1028. The District Judge did neither here. Al-

District court abused its disteretion In denying mr. ramirez an Inquiry into his Dissatisfaction of his Counsel and motions; reaust to Fire his Attorney

1

WILSON v. MINTZES

Cite as 761 F.2d 275 (1985)

**16. Criminal Law ⟜641.13(8)**

The two-prong performance prejudice *Strickland* test for determining effectiveness of counsel is not applicable to cases involving choice of counsel.

**17. Criminal Law ⟜641.13(8)**

Although there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt, such errors are cognizable without any showing of effect on the outcome of the proceeding when the right asserted is entitled to constitutional protection apart from objective fairness proceeding; therefore, the prejudice prong of *Strickland* has no applicability to counsel of choice cases since, unlike the right to counsel of choice, the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. U.S.C.A. Const.Amend. 6.

**18. Criminal Law ⟜593, 641.10(2)**

Prejudice to accused is but one factor to be considered by trial judge, and a continuance or substitution of counsel may properly be granted in absence of prejudice and may properly be denied despite its presence.

**19. Criminal Law ⟜641.10(1)**

Accused who has been improperly deprived of counsel of his choice need not show prejudice resulting from trial court's denial thereof in order to be entitled to relief. U.S.C.A. Const.Amend. 6.

**20. Criminal Law ⟜1163(2)**

Prejudice is presumed only if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance.

**21. Criminal Law ⟜1163(2)**

Even if a showing of prejudice were a prerequisite to reversal for denial of re-

1. *Mintzes v. Wilson*, — U.S. —, 105 S.Ct. 317, 83 L.Ed.2d 255 (1984).

quest for substitution of counsel, the conflict of interest between counsel and petitioner along with counsel's flat refusal to cross-examine a witness required a presumption of prejudice.

John R. Minock (court-appointed), Detroit, Mich., for petitioner-appellant.

Frank J. Kelley, Atty. Gen. of Michigan, J. Peter Lark, Lansing, Mich., for respondent-appellee.

Before ENGEL, MARTIN and CONTIE, Circuit Judges.

CONTIE, Circuit Judge.

On May 4, 1984, we reversed the district court's denial of petitioner Roy Wilson's petition for a writ of habeas corpus and remanded to the district court with instructions that the writ be granted. *Wilson v. Mintzes*, 733 F.2d 424 (6th Cir.1984). The Supreme Court of the United States granted respondent Mintzes' petition for a writ of certiorari, vacated our judgment and remanded the case for consideration in light of *Strickland v. Washington*, 466 U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[1] For the reasons that follow, we reaffirm our earlier judgment.

**I.**

Petitioner Wilson contended in seeking a writ of habeas corpus that the trial judge's failure to grant a continuance to allow him to retain substitute counsel when he expressed dissatisfaction with the conduct of his counsel at trial deprived him of his sixth amendment right to counsel. We found that counsel's conduct at trial constituted good cause to warrant substitution of counsel and that Wilson was prejudiced by counsel's attempt to remove himself from the case in front of the jury and by his refusal to cross-examine the officer in charge of the investigation.[2]

2. For a statement of the facts and procedural history of the case, see our earlier opinion at 733 F.2d 424.

unwanted counsel, "'represents' the defendant only through a tenuous and unacceptable legal fiction." *Faretta v. California,* 422 U.S. 806, 821 [95 S.Ct. 2525, 2534, 45 L.Ed.2d 562] (1975). In fact, an attorney who is burdened by a conflict between his client's interests and his own sympathies to the prosecution's position is considerably worse than an attorney with loyalty to other defendants, because the interests of the state and the defendant are necessarily in opposition.

*Id.* at 1075 (quoting *Osborn,* 861 F.2d at 629); *see also Cuyler v. Sullivan,* 446 U.S. 335, 349–50, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333 (1980) ("[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief."); *Holloway v. Arkansas,* 435 U.S. 475, 490–91, 98 S.Ct. 1173, 1181–82, 55 L.Ed.2d 426 (1978).

Nevertheless, the Supreme Court in fleshing out the contours of the Sixth Amendment right to counsel has held that it does not guarantee "a right to counsel with whom the accused has a 'meaningful attorney-client relationship.'" *Morris v. Slappy,* 461 U.S. 1, 3–4, 103 S.Ct. 1610, 1612–13, 75 L.Ed.2d 610 (1983); *see id.* at 13–14, 103 S.Ct. at 1617–18. To understand the dimensions of this limitation, one must look at the facts of that case.[2]

In *Morris,* an indigent defendant had a unilateral falling out with his attorney caused not by any identifiable objective misconduct by the attorney, but by (1) Morris's dissatisfaction with a switch from one public defender to another, (2) Morris's opinion that the new public defender had not had enough time to prepare for trial, and (3) by the second public defender's assessment that Morris had no "defense to [the] charges." *See* 461 U.S. at 8, 103 S.Ct. at 1614. Because of this unilateral falling out, Morris refused to participate in his own defense. In affirming the denial by the district court of Morris's petition for a writ of habeas corpus, the Court rejected Morris's claim that a defen-

dant has the right to a certain "rapport" with his attorney. *Id.; see United States v. Schaff,* 948 F.2d 501, 505 (9th Cir.1991).

[6]   Moreover, an indigent defendant does not have the right to "'an attorney he cannot afford.'" *Caplin & Drysdale v. United States,* 491 U.S. 617, 624, 109 S.Ct. 2646, 2651, 105 L.Ed.2d 528 (1989) (quoting *Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988)).

### III

### A.

[7]   If the Sixth Amendment itself protects an accused from a lawyer with a traditional conflict of interest, and from a lawyer who is asleep, completely disinterested, or so unprepared that his appearance is merely pro forma, surely it must protect the indigent from an appointed lawyer who calls him to his face a "stupid nigger son of a bitch" and who threatens to provide substandard performance for him if he chooses to exercise his right to go to trial. An indigent defendant may not be entitled to a meaningful relationship as described in *Morris,* but a verbal assault manifesting explicit racial prejudice and threatening to compromise the client's rights far exceeds and transcends the facts and holding in that case. In our judgment, such a verbal assault is irreconcilable with (1) the duty of loyalty owed a client by his attorney, (2) the responsibility of providing meaningful assistance, and (3) the role of "guiding hand" described in *Powell* by Justice Sutherland. *All* advice, assistance, and guidance provided after such an outburst would be fatally suspect, as would the "willingness" of a defendant to follow the attorney's lead. Such a disrespectful and inappropriate eruption would signal and be tantamount to (unless somehow cured) a "total lack of communication" far exceeding the parameters of any duty on the part of counsel to deliver to his client a "pessimistic prognosis" of his legal position. *United*

---

2.   In his opening brief Mr. Frazer's counsel relied heavily on our opinion in *Slappy v. Morris,* 649 F.2d 718 (9th Cir.1981) without bringing to our attention that we were explicitly overruled by the Supreme Court on the point for which he cited it.

Not until the government cited the Supreme Court's overruling opinion did counsel acknowledge the subsequent history of this case. Counsel's use of precedent in this fashion is most disconcerting.

New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1     my defense but like I said in the past, I've asked to fire him, I've asked to get a new attorney

2     which I can't, I can't afford it I'm poor, I have no help from my family just basically to get my

3     hygiene and that's it and-and also I, um, I asked for a new attorney, I asked for a private

4     investigator, I asked for a neurologist evaluation, I asked for another competency evaluation, I

5     asked for several motions which I don't know if they were, they were even filed or if they were

6     denied, I've asked, uh, I don't know if Mr. Cosby I just feel like maybe I-I have a big mouth and

7     I sit to-to open my big mouth and say things and I don't know if I made him angry or upset or

8     frustrated or what I've done but for some reason I don't know if he's gonna lose this case

9     because it's a weak case or if it's intentionally or accidental or I'm just paranoid or ...

10  DT:  Mr. Ramirez.

11  AR:  ... but-but something Your Honor for that ...

12  DT:  The issues that you wanted to be on the record you've listed them and I think you've listed them

13     well, uh, thank you for all the truth of the situations that-that you face, uh, and-and-and it's tough

14     to understand everything even if you're in the system, but I think that you've made a record ...

15  AR:  Sorry Your Honor.

16  DT:  ... and the Appellate Court will see that record and-and therefore that's-that's what you needed to

17     do and that's what you've done.

18  AR:  Okay. Thank you Your Honor I had more, uh, uh, things to say but thank you for that time I'll-

19     I'll just say them on my appeals, I had more things that I wanted to say but thank you.

20  DT:  Okay thank you sir. Alright (9:25:58)

21

22

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript



1    say and you're saying some more stuff right now that is on the record. The part that I'm gonna

2    restrict is that you're not gonna go into this area at this juncture in this trial.

3    AR:    It's-it's, uh, relevant to the case and also I didn't get asked about how, about my schooling, like I

4    thought it was maybe it was important to the Jury about how I was doing in school and before

5    how this led up to it and I didn't get asked about why I broke the window to my mom's

6    boyfriend's car, what happened that day, who was there, I didn't get asked, um, several things …

7    DT:    See those are not relevant to the issue that we are here about.

8    AR:    How come they've used it in court? He brought it up. The prosecution said I broke a window

9    but it's not relevant? It's relevant if the prosecution used it but I can't explain why it's relevant

10   Your Honor and you all a very educated man and I'm a nobody and I'm real low, uh, low IQ but

11   I guess in my life and I feel like I'm not having a fair trial because if-if I would have known that

12   I didn't have to get asked a question about me being sexually assaulted by my neighbor and

13   (inaudible) I would have just said it myself but I just had respect for the courts and for you for

14   Matthew telling everybody I wasn't gonna just throw it out there like that.

15   DT:    You're-you're …

16   AR:    But I don't feel it's fair.

17   DT:    You have, you've explained this issue and you've been through psychological evaluations and

18   we've had two for sure …

19   AR:    Okay.

20   DT:    … did you explain that to them?

21   AR:    Yes. Yes sir. Another thing, thank you for letting me speak, I greatly appreciate it and God

22   bless you all. I've let Maxine Schwartz know that I was sexually assaulted. It's on record, she

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript



1      knows. I've told her what happened by my neighbor, by my mom's boyfriend, I told Maxine

2      Schwartz that's why I was hurt that I didn't get to have that as my defense today and also ...

3 DT:   And who is Maxine Schwartz.

4 JC:   She's the one, uh, the original determination wasn't competent.

5 AR:   And also ...

6 JC:   Psychologist.

7 AR:   ... Dr. Burness I'm not gonna say whether she asked me or not but like I said I was assaulted over

8      there and battered and they sent me back and found me competent which isn't, wasn't good, was

9      not prop-professional and also Dr. Fink I tried to explain this to Dr. Fink that I was sexually

10      assaulted and-and Dr. Fink stated well that doesn't have anything to do with your case. He said

11      your murdered somebody and that doesn't have nothing to do with your case and he said also he

12      said even if you were incompetent my job as working for the State of New Mexico is to find you

13      competent and whether you get to the hospital or not they're still gonna find you competent

14      because that's the job the State of New Mexico has and I said well I explained everything and I

15      was, I' not get, I'm not, it's not fair and I think it's relevant.

16 JC:   Okay there is ...

17 AR:   If your child was ever assaulted would you want ...

18 JC:   Can-can we finish please? Go ahead but there is record that you discussed with psychologists

19      something about being sexually assaulted in the report and I hesitate to have to do this but in the

20      report the psychologist says that he's malingering and fabricating and that the allegations of

21      sexual abuse is I believe that her term, highly suspect. So it was brought up, it was discussed, it

22      was not, um, commented much upon except when the report that the person said because of his

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript



1   JC:   Well you're-you're getting your chance sir now.

2   AR:   I would like to speak.

3   JC:   You are.  You're, just a second ...

4   DT:   Well I'll give you 5 minutes to tell the story.

5   AR:   I don't want him.  I don't, huh?

6   DT:   I'm gonna give you 5 minutes to tell this story.

7   AR:   Tell what story?

8   JC:   About your sexual problems ...

9   DT:   That your sexual ...

10  AR:   Okay.  I got 5 minutes.

11  JC:   Sit back, sit back.

12  AR:   I'm not acting up.  Okay ...

13  DT:   Sit, sit for it.

14  AR:   I'm not, there ain't nobody, I'm peaceful like everybody else.

15  DT:   They're just doing their job and you're, and you're gonna make a statement, I'm gonna give you

16        5 minutes and you need to understand that this is the statement ...

17  AR:   Yes sir.

18  DT:   ... that will go on the record.

19  AR:   Yes sir.

20  DT:   Because the court is of the opinion that it's an inappropriate thing to bring before the jury and
        I'm not gonna let you do it.

21

22  AR:   Okay.

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1    DT:    It is highly suspect for sure in my opinion.

2    AR:    I, uh ...

3    DT:    And (inaudible) against you're done so say what you want to say.

4    AR:    Okay. Mr. Cosby stated that supposedly a psychologist/psychiatrist stated that I was malingering

5           or they didn't believe me which in my opinion when he said that, which it went against me and

6           on the record, okay if there's a psychiatrist/psychologist, Maxine Schwartz which I told and she

7           believed me, um, that would be relevant and that would help my case which would make it

8           allegedly true and what he said about somebody saying that I was malingering makes me look

9           bad but why would he say that Dr. Maxine Schwartz believed me when I told her about the

10          sexual abuse and it makes me right.  And also about foster care okay I never told nobody, I was

11          embarrassed.  The only person I told was my mother and about this I was about, when

12          (inaudible) done this to me he would give me beers so I started drinking with him and then later

13          on I drunk a lot of beers with him, and, um, I was 16 it was the summer time and, uh, he, uh,

14          tried to kiss me and I told him no and, uh, he got in my face and he threatened to-to punch me, he

15          threatened to hit me and I-I didn't want to get hit, I was scared.  So I said okay.  Then, uh, he

16          forced me to give him oral sex which I did, which only lasted maybe 2 to 3 minutes at the most

17          and then it was done, it was right in the living room, I was sitting on the couch, he was standing

18          in right in front of me and I did it and he told me not to say nothing but I told my mom and my

19          mom asked him, he denied it.  Well then later om about a month later he-he did it again and I

20          told my mom and she said, uh, she was gonna call the cops and-and, um, they got in an argument

21          and I guess he unplugged the phone and they were talking and then my mom sent me to my room

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1      and then nothing ever happened. My mom just said I talked to him, I talked to him and-and that

2      was it.

3   DT:   (inaudible)

4   AR:   And-and-and she told me that she said that she told him that if I ever said anything about him

5      hitting me or any sexual abuse that she was gonna press charges and that I was gonna give, I was

6      gonna have to tell the police and stuff, well not about that, well about Sam Size. I used to go

7      over there because he used to call me over there and when I was between junior high I used to go

8      over there and I always used to like to drink and smoke weed so in order to get beer, I would go

9      to him and I just went over there and I would drink and, um, I would get a beer or two and he'd

10     give me a beer or two and he tried to, he tried to get with me. He just asked for a hug and then

11     he grabbed my, I can't remember if he grabbed my penis and my butt or both and he tried to put

12     his lips on mine, I told him no back up, you know, and I-I ran away with the, with the beer and

13     then I-I ended up going back one more time and, um, I needed some more beers cause I was with

14     my friends and it was Sunday, I don't remember the date, it was summer time, I was 16, he gave

15     me, I went and I said hey man I-I need some beers and, um, I don't remember exactly what was

16     said but I know he gave me like 7 to 8 beers and he tried the same thing on me and he touched up

17     on me and that's assault, he grabbed my penis and my butt and everything and he always tried to

18     invite me over there but I was scared of him. The reason I was scared of Sam Size to go over

19     there was because he told me when I was a little kid, do not, he told me he said, um, cause I used

20     to hang out at the other neighbor's house and he used to just give me beer free, he wouldn't try

21     nothing on me or anything, he just gave me beer for free, just to hang out, smoke and, uh, Sam

22     told me I don't like him, you shouldn't be hanging out with him because he's always talking crap

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1    about me, he says that I-I, uh, he-he's saying that I, uh, I can't, I don't want to say something

2    wrong but he said, and I ain't making this up because I seen it in discovery, this is exact what

3    happened. He told me from his mouth that Michael Morales was talking about him and said that

4    he raped or, uh, raped or had some kind of sex with two young males between 12 and 18 and

5    once he told me this I was really afraid of him because I thought he was gonna try to have sex

6    with me and I was real paranoid because he-he's a big man. So I'd be, I'd watch out for myself

7    but I know it's hearsay but Mike would tell me the same thing and that's why I believed it to be

8    true and whether I can testify to it or not, I mean that's the truth so let it be on the record and ...

9    DT:    Right.

10   AR:    ... I just feel like, uh, I know whether you all are upset because I withdrew my plea but we

11          wouldn't be here in the first place if I wouldn't have got those extra two and a half years, it's a

12          big headache for me as well.

13   DT:    Alright.

14   AR:    And, uh, sorry your Honor one more thing is that I feel like it would be fair because this is my

15          life and this is what happened and I, it is relevant. I've told plenty of people in mental health

16          since I've been locked up in prison about being sexually assaulted and they got it written down

17          and they said well we need to get you mental health and I've told them.

18   DT:    Right.

19   AR:    And-and Dr. Burness ...

20   DT:    I've got your story.

21   AR:    She just ...

22   DT:    I've got your story.

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1    AR:    I was beat up over there.

2    DT:    The court, the court continues to be of the opinion that two things well after hearing the story

3            that it-it's still suspect and I'm not sure it'd be relevant.

4

5    10/10/13 3:24:59 -3:25:49

6    UF:    Well as of us, yeah because he had already been having all these issues where he was always

7            thinking somebody was after him.  He would talk to himself, he would hear voices, he would.

8

**RICKY:** A white shirt.

**DAN:** Tee shirt or pullover?

**RICKY:** Uh, pullover but it had colored stripes across it.  No hat, no nothing.  Nothing else.

**DAN:** Do you remember what kind of shoes he had on?

**RICKY:** Uh, I didn't ever– they looked, just like tennis shoes to me.  I guess.

**DAN:** Color?

**RICKY:** White tennis shoes.  I didn't really....

**DAN:** You didn't really pay attention to his shoes.

**RICKY:** Pay attention to his shoes.  I just seen him and it happened so quick, you know?  But he was going towards– I mean– in the alley he was shoving.... like tucking his shirt in, or....

**DAN:** He was running when he was doing that?   *leading*

**RICKY:** No, he was fixin to start running.  *no he was walking about to run*

**DAN:** Kay.  Before he started running?

**RICKY:** Yeah.  Right before he started to leave, he– get running.  He was like, like he tucked his shirt in, or hiding– you know putting something up front right here.  And then he left.  That's the last I see of him.  So I went back in.

**DAN:** So he was tucking something in the waistband of his pants?

**RICKY:** Yeah.  And then, he took his, down the alley north, towards 7th Street and then... That's all I seen of him.  That's all I seen of him.  So I went back inside my building, by the time I walked up front– to my front doors...

**DAN:** He started running?  Was he running?   *2 okay said Not running*

**RICKY:** Well, not running– running.  But he, you know....   *detective leading*

**DAN:** Like jogging.  Kay but, once he started running, was he jogging or just sprinting?

**RICKY:** Just a jog, yeah, just like a small jog.  You know?  But he was heading north and heading towards seventh street on the, at the alley.  That's the direction that he was going.

**GRACE:**  Like, like a polo or something, you know?  Not no buttons or anything else like that...

**AGUILAR:** Right... like a tee-shirt.

**GRACE:** I just took it in fast...in... and... and ah, but... the green stripes go round.

**AGUILAR:** Kay...

**GRACE:** And... and at that point I got scared, you know.  I... I....

**AGUILAR:** With, how much shorter was he then uh... the other guy?

**GRACE:** I think he was a just a little bit shorter.

**AGUILAR:** Okay...

**GRACE:** I, I would say maybe the guy, I'm guessing... I 'm saying, maybe the taller one... maybe... 5'7", 5'8"?  I don't know... it was so (inaudible 5.16).

**AGUILAR:** Okay... kay, but your saying the one that was doing the shooting had a green shirt on...

**GRACE:** ...yes...

**AGUILAR:** ... or a, shirt on with green stripes.

**GRACE:** It's a polo with big green stripes on it.

**AGUILAR:** Kay.

**GRACE:** Looked like a polo to me, you know.  You know, like that type of material you know?

**AGUILAR:** Right... do you remember...

**GRACE:** It wasn't a tee shirt.

**AGUILAR:** It wasn't a tee shirt?  Do you remember what kind of pants he had on... or?

**GRACE:** I don' t know... I saw blue jeans but I don't know if it was short or....

**AGUILAR:** Okay.

**GRACE:** Shorts or, or jeans.

**AGUILAR:** What about age, would you say?

All PAPERS Courts, Exibits
Record, documents
Evidences, Cases Relevant
TO MY CASE. Thank you

prior

B. Bad acts.
        ISSUES.

①. Evidence use of battery and assault
OF a Transport officer. IN trial
when it was known to be
inadmissible.

②. Exibit 110. rap song lesser use to
Prove element of Premeditation
to prove 1st degree Murder fact
it talked about shooting people
killing people

3. Over objection the State called
a Firearms dealer to testify that
defendant had tried to purchase
a Gun From Him. in the PAST
to Support PREMeditation.

4. The State introduced evidence that
Someone had broken a Front
window at the victims House
and This was allegedly done
by petitioner to Show Motive.

prior bad acts

5. Another incident was introduced to show intent and motive, that is, that petitioner had used his crutches to crack his mothers window.

STATE OF NEW MEXICO
COUNTY OF CURRY
NINTH JUDICIAL DISTRICT


STATE OF NEW MEXICO,

      Plaintiff,

v.                                                      No. CR-2007-434

ALBERT RAMIREZ,

      Defendant.

## DESIGNATION OF EXHIBITS


Pursuant to Rule 12-212 NMRA, the Defendant designates the following exhibits:

1.     State's Exhibits #1 - #110.

                                  Respectfully submitted:


                                  Jesse R. Cosby, Esq.
                                  JESSE R. COSBY, P.C.
                                  Attorney for Defendant
                                  P.O. Box 3330
                                  Roswell, New Mexico  88202-3330
                                  (575) 625-0516

flame juror's emotions.  U.S.C.A. Const.
Amends. 6, 14.

**6. Criminal Law ⟨=⟩723(3), 1171.1(6)**

Prosecutor's appeal to community conscience in context of war on drugs and suggestion that drug problem facing jurors' community would continue if they did not convict defendant were so inflammatory in context that no charge could have sufficiently cured prejudice, and, thus, statements constituted reversible error.  U.S.C.A. Const.Amend. 6.

**7. Criminal Law ⟨=⟩1163(2, 3)**

It is incumbent upon Government to demonstrate that constitutional error, resulting from admission of highly prejudicial evidence or comment, is harmless beyond reasonable doubt; if there is reasonable possibility that evidence or comment complained might have contributed to conviction, then such error cannot be harmless beyond reasonable doubt.

**8. Criminal Law ⟨=⟩1134(3), 1162**

Result of harmless error analysis depends on circumstances of particular case; determining whether error is reversible necessitates examination of entire record.

**9. Criminal Law ⟨=⟩730(14)**

Curative instructions given by district court in trial on drug charges were insufficient and came too late to mitigate negative and highly prejudicial impact of prosecutor's appeal to community conscience, where remarks were among final arguments presented to jurors prior to their deliberation, admonition took place after 20 minute recess occurring immediately following prosecutor's improper statements, and admonition did not sufficiently convey to jury sense of judicial disapproval of remarks to dispel harmful impact of egregious statements.  U.S.C.A. Const.Amend. 6.

**10. Criminal Law ⟨=⟩730(1), 1171.1(2)**

When isolated remarks are made in course of long trial and jury is given appropriate cautionary instruction designed to overcome any prejudice that may have been caused, error may be harmless; however, error may be so prejudicial that no

cautionary instruction, however swiftly and forcefully given, can safely eradicate its effect.  U.S.C.A. Const.Amend. 6.

**11. Criminal Law ⟨=⟩730(1)**

Both timing and firmness of trial court's admonition are relevant in evaluating whether admonition has been sufficient to mitigate prejudicial error resulting from admission of improper evidence or comment.

Louis DeFalaise, U.S. Atty., Lexington, Ky., Frederick A. Stine, V, Asst. U.S. Atty., Covington, Ky., for plaintiff-appellee.

Robert Alan Rosenblatt, Miami, Fla., for defendant-appellant.

Before KEITH and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.

KEITH, Circuit Judge.

Defendant-appellant, Rosalba Solivan ("defendant") appeals from her March 28, 1990, judgment and sentence resulting from the sale of cocaine.  For the following reasons, we REVERSE.

## I.

### A.

Terry and Lorraine Brown (collectively "the Browns") became Drug Enforcement Administration ("DEA") informants in July 1988, subsequent to Terry Brown's arrest for the purchase of one kilogram of cocaine from Pepe (defendant's former boyfriend) and defendant on March 8, 1988.

On February 13, 1989, while in custody, the Browns began making a series of DEA controlled, tape recorded, telephone calls to defendant.  The first call concerned the delivery of three to five kilograms of cocaine to northern Kentucky and the price of the cocaine.  During a subsequent telephone conversation, defendant informed the Browns that the price would be $19,500 per kilogram of cocaine.  The series of recorded telephone conversations, which took place over the following weeks, detailed defendant's involvement in the nar-

ST. VS ALBERT RAMIREZ  CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|---|---|---|
| 1:18:24 PM | | JURY BEING SEATED IN BOX |
| 1:19:33 PM | | **#7 WITNESS ROGER GRAU LT. WITH CLOVIS POLICE DEPT. CALLED BY MORRIS / SWORN / DEX** |
| 1:20:54 PM | | THE MCU WAS ACTIVATED ON JULY 12TH, MADE SURE ALL THE PEOPLE WERE IN THE RIGHT POSITIONS, AND CRIME SCENE WAS BEING HANDLED |
| 1:21:28 PM | | SEARCH ITEMS OF CLOTHING IN THE BAG, |
| 1:21:53 PM | | WHAT WAS INSIDE THE BAG, "PAIR OF SHORTS" IDENTIFICATION OF DENIM SHORTS |
| 1:23:40 PM | | WHAT DID YOU FIND WHEN YOU SEARCHED SHORTS |
| 1:24:57 PM | | **IDENTIFICATION EXHIBIT 62 "BAG OF BULLETS FROM PANTS POCKET"** |
| 1:25:39 PM | | **OFFERS EXHIBIT 62 / ADMITTED** |
| 1:27:48 PM | | **IDENTIFICATION EXHIBIT 63 "PIECE OF NEWSPAPER FOR HOUSES TO RENT THAT CAME FROM BACK POCKET OF JEANS / OFFERS / ADMITTED** |
| 1:28:21 PM | | **IDENTIFICATION EXHIBIT 64 "WALMART RECEIPT FROM HIS PANTS"** |
| 1:28:50 PM | | WHAT IS THE DATE ON RECEIPT, WHAT WAS PURCHASED 22 CAL. AMMO |
| 1:29:24 PM | | **OFFERS EXHIBIT 64 / ADMITTED** |
| 1:29:33 PM | | **IDENTIFICATION EXHIBIT 65 "NM ID CARD FOUND IN HIS POCKET"** |
| 1:29:59 PM | | **OFFERS EXHIBIT 65 / ADMITTED** |
| 1:30:06 PM | | **IDENTIFICATION EXHIBIT 66 "FOOTLOCKER RECEIPT"** |
| 1:30:56 PM | | **OFFERS EXHIBITS 66 / COSBY OBJECTS / COURT** |
| 1:31:31 PM | | ARE YOU AWARE OF WHAT WAS ON THERE BEFORE |
| 1:31:41 PM | COSBY | OBJECTS / COURT RECEIVES MEMORY IS SUFFICIENT |
| 1:32:01 PM | | **IDENTIFICATION EXHIBIT 67 "FOOTLOCKER RECEIPT" OFFERS** |
| 1:32:34 PM | COSBY | **OBJECTS / COURT UNDERSTANDS OBJECTION ADMITTED** |
| 1:34:30 PM | | **IDENTIFICATION EXHIBIT 68 "PHOTO OF CONTENTS" OFFERS** |
| 1:35:08 PM | COSBY | **OBJECTS, TOOTHBRUSH NOT IN EVIDENCE" COURT OVERRULES / ADMITTED** |
| 1:37:08 PM | | **IDENTIFICATION OF EXHIBIT 69 "PHOTO OF SAME ITEMS"** |
| 1:37:45 PM | | MOVES EXHIBIT 69 / SAME OBJECTION / ADMITTED |
| 1:37:57 PM | | **IDENTIFICATION EXHIBIT 70 "PHOTO ID CARD" MOVES / ADMITTED** |

ST. VS ALBERT RAMIREZ CR-07-434                          COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 11:51:38 AM | COSBY | XEX - DO YOU HAVE THE FORM WITH YOU, :"NO" |
| 11:52:10 AM | | IT WAS THROWN AWAY, A CRIME WAS NOT COMMITTED, DID NOT DO A POLICE REPORT , THERE WAS NO CRIME, ONLY HAVE DISPATCH RECORDS JUNE 20TH 2007, READ THE NAME OFF THE FORM |
| 11:53:23 AM | | DOES NOT RECALL WHAT KIND OF GUN HE WAS TRYING TO BUY |
| 11:53:37 AM | | WITNESS EXCUSED |
| 11:53:56 AM | | NOON RECESS REPORT AT 1:30 P.M. |
| 1:30:14 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY DFT AND ALL PARTIES PRESENT |
| 1:30:35 PM | CHANDLER | THE STATE ANTICIPATES CALLING TWO TO THREE WITNESSES, WILL PROBABLY BE DONE WITHIN AN HOUR, DON'T BELIEVE ANY OF HIS WITNESSES ARE FACTUAL WITNESSES, HIS WITNESSES ARE GOING TO ATTEMPT TO TESTIFY HEARSAY ETC. |
| 1:31:52 PM | COSBY | JOSE RAMIREZ HIS BROTHER REGARDING RELATIONSHIP WITH HIS STEPFATHER, FURTHER STATES WITNESSES TO BE CALLED AND WHAT THEY WILL TESTIFY ABOUT |
| 1:34:13 PM | CHANDLER | |
| 1:35:06 PM | DFT | STATES HE HAS BEEN HEARING VOICES TELLING HIM TO KILL HIMSELF, CUT HIS WRISTS ETC. OTHER ISSUES THAT MAKE HIM NOT WANT TO LIVE, |
| 1:36:36 PM | COURT | KEEP DOING GOOD, YOUR LAWYER IS NOT MAD AT YOU |
| 1:36:47 PM | CHANDLER | ASKS DEFENSE TO MAKE WITNESSES AVAILABLE TO INTERVIEW |
| 1:37:51 PM | COURT | THE ABILITY OF MR. COSBY TO MAKE AVAILABLE MAY NOT BE WITHIN HIS POWER, I DON'T KNOW IF I CAN DO THAT, THESE PEOPLE HISTORICALLY ON YOUR WITNESS LIST |
| 1:38:39 PM | COSBY | HE ASKED TODAY TO PRODUCE |
| 1:38:51 PM | COURT | DO THE BEST YOU CAN TO TALK TO THEM |
| 1:39:58 PM | COSBY | WITNESSES ARE TRYING TO COORDINATE WORK |
| 1:41:19 PM | DFT | COMMENTS |
| 1:41:58 PM | | JURY BEING SEATED IN BOX |
| 1:42:33 PM | | #19 WITNESS KEVIN STREINE CALLED BY CHANDLER / SWORN / DEX |
| 1:43:46 PM | | FIREARM EXAMINER, BULLETS |
| 1:44:10 PM | | EDUCATIONAL BACKGROUND |
| 1:45:21 PM | COSBY | NO OBJECTION AS TO EXPERT |
| 1:45:29 PM | COURT | QUALIFIED AS AN EXPERT |
| 1:45:43 PM | | DIFFERENT TYPE FIRED PROJECTILE |
| 1:49:47 PM | | RECEIVED FOUR ITEMS 108 - 111 |

10/9/2013                                                11 of 15

ST. VS ALBERT RAMIREZ  CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 1:50:11 PM | | DETERMINATION OF TYPE OF BULLETS "22 CALIBER" |
| 1:50:30 PM | | WHAT DOES COPPER WASH LEAD BULLETS |
| 1:51:50 PM | | NOT ABLE TO FIND ENOUGH MARKINGS, ON BULLETS |
| 1:52:11 PM | | BULLETS WERE SENT TO HIM VIA OMI "OFFICE OF MEDICAL INVESTIGATOR" |
| 1:52:35 PM | | **IDENTIFICATION EXHIBIT 102B** "PACKAGE HAS HIS INITIALS ON IT AND DATE, ITEM 610 WAS NOT THE ONE HE WAS ABLE TO IDENTIFY |
| 1:54:23 PM | | HAS NO OPINION AS TO WHO FIRED THE BULLETS, SIMPLY EXAMINED BULLETS |
| 1:54:42 PM | | IDENTIFICATION EXHIBIT 62 " LIVE ROUNDS OF COPPER WASH BULLETS |
| 1:55:30 PM | COSBY | **XEX** - WHAT IS A JACKETED BULLET "IT IS A HEAVIER THICKER MATERIAL" HE TOLD US THEY WERE JACKETED |
| 1:56:23 PM | CHANDLER | OBJECTS |
| 1:56:27 PM | COSBY | THE BULLETS HE RECEIVED WERE COATED OR WASHED THEY WERE NOT JACKETED, THEY HAD COPPER WASH |
| 1:57:09 PM | | TWO OF THE THREE BULLETS HE SAW ARE CONSISTENT WITH A 22 LONG RIFLE, |
| 1:57:55 PM | | THERE ARE A NUMBER OF CARTRIGES WITH THE 22 CARTRIDGE FAMILY THE LONG AND SHORT BULLETS ARE IDENTICAL |
| 1:58:30 PM | | WEIGHT OF BULLETS |
| 1:59:08 PM | | WEIGHT OF BULLETS DOES NOT SAY ON THE REPORT |
| 1:59:30 PM | | REFERS TO HIS NOTES FOR 608 36.3 GRAINS, FOR 609 37.0 GRAINS |
| 2:00:00 PM | | FOR 610 32.6 GRAINS, 611 WAS 28.1 GRAINS |
| 2:00:25 PM | | NO COMMENTS ABOUT WHAT OMI DID, |
| 2:00:48 PM | | HOW MANY GRAINS EQUAL ONE POUND "DOES NOT KNOW THAT IS WHY HE HAS A CALCULATOR" |
| 2:01:25 PM | | THESE BULLETS WAS NOT ABLE TO DISCERN IF THERE WERE ANY RIGHT OR LEFT TURN |
| 2:03:46 PM | | ITEMS 608 & 609 HAD WEIGHTS CONSITENT AND ONE DID NOT |
| 2:05:40 PM | | BULLETS OMI SENT YOU WERE SAME MANUFACTOR AS THE ONE IN THE EXHIBIT |
| 2:05:59 PM | CHANDLER | REFERS TO EXHIBIT 102A - YOU WEIGHED THAT WHAT IS THE DIFFERENCE BETWEEN 28 AND 28.1 GRAINS, DOES NOT KNOW WHAT PROCEDURES OMI USES |
| 2:08:10 PM | | YOU HAVE BEEN QUALIFIED AS AN EXPERT IN THIS CASE, DIFFERENCE BETWEEN COPPER JACKETS AND COPPER WASH |

ST. VS ALBERT RAMIREZ  CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 3:11:09 PM | COSBY | JOSIE CASILLAS WAS SERVED , LUPE CASILLAS WAS SERVE, AND JOSE RAMIREZ WERE SERVED TO APPEAR, ASKS COURT TO FILE RETURNS OF SUBPOENA'S, MY CLIENT AS EXPRESSED A REQUEST ASKS TO ALLOW TO SPEAK WITH HIS CLIENT FOR A COUPLE OF HOURS AND TO RECESS TILL THE MORNING TO HAVE WITNESSES HERE |
| 3:13:27 PM | COURT | WE WILL BE IN RECESS TILL 9 AM, |
| 3:13:35 PM | CHANDLER | MR. RAMIREZ WAS TRIED ON AUGUST 27, 2013, HIS CLIENT TOOK THE STAND THERE AND HE WAS CONVICTED, IF THEY OPEN THE DOOR THAT THERE IS A MENTAL HEALTH ISSUE, THEY WAVE THE CONFIDENTIALITY ETC. |
| 3:14:57 PM | | WE WILL BE CALLING REBUTTAL WITNESSES WITH REGARDING TO HIS COMPETENCY AND MENTAL HEALTH |
| 3:15:15 PM | COURT | WE WILL LEAVE IT AT THAT, I DON'T KNOW THE ANSWER TO THAT, |
| 3:15:40 PM | CHANDLER | IF HE IS OBJECTING TO THAT |
| 3:15:54 PM | COSBY | RESPONDS, AS FAR AS THIS JUDGMENT, THIS CASE IS FROM BATTERING TRANSPORT OFFICERS, WE WAIVED JURY IT WAS A BENCH TRIAL, HE HAS ALREADY SERVED HIS TIME, |
| 3:17:26 PM | CHANDLER | WHEN DFT TAKES STAND I HAVE THE RIGHT TO IMPEACH REGARDING CONVICTION |
| 3:17:44 PM | COSBY | RESPONDS, AN EVENT THAT HAPPENS WHEN HE IS IN CUSTODY |
| 3:18:57 PM | COURT | WILL MAKE DECISION IN THE MORNING, BRING JURY IN |
| 3:20:17 PM | | JURY SEATED IN BOX |
| 3:20:54 PM | COURT | INSTRUCTS JURORS THAT THEY WILL BE EXCUSED TILL 9AM |
| 3:21:36 PM | OFF RECORD | |
| 3:22:22 PM | CHANDLER | HAS A COPY OF THE JURY INSTRUCTION |
| 3:22:42 PM | COSBY | PRESENTS HIS INSTRUCTIONS TO COURT |
| 3:23:09 PM | RECESS | |

10/9/2013                                              15 of 15

ST. VS ALBERT RAMIREZ  CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 3:25:55 PM | CHANDLER | DO YOU KNOW WHERE DEBRA RAMIREZ IS "NO" |
| 3:26:15 PM | | **WITNESS EXCUSED** |
| 3:27:18 PM | | **#3 WITNESS LUPE CASILLAS CALLED BY COSBY/ SWORN / DEX** |
| 3:27:55 PM | | SHE IS ALBERT'S AUNT |
| 3:28:11 PM | | ALBERT LIVED WITH HER A WEEK OR TWO BEFORE HE WENT BACK HOME , IN 2007 |
| 3:28:41 PM | | IT WAS A WEEK TO 10 DAYS BEFORE THE SHOOTING, HE WANTED TO COME TO LIVE WITH ME TO DO SOMETHING DIFFERENT, LIVED WITH ME A MONTH TO A MONTH AND A HALF, WHEN HE LEFT, DO YOU KNOW WHY |
| 3:29:17 PM | | HE LEFT I CALLED BY SISTER,  HE SAID I AM GOING TO GO, WHAT WAS HIS PHYSICAL SITUATION, |
| 3:30:05 PM | | WHEN HE LEFT DID HE HAVE ANYWHERE TO GO, MY SISTER PICKED HIM UP "MY SISTER DEBRA" |
| 3:30:43 PM | | WHEN YOUR SISTER PICKED HIM UP ELADIO DID NOT COME WITH HER, SHE DID NOT KNOW ABOUT TRESPASS |
| 3:31:11 PM | | ELADIO AND HER SISTER OWNED THAT HOME, SHE TOOK HIM HOME WITH HER |
| 3:31:59 PM | | THEY CALL ALBERT "BETO" IT IS SHORT FOR ALBERT |
| 3:32:29 PM | | DID SHE SEEM TO HAVE ANY TYPE OF ANGER TOWARD'S ALBERT |
| 3:33:12 PM | | WHEN ALBERT CAME BACK HOME , HE WOULD TALK TO A MIRROR |
| 3:33:53 PM | | WAS HE ABLE TO RUN AROUND, |
| 3:34:19 PM | | DID YOU KNOW ABOUT $500 HE RECEIVED FROM HIS FATHER |
| 3:35:11 PM | | HE NEVER TOLD HER HE WAS LOOKING TO KILL MR. ROBLEDO |
| 3:35:24 PM | MORRIS | **XEX** - YOU WERE NOT AT DEBRA'S HOUSE JULY 12, 2007 |
| 3:35:57 PM | | WE WOULD TALK ABOUT ONE DAY YEAH, ONE DAY NO |
| 3:36:26 PM | | WHERE IS DEBRA TODAY "I HAVE NO IDEA, I AM FROM ROSWELL" |
| 3:36:43 PM | | WITNESS EXCUSED |
| 3:36:53 PM | | DEFENSE RESTS |
| 3:37:33 PM | COURT | READS RECESS INSTRUCTION |
| 3:38:08 PM | OFF RECORD | |
| 4:32:14 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY, |

10/10/2013

15 of 16

ST. VS ALBERT RAMIREZ  CR-07-434                          COURTROOM ONE

| Time | Speaker | Note |
|---|---|---|
| 11:12:30 AM | | AMOUNT OF POPULATION ON EARTH ACTUALLY 7 BILLION |
| 11:13:41 AM | | IDENTIFICATION EXHIBIT 108 , "LABATORY REPORT" |
| 11:14:04 AM | | OFFERS EXHIBIT 108 / COSBY OBJECTS / |
| 11:14:27 AM | COURT | LET ME SEE REPORT |
| 11:14:52 AM | CHANDLER | IT IS NOT A POLICE REPORT, TESTIFIED BASED ON REPORT |
| 11:15:06 AM | COURT | ADMITTED SUBJECT TO OBJECTION OF DEFENSE |
| 11:15:24 AM | COSBY | XEX - WHAT IS YOUR DEGREE |
| 11:16:06 AM | | DO YOU KNOW ANYTHING HOW INDEPENDENT VARIABLES |
| 11:17:23 AM | | IT THERE AN ASSUMPTION MADE BY DNA PEOPLE THAT THERE IS 50/50 CHANCE THAT IT WILL MATCH |
| 11:17:54 AM | | HOW DO YOU DETERMINE SW HISPANIC, |
| 11:18:28 AM | | IS THERE A DIFFERENCE BETWEEN SW HISPANIC OR SE HISPANIC |
| 11:18:42 AM | | ITEM 202 THE RED SHIRT, I KNOW YOU DID NOT FIND BLOOD, WAS THERE OTHER SOURCES OF DNA BESIDES BLOOD |
| 11:20:18 AM | | ONLY WORK FOR LAW ENFORCEMENT, TO ASSIST IN THEIR INVESTIGATIONS |
| 11:21:05 AM | | WHO CONTROLS WHAT YOU ARE LOOKING FOR, THE POLICE, ONLY LOOK FOR WHAT THEY ARE ASKED TO LOOK FOR |
| 11:21:42 AM | CHANDLER | OBJECTS CALLS FOR SPECULATION |
| 11:22:04 AM | COSBY | YOU CAN'T TELL THIS JURY WHO'S SHIRT IT IS |
| 11:22:23 AM | | REGARDING THE RED SHOES FOUND, HOW MANY SPOTS FOUND ON RIGHT SHOE 3 SPOTS |
| 11:23:05 AM | | HOW MUCH YOU NEED TO DO A DNA ANALYSIS |
| 11:25:08 AM | | DID YOU CHECK RED TENNIS SHOW TO SEE WHO OWNED IT, NO JUST ASKED TO LOOK FOR BLOOD |
| 11:25:28 AM | | REGARDING THE LEFT TENNIS SHOE |
| 11:25:41 AM | | YOU DESCRIBED BLACK DENIM SHORT, WHY DOES YOUR REPORT SAY BLUE |
| 11:26:41 AM | | LITTLE BIT OF BLOOD ON ZIPPER AREA |
| 11:27:14 AM | CHANDLER | OBJECT TO CHARACTERIZATION IT WAS NOT ZIPPER |
| 11:27:33 AM | COSBY | IT WAS ON PIECE OF MATERIAL THAT COVERS ZIPPER, |
| 11:28:11 AM | | WHY TOOTHBRUSH WAS TESTED FOR NON BLOOD, TOOK IT UPON YOURSELF TO DO THE NON BLOOD |
| 11:29:43 AM | | 211 WAS NOT TESTED FOR BLOOD |
| 11:29:49 AM | | YOU TESTED SIX SWABS, WHY DID YOU NOT GET ALL SWABS THERE WERE 20 BOXES "DO NOT KNOW" |

| Time | Speaker | Note |
|------|---------|------|
| 11:30:37 AM | | DIRTY WHITE SOX, HAVE TESTIMONY THAT THERE WAS A RED MARK ASSOCIATED WITH A BLISTER |
| 11:32:19 AM | | REFERS TO EXHIBITS 81 & 82, 74 & 75 |
| 11:34:18 AM | | COULD NOT TELL IF THEY WERE ALBERT'S SOX |
| 11:34:33 AM | | FINGERNAIL CLIPPINGS FOUND HIS OWN MATERIAL |
| 11:34:45 AM | CHANDLER | **RDEX** - WHEN FINISHED WITH DNA TESTING WHAT DO YOU DO WITH THOSE ITEMS |
| 11:35:42 AM | | **BENCH CONFERENCE STATE V. DURAN** |
| 11:36:30 AM | CHANDLER | THOSE ITEMS ARE RETURNED IN A MANNER WHERE OTHER AGENCIES CAN TEST THEM |
| 11:36:49 AM | | WITNESS EXCUSED |
| 11:38:56 AM | | **#17 WITNESS CRIMSON MAES CALLED BY CHANDLER / SWORN / DEX** |
| 11:40:14 AM | COSBY | OBJECTS TO LISTEN TO PHONE CALL |
| 11:40:28 AM | CHANDLER | WILL YOU RECALL IF I REFRESH YOUR MEMORY |
| 11:41:26 AM | | PLAY TO REFRESH HIS MEMORY |
| 11:43:44 AM | | DOES NOT RECALL IT IF IT WAS ME, I HAVE BEEN GOING THRU ALOT OF OTHER PROBLEMS, I CANNOT RECALL ANY OF THIS STUFF |
| 11:44:48 AM | COSBY | OBJECTS TO HIM |
| 11:45:08 AM | COURT | COUNSEL HAS MADE HIS OBJECTION |
| 11:45:15 AM | CHANDLER | DO YOU RECALL THE DETECTIVE ASKING YOU IN 2007 |
| 11:45:28 AM | | I DO NOT RECALL, I DON'T REMEMBER, DOES NOT RECOGNIZE DAN AGUILAR |
| 11:46:08 AM | | DO YOU KNOW WHERE RAGS TO RICHES IS, WHO IS BAM BAM |
| 11:46:44 AM | | WITNESS EXCUSED, SUBJECT TO RECALL |
| 11:47:37 AM | | **#18 WITNESS JOHNATHON MARK HOWARD CALLED BY CHANDLER / SWORN / DEX , CERTIFIED POLICE OFFICER** |
| 11:48:39 AM | | SUSPICIOUS CIRCUMSTANTIAL CALL RESPONDED TO CROSSHAIR'S GUN STORE AT 11:52 AM |
| 11:49:22 AM | | MET WITH DENNIS FITE, |
| 11:49:38 AM | COSBY | HE HAS ALREADY TESTIFIED |
| 11:49:52 AM | COURT | IT IS HEARSAY |
| 11:50:04 AM | CHANDLER | IT IS NOT THE TRUTH OF THE MATTER TO PROVE |
| 11:50:16 AM | | WHAT WAS MR. FITES CALL ABOUT , INDIVIDUAL WHO FILLED OUT PAPERWORK WAS ALBERT RAMIREZ |
| 11:50:59 AM | | NO CRIME WAS COMMITED AND NO GUN WAS PURCHASED, COULD NOT FIND HIM ANYWHERE, NOT AGAINST LAW TO ATTEMPT TO BUY A FIREARM AT THAT AGE |

ST, VS ALBERT RAMIREZ  CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 3:15:46 PM | | DO NOT HAVE ANY PROOF THAT YOUR CLIENT WAS TALKING ABOUT GUN |
| 3:16:28 PM | | YOU SAID YOU SAW BLISTERS ON BOTTOM'S OF HIS FEET, DID YOU TREAT THE BLISTERS, "NO" |
| 3:17:07 PM | | PHOTO'S OF HIM IN HIS UNDERWEAR WERE TAKEN IN THE JAIL |
| 3:18:40 PM | | GRAFFITI IN JAIL, |
| 3:19:08 PM | | IF A PERSON IN JAIL HAS TO BE RECORDED WHEN MAKING A CALL |
| 3:19:42 PM | | WHO IS THE PERSON HE WAS CALLING ON SECOND CALL "DO NOT KNOW" |
| 3:20:16 PM | | DID NOT CALL TO FIND OUT WHO THIS PERSON WAS |
| 3:20:37 PM | | FINDING CLOTHING 3 DAYS AFTER THE FACT |
| 3:21:46 PM | | REFERS TO HIS POLICE REPORT |
| 3:22:49 PM | | NOTE FROM JURY |
| 3:23:21 PM | COURT | DOES NOT THINK QUESTION IS APPROPRIATE |
| 3:23:34 PM | COSBY | REFERS TO EXHIBIT 8 "ARIAL PHOTO" |
| 3:26:22 PM | | HE NEVER WORKED THE SCENE |
| 3:26:46 PM | | REFERS TO EXHIBIT 58 |
| 3:28:06 PM | CHANDLER | RDEX - REFERS TO EXHIBIT 8 |
| 3:32:56 PM | | **IDENTIFICATION EXHIBIT 85** |
| 3:33:25 PM | | **IDENTIFICATION EXHIBIT 86 "** |
| 3:34:28 PM | COSBY | OBJECTION MISMARKED |
| 3:34:37 PM | CHANDLER | WHO'S CLOTHING IN BAGS |
| 3:35:16 PM | | DID NOT FIND ANY EVIDENCE THAT NEEDED TESTING BUT HE COLLECTED, **SUBJECT TO XEX MOVES FOR ADMISSION EXHIBIT 85 & 86** |
| 3:36:09 PM | COSBY | **RXEX - TELL ME WHY EXHIBIT 85 IS MARKED OUT,** |
| 3:37:29 PM | | EXPLAINS WHEN ARE AT A SCENE USE A DESIGNATOR |
| 3:38:33 PM | | JURORS QUESTION |
| 3:39:06 PM | CHANDLER | **RDEX - WHEN ASKED IF THERE WAS A RED MARK** |
| 3:39:54 PM | COSBY | **RXEX - REFERS TO EXHIBIT 8** |
| 3:40:40 PM | CHANDLER | STIPULATE THAT JALISCO'S IS NOT INVOLVED |
| 3:41:04 PM | COSBY | SCENE OF THE SHOOTING, CONTINUE TO REFER TO EXHIBIT 8 |
| 3:42:50 PM | | WITNESS EXCUSED |
| 3:43:43 PM | | **#5 WITNESS ANTONIO BOSQUE RECALLED BY CHANDLER** |
| 3:44:06 PM | | WHO HE LISTENED PHONE CALL WITH, DID YOU HEAR |
| 3:44:34 PM | COSBY | OBJECTS UNLESS HE IS CERTIFIED |

10/8/2013                                              4 of 7

ST, VS ALBERT RAMIREZ  CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|---|---|---|
| 3:45:19 PM | COURT | APPROVED HIS TRANSLATION RIGHT OR WRONG |
| 3:45:40 PM | | TRANSLATES WHAT ALBERT WAS SAYING ON PHONE CALL |
| 3:47:17 PM | COSBY | WHERE IS THE REST OF THE CALL, WHAT DID THE AUNT SAY |
| 3:47:47 PM | | MAINLY FOCUSED ON WHAT RAMIREZ SAID |
| 3:49:17 PM | | WITNESSED EXCUSED |
| 3:49:55 PM | | **#10 WITNESS RAFAEL AGUILAR CALLED BY MORRIS / SWORN / DEX** |
| 3:50:26 PM | | MADE CONTACT WITH DFT ON APRIL 22ND, IDENTIFICATION OF DFT IN COURTROOM |
| 3:51:28 PM | | ADDRESS RESPONDED TOO, 512 W. 6TH ST., WHO WAS THERE WHEN YOU ARRIVED ALBERT RAMIREZ AND MR. ROBLEDO |
| 3:52:22 PM | | SPOKE WITH MR. RAMIREZ AND ISSUED A CRIMINAL TRESPASS FOR THAT ALBERT NOT |
| 3:53:04 PM | | **OFFERS EXHIBIT 85 "CRIMINAL TRESPASS"** |
| 3:53:09 PM | COSBY | OBJECTS / COURT ADMITS |
| 3:54:11 PM | COSBY | **XEX -** WHO OWNS THE PREMISES AT 512 W. 6TH, DID YOU CHECK WHO OWNED IT, "NO" |
| 3:55:29 PM | | SHOWS PLATEAU WIRELESS DOCUMENT, WHO WAS LIVING THERE 8/21/06 |
| 3:57:08 PM | | REFERS TO EXHIBIT 56 "PADLOCK ON BEDROOM DOOR" |
| 3:57:51 PM | | HE DOES NOT KNOW ON THE DAY OF THE SHOOTING |
| 3:58:12 PM | | HOW OLD WAS MY CLIENT |
| 3:59:41 PM | | NOT SURE HOW LONG HE WAS LIVING THERE, |
| 4:00:16 PM | MORRIS | **RDEX -** DID ELADIO TELL YOU WHAT DEBRA SAID SHE DID, NOT WANT HIM AT THE HOUSE |
| 4:01:27 PM | | WITNESS EXCUSED |
| 4:01:47 PM | | **#11 WITNESS DARYL RICE CALLED BY MORRIS / SWORN / DEX** |
| 4:02:38 PM | | WHAT HAPPENED ON MAY 31ST 2007, HOW YOU CAME IN CONTACT WITH ALBERT RAMIREZ |
| 4:03:33 PM | | REFRESH MEMORY BY SEEING REPORT |
| 4:03:49 PM | | DEBRA RAMIREZ WAS UPSET, SHE STATED THAT HER SON ALBERT HAD BUSTED THE WINDOWS OF CAR |
| 4:04:15 PM | COSBY | OBJECTS |
| 4:04:30 PM | | IT WAS THE CAR BELONGING TO HER BOYFRIEND |
| 4:04:57 PM | | DID YOU EVER RECIEVE AN ESTIMATE FOR REPAIRS "YES FROM GLASS DOCTOR" |
| 4:05:37 PM | | ASKED ALBERT WHAT HAPPENED HE SAID I GOT MAD |
| 4:06:29 PM | COSBY | **XEX -** WHAT DATE WAS YOUR REPORT MAY 31, 2007 |
| 4:07:28 PM | MORRIS | STIPULATE HE WAS 18 YEARS OLD |



be admissible in evidence against such person in any criminal proceeding on any

issue other than that of the person's sanity, ability to form specific intent or

competency to stand trial."

5. The testimony of Dr. Burness is not admissible unless and until the defendant

presents a claim of lack of specific intent or insanity to the jury.

WHEREFORE, the defendant prays this Court issue an Order requiring the State not to

present any statements made by defendant to Dr. Burness at trial and further relief as the

Court deems just and proper.

Respectfully Submitted,

HUGH W. DANGLER
CHIEF PUBLIC DEFENDER

By: _Brett J. Carter_

BRETT J. CARTER
District Public Defender
Clovis District Office
800 Pile, Suite A
Clovis, NM 88101
(505) 769-1991

I HEREBY CERTIFY THAT A COPY OF THE FOREGOING WAS DELIVERED/MAILED
TO OPPOSING COUNSEL ON THE DATE OF FILING STAMPED ABOVE.

_Brett J._

PUBLIC DEFENDER DEPARTMENT

RP 269

NINTH JUDICIAL DISTRICT
CURRY COUNTY NM
FILED IN MY OFFICE

2009 JAN 13 PM 3: 34

IN THE NINTH JUDICIAL DISTRICT COURT
STATE OF NEW MEXICO
COUNTY OF CURRY

STATE OF NEW MEXICO,

      Plaintiff,

vs.                     No. D-0905-CR-0200700~~604~~
                                              434

ALBERT RAMIREZ,

      Defendant.

## DEFENDANT'S MOTION TO EXCLUDE THE INTRODUCTION OF ALL PHOTOGRAPHS OF THE DECEASED AT TRIAL

Defendant Albert Ramirez, through counsel, requests this Court to exclude the State from offering all photographs of the deceased at trial wherein the following is shown:

1. The defense believes that the State will attempt to introduce photographs of the deceased, that were taken at the hospital and at the autopsy.

2. They are twenty five photographs of the deceased that were taken at the hospital. The photo's depict a large amount of blood and extremely prejudicial to the defendant. The photographs taken at the hospital of the victim depict the victim unclothed with the exception of a small towel covering his private parts. The cause of death is not in dispute and the only reason to introduce the photographs is to appeal to the emotions of the jury and prejudice the jury against the defendant.

3. Photographs taken at the autopsy are *per se* prejudicial to the defendant, and any evidence they provide of the alleged crime is cumulative and more prejudicial than probative.

RP 270

ST. VS ALBERT RAMIREZ  CR-07-434                    CR1 CHAMBERS

| Time | Speaker | Note |
|------|---------|------|
| 10:58:56 AM | CHANDLER | ON XEX GONNA ASK THIS COURT FOR ABOUT 10 OR 15 MINUTES WOULD LIKE TO DISCUSS WITH CO COUNSEL, SAID HE HAS NOT TESTIFIED BEFORE, I RENEW MY |
| 11:00:15 AM | COSBY | IT WAS NOT A JURY TRIAL IT WAS A BENCH TRIAL, HE BATTERED A TRANSPORT OFFICER |
| 11:01:15 AM | COURT | IF XEX TRIGGERS I WILL CHANGE MY RULING |
| 11:01:44 AM | RECESS | |
| 3:44:06 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY, DFT AND ALL PARTIES PRESENT |
| 3:44:27 PM | CHANDLER | DEFENSE HAS RESTED AND HAVE GIVEN US A COUPLE OF INSTRUCTIONS GUILTY BUT MENTALLY ILL, HE IS ATTEMPTING TO RAISE COMPETENCY, OUR REBUTTAL WITNESSES ARE GOING TO TESTIFY THAT THEY HAVE EXAMINED THE DFT, ETC. |
| 3:45:47 PM | COURT | HAVE NOT SEEN A DFT THE WAY THIS TRIAL HAS UNFOLDED |
| 3:46:20 PM | CHANDLER | WE HAVE CASELAW |
| 3:46:30 PM | COSBY | I AM NOT GOING TO SUBMIT A COMPETENCY INSTRUCTION, |
| 3:46:46 PM | CHANDLER | WE ARE NOT OBJECTING, THE ONLY MENTAL ILLNESS THAT PROBABLY COULD HAVE BEEN TESTIFIED, DFT TOOK STAND AND HE DID NOT RAISE ISSUE |
| 3:47:42 PM | COSBY | THE GBMI WAS AVAILABLE, BUT THAT DOES NOT DEPRIVE HIM OF THE RIGHT TO HAVE IT SUBMITTETD, GBMI VERDICT IS NOT SOMETHING TO GIVE, HE IS ENTITLED WE HAVE TENDERED IT, |
| 3:48:58 PM | COSBY | OPPOSES TO REBUTTAL WITNESSES BEING CALLED |
| 3:49:17 PM | COURT | BASIS UPON |
| 3:49:34 PM | MORRIS | THEY WERE CALLED , THEY ALSO CAN TESTIFY AS TO THEIR OPINION |
| 3:50:52 PM | | HE LISTED BOTH OF THESE DOCTORS, HE HAS NOT LISTED DR. SWARTZ |
| 3:51:10 PM | CHANDLER | YOU CANNOT BRING IN AN EXPERT YOU HAVE NOT DISCLOSED |
| 3:51:27 PM | COURT | AS A PRACTICAL MATTER WHAT YOU DO IN YOUR INSTRUCTIONS YOU HAVE A GUILTY AND GUILTY BUT MENTALLY ILL, |
| 3:52:06 PM | COSBY | WE ARE NOT GOING TO ASK FOR SELF DEFENSE, WILL WITHDRAW BECAUSE OF MENTAL ILLNESS OR DEFECT |
| 3:52:52 PM | OFF RECORD | |

1  cross-examining Defendant about previous acts of violence.  Therefore, the State

2  argues that the evidence was properly admitted to show motive and pattern of conduct.

3  {45}    When a district court's evidentiary ruling is properly preserved for review, we

4  examine the ruling under an abuse of discretion standard.  *See State v. Flores*, 2010-

5  NMSC-002, ¶ 25, 147 N.M. 542, 226 P.3d 641.  "An abuse of discretion occurs when

6  the ruling is clearly against the logic and effect of the facts and circumstances of the

7  case."  *Id.* (internal quotation marks omitted).  We will not say that the district court

8  "abused its discretion by its ruling unless we can characterize it as clearly untenable

9  or not justified by reason."  *Id.* (internal quotation marks and citation omitted).

10 **1.    Evidence of the trespass order, broken windshield, and broken window**

11 {46}    First, Defendant argues that the court improperly admitted testimony about a

12 "no trespass" order Robledo had issued to Defendant, in violation of Rule 11-404.

13 The State responds that evidence regarding the "no trespass" order was relevant and

14 admissible because it demonstrated a pattern of conduct toward Robledo from which

15 the jury could infer that Defendant acted with deliberate intention to kill Robledo.  In

16 addition, the State argues that Defendant did not object to testimony about the order

17 at trial, only to the admission of the actual trespass order.

24

{47}   At trial, the prosecution sought to elicit testimony that three months prior to the murder, Robledo had obtained a criminal trespass notice barring Defendant from returning to the home.  The district court had previously ruled, prior to trial, that evidence of the no-trespass order issued against Defendant by Robledo was admissible as it was relevant to proving deliberate intent.  During trial, defense counsel objected to the admission of the trespass order.  The court, finding that testimony about the order was admissible as to motive, overruled the objection.

{48}   Second, Defendant argues that the court improperly admitted testimony about a prior incident involving a broken windshield.  The State argues that evidence regarding the broken window was relevant and admissible because it demonstrated a pattern of conduct toward Robledo from which the jury could infer that Defendant acted with deliberate intention to kill Robledo.

{49}   At trial, the prosecution sought to admit evidence that approximately one month before the killing, Defendant broke the windshield of Robledo's car because he "got mad."  The defense objected to the testimony at trial regarding the broken windshield, claiming it was "uncharged conduct."  The district court allowed the testimony finding that it demonstrated Defendant's pattern of conduct toward Robledo.

25

{50}    Third, the court admitted testimony about a police investigation of a broken window at Robledo's house, although the court did not allow the witness to testify as to who had broken the window. The State argues that Defendant failed to preserve any argument regarding the broken window because he did not move to have the testimony stricken after the district court sustained the objection.

{51}    At trial, the prosecution sought to introduce testimony that a month before the killing, Defendant's mother had filed a police report after Defendant had broken the front window of Robledo's home when no one would answer the door. The prosecutor asked the responding officer if he knew who had broken the window. Defense counsel objected, arguing that the responding officer's testimony as to who broke the window was inadmissible hearsay testimony and violated Defendant's confrontation rights. The court sustained the objection. Despite the limitation on the prosecution, the Defendant subsequently testified on cross-examination that after no one answered the door, he had broken the window by knocking on it as it was "flimsy." On appeal, Defendant argues that all of the testimony about the broken window, including the filing of the police report, was improper.

{52}    "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance

26

1   with the character." Rule 11-404(B)(1) NMRA. However, "[t]his evidence may be

2   admissible for another purpose, such as proving motive, opportunity, intent,

3   preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule

4   11-404(B)(2).

5   {53}    The procedure for admitting evidence under Rule 11-404(B) requires first,

6   identification of the "consequential fact to which the proffered evidence of other acts

7   is directed." *State v. Serna*, 2013-NMSC-033, ¶ 17, 305 P.3d 936 (internal quotation

8   marks and citation omitted). Second, the rule requires a demonstration of the other

9   acts' "relevancy to the consequential facts, and the material issue, such as intent, must

10  in fact be in dispute." *Id.* (internal quotation marks and citation omitted). Third, if the

11  evidence offered is of a crime other than the one charged, the other crime must "have

12  a real probative value, and not just possible worth on issues of intent, motive, absence

13  of mistake or accident, or to establish a scheme or plan." *Id.* (citation omitted).

14  "[T]he rationale for admitting the evidence [must be] to prove something other than

15  propensity." *Id.; see also State v. Martinez*, 1999-NMSC-018, ¶ 27, 127 N.M. 207,

16  979 P.2d 718 ("The list of permissible uses of evidence of other wrongs in Rule 11-

17  404(B) is intended to be illustrative rather than exhaustive, and evidence of other

27

1    wrongs may be admissible on alternative relevant bases so long as it is not admitted

2    to prove conformity with character." (citation omitted)).

3    {54}    Here, the evidence of the "no trespass" order, testimony about the broken

4    windshield, and the broken window was consequential to the determination of whether

5    Defendant had the intent to kill Robledo, an essential element of first-degree murder.

6    The State was not attempting to prove that Defendant acted in accordance with his

7    character, but rather that Defendant had motive and the intent to murder Robledo

8    because of their strained relationship. Such a purpose is permitted under Rule 11-402

9    NMRA. *See, e.g., State v. Rojo,* 1999-NMSC-001, ¶ 47, 126 N.M. 438, 971 P.2d 829

10    (holding that evidence of the defendant's and victim's deteriorating relationship and

11    the specific actions surrounding her reason for rejecting the defendant "directly

12    addresse[d] the motivational theories presented at trial . . . [and t]hus, the trial court

13    did not abuse its discretion by admitting this evidence . . . ."); *see also State v. Allen,*

14    2000-NMSC-002, ¶ 41, 128 N.M. 482, 994 P.2d 728 (holding that "evidence of

15    Defendant's prior crime in 1982 was relevant to prove his motive for the murder in

16    the context of the aggravating circumstance of murdering a witness." (citations

17    omitted)). Accordingly, we hold that the district court did not abuse its discretion in

18    admitting the evidence of Defendant's prior acts.

28

## 2.    Evidence of the head-butt on an officer

{55}    Defendant argues that the district court erred in allowing the prosecution's inquiry during cross-examination about whether Defendant had head-butted a police officer, arguing such evidence was "not connected by the prosecution in any manner to killing of Mr. Robledo." The State argues that Defendant testifying that Robledo was the first aggressor opened the door to being cross-examined on specific instances of conduct where Defendant was aggressive and violent, including the head-butt on an officer.

{56}    At trial, Defendant testified that on the day he shot Robledo, he went to his mother's house, saw Robledo, and they began arguing. Defendant claimed Robledo struck him and hit him. Defendant also testified that Robledo "picked on" him, that the Defendant had heard from his mother that Robledo had killed someone, and that Robledo was not nice and not caring. Defendant stated that he did not plan to kill Robledo, but that he was defending himself and knew that Robledo had a gun. Defendant thought he was in danger when Robledo allegedly threatened to get his pistol.

{57}    On cross-examination, the prosecution asked the district court to allow evidence of specific instances where the Defendant was aggressive, under Rule 11-

29

1   404(A)(2)(b)(ii) and Rule 11-405, because Defendant put forth evidence that Robledo,

2   the victim, was the first aggressor and had a violent character.   Defense counsel

3   objected to the question, arguing that it did not satisfy any of the purposes of Rule 11-

4   404. The court overruled the objection. The district court granted the prosecution's

5   request to admit evidence of specific instances of conduct and allowed the prosecution

6   to ask the question. The prosecutor asked Defendant, "[i]sn't it true that you have also

7   head-butted a police officer?" Defense counsel, in order to preserve the issue for

8   appeal, renewed his objection.

9   {58}    The Rules of Evidence contain an exception in criminal cases to the general rule

10   prohibiting character evidence: if a defendant offers evidence of a victim's pertinent

11   trait, the State can offer rebuttal "evidence of the defendant's same character trait."

12   Rule 11-404(A)(2)(b)(ii). "When evidence of a person's character is admissible, it

13   may be offered in the form of reputation or opinion evidence. *See* Rule 11-405(A).

14   "On cross-examination of the character witness . . . inquiry into relevant specific

15   instances of the person's conduct" are allowed. Rule 11-405(A). Or "when a person's

16   character or character trait is an essential element of a charge, claim, or defense, the

17   character or trait may also be proved by relevant specific instances of conduct." Rule

18   11-405(B).

30

{59}    While it is correct that the defendant who offers evidence of a victim's pertinent

character trait (e.g., violence) opens the door to allow the prosecution to offer

evidence of the defendant's same character trait, under Rules 11-404(A)(2)(b) and 11-

404(A)(2)(b)(ii) NMRA, the evidence that is admitted may only be reputation or

character evidence, unless the character trait is an essential element of the crime

charged.  Here, Defendant offered evidence at trial that he shot Robledo in self-

defense because Robledo was the first aggressor.  He supported this assertion by

offering evidence of Robledo's character: that Robledo was a violent and aggressive

man who had killed a person.  This was evidence of the victim's "pertinent trait": a

reputation for violence and aggression.  By offering the evidence of Defendant's head-

butt on an officer during cross-examination of Defendant, the State was offering

evidence that Defendant had the same traits for aggression and violence through an

inquiry into specific instances of Defendant's conduct.  The evidence of head-butting

an officer is not reputation or opinion testimony.  Nor is it proving an essential

element of the crime charged because violence is not a specific element of murder or

self-defense.  *State v. Baca*, 1993-NMCA-051, ¶ 16, 115 N.M. 536, 540, 854 P.2d

363, 367 ("The victim's violent disposition is not an 'element' of the defense in the

strictest sense; rather, it is used circumstantially -- that is, to help prove that the victim

31

*[handwritten: Prior bad acts Evidents in closing Argument inadmissible]*

STATE OF NEW MEXICO
COUNTY OF CURRY
NINTH JUDICIAL DISTRICT

STATE OF NEW MEXICO,

    Plaintiff,

v.

                                No. CR-2007-434

ALBERT RAMIREZ,

    Defendant.

## DESIGNATION OF EXHIBITS

Pursuant to Rule 12-212 NMRA, the Defendant designates the following exhibits:

1.     State's Exhibits #1 - #110.

*[handwritten: LETTER Rap Song stating of killing people to help prove 1st degree Murder Deliburate willFull it was admitted And Then said it was inadmissible.]*

Respectfully submitted:

_____

Jesse R. Cosby, Esq.
JESSE R. COSBY, P.C.
Attorney for Defendant
P.O. Box 3330
Roswell, New Mexico 88202-3330
(575) 625-0516

ALL PAPERS ON FILE + BITS
Record, documents Evidence,
cases. Relevant to my case

C. See case law.
State v. Brawley
Cite, as. 137 A.3d. 757
(Conn. 2016).

It says. the court Ruled to
Allow defendant may seek to
Establish that the Jury did,
in fact, observe him in Shackles
in connection with a petition
for writ of Habeas Corpus.


STATE v. BRAWLEY

Cite as 137 A.3d 757 (Conn. 2016)

Conn. **763**

trial with respect to whether the jury could or did see the restraints. In fact, defense counsel never renewed or amplified his initial objection after the trial court denied his motion to have the shackles removed. Furthermore, our review of the record reveals no evidence to suggest that the jury actually saw or otherwise knew of the defendant's shackles. In addition, according to the trial court's rectification of the record, the defendant always was seated at the defense table before the jury entered, and he remained seated there until after the jury left the courtroom. Finally, the fact that the trial court could not recall presiding over a single case in which a jury had been able to observe a

defendant in restraints strongly supports the conclusion that the jury in the present case did not see the defendant's shackles. On the present record, therefore, the defendant has failed to establish that the trial court's impropriety in having him shackled during his trial abridged his presumption of innocence.[4]

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.



---

arguments. Id., at 634–35, 125 S.Ct. 2007. With respect to the first contention, the court determined that, contrary to Missouri's assertion, the record in the case "[made] clear that the jury was aware of the shackles." Id., at 634, 125 S.Ct. 2007. With regard to the second argument, the court concluded that the record "contain[ed] no formal or informal findings" explaining the trial court's reasons for imposing the requirement of shackles beside "the fact that Deck already [had] been convicted." (Internal quotation marks omitted.) Id. On the basis of its rejection of the two foregoing arguments, the court rejected Missouri's final argument, concluding that, when "a court, without adequate justification, orders [a] defendant to wear shackles that *will be seen* by the jury, the defendant need not demonstrate prejudice to make out a due process violation. The [s]tate must prove beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained." (Emphasis added; internal quotation marks omitted.) Id., at 635, 125 S.Ct. 2007.

Thus, *Deck* makes clear that a heightened burden falls on the state when the unwarranted restraints *are visible* to the jury, and not when, as in *Banegas*, the record is silent on the matter. Accordingly, we disagree with the conclusion that the court reached in *Banegas.* We further note that our understanding of the United States Supreme Court's holding in *Deck* is consistent with that of other federal and state courts that have examined the issue.

See, e.g., *Mendoza v. Berghuis,* 544 F.3d 650, 654 (6th Cir.2008) ("*Deck's* facts and holding ... concerned only visible restraints at trial. The [United States] Supreme Court was careful to repeat this limitation throughout its opinion." [Emphasis omitted.]), cert. denied, 556 U.S. 1188, 129 S.Ct. 1996, 173 L.Ed.2d 1096 (2009); see also *Ochoa v. Workman,* 669 F.3d 1130, 1145 (10th Cir.) ("it is the potential impact on the jury of visible restraints that implicates the fundamental fairness of a jury trial proceeding"), cert. denied, ––– U.S. –––, 133 S.Ct. 321, 184 L.Ed.2d 190 (2012); *People v. Letner,* 50 Cal.4th 99, 155, 235 P.3d 62, 112 Cal.Rptr.3d 746 (2010) (*Deck* did not support contention that prosecution was required to disprove visibility when there was no evidence in record that jury observed defendant wearing shackles), cert. denied, 563 U.S. 939, 131 S.Ct. 2143, 179 L.Ed.2d 897 (2011), and cert. denied sub nom. *Tobin v. California,* 563 U.S. 939, 131 S.Ct. 2097, 179 L.Ed.2d 897 (2011); *Hoang v. People,* 323 P.3d 780, 785–86 (Colo.) (when restraints are visible to jurors, prosecution bears burden to prove harmless error, but when it is not apparent from record that jury had observed shackles, defendant must demonstrate visibility), cert. denied, ––– U.S. –––, 135 S.Ct. 233, 190 L.Ed.2d 175 (2014).

**4.** Of course, the defendant may seek to establish that the jury did, in fact, observe him in shackles in connection with a petition for a writ of habeas corpus.

case to that court for further proceedings consistent with this opinion.

In this opinion the other justices concurred.



321 Conn. 583

**STATE of Connecticut**

v.

**Michael BRAWLEY.**

No. 19441.

Supreme Court of Connecticut.

Argued Dec. 15, 2015.

Decided June 14, 2016.

**Background:** Defendant, who remained shackled during trial, was found guilty in the Superior Court, Judicial District of Waterbury, Schuman, J., of burglary, conspiracy to commit burglary, kidnapping, conspiracy to commit kidnapping, assault, and carrying a pistol without a permit by the jury, and of criminal possession of a firearm by the court. Defendant appealed. The Appellate Court affirmed. Defendant petitioned for certification to appeal.

**Holding:** The Supreme Court, Palmer, J., held that defendant did not provide evidence required to support claim that his presumption of innocence was abridged by shackles.

Affirmed.

**1. Criminal Law** ⟲637.7

Burglary defendant did not provide evidence demonstrating that jury actually was aware of his restraints at trial, as required to support claim that his presumption of innocence was abridged by trial court requiring him to remain shack-led; even though record did not disclose reason that shackling was reasonably necessary, defense did not make any offer of proof with respect to whether jury saw restraints, there was no evidence to suggest that jury actually saw shackles, court's rectification of record indicated that defendant always was seated at defense table before jury entered and after jury left courtroom, and court could not recall single case in which jury had been able to observe defendant in restraints. Practice Book 1998, § 42–46.

**2. Criminal Law** ⟲637.2

As a general proposition, a criminal defendant has the right to appear in court free from physical restraints.

**3. Criminal Law** ⟲308

The presumption of innocence, although not articulated in the constitution, is a basic component of a fair trial under the system of criminal justice.

**4. Criminal Law** ⟲637.2, 637.3

A defendant's right to appear before the jury unfettered is not absolute; a trial court may employ a reasonable means of restraint on a defendant if, exercising its broad discretion in such matters, the court finds that restraints are reasonably necessary under the circumstances. Practice Book 1998, § 42–46.

**5. Criminal Law** ⟲637.4

The law permits a state to shackle a criminal defendant during the guilt phase only in the presence of a special need. Practice Book 1998, § 42–46.

**6. Criminal Law** ⟲637.1

In order for a criminal defendant to enjoy the maximum benefit of the presumption of innocence, courts should make every reasonable effort to present the defendant before the jury in a manner that does not suggest, expressly or impliedly,

*Shack 10*

{41}    In reviewing the fundamental error exception to the preservation rule, we must first determine whether an error occurred and if so, whether the error was fundamental. *See id.* Fundamental error "must be such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive." *State v. Johnson*, 2010-NMSC-016, ¶ 25, 148 N.M. 50, 229 P.3d 523 (citation omitted). "Fundamental error only applies in exceptional circumstances when guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." *Id.*

{42}    In *Holly,* we held that no fundamental error occurred where it was unclear whether the juror had actually seen the defendant in handcuffs, and if they had, whether it was more than "inadvertent or insignificant exposure." 2009-NMSC-004, ¶ 42. Similarly, in *Johnson*, because there was no indication that the jury was aware the defendant was wearing leg irons during a trial, the presumption of innocence was not violated, the dignity of the judicial process was not affected, and the district court did not commit fundamental error. 2010-NMSC-016, ¶¶ 25, 29.

{43}    Here, defense counsel concedes that a black skirt on the table shielded the jury's view of Defendant's shackles and that he did not ask the court to make a finding of

22

ALL PAPERS are Facts

Record, documents, cases Relevant
TomyCase

D. PROSECUTORIAL Misconduct.

IN 3 INSTANCES.

① IN Cross Examination prosecutor
questioned petitioner of doing
legal Research to beat his charges.
and legal research to get the
Jury To buy this.
     ITS prosecutor,AL MISConduct
ON Comment ON Right To
Assist IN His defence.
          See exibits.

② Comment iN Closing Argument
that Mr. Ramirez is a
Menace to Society And A
Mallinger. I Need transcript
          There is No Evidence
to prove this.

③ USING prior bad acts iN Closing
Arguments. that were iNComissible
And Prejudicial and irrelevant
To The Murder Case
          See exibits.

1  prejudice or declare a mistrial.  Because it is unclear whether the jury saw the leg

2  restraints and if they did, there is no evidence that it was anything other than

3  inadvertent or insignificant exposure, this case is not the exceptional type that goes

4  to the violation of the foundation of presumption of innocence.  Further, this case does

5  not shock the conscience as Defendant's guilt is supported by substantial evidence in

6  the record, including eyewitness testimony and evidence of Defendant's motive and

7  a pattern of conduct toward Robledo.  *See State v. Trujillo*, 2002-NMSC-005, ¶ 60,

8  131 N.M. 709, 42 P.3d 814 (holding that because the Court found "substantial

9  evidence in the record to support Defendant's convictions, and because Defendant

10  failed to demonstrate circumstances that 'shock the conscience' or show a

11  fundamental unfairness," no fundamental error existed).  Accordingly, there was no

12  fundamental error by the district court.

13  **E.      The court did not abuse its discretion in admitting prior bad acts**

14  {44}    Defendant's fifth issue is that the district court erred in admitting evidence of

15  prior acts, in violation of Rule 11-402 NMRA.  Defendant argues that cumulatively,

16  the introduction of this evidence created the impression that Defendant was

17  troublesome and a lawbreaker.  The State argues that the district court did not err in

18  allowing the State to present evidence of Defendant's animus toward the victim or in

1    acted in the particular manner at the time of the incident in question.") It seems that

2    the information of Defendant head-butting an officer is being used only to show

3    Defendant's propensity for violence. And contrary to the State's argument, under

4    Rule 11-405(A) on cross-examination it is the specific instances of Robledo's conduct

5    that is allowed to rebut the testimony from Defendant of Robledo's "pertinent trait."

6    See Rule 11-405.

7    {60}    Accordingly, it was error for the district court to admit the evidence of

8    Defendant's prior act of head-butting a police officer. Non-constitutional error is

9    harmless when there is no reasonable probability the error affected the verdict. *State*

10   *v. Tollardo*, 2012-NMSC-008, ¶ 36, 275 P.3d 110. In the context of all the evidence

11   in the record as referenced in paragraphs 3 and 4, *supra*, this isolated error was

12   harmless and had no effect on the conviction.

13   **F.    The district court did not abuse its discretion by not declaring a mistrial**

14   **based on questions about Defendant's legal research**

15   {61}    Defendant's sixth issue is that the district court abused its discretion when it

16   denied Defendant's motion for a mistrial after the prosecutor cross-examined

17   Defendant about the amount of legal research he conducted. Defendant argues that

18   the prosecution's conduct shows a calculated and pervasive strategy of penalizing the

19   Defendant for the exercise of his constitutional rights by characterizing Defendant's

32

*prosecutor misconduct*

1  actions as manipulative abuses of "the system."  The State argues that because

2  Defendant initially indicated that he was seeking to argue a defense of self-defense,

3  the prosecutor did not cross the line by asking about the amount of legal research

4  Defendant had conducted.

5  {62}  During the cross-examination of Defendant, the prosecutor asked, "And you've

6  done a significant amount of legal research on how to get the jury to buy this?"  The

7  defense objected and moved for a mistrial.  The court directed the prosecution to lay

8  a foundation.  The prosecutor asked Defendant, "Do you recall giving a lot of requests

9  to go to the law library to research how to beat your charges?"  Defense counsel

10  objected a second time, arguing that the question rose to prosecutorial misconduct,

11  and again asked for a mistrial.  The judge ruled that he would not allow the questions

12  about Defendant's research and would not declare a mistrial.

13  {63}  We examine a district court's denial of a motion for mistrial based on an

14  allegation of prosecutorial misconduct under an abuse of discretion standard.  *See*

15  *Allen,* 2000-NMSC-002, ¶ 95 ("the trial court is in the best position to evaluate the

16  significance of any alleged prosecutorial errors" (citation omitted)); *see also State v.*

17  *Ramos-Arenas,* 2012-NMCA-117, ¶ 1, 290 P.3d 733.  An isolated, minor impropriety

18  ordinarily is not sufficient to warrant reversal , because a fair trial is not necessarily

33

1  a perfect one." *Allen,* 2000-NMSC-002, ¶ 95 (internal quotation marks and citations

2  omitted).

3  {64}   Reviewing all of the comments made, in the context in which they were made,

4  and taking into account those comments' potential effect on the jury, the questions

5  were isolated and minor.   Accordingly, the prosecutor's remarks did not deprive

6  Defendant of a fair trial.

7  **IV.   CONCLUSION**

8  {65}   We hold that the district court did not commit reversible error as to all of

9  Defendant's claims.   Accordingly, we affirm Defendant's convictions.

10  {66}   **IT IS SO ORDERED.**

11

12

13  **PETRA JIMENEZ MAES, Justice**

14

15  **WE CONCUR:**

16

17  **CHARLES W. DANIELS, Chief Justice**

18

19  **EDWARD L. CHÁVEZ, Justice**

34

Washington as a "self-serving, illogical selfish non-compassionate, no emotional interest in a family type of person," who acted irrational due to "drugs and alcoholism and a general not caring about other people." J.A. at 270–71. The crime, he implored to the jury, "[s]ure fits him." J.A. at 271. The prosecutor thus articulated perhaps the paradigm of the improper "bad character" argument—that the alleged criminal acts "fit" the evidence of Washington's character and lifestyle. Because this character attack pervaded the closing argument and rebuttal, we find that the prosecutor's misconduct was severe. *See Cook*, 602 F.2d at 120 (making the same conclusion after a pervasive character attack).

2.

[7] We also agree with Petitioner that the prosecutor engaged in serious misconduct when he characterized Tamara's story as having been consistent over time when there was no evidence supporting that factual assertion.

[8, 9] Misrepresenting facts in evidence can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Donnelly v. De-Christoforo*, 416 U.S. 637, 646, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). For similar reasons, asserting facts that were never admitted into evidence may mislead a jury in a prejudicial way. *See Berger v. United States*, 295 U.S. 78, 84, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). This is particularly true when a prosecutor misrepre-

sents evidence because a jury generally has confidence that a prosecuting attorney is faithfully observing his obligation as a representative of a sovereignty. *See id.* at 88, 55 S.Ct. 629.

Given this precedent, characterizing Tamara's conversations with different individuals as consistent comprised clear prosecutorial misconduct. The State suggested that Tamara had been consistent when it stated the following:

> This child talked to her mother, this child talked to the doctor. This child talked to the social service worker in detail. She testified. This child talked to Sergeant Elford in detail. This child went through preliminary examination and cross examination where there was cross examination and this child testified before you and *nowhere for the most part based upon what happened, has it changed.*

J.A. at 255 (emphasis added). Yet apart from the doctor's notes—to which the parties stipulated—the prosecutor elicited no evidence on the specifics of Tamara's conversations with any of these individuals, establishing only that conversations had occurred. Surely, then, there was no evidence as to whether or not her story had changed.

When Tamara herself testified, she stated only that she had conversations with the referenced people, and that she had told them "what happened." The prosecutor did not ask her to describe the details of those conversations, nor did she volunteer them.[4] Moreover, no other witnesses

4. Q. Did you tell your mother something that happened to you then?
  A. Yes.
  Q. Why'd you tell her?
  A. 'Cause I didn't want to go back there....
  Q. Did you talk to some nurses or maybe one nurse[?]
  A. I talked to a doctor and a nurse....
  Q. Did you tell them what happened to you[?]
  A. Yes.

  Q. Okay. And then ... did a lady come out to see you at your school?
  A. Yes.
  Q. Did she talk to you alone?
  A. Yes.
  Q. And did you tell her what had happened to you?
  A. Yes.
  Q. She asked you, didn't she?
  A. Yes.
  Q. Okay. And then later on there was some policemen, Sergeant Elford, this gentleman right here?

testified about what Tamara told them because such testimony would have been inadmissible hearsay. First, as Cora Beard was about to explain to the jury what Tamara had told her, Keston objected on hearsay grounds. She therefore testified only that, as a result of Tamara's statements, she did not move back in with Washington and she took Tamara to the hospital. During his examination of Sergeant Elford, the prosecutor only elicited that Elford interviewed Tamara Beard, and that he spoke to the prosecutor's office after that interview. Similarly, Woodson, the social service worker who examined Tamara, testified only that she had talked with Tamara four times, that Tamara had been alone with her for three of those conversations, and that as a result of their talks, she had contacted Sergeant Elford. She said nothing of the content of their conversations.

Given this testimony, we find that the State committed plain misconduct by stating that Tamara's story had not changed as she talked to these different individuals. Not only did the prosecutor improperly refer to statements not in evidence, but it is clear that the prosecutor's purpose was to enhance Tamara's credibility in the eyes of the jury. See, e.g., J.A. at 255 ("You think that a ten year old child is going to go through all of that, fool everybody, talking about two instances."). Such bolstering is also improper. Cf. United States v. Francis, 170 F.3d 546, 551 (6th Cir.1999) (stating that improper "[b]olstering occurs when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury"); United States v. Duval, No. 89–1891, 1990 WL 52371, at

\*2 (6th Cir. April 26, 1990) (unpublished decision) (stating that improper witness vouching occurs when a prosecutor alludes to evidence outside the record as supporting the witness's testimony).

[10, 11] Finally, we are unmoved by the State's feeble attempt to justify its plain misconduct. The State argues in its brief that in "this case, Petitioner was charged with first degree criminal sexual conduct involving penetration. Obviously Tamara must have given a statement to someone prior to trial in which she claimed penetration." Hofbauer's Br. at 23. In a similar vein, the State contended at oral argument that the prosecutor was simply pointing out to the jury that Tamara did not "recant" her story, a position the State argues was a reasonable inference given that the State brought the prosecution. This explanation is specious for two reasons. First, this justification simply sidesteps the impropriety at issue. The prosecution did far more than merely inform the jury that Tamara "must have" stated that penetration occurred at some point, or that she did not "recant" her story. Instead, it informed the jury that Tamara's story to each and every witness had never changed when there was in fact no evidence to that effect. This argument was a clear attempt to boost the credibility of Tamara and the believability of her story. Second, the very premise of the State's justification on appeal is flawed. Indeed, if the State had been attempting to argue the "reasonable inference" it described at oral argument and in its brief, that effort itself would have constituted gross misconduct. "[I]t is always improper for a prosecutor to suggest that a defendant is guilty merely be-

---

A. Yes.
Q. Did he talk to you and ask you what happened?
A. Yes.
Q. Go over it with you?
A. Yes.
Q. And then there came a time a while ago that you testified across the street over here in the District Court building before a judge, didn't you?

A. Yes.
Q. And he asked about telling the truth and you were under oath, is that right?
A. Yes.
Q. And you told the court what happened?
A. Yes.
J.A. at 162–63.

defendant needs and burden rests on the accused to demonstrate a constitutional violation. U.S.C.A. Const.Amend. 6.

**12. Criminal Law ⚖ 641.3**

Trial is unfair if the accused is denied counsel at a critical stage of the trial. U.S.C.A. Const.Amend. 6.

**13. Criminal Law ⚖ 641.13(1)**

If counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, there has been a denial of Sixth Amendment rights which makes adversary process itself presumptively unreliable. U.S.C.A. Const.Amend. 6.

**14. Criminal Law ⚖ 641.13(1)**

Only when surrounding circumstances justify a presumption of ineffectiveness can Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial. U.S.C.A. Const.Amend. 6.

**15. Criminal Law ⚖ 641.13(1), 1166.11**

Fact that accused can attribute a deficiency in his representation to a source external to trial counsel does not make it any more or less likely that he received the type of trial envisioned by the Sixth Amendment, nor does it justify reversal of his conviction absent an actual effect on the trial process or the likelihood of such an effect. U.S.C.A. Const.Amend. 6.

**16. Criminal Law ⚖ 641.13(2)**

Fact that defendant's newly appointed counsel was given only 25 days to prepare for trial of case which it had taken the Government four and one-half years to investigate, fact that counsel was a young attorney primarily engaged in real estate practice and was trying his first criminal case, gravity of the charge of mail fraud against the defendant, complexity of the case, and inaccessibility of witnesses to counsel did not, individually or in combination provide a basis for concluding that competent counsel was not able to provide

defendant with effective assistance of counsel; it was error to infer that right to counsel had been violated. U.S.C.A. Const. Amend. 6.

**17. Criminal Law ⚖ 641.13(4)**

Character of a particular lawyer's experience may shed light in an evaluation of his actual performance but it does not justify a presumption of ineffectiveness in the absence of such an evaluation. U.S.C.A. Const.Amend. 6.

**18. Criminal Law ⚖ 641.13(2)**

Neither fact that trial counsel used notes to assist him during opening statement to the jury nor fact that counsel told the jury that it was counsel's first trial was so inherently inconsistent with a reasonable effective defense as to justify a presumption that defendant's trial was unfair.

**19. Criminal Law ⚖ 1083**

District court had jurisdiction to entertain motion for new trial based on ineffective assistance of counsel even though case was pending on direct appeal; court could have denied the motion on its merits or certified its intention to grant the motion to the Court of Appeals, which could have entertained a motion for remand. Fed. Rules Cr.Proc.Rule 33, 18 U.S.C.A.

**20. Criminal Law ⚖ 1192**

Where Court of Appeals did not reach claim of actual ineffectiveness of counsel, because it reversed conviction based on presumption of ineffective assistance of counsel under the circumstances, claim of actual ineffectiveness remained open.

*Syllabus* *

Respondent and two associates were indicted on mail fraud charges involving a "check kiting" scheme whereby checks were transferred between a bank in Florida and a bank in Oklahoma. When respondent's retained counsel withdrew shortly before the scheduled trial date, the District Court appointed a young lawyer with a real

---

\* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the

reader. See *United States v. Detroit Lumber Co.,* 200 U.S. 321, 337, 26 S.Ct. 282, 287, 50 L.Ed. 499.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Roquel Allen CARTER, Defendant–
Appellant.

No. 99–5430.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 1, 2000.

Decided and Filed Jan. 18, 2001.

Defendant was convicted in the United States District Court for the Middle District of Tennessee, John T. Nixon, J., of armed bank robbery, and he appealed. The Court of Appeals, Moore, Circuit Judge, held that: (1) prosecutor committed plain error in misstating the testimony of key identification witness and by repeatedly insisting that defense counsel was lying about witness's testimony; (2) prosecutor's misconduct affected defendant's substantial rights; and (3) misconduct seriously affected the integrity of judicial proceedings, warranting reversal of conviction and remand for new trial.

Reversed and remanded.

**1. Criminal Law ⟐1037.1(2)**

Prosecutor committed plain error in misstating the testimony of identification witness by insisting that she did not testify that federal agent told her before she took the witness stand that she had made a mistake in identifying robber, when she had conceded on three separate occasions during trial that agent had told her she made a mistake, just before she gave her trial testimony, and by repeatedly insisting that defense counsel was lying about witness's testimony.

**2. Criminal Law ⟐1171.1(1)**

In determining when prosecutorial misconduct warrants a new trial, a court must first consider whether the prosecutor's conduct and remarks were improper and, if so, the court must then consider and weigh the following four factors in determining whether the impropriety was flagrant and thus warrants reversal: (1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong.

**3. Criminal Law ⟐1134(3)**

When reviewing challenges to a prosecutor's remarks at trial, Court of Appeals examines the prosecutor's comments within the context of the trial to determine whether such comments amounted to prejudicial error, and in so doing, Court considers whether, and to what extent, the prosecutor's improper remarks were invited by defense counsel's argument.

**4. Criminal Law ⟐1037.1(1)**

Prosecutorial misconduct may be so exceptionally flagrant that it constitutes plain error, and is grounds for reversal even if the defendant did not object to it.

**5. Criminal Law ⟐1030(1)**

Before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights, and if all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

**6. Criminal Law ⟐720(2), 723(1)**

While counsel has the freedom at trial to argue reasonable inferences from the evidence, counsel cannot misstate evidence or make personal attacks on opposing counsel.

**7. Criminal Law ⟐1171.7**

Prosecutor's misconduct, constituting plain error, in misstating the testimony of identification witness by insisting that she did not testify that federal agent told her before she took the witness stand that she had made a mistake in identifying robber, when she had so testified three times, and by repeatedly insisting that defense coun-

Read

to mislead the jury or prejudice the defendant; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused. *United States v. Monus*, 128 F.3d 376, 394 (6th Cir.1997) (citing *United States v. Cobleigh*, 75 F.3d 242, 247 (6th Cir.1996)); *Carroll*, 26 F.3d at 1385 (citing *United States v. Leon*, 534 F.2d 667, 679 (6th Cir.1976)). To reverse a conviction because of an improper non-flagrant statement, a reviewing court must determine that: 1) the proof of the defendant's guilt is not overwhelming; 2) the defense counsel objected; and 3) the trial court failed to cure the impropriety by failing to admonish the jury. *Monus*, 128 F.3d at 394; *Carroll*, 26 F.3d at 1385–86 (citing *United States v. Bess*, 593 F.2d 749, 757 (6th Cir.1979)).

[6, 7] The Defendants' first contention pertaining to misconduct is that the prosecutor improperly vouched for government witnesses. Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the United States Attorney behind that witness. *See, e.g., Taylor v. United States*, 985 F.2d 844, 846 (6th Cir. 1993); *United States v. Martinez*, 981 F.2d 867, 871 (6th Cir.1992). Generally, improper vouching involves either blunt comments, *see, e.g., United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir.1992) (stating that improper vouching occurred when prosecutor asserted own belief in witness's credibility through comments including "I think he [the witness] was candid. I think he is honest."), or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony, *see, e.g., Carroll* 26 F.3d at 1388 (stating that improper vouching occurred when prosecutor argued that the witness testifying under a plea agreement was in jeopardy if the court or government did not find the testimony truthful).

[8] Here the specific vouching allegations stem from the prosecutor's references to the plea agreements of testifying witnesses. We have allowed a prosecutor to refer to the plea agreement of a testifying witness. *See United States v. Renteria*, 106 F.3d 765, 767 (7th Cir.1997). The prosecutor may elicit testimony about its terms, attack the credibility of the witness because of it and even refer to the plea agreement of a government witness in an attempt to deflect defense counsel's use of the agreement to attack the witness's credibility. *See United States v. Monroe*, 943 F.2d 1007 (9th Cir.1991), *cert. denied*, 503 U.S. 971, 112 S.Ct. 1585, 118 L.Ed.2d 304 (1992).

The potential for impropriety emerges, however, when a prosecutor explains that there is to be a recommendation to the witness's sentencing court whether the terms of the plea agreement have been adhered to. Because that recommendation is dependent upon whether the witness testifies truthfully, it is easy for a prosecutor to imply, either intentionally or inadvertently, that the prosecutor is in a special position to ascertain whether the witness was, in fact, testifying truthfully. *Carroll*, 26 F.3d at 1387. Such implication leads quickly to improper vouching. *See also United States v. Dandy*, 998 F.2d 1344, 1353 (6th Cir.1993).

In the present case, the prosecutor improperly elicited information about and referred in her argument to the plea agreement made between the government and two of its witnesses, Lincoln Williams and Larry Walker. The first improper reference to the plea agreements came during the prosecutor's opening argument when she asserted that "… if [Mr. Williams] testifies in this court truthfully, it's my intent to, as a government's representative, to recommend a 15 year sentence for him." She followed this by explaining that Mr. Walker had backed out of his original plea agreement, gone to trial, and been convicted and sentenced, but that she had "told him that [she] will go and inform the judge … of his cooperation here, and it rests with the judge … as to whether he wants to amend the sentence …." Though she stated that each decision regarding the witnesses' sentences ultimately rested with the sentencing judge, the prosecutor used her opening argument to emphasize the role

sel's use of agreement to attack witness' credibility.

**9. Criminal Law ⚖706(3)**

Prosecutor improperly vouched for witness' credibility when, in examining witness regarding his plea agreement, prosecutor elicited testimony indicating that plea agreement materialized only after prosecutor believed that witness was being truthful, thereby improperly indicating belief in witness' credibility.

**10. Criminal Law ⚖706(3, 8)**

Prosecutor engaged in improper bolstering of agent's testimony when she asked agent on at least 14 occasions whether he had corroborated information obtained from informant, but did not elicit further details, except in two instances, as to manner of corroboration after agent answered affirmatively, thereby leading reasonable juror to believe that prosecutor was implying guarantee of truthfulness based on facts outside the record.

**11. Criminal Law ⚖720(5)**

"Bolstering" occurs when the prosecutor implies that the witness' testimony is corroborated by evidence known to the government but not known to the jury.

See publication Words and Phrases for other judicial constructions and definitions.

**12. Criminal Law ⚖706(3)**

A prosecutor may ask a government agent or other witness whether he was able to corroborate what he learned in the course of a criminal investigation; however, if the prosecutor pursues this line of questioning, she must also draw out testimony explaining how the information was corroborated and where it came from.

**13. Criminal Law ⚖720(5)**

Prosecutor engaged in improper attack on testifying defendant's credibility when, in closing arguments, she called defendant a liar and con man without establishing evidentiary bases for such attacks.

**14. Witnesses ⚖277(1)**

If a defendant testifies, a prosecutor may attack his credibility to the same extent as any other witness.

**15. Criminal Law ⚖720(5)**

To avoid impropriety, comments of prosecutor who asserts in closing arguments that testifying defendant was lying must reflect reasonable inferences from the evidence adduced at trial.

**16. Criminal Law ⚖720(5)**

Prosecutorial misconduct occurs when a jury could reasonably believe that the prosecutor was expressing a personal opinion as to the testifying defendant's credibility.

**17. Criminal Law ⚖1171.1(2.1)**

Upon showing that prosecutorial comments were improper, a defendant typically must show that the impropriety was so flagrant that it required reversal, in that only a retrial could correct the error.

**18. Criminal Law ⚖706(2)**

Prosecutor's conduct in eliciting agent's testimony regarding guilty pleas of individuals who did not testify at trial was flagrantly improper.

**19. Criminal Law ⚖1186.1**

Although individual instances of improper comments and questions by prosecutor were insufficient, standing alone, to warrant reversal under standards applicable to flagrant and nonflagrant improprieties, new trial was warranted when numerous examples of impropriety were viewed together and in the context of entire trial.

**20. Criminal Law ⚖1171.1(2.1)**

The determination of whether a prosecutor's behavior constituted prejudicial error must be made in the context of the whole trial.

**21. Criminal Law ⚖700(1)**

Prosecutors must be zealous advocates and enforcers of the law while, at the same time, acting in a manner that ensures a fair and just trial.

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lewis FRANCIS (97–1129) and Louay
Francis (97–1130), Defendants–
Appellants.**

**Nos. 97–1129, 97–1130.**

United States Court of Appeals,
Sixth Circuit.

Argued and Submitted April 20, 1998.

Decided Feb. 25, 1999.

Defendants were convicted by jury in the United States District Court for the Eastern District of Michigan, Barbara K. Hackett, J., of, inter alia, conspiracy to launder monetary instruments and criminal forfeiture. Defendants appealed. The Court of Appeals, Boyce F. Martin, Jr., Chief Judge, held that: (1) prosecutor improperly elicited information about, and referred in argument to, plea agreements between government and two witnesses; (2) prosecutor improperly vouched for witness' credibility; (3) prosecutor engaged in improper bolstering of agent's testimony; (4) prosecutor engaged in improper attack on testifying defendant's credibility; and (5) new trial was warranted when numerous examples of impropriety were viewed together and in the context of entire trial.

Reversed and remanded.

**1. Criminal Law ⬅️1156(1)**

Court of Appeals reviews the denial of a motion for a new trial for an abuse of discretion.

**2. Criminal Law ⬅️1139**

Whether statements by prosecutor amount to prosecutorial misconduct and whether they rendered the trial fundamentally unfair are mixed questions of law and fact and are reviewed de novo.

**3. Criminal Law ⬅️1171.1(2.1)**

When reviewing claims of prosecutorial misconduct, Court of Appeals determines first whether challenged statements were im-

proper; if they appear improper, court then looks to see if they were flagrant and warrant reversal.

**4. Criminal Law ⬅️713**

Standard by which courts determine flagrancy of prosecutor statements is (1) whether statements tended to mislead jury or prejudice defendant, (2) whether statements were isolated or among a series of improper statements, (3) whether statements were deliberately or accidentally before jury, and (4) total strength of the evidence against defendant.

**5. Criminal Law ⬅️1171.1(2.1)**

To reverse a conviction based on improper, nonflagrant statement by prosecution, a reviewing court must determine that (1) the proof of defendant's guilt is not overwhelming, (2) defense counsel objected, and (3) trial court failed to cure the impropriety by failing to admonish jury.

**6. Criminal Law ⬅️706(2), 720(5)**

Prosecutor improperly elicited information about, and referred in argument to, plea agreements between government and two witnesses when she emphasized role that she would have in recommending whether witnesses' sentences should be lowered as result of their testimony in defendants' trial and suggested that her recommendation would depend upon whether she personally believed that witnesses were being truthful.

**7. Criminal Law ⬅️720(5)**

"Improper vouching" occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness' credibility, thereby placing the prestige of the office of the United States Attorney behind that witness.

See publication Words and Phrases for other judicial constructions and definitions.

**8. Criminal Law ⬅️706(3), 720(5)**

Prosecutor may elicit testimony about terms of witness' plea agreement, attack credibility of witness because of agreement, and even refer to agreement of a government witness in attempt to deflect defense coun-

**7. Criminal Law ⟚1144.13(3)**

In determining whether there was sufficient evidence to permit case to be submitted to jury and to support verdict of guilty rendered, Court of Appeals views evidence in light most favorable to Government.

**8. Conspiracy ⟚47(7)**
**Gaming ⟚98(1)**

Absent other error, evidence was sufficient to sustain convictions of conducting gambling business in violation of state law involving five or more persons and having gross revenue of more than $2,000 on single day, and was sufficient to sustain convictions of conspiracy to commit that offense. 18 U.S.C.A. §§ 371, 1955.

**9. Conspiracy ⟚47(7)**
**Gaming ⟚98(1)**

Evidence indicating that defendant exchanged betting line information with another person involved in gambling operation involving five or more persons and that defendant and other person made bets with each other was insufficient to sustain conviction of conducting gambling business in violation of state law involving five or more persons and having gross revenue of more than $2,000 on a single day, and was insufficient to sustain conviction of conspiracy to commit that offense. 18 U.S.C.A. §§ 371, 1955.

**10. Criminal Law ⟚691**

Defendant should be afforded every reasonable opportunity to challenge testimony that tends to incriminate him and to demonstrate his innocence.

**11. Criminal Law ⟚719(1)**

Prosecutor's remarks in closing argument that defendant was trying to "con" the jury were improper and highly prejudicial, in that they suggested that prosecutor had information not disclosed to jury demonstrating defendant's guilt.

**12. Criminal Law ⟚719(1, 3)**

Prosecuting attorney may not express to jury his personal knowledge of guilt of accused or bring to its attention purported facts that are not in evidence and are prejudicial.

**13. Criminal Law ⟚730(1)**

Not every instance of prosecutorial misconduct requires reversal of conviction and when isolated remarks are made in course of long trial and jury is given appropriate cautionary instruction designed to overcome or to dissipate any prejudice that may have been caused, error may be harmless.

**14. Criminal Law ⟚1171.1(2)**

In determining whether prosecutorial misconduct is prejudicial, Court of Appeals considers degree to which remarks complained of had tendency to mislead jury and to prejudice accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before jury, and strength of competent proof introduced to establish guilt of accused.

**15. Criminal Law ⟚723(2), 1171.1(6)**

In prosecution for conspiracy and for conducting gambling business, prosecutor's remarks characterizing defendants' gambling activities as part of nationwide scheme that was causing substantial hardship to innocent persons, that was effecting decay of our cities, and that was financing other criminal activity, were reversibly erroneous, in view of fact that evidence was not overwhelming and was so esoteric that much of it required expert interpretation and explanation, prosecutor continued his prejudicial remarks even after court advised him to stop, and court did not admonish jury to disregard or give appropriate cautionary instruction.

---

Neil Fink, Michael S. Friedman, Detroit, Mich., for defendants-appellants.

Ralph B. Guy, Jr., U. S. Atty., Detroit, Mich., Laurence Leff, Atty. In Charge, U. S. Dept. of Justice, Washington, D.C., Joseph S. Davies, Jr., App. Section, Crim. Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before EDWARDS, PECK and McCREE, Circuit Judges.

nor daughter of defendant's live-in girl-friend was ineffective in failing to object to acts of misconduct by prosecutor in improperly emphasizing evidence of defendant's "bad character" during closing argument; while decision not to object during cross-examination regarding character evidence defense had introduced may have had sound tactical basis, no explanation existed for failure to object to prosecutor's most egregious character attacks during closing argument, and basic misunderstanding by counsel in believing that State could use character evidence defense had offered for any manner it desired was objectively unreasonable. U.S.C.A. Const. Amend. 6.

**24. Criminal Law ⊜338(7)**

Rules addressing admission of character evidence implicitly recognize the fine yet vital distinction between the risk of prejudice borne by evidence introduced for permissible reasons, and the clear prejudice that results from an uncured and flagrantly improper use of that same evidence, and thus, even if some potential prejudice arises from the introduction of certain evidence, court generally presumes that if properly instructed by judges and guided by counsel, juries are capable of considering evidence for one purpose but not another.

**25. Habeas Corpus ⊜486(2)**

Determination by state court that counsel was not ineffective in failing to object to prosecutor's characterization of story told by child victim of alleged criminal sexual conduct as having been consistent over time, where there was no evidence to support such a factual assertion, involved an unreasonable application of clearly established law, and thus could provide basis for habeas corpus relief under Antiterrorism and Effective Death Penalty Act (AEDPA); failure to object fell below an objective standard of reasonableness, and was based on simple incompetence rather than sound trial strategy. U.S.C.A. Const.Amend. 6; 28 U.S.C.A. § 2254(d)(1).

**26. Criminal Law ⊜641.13(2.1)**

Counsel for defendant, who was charged with acts of criminal sexual conduct against minor daughter of defendant's life-in girlfriend, was ineffective in failing to object to prosecutor's characterization of story told by daughter as having been consistent over time, where there was no evidence to support such a factual assertion. U.S.C.A. Const.Amend. 6.

**27. Criminal Law ⊜1144.15**

Appellate court generally must presume that juries follow their instructions, and is excused from applying such a presumption only when there is a strong likelihood that the effect of the evidence would be devastating to the defendant, and that there is an overwhelming probability that the jury will be unable to follow the court's instructions. U.S.C.A. Const.Amend. 6.

**28. Criminal Law ⊜641.13(2.1)**

A court reviewing a claim that defense counsel was ineffective in failing to object must look at factors independent of the general effectiveness of objecting, such as other possible trial strategies, the degree of the purported misconduct, or the admissibility of the evidence in question. U.S.C.A. Const.Amend. 6.

**29. Criminal Law ⊜641.13(2.1)**

Defense counsel's deficient performance in failing to object during closing argument in prosecution for criminal sexual conduct to prosecutor's improper emphasis on evidence of defendant's bad character, or to prosecutor's characterization of story told by victim as having been consistent over time where there was no evidence to support such an assertion, was prejudicial, and could provide basis for postconviction relief; trial was a credibility contest, and twin acts of misconduct, in which prosecutor improperly boosted daughter's credibility by diminishing that of defendant, very likely tipped scales in daughter's favor. U.S.C.A. Const.Amend. 6.

she would have in recommending whether the witnesses' sentences should be lowered because of their testimony in the Francis trial. The wording of her argument made it clear that her recommendation would depend on whether she personally believed Mr. Williams and Mr. Walker told the truth. Because this could lead a reasonable juror to infer that the prosecutor had a special ability or extraneous knowledge to assess credibility, the statements were improper.

[9] The more troublesome reference to Mr. Williams's plea agreement came during his testimony as the prosecutor examined him. Through a series of questions, the prosecutor elicited information about the initiation of his plea agreement. The jury heard how the prosecutor and Mr. Williams met once and the meeting ended "abruptly" because the prosecutor "said [Mr. Williams] wasn't telling the truth, . . . wasn't protecting people at that time." The jury then heard that the prosecutor and Mr. Williams met again, at which time the prosecutor finally believed him and offered him a plea agreement. Mr. Williams's testimony made it clear to the jury that the plea agreement materialized only after the prosecutor believed him. Because this indicated a belief in the witness's credibility, it was improper as well. It follows that this set of remarks constitutes improper vouching.

[10-12] Also here are the arguments that the prosecutor engaged in improper bolstering. Bolstering and vouching are much alike and go to the heart of a fair trial. Bolstering occurs when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury. *United States v. Sanchez,* 118 F.3d 192, 198 (4th Cir.1997). A prosecutor may ask a government agent or other witnesses whether he was able to corroborate what he learned in the course of a criminal investigation. However, if the prosecutor pursues this line of questioning, she must also draw out testimony explaining how the information was corroborated and where it originated. *See United States v. Lewis,* 10 F.3d 1086, 1089 (4th Cir.1993).

Here, the prosecutor asked Agent Blackwood repeatedly whether he had corroborat-

ed information obtained from Mr. Walker. There were at least fourteen such inquiries. Although Agent Blackwood answered each in the affirmative, he provided further detail in only two instances. He did this by properly adding that he had corroborated what Mr. Walker had told him by checking police reports, bank records, tax records, and interviews and conversations with other individuals. He also testified that he had corroborated the drug dealing by arranging for an undercover officer to purchase drugs. On all other occasions, however, Agent Blackwood responded to questions about corroboration by merely asserting that he had, in fact, corroborated the information. The prosecutor's failure to introduce to the jury whether the information was corroborated via documents, searches, conversations, or other means, would lead a reasonable juror to believe that the prosecutor was implying a guarantee of truthfulness based on facts outside the record. This particular group of comments therefore amounts to improper bolstering.

[13-16] Lewis Francis also raises the prosecutor improperly questioning his credibility. If a defendant testifies as here, a prosecutor may attack his credibility to the same extent as any other witness. *See Raffel v. United States,* 271 U.S. 494, 497, 46 S.Ct. 566, 70 L.Ed. 1054 (1926), *see also Fitzpatrick v. United States,* 178 U.S. 304, 315, 20 S.Ct. 944, 44 L.Ed. 1078 (1900). This Court has held that a prosecutor may assert that a defendant is lying during her closing argument when emphasizing discrepancies between the evidence and that defendant's testimony. *See United States v. Veal,* 23 F.3d 985, 989 (6th Cir.1994). To avoid impropriety, however, such comments must "reflect reasonable inferences from the evidence adduced at trial." *See id.* (quoting *United States v. Goodapple,* 958 F.2d 1402, 1409–10 (7th Cir.1992)). Again, misconduct occurs when a jury could reasonably believe that the prosecutor was, instead, expressing a personal opinion as to the witness's credibility. *Taylor,* 985 F.2d at 846 (citing *United States v. Causey,* 834 F.2d 1277, 1283 (6th Cir.1987), *cert. denied,* 486 U.S. 1034, 108 S.Ct. 2019, 100 L.Ed.2d 606 (1988)).

was plainly improper. Second, we will consider whether Keston was constitutionally ineffective for failing to object to the prosecutorial misconduct. Third, we will consider whether that ineffectiveness satisfies the "cause and prejudice" exception to procedural default, allowing us to ask whether the misconduct itself provides grounds for habeas relief. We find for Washington on all three questions.

### A.

Before assessing whether Keston was ineffective for failing to object to the prosecutor's actions, we must first determine whether the prosecutor committed misconduct. *See generally Cobb v. Perini*, 832 F.2d 342, 347–48 (6th Cir.1987) (rejecting claim that counsel's failure to object comprised ineffectiveness in part because it was unclear whether challenged evidence was improper); *Barton v. Morris*, No. 95-3848, 1996 WL 408504, at *2 (6th Cir. July 19, 1996) (unpublished decision) (concluding that counsel's failure to object to prosecutor's closing argument was not ineffective because "those comments did not amount to prosecutorial misconduct and would not have provided the basis for action by the trial judge"). Juxtaposing precedent from this circuit alongside the trial record convinces us that several aspects of the prosecutor's behavior clearly crossed the line into plain and prejudicial impropriety.

### 1.

[3, 4]  First, we address the prosecution's emphasis on Washington's "bad character." A fundamental rule of evidence is that a defendant's "bad character" cannot be used to argue that the defendant committed the crime for which he is being tried, or had the propensity to commit that crime. *See, e.g.,* Fed.R.Evid. 404(a) ("Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion...."); Mich. R. Evid. 404(a) (same); *Michelson v. United*

*States*, 335 U.S. 469, 476, 69 S.Ct. 213, 93 L.Ed. 168 (1948) (stating that improper character evidence "weigh[s] too much with the jury and ... overpersuade[s] them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge"); *United States v. Vance*, 871 F.2d 572, 575 (6th Cir.1989) (providing that "bad acts evidence is not admissible to prove character or criminal propensity" under Fed. R.Evid. 404(b)); *United States v. Ring*, 513 F.2d 1001, 1004 (6th Cir.1975) (stating that in jury trials, evidence of a criminal defendant's bad acts or prior misconduct is inadmissible to show criminal propensity because it "tends to confuse the issue of guilt or innocence of the specific offenses charged and to weigh too heavily with the jury"). When a prosecutor dwells on a defendant's bad character in this prohibited manner, we may find prosecutorial misconduct. *See, e.g., Cook v. Bordenkircher*, 602 F.2d 117, 120 (6th Cir.1979) (noting that the "prosecutor's misconduct in this case is severe" due to his "persistent Ad hominem attack on the petitioner's character").

[5, 6]  In this case, we find that while the evidence as to Washington's character was admissible for certain limited purposes, the prosecutor went far beyond the bounds of permitted conduct when presenting that evidence to the jury. Because Keston introduced much of this evidence as part of his defense strategy, *see infra*, and because aspects of Washington's character shed light on why Tamara had not informed others of the alleged acts, we do not find that the State's cross-examination of Washington constituted prejudicial misconduct on its own. However, the prosecutor's animated recitation of this character evidence during closing arguments was plainly improper. In his initial summation, the prosecutor improperly implied that the jurors should consider Washington's unseemly character when rendering their verdict; in his rebuttal, he explicitly urged them to do so. Meanwhile, he attacked

**TORRES v. PRUNTY**                              **1109**
Cite as 223 F.3d 1103 (9th Cir. 2000)

to stand trial." *Drope,* 420 U.S. at 180, 95 S.Ct. 896.

[11]  The first of the trial court's findings was unreasonable.  It is true that a finding by a trial court regarding credibility is ordinarily the kind of finding to which we would defer on collateral review.  *See Thompson v. Keohane,* 516 U.S. 99, 111 116 S.Ct. 457, 133 L.Ed.2d 383 (1995).  But here the factfinding procedure by the judge was clearly inadequate.  Defense counsel twice related to the court that Torres now believed that defense counsel and the court were part of the conspiracy against Torres; counsel then suggested that a competency hearing would be appropriate.  The court refused to order a hearing.  It concluded, without questioning Torres, that (1) Torres was simply continuing his effort to remove his counsel, (2) that Torres wanted to get rid of counsel because she was not doing what he wanted her to do, and (3) that Torres was "no different than any other defendant who is dissatisfied with his attorney."

In light of the previous medical evaluation by Dr. Wells, it was unreasonable for the court not to make a more complete inquiry into the nature of defense counsel's statement that Torres now believed the conspiracy against him included his counsel and the trial judge.  Although Wells had opined that Torres was competent to stand trial, he also concluded, on the strength of testing designed to detect dissembling, that Torres was "fully credible in his statements [that he was a victim of a medical conspiracy] and not seeking consciously to deceive in any way."  Thus, the Wells evaluation should have alerted the trial court to the strong possibility that Torres was not dissembling when he told his attorney that he now believed she and the trial judge were part of the conspiracy against him.  At the very least, the trial court could not have concluded reasonably that Torres was disingenuous without inquiring of Torres himself, or of Dr. Wells.  On these facts, merely observing Torres's

demeanor in court would be insufficient factfinding to make a determination about Torres's credibility.

[12]  The trial court's second finding, that there was no bona fide doubt regarding Torres's competence, was conclusionary and not fairly supported by evidence on the record.[5]  After dismissing the notion that Torres's conspiracy delusion had now spread to his attorney and the court, the judge stated "[u]nless there is something specific, the court will not declare a doubt."  But there was more than sufficient evidence before the trial judge at that time.  First, defense counsel had proffered evidence that the defendant would no longer be able to assist rationally in his defense because he believed his attorney was part of a greater conspiracy against him.  *See United States v. Nuci,* No. 96–CR601, 1998 WL 341940, at * (S.D.N.Y. June 26, 1998) (defendant's paranoid delusions of conspiracy against him rendered him unable to assist in his defense despite factual understanding of role of lawyers and judge in courtroom), *aff'd* 173 F.3d 847, 1999 WL 245869 (2d Cir.), *cert. denied,* —— U.S. ——, 120 S.Ct. 105, 145 L.Ed.2d 89 (1999); *United States v. Blohm,* 579 F.Supp. 495, 504–05 (S.D.N.Y. 1983) (amended opinion).  Torres's defense counsel was in the best position to evaluate Torres's competence and ability to render assistance.  *See Medina v. California,* 505 U.S. 437, 450, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992).  Her recommendation to the judge, while not necessarily sufficient to create a bona fide doubt, should have been considered seriously by the court.  *See id.*

[13]  Finally, defendant's unusual and self-defeating behavior in the courtroom suggested that an inquiry into competence was required.  The district court catalogued Torres's peculiar behavior: he insisted on wearing jailhouse blues; threatened to assault his attorney; insisted, after being ordered shackled, to be handcuffed

---

5.  In contrast, the trial court in *Maggio* had made specific findings of fact that justified its

refusal to hold a competency hearing.  *See Maggio,* 462 U.S. at 113–15, 103 S.Ct. 2261.

**14. Criminal Law ⚎641.13(1)**

To prevail on ineffective assistance of counsel claim, defendant must show that counsel's performance was deficient, in that it involved errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment, and that those deficiencies were prejudicial to the defense. U.S.C.A. Const.Amend. 6.

**15. Criminal Law ⚎641.13(1)**

To establish deficient performance by counsel, defendant must show that counsel's conduct fell below an objective standard of reasonableness, and that counsel's identified acts and omissions were outside the wide range of professionally competent assistance. U.S.C.A. Const.Amend. 6.

**16. Criminal Law ⚎641.13(1)**

In determining whether counsel's performance was deficient, court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. U.S.C.A. Const.Amend. 6.

**17. Criminal Law ⚎641.13(1)**

In evaluating an ineffective assistance of counsel claim, courts must not view a trial in hindsight, but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors. U.S.C.A. Const.Amend. 6.

**18. Criminal Law ⚎641.13(2.1)**

Counsel's failure to object to prosecutorial misconduct constitutes deficient performance when that failure is due to clear inexperience or lack of knowledge of controlling law, rather than reasonable trial strategy. U.S.C.A. Const.Amend. 6.

**19. Criminal Law ⚎641.13(1)**

To show that he suffered prejudice as result of counsel's deficient performance, defendant must demonstrate that there is

a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that but for counsel's unprofessional errors, the result of the proceeding would have been different. U.S.C.A. Const.Amend. 6.

**20. Criminal Law ⚎641.13(1)**

Essential question in determining if defendant suffered prejudice as result of counsel's deficient performance is whether better lawyering would have produced a different result. U.S.C.A. Const.Amend. 6.

**21. Habeas Corpus ⚎486(2)**

Determination by state court that counsel was not ineffective in failing to object to misconduct by prosecutor in placing improper emphasis on evidence of defendant's bad character during closing argument involved an unreasonable application of clearly established law, and thus could provide basis for habeas corpus relief under Antiterrorism and Effective Death Penalty Act; counsel's failure to object fell below an objective standard of reasonableness and was outside the wide range of professionally competent assistance, and resulted in prejudice. U.S.C.A. Const.Amend. 6; 28 U.S.C.A. § 2254(d)(1).

**22. Criminal Law ⚎641.13(6)**

Decision by counsel for defendant charged with acts of criminal sexual conduct against minor daughter of defendant's live-in girlfriend not to object during State's cross-examination of defendant regarding evidence of defendant's bad character, which was part of strategy of providing jury a basis for disbelieving testimony of victim, represented a reasonable tactical decision, and did not constitute ineffective assistance of counsel; strategy was one of few possible ways to "spin" evidence of defendant's unappealing character into a potentially exculpatory use. U.S.C.A. Const.Amend. 6.

**23. Criminal Law ⚎641.13(2.1)**

Counsel for defendant charged with acts of criminal sexual conduct against mi-



correctly identified the governing legal principle from the Supreme Court's decisions, but unreasonably applied that principle to the facts of the case, it may grant petition for writ of habeas corpus. 28 U.S.C.A. § 2254(d)(1).

**3. Criminal Law ⟲376**

A defendant's bad character cannot be used to argue that the defendant committed the crime for which he is being tried, or had the propensity to commit that crime. Fed.Rules Evid.Rule 404(a), 28 U.S.C.A.

**4. Criminal Law ⟲722.3**

When a prosecutor dwells on a defendant's bad character in an attempt to argue that defendant committed charged crime, or had propensity to commit that crime, court may find prosecutorial misconduct.

**5. Criminal Law ⟲706(4)**

Prosecutor did not engage in misconduct by cross-examining defendant regarding character evidence in prosecution for acts of criminal sexual conduct against daughter of defendant's live-in girlfriend, where defendant had introduced much of evidence in question as part of defense strategy, and aspects of defendant's character shed light on why child victim had not informed others of alleged acts.

**6. Criminal Law ⟲722.3**

Prosecutor engaged in misconduct by making animated recitation during closing argument of evidence relating to defendant's character, in which he emphasized that defendant did not work, beat his live-in girlfriend regularly, consumed alcohol excessively, and did not make payments on girlfriend's home, in prosecution for acts of criminal sexual conduct against girlfriend's minor daughter; prosecutor explicitly urged jurors to consider defendant's unseemly character when rendering their verdict, and implied that criminal acts charged "fit" evidence of defendant's character and lifestyle.

**7. Criminal Law ⟲720(5)**

Prosecutor engaged in misconduct when he sought to bolster testimony of child victim of alleged criminal sexual conduct by characterizing her story as having been consistent over time, where there was no evidence to support such a factual assertion.

**8. Criminal Law ⟲719(1)**

Actions of prosecutor in misrepresenting facts in evidence can amount to substantial error, because doing so may profoundly impress a jury and may have a significant impact on the jury's deliberations.

**9. Criminal Law ⟲1171.3**

Asserting facts that were never admitted into evidence may mislead a jury in a prejudicial way, particularly when a prosecutor misrepresents evidence, because a jury generally has confidence that a prosecuting attorney is faithfully observing his obligation as a representative of a sovereignty.

**10. Criminal Law ⟲720.5**

It is always improper for a prosecutor to suggest that a defendant is guilty merely because he is being prosecuted or has been indicted.

**11. Criminal Law ⟲720(1)**

It is always improper for a prosecutor to imply to a jury that an underlying factual predicate of a crime must be true due to the fact of indictment or prosecution.

**12. Criminal Law ⟲641.13(1)**

An essential ingredient of the Sixth Amendment right to counsel is that counsel provide constitutionally effective assistance. U.S.C.A. Const.Amend. 6.

**13. Criminal Law ⟲641.13(1)**

Benchmark in determining effectiveness of counsel is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. U.S.C.A. Const.Amend. 6.

STOUT v. J.D. BYRIDER                709
Cite as 228 F.3d 709 (6th Cir. 2000)

685, 709 (6th Cir.1994); *United States v. Morrow*, 923 F.2d 427, 432 (1991).

[37] As explained in Part III.A, the challenged aspects of the State's closing argument were clearly improper. We also find the improprieties to have been sufficiently flagrant to satisfy the four prongs of *Boyle* and warrant reversal. First, as stated above, there was a strong likelihood that the improper statements would have misled the jury and prejudiced the defendant, particularly considering the long delay since the actual testimony of the witnesses. Second, the comments were extensive, comprising part of the prosecutor's continuous effort to have the jury determine credibility based on improper considerations—either statements not in evidence or improper character assessments. Third, it is clear that the remarks were deliberately made, with the prosecutor repeating his "fit" theory throughout closing argument. And fourth, there was no evidence against Washington outside of Tamara Beard's account, which the prosecutor's misconduct impermissibly bolstered. In short, the prosecutor's misconduct was sufficiently flagrant to violate Washington's due process rights.

IV.

[38–40] As the people's representative in our system of justice, a prosecutor must adhere to the rules and principles that ensure that a jury determines a defendant's guilt based on the evidence before it. In a close credibility contest such as this, with horrible acts alleged but scant hard evidence for the jury to weigh, a prosecutor must be doubly careful to stay within the bounds of proper conduct. *See Martin v. Parker*, 11 F.3d 613, 616–17 (6th Cir.1993) (stating that because cases involving sexual abuse "turn on the relative credibilities of the defendant and the prosecuting witness ..., a strict adherence to the rules of evidence and appropriate prosecutorial conduct is required to insure a fair trial"). One of defense counsel's most

important roles is to ensure that the prosecutor does not transgress those bounds.

In this case, both attorneys failed to perform their respective duties. We find that their failure deprived Washington of his constitutional rights, and that the state courts' conclusions to the contrary were objectively unreasonable. We therefore **REVERSE** the district court and grant a conditional writ of habeas corpus, giving the State of Michigan ninety days in which to provide Washington a new trial or release him.

James D. STOUT; Shirley A. Brown,
Plaintiffs–Appellants,

v.

J.D. BYRIDER, a/k/a Docherty Motors, Inc.; T & J Acceptance Corporation, d/b/a Carnow Acceptance Company, Defendants–Appellees.

No. 99–3854.

United States Court of Appeals,
Sixth Circuit.

Argued: June 23, 2000

Decided and Filed: Sept. 8, 2000

Buyers of used vehicle dealership brought prospective class action against dealership, and finance company, asserting claims for fraud, and under Ohio Consumer Sales Practices Act (OCSPA) and federal Truth in Lending Act (TILA). The United States District Court for the Northern District of Ohio, James S. Gwin, J., denied class certification, and granted defendants' motion to compel arbitration, 50 F.Supp.2d 733. Plaintiffs appealed. The Court of Appeals, Clay, Circuit Judge, held that: (1) arbitration agreements entered by buyers

derstanding of universal trial and evidence principles falls well below an objective standard of reasonableness. *See Gravley*, 87 F.3d at 786 (stating that when counsel failed to object because of a lack of awareness of the law, *Strickland* was violated); *Rachel*, 590 F.2d at 204 (concluding that the Sixth Amendment was violated because attorneys' inexperience, inattention or lack of knowledge of the law led to their failure to object to misconduct). For similar reasons, we find that the state trial court's analysis of this issue was objectively unreasonable. Once again, that court concluded that the prosecutor had only sought to provide a "factual backdrop" to the crime as well as an explanation for Tamara's silence after the alleged acts, J.A. at 48–49, when it is crystal clear from the record that the State went well beyond that limited use, proffering an argument that was a prototypical example of how character evidence should not be used. Not having recognized the clear predicate problem itself, the trial court's conclusion that Keston did not violate *Strickland* by failing to object to that problem is thus inherently flawed. To characterize this conclusion as an "objectively reasonable" application of *Strickland* would be to dilute our review under the AEDPA to a generous apology for the clearest of errors.

[24] Finally, we note that while the defense's strategy carried an inherent risk of some prejudice, that added risk did not diminish the far greater prejudice that resulted from Keston's inexplicable silence as the prosecutor misused that same evidence for patently improper purposes. Our rules addressing character evidence implicitly recognize the fine yet vital distinction between the *risk of prejudice* borne by evidence introduced for permissible reasons and the *clear prejudice* that results from an uncured and flagrantly improper use of that same evidence.

Thus, even if some potential prejudice arises from the introduction of certain evidence, this Court generally presumes that if properly instructed by judges and guided by counsel, juries are capable of considering evidence for one purpose but not another. *See generally Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). In this case, an objection would have prompted the judge to inform the jurors that, counter to the prosecutor's suggestion, they could not convict Washington because he was the "type" of person who would commit the alleged crime; we then would presume that the jury heeded that instruction in rendering its verdict. On the other hand, Keston's silence allowed the prosecutor's improper use of that evidence, as well as its improper suggestions to the jury of how to consider that evidence, to go uncorrected. For this reason, and because this was a close case riding on Washington's credibility, *see infra*, Washington was prejudiced by his counsel's failure to object to the closing argument.

b.

[25, 26] We also find that Keston's failure to object to the State's improper characterization of Tamara's statements to others constitutes a second instance of constitutional ineffectiveness. Again, we find the trial court's analysis of Keston's ineffectiveness and "trial strategy" to have been objectively unreasonable.

Keston's explanation of why he did not object to the prosecutor's characterization of statements not in evidence is again unconvincing. At the *Ginther* hearing, he explained that he feared an objection would do more harm than good because it would focus the jurors' attention on the prosecutor's statement even if the court

to object to that because you wanted it brought out; didn't you?
A. That's correct.
Q: You were just going to use it in a different way than I used it.

A. *It would be rather inconsistent of me to object.*
J.A. at 311–12 (emphasis added).

ST. VS ALBERT RAMIREZ  CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 1:27:34 PM | CHANDLER | WERE YOU NO LONGER AFRAID OF THE BLACK PEOPLE, SO YOU THRU THE GUN AWAY "I WANTED TO CALL MY FAMILY SO THEY COULD TELL ME WHAT TO DO ETC. |
| 1:28:27 PM | | YOU WENT TO IVAN'S APARTMENT |
| 1:29:03 PM | | IDENTIFICATION EXHIBIT 109 "PHOTO OF IVAN VASQUEZ" |
| 1:29:29 PM | | BENCH CONFERENCE |
| 1:30:25 PM | CHANDLER | YOU WENT TO MR. VASQUEZ APT., NEXT THREE DAYS YOU DID NOT MAKE ANY PHONECALLS |
| 1:31:17 PM | | WHEN POLICE SHOWED UP AND KNOCKED ON DOOR YOU WENT TO BACK AND HID BEHIND A DOOR, YOU WERE ARRESTED AND THEY TOOK YOU TO CCOC, AT THAT TIME WHEN BOOKED IN THEY GAVE YOU INFORMATION ON HOW TO USE THE PHONE ETC. |
| 1:32:17 PM | | YOU ASKED YOU AUNT IN SPANISH TO GO AND PICK UP GUN, YOU USED SLANG WORDS YOU USED THE WORD TOY, BECAUSE YOU KNEW SOMEONE WAS RECORDING |
| 1:33:14 PM | | YOU WERE NOT QUITE SURE SHE WOULD DO WHAT YOU ASKED HER TO DO |
| 1:33:32 PM | | YOU SAID TELL MOM I AM SORRY |
| 1:34:04 PM | | NEXT CALL YOU MADE WAS TO CRIMSON MAES, YOU SAID A DIFFERENT WORD IN SLANG GO GET THE THING BAM BAM, I KNEW THEY WERE LISTENING |
| 1:34:56 PM | | YOU BELIEVED IF THE POLICE COULD NOT FIND THE GUN IT WOULD HELP YOUR CASE, "I THINK THAT THEY WOULD LET ME OUT" |
| 1:35:26 PM | | WHEN YOU MADE CALL TO CRIMSON MAES YOU IDENTIFIED YOURSELF AS WEIZEL |
| 1:36:51 PM | | YOU WERE ABLE TO TAKE YOUR ITEMS AND PUT IN TRUNK OF CA, ONE OF THE ITEMS WAS A NOTE YOU WROTE |
| 1:37:54 PM | | BENCH CONFERENCE |
| 1:39:12 PM | CHANDLER | IDENTIFICATION EXHIBIT 110 "LETTER WRITTEN BY ALBERT" |
| 1:39:48 PM | | OFFERS EXHIBIT / ADMITTED OVER THE OBJECTIONS |
| 1:40:57 PM | | I WAS TRYING TO BECOME A RAP ARTIST , HIP HOP |
| 1:41:28 PM | | ALBERT IS READING NOTE |
| 1:42:56 PM | | BENCH CONFERENCE |
| 1:43:16 PM | | COURT EXCLUDES EXHIBIT 110 |
| 1:43:59 PM | | TALK ABOUT THE DAY YOU SHOT ELADIO, YOU WENT TO HOUSE THAT YOU WERE NOT TOLD TO GO THERE, WHEN YOU ARRIVED THE SCREEN WAS LOCKED |
| 1:44:52 PM | | MOST OF MY IMPORTANT ITEMS WERE THERE |

10/10/2013                                                    9 of 16

| Time | Speaker | Note |
|------|---------|------|
| 1:13:51 PM | | YOU ASKED GUN SHOP OWNER, IF HE COULD NOT GET YOU A GUN WHERE CAN I GET A GUN |
| 1:14:31 PM | | YOU WENT AND FOUND A GUN, FROM THIS GUY I USED TO BUY SOME WEED FROM, |
| 1:15:24 PM | | HOW MUCH DID YOU SPEND ON THIS WEAPON "$75" |
| 1:16:29 PM | | YOU WENT TO WALMART JULY 11, YOU GAVE HIM $30 TO BUY AMMO |
| 1:16:59 PM | | MR. PATTERSON CAME BACK AND GAVE YOU BOX OF AMMO |
| 1:17:18 PM | COSBY | OBJECTION |
| 1:17:26 PM | COURT | THAT IS WHAT I REMEMBER |
| 1:17:33 PM | CHANDLER | YOU GOT THE AMMO, "I GOT IT HE HANDED IT TO ME AND I SAID THANKS" |
| 1:18:19 PM | | YOU WERE IN SUCH FEAR FOR YOUR LIFE, YOU BOUGHT AMMO AS SOON AS YOU GOT HANDGUN |
| 1:18:53 PM | | YOU WOULD NOT CARRY AN EMPTY HANDGUN :"I WOULD EXPLAINS WHY" |
| 1:19:42 PM | | IT WAS IMPORTANT TO YOU TO GET BULLETS FOR THIS GUN ASAP |
| 1:20:57 PM | | LESS THAN 24 HOURS LATER AFTER YOU BOUGHT BULLETS YOU KILLED ELADIO "YES" |
| 1:21:28 PM | | TALK ABOUT CRUTCHES, MY WHOLE LEFT SIDE IS DISABLED, I CAN BARELY WALK, |
| 1:22:27 PM | COSBY | WITHDRAWS OBJECTION |
| 1:22:41 PM | CHANDLER | YOU WERE ABLE TO GET AWAY FROM SCENE WHERE YOU SHOT ELADIO, LESS THAN 30 SECONDS |
| 1:23:02 PM | | DID YOU SEE POLICE ARRIVE, YOU WERE GONE BEFORE POLICE GOT THERE, AS YOU WERE GOING ACROSS STREET, YOU SAW A MAN AT LAWN MOWER SHOP, YOU DID NOT SAY ANYTHING TO LAWN MOWER REPAIR MAN ABOUT NEEDING HELP, THEN YOU CROSSED RAGS TO RICHES AND YOU THRU GUN BEHIND RAGS TO RICHES "YES" |
| 1:24:50 PM | | YOU HAD YOUR CELLPHONE WITH YOU "YES, I BELIEVE IT WAS IN MY POCKETS IN MY PANTS, YOU CALLED ELADIO AND DEBRA ABOUT 30 OR 40 TIMES THAT MORNING, "THEY WOULD NOT ANSWER, I WAS TRYING TO CALL MY MOM NOT ELADIO" I CALLED THE HOME PHONE, I WANTED MY EVERYTHING, JUST THE LITTLE THINGS |
| 1:26:27 PM | COSBY | OBJECTION |
| 1:26:34 PM | | I WILL ANSWER THIS, I HAD THE CELLPHONE IN YOUR POCKET YOU DID NOT CALL POLICE, AS YOU RAN BY RAGS TO RICHES YOU DUMPED GUN IN ALLEY |
| 1:27:15 PM | COSBY | OBJECTION |

ord. This justification is not strategy, but absolute folly. First, it overlooks the fact that the prosecutor's statement that the "story never changed" was not based on any evidence in the record. The jury therefore had no basis to conclude whether the characterization was true or not; similarly, Keston had no way to rebut the prosecutor's assertion without also referring to conversations *not* in evidence. Indeed, while Keston testified to the trial court that he had "intended" to argue to the jury that Tamara's statements to the doctor were inconsistent with her stories to others, he did not in fact do so. Although he referred to the doctor's notes that she had denied penetration, Keston certainly did not emphasize that this showed that Tamara's stories had been inconsistent. In fact, Keston himself echoed the prosecution's suggestion that the content of Tamara's discussions was in evidence when he argued that all of Tamara's statements came with Cora Beard by her side. "You heard from the witness stand, she said this, said that. She always identified and repeated what was said." J.A. at 264–65. But, contrary to Keston's words, the jury had not in fact heard any witnesses testify as to what Tamara had told them.

Finally, although the trial court attempted to rationalize this "impeachment defense," its reasoning is equally flawed. The trial court's explanation reads as follows:

> [Keston] related that his lack of objection was grounded on trial strategy based on his awareness that the victim had given previous inconsistent statements during the investigative stage of the case. In proper cases, a decision not to object to the prosecutor's trial efforts may be considered sound trial strategy. *Cf. Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 2471, 2472, 91 L.Ed.2d 144 (1986).... In this case defense counsel's strategy involved impeachment with inconsistent statements and the contrasting the same with the claim that

the victim's reporting of crime was consistent.

J.A. at 50. Like Keston's own words, this explanation wholly fails to appreciate that "the claim" of consistency involved statements never admitted into evidence. Moreover, while the trial court cited *Darden v. Wainwright*, 477 U.S. 168, 182, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) in support of its argument that a "decision not to object to the prosecutor's trial efforts may be considered sound trial strategy," *Darden*'s holding provides no support for its decision. The cited portion of *Darden* addresses prosecutorial misconduct that the Supreme Court found insufficient to constitute a due process violation; as part of the discussion, the court noted that "defense counsel made the *tactical decision* not to present any witness other than petitioner." *Id.* at 182, 106 S.Ct. 2464 (emphasis added). The decision in no way condones a lawyer's failure to object to plain misconduct as legitimate trial strategy.

In short, Keston's failure to object fell below an objective standard of reasonableness and constituted an omission outside the wide range of professionally competent assistance. Washington has shown that the failure to object was based on simple incompetence, and not on sound trial strategy. Because the trial court's conclusion merely echoed Keston's deeply flawed justification, its application of *Strickland* was objectively unreasonable.

### 3.

[29] In addition to finding constitutionally defective performance, we also believe that the failure to object to these statements prejudiced Washington's case. As both parties agree, this trial was a credibility contest. There was no evidence in the record indicating Washington's guilt outside of Tamara's own allegations. Thus, outside of the substance of Washington's and Tamara's testimony, nothing was more important to the case than the indicia that one story was more believable than the other. In such a close case, the prosecu-

cases, the end result would probably have been the same regardless of which test was used. Nevertheless, we find it necessary to clarify our doctrine regarding when prosecutorial misconduct in a closing argument constitutes reversible error for three reasons. First, the use of three different standards is confusing both for lower courts and for litigants. Second, even if everyone usually reaches the same net result, the process of reaching this result is more difficult when our doctrine is so murky. Third, and most important, situations sometimes arise, though perhaps only infrequently, in which the choice of doctrine determines the result. One very important example of this is found in the case of *Solivan*, in which isolated remarks by the prosecutor were so prejudicial that a new trial was necessary. 937 F.2d at 1157. Had the panel applied the *Thomas* test, it could not have reached this result. The court made this manifestly clear when it held:

> There are instances where a single misstep on the part of the prosecutor may be so destructive of the right to a fair trial that reversal is mandated. *See Pierce v. United States*, 86 F.2d 949 (6th Cir.1936). We realize that such instances may be rare, but we believe this case exemplifies a single misstep so destructive to defendant's right to a fair trial that it constitutes reversible error.

*Id.* at 1150. It turns out that the instant case presents a second example.

Just last year, the *en banc* court expressly applied the *Bess* test when we considered the issue of prosecutorial misconduct in a closing argument in *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir.1992). In light of this fact, and for the reasons stated in *Bess*, not only will we apply the *Bess* approach in the present case, but we also believe that *Bess*

ought to be used in all subsequent cases involving non-flagrant improper prosecutorial remarks. We will also use the factors introduced in *Leon* to elucidate the concept of "flagrancy" when applying the *Bess* test.

### 2. The Prosecutor's Remarks in the Present Case Were Improper

Under the *Bess* approach, our first task is to determine whether the prosecutor's remarks in the present case were improper. In *United States v. Krebs*, 788 F.2d 1166, 1176 (6th Cir.1986), *cert. denied*, 479 U.S. 930, 107 S.Ct. 400, 93 L.Ed.2d 353 (1986), the prosecutor made the following statements in her closing argument: "I want to suggest to you that in this trial testimony [the witness] was telling the truth.... Basically, she had no reason to lie." Even though we recognized that "I suggest" or "I submit" is not equivalent to "I believe," we found that "the effect of the two statements taken together can be reasonably construed to be based on personal belief." *Id.* at 1176–77 (citing *Bess*). We not only found that this constituted misconduct calling for the trial court to take corrective measures, but we also characterized the prosecutor's conduct as "inexcusable." *Id.* at 1177.[9]

Similarly, in *United States v. Dandy*, 998 F.2d 1344, 1353 (6th Cir.1993) (citing *Bess*), we held: "It was improper for the prosecutor to state [in his closing argument] that [a witness] is honest. Such a statement conveys a conviction of personal belief regarding the witness's veracity." The error might have been reversible had the trial court not immediately instructed the jury that all assertions are to be made from the evidence. *See also United States v. Hart*, 640 F.2d 856, 858–59 (6th Cir.) (holding that various expressions of personal belief by the prosecutor in closing argument were improper, warrant-

1992) (en banc) (applying *Bess* test), *cert. denied*, — U.S. —, 113 S.Ct. 2969, 125 L.Ed.2d 668 (1993); *United States v. Warner*, 971 F.2d 1189, 1205 (6th Cir.1992) (applying *Thomas* test); *United States v. Driscoll*, 970 F.2d 1472, 1484–85 (6th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1056, 122 L.Ed.2d 362 (1993) (applying *Leon* test); *United States v. Chambers*, 944 F.2d 1253, 1272 (6th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1217, 117 L.Ed.2d 455 (1992) (applying *Leon* test); *United States v.*

*Solivan*, 937 F.2d 1146, 1156–57 (6th Cir.1991) (applying *Ashworth* standard, but citing *Bess* with approval).

9. Ultimately, the *Krebs* court found that, in light of the substantial evidence of guilt and the trial court's efforts "to take corrective measures to eliminate the resulting prejudice," the misconduct did not justify reversal. 788 F.2d at 1177.

ST. VS ALBERT RAMIREZ  CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|---|---|---|
| 10:24:46 AM | | WHO ELSE DID YOU CALL, HE WAS NOT A FRIEND, I TOLD HIM TO GET THE THING, DO YOU KNOW OF ANYBODY HAS THAT GUN |
| 10:25:33 AM | | THERE WAS A GUY IN FRONT OF STORE OF RAGS TO RICHES I BELIEVE HE GOT THE GUN, I JUST HAD SOX AND BOXERS |
| 10:26:34 AM | | DID YOU PLAN ON KILLING MR. ROBLEDO "NO" |
| 10:27:11 AM | | WERE YOU THERE THAT DAY TO AMBUSH YOUR MOM'S BOYFRIEND "CAN I SPEAK MY MIND", IF I WANTED TO KILL MY MOM OR ROBLEDO, I COULD GO IN THERE AND GO TO MY ROOM AND GET SOMETHING TO EAT. ETC. |
| 10:28:14 AM | | WHEN HE TOLD YOU HE WAS GOING TO GET PISTOLA "THAT IS A PISTOL" THAT WAS NOT HIS AMMO IN GARAGE |
| 10:28:59 AM | | I KNEW HE HAD A WEAPON, I USED TO SMOKE MARIJUANA I WAS LOOKING FOR MONEY AND I SAW A GUN IN HIS DRAWER |
| 10:29:40 AM | | I THOUGHT I WAS IN DANGER |
| 10:29:53 AM | | **BENCH CONFERENCE** |
| 10:30:37 AM | COURT | GONNA TAKE A BREAK |
| 10:31:21 AM | | JURY EXCUSED FROM COURTROOM |
| 10:31:36 AM | OFF RECORD | |
| 11:03:22 AM | | COURT IN SESSION JURY BEING SEATED IN BOX, DFT AND ALL PARTIES PRESENT |
| 11:03:58 AM | COURT | INSTRUCTS JURORS GOING TO AN EARLY LUNCH BE BACK BY 12:45 P.M. |
| 11:04:37 AM | RECESS | |
| 12:49:46 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY, DFT AND ALL PARTIES ARE PRESENT |
| 12:50:29 PM | CHANDLER | DFT PUT FORWARD THAT THE VICTIM WAS A FIRST AGRESSOR, ANY TYPE OF SPECIFIC CONDUCT |
| 12:51:31 PM | | WHAT TRAIT DO YOU THINK IS DELIBERATE AND WILLFUL MURDER |
| 12:51:52 PM | CHANDLER | RESPONDS, NOW WE HAVE AN OPPORTUNITY THAT OUR VICTIM WAS NOT THE AGRESSOR |
| 12:52:26 PM | COSBY | AS FAR AS THE SITUATION OF THE JAILER, HAD NOTHING TO DO WITH HIS CHARACTER ETC. |
| 12:52:50 PM | CHANDLER | READS RULE 404-A-2 SEC. B |
| 12:54:32 PM | COURT | WILL LET YOU GO AHEAD AND DO IT, BETTER WAY TO DO IT |
| 12:54:50 PM | COSBY | I WILL ASK YOU TO RE VISIT SEXUAL ISSUE |
| 12:55:21 PM | COURT | OBJECTION NOTED |
| 12:55:43 PM | DFT | COMMENTS |

ST. VS ALBERT RAMIREZ  CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|---|---|---|
| 12:56:09 PM | | JURY BEING SEATED IN BOX |
| 12:57:14 PM | | COURT IN SESSION , JURY DFT AND ALL PARTIES PRESENT |
| 12:57:56 PM | CHANDLER | XEX - ABOUT YOUR TIME IN SCHOOL, I DON'T KNOW JUST GOT HELD BACK |
| 12:59:19 PM | | I CANNOT ANSWER IF I DID GOOD IN SCHOOL |
| 12:59:43 PM | | YOUR DAD WOULD PROVIDE YOU $500 A MONTH TO STAY IN SCHOOL, WHEN YOU GET SOCIAL SECURITY, IT IS THE TRUTH IT WAS COMING FROM MY DAD'S MONEY |
| 1:01:03 PM | | YOU HAD A DRIVER'S LICENSE IN 2007, YOU HAD A CELLPHONE, YOU PAID THE CELLPHONE BILL AND YOU HAD A JOB AT MCDONALDS |
| 1:02:25 PM | | ONLY DID CERTAIN THINGS AT MCDONALDS |
| 1:03:05 PM | | YOU SPEAK ENGLISH AND SPANISH , I UNDERSTAND A LITTLE BIT AND CAN SPEAK A LITTLE BIT, I AM AMERICAN |
| 1:04:36 PM | | YOU FIRST MET ELADIO WHEN YOU WERE APPROX. 5 OR 6 YEARS OLD |
| 1:05:36 PM | | YOU DIDN'T LIKE ELADIO ROBLEDO "THAT IS AN IMPROPER QUESTION TO ASK" I LIKE EVERYBODY I JUST DON'T LIKE SOME THINGS PEOPLE DO, THAT IS HOW IT IS SUPPOSED TO BE |
| 1:06:12 PM | | ELADIO AND YOUR MOTHER LIVED AT 512 W. 6TH ST. "WHEN" JULY 2007 |
| 1:07:27 PM | | YOU HEARD THAT OFFICER AGUILAR SERVED YOU THE NO TRESPASS ORDER, "YES" |
| 1:07:44 PM | | AFTER RECEIVING THE NO TRESPASS ORDER YOU RETURNED BACK TO THE HOUSE WHERE DEBRA LIVED |
| 1:08:40 PM | | AT ONE TIME YOU BROKE OUT THE FRONT WINDOW OF YOUR MOTHER AND ELADIO'S HOUSE |
| 1:09:40 PM | | ARE YOU AWARE YOUR MOTHER CALLED THE POLICE ABOUT THAT INCIDENT "NOT AWARE, IF SHE DID OR NOT" |
| 1:10:12 PM | | YOU BROKE OUT A CAR WINDSHIELD WITH YOUR CRUTCHES, DID SHE CALL THE COPS ABOUT THAT "YES" |
| 1:10:58 PM | | YOU KNOW WHERE CROSSHAIR GUN SHOP IS IN CLOVIS "YES" |
| 1:11:15 PM | | YOU WENT IN THERE AND DEMANDING A GUN |
| 1:11:42 PM | | YOU WANTED A REVOLVER "I JUST ASKED FOR GUN" |
| 1:12:27 PM | | YOU FILLED OUT PAPERWORK TO PURCHASE GUN |
| 1:12:46 PM | | YOU DROVE A CAR TO GUN SHOP |
| 1:13:42 PM | | YOU WERE TRYING TO GET THINGS RIGHT |

10/10/2013                                                    7 of 16

ST. VS ALBERT RAMIREZ  CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 2:14:36 PM | COURT | HE HAS BECOME EXPLOSIVE AND SHOOTS OFF HIS MOUTH, GO TALK TO HIM AND SEE WHAT WE WILL DO, WE ARE CLOSE TO THE END |
| 2:15:25 PM | RECESS | |
| 2:36:30 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY DFT AND ALL PARTIES PRESENT |
| 2:37:06 PM | COSBY | HAVE DISCUSSED WITH MY CLIENT HIS OPTIONS HE HAS STATED HE FEELS HE NEEDS ME, I TOLD HIM EITHER I REPRESENT HIM OR HE REPRESENTS HIMSELF, I CAUTIONED HIM HE NEEDS TO OBEY COURT RULES, HE SAID HE WOULD RATHER HAVE SOMEONE ELSE BUT HE NEEDS ME, I EXPLAINED TO HIM AS FAR AS THE LAST WITNESS, THE WITNESS TELLS ME HE DOES NOT REMEMBER IN FRONT OF THE JURY, SO RATHER THAN CALL SOMEONE TO STAND THEY DON'T REMEMBER I JUST DON'T ASK THAT QUESTION, THERE ARE QUESTIONS THAT ARE NOT ASKED FOR REASONS |
| 2:39:17 PM | COURT | LET THE RECORD REFLECT THAT MR. RAMIREZ HAS RETURNED TO THE COURTROOM AND MR. COSBY WILL BE CONTINUING HIS REPRESENTATION, NOT ANOTHER OPPORTUNITY TO CHANGE COUNSEL |
| 2:39:55 PM | | ADVISES DFT THAT THERE IS AUTHORITY THAT ALLOW YOU TO SIT IN ANOTHER ROOM TO WATCH TRIAL, IT IS AN OPTION IF YOU CONTINUE TO BE DISRUPTIVE YOU WILL SIT IN ANOTHER ROOM AND VIEW TRIAL BY VIDEO |
| 2:40:48 PM | COSBY | HE ASKED ME IF IT WAS BETTER TO SIT IN ANOTHER ROOM, I TOLD HIM IT WOULD BE AGAINST HIS INTEREST TO VIEW BY VIDEO |
| 2:41:36 PM | CHANDLER | I DON'T HAVE ANY XEX FOR MR. RAMIREZ BROTHER OF DFT |
| 2:42:28 PM | COSBY | I HAVE TOLD HER WHAT SHE CAN SAY AND CANNOT SAY |
| 2:42:40 PM | | **BENCH CONFERENCE** |
| 2:44:43 PM | COSBY | REGARDING PHOTO OF IVAN VASQUEZ SHOWING PHOTO OF HIM IN BOOKING, AND RECEIVED THIS LETTER |
| 2:46:00 PM | CHANDLER | RELEVENCE TO THE PICTURE, COURT WILL NOT ALLOW PHOTO |
| 2:47:19 PM | | JURY BEING BROUGHT INTO COURTROOM |
| 2:48:04 PM | | OFF RECORD |
| 2:51:51 PM | | **#3 WITNESS HESIQUIA RAMIREZ CALLED BY COSBY / SWORN / DEX** |
| 2:52:03 PM | | JURY BEING SEATED IN BOX |
| 2:53:09 PM | CHANDLER | MR. JOSE RAMIREZ, THE STATE DOES NOT HAVE ANY QUESTIONS |

10/10/2013                                        12 of 16

ST. VS ALBERT RAMIREZ  CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|---|---|---|
| 2:54:31 PM | | SHE IS ALBERT'S OLDER SISTER |
| 2:54:44 PM | | HOW OLD WERE YOU WHEN ELADIO ROBLEDO CAME ABOUT |
| 2:55:20 PM | | SHE MOVED OUT AS SOON AS SHE WAS 18 YEARS OLD |
| 2:55:37 PM | | YOUR BROTHER LIVED WITH YOUR MOM AND MR. ROBLEDO FOR A NUMBER OF YEARS |
| 2:55:50 PM | | WERE YOU EVER AWARE OF ANY ISSUES OF YOUR BROTHER AND MR. ROBLEDO |
| 2:56:52 PM | | MY MOM WOULD LET ME KNOW EVERYTHING, BECAUSE I WOULD GO EVERYWHERE WITH MY MOM |
| 2:57:22 PM | | DID YOUR BROTHER EVER COME LIVE WITH YOU "YES BACK IN THE BEGINNING OF 2007, HE STAYED WITH ME OFF AND ON ABOUT 3 OR 4 MONTHS" |
| 2:58:04 PM | | HE JUST LEFT, HE WAS GOING THRU HIS OWN THINGS, |
| 2:58:23 PM | | WERE YOU AWARE OF ANY PHYSICAL ISSUES BETWEEN ALBERT AND ROBLEDO |
| 2:58:54 PM | | HE WAS REAL JEALOUS OF MY BROTHER, HE WANTED MY MOM TO HIMSELF, HE WOULD |
| 2:59:23 PM | CHANDLER | OBJECTS RULES OF HEARSAY, VICTIM IS NOT HERE |
| 2:59:56 PM | COSBY | I WAS PRESENT SOMETIMES HOW HE WOULD TREAT HIM |
| 3:00:17 PM | | DID YOU EVER SEE ANYTHING BY ALBERT THREATENING, HE WOULD GET UPSET |
| 3:00:53 PM | | FAMILIAR WITH BROKEN WINDSHIELD, WAS NOT PRESENT WHEN IT HAPPENED |
| 3:01:37 PM | | HE WAS ON CRUTCHES FOR A WHILE, |
| 3:02:24 PM | | DID YOU SEE HIM AROUND JULY 2007, HE WAS STILL LIMPING |
| 3:03:01 PM | | SHE WAS NOT LIVING IN HOUSE WITH HER MOTHER AND ROBLEDO |
| 3:03:19 PM | | DID YOU RECEIVE A PHONE CALL AND TALK TO ALBERT AFTER HIS ARREST, |
| 3:04:17 PM | | WERE YOU AWARE OF ISSUES HE WAS HAVING, HE SAID SOMEBODY WAS AFTER HIM |
| 3:04:45 PM | CHANDLER | THIS IS HEARSAY |
| 3:05:10 PM | COSBY | STATUS OF YOUR BROTHER, HE HAS ISSUES |
| 3:05:48 PM | CHANDLER | XEX - YOU SAY THE COPS WERE CALLED AND NOTHING WAS EVER DONE |
| 3:06:24 PM | | IF SOMETHING WAS DONE MAYBE IT WOULD NOT HAVE GOT THIS FAR |
| 3:06:40 PM | | THERE IS NO JUVENILE JUSTICE HERE |

ST. VS ALBERT RAMIREZ  CR-07-434                          COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 3:39:23 PM | | ALL YOU SAW WAS SHIRT ON CAR AND SHOES ON GROUND |
| 3:39:55 PM | | THIS CAR LOOKED LIKE IT HAD BEEN MOVED, BECAUSE IT WAS FURTHER UP |
| 3:40:30 PM | | WHEN DEBRA CAME OUT SHE WAS SITTING ON PORCH STEPS |
| 3:40:53 PM | | WITNESS EXCUSED |
| 3:41:33 PM | | #2 WITNESS GRACE FINKEY CALLED BY MORRIS / SWORN / DEX |
| 3:42:37 PM | | LIVES IN CLOVIS "HOUSEWIFE" HAS 3 BOY'S |
| 3:43:02 PM | | WHAT WERE YOU DOING ON JULY 12TH WORKED AT SUTTON'S BAKERY AND HOME CARE, |
| 3:43:41 PM | | WENT TO LUNCH AT JALISCO'S SPENT ABOUT 30 MINUTES |
| 3:44:03 PM | | GOT IN HER CAR AND WENT BACK ON 6TH STREET HEADED TOWARDS THORNTON |
| 3:45:09 PM | | SOMETHING CAUGHT HER EYE SAW TWO PEOPLE RUNNING, |
| 3:45:46 PM | | DESCRIPTION OF OLDER GUY RUNNING THINK HE HAD A HAT ON |
| 3:46:22 PM | | YOUNGER MAN RUNNING SLENDER, HE WAS WEARING SHORTS, A POLO SHIRT THINK IT HAD GREEN STRIPES, THE YOUNGER ONE WAS CHASING THE OLDER ONE |
| 3:47:29 PM | | THE OLDER GUY HAD FALLEN DOWN AND YOUNGER GUY HAD HIS ARM EXTENDED |
| 3:48:40 PM | | SHE THOUGHT SHE HEARD TWO POPS |
| 3:49:00 PM | | LAST THING SHE REMEMBERS SEEING, LOOKED BACK AND OLDER ONE WAS ON GROUND |
| 3:50:10 PM | | SHE DIALED 911 WHILE ON HER WAY TO THORNTON, SHE WAS CONCERNED |
| 3:50:56 PM | | GAVE A STATEMENT TO LAW ENFORCEMENT |
| 3:51:08 PM | COSBY | XEX - DO YOU RECALL BEING INTERVIEWED ON DAY OF EVENT |
| 3:51:44 PM | | REMEMBERS DAN AGUILAR TALKING TO HER |
| 3:52:13 PM | | TOLD THE OFFICER THAT SHE REMEMBERED 3 SHOTS, YOU WERE ALSO ASKED WHAT THE PERSON LOOKED LIKE |
| 3:53:43 PM | | HE HAD A POLO SHIRT WITH GREEN STRIPES HE IS THE ONE WITH THE GUN |
| 3:54:51 PM | | THINKS THE SHORTS WERE BLUE JEAN DEMIN TYPE |
| 3:55:24 PM | | DID NOT SEE ANY SHOES, SAW THE PERSON WITH ONE ARM OUT STANDING  A  LITTLE TO THE SIDE |
| 3:56:28 PM | | DOES NOT REMEMBER SEEING ANYONE ELSE OUT THERE, SAW THE OLDER FELLOW FALL BACKWARD |

10/7/2013                                                    8 of 12

ST. VS ALBERT RAMIREZ CR-07-434                           COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 3:15:21 PM | CHANDLER | IF DFT TAKES STAND AND SAYS IT THEN I CAN CALL WITNESS BACK |
| 3:15:41 PM | COSBY | THAT IS WHY I AM TRYING COURT TO MAKE A RULING OUT OF HIS PRESENCE |
| 3:16:32 PM | COURT | CONCERNED THAT THE QUESTION ITSELF PRESENTS PROBLEMS THAT ARE NOT PERTINENT TO THIS CASE, WITH THESE KIND OF ALLEGATIONS I WILL NOT LET YOU ASK THAT QUESTION |
| 3:17:10 PM | COSBY | OBJECTING |
| 3:17:19 PM | COURT | BELIEVES IT IS AN INAPPROPRIATE QUESTION |
| 3:17:30 PM | RECESS | |
| 3:28:30 PM | | COURT IN SESSION JURY, DFT AND ALL PARTIES PRESENT |
| 3:29:33 PM | CHANDLER | **RDEX** - WITNESS SAM SAIZ, DO YOU RECALL INTERVIEW WITH POLICE DEPT. |
| 3:30:11 PM | | DO YOU RECALL SPEAKING TO POLICE OFFICER AT THE SCENE |
| 3:30:24 PM | | ARE YOU BEING TRUTHFUL TODAY, WERE YOU TRUTHFUL AT THE TIME OF THE INCIDENT |
| 3:30:57 PM | | WHAT DID YOU TELL POLICE OFFICER WHEN YOU RAN TO THE FRONT OF YOUR HOUSE ETC |
| 3:32:01 PM | | DOES NOT RECALL ELADIO SAYING OW |
| 3:32:53 PM | | YOU TOLD POLICE OFFICER THAT DAY ABOUT NOT SEEING GUN, |
| 3:33:50 PM | | RECALLS TELLING HIS MOM DO NOT GO OUTSIDE "YEAH BUT SHE IS STUBBORN SHE FOLLOWED ME TO MAILBOX" |
| 3:34:16 PM | | DEBRA HAD A CELLPHONE, SHE TOLD ME CALL JOE "HER OLDEST SON" |
| 3:34:43 PM | | TOLD POLICE HE WAS BLEEDING, COUGHING UP BLOOD, COMING OUT OF NOSE AND MOUTH |
| 3:35:16 PM | | TOLD THE POLICE OFFICER I SAW ONE OF HIS RED SHOES, ETC. |
| 3:36:11 PM | | POLICE OFFICER SAID HE WAS WEARING A RED SHIRT RED SHOES, YOU SAID I THINK WHITE SHORTS |
| 3:36:45 PM | | DO YOU RECALL THAT HE SAID WHAT DID HIS HAIR LOOK LIKE |
| 3:37:07 PM | | RECALLS TELLING OFFICER HE'S GOT A LONG NOSE |
| 3:37:16 PM | | HOW SURE ARE YOU IT WAS ALBERT, I SAID 100%, I DID NOT SEE NOBODY ELSE |
| 3:38:00 PM | | DO YOU HAVE ANY REASON TO LIE OR POINT THE FINGER AT SOMEONE, ARE YOU TELLING ABSOLUTE TRUTH TODAY "YES SIR" |
| 3:38:18 PM | COSBY | **RXEX** - YOU HAVE NO REASON TO TELL ANYTHING OTHER THAN THE TRUTH, I SAW HIM WEARING A RED SHIRT |

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

2009 JAN 13 PM 3: 33

~~~~~~~~~
CLERK DISTRICT COURT

IN THE NINTH JUDICIAL DISTRICT COURT
STATE OF NEW MEXICO
COUNTY OF CURRY

STATE OF NEW MEXICO,

      Plaintiff,

vs.                                                       No. D-0905-CR-0200700~~604~~

ALBERT RAMIREZ,                                                        434

<u>MOTION IN LIMINE</u>

    COMES NOW the defendant, by and through his counsel of record Brett J. Carter,

District Public Defender, and hereby respectfully moves this Court for an order preventing the

State of New Mexico from introducing certain photographs of the defendant at trial and for cause

would state;

    1.  Counsel for defendant has reviewed the contents of the investigating officer's file.

        The file contains several photographs of the defendant which are prejudicial and have

        no probative value. The photographs could be interpreted to suggest involement in a

        gang and that inference is prejudicial to the defendant. The evidence in this case does

        not suggest any gang involvement and the photographs should be excluded by the

        court.

    2.  The photographs should be excluded under Rule 11-401 as they are not relevant. The

        New Mexico rules of evidence define "relevant evidence" as "evidence having any

        tendency to make the existence of any fact that is of consequence to the determination

        of the action more probable or less probable than it would be without the evidence".

        The photographs in question were not used by the witnesses to identify defendant.

RP 253

The photographs do not contain any information that makes the existence of any fact that is of consequence to the determination more or less probable.

3. The photographs should also be excluded under Rule 11-403 in that the photographs are more prejudicial than probative. The photographs (which are attached as defense exhibit A) do not have any probative value in this prosecution. The admission of the photographs is extremely prejudicial to the defendant in that they suggest involvement in a gang or other criminal activity.

WHEREFORE, the defendant prays this Court issue an Order requiring the State not to present any of the above referenced photographs into evidence at trial and further relief as the Court deems just and proper.

Respectfully Submitted,

HUGH W. DANGLER
CHIEF PUBLIC DEFENDER

By: _____
  BRETT J. CARTER
  District Public Defender
  Clovis District Office
  800 Pile, Suite A
  Clovis, NM 88101
  (505) 769-1991

I HEREBY CERTIFY THAT A COPY OF THE FOREGOING WAS DELIVERED/MAILED TO OPPOSING COUNSEL ON THE DATE OF FILING STAMPED ABOVE.

_____
PUBLIC DEFENDER DEPARTMENT

RP 254



4. There is no doubt that Mr. Robledo's death is due to several wounds inflicted by a firearm.

5. The photographs have no medical value and would only serve to create emotional feelings in the jury that would prejudice them against Mr. Ramirez.

WHEREFORE, defendant Albert Ramirez requests this Court to rule pre-trial that the State cannot offer any photographs of the deceased at trial.

Respectfully submitted,
HUGH W. DANGLER
CHIEF PUBLIC DEFENDER
By:

Brett J. Carter
District Public Defender
Clovis District Office
800 Pile, Suite A
Clovis, NM 88101
Counsel for Defendant

This will certify that a copy of the foregoing was delivered\faxed to the District Attorney's office on January 13ᵗʰ, 2009.

Brett J. Carter
Counsel for Defendant

RP 271

IN THE NINTH JUDICIAL DISTRICT COURT
STATE OF NEW MEXICO
COUNTY OF CURRY

NINTH ... CIAL DISTRICT
CURR... OUNTY, NM
FILED IN MY OFFICE

2009 JAN 14 AM 8: 48

STATE OF NEW MEXICO,

        Plaintiff,

CE... ... COURT

vs.

No. D-0905-CR-0200700604

434

ALBERT RAMIREZ,

        Defendant.

**MOTION IN LIMINE**

     COMES NOW the defendant, by and through his counsel of record Brett J. Carter, District Public Defender, and hereby respectfully moves this Court for an order preventing the State of New Mexico from introducing a letter the officers allege the defendant wrote and for cause would state;

   1.  Counsel for defendant has reviewed the contents of the investigating officer's file. The file contains a letter that contains prejudicial comments (attached as defendant's exhibit b). The letter looks like it is addressed to Albert and there is no evidence such as a handwriting exemplar to prove the defendant wrote the letter. It would be extremely prejudicial to the client to allow this information before the jury especially if defendant didn't write the letter. The letter does not have a date and it is not known when it was written or who wrote it. The letter contains references to "Jack yall" and phrases such as "Ima blast yall niggaz" which a juror would take as extremely offensive. Besides being undated, it appears the letter is addressed to Albert. The letter does not make any mention of the deceased in this case or any references to his or Albert's family.

2. The letter should also be excluded since a foundation can not be laid to show that the defendant wrote the letter.

3. The letter should also be excluded under Rule 11-403 in that the comments in the letter are more prejudicial than probative. The letter does not have any probative value in this prosecution. The admission of the letter is extremely prejudicial to the defendant due to the comments made in the letter.

WHEREFORE, the defendant prays this Court issue an Order requiring the State not to present or mention any of the comments in the letter into evidence at trial and for further relief as the Court deems just and proper.

Respectfully Submitted,

HUGH W. DANGLER
CHIEF PUBLIC DEFENDER

By: _____
BRETT J. CARTER
District Public Defender
Clovis District Office
800 Pile, Suite A
Clovis, NM 88101
(505) 769-1991

I HEREBY CERTIFY THAT A COPY OF THE FOREGOING WAS DELIVERED/MAILED
TO OPPOSING COUNSEL ON THE DATE OF FILING STAMPED ABOVE.

_____
PUBLIC DEFENDER DEPARTMENT

RP 273

Albuti

Bitch ass niggaz / Ima Jack
yall pussy ass/ Ima blast yall
niggaz / tryn Jack our Figgaz
But we trill as Niggaz /
So stop and listen 2 India,
we grewd up screw ups / then blew up.
So shut up / bitch's get out of there way!
for I spray me away, Ill dont play
Round we you layin 6 ft under ground

mer                          Nucr a slite foe
we've been faked/            willied
       Im gona ride with my Fam
till we end time / I like to smoke kill
And Represent the        and my one hatin
will get              Free        get shots
my kind, Ima shine every time, I
Rymer

Exhibit B

RP 274.

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

2009 JAN 14 PM 2: 46

IN THE NINTH JUDICIAL DISTRICT COURT
STATE OF NEW MEXICO
COUNTY OF CURRY

STATE OF NEW MEXICO,

      Plaintiff,

vs.                                                    No. D-0905-CR-0200700684
                                                              434

ALBERT RAMIREZ,

      Child.

<u>**MOTION IN LIMINE**</u>

COMES NOW the defendant, by and through his counsel of record Brett J. Carter,

District Public Defender, and hereby respectfully moves this Court for an order preventing the

State of New Mexico from introducing the testimony of Dennis Fite at trial and for cause would

state;

1. Counsel for defendant has reviewed the contents of the investigating officer's file.

   The file contains a report from Agent Mulligan involving an interview of a gun shop

   owner. Dennis Fite of Crosshairs gun shop told the agent that about three weeks prior

   to July 13, 2007 that the defendant had been in the store and attempted to purchase a

   firearm. Due to defendant's age he refused to sell him a firearm and contacted law

   enforcement. This information is stale, prejudicial and has no probative value. The

   attempt to purchase a firearm two to three weeks prior to the incident in question is

   not relevant and is stale. A firearm was not purchased and the statements of Mr. Fite

   are prejudicial to the defendant.

2. The attempted purchase of a firearm two to three weeks prior to this incident should

   be excluded under Rule 11-401 as they are not relevant. The New Mexico rules of

   evidence define "relevant evidence" as "evidence having any tendency to make the

RP 275

existence of any fact that is of consequence to the determination of the action more

probable or less probable than it would be without the evidence". The testimony of

Mr. Fite does not contain any information that makes the existence of any fact that is

of consequence to the determination more or less probable.

3. The statements should also be excluded under Rule 11-403 in that the statements are

more prejudicial than probative. The admission of the statements would be extremely

prejudicial to the defendant in that they suggest involvement in other criminal

activities.

WHEREFORE, the defendant prays this Court issue an Order requiring the State not to

present any of the above referenced information from Mr. Fite into evidence at trial  and

further relief as the Court deems just and proper.

Respectfully Submitted,

HUGH W. DANGLER
CHIEF PUBLIC DEFENDER

By: 

BRETT J. CARTER
District Public Defender
Clovis District Office
800 Pile, Suite A
Clovis, NM 88101
(505) 769-1991

I HEREBY CERTIFY THAT A COPY OF THE FOREGOING WAS DELIVERED/MAILED
TO OPPOSING COUNSEL ON THE DATE OF FILING STAMPED ABOVE.

RP 276

IN THE NINTH JUDICIAL DISTRICT COURT
STATE OF NEW MEXICO
COUNTY OF CURRY

STATE OF NEW MEXICO,

       Plaintiff,

vs.

ALBERT RAMIREZ,

       Defendant.

No. D-0905-CR-0200700604

434

NINTH ... ...AL ...
CURR. ...UNTY, NM
FILED IN MY OFFICE

2009 JAN 14  PM 2: 46

... COURT
CHIEF ... COURT

## MOTION IN LIMINE

COMES NOW the defendant, by and through his counsel of record Brett J. Carter, District Public Defender, and hereby respectfully moves this Court for an order preventing the State of New Mexico from introducing into evidence any mention of a restraining order obtained by the victim or defendant's mother and for cause would state;

1. The Clovis Police department and other witnesses have indicated that the victim and/or the defendant's mother had sought to obtain a restraining order preventing the defendant from having contact with them. Agent Mulligan of the District Attorney's office during his investigation of the case contacted the District Court to inquire about the restraining order. The District Court Clerk indicated there were no requests or filings by either the victim or defendant's mother to obtain a restraining order.

2. Any reference to a restraining order should be prohibited by the court until such time as a foundation can be laid to show that a restraining order exists.

3. The admission of a restraining order between the victim, defendant's mother and defendant is extremely prejudicial to the defendant.

RP 279

WHEREFORE, the defendant prays this Court issue an Order requiring the State not to mention or infer that a restraining order existed between the defendant, the victim or defendant's mother and for further relief as the Court deems just and proper.

Respectfully Submitted,

HUGH W. DANGLER
CHIEF PUBLIC DEFENDER

By: _____
BRETT J. CARTER
District Public Defender
Clovis District Office
800 Pile, Suite A
Clovis, NM 88101
(505) 769-1991

I HEREBY CERTIFY THAT A COPY OF THE FOREGOING WAS DELIVERED/MAILED TO OPPOSING COUNSEL ON THE DATE OF FILING STAMPED ABOVE.

_____
PUBLIC DEFENDER DEPARTMENT

RP 280

STATE v. ALBERT J. RAMIREZ    CR 07-434

CR1 CHAMBERS

| Time | Speaker | Note |
|------|---------|------|
| 3:39:27 PM | Chandler | Releveance is that it indicates he will commit murder. He expressed thoughts of murder before murder has happened. Note goes to premeditation. |
| 3:40:20 PM | Carter | Note says "Albert" at the top - doesn't know if he wrote the note |
| 3:40:41 PM | Chandler | Weasel is Albert and note was found in the trunk of his car. Randy Pitcock found it in his car. |
| 3:41:16 PM | Carter | Not sure it was written by Albert. More prejudicial than probative. Eye witness testimony is fairly good. |
| 3:41:40 PM | Chandler | Thinks they have good eye witnesses. Trying to take this to first degree murder instead of second degree. Addressing contents of note. Reads note. |
| 3:43:40 PM | Chandler | Review of note. Could make argument to the jury that this is Dft's mind set - he's not afraid to shoot someone if they mess with him. Victim served him with tresspass notice - his mindset is that he could kill him. |
| 3:45:42 PM | Carter | Can't tell if the note is written by Albert - found in jeans at a car that was left at his mother's house. Nothing to indicate that the note was written by Albert. More prejudicial than probative. No effort was made to see who wrote it. |
| 3:46:43 PM | Judge | Attempt to purchase a firearm. |
| 3:46:54 PM | Chandler | 404b argument - probative vs. prejudicial. Demanded to buy handgun. Manager of gun shop suspected something suspicious - doesn't sell it to him. |
| 3:47:31 PM | Judge | Restraining order |
| 3:47:35 PM | Chandler | Dft. served with restraining order - no tresspass order. |
| 3:47:54 PM | Carter | Officers made some mention that restraining order - no restraining order out there. |
| 3:48:35 PM | Chandler | Dft. created two problems before murder - broke out victim's vehicle window and broke out his mom's house window. Filed no tresspass order and he comes back and kills him. |
| 3:49:28 PM | Carter | Gun |
| 3:49:37 PM | Chandler | Witness sayd there was a hand gun with a long barrel. Albert's cousin was found with similar gun that was used in the murder. |
| 3:50:26 PM | Judge | Can make rulings next week. |
| 3:50:38 PM | Carter | Motion about a statement made to Steve Hawkins. |
| 3:50:51 PM | Reeb | Won't do that |
| 3:50:54 PM | Carter | Got a copy of the new autopsy. |
| 3:51:05 PM | Chandler | Was amended because error was caught in the original report. |
| 3:51:44 PM | Carter | Walmart employee testimony reviewed. |
| 3:52:04 PM | Reeb | Lots of witness. Lot of chain of custody witnesses. Still at 30+ witnesses. |
| 3:52:28 PM | Carter | Will interview them next week. |

STATE v. ALBERT J. RAMIREZ    CR 07-434                    CR1 CHAMBERS

| Time | Speaker | Note |
|------|---------|------|
| 3:28:15 PM | Judge | Announcement of case. This is a meeting to review some of the Motions that have been filed. Counsel for defendant and state are here. Trial set for January 26 - 5 day trial. |
| 3:29:08 PM | Judge | Knows that State has not had opportunity to respond to Motions. Dft. has gone through referral to restore his competency. After that he is found to be competent. September 16, 2008 - date of Order. Mr. Carter has stated that he was unable or unwilling to assist in defense. |
| 3:30:11 PM | Carter | More of an unwillingness on his part. Is probably getting advice from inmates at the jail. Went to visit him today and tried to get answers from him but were unable. Is not actively cooperating. Has done extensive preparation. Wants to be fully prepared for trial without his assistance. |
| 3:31:28 PM | Judge | Ruled that there will be no interpreter for the family. One Motion refers to photos in file. Testimony of Dr. Burness - |
| 3:32:08 PM | Carter | If there is not presentation of mental health defense, her testimony is not admissible. That's the extent of the motion |
| 3:32:31 PM | Chandler | Don't intend on putting on doctor, unless they raise that issue. |
| 3:32:55 PM | Carter | If they argue to jury on mental health, could put her on. |
| 3:33:20 PM | Chandler | Will probably not call the Las Vegas doctor. |
| 3:33:36 PM | Carter | Researched insanity defense. Would not work in this case based on facts that State has. Temporary insanity - might be closest this he suffers from - but there is no such thing as temporary insanity in this state. Some things that their witnesses will testify might be helpful to defense. |
| 3:34:48 PM | Carter | Some actions that defendant did at detention center prevented them from hiring expert. Don't have an expert. Dft. won't discuss the case so expert can't interview him. No experts at trial. |
| 3:35:44 PM | Judge | Photos of deceased - hasn't seen them. |
| 3:36:07 PM | Chandler | Prior to doctor testifying, will get together and go over pictures that will be introduced. |
| 3:36:37 PM | Judge | If those are limited, will take care |
| 3:36:46 PM | Chandler | Handwritten note - probative vs. |
| 3:37:15 PM | Chandler | Photos of defendant reviewed. Identifies some of his phone calls |
| 3:37:52 PM | Reeb | Not sure of that |
| 3:37:55 PM | Chandler | Identifies himself in the rap song. The back of the picture has the word "weasel". |
| 3:38:14 PM | Carter | Might need actual photo. |
| 3:38:28 PM | Chandler | Might stipulate that he goes by another name. Note was found in his car. Shows Dft's state of mind at the time of offense. |
| 3:39:09 PM | Judge | Inclination is that unless it is tied in better, doesn't see the relevance. |

*(Handwritten annotations in right margin: "SEE Inadmis Evidence", "LETTER Exhibit IIA", "GANG AFFiliated presumorial", "SEE")*

1/15/2009                    RP 285                    2 of 4

The purpose of Records documents . cases
Relevant to my case

E. F.

Ineffective assistance
on Haberus petition .

See Her letter saying
we did not fully meet and
She would not communicate
with me of all. I tried
to call evry week And She
wouldent speak to me

Habeaus counsel did not
Argue these Issues I brng
Now in my Amended
petition .

If She would of I would

of Got An Evidutary

Hearing And proved

trial couseling ineffectiuness

HABEAS ATTORNEYS

Liane E. Kerr.

F. Both. Amanda Stephinson

SHE failed to raise issues
that had merit and would
win.

SHE refused to propuly
assist — IN HABEAUS AMENDED
PETITION. OR REQUEST FOR EXTENSION
FOR FUTURE INVESTIGATION: Collection of
Materials is reausted.

INEFFECTIVE ASSISTANE OF Both Habeaus ATTORNEYS Amanda STEPHENSON And Liane E. KERR FOR NOT Requesting trial Closing ARGument. I Requested. Both habeaus ATTORNEY failed to Provide effective assistane in Habeaus Proceedings And ARGUE CERTAIN ISSUES. I Wanted ARGUED.



# Law Offices of the Public Defender

**Bennett J. Baur**
**Chief Public Defender**

January 24, 2018

Alberto Ramirez
DOC #69597
Penitentiary of New Mexico
PO Box 1059
Santa Fe, NM 87504

RE:    Alberto Ramirez v. State of New Mexico
       Cause No. D-905-CR-2007-00434

Dear Mr. Ramirez,

Enclosed is a copy of the Stipulated Extension Order that was filed in your case. Also, be advised that we have copied your discovery and will be sending it back to you. It will be in 2 parts.

Please call me at (505)369-3612 to schedule an appointment if you have any questions.

Sincerely,

Amanda Stephenson
Assistant Public Defender
Post-Conviction Habeas Unit

AS/tg

Enclosure(s)

Xc: file

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

ALBERTO RAMIREZ,

       Petitioner,

vs.            No. D-905-CR-2007-00434

STATE OF NEW MEXICO,

       Respondents.

## SECOND STIPULATED EXTENSION ORDER

This matter comes before the Court on the request of habeas counsel for Petitioner,

Amanda Stephenson, Assistant Public Defender, for an extension of time for the filing of an

amended Petition for Writ of Habeas Corpus or Notice of Non-Intent, and the Court being

advised that further investigation and collection of materials is required, counsel for the State

having no objection,

It is therefore ORDERED that counsel for Petitioner is allowed an additional 90 days

from the filing of this Order for the preparation of an Amended Petition.

              Drew Tatum
              DISTRICT JUDGE

APPROVED:

Amanda Stephenson
Counsel for Petitioner

Approved via email 1/16/18
Andrea Reeb
District Attorney



# LIANE E. KERR, LLC
Liane E. Kerr, Attorney at Law

2 copys

2 08

## TRANSMITTAL MEMORANDUM

DATE:         October 5, 2018

TO:           Albert Ramirez, PNM 69597
              c/o PNM
              P.O. Box 1059
              Santa Fe, New Mexico 87504-1059

RE:           _State of New Mexico v. Albert Ramirez D-0905-CR-2007-00434_

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Enclosed please find the following:

### State's Response

Please:

\_\_\_\_\_          File and return endorsed copy to this office.

\_\_\_\_\_          Sign and return to this office.

\_\_\_\_\_          Check in the amount of $\_\_\_\_\_ for

\_\_\_\_\_          Per your request.

\_\_X\_\_          For your information.

\_\_\_\_\_          Please contact the office to schedule an appointment.

\_\_\_\_\_          Pay vendor directly.

\_\_\_\_\_          Other:

Sincerely,

Yareli Opague
Legal Assistant to
LIANE E. KERR LLC



# Law Offices of The Public Defender

**Bennett J. Baur**
**Chief Public Defender**

February 23, 2018

**Albert Jose Ramirez**
**DOC #69597**
**Southern New Mexico Correctional Facility**
**PO Box 639**
**Las Cruces, NM 88004**

Re:   ALBERT RAMIREZ vs. State of New Mexico
      Cause No. D-905-CR-2007-00434

Dear Mr. Ramirez:

This office has recently opened a file on your habeas case, and I have determined that your case should be assigned to a contract attorney outside of this Department. If you have any questions about this issue, you may contact me to discuss it at 505-369-3611.

Your new attorney on this habeas matter is: Liane Kerr, PO Box 10491, Albuquerque, NM 87184; phone # (505) 848-9190. Please contact this lawyer regarding further proceedings in the case.

Sincerely,

*Brian Tucker*
Supervising Attorney/Post-Conviction Habeas Unit

xc: File

505 Marquette Avenue NW, Albuquerque, NM 87102 (505) 369-3600, FAX (505) 796-4595

# STATE OF NEW MEXICO
## *Corrections Department*
## *Southern New Mexico Correctional Facility*
# MEMORANDUM

**SUSANA MARTINEZ, Governor**

David Jablonski,
Secretary of Corrections

James Mulheron
SNMCF Warden



Post Office Box 639
Las Cruces, NM 88004
Phone: (575) 523-3200
Fax Number: (575) 523-3349

 

 

TO:        **Alberto Ramirez #69597**
               **5B-F107**

FROM:    **Bayola Luna**
               **5B Classification Officer**

DATE:     **3/9/18**

RE:        **Attorney Call**

**I have scheduled an attorney phone call for you with Attorney Tucker for Wednesday, April 25, 2018 @ 10:30 am. Please ensure you are in my office 5 minutes prior to the scheduled time.**



# Law Offices of the Public Defender

**Bennett J. Baur**
**Chief Public Defender**

January 19, 2018

Alberto Ramirez
DOC #69597
Penitentiary of New Mexico
PO Box 1059
Santa Fe, NM 87504

RE:    Alberto Ramirez v. State of New Mexico
       Cause No. D-905-CR-2007-00434

Dear Mr. Ramirez,

Enclosed is a copy of the Pro Se Petition for Writ of Habeas Corpus that you submitted to the district court.

Please call me at (505)369-3612 to schedule an appointment if you have any questions.

Sincerely,

Amanda Stephenson
Assistant Public Defender
Post-Conviction Habeas Unit

AS/tg

Enclosure(s)

Xc: file



# Law Offices of the Public Defender

**Bennett J. Baur**
**Chief Public Defender**

January 24, 2018

Alberto Ramirez
DOC #69597
Penitentiary of New Mexico
PO Box 1059
Santa Fe, NM 87504

RE:     Alberto Ramirez v. State of New Mexico
        Cause No. D-905-CR-2007-00434

Dear Mr. Ramirez,

Enclosed is a copy of the Stipulated Extension Order that was filed in your case. Also, be advised that we have copied your discovery and will be sending it back to you. It will be in 2 parts.

Please call me at (505)369-3612 to schedule an appointment if you have any questions.

Sincerely,

Amanda Stephenson
Assistant Public Defender
Post-Conviction Habeas Unit

AS/tg

Enclosure(s)

Xc: file

505 Marquette NW Ste 120, Albuquerque, NM Phone (505)369-3600 FAX (505)796-4595



# Law Offices of the Public Defender

**Bennett J. Baur**
**Chief Public Defender**

January 30, 2018

Alberto Ramirez
DOC #69597
Central New Mexico Correctional Facility
PO Drawer 1328
Los Lunas, NM 87031

RE:    Alberto Ramirez v. State of New Mexico
       Cause No. D-905-CR-2007-00434

Dear Mr. Ramirez,

Enclosed is a copy of the documents our office received from the court. These are all the documents we were able to obtain from your criminal case.

Please call me at (505)369-3612 to schedule an appointment if you have any questions.

Sincerely,

Amanda Stephenson
Assistant Public Defender
Post-Conviction Habeas Unit

AS/tg

Enclosure(s)

Xc: file

# STATE OF NEW MEXICO
## *Corrections Department*
## *Southern New Mexico Correctional Facility*
# MEMORANDUM

**SUSANA MARTINEZ, Governor**

David Jablonski,
Secretary of Corrections

James Mulheron
SNMCF Warden



Post Office Box 639
Las Cruces, NM 88004
Phone: (575) 523-3200
Fax Number: (575) 523-3349

**TO:**      Alberto Ramirez #69597
             5B-F107

**FROM:**    Bayola Luna
             5B Classification Officer

**DATE:**    6/19/18

**RE:**      Attorney Call

**The below attorney calls have been scheduled for you.  Please ensure you are in my office 5 minutes prior to the call.**

**Attorney Kerr or Yaralie – Thursday, June 21, 2018 @ 12:30 pm**
**Attorney Tucker – Monday, June 25, 2018 @ 2:00 pm**

FUNDCORT
1800-984-2784



*Read: THIS*

# Law Offices of The Public Defender

**Bennett J. Baur**
**Chief Public Defender**

*Please Return To This Albert Ramirez 69597 Thank You Jennifer Reenal Caseworker*

August 14, 2017

**Albert Ramirez**
**DOC #69597**
**PNM**
**PO BOX 1059**
**SANTA FE, NM 87504**

Re:   ALBERT RAMIREZ vs. State of New Mexico
      Criminal Cause No. D-905-CR-2007-00434

Dear Mr. Ramirez:

The district court has appointed the Public Defender Department Post-Conviction Habeas Unit to represent you on your petition for a *writ of habeas corpus. Your case has been assigned to me*, and I am pleased to represent you on your *petition.*

At your earliest convenience please arrange an attorney-client phone call through your caseworker. Prior to our call, your caseworker should contact my legal assistant, Tanya, to arrange to schedule the attorney-client call. This will insure that I am in my office, have your file ready and am available to take your call. Our office will accept the charges for the call, if necessary.

Because of the number of inmates that I represent, we cannot make a written response to most letters. You can always write to me if there is an emergency or you do not have access to a scheduled attorney-client call through your caseworker.
However, if you have any important facts or legal ideas you want me to review, please either bring them up during our phone call or put them in writing.

My direct number is (505)369-3612, and my legal assistant, Tanya's direct number is (505)369-3613. Please keep me posted about your location and please send me any changes of your address.

Sincerely,

*Amanda Stephenson*
NM Public Defender Department/Post-Conviction Habeas Unit

xc: File

505 Marquette Avenue NW, Suite 120, Albuquerque, NM 87102 (505) 369-3600, FAX (505) 796-4595

FOR FAILURE TO FILLOW OWN RULES

Amanda, I appreciate your help. Thank you.

I sent L.F. AMEnded petition to the court. Please contact 9th district, tell them you will help me do Amend petition.

IVE BEEN cheated, all is said & done wrong, I should be out. double Jeopardy — Also, How can I very WIN My Habeas, but file for double Jeopardy, IVE been prejudiced by counsel I wanted Cosby, But, in Habeas, said NO. Because, I dont know How to win on other issues, I will abandon Ineffective assistance, if able to win on other issues, file Double Jeopardy motion, do you? know what I mean. violation of my due process, then double Jeopardy.

K.

SEE Case law — Michael brewery US. ... St., Connecticut 2015. charged 2013 closed 2019 escorts. Deck US. Missouri. 2610. Sketches escorts.

105 Irons Sketches, Presumed Preexisting too. Atomarion or Ex Mustaf. Jury seeing? I was I was too moronic.



# LIANE E. KERR, LLC
## Liane E. Kerr, Attorney at Law

### TRANSMITTAL MEMORANDUM

**DATE:**       October 5, 2018

**TO:**       Albert Ramirez, PNM 69597
        c/o PNM
        P.O. Box 1059
        Santa Fe, New Mexico 87504-1059

**RE:**       *State of New Mexico v. Albert Ramirez D-0905-CR-2007-00434*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Enclosed please find the following:

### State's Response

Please:

_____       File and return endorsed copy to this office.

_____       Sign and return to this office.

_____       Check in the amount of $_____ for

_____       Per your request.

__X__       For your information.

_____       Please contact the office to schedule an appointment.

_____       Pay vendor directly.

_____       Other:

Sincerely,

Yareli Oñate
Legal Assistant to
LIANE E. KERR LLC

STATE OF NEW MEXICO
COUNTY OF CURRY
IN THE NINTH JUDICIAL DISTRICT COURT

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

2009 JAN 12  PM 3: 23

_____ COURT

STATE OF NEW MEXICO,

Plaintiff,

v.

**ALBERT JOSE RAMIREZ,**                                    No. **D-0905-CR-0200700434**
DOB: ███88
SOC: ███793
STN: 050100070340

Defendant.

## ADDITIONAL WITNESS LIST

The prosecution notifies the opposing party that the following potential witnesses may be

called to testify at trial:

1. Officer Jonathan Howard, Clovis Police Department, Clovis, New Mexico;

2. Officer Tim Orum, Clovis Police Department, Clovis, New Mexico.

_____
ANDREA R. REEB
CHIEF DEPUTY DISTRICT ATTORNEY

I hereby certify that a copy of the
foregoing instrument was mailed/
delivered to opposing counsel on the
12th day of January, 2009.

_____

D.A. No. 07-471
MEC/jrg                                                    Criminal Form 9-417

State vs. Albert Jose Ramirez  No. D-0905-CR-0200700434

RP 251

STATE OF NEW MEXICO
IN THE NINTH JUDICIAL DISTRICT
COUNTY OF CURRY

2009 JAN 13  PM 2: 15

STATE OF NEW MEXICO,

     Plaintiff,

v.

ALBERT RAMIREZ,                No. D-0905-CR-0200700434

     Defendant.

### *ADDITIONAL*
### *STATE'S WITNESS LIST*

     COMES NOW the State of New Mexico by and through its attorney, and discloses that

the following is an additional witness which the Office of the District Attorney intends to call for

trial in this cause:

     1.     Joshua Parkin, Clovis Police Department, 300 Connelly, Clovis, NM 88101.

Matthew Chandler
District Attorney

I hereby certify that I have mailed/
delivered a copy of the foregoing to
opposing counsel this **13th** day of
January, 2009.

DA 07-471
MEC/jrg

RP 252

AFFIDAVIT I asked l.awe.E.KUI HABEAUS ATTORNEY, TO File 5/9/18 Issues correctly Sued.andt

I contacted AMANDA STEPHENSON several times let her know the deadline would be soon to file the Amended HABEAUS PETITION Each time she wind say she would file it and Requested the transcript From the Court Closing And opening Arguments Rebuttal And OF Specific witnesses Sam Saiz, Dennis Fite, Officer Howard, Tony beserwez, Sandyloomis, date lice But NEVER Got The transcript or discovery of My mental Health Records From prisons NM.deptCorr. To show I was suffering From Schizophrenia + PTSd + depression at time of trial + possibly time of crime I was INSANE or Incapacitated and Not competent I was decieved by amanda Stephenson post conviction Habeaus Attorney She did Nothing Filed Nothing only lied Continuously → To ME. No loyalty. And this caused me not to be able to properly ⇒

5/9/18

consult with my new private
Attorney Liane Kerr And
Also Appelate counsel was
ineffective for not claiming
insufficient Evidence to convict
and double jeopardy on the
two counts of tampering w/
Evidence and I told him
to check closing Arguments
this was prosecutorial
Misconduct. By calling me
a menace to society, liar,
manipulator, cold blooded killer no
Evidence to support this and
asking witness sam saiz in
direct Exam oil you telling the
truth and at the time of incident?
There is no reason for you to lie?
Vouch for witness. Boosting credibility
And of Exibit 110 letter stating
of shooting people, Jacking stealing
drugs killing, was Admitted Read
to July then excluded, but used
in closing Argument →

Showing pictures of deceased gruesome
Should of objected.
ask for Hearing of some change too
519118

And appelate counsel failed to argue
There was conflict of Interest
between myself and trial counsel
I wanted de Maxone Swartz called
as a witness to my sanity & competency,
mental illness, and im not faking,
Liar and Truthfull my credibility
character witness.
      All this was ineffective
assistance of counsel.

Trial counsel failed to question
poll Jury members After I fell
down and they saw my leg
shackles. Failed to Request A
mistrial and failed to object
in closing Argument & Rebutal
And examination of my witnesses
I was prejudiced Ala
denied my right to effective
assistance of counsel

I was denied my due process
Rights And A fair trial →

5/9/20

5TH and 14TH admentmedment And
6th admendment And violation
of Federal law And Federal Rights
and Federal and United States
laws And constitution.

Between Jan. 15th and Feb 29th 2018
I had no pens And paper to write
And Not able to speak to
my Habeaus attorney leave well
I spoke to HER 10 minutes in
about 2½ months, we had
About No time proper to File

5/9/2018

petition, research, go over volumnous transcript, records, discovery to Fully claim All of our claims raised.

Ineffective assistance of trial counsel
Ineffective Assistance of appelate counsel

improp/comment on silence
improper prior Bad acts Evidence
Tampering w/Evidence double jeprody
Prosecutorial Misconduct
cross examination, direct Examination,
Closing Argument,
Incompetency to Stand trial
revalation of competeny
Insufficent evidence to convict
court improper excusion of
Sex Abuse.
Jury Saw me Shackeld in court
and Fall down.
Challenge Grand Jury Indictment

5/9/2018

Trial counsel failed to ask for
Motion for Change of venue even
though extensive News media
as alleged attacked victom on previous
occasions.
Failed for Motion Pretrial discovery
or give me all discovery
failed to suppress evidence,
Exibits, 110, 357 Bullets, cellphones v180
failed to get all physch exams.

~~the~~ district court abused discretion
improperly denied Motion for
Extension to File Amended petition
to meet with + discuss issues
review, transcript, conduct Research
and discovery douwnoug, And dishonesty
disception by Amanda Stephenson
I told Her to file it in Dec 2017
She said She would and did
Nothing. No Research, No request
for transcripts, no discovery
requests, only extension to
do nothing.

5/9/2018

NEWSPAPERS. Stated I threated
victim and my mom to kill them
Both. pre Judicial.
NO warrant for Search of
cadillic and Room padlocked.
NO objection to Hearsey
of defendents witness. Hesicum Rarrez
and lupe cassillas. Incomessble

I am not and was not Able
to properly File my petition
For Habeas Relief Bcuz I
did not have discaeey, or
transcript closing+ opening Argment
prosecutor. AL misconduct. also
IN questioning witnesses.

Not able to Factual + Bring claims
with all I needed to shw
by not allowing 60 day Extensior
to meet with lawyer
liaue well.            Sincerely CAS97
                        Albert Ramrez
                        P.O Box 639
←  Next page            Lascrucesm
                               88004

5/9/18

THIS AFFIDAVIT is to Show I did
NOT have enough time to consult with
LICME KERR HABEAUS ATORNEY appt.
2/28/2018 I AM going to do My BEST I
ask THE district court And Federal
court to NOT deny My petition or
dismiss it bcuse I did NOT Say
WHAT witnesses would Say at an Evidetary
Hearing. OR WHAT Evidence Id Show
TO Prove IM wrongfully convicted
IF Id of but a 60 day Extention
this would of been possible.
THERE will be a MISCARridge of
Justice by not allowing me 60
day Extension and to give me AN
EVIDENTARY HEARING And properly
able to present MY issues Evidence
document, witnesses And discovery
And trial transcript.

State of New Mexico            Thank you very much
County of Dona Ana                Albert Ramirez



OFFICIAL SEAL
William Adkins
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: 12-18-18

Signed and sworn before me
on May 10, 2018 by Alberto Ramirez
Notary: William Adkins
My Commission Expires 12-18-18

5/9/48

I was IN an accident april 2007. left me unable to walk, work or drive. Hallucinatory, delusional, paranoid, severly depressed. taking several medications.

There would be a miscarriage of Justice to not allow me an 60 day extension to properly talk with my Habeas Lawyer and raise issues in fed. district court. + I need trial transcript, discovery to research.

I am being done wrong by AmatdStephenson And the court. I needed more time. I believe wrongly denied.

Thank you very much
God Bless you

_____

# LIANE E. KERR, LLC

Liane E. Kerr, Attorney at Law

April 18, 2018

Albert Ramirez, PNM 69597
c/o SNMCF
P.O. Box 639
1983 Joe R. Silva Boulevard
Las Cruces, New Mexico 88004-0639

*[handwritten: Daniell effective of assistance Habeas petition assistance — DID NOT TO MEET My Present Issues properly]*

RE:    *State of New Mexico v. Albert Ramirez*, D-0905-CR-2007-00434

Dear Mr. Ramirez:

Thank you for your recent letter. I agree we need more time prior to filing the Petition. We did finally get your discovery from the PD's office. I finished reviewing your notes last night. We also received a copy of your appellate file, on loan from the court. I was hoping to go through the file in its entirety before visiting with you in Las Cruces. Our Petition was due April 19, 2018.

Because of the late receipt of discovery, I requested a 60 day extension (since Ms. Stephenson requested two separate 90 day extensions but filed nothing, I didn't want to push things and ask for a full 90 days). Unfortunately, the State would not agree to my request. The judge gave us only 30 days, making our new Petition due May 19, 2018.

I have been working furiously to pull the Petition together so we will not miss the deadline. I sent the audio CDs to a transcriptionist to transcribe only those portions of the trial which support the habeas argument. I made reference to the transcripts by citing to the CD and counter number. Once I have the transcripts, I will replace the CD counter number with the actual transcripts as exhibits on receipt of same. Because I am still pulling together the exhibits, I have not labeled them yet. Regardless, I am providing you the Petition, together with the exhibits I do have.

Consequently, you will need to review the Petition, which is included, carefully and expeditiously and give me your thoughts as soon as possible. I have made arrangements to visit with you in Las Cruces on May 10, 2018. I hope to have things finalized prior to our meeting, so please review the document prior to our upcoming meeting.

I look forward to working with you.

Sincerely,

LIANE E. KERR

w/Petition

- I.E.A. OF COUNSEL WAS INSUFFICIENT FOR RECORD NO EXPANSION OF RECORD or an EVIDENTARY HEARING.
- NO Request by HABEAUS lawyer FOR transcript OF closing ARGUMENT transcribed.
- TRANSCRIPT WAS ESSENTIAL to Closing ARGUMENT to REVIEW Trial COUNSEL PERFORMANCE at TRIAL.
- Constitutional Error. would of been Found NOT guilty.
- Amend. Resubmitting.
- Fundamental miscarriage OF Justice would result from Failure to Hold A EVIDENTARY HEARING.
- Demonstrating a NEED for an Evidatory Hearing
- The court must hold a Hearing /for the prisoner to offer Evidence U.S.V. Hurtado ; 516. U.S. Ct, 11 28. L.Ed 231
    No appearence of prisoner NEEDED.

# LIANE E. KERR, LLC

Liane E. Kerr, Attorney at Law

May 14, 2018

Albert Ramirez, PNM 69597
c/o SNMCF
P.O. Box 639
1983 Joe R. Silva Boulevard
Las Cruces, New Mexico 88004-0639

RE:    *State of New Mexico v. Albert Ramirez ,D-0905-CR-2007-00434*

Dear Mr. Ramirez:

Having met with you recently, I can confirm what others have iterated about your ability to work meaningfully on your case. I do not appreciate you assuming that my meeting with you was to rehash arguments which have already been advanced by others and which I did address in the habeas petition. In addition, I asked you numerous times to please provide me with your input on this petition and yet you were silent, preferring instead to accuse others of stealing your discovery and trying to undermine you. I might mention that when we met, you had in your possession, copious amounts of discovery----certainly more than I pulled together for your case and I can only assume that you have multiple copies of everything since you have made the same complaint to anyone who dared assume the task of representing you.

Although I do not think that adding issues which are not supported by the record are helpful to the habeas process, as requested I added the requested issues. I will not add your "affidavit" as it is merely argument. As I have repeated to you on multiple occasions: either I write the habeas petition and present it to the court or you do. You are no my co-counsel. I previously provided the petition and am providing the last two pages which changed due to the additional issues for which you requested "just a paragraph". Those paragraphs are added and included with this letter.

I also include the actual exhibits which are attached to the habeas petition.

Sincerely,

LIANE E. KERR

w/added pages to Petition; exhibits

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

2017 JUL 27 PM 2: 17

Stelley Bouwer
CLERK DISTRICT COURT

ALBERT JOSE RAMIREZ,

    Petitioner,

vs.                        No.   D-0905-CR-2007-00434

STATE OF NEW MEXICO,

    Respondent.

## ORDER OF APPOINTMENT FOR HABEAS CORPUS PROCEEDINGS UNDER RULE 5-802 NMRA

THIS MATTER having come before the Court on Petitioner's pro se Petition for Writ of Habeas Corpus filed June 20, 2017 and Petitioner's pro se Petition for Writ of Habeas Corpus filed July 17, 2017 in the above referenced cause number, and the Court being fully advised of the circumstances;

THE COURT FINDS THAT:

[X] The petitioner is incarcerated.

IT IS THEREFORE ORDERED THAT:

[X] The Law Office of the Public Defender is hereby appointed to represent the Petitioner in the above-entitled cause without payment of the application fee.

[X] Petitioner's counsel shall file an amended petition or file a notice of non-intent to file an amended petition within ninety (90) days of the date of the filing of this order.

DREW D. TATUM
*District Judge, Division II*

# LIANE E. KERR, LLC

Liane E. Kerr, Attorney at Law

April 18, 2018

Albert Ramirez, PNM 69597
c/o SNMCF
P.O. Box 639
1983 Joe R. Silva Boulevard
Las Cruces, New Mexico 88004-0639

RE:    _State of New Mexico v. Albert Ramirez ,D-0905-CR-2007-00434_

Dear Mr. Ramirez:

Thank you for your recent letter. I agree we need more time prior to filing the Petition. We did finally get your discovery from the PD's office. I finished reviewing your notes last night. We also received a copy of your appellate file, on loan from the court. I was hoping to go through the file in its entirety before visiting with you in Las Cruces. Our Petition was due April 19, 2018.

Because of the late receipt of discovery, I requested a 60 day extension (since Ms. Stephenson requested two separate 90 day extensions but filed nothing, I didn't want to push things and ask for a full 90 days). Unfortunately, the State would not agree to my request. The judge gave us only 30 days, making our new Petition due May 19, 2018.

I have been working furiously to pull the Petition together so we will not miss the deadline. I sent the audio CDs to a transcriptionist to transcribe only those portions of the trial which support the habeas argument. I made reference to the transcripts by citing to the CD and counter number. Once I have the transcripts, I will replace the CD counter number with the actual transcripts as exhibits on receipt of same. Because I am still pulling together the exhibits, I have not labeled them yet. Regardless, I am providing you the Petition, together with the exhibits I do have.

Consequently, you will need to review the Petition, which is included, carefully and expeditiously and give me your thoughts as soon as possible. I have made arrangements to visit with you in Las Cruces on May 10, 2018. I hope to have things finalized prior to our meeting, so please review the document prior to our upcoming meeting.

I look forward to working with you.

Sincerely,

LIANE E. KERR.

w/Petition

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Supreme Court of New Mexico
8/11/2017 10:57:06 AN
Office of the Clerk

**August 11, 2017**

Joey D. Moya

**NO. S-1-SC-36599**



**ALBERTO RAMIREZ,**

Petitioner,

v.

**GERMAN FRANCO, Warden,**

Respondent.

## ORDER

WHEREAS, this matter came on for consideration by the Court upon petition for writ of certiorari filed under Rule 12-501 NMRA, and the Court having considered the petition and being sufficiently advised, Justice Petra Jimenez Maes, Justice Charles W. Daniels, and Justice Barbara J. Vigil concurring;

NOW, THEREFORE, IT IS ORDERED that the petition for writ of certiorari is DENIED.

IT IS SO ORDERED.

WITNESS, the Honorable Judith K. Nakamura, Chief Justice of the Supreme Court of the State of New Mexico, and the seal of said Court this 11th day of August, 2017.

Joey D. Moya, Clerk of Court
Supreme Court of New Mexico

By _Madeline Garcia_
Chief Deputy Clerk

I CERTIFY AND ATTEST:
A true copy was served on all parties
or their counsel of record on date filed.
_Madeline Garcia_
Clerk of the Supreme Court
of the State of New Mexico

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

ALBERT JOSE RAMIREZ,

          Petitioner,

vs.

STATE OF NEW MEXICO,

          Respondent.

## DECISION AND ORDER

THIS MATTER having come before t⬛_____

Habeas Corpus filed March 22, 2017 and Peti⬛_____

filed April 25, 2017 (hereinafter collectively ⬛_____

cause number, and the Court being fully advise_____

This Court notes that the Petition is _____

Petitioner is challenging his conviction base⬛_____

assistance of counsel.

A review of the file shows that tha⬛_____

including Murder in the First Degree in Octob⬛_____

New Mexico Supreme Court. The New Mexic⬛_____

This case was subsequently assigned to this Co_____

As to Petitioner's argument that there _____

properly supported by facts in the Petition. _____

relief as a matter of law in this regard.

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

ALBERT JOSE RAMIREZ,

        Petitioner,

vs.

        No.    D-0905-CR-2007-00434

STATE OF NEW MEXICO,

        Respondent.

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

2017 MAY 31   PM 12: 21

CLERK DISTRICT COURT

## DECISION AND ORDER OF SUMMARY DISMISSAL

THIS MATTER having come before the Court on Petitioner's pro se Petition for Writ of Habeas Corpus filed March 22, 2017 and Petitioner's pro se Petition for Writ of Habeas Corpus filed April 25, 2017 (hereinafter collectively referred to as "Petition") in the above referenced cause number, and the Court being fully advised, enters its sua sponte order and FINDS:

This Court notes that the Petition is scribbled and nearly illegible. It appears that Petitioner is challenging his conviction based upon prosecutorial misconduct and ineffective assistance of counsel.

A review of the file shows that that Petitioner was convicted of various offenses including Murder in the First Degree in October, 2013. Petitioner appealed his conviction to the New Mexico Supreme Court. The New Mexico Supreme Court affirmed Petitioner's conviction. This case was subsequently assigned to this Court.

As to Petitioner's argument that there was prosecutorial misconduct, this claim is not properly supported by facts in the Petition. This Court finds that Petitioner is not entitled to relief as a matter of law in this regard.

As to Petitioner's argument that he was denied effective assistance of counsel in this matter, this claim is not properly supported by facts in the Petition. Further, this issue was part of Petitioner's appeal and the New Mexico Supreme Court affirmed Petitioner's conviction. This Court finds that Petitioner is not entitled to relief as a matter of law in this regard.

## DECISION AND DISMISSAL

After examining the Petition, exhibits, and prior proceedings, and based on the above discussed reasons, this Court finds the Petitioner is not entitled to relief as a matter of law. Therefore, in accordance with Rule 5-802(G)(1) NMRA, the Petitioner's pro se Petition for Writ of Habeas Corpus filed March 22, 2017 and Petitioner's pro se Petition for Writ of Habeas Corpus filed April 25, 2017 are summarily dismissed. An attorney will not be appointed and a hearing will not be set.

HON. DREW D. TATUM
District Judge, Division II

January 12, 2017

To: Alberto Ramirez #69,597

From: Steven J. Forsberg, Assistant Public Defender

Re: Status of your appeal

Dear Mr. Ramirez,

As we discussed on the telephone, the New Mexico Supreme Court has ruled against you on your appeal. Your direct appeal is now over. You can file a writ of habeas corpus, and I recall you said you had the package of paperwork. I cannot represent you on your habeas case, but when you file your request I advise that you ask that an attorney be appointed for you.

You mentioned that a lot of your papers were lost, so I am sending you copies of the brief-in-chief, state's answer, and reply brief in your case.

As I said, I cannot write your habeas petition for you, but I'd suggest you consider adding this to it: In your Brief-in-Chief on page 17 it states that you had asked Doctor Schwartz to be called as a witness on your behalf, but she was not. This is evidence that there were witnesses you wanted called that were not.

You have my name and number if you have any further questions regarding your direct appeal.

Steven J. Forsberg, Assistant Public Defender

505 Marquette Ave. NW ste 120

Albuquerque, NM 87102

Phone: (505)796-4405

# LIANE E. KERR, LLC

Liane E. Kerr, Attorney at Law

May 14, 2018

Albert Ramirez, PNM 69597
c/o SNMCF
P.O. Box 639
1983 Joe R. Silva Boulevard
Las Cruces, New Mexico 88004-0639

RE:   *State of New Mexico v. Albert Ramirez , D-0905-CR-2007-00434*

Dear Mr. Ramirez:

Having met with you recently, I can confirm what others have iterated about your ability to work meaningfully on your case. I do not appreciate you assuming that my meeting with you was to rehash arguments which have already been advanced by others and which I did address in the habeas petition. In addition, I asked you numerous times to please provide me with your input on this petition and yet you were silent, preferring instead to accuse others of stealing your discovery and trying to undermine you. I might mention that when we met, you had in your possession, copious amounts of discovery----certainly more than I pulled together for your case and I can only assume that you have multiple copies of everything since you have made the same complaint to anyone who dared assume the task of representing you.

Although I do not think that adding issues which are not supported by the record are helpful to the habeas process, as requested I added the requested issues. I will not add your "affidavit" as it is merely argument. As I have repeated to you on multiple occasions: either I write the habeas petition and present it to the court or you do. You are no my co-counsel. I previously provided the petition and am providing the last two pages which changed due to the additional issues for which you requested "just a paragraph". Those paragraphs are added and included with this letter.

I also include the actual exhibits which are attached to the habeas petition.

Sincerely,

LIANE E. KERR

w/added pages to Petition; exhibits

Steven Froberg

A true copy was served on all parties
or their counsel of record on date
filed.

Joey D. Moya
Chief Clerk of the Supreme Court
of the State of New Mexico

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

## MANDATE NO. S-1-SC-34576

RECEIVED
JAN 1 2 2017
APPELLATE DIVISION
PUBLIC DEFENDER DEPT.

3    TO THE DISTRICT COURT SITTING IN AND FOR THE COUNTY OF

4    CURRY, GREETINGS:

5       WHEREAS, in causes numbered D-905-CR-2007-00434 on your criminal

6    docket, wherein State of New Mexico was plaintiff and Albert Jose Ramirez was

7    defendant, the district court entered judgment convicting defendant of willful

8    and deliberate first-degree murder and tampering with evidence; and

9       WHEREAS, the cause and judgment were afterwards brought into this

10    Court upon notice of appeal and statement of issues filed by defendant,

11    whereupon such proceedings were had that on December 1, 2016, a decision was

12    issued affirming defendant's conviction.

13       NOW, THEREFORE, this cause is remanded for further proceedings, if

14    any, consistent and in conformity with the judgment of this Court.

15       IT IS SO ORDERED.

16                WITNESS, Honorable Charles W. Daniels, Chief Justice
17                of the Supreme Court of the State of New Mexico, and
18                the seal of said Court this 11th day of January, 2017.

19   (S E A L)

20                Joey D. Moya, Chief Clerk of the Supreme Court
21                  of the State of New Mexico

I did not know of the till
Dec 2016

# UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT
Office of the Clerk
Byron White United States Courthouse
Denver Colorado 80257

Elisabeth A. Shumaker
Clerk of Court

Chris Wolpert
Chief Deputy Clerk

May 7, 2019

Alberto Ramirez
No. 69597
Lea County Correctional Facility
6900 West Millen Dr.
Hobbs NM 88244

Dear Mr. Ramirez

The court has received your letter asking for forms from this court. Your case is still pending in the district court. After the district court rules, and if you file an appeal, you will receive instructions and forms from the court at that time.

Very truly yours,

Elisabeth A. Shumaker

ELISABETH A. SHUMAKER, Clerk

/err

Supreme Court of New Mexico
2/5/2019 9:48 AM
Office of the Clerk
Joey D. Moya

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

## February 05, 2019

NO. S-1-SC-37501

**ALBERT RAMIREZ,**

Petitioner,

v.

**JOHN GAY, Warden,**

Respondent.

## ORDER

WHEREAS, this matter came on for consideration by the Court upon petition for writ of certiorari filed under Rule 12-501 NMRA, and the Court having considered the petition and being sufficiently advised, Chief Justice Judith K. Nakamura, Justice Barbara J. Vigil, and Justice Michael E. Vigil concurring;

NOW, THEREFORE, IT IS ORDERED that the petition for writ of certiorari is DENIED.

IT IS SO ORDERED.



WITNESS, the Honorable Judith K. Nakamura, Chief Justice of the Supreme Court of the State of New Mexico, and the seal of said Court this 5th day of February, 2019.

Joey D. Moya, Clerk of Court
Supreme Court of New Mexico

I CERTIFY AND ATTEST:
A true copy was served on all parties
or their counsel of record on date filed.
*Madeline Garcia*
Clerk of the Supreme Court
of the State of New Mexico

By ___*Madeline Garcia*___
Chief Deputy Clerk

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Supreme Court of New Mex
8/11/2017 10:57:06 A
Office of the Cler

Joey D. Moya

**August 11, 2017**

NO. S-1-SC-36599

**ALBERTO RAMIREZ,**

Petitioner,

v.

**GERMAN FRANCO, Warden,**

Respondent.



## ORDER

WHEREAS, this matter came on for consideration by the Court upon petition for writ of certiorari filed under Rule 12-501 NMRA, and the Court having considered the petition and being sufficiently advised, Justice Petra Jimenez Maes, Justice Charles W. Daniels, and Justice Barbara J. Vigil concurring;

NOW, THEREFORE, IT IS ORDERED that the petition for writ of certiorari is DENIED.

IT IS SO ORDERED.

WITNESS, the Honorable Judith K. Nakamura, Chief Justice of the Supreme Court of the State of New Mexico, and the seal of said Court this 11th day of August, 2017.

Joey D. Moya, Clerk of Court
Supreme Court of New Mexico

By _____
Chief Deputy Clerk

I CERTIFY AND ATTEST:
A true copy was served on all parties
or their counsel of record on date filed.
Madeline Garcia
Clerk of the Supreme Court
of the State of New Mexico

Steven Frober

I CERTIFY AND ATTEST:
A true copy was served on all parties or their counsel of record on date filed.
*Joey D. Moya*
Chief Clerk of the Supreme Court of the State of New Mexico

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

## MANDATE NO. S-1-SC-34576

TO THE DISTRICT COURT SITTING IN AND FOR THE COUNTY OF

CURRY, GREETINGS:

RECEIVED
JAN 1 2 2017

WHEREAS, in causes numbered D-905-CR-2007-00434 on your criminal

docket, wherein State of New Mexico was plaintiff and Albert Jose Ramirez was

defendant, the district court entered judgment convicting defendant of willful

and deliberate first-degree murder and tampering with evidence; and

WHEREAS, the cause and judgment were afterwards brought into this

Court upon notice of appeal and statement of issues filed by defendant,

whereupon such proceedings were had that on December 1, 2016, a decision was

issued affirming defendant's conviction.

NOW, THEREFORE, this cause is remanded for further proceedings, if

any, consistent and in conformity with the judgment of this Court.

IT IS SO ORDERED.

WITNESS, Honorable Charles W. Daniels, Chief Justice
of the Supreme Court of the State of New Mexico, and
the seal of said Court this 11th day of January, 2017.

(S E A L)

Joey D. Moya, Chief Clerk of the Supreme Court
of the State of New Mexico

Filed
Supreme Court of New Mexico
2/5/2019 9:48 AM
Office of the Clerk
Joey D. Moya

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO
## February 05, 2019

NO. S-1-SC-37501

**ALBERT RAMIREZ,**

     Petitioner,

v.

**JOHN GAY, Warden,**

     Respondent.

## ORDER

WHEREAS, this matter came on for consideration by the Court upon petition for writ of certiorari filed under Rule 12-501 NMRA, and the Court having considered the petition and being sufficiently advised, Chief Justice Judith K. Nakamura, Justice Barbara J. Vigil, and Justice Michael E. Vigil concurring;

NOW, THEREFORE, IT IS ORDERED that the petition for writ of certiorari is DENIED.

IT IS SO ORDERED.



WITNESS, the Honorable Judith K. Nakamura, Chief Justice of the Supreme Court of the State of New Mexico, and the seal of said Court this 5th day of February, 2019.

Joey D. Moya, Clerk of Court
Supreme Court of New Mexico

I CERTIFY AND ATTEST:
A true copy was served on all parties
or their counsel of record on date filed.
*Madeline Garcia*
Clerk of the Supreme Court
of the State of New Mexico

By_*Madeline Garcia*_

            Chief Deputy Clerk

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

NINTH JUDICIAL DISTRICT
CURRY COUNTY NM
FILED IN MY OFFICE

2017 OCT 23 AM 9:53

_____
CLERK DISTRICT COURT

ALBERTO RAMIREZ,

            Petitioner,                    No. D-905-CR-2007-00434

vs.

STATE OF NEW MEXICO,

            Respondents.

### STIPULATED EXTENSION ORDER

This matter comes before the Court on the request of habeas counsel for Petitioner,

Amanda Stephenson, Assistant Public Defender, for an extension of time for the filing of an

amended Petition for Writ of Habeas Corpus or Notice of Non-Intent, and the Court being

advised that further investigation and collection of materials is required, counsel for the State

having no objection,

It is therefore ORDERED that counsel for Petitioner is allowed an additional 90 days

from the filing of this Order for the preparation of an Amended Petition.

_____
Drew Tatum
DISTRICT JUDGE

APPROVED

_____
Amanda Stephenson
Counsel for Petitioner

Approved via email 10/17/17
Andrea Reeb
District Attorney

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO



NINTH JUDICIAL
CURRY COU...
FILED IN MY ...

'2018 JAN 19  PM 3:38

ALBERTO RAMIREZ,

               Petitioner,

vs.

               No. D-905-CR-2007-00434

STATE OF NEW MEXICO,

               Respondents.

## SECOND STIPULATED EXTENSION ORDER

This matter comes before the Court on the request of habeas counsel for Petitioner,

Amanda Stephenson, Assistant Public Defender, for an extension of time for the filing of an

amended Petition for Writ of Habeas Corpus or Notice of Non-Intent, and the Court being

advised that further investigation and collection of materials is required, counsel for the State

having no objection,

It is therefore ORDERED that counsel for Petitioner is allowed an additional 90 days

from the filing of this Order for the preparation of an Amended Petition.

Drew Tatum
DISTRICT JUDGE

APPROVED:

Amanda Stephenson
Counsel for Petitioner

Approved via email 1/16/18
Andrea Reeb
District Attorney

*FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701*

9. State the date of the final judgment, order or decree for confinement:

JANUARY 8th 2014.

10. Attach a copy of the judgment, order or decree. If not, describe your sentence.

Life eligibility After 30yrs plus two 3yrs
two tempering with Evidence,
1st degree Murder
2 temper w/ Evidence

11. Was the conviction the result of:

____ Guilty plea

____ No Contest plea (*nolo contendere*)

✓ Finding of guilty by judge or jury

12. Was the confined person represented by an attorney during the proceedings resulting in the confinement?

✓ Yes

_____ No

13. If you answered "yes" to (12), list the name and address of each attorney who represented the confined person:

JESSE. P. COSBY

P.O BOX 3330

14. Did you appeal your conviction?

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

✓___ Yes *(Go to 15)*

___ No *(Go to 16)*

15. If you answered "yes" to (14), list:

(a) The name of each court to which an appeal was taken:

9th Judicial District Court.

New Mexico Supreme court of appeals.

(b) The case name and docket number for each appeal:

( Don't Know How to do this. )

(c) The date each appeal was filed and decided: *(Attach a copy of each opinion or order)*

Filed Sometime Around August 2013.

Dec 1st 2016.

(d) A summary of the grounds upon which each appeal was based:

Competency Reevaluations, Ineffective assistance
of counsel, Improper comments on Silence, prosecutor
misconduct, Prior bad acts. Speedy

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

(e) The result of each appeal:

denied.

(f) The name and address of the attorney on appeal:

STEVEN J. FORSBERG
50 S. marquette N.W 87102
505.796.4400

16. If you answered "no" to (14), state the reasons for not appealing:

17. Apart from any appeals listed in (15), have any other post conviction applications, petitions or motions, been filed with regard to this same imprisonment or restraint?

    ✓ Yes *(Go to 18)*

    ___ No *(Go to 19)*

18. If you answered "yes" to (15), list with respect to each such petition or motion:

(a) The type of proceeding: petition Habeas, denied. But I've put new motion to
Recon's acc, amend, revised petition

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

Petition Habious, But This one is to
Resubmitte it to try to do it propily

**(b) The name and date of each case:**

RAR Judicial distnct court, State of N.Mex. v. Abbt
Ramirez

**(c) the docket number:**

NOD - ⊗⊗ 090 S - CR - 2007 - 00434

**(d) the court, the administrative agency, or institutional grievance committee from which relief was sought:**

NA

**(e) the result of each proceeding. (*Attach a copy of each decision.*)**

denied,

**(f) The issues raised in each proceeding:**

ineffective assistence of cousel,

**(g) State whether a hearing was held in connection with each of these proceedings:**

NO

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

(h) State whether the confined person was represented by an attorney in each proceeding and, if so, the attorney's name and address:

NO

19. Do you seek the appointment of counsel to represent you?[1]

✓ Yes

___ No

**VERIFICATION**

STATE OF NEW MEXICO

COUNTY OF ....... SANTA FE

I, the undersigned, being first duly sworn upon my oath, state that I am the petitioner in this action. I have read the foregoing petition and know and understand its contents, and the information contained herein is true and correct to the best of my knowledge, information and belief. On _____, ___ (date), I deposited this petition in the internal mail system of the institution in which I am confined, properly addressed with any necessary postage prepaid, for forwarding to the district court at the following address:

1st Judicial District Court (name of court)

___ (city), New Mexico, ___ (zip code).

( Signature )  AlBERT JOSE RAMIREZ

( Address )  P.O. BOX. 1059 SANTE FE 87501

PNM No., if applicable

*NOTORIZE pLEASE*

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

SUBSCRIBED AND SWORN TO before me this _12_ day of _JUNE_, _2017_ by

*(Name of petitioner)*

ALBERTO RAMIREZ

Notary Public

My Commission Expires: 4/23/2019

### CERTIFICATE OF SERVICE

I hereby certify that true copies of the foregoing petition were served upon the respondent and the district attorney in the county in which the petition is filed by _mail_ *(describe manner of service)*, this _13_ day of _JULY_, _2017_

(
*Signature of petitioner*  ALBERTO RAMIREZ
)
USE NOTE

Credits

[Adopted effective Aug. 1, 1989. Amended effective May 6, 2009; Dec. 31, 2014.]

Footnotes

1
After this petition is reviewed by the Court, the Court will enter the order granting or denying the writ or ordering a response before further action. The order shall be prepared by the Court.

2
Petitioners who are incarcerated at the time of filing the petition need not file a motion for free process and may file the petition without payment of the applicable filing fee. *See* Rule 5-802(D)(2) NMRA

NMRA, Form 9-701, NM R CR Form 9-701
State court rules are current with amendments received through July 1, 2015.

**FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701**

End of Document                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

THE WAY TO USE THE
EXIBITS with the ISSUES
I claim + present.
Just GO TO page and
OR EXIBIT or Both.
I am NOT A lawyer,
I had NO more paper
to make it Nice + NEAT.
I had to Send it Out
asap. + copies + ALL.
IM Being IgNored by
law library IN PRISON.

PLEASE. EXCUSE MY
MISTAKES. I Tried
MY BEST.

facts of discovery, to prove claim of INEFFECTIVENESS counsel.

See Exibit 4,5

MR. COSBY COUNSEL trial DENIED and failed to provide effective Assistance.

A WEEK BEFORE TRIAL I ASK TO FIRE MY ATTORNEY DURING TRIAL IN COURT I fired MY ATTORNEY. EACh time there NO INQUIRE INTO why I was Expressing dissatifaction I WAS Told twice by MR COSBY BEFORE TRIAL Started and after I TRIED to FIRE him In court During trial COSBY stated- I AM A little Stupid Bitch and made threats, by SAYING I hope you GET life, I already told you to take the plea or you WONT be provided EFFECTIVE assistance OF counsel.

I WAS NOT able to put the allegations on Record.

But SEE ExiBits (10) page 1,2,34,5 (10) page 38-47

See EXIBIT
page 7 page 53, 54, 55, 56, 57 page 2
EXIBIT 13

I TRIED to address court my lawyer was
NOT Filling Any of my motions I Asked him
to. Change of venue, even though there
was pre-trial publicity concerning the
Case in small community of clovis, New
Mexico. Some of this publicity inaccurately
described Mr ramirez as having attacked
Alleged victim on prior occassions, THE
publicity was in accurate and highly
pretudicial and defense cowsel should
have at least raised the issue and
requested a Hearing. SEE Exisit.

EXBIT 3

Counsel Should have at least Filed a
Motion to suppress Evidence that
was illegaly siezed + inadmissible
and highly pretudical SEE Exibit 11
or requested A Hearing on this issue

See 11
Exibit
page
48,
49,
50

Counsel did NOT provide me with all
discovery, would Not discuss who
He was planning to Cull as witnesses
And would Not discuss Intent to
present the defense of INSanity
Counsel did Not File a Notice
of INtent to present the defense
Exibit 1) page - 1, 2, 3, 4. 5

See →
page
3, 4

Exibit 1, 3, 10 page 4, 10, 12, 13
                        page 47

Insanity, But Instead of advocating zealously on Behalf of I mr ramirez defense, counsel Informed the court that He would not be presenting Expert Psychatrist, or physician, Because mr. Ramirez wont discuss the case with him and is unable to assist in the defense.

Counsel Failed to Alert the court to important facts in arguing the case. Mr Ramirez was Injured In an accident in 2007 which he Began taking anti-depressant Medication, & other Medications, this Became severe depression as he was unable to walk, work, or drive, could only walk with Cructchis, suffred from psychosomatic delusions, Hallucinations, ~~and~~ counsel did not present Evidence of the medication mr ramirez was taking.

Mr. Ramirez felt his lawyer was against him, see page 4, 10, 12, 13 Exbit 1, 3, ~~10~~

SEE EXISIT 1, page 10, page (page 4)
EXISIT 10, page

COUNSEL Failed to File any
WITNESS list whatsoever IN
SUPPORT OF MR. Ramirez's defense
OF INSANITY and lack of capacity

MR Ramirez had several witnesses
He wished to present IN SUPPORT of
his defense, Including his Aunt,
Sister, Brothers, Friends, and
doctors who TREATED him after
accidsn2.

COUNSEL failed to Show courts JENNIFER Said went
I was to coopurative
MR. Ramirez asserts that he      de. Dwess lied and I
wouldn't
received ineffective assistance of      coopurate
Counsel for various reasons that      liers
are, unfortunatly, Not ON
Record, because those matters
were not preserved IN the record.

MR. Ramirez Request ~~~~~~ that the
court grant him an attorney to
assist him IN habeas proceedings
and to Hold an Evidentary
HEARING. ON ineffective OF
COUNSEL.

EXIBIT 1. 2:12 OS
PM
⊕ ↓ 10/10/2013

AFTER I FIRED COUNSEL IN trial
COUNSEL verbally Assaulted ME I
advised counsel. I did Fall down
In Front of Juey Because of
the shackles on my leg tied to
the table, WHEN I WAS told all
rise, Shuriff called ME to door
I FEll, Juey saw my shackle,
while my lawyer went to talk to the
Judge the Judge, the Sheriff
docerty threatred ME and told
Ms to say I did Not Fall.
I was asked by Judge did you
Fall. I said yes then No
Because Sherriff was gesturing
Me to say No. Only d.a
nould See. She was shacking
head & Finger and mouthing No.
I told my lawyer this and
ask him ⬤ why dont he say
it to the court.
HE said No I Already made
up my mind.

page 6

Exibit 1 page 1-5

Counsel Failed to Alert the court that Todd him I did fall, Juy saw my sheckles, Sherriof docerty manipulcted ng to say No. CHANGED (To go against Myself) Ask docerty SCENE!

Counssel Failed to Call, Dr Fin, dr. Birkss, dr. Maxione swarts who I advised I had Been Sexually abused My moms big Frend, + nsibor Sam saiz SEE Ex.B.t ,24, S pages 6,7,8,1 7,13 17,18-27

Counsel failed to Call witness, Pricilla lopez, ricey toromillo, to help prove I was the one being chased in yard. to Help prove my testimony truthfull,

            SEE Ex.B.t 7, 8,10
Counsel Failed to investigate family History of mental Ilness, and family witnsses to defense of Insanity, 4. 5
I would ll try to Call him and write to tall he Ignored me or was to bussy, to. see Ex.B.t 4,5,7, page 18 to 24 + 27 + 30 + 47

SEE
EXBit 2
                    SEE page7
        EX.Bt 4. 5 page17 of
                            page 19
                    ex.Bit page 25

COUNSEl Failed to Keep Promises
made, OF being able to testify
about Sexual Abuse and that he
Would File motions I asked him.
to File
                                    page 47
        SEE EXiBit 4, 5, 10
                        , 1A

COUNSEl Failed to call my Father &
who would testify Eladio Fabciedo   Brother
was violent and had assaulted me
and them IN past.
My Father and Brother are willing
to testify to this at Hearing.

COUNSEl Failed to call dr Maxine
Swatts as witness who would
testify as to my INSANITY defense
and Sexual Abuse and Incompitency
        SEE Ex.Bit 9, 10
        page 39 to 43 + 47
COUNSEl Failed to Present any
defense at trial.

COUNSEl Failed to give me advice when
I asked over I was drunk when I killed
Mysteр dad. do I tell that or not. He did not
                                    1921 page

page 8

COUNSEL Failed to GET MEDICAL
RECOICES to SHOW I WAS
ON Crutches, unable to work or walk,

COUNSEL Failed to advise me of
the Plea did Not Explain the
Maximum + Minimum time
I was Facing EVEN though I
tried to ask. (SEE page 4) 5,6)

COUNSEL Failed to Be respectfull
and responsible and Fullfill his
duty of loyalty and adurcate
to me his client.

COUNSL Failed to Argue I was
The one Being chased by Robisdo
That I was 100 pounds and Robicdo
175 pounds, Not 145 as medical
Examiner said, page - 7-10
                    SEE Sx.BiTs 2,

COWSEL Failed to Alert court
I was hearing voices during trial.
     SEE Sx.BiT, 1, 1A, 4, 5, 6

page 1 through 5

Exibit 1.

Counsel Failed to communicate Back with Mr. Ramirez, Even though Mr. Ramirez tried to no avail.

Mr Ramirez recieved Ineffective assistance of counsel and dwed his constitutional Rights to effective assistance of counsel.

I Mr. ramirez ask the court to appoint attorney to assist with hebious process.

Mr Ramirez ask for an Evidentary Hearing to develope the record Nessary to prove allegations — a disposition Hearing Also. —

Also attached witness Statement by my Brother Joe Ramirez who spoke to me cosby and Told me to fire my attorney.

Sincerly
Albert.
Ramirez

Exp.

Pick
12

THE EXIBIT'S
ARE ONLY labEIEd
1 to 13 and pages 1-56
I did NOT lcble
1A, 1B, 1C, NO.
ONly, 1 to 13.
they are all relevant
to certain facts
+ allegations to
Support my CLAIM
OF. Ineffective assistance
OF COUNSEL trial +
appellate attorney.

Pg

page 13

I ask the courts all them to not dismiss my ~~case~~ ~~first~~ Habeaus Because IM pro se, please appoint me an attorney or grant an evidntary hearing, or prelimanary hearing let me prove my claim I need A chance.

I do have A witness my brother who can testify to the threats made by Mr. Cosby. Cosby told my brother to tell me to plea my brother knows of the threats

Counsel did advice me to take PLEA But would NOT EXPLAIN what the PLEA WAS.

Also Counsel did Not tell me the maximum time I was FACING. I did not KNOW. I thought the most I could get was 15 years. I did Not KNOW Mr. COSBY would not answer any of my questions or Explain anything to me.

He was disrespectfull, MEAN, Rude, unProfessional and did Not provide effective assistance.

Counsel would Not call all witness or file motions, change venue, for private investigator, new Competency Evaluation, - See Ex. B, + 16



If not for this constitutes
Ineffective assistance of
counsel. Mr. Ramirez would of
had a stronger case going
into trial. Mr. Ramirez
was prejudiced by counsel
lack of effective assistance
Please I would pray for @ for
An attorney. My 3-1-2
Ramon 2021 witnesses in effective
counsel failed to provide
effective assistance.
Sr. Ramon Ramirez

This is to help properly present petition for habeaus. The facts in record and off record. The claim of ineffective assistance of counsel at trial and ineffective assistance of appealate counsel.

I am trying to show I should be giving an oppurtunity to show and prove my claim + allegations and to recieve assistance from public defender office. On post conviction assistance.

Please and thank you so much for your time Help kindness God Bless

If counsel had effectivly represented Mr Ramirez. It is likely that I would of had a stronger case going into trial and this would have affected Mr ramirez's decision to enter into a plea. Mr Ramirez complained on more than one occasion to the Judge about his frustration with defense counsel. Mr. Ramirez was denied effective assistance of counsel.

I ask for an attorney to help. Evidentary Hearing,

I ask to Resubmit my habeous petition this one to send to Supreme court. Please and Thank you for your time God Bless

PO Box 1059
Santa fe nm 87504

Alberto
Ramirez
69897

ST. VS ALBERT RAMIREZ  CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|---|---|---|
| 1:58:18 PM | CHANDLER | RXEX - DO YOU UNDERSTAND THE WORD PREMEDITATE, FIRST TIME YOU SHOT ELADIO WAS IN THE GARAGE, YOU PLANNED ON KILLING HIM IN THE GARAGE |
| 1:59:03 PM | COSBY | RDEX - FURTHER COMMENTS |
| 1:59:45 PM | | #2 WITNESS JOSE RAMIREZ JR. CALLED BY D / SWORN / DEX |
| 2:01:11 PM | | HOW OLD WERE YOU WHEN MR. ROBLEDO CAME INTO THE PICTURE |
| 2:01:52 PM | | DID YOU EVER BECOME AWARE OF HIM NOT LIVING IN THE HOUSE, HE CAME TO LIVE WITH ME FOR ABOUT 3 TO 4 MONTHS |
| 2:02:33 PM | | I ASKED HIM TO LEAVE AT THE END, I WAS ASKING HIM TO GO TO SCHOOL AND HE WOULD NOT FOLLOW RULES, |
| 2:03:05 PM | | DID HE HAVE ANY PROBLEMS WITH ELADIO ROBLEDO |
| 2:03:46 PM | | HE DID NOT HAVE ANY HATRED TOWARD'S HIM |
| 2:04:34 PM | | HOW YOU BECAME AWARE OF THE PROBLEM |
| 2:04:52 PM | | BENCH CONFERENCE |
| 2:06:33 PM | COSBY | WERE YOU AWARE OF ISSUES BETWEEN YOUR BROTHER AND SOME OTHER PEOPLE |
| 2:07:37 PM | | REMOVE DFT FROM COURTROOM |
| 2:07:49 PM | | JURY EXCUSED FROM COURTROOM |
| 2:08:47 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY |
| 2:08:56 PM | | THE COURT HAS ORDERED THE DFT TO THE OTHER ROOM TILL WE FIGURE OUT WHAT TO DO |
| 2:09:11 PM | CHANDLER | THERE IS CASE LAW IN NM READS IN TO RECORD |
| 2:10:59 PM | | HAVE A COPY OF CASE , ASKS COURT TO BRING HIM IN HERE AND GIVE HIM A STERN WARNING, IT WOULD BE THE STATES PREFERENCE TO REMAIN IN THE COURTROOM |
| 2:11:42 PM | COURT | WANTS TO SAY THIS ON THE RECORD MR. COSBY IS REPRESENTING THIS DFT AND IT IS DIFFICULT TO WORK WITH |
| 2:12:05 PM | COSBY | AT THIS JUNCTURE BY HIS OWN CONDUCT, HE HAS PUT FORTH TO THE JURY THAT I AM NOT REPRESENTING HIM , I KNOW THAT HE CREATED THE SITUATION, EVEN THOUGH THE COURT HAS ADMONISHED, THE FACT REMAINS HE HAS FIRED ME IN OPEN COURT, IF WE WANTS TO FIRE ME THAT IS HIS PEROGATIVE, IF THAT IS HIS DESIRE HE CAN GO FORWARD REPRESENTING HIMSELF ETC. |
| 2:14:07 PM | | IT IS HIS RIGHT TO REPRESENT HIMSELF, IF THAT IS HIS DESIRE AND HE WANTS TO REPRESENT HIMSELF |

10/10/2013

EXIBIT 6 # page 28

**ST. VS ALBERT RAMIREZ  CR-07-434**                    **COURTROOM ONE**

| Time | Speaker | Note |
|---|---|---|
| 9:57:26 AM | CHANDLER | **CLOSING ARGUMENT** |
| 10:10:27 AM | CHANDLER | CONTINUES CLOSING ARGUMENT |
| 10:45:29 AM | | CONTINUES CLOSING ARGUMENT |
| 10:46:27 AM | COSBY | **CLOSING ARGUMENT** |
| 10:58:56 AM | | CONTINUES CLOSING ARGUMENT |
| 11:30:00 AM | CHANDLER | **BRIEF REBUTTAL** |
| 11:39:16 AM | | CONTINUES BRIEF REBUTTAL |
| 11:40:01 AM | COURT | READS INSTRUCTION 19 BEFORE DELIBERATION IS BEGUN |
| 11:41:14 AM | COURT | ANNOUNCES ALTERNATES |
| 11:42:36 AM | | **JURY EXCUSED TO BEGIN DELIBERATION AND ALTERANTES EXCUSED** |
| 11:43:09 AM | DFT | DFT WANTS TO SAY SOMETHING |
| 11:44:05 AM | COURT | YOU CANNOT SAY ANYTHING |
| 11:44:13 AM | OFF RECORD | |
| 3:03:40 PM | | JURY SEATED IN BOX |
| 3:04:08 PM | COURT | READS THE VERDICT GUILTY COUNT 1 1ST DEGREE MURDER |
| 3:04:45 PM | | GUILTY COUNT 2 TAMPERING WITH EVIDENCE |
| 3:04:58 PM | | GUILTY COUNT 3 TAMPERING WITH EVIDENCE |
| 3:05:14 PM | COURT | DFT WISHES TO HAVE THE JURY POLLED, JURY POLLED BY NUMBER |
| 3:06:35 PM | COURT | READS FINAL INSTRUCTION TO JURY BEFORE EXCUSED |
| 3:07:13 PM | | **JURY EXCUSED FROM SERVICE** |
| 3:07:51 PM | CHANDLER | STATES REQUESTS TO MOVE INTO SENTENCING |
| 3:08:07 PM | COSBY | ASKS FOR A 60 DAY EVALUATION |
| 3:08:21 PM | CHANDLER | THIS SENTENCE IS A LIFE PLUS SIX YEARS |
| 3:09:02 PM | COURT | IT IS MANDATORY TO LIFE |
| 3:09:15 PM | COSBY | HE HAS A RIGHT TO AN ALLUCITION |
| 3:09:40 PM | COURT | WE WILL SENTENCE AFTER PRESENTENCE REPORT |
| 3:09:59 PM | COSBY | REQUESTING A 60 DAY EVALUATION |
| 3:10:16 PM | COURT | ORDER THE PRE SENTENCE REPORT , |
| 3:10:31 PM | RECESS | |

EXIBIT 6

TRIED to AlERt Court OF CONFLICT OF INtEReSt BEtween Counsel and I and make Record. I was dneel.

10/11/2013

3 of 3  page 24

Patient:    14154.1 - ALBERTO J. RAMIREZ                              Page 2
DOB:        ████88
SSN:        ████7793

*page 29* (handwritten)

Date:       04/17/2007 12:15
Provider:   KIRAN SHARMA MD

**Musculoskeletal system:**
    General/bilateral: ° Musculoskeletal system: normal
    Knee:
        General/bilateral: • Knees showed abnormalities ° No tenderness on palpation of the knee ° No
            pain was elicited by motion of the knee ° Knees demonstrated normal movement ° Knees
            demonstrated no muscle weakness
        Right knee: • Examined
        Left knee: • Examined

## ASSESSMENT
Bilateral knee pains

*I was INJured* (handwritten)

## PLAN
KIRAN SHARMA MD ordered
• Urinalysis and urine drug screen
• CBC
• A comprehensive metabolic panel
• Serum TSH level
• An X-ray of both knees
• Consultation with a physical therapist
Refer to MHR for counselling and furtehr evaluation
trying to call mom to find out more about pts mental health, unable
to reach her


**KIRAN SHARMA MD**

**Entered data sealed by: KIRAN SHARMA - LCBS    Date: 04/17/2007 14:36**

*Ex-Bit 7.* (handwritten, circled)



*page 29* (handwritten)

**Patient:**   14154.1 - ALBERTO J. RAMIREZ                                        Page 2
**DOB:**       ███88
**SSN:**       ███7793

**Date:**      04/24/2007 11:30
**Provider:**  KIRAN  SHARMA MD

Anxiety disorder NOS

**PLAN**
Motrin 600 MG TABS, SIG:tid, Qty:21, Days:7, Refills:0
Lexapro 10 MG TABS, SIG:qd, Qty:30, Days:30, Refills:2
Refer to unm orthopaedics
pt has anger issues and is somatising
detailed discussion with brother about pts visits
otc knee brace, pt needs pshychiatric help
refer to MHR, pt is having paranoia


**KIRAN  SHARMA MD**

**Entered data sealed by: KIRAN SHARMA - LCBS    Date: 04/24/2007 11:14**

ST. VS ALBERT RAMIREZ  CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 3:06:50 PM | | AWARE OF BROTHER BEING PLACED IN FOSTERCARE |
| 3:07:31 PM | | GIVING STATEMENT TO DETECTIVE ON JULY 12TH THE DAY OF SHOOTING |
| 3:08:35 PM | | TOLD MEMBERS OF JURY NEVER SAW HIM ACT OUT, HE WOULD GET UPSET |
| 3:09:22 PM | | DOES NOT REMEMBER WHAT SHE TOLD DETECTIVE, NOW SHE REMEMBERS WHAT SHE TOLD DAVID LOERA |
| 3:11:35 PM | | CONTINUES TO REFER TO STATEMENT SHE MADE |
| 3:12:59 PM | | BENCH CONFERENCE |
| 3:13:50 PM | CHANDLER | CONTINUES TO REFER TO HER STATEMENT |
| 3:14:33 PM | | GO BACK TO THE PHONE CALL , HE WAS MAD AT YOU THE DAY BEFORE THE SHOOTING,"WHAT IS WRONG WITH BEING MAD EVERYBODY GETS UPSET |
| 3:15:09 PM | | I DID NOT KNOW HE WAS TRYING TO GET A GUN |
| 3:16:00 PM | | REFERS TO HER STATEMENT |
| 3:16:06 PM | COSBY | PAGE AND LINE PLEASE |
| 3:16:20 PM | | NO I DID NOT KNOW, EVERYBODY KNEW NOT TO GIVE HIM A GUN |
| 3:16:55 PM | | TRAINING , EDUCATION AND EXPERIENCE |
| 3:17:05 PM | | YOU WANTED TO KNOW WHY HE DID THAT WHEN HE CALLED FROM JAIL, NOBODY WAS THERE WHEN IT HAPPENED |
| 3:18:13 PM | | YOU DO NOT KNOW WHAT HAPPENED AT 512 W. 6TH, "I WAS NOT THERE" |
| 3:19:18 PM | | YOU HAVE BEEN TALKING TO HIM EVERY NIGHT |
| 3:19:42 PM | | BENCH CONFERENCE |
| 3:20:41 PM | COSBY | RDEX - ABOUT YOUR STATEMENT ABOUT WHAT YOU ARE SAYING YOU WERE TELLING YOUR BROTHER TO APOLOGIZE TO YOUR MAMA |
| 3:21:58 PM | | NOT SURE WHY HE WAS WEARING CRUTCHES |
| 3:22:30 PM | CHANDLER | SPECULATION OBJECTION |
| 3:22:40 PM | COSBY | RESPONSE ABOUT WHO GAVE HIM THE GUN "HE WAS HAVING ISSUES ABOUT HE THOUGHT SOMEBODY WAS AFTER HIM" |
| 3:24:25 PM | | SHE ALREADY KNEW ABOUT SHOOTING BECAUSE HER MOM CALLED HIM |
| 3:24:37 PM | | SHE BARELY TALKED TO ELADIO, NEVER CLAIMED HIM AS STEP FATHER |
| 3:24:59 PM | CHANDLER | RXEX - YOUR CONCERN WAS ABOUT ALBERT'S STATE OF MIND |
| 3:25:49 PM | COSBY | OBJECTION |

EXIBIT 7

page 31

32 page

ST. VS ALBERT RAMIREZ  CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|---|---|---|
| 12:56:09 PM | | JURY BEING SEATED IN BOX |
| 12:57:14 PM | | COURT IN SESSION , JURY DFT AND ALL PARTIES PRESENT |
| 12:57:56 PM | CHANDLER | XEX - ABOUT YOUR TIME IN SCHOOL, I DON'T KNOW JUST GOT HELD BACK |
| 12:59:19 PM | | I CANNOT ANSWER IF I DID GOOD IN SCHOOL |
| 12:59:43 PM | | YOUR DAD WOULD PROVIDE YOU $500 A MONTH TO STAY IN SCHOOL, WHEN YOU GET SOCIAL SECURITY, IT IS THE TRUTH IT WAS COMING FROM MY DAD'S MONEY |
| 1:01:03 PM | | YOU HAD A DRIVER'S LICENSE IN 2007, YOU HAD A CELLPHONE, YOU PAID THE CELLPHONE BILL AND YOU HAD A JOB AT MCDONALDS |
| 1:02:25 PM | | ONLY DID CERTAIN THINGS AT MCDONALDS |
| 1:03:05 PM | | YOU SPEAK ENGLISH AND SPANISH , I UNDERSTAND A LITTLE BIT AND CAN SPEAK A LITTLE BIT, I AM AMERICAN |
| 1:04:36 PM | | YOU FIRST MET ELADIO WHEN YOU WERE APPROX. 5 OR 6 YEARS OLD |
| 1:05:36 PM | | YOU DIDN'T LIKE ELADIO ROBLEDO "THAT IS AN IMPROPER QUESTION TO ASK" I LIKE EVERYBODY I JUST DON'T LIKE SOME THINGS PEOPLE DO, THAT IS HOW IT IS SUPPOSED TO BE |
| 1:06:12 PM | | ELADIO AND YOUR MOTHER LIVED AT 512 W. 6TH ST. "WHEN" JULY 2007 |
| 1:07:27 PM | | YOU HEARD THAT OFFICER AGUILAR SERVED YOU THE NO TRESPASS ORDER, "YES" |
| 1:07:44 PM | | AFTER RECEIVING THE NO TRESPASS ORDER YOU RETURNED BACK TO THE HOUSE WHERE DEBRA LIVED |
| 1:08:40 PM | | AT ONE TIME YOU BROKE OUT THE FRONT WINDOW OF YOUR MOTHER AND ELADIO'S HOUSE |
| 1:09:40 PM | | ARE YOU AWARE YOUR MOTHER CALLED THE POLICE ABOUT THAT INCIDENT "NOT AWARE, IF SHE DID OR NOT" |
| 1:10:12 PM | | YOU BROKE OUT A CAR WINDSHIELD WITH YOUR CRUTCHES, DID SHE CALL THE COPS ABOUT THAT "YES" |
| 1:10:58 PM | | YOU KNOW WHERE CROSSHAIR GUN SHOP IS IN CLOVIS "YES" |
| 1:11:15 PM | | YOU WENT IN THERE AND DEMANDING A GUN |
| 1:11:42 PM | | YOU WANTED A REVOLVER  "I JUST ASKED FOR GUN" |
| 1:12:27 PM | | YOU FILLED OUT PAPERWORK TO PURCHASE GUN |
| 1:12:46 PM | | YOU DROVE A CAR TO GUN SHOP |
| 1:13:42 PM | | YOU WERE TRYING TO GET THINGS RIGHT |

10/10/2013                                    7 of 16

page 32

Exibit 7

Exibit 8

page 33

1    its discretion in denying a mistrial.

2    **D.    Defendant was not prejudiced by the jury seeing his leg restraints**

3    {39}    Defendant's fourth issue is that he was prejudiced when the jury saw his leg

4    restraints when he stumbled as he stood up at one point during the first day of trial.

5    However, he concedes that he did not ask the court to make a finding of prejudice or

6    declare a mistrial and asks this Court to review the possibility that the jury saw his leg

7    restraints for fundamental error.  The State argues that the factual record does not

8    support Defendant's contention that the jury saw him shackled because all the parties

9    agreed that the table skirt blocked the jury's view.

10    {40}    "To preserve a question for review it must appear that a ruling or decision by

11    the district court was fairly invoked." Rule 12-216(A) NMRA.  When the claim is not

12    properly preserved, we consider the claim under the fundamental error exception to

13    the preservation rule. *See State v. Holly*, 2009-NMSC-004, ¶¶ 40-42, 145 N.M. 513,

14    201 P.3d 844 (reviewing defendant's claim that a juror may have seen defendant

15    handcuffed for fundamental error because the defendant did not request a mistrial, did

16    not ask the trial court to strike the juror, or seek a finding of prejudice), *State v. Silva*,

17    2008-NMSC-051, ¶ 11, 144 N.M. 815, 192 P.3d 1192 (citing Rule 12-216(B)(2)

18    NMRA).

21



Exibit 8                                    page 53

EXIBIT 9

Page 34

for his expert's presence if sur-rebuttal was allowed. [Supp. CD, 3:55:15 to 3:56:35, 4:02:23 to 4:02:35, 4:08:18 to 4:08:53]

Shortly thereafter, based on the defense's agreement not to pursue jury instructions or argue competency, insanity or the inability to form specific intent [*See* Supp. CD, 3:51:56 to 3:52:00], the prosecution announced it was forgoing presentation of a rebuttal case and releasing its expert witnesses. [CD 10-10-13, 4:34:39 to 4:36:02] When Defendant objected to Mr. Cosby's strategy, the trial court assured Defendant he was being well-represented and explained it would not have approved Mr. Cosby's jury instruction decisions if doing so would deny Defendant a fair trial. [CD 10-10-13, 4:36:02 to 4:39:12] Defendant persisted Dr. Schwartz's testimony was essential to his having a fair trial and to his appeal. [CD 10-10-13, 4:41:38 to 4:42:15]

The trial court instructed the jury on first-degree murder, second-degree murder and, over the prosecution's objection, voluntary manslaughter. [CD 10-11-13, 9:01:50 to 9:03:07; *see* RP 663; RP 664; RP 665-66]

### IV.  Disposition Below

The jury deliberated approximately three hours before returning verdicts finding Defendant guilty of first-degree murder, and the two counts of tampering with evidence. [CD 10-11-13, 11:45:13 to 3:06:20]

EXIBIT 9
NO DEFENSE
AT trial

Page 34

EXIST 9

back

ST. VS ALBERT RAMIREZ  CR-07-434                    CR1 CHAMBERS

| Time | Speaker | Note |
|---|---|---|
| 10:40:24 AM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY DFT AND ALL PARTIES PRESENT |
| 10:40:41 AM | COSBY | HAS ONE OTHER ISSUE, MY CLIENT HAS TOLD ME THAT HE WAS SEXUALLY ASSAULTED ETC. |
| 10:42:10 AM | | HE WANTS TO TESTIFY THAT MR. ROBLEDO AS WELL AS MR. SAIZ SEXUALLY ASSAULTED HIM |
| 10:42:28 AM | CHANDLER | THERE IS NOTHING THAT SUPPORTS THAT PARTICULAR CLAIM, IT HAS NEVER BEEN REPORTED, WHEN DID THE HAPPENED , IT IS THE TIMELINE, |
| 10:43:36 AM | COSBY | UPON ON HIS FIRST STATEMENT, WHEN MY CLIENT FIRST WENT TO HIS HOUSE MY CLIENT TOLD HIM HE HAD BEEN SEXUALLY ASSAULTED, |
| 10:44:17 AM | COURT | HERE IS THE PROBLEM WE RUN INTO, THE KIND OF THE TIMING, THE COURT IS OF THE OPINION THAT I WILL NOT ALLOW IT, THRE WAS NOTHING TO SUGGEST THAT IN HIS OPENING STATEMENT, IF THE STATE IS OF THE OPINION THAT WE CREATE AN ERROR BY EXCLUDING THIS, I WILL RULE AGAINST IT |
| 10:45:42 AM | DFT | ABOUT THIS MATTER, THE REASON I DID NOT SAY ANYTHING IN MY OPENING STATEMENT |
| 10:46:16 AM | COURT | YOUR ATTORNEY MR. COSBY IS DOING AN EXCELLENT JOB, I HAVE LET YOU TALK, THE PART I AM GOING TO RESTICT THAT WE ARE NOT GOING TO GO INTO THIS AREA |
| 10:47:12 AM | DFT | I DID NOT GET ASKED ABOUT BROKEN WINDOW, THIS IS MY LIFE , I FEEL LIKE I AM NOT HAVING A FAIR TRIAL, IF I DID NOT GET ASKED A QUESTION ABOUT SEXUAL ASSAULT |
| 10:48:28 AM | DFT | I LET MAXINE SWARTZ THAT I WAS SEXUALLY ASSAULTED,  ETC |
| 10:49:11 AM | | I TRIED TO EXPLAIN TO DR. FINK , IT IS NOT FAIR I THINK IT IS RELEVENT |
| 10:49:47 AM | COSBY | THERE IS RECORD THAT HE DISCUSSED WITH PSYCOLOGIST OF SEXUAL ASSAULT, THERE IS NO EVIDENCE BEFORE THE HOMICIDE |
| 10:51:54 AM | COURT | WILL GIVE YOU FIVE MINUTES |
| 10:52:21 AM | DFT | WHEN MR. COSBY STATED THAT I WAS MELINGERING , AND PSYCHOLOGIST BELIEVED ME, ABOUT FOSTER CARE I WAS EMBARRASED MY MOTHER KNEW, EXPLAINS WHAT HAPPENED WITH ELADIO |
| 10:54:59 AM | | REGARDING SAM SAIZ HE USED TO GO OVER THERE WHEN HE WAS IN JUNIOR HIGH, ETC. |
| 10:58:18 AM | COURT | I'VE GOT YOUR STORY, AFTER HEARING THE STORY IT IS NOT RELEVENT |

EXIBIT 9

SEX ABUSE

2 of 5

page 35

*Ex.Bit 9*

## II.   Defendant has not satisfied the requirements for consideration of a claim of ineffective assistance of counsel on direct appeal.

The facts contained in the record oif Defendant's case do not establish a prima facie case of ineffective assistance of counsel warranting remand of Defendant's case for an evidentiary hearing. *State v. Crocco*, 2014-NMSC-016, ¶ 14. If Defendant wishes to pursue his claim of ineffective assistance of counsel, he should consider pursuing a habeas corpus proceeding. *See id.* ¶ 13; *see* Rule 5-802 NMRA.

When analyzing a claim of ineffective assistance, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). This Court measures a claim of ineffective assistance of counsel against *Strickland*'s two-part test, which requires a defendant to show first that counsel's performance "fell below that of a reasonably competent attorney" and then that he suffered prejudice because of the deficient performance. *State v. Ortega*, 2014-NMSC-017, ¶ 55.

A counsel's performance is not deficient where "a plausible, rational strategy or tactic" could explain counsel's conduct. *Id.* To show prejudice a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*



33   *Ex.Bit 9 page 36*

Exibit

3 pase

That afternoon, to demonstrate his lack of competency, Defendant described

a litany of psychological ailments [CD 10-9-13, 1:37:36 to 1:38:55], and claimed

he was unable to understand the proceedings. [CD 10-9-13, 1:43:46 to 1:44:11]

Later, notwithstanding Mr. Cosby's expressed concern about Defendant's lack of

cooperation, Defendant made statements evincing an understanding of the

implications of testifying and of the jury's role in weighing the evidence. [CD 10-

9-13, 2:41:00 to 2:43:54] He pointedly reminded the trial court that during his

previous trial he cried hysterically and told the court he could not function properly

when hysterical. [CD 10-9-13, 2:44:45 to 2:45:18]

The next day, Defendant demonstrated his continuing understanding of the

process, including the value of the appellate record, by forcing creation of a record

regarding Mr. Cosby's decisions about the witnesses who would testify, and by

making a statement about how he had not been properly evaluated and represented,

the trial court's disregard for his outwardly irrational behavior and the trial court's

failure to consider how the jury might be affected by media coverage of his trial.

[*See, e.g.,* CD 10-10-13, 9:21:02 to 9:22:38, 9:23:18 to 9:25:59] Significantly,

although Defendant was complaining he could not understand when people

communicated with him, he recognized the court's authority by thanking it for

allowing him to speak. [CD 10-10-13, 9:22:35 to 9:22:42] He telegraphed a clear

understanding of the significance of the proceedings by saying he was fighting for

Ex. Bit 9  page 37



EXHIBIT

told the court that he had been offered a plea of guilty but mentally ill. He stated "Which I was very confused of the charges I have in the first, they said it's... I have no clue what those are for or what they're about, I have no clue about the first three I just know the words, the names and the guilty but mentally I have no idea what it's about or nothing he tried to explain but like I said when they communicate it's hard for me to understand and it takes me a long time I'll read it over but also that, ..." Mr. Ramirez paused for a breath and then continued in a run-on fashion that he was told that doctors were going to be called to testify against him and that he was never notified and he was unable to call Dr. Maxann Shwartz in his defense. He also complained that he was unable to get a private investigator to call "plenty of witnesses" which affected his defense.

He also stated that he was a paranoid schizophrenic with paranoid delusions and hallucinations and never got sent for a ninety-day evaluation and was only evaluated for an hour or two, and "that's an improper evaluation in my opinion and I feel like I've been treated unfairly." Mr. Ramirez stated that "there was plenty of media this whole week" that the jury probably heard and "everybody's asking me all kinds of questions and I just say I don't know what's going on because I have no way to see newspapers or radio or anything, ..." Mr. Ramirez continued,

EXHIBIT

page 38

EXBIT 10    5 pogs

1 observations and opinions alone cannot trigger reasonable doubt about the defendant's

2 competency.").

3 {25}    Here, defense counsel merely stated his beliefs that Defendant was not capable

4 of assisting in his own defense and that Defendant did not have the capacity to

5 determine whether or not to testify.  In response, throughout the trial, the judge did

6 everything within his power, under the rules, to address the Defendant's concerns with

7 his physical condition and his inability to understand the proceedings, allowing a

8 nurse to examine him during the trial and consistently explaining to the Defendant

9 what was happening.  Accordingly, the district court did not abuse its discretion in

10 denying Defendant's request for a forensic evaluation during trial because relying

11 only upon his own observations, defense counsel failed to substantiate his assertions.

12 {26}    Further, had the district court found reasonable doubt as to Defendant's

13 competency to stand trial, Defendant would not have been entitled to a competency

14 evaluation after the commencement of trial.  Once the jury is sworn, the Defendant's

15 only recourse is to request a jury instruction on the issue of competency.  *See* Rule 5-

16 602(B)(2)(b).  Defendant failed to preserve this issue by not submitting an instruction

17 on competency to the court or objecting to the instructions as offered.  *See State v.*

18 *Lujan*, 1975-NMSC-017, ¶¶ 8-9, 87 N.M. 400, 534 P.2d 1112 ("Defendant did not

14

EXBIT 10    page 39

forestall testimony by one of the prosecution's expert witnesses (who was present in the courtroom during Mr. Ramirez's testimony). This may have been because the defense did not have any other expert witnesses at trial to testify. Not having expected that Mr. Ramirez's competency to stand trial would arise and having already foregone any defenses that would require expert testimony, defense counsel was simply attempting to keep the state from putting its witness on the stand for rebuttal. **[RP 657-58. The proceedings are summarized in the tape logs, but were in chambers and not included on the audio CD in the record proper]**

Mr. Ramirez also asserts that his counsel failed to call many witnesses he wished to have called, and also that he made promises to Mr. Ramirez if he testified that were not kept. These issues, however, are not reflected in the record. Matters not of record cannot be reviewed on appeal. *See State v. Martin*, 1984-NMSC-077, ¶ 28, 101 N.M. 595.

C.    There was improper commentary on Mr. Ramirez's right to silence

This argument is made pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127 and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655. The review of a district court's denial of a mistrial is for an abuse of discretion. *State v. O'Neal*, 2008-NMCA-022, ¶ 28, 143 N.M. 437. The legal question



1 (citation omitted). "Generally, only an evidentiary hearing can provide a court with

2 sufficient information to make an informed determination about the effectiveness of

3 counsel." *Id.*; *see also State v. Baca*, 1997-NMSC-059, ¶ 25, 124 N.M. 333, 950 P.2d

4 776 ("A record on appeal that provides a basis for remanding to the trial court for an

5 evidentiary hearing on ineffective assistance of counsel is rare. Ordinarily, such

6 claims are heard on petition for writ of habeas corpus . . . ."); *State v. Telles*, 1999-

7 NMCA-013, ¶ 25, 126 N.M. 593, 973 P.2d 845 (stating that the "proper avenue of

8 relief [from ineffective assistance of counsel] is a post-conviction proceeding that can

9 develop a proper record").

10 {32}    Though the district court repeatedly observed that defense counsel was

11 providing excellent representation to Defendant, the court did not hold an evidentiary

12 hearing. Therefore, the record before us is insufficient to establish that defense

13 counsel was ineffective or that the decisions made were a plausible trial tactic or

14 strategy. Accordingly, we reject this claim without prejudice to Defendant's ability

15 to bring such a claim via habeas corpus proceedings.

16 **C.   The district court did not abuse its discretion denying a mistrial based on**
17 **Deputy Loomis' commentary on Defendant's silence**

18 {33}    Defendant's third issue is that the court erred in denying his motion for a

19 mistrial based on an alleged improper comment about Defendant's silence after he had

17

EXHIBIT 10

ST. VS ALBERT RAMIREZ CR-07-434                    CR1 CHAMBERS

| Time | Speaker | Note |
|---|---|---|
| 3:54:07 PM | CHANDLER | GOING TO ASK FOR A RULING FROM THIS COURT IF DEFENSE IS GOING TO ALLOW SUR REBUTTAL |
| 3:54:50 PM | COURT | YOU TAKE POSITION THAT HE IS PRECLUDED, THE COURT HAS LEE WAY |
| 3:55:42 PM | COSBY | YOU ARE CALLING THEM ON REBUTTAL |
| 3:56:04 PM | COURT | I DO NEED TO REMIND EVERYBODY THAT I EXCEPT PLEAS |
| 3:56:17 PM | MORRIS | RESPONDS |
| 3:58:36 PM | COSBY | THERE HAS BEEN NO DISCLOSURE, IF THEY CALL I WILL CALL MS. SWARTZ ON SIR REBUTTAL, LAST FINDING I HAD HE WAS COMPETENT, I AM WITHDRAWING COMPETENCY, AND IF I |
| 3:58:39 PM | COSBY | HE NEVER EXPRESSED ANY HATRED TO PLAN A MURDER |
| 3:59:02 PM | CHANDLER | IF WE CALL OUR EXPERTS |
| 3:59:11 PM | COURT | IT IS A MATTER OF JUSTICE |
| 3:59:32 PM | COURT | WE ARE NOT IN THE KIND OF SITUATION WHERE YOU HAVE A SURPRISE |
| 3:59:55 PM | CHANDLER | WE DID NOT DROP IT JUST NOW, |
| 4:00:09 PM | COURT | THOSE REPORTS ARE AGED |
| 4:01:04 PM | CHANDLER | WHAT HE IS DOING TODAY |
| 4:01:23 PM | COSBY | WILL WITHDRAW COMPETENCY AND GUILTY BUT MENTALLY ILL |
| 4:02:03 PM | CHANDLER | HE CAN WITHDRAW BUT HIS ARGUEMTN HIS CLIENT IS SEEING THINGS AND HEARING THINGS |
| 4:02:25 PM | COURT | IF WE TAKE THIS TESTIMONY AND TAKE WILL TAKE |
| 4:03:14 PM | COSBY | MOTION AS FAR AS THE TWO COUNTS AND DOUBLE JEOPARDY ISSUES, IT WOULD BE A VIOLATION , IT WOULD BE ONE ACT OF TAMPERING WITH EVIDENCE, THE PHONE CALL WAS ATTEMPTING |
| 4:05:00 PM | CHANDLER | THE MOTION THAT MR COSBY MADE |
| 4:05:10 PM | COURT | THERE IS EVIDENCE , THAT THE PANTS AND GUN NOT FOUND WERE PLACED AT A DIFFERENCE PLACE, THE FACT THAT THE BRITCHES WERE FOUND AND NOT THE GUN DENIES THE MOTION |
| 4:05:51 PM | CHANDLER | |
| 4:05:59 PM | MORRIS | WHY DOES HE WANT TO RAISE SIR-REBUTTAL |
| 4:06:31 PM | COSBY | SIR-REBUTTAL IS MATTERS |
| 4:06:50 PM | CHANDLER | HE CHOSE NOT TO CALL WITNESS |
| 4:07:21 PM | COURT | THE RULE AGAINST 90 DAYS, NOT PREPARED RIGHT NOW TO MAKE THE RULE |
| 4:08:21 PM | CHANDLER | ALLOWS US TO PUT ON OUR REBUTTAL |
| 4:08:49 PM | COURT | COMMENTS |

10/10/2013                    EXIBIT 10

relates that "for more than two decades, there has been the suggestion that

mental health clinicians do not like patients with personality disorders…"

and that "[t]hese attitudes may adversely affect delivery of health care

provision and as such make it more difficult for patients with personality

disorder and comorbid mental disorders to access and receive appropriate

management for either disorder." Peter Tyrer, Ruger Mulder, et al,

"Personality disorder: a new global perspective," World Psychiatry, Feb.

2010; 9(1):56-60, found online at

http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2816919/ .

    The two cases, *Flores* and Mr. Ramirez's, have a parallel structure:

The defendant was found incompetent, sent to Las Vegas and hastily treated

to competency, then sat in jail (possibly decompensating) for months on end

while waiting on a trial date.

    In summary, there was substantial evidence that Mr. Ramirez needed

to have his competency to stand trial reevaluated. His case more than meets

the bar set by *Flores* for a reevaluation. The desire to move his case should

not have taken precedence over Mr. Ramirez's need for a reevaluation. The

failure to have him reevaluated created a substantial risk that he was tried

while incompetent to stand trial, the very risk that raising competency is

supposed to ameliorate.

Rule 5-602(B)(1) NMRA. Rule 5-602(B)(2)(b) states that if competency to stand trial is raised during trial, the jury "shall be instructed on the issue." In this case no such instruction was proffered or given.

An assertion of incompetency by defense counsel must be substantiated. *Flores*, 2005-NMCA-135, ¶ 20 (citation omitted). The evidence described above substantiates counsel's assertion. "[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required..." *Drope*, 420 U.S. 162, 180. "Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." *Id.* at 181.

Mr. Ramirez's case can be distinguished from the recently issued decision of this Court in *State v. Solomon*, No. 33,975 (N.M. Sup. Ct. Aug 4, 2014) (non-precedential). In *Solomon* this court found that a District Court did not abuse its discretion by not ordering a mental health evaluation to see if the defendant was competent to stand trial. In *Solomon* the defense attorney never actually made a motion for a competency evaluation. *Id.* ¶ 12.



deal with his outburst and attempt to fire his own attorney. Mr. Ramirez needed to be able to assist his attorney. *See State v. Rotherham*, 1996-NMSC-048, ¶ 13,122 N.M. 246. "Proper assistance encompasses more than merely providing information but is extended to the comportment in the courtroom before a jury." *U.S. v. Williams*, 113 F.3d 1155, 1160 (C.A.10 (N.M.) 1997) (citation and internal quotation marks omitted). As this brief lays out in the accounts of his testimony, Mr. Ramirez lacked the ability to comport himself during the trial. The judge, in a vast understatement, noted that Mr. Ramirez was difficult to represent. **[10-10-13 CD B 2:07:30-2:41:36]**

　　　Earlier, outside the presence of the jury Mr. Ramirez complained that the trial was "not fair" because he wasn't being asked questions that he thought were necessary. He made allegations of having been sexually assaulted by a witness. **[10-10-13 CD B 10:40:41-10:58:56]** The judge himself stated that he had never seen a defendant act the way Mr. Ramirez was acting. **[10-10-13 CD B 3:45:47-3:46:20]**

　　　Defense Counsel had asserted that Mr. Ramirez was incompetent and made a motion for a recess to allow for a reevaluation of his competency. "The issue of a defendant's competency to stand trial may be raised by motion, or upon the court's own motion, at any stage of the proceedings."

1    representation, motions he wanted filed, and other issues he indicated that he would

2    present in his appeal.

3    {29}    Defendant then demanded to be the first defense witness so he could

4    communicate his defense.  During his direct examination, Defendant refused to

5    answer many questions directly saying he wanted to "explain everything." Defendant

6    then attempted to dismiss his counsel in front of the jury, forcing the court to remove

7    the Defendant and recess the trial.  Later, after the parties rested, Defendant had

8    another outburst, complaining that he had a right to know what the jury instructions

9    would be so that he could file motions.  The court told Defendant that he was being

10   well-represented and the instructions were fair.

11   {30}    At Defendant's sentencing hearing, Defendant complained to the court that his

12   defense counsel had failed to effectively represent him and that he did not receive a

13   fair trial.  Defendant argued that the jury would not have convicted him had it fully

14   understood that he was the victim.  The district court assured Defendant that he had

15   received excellent representation and pronounced the sentence.

16   {31}    "This Court has repeatedly stated that ineffective assistance of counsel claims

17   are best served through habeas corpus proceedings so that an evidentiary hearing can

18   take place on the record." *State v. King*, 2015-NMSC-030, ¶ 33, 357 P.3d 949

Exhibit 10

1  competency by Dr. Fink in January 2013, Defendant spoke directly to the court,

2  though he was represented by counsel, and asked for a fifth forensic evaluation to

3  determine his competency.  Defendant argued that a new evaluation would show he

4  was suffering from "psychosomatic delusions and hallucinations and severe

5  depression and anxiety."  The judge listened to Defendant's request and then denied

6  it.

7  {17}    This case is similar to *State v. Flores*, 2005-NMCA-135, 138 N.M. 636, 124

8  P.3d 1175.  In *Flores,* the Court of Appeals addressed whether an unsupported

9  declaration against competency made prior to trial rose to the level of reasonable

10  doubt.  In that case, just before trial, the defendant's counsel asked the court to find

11  that the defendant was incompetent to stand trial.  *See id.* ¶ 7.  The defendant's

12  counsel cited her own experience with the defendant as the basis of the request, stating

13  her belief that his condition had deteriorated because he had been held in isolation

14  since the competency hearing.  *See id.* ¶ 8.  The Court held that while "a court may

15  consider defense counsel's observations and opinions . . . those observations and

16  opinions alone cannot trigger reasonable doubt about the defendant's competency."

17  *Id.* ¶ 29.  The Court also concluded that the testimony of experts is not required to

18  support a contention of incompetency, but "[i]nstead, a defendant could offer an

Exhibit 10



1 offer an instruction on competence, nor did he object to the instructions given the jury.

2 Therefore, this issue was not properly preserved for appeal.").

3 **B.    Defendant did not receive ineffective assistance of counsel**

4 {27}    Defendant's second argument is that he was denied effective assistance of

5 counsel because defense counsel "lacked the necessary assistance of [Defendant]

6 himself"; failed to "'seek the assistance of necessary experts,' and if more money was

7 required to seek such assistance on an urgent basis counsel should have requested it"

8 (citation omitted); and failed to obtain a reevaluation and attempted to withdraw the

9 motions to determine competency, resulting in prejudice to Defendant.  Counsel has

10 abandoned the claims that trial counsel failed to call other witnesses or made promises

11 to the Defendant because these claims are unsupported by the record.  As such, we

12 decline to review these claims.

13 {28}    One week prior to trial, the district court denied Defendant's motion to appoint

14 new counsel.  Trial commenced as scheduled.  On the fourth day of trial, defense

15 counsel informed the court of his decision not to call a witness on the record, as it was

16 against Defendant's wishes.  Defendant then addressed the court, against counsel's

17 advice, about how his defense had been limited, how his mental illnesses affected him,

18 the amount of media his case was receiving, the quality of his attorney's







interview witnesses and other persons.

Contact was made with the 911 caller, Grace Finkey, who witnessed the incident, recognized the shooter, and contacted law enforcement. The victim, Eladio Robledo Valdez was pronounced deceased while at PRMC. According to the mother of the suspect, Albert has a large blue car, containing all his personal belongings. The vehicle was broken down in front of 511 E. 6th Street. Officers responded to the residence and observed the silver blue Cadillac parked on the street in front of the duplex. The vehicle contains a large amount of clothing and other personal items, possibly belonging to Albert Ramirez. The duplex at 511 E. 6th Street is currently vacant. The front window, facing north is open and raised approximately 8". The front and back doors are locked. The window on the east side of the building is unlocked with the screen removed. There are handprints on the exterior of the glass indicating that the window was pushed up to open the window. There are two cinderblocks under the window to provide easy entry into the window. The suspect, Albert Ramirez may be hiding within the vacant duplex to avoid detection and apprehension by law enforcement.

Based on this I believe that evidence relevant to the shooting may be within the residence or the vehicle described, and located at 511 E. 6th Street, Clovis, Curry County, New Mexico.

*HEARSAY! CANT JUST SEARCH CAUSE WHAT HE BELIEVES, NO matter if he's A COP!!! might be good to try and fight whatever evidence found with the*

Affiant is a full-time salaried, sworn Law Enforcement Officer currently employed with the Clovis Police Department. Affiant's current assignment is Detective with the Special Operations Unit, and member of the Major Crimes Unit.

*warrant!*

**SUBSCRIBED AND SWORN TO BEFORE ME IN THE ABOVE NAMED COUNTY OF THE STATE OF NEW MEXICO,**

THIS _12_ DAY OF _July_, 2007.

_Robert S Orix_
**JUDGE**

_District Judge_
**TITLE**

_Robert S Orix_
**AFFIANT**

_Detective  #98_
**TITLE**

**APPROVED BY ASSISTANT DISTRICT ATTORNEY** _Matth Chandl_ ON _July 12, 2007_

*EXIBIT 11,*

*EXIBIT 11*

**EXHIBIT (  )**

*44*

*page 8*

# RETURN AND INVENTORY

NINTH JUDICAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

**STATE OF NEW MEXICO**

-VS-

2007 JUL 13  PM 3: 30

Albert Ramirez,
D.O.B. ████ 88
SSN: ████ 7793,

D-0905- Su████████ Dept
CLERK DISTRICT COURT

████████████████████████

and a silver blue Cadillac 4-door bearing Texas license W55HHS

I received the attached Search Warrant on  07/12/07  And executed it on  07/12/07

at  2235  Hours. I searched the person or premises described in the Warrant and left a copy of the Warrant with:

_____None present at scene_____
(name of the person searched or owner at the place of search)

Together with a copy of the inventory for the items seizes. The following is an inventory of the property taken pursuant to the Warrant:

- 1 photo of suspect and unknown black male (Gang Writings)
- 1 paper with writing about shooting people
- 1 letter to Albert Ramirez denying his SSI benefits

This inventory was made in the presence of     **Ricky M. Smith**    and    **Randy Pitcock**
                                  Applicant for Search Warrant           Owner or other witness

*Randy Pitcock*

_____          _____
Signature of Officer or Detective           Signature of Owner or Witness

Return made this _____ day of _____, 2007 at _____ hours.

_____
(Judge Clerk)

After a careful search, I could not find at the place, or on the person described, the property described in this Warrant.

_____                     _____
(Officer)                                            (Date)

EX·B,+ 11

**EXHIBIT 11**

page si

EXIBIT 11

STATE OF NEW MEXICO
COUNTY OF CURRY
IN THE DISTRICT COURT

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

2007 JUL 13 PM 3:30

STATE OF NEW MEXICO
-VS-

Albert Ramirez,
D.O.B. █████88
SSN: ████7793

Donna Hurst
CLERK DISTRICT COURT

D-0905- SW 0200 7 00 001

and a silver blue Cadillac 4-door bearing Texas license W55HHS

## AFFIDAVIT FOR SEARCH WARRANT

I, Ricky M. Smith, being dully sworn, on my oath, state that I have reason to believe that on the premises described below, and/or on the person described above:

Residence located at 511 E. 6th Street, Clovis Curry County, New Mexico. Residence is tan stucco with white trim, single story, multi-family dwelling that sits on the south side of East 6th Street facing north, and between Wallace Street and Sheldon Street. The residence is identified with 511 E. 6th Street on a white mailbox, stenciled in black letters. The residence has white trim, with a tan composite roof. The front door is a glass and white metal screen door that faces north. The vehicle is parked on the street in front of the residence.

IN THE STATE OF NEW MEXICO, COUNY OF CURRY THERE IS NOW BEING CONCEALED CERTAIN PROPERTY, NAMELY:

Firearms, rifles, shotguns, or pistols, ammunition for firearms, and projectiles and missiles that may have been discharged from a firearm. Blood, blood spatter, other genetic material including saliva or other secretions. Other evidence to include fingerprints, skin, hair, and fibers. Clothing, bloodied clothing, to include shoes, shoeprints, trousers, shirts, undershirts, underwear, and socks, and bloodied towels or other cloth.

Albert Ramirez, Date of Birth: ████ Social Security Number ████, Hispanic male, Approximately 5'5" tall, 120 lbs., black hair, brown eyes

The items listed above have been obtained or are being possessed in a manner which constitutes a criminal offense, are designed or intended for use or which have been used as a means of committing a criminal offense, and would be material evidence in a criminal prosecution. The facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows:

On Thursday, July 12, 2007, at about 1339 hours, Officers of the Clovis Police Department were dispatched to the area of 515 W. 6th Street, in Clovis, Curry County, New Mexico, in reference to a 911 call for shots fired. The caller also relayed that there was a subject on the ground and that the suspect in the shooting had run off on foot to the north using the alley. Officers arrived on scene, noted the male body on the ground. The subject on the ground was subsequently identified as Eladio Robledo Valdez. The officers checked the area for the suspect, identified as Albert Ramirez, a Hispanic male, wearing a white shirt and blue jean shorts. The victim, who resides at 512 W. 6th Street, was on the ground in front of the residence. According to preliminary information provided by the caller, the victim had been shot by the suspect, fallen to the ground, and been shot again. Ambulance personnel arrived and the victim was transported to Plains Regional Medical Center Emergency Room. The scene was secured.

The Major Crimes Unit was activated. Investigators were dispatched to the crime scene at the 512 W. 6th Street and other Investigators were dispatched to the Special Operations Unit of the Clovis Police Department, to

2

ExB. #11        page 49

Albert Ramirez sentenced to life in murder of mother's boyfriend - Clovis News Journal

Buy the Paper    Today's Ads    Newsletter and Text Alerts    ePaper Login    Local Business Directory    Newspaper in Education    Maps

**Free Eviction Notice Form**
evictionnotice.rocketlawyer.com
Free Eviction Notice. All States. Print, Save, Download. 100% Free.

HOME    NEWS    SPORTS    OBITUARIES    BLOGS    CLASSIFIEDS    JUST TV    SECTIONS    AUTOFINDER                    JUNE 13, 2014

# Albert Ramirez sentenced to life in murder of mother's boyfriend

*January 8, 2014*

By Robin Fornoff
CMI Projects Editor
rfornoff@cnjonline.com

A sobbing Albert Ramirez pleaded for sympathy Wednesday at his sentencing for the 2007 murder of his mother's boyfriend.

District Judge Teddy Hartley responded: "It would be wrong for you to live in society," and gave Ramirez life plus six years in prison for what District Attorney Matt Chandler called the cold-blooded killing of 39-year-old Eladio Robledo of Clovis.

"You take your life now and do the best you can under the circumstances," Hartley told Ramirez. "I wish you luck."

Ramirez was convicted by jury in October after a week-long trial peppered by his repeated outbursts, forcing Hartley to remove him from the courtroom at one point. Ramirez claimed he was ill, that he couldn't comprehend what was happening and he wanted to fire his court-appointed attorney Jesse Cosby of Roswell.

Search this website...    Search

ADVERTISEMENT



CNJ staff photo: Robin Fornoff
Albert Ramirez, 25, of Clovis looks over the courtroom Wednesday while awaiting sentencing for the 2007 murder of his mother's boyfriend, Eladio Robledo. District Judge Teddy Hartley gave Ramirez the maximum sentence of life plus six years in prison.

**LOCAL WEATHER**



CLOVIS
**64°**
Cloudy
High: 84° Low: 81°
Wind: S 13 mph
Humidity: 65%

As he did at trial, Hartley praised Cosby for "conducting trial perfectly" under circumstances Ramirez made difficult.

Chandler reminded Hartley before sentencing that evidence at trial showed Ramirez planned the murder of Robledo. It was retaliation for Robledo and Ramirez's mother obtaining a court order to force Ramirez out of their home, he said.

Chandler said Ramirez, then 18, waited outside the home the morning of July 12, 2007, with a loaded .22 caliber pistol. Robledo was confronted outside by Ramirez. There was a fight that left a blood trail from a garage at the rear of the house to the front sidewalk, where witnesses testified they saw Ramirez standing over Robledo firing the gun at his head execution style.

Chandler called the killing "premeditated ... calculated ... and cold blooded." He noted a pre-sentence report branded Ramirez a malingerer who blamed the system, his attorney, the police, the district attorney and the courts for problems he alone created.

At one point Ramirez's older brother, Israel Ramirez, awaiting trial on multiple felony charges unrelated to the case, was led into the courtroom in shackles and a bright orange jail jumpsuit to plead for a lighter sentence for "my little brother."

"He's a good kid," Israel Ramirez told Hartley. "If I could switch places with him I would."

ADVERTISEMENT

FARMERS INSURANCE

Rosalind Riley-Smith

Request A Quote

www.ClovisInsurancebySmith.com

ADVERTISEMENT

ST. VS ALBERT RAMIREZ  CR-07-434                    CR1 CHAMBERS

| Time | Speaker | Note |
|------|---------|------|
| 10:58:56 AM | CHANDLER | ON XEX GONNA ASK THIS COURT FOR ABOUT 10 OR 15 MINUTES WOULD LIKE TO DISCUSS WITH CO COUNSEL, SAID HE HAS NOT TESTIFIED BEFORE, I RENEW MY |
| 11:00:15 AM | COSBY | IT WAS NOT A JURY TRIAL IT WAS A BENCH TRIAL, HE BATTERED A TRANSPORT OFFICER |
| 11:01:15 AM | COURT | IF XEX TRIGGERS I WILL CHANGE MY RULING |
| 11:01:44 AM | RECESS | |
| 3:44:06 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY, DFT AND ALL PARTIES PRESENT |
| 3:44:27 PM | CHANDLER | DEFENSE HAS RESTED AND HAVE GIVEN US A COUPLE OF INSTRUCTIONS GUILTY BUT MENTALLY ILL, HE IS ATTEMPTING TO RAISE COMPETENCY, OUR REBUTTAL WITNESSES ARE GOING TO TESTIFY THAT THEY HAVE EXAMINED THE DFT, ETC. |
| 3:45:47 PM | COURT | HAVE NOT SEEN A DFT THE WAY THIS TRIAL HAS UNFOLDED |
| 3:46:20 PM | CHANDLER | WE HAVE CASELAW |
| 3:46:30 PM | COSBY | I AM NOT GOING TO SUBMIT A COMPETENCY INSTRUCTION, |
| 3:46:46 PM | CHANDLER | WE ARE NOT OBJECTING, THE ONLY MENTAL ILLNESS THAT PROBABLY COULD HAVE BEEN TESTIFIED, DFT TOOK STAND AND HE DID NOT RAISE ISSUE |
| 3:47:42 PM | COSBY | THE GBMI WAS AVAILABLE, BUT THAT DOES NOT DEPRIVE HIM OF THE RIGHT TO HAVE IT SUBMITTETD, GBMI VERDICT IS NOT SOMETHING TO GIVE, HE IS ENTITLED WE HAVE TENDERED IT, |
| 3:48:58 PM | COSBY | OPPOSES TO REBUTTAL WITNESSES BEING CALLED |
| 3:49:17 PM | COURT | BASIS UPON |
| 3:49:34 PM | MORRIS | THEY WERE CALLED , THEY ALSO CAN TESTIFY AS TO THEIR OPINION |
| 3:50:52 PM | | HE LISTED BOTH OF THESE DOCTORS, HE HAS NOT LISTED DR. SWARTZ |
| 3:51:10 PM | CHANDLER | YOU CANNOT BRING IN AN EXPERT YOU HAVE NOT DISCLOSED |
| 3:51:27 PM | COURT | AS A PRACTICAL MATTER WHAT YOU DO IN YOUR INSTRUCTIONS YOU HAVE A GUILTY AND GUILTY BUT MENTALLY ILL, |
| 3:52:06 PM | COSBY | WE ARE NOT GOING TO ASK FOR SELF DEFENSE, WILL WITHDRAW BECAUSE OF MENTAL ILLNESS OR DEFECT |
| 3:52:52 PM | OFF RECORD | |

10/10/2013                                          3 of 5

Buy the Paper    Today's Ads    Newsletter and Text Alerts    ePaper Login    Local Business Directory    Newspaper in Education    Maps

You're missing the video converter tool.    Click Here

EXIBIT 13

HOME    NEWS    SPORTS    OBITUARIES    BLOGS    CLASSIFIEDS    JUST TV    SECTIONS    AUTOFINDER                 JUNE 13, 2014

# Homicide suspect ruled competent enough to stand trial

September 17, 2008

By Sharna Johnson: CNJ staff writer

A judge ruled Tuesday 20-year-old Albert Ramirez, accused of shooting his mother's boyfriend in 2007, is competent to stand trial.

District judge Teddy Hartley issued the ruling after hearing testimony Monday from a clinical psychologist with the New Mexico Department of Corrections who evaluated Ramirez.

No trial date has been set.

Dr. Joanne Burness told the court Ramirez is a "disturbed young man" who likely has a mood disorder but is not mentally ill, court records showed.

She said Ramirez experiences hyperactivity, is easily angered and seeks sympathy, but that he understands and can assist in his defense, according to a transcript of the hearing.

Burness also told the court that during treatment, Ramirez inquired about how he could get his charges reduced and talked a lot during the three months he was there about the value of being found not competent.

Ramirez is charged with first-degree murder in the shooting death of 39-year-old Eladio Robledo.

Police said Ramirez shot Robledo outside a Sixth Street home the victim shared with Ramirez' mother.

The subsequent investigation revealed a history of violence Ramirez directed at his mother and Robledo. Prior to the shooting, Debra Ramirez had filed no trespass orders against her son and told police she was afraid of him.

At the Monday hearing, defense attorney Brett Carter asked the judge to return Ramirez to Las Vegas for further treatment.

Carter argued that Ramirez was not tested thoroughly and that he does not believe he can assist in his defense.

Ramirez was transferred in June to the Behavioral Health Institute at Las Vegas, N.M., for treatment after he was declared dangerous and incompetent.

Ramirez' criminal case had been put on hold pending the outcome of the evaluations.

Share this post:    Email    Facebook    Twitter    Google    Reddit

Filed Under: News    Tagged With: accused, albert, competent, mother, old, ramirez, ruled, stand, suspect, trial

Search this website...    Search

ADVERTISEMENT



Luxury Consignment
Up to 90% off.

The RealReal    SHOP NOW >

LOCAL WEATHER



CLOVIS
64°
Cloudy
High: 86° Low: 61°
Wind: 6 13 mph
Humidity: 83%

ADVERTISEMENT



FARMERS
INSURANCE

Rosalind
Riley-Smith

www.ClovisInsuranceRileySmith.com

ADVERTISEMENT

page 54

• Buy the Paper   • Today's Ads   • Newsletter and Text Alerts   • ePaper Login   • Local Business Directory   • Newspaper in Education   • Maps

## Search Obituaries Free
ancestry.com/Obituaries
1) Search anyone's name. 2) View their obituary instantly.

HOME    NEWS    SPORTS    OBITUARIES    BLOGS    CLASSIFIEDS    JUST-TV    SECTIONS    AUTOFINDER                JUNE 13, 2014

# Police arrest shooting suspect

July 16, 2007

Search this website…    [Search]

By Sharna Johnson: Freedom Newspapers

A tip from a citizen led to the arrest of a Clovis teen who police say shot and killed his mother's boyfriend Thursday, police said.

Albert Ramirez, 18, was arrested without incident at 713 W. 13th St. around 8:30 a.m. Sunday morning, a press release from Clovis police said.

He is accused of shooting Eladio Rubledo, 39, multiple times in the front yard of 512 W. 6th St., a residence Rubledo shared with Ramirez' mother Debra Ramirez.

Ramirez is being held at the Curry County Adult Detention Center on $100,000 bond, court records show.

Ramirez told police she was in the house and heard shots. When she looked outside, she saw her son running away carrying a handgun, an arrest affidavit filed in district court Monday said.

A neighbor across the street told investigators he heard three popping noises and went houtside where he saw Robledo laying on the sidewalk "covering his head with his hands and yelling," the affidavit said.

The affidavit said the witness saw Ramirez standing over Robledo with his hands outstretched toward the victim as if he was holding a gun and then two more shots were fired.

The man told police he went to call 911 and when he returned, Ramirez was gone. He tried to help Robledo, who was bleeding from the head and unresponsive, the affidavit said.

Robledo was pronounced dead at the hospital, the affidavit said.

Debra Ramirez told police her son made death threats against her and her boyfriend before, according to the affidavit.

June 22, about three weeks before the shooting, Albert Ramirez was placed on six months probation for smashing the windshield of Robledo's car March 31.

Ramirez admitted smashing the window out of anger, a police report said.

A judge ordered him to attend the next available session of the Alternative Sentencing Programs and Educational Networks program, or ASPEN. Court records do not indicate if he had yet completed the program.

In a separate police report filed June 19, Debra Ramirez called police and told them her son smashed the front window of her home because he wouldn't let him in the house.

She said Ramirez was banging on the door and she didn't let him in because she was afraid he would hurt her, the report said.

Ramirez was not charged in the second incident, according to court records.

Calls to Debra Ramirez seeking comment were not returned Monday.

ADVERTISEMENT

LOCAL WEATHER

CLOVIS
64°
Cloudy
High: 84° Low: 61°
Wind: 8 13 mph
Humidity: 69%

ADVERTISEMENT

Luxury Consignment
Up to 90% off.



The RealReal    SHOP NOW ›

ADVERTISEMENT

Newspaper · Today's Ads · Newsletter and Text Alerts · ePaper Login · Local Business Directory · Newspaper in Education · Maps

# New Mexico
**gasglance.com**
Find Low Gas Prices In Your Area. Save w/ The Gas Calculator! Get App

HOME   NEWS   SPORTS   OBITUARIES   BLOGS   CLASSIFIEDS   JUST TV   SECTIONS   AUTOFINDER                 JUNE 13, 2014

## Teen charged with murder has competency issues

July 16, 2008

Courtesy photo Ramirez is charged with first-degree murder in the shooting death of 39-year-old Eladio Robledo in July 2007.

By Sharna Johnson: CNJ staff writer

A year after being charged in the shooting death of his mother's boyfriend, a Clovis 19-year-old's case is on hold pending psychological treatment.

Albert Ramirez is being treated at the Behavioral Health Institute at Las Vegas, N.M., after being declared in April to be incompetent and dangerous. District Judge Ted Hartley made the ruling after reviewing the results of a forensic psychological evaluation.

Ramirez is charged with first-degree murder.

District Attorney Matt Chandler said examiners believe with treatment Ramirez could be brought to a level of competency to stand trial.

Court records do not specify the nature of Ramirez' competency issues.

He is accused of shooting 39-year-old Eladio Robledo in July 2007 outside a Sixth Street home the victim shared with Ramirez' mother.

Robledo died a short time later at the hospital from multiple gunshot wounds.

A witness told police he saw Ramirez shooting at Robledo, who was laying on the sidewalk.

Debra Ramirez told police she feared her son because of his violent tendencies and made him move out when he reached 18. She filed a no-trespass order against him about four months before the shooting, records show.

Debra Ramirez told police her son had been threatening her and told her, "something bad was going to happen and it was going to be her fault," according to a police report.

After the protection order was filed, Ramirez' mother reported her son broke a window at her home because she wouldn't let him in.

Police said Albert Ramirez also admitted on another occasion he broke the windshield of his mother's car because he "got mad."

Debra Ramirez could not be reached for comment.

According to the April order issued by Hartley, Ramirez is to undergo treatment for up to nine months until such point as he attains competency.

Chandler said a defendant is found incompetent to stand trial when it is determined they cannot assist in their own defense or understand the way the judicial system works or the proceedings.

In March, Ramirez was charged with two counts of battery on a peace officer.

According to an arrest affidavit filed in magistrate court, transport officers said they had to carry Ramirez into and out of the courtroom when he refused to walk during a court appearance. After

ADVERTISEMENT

**Public Arrest Records**
beenverified.com/Arrest_Records
Search Any Name for Free! Step 1) Enter Name. 2) View Arrest Records

Nursing School Online

Blog Professionally

Job Openings

LOCAL WEATHER

CLOVIS
**64°**
Cloudy
High: 84° Low: 61°
Wind: S 13 mph
Humidity: 83%

ADVERTISEMENT

**Luxury Consignment**
Up to 90% off.



**The RealReal**            SHOP NOW >

ADVERTISEMENT

You're missing the video converter tool.    Click Here

HOME    NEWS    SPORTS    OBITUARIES    BLOGS    CLASSIFIEDS    JUST TV    SECTIONS    AUTOFINDER                JUNE 13, 2014

# Accused killer takes witness stand

October 10, 2013

By Robin Fornoff

CMI PROJECTS EDITOR

rfornoff@cnjonline.com

Accused killer Albert Ramirez spent two hours on the witness stand — against his lawyer's advice — then was removed from the courtroom Thursday for his continued disruptions.

Ramirez took the witness stand for about two hours, telling jurors in rambling and sometimes tearful accounts that he was defending himself when he shot and killed his mother's boyfriend six years ago.

Ramirez is charged with first-degree murder, accused of lying in wait and gunning down Eladio Robledo, 39, of Clovis, in July 2007, as he left his house on west Sixth Street for work.

Ramirez faces life in prison if convicted.



Albert Ramirez
On trial for murder

Ramirez continued his efforts that have peppered the trial since it began Monday, trying to speak to District Judge Teddy Hartley despite warnings from the judge and pleas from his defense attorney Jesse Cosby to stop.

Hartley gave Ramirez his final warning after District Attorney Matt Chandler ceased his cross examination and Cosby said he had no questions for redirect. Taking a seat next to Cosby, Ramirez said loud enough for the jury to hear, "Why didn't you ask me more questions?"

"If you don't quit talking," Hartley said, "I'm going to remove you."

Minutes later, Ramirez started talking again as his brother, defense witness Jose Ramirez took the stand. An exasperated Hartley pointed toward Ramirez and ordered sheriff's deputies to "take him out of this courtroom."

Two deputies grabbed Ramirez, who shouted "he's not asking questions ... he's not representing me," as the jury watched.

Until Thursday, Ramirez's disruptions came during periods when the jury was sequestered outside the courtroom. Cosby told Hartley he was now concerned the outburst planted seeds of doubt in the minds of jurors about his representation of Ramirez.

"He's fired me in open court in front of the jury," said Cosby.

Hartley, noting Cosby seemed to have a calming effect on Ramirez outside the proceedings, told him to talk to his client.

After about a 40-minute break, both sides returned and Cosby said Ramirez had decided to keep him as defense attorney. Hartley then warned Ramirez if there was one more outburst or disruption, he would have Ramirez removed and proceed with the defendant watching the rest of the trial in another room by video camera.

ADVERTISEMENT

Nursing School Online

chamberlain.edu
Earn Your RN To BSN in 3 Semesters. Online, Affordable & User Friendly!

Public Arrest Records

Search Obituaries Free

Job Openings

LOCAL WEATHER

CLOVIS
64°
Cloudy
High: 84° Low: 61°
Wind: S 13 mph
Humidity: 63%

ADVERTISEMENT

FARMERS
INSURANCE

Rosalind
Riley-Smith

Home · Auto · Life

Request A Quote

www.ClovisInsuranceRileySmith.com

ADVERTISEMENT

EXHIBIT 13
Page 55

Form CD-180108.1
Revised 06/16/14

# NEW MEXICO CORRECTIONS DEPARTMENT
## Treatment Plan
☒ Individual    ☐ Group ☐ RDAP ☐ Other SUDs

**TREATMENT PLAN AND CONTRACT:**

| TREATMENT GOAL | Date goal set | TREATMENT Intervention and Frequency | Date Goal Met |
|---|---|---|---|
| Decrease symptoms of PTSD, i.e., flashbacks, nightmares, insomnia, numbness, sadness, anger, guilt, fear, etc. | 8/30/16 | Cognitive Behavioral Therapy at least one time per month in individual and/or group therapy to assist in identifying what triggers stressful memories and/or PTSD symptoms | |
| Increase coping skills to help deal more effectively with symptoms of PTSD | 8/30/16 | Assist in the development of positive coping skills at least one time per month in individual and/or group therapy. | |
| Reduction of the effects of traumatic memories on daily functioning. | 8/30/16 | CBT and/or Motivational Interviewing (MI) at least one time per month in individual and/or group therapy to assist in desensitization. | |
| Reduction of Intrusive Symptoms, i.e. intense or prolonged psychological distress or marked physiological reactions at/to exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event (s) | 8/30/16 | CBT, Motivational Interviewing (MI) and/or psychoanalytical therapy at least one time per month in individual therapy. | |
| Medication Compliance | 8/30/16 | Comply with medication prescribed by psychiatrist and cooperate with appropriate feedback, as indicated. | |

**CONTRACT:**

1. I will attend scheduled treatment sessions unless I have a mandatory institutional appointment.
2. I will participate in the therapeutic process. There may be times when dealing with my issues may be uncomfortable or difficult.
3. I understand that there are limitations to treatment.
4. I understand that there are potential adverse outcomes to treatment.
5. I understand that I can refuse to participate in any part of this treatment plan if it adversely impacts my safety, security, or health.
6. I understand that my treatment sessions will address my treatment goals.
7. I will complete assigned treatment homework (if any is assigned by my clinician).
8. Other _____

**By signing below, I am consenting to the treatment plan and contract:**

Ramirez, Alberto
Inmate (Printed Name)        Inmate Signature    #6959 2 Alberto . Jose . Ramirez    8/30/16    Date

Beatrice Narcisco, PhD, LPCC
Clinician (Printed/Typed Name)        Clinician Signature    B. Narciso, PhD, CAC    8/30/16    Date

Eileen R. Missall, MA, LPCC
Behavioral Health Reviewer (Printed/Typed Name)        Reviewer Signature    8/30/16    Date

---

Inmate Name: **Ramirez, Alberto**    NMCD#: **69597**    Facility: **CNMCF/MHTC**
Treatment Plan        Form CD-180108.1 (Rev. 06/16/14)

Could make life

1) 3 choices Better Same or Worse

2 Take control one person 24 7
myself.

3) (RESPONSIBILITY)
Ability to respond)
rather than react.

Self Esteem
Core

10-15. emotionally stop allowing
trauma skips from progres

Mental ILNESS is no Excuse 4 bad behavior

Im Sorry    I take responsibility
in learng me ability to respond.

Think or about was very inappropriate

one goal to control one behavioral

I dont think IMPULSIVITY,
I Should be charged
twice for the Same. double jeoprady
I didnt Mean it in an inappropriate.

way im impulsive way.
thats what im working
on in therapy.

☐ CNMCF/CMRU/CMU
P.O. Drawer 1328
Las Lunas, NM 87031

☐ GCCF
P.O. Box 520
Santa Rosa, NM 88435

☐ LCCF
6900 W. Millen Dr.
Hobbs, NM 88244

☐ PNM
P.O. Box 1059
Santa Fe, NM 87504

☐ SNMCF
P.O. Box 639
Las Cruces, NM 88004

☐ SNMCF-POU
P.O. Box 20005
Las Cruces, NM 88004

☐ WNMCF
P.O. Drawer 250
Grants, NM 87020

☐ NENMDF
185 Doctor Michael Jenkins Rd
Clayton, NM 88415

Name _____
No. _____ Unit _____

START

Date: _____

All these Are
part of old petition that
was denied and No
lawyer to assist denied.

Start labeled
to end
(A B C D E)

copies of.    3.22.17
My other trials  6.25.17

were lost by prison
officials

*3 copies of each page of these*

*End of pages*

| | | | | | | |
|---|---|---|---|---|---|---|
| CNMCRC/MRU/CMU<br>P.O. Drawer 1328<br>Las Lunas, NM 87031 | OCCF<br>P.O. Box 520<br>Santa Rosa, NM 88435 | LCCF<br>6900 W. Millen Dr.<br>Hobbs, NM 88244 | PNM<br>P.O. Box 1059<br>Santa Fe, NM 87504 | SNMCF<br>P.O. Box 639<br>Las Cruces, NM 88004 | SNMCF-POU<br>P.O. Box 20005<br>Las Cruces, NM 88004 | WNMCF<br>P.O. Drawer 250<br>Grants, NM 87020 | NENMDF<br>185 Dexter Michael Jenkins Rd.<br>Clayton, NM 88415 |

Name _____

No. _____ Unit _____

Date: _____

√ counsel

MR COSBY refused to address court and request a mistrial which if raised issue probably start trial over if lawyer had done a better job of protecting my rights

Also witness Pricilla lopez and Ricky Jaramillo aye witnesses would of testified that I am real skinny and helped prove I was the one being chased in yard and that dectcenve was mis leading witnesses.

Counsel at trial failed to call dr Fink as a witness at trial as I asked. dr Fink would of testified that I was not competent and mentally ill

I asked counsel to call dr. Jocay Burness to cross examine.

I asked counsel to investigate mental illness difense as I have family history of mental illness + intoxication History and drugs.

I did express disatisfaction with counsel and the court failed to inquire into the matter

√ counsel

MR COSBY promised if I testified I would be able to speak of sexual abuse by niebor and my moms boyfriend He lied to incriminate me.

If counsel did not lie I would not have testified and trial may have been difrent togther these errors all the prejudice Id be entitled to a new trial.

Counsel at trial failed to give me the entire discovery and did not discuss any of the case with me. Bcue I would take plea.

Name _____

No. _____ Unit _____

Date: _____

---

COUNSEL did NOT call ISICAI RAMIREZ who would of
testified Robledo hit me and was violent when
I was 13 and He fought Robledo.

also jose Ramirez would testify Robledo was
aggressive violent + attacked him everytime
He tried to go see me

COUNSEL failed to get MEdical records Evidence
To Show I was physically injured at time of
crime.

There was a complete breakdown in communication.

I want the cort to know I asked twice on

record To speak to show I timely moved for
removal of counsel, But the cowt refused to
let me say anything about conflict Between
I and counsel.
                              what trial
I tried to put in record after trial counsel said
ceter I tried to fire him.
Court refused to inquire into it
if the cowt had id of got a New attorney or
a mistrial
I asked To represent myself.

I was denied my sixth admendment right to
effective assistance of counsel.

I ask for an Evidentary Hearing to Now allow
me to speak on record

              Thanks very much

West's New Mexico Statutes Annotated
State Court Rules
9. Criminal Forms
Article 7. Special Proceedings

NMRA, Form 9-702

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO
THE DISTRICT COURT FROM DENIAL OF HABEAS CORPUS

Currentness

[For use with Appellate Rule 12-501 NMRA]

IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Alberto J. Ramirez
...............................................

Defendant-Petitioner,          S.Ct. No. .........................................

                               (leave blank; court will assign)

vs.

......John gay............          District Ct. No. ...........................

(Name of Warden)

Respondent.

PETITION FOR WRIT OF CERTIORARI TO THE
____9th____ DISTRICT COURT OF NEW MEXICO

.......Alberto Ramirez................................................
Defendant

Petitioner pro se
...............Alberto Ramirez..........................................
...............po box 1059............................................
...............Santa fe NM 87501......................................

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

(
*address information*                                          *a/o*
)

### PETITION FOR WRIT OF CERTIORARI TO THE
### ___9th___ DISTRICT COURT OF NEW MEXICO

Defendant-Petitioner, appearing pro se and pursuant to the provisions of the New Mexico Constitution, Rule 5-802, and Rule 12-501 NMRA; petitions this Court to issue its Writ of Certiorari to review the order in:

_____ *(your name v. Warden's name)*, District Court No. D-905-CR-2007-434 filed on June 272017

### QUESTIONS PRESENTED FOR REVIEW

Whether the district court erred in:

①  denying defendant his sixth amendment Right to Effective assistance of counsel and compulsory process when His attorney Refused to call dr morxona Suarte to testify at sight competency hearing or trial

②  whether petrovers criminal convictions were obtained in violation of the federal Right to due process and a fair trial when prior uncharged acts were introduced assult a battiring charges under Rule 11-4/141 ⑤

B. Weather petitioners criminal convictions were obtained in violation of His federal right to due process, and a fair trial when prior uncharged acts were introduced absent a balancing analysis under Rule 11-404 B?

C Wheather Being Shackled during trial and jurors observed him and it denied him due process?

d Sufficiency of Evidence?

E Prosecutor Misconduct while prosecutor called defendant perjore to society and cross examined about doing legal Research, to get jury to bury his story.

f Double Jeopardy - charged twice for same time disposal of Shorts And gun. denied due process

_See attached page C & E_

_(Complete only for issues relevant to the petition. Attach additional sheets if necessary.)_

### DESCRIPTION OF THE PROCEEDINGS

1. Please list the conviction being challenged:

1st degree Murder

2 counts of tampering w/Evidence

Life + plus six years

2. Please list any other petitions you have filed in the New Mexico Supreme Court challenging this conviction (*please include docket numbers and dates*):

February 7th 2014 the Supreme

Court of New Mexico State of New

Mexico VS Alonzo Romas Sct. No

34,576  Issued Jan 18th 2017.

3. Tell the story of what happened in your court case:

My attorney would not speak to

me, we had conflict of interest the

large period and file motions for

Change of venue even though extensive

media coverage

I fell in fear category because
I was shackled to table Sheriff
Officer Ordered me to say no I did not
fall into this category said If I
Refuse to take Plea he will not
Provide effective assistance
See attached page. 4

## BASIS FOR GRANTING THIS PETITION FOR
## WRIT OF CERTIORARI TO THE DISTRICT COURT

The decision of the district court on my petition for writ of habeas corpus, filed pro se, raises significant questions of law under state and federal constitutions: whether the errors below deprived petitioner's rights guaranteed by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments and by New Mexico Constitution, art. II, §§ 13, 14, 15, and 18.

## ARGUMENT

*(Describe your legal claim and cite the law (cases, statutes, constitutional sections) that supports your position. Use plain language.)*

POINT 1:



Petitioner was denied His 6th
amendment Right to effective assistance
of counsel and his Right to
Compulsory Process when His attorney
failed to Call Madonne Swartz
to Rebut to states mere assertions
of Malingering and to Testify ⟹

prior bad acts Evidence wrongly
admitted,
  Trial lawyer refuses to call
Maryann Swiharts To raise
defense lack of capacity or
  INSanity,
                Argument.

part 1.
  Petitioner was denied His 6th
amendment Right to Effective
assistance of counsel and His
right to compulsory process
when His attorney failed to
call Maryann Swihart to Rebut
to States mue assertions of
Maneuvering and to testify at
trial about defendants state of mind,
Is it Ineffective assistance
to ignore a defendants right to
compulsory process.

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

About defendants state of mind IS + irrefective
assistance to insure a defendants right to
consperancy promais?

**POINT 2:**

Prior bad acts evidence should
not been accounted introduced
and this introduction denied
The petitioner his right to a
fair trial

**POINT 3:**

The petitioner was unduly prejudiced
and denied his right to a fair trial
were the fall was a direct result
of being shackled and his attorney
did not have jurors polled
regarding whether they saw
the shackles or not.
                              see attached page 4 5 6

(Attach additional sheets, if necessary.)

REQUEST FOR RELIEF

4. Sufficiency of Evidence
   Jackson. v virginia 443. U.S.
   307 - 317. 18 (1979) did Not
   destroy or hide Evidence

5. prosecutor Misconduct.
   State v. Sosa 2009 NMSC
   056, 35.147, NM 8SI 223
   P3d. 348 called Referant
   A menace to Society and convicted
   by doing illegal research to
   Beat his Charges.

6. double Jeopardy
                    State v. degraff
   2006, NMSC, 011, 34.139 NM
   20.131 P3d. 61.

Defendant-petitioner requests that this Court issue its writ of certiorari to the district court, and:

(W) remand to the district court for a full hearing on the petition, OR

(W) reverse the conviction, OR

(W) remand to the district court to correct the sentence, OR

(W) (other) _Evidentiary hearing or Ruvission motion Grant Certification attorney to re review_

Petitioner asks this Court to grant such relief as may be appropriate. As required by Rule 12-501 NMRA, I am filing only the original copy of this petition and I have attached the following:

(W) a copy of my petition for writ of habeas corpus filed in district court, AND

(W) a copy of the state's response, if one was filed, AND

(W) a copy of the district court's order.

(W) I have not attached the required documents because

_____

and ask the Supreme Court to accept this petition without the attachments.

Respectfully submitted,
_Alberto Ramirez_
Defendant-Petitioner, pro se
I hereby certify that a copy of this petition was mailed to the Attorney General's Office, P.O. Box 1508, Santa Fe, New Mexico 87504-1508 on this _25th_ day of _Jan 2019_.

_Alberto Ramirez    PO Box 1059_
Defendant-Petitioner, pro se              _Santa Fe 87504_

Credits
[Adopted effective Dec. 31, 2014.]

STATE OF NEW MEXICO
CURRY COUNTY
NINTH JUDICIAL DISTRICT COURT

ALBERT RAMIREZ,

           **Petitioner,**

v.                                     **D-0905-CR-2007-00434**

JAMES MULHERON, warden

           **Respondent.**

<u>AMENDED PETITION FOR WRIT OF HABEAS CORPUS</u>

      **COMES NOW** the Petitioner, Albert Ramirez, through his counsel Liane E. Kerr, and

pursuant to NMRA Rule 5-802 and Article II, Sections 7, 12, 14, 15 and 18 of the New Mexico

Constitution and the Fifth, Sixth and Fourteenth Amendments of the United States Constitution; and

respectfully submits this Amended Petition for Writ of Habeas Corpus.

      Mr. Ramirez respectfully requests that this Honorable Court issue a Writ of Habeas Corpus

and vacate, set aside or correct Mr. Ramirez's sentence and order of confinement in D-905-CR-

2007-0434. Mr. Ramirez contends that he was denied his state and federal constitutional right to due

process and a fair trial because the cumulative effects prevented him from proving his innocence. The

following amendments have been made to the pro se petitions filed on March 22, 2017; April 25,

2017; June 20, 2017 and July 17, 2017.

      1.    **Place of Confinement:** Mr. Ramirez is detained by Warden James Mulheron at the

Southern New Mexico Correctional Facility in Dona Ana, NM.

      2.    **Nature of Proceedings Resulting in Confinement:** Petitioner was found guilty

following a change of plea on the date of his jury trial on January 26, 2009 of two counts of tampering

1

with evidence and first degree murder in the first degree. Petitioner moved to withdraw his plea dn the court denied it; however, the Supreme Court remanded the matter, allowing Petitioner to withdraw his plea. Jury trial was ultimately held on October 10, 2013 and lasted four (4) days, after which Petitioner was found guilty of the murder and tampering charges.

3.     **Judgment and Sentence Resulting in Current Confinement.** Petitioner was sentenced in the Ninth Judicial District Court, Honorable Teddy L. Hartley presiding, on January 8, 2014 to a consecutive sentence on each of the counts: a period of Life on the murder count plus six (6) years for each of the tampering counts in the New Mexico Department of Corrections.

4.     **Direct Appeal.** On February 7, 2014, Petitioner appealed his original conviction to the Supreme Court of New Mexico in *State v. Ramirez*, S. Ct. No. 34,576 and a mandate affirming the trial court was issued on January 18, 2017.

5.     **Prior Petitions.** Petitioner filed a Petition for Writ of Habeas Corpus on March 22, 2017; April 25, 2017; June 20, 2017 and July 17, 2017.

6.     **Habeas Representation/Timeliness of Petition:** By Order of the Court, the Public Defender, Amanda Stephenson, entered an appearance on August 27, 2017. Ms. Stephenson filed two requests for extension, one on October 23, 2017 and again on January 19, 2018, making the Petition due on or before April 19, 2018, Due to a conflict, the Pubic Defender's Office recently reassigned the Petitioner's case to Liane E. Kerr, who requested a sixty day extension in order to fully review the case, meet with her client and file the brief. The request was opposed by the State. Consequently, this Petition is filed without fully meeting with Mr. Ramirez.

2

7.     **Relief Requested:** This petition seeks to vacate and set aside Petitioner's criminal convictions on the grounds that he was denied his state and federal constitutional rights to due process and denied the effective assistance of counsel.

## ISSUES PRESENTED IN THIS PETITION:

a.     Whether Petitioner was denied his sixth amendment right to effective assistance of counsel and compulsory process when his attorney refused to call Dr. Maxann Shwartz to testify at either the competency hearing or at trial?

b.     Whether Petitioner's criminal convictions were obtained in violation of his state and federal right to due process and a fair trial when prior uncharged acts were introduced absent a balancing analysis under Rule 11-404b?

c.     Whether Petitioner was denied his right to due process when jurors observed him shackled during trial?

## STATEMENT OF FACTS/PROCEDURAL HISTORY

**A.     Procedural History.**

Petitioner was indicted on July 20, 2007 and charged with first degree murder and two counts of tampering with evidence. **[Exhibit A].** On January 26, 2009, the first day of his jury trial, Mr. Ramirez pled guilty to two counts of tampering with evidence and first degree murder in the first degree, with tampering counts running concurrent to the life sentence.

Mr. Ramirez moved to withdraw his plea on February 25, 2009, a motion the trial court heard on June 25, 2009, but denied on July 29, 2009. Following an appeal of the denial to withdraw plea, the New Mexico Supreme Court reversed the denial on July 6, 2011 and remanded for a trial on the merits which was ultimately held on October 7-11, 2013 where jurors were instructed to find first degree murder and Petitioner was found guilty of first degree murder. **[Exhibit B].** Although Petitioner's plea exposed him to a life sentence only, following trial, Petitioner was sentenced to the

3

life sentence and each tampering count consecutively, earning him an additional six years for a term of life plus six years. **[Exhibit C]**.

### 1)   Facts Regarding Introduction of Prior Bad Acts Evidence

During trial, the State introduced three incidents of bad acts evidence, which Mr. Ramirez maintains was error. Over objection, the State introduced evidence that Mr. Ramirez broke his mother's windshield. **[Exhibit D: Transcript, 10/8/13, 4:03:49-4:08:21]**. Again over objection, the State introduced evidence that the victim's home had been burglarized with the implication that it was Mr. Ramirez who made the entry. **[Exhibit E: Transcript, 10/8/13, 4:14:04; 10/11/13, 8:5526-8:59:31]**. A final bad acts reference was introduced when the State called a firearms dealer, who testified that Mr. Ramirez sought to purchase a firearm from him. **[Exhibit F: Transcript, 10/8/13, 4:15:55-4:25:21]**.

### 2)   Facts in Support of Prejudice from Shackles Observation

During a break, as jurors were leaving the courtroom, Mr. Ramirez tripped as a result of wearing shackles. He maintained that jurors observed him fall and saw his shackles as a result. **[Exhibit G: Transcript, 10/7/13, 3:10:07-3:11:12]**.

### 3)   Facts Regarding Petitioner's Competency

A notice to determine competency was filed on January 14, 2008 **[Exhibit H]** and the defendant was evaluated by Dr. Maxann Shwartz and determined incompetent. **[Exhibit I]**[1]. On January 17, 2008, the Defendant was committed to the New Mexico Behavioral Health Institute at

---

[1]   Although confidential, Mr. Ramirez disclosed Dr. Shwartz' report and provided a copy attached to his pro se Petition for Habeas relief and therefore, any concerns about confidentiality are waived.

Las Vegas (NMBHI) for a period of three months. **[Exhibit J]**. A hearing was held on September 15, 2008, where Dr. Burness from NMBHI testified that she believed the Petitioner was malingering. **[Exhibit K, L]**. By Order of the Court, Petitioner was deemed competent to stand trial on September 16, 2008. **[Exhibit M]**. The record does not reflect that Dr. Shwartz was called to rebut the testimony of Dr. Joanne Burness at the final hearing regarding competency. The State then identified Dr. Burness on its witness list and the Defense filed a Motion in Limine to address statements made to Dr. Burness. **[Exhibit N]**.

Following the remand by the Supreme Court on the plea withdrawal issue, another Motion for Mental Evaluation was filed on September 22, 2011 **[Exhibit O]**; an Order was entered and Petitioner was again sent to NMBHI for an evaluation **[Exhibit P]**. In the interim, further forensic evaluation at NMBHI was ordered by the Court **[Exhibit Q]**. Subsequently, Mr. Ramirez was deemed competent to stand trial on March 1, 2013. **[Exhibit R]**.

During trial, the issue of Mr. Ramirez' competency arose repeatedly. During voir dire, the defense attorney informed jurors that there were matters concerning Mr. Ramirez' mental health. **[Exhibit S, Transcript: 10/7/13, 12:05]**. The Court noted that Mr. Ramirez made various statements which resulted in different transport officers being assigned during the trial. **[Exhibit T, Transcript: 10/8/13, CD B 8:42:10-8:43:50]**. Mid-trial, Mr. Ramirez issued a rambling statement about his health and said that he heard voices and was concerned his attorney was mad at him. **[Exhibit U, Transcript: 10/9/13, CD B 10:13:29-10:26:30; 10:24:04-10:25:58]**. Also mid-trial, the Defense reminded the Court of competency issues and alerted the Court that Mr. Ramirez did not understand the proceedings and was incapable of assisting in his defense. **[Exhibit V, Transcript: 10/9/13, CD B 10:16:00-10:17:00; 10:25:58; 10/10/13, 3:24:59-35:25:49]**. In response, the Court; however,

5

opined that Mr. Ramirez was malingering but noted he had never seen a defendant act the way Mr. Ramirez was acting. **[Exhibit W, Transcript: 10/9/13, 10:18:36-10:24:04; 10/10/13, CD B 3:45:47-3:46:20]**. The Defense again asked for a review of competency. **[Exhibit X, Transcript: 10/7/13, 10:13:29-10:14:51; 10/9/13 1:35:36-1:44:46]**. Mr. Ramirez specifically asked that the jury be told about his medical problems and specifically told the Court that he did not believe the trial to be fair, as the right questions were not being asked and Dr. Shwartz' testimony was necessary to him having a fair trial. **[Exhibit Y, Transcript: 10/9/13, CD B 2:36:02-3:13:45; 10/10/13 CD B 10:40:41-10:58:56; 4:41:38-4:42:15]**. Throughout, the Defense alerted the Court that Mr. Ramirez was difficult to represent. **[Exhibit Z, Transcript: 10/10/13, CD B 2:06:30-2:41:36]**. The Defense; however, informed the Court and the State that it would not be submitting a competency instruction. **[Exhibit AA, Transcript: 10/10/13, 4:32:27-4:35:41]**.

**B.    Facts of the Case.**

Petitioner, eighteen year old Albert Ramirez, sometimes resided with his mother, Debra Ramirez and step-father, Elado Robledo at their home in Clovis, New Mexico. Some of his belongings remained at the residence when he was ordered to leave the home due to a disruption with his step-father. When Albert Ramirez returned to the home to collect some of his belongings on July 12, 2007, he argued with his step-father and shot and killed Elado Robledo. This was witnessed by neighbor Sam Saiz, Jr. and another person who was driving by at the time.

During the investigation, law enforcement located Petitioner's shoe, a pair of shorts and some clothing in a trash dumpster several blocks from the scene. Although no firearm was located, jail calls were intercepted where Petitioner directed his cousin to an area to remove a "ban ban", something Petitioner admitted was a gun that he used in self-defense during the shooting.

6

The State introduced prior bad acts during trial. Over objection, the State called a firearms dealer to testify that the defendant had tried to purchase a gun from him in the past to support premeditation. Also over objection, the State introduced evidence that someone had broken a front window at the victim's house and this was allegedly done by the Petitioner to show motive. Yet another incident was introduced to show intent and motive; that is, that Petitioner had used his crutches to crack his mother's windshield.

During his testimony, the Petitioner claimed self-defense and told jurors that the shoe and shorts were a result of his step-father's assault. He said that his step-father had a gun and he had something in his hands, causing the Petitioner to fear for his safety. During cross-examination, Petitioner refused to respond to the prosecutor's questions, electing instead to chastise his defense counsel.

During a break, the Petitioner tripped over a table due to the shackles on his ankles. He complained of prejudice because jurors were present in the courtroom. The trial court held that jurors could not see the shackles, as a skirt covered the trial table. None of the jurors was questioned regarding the incident and what he/she saw, nor did trial counsel request a mistrial.

## ARGUMENT

Petitioner, Albert Ramirez, adequately alleges claims, which entitle him to legal argument and/or an evidentiary hearing on the following grounds: Denial of his sixth amendment right to effective assistance of counsel and denial of his due process right to a representative venire panel.

**I.     PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND HIS RIGHT OF COMPULSORY PROCESS WHEN HIS ATTORNEY FAILED TO CALL DR. MAXANN SHWARTZ TO REBUT THE STATE'S MERE ASSERTIONS OF MALINGERING AND TO TESTIFY AT TRIAL ABOUT THE DEFENDANT'S STATE OF MIND.**

A.   **It is Ineffective Assistance of Counsel to Ignore a Defendant's Right of Compulsory Process.**

The Sixth Amendment's right to counsel guarantee requires that effective assistance of counsel be given at all stages of the proceedings, and New Mexico has affirmed this right. U.S. Const. amends VI and XIV; N.M. Const. Art. II § 14; *State v. Robinson*, 99 N.M. 674, 662 P.2d 1341 (1983). Defense counsel's performance is measured against "an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *State v. Orona*, 97 N.M. 232, 638 P.2d 1077 (1982); *State v. Dean*, 105 N.M. 5, 727 P.2d 944 (Ct. App. 1986) (standard is whether defense counsel exercised the skill, judgment, and diligence of a reasonably competent attorney).

As noted by *Strickland v. Washington*, "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction...has two components:

1)   First, the defendant must show that counsel's performance was deficient.

2)   Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687.

In order to prevail on an ineffective assistance claim, the defendant must show her counsel's performance fell below the standard of a reasonably competent attorney and, due to the deficient performance, the defense was prejudiced. *State v. Talley*, 103 N.M. 33, 34, 702 P.2d 353, 354 (Ct. App. 1985). Prejudice is measured by "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland v. Washington*, 466 U.S. 668, 695, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674 (1984). The test for judging any claim of ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104

8

S. Ct. at 2064. In reviewing an ineffectiveness claim, the entire proceedings must be considered as a whole. *Id.; State v. Talley, State v. Lovato,* 110 N.M. 146, 147, 793 P.2d 276, 277 (Ct. App. 1990).

In cases of egregious failure by trial counsel, defendants are relieved of the burden of establishing prejudice due to "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *United States v. Cronic,* 466 U.S. 648, 659 (1984). The *Cronic* court described three such circumstances:

(1) denial of counsel altogether;

(2) defense counsel's failure "to subject the prosecution's case to meaningful adversarial testing"; and

(3) when the accused is "denied the right of effective cross-examination." *Id.*

This is such a case. Counsel failed to subject the prosecution's case to meaningful adversarial testing. *State v. Aragon,* 2009-NMCA-102, ¶ 15, 147 N.M. 26, 216 P.3d 276 (prima facie demonstration of ineffective assistance where trial counsel failed to secure an expert necessary to explain the State's evidence).

**B.      Trial Counsel Erred in Failing to Call Dr. Maxann Shwartz as a Witness to Rebut the State's Mere Assertions of Malingering and Denied Mr. Ramirez his Rights to Compulsory Process and Fair Trial when he Refused to Call Dr. Shwartz to Testify Regarding Mr. Ramirez' Mens Rea.**

Mr. Ramirez was evaluated by an accredited psychologist, Dr. Maxann Shwartz, who found him incompetent to stand trial and who did not find malingering. Dr. Shwartz was not called at the final hearing to determine competency to testify about Mr. Ramirez' present competency and against the state's assertion of mere malingering. As a result, the Court could only consider the findings of Dr. Burness, from NMBHI, who testified that she believed Mr. Ramirez was pretending not to understand. The Court relied on this testimony to adjudge Mr. Ramirez competent to stand trial.

9

Although Mr. Ramirez requested that his attorney call Dr. Shwartz as a witness at trial to address his state of mind, his counsel refused to do so. This failure to call Dr. Shwartz to testify as to competency at the time of the event resulted in a denial of Mr. Ramirez' right of compulsory process. Criminal defendants have the right to put before a jury evidence that might influence the determination of guilt.' *Taylor v. Illinois*, 108 S. Ct. 646 (1988) *citing Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987)(criminal defendant's conviction reversed and remanded because he was not allowed to examine government documents that may have affected the outcome of the trial)).

The right to present a defense is "as American as apple pie". Defendants are constitutionally entitled to: be heard, effectively present evidence central to their defense, call witnesses to testify on their behalf, and rebut evidence presented by the prosecution. It is well established that the Sixth Amendment guarantees the right of Confrontation. As a corollary to the right of confrontation, the Sixth Amendment guarantees defendants the right to call witnesses to testify on their own behalf and if necessary, to use the compulsory process of the judiciary to subpoena witnesses who could provide exculpatory testimony or who have other information that is favorable to the defense. *See* N.M. Const., Art. II, Sec. 14 ("[i]n all criminal prosecutions, the accused shall have the right . . . to have compulsory process to compel the attendance of necessary witnesses in his behalf . . . ."); U.S. Const. amend. VI ("[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor . . . ."). Without this right, Defendant asserts, his broader right to a fair trial, guaranteed by the Fourteenth Amendment to the United States Constitution and by Article II, Section 18 of the New Mexico Constitution, was imperiled. *See generally* Peter Westen, *The Compulsory Process Clause*, 73 Mich. L. Rev. 71, 166-70 (1974).

Few rights are more fundamental than that of an accused to present his own defense" *Taylor v. Illinois*, 108 S. Ct. 646 (1988); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)). Our United States Supreme Court has held that the right to present a defense consisted of the right to compel the attendance of witnesses and offer their testimony and that such a right "'stands on no lesser footing than other Sixth Amendment rights that we have previously held applicable to the states.'." *Taylor v. Illinois*, 108 S. Ct. at 652-653 (*quoting Washington v. Texas*, 388 U.S. 14, 18 (1967)). Such a right "is an essential attribute of the adversary system itself." 46 *Id.* (*citing United States v. Nixon*, 418 U.S. 683 (1974)(President's duty violated his constitutional right "to have compulsory process to compel the attendance of necessary witnesses in his behalf"). *See also* N.M. Const., Art. II, § 14; *see State v. Cooley*, 19 N.M. 91, 140 P. 1111, 52 L.R.A., N.S., 230 (1914).

Mr. Ramirez was charged with first degree murder—a charge that on its face requires a showing that his actions were willful and deliberate and which requires a showing of premeditation. [Exhibit B]; *See State v. Montoya*, 1963, 72 N.M. 178, 381 P.2d 963; *State v. Ybarra*, 1918, 24 N.M. 413, 174 P. 212 (essential elements of murder in the first degree include the elements of deliberation and premeditation). "An abnormal mental condition may influence the probability that a defendant premeditated and deliberated-and so be taken into account by a jury in determining whether those states of mind existed in fact (beyond a reasonable doubt)-even though it did not eliminate the capacity for premeditation." *United States v. Peterson*, 509 F.2d 408, 416-17 (D.C. Cir. 1974). "[E]xpert testimony is admissible if it merely `support[s] an inference or conclusion that the defendant did or did not have the requisite mens rea.'" *United States v. Bennett*, 161 F.3d 171, 183 (3rd Cir. 1998) (*quoting United States v. Morales*, 108 F.3d 1031, 1037 (9th Cir. 1997)). Dr. Shwartz' testimony was relevant, we note that New Mexico courts have long allowed such expert testimony

11

relating to a defendant's mental state at the time of the commission of the offense. *See id.; see also State v. Elliot*, 96 N.M. 798, 635 P.2d 1001 (Ct. App. 1981); *State v. Smith*, 80 N.M. 126, 452 P.2d 195 (Ct. App. 1969). Regardless, Dr. Shwartz was not called at trial to testify about Mr. Ramirez' present competency and against the state's assertion of mere malingering. *State v. Balderama*, 88 P.3d 845, 135 N.M. 329 (2004).

Counsel's failure to pursue a potentially meritorious defense raises substantial questions of ineffective assistance counsel. *See State v. Luna*, 1979-NMCA-048, ¶27, 92 N.M. 680 (Court addressed issues relating to ineffective assistance of counsel for failure to file pre-trial motions regarding charge of conspiracy when 3 other co-defendants had that particular charge dismissed, leaving no one to conspire with). "The testing process generally will not function properly unless defense counsel has done some investigation into the prosecution's case and into various defense strategies...counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986)(internal citations omitted); *see also Strickland*, 466 U.S. at 687-88.

Reasonable professional performance includes a duty to investigate all reasonable lines of defense. *Fisher v. Gibson*, 282 F.3d 1283, 1291 (10th Cir. 2002), *citing Strickland*, 466 U.S. at 691. The failure to pursue information from a key witness regarding the basis of the accused's most important defense cannot be considered sound trial strategy. *Sanders v. Ratelle*, 21 F. 3d 1446, 1456 (9th Cir. 1994). Counsel is ineffective if he fails to conduct an adequate investigation into the defendant's most viable theory of the defense. *Bigelow v. Williams*, 367 F.3d 562 (6th Cir. 2004) (reasonable prudence should lead lawyer to recognize the importance of potential witness testimony).

12

The failure to pursue an adequate defense may establish grounds for finding ineffective assistance of counsel. *State v. Barnett*, 1998-NMCA-105, ¶ 30, 125 N.M. 739 citing ABA Standards for Criminal Justice Pleas of Guilty, Standard 14-3.2 (2nd edition 1980).

Whether defense counsel's actions were unreasonable or caused prejudice cannot be established by the trial record; *State v. Plouse*, 2003-NMCA-048, ¶ 15, 133 N.M. 495, 64 P.3d 522; rather, a habeas proceeding is the appropriate procedure, so that "the defendant may actually develop the record with respect to defense counsel's actions." *State v. Arrendondo*, 2012-NMSC-013, ¶ 38. New Mexico appellate courts frequently remand claims of ineffective assistance of counsel brought on direct appeal for further evidentiary hearings. *State v. Hunter*, 2006-NMSC-043, ¶30, 140 N.M. 406, 143 P.3d 168. "[H]abeas corpus proceedings are the preferred avenue for adjudicating ineffective assistance of counsel claims, because the record before the trial court may not adequately document the sort of evidence essential to a determination of trial counsel's effectiveness." Id. (internal quotation marks and citation omitted). Thus, we have held that an evidentiary hearing in most cases "may be necessary." *Id.* (internal quotation marks and citation omitted).

Defendant's ability to confront his accuser and to obtain compulsory process, protected by the Sixth Amendment to the United States Constitution as well as Article II, Section 14 of the New Mexico Constitution, was compromised. As a result, Mr. Ramirez was denied his right of due process contrary to N.M. Constitution, Art. II, Sec. 18; and the U.S. Constitution, Amend. V and 14 and compulsory process as guaranteed by N.M. Const, Art. II, Sec. 14 and U.S. Const. Amend. VI.

"A defendant is not entitled to an attorney who will 'leave not the smallest stone unturned'

13

...but when the defendant has but one stone, it should at least be nudged." *Coleman v. Brown*, 802

F.2d 1227, 1234 (10th Cir. 1986)(internal citations omitted). Mr. Ramirez submits that failure to call

Dr. Shwartz as a witness, per his request, was tantamount to ignoring a boulder.

## II.    PRIOR BAD ACTS SHOULD NOT HAVE BEEN INTRODUCED AND THEIR INTRODUCTION DENIED THE PETITIONER HIS RIGHT TO A FAIR TRIAL.

A Defendant is presumed innocent and is entitled to due process and a fair trial. U.S. Const.,

amend V., XIV; N.M. Const., art. II § 18." *State v. Martin*, 1984-NMSC-077, ¶ 17, 101 N.M. 595

(fair trial); U.S. Const., amends VI and VII, and N.M. Const., Art. II, sec. 14 and 18 (presumption of

innocence); and N.M. Constitution, Art. II, Sec. 18; and the U.S. Constitution, Amend. V and 14 (due

process). Mr. Ramirez maintains that he was denied these rights when, over the Defense objections,

the State introduced prior bad acts during trial.

The evidence was not relevant. It is the state's burden to establish the relevancy of the

proffered evidence *State v. Herrera*, 92 N.M. 7, 582 P.2d 384 (Ct. App.), *cert. denied*, 91 N.M. 751,

580 P.2d 972 (1978). Rule 404(B) is a specialized rule of relevancy which requires counsel to

identify the consequential fact to which the proffered evidence of other acts is directed. *State v.*

*Aguayo*, 114 N.M. 124, 835 P.2d 840 (Ct. App), *cert. denied*, 113 N.M. 744, 832 P.2d 1223 (1992).

It is only then, after the proponent has provided the trial court with an adequate basis, that the trial

court should decide whether the probative value of the evidence is not substantially outweighed by

the prejudicial impact. *State v. Beachum*, 96 N.M. 566, 568-69, 632 P.2d 1204, 1206-07 (Ct. App.

1981)(emphasis added). Such evidence should not be received when "very probably its sole result,

or at least its overwhelming result, will be that of establishing defendant's bad character, or his

disposition or propensity to commit crime, as the basis for an inference that he committed the crime

with which he is charged and for which he is being tried." *State v. Mason*, 79 N.M. 663, 667, 448

P.2d 175, 179 (Ct. App.), *cert. denied*, 79 N.M. 688, 448 P.2d 489 (1968).

As noted by the Court of Appeals in *State v. Andrade*, 1998-NMCA-031, ¶12

> [o]ur rules of evidence, following longstanding legal tradition, insist that a defendant
> not be convicted by a jury simply on evidence that the defendant is a bad person."
> *citing* Rule 11-404 NMRA.....[e]vidence of a defendant's prior misconduct ordinarily
> is not admissible to support the inference that the defendant has a propensity to
> commit unlawful acts and therefore is likely to have committed the charged act. New
> Mexico has been particularly strict in limiting evidence of prior crimes." *citing State
> v. Wrighter*, 1996-NMCA-077.

Although evidence of other bad acts may be relevant, the risk that the jury will convict

because Defendant is a bad person and needs to be punished creates a prejudicial effect. Rule 11-404

(b) provides that evidence of other crimes, wrongs or acts is not admissible to prove the character of

a person in order to show action in conformity therewith or to show criminal propensity. *See State

v. Roybal*, 115 N.M. 27, 846 P.2d 333 (Ct. App. 1992)("Generally, proof of other crimes has a

tendency to prejudice the minds of the trier of facts and predispose them to a belief in the accused's

guilt.").

Over objection, the State called a firearms dealer to testify that the defendant had tried to

purchase a gun from him in the past to support premeditation. Also over objection, the State

introduced evidence that someone had broken a front window at the victim's house and this was

allegedly done by the Petitioner to show motive. Yet another incident was introduced to show intent

and motive; that is, that Petitioner had used his crutches to crack his mother's windshield. The State

presumably sought protection under Rule 11-404 (b) as indicated below.

The broken front window was never proven to be the Defendant. Incredibly, the State sought

introduction of this act to show motive. The evidence was not relevant to defendant's motive to

commit the instant offense, as the State could not prove that it was the Defendant who broke the window and not just a random act. *See e.g. State v. Ruiz*, 119 N.M. 515, 892 P.2d 962 (Ct. App. 1995); *State v. Williams*, 117 N.M. 551, 874 P.2d 12 (1994)(prior relationship with victim or merely enjoying sex is not sufficient to suggest that a defendant had cause to force himself on the victim). Admission of prior acts must be shown to sufficiently be similar to the charged acts to indicate they were likely done by the same person. In order for evidence to be admissible under this exception, the similarity must rise above the level of characteristics common to many incidents of the crime and must indicate a distinct pattern of conduct. The incident was not so distinctive as to constitute a "unique or distinct pattern easily attributable to one person." *State v. Beachum*, 96 N.M. 566, 568, 632 P.2d 1204, 1206 (Ct. App. 1981).

The firearms expert could not recall what kind of weapon Mr. Ramirez allegedly sought to purchase; he could not recall when exactly Mr. Ramirez came to his business; he did not keep a copy of the firearms application form which he claims he received from Mr. Ramirez. Although trial counsel sought to exclude the evidence, the trial court allowed the State to introduce it to support motive and premeditation. This was in violation of Rule 11-404(B) which provides that evidence of a defendant's prior acts is admissible to show proof of motive. Factually similar incidents cannot, alone, prove plan, particularly when the acts are several years apart and the State must be able to prove the act was somehow part of a bigger plan. *State v. Montoya*, 116 N.M. 72, 860 P.2d 202 (Ct. App. 1993).

Finally, whether Mr. Ramirez did or did not break his mother's windshield, the evidence was neither relevant nor probative to prove that Mr. Ramirez intended harm to his step-father. The evidence was admitted in violation of Rule 11-404(A) NMRA 2004 (providing that "[e]vidence of

a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion"). *See State v. Lucero*, 114 N.M. 489, 492, 840 P.2d 1255, 1258 (Ct. App. 1992); *see also State v. Alberts*, 80 N.M. 472, 474, 457 P.2d 991, 993 (Ct. App. 1969) (finding that if the sole purpose of evidence is to demonstrate bad character, reputation, or disposition, its prejudicial effect makes it inadmissible).

On the whole, the probative value of the evidence did not outweigh the prejudicial effect for which the State introduced it. As noted in *State v. Williams supra*, "[i]f evidence of prior acts is relevant and admissible for a purpose other than proving a defendant's propensity to commit a crime, the probative value of the evidence must outweigh its prejudicial effect". *Id. citing State v. Landers*, 115 N.M. 514, 517, 853 P.3d 1270, 1273 (1993); NMRA 1999, 11-403; *State v. Beachum*, 96 N.M. 566, 567-68, 632 P.2d 1204, 1205-06 (Ct. App. 1981).

Even when admitting prior bad acts evidence under a recognized exception, the trial court must still meet the requisites of 11-403. *State v. Wrighter*, 122 N.M. 200, 922 P.2d 582 (Ct. App. 1996). The trial court may admit evidence under NMRA 1999, Rule 11-404(B) if the probative value of the evidence outweighs any prejudicial effect. *State v. Landers*, 115 N.M. at 518, 853 P.3d at 1274.

There is no indication that the Court balanced the prejudicial effect of the evidence against its probative value to determine if "the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. *See* Rule 11-403, NMRA 2001. Even allowing that evidence of the defendant's prior history was admissible to establish context, *See Jones*, the trial court must engage in a balancing requirement of NMRA 1999, 11-403.

17

*State v. Rojo*, 1999-NMSC-001, ¶ 47, 126 N.M. 438, 971 P.2d 829 ("Under Rule 11-403, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."

Proof of other crimes has a tendency to prejudice the minds of the triers of fact and to predispose them to a belief in the accused's guilt. *See State v. Rowell*, 77 N.M. 124, 419 P.2d 966 (1966); *State v. Allen*, 91 N.M. 759, 581 P.2d 22 (Ct. App. 1978).

> The real danger of admitting past conduct is that, if the jury believed the testimony, the jury would conclude that the Defendant acted in conformance therewith, and if he did so then, it is more likely he did so now. One cannot ignore the long tradition of courts and commentators expressing fear that jurors are too likely to give undue weight to evidence of a defendant's prior misconduct and perhaps even to convict the defendant solely because of a belief that the defendant is a bad person.

*State v. Lamure*, 115 N.M. 61, 71, 846 P.2d 1070, 1080 (Ct. App. 1992), *cert. denied*, 114 N.M. 720, 845 P.2d 814 (1993). Rule 404(B) is designed to prevent this kind of perception. *Id.* Testimony which amounts to evidence of a defendant's bad character, or disposition to commit the crime charged, when not offered for a legitimate purpose, is inadmissible and unfairly prejudicial. *State v. Rael*, 117 N.M. 539, 540, 873 P.2d 284, 286 (Ct. App. 1994).

Defendant submits that it was prejudicial error to admit evidence of prior uncharged conduct, *State v. Ross*, 88 N.M. 1, 536 P.2d 265 (Ct. App. 1975). Any references to other offenses may be probative, but its probative value is substantially outweighed by the prejudice to the Defendant. *State v. Hogervorst*, 90 N.M. 580, 566 P.2d 828 (Ct. App. 1977). Accordingly, Defendant's rights to fair trial and due process were violated. U.S. Const., amend V., XIV; N.M. Const., art. II § 18 (fair trial) and N.M. Constitution, Art. II, Sec. 18; and the U.S. Constitution, Amend. V and 14 (due process). Mr. Ramirez maintains that he was denied these rights when, over the Defense objections, the State introduced prior bad acts during trial.

III.   **THE PETITIONER WAS LIKELY PREJUDICED AND DENIED HIS RIGHT TO A FAIR TRIAL WHEN HIS FALL WAS A DIRECT RESULT OF BEING SHACKLED AND HIS ATTORNEY DID NOT SEEK TO HAVE JURORS POLLED REGARDING WHETHER THEY SAW THE SHACKLES OR NOT.**

A person in custody "coming into court for trial is entitled to make his appearance free of shackles or bonds." *State v. Holly*, 2009-NMSC-004, ¶ 41, 145 N.M. 513, 201 P.3d 844 (internal quotation marks and citation omitted); *see also* Rule 5-115(C) NMRA ("Except by order of the court, the defendant may not appear before the jury in any visible restraint devices, including handcuffs, chains or stun belts, a visible bullet proof vest or any other item which, if visible to the jury, would prejudice the defendant in the eyes of the jury."). The record does not reflect that any order was issued by the trial court, until after the fall, whereby the shackles were removed for the remainder of the trial.

Petitioner recognizes that "a defendant's right to appear free of visible restraints is not absolute", *State v. Johnson*, 2010-NMSC-016, ¶ 26, 148 N.M. 50, 229 P.3d 523, as "it must be balanced against the state's interest in maintaining security." *State v. Gomez*, 1971-NMCA-009, ¶¶ 2-7, 82 N.M. 333, 481 P.2d 412 (upholding the district court's denial of mistrial where jurors had viewed the defendant in handcuffs only as safety requirements demanded, "prior to the beginning of trial and during recess"). In this case; however, there were other adequate remedies to ensure the safety of the community and the integrity of security.

While a juror's "inadvertent or insignificant exposure to a defendant in shackles is not sufficiently prejudicial to merit a new trial, " *See Holly*, 2009-NMSC-004, ¶ 41, in this case, there may have been 12 jurors who observed Mr. Ramirez in shackles. In *Holly*, a single juror may have seen the defendant in handcuffs during his escort back to detention. *Id.* ¶ 40. Rather than calling

19

attention to the incident by questioning the jurors, the district court chose to remedy the situation by repeating the general jury instructions to the jurors. *Id.* On appeal, our appellate court concluded that the incident did not constitute fundamental error because "it [was] unclear whether any exposure actually occurred, or if it did, that it was anything more than inadvertent or insignificant exposure." *Id.* ¶ 42. Here, there is nothing indicating that the Defense sought to question jurors regarding what they did/did not see when the defendant fell; rather, an assertion was made and the parties determined that likely none of the jurors saw anything. Another difference is that the defendant in Holly was wearing handcuffs. Shackles are arguably more egregious.

Given the uncertainty, the Defense should have demanded the jurors each be questioned individually and should have moved for a mistrial. In *State v. Mills*, 1980-NMCA-005, ¶ 15, 94 N.M. 17, 606 P.2d 1111, at least one juror viewed the defendant in handcuffs while a bailiff was escorting the defendant from the courtroom during a noon recess. The defendant moved for a mistrial, arguing that the incident deprived him of a fair trial. *Id.* The bailiff explained to the district court that he had waited with the defendant "for the time normally required for the departure of jurors, " and "that the view occurred because some jurors had used the restroom before departing." *Id.* ¶ 16. The district court held that the juror's observation of defendant in handcuffs was inadvertent and denied the defendant's motion for a mistrial, reasoning that "any impropriety resulting from the view was harmless" because the evidence at trial showed that the defendant was incarcerated. *Id.* ¶¶ 16-17. This case differs in three respects: the observation may have been made by all of the jurors; the defendant in *Mills* was cuffed as opposed to shackled; and the evidence at trial did not show that the defendant was incarcerated.

Pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967) and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985)(counsel should set forth contentions urged by a petitioner whether or not counsel feels they have merit ), the Petitioner urges the Court to consider the issue of whether the possibility of seeing him shackled resulted in prejudice to his case.

## CONCLUSION

If a petition for writ of habeas corpus demonstrates on its face that a Petitioner may have been deprived of his constitutional rights, the court must address the issue in an evidentiary hearing unless it plainly appears that the petitioner is not entitled to any relief as a matter of law, based on the facts alleged in the petition, or the uncontroverted facts shown by the court record. *State v. Franklin*, 1967-NMSC-151, ¶6, 78 N.M. 127 *quoting Machibroda v. United States*, 368 U.S. 487 (1962); *see also Duncan v. Kerry*, 1993-NMSC-011, ¶ 3, 115 N.M. 344 (court must hold an evidentiary hearing where a petition adequately alleged ineffective assistance of counsel). Habeas corpus proceedings are the preferred method for adjudicating claims of ineffective assistance of counsel, because such claims often cannot be considered based solely on the record before the trial court. *Duncan*, 1993-NMSC-011, ¶4. Consequently, when a petition for a writ of habeas corpus alleges particular facts which set out a claim of inadequate representation, the petitioner is entitled to a hearing. *State v. Moser*, 1967-NMSC-163, ¶ 6, 78 N.M. 212 (overruled on other grounds).

Respectfully submitted,

LIANE E. KERR, Esq.
PO Box 10491
Albuquerque, NM 87184-0491
(505) 848-9190

21

## VERIFICATION

STATE OF NEW MEXICO      )
                                ) ss.

COUNTY OF DONA ANA      )

       I, the undersigned, being first duly sworn upon my oath, state that I am the Petitioner in this action. I have read the foregoing petition and know and understand its contents, and the information contained therein are true and correct to the best of my knowledge, information, and belief.

                                    _____
                                    Albert Ramirez, PNM 69597
                                    c/o SNMCF
                                    P.O. Box 639
                                    1983 Joe R. Silva Boulevard
                                    Las Cruces, New Mexico 88004-0639

       SUBSCRIBED AND SWORN TO before me this ____ day of _____,2018, by _____.

                                      _____
                                      NOTARY PUBLIC

My Commission Expires:

_____

## CERTIFICATE OF SERVICE

       I hereby certify that true copies of the foregoing petition were served upon the Respondent and the district attorney in the county in which the petition is filed by _____(described manner of service), this 19th day of May, 2018

                                      _____
                                      LIANE E. KERR, Esq.

in *Mills* was cuffed as opposed to shackled; and the evidence at trial did not show that the defendant was incarcerated.

Pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967) and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985)(counsel should set forth contentions urged by a petitioner whether or not counsel feels they have merit ), the Petitioner urges the Court to consider the issue of whether the possibility of seeing him shackled resulted in prejudice to his case.

## IV. MR. RAMIREZ ADDITIONALLY REQUESTS THE COURT CONSIDER ADDITIONAL ISSUES WHICH WERE INHERENT IN HIS TRIAL, BUT WHICH WERE NOT RAISED BY HIS APPELLATE ATTORNEY.

Undersigned provided Mr. Ramirez with a copy of the Petition and asked that he contact her with any suggestions/changes. No contact was made; however, in meeting with Mr. Ramirez, he made requests for additional arguments and they are therefore addressed briefly. *See State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967) and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985). (counsel should set forth contentions urged by a petitioner whether or not counsel feels they have merit ). Mr. Ramirez asks this Court to consider the following in the context of the entire trial:

1. **Sufficiency of the Evidence.** If the State does present evidence sufficient to support a finding of guilt beyond a reasonable doubt, the verdict violates the Due Process Clause. *See Jackson v. Virginia*, 443 U.S. 307, 317–18 (1979). Proof beyond a reasonable doubt is equivalent to proof "to a moral certainty," and refers to the highest degree of confidence with which an historical or physical fact can be known. *Victor v. Nebraska*, 511 U.S. 1, 11-12 (1994). *See also State v. Silva*, 2008-NMSC-051, ¶¶ 19-20, 144 N.M. 815, 192 P.3d 1192 (prosecution failed to present "any evidence, circumstantial or otherwise, of an overt act" by the defendant from which the jury could infer an intent to defendant), and *State v. Duran*, 2006-NMSC-035, ¶¶ 15-16, 140 N.M. 94, 140 P.3d

21

515.. 2008-NMSC-051, ¶ 19 (no evidence of any act by the defendant to destroy or hide evidence, with the only support for the tampering charge stemming from the fact that the evidence was not found).

2.      **Prosecutorial Misconduct.** Without objection from trial counsel, the prosecutor claimed that Mr. Ramirez was a "menace to society", a liar and  during his closing argument. Prosecutorial misconduct reaches the level of fundamental error when it is egregious and so pervasive and prejudicial that the defendant was deprived of a fair trial and applies only when a defendant's conviction would shock the conscience if allowed to stand, or when an error is such that the fundamental integrity of the judicial process is implicated. *State v. Sosa*, 2009-NMSC-056, ¶ 35, 147 N.M. 351, 223 P.3d 348.   Mr. Ramirez maintains that his conviction, when viewed against the prosecutor's comments and conduct, would shock the conscience if allowed to stand.

3.      **Double jeopardy.**   Mr. Ramirez believes that being twice charged with evidence tampering was tantamount to double jeopardy.  No person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V.  Imposing multiple punishments for tampering charges directed at the same item of evidence, violates the right to be free from double jeopardy.  *State v. DeGraff*, 2006-NMSC-011, ¶ 34, 139 N.M. 211, 131 P.3d 61.  However, Undersigned recognizes that distinct acts, separated by time and space, do not violate double jeopardy. *See State v. Quick*, 2009-NMSC-015, ¶ 25 (stating that "[d]istinctness may be established by determining whether the acts constituting the two offenses [were] . . . separated by time or space").

## CONCLUSION

If a petition for writ of habeas corpus demonstrates on its face that a Petitioner may have been deprived of his constitutional rights, the court must address the issue in an evidentiary hearing unless

it plainly appears that the petitioner is not entitled to any relief as a matter of law, based on the facts alleged in the petition, or the uncontroverted facts shown by the court record. *State v. Franklin*, 1967-NMSC-151, ¶6, 78 N.M. 127 *quoting Machibroda v. United States*, 368 U.S. 487 (1962); *see also Duncan v. Kerry*, 1993-NMSC-011, ¶ 3, 115 N.M. 344 (court must hold an evidentiary hearing where a petition adequately alleged ineffective assistance of counsel). Habeas corpus proceedings are the preferred method for adjudicating claims of ineffective assistance of counsel, because such claims often cannot be considered based solely on the record before the trial court. *Duncan*, 1993-NMSC-011, ¶4. Consequently, when a petition for a writ of habeas corpus alleges particular facts which set out a claim of inadequate representation, the petitioner is entitled to a hearing. *State v. Moser*, 1967-NMSC-163, ¶ 6, 78 N.M. 212 (overruled on other grounds).

Respectfully submitted,

LIANE E. KERR, Esq.
PO Box 10491
Albuquerque, NM 87184-0491
(505) 848-9190

23

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

STATE OF NEW
COUNTY OF CURRY
FILED IN

JUN 2 0 2017

Clerk District Court

| West's New Mexico Statutes Annotated |
| State Court Rules |
| 9. Criminal Forms |
| Article 7. Special Proceedings |

NMRA, Form 9-701

## FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS

Currentness

[For use with District Court Criminal Rule 5-802 NMRA]

STATE OF NEW MEXICO

COUNTY OF CURRY

IN THE DISTRICT COURT

For Official Use Only

No. _____

(To be supplied by the clerk of the court)

ALBERT RAMIREZ

(Full name of prisoner)

Petitioner,

v.

WARDEN GERMAN FRANCO

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

2018 DEC 14  AM 10: 57

CLERK DISTRICT COURT

ALBERT JOSE RAMIREZ,

      Petitioner,

vs.                        No.   D-0905-CR-2007-00434

STATE OF NEW MEXICO,

      Respondent.

## ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS

THIS MATTER having come before the Court on Petitioner's pro se Petition for Writ of Habeas Corpus filed June 20, 2017 and Petitioner's pro se Petition for Writ of Habeas Corpus filed July 17, 2017 in the above referenced cause number, the Court having appointed the Law Office of the Public Defender to represent the Petitioner, Petitioner's Amended Petition for Writ of Habeas Corpus having been filed through Counsel on May 18, 2018, and the Court limiting its analysis to said Amended Petition, the State's Response to Defendant's Amended Petition for Writ of Habeas Corpus was timely filed on September 10, a Preliminary Disposition Hearing was held on October 29, 2018. Petitioner appeared telephonically with Petitioner's Counsel, Liane E. Kerr, Attorney at Law, the State appeared by and through Brian S. Stover, Chief Deputy District Attorney, this Court having heard argument and taking its decision under advisement, having reviewed the pleadings, researched the issues and the Court being fully advised and after due deliberation, FINDS;

1.  Petitioner is represented by Liane E. Kerr, Attorney at Law. Through Counsel, Petitioner filed an Amended Petition for Writ of Habeas Corpus on May 18, 2018.

1

2. This Court notes that the New Mexico Supreme Court found that, at least to a portion of the issues raised by Petitioner, that Petitioner retained the ability to bring such a claim via a habeas corpus proceeding. *State v. Ramirez*, 2016 WL 7029226, ¶ 32.

3. This Court entered its Notice that the Court is Not Dismissing Any Portion of the Amended Petition at this Time and Order for State to Respond to Amended Petition for Writ of Habeas Corpus on June 15, 2018.

4. Per Rule 5-802(H)(3) NMRA, the Ninth Judicial District Attorney's Office was ordered to file a response to Petitioner's Amended Petition for Writ of Habeas Corpus within one-hundred and twenty (120) days from the date the Amended Petition for Writ of Habeas Corpus was filed (May 18, 2018).

5. The State's Response to Defendant's Amended Petition for Writ of Habeas Corpus was timely filed on September 10, 2018.

6. This matter was set for a Preliminary Disposition Hearing on October 29, 2018. This Court heard argument from both parties.

7. Following the Preliminary Disposition Hearing, this "court shall then determine whether an evidentiary hearing is required. If it appears that an evidentiary hearing is not required, the court shall dispose of the petition without an evidentiary hearing, but may ask for briefs and/or oral arguments on legal issues." Rule 5-802(H)(4) NMRA. This Court does hereby rule that this matter is ripe for a decision. This Court finds that an evidentiary hearing is not required and no further briefs/argument are required.

8. A review of the file shows that Petitioner was convicted of various offenses including Murder in the First Degree in October, 2013. The Honorable Judge Teddy Hartley presided over the trial in this matter.

9. Petitioner appealed his conviction to the New Mexico Supreme Court. The New Mexico Supreme Court affirmed Petitioner's conviction in its decision, *State v. Ramirez*, 2016 WL 7029226. Said decision is incorporated by reference herein as though fully set forth.

10. In his Amended Petition, Petitioner asks this Court to vacate and set aside Petitioner's criminal convictions on the grounds that he was denied his state and federal constitutional rights to due process and denied the effective assistance of counsel.

11. There are six issues raised in the Amended Petition: 1). Was Petitioner denied his Sixth Amendment right to effective assistance of counsel and his right of compulsory process when his trial attorney failed to call Dr. Maxann Shwartz, Ph.D (hereinafter referred to as "Dr. Shwartz") to testify at either the competency hearing or at trial?; 2). Were Petitioner's convictions obtained in violation of his state and federal right to due process and a fair trial when prior uncharged acts were introduced?; 3). Did it violate Defendant's due process rights when jurors observed him shackled during trial?; 4). Was there sufficient evidence to convict the Defendant?; 5). Was there prosecutorial misconduct during the trial in this matter?; and 6). Was Defendant's right to be free from double jeopardy violated when he was convicted of two counts of Tampering with Evidence?

12. The State's Response addressed all six issues and this Court heard argument related to all six issues at the Preliminary Hearing on October 29, 2018.

13. Petitioner's first argument is that he was denied effective assistance of counsel. This Court notes that Petitioner was originally represented by Brett Carter, Law Office of the Public Defender. Later, Petitioner was represented by Jesse Cosby, Attorney at Law.

14. The issue of ineffective assistance of counsel was directly considered by the Supreme Court. The Supreme Court ruled that "the record before us is insufficient to establish that defense counsel was ineffective or that the decisions made were a plausible trial tactic or strategy. Accordingly, we reject this claim without prejudice to Defendant's ability to bring such a claim via habeas corpus proceedings." *State v. Ramirez*, 2016 WL 7029226 ¶ 32.

15. Through the above described process related to Petitioner's Petition for Writ of Habeas Corpus, this Court finds that Petitioner has been given the opportunity to establish his record related to ineffective assistance of counsel.

16. Petitioner argues that it was ineffective assistance of counsel to not call Dr. Shwartz as a witness at a September 15, 2008 Competency Hearing. Leading up to that hearing, Mr. Carter filed a Notice of Filing to Determine Competency of the Defendant to Stand Trial on January 14, 2008. On March 10, 2018, Petitioner was evaluated by Dr. Schwartz who rendered an opinion that Petitioner was incompetent. The record reflects that Dr. Schwartz spent a matter of hours with the Petitioner during the course of one day. The parties then stipulated that Defendant was incompetent. An Order for Commitment to the New Mexico Behavioral Health Institute at Las Vegas for Treatment to Attain Competency to Stand Trial was entered on April 17, 2008. On June 5, 2008, Petitioner was admitted to the New Mexico Behavioral and Health Institute in Las Vegas, NM, for treatment to attain competency. Petitioner was treated by Dr. Joanne Burness, Ph.D (hereinafter referred to as Dr. Burness). On August 18, 2008, Dr. Burness rendered an opinion that Petitioner was competent to stand trial. The record reflects that Petitioner was at the New Mexico Behavioral and Health Institute from June 5, 2008 through

4

August 19, 2008 (75 days). A Competency Hearing was held on September 15, 2008. Petitioner was represented by Brett Carter. Dr. Burness testified at length about Petitioner's competency and the process that Petitioner went through to attain competency. The Court learned that Dr. Burness evaluated Petitioner and met with him on a number of occasions. She spent additional time evaluating and observing Petitioner. She also learned additional information from others regarding the Petitioner. Amongst other details related to Petitioner's competency, Dr. Burness testified that she believed Petitioner was malingering due to his actions, statements and numerous comments made by Petitioner about getting his charges dismissed once he was found to be incompetent. Petitioner was submitted to testing related specifically to malingering and testimony related to those tests was presented to the Court. Brett Carter cross examined Dr. Burness in great detail. Mr. Carter did not call Dr. Shwartz as a witness. Following the hearing, Petitioner was deemed competent by Judge Hartley. An Order finding Petitioner competent to stand trial was entered on September 16, 2008.

17. This Court notes that Mr. Carter would have been aware that, as of the date of the competency hearing, more than six (6) months had passed since Dr. Shwartz had met with the Petitioner for a matter of hours. Further, Mr. Carter would have been aware that, since Dr. Shwartz met with Petitioner, he had spent seventy-five (75) days at the New Mexico Behavioral and Health Institute being evaluated and observed by Dr. Burness and others. Dr. Burness had spent considerably more time with Petitioner and had subjected him to additional testing/observation related to malingering, etc.

18. This Court finds that Mr. Carter's decision not call Dr. Shwartz as a witness was a strategic decision.

5

19. After an appeal related to the withdrawal of a plea agreement, Jesse Cosby entered his appearance on behalf of the Petitioner in August, 2011.

20. Competency continued to be an issue in this matter including a request by Mr. Cosby to have Petitioner's competency reevaluated in September 22, 2011. Petitioner received further forensic evaluation and treatment at the New Mexico Behavioral and Health Institute. By the time of trial, the parties had stipulated that Petitioner was competent and a Stipulated Order on Competency was filed on March 1, 2013.

21. Trial took place from October 7, 2013 through October 11, 2013. Testimony related to Petitioner's mental health was presented during trial. Petitioner argues that it was ineffective assistance of counsel for Mr. Cosby to not call Dr. Shwartz as a witness during the trial. Some of the factors that may have went into Defense Counsel's decision to not call Dr. Shwartz at trial are reflected on the record. As part of Petitioner's defense, Mr. Cosby elicited testimony from lay witnesses about Petitioner's mental health. In the afternoon on the fourth day of trial, the State began to prepare for up to two expert rebuttal witnesses, including Dr. Burness, to testify regarding Petitioner's mental health and specifically about Petitioner's malingering. Mr. Cosby argued that, if the State called said rebuttal witnesses, it would be necessary for him to call Dr. Shwartz to give surrebuttal testimony. After extensive argument, Defense Counsel began to maneuver in such a way that he would agree not to call Dr. Shwartz if the State did not call their rebuttal witnesses. In the end, Judge Hartley ruled that there would be no rebuttal witnesses and no instruction on competency. Judge Hartley even explained this decision to Petitioner, on the record, outside the presence of the jury.

22. This Court notes that Mr. Cosby would have been aware that, as of the first day of trial, it had been 2,037 days since Dr. Shwartz had met with the Petitioner. Further, Mr. Cosby would have been aware that, in the intervening time since Dr. Shwartz met with Petitioner, he had spent a considerable amount of time at the New Mexico Behavioral and Health Institute being evaluated and observed. Because of this, other mental health professionals had spent considerably more time with Petitioner and had subjected him to additional testing/observation related to malingering, etc. The State argues that Dr. Shwartz's testimony would have been irrelevant.

23. This Court finds that Mr. Cosby's decision not to present Dr. Shwartz's testimony related to Petitioner's mental state at the time of the commission of the offense, malingering, etc. was a strategic decision.

24. This Court notes the record in this matter reflects a statement from Judge Hartley toward the end of the trial that Mr. Cosby had represented Petitioner expertly and that the handling of the mental health expert witnesses was done in a fair way.

25. As noted above, the decisions made by Mr. Carter and Mr. Cosby related to the testimony of Dr. Shwartz were strategic decisions. Counsel's decisions in these areas are trial tactics and counsel is afforded wide latitude as they represented the Petitioner.[1]

---

[1] Courts generally give great deference to counsel's trial decisions, and mistakes of trial strategy or tactics do not render counsel's performance ineffective. The attorney has the basic responsibility for the conduct of the trial on behalf of his client, and he is given wide latitude in the discharge of this responsibility. Effective representation does not require that the defendant prevail or that his lawyer be infallible, and the courts are loathe to judge attorneys on the basis of hindsight. Thus, the mere fact that trial counsel took an action which another attorney might not have taken, or that trial counsel failed to take some action which might have proved advantageous, does not render him incompetent or ineffective. Generally, the attorney's performance will be held ineffective only when there is no tactical or strategic justification for his conduct of the trial. *Ineffective Assistance of Counsel*, 5 Am. Jur. Proof of Facts 2d 267 (Originally published in 1975; updated September, 2015).

26. A defendant is denied effective assistance of counsel only where it can be shown that defense counsel has failed to exercise the skill, judgment and diligence of a reasonably competent defense attorney. *State v. Orona*, 1982-NMSC-002. And the petitioner must also prove that the incompetent representation prejudiced the petitioner's case, rendering the trial court's results unreliable. *State v. Lopez*, 1996-NMSC-036. The main question is whether the allegedly incompetent representation prejudiced the case such that, but for counsel's error, there is a reasonable probability that the result of the conviction proceedings would have been different. *Lopez*, 1996-NMSC-036, ¶ 26. *State v. Baca*, 1997-NMSC-045 (overruled on other grounds).

27. This Court finds that Petitioner has failed to show that, but for counsel's "error," there is a reasonable probability that the result of the conviction proceedings would have been different. This Court finds that the Petitioner cannot show conduct which was not that of a reasonable, competent attorney. This Court is of the opinion that no prejudice to the Petitioner occurred in this regard. After a meaningful and thorough review, this Court finds that the record in this case does not support this claim. This Court finds that, as to this issue, the Petitioner is not entitled to the relief requested in his Amended Petition.

28. Petitioner's second issue is that the district court erred in admitting evidence of prior acts, in violation of Rule 11-402 NMRA. This issue was addressed by the New Mexico Supreme Court in *State v. Ramirez*, 2016 WL 7029226, ¶¶ 44-60. The Supreme Court ruled that Judge Hartley did not abuse his discretion in admitting the evidence of Defendant's prior acts. In his Amended Petition, Petitioner raises the same prior bad acts that were reviewed by the Supreme Court; with the addition of a claim related to the Petitioner attempting to purchase a firearm.

8

29. Petitioner may not seek post-conviction relief for issues raised on appeal that were decided on the merits against the Petitioner. *State v. Gomez*, 1991-NMCA-061. This is the standard rule but it has been modified to allow some leniency in allowing the issue to be brought before the Court subsequent to the appeal. However, for the Court to review the issues, the claim needs to be grounded in facts beyond the record previously presented on appeal and the petitioner must show that the additional facts are those which could not, or customarily would not, be developed in a trial on criminal charges. *Campos v. Bravo*, 2007-NMSC-021. After a thorough review, the Supreme Court affirmed Petitioner's conviction. Petitioner has failed to allege new facts that were not known at the time of trial or appeal. Petitioner has failed to ground his argument in facts beyond the record previously presented on appeal. As to the claim related to the purchase of a firearm, Petitioner has failed to show that any additional facts used to support his Petition are those which could not, or customarily would not, be developed in a trial on criminal charges. This Court finds that, due to the Supreme Court's thorough review of the issue related to Petitioner's prior bad acts, this issue cannot be collaterally attacked through a post-conviction Petition for Writ of Habeas Corpus. After a meaningful and thorough review, this Court finds that the record in this case does not support this claim. This Court finds that, as to this issue, the Petitioner is not entitled to the relief requested in his Amended Petition.

30. Petitioner's third issue is that he was prejudiced when members of the jury may have seen his leg restraints. This issue was addressed by the New Mexico Supreme Court in *State v. Ramirez*, 2016 WL 7029226, ¶¶ 39-43. The Supreme Court ruled that "Because it is unclear whether the jury saw the leg restraints and if they did, there is no evidence

9

that it was anything other than inadvertent or insignificant exposure, this case is not the exceptional type that goes to the violation of the foundation of presumption of innocence. Further, this case does not shock the conscience as Defendant's guilt is supported by substantial evidence in the record, including eyewitness testimony and evidence of Defendant's motive and a pattern of conduct toward Robledo . . . Accordingly, there was no fundamental error by the district court." *Id.*, ¶43

31. Petitioner may not seek post-conviction relief for issues raised on appeal that were decided on the merits against the Petitioner. *State v. Gomez*, 1991-NMCA-061. This is the standard rule but it has been modified to allow some leniency in allowing the issue to be brought before the Court subsequent to the appeal. However, for the Court to review the issues, the claim needs to be grounded in facts beyond the record previously presented on appeal and the petitioner must show that the additional facts are those which could not, or customarily would not, be developed in a trial on criminal charges. *Campos v. Bravo*, 2007-NMSC-021. After a thorough review, the Supreme Court affirmed Petitioner's conviction. Petitioner has failed to allege new facts that were not known at the time of trial or appeal. Petitioner has failed to ground his argument in facts beyond the record previously presented on appeal. As to any additional times that the jury may have seen Petitioner's restraints, Petitioner has failed to show that any additional facts used to support his Petition are those which could not, or customarily would not, be developed in a trial on criminal charges. This Court finds that, due to the Supreme Court's thorough review of the issue related to the jury potentially seeing Petitioner's leg restraints, this issue cannot be collaterally attacked through a post-conviction Petition for

Writ of Habeas Corpus. After a meaningful and thorough review, this Court finds that, as to this issue, the Petitioner is not entitled to the relief requested in his Amended Petition.

32. Petitioner's fourth argument is that there was insufficient evidence to convict him at trial. After a meaningful and thorough review, this Court finds that the record in this case does not support this claim. There was sufficient evidence presented to support Petitioner's convictions. After a meaningful and thorough review, this Court finds that, as to this issue, the Petitioner is not entitled to the relief requested in his Amended Petition.

33. Petitioner's fifth argument is that there was prosecutorial misconduct during the trial in this matter. Petitioner raises comments made by the State about Petitioner being a liar and a menace to society. The Supreme Court, in *State v. Ramirez*, 2016 WL 7029226, ¶ 64, addressed a similar argument raised by Petitioner. The Supreme Court found that, "reviewing all of the comments made, in the context in which they were made, and taking into account those comments' potential effect on the jury, the questions were isolated and minor. Accordingly, the prosecutor's remarks did not deprive Defendant of a fair trial." This Court adopts the Supreme Court's finding. The State's remarks did not deprive the Defendant of a fair trial. After a meaningful and thorough review, this Court finds that the record in this case does not support this claim. This Court finds that, as to this issue, the Petitioner is not entitled to the relief requested in his Amended Petition.

34. Petitioner's sixth argument is that his convictions violate double jeopardy. Petitioner argues that it was error that he be convicted of two counts of tampering with evidence. The Double Jeopardy Clause provides that no one will be "twice put in jeopardy" for the same crime. Principles of double jeopardy protect against both successive prosecutions and multiple punishments for the same offense. *Swafford v. State*, 1991–NMSC–043, ¶ 6.

11

Petitioner alleges that he has received multiple punishments for the same offense. If conduct is separate and distinct, there is no violation of double jeopardy and the inquiry is at an end. *See Id.* ¶ 28. Evidence in this matter showed that one count of tampering with evidence was based upon Petitioner's actions related to a firearm and the other count of tampering was based upon Petitioner's actions related to clothing. This Court finds that each count of tampering with evidence was based upon a distinct act, separated by time and space, and involved different pieces evidence. Therefore, Petitioner's convictions were not premised on unitary conduct, and no double jeopardy violation occurred. *Swafford*, 1991–NMSC–043, ¶ 28. After a meaningful and thorough review, this Court finds that the record in this case does not support this claim. This Court finds that, as to this issue, the Petitioner is not entitled to the relief requested in his Amended Petition.

## DECISION

After examining the Amended Petition, exhibits, prior proceedings, having heard argument from the parties, requiring no further hearing or briefing, and based on the above discussed reasons, this Court finds the Petitioner is not entitled to relief as a matter of law. Therefore, in accordance with Rule 5-802 NMRA, the Petitioner's Amended Petition for Writ of Habeas Corpus filed on May 18, 2018 is DENIED.

HON. DREW D. TATUM
DISTRICT JUDGE, DIVISION II

12

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

2019 JUL 31  PM 12: 55

*[signature]*
CLERK DISTRICT COURT

No. D-905-CR-2007-00434
(Hon. Drew Douglas Tatum)

ALBERT RAMIREZ,
        Petitioner,

vs.

GERMAN FRANCO, Warden,
STATE OF NEW MEXICO,
        Respondent.

## NOTICE OF 5-802(G)(1) INITIAL REVIEW

The Post-Conviction Habeas Unit Law Offices of the Public Defender hereby, provides

notice to the Court and Counsel for Respondent of its review in accordance with Rule 5-

802(G)(1), NMRA 2016:

1)  The Ninth Judicial Court Clerk received for review the *Petition for Writ of Habeas*

    *Corpus* on June 24, 2019.

2)  The Law Offices of the Public Defender (LOPD) was served with the *Petition for a Writ*

    *of Habeas Corpus* by the Court Clerk on June 24, 2019.

3)  This Initial Review is timely filed by August 8, 2019.

4)  As per, 5-802(G)(1) LOPD has reviewed the Petition and determines that it is not a

    proceeding that a reasonable person with adequate means would be willing to bring at a

    person's own expense.[1]

5)  Petitioner seeks appointment of a Habeas attorney to assist him in Habeas proceedings,

    an evidentiary hearing, and a "retrial."

---

[1] Under the Indigent Defense Act, Sec. 31-16-3 (B)(3) a person has the limited right to appointed counsel representation in post-conviction matters "unless the court ... determines that it is not a proceeding that a reasonable person with adequate means would be willing to bring at his own expense." (Emphasis supplied).

1

**EXHIBIT**

DD

6) Petitioner raises a number of issues in his *pro se Petition,* including but not limited to: Whether Petitioner received ineffective assistance of counsel from his trial counsel, appellate counsel, and counsel assigned to his previous Habeas Petition. Whether the trial court abused its discretion in denying Petitioner's request and demand to fire or substitute his counsel. Whether introduction of Petitioner's prior uncharged acts at trial violated his due process rights. Whether statements made by the prosecuting attorney during closing arguments and cross examination of Petitioner constituted prosecutorial misconduct.

7) Petitioner has filed four previous pro se petitions for writ of habeas corpus on March 22, 2017, April 25, 2017, June 20, 2017, and July 17, 2017.

8) On May 18, 2018, an Amended Petition for Writ of Habeas Corpus was filed on Petitioner's behalf by his habeas counsel Liane Kerr.

9) The Amended Petition raised six issues: 1. Was Petitioner denied his Sixth Amendment right to effective assistance of counsel and his right to compulsory process when his trial attorney failed to call Dr. Maxann Shwartz, Ph.D to testify at either a competency hearing or at trial? 2. Were Petitioner's convictions obtained in violation of his state and federal right to due process and a fair trial when prior uncharged acts were introduced? 3. Did it violate Defendant's due process rights when jurors observed him shackled during trial? 4. Was there sufficient evidence to convict the Defendant? 5. Was there prosecutorial misconduct during the trial in this matter?, and 6. Was Defendant's right to be free from double jeopardy violated when he was convicted of two counts of Tampering with Evidence?

10) The State filed a response to the Amended Petition on September 10, 2018.

11) A Preliminary Disposition Hearing was held on October 29, 2018.

2

12) On December 14, 2018, the Court issued an Order Denying Petitioner's Petition for Writ of Habeas Corpus.

13) In the instant *Petition*, Petitioner does not appear to assert any addition claims that he had not previously raised in prior petitions, and in fact, portions of the instant *Petition* appear to be photocopies of the previous pro se Petition, filed on June 20, 2017. Instead, Petitioner asserts that Ms. Kerr "rushed and failed to raise issues that were on my original petition." Petitioner notes that Ms. Kerr had requested a 60 day extension of time prior to filing the Amended Petition, and that the request for extension of time had been denied. Petitioner asserts that Ms. Kerr "failed to raise 3 or 4 issues" that Petitioner had raised in his previous pro se Petition, but it is unclear specifically which issues Petitioner believes have not been adequately addressed.

14) Rule 5-802(I) "Second and successive petitions: If the petitioner has previously filed a petition seeking relief under this rule, the court shall have the discretion to: (1) dismiss any claim not raised in a prior petition unless fundamental error has occurred, or unless an adequate record to address the claim properly was not available at the time of the prior petition; and (2) dismiss any claim raised and rejected in a prior petition unless there has been an intervening change of law or fact or the ends of justice would otherwise be served by rehearing the claim."

15) Therefore pursuant to Rule 5-802(G)(1), the Post-Conviction Habeas Unit, Law Offices of the Public Defender, determines that it is not a proceeding that a reasonable person with adequate means would be willing to bring at a person's own expense and defers to the Court pertaining to further appropriate action.

3

As per 5-802(H)(1) NMRA 2017, undersigned counsel submits this review for the limited purpose of said procedural rule and is not Counsel of Record on this matter.

Respectfully Submitted,

Matthias Swonger
Post-Conviction Habeas Unit
Law Offices of the Public Defender
505 Marquette Ave., NW Suite 120
Albuquerque, NM 87102
(505) 369-3581

I hereby certify that on July 30, 2019, a copy of this motion was transmitted to Counsel for Respondent and Petitioner.

Matthias Swonger, LOPD Habeas

4

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

2019 AUG 12 PM 12: 00

~~Shelly Dawge~~
CLERK DISTRICT COURT

ALBERT JOSE RAMIREZ,

  Petitioner,

vs.          No. D-0905-CR-2007-00434

STATE OF NEW MEXICO,

  Respondent.

## DECISION AND ORDER OF SUMMARY DISMISSAL

  THIS MATTER having come before the Court upon the Petition for Writ of Habeas Corpus filed by the Petitioner on June 24, 2019, and the Court being fully advised, enters its sua sponte Order and FINDS:

1. Petitioner's current Petition for Writ of Habeas Corpus was filed on June 24, 2019.

2. A copy of Petitioner's Petition was sent to the Post-Conviction Habeas Unit Law Offices of the Public Defender (hereinafter referred to as "LOPD").

3. LOPD timely filed a Notice of 5-802(H)(1) Pre-Appointment Review on July 31, 2019 (hereinafter referred to as "Notice"). LOPD's Notice is incorporated by reference herein as though fully set forth.

4. Rule 5-802(H)(1) provides for a pre-appointment review of Petitioner's Petition by LOPD. LOPD may recommend that this Court order a revised petition or may indicate "whether the petition is a proceeding that a reasonable person of adequate means would be willing to bring at a person's own expense and provide sufficient detail for further judicial review of the public defender's assessment."

1

EXHIBIT

EE

5. LOPD determined that Petitioner's Petition is NOT a proceeding that a reasonable person would be willing to bring at a person's own expense.

6. In their Notice, LOPD noted that this is the fifth pro se petition for Writ of Habeas Corpus filed by Petitioner. Petitioner's previous petitions were filed on March 22, 2017, April 25, 2017, June 20, 2017 and July 17, 2017. Additionally, on May 18, 2018, an Amended Petition for Writ of Habeas Corpus was filed on Petitioner's behalf by his habeas counsel Liane Kerr. The State filed a Response and this Court held a hearing on this Amended Petition. A twelve (12) page Order Denying Petitioner's Petition for Writ of Habeas Corpus was entered on December 14, 2018. Said Order is incorporated herein as though fully set forth.

7. In their Notice, LOPD noted that, as to his current Petition, "Petitioner does not appear to assert any additional claims that he had not previously raised in prior petitions, and in fact, portions of the instant Petition appear to be photocopies of the previous pro se Petition, filed on June 20, 2017."

8. This Court finds that LOPD provided more than sufficient detail for this Court to review its assessment.

9. This Court agrees with LOPD that this is NOT a proceeding that a reasonable person would be willing to bring at a person's own expense.

10. Rule 5-802(H) NMRA states:

> H. Second and successive petitions. If the petitioner has previously filed a petition seeking relief under this rule, the court shall have the discretion to:
> (1) dismiss any claim not raised in a prior petition unless fundamental error has occurred, or unless an adequate record to address the claim properly was not available at the time of the prior petition; and
> (2) dismiss any claim raised and rejected in a prior petition unless there has been an intervening change of law or fact or the ends of justice would otherwise be served by rehearing the claim.

11. This Court finds that, in accordance with Rule 5-802(H)(1), to the extent that any new claims were raised in Petitioner's Petition for Writ of Habeas Corpus filed on June 24, 2019, that were not raised in Petitioner's prior petitions, said claims are dismissed. This Court finds that no fundamental error has occurred and that there was an adequate record available to address the claims properly at the time of the prior petitions.

12. Further, this Court finds that, in accordance with Rule 5-802(H)(2), any identical or similar claims that were raised in the Petition for Writ of Habeas Corpus filed June 24, 2019, that were previously raised and rejected in Petitioner's prior petitions, are hereby dismissed. This Court finds that there has not been an intervening change of law or fact. This Court finds that the ends of justice would not be served by rehearing the claim.

13. Additionally, this Court finds that any claims related to ineffective assistance of habeas counsel are not supported by fact or the record in this matter. Petitioner is not entitled to relief on such claims.

## DECISION AND DISMISSAL

After examining the Petition, exhibits, prior proceedings, and based on the above reasons, this Court finds the Petitioner is not entitled to relief as a matter of law.

THEREFORE, in accordance with Rule 5-802(H)(1-2) NMRA and Rule 5-802(G)(1) NMRA, the Petition for Writ of Habeas Corpus field June 24, 2019 is DISMISSED.

HON. DREW D. TATUM
DISTRICT JUDGE, DIVISION II

3

12-501

ORIGINAL

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

S-1-SC-37887

West's New Mexico Statutes Annotated
State Court Rules
9. Criminal Forms
Article 7. Special Proceedings

NMRA, Form 9-702

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO
THE DISTRICT COURT FROM DENIAL OF HABEAS CORPUS

SUPREME COURT OF NEW MEXICO
FILED

Currentness

SEP - 3 2019

[For use with Appellate Rule 12-501 NMRA]



IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

ALBERTO J. RAMIREZ

Defendant-Petitioner,                     S.Ct. No. ........................................

                                          *(leave blank; court will assign)*

vs.

Dwayne SantiStevan                        District Ct. No. ..............................

*(Name of Warden)*

Respondent.

PETITION FOR WRIT OF CERTIORARI TO THE
_____ DISTRICT COURT OF NEW MEXICO

Alberto Ramirez

Defendant

Petitioner pro se    Alberto Ramirez
                     6900 W. millen dr
                     Hobbs NM 88244

EXHIBIT
FF

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

( 6900 W Miller ac
  Hobbs NM 88244
  address information
)

## PETITION FOR WRIT OF CERTIORARI TO THE
## 9th DISTRICT COURT OF NEW MEXICO

Defendant-Petitioner, appearing pro se and pursuant to the provisions of the New Mexico Constitution, Rule 5-802, and Rule 12-501 NMRA; petitions this Court to issue its Writ of Certiorari to review the order in:

Albert Ramirez V. Dwayne Santistevan

(your name v. Warden's name), District Court No. _____ filed on _____.

## QUESTIONS PRESENTED FOR REVIEW

Whether the district court erred in:

ITS JUDICIAL DISCRETION IN DENYING
PETITIONER AN INQUIRY INTO HIS
dispute and dissatisfaction and
irreconsible CONFlict OF INTEREST
with HIS trial COUNSEL.
SEE HABEAUS Petition
Alberto J. Ramirez U dwayne Santisicua
See attach pages 3
The Facts upon my Claims.
It maks sense to me.

FORM 9-701. PETITION FOR M. r Document 1024-5 Filed 01/22/25 M under Form 9-701

PAGE 3

page 2

3. STATE CONCISLEY THE FACTS UPON WHICH THE CONF. NCEL
PERSON BASES THE CLAIM.

THE JUDGE IGNORED PETITIONERS REQUESTS FOR
SUBSTITUTION OF COUNSEL AND DEMANDS TO FIRE HIS
ATTORNEY. TWO WEEKS BEFORE TRIAL, TWICE IN TRIAL.
PETITIONER EXPRESSED DISATISFACTION, COMPLAINED
OF COUNSEL NOT FILING MOTIONS FOR CHANGE OF VENUE.
WHEN THERE WAS INACCURATE EVIDENCE OF MR RAMEREZ
ATTACKING THE VICTIM BEFORE INCIDENT. ALSO OTHER
HIGHLY PREJUDICIAL INADMISSIBLE EVIDENCE. OF MR RAMIREZ
BREAKING WINDOWS, AND ASSAUTING BATTEY OFFICER IN
SMALL COMMUNITY OF CLOVIS, PETITIONER ALSO
COMPLAINED ABOUT BEING CONFUSED OF PROCEDURES
AND COUNSEL NOT EXPLAINING PROCEDURES. MR. RAMIREZ
PETITIONER COMPLAINED OF A SERIOUS BREAKDOWN
IN COMMUNICATION. BETWEEN COUNSEL AND PETITIONER.
PETITIONER TRIED TO COMMUNICATE TO COUNSEL
TO NO AVAIL. COUNSEL FAILED TO ADVISE PETITIONER
OF PLEA DEAL OR EXPLAIN THE MAXIMUM AND MINIMUM
TIME FACING. COUNSEL FAILED TO BE RESPECTFULL AND
RESPONSIBLE AND FUFULL HIS DUTY OF LOYALTY TO
ADVOCATE TO PETITIONER BY NOT CALLING OTHER
WITNESS PETITIONER WANTED CALLED AS WITNESSES.
COUNSEL THREATENED PETITIONER THAT IF
HE DID NOT TAKE PLEA AND KEEP ON INSISTING
TO GO TO TRIAL HE WOULD NOT PROVIDE
EFFECTIVE ASSISTANCE OF COUNSEL.

PETITIONER Told COUNSEL And PHYCHISTRIST And
Family OF Being Sexually ABUSED by VICTIM
AS A YOUNG CHILD.

COUNSEL Failed TO ALERT THE COURT THAT
PETITIONER Told HIM He FALL down JULY SAW
HIS SHACKLES AND HE FELL down. AND THAT
SHERRIFF DOCERTY Manipulated THE THREATENED
PETITIONER TO Say He did NOT Fall down And
THAT THE JURY did NOT SEE HIS SHACKLES.
PETITIONER asked COUNSEL TO Request A
MISTRIAL And TO PUT THIS ON RECORD.
COUNSEL Refused TO do it.

COUNSEL Failed to Call WITNESS'S
PRICILLA LOPEZ Nubor EYE WITNESS, and
Ricky Jaramillo EYE WITNESS TO HELP
PROVE I WAS THE ONE Being Chased
And I Shot IN Fear FOR My life I did
NOT Chase VICTIM.

COUNSEL Failed TO INVESTIGATE FAMILY
HISTORY OF MENTALL ILLNESS IN FAMILY. And
TO DEFENSE.

PETITIONER CALLED COUNSEL and WRITE
ts HIM COUNSEL WOULD NOT Speak to ME
AT ALL, and IGNORED ME TO BUSY.

COUNSEL would Not discuss trial strategy
or Anything.

COUNSEL told petitioner He Hoped He Got
Life.

PETITIONER tried to speak on Record
twice to put This on Record but
was denied.

PETITIONER Request that the court grant
Him an attorney to assist him IN
Habeaus proceedings And to Hold an
Evidentary Hearing on INeffective
assistance of Counsel Because
unfortunctly all Facts, and allegations
are Not on the record to properly
decide case.

COUNSEl PROMISED PETITIONER IF HE TESTIFIED PETITIONER would be able TO TESTIFY OF being Sexually ABuSEd by VICTIM And NEibor EuewitNESS Sen Saiz

COUNSEL Failed TO Call FATHER JOSE RAMIREZ who would OF testified victim attacked him twice and was Aggressive, AlSU BROTHER ISRAEl RAMIRE was attached by victim to show aggression.

COUNSEL KNEW I Had been drinking alcohal day OF INCIDENT and TOld ME TO NOT talk of being drunk IT would NOT HElP.

PETITIONER Had SEveral witnesses He wished to Call, to present in Support OF His defense Aunt, Sister, Brothers, Friends, doctors who Treated Him after accident. COUNSEL Failed to AlERT COURT + IMPORTANT Facts in crquing CasE. Petitioner was IN AN acciDENT in 2007 whEn began taking antideppresant Medication, & OTHER Medication THIS Became Severe depression, He was unable to walk ONly with Crutches, Suffered delisions Hallucinations. prsd.

state considers the facts upon which the confined person
bases the claim.

＊The trial court Abused its discretion In denying petitioner
request, demands to Fire or substitute counsel
① There was No Inquiry by Judge
② No consideration of issue of delay
③ The Extent of conflict created

OTHER FACTS
＊ WHETHER I Believe petitioners criminal convictions
were obtained in violation of His state And federal Right
to due process and a Fair trial, when prior charged
And uncharged acts were introduced absent a
balancing analysis under rule 11-404.B?

Evidence of Head Butted A police officer inadmissible
Evidence of letter Exist no writings of
Showing people to prove Element of premeditation

＊ Facts
Prosecutorial misconduct in closing Argument
Say mr Ramirez petitioner IS a Menace to Society
And A liar No Evidence to prove this its
Prosecutorial misconduct.
＊ Also Closing ARGUMENT Evidence on prior bad acts
on inadmissible Evidence if breaking windows, Hearing
Butt Battery on officers, And doing legal research in
Closing Argument After Judge told him
To Not use This Evidence.

Prosecutor used prior bad acts to show
Character of propensity and if Amounts
To prosecutorial misconduct

☒ Also prosecutor Cross EXAMINATION
on petitioner DoING legaL research
TO BEAT His CHARGES. They asked
Right after you did legal research to
Get the JURy to buy This. ITS
A comment on petitioners Right
TO assist in ASSIST.

OTHER Facts OF CASE

✱ HABEAUS COUNSEL Failed to discuss ISSUES
petitioner WANTED added, And ARGUED
Properly, 1st Habeaus lawyer
Amanda Srepheson Refused to Request
trial transcript OF closing ARGUMENT
Had case 6 MONTHS Would NoT
Request or File Anything or discuss
Case with Petitioner,
2nd Petitioner Liane KERR was
Substituted because of CONFlict oF
INTEREST.
Habeaus ATTORNEY RushEd Petition because
She was denied 60 day extension
reauest and did Not meet Fully
With ME. was to busy to
talk on Phone.

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

*(Complete only for issues relevant to the petition. Attach additional sheets if necessary.)*

### DESCRIPTION OF THE PROCEEDINGS

1. Please list the conviction being challenged:

FIRST DEGREE MURDER Life eligible Parole
Tampering W/ Evidence 2 Counts 3rd degree.

2. Please list any other petitions you have filed in the New Mexico Supreme Court challenging this conviction (*please include docket numbers and dates*):

No. S-1-SC-34576 8·12·17
No. S-1-SC-36599 8·11·17
No. S-SC-37501 2-5-19

3. Tell the story of what happened in your court case:

I asked to Substitute Counsel 2 weeks before trial, during trial expressed dissatisfaction. No INQUIRY INTO COMPLAINTS Promised If I did Testify I could talk of Molskine. ⑤ INadmissible evidence Used A note saying Id Kill in the future NO proof I wrote it.

C.    FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

Ju'y saw me shackled And I fell, told trial.

Counsel to No avail. D. prosecutorial Misconduct

in cross examination asking about legal research two

Questions. And in closing argument used inadmissible

evidence battery on a officer a note saying of

Killing people. E. INEFFECTIVE ASSISTANCE on Habeas

by Habeas attorney liane. E. Kerr And Amanda Stephenson.

(Petition Filed without talking to me First.)

**BASIS FOR GRANTING THIS PETITION FOR WRIT OF CERTIORARI TO THE DISTRICT COURT**

The decision of the district court on my petition for writ of habeas corpus, filed pro se, raises significant questions of law under state and federal constitutions: whether the errors below deprived petitioner's rights guaranteed by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments and by New Mexico Constitution, art. II, §§ 13, 14, 15, and 18.

## ARGUMENT

*(Describe your legal claim and cite the law (cases, statutes, constitutional sections) that supports your position. Use plain language.)*

POINT 1:    A. INEFFECTIVE ASSISTANCE OF trial

Counsel Failed And trial court abused its

disciretion IN denying petitioner an Inquiry

Into His dissatisfaction conflict of Interest with

His attorney. CASE → U.S. V. ADELZO-GONZALES

Cite as 268 F.3d 772 (9th Cir 2001)

WILSON v. Minitzes cite as 761 F.2d 275 (1985)

Frazer. V. U.S. cite as 18 F.3d 778 (9th cir 1994)

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

**B.** Prior bad acts Facts
POINT 2:

The prosecutor used Evidence it was inadmissble
Battery on a Peace OFFICER in cross Exam and clasing
argument. Also used cross Examination in asking
Question doing legal research, comment on 6th admited Right
also used Note in closing argument about shooting
people and said I am a Menace to society and
liar No Evidence to support it.

**C.** Shackles Error.
POINT 3:

The Jury seen me shackled and fall down. I
Told my lawyer to tell cart to No avail. See —
state v. Brawley Cite. as. 137 A.3d. 757
Conn. 2016. it said cowt ruled to let
defendant to show Jury did in Fact see
Him in shackles. Federal right to fairtrial

*(Attach additional sheets, if necessary.)*

### REQUEST FOR RELIEF

Prosecutorial Misconduct

IN Cross Examination asked about
Me headbutting an Officer, Then
asked me about doing legal research
on How to beat my charges twice.
And IN Closing argument that were
INadmissible I RRElevaNT Evidence on
Prior bad acts about a letter Exibit
No Saying To Kill in The Future and
about breaking Victims Windows and called
me a Menace to Society and a lier No proof.
Washington V. HoFbauger. Cite as 228 F.3d. 689
6th cir 2000
U.S. V. Francis Cite as. 170 F.3d 546 (6Th Cir)
(1999)
State V. J.d. byRider. Cite as 228 F.3d. 709
6th Cir 2000
Other cases in those cases are
Cross Exam - Relevant To my case
- and Closing argument Connects on prior bad
acts INadmissible amounted to Prosecutorial
Misconduct

E. INEFFECTIVE ASSISTANCE OF
   HABEAUS COUNSEL.
        MS. AMANDA. M. STEPHENSON
   and. MS. Liane. E. Kerr.
   • I asked Both To Get trial Closing
   argument transcript on paper and iNK But
   No. I was denied ignored by them.
   I asked them to File HABEAUS on district
   Court erred in its Judicial discretion IN
   denying Petitioner an Inquiry into His dispute
   and dissatisfaction and irreconsible Conflict
   OF INTEREST with Counsel.                    Exhit 110
   • Closing argument inadmissible evidence about letters
   talking of shooting people                    and
   • Cross Examination on headbut a officer
   doing legal research.
   • Closing argument counsel Menace to Society and a
   Liar No proof to use this, Evidence
   Incadmissible   No objection From lawyer.

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NMI R CR Form 9-702

Defendant-petitioner requests that this Court issue its writ of certiorari to the district court, and:

(W) remand to the district court for a full hearing on the petition, OR

(W) reverse the conviction, OR

(W) remand to the district court to correct the sentence, OR *an attorney to assist*

(W) (other) *Corew't Evidentary growt* *in proceeding),*

Petitioner asks this Court to grant such relief as may be appropriate. As required by Rule 12-501 NMRA, I am filing only the original copy of this petition and I have attached the following:

(W) a copy of my petition for writ of habeas corpus filed in district court, AND

(W) a copy of the state's response, if one was filed, AND

(W) a copy of the district court's order.

(W) I have not attached the required documents because *distinct courts order* *IT WAS LOST States response And* *on Trewsport and in Segregation. Sir*

and ask the Supreme Court to accept this petition without the attachments.

Respectfully submitted, *Alberto Ramirez 69597*

Defendant-Petitioner, pro se

I hereby certify that a copy of this petition was mailed to the Attorney General's Office, P.O. Box 1508, Santa Fe, New Mexico 87504-1508 on this *26* day of *2019*.

*Alberto Ramirez 69597*

Defendant-Petitioner, pro se

Credits
[Adopted effective Dec. 31, 2014.]

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

ALBERT JOSE RAMIREZ,

        Petitioner,

vs.                                    No.    D-0905-CR-2007-00434

STATE OF NEW MEXICO,

        Respondent.

## DECISION AND ORDER OF SUMMARY DISMISSAL

THIS MATTER having come before the Court upon the Petition for Writ of Habeas Corpus filed by the Petitioner on June 24, 2019, and the Court being fully advised, enters its sua sponte Order and FINDS:

1. Petitioner's current Petition for Writ of Habeas Corpus was filed on June 24, 2019.

2. A copy of Petitioner's Petition was sent to the Post-Conviction Habeas Unit Law Offices of the Public Defender (hereinafter referred to as "LOPD").

3. LOPD timely filed a Notice of 5-802(H)(1) Pre-Appointment Review on July 31, 2019 (hereinafter referred to as "Notice"). LOPD's Notice is incorporated by reference herein as though fully set forth.

4. Rule 5-802(H)(1) provides for a pre-appointment review of Petitioner's Petition by LOPD. LOPD may recommend that this Court order a revised petition or may indicate "whether the petition is a proceeding that a reasonable person of adequate means would be willing to bring at a person's own expense and provide sufficient detail for further judicial review of the public defender's assessment."

1

5. LOPD determined that Petitioner's Petition is NOT a proceeding that a reasonable person would be willing to bring at a person's own expense.

6. In their Notice, LOPD noted that this is the fifth pro se petition for Writ of Habeas Corpus filed by Petitioner. Petitioner's previous petitions were filed on March 22, 2017, April 25, 2017, June 20, 2017 and July 17, 2017. Additionally, on May 18, 2018, an Amended Petition for Writ of Habeas Corpus was filed on Petitioner's behalf by his habeas counsel Liane Kerr. The State filed a Response and this Court held a hearing on this Amended Petition. A twelve (12) page Order Denying Petitioner's Petition for Writ of Habeas Corpus was entered on December 14, 2018. Said Order is incorporated herein as though fully set forth.

7. In their Notice, LOPD noted that, as to his current Petition, "Petitioner does not appear to assert any additional claims that he had not previously raised in prior petitions, and in fact, portions of the instant Petition appear to be photocopies of the previous pro se Petition, filed on June 20, 2017."

8. This Court finds that LOPD provided more than sufficient detail for this Court to review its assessment.

9. This Court agrees with LOPD that this is NOT a proceeding that a reasonable person would be willing to bring at a person's own expense.

10. Rule 5-802(H) NMRA states:

> H. Second and successive petitions. If the petitioner has previously filed a petition seeking relief under this rule, the court shall have the discretion to:
>> (1) dismiss any claim not raised in a prior petition unless fundamental error has occurred, or unless an adequate record to address the claim properly was not available at the time of the prior petition; and
>> (2) dismiss any claim raised and rejected in a prior petition unless there has been an intervening change of law or fact or the ends of justice would otherwise be served by rehearing the claim.

2

11. This Court finds that, in accordance with Rule 5-802(H)(1), to the extent that any new claims were raised in Petitioner's Petition for Writ of Habeas Corpus filed on June 24, 2019, that were not raised in Petitioner's prior petitions, said claims are dismissed. This Court finds that no fundamental error has occurred and that there was an adequate record available to address the claims properly at the time of the prior petitions.

12. Further, this Court finds that, in accordance with Rule 5-802(H)(2), any identical or similar claims that were raised in the Petition for Writ of Habeas Corpus filed June 24, 2019, that were previously raised and rejected in Petitioner's prior petitions, are hereby dismissed. This Court finds that there has not been an intervening change of law or fact. This Court finds that the ends of justice would not be served by rehearing the claim.

13. Additionally, this Court finds that any claims related to ineffective assistance of habeas counsel are not supported by fact or the record in this matter. Petitioner is not entitled to relief on such claims.

## DECISION AND DISMISSAL

After examining the Petition, exhibits, prior proceedings, and based on the above reasons, this Court finds the Petitioner is not entitled to relief as a matter of law.

THEREFORE, in accordance with Rule 5-802(H)(1-2) NMRA and Rule 5-802(G)(1) NMRA, the Petition for Writ of Habeas Corpus field June 24, 2019 is DISMISSED.

HON. DREW D. TATUM
DISTRICT JUDGE, DIVISION II

3

S-1-SC- 37887                    2017

**Exhibits**

FIRST HABEAUS JUNE 20th

granted HABEAUS lawyer

But HABEAUS Failed to

raise ISSUES and grounds

so I sud NEW HABEAUS

Asking the court FoR a

NEW attorney to

assist IN HABEAUS

proceedings

1st original petition argued

I had conflict of

interest with trial

counsel

SUPREME COURT OF NEW MEXICO
FILED

SEP - 3 2019

TO: NEW MEXICO Supreme Court
CLERK The 9th. JUDICIAL
district court clerk Made
a mistake the petition is
the new one by alberto Ramirez
J. Dwayne Santisteven. at The
lea County correctional Facility.
I Don't have money to make Copies
or Resend it. the Courts + Judges Know
Please let the courts + Judges Know 6.24.19
Know shelly burger Filed Stamped. Thank
10. am 38 Minutes it was wrong.
You For Your time. God Bless.
Please
respond

she got it
Confused.

Sincerly,
Alberto
Ramirez
6.22.19

COURT LETTER

9th district court

ATTENTION COURT CLERK

Address.

6-7-19

IN RE: Alberto. J. Ramirez

U.S. NEW MEXICO   CR#_____

Dear court clerk

ENCLOSED

~~Enclosed~~ please Find 2 copies of
my HABEAUS CORPUS PETITION. According to
NEW RULES 5-802 HABEAUS CORPUS. under
6(1)... upon RECIEPT of THE petition.
THE CLERK of the court Shall Immediatly
forward. A FILE - stamped copy of the
Petition and any attachments to the
district aTTORNEY and TO THE public
deferder department post - CONVICTION Unit o
~~subparagra~~.
Mailing copies of The Petition in accordance
with subparagraph and . with a completed
cerrhficate of mailing Shall constitute
SERVICE ON The respondent by the CLERK
of the court in accordance with RULE - 5-103,
5-103.1, or .5-103.2. NMRA
please Send me back a copy Filed
stamped Because under NEW RULES Incarcerated
defendants therefore Indigent.   Sincerry
Alberto Jose
Ramirez

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

NINTH JUDICIAL DISTRICT
CURRY COUNTY NM
FILED

2019 JUN 24  AM 10: 58

CLERK DISTRICT COURT

West's New Mexico Statutes Annotated
  State Court Rules
    9. Criminal Forms
      Article 7. Special Proceedings

NMRA, Form 9-701

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS

Currentness

[For use with District Court Criminal Rule 5-802 NMRA]

STATE OF NEW MEXICO

COUNTY OF CURRY

IN THE DISTRICT COURT

For Official Use Only

D-0905 CR 020 07 00 434
No. _____

(To be supplied by the clerk of the court)

ALBERT RAMIREZ

(Full name of prisoner)

Petitioner,

v. WARDEN. DWAYNE Sawitskewku

WARDEN GERMAN FRANKO

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.



being included. If you are currently incarcerated, you may file the petition without payment of the filing fee. If you are not incarcerated and are seeking free process, complete Form 9-403.

Finally, you must complete the certificate of service and mail or otherwise serve copies of this petition on the respondent and the district attorney in the county in which the petition is filed. You must file the original petition and one copy with the Clerk of the District Court. You should keep a copy for your own records.

## PETITION FOR WRIT OF HABEAS CORPUS [1]

1. ALBERT JOSE RAMIREZ _ (name of person in custody) is imprisoned or otherwise restrained at Lea County. CoRR. (name of facility and county of detention) by _____ (name and title Fucility of person having custody).   DWAYNE SANTESTEVAN

2. This petition

[W] seeks to vacate, set aside or correct an illegal sentence or order of confinement (i.e., ineffective assistance of counsel, illegal search and seizure, involuntary confession, or other matters relating to the trial or sentence the confined person received).

[W] challenges confinement or conditions of confinement or matters other than the sentence or order of confinement. (*This applies only to matters arising after the confined person arrived at the institution, i.e., county jail confinement, mental hospital confinement, detention facility confinement, good time credit, misconduct report, prison due process violation or parole*).

3. State concisely the facts upon which the confined person bases the claim:

ISSUE 1:
INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL, APPELATE COUNSEL, AND HABEAUS COUNSEL ON AMENDED PETITION.

ISSUE 2. DISTRICT COURT ERRED IN ITS Judicial DISCRETION IN DENYING PETITIONER MR RAMIREZ AN INQUIRY INTO HIS dispute AND IRRECONSILIBLE CONFLICT with PETITIONERS COUNSEL, PLEASE SEE ATTACH PAGE TO EXPLAIN FACTS THANK YOU.

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

**4. State concisely the grounds and law, or other legal authorities on which the confined person bases the claim:**

I DONT KNOW WHAT THIS MEANS. ILL TRY MY BEST.

I BELIEVE its MY Constitutional RIGHTS TO A FAIR tRIAL AND TO EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL, ON APPEAL, and HABEAS petition, SEE ATTACH PAGES TO Explain FACTS And Evidence And Exibits. And OTHER Grounds and basis of Claims.

**5. Have the grounds being raised in this petition been raised previously in your direct appeal? If so, explain the result. If not, explain why not:** NO and

YES SOME where, But HABEAS ATTORNEY was Rushed and Failed TO raise Issues that were on my Original petition. HABEAS ATTORNEY Requested A 60 DAY EXTENSION And was denied. SHE did NOT Fully MEET with petitioner.

**6. Have the grounds raised in this petition been raised previously in another petition for a writ of habeas corpus? If so, explain the result. If not explain why not:** NO grounds have NOT BEEN Raised And

Yes, SOME NOT BECAUSE HABEAUS ATTORNEY was Rushed And Failed TO raise 3 OR 4 ISSUES ON MY ORIGINAL petition And Failed to attach documents. HaBeaus Lawyer Requested 60 day extension But was denied.

**7. Briefly describe the relief requested:**

WANT an Evidentiary HEARING appointed HaBeaus ATTORNEY TO ASSIST IN HABEAUS PROceedings, A RETRIAL.

Form 9-701 petition for page 3
writ of Habeaus corpus of
NM, R, CR form 9-701

(4)

State concisely the Grounds

and law, or other legal authorites

on which the confined person

bases the claim.

See attach papers.

FACTS + TRANSCRIPTS + Record +
NEWS paper clippings + Some discovery
TO PROVE Claims and Facts OF
Grounds And ISSUES.

2 ① INEFFECTIVE ASSISTANCE OF TRIAL
COUNSEL. CONFLICT OF INTEREST OR Irreconsilbe
CONFliCt

2 2 . WHETHER THE TRIAL Court ABUSED
its discretion IN denyING MR
RAMIREZ Request and demand to
FIRE Or Substitute OF COUNSEL.
① THERE WAS NO INQUIRY ② NO
Consideration OF lught OF delay TO
Substitute COUNSEL ③ THE EXTENT
OF CONFlict CREATEd.

b. WHETHER PETITIONER'S CRIMINAL
CONVICTIONS WERE Obtained IN UIolation
OF His State and federal Right
to due process and A Fair trial
When Prior uncharged acts WERE
INTROduced absent a balacing
analysis under RULE 11-404. B ?

c Shackles SEEN by Jury and Petitioner
Fell. down. SEE. STATE V. Brawley
Cite as. 137 a. 3d. 757 (Conn. 2016.

D. THE COURT abused its discretion
in Not declaying A mistrial on
comments of prosecutorial miscondunt
in Cross examination, And
during closing Arguments.
    See exibits. documents Need transcript
    also.
E.                          Things on record
MR RAMIREZ PETITIONER
was DENIED EFFECTIVE
ASSISTANCE of HABEAUS AMENDED
PETITION COUNSEL.
    SEE EXIBITS. Facts. documents.

F. THE Errors all TOGETHER added up
To Cumulative Error And daied
petitioner of a fair trial
And denial of due process.


    SEE EXibiTS, documents
    Records Notes.
        To prove claims.

I would Like To Able To properly present
ISSuss And Grounds To prove my claims.
please Thank you.

8. State the nature of the court proceeding resulting in the confinement (*i.e.,* *criminal prosecution, civil commitment, etc.*), including:

(a) case name:

STATE OF NEW MEXICO US. Alberto J. RAMIREZ

(b) docket number:

D-0905 -CR - 2007 - 00434

(c) name of judge:

TEddy L. HARTLEY

(d) name and location of the court in which the proceeding was held:

700. N. MAIN ST Clovis NM 88101

9. State the date of the final judgment, order or decree for confinement:

January 8th 2014.

10. Attach a copy of the judgment, order or decree. If not, describe your sentence.

......................................................................................................................

11. Was the conviction the result of:

___ Guilty plea

___ No Contest plea (*nolo contendere*)

✓ Finding of guilty by judge or jury

12. Was the confined person represented by an attorney during the proceedings resulting in the confinement?

✓ Yes

_____ No

13. If you answered "yes" to (12), list the name and address of each attorney who represented the confined person:

.......... JESSE R. COSBY ..........................................................

.......... P.O. BOX 3330 ROSWELL NM 88201 ..........

14. Did you appeal your conviction?

✓ Yes *(Go to 15)*

___ No *(Go to 16)*

15. If you answered "yes" to (14), list:

(a) The name of each court to which an appeal was taken:

9th Judicial district court AND NEW Mexico Supreme court OF Appeals.

(b) The case name and docket number for each appeal:

STATE OF NEW MEXICO US. AlbeRTO jose RAMIREZ

No- S-1-Sc-34576

(c) The date each appeal was filed and decided: (*Attach a copy of each opinion or order*)

Filed AUGUST 2014 DONT KNOW EXACTODAY

Decided december 1st 2016

(d) A summary of the grounds upon which each appeal was based:

Competency reevaluction, ineffective assistance of Counsel

Improper comments on silence, prosecutorial misconduct,

Prior bad acts, Shackles Error, Judge failed to grant

Misrial due to prosecutorial misconduct

(e) The result of each appeal:

DENIED AFFIRMED

(f) The name and address of the attorney on appeal:

STEVEN J. FORSBERG

505 MARQUETTE N.W  87102

505-796.4405

**16. If you answered "no" to (14), state the reasons for not appealing:**

**17.** Apart from any appeals listed in (15), have any other post conviction applications, petitions or motions, been filed with regard to this same imprisonment or restraint?

✓ Yes *(Go to 18)*

___ No *(Go to 19)*

**18. If you answered "yes" to (15), list with respect to each such petition or motion:**

(a) The type of proceeding:

HABEAS petitions, Pention OF Certoreri denier Now
I come BACK with New HABEAS CORPUS petition Issued.

(b) The name and date of each case:

STATE OF New MEXICO US. Alberto Jese Ramirez

(c) the docket number:

No- D- 0905- CR- 2007 - 00434

Form 9-701 petition. For Writ of
Hobeas Corpus, NM R. CP
Form 9-701

See Page 8. (F)

F. N.M. Supreme court. Ineffective assistance of Counsel, improper commentary on Right to Remain Silent the jury saw him in shackles and Fall. Improper introduction on prior bad acts. Judge refused to declare a mistrial due to prosecutorial Misconduct on Amended petition - whether was denied 6th Amended Right to effective assistance of counsel And compulsory process

6. A disposition HEARING
Was Scheduled But Hobeas Denied.

(d) the court, the administrative agency, or institutional grievance committee from which relief was sought:

9th Judicial district court of clovis NM 88101

(e) the result of each proceeding. (*Attach a copy of each decision.*)

Denied    I DONT Remer I have ONE. Sorry

(f) The issues raised in each proceeding:

Ineffective assistance of counsel, prior bad acts, prosecutional misconduct, Incompetency reevaluation, double jeopardy Tampery w/evidence

(g) State whether a hearing was held in connection with each of these proceedings:

ON Habcous Amended petition While represented by Habcous attorney a disposition Hearing

(h) State whether the confined person was represented by an attorney in each proceeding and, if so, the attorney's name and address:

Albuquerque NM

In appeal STEVEN U FoRSBERG 5-5 MARQUETTE NW 87102

ON Habeaus petition   Liwe E KERR PO. BOX 10791

Albuquerque NM 87184-0791

19. Do you seek the appointment of counsel to represent you?[2]

√ Yes

___ No

## VERIFICATION

STATE OF NEW MEXICO

COUNTY OF ....Curry Lea....................................................

I, the undersigned, being first duly sworn upon my oath, state that I am the petitioner in this action. I have read the foregoing petition and know and understand its contents, and the information contained herein is true and correct to the best of my knowledge, information and belief. On _6/5_, _2019_ (date), I deposited this petition in the internal mail system of the institution in which I am confined, properly addressed with any necessary postage prepaid, for forwarding to the district court at the following address:

9th Judicial district court
___ Court (name of court)

Clovis (city), New Mexico, 88101 ___ (zip code).

.....Alberto J. RAMIREZ.....................
(
Signature
)   Alberto J. Ramirez
(
Address
)  6900 B W. Millen dR. HobbS. N.M 88244
PNM No., if applicable
SUBSCRIBED AND SWORN TO before me this 5th day of _June_, _2019_ by

................................................................

(Name of petitioner) Alberto J. Ramirez

Dwayne Burris
................................................................
Notary Public

OFFICIAL SEAL
DWAYNE BURRIS
Notary Public
State of New Mexico
My Comm. Expires 11/30/2021

......................................................................................................................

My Commission Expires: 11/30/2021

## CERTIFICATE OF SERVICE

I hereby certify that true copies of the foregoing petition were served upon the respondent and the district attorney in the county in which the petition is filed by __Mail__ (*describe manner of service*), this 11th day of June, 2019

......................................................................................................................

(
*Signature of petitioner*
)    Alberto J. Ramirez

**USE NOTE**

**Credits**
[Adopted effective Aug. 1, 1989. Amended effective May 6, 2009; Dec. 31, 2014.]

**Footnotes**

1    After this petition is reviewed by the Court, the Court will enter the order granting or denying the writ or ordering a response before further action. The order shall be prepared by the Court.

2    Petitioners who are incarcerated at the time of filing the petition need not file a motion for free process and may file the petition without payment of the applicable filing fee. *See* Rule 5-802(D)(2) NMRA

NMRA, Form 9-701, NM R CR Form 9-701

State court rules are current with amendments received through August 1, 2017.

End of Document    © 2017 Thomson Reuters. No claim to original U.S. Government Works



# THIS PAGE

# INTENTIONALLY

# LEFT

# BLANK

Ground A.
(a) # and (A2) PAGE 1
                    TOGETHER

TRIAL COUNSEL TOLD MR. RAMIREZ THAT
He WOULD NOT PROVIDE EFFECTIVE
ASSISTANCE OF COUNSEL IF I MR.
RAMIREZ CONTINUED TO INSIST ON
GOING TO TRIAL AND WOULD NOT
TAKE THE PLEA. "ALSO TRIAL COUNSEL
DID NOT EXPLAIN THE MINIMUM AND
MAXIMUM TIME MR. RAMIREZ WAS FACING,
MR. RAMREU ALSO TRIED TO FIRE HIS
ATTORNEY ONCE IN FRONT OF THE
JURY IN MIDDLE OF TRIAL.
COMPLETE BREAKDOWN IS COMMUNICATION.
THE DISTRICT COURT Abused its discretion
IN THE fact the Judge NEITHER QUESTION
The trial attorney OR MR RAMIREZ
PROPERLY NOR IN depth of to the
dissatisfaction AND OF THE COMPLAINTS
and Request to Change Substitute
COUNSEL.
ALSO. Judge court did NOT INQUIRY
INTO MR. Ramirez Request.

Ground 2                    page 2

The Judge does not even appear
to have considered the length of
delay that would have been
necessary to substitute a
new attorney. The fact that
the Jury pool was ready for
selection does not automatically
outweigh Mr. Ramirez 6th
amendment right.
The Judge ignored the problems
between Mr. Ramirez and his
attorney. Connecting he was being
well represented and would not
substitute counsel.

1. Under standards for denying a
motion to substitute counsel.
the district court erred.
I want the court to review
the denial of a motion or request
for substitution of counsel for
abuse of disteretion.

Turn page →

Ground A                    PAGE 3

SEE United States U. CORONA - GARCIA,
210 F.3d 973, 976 (9th Cir
2000), Cert. denied, 531 U.S 898
121 S.Ct. 231, 148 L.E.d. 2d. 165
(2000).
IN Reviewing a denial of
Substition of Counsel.
① The timelensss of the motion
② The adecuacy of the trial
   Couers Inguiry
③ THE EXTENT of conflict created
IN MR. Ramirez case The Judge
failed to adequatly balence MR
Ramirez 6th admendment Rights against
any INconvinence and delay
from granting a Continuebe.

Also, I Bring This as not a
Lawyer.
Issue Maybe irreconsible conflict
OR Conflict of INTEREST
and abuse of discretion.

        Thank you  ⇒

Ground A                    PAGE 4

SEE. U.S. ADELZO - GONZALEZ
Cite as 708 F.3d. 772
(9th Cir 2001)

• ABSENT Compelling purpose. It is
  Violation of Sixth Amendment to
  deny motion to Substitute
  Counsel : is error that must
  be reversed. regardless of whether
  Prejudiced results.

MR. Ramirez States. trial counsel
used bad language threatened to
provide effective assistance of
counsel if mr. ramirez insisted
to GO TO TRIAL, instead of
taking plea.
Trial called MR Ramirez A
a lying stupid mexican son
of a Bitch. and Hoped mr.
ramirez Gets life.

page 5   Ground 2

THIS IS EXTRA INFORMATION
THAT NEEDS TO BE READ FOR THIS
PETITION.

TRIAL COUNSEL DENIED A failed to
PROVIDE EFFECTIVE assistance of
COUNSEL.

TWO WEEKS BEFORE TRIAL ML.
RAMIREZ REQUESTED SUBSTITUTE of
COUNSEL AND EXPRESSED
DISSATISFACTION and that there
was A breakdown in communication

SEE CASE TRUNG TRAN NGUYEN
V. UNITED STATES OF AMERICA
  NO. 00-10272
  United States court OF appeals
  Ninth Circuit
  Submitted Dec. 12, 2000
  Filed August 28th 2001

TURN PAGE →

page 6. 6 ground 2.

Under the standards for denying a
Motion to Substitute Councel the
district court Erred.
United States v. Corona - Garcia, 210
F.3d. 973, 976 (9th cir 2000). Cert,
denied, 531 U.S. 898, 121. S-at.
731, N&L E. d. 2d. 165. 2000.
In denying Substitution of Counsel.
The court should of Considered
① The timeliness of the Motion
② The adequacy of the trial courts
Inquiry; and the extent of conflict
Created.
With regard to timeliness, as mentioned
above the district Judge failed to
adequatly balance Mr. ramirez 6th
amendment Rights any Inconvenience
and delay From granting the continuance.
Moore, 159, F.3d. at 1166    In Mr.
ramirez case the District court Judge
Did not even appeal to consider
the lenght of delay that would
have been

IT WAS INEFFECTIVE ASSISTANCE
FOR TRIAL ATTORNEY TO NOT OBJECT
to closing Argument inadmissible
Evidence Presented. BATTERY on officer,
Exibit No Letter stating of Shooting
People killing people,
Broken Windows, And INEFFECTIVE
ASSISTANCE OF HABEAS COUNSEL
Not Arguing this in amended
petition.

Ineffective assistance of counsel . . .
in fact that Mr. Ramirez had a conflict
of interest with his trial attorney
And expressed dissatisfaction in requesting
substitution of counsel /or to fire him

St v. A. Ramirez - CR07-434                                    COURTROOM ONE

| Time | Speak | Note |
|------|-------|------|
| 9.32/20 AM | CT | COURT IN SESSION/COURT REMARKS<br>PARTIES PRESENT/PURPOSE OF HEARING - TRIAL STARTS A WEEK FROM TODAY |
| 9.32.43 AM | | CT RECEIVED 2 LETTERS FROM DEFENDANT, BUT DON'T HAVE COPIES OF LETTERS, DA DIDNT BRING COPY EITHER. SHARE WITH ME YOUR CONCERNS |
| 9.33.08 AM | JC | DEF IS ON THE LINE WITH US. DEF CAN HEAR PROCEEDINGS. LETTERS FROM DEFENDANT. I MET WITH HIM AT THE PRISON, HE WANTED NEW COUNSEL, HE WOULD HAVE TO MOTION THE COURT AND YOU WOULD HAVE TO DETERMINE. |
| 9.33.53 AM | CT | DOES DEF FEEL FREE TO RELAY CONCERNS |
| 9.34.05 AM | DEF | I FEEL THAT COUNSEL HAS NOT FULFILLED DUTIES AS MY ATTY, HAS NOT LET ME KNOW ABOUT ANYTHING GOING ON IN COURT. BEEN CONFUSED AND HE DOESN'T EXPLAIN THINGS TO ME. I ASKED HIM TO FILE MOTIONS FOR PHYSICAL EXAMINATION, LEFT LEG SHORT, UPPER BODY IS CROOKED, LIMITED DISABILITY BEEN THIS WAY BEFORE ACCIDENT. I ALSO EXPLAINED FOR PSYCH EVAL SUFFERED BEFORE ACCIDENT AND CRIME, SUFFER FROM DELUSIONS, HALLUCINATIONS, DEPRESSION. LAST TIME I WAS ASSAULTED BY EMPLOYER AT HOSPITAL, ONE OF THE REASONS I BELIEVE HE LIED TO COURT ABOUT ME, I WASN'T COOPERATING, MALINGERING I'VE BEEN FOUND W/MENTAL AND PHYSICAL ILLNESS. I TALK TO DR FINK AND HE SAID THE STATES JOB IS TO FIND ME COMPETENT. THEY WANT ME COMPETENT TO SEND ME TO TRIAL NOT FAIR TO TALK TO ME ABOUT NOTHING |
| 9.36.39 AM | DEF | DON'T FEEL I WAS PROPERLY EVALUATED, ALSO, NEUROLOGICAL EXAMINATION, SEVERLY ILL, MENTALLY AND PHYSICALLY FEEL COURT DOESN'T CARE ABOUT THAT COUNSEL HAS NOT FILED MOTIONS, I WANTED PRIVATE INVESTIGATOR CASE WORKER HAS BEEN HERE, CALLING FOR ME, THEY WERE BUSY, COUNSEL NOT IN, GIVING ME A RUN AROUND I TOLD COUNSEL I WANTED TO KNOW WHAT WAS GOING ON WITH MOTIONS AND INVESTIGATOR I DIDN'T KNOW WHEN I WAS GOING TO TRIAL. I DIDN'T HAVE ENOUGH TIME TO PREPARE FOR MY CASE DRS TREATED ME THAT SAID I WAS DISABLED BEEN IN WHEELCHAIR FOR 2 YRS DON'T KNOW THE DRS I WANTED NEW COUNSEL HE SAID THEY PROBABLY WOULDN'T LET ME HAVE NEW COUNSEL. FEEL LIKE I'M GOING TO LOOSE THIS CASE HE HASN'T TALKED TO ME ENOUGH ABOUT THIS CASE |

St v. A Ramırez - CR07-434                              COURTROOM ONE

| Time | Speak | Note |
|------|-------|------|
| 9 38 59 AM | DEF | I'M DISSATISFIED  THANK YOU FOR LETTING ME SPEAK  WANT TO ANNOUNCE THAT IF I COULD POSTPONE THE COURT, GET NEW ATTY. IF YOU WOULD BE WILLING TO, BUT IF NOT I WILL GO TO COURT WITH HIM  IF I LOOSE THIS CASE, DON'T WANT HIM TO BE MAD AT ME OR LOOSE CASE FOR ME, ASKING FOR NEW ATTY  NOT DOING HIS DUTIES AS ATTY  THAT IS HOW I FEEL  I SAID IT AND I JUST FEEL HE MIGHT LOOSE THIS CASE FOR ANY REASON  I DON'T HAVE A GOOD FEELING ABOUT GOING TO TRIAL  THANK YOU, THAT'S ALL I HAVE TO SAY |
| 9 40 29 AM | CT | ANY OTHER COMMENTS - NONE  LET ME ASSURE YOU OF SOME THINGS.  FILE DEMONSTRATES THAT ATTY WOULD AND SHOULD DO IN YOUR CASE, HE IS A PROFESSIONAL AND WILL WORK AS HARD AS HE CAN  HE WONT BE MAD AT YOU FOR TRYING TO CHANGE LAWYERS. HE IS A SEASONED TRIAL LAWYER  CAN'T THINK ANYONE WHO WOULD DO YOU A BETTER JOB, YOU ARE AS WELL REPRESENTED AS YOU CAN BE  DON'T WANT YOU TO BELIEVE YOU WON'T GET A FAIR TRIAL  BASED ON THAT, COURT WON'T SUBSTITUTE COUNSEL AT THIS JUNCTURE  GO TO TRIAL |
| 9 41 52 AM | DEF | NO WAY I CAN POSTPONE COURT |
| 9 42 00 AM | CT | THE FILE IS OLD AS YOU KNOW IT  DON'T THINK WITNESSES WOULD BE SURPRISES. LEGITIMATE WITNESS WILL BE HERE FOR TRIAL  THAT WILL BE TAKEN CARE OF  DON'T BLAME YOU FOR BEING CONCERNED |
| 9 42 38 AM | DEF | ANY WAY THE DR CAN EXAMINE ME, FEEL I AM ILL  DON'T FEEL YOU WANT TO GIVE ME A CHANCE |
| 9 42 54 AM | CT | YOU HAVE BEEN EXAMINED, YOU HAVE COMPLAINTS, WE ALL HAVE THEM  THE COMPLAINTS YOU HAVE VOICED, AND DRS EXAMINED YOU SAY YOU ARE ABLE TO GO TO COURT  YOU ARE ABLE TO GO TO TRIAL AND ABLE TO PROCEED AND THAT IS WHAT WE WILL DO |
| 9 43 32 AM | DEF | NO WAY TO POSTPONE THE COURT |
| 9 43 38 AM | CT | NO REASON TO DO THAT, ALL PREPARED  IT WILL BE ON MONDAY. |
| 9 43 50 AM | DEF | THANK YOU TO COSBY, AND DA - |
| 9 44 08 AM | CT | WHAT YOU GOT IS NOT THE WAY IT IS. SUPREME COURT HAS APPT ME TO THIS CASE |
| 9 44 24 AM | DEF | I WANT YOU ON THIS CASE, YOU KNOW WHAT I WAS GOING THROUGH |
| 9 44 37 AM | CT | I WAS THERE THAT WE HAD THE HEARING. THE PLEA  REMEMBER YOU WERE CRYING |
| 9 44 52 AM | DEF | ALWAYS BEEN REMORSEFUL  WHEN BRETT CARTER GAVE ME EXTRA YEARS  I'M SORRY I WITHDREW MY PLEA |

Counsel
did not Explain this to me

1   following.

2          (1) the nature of the charge to which the plea is offered,

3          (2) the mandatory minimum penalty provided by law if any, and
4          the maximum possible penalty provided by law for the offense to which
5          the plea is offered, including any possible sentence enhancements

6   (Emphasis added ) In order to ensure that the defendant understands "the nature of

7   the charge[s]," *id* , the district court must be satisfied that the defendant understands

8   the essential elements of the charges that are subject to the plea. *See Garcia,* 121

9   N.M. at 548, 915 P.2d at 304. A related requirement directs the district court to

10  "[make an] inquiry as shall satisfy it that there is a factual basis for the plea." Rule

11  5-304(G) NMRA, *State v Willis,* 1997-NMSC-014, ¶ 9, 123 N M 55, 933 P 2d 854

12  Finally, the record must contain an "affirmative showing that [the] plea was

13  knowingly and voluntarily given." *Garcia.* 121 N.M at 547, 915 P 2d at 303; *see*

14  *also Boykin,* 395 U.S at 242-43

15  {10}   At the January 2009 plea hearing in this case the district court tried to satisfy

16  the requirements of Rules 5-303(F) and 5-304(G) by establishing, inter alia, a factual

17  basis for the charges and engaging Defendant in an exchange intended to confirm the

18  knowing, intelligent, and voluntary character of his plea At the beginning of the plea

19  hearing, the judge asked Defendant whether he understood the charges The district

6

RP347

1  right to a jury trial and the right to confront one's accusers  *Id*  at 242-43, *State v*
2  *Montler*, 85 N.M  60, 61, 509 P 2d 252, 253 (1973). In addition, "we review the trial
3  court's denial of a defendant's motion to withdraw his guilty plea for an abuse of
4  discretion ' *State v  Barnett*, 1998-NMCA-105, ¶ 12, 125 N M  739, 965 P.2d 323.
5  The "trial court abuses its discretion when it acts unfairly or arbitrarily, or commits
6  manifest error "  *Id*  "A denial of a motion to withdraw a guilty plea constitutes
7  manifest error when the undisputed facts establish that the plea was not knowingly
8  and voluntarily given." *State v  Garcia*, 1996-NMSC-013, 121 N M  544, 546, 915
9  P 2d 300, 302

10  {9}  A plea is not knowing, intelligent, and voluntary unless the defendant
11  "understand[s] his guilty plea and its consequences " *Id*  at 547, 915 P 2d at 303; *see*
12  *also Boykin*, 395 U.S. at 243-44 (explaining that state trial courts should "make sure
13  [a defendant] has a full understanding of what the plea connotes and of its
14  consequence[s]"). Rule 5-303(F) NMRA codifies the matters our district courts must
15  address to ascertain that a defendant grasps the contents and consequences of a plea.
16  In relevant part, Rule 5-303(F) provides

17      The court shall not accept a plea of guilty or no contest without first, by
18      addressing the defendant personally in open court, informing the
19      defendant of *and determining that the defendant understands* the

5

RP344

ST VS ALBERT RAMIREZ CR-07-434                                    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 2 26.46 PM | CHANDLER | RESPONDS, WITH REGARD TO THE DOUBLE JEOPARDY MOTION, THESE ARE TWO DISTINCT ACTS OVER A PERIOD OF TIME, THE MOST APPROPRIATE CASES STATE VS DERRICK IRVIN, THE APPELATE COURTS SAID EACH TIME WEATHER THERE WAS SOME DIFFERENT ITEMS DIFFERENT MOVEMENT IN BETWEEN THE TWO, ETC |
| 2 29 32 PM | | WHY WOULD YOU THROW AWAY A PERFECTLY GOOD PAIR OF SHORTS WITH YOUR ID IN THE DUMPSTER , THERE IS NO DOUBLE JEOPARDY ISSUE |
| 2 30 37 PM | COSBY | PARAGRAPH PAGE 55 IN THE OPINION FROM 2006 OF SUPREME COURT CASE THERE WERE 5 COUNTS CHARGED ETC |
| 2 34 16 PM | COURT | IS OF THE OPINION , IN MY MIND THERE COULD BE TWO DIFFERENT THINGS, THE FACTS WOULD SUPPORT THAT HE DISPOSED OF HIS CLOTHING IMMEDIATELY AFTER THE INCIDENT, WILL NOT GRANT THE MOTION ON THE DOUBLE JEOPARDY, SEES YOUR POINT , THAT THERE IS SUFFICIENT EVIDENCE |
| 2 35 30 PM | COSBY | WE HAVE A DIFFERENT TIME WHEN PHONE CALLS WERE MADE, |
| 2 36 02 PM | | AS TO THE FIRST DEGREE, RENEWS MOTIONS OF PSYCOLOGICAL EVALUATION OF HIS CLIENT  I AM GETTING FRUSTRATED BECAUSE IT IS VERY DIFFICULT TO REPRESENT A CLIENT WHO IS. |
| 2 37.30 PM | | CONCERNED THAT HE IS NOT COMPETENT TO MAKE CHOICE TO TESTIFY |
| 2 37.42 PM | COURT | ADVISES DFT THAT HE HAS RIGHT NOT TO TESTIFY, YOU DO NOT HAVE TO TESTIFY, IF YOU EXERCISE THAT RIGHT NOT TO TESTIFY, IT IS TABOO  IF YOU MAKE DECISION TO TESTIFY |
| 2 39 05 PM | DFT | I DON'T KNOW WHAT TO DO, I DON'T THINK I AM MENTALLY BALANCED, I WANT TO ASK CAN JURY KNOW ABOUT MY MEDICAL PROBLEMS |
| 2 41 22 PM | COURT | WE HAVE LISTENED TO YOU, THE ISSUES CONCERNING TO YOU ARE PERSONAL, THEY DO NOT ARISE TO THE POINT , WE ARE GOING TO GO FORWARD WITH THE TRIAL |
| 2 42 07 PM | DFT | I FEEL THAT YOU ALL ARE AGAINST ME ETC |
| 2 43.11 PM | RECESS | |
| 3 08 40 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY, COURT HAS MADE RULINGS ON MOTION FOR DIRECTIVE VERDICT, WANTS TO READ FROM THE FILE ON THIS CASE, |
| 3 10 45 PM | | BELIEVES THAT DFT IS COMPETENT TO STAND TRIAL, PREPARED TO CONTINUE THIS TRIAL, DOES THE DEFENSE INTEND TO PRESENT A DEFENSE |

ST VS ALBERT RAMIREZ CR-07-434                           COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 2:08 19 PM COSBY | | RXEX - WHAT IS A WASH "IT IS A THIN COATING OF THAT PARTICULAR MATERIAL, A JACKET IS GOING TO BE THICKER AND WEIGH MORE AND BE AN ACTUAL PART OF THAT BULLET ETC. |
| 2 11 28 PM | | WITNESS EXCUSED |
| 2 12:28 PM | | #20 WITNESS KEITH BESETTE CALLED BY CHANDLER / SWORN / DEX |
| 2.13.15 PM | | WORKS WITH CURRY COUNTY SHERIFF'S OFFICE LITTLE OVER 17 YEARS |
| 2 13 39 PM | | RESPONDED TO PLAINS REGIONAL HOSPITAL, AND TO COLLECT CLOTHING |
| 2 14 20 PM | | WHEN HE ARRIVED AT HOSPITAL WHAT DID HE SEE, HIS CLOTHING WAS UNDERNEATH HIM, DOES NOT KNOW HOW HIS CLOTHING WAS REMOVED |
| 2.15 24 PM | | DOES NOT RECALL IF CLOTHING WAS CUT OR NOT , COLLECTED IT AND BAGGED IT, AS HE REMEMBERS THERE WAS BLOOD ON IT, COLLECTED A WALLET AND A SET OF KEYS, HE HAD BOOTS |
| 2 16 10 PM | | DID NOT FIND ANY WEAPONS IN THE CLOTHING NOTHING BUT A SET OF KEYS AND HIS WALLET |
| 2.16.38 PM COSBY | | XEX - DID YOU PUT THE CLOTHING IN EVIDENCE, DID YOU SEND IT TO THE CASE MANAGER , AT TIME THE COMMANDER WAS ROGER GRAU |
| 2.17 29 PM | | DOES NOT REMEMBER WHO HE GAVE CLOTHING TOO, GAVE THE BAG NOT THE ARTICLE |
| 2 18 10 PM | | WITNESS EXCUSED |
| 2 18 33 PM CHANDLER | | STATE ANNOUNCES REST |
| 2 19 07 PM | | JURY EXCUSED FROM COURTROOM |
| 2 20 13 PM COSBY | | MOTIONS CONCERNING FIRST THE TWO COUNTS OF TAMPERING OF EVIDENCE, DOUBLE JEOPARDY MULTIPLE CHARGES, STATE VS SILVA 2008 NM SUPREME COURT, FURTHER SITES CASES, |
| 2 22 00 PM | | BASICALLY OF WHAT IS ISSUE OF DOUBLE JEOPARDY, STATE HAS CHARGED TWO COUNTS OF TAMPERING, ONE WITH THE CLOTHING |
| 2 22 57 PM | | THERE IS NOT EVIDENCE THAT THEY WERE TAKEN INTENTIONALY |
| 2 23 17 PM | | WHAT WE HAVE HERE IS A DISPOSITION OF SOME SHORTS, NOBODY DESCRIBED A RED BELT, NO EVIDENCE MY CLIENT DISPOSED OF THEM WITH SPECIFIC INTENT, IF HE DISPOSED OF THEM, AS FAR AS THE FIREARM, IT WAS DISPOSED OF BASED ON PHONE CALLS OF BAM BAM AND RAGS TO RICHES |
| 2 25 11 PM | | AS FAR AS HIM CALLING FROM THE JAIL, THEY TOOK INTERPRETATION OF BAM BAM BEING A GUN |

10/9/2013                                                          13 of 15

ST. VS ALBERT RAMIREZ  CR-07-434                              COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 1:58:18 PM | CHANDLER | RXEX - DO YOU UNDERSTAND THE WORD PREMEDITATE, FIRST TIME YOU SHOT ELADIO WAS IN THE GARAGE, YOU PLANNED ON KILLING HIM IN THE GARAGE |
| 1:59:03 PM | COSBY | **RDEX - FURTHER COMMENTS** |
| 1:59:45 PM | | **#2 WITNESS JOSE RAMIREZ JR. CALLED BY D / SWORN / DEX** |
| 2:01:11 PM | | HOW OLD WERE YOU WHEN MR ROBLEDO CAME INTO THE PICTURE |
| 2:01:52 PM | | DID YOU EVER BECOME AWARE OF HIM NOT LIVING IN THE HOUSE, HE CAME TO LIVE WITH ME FOR ABOUT 3 TO 4 MONTHS |
| 2:02:33 PM | | I ASKED HIM TO LEAVE AT THE END, I WAS ASKING HIM TO GO TO SCHOOL AND HE WOULD NOT FOLLOW RULES, |
| 2:03:05 PM | | DID HE HAVE ANY PROBLEMS WITH ELADIO ROBLEDO |
| 2:03:46 PM | | HE DID NOT HAVE ANY HATRED TOWARD'S HIM |
| 2:04:34 PM | | HOW YOU BECAME AWARE OF THE PROBLEM |
| 2:04:52 PM | | **BENCH CONFERENCE** |
| 2:06:33 PM | COSBY | WERE YOU AWARE OF ISSUES BETWEEN YOUR BROTHER AND SOME OTHER PEOPLE |
| 2:07:37 PM | | REMOVE DFT FROM COURTROOM |
| 2:07:49 PM | | JURY EXCUSED FROM COURTROOM |
| 2:08:47 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY |
| 2:08:56 PM | | THE COURT HAS ORDERED THE DFT TO THE OTHER ROOM TILL WE FIGURE OUT WHAT TO DO |
| 2:09:11 PM | CHANDLER | THERE IS CASE LAW IN NM READS IN TO RECORD |
| 2:10:59 PM | | HAVE A COPY OF CASE , ASKS COURT TO BRING HIM IN HERE AND GIVE HIM A STERN WARNING, IT WOULD BE THE STATES PREFERENCE TO REMAIN IN THE COURTROOM |
| 2:11:42 PM | COURT | WANTS TO SAY THIS ON THE RECORD MR COSBY IS REPRESENTING THIS DFT AND IT IS DIFFICULT TO WORK WITH |
| 2:12:05 PM | COSBY | AT THIS JUNCTURE BY HIS OWN CONDUCT, HE HAS PUT FORTH TO THE JURY THAT I AM NOT REPRESENTING HIM , I KNOW THAT HE CREATED THE SITUATION, EVEN THOUGH THE COURT HAS ADMONISHED, THE FACT REMAINS HE HAS FIRED ME IN OPEN COURT, IF WE WANTS TO FIRE ME THAT IS HIS PEROGATIVE, IF THAT IS HIS DESIRE HE CAN GO FORWARD REPRESENTING HIMSELF ETC. |
| 2:14:07 PM | | IT IS HIS RIGHT TO REPRESENT HIMSELF, IF THAT IS HIS DESIRE AND HE WANTS TO REPRESENT HIMSELF |

ST VS ALBERT RAMIREZ CR-07-434                              COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 1 45 20 PM | | YOU WERE NOT HOMELESS "YES I WAS HOMELESS SINCE JANUARY 2007" YOUR BROTHER SAID YOU COULD NOT STAY THERE BECAUSE YOU WERE NOT FOLLOWING THE RULES, MY SISTER HAS TO MANY MOUTHS TO FEED ETC. |
| 1.46 31 PM | | YOU HAD A HOTEL YOU STAYED AT VALUE INN, DID NOT COST YOU ANYTHING BECAUSE SOMEONE WAS PAYING YOUR ROOM, MY MOM SAID SHE WOULD GET ME THE MOTEL FOR A WEEK, |
| 1.47.32 PM | | I DID NOT FEEL ANGRY, I WAS DEPRESSED |
| 1:47 55 PM | | ELADIO WENT INTO GARAGE TO PUT UP VACUUM AND YOU LIFTED UP YOUR SHIRT, HE DID NOT LEAVE ANY MARKS ON YOU ETC. |
| 1 48 58 PM | COSBY | OBJECTION ARGUMENTATIVE |
| 1.49 06 PM | CHANDLER | YOU SHOT HIM IN THE CHEST AREA "I DON'T KNOW MY EYES WERE CLOSED, "WHAT HAPPENED HE DID CHOKE ME AT ONE POINT" YOU DON'T GET SCRATCHED WHEN SOMEBODY IS CHOKING YOU |
| 1 50 06 PM | | GRACE FINKEY SAID SHE DROVE BY AND YOU WERE CHASING ELADIO WITH A GUN |
| 1 50 32 PM | | WHEN ELADIO WAS DOWN ON THE FROUND YOU SHOT HIM IN THE HEAD "WHEN HE CAME AFTER ME I SHOT" |
| 1 51 26 PM | | IF ELADIO WAS LAYING IN GROUND , "I SHOT TOWARDS THE GROUND I DON'T KNOW WHERE IT HIT HIM |
| 1:52 01 PM | | IT IS NOTHING NEW FOR YOU TO BE INVOLVED IN ALTERCATIONS |
| 1 52 51 PM | | BENCH CONFERENCE |
| 1 53 29 PM | CHANDLER | ISN'T IT TRUE THAT YOU HEAD BUTTED A POLICE OFFICER "YES" |
| 1.53 58 PM | | YOU WANT THIS JURY TO BELIEVE YOU WERE DEFENDING YOURSELF |
| 1 54 13 PM | COSBY | MOVES FOR A MISTRIAL |
| 1:54 31 PM | CHANDLER | YOU RECALL A LOT OF REQUESTS TO GO TO THE LAW LIBRARY TO RESEARCH |
| 1 54 51 PM | | BENCH CONFERENCE / NOT GOING TO GRANT A MIS TRIAL JUST DON'T ASK QUESTIONS |
| 1 56 06 PM | CHANDLER | YOU TESTIFIED THAT IF YOU REALLY WANTED TO HURT OR KILL ELADIO OR DEBRA YOU COULD OF WALKED IN THE HOUSE AND DONE IT " |
| 1 56 42 PM | COSBY | RDEX - YOU UNDERSTAND WHAT YOU ARE CHARGED WITH |
| 1 57 07 PM | | DID YOU AMBUSH ELADIO ROBLEDO THAT DAY, NO IT JUST HAPPENED, I HAD THAT GUN FOR MY PROTECTION IT JUST HAPPENED |
| 1 58 08 PM | | DID YOU DO ANYTHING TO PLAN THIS KILLING |

10/10/2013                                                    10 of 16

ST VS ALBERT RAMIREZ CR-07-434                                    CR1 CHAMBERS

| Time | Speaker | Note |
|------|---------|------|
| 10 58 55 AM | CHANDLER | ON XEX GONNA ASK THIS COURT FOR ABOUT 10 OR 15 MINUTES WOULD LIKE TO DISCUSS WITH CO COUNSEL, SAID HE HAS NOT TESTIFIED BEFORE, I RENEW MY |
| 11 00 15 AM | COSBY | IT WAS NOT A JURY TRIAL IT WAS A BENCH TRIAL, HE BATTERED A TRANSPORT OFFICER |
| 11 01 15 AM | COURT | IF XEX TRIGGERS I WILL CHANGE MY RULING |
| 11 01 44 AM | RECESS | |
| 3 44 06 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY, DFT AND ALL PARTIES PRESENT |
| 3 44 27 PM | CHANDLER | DEFENSE HAS RESTED AND HAVE GIVEN US A COUPLE OF INSTRUCTIONS GUILTY BUT MENTALLY ILL, HE IS ATTEMPTING TO RAISE COMPETENCY, OUR REBUTTAL WITNESSES ARE GOING TO TESTIFY THAT THEY HAVE EXAMINED THE DFT, ETC. |
| 3 45 47 PM | COURT | HAVE NOT SEEN A DFT THE WAY THIS TRIAL HAS UNFOLDED |
| 3 46 20 PM | CHANDLER | WE HAVE CASELAW |
| 3 46 30 PM | COSBY | I AM NOT GOING TO SUBMIT A COMPETENCY INSTRUCTION. |
| 3 46 46 PM | CHANDLER | WE ARE NOT OBJECTING, THE ONLY MENTAL ILLNESS THAT PROBABLY COULD HAVE BEEN TESTIFIED, DFT TOOK STAND AND HE DID NOT RAISE ISSUE |
| 3 47 42 PM | COSBY | THE GBMI WAS AVAILABLE, BUT THAT DOES NOT DEPRIVE HIM OF THE RIGHT TO HAVE IT SUBMITTETD, GBMI VERDICT IS NOT SOMETHING TO GIVE, HE IS ENTITLED WE HAVE TENDERED IT. |
| 3 48 56 PM | COSBY | OPPOSES TO REBUTTAL WITNESSES BEING CALLED |
| 3 49 17 PM | COURT | BASIS UPON |
| 3 49 34 PM | MORRIS | THEY WERE CALLED, THEY ALSO CAN TESTIFY AS TO THEIR OPINION |
| 3 50 52 PM | | HE LISTED BOTH OF THESE DOCTORS, HE HAS NOT LISTED DR SWARTZ |
| 3 51 10 PM | CHANDLER | YOU CANNOT BRING IN AN EXPERT YOU HAVE NOT DISCLOSED |
| 3 51 27 PM | COURT | AS A PRACTICAL MATTER WHAT YOU DO IN YOUR INSTRUCTIONS YOU HAVE A GUILTY AND GUILTY BUT MENTALLY ILL, |
| 3 52 06 PM | COSBY | WE ARE NOT GOING TO ASK FOR SELF DEFENSE, WILL WITHDRAW BECAUSE OF MENTAL ILLNESS OR DEFECT |
| 3 52 52 PM | OFF RECORD | |

10/10/2013                                                          3 of 5

ST VS ALBERT RAMIREZ CR-07-434                    CR1 CHAMBERS

| Time | Speaker | Note |
|------|---------|------|
| 10 40:24 AM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY DFT AND ALL PARTIES PRESENT |
| 10.40.41 AM | COSBY | HAS ONE OTHER ISSUE  MY CLIENT HAS TOLD ME THAT HE WAS SEXUALLY ASSAULTED ETC |
| 10 42 10 AM | | HE WANTS TO TESTIFY THAT MR  ROBLEDO AS WELL AS MR  SAIZ SEXUALLY ASSAULTED HIM |
| 10.42 26 AM | CHANDLER | THERE IS NOTHING THAT SUPPORTS THAT PARTICULAR CLAIM, IT HAS NEVER BEEN REPORTED, WHEN DID THE HAPPENED , IT IS THE TIMELINE, |
| 10 43 36 AM | COSBY | UPON ON HIS FIRST STATEMENT  WHEN MY CLIENT FIRST WENT TO HIS HOUSE MY CLIENT TOLD HIM HE HAD BEEN SEXUALLY ASSAULTED, |
| 10.44 17 AM | COURT | HERE IS THE PROBLEM WE RUN INTO, THE KIND OF THE TIMING, THE COURT IS OF THE OPINION THAT I WILL NOT ALLOW IT, THRE WAS NOTHING TO SUGGEST THAT IN HIS OPENING STATEMENT, IF THE STATE IS OF THE OPINION THAT WE CREATE AN ERROR BY EXCLUDING THIS, I WILL RULE AGAINST IT |
| 10.45.42 AM | DFT | ABOUT THIS MATTER, THE REASON I DID NOT SAY ANYTHING IN MY OPENING STATEMENT |
| 10 46.16 AM | COURT | YOUR ATTORNEY MR  COSBY IS DOING AN EXCELLENT JOB, I HAVE LET YOU TALK, THE PART I AM GOING TO RESTICT THAT WE ARE NOT GOING TO GO INTO THIS AREA |
| 10 47 12 AM | DFT | I DID NOT GET ASKED ABOUT BROKEN WINDOW  THIS IS MY LIFE , I FEEL LIKE I AM NOT HAVING A FAIR TRIAL, IF I DID NOT GET ASKED A QUESTION ABOUT SEXUAL ASSAULT |
| 10 48 28 AM | DFT | I LET MAXINE SWARTZ THAT I WAS SEXUALLY ASSAULTED, ETC |
| 10 49 11 AM | | I TRIED TO EXPLAIN TO DR, FINK , IT IS NOT FAIR I THINK IT IS RELEVENT |
| 10 49 41 AM | COSBY | THERE IS RECORD THAT HE DISCUSSED WITH PSYCOLOGIST OF SEXUAL ASSAULT, THERE IS NO EVIDENCE BEFORE THE HOMICIDE |
| 10 51 54 AM | COURT | WILL GIVE YOU FIVE MINUTES |
| 10 52 21 AM | DFT | WHEN MR  COSBY STATED THAT I WAS MELINGERING , AND PSYCHOLOGIST BELIEVED ME, ABOUT FOSTER CARE I WAS EMBARRASED MY MOTHER KNEW, EXPLAINS WHAT HAPPENED WITH ELADIO |
| 10.54.59 AM | | REGARDING SAM SAIZ HE USED TO GO OVER THERE WHEN HE WAS IN JUNIOR HIGH, ETC. |
| 10.58.18 AM | COURT | I'VE GOT YOUR STORY, AFTER HEARING THE STORY IT IS NOT RELEVENT |

EXBIT 2 page 4

Sam    Saiz

CSP    or    Statutory    rope

90's —

△    Lawyer → Cosmo Ripl

DA    →    BSC

Judge    Hensley

DOB: ███████

SS# ████████

89-CR-19173

96-CR-12536 - OUT 3RD

THE MINOR
WHO SET
ABUSED AT 15 +16
ME AT GAY GUY

exibit 2                    page 6

UNITED STATES of America,
Plaintiff–Appellee,

v.

Trung Tran NGUYEN, Defendant–
Appellant.

No. 00–10272.

United States Court of Appeals,
Ninth Circuit

Submitted Dec. 12, 2000 *

Filed Aug. 28, 2001

Defendant was convicted in the Unit-
ed States District Court for the District of
Guam, Harold D Vietor, J., of three
methamphetamine offenses Defendant ap-
pealed The Court of Appeals, Ferguson,
Circuit Judge, held that (1) denial of con-
tinuance violated defendant's due process
rights, and (2) denial of motion to substi-
tute counsel violated defendant's Sixth
Amendment rights.

Reversed

1. Criminal Law ⟺1151

The Court of Appeals reviews the de-
nial of a continuance for abuse of discre-
tion

2. Constitutional Law ⟺268(3)
Criminal Law ⟺590(2), §10

Denial of continuance in prosecution
for narcotics offenses violated defendant's
due process rights, district court denied
continuance at meeting that defendant did
not attend, when private defense attorney
arrived on first day of trial indicating that
he had been contacted by defendant s
family, the continuance was denied with-
out hearing despite defendant's repeated
complaints to the court about his public
defender, and public defender's acknowl-

edgment that the attorney-client commu-
nications had broken down, and trial judge
stated that he did not travel halfway
around the world to continue defendant s
trial USCA Const Amend 5.

3. Criminal Law ⟺1166(7)

In the absence of a sufficient sum-
mary on the record, the Court of Appeals
affirms the denial of a continuance only if
the district court displays adequate care
and concern for the defendant's rights

4. Criminal Law ⟺641 10(2)

Generally, district judges have broad
latitude to deny a motion for substitution
of counsel on the eve of trial when the
request would require a continuance; how
ever, this discretion must be balanced
against the defendant's Sixth Amendment
right to counsel USCA Const.Amend.
6.

5. Criminal Law ⟺641.12(1)

An unreasoning and arbitrary insis-
tence upon expeditiousness in the face of a
justifiable request for delay violates the
right to the assistance of counsel
USCA Const.Amend 6

6. Criminal Law ⟺641.10(2)

A defendant is denied his Sixth
Amendment right to counsel when he is
forced into a trial with the assistance of a
particular lawyer with whom he is dissatis
fied, with whom he will not cooperate, and
with whom he will not, in any manner
whatsoever, communicate USCA.
Const.Amend 6

7. Criminal Law ⟺641.12(1)

Even if present counsel is competent,
a serious breakdown in communications
can result in an inadequate defense
USCA Const.Amend. 6

R App. P 34(a)(2)

* The panel unanimously finds this case suitable
for decision without oral argument   Fed

may state a claim cognizable under the APA that the Secretary of State has breached her duty, imposed by the FARR Act, to implement Article 3 of the Torture Convention Such a claim, brought in a petition for habeas corpus, becomes ripe as soon as the Secretary of State determines that the fugitive is to be surrendered to the requesting government

[18] We may not reach the merits of Cornejo-Barreto's claim at this time Habeas corpus review is available only when no other relief is available

We therefore AFFIRM the district court's denial of the petition for habeas corpus but direct that it should be without prejudice to the filing of a new petition should the Secretary of State decide to surrender Cornejo-Barreto

KOZINSKI, Circuit Judge, concurring

I do not join Section III of the opinion, because the question of whether petitioner would be entitled to judicial review of an extradition decision by the Secretary of State is not before us. I would hold only that the district court does not have jurisdiction to review petitioner's claim under the Torture Convention, because the FARR Act does not authorize judicial enforcement of the Convention, see *Sandhu v. Burke*, No 97 Civ 4608, 2000 WL 191707, at *9 (S.D N Y, Feb. 10, 2000) and the Convention is not self-executing under the four-part test of *Saipan v. United States Dep't of Interior*, 502 F 2d 90, 97 (9th Cir 1974) *See Barapind v. Reno*, 72 F Supp.2d 1132, 1148–49 (E D Cal 1999) *see also Sandhu*, 2000 WL 191707, at *10

Wayne Dale SCHELL, Petitioner-Appellant,

v

Larry WITEK, Warden; Bill Lockyer, Attorney General, State of California,[1] Respondents-Appellees

No 97–56197.

United States Court of Appeals, Ninth Circuit

Argued and Submitted March 23, 2000

Filed July 11, 2000

Petitioner convicted of burglary filed pro se petition for writ of habeas corpus The United States District Court for the Central District of California, John G Davies, J. denied relief Petitioner appealed The Court of Appeals affirmed in part, reversed in part, and remanded On en banc review the Court of Appeals, Trott, Circuit Judge, held that (1) evidence supported conviction, (2) petitioner did not waive and abandon his claim that state court violated his Sixth Amendment right to counsel by failing to rule on his pretrial motion requesting substitute counsel, (3) trial court's failure to inquire into request for substitute appointed counsel was subject to review to determine whether error actually violated petitioner's constitutional rights, overruling *Bland v California Dep't of Corrections* 20 F.3d 1469, *Crandell v. Bunnell*, 144 F.3d 1213, (4) petitioner was entitled to evidentiary hearing on claims of irreconcilable conflict, and (5) petitioner was entitled to hearing on claims of ineffective assistance of counsel

Affirmed in part, reversed in part, and remanded

Opinion superseded, 181 F 3d 1094

for the State of California  Fed R App P 43(c)(2)

whom he [is] dissatisfied, with whom he [will] not cooperate, and with whom he [will] not, in any manner whatsoever, communicate." *Brown v. Craven*, 424 F 2d 1166, 1169 (9th Cir 1970).

There is no question in this case that there was a complete breakdown in the attorney-client relationship By the time of trial the defense attorney had acknowledged to the Court that Nguyen "just won't talk to me anymore " In light of the conflict, Nguyen could not confer with his counsel about trial strategy or additional evidence, or even receive explanations of the proceedings In essence he was "left to fend for himself,' *United States v Gonzalez*, 113 F.3d 1026, 1029 (9th Cir 1997), in violation of his Sixth Amendment right to assistance of counsel. Nonetheless, the District Judge ignored the problems between Nguyen and his attorney commenting that Nguyen's "strike" was not ground for a continuance, explaining to Nguyen that "the Federal Public Defenders pro vide very good representation to defendants," and remarking that he was "totally comfortable" with the public defender representing Nguyen The issue in this case is the attorney-client relationship and not the comfort of the court or the competency of the attorney

Finally, the District Judge commented that any problems with his decision not to grant a continuance for the substitution of counsel could be remedied on appeal by a challenge regarding the effective assistance of counsel For a judge to maintain that the only solution to an attorney-client conflict is an appeal based on ineffective assistance is destructive of fundamental due process. By incorrectly limiting the defendant's arguments, the suggestion risks undermining the defendant's rights on appeal and on retrial after an appeal See *Taylor v Reno*, 164 F 3d 440, 446 (9th Cir 1998) (addressing but rejecting on the facts, the argument that the judge's com

ments might violate due process by luling the defendant out of pursuing a particular challenge)

For these reasons, the District Court abused its discretion in denying a reasonable continuance for a substitute counsel to prepare for trial

**B**

[8-10]   Under the standards for denying a motion to substitute counsel, the District Court also erred. We review the denial of a motion for substitution of counsel for abuse of discretion   *United States t Corona-Garcia*, 210 F.3d 973, 976 (9th Cir.2000), *cert denied*, 531 US 898, 121 S.Ct 231, 148 L.Ed 2d 165 (2000)   In reviewing a denial of substitution of counsel, we consider (1) the timeliness of the motion, (2) the adequacy of the trial court's inquiry, and (3) the extent of conflict created   *Id*

[11]   With regard to timeliness, as mentioned above, the District Judge failed to adequately balance Nguyen's Sixth Amendment rights against any inconvenience and delay from granting the continuance   *Moore*, 159 F 3d at 1160   In fact, the District Judge does not even appear to have considered the length of delay that would have been necessary to substitute a new attorney   The mere fact that the jury pool was ready for selection or even that the jury was ready for trial does not automatically outweigh Nguyen's Sixth Amendment right.

[12]   The District Judge also failed to conduct a sufficient inquiry into Nguyen's request. For an inquiry regarding substitution of counsel to be sufficient, the trial court should question the attorney or defendant privately and in depth," *Moore*, 159 F 3d at 1160, and examine available witnesses, *Gonzalez*, 113 F 3d at 1028. The District Judge did neither here   Al

TE11 l'uNÉ KERR

dant's right to counsel   USCA Const
Amend 6

**Criminal Law ⟠641.10(2)**

Before ruling on a motion to substi-
tute counsel due to an irreconcilable con
flict, a district court must conduct such
necessary inquiry as might ease the defen-
dant's dissatisfaction, distrust, and con
cern and the inquiry must also provide a
sufficient basis for reaching an informed
decision.

**8  Criminal Law ⟠641.10(2)**

Before ruling on a motion to substi-
tute counsel due to an irreconcilable con-
flict, the district court may need to eval
uate the depth of any conflict between
defendant and counsel, the extent of any
breakdown in communication, how much
time may be necessary for a new attor-
ney to prepare, and any delay or incon-
venience that may result from substitu-
tion

**9  Criminal Law ⟠641.10(2)**

While open-ended questions are not
always inadequate for a district court to
rule on a motion to substitute counsel due
to an irreconcilable conflict, in most cir-
cumstances a court can only ascertain the
extent of a breakdown in communication
by asking specific and targeted questions.

**10.  Criminal Law ⟠641.10(2)**

Where defendant's attorney opposed
defendant's motion to substitute counsel,
district court should have stayed proceed-
ings and appointed separate attorney to
advise and represent defendant as to in-
quiries necessary for court to rule on mo
tion

**11. Criminal Law ⟠641.10(2)**

The fact that a motion to substitute
counsel was made on the eve of trial alone
is not dispositive of issue of whether mo
tion was untimely

Phillip A  Trevino, Law Offices of Phillip
A. Trevino, Beverly Hills, California for
the defendant appellant

John S. Gordon and Michael S  Lowe,
Assistant United States Attorneys, Los
Angeles, California for the plaintiff-appel
lee

Appeal from the United States District
Court for the Central District of Califor-
nia  Carlos R  Moreno, District Judge,
Presiding D C No  98–0790–CRM

Before  Before  HUG and B
FLETCHER Circuit Judges, and
ILLSTON, District Judge *

ILLSTON, District Judge

Carlos Adelzo-Gonzalez appeals his con-
viction following a plea of guilty to crimi
nal charges of hostage taking transport-
ing illegal aliens, and harboring illegal
aliens   At issue is whether the district
court abused its discretion in denying
Adelzo-Gonzalez's repeated requests for
appointment of substitute counsel   We
conclude that the district court did not
make an adequate inquiry and failed to
recognize the material breakdown in trust
and communication between defendant
and his court-appointed attorney  Despite
clear indications of an irreconcilable con-
flict between defendant and his attorney,
the district court denied Adelzo-Gonzalez's
requests for a new attorney on three occa

* The Honorable Susan Illston  United States
  District Judge for the Northern District of

California sitting by designation

counsel's loyalty to his own interests rather than those of his client adversely affected his performance in terms of appearance before the jury as well as his tactical conduct of the case

[21] Second, in *Cronic,* 104 S Ct. at 2047, the Court has reaffirmed that no specific showing of prejudice is required when an accused is deprived of his sixth amendment right to effective cross-examination *Davis v. Alaska,* 415 U.S 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974) Prejudice need not be shown since denial of such a right is of such magnitude that "no amount of showing of want of prejudice would cure it." *Smith v Illinois,* 390 U.S 129, 131, 88 S Ct. 748, 749, 19 L.Ed 2d 956 (1968) (quoting *Brookhart v Janis,* 384 U.S 1, 3, 86 S.Ct. 1245, 1246, 16 L.Ed 2d 314 (1966)). If prejudice is presumed when a trial judge denies a defendant the right of cross-examination, reason dictates that such presumption be of equal force when a trial judge unreasonably refuses a defendant's request to remove counsel who flatly refuses to cross-examine a witness because of his running feud with the judge[20] Therefore, even if a showing of prejudice were a prerequisite to reversal, the conflict of interest between counsel and client along with counsel's flat refusal to cross-examine a witness require a presumption of prejudice in this case.

## III.

We establish no novel right or theory of constitutional law, but rely on tried and true principles as old as the document we expound The Court has recognized that "Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation ." *Morrison,* 449 U.S. at 364, 101 S.Ct. at 667. The accused has demonstrated that his right to choose the counsel to present his defense was unconstitutionally abridged. There-

**20.** While deprivation of his sixth amendment right to effective cross-examination may entitle an accused to a presumption of prejudice an accused must establish an abuse of discretion

fore, having concluded that the trial court's decision was arbitrary and unreasonable, we hold that appropriate respect for Wilson's right of choice can be accorded only by directing the district court to grant the writ

Accordingly, the judgment of the district court is REVERSED and the case is REMANDED to the district court with instructions to grant the writ of habeas corpus

ENGEL, Circuit Judge, dissenting

I respectfully dissent.

In our original opinion we stated "the issue presented is whether the petitioner was deprived of effective assistance of counsel when the trial judge denied petitioner's repeated requests for substitute counsel." *Wilson v Mintzes,* 733 F.2d 424, 425 (6th Cir.1984) When the Supreme Court vacated that judgment and remanded for our consideration in light of *Strickland v. Washington,* — U.S. —, 104 S Ct 2052 80 L.Ed 2d 674 (1984), the majority shifted ground away from the effective assistance issue and moved toward the Sixth Amendment denial of an accused's right to counsel of his choice The majority now asserts that "Wilson has not claimed that, and the parties have not argued whether, counsel was constitutionally ineffective The [state] trial judge, however, apparently believed that counsel's competency was implicated " Actually, the issue as presented to the Michigan Court of Appeals was whether the trial court erred in "not granting a mistrial or holding a full hearing on the competency issue ' The same issue was stated in Wilson's petition filed in the district court as "whether the trial court erred in failing to hold a full evidentiary hearing on the matter of competency of defense counsel" Wilson's brief to this court reflects a similar shift in emphasis from that in the state court and in his habeas petition in the district court

under the standards set out in Part I B above to be entitled to reversal based on denial of his motion for substitution of counsel

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert D'AMORE, Defendant-Appellant.**

**No. 94-10091.**

United States Court of Appeals
Ninth Circuit.

Argued and Submitted March 16, 1995.

Decided June 12, 1995

Government sought to revoke defendant's probation. The United States District Court for the District of Nevada, Lloyd D. George, Chief Judge, denied defendant's motion to substitute private for appointed counsel and revoked probation. Defendant appealed. The Court of Appeals, William A. Norris, Circuit Judge, held that (1) district court made inadequate inquiry before denying defendant's motion to substitute counsel (2) evidence showed substantial breakdown of communications between defendant and appointed counsel, and (3) denial of motion was not warranted on grounds of untimeliness.

Reversed and remanded; order of revocation vacated

**1. Criminal Law ⚓1152(1)**

District court's denial of motion to substitute counsel is reviewed for abuse of discretion, such discretion must be exercised, however, within limitations of Sixth Amendment which grants criminal defendants qualified constitutional right to hire counsel of their choice. U.S.C.A. Const.Amend. 6

**2. Criminal Law ⚓641.10(1)**

Criminal defendants' constitutional right to hire counsel of their choice is qualified in that right may be abridged to serve some compelling purpose; such compelling purpose may be found when granting motion would lead to delay in proceedings and government's interest in prompt and efficient administration of justice outweighs defendant's need for new counsel to adequately defend himself U.S.C.A. Const.Amend. 6.

**3. Criminal Law ⚓641.5(.5), 641.10(1)**

Court may override defendant's choice of counsel in order to maintain integrity of judicial system by prohibiting representations that involve conflict of interest or ethically unfit lawyer U.S.C.A. Const.Amend. 6

**4. Criminal Law ⚓641.10(2), 1166.10(1)**

Absent compelling purpose, it is violation of Sixth Amendment to deny motion to substitute counsel and is error that must be reversed, regardless of whether prejudice results. U.S.C.A. Const.Amend 6.

**5. Criminal Law ⚓641.10(2)**

When substitution of defense counsel does not threaten any delay in proceedings, there is no reason to deny substitution whether or not defendant has complaints against or irrevocable conflict with, appointed counsel. U.S.C.A. Const.Amend. 6.

**6. Criminal Law ⚓641.10(2)**

When granting motion for substitution of defense counsel would require continuance, court must weigh defendant's Sixth Amendment interest against any delay or inconvenience caused by request for substitution, even when request is made at last minute. U.S.C.A. Const.Amend. 6

**7. Criminal Law ⚓1134(3)**

In reviewing district court's denial of late motion to substitute private for appointed counsel, Court of Appeals focuses on considerations of adequacy of district court's inquiry, extent of conflict between defendant and counsel, and timeliness of motion and extent of any inconvenience or delay that would result from granting motion U.S.C.A. Const.Amend. 6.

**8. Criminal Law ⚓641.10(2)**

Before district court can engage in measured exercise of discretion, upon defendant's motion to substitute private for appointed counsel, court must conduct inquiry adequate to create sufficient basis for reaching informed decision. U.S.C.A. Const.Amend. 6.

**9. Criminal Law ⚓641.10(2)**

District court conducted unsatisfactory inquiry prior to denial of defendant's motion



tion was not adequately proven, we need not consider the applicability of California strict liability law.

**AFFIRMED**



---

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Carlos ADELZO-GONZALEZ,**
**Defendant-Appellant.**

No. 99-50152.

United States Court of Appeals
Ninth Circuit.

Argued and Submitted March 5, 2001

Filed Sept. 26, 2001

Defendant plead guilty in the United States District Court for the Central District of California, Carlos R. Moreno, J., to hostage taking, transporting illegal aliens, and harboring illegal aliens and was sentenced to 63 months of imprisonment. Defendant appealed. The Circuit Court, Illston, District Judge, sitting by designation, held that the district court abused its discretion in denying defendant's motions for substitution of counsel.

Reversed, vacated, and remanded.

**1. Criminal Law ⚖️1134(3)**

Claim of ineffective assistance of counsel is generally inappropriate on direct appeal. U.S.C.A. Const.Amend. 6.

**2. Criminal Law ⚖️1134(3)**

There are two exceptions to general rule against raising ineffective assistance of counsel claims on direct appeal: (1) when the record on appeal is sufficiently developed to permit review and determination of the issue, and (2) when the representation is so inadequate that it obviously denies a defendant his Sixth Amendment right to counsel. U.S.C.A. Const.Amend. 6.

**3. Criminal Law ⚖️1134(3)**

Where defendant raised arguments that district court erred each time it denied his motions for appointment for substitute counsel and deprived him of his Sixth Amendment right to counsel as two separate grounds for appeal, Court of Appeals would treat arguments as interrelated and review only decision to deny substitute counsel. U.S.C.A. Const.Amend. 6.

**4. Criminal Law ⚖️1152(1)**

Court of Appeals reviews a district court's denial of a motion for substitution of counsel for abuse of discretion.

**5. Criminal Law ⚖️1158(1)**

District court's factual findings are reviewed on appeal under the clearly erroneous standard.

**6. Criminal Law ⚖️641.10(2)**

District court abused its discretion in denying defendant's motions to substitute counsel, court's open-ended questions were inadequate to probe into nature of attorney-client relationship after defendant explained his attorney used bad language and threatened to "sink him for 105 years so that he wouldn't be able to see his wife and children," extent of conflict interfered with attorney's ability to provide representation as shown by his calling defendant a liar and defendant stating he would rather represent himself, and any delay in substituting counsel was outweighed by defen-

to hold a second hearing "fairminded jurists" could conclude that the trial judge's inquiry was still adequate and that the extent of the conflict did not mandate the substitution of counsel *Harrington v Richter* — U S —— ——, 131 S Ct 770 786, 178 L Ed 2d 624 (2011) (quoting *Yarborough v Alvarado*, 541 U S 652, 664 124 S Ct 2140, 158 L Ed 2d 938 (2004)) (internal quotation marks omitted)

31 Petitioner does not assert that his reasons for requesting a second hearing for substitute counsel differed in any respect from the complaints he made during the prior *Marsden* hearing (*See* Pet 10, 50–51 )

*24 Furthermore, "fairminded jurists" could also conclude that the trial judge's observations did not require him to "delve deeper into the nature of [Petitioner's] relationship with the appointed counsel " *United States v Adelzo-Gonzalez* 268 F 3d 772, 778 (9th Cir 2001) Although Petitioner expressed dissatisfaction with counsel's performance while he was on the stand, (*see* Lodgment 24, at 246–47, 275–787, "there were [no] clear indications of serious discord and friction between [Petitioner] and his attorney " *Adelzo-Gonzalez* 268 F 3d at 778 (emphasis added) Petitioner's disapproval of his attorney's conduct pales in comparison to the threats, foul language, and insults on the part of counsel in *Adelzo-Gonzalez See id* at 774–76, 778–80 (holding that trial judge needed to inquire further into defendant s allegations concerning irreconcilable conflict ) Furthermore '{t]he fact that [P]etitioner testified at his trial is evidence that the lines of communication between [him] and [counsel] were open[,]" *Shepard v Chavez* No 10–3249 2012 WL 4038446, at *29 (E D Cal Sept 12 2012), especially given Petitioner's acknowledgement that counsel had informed him beforehand that taking the stand would be unwise (*See* Lodgment 24 at 211–12 ) Thus, it was not unreasonable to conclude that the trial judge's observations, along with Petitioner's complaints during the first *Marsden* hearing, provided a 'sufficient basis" to make an informed decision that Petitioner and counsel did not have an irreconcilable conflict *See Smith* 282 F 3d at 764 (quoting *McClendon* 782 F 2d at 789)

Additionally, "fairminded jurists" could easily conclude that Petitioner s request, which was made after the close of evidence, was untimely *See United States v Carter* 560 F 3d 1107 1113 (9th Cir 2009) Therefore, AEDPA s

deferential standard of review bars habeas relief on Ground Fifteen

### 3 Petitioner's Other Claims of Ineffective Assistance of Counsel

Ground Sixteen alleges that trial counsel was ineffective because he "concealed evidence refused to investigate evidence refused to present expert witnesses, allowed the prosecutor to deceive the court and jury and refused to act as [d]efense [c]ounsel as defined in the relevant [G]rounds 1–15 of this [P]etition " (Pet 10, 52 ) Petitioner also asserts that defense counsel's closing argument was constitutionally deficient. (*See id* 52–53 ) The Superior Court rejected Ground Sixteen, reasoning that

> In order to establish ineffective assistance of counsel based on failure to 'call additional witnesses or present additional evidence[,] [ ] [P]etitioner must show that his counsel's representation was so deficient that it resulted in a total breakdown of the adversarial process and not just trial tactics Further[,] [Petitioner must show] that the additional evidence or witnesses would have yielded a more favorable result The [P]etitioner's writ fails to allege facts or present evidence establishing a prima facie case of habeas relief

*25 (*Id* at 3, 5 ) As the following analysis demonstrates the Superior Court's holding was neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. [32]

32 Grounds One through Twelve each include specific allegations concerning trial counsel s purported deficient performance (*See* Pet 17–18 20 22, 24–25 27–28 30, 32 34 36 38 40–41 43–44 ) The Court considers some of these allegations in the context of the deficient performance analysis whereas others are addressed in the prejudice discussion Moreover, defense counsel s closing argument is analyzed in the deficient performance section

Apart from the allegations in Grounds One through Twelve and the assertion that defense

© 2018 Thomson Reuters No claim to original U S Government Works

mine who was telling the truth, and the trial court gave the proper instruction on how to view expert opinion testimony

During its case in chief, Dr Roll again testified for the State. He stated that he interviewed the complainant and conducted a series of psychological tests. Dr Roll concluded that the complainant suffered from PTSD "consistent with chronic sexual abuse." In addition to repeating several statements by the complainant concerning her fear of her stepfather and her statements regarding sexual abuse by him, Dr. Roll also specifically stated that the complainant's symptoms were consistent with sexual abuse by her stepfather, the defendant Marquez. He found that the complainant suffered from several stressors, but he stated that sexual trauma was the most severe stressor or cause of her symptoms

Dr Roll stated that it was not the function of the examining psychologist to determine if an alleged victim was telling the truth, but he testified that it was virtually impossible for the complainant to be faking her symptoms. Dr. Roll also stated that psychologists do not check for external inconsistencies, that is, they do not reference extrinsic sources to determine whether the complainant is lying. Rather, he testified, they check for internal consistencies, that is, whether the complainant's story is plausible or whether it is inherently inconsistent.

Dr Lenssen also testified for the State at trial and concluded from her evaluation that the complainant suffered from PTSD She stated that although several stressors may be present, the cause could be traced, and she believed that the complainant's symptoms could be traced to sexual abuse Unlike Dr. Roll, she did not directly inculpate Marquez She did recount, however, some of the complainant's statements regarding sexual abuse by her stepfather

Dr. Lenssen also testified that in her opinion, the complainant was not fabricating her story As in *Alberico*, however she testified that the PTSD diagnosis is not a credibility assessment and that it makes a difference whether the complainant is telling the truth The qualifications of both Dr Roll and Dr Lenssen were not challenged

Dr Siegel, also a clinical psychologist, testified for the defense at trial While he did not contest the other expert witnesses' diagnoses that the complainant exhibited PTSD symptoms, he stated that the complainant suffered from several stressors, all of which cumulatively could nave caused PTSD He also testified that a PTSD diagnosis depends in large part upon what the complainant is saying and whether she is telling the truth In addition Dr. Siegel stated that DSM III-R contains a cautionary note about its use in a forensic setting

### III  ISSUES

#### A  *Arguments for the Defense*

On appeal, both defendants make similar arguments against the admission of PTSD testimony. They claim that the State failed to lay the proper scientific foundation for its admission, arguing that PTSD evidence is not generally accepted as a reliable means for determining whether sexual abuse has occurred Both defendants advocate the continued use of the *Frye* test as a predicate for the admission of expert opinion testimony

The defendants also argue that PTSD evidence is not relevant because the experts' testimony went beyond the scope of what their expertise allows They concede that PTSD testimony may be admitted if its purpose is to explain the victim's delayed reporting of the incident or her initial denial or subsequent recantation of the incident. They maintain, however, that an expert may not testify that an alleged victim's symptoms of PTSD are consistent with those exhibited by someone who has been sexually abused because such testimony lacks an objective scientific foundation They assert that PTSD evidence regarding causation was improper because PTSD was not intended to be used as a forensic tool in a court of law. In addition, the defendants claim that such testimony amounts to improper evidence regarding the complain-

tunity to secure counsel of his own choice
U S C.A Const.Amend. 6.

### 3. Criminal Law ⟺641.10(1)

When a court unreasonably denies defendant counsel of choice, denial can rise to level of a constitutional violation. U S C.A. Const.Amend. 6.

### 4. Constitutional Law ⟺268.1(5)

Denial of an accused's right to counsel of his choice may so offend concept of the basic requirements of a fair hearing as to amount to a denial of due process of law U.S C.A. Const.Amends 5, 6, 14

### 5. Criminal Law ⟺641.10(1)

When an accused is financially able to obtain an attorney, choice of counsel to assist him rests ultimately in his hands and not in the hands of the state U.S.C.A Const.Amend. 6.

### 6. Criminal Law ⟺641.10(1)

While an accused's right to choose counsel to assist him at trial is an essential component of the Sixth Amendment right to assistance of counsel, such right is not absolute. U.S.C A. Const.Amend. 6

### 7. Criminal Law ⟺641.10(2)

When an accused seeks substitution of counsel in midtrial, he must show good cause such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with his attorney in order to warrant substitution U S C.A Const.Amend 6.

### 8. Criminal Law ⟺641.10(2)

Consideration of motions to substitute counsel in midtrial requires a balancing of accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice U.S.C A Const.Amend 6

### 9. Criminal Law ⟺641.10(1)

A trial court, acting in the name of calendar control, cannot arbitrarily and unreasonably interfere with a client's right to be represented by the attorney he has selected U S.C.A Const.Amend. 6

### 10. Criminal Law ⟺593

Whether a continuance is appropriate in a particular case depends on the facts and circumstances of that case, with the trial judge considering the length of delay, previous continuances, inconvenience to litigants, witnesses, counsel and the court, whether delay is purposeful or is caused by the accused, the availability of other competent counsel, the complexity of the case, and whether denying continuance will lead to identifiable prejudice

### 11. Criminal Law ⟺1166.11(5)

Evidence of unreasonable or arbitrary interference with an accused's right to counsel of his choice ordinarily mandates reversal without a showing of prejudice U S C.A Const.Amend 6

### 12. Criminal Law ⟺556, 641.10(2)

Motions for continuance and order to substitute counsel are directed to sound discretion of trial judge and will be reversed only for an abuse of discretion.

### 13. Criminal Law ⟺641.10(2)

Trial judge, after questioning competence of petitioner's counsel and provoking counsel into acts inconsistent with his duty of loyalty to his client, acted unreasonably in failing to heed petitioner's expression of dissatisfaction. U S C.A Const.Amend 6.

### 14. Criminal Law ⟺641 13(1)

In order to obtain relief for ineffective assistance of counsel, an accused must show first that counsel's representation fell below an objective standard of reasonableness, and that counsel's performance prejudiced accused's defense.

### 15. Criminal Law ⟺641.5, 641.13(1)

In assessing prejudice arising from alleged ineffective representation, question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt; however, when counsel labors under a conflict of interest, prejudice may be presumed

whom he [is] dissatisfied, with whom he [will] not cooperate, and with whom he [will] not, in any manner whatsoever, communicate." *Brown v. Craven* 424 F 2d 1166, 1169 (9th Cir 1970)

There is no question in this case that there was a complete breakdown in the attorney client relationship. By the time of trial, the defense attorney had acknowledged to the Court that Nguyen "just won't talk to me anymore" In light of the conflict, Nguyen could not confer with his counsel about trial strategy or additional evidence, or even receive explanations of the proceedings In essence, he was "left to fend for himself," *United States v Gonzalez*, 113 F.3d 1026, 1029 (9th Cir 1997), in violation of his Sixth Amendment right to assistance of counsel. Nonetheless, the District Judge ignored the problems between Nguyen and his attorney, commenting that Nguyen's "strike' was not ground for a continuance, explaining to Nguyen that 'the Federal Public Defender's provide very good representation to defendants," and remarking that he was "totally comfortable' with the public defender representing Nguyen The issue in this case is the attorney-client relationship and not the comfort of the court or the competency of the attorney

Finally, the District Judge commented that any problems with his decision not to grant a continuance for the substitution of counsel could be remedied on appeal by a challenge regarding the effective assistance of counsel For a judge to maintain that the only solution to an attorney-client conflict is an appeal based on ineffective assistance is destructive of fundamental due process. By incorrectly limiting the defendant's arguments, the suggestion risks undermining the defendant's rights on appeal and on retrial after an appeal See *Taylor v. Reno*, 164 F 3d 440, 446 (9th Cir .1998) (addressing, but rejecting on the facts, the argument that the judge's com-

ments might violate due process by lulling the defendant out of pursuing a particular challenge).

For these reasons, the District Court abused its discretion in denying a reasonable continuance for a substitute counsel to prepare for trial

B

[8–10] Under the standards for denying a motion to substitute counsel, the District Court also erred We review the denial of a motion for substitution of counsel for abuse of discretion. *United States v Corona-Garcia*, 210 F 3d 973, 976 (9th Cir.2000), *cert denied*, 531 U S 898, 121 S Ct. 231, 148 L Ed.2d 165 (2000) In reviewing a denial of substitution of counsel, we consider (1) the timeliness of the motion (2) the adequacy of the trial court's inquiry, and (3) the extent of conflict created *Id*

[11] With regard to timeliness, as mentioned above, the District Judge failed to adequately balance Nguyen's Sixth Amendment rights against any inconvenience and delay from granting the continuance. *Moore*, 159 F 3d at 1160 In fact, the District Judge does not even appear to have considered the length of delay that would have been necessary to substitute a new attorney The mere fact that the jury pool was ready for selection or even that the jury was ready for trial does not automatically outweigh Nguyen's Sixth Amendment right.

[12] The District Judge also failed to conduct a sufficient inquiry into Nguyen's request For an inquiry regarding substitution of counsel to be sufficient, the trial court should question the attorney or defendant 'privately and in depth,' *Moore* 159 F.3d at 1160, and examine available witnesses, *Gonzalez*, 113 F.3d at 1028 The District Judge did neither here Al-

District Court abused its discretion

In denying mr. ramirez an Inquiry

in to his Dissatisfaction of his

Counsel and Motions e reauest to Fire his

attorney

**16. Criminal Law ⚖ 641.13(6)**

The two-prong performance prejudice *Strickland* test for determining effectiveness of counsel is not applicable to cases involving choice of counsel.

**17. Criminal Law ⚖ 641.13(6)**

Although there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt, such errors are cognizable without any showing of effect on the outcome of the proceeding when the right asserted is entitled to constitutional protection apart from objective fairness proceeding; therefore, the prejudice prong of *Strickland* has no applicability to counsel of choice cases since, unlike the right to counsel of choice, the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. U.S.C.A. Const.Amend. 6

**18. Criminal Law ⚖ 593, 641.10(2)**

Prejudice to accused is but one factor to be considered by trial judge, and a continuance or substitution of counsel may properly be granted in absence of prejudice and may properly be denied despite its presence.

**19. Criminal Law ⚖ 641.10(1)**

Accused who has been improperly deprived of counsel of his choice need not show prejudice resulting from trial court's denial thereof in order to be entitled to relief. USCA Const.Amend. 6

**20. Criminal Law ⚖ 1163(2)**

Prejudice is presumed only if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance.

**21. Criminal Law ⚖ 1163(2)**

Even if a showing of prejudice were a prerequisite to reversal for denial of re-

quest for substitution of counsel, the conflict of interest between counsel and petitioner along with counsel's flat refusal to cross-examine a witness required a presumption of prejudice.

John R. Minock (court-appointed), Detroit, Mich., for petitioner-appellant.

Frank J. Kelley, Atty. Gen. of Michigan, J. Peter Lark, Lansing, Mich., for respondent-appellee.

Before ENGEL, MARTIN and CONTIE, Circuit Judges.

CONTIE, Circuit Judge.

On May 4, 1984, we reversed the district court's denial of petitioner Roy Wilson's petition for a writ of habeas corpus and remanded to the district court with instructions that the writ be granted. *Wilson v. Mintzes*, 733 F.2d 424 (6th Cir.1984). The Supreme Court of the United States granted respondent Mintzes' petition for a writ of certiorari, vacated our judgment and remanded the case for consideration in light of *Strickland v. Washington*, 466 U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[1] For the reasons that follow, we reaffirm our earlier judgment.

I.

Petitioner Wilson contended in seeking a writ of habeas corpus that the trial judge's failure to grant a continuance to allow him to retain substitute counsel when he expressed dissatisfaction with the conduct of his counsel at trial deprived him of his sixth amendment right to counsel. We found that counsel's conduct at trial constituted good cause to warrant substitution of counsel and that Wilson was prejudiced by counsel's attempt to remove himself from the case in front of the jury and by his refusal to cross-examine the officer in charge of the investigation.[2]

1. *Mintzes v. Wilson*, —— U.S. ——, 105 S.Ct. 317, 83 L.Ed.2d 255 (1984).

2. For a statement of the facts and procedural history of the case, see our earlier opinion at 733 F.2d 424.

unwanted counsel, " 'represents' the defendant only through a tenuous and unacceptable legal fiction." *Faretta v. California*, 422 U.S. 806, 821 [95 S.Ct. 2525, 2534, 45 L.Ed.2d 562] (1975). In fact, an attorney who is burdened by a conflict between his client's interests and his own sympathies to the prosecution's position is considerably worse than an attorney with loyalty to other defendants, because the interests of the state and the defendant are necessarily in opposition

*Id.* at 1075 (quoting *Osborn*, 861 F.2d at 629); *see also Cuyler v. Sullivan*, 446 U.S. 335, 349–50, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333 (1980) ("[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief."); *Holloway v Arkansas*, 435 U S 475, 490–91, 98 S Ct. 1173, 1181–82, 55 L.Ed.2d 426 (1978)

Nevertheless, the Supreme Court in fleshing out the contours of the Sixth Amendment right to counsel has held that it does not guarantee "a right to counsel with whom the accused has a 'meaningful attorney-client relationship. " *Morris v Slappy*, 461 U S. 1, 3–4 103 S Ct. 1610, 1612–13, 75 L Ed 2d 610 (1983); *see id.* at 13–14, 103 S.Ct. at 1617–18 To understand the dimensions of this limitation, one must look at the facts of that case.[2]

In *Morris*, an indigent defendant had a unilateral falling out with his attorney caused not by any identifiable objective misconduct by the attorney, but by (1) Morris's dissatisfaction with a switch from one public defender to another, (2) Morris's opinion that the new public defender had not had enough time to prepare for trial, and (3) by the second public defender's assessment that Morris had no "defense to [the] charges." *See* 461 U S. at 8, 103 S.Ct. at 1614 Because of this unilateral falling out, Morris refused to participate in his own defense. In affirming the denial by the district court of Morris's petition for a writ of habeas corpus, the Court rejected Morris's claim that a defen-

dant has the right to a certain "rapport" with his attorney *Id.*, *see United States v. Schaff*, 948 F.2d 501, 505 (9th Cir 1991).

[6] Moreover, an indigent defendant does not have the right to " 'an attorney he cannot afford' " *Caplin & Drysdale v. United States*, 491 U S. 617, 624, 109 S.Ct. 2646, 2651, 105 L.Ed.2d 528 (1989) (quoting *Wheat v. United States*, 486 U.S. 163, 159, 108 S.Ct. 1692, 1697 100 L.Ed.2d 140 (1988))

## III

### A.

[7] If the Sixth Amendment itself protects an accused from a lawyer with a traditional conflict of interest, and from a lawyer who is asleep, completely disinterested, or so unprepared that his appearance is merely pro forma, surely it must protect the indigent from an appointed lawyer who calls him to his face a "stupid nigger son of a bitch" and who threatens to provide substandard performance for him if he chooses to exercise his right to go to trial. An indigent defendant may not be entitled to a meaningful relationship as described in *Morris*, but a verbal assault manifesting explicit racial prejudice and threatening to compromise the client's rights far exceeds and transcends the facts and holding in that case. In our judgment, such a verbal assault is irreconcilable with (1) the duty of loyalty owed a client by his attorney, (2) the responsibility of providing meaningful assistance, and (3) the role of "guiding hand" described in *Powell* by Justice Sutherland *All* advice, assistance, and guidance provided after such an outburst would be fatally suspect, as would the "will ingness" of a defendant to follow the attorney's lead Such a disrespectful and inappropriate eruption would signal and be tantamount to (unless somehow cured) a "total lack of communication" far exceeding the parameters of any duty on the part of counsel to deliver to his client a "pessimistic prognosis" of his legal position. *United*

---

2. In his opening brief Mr Frazer's counsel relied heavily on our opinion in *Slappy v Morris*, 649 F 2d 718 (9th Cir.1981) without bringing to our attention that we were explicitly overruled by the Supreme Court on the point for which he cited it

Not until the government cited the Supreme Court's overruling opinion did counsel acknowledge the subsequent history of this case Counsel's use of precedent in this fashion is most disconcerting

New Mexico vs. Albert Ramirez
Criminal Cause No D-905-CR 2007-00434
Excerpts from Transcript

1       my defense but like I said in the past, I've asked to fire him, I've asked to get a new attorney

2       which I can't, I can't afford it I'm poor, I have no help from my family just basically to get my

3       hygiene and that's it and-and also I, um, I asked for a new attorney, I asked for a private

4       investigator, I asked for a neurologist evaluation, I asked for another competency evaluation, I

5       asked for several motions which I don't know if they were, they were even filed or if they were

6       denied, I've asked, uh, I don't know if Mr Cosby I just feel like maybe I-I have a big mouth and

7       I sit to-to open my big mouth and say things and I don't know if I made him angry or upset or

8       frustrated or what I've done but for some reason I don't know if he's gonna lose this case

9       because it's a weak case or if it's intentionally or accidental or I'm just paranoid or ...

0    DT:   Mr. Ramirez.

11   AR:   ... but-but something Your Honor for that

12   DT:   The issues that you wanted to be on the record you've listed them and I think you've listed them

13          well, uh, thank you for all the truth of the situations that-that you face, uh, and-and-and it's tough

4            to understand everything even if you're in the system, but I think that you've made a record ...

15   AR    Sorry Your Honor.

16   DT:   . and the Appellate Court will see that record and-and therefore that's-that's what you needed to

'7          do and that's what you've done.

8    AR    Okay. Thank you Your Honor I had more, uh, uh, things to say but thank you for that time I'll-

19          I'll just say them on my appeals, I had more things that I wanted to say but thank you.

20   DT:   Okay thank you sir. Alright (9.25.58)

21

22

21

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript



| | | |
|---|---|---|
| 1 | | say and you're saying some more stuff right now that is on the record. The part that I'm gonna |
| 2 | | restrict is that you're not gonna go into this area at this juncture in this trial. |
| 3 | AR· | It's-it's, uh, relevant to the case and also I didn't get asked about how, about my schooling, like I |
| 4 | | thought it was maybe it was important to the Jury about how I was doing in school and before |
| 5 | | how this led up to it and I didn't get asked about why I broke the window to my mom's |
| 6 | | boyfriend's car, what happened that day, who was there, I didn't get asked, um, several things ... |
| 7 | DT: | See those are not relevant to the issue that we are here about. |
| 8 | AR | How come they've used it in court? He brought it up  The prosecution said I broke a window |
| 9 | | but it's not relevant?  It's relevant if the prosecution used it but I can't explain why it's relevant |
| 0 | | Your Honor and you all a very educated man and I'm a nobody and I'm real low, uh, low IQ but |
| 11 | | I guess in my life and I feel like I'm not having a fair trial because if-if I would have known that |
| 12 | | I didn't have to get asked a question about me being sexually assaulted by my neighbor and |
| 3 | | (inaudible) I would have just said it myself but I just had respect for the courts and for you for |
| 14 | | Matthew telling everybody I wasn't gonna just throw it out there like that. |
| 15 | DT: | You're-you're ... |
| 16 | AR | But I don't feel it's fair. |
| 7 | DT | You have, you've explained this issue and you've been through psychological evaluations and |
| 8 | | we've had two for sure ... |
| 19 | AR | Okay. |
| 20 | DT. | did you explain that to them? |
| 21 | AR: | Yes. Yes sir  Another thing, thank you for letting me speak, I greatly appreciate it and God |
| 22 | | bless you all. I've let Maxine Schwartz know that I was sexually assaulted. It's on record, she |

23

Case 2:23-cv-01075-MV-DLM   Document 102-1   Filed 01/22/25   Page 1297 of 1863

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript



1   knows. I've told her what happened by my neighbor, by my mom's boyfriend, I told Maxine

2   Schwartz that's why I was hurt that I didn't get to have that as my defense today and also ...

3   DT:   And who is Maxine Schwartz

4   JC:   She's the one, uh, the original determination wasn't competent.

5   AR   And also ...

6   JC:   Psychologist

7   AR   Dr Burness I'm not gonna say whether she asked me or not but like I said I was assaulted over

8   there and battered and they sent me back and found me competent which isn't, wasn't good, was

9   not prop-professional and also Dr. Fink I tried to explain this to Dr. Fink that I was sexually

.0   assaulted and-and Dr. Fink stated well that doesn't have anything to do with your case   He said

11   your murdered somebody and that doesn't have nothing to do with your case and he said also he

12   said even if you were incompetent my job as working for the State of New Mexico is to find you

·3   competent and whether you get to the hospital or not they're still gonna find you competent

14   because that's the job the State of New Mexico has and I said well I explained everything and I

15   was, I' not get, I'm not, it's not fair and I think it's relevant.

16   JC:   Okay there is ..

7   AR.   If your child was ever assaulted would you want ...

18   JC·   Can-can we finish please? Go ahead but there is record that you discussed with psychologists

19   something about being sexually assaulted in the report and I hesitate to have to do this but in the

20   report the psychologist says that he's malingering and fabricating and that the allegations of

21   sexual abuse is I believe that her term, highly suspect. So it was brought up, it was discussed, it

22   was not, um, commented much upon except when the report that the person said because of his

24

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript



1   JC      Well you're-you're getting your chance sir now.

2   AR·     I would like to speak.

3   JC·     You are.  You're, just a second ..

4   DT.     Well I'll give you 5 minutes to tell the story.

5   AR·     I don't want him.  I don't, huh?

6   DT:     I'm gonna give you 5 minutes to tell this story.

7   AR:     Tell what story?

8   JC.     About your sexual problems ...

9   DT:     That your sexual ...

10  AR.     Okay.  I got 5 minutes

11  JC:     Sit back, sit back.

12  AR:     I'm not acting up  Okay ...

13  DT:     Sit, sit for it.

14  AR.     I'm not, there ain't nobody, I'm peaceful like everybody else

15  DT      They're just doing their job and you're, and you're gonna make a statement, I'm gonna give you

6           5 minutes and you need to understand that this is the statement ...

17  AR:     Yes sir.

18  DT.     ... that will go on the record.

19  AR      Yes sir.

20  DT.     Because the court is of the opinion that it's an inappropriate thing to bring before the jury and

21          I'm not gonna let you do it

22  AR      Okay.

26

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1   DT:   It is highly suspect for sure in my opinion.

2   AR:   I, uh ..

3   DT:   And (inaudible) against you're done so say what you want to say.

4   AR    Okay Mr Cosby stated that supposedly a psychologist/psychiatrist stated that I was malingering

5         or they didn't believe me which in my opinion when he said that, which it went against me and

6         on the record, okay if there's a psychiatrist/psychologist, Maxine Schwartz which I told and she

7         believed me, um, that would be relevant and that would help my case which would make it

8         allegedly true and what he said about somebody saying that I was malingering makes me look

9         bad but why would he say that Dr. Maxine Schwartz believed me when I told her about the

10        sexual abuse and it makes me right. And also about foster care okay I never told nobody, I was

11        embarrassed. The only person I told was my mother and about this I was about, when

12        (inaudible) done this to me he would give me beers so I started drinking with him and then later

13        on I drunk a lot of beers with him, and, um, I was 16 it was the summer time and, uh, he, uh,

14        tried to kiss me and I told him no and, uh, he got in my face and he threatened to-to punch me, he

15        threatened to hit me and I-I didn't want to get hit, I was scared. So I said okay. Then, uh, he

16        forced me to give him oral sex which I did, which only lasted maybe 2 to 3 minutes at the most

17        and then it was done, it was right in the living room, I was sitting on the couch, he was standing

18        in right in front of me and I did it and he told me not to say nothing but I told my mom and my

19        mom asked him, he denied it. Well then later om about a month later he-he did it again and I

20        told my mom and she said, uh, she was gonna call the cops and-and, um, they got in an argument

21        and I guess he unplugged the phone and they were talking and then my mom sent me to my room

27

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1       and then nothing ever happened. My mom just said I talked to him, I talked to him and-and that

2       was it.

3   DT:   (inaudible)

4   AR·   And-and-and she told me that she said that she told him that if I ever said anything about him

5       hitting me or any sexual abuse that she was gonna press charges and that I was gonna give, I was

6       gonna have to tell the police and stuff, well not about that, well about Sam Size. I used to go

7       over there because he used to call me over there and when I was between junior high I used to go

8       over there and I always used to like to drink and smoke weed so in order to get beer, I would go

9       to him and I just went over there and I would drink and, um, I would get a beer or two and he'd

10      give me a beer or two and he tried to, he tried to get with me. He just asked for a hug and then

11      he grabbed my, I can't remember if he grabbed my penis and my butt or both and he tried to put

2       his lips on mine, I told him no back up, you know, and I-I ran away with the, with the beer and

3       then I-I ended up going back one more time and, um, I needed some more beers cause I was with

14      my friends and it was Sunday, I don't remember the date, it was summer time, I was 16, he gave

15      me, I went and I said hey man I-I need some beers and, um, I don't remember exactly what was

6       said but I know he gave me like 7 to 8 beers and he tried the same thing on me and he touched up

7       on me and that's assault, he grabbed my penis and my butt and everything and he always tried to

18      invite me over there but I was scared of him. The reason I was scared of Sam Size to go over

19      there was because he told me when I was a little kid, do not, he told me he said, um, cause I used

20      to hang out at the other neighbor's house and he used to just give me beer free, he wouldn't try

21      nothing on me or anything, he just gave me beer for free, just to hang out, smoke and, uh, Sam

22      told me I don't like him, you shouldn't be hanging out with him because he's always talking crap

28

| | | |
|---|---|---|
| 1 | | about me, he says that I-I, uh, he-he's saying that I, uh, I can't, I don't want to say something |
| 2 | | wrong but he said, and I ain't making this up because I seen it in discovery, this is exact what |
| 3 | | happened. He told me from his mouth that Michael Morales was talking about him and said that |
| 4 | | he raped or, uh, raped or had some kind of sex with two young males between 12 and 18 and |
| 5 | | once he told me this I was really afraid of him because I thought he was gonna try to have sex |
| 6 | | with me and I was real paranoid because he-he's a big man. So I'd be, I'd watch out for myself |
| 7 | | but I know it's hearsay but Mike would tell me the same thing and that's why I believed it to be |
| 8 | | true and whether I can testify to it or not, I mean that's the truth so let it be on the record and . |
| 9 | DT: | Right. |
| ·0 | AR | .. I just feel like, uh, I know whether you all are upset because I withdrew my plea but we |
| 11 | | wouldn't be here in the first place if I wouldn't have got those extra two and a half years, it's a |
| 12 | | big headache for me as well. |
| 3 | DT· | Alright |
| 14 | AR: | And, uh, sorry your Honor one more thing is that I feel like it would be fair because this is my |
| 15 | | life and this is what happened and I, it is relevant. I've told plenty of people in mental health |
| 16 | | since I've been locked up in prison about being sexually assaulted and they got it written down |
| 7 | | and they said well we need to get you mental health and I've told them. |
| 8 | DT: | Right. |
| 19 | AR: | And-and Dr Burness ... |
| 20 | DT. | I've got your story. |
| 21 | AR | She just ... |
| 22 | DT· | I've got your story. |

29

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1   AR.   I was beat up over there.

2   DT:   The court, the court continues to be of the opinion that two things well after hearing the story

3         that it-it's still suspect and I'm not sure it'd be relevant

4

5   10/10/13 3:24:59 -3:25·49

6   UF.   Well as of us, yeah because he had already been having all these issues where he was always

7         thinking somebody was after him. He would talk to himself, he would hear voices, he would.

8

30

**RICKY:** A white shirt

**DAN:** Tee shirt or pullover?

**RICKY:** Uh, pullover but it had colored stripes across it   No hat, no nothing   Nothing else

**DAN:** Do you remember what kind of shoes he had on?

**RICKY:** Uh, I didn't ever– they looked, just like tennis shoes to me   I guess

**DAN:** Color?

**RICKY:** White tennis shoes   I didn t really

**DAN:** You didn't really pay attention to his shoes

**RICKY:** Pay attention to his shoes. I just seen him and it happened so quick, you know?   But he was going towards– I mean– in the alley he was shoving   like tucking his shirt in, or

**DAN:** He was running when he was doing that?   *leading*

**RICKY:** No, he was fixin to start running   *he was walking to run*

**DAN:** Kay   Before he started running?

**RICKY:** Yeah   Right before he started to leave, he– get running   He was like, like he tucked his shirt in, or hiding– you know putting something up front right here   And then he left. That's the last I see of him   So I went back in

**DAN:** So he was tucking something in the waistband of his pants?

**RICKY:** Yeah. And then, he took his, down the alley north, towards $7^{th}$ Street and then . That's all I seen of him. That's all I seen of him   So I went back inside my building, by the time I walked up front– to my front doors .

**DAN:** He started running?   Was he running?   *a okay said not running*

**RICKY.** Well, not running– running   But he, you know   *steps coming*

**DAN:** Like jogging   Kay but, once he started running, was he jogging or just sprinting?

**RICKY:** Just a jog, yeah, just like a small jog   You know?   But he was heading north and heading towards seventh street on the, at the alley   That's the direction that he was going.

**GRACE:** Like, like a polo or something, you know? Not no buttons or anything else like that

**AGUILAR:** Right like a tee-shirt

**GRACE:** I just took it in fast ...m... and and ah, but the green stripes go round

**AGUILAR:** Kay

**GRACE.** And . and at that point I got scared, you know [ ] .

**AGUILAR:** With, how much shorter was he then uh the other guy?

**GRACE:** I think he was a just a little bit shorter.

**AGUILAR:** Okay

**GRACE:** I, I would say maybe the guy, I'm guessing .. I'm saying, maybe the taller one . maybe 5'7", 5'8"? I don't know it was so {inaudible 5 16}

**AGUILAR:** Okay . kay, but your saying the one that was doing the shooting had a green shirt on .

**GRACE:** yes .

**AGUILAR:** or a, shirt on with green stripes

**GRACE:** It's a polo with big green stripes on it.

**AGUILAR:** Kay

**GRACE:** Looked like a polo to me, you know You know, like that type of material you know?

**AGUILAR:** Right do you remember

**GRACE:** It wasn't a tee shirt

**AGUILAR:** It wasn't a tee shirt? Do you remember what kind of pants he had on .. or?

**GRACE:** I don' t know. . I saw blue jeans but I don't know if it was short or ...

**AGUILAR:** Okay.

**GRACE:** Shorts or, or jeans

**AGUILAR:** What about age, would you say?

B. prior bad acts

# THIS PAGE

# INTENTIONALLY

# LEFT

# BLANK

All papers facts, Ex.b.+s,
Record, documents
Evidences, cases Relevant
prior ✕ To my case. Thank you

B. Bad acts.
    ISSUES.
   ①. Evidence use of battery and assault
   of a Transport officer. in trial
   when it was known to be
   in admissible.

②. Exibit 110. rap song letter use to
   prove element of premeditation
   to prove 1st degree murder fact
   it talked about shooting people
   killing people.

3. over objection the State called
   a Firearms dealer to testify that
   defendant had tried to purchase
   a Gun from Him. in the past
   to support premeditation.

4. The State introduced Evidence that
   Someone had broken a front
   window at the victims House
   and this was allegedly done
   by petitioner to show motive.

prior badacts

5. Another incicint was introduced
to show intent and motive,
that is, that petitioner had
used his crutches to crack
his mothers window.

STATE OF NEW MEXICO
COUNTY OF CURRY
NINTH JUDICIAL DISTRICT

STATE OF NEW MEXICO,

    Plaintiff,

v                                          No  CR-2007-434

ALBERT RAMIREZ,

    Defendant.

## **DESIGNATION OF EXHIBITS**

Pursuant to Rule 12-212 NMRA, the Defendant designates the following exhibits·

1.    State's Exhibits #1 - #110.

                        Respectfully submitted:

                        Jesse R. Cosby, Esq.
                        JESSE R. COSBY, P C
                        Attorney for Defendant
                        P O Box 3330
                        Roswell, New Mexico 88202-3330
                        (575) 625-0516

flame juror's emotions U.S.C.A. Const.
Amend. 6, 14

**§. Criminal Law ⟨═723(3), 1171.1(6)**

Prosecutor's appeal to community conscience in context of war on drugs and suggestion that drug problem facing jurors' community would continue if they did not convict defendant were so inflammatory in context that no charge could have sufficiently cured prejudice, and, thus, statements constituted reversible error U S C A Const Amend 6

**7. Criminal Law ⟨═1163(2, 3)**

It is incumbent upon Government to demonstrate that constitutional error, resulting from admission of highly prejudicial evidence or comment, is harmless beyond reasonable doubt, if there is reasonable possibility that evidence or comment complained might have contributed to conviction, then such error cannot be harmless beyond reasonable doubt.

**8. Criminal Law ⟨═1134(3), 1162**

Result of harmless error analysis depends on circumstances of particular case determining whether error is reversible necessitates examination of entire record

**9 Criminal Law ⟨═730(14)**

Curative instructions given by district court in trial on drug charges were insufficient and came too late to mitigate negative and highly prejudicial impact of prosecutor's appeal to community conscience, where remarks were among final arguments presented to jurors prior to their deliberation, admonition took place after 20 minute recess occurring immediately following prosecutor's improper statements, and admonition did not sufficiently convey to jury sense of judicial disapproval of remarks to dispel harmful impact of egregious statements. U S C A Const Amend 6

**10. Criminal Law ⟨═730(1), 1171.1(2)**

When isolated remarks are made in course of long trial and jury is given appropriate cautionary instruction designed to overcome any prejudice that may have been caused, error may be harmless, however, error may be so prejudicial that no cautionary instruction, however swiftly and forcefully given can safely eradicate its effect . U S C A Const Amend 6

**11. Criminal Law ⟨═730(1)**

Both timing and firmness of trial court's admonition are relevant in evaluating whether admonition has been sufficient to mitigate prejudicial error resulting from admission of improper evidence or comment.

Louis DeFalaise, U S Atty, Lexington, Ky , Frederick A Stine, V, Asst U S Atty , Covington, Ky . for plaintiff-appellee

Robert Alan Rosenblatt, Miami, Fla for defendant-appellant.

Before KEITH and MILBURN, Circuit Judges and CONTIE, Senior Circuit Judge

KEITH Circuit Judge

Defendant-appellant, Rosalba Solivan ("defendant" ) appeals from her March 28, 1990, judgment and sentence resulting from the sale of cocaine For the following reasons, we REVERSE

I

A

Terry and Lorraine Brown (collectively "the Browns") became Drug Enforcement Administration ("DEA") informants in July 1988, subsequent to Terry Brown's arrest for the purchase of one kilogram of cocaine from Pepe (defendant's former boyfriend) and defendant on March 8, 1988

On February 13, 1989, while in custody, the Browns began making a series of DEA controlled tape recorded, telephone calls to defendant. The first call concerned the delivery of three to five kilograms of cocaine to northern Kentucky and the price of the cocaine During a subsequent telephone conversation, defendant informed the Browns that the price would be $19,500 per kilogram of cocaine The series of recorded telephone conversations, which took place over the following weeks, detailed defendant's involvement in the nar-

ST VS ALBERT RAMIREZ CR-07-434                                    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 1 18 24 PM | | JURY BEING SEATED IN BOX |
| 1 19 33 PM | | #7 WITNESS ROGER GRAU LT. WITH CLOVIS POLICE DEPT. CALLED BY MORRIS / SWORN / DEX |
| 1 20 54 PM | | THE MCU WAS ACTIVATED ON JULY 12TH, MADE SURE ALL THE PEOPLE WERE IN THE RIGHT POSITIONS, AND CRIME SCENE WAS BEING HANDLED |
| 1 21 28 PM | | SEARCH ITEMS OF CLOTHING IN THE BAG, |
| 1 21 53 PM | | WHAT WAS INSIDE THE BAG  "PAIR OF SHORTS" IDENTIFICATION OF DENIM SHORTS |
| 1 23 40 PM | | WHAT DID YOU FIND WHEN YOU SEARCHED SHORTS |
| 1 24 57 PM | | IDENTIFICATION EXHIBIT 62 "BAG OF BULLETS FROM PANTS POCKET" |
| 1 25 39 PM | | OFFERS EXHIBIT 62 / ADMITTED |
| 1 27 48 PM | | IDENTIFICATION EXHIBIT 63 "PIECE OF NEWSPAPER FOR HOUSES TO RENT THAT CAME FROM BACK POCKET OF JEANS / OFFERS / ADMITTED |
| 1 28 21 PM | | IDENTIFICATION EXHIBIT 64 "WALMART RECEIPT FROM HIS PANTS" |
| 1 28 50 PM | | WHAT IS THE DATE ON RECEIPT, WHAT WAS PURCHASED 22 CAL  AMMO |
| 1 29 24 PM | | OFFERS EXHIBIT 64 / ADMITTED |
| 1 29 33 PM | | IDENTIFICATION EXHIBIT 65 "NM ID CARD FOUND IN HIS POCKET" |
| 1 29 59 PM | | OFFERS EXHIBIT 65 / ADMITTED |
| 1 30 06 PM | | IDENTIFICATION EXHIBIT 66 "FOOTLOCKER RECEIPT" |
| 1 30 56 PM | | OFFERS EXHIBITS 66 / COSBY OBJECTS / COURT |
| 1 31 31 PM | | ARE YOU AWARE OF WHAT WAS ON THERE BEFORE |
| 1 31 41 PM | COSBY | OBJECTS / COURT RECEIVES MEMORY IS SUFFICIENT |
| 1 32 01 PM | | IDENTIFICATION EXHIBIT 67 "FOOTLOCKER RECEIPT" OFFERS |
| 1 32 34 PM | COSBY | OBJECTS / COURT UNDERSTANDS OBJECTION ADMITTED |
| 1 34 30 PM | | IDENTIFICATION EXHIBIT 68 "PHOTO OF CONTENTS" OFFERS |
| 1 35 08 PM | COSBY | OBJECTS, TOOTHBRUSH NOT IN EVIDENCE" COURT OVERRULES / ADMITTED |
| 1 37 08 PM | | IDENTIFICATION OF EXHIBIT 69 "PHOTO OF SAME ITEMS" |
| 1 37 45 PM | | MOVES EXHIBIT 69 / SAME OBJECTION / ADMITTED |
| 1 37 57 PM | | IDENTIFICATION EXHIBIT 70 "PHOTO ID CARD" MOVES / ADMITTED |

ST VS ALBERT RAMIREZ CR-07-134                                          COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 11 51 58 AM | CO BY | XEX - DO YOU HAVE THE FORM WITH YOU, "NO" |
| 11 52 10 AM | | IT WAS THROWN AWAY, A CRIME WAS NOT COMMITTED, DID NOT DO A POLICE REPORT, THERE WAS NO CRIME ONLY HAVE DISPATCH RECORDS JUNE 20TH 2007, READ THE NAME OFF THE FORM |
| 11 53 23 AM | | DOES NOT RECALL WHAT KIND OF GUN HE WAS TRYING TO BUY |
| 11 53 37 AM | | WITNESS EXCUSED |
| 11 53 58 AM | | NOON RECESS REPORT AT 1 30 P M |
| 1 30 14 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY DFT AND ALL PARTIES PRESENT |
| 1 30 35 PM | CHANDLER | THE STATE ANTICIPATES CALLING TWO TO THREE WITNESSES, WILL PROBABLY BE DONE WITHIN AN HOUR DON'T BELIEVE ANY OF HIS WITNESSES ARE FACTUAL WITNESSES, HIS WITNESSES ARE GOING TO ATTEMPT TO TESTIFY HEARSAY ETC. |
| 1 31 52 PM | COSBY | JOSE RAMIREZ HIS BROTHER REGARDING RELATIONSHIP WITH HIS STEPFATHER, FURTHER STATES WITNESSES TO BE CALLED AND WHAT THEY WILL TESTIFY ABOUT |
| 1 34 13 PM | CHANDLER | |
| 1 35 06 PM | DFT | STATES HE HAS BEEN HEARING VOICES TELLING HIM TO KILL HIMSELF, CUT HIS WRISTS ETC. OTHER ISSUES THAT MAKE HIM NOT WANT TO LIVE, |
| 1 36 36 PM | COURT | KEEP DOING GOOD, YOUR LAWYER IS NOT MAD AT YOU |
| 1 36 47 PM | CHANDLER | ASKS DEFENSE TO MAKE WITNESSES AVAILABLE TO INTERVIEW |
| 1 37 51 PM | COURT | THE ABILITY OF MR COSBY TO MAKE AVAILABLE MAY NOT BE WITHIN HIS POWER I DON'T KNOW IF I CAN DO THAT, THESE PEOPLE HISTORICALLY ON YOUR WITNESS LIST |
| 1 38 39 PM | COSBY | HE ASKED TODAY TO PRODUCE |
| 1 38 51 PM | COURT | DO THE BEST YOU CAN TO TALK TO THEM |
| 1 39 58 PM | COSBY | WITNESSES ARE TRYING TO COORDINATE WORK |
| 1 41 19 PM | DFT | COMMENTS |
| 1 41 58 PM | | JURY BEING SEATED IN BOX |
| 1 42 33 PM | | #19 WITNESS KEVIN STREINE CALLED BY CHANDLER / SWORN / DEX |
| 1 43 46 PM | | FIREARM EXAMINER, BULLETS |
| 1 44 10 PM | | EDUCATIONAL BACKGROUND |
| 1 45 21 PM | COSBY | NO OBJECTION AS TO EXPERT |
| 1 45 29 PM | COURT | QUALIFIED AS AN EXPERT |
| 1 45 43 PM | | DIFFERENT TYPE FIRED PROJECTILE |
| 1 49 47 PM | | RECEIVED FOUR ITEMS 108 - 111 |

10/9/2013

ST VS ALBERT RAMIREZ CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 1 50 11 PM | | DETERMINATION OF TYPE OF BULLETS "22 CALIBER" |
| 1.50.30 PM | | WHAT DOES COPPER WASH LEAD BULLETS |
| 1 51 50 PM | | NOT ABLE TO FIND ENOUGH MARKINGS, ON BULLETS |
| 1 52 11 PM | | BULLETS WERE SENT TO HIM VIA OMI "OFFICE OF MEDICAL INVESTIGATOR" |
| 1 52 35 PM | | IDENTIFICATION EXHIBIT 102B "PACKAGE HAS HIS INITIALS ON IT AND DATE, ITEM 610 WAS NOT THE ONE HE WAS ABLE TO IDENTIFY |
| 1·54 23 PM | | HAS NO OPINION AS TO WHO FIRED THE BULLETS, SIMPLY EXAMINED BULLETS |
| 1.54:42 PM | | IDENTIFICATION EXHIBIT 62 " LIVE ROUNDS OF COPPER WASH BULLETS |
| 1 55 30 PM | COSBY | XEX - WHAT IS A JACKETED BULLET "IT IS A HEAVIER THICKER MATERIAL" HE TOLD US THEY WERE JACKETED |
| 1·56·23 PM | CHANDLER | OBJECTS |
| 1 56 27 PM | COSBY | THE BULLETS HE RECEIVED WERE COATED OR WASHED THEY WERE NOT JACKETED THEY HAD COPPER WASH |
| 1.57 09 PM | | TWO OF THE THREE BULLETS HE SAW ARE CONSISTENT WITH A 22 LONG RIFLE, |
| 1 57.55 PM | | THERE ARE A NUMBER OF CARTRIGES WITH THE 22 CARTRIDGE FAMILY THE LONG AND SHORT BULLETS ARE IDENTICAL |
| 1 58 30 PM | | WEIGHT OF BULLETS |
| 1 59 08 PM | | WEIGHT OF BULLETS DOES NOT SAY ON THE REPORT |
| 1 59 30 PM | | REFERS TO HIS NOTES FOR 608 36 3 GRAINS, FOR 609 37 0 GRAINS |
| 2 00 00 PM | | FOR 610 32 6 GRAINS, 611 WAS 28 1 GRAINS |
| 2 00 25 PM | | NO COMMENTS ABOUT WHAT OMI DID, |
| 2.00 48 PM | | HOW MANY GRAINS EQUAL ONE POUND "DOES NOT KNOW THAT IS WHY HE HAS A CALCULATOR" |
| 2 01 25 PM | | THESE BULLETS WAS NOT ABLE TO DISCERN IF THERE WERE ANY RIGHT OR LEFT TURN |
| 2 03 46 PM | | ITEMS 608 & 609 HAD WEIGHTS CONSITENT AND ONE DID NOT |
| 2 05 40 PM | | BULLETS OMI SENT YOU WERE SAME MANUFACTOR AS THE ONE IN THE EXHIBIT |
| 2:05 59 PM | CHANDLER | REFERS TO EXHIBIT 102A - YOU WEIGHED THAT WHAT IS THE DIFFERENCE BETWEEN 28 AND 28.1 GRAINS, DOES NOT KNOW WHAT PROCEDURES OMI USES |
| 2 08.10 PM | | YOU HAVE BEEN QUALIFIED AS AN EXPERT IN THIS CASE, DIFFERENCE BETWEEN COPPER JACKETS AND COPPER WASH |

ST VS ALBERT RAMIREZ CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 3 11 09 PM COSBY | | JOSIE CASILLAS WAS SERVED , LOPE CASILLAS WAS SERVE, AND JOSE RAMIREZ WERE SERVED TO APPEAR, ASKS COURT TO FILE RETURNS OF SUBPOENA'S, MY CLIENT AS EXPRESSED A REQUEST ASKS TO ALLOW TO SPEAK WITH HIS CLIENT FOR A COUPLE OF HOURS AND TO RECESS TILL THE MORNING TO HAVE WITNESSES HERE |
| 3.13 27 PM | COURT | WE WILL BE IN RECESS TILL 9 AM, |
| 3.13 35 PM | CHANDLER | MR RAMIREZ WAS TRIED ON AUGUST 27 2013, HIS CLIENT TOOK THE STAND THERE AND HE WAS CONVICTED, IF THEY OPEN THE DOOR THAT THERE IS A MENTAL HEALTH ISSUE, THEY WAVE THE CONFIDENTIALITY ETC |
| 3 14 57 PM | | WE WILL BE CALLING REBUTTAL WITNESSES WITH REGARDING TO HIS COMPETENCY AND MENTAL HEALTH |
| 3 15 15 PM | COURT | WE WILL LEAVE IT AT THAT, I DON'T KNOW THE ANSWER TO THAT, |
| 3.15.40 PM | CHANDLER | IF HE IS OBJECTING TO THAT |
| 3 15.54 PM | COSBY | RESPONDS, AS FAR AS THIS JUDGMENT, THIS CASE IS FROM BATTERING TRANSPORT OFFICERS, WE WAIVED JURY IT WAS A BENCH TRIAL, HE HAS ALREADY SERVED HIS TIME, |
| 3 17 26 PM | CHANDLER | WHEN DFT TAKES STAND I HAVE THE RIGHT TO IMPEACH REGARDING CONVICTION |
| 3 17 44 PM | COSBY | RESPONDS, AN EVENT THAT HAPPENS WHEN HE IS IN CUSTODY |
| 3 18 57 PM | COURT | WILL MAKE DECISION IN THE MORNING, BRING JURY IN |
| 3.20 17 PM | | JURY SEATED IN BOX |
| 3.20 54 PM | COURT | INSTRUCTS JURORS THAT THEY WILL BE EXCUSED TILL 9AM |
| 3 21 36 PM | OFF RECORD | |
| 3 22.22 PM | CHANDLER | HAS A COPY OF THE JURY INSTRUCTION |
| 3 22 42 PM | COSBY | PRESENTS HIS INSTRUCTIONS TO COURT |
| 3·23 09 PM | RECESS | |

ST. VS ALBERT RAMIREZ CR-07-434                          COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 3 25 55 PM | CHANDLER | DO YOU KNOW WHERE DEBRA RAMIREZ IS "NO" |
| 3 26 15 PM | | WITNESS EXCUSED |
| 3 27 18 PM | | #3 WITNESS LUPE CASILLAS CALLED BY COSBY/ SWORN / DEX |
| 3 27 55 PM | | SHE IS ALBERT'S AUNT |
| 3 28 11 PM | | ALBERT LIVED WITH HER A WEEK OR TWO BEFORE HE WENT BACK HOME , IN 2007 |
| 3 28 41 PM | | IT WAS A WEEK TO 10 DAYS BEFORE THE SHOOTING. HE WANTED TO COME TO LIVE WITH ME TO DO SOMETHING DIFFERENT, LIVED WITH ME A MONTH TO A MONTH AND A HALF, WHEN HE LEFT, DO YOU KNOW WHY |
| 3 29 17 PM | | HE LEFT I CALLED BY SISTER, HE SAID I AM GOING TO GO, WHAT WAS HIS PHYSICAL SITUATION. |
| 3 30 05 PM | | WHEN HE LEFT DID HE HAVE ANYWHERE TO GO, MY SISTER PICKED HIM UP "MY SISTER DEBRA" |
| 3 30 43 PM | | WHEN YOUR SISTER PICKED HIM UP ELADIO DID NOT COME WITH HER, SHE DID NOT KNOW ABOUT TRESPASS |
| 3.31.11 PM | | ELADIO AND HER SISTER OWNED THAT HOME, SHE TOOK HIM HOME WITH HER |
| 3 31 59 PM | | THEY CALL ALBERT "BETO" IT IS SHORT FOR ALBERT |
| 3 32 29 PM | | DID SHE SEEM TO HAVE ANY TYPE OF ANGER TOWARD'S ALBERT |
| 3.33 12 PM | | WHEN ALBERT CAME BACK HOME , HE WOULD TALK TO A MIRROR       MEPTAL INNESS — |
| 3.33 53 PM | | WAS HE ABLE TO RUN AROUND, |
| 3 34 19 PM | | DID YOU KNOW ABOUT $500 HE RECEIVED FROM HIS FATHER |
| 3 35 11 PM | | HE NEVER TOLD HER HE WAS LOOKING TO KILL MR ROBLEDO |
| 3 35 24 PM | MORRIS | XEX - YOU WERE NOT AT DEBRA'S HOUSE JULY 12, 2007 |
| 3 35 57 PM | | WE WOULD TALK ABOUT ONE DAY YEAH, ONE DAY NO |
| 3 36 26 PM | | WHERE IS DEBRA TODAY "I HAVE NO IDEA, I AM FROM ROSWELL" |
| 3 36 43 PM | | WITNESS EXCUSED |
| 3 36 53 PM | | DEFENSE RESTS |
| 3.37 33 PM | COURT | READS RECESS INSTRUCTION |
| 3 38 08 PM | OFF RECORD | |
| 4 32 14 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY, |

10/10/2013

ST VS ALBERT RAMIREZ CR-07-434                                    COURTROOM ONE

| Time | Speaker | Note |
|---|---|---|
| 11 12 30 AM | | AMOUNT OF POPULATION ON EARTH ACTUALLY 7 BILLION |
| 11 13 41 AM | | IDENTIFICATION EXHIBIT 108 , "LABATORY REPORT" |
| 11 14 04 AM | | OFFERS EXHIBIT 108 / COSBY OBJECTS / |
| 11 14 27 AM | COURT | LET ME SEE REPORT |
| 11 14 52 AM | CHANDLER | IT IS NOT A POLICE REPORT  TESTIFIED BASED ON REPORT |
| 11 15 06 AM | COURT | ADMITTED SUBJECT TO OBJECTION OF DEFENSE |
| 11 15 24 AM | COSBY | XEX - WHAT IS YOUR DEGREE |
| 11 16 06 AM | | DO YOU KNOW ANYTHING HOW INDEPENDENT VARIABLES |
| 11 17 23 AM | | IT THERE AN ASSUMPTION MADE BY DNA PEOPLE THAT THERE IS 50/50 CHANCE THAT IT WILL MATCH |
| 11 17 54 AM | | HOW DO YOU DETERMINE SW HISPANIC, |
| 11 18 28 AM | | IS THERE A DIFFERENCE BETWEEN SW HISPANIC OR SE HISPANIC |
| 11 18 42 AM | | ITEM 202 THE RED SHIRT, I KNOW YOU DID NOT FIND BLOOD, WAS THERE OTHER SOURCES OF DNA BESIDES BLOOD |
| 11 20 18 AM | | ONLY WORK FOR LAW ENFORCEMENT, TO ASSIST IN THEIR INVESTIGATIONS |
| 11 21 05 AM | | WHO CONTROLS WHAT YOU ARE LOOKING FOR, THE POLICE ONLY LOOK FOR WHAT THEY ARE ASKED TO LOOK FOR |
| 11 21 42 AM | CHANDLER | OBJECTS CALLS FOR SPECULATION |
| 11 22 04 AM | COSBY | YOU CAN'T TELL THIS JURY WHO'S SHIRT IT IS |
| 11 22 23 AM | | REGARDING THE RED SHOES FOUND, HOW MANY SPOTS FOUND ON RIGHT SHOE 3 SPOTS |
| 11 23 05 AM | | HOW MUCH YOU NEED TO DO A DNA ANALYSIS |
| 11 25 08 AM | | DID YOU CHECK RED TENNIS SHOW TO SEE WHO OWNED IT, NO JUST ASKED TO LOOK FOR BLOOD |
| 11 25 28 AM | | REGARDING THE LEFT TENNIS SHOE |
| 11 25 41 AM | | YOU DESCRIBED BLACK DENIM SHORT, WHY DOES YOUR REPORT SAY BLUE |
| 11 26 41 AM | | LITTLE BIT OF BLOOD ON ZIPPER AREA |
| 11 27 14 AM | CHANDLER | OBJECT TO CHARACTERIZATION IT WAS NOT ZIPPER |
| 11 27 33 AM | COSBY | IT WAS ON PIECE OF MATERIAL THAT COVERS ZIPPER, |
| 11 28 11 AM | | WHY TOOTHBRUSH WAS TESTED FOR NON BLOOD, TOOK IT UPON YOURSELF TO DO THE NON BLOOD |
| 11 29 43 AM | | 211 WAS NOT TESTED FOR BLOOD |
| 11 29 49 AM | | YOU TESTED SIX SWABS, WHY DID YOU NOT GET ALL SWABS THERE WERE 20 BOXES "DO NOT KNOW" |

ST VS ALBERT RAMIREZ CR-07-434                                    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 11 30 37 AM | | DIRTY WHITE SOX, HAVE TESTIMONY THAT THERE WAS A RED MARK ASSOCIATED WITH A BLISTER |
| 11 32 19 AM | | REFERS TO EXHIBITS 81 & 82, 74 & 75 |
| 11 34 18 AM | | COULD NOT TELL IF THEY WERE ALBERT'S SOX |
| 11 34 33 AM | | FINGERNAIL CLIPPINGS FOUND HIS OWN MATERIAL |
| 11 34 45 AM | CHANDLER | RDEX - WHEN FINISHED WITH DNA TESTING WHAT DO YOU DO WITH THOSE ITEMS |
| 11 35 42 AM | | BENCH CONFERENCE STATE V. DURAN |
| 11 36 30 AM | CHANDLER | THOSE ITEMS ARE RETURNED IN A MANNER WHERE OTHER AGENCIES CAN TEST THEM |
| 11 36 49 AM | | WITNESS EXCUSED |
| 11 38 56 AM | | #17 WITNESS CRIMSON MAES CALLED BY CHANDLER / SWORN / DEX |
| 11 40 14 AM | COSBY | OBJECTS TO LISTEN TO PHONE CALL |
| 11 40 28 AM | CHANDLER | WILL YOU RECALL IF I REFRESH YOUR MEMORY |
| 11 41 26 AM | | PLAY TO REFRESH HIS MEMORY |
| 11 43 44 AM | | DOES NOT RECALL IT IF IT WAS ME, I HAVE BEEN GOING THRU ALOT OF OTHER PROBLEMS, I CANNOT RECALL ANY OF THIS STUFF |
| 11 44 48 AM | COSBY | OBJECTS TO HIM |
| 11 45 08 AM | COURT | COUNSEL HAS MADE HIS OBJECTION |
| 11 45 15 AM | CHANDLER | DO YOU RECALL THE DETECTIVE ASKING YOU IN 2007 |
| 11 45 28 AM | | I DO NOT RECALL, I DON'T REMEMBER, DOES NOT RECOGNIZE DAN AGUILAR |
| 11 46 08 AM | | DO YOU KNOW WHERE RAGS TO RICHES IS, WHO IS BAM BAM |
| 11 46 44 AM | | WITNESS EXCUSED, SUBJECT TO RECALL |
| 11 47 37 AM | | #18 WITNESS JOHNATHON MARK HOWARD CALLED BY CHANDLER / SWORN / DEX , CERTIFIED POLICE OFFICER |
| 11 48 59 AM | | SUSPICIOUS CIRCUMSTANTIAL CALL RESPONDED TO CROSSHAIR'S GUN STORE AT 11 52 AM |
| 11 49 22 AM | | MET WITH DENNIS FITE, |
| 11 49 38 AM | COSBY | HE HAS ALREADY TESTIFIED |
| 11 49 52 AM | COURT | IT IS HEARSAY |
| 11 50 04 AM | CHANDLER | IT IS NOT THE TRUTH OF THE MATTER TO PROVE |
| 11 50 16 AM | | WHAT WAS MR FITES CALL ABOUT , INDIVIDUAL WHO FILLED OUT PAPERWORK WAS ALBERT RAMIREZ |
| 11 50 59 AM | | NO CRIME WAS COMMITED AND NO GUN WAS PURCHASED, COULD NOT FIND HIM ANYWHERE, NOT AGAINST LAW TO ATTEMPT TO BUY A FIREARM AT THAT AGE |

10/9/2013                                                          10 of 15

ST, VS ALBERT RAMIREZ CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 3.15 48 PM | | DO NOT HAVE ANY PROOF THAT YOUR CLIENT WAS TALKING ABOUT GUN |
| 3 16 28 PM | | YOU SAID YOU SAW BLISTERS ON BOTTOM'S OF HIS FEET DID YOU TREAT THE BLISTERS, "NO" |
| 3 17 07 PM | | PHOTO'S OF HIM IN HIS UNDERWEAR WERE TAKEN IN THE JAIL |
| 3 18 40 PM | | GRAFFITI IN JAIL |
| 3 19 08 PM | | IF A PERSON IN JAIL HAS TO BE RECORDED WHEN MAKING A CALL |
| 3 19 42 PM | | WHO IS THE PERSON HE WAS CALLING ON SECOND CALL "DO NOT KNOW" |
| 3 20 16 PM | | DID NOT CALL TO FIND OUT WHO THIS PERSON WAS |
| 3 20 37 PM | | FINDING CLOTHING 3 DAYS AFTER THE FACT |
| 3 21 46 PM | | REFERS TO HIS POLICE REPORT |
| 3 22 49 PM | | NOTE FROM JURY |
| 3 23 21 PM | COURT | DOES NOT THINK QUESTION IS APPROPRIATE |
| 3 23 34 PM | COSBY | REFERS TO EXHIBIT 8 "ARIAL PHOTO" |
| 3 26 22 PM | | HE NEVER WORKED THE SCENE |
| 3.26 46 PM | | REFERS TO EXHIBIT 58 |
| 3 28 06 PM | CHANDLER | RDEX - REFERS TO EXHIBIT 8 |
| 3 32 56 PM | | IDENTIFICATION EXHIBIT 85 |
| 3 33 25 PM | | IDENTIFICATION EXHIBIT 86 " |
| 3 34 28 PM | COSBY | OBJECTION MISMARKED |
| 3 34 37 PM | CHANDLER | WHO'S CLOTHING IN BAGS |
| 3 35 16 PM | | DID NOT FIND ANY EVIDENCE THAT NEEDED TESTING BUT HE COLLECTED, SUBJECT TO XEX MOVES FOR ADMISSION EXHIBIT 85 & 86 |
| 3 36 09 PM | COSBY | RXEX - TELL ME WHY EXHIBIT 85 IS MARKED OUT, |
| 3 37 29 PM | | EXPLAINS WHEN ARE AT A SCENE USE A DESIGNATOR |
| 3 38 33 PM | | JURORS QUESTION |
| 3 39 06 PM | CHANDLER | RDEX - WHEN ASKED IF THERE WAS A RED MARK |
| 3 39 54 PM | COSBY | RXEX - REFERS TO EXHIBIT 8 |
| 3 40 40 PM | CHANDLER | STIPULATE THAT JALISCO'S IS NOT INVOLVED |
| 3 41 04 PM | COSBY | SCENE OF THE SHOOTING, CONTINUE TO REFER TO EXHIBIT 8 |
| 3 42 50 PM | | WITNESS EXCUSED |
| 3 43 43 PM | | #5 WITNESS ANTONIO BOSQUE RECALLED BY CHANDLER |
| 3 44 06 PM | | WHO HE LISTENED PHONE CALL WITH, DID YOU HEAR |
| 3 44 34 PM | COSBY | OBJECTS UNLESS HE IS CERTIFIED |

ST, VS ALBERT RAMIREZ CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 3.45 19 PM | COURT | APPROVED HIS TRANSLATION RIGHT OR WRONG |
| 3.45 40 PM | | TRANSLATES WHAT ALBERT WAS SAYING ON PHONE CALL |
| 3.47 17 PM | COSBY | WHERE IS THE REST OF THE CALL, WHAT DID THE AUNT SAY |
| 3.47 47 PM | | MAINLY FOCUSED ON WHAT RAMIREZ SAID |
| 3.49.17 PM | | WITNESSED EXCUSED |
| 3.49 55 PM | | #10 WITNESS RAFAEL AGUILAR CALLED BY MORRIS / SWORN / DEX |
| 3.50 26 PM | | MADE CONTACT WITH DFT ON APRIL 22ND, IDENTIFICATION OF DFT IN COURTROOM |
| 3.51 28 PM | | ADDRESS RESPONDED TOO, 512 W 6TH ST, WHO WAS THERE WHEN YOU ARRIVED ALBERT RAMIREZ AND MR ROBLEDO |
| 3.52 22 PM | | SPOKE WITH MR RAMIREZ AND ISSUED A CRIMINAL TRESPASS FOR THAT ALBERT NOT |
| 3.53 04 PM | | OFFERS EXHIBIT 85 "CRIMINAL TRESPASS" |
| 3.53 09 PM | COSBY | OBJECTS / COURT ADMITS |
| 3.54 11 PM | COSBY | XEX - WHO OWNS THE PREMISES AT 512 W 6TH DID YOU CHECK WHO OWNED IT, "NO" |
| 3.55 29 PM | | SHOWS PLATEAU WIRELESS DOCUMENT, WHO WAS LIVING THERE 8/21/06 |
| 3.57 08 PM | | REFERS TO EXHIBIT 56 "PADLOCK ON BEDROOM DOOR" |
| 3.57 51 PM | | HE DOES NOT KNOW ON THE DAY OF THE SHOOTING |
| 3.58 12 PM | | HOW OLD WAS MY CLIENT |
| 3.59 41 PM | | NOT SURE HOW LONG HE WAS LIVING THERE. |
| 4.00 16 PM | MORRIS | RDEX - DID ELADIO TELL YOU WHAT DEBRA SAID SHE DID, NOT WANT HIM AT THE HOUSE |
| 4.01 27 PM | | WITNESS EXCUSED |
| 4.01 47 PM | | #11 WITNESS DARYL RICE CALLED BY MORRIS / SWORN / DEX |
| 4.02 38 PM | | WHAT HAPPENED ON MAY 31ST 2007, HOW YOU CAME IN CONTACT WITH ALBERT RAMIREZ |
| 4.03 33 PM | | REFRESH MEMORY BY SEEING REPORT |
| 4.03.49 PM | | DEBRA RAMIREZ WAS UPSET, SHE STATED THAT HER SON ALBERT HAD BUSTED THE WINDOWS OF CAR |
| 4.04 15 PM | COSBY | OBJECTS |
| 4.04 30 PM | | IT WAS THE CAR BELONGING TO HER BOYFRIEND |
| 4.04.57 PM | | DID YOU EVER RECIEVE AN ESTIMATE FOR REPAIRS "YES FROM GLASS DOCTOR" |
| 4.05 37 PM | | ASKED ALBERT WHAT HAPPENED HE SAID I GOT MAD |
| 4.06 29 PM | COSBY | XEX - WHAT DATE WAS YOUR REPORT MAY 31, 2007 |
| 4.07.28 PM | MORRIS | STIPULATE HE WAS 18 YEARS OLD |



be admissible in evidence against such person in any criminal proceeding on any issue other than that of the person's sanity, ability to form specific intent or competency to stand trial."

5   The testimony of Dr Burness is not admissible unless and until the defendant presents a claim of lack of specific intent or insanity to the jury.

WHEREFORE, the defendant prays this Court issue an Order requiring the State not to present any statements made by defendant to Dr Burness at trial and further relief as the Court deems just and proper

Respectfully Submitted,

HUGH W DANGLER
CHIEF PUBLIC DEFENDER

By: _____

BRETT J CARTER
District Public Defender
Clovis District Office
800 Pile, Suite A
Clovis, NM 88101
(505) 769-1991

I HEREBY CERTIFY THAT A COPY OF THE FOREGOING WAS DELIVERED/MAILED TO OPPOSING COUNSEL ON THE DATE OF FILING STAMPED ABOVE

_____
PUBLIC DEFENDER DEPARTMENT

RP 269

IN THE NINTH JUDICIAL DISTRICT COURT
STATE OF NEW MEXICO
COUNTY OF CURRY

2000 JAN 13 PM 3: 34

STATE OF NEW MEXICO,

Plaintiff,

vs.                                          No. D-0905-CR-0200700604

ALBERT RAMIREZ,

Defendant

## DEFENDANT'S MOTION TO EXCLUDE THE INTRODUCTION OF ALL PHOTOGRAPHS OF THE DECEASED AT TRIAL

Defendant Albert Ramirez, through counsel, requests this Court to exclude the

State from offering all photographs of the deceased at trial wherein the following is

shown.

1. The defense believes that the State will attempt to introduce photographs of

the deceased, that were taken at the hospital and at the autopsy

2. They are twenty five photographs of the deceased that were taken at the

hospital  The photo's depict a large amount of blood and extremely prejudicial to the

defendant. The photographs taken at the hospital of the victim depict the victim unclothed

with the exception of a small towel covering his private parts. The cause of death is not in

dispute and the only reason to introduce the photographs is to appeal to the emotions of

the jury and prejudice the jury against the defendant

3 Photographs taken at the autopsy are *per se* prejudicial to the defendant, and

any evidence they provide of the alleged crime is cumulative and more prejudicial than

probative

RP 270

ST. VS ALBERT RAMIREZ  CR-07-434                          CR1 CHAMBERS

| Time | Speaker | Note |
|------|---------|------|
| 10:58:56 AM | CHANDLER | ON XEX GONNA ASK THIS COURT FOR ABOUT 10 OR 15 MINUTES WOULD LIKE TO DISCUSS WITH CO COUNSEL, SAID HE HAS NOT TESTIFIED BEFORE, I RENEW MY |
| 11:00:15 AM | COSBY | IT WAS NOT A JURY TRIAL IT WAS A BENCH TRIAL, HE/ BATTERED A TRANSPORT OFFICER |
| 11:01:15 AM | COURT | IF XEX TRIGGERS I WILL CHANGE MY RULING |
| 11:01:44 AM | RECESS | |
| 3:44:06 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY, DFT AND ALL PARTIES PRESENT |
| 3:44:27 PM | CHANDLER | DEFENSE HAS RESTED AND HAVE GIVEN US A COUPLE OF INSTRUCTIONS GUILTY BUT MENTALLY ILL, HE IS ATTEMPTING TO RAISE COMPETENCY, OUR REBUTTAL WITNESSES ARE GOING TO TESTIFY THAT THEY HAVE EXAMINED THE DFT, ETC. |
| 3:45:47 PM | COURT | HAVE NOT SEEN A DFT THE WAY THIS TRIAL HAS UNFOLDED |
| 3:46:20 PM | CHANDLER | WE HAVE CASELAW |
| 3:46:30 PM | COSBY | I AM NOT GOING TO SUBMIT A COMPETENCY INSTRUCTION, |
| 3:46:46 PM | CHANDLER | WE ARE NOT OBJECTING, THE ONLY MENTAL ILLNESS THAT PROBABLY COULD HAVE BEEN TESTIFIED, DFT TOOK STAND AND HE DID NOT RAISE ISSUE |
| 3:47:42 PM | COSBY | THE GBMI WAS AVAILABLE, BUT THAT DOES NOT DEPRIVE HIM OF THE RIGHT TO HAVE IT SUBMITTETD, GBMI VERDICT IS NOT SOMETHING TO GIVE, HE IS ENTITLED WE HAVE TENDERED IT, |
| 3:48:58 PM | COSBY | OPPOSES TO REBUTTAL WITNESSES BEING CALLED |
| 3:49:17 PM | COURT | BASIS UPON |
| 3:49:34 PM | MORRIS | THEY WERE CALLED , THEY ALSO CAN TESTIFY AS TO THEIR OPINION |
| 3:50:52 PM | | HE LISTED BOTH OF THESE DOCTORS, HE HAS NOT LISTED DR. SWARTZ |
| 3:51:10 PM | CHANDLER | YOU CANNOT BRING IN AN EXPERT YOU HAVE NOT DISCLOSED |
| 3:51:27 PM | COURT | AS A PRACTICAL MATTER WHAT YOU DO IN YOUR INSTRUCTIONS YOU HAVE A GUILTY AND GUILTY BUT MENTALLY ILL, |
| 3:52:06 PM | COSBY | WE ARE NOT GOING TO ASK FOR SELF DEFENSE, WILL WITHDRAW BECAUSE OF MENTAL ILLNESS OR DEFECT |
| 3:52:52 PM | OFF RECORD | |

1 cross-examining Defendant about previous acts of violence  Therefore, the State

2 argues that the evidence was properly admitted to show motive and pattern of conduct.

3 {45}    When a district court's evidentiary ruling is properly preserved for review, we

4 examine the ruling under an abuse of discretion standard  *See State v. Flores*, 2010-

5 NMSC-002, ¶ 25, 147 N M. 542, 226 P.3d 641. "An abuse of discretion occurs when

6 the ruling is clearly against the logic and effect of the facts and circumstances of the

7 case." *Id.* (internal quotation marks omitted). We will not say that the district court

8 "abused its discretion by its ruling unless we can characterize it as clearly untenable

9 or not justified by reason." *Id.* (internal quotation marks and citation omitted).

10 **1.     Evidence of the trespass order, broken windshield, and broken window**

11 {46}    First, Defendant argues that the court improperly admitted testimony about a

12 "no trespass" order Robledo had issued to Defendant, in violation of Rule 11-404.

13 The State responds that evidence regarding the "no-trespass" order was relevant and

14 admissible because it demonstrated a pattern of conduct toward Robledo from which

15 the jury could infer that Defendant acted with deliberate intention to kill Robledo  In

16 addition, the State argues that Defendant did not object to testimony about the order

17 at trial only to the admission of the actual trespass order.

24

1 {47}   At trial, the prosecution sought to elicit testimony that three months prior to the
2 murder, Robledo had obtained a criminal trespass notice barring Defendant from
3 returning to the home.  The district court had previously ruled, prior to trial, that
4 evidence of the no-trespass order issued against Defendant by Robledo was admissible
5 as it was relevant to proving deliberate intent  During trial, defense counsel objected
6 to the admission of the trespass order.  The court, finding that testimony about the
7 order was admissible as to motive, overruled the objection.

8 {48}   Second, Defendant argues that the court improperly admitted testimony about
9 a prior incident involving a broken windshield.  The State argues that evidence
10 regarding the broken window was relevant and admissible because it demonstrated a
11 pattern of conduct toward Robledo from which the jury could infer that Defendant
12 acted with deliberate intention to kill Robledo.

13 {49}   At trial, the prosecution sought to admit evidence that approximately one
14 month before the killing, Defendant broke the windshield of Robledo's car because
15 he "got mad."  The defense objected to the testimony at trial regarding the broken
16 windshield, claiming it was "uncharged conduct."  The district court allowed the
17 testimony finding that it demonstrated Defendant's pattern of conduct toward
18 Robledo

25

1  {50}    Third, the court admitted testimony about a police investigation of a broken

2  window at Robledo's house, although the court did not allow the witness to testify as

3  to who had broken the window. The State argues that Defendant failed to preserve

4  any argument regarding the broken window because he did not move to have the

5  testimony stricken after the district court sustained the objection.

6  {51}    At trial, the prosecution sought to introduce testimony that a month before the

7  killing, Defendant's mother had filed a police report after Defendant had broken the

8  front window of Robledo's home when no one would answer the door.  The

9  prosecutor asked the responding officer if he knew who had broken the window

10  Defense counsel objected, arguing that the responding officer's testimony as to who

11  broke the window was inadmissible hearsay testimony and violated Defendant's

12  confrontation rights.  The court sustained the objection  Despite the limitation on the

13  prosecution, the Defendant subsequently testified on cross-examination that after no

14  one answered the door, he had broken the window by knocking on it as it was

15  "flimsy."  On appeal, Defendant argues that all of the testimony about the broken

16  window, including the filing of the police report, was improper.

17  {52}    "Evidence of a crime, wrong, or other act is not admissible to prove a person's

18  character in order to show that on a particular occasion the person acted in accordance

26

1 with the character." Rule 11-404(B)(1) NMRA. However, "[t]his evidence may be

2 admissible for another purpose, such as proving motive, opportunity, intent,

3 preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule

4 11-404(B)(2).

5 {53}    The procedure for admitting evidence under Rule 11-404(B) requires first,

6 identification of the "consequential fact to which the proffered evidence of other acts

7 is directed." *State v. Serna*, 2013-NMSC-033, ¶ 17, 305 P.3d 936 (internal quotation

8 marks and citation omitted). Second, the rule requires a demonstration of the other

9 acts' "relevancy to the consequential facts, and the material issue, such as intent, must

10 in fact be in dispute." *Id* (internal quotation marks and citation omitted). Third, if the

11 evidence offered is of a crime other than the one charged, the other crime must "have

12 a real probative value, and not just possible worth on issues of intent, motive, absence

13 of mistake or accident, or to establish a scheme or plan." *Id* (citation omitted).

14 "[T]he rationale for admitting the evidence [must be] to prove something other than

15 propensity." *Id.; see also State v. Martinez*, 1999-NMSC-018, ¶ 27, 127 N.M 207,

16 979 P.2d 718 ("The list of permissible uses of evidence of other wrongs in Rule 11-

17 404(B) is intended to be illustrative rather than exhaustive, and evidence of other

27

1  wrongs may be admissible on alternative relevant bases so long as it is not admitted

2  to prove conformity with character." (citation omitted)).

3  {54}   Here, the evidence of the "no trespass" order, testimony about the broken

4  windshield, and the broken window was consequential to the determination of whether

5  Defendant had the intent to kill Robledo, an essential element of first-degree murder.

6  The State was not attempting to prove that Defendant acted in accordance with his

7  character, but rather that Defendant had motive and the intent to murder Robledo

8  because of their strained relationship. Such a purpose is permitted under Rule 11-402

9  NMRA. *See, e g., State v Rojo,* 1999-NMSC-001, ¶ 47, 126 N.M. 438, 971 P.2d 829

10  (holding that evidence of the defendant's and victim's deteriorating relationship and

11  the specific actions surrounding her reason for rejecting the defendant "directly

12  addresse[d] the motivational theories presented at trial . . . [and t]hus, the trial court

13  did not abuse its discretion by admitting this evidence . . . ."); *see also State v. Allen,*

14  2000-NMSC-002, ¶ 41, 128 N.M. 482, 994 P.2d 728 (holding that "evidence of

15  Defendant's prior crime in 1982 was relevant to prove his motive for the murder in

16  the context of the aggravating circumstance of murdering a witness." (citations

17  omitted)). Accordingly, we hold that the district court did not abuse its discretion in

18  admitting the evidence of Defendant's prior acts.

28

## 2.   Evidence of the head-butt on an officer

{55}   Defendant argues that the district court erred in allowing the prosecution's inquiry during cross-examination about whether Defendant had head-butted a police officer, arguing such evidence was "not connected by the prosecution in any manner to killing of Mr. Robledo." The State argues that Defendant testifying that Robledo was the first aggressor opened the door to being cross-examined on specific instances of conduct where Defendant was aggressive and violent, including the head-butt on an officer.

{56}   At trial, Defendant testified that on the day he shot Robledo, he went to his mother's house, saw Robledo, and they began arguing. Defendant claimed Robledo struck him and hit him. Defendant also testified that Robledo "picked on" him, that the Defendant had heard from his mother that Robledo had killed someone, and that Robledo was not nice and not caring. Defendant stated that he did not plan to kill Robledo, but that he was defending himself and knew that Robledo had a gun. Defendant thought he was in danger when Robledo allegedly threatened to get his pistol.

{57}   On cross-examination, the prosecution asked the district court to allow evidence of specific instances where the Defendant was aggressive, under Rule 11-

29

1 404(A)(2)(b)(ii) and Rule 11-405, because Defendant put forth evidence that Robledo,
2 the victim, was the first aggressor and had a violent character. Defense counsel
3 objected to the question, arguing that it did not satisfy any of the purposes of Rule 11-
4 404. The court overruled the objection. The district court granted the prosecution's
5 request to admit evidence of specific instances of conduct and allowed the prosecution
6 to ask the question. The prosecutor asked Defendant, "[i]sn't it true that you have also
7 head-butted a police officer?" Defense counsel, in order to preserve the issue for
8 appeal, renewed his objection.

9 {58}    The Rules of Evidence contain an exception in criminal cases to the general rule
10 prohibiting character evidence: if a defendant offers evidence of a victim's pertinent
11 trait, the State can offer rebuttal "evidence of the defendant's same character trait."
12 Rule 11-404(A)(2)(b)(ii). "When evidence of a person's character is admissible, it
13 may be offered in the form of reputation or opinion evidence  *See* Rule 11-405(A).
14 "On cross-examination of the character witness . . . inquiry into relevant specific
15 instances of the person's conduct" are allowed. Rule 11-405(A). Or "when a person's
16 character or character trait is an essential element of a charge, claim, or defense, the
17 character or trait may also be proved by relevant specific instances of conduct." Rule
18 11-405(B).

30

1  {59}    While it is correct that the defendant who offers evidence of a victim's pertinent

2  character trait (e.g., violence) opens the door to allow the prosecution to offer

3  evidence of the defendant's same character trait, under Rules 11-404(A)(2)(b) and 11-

4  404(A)(2)(b)(ii) NMRA, the evidence that is admitted may only be reputation or

5  character evidence, unless the character trait is an essential element of the crime

6  charged.  Here, Defendant offered evidence at trial that he shot Robledo in self-

7  defense because Robledo was the first aggressor.  He supported this assertion by

8  offering evidence of Robledo's character: that Robledo was a violent and aggressive

9  man who had killed a person.  This was evidence of the victim's "pertinent trait": a

10  reputation for violence and aggression.  By offering the evidence of Defendant's head-

11  butt on an officer during cross-examination of Defendant, the State was offering

12  evidence that Defendant had the same traits for aggression and violence through an

13  inquiry into specific instances of Defendant's conduct.  The evidence of head-butting

14  an officer is not reputation or opinion testimony.  Nor is it proving an essential

15  element of the crime charged because violence is not a specific element of murder or

16  self-defense.  *State v Baca*, 1993-NMCA-051, ¶ 16, 115 N.M. 536, 540, 854 P.2d

17  363, 367 ("The victim's violent disposition is not an 'element' of the defense in the

18  strictest sense; rather, it is used circumstantially -- that is, to help prove that the victim

31

*Prer bad*

*acts*
*Evidence Including Argument*
*inadmissible*

STATE OF NEW MEXICO
COUNTY OF CURRY
NINTH JUDICIAL DISTRICT

STATE OF NEW MEXICO,

Plaintiff,

v

No CR-2007-434

ALBERT RAMIREZ,

Defendant

## DESIGNATION OF EXHIBITS

Pursuant to Rule 12-212 NMRA, the Defendant designates the following exhibits

1   State's Exhibits #1 - #110.

*LETTER Rap*
*Song Starm)*
*OF Killing people*
*to Heip prove*
*1st degree. Murdel*
*Delibuate willFull*
*it was admitted*
*was inadmissible.*

Respectfully submitted

Jesse R Cosby, Esq
JESSE R COSBY, P.C
Attorney for Defendant
P.O Box 3330
Roswell, New Mexico 88202-3330
(575) 625-0516

*And Then Said it*

C. Shackles
Error

# THIS PAGE

# INTENTIONALLY

# LEFT

# BLANK

ALL PAPERS ARE FACTS. EXIBITS
Record, documents Evidence,
    Cases. RelevANT TO MY case

C. SEE CASE LAW.
    STATE V. BRAWLEY
    Cite, as. 137 A.3d. 757
        (CONN. 2016).

IT SAYS. The COURT RULEd to
AllOW defuncianT May SEEK To
ESTABLISH THAT THE JURY did,
in Fact, obseeve hm IN Shackles
IN CONNECTION with a petition
FOR WRit OF HaBeAus CORPUS.

trial with respect to whether the jury could or did see the restraints. In fact, defense counsel never renewed or amplified his initial objection after the trial court denied his motion to have the shackles removed. Furthermore, our review of the record reveals no evidence to suggest that the jury actually saw or otherwise knew of the defendant's shackles. In addition, according to the trial court's rectification of the record, the defendant always was seated at the defense table before the jury entered, and he remained ~~there~~ until after the jury left the courtroom. Finally, the fact that the trial court could not recall presiding over a single case in which a jury had been able to observe a

arguments. Id at 634–35. 125 S Ct. 2007. With respect to the first contention, the court determined that contrary to Missouri's assertion the record in the case "[made] clear that the jury was aware of the shackles." Id at 634. 125 S Ct. 2007. With regard to the second argument, the court concluded that the record contain[ed] no formal or informal findings explaining the trial court's reasons for imposing the requirement of shackles beside the fact that Deck already [had] been convicted." (Internal quotation marks omitted.) Id. On the basis of its rejection of the two foregoing arguments the court rejected Missouri's final argument concluding that when a court, without adequate justification orders [a] defendant to wear shackles that *will be seen by the jury* the defendant need not demonstrate prejudice to make out a due process violation. The [s]tate must prove beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained. (Emphasis added. Internal quotation marks omitted.) Id at 635. 125 S Ct. 2007.

Thus *Deck* makes clear that a heightened burden falls on the state when the unwarranted restraints *are visible* to the jury and not when as in *Banegas* the record is silent on the matter. Accordingly we disagree with the conclusion that the court reached in *Banegas*. We further note that our understanding of the United States Supreme Court's holding in *Deck* is consistent with that of other federal and state courts that have examined the issue

defendant in restraints strongly supports the conclusion that the jury in the present case did not see the defendant's shackles. On the present record therefore, the defendant has failed to establish that the trial court's impropriety in having him shackled during his trial abridged his presumption of innocence.[4]

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.



See e g. *Mendoza v Berghuis* 544 F 3d 650 654 (6th Cir 2008) ( *Deck's* facts and holding concerned only visible restraints at trial. The [United States] Supreme Court was careful to repeat this limitation throughout its opinion. [Emphasis omitted ]) cert denied 556 U S 1188 129 S Ct 1996 173 L Ed 2d 1096 (2009) see also *Ochoa v Workman* 669 F 3d 1130 1145 (10th Cir) ( it is the potential impact on the jury of visible restraints that implicates the fundamental fairness of a jury trial proceeding ) cert denied ── U S , 133 S Ct. 321 184 L Ed 2d 190 (2012), *People v Leiner* 50 Cal 4th 99 155 235 P 3d 62 112 Cal Rptr 3d 746 (2010) (*Deck* did not support contention that prosecution was required to disprove visibility when there was no evidence in record that jury observed defendant wearing shackles) cert denied 563 U S 939 131 S Ct 2143 179 L Ed 2d 897 (2011), and cert denied sub nom *Tobin v California* 563 U S 939 131 S Ct 2097 179 L Ed 2d 897 (2011) *Hoang v People* 323 P 3d 780, 785–86 (Colo ) (when restraints are visible to jurors, prosecution bears burden to prove harmless error, but when it is not apparent from record that jury had observed shackles defendant must demonstrate visibility) cert denied ── U S ── 135 S Ct 233 190 L Ed 2d 175 (2014)

4   Of course the defendant may seek to establish that the jury did in fact, observe him in shackles in connection with a petition for a writ of habeas corpus

case to that court for further proceedings consistent with this opinion

In this opinion the other justices concurred



321 Conn 583

**STATE of Connecticut**

v.

**Michael BRAWLEY.**

**No. 19441.**

Supreme Court of Connecticut

Argued Dec 15, 2015

Decided June 14, 2016.

**Background.** Defendant, who remained shackled during trial, was found guilty in the Superior Court, Judicial District of Waterbury, Schuman, J, of burglary, con spiracy to commit burglary, kidnapping, conspiracy to commit kidnapping, assault, and carrying a pistol without a permit by the jury, and of criminal possession of a firearm by the court Defendant appealed The Appellate Court affirmed Defendant petitioned for certification to appeal

**Holding** The Supreme Court, Palmer, J, held that defendant did not provide evi dence required to support claim that his presumption of innocence was abridged by shackles.

Affirmed

**1. Criminal Law ⇐637.7**

Burglary defendant did not provide evidence demonstrating that jury actually was aware of his restraints at trial, as required to support claim that his presumption of innocence was abridged by trial court requiring him to remain shack-

led, even though record did not disclose reason that shackling was reasonably nec essary defense did not make any offer of proof with respect to whether jury saw restraints, there was no evidence to suggest that jury actually saw shackles, court's rectification of record indicated that defendant always was seated at defense table before jury entered and after jury left courtroom, and court could not recall single case in which jury had been able to observe defendant in restraints Practice Book 1998, § 42–46

**2. Criminal Law ⇐637.2**

As a general proposition, a criminal defendant has the right to appear in court free from physical restraints

**3. Criminal Law ⇐308**

The presumption of innocence, although not articulated in the constitution, is a basic component of a fair trial under the system of criminal justice

**4. Criminal Law ⇐637.2, 637 3**

A defendant's right to appear before the jury unfettered is not absolute, a trial court may employ a reasonable means of restraint on a defendant if, exercising its broad discretion in such matters, the court finds that restraints are reasonably necessary under the circumstances   Practice Book 1998, § 42–46

**5. Criminal Law ⇐637 4**

The law permits a state to shackle a criminal defendant during the guilt phase only in the presence of a special need Practice Book 1998, § 42–46

**6 Criminal Law ⇐637 1**

In order for a criminal defendant to enjoy the maximum benefit of the pre sumption of innocence, courts should make every reasonable effort to present the defendant before the jury in a manner that does not suggest, expressly or impliedly,

Shackles

1  {41}    In reviewing the fundamental error exception to the preservation rule, we must
2  first determine whether an error occurred and if so, whether the error was
3  fundamental. *See id.* Fundamental error "must be such error as goes to the foundation
4  or basis of a defendant's rights or must go to the foundation of the case or take from
5  the defendant a right which was essential to his defense and which no court could or
6  ought to permit him to waive." *State v. Johnson*, 2010-NMSC-016, ¶ 25, 148 N.M.
7  50, 229 P.3d 523 (citation omitted). "Fundamental error only applies in exceptional
8  circumstances when guilt is so doubtful that it would shock the judicial conscience to
9  allow the conviction to stand." *Id.*

10  {42}    In *Holly*, we held that no fundamental error occurred where it was unclear
11  whether the juror had actually seen the defendant in handcuffs, and if they had,
12  whether it was more than "inadvertent or insignificant exposure." 2009-NMSC-004,
13  ¶ 42. Similarly, in *Johnson*, because there was no indication that the jury was aware
14  the defendant was wearing leg irons during a trial, the presumption of innocence was
15  not violated, the dignity of the judicial process was not affected, and the district court
16  did not commit fundamental error. 2010-NMSC-016, ¶¶ 25, 29.

17  {43}    Here, defense counsel concedes that a black skirt on the table shielded the jury's
18  view of Defendant's shackles and that he did not ask the court to make a finding of

22

Prosecutorial misconduct

# THIS PAGE

# INTENTIONALLY

# LEFT

# BLANK

ALL papers of facts, and Ex.9125
Record, documents, cases Relevant
To my case

D.
PROSECUTORIAL MISCONDUCT.

IN 3 INSTANCES.

①. IN Cross EXAMINATION prosecutor
questioned petitioner of doing
legal Research to beat his charges.
And legal research to get the
Jury to buy this.
ITS prosecutorial MISCONDUCT
ON COMMENT ON RIGHT TO
assist IN HIS defence.
See exibits,

②. COMMENT IN CLOSING Argument
that MR. Ramirez is a
Menace to Society And A
Manager. I Need transcripts
There is No Evidence
to prove this.

③. USING prior bad ACTS IN Closing
Arguments. That were INCOMMISSIBLE
And Prejudicial and IrrelevANT
To The Murder Case
See exibits.

1 prejudice or declare a mistrial. Because it is unclear whether the jury saw the leg

2 restraints and if they did, there is no evidence that it was anything other than

3 inadvertent or insignificant exposure, this case is not the exceptional type that goes

4 to the violation of the foundation of presumption of innocence. Further, this case does

5 not shock the conscience as Defendant's guilt is supported by substantial evidence in

6 the record, including eyewitness testimony and evidence of Defendant's motive and

7 a pattern of conduct toward Robledo. *See State v. Trujillo*, 2002-NMSC-005, ¶ 60,

8 131 N.M. 709, 42 P.3d 814 (holding that because the Court found "substantial

9 evidence in the record to support Defendant's convictions, and because Defendant

10 failed to demonstrate circumstances that 'shock the conscience' or show a

11 fundamental unfairness," no fundamental error existed). Accordingly, there was no

12 fundamental error by the district court.

13 **E.     The court did not abuse its discretion in admitting prior bad acts**

14 {44}     Defendant's fifth issue is that the district court erred in admitting evidence of

15 prior acts, in violation of Rule 11-402 NMRA. Defendant argues that cumulatively,

16 the introduction of this evidence created the impression that Defendant was

17 troublesome and a lawbreaker. The State argues that the district court did not err in

18 allowing the State to present evidence of Defendant's animus toward the victim or *in*

1 | acted in the particular manner at the time of the incident in question.") It seems that

2 | the information of Defendant head-butting an officer is being used only to show

3 | Defendant's propensity for violence. And contrary to the State's argument, under

4 | Rule 11-405(A) on cross-examination it is the specific instances of Robledo's conduct

5 | that is allowed to rebut the testimony from Defendant of Robledo's "pertinent trait."

6 | See Rule 11-405.

7 | {60}   Accordingly, it was error for the district court to admit the evidence of

8 | Defendant's prior act of head-butting a police officer   Non-constitutional error is

9 | harmless when there is no reasonable probability the error affected the verdict. *State*

10 | *v. Tollardo*, 2012-NMSC-008, ¶ 36, 275 P.3d 110. In the context of all the evidence

11 | in the record as referenced in paragraphs 3 and 4, *supra*, this isolated error was

12 | harmless and had no effect on the conviction.

13 | **F.   The district court did not abuse its discretion by not declaring a mistrial**
14 | **based on questions about Defendant's legal research**

15 | {61}   Defendant's sixth issue is that the district court abused its discretion when it

16 | denied Defendant's motion for a mistrial after the prosecutor cross-examined

17 | Defendant about the amount of legal research he conducted. Defendant argues that

18 | the prosecution's conduct shows a calculated and pervasive strategy of penalizing the

19 | Defendant for the exercise of his constitutional rights by characterizing Defendant's

prosecutor 32
misconduct

1  actions as manipulative abuses of "the system." The State argues that because

2  Defendant initially indicated that he was seeking to argue a defense of self-defense,

3  the prosecutor did not cross the line by asking about the amount of legal research

4  Defendant had conducted.

5 {62}    During the cross-examination of Defendant, the prosecutor asked, "And you've

6  done a significant amount of legal research on how to get the jury to buy this?" The

7  defense objected and moved for a mistrial. The court directed the prosecution to lay

8  a foundation. The prosecutor asked Defendant, "Do you recall giving a lot of requests

9  to go to the law library to research how to beat your charges?" Defense counsel

10  objected a second time, arguing that the question rose to prosecutorial misconduct,

11  and again asked for a mistrial  The judge ruled that he would not allow the questions

12  about Defendant's research and would not declare a mistrial.

13 {63}    We examine a district court's denial of a motion for mistrial based on an

14  allegation of prosecutorial misconduct under an abuse of discretion standard. See

15  *Allen*, 2000-NMSC-002, ¶ 95 ("the trial court is in the best position to evaluate the

16  significance of any alleged prosecutorial errors" (citation omitted)); see also State v

17  *Ramos-Arenas*, 2012-NMCA-117, ¶ 1, 290 P.3d 733. An isolated, minor impropriety

18  ordinarily is not sufficient to warrant reversal  because a fair trial is not necessarily

33

1  a perfect one." *Allen*, 2000-NMSC-002, ¶ 95 (internal quotation marks and citations

2  omitted).

3  {64}  Reviewing all of the comments made, in the context in which they were made,

4  and taking into account those comments' potential effect on the jury, the questions

5  were isolated and minor. Accordingly, the prosecutor's remarks did not deprive

6  Defendant of a fair trial.

7  **IV.    CONCLUSION**

8  {65}    We hold that the district court did not commit reversible error as to all of

9  Defendant's claims. Accordingly, we affirm Defendant's convictions.

10  {66}    **IT IS SO ORDERED.**
11

12
13                                      **PETRA JIMENEZ MAES, Justice**
14

15  **WE CONCUR:**

16
17  **CHARLES W. DANIELS, Chief Justice**

18
19  **EDWARD L. CHÁVEZ, Justice**

34



Washington as a 'self-serving, illogical selfish non compassionate, no emotional interest in a family type of person," who acted irrational due to "drugs and alcohol ism and a general not caring about other people' J.A. at 270–71 The crime, he implored to the jury, "[s]ure fits him" J.A. at 271 The prosecutor thus articulat ed perhaps the paradigm of the improper 'bad character" argument—that the alleged criminal acts "fit" the evidence of Washington s character and lifestyle Because this character attack pervaded the closing argument and rebuttal, we find that the prosecutor s misconduct was se ere *See Cook*, 602 F.2d at 120 (making the same conclusion after a pervasive char acter attack)

2

[7] We also agree with Petitioner that the prosecutor engaged in serious misconduct when he characterized Tamara's story as having been consistent over time when there was no evidence supporting that factual assertion

[8 9] Misrepresenting facts in evidence can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Donnelly v. DeChristoforo* 416 U S 637, 646 94 S Ct. 1868, 40 L Ed.2d 431 (1974) For similar reasons, asserting facts that were never admitted into evidence may mislead a jury in a prejudicial way *See Berger v United States*, 295 U S 78 84, 55 S Ct 629, 79 L Ed 1314 (1935) This is particularly true when a prosecutor misrepre-

4   Q   Did you tell your mother something that happened to you then?
     A   Yes
     Q   Why d you tell her?
     A   Cause I didn t want to go back there
     Q   Did you talk to some nurses or maybe one nurse[?]
     A   I talked to a doctor and a nurse
     Q   Did you tell them what happened to you[ ]?
     A   Yes

sents evidence because a jury generally has confidence that a prosecuting attorney is faithfully observing his obligation as a representative of a sovereignty. *See id* at 88, 55 S Ct 629

Given this precedent characterizing Tamara s conversations with different individuals as consistent comprised clear prosecutorial misconduct The State suggested that Tamara had been consistent when it stated the following

This child talked to her mother, this child talked to the doctor This child talked to the social service worker in detail She testified This child talked to Sergeant Elford in detail This child went through preliminary examination and cross examination where there was cross examination and this child testified before you and *nowhere for the most part based upon what happened, has it changed.*

J A. at 255 (emphasis added). Yet apart from the doctor s notes—to which the parties stipulated—the prosecutor elicited no evidence on the specifics of Tamara s conversations with any of these individuals establishing only that conversations had occurred Surely then, there was no evidence as to whether or not her story had changed

When Tamara herself testified, she stated only that she had conversations with the referenced people and that she had told them "what happened." The prosecutor did not ask her to describe the details of those conversations, nor did she volunteer them[4] Moreover, no other witnesses

     Q   Okay And then   did a lady come out to see you at your school?
     A   Yes
     Q   Did she talk to you alone?
     A   Yes
     Q   And did you tell her what had happened to you?
     A   Yes
     Q   She asked you didn t she?
     A   Yes
     Q   Okay And then later on there was some policemen Sergeant Elford this gentleman right here?

testified about what Tamara told them because such testimony would have been in admissible hearsay. First, as Cora Beard was about to explain to the jury what Tamara had told her, Keston objected on hearsay grounds. She therefore testified only that, as a result of Tamara's statements, she did not move back in with Washington and she took Tamara to the hospital. During his examination of Sergeant Elford, the prosecutor only elicited that Elford interviewed Tamara Beard, and that he spoke to the prosecutor's office after that interview. Similarly, Woodson the social service worker who examined Tamara, testified only that she had talked with Tamara four times, that Tamara had been alone with her for three of those conversations and that as a result of their talks, she had contacted Sergeant Elford. She said nothing of the content of their conversations.

Given this testimony, we find that the State committed plain misconduct by stating that Tamara's story had not changed as she talked to these different individuals. Not only did the prosecutor improperly refer to statements not in evidence, but it is clear that the prosecutor's purpose was to enhance Tamara's credibility in the eyes of the jury. *See, e.g.,* J.A. at 255 ("You think that a ten year old child is going to go through all of that, fool everybody, talking about two instances."). Such bolstering is also improper. *Cf. United States v. Francis,* 170 F.3d 546, 551 (6th Cir 1999) (stating that improper "[b]olstering occurs when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury"); *United States v. Duval,* No. 89-1891 1990 WL 52871 at

*2 (6th Cir April 26, 1990) (unpublished decision) (stating that improper witness vouching occurs when a prosecutor alludes to evidence outside the record as supporting the witness's testimony).

[10, 11] Finally, we are unmoved by the State's feeble attempt to justify its plain misconduct. The State argues in its brief that in "this case Petitioner was charged with first degree criminal sexual conduct involving penetration. Obviously Tamara must have given a statement to someone prior to trial in which she claimed penetration." Hofbauer's Br at 23 In a similar vein the State contended at oral argument that the prosecutor was simply pointing out to the jury that Tamara did not 'recant' her story, a position the State argues was a reasonable inference given that the State brought the prosecution. This explanation is specious for two reasons. First, this justification simply sidesteps the impropriety at issue. The prosecution did far more than merely inform the jury that Tamara "must have' stated that penetration occurred at some point, or that she did not "recant" her story. Instead, it informed the jury that Tamara's story to each and every witness had never changed when there was in fact no evidence to that effect. This argument was a clear attempt to boost the credibility of Tamara and the believability of her story. Second, the very premise of the State's justification on appeal is flawed. Indeed, if the State had been attempting to argue the "reasonable inference" it described at oral argument and in its brief, that effort itself would have constituted gross misconduct. "[I]t is always improper for a prosecutor to suggest that a defendant is guilty merely be-

> A    Yes
> Q    Did he talk to you and ask you what happened?
> A    Yes
> Q    Go over it with you?
> A    Yes
> Q    And then there came a time a while ago that you testified across the street over here in the District Court building before a judge didn t you?

> A    Yes
> Q    And he asked about telling the truth and you were under oath is that right?
> A    Yes
> Q    And you told the court what happened?
> A    Yes
> J A  at 162–63

defendant needs and burden rests on the accused to demonstrate a constitutional violation. U.S.C.A. Const.Amend. 6.

**12. Criminal Law ⚖ 641.3**

Trial is unfair if the accused is denied counsel at a critical stage of the trial. U.S. C.A. Const.Amend. 6.

**13. Criminal Law ⚖ 641.13(1)**

If counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, there has been a denial of Sixth Amendment rights which makes adversary process itself presumptively unreliable. U.S.C.A. Const.Amend. 6.

**14. Criminal Law ⚖ 641.13(1)**

Only when surrounding circumstances justify a presumption of ineffectiveness can Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial. U.S.C.A. Const.Amend 6.

**15. Criminal Law ⚖ 641.13(1), 1166.11**

Fact that accused can attribute a deficiency in his representation to a source external to trial counsel does not make it any more or less likely that he received the type of trial envisioned by the Sixth Amendment, nor does it justify reversal of his conviction absent an actual effect on the trial process or the likelihood of such an effect. U.S.C.A. Const.Amend 6

**16. Criminal Law ⚖ 641.13(2)**

Fact that defendant's newly appointed counsel was given only 25 days to prepare for trial of case which it had taken the Government four and one-half years to investigate, fact that counsel was a young attorney primarily engaged in real estate practice and was trying his first criminal case, gravity of the charge of mail fraud against the defendant, complexity of the case, and inaccessibility of witnesses to counsel did not, individually or in combination provide a basis for concluding that competent counsel was not able to provide

defendant with effective assistance of counsel, it was error to infer that right to counsel had been violated. U.S.C.A. Const. Amend 6

**17. Criminal Law ⚖ 641.13(4)**

Character of a particular lawyer's experience may shed light in an evaluation of his actual performance but it does not justify a presumption of ineffectiveness in the absence of such an evaluation. U.S.C.A. Const.Amend 6

**18. Criminal Law ⚖ 641.13(2)**

Neither fact that trial counsel used notes to assist him during opening statement to the jury nor fact that counsel told the jury that it was counsel's first trial was so inherently inconsistent with a reasonable effective defense as to justify a presumption that defendant's trial was unfair.

**19. Criminal Law ⚖ 1093**

District court had jurisdiction to entertain motion for new trial based on ineffective assistance of counsel even though case was pending on direct appeal, court could have denied the motion on its merits or certified its intention to grant the motion to the Court of Appeals, which could have entertained a motion for remand. Fed. Rules Cr Proc Rule 33, 18 U.S.C.A.

**20. Criminal Law ⚖ 1192**

Where Court of Appeals did not reach claim of actual ineffectiveness of counsel, because it reversed conviction based on presumption of ineffective assistance of counsel under the circumstances, claim of actual ineffectiveness remained open.

### Syllabus *

Respondent and two associates were indicted on mail fraud charges involving a "check kiting" scheme whereby checks were transferred between a bank in Florida and a bank in Oklahoma When respondent's retained counsel withdrew shortly before the scheduled trial date, the District Court appointed a young lawyer with a real

* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the

reader    See United States v. Detroit Lumber Co., 200 U.S. 321, 337, 26 S.Ct. 282, 287, 50 L.Ed. 499

UNITED STATES of America,
Plaintiff–Appellee,

v.

Roquel Allen CARTER, Defendant–
Appellant.

No. 99–5430.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 1, 2000

Decided and Filed Jan. 18, 2001

Defendant was convicted in the United States District Court for the Middle District of Tennessee, John T. Nixon, J., of armed bank robbery, and he appealed. The Court of Appeals, Moore, Circuit Judge, held that (1) prosecutor committed plain error in misstating the testimony of key identification witness and by repeatedly insisting that defense counsel was lying about witness's testimony, (2) prosecutor's misconduct affected defendant's substantial rights, and (3) misconduct seriously affected the integrity of judicial proceedings, warranting reversal of conviction and remand for new trial.

Reversed and remanded.

1. Criminal Law ⟳1037.1(2)

Prosecutor committed plain error in misstating the testimony of identification witness by insisting that she did not testify that federal agent told her before she took the witness stand that she had made a mistake in identifying robber, when she had conceded on three separate occasions during trial that agent had told her she made a mistake, just before she gave her trial testimony, and by repeatedly insisting that defense counsel was lying about witness's testimony.

2. Criminal Law ⟳1171.1(7)

In determining when prosecutorial misconduct warrants a new trial, a court must first consider whether the prosecutor's conduct and remarks were improper and, if so the court must then consider and weigh the following four factors in

determining whether the impropriety was flagrant and thus warrants reversal: (1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant, (2) whether the conduct or remarks were isolated or extensive, (3) whether the remarks were deliberately or accidentally made, and (4) whether the evidence against the defendant was strong.

3. Criminal Law ⟳1134(3)

When reviewing challenges to a prosecutor's remarks at trial, Court of Appeals examines the prosecutor's comments with in the context of the trial to determine whether such comments amounted to prejudicial error and in so doing Court considers whether and to what extent, the prosecutor's improper remarks were invited by defense counsel's argument.

4. Criminal Law ⟳1037.1(1)

Prosecutorial misconduct may be so exceptionally flagrant that it constitutes plain error, and is grounds for reversal even if the defendant did not object to it.

5. Criminal Law ⟳1030(1)

Before an appellate court can correct an error not raised at trial there must be (1) error, (2) that is plain, and (3) that affects substantial rights, and if all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

6. Criminal Law ⟳720(2), 723(1)

While counsel has the freedom at trial to argue reasonable inferences from the evidence, counsel cannot misstate evidence or make personal attacks on opposing counsel.

7. Criminal Law ⟳1171.7

Prosecutor's misconduct, constituting plain error, in misstating the testimony of identification witness by insisting that she did not testify that federal agent told her before she took the witness stand that she had made a mistake in identifying robber, when she had so testified three times, and by repeatedly insisting that defense coun-

to mislead the jury or prejudice the defendant, 2) whether the statements were isolated or among a series of improper statements, 3) whether the statements were deliberately or accidentally before the jury, and 4) the total strength of the evidence against the accused. *United States v Monus,* 128 F 3d 376, 394 (6th Cir 1997) (citing *United States v Cobleigh,* 75 F.3d 242, 247 (6th Cir 1996)), *Carroll,* 26 F 3d at 1385 (citing *United States v Leon,* 534 F 2d 667, 679 (6th Cir 1976)) To reverse a conviction because of an improper non-flagrant statement, a reviewing court must determine that. 1) the proof of the defendant's guilt is not overwhelming, 2) the defense counsel objected and 3) the trial court failed to cure the impropriety by failing to admonish the jury. *Monus,* 128 F 3d at 394 *Carroll,* 26 F.3d at 1385–86 (citing *United States v. Bess,* 593 F 2d 749, 757 (6th Cir 1979))

[6, 7] The Defendants' first contention pertaining to misconduct is that the prosecutor improperly vouched for government witnesses. Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the United States Attorney behind that witness. *See, e g Taylor v United States,* 985 F.2d 844, 846 (6th Cir 1993), *United States v Martinez,* 981 F.2d 867, 871 (6th Cir.1992) Generally, improper vouching involves either blunt comments, *see, e g, United States v Kerr,* 981 F.2d 1050, 1053 (9th Cir 1992) (stating that improper vouching occurred when prosecutor asserted own belief in witness's credibility through comments including "I think he [the witness] was candid  I think he is honest."), or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony, *see, e.g. Carroll* 26 F 3d at 1338 (stating that improper vouching occurred when prosecutor argued that the witness testifying under a plea agreement was in jeopardy if the court or government did not find the testimony truthful)

[8] Here the specific vouching allegations stem from the prosecutor's references to the plea agreements of testifying witnesses. We have allowed a prosecutor to refer to the plea agreement of a testifying witness  *See United States v. Renteria,* 106 F 3d 765, 767 (7th Cir 1997)  The prosecutor may elicit testimony about its terms  attack the credibility of the witness because of it and even refer to the plea agreement of a government witness in an attempt to deflect defense counsel's use of the agreement to attack the witness's credibility.  *See United States v. Monroe,* 943 F 2d 1007 (9th Cir 1991)  *cert. denied,* 503 U S. 971, 112 S.Ct. 1585  118 L Ed.2d 304 (1992)

The potential for impropriety emerges, however when a prosecutor explains that there is to be a recommendation to the witness's sentencing court whether the terms of the plea agreement have been adhered to. Because that recommendation is dependent upon whether the witness testifies truthfully it is easy for a prosecutor to imply either intentionally or inadvertently, that the prosecutor is in a special position to ascertain whether the witness was, in fact, testifying truthfully  *Carroll,* 26 F.3d at 1387  Such implication leads quickly to improper vouching  *See also United States v. Dandy* 998 F 2d 1344  1353 (6th Cir 1993)

In the present case, the prosecutor improperly elicited information about and referred in her argument to the plea agreement made between the government and two of its witnesses, Lincoln Williams and Larry Walker  The first improper reference to the plea agreements came during the prosecutor's opening argument when she asserted that '   if [Mr Williams] testifies in this court truthfully. it's my intent to, as a government's representative, to recommend a 15 year sentence for him "  She followed this by explaining that Mr Walker had backed out of his original plea agreement  gone to trial and been convicted and sentenced  but that she had "told him that [she] will go and inform the judge   of his cooperation here, and it rests with the judge   as to whether he wants to amend the sentence     " Though she stated that each decision regarding the witnesses' sentences ultimately rested with the sentencing judge  the prosecutor used her opening argument to emphasize the role

sel's use of agreement to attack witness' credibility

**9. Criminal Law ⟲706(3)**

Prosecutor improperly vouched for witness' credibility when, in examining witness regarding his plea agreement, prosecutor elicited testimony indicating that plea agreement materialized only after prosecutor believed that witness was being truthful, thereby improperly indicating belief in witness' credibility

**10. Criminal Law ⟲706(3, 8)**

Prosecutor engaged in improper bolstering of agent's testimony when she asked agent on at least 14 occasions whether he had corroborated information obtained from informant, but did not elicit further details except in two instances, as to manner of corroboration after agent answered affirmatively, thereby leading reasonable juror to believe that prosecutor was implying guarantee of truthfulness based on facts outside the record

**11. Criminal Law ⟲720(5)**

"Bolstering" occurs when the prosecutor implies that the witness' testimony is corroborated by evidence known to the government but not known to the jury

See publication Words and Phrases for other judicial constructions and definitions

**12. Criminal Law ⟲706(3)**

A prosecutor may ask a government agent or other witness whether he was able to corroborate what he learned in the course of a criminal investigation, however, if the prosecutor pursues this line of questioning, she must also draw out testimony explaining how the information was corroborated and where it came from

**13. Criminal Law ⟲720(5)**

Prosecutor engaged in improper attack on testifying defendant's credibility when in closing arguments, she called defendant a liar and con man without establishing evidentiary bases for such attacks.

**14. Witnesses ⟲277(1)**

If a defendant testifies, a prosecutor may attack his credibility to the same extent as any other witness

**15. Criminal Law ⟲720(5)**

To avoid impropriety comments of prosecutor who asserts in closing arguments that testifying defendant was lying must reflect reasonable inferences from the evidence adduced at trial

**16. Criminal Law ⟲720(5)**

Prosecutorial misconduct occurs when a jury could reasonably believe that the prosecutor was expressing a personal opinion as to the testifying defendant's credibility

**17. Criminal Law ⟲1171.1(2.1)**

Upon showing that prosecutorial comments were improper, a defendant typically must show that the impropriety was so flagrant that it required reversal, in that only a retrial could correct the error.

**18. Criminal Law ⟲706(2)**

Prosecutor's conduct in eliciting agent's testimony regarding guilty pleas of individuals who did not testify at trial was flagrantly improper

**19. Criminal Law ⟲1186.1**

Although individual instances of improper comments and questions by prosecutor were insufficient standing alone, to warrant reversal under standards applicable to flagrant and nonflagrant improprieties, new trial was warranted when numerous examples of impropriety were viewed together and in the context of entire trial

**20. Criminal Law ⟲1171.1(2.1)**

The determination of whether a prosecutor's behavior constituted prejudicial error must be made in the context of the whole trial

**21. Criminal Law ⟲700(1)**

Prosecutors must be zealous advocates and enforcers of the law while, at the same time, acting in a manner that ensures a fair and just trial



UNITED STATES of America,
Plaintiff–Appellee,

v

Lewis FRANCIS (97-1129) and Louay
Francis (97-1130), Defendants–
Appellants.

Nos. 97-1129, 97-1130

United States Court of Appeals,
Sixth Circuit

Argued and Submitted April 20, 1998

Decided Feb 25, 1999

Defendants were convicted by jury in the United States District Court for the Eastern District of Michigan, Barbara K Hackett, J , of, inter alia conspiracy to launder monetary instruments and criminal forfeiture Defendants appealed The Court of Appeals Boyce F Martin Jr, Chief Judge held that. (1) prosecutor improperly elicited information about and referred in argument to, plea agreements between government and two witnesses, (2) prosecutor improperly vouched for witness' credibility; (3) prosecutor engaged in improper bolstering of agent s testimony, (4) prosecutor engaged in improper attack on testifying defendant s credibility and (5) new trial was warranted when numerous examples of impropriety were viewed together and in the context of entire trial

Reversed and remanded

1. Criminal Law ⬅️1156(1)

Court of Appeals reviews the denial of a motion for a new trial for an abuse of discretion

2. Criminal Law ⬅️1139

Whether statements by prosecutor amount to prosecutorial misconduct and whether they rendered the trial fundamentally unfair are mixed questions of law and fact and are reviewed de novo

3. Criminal Law ⬅️1171 1(2 1)

When reviewing claims of prosecutorial misconduct Court of Appeals determines first whether challenged statements were im

proper, if they appear improper court then looks to see if they were flagrant and warrant reversal

4. Criminal Law ⬅️713

Standard by which courts determine flagrancy of prosecutor statements is (1) whether statements tended to mislead jury or prejudice defendant (2) whether statements were isolated or among a series of improper statements (3) whether statements were deliberately or accidentally before jury, and (4) total strength of the evidence against defendant.

5. Criminal Law ⬅️1171.1(2 1)

To reverse a conviction based on improper, nonflagrant statement by prosecution, a reviewing court must determine that (1) the proof of defendant's guilt is not overwhelming (2) defense counsel objected and (3) trial court failed to cure the impropriety by failing to admonish jury

6. Criminal Law ⬅️706(2), 720(5)

Prosecutor improperly elicited information about, and referred in argument to, plea agreements between government and two witnesses when she emphasized role that she would have in recommending whether witnesses' sentences should be lowered as result of their testimony in defendants' trial and suggested that her recommendation would depend upon whether she personally believed that witnesses were being truthful.

7. Criminal Law ⬅️720(5)

"Improper vouching" occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness credibility, thereby placing the prestige of the office of the United States Attorney behind that witness

See publication Words and Phrases for other judicial constructions and definitions

8. Criminal Law ⬅️706(3), 720(5)

Prosecutor may elicit testimony about terms of witness' plea agreement, attack credibility of witness because of agreement, and even refer to agreement of a government witness in attempt to deflect defense coun-

**7. Criminal Law ⟜1144.13(3)**

In determining whether there was sufficient evidence to permit case to be submitted to jury and to support verdict of guilty rendered Court of Appeals views evidence in light most favorable to Government

**8. Conspiracy ⟜47(7)**
**Gaming ⟜98(1)**

Absent other error, evidence was sufficient to sustain convictions of conducting gambling business in violation of state law involving five or more persons and having gross revenue of more than $2,000 on single day, and was sufficient to sustain convictions of conspiracy to commit that offense. 18 U.S.C.A. §§ 371, 1955

**9. Conspiracy ⟜47(7)**
**Gaming ⟜98(1)**

Evidence indicating that defendant exchanged betting line information with another person involved in gambling operation involving five or more persons and that defendant and other person made bets with each other was insufficient to sustain conviction of conducting gambling business in violation of state law involving five or more persons and having gross revenue of more than $2,000 on a single day, and was insufficient to sustain conviction of conspiracy to commit that offense 18 U.S.C.A §§ 371, 1955

**10. Criminal Law ⟜641**

Defendant should be afforded every reasonable opportunity to challenge testimony that tends to incriminate him and to demonstrate his innocence.

**11. Criminal Law ⟜719(1)**

Prosecutor's remarks in closing argument that defendant was trying to "con" the jury were improper and highly prejudicial, in that they suggested that prosecutor had information not disclosed to jury demonstrating defendant's guilt.

**12. Criminal Law ⟜719(1, 3)**

Prosecuting attorney may not express to jury his personal knowledge of guilt of accused or bring to its attention purported facts that are not in evidence and are prejudicial

**13. Criminal Law ⟜730(1)**

Not every instance of prosecutorial misconduct requires reversal of conviction and when isolated remarks are made in course of long trial and jury is given appropriate cautionary instruction designed to overcome or to dissipate any prejudice that may have been caused, error may be harmless

**14. Criminal Law ⟜1171.1(2)**

In determining whether prosecutorial misconduct is prejudicial, Court of Appeals considers degree to which remarks complained of had tendency to mislead jury and to prejudice accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before jury, and strength of competent proof introduced to establish guilt of accused

**15. Criminal Law ⟜723(2), 1171.1(6)**

In prosecution for conspiracy and for conducting gambling business, prosecutor's remarks characterizing defendants' gambling activities as part of nationwide scheme that was causing substantial hardship to innocent persons, that was effecting decay of our cities, and that was financing other criminal activity, were reversibly erroneous, in view of fact that evidence was not overwhelming and was so esoteric that much of it required expert interpretation and explanation, prosecutor continued his prejudicial remarks even after court advised him to stop, and court did not admonish jury to disregard or give appropriate cautionary instruction.

---

Neil Fink, Michael S Friedman, Detroit, Mich, for defendants-appellants.

Ralph B Guy, Jr. U. S Atty., Detroit, Mich., Laurence Leff, Atty in Charge, U S Dept. of Justice, Washington, D.C., Joseph S. Davies, Jr, App Section Crim Div, Dept of Justice, Washington, D.C., for plaintiff-appellee

Before EDWARDS, PECK and McCREE, Circuit Judges

nor daughter of defendant's live-in girlfriend was ineffective in failing to object to acts of misconduct by prosecutor in improperly emphasizing evidence of defendant's "bad character" during closing argument while decision not to object during cross-examination regarding character evidence defense had introduced may have had sound tactical basis, no explanation existed for failure to object to prosecutor's most egregious character attacks during closing argument, and basic misunderstanding by counsel in believing that State could use character evidence defense had offered for any manner it desired was objectively unreasonable. U.S.C.A. Const. Amend. 6.

### 24. Criminal Law ⊜338(7)

Rules addressing admission of character evidence implicitly recognize the fine yet vital distinction between the risk of prejudice borne by evidence introduced for permissible reasons, and the clear prejudice that results from an uncured and flagrantly improper use of that same evidence, and thus even if some potential prejudice arises from the introduction of certain evidence, court generally presumes that if properly instructed by judges and guided by counsel, juries are capable of considering evidence for one purpose but not another.

### 25. Habeas Corpus ⊜486(2)

Determination by state court that counsel was not ineffective in failing to object to prosecutor's characterization of story told by child victim of alleged criminal sexual conduct as having been consistent over time, where there was no evidence to support such a factual assertion involved an unreasonable application of clearly established law, and thus could provide basis for habeas corpus relief under Antiterrorism and Effective Death Penalty Act (AEDPA); failure to object fell below an objective standard of reasonableness and was based on simple incompetence rather than sound trial strategy. U.S.C.A. Const. Amend. 6, 28 U.S.C.A. § 2254(d)(1).

### 26. Criminal Law ⊜641.13(2.1)

Counsel for defendant, who was charged with acts of criminal sexual conduct against minor daughter of defendant's life-in girlfriend, was ineffective in failing to object to prosecutor's characterization of story told by daughter as having been consistent over time, where there was no evidence to support such a factual assertion. U.S.C.A. Const. Amend. 6.

### 27. Criminal Law ⊜1144.15

Appellate court generally must presume that juries follow their instructions, and is excused from applying such a presumption only when there is a strong likelihood that the effect of the evidence would be devastating to the defendant, and that there is an overwhelming probability that the jury will be unable to follow the court's instructions. U.S.C.A. Const. Amend. 6.

### 28. Criminal Law ⊜641.13(2.1)

A court reviewing a claim that defense counsel was ineffective in failing to object must look at factors independent of the general effectiveness of objecting, such as other possible trial strategies, the degree of the purported misconduct, or the admissibility of the evidence in question. U.S.C.A. Const. Amend. 6.

### 29. Criminal Law ⊜641.13(2.1)

Defense counsel's deficient performance in failing to object during closing argument in prosecution for criminal sexual conduct to prosecutor's improper emphasis on evidence of defendant's bad character, or to prosecutor's characterization of story told by victim as having been consistent over time where there was no evidence to support such an assertion, was prejudicial, and could provide basis for postconviction relief; trial was a credibility contest, and twin acts of misconduct, in which prosecutor improperly boosted daughter's credibility by diminishing that of defendant, very likely tipped scales in daughter's favor. U.S.C.A. Const. Amend. 6.

she would have in recommending whether the witnesses sentences should be lowered because of their testimony in the Francis trial The wording of her argument made it clear that her recommendation would depend on whether she personally believed Mr. Williams and Mr Walker told the truth Because this could lead a reasonable juror to infer that the prosecutor had a special ability or extraneous knowledge to assess credibility, the statements were improper

[9] The more troublesome reference to Mr. Williams's plea agreement came during his testimony as the prosecutor examined him Through a series of questions, the prosecutor elicited information about the initation of his plea agreement. The jury heard how the prosecutor and Mr Williams met once and the meeting ended "abruptly" because the prosecutor "said [Mr Williams] wasn't telling the truth, wasn't protecting people at that time " The jury then heard that the prosecutor and Mr Williams met again, at which time the prosecutor finally believed him and offered him a plea agreement Mr Williams's testimony made it clear to the jury that the plea agreement materialized only after the prosecutor believed him Because this indicated a belief in the witness's credibility, it was improper as well It follows that this set of remarks constitutes Improper vouching

[10–12] Also here are the arguments that the prosecutor engaged in improper bolstering Bolstering and vouching are much alike and go to the heart of a fair trial Bolstering occurs when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury *United States v Sanchez*, 118 F 3d 192, 198 (4th Cir.1997) A prosecutor may ask a government agent or other witnesses whether he was able to corroborate what he learned in the course of a criminal investigation. However, if the prosecutor pursues this line of questioning, she must also draw out testimony explaining how the information was corroborated and where it originated *See United States v Lewis* 10 F 3d 1086, 1089 (4th Cir 1993).

Here, the prosecutor asked Agent Blackwood repeatedly whether he had corroborat

ed information obtained from Mr Walker There were at least fourteen such inquiries Although Agent Blackwood answered each in the affirmative he provided further detail in only two instances He did this by properly adding that he had corroborated what Mr. Walker had told him by checking police reports, bank records, tax records, and interviews and conversations with other individuals. He also testified that he had corroborated the drug dealing by arranging for an undercover officer to purchase drugs On all other occasions, however Agent Blackwood responded to questions about corroboration by merely asserting that he had, in fact, corroborated the information The prosecutor's failure to introduce to the jury whether the information was corroborated via documents, searches, conversations, or other means would lead a reasonable juror to believe that the prosecutor was implying a guarantee of truthfulness based on facts outside the record. This particular group of comments therefore amounts to improper bolstering

[13–16] Lewis Francis also raises the prosecutor improperly questioning his credibility If a defendant testifies as here, a prosecutor may attack his credibility to the same extent as any other witness *See Rel fel v United States* 271 U S 494, 497 46 S.Ct. 566, 70 L Ed 1054 (1926), *see also Fitzpatrick v United States*, 178 U.S. 304 315 20 S.Ct. 944, 44 L Ed 1078 (1900) This Court has held that a prosecutor may assert that a defendant is lying during her closing argument when emphasizing discrepancies between the evidence and that defendant's testimony *See United States v Veal*, 23 F 3d 985 989 (6th Cir.1994) To avoid impropriety, however, such comments must "reflect reasonable inferences from the evidence adduced at trial ' *See id* (quoting *United States v Goodapple* 958 F 2d 1402, 1409–10 (7th Cir 1992)) Again misconduct occurs when a jury could reasonably believe that the prosecutor was instead, expressing a personal opinion as to the witness's credibility *Taylor*, 985 F 2d at 846 (citing *United States v Causey* 834 F 2d 1277, 1282 (6th Cir 1987), *cert denied*, 486 U S. 1034, 108 S Ct. 2019, 100 L Ed.2d 606 (1988)).

was plainly improper. Second, we will consider whether Keston was constitutionally ineffective for failing to object to the prosecutorial misconduct. Third, we will consider whether that ineffectiveness satisfies the "cause and prejudice" exception to procedural default allowing us to ask whether the misconduct itself provides grounds for habeas relief. We find for Washington on all three questions.

## A

Before assessing whether Keston was ineffective for failing to object to the prosecutor's actions, we must first determine whether the prosecutor committed misconduct. *See generally Cobb v. Perini,* 832 F.2d 342, 347–48 (6th Cir. 1987) (rejecting claim that counsel's failure to object comprised ineffectiveness in part because it was unclear whether challenged evidence was improper). *Barton v. Morris,* No. 95-3848, 1996 WL 408504, at *2 (6th Cir. July 19, 1996) (unpublished decision) (concluding that counsel's failure to object to prosecutor's closing argument was not ineffective because "those comments did not amount to prosecutorial misconduct and would not have provided the basis for action by the trial judge") Juxtaposing precedent from this circuit alongside the trial record convinces us that several aspects of the prosecutor's behavior clearly crossed the line into plain and prejudicial impropriety.

## 1

[3, 4] First, we address the prosecution's emphasis on Washington's "bad character." A fundamental rule of evidence is that a defendant's "bad character cannot be used to argue that the defendant committed the crime for which he is being tried, or had the propensity to commit that crime. *See, e.g.,* Fed R Evid. 404(a) ("Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion "), Mich R Evid 404(a) (same), *Michelson v. United*

*States* 335 U.S. 469, 476, 69 S.Ct. 213, 93 L.Ed. 168 (1948) (stating that improper character evidence "weigh[s] too much with the jury and overpersuade[s] them as to prejudice one with a bad general record and deny him a fair opportunity to defend against a particular charge"); *United States v. Vance,* 871 F.2d 572, 575 (6th Cir. 1989) (providing that "bad acts evidence is not admissible to prove character or criminal propensity" under Fed. R.Evid. 404(b)); *United States v. Ring,* 513 F.2d 1001, 1004 (6th Cir. 1975) (stating that in jury trials, evidence of a criminal defendant's bad acts or prior misconduct is inadmissible to show criminal propensity because it "tends to confuse the issue of guilt or innocence of the specific offenses charged and to weigh too heavily with the jury.") When a prosecutor dwells on a defendant's bad character in this prohibited manner, we may find prosecutorial misconduct. *See e.g. Cook v. Bordenkircher,* 602 F.2d 117, 120 (6th Cir 1979) (noting that the "prosecutor's misconduct in this case is severe" due to his "persistent *ad hominem* attack on the petitioner's character")

[5, 6] In this case we find that while the evidence as to Washington's character was admissible for certain limited purposes, the prosecutor went far beyond the bounds of permitted conduct when presenting that evidence to the jury. Because Keston introduced much of this evidence as part of his defense strategy, *see infra,* and because aspects of Washington's character shed light on why Tamara had not informed others of the alleged acts, we do not find that the State's cross-examination of Washington constituted prejudicial misconduct on its own. However, the prosecutor's animated recitation of this character evidence during closing arguments was plainly improper. In his initial summation, the prosecutor improperly implied that the jurors should consider Washington's unseemly character when rendering their verdict; in his rebuttal, he explicitly urged them to do so. Meanwhile, he attacked



to stand trial." *Drope,* 420 U.S. at 180, 95 S.Ct. 896

[11] The first of the trial court's findings was unreasonable. It is true that a finding by a trial court regarding credibility is ordinarily the kind of finding to which we would defer on collateral review. *See Thompson v. Keohane,* 516 U.S. 99, 111, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). But here the factfinding procedure by the judge was clearly inadequate. Defense counsel twice related to the court that Torres now believed that defense counsel and the court were part of the conspiracy against Torres; counsel then suggested that a competency hearing would be appropriate. The court refused to order a hearing. It concluded, without questioning Torres, that (1) Torres was simply continuing his effort to remove his counsel, (2) that Torres wanted to get rid of counsel because she was not doing what he wanted her to do, and (3) that Torres was not different than any other defendant who is dissatisfied with his attorney."

In light of the previous medical evaluation by Dr. Wells, it was unreasonable for the court not to make a more complete inquiry into the nature of defense counsel's statement that Torres now believed the conspiracy against him included his counsel and the trial judge. Although Wells had opined that Torres was competent to stand trial, he also concluded, on the strength of testing designed to detect dissembling, that Torres was "fully credible" in his statements [that he was a victim of a medical conspiracy] and not seeking consciously to deceive in any way." Thus, the Wells evaluation should have alerted the trial court to the strong possibility that Torres was not dissembling when he told his attorney that he now believed she and the trial judge were part of the conspiracy against him. At the very least, the trial court could not have concluded reasonably that Torres was disingenuous without inquiring of Torres himself, or of Dr. Wells. On these facts, merely observing Torres's

5. In contrast the trial court in *Maggio* had made specific findings of fact that justified its

demeanor in court would be insufficient factfinding to make a determination about Torres's credibility.

[12] The trial court's second finding, that there was no bona fide doubt regarding Torres's competence, was conclusionary and not fairly supported by evidence on the record.[5] After dismissing the notion that Torres's conspiracy delusion had now spread to his attorney and the court, the judge stated "[u]nless there is some thing specific, the court will not declare a doubt." But there was more than sufficient evidence before the trial judge at that time. First, defense counsel had proffered evidence that the defendant would no longer be able to assist rationally in his defense because he believed his attorney was part of a greater conspiracy against him . *See United States v. Nagi,* No. 96–CR601 1998 WL 341940, at (S.D.N.Y. June 26 1998) (defendant's paranoid delusions of conspiracy against him rendered him unable to assist in his defense despite factual understanding of role of lawyers and judge in courtroom), *aff'd* 173 F.3d 847, 1999 WL 245869 (2d Cir.), *cert. denied,* —— U.S ——, 120 S.Ct. 105, 145 L.Ed.2d 89 (1999), *United States v. Blohm,* 579 F.Supp. 495, 504–05 (S.D.N.Y. 1983) (amended opinion). Torres's defense counsel was in the best position to evaluate Torres's competence and ability to render assistance. *See Medina v. California,* 505 U.S. 437, 450, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992). Her recommendation to the judge, while not necessarily sufficient to create a bona fide doubt, should have been considered seriously by the court. *See id.*

[13] Finally, defendant's unusual and self-defeating behavior in the courtroom suggested that an inquiry into competence was required. The district court catalogued Torres's peculiar behavior: he insisted on wearing jailhouse blues, threatened to assault his attorney, insisted, after being ordered shackled, to be handcuffed

refusal to hold a competency hearing. *See Maggio* 462 U.S. at 113–15 103 S.Ct 2261



**14 Criminal Law ⭒641.13(1)**

To prevail on ineffective assistance of counsel claim, defendant must show that counsel's performance was deficient, in that it involved errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment, and that those deficiencies were prejudicial to the defense. U.S.C.A. Const.Amend. 6

**15. Criminal Law ⭒641.13(1)**

To establish deficient performance by counsel, defendant must show that counsel's conduct fell below an objective standard of reasonableness, and that counsel's identified acts and omissions were outside the wide range of professionally competent assistance. U.S.C.A. Const.Amend 6

**16. Criminal Law ⭒641.13(1)**

In determining whether counsel's performance was deficient, court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. U.S.C.A. Const.Amend 6

**17 Criminal Law ⭒641.13(1)**

In evaluating an ineffective assistance of counsel claim, courts must not view a trial in hindsight, but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors. U.S.C.A. Const.Amend. 6

**18. Criminal Law ⭒641.13(2.1)**

Counsel's failure to object to prosecutorial misconduct constitutes deficient performance when that failure is due to clear inexperience or lack of knowledge of controlling law, rather than reasonable trial strategy. U.S.C.A Const.Amend 6

**19. Criminal Law ⭒641.13(1)**

To show that he suffered prejudice as result of counsel's deficient performance, defendant must demonstrate that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that but for counsel's unprofessional errors the result of the proceeding would have been different. U.S.C.A Const.Amend 6.

**20. Criminal Law ⭒641.13(1)**

Essential question in determining if defendant suffered prejudice as result of counsel's deficient performance is whether better lawyering would have produced a different result. U.S.C.A Const.Amend 6

**21. Habeas Corpus ⭒486(2)**

Determination by state court that counsel was not ineffective in failing to object to misconduct by prosecutor in placing improper emphasis on evidence of defendant's bad character during closing argument involved an unreasonable application of clearly established law, and thus could provide basis for habeas corpus relief under Antiterrorism and Effective Death Penalty Act; counsel's failure to object fell below an objective standard of reasonableness and was outside the wide range of professionally competent assistance and resulted in prejudice U.S.C.A Const.Amend 6, 28 U.S.C.A. § 2254(d)(1)

**22. Criminal Law ⭒641.13(6)**

Decision by counsel for defendant charged with acts of criminal sexual conduct against minor daughter of defendant's live-in girlfriend not to object during State's cross-examination of defendant regarding evidence of defendant's bad character, which was part of strategy of providing jury a basis for disbelieving testimony of victim, represented a reasonable tactical decision and did not constitute ineffective assistance of counsel; strategy was one of few possible ways to "spin" evidence of defendant's unappealing character into a potentially exculpatory use U.S.C.A Const.Amend 6

**23 Criminal Law ⭒641.13(2.1)**

Counsel for defendant charged with acts of criminal sexual conduct against mi-

correctly identified the governing legal principle from the Supreme Court's decisions, but unreasonably applied that principle to the facts of the case it may grant petition for writ of habeas corpus. 28 U.S.C.A § 2254(d)(1)

**3  Criminal Law ⚖︎376**

A defendant's bad character cannot be used to argue that the defendant committed the crime for which he is being tried, or had the propensity to commit that crime  Fed Rules Evid Rule 404(a), 28 U.S.C.A.

**4. Criminal Law ⚖︎722.3**

When a prosecutor dwells on a defendant's bad character in an attempt to argue that defendant committed charged crime, or had propensity to commit that crime, court may find prosecutorial misconduct.

**5. Criminal Law ⚖︎706(4)**

Prosecutor did not engage in misconduct by cross-examining defendant regarding character evidence in prosecution for acts of criminal sexual conduct against daughter of defendant's live-in girlfriend where defendant had introduced much of evidence in question as part of defense strategy, and aspects of defendant's character shed light on why child victim had not informed others of alleged acts

**6. Criminal Law ⚖︎722.3**

Prosecutor engaged in misconduct by making animated recitation during closing argument of evidence relating to defendant's character, in which he emphasized that defendant did not work, beat his live-in girlfriend regularly, consumed alcohol excessively, and did not make payments on girlfriend's home, in prosecution for acts of criminal sexual conduct against girlfriend's minor daughter; prosecutor explicitly urged jurors to consider defendant's unseemly character when rendering their verdict, and implied that criminal acts charged 'fit' evidence of defendant's character and lifestyle.

**7. Criminal Law ⚖︎720(5)**

Prosecutor engaged in misconduct when he sought to bolster testimony of child victim of alleged criminal sexual conduct by characterizing her story as having been consistent over time, where there was no evidence to support such a factual assertion.

**8.  Criminal Law ⚖︎719(1)**

Actions of prosecutor in misrepresenting facts in evidence can amount to substantial error, because doing so may profoundly impress a jury and may have a significant impact on the jury s deliberations

**9  Criminal Law ⚖︎1171.3**

Asserting facts that were never admitted into evidence may mislead a jury in a prejudicial way, particularly when a prosecutor misrepresents evidence, because a jury generally has confidence that a prosecuting attorney is faithfully observing his obligation as a representative of a sovereignty

**10  Criminal Law ⚖︎720.5**

It is always improper for a prosecutor to suggest that a defendant is guilty merely because he is being prosecuted or has been indicted

**11. Criminal Law ⚖︎720(1)**

It is always improper for a prosecutor to imply to a jury that an underlying factual predicate of a crime must be true due to the fact of indictment or prosecution

**12. Criminal Law ⚖︎641.13(1)**

An essential ingredient of the Sixth Amendment right to counsel is that counsel provide constitutionally effective assistance  U.S.C.A. Const Amend 6

**13. Criminal Law ⚖︎641.13(1)**

Benchmark in determining effectiveness of counsel is whether counsel s conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result  U.S.C.A. Const.Amend 6



685, 709 (6th Cir 1994), *United States v Morrow*, 923 F 2d 427, 432 (1991)

[37] As explained in Part III A the challenged aspects of the State's closing argument were clearly improper We also find the improprieties to have been sufficiently flagrant to satisfy the four prongs of *Boyle* and warrant reversal First, as stated above, there was a strong likelihood that the improper statements would have misled the jury and prejudiced the defendant, particularly considering the long delay since the actual testimony of the witnesses Second, the comments were extensive, comprising part of the prosecutor's continuous effort to have the jury determine credibility based on im proper considerations—either statements not in evidence or improper character as sessments Third, it is clear that the re marks were deliberately made, with the prosecutor repeating his 'fit" theory throughout closing argument. And fourth there was no evidence against Washington outside of Tamara Beard's ac count, which the prosecutor's misconduct impermissably bolstered In short the prosecutor's misconduct was sufficiently flagrant to violate Washington's due pro cess rights.

## IV.

[38–40] As the people's representative in our system of justice, a prosecutor must adhere to the rules and principles that ensure that a jury determines a defendant's guilt based on the evidence before it. In a close credibility contest such as this, with horrible acts alleged but scant hard evidence for the jury to weigh, a prosecutor must be doubly careful to stay within the bounds of proper conduct *See Martin v. Parker*, 11 F 3d 613 616–17 (6th Cir 1993) (stating that because cases in volving sexual abuse "turn on the relative credibilities of the defendant and the pros ecuting witness     a strict adherence to the rules of evidence and appropriate pros ecutorial conduct is required to insure a fair trial"). One of defense counsel's most

important roles is to ensure that the prose cutor does not transgress those bounds.

In this case, both attorneys failed to perform their respective duties We find that their failure deprived Washington of his constitutional rights, and that the state courts' conclusions to the contrary were objectively unreasonable We therefore **REVERSE** the district court and grant a conditional writ of habeas corpus, giving the State of Michigan ninety days in which to provide Washington a new trial or re lease him

James D. STOUT; Shirley A. Brown, Plaintiffs–Appellants,

v.

J.D. BYRIDER, a/k/a Docherty Motors, Inc.; T & J Acceptance Corporation, d/b/a Carnow Acceptance Company, Defendants–Appellees.

No. 99–3854.

United States Court of Appeals Sixth Circuit.

Argued·  June 23, 2000

Decided and Filed  Sept  8, 2000

Buyers of used vehicle dealership brought prospective class action against dealership, and finance company, asserting claims for fraud, and under Ohio Consum er Sales Practices Act (OCSPA) and feder al Truth in Lending Act (TILA). The Unit ed States District Court for the Northern District of Ohio James S Gwin, J , denied class certification, and granted defendants motion to compel arbitration, 50 F Supp 2d 733 Plaintiffs appealed The Court of Ap peals, Clay, Circuit Judge, held that (1) arbitration agreements entered by buyers

derstanding of universal trial and evidence principles falls well below an objective standard of reasonableness. *See Growley,* 87 F 3d at 786 (stating that when counsel failed to object because of a lack of awareness of the law, *Strickland* was violated), *Rachel,* 590 F 2d at 204 (concluding that the Sixth Amendment was violated because attorneys' inexperience, inattention or lack of knowledge of the law led to their failure to object to misconduct) For similar reasons, we find that the state trial court's analysis of this issue was objectively unreasonable. Once again, that court concluded that the prosecutor had only sought to provide a "factual backdrop" to the crime as well as an explanation for Tamara's silence after the alleged acts, J A at 48–49, when it is crystal clear from the record that the State went well beyond that limited use, proffering an argument that was a prototypical example of how character evidence should not be used Not having recognized the clear predicate problem itself, the trial court's conclusion that Keston did not violate *Strickland* by failing to object to that problem is thus inherently flawed To characterize this conclusion as an "objectively reasonable" application of *Strickland* would be to dilute our review under the AEDPA to a generous apology for the clearest of errors.

[24] Finally, we note that while the defense's strategy carried an inherent risk of some prejudice that added risk did not diminish the far greater prejudice that resulted from Keston's inexplicable silence as the prosecutor misused that same evidence for patently improper purposes Our rules addressing character evidence implicitly recognize the fine yet vital distinction between the *risk of prejudice* borne by evidence introduced for permissible reasons and the *clear prejudice* that results from an uncured and flagrantly improper use of that same evidence

to object to that because you wanted it brought out didn t you?
A. That s correct
Q You were just going to use it in a different way than I used it

Thus, even if some potential prejudice arises from the introduction of certain evidence, this Court generally presumes that if properly instructed by judges and guid ed by counsel, juries are capable of consid ering evidence for one purpose but not another *See generally Richardson v Marsh,* 481 U S 200, 211, 107 S Ct 1702, 95 L Ed.2d 176 (1987) In this case, an objection would have prompted the judge to inform the jurors that, counter to the prosecutor's suggestion, they could not convict Washington because he was the "type" of person who would commit the alleged crime, we then would presume that the jury heeded that instruction in rendering its verdict. On the other hand Keston's silence allowed the prosecutor's improper use of that evidence as well as its improper suggestions to the jury of how to consider that evidence to go uncorrect ed For this reason, and because this was a close case riding on Washington's cred bility, *see infra,* Washington was preju diced by his counsel's failure to object to the closing argument

b

[25, 26] We also find that Keston s fail ure to object to the State's improper char acterization of Tamara s statements to others constitutes a second instance of constitutional ineffectiveness. Again, we find the trial court's analysis of Keston's ineffectiveness and "trial strategy" to have been objectively unreasonable

Keston's explanation of why he did not object to the prosecutor's characterization of statements not in evidence is again un convincing At the *Ginther* hearing, he explained that he feared an objection would do more harm than good because it would focus the jurors' attention on the prosecutor's statement even if the court

A It would be rather inconsistent of me to object
J A at 311–12 (emphasis added)

ST. VS ALBERT RAMIREZ  CR-07-434                          COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 1.27 34 PM | CHANDLER | WERE YOU NO LONGER 'FRAID OF THE BLACK PEOPLE, SO YOU THRU THE GUN AWAY "I WANTED TO CALL MY FAMILY SO THEY COULD TELL ME WHAT TO DO ETC |
| 1 28 27 PM | | YOU WENT TO IVAN'S APARTMENT |
| 1 29 03 PM | | IDENTIFICATION EXHIBIT 109 "PHOTO OF IVAN VASQUEZ" |
| 1 29 29 PM | | BENCH CONFERENCE |
| 1 30 25 PM | CHANDLER | YOU WENT TO MR VASQUEZ APT , NEXT THREE DAYS YOU DID NOT MAKE ANY PHONECALLS |
| 1.31 17 PM | | WHEN POLICE SHOWED UP AND KNOCKED ON DOOR YOU WENT TO BACK AND HID BEHIND A DOOR, YOU WERE ARRESTED AND THEY TOOK YOU TO CCDC, AT THAT TIME WHEN BOOKED IN THEY GAVE YOU INFORMATION ON HOW TO USE THE PHONE ETC |
| 1 32 17 PM | | YOU ASKED YOU AUNT IN SPANISH TO GO AND PICK UP GUN, YOU USED SLANG WORDS YOU USED THE WORD TOY, BECAUSE YOU KNEW SOMEONE WAS RECORDING |
| 1 33 14 PM | | YOU WERE NOT QUITE SURE SHE WOULD DO WHAT YOU ASKED HER TO DO |
| 1 33 32 PM | | YOU SAID TELL MOM I AM SORRY |
| 1 34 04 PM | | NEXT CALL YOU MADE WAS TO CRIMSON MAES, YOU SAID A DIFFERENT WORD IN SLANG GO GET THE THING BAM BAM, I KNEW THEY WERE LISTENING |
| 1 34 56 PM | | YOU BELIEVED IF THE POLICE COULD NOT FIND THE GUN IT WOULD HELP YOUR CASE, "I THINK THAT THEY WOULD LET ME OUT" |
| 1 35 26 PM | | WHEN YOU MADE CALL TO CRIMSON MAES YOU IDENTIFIED YOURSELF AS WEIZEL |
| 1 36 51 PM | | YOU WERE ABLE TO TAKE YOUR ITEMS AND PUT IN TRUNK OF CA, ONE OF THE ITEMS WAS A NOTE YOU WROTE |
| 1.37 54 PM | | BENCH CONFERENCE |
| 1 39 12 PM | CHANDLER | IDENTIFICATION EXHIBIT 110 "LETTER WRITTEN BY ALBERT" |
| 1 39 48 PM | | OFFERS EXHIBIT / ADMITTED OVER THE OBJECTIONS |
| 1 40 57 PM | | I WAS TRYING TO BECOME A RAP ARTIST , HIP HOP |
| 1 41 28 PM | | ALBERT IS READING NOTE |
| 1 42 56 PM | | BENCH CONFERENCE |
| 1 43 16 PM | | COURT EXCLUDES EXHIBIT 110 |
| 1.43 59 PM | | TALK ABOUT THE DAY YOU SHOT ELADIO, YOU WENT TO HOUSE THAT YOU WERE NOT TOLD TO GO THERE, WHEN YOU ARRIVED THE SCREEN WAS LOCKED |
| 1 44 52 PM | | MOST OF MY IMPORTANT ITEMS WERE THERE |

ST VS ALBERT RAMIREZ CR-07-434                     COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 1 13 51 PM | | YOU ASKED GUN SHOP OWNER, IF HE COULD NOT GET YOU A GUN WHERE CAN I GET A GUN |
| 1 14 31 PM | | YOU WENT AND FOUND A GUN, FROM THIS GUY I USED TO BUY SOME WEED FROM, |
| 1.15 24 PM | | HOW MUCH DID YOU SPEND ON THIS WEAPON "$75" |
| 1.16 29 PM | | YOU WENT TO WALMART JULY 11, YOU GAVE HIM $30 TO BUY AMMO |
| 1 16 59 PM | | MR PATTERSON CAME BACK AND GAVE YOU BOX OF AMMO |
| 1.17 18 PM | COSBY | OBJECTION |
| 1 17 26 PM | COURT | THAT IS WHAT I REMEMBER |
| 1.17 33 PM | CHANDLER | YOU GOT THE AMMO, "I GOT IT HE HANDED IT TO ME AND I SAID THANKS" |
| 1 18 19 PM | | YOU WERE IN SUCH FEAR FOR YOUR LIFE, YOU BOUGHT AMMO AS SOON AS YOU GOT HANDGUN |
| 1 18 53 PM | | YOU WOULD NOT CARRY AN EMPTY HANDGUN "I WOULD EXPLAINS WHY" |
| 1 19 42 PM | | IT WAS IMPORTANT TO YOU TO GET BULLETS FOR THIS GUN ASAP |
| 1 20 57 PM | | LESS THAN 24 HOURS LATER AFTER YOU BOUGHT BULLETS YOU KILLED ELADIO "YES" |
| 1 21 28 PM | | TALK ABOUT CRUTCHES, MY WHOLE LEFT SIDE IS DISABLED, I CAN BARELY WALK, |
| 1 22 27 PM | COSBY | WITHDRAWS OBJECTION |
| 1 22 41 PM | CHANDLER | YOU WERE ABLE TO GET AWAY FROM SCENE WHERE YOU SHOT ELADIO, LESS THAN 30 SECONDS |
| 1 23 02 PM | | DID YOU SEE POLICE ARRIVE, YOU WERE GONE BEFORE POLICE GOT THERE, AS YOU WERE GOING ACROSS STREET, YOU SAW A MAN AT LAWN MOWER SHOP, YOU DID NOT SAY ANYTHING TO LAWN MOWER REPAIR MAN ABOUT NEEDING HELP, THEN YOU CROSSED RAGS TO RICHES AND YOU THRU GUN BEHIND RAGS TO RICHES "YES" |
| 1 24 50 PM | | YOU HAD YOUR CELLPHONE WITH YOU "YES, I BELIEVE IT WAS IN MY POCKETS IN MY PANTS YOU CALLED ELADIO AND DEBRA ABOUT 30 OR 40 TIMES THAT MORNING, "THEY WOULD NOT ANSWER I WAS TRYING TO CALL MY MOM NOT ELADIO" I CALLED THE HOME PHONE, I WANTED MY EVERYTHING. JUST THE LITTLE THINGS |
| 1.26 27 PM | COSBY | OBJECTION |
| 1.26 34 PM | | I WILL ANSWER THIS, I HAD THE CELLPHONE IN YOUR POCKET YOU DID NOT CALL POLICE, AS YOU RAN BY RAGS TO RICHES YOU DUMPED GUN IN ALLEY |
| 1 27 15 PM | COSBY | OBJECTION |

ord This justification is not strategy, but absolute folly. First, it overlooks the fact that the prosecutor's statement that the "story never changed" was not based on any evidence in the record The jury therefore had no basis to conclude whether the characterization was true or not, similarly, Keston had no way to rebut the prosecutor's assertion without also referring to conversations not in evidence In deed, while Keaton testified to the trial court that he had "intended" to argue to the jury that Tamara's statements to the doctor were inconsistent with her stories to others, he did not in fact do so Although he referred to the doctor's notes that she had denied penetration, Keston certainly did not emphasize that this showed that Tamara's stories had been inconsistent. In fact, Keston himself echoed the prosecution's suggestion that the content of Tamara's discussions was in evidence when he argued that all of Tamara's statements came with Cora Beard by her side 'You heard from the witness stand,' she said this said that. She always identified and repeated what was said " J A at 264-66 But, contrary to Keston's words, the jury had not in fact heard any witnesses testify as to what Tamara had told them.

Finally, although the trial court attempted to rationalize this "impeachment defense," its reasoning is equally flawed The trial court's explanation reads as follows

[Keston] related that his lack of objection was grounded on trial strategy based on his awareness that the victim had given previous inconsistent statements during the investigative stage of the case In proper cases a decision not to object to the prosecutor's trial efforts may be considered sound trial strategy *Cf Darden v Wainwright,* 477 U S 168, 106 S Ct. 2464, 2471, 2472, 91 L Ed 2d 144 (1986) . In this case defense counsel's strategy involved impeachment with inconsistent statements and the contrasting the same with the claim that

the victim's reporting of crime was consistent

J A at 50 Like Keston's own words this explanation wholly fails to appreciate that "the claim" of consistency involved statements never admitted into evidence Moreover, while the trial court cited *Darden v. Wainwright,* 477 U S 168, 182, 106 S.Ct 2464, 91 L Ed.2d 144 (1986) in support of its argument that a "decision not to object to the prosecutor's trial efforts may be considered sound trial strategy," *Darden's* holding provides no support for its decision The cited portion of *Darden* addresses prosecutorial misconduct that the Supreme Court found insufficient to constitute a due process violation, as part of the discussion, the court noted that "defense counsel made the *tactical decision* not to present any witness other than petitioner." *Id at 182, 106 S Ct. 2464* (emphasis added) The decision in no way condones a lawyer's failure to object to plain misconduct as legitimate trial strategy

In short, Keston's failure to object fell below an objective standard of reasonableness and constituted an omission outside the wide range of professionally competent assistance. Washington has shown that the failure to object was based on simple incompetence, and not on sound trial strategy. Because the trial court's conclusion merely echoed Keston's deeply flawed justification, its application of *Strickland* was objectively unreasonable.

3

[29] In addition to finding constitutionally defective performance, we also believe that the failure to object to these statements prejudiced Washington's case As both parties agree, this trial was a credibility contest There was no evidence in the record indicating Washington's guilt outside of Tamara's own allegations Thus, outside of the substance of Washington's and Tamara's testimony, nothing was more important to the case than the indicia that one story was more believable than the other In such a close case, the prosecu-

cases, the end result would probably have been the same regardless of which test was used. Nevertheless, we find it necessary to clarify our doctrine regarding when prosecutorial misconduct in a closing argument constitutes reversible error for three reasons. First, the use of three different standards is confusing both for lower courts and for litigants. Second, even if everyone usually reaches the same net result, the process of reaching this result is more difficult when our doctrine is so murky. Third, and most important, situations sometimes arise, though perhaps only infrequently, in which the choice of doctrine determines the result. One very important example of this is found in the case of *Solivan*, in which isolated remarks by the prosecutor were so prejudicial that a new trial was necessary. 937 F.2d at 1157. Had the panel applied the *Thomas* test, it could not have reached this result. The court made this manifestly clear when it held

There are instances where a single misstep on the part of the prosecutor may be so destructive of the right to a fair trial that reversal is mandated. *See Pierce v. United States*, 86 F.2d 949 (6th Cir 1936). We realize that such instances may be rare, but we believe this case exemplifies a single misstep so destructive to defendant's right to a fair trial that it constitutes reversible error

*Id.* at 1150. It turns out that the instant case presents a second example

Just last year, the en banc court expressly applied the *Bess* test when we considered the issue of prosecutorial misconduct in a closing argument in *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir 1992). In light of this fact, and for the reasons stated in *Bess*, not only will we apply the *Bess* approach in the present case but we also believe that *Bess*

1992) (en banc) (applying *Bess* test), *cert denied*, ___ U.S ___ 113 S.Ct 2969 125 L.Ed.2d 668 (1993) *United States v Warner* 971 F.2d 1189 1205 (6th Cir 1992) (applying *Thomas* test) *United States v Driscoll* 970 F.2d 1472 1484–85 (6th Cir 1992), *cert denied* ___ U.S. ___, 113 S.Ct 1056 122 L.Ed.2d 362 (1993) (applying *Lawn* test) *United States v Chambers* 944 F.2d 1253 1272 (6th Cir 1991), *cert denied* ___ U.S ___, 112 S.Ct 1217 117 L.Ed.2d 455 (1992) (applying *Lawn* test) *United States v*

ought to be used in all subsequent cases involving non-flagrant improper prosecutorial remarks. We will also use the factors introduced in *Leon* to elucidate the concept of "flagrancy" when applying the *Bess* test.

## 2   The Prosecutor's Remarks in the Present Case Were Improper

Under the *Bess* approach, our first task is to determine whether the prosecutor's remarks in the present case were improper. In *United States v. Krebs*, 788 F.2d 1166, 1176 (6th Cir.1986), *cert denied*, 479 U.S 930, 107 S.Ct. 400 93 L.Ed.2d 353 (1986), the prosecutor made the following statements in her closing argument "I want to suggest to you that in this trial testimony [the witness] was telling the truth   Basically, she had no reason to lie '   Even though we recognized that 'I suggest" or "I submit" is not equivalent to "I believe', we found that "the effect of the two statements taken together can be reasonably construed to be based on personal belief." *Id.* at 1176–77 (citing *Bess*)   We not only found that this constituted misconduct calling for the trial court to take corrective measures, but we also characterized the prosecutor's conduct as "inexcusable "   *Id.* at 1177[9]

Similarly, in *United States v. Dandy*, 998 F.2d 1344, 1353 (6th Cir 1993) (citing *Bess*) we held  "It was improper for the prosecutor to state [in his closing argument] that [a witness] is honest   Such a statement conveys a conviction of personal belief regarding the witness's veracity "   The error might have been reversible had the trial court not immediately instructed the jury that all assertions are to be made from the evidence   *See also United States v Hart*, 640 F.2d 856, 858–59 (6th Cir ) (holding that various expressions of personal belief by the prosecutor in closing argument were improper warrant-

*Solivan* 937 F 2d 1146, 1156–57 (6th Cir 1991) (applying *Ashworth* standard  but *cf.* *Bess* with approval)

[9]   Ultimately the *Krebs* court found that in light of the substantial evidence of guilt and the trial court's efforts  "to take corrective measures to eliminate the resulting prejudice   the misconduct did not justify reversal   788 F 2d at 1177

ST. VS ALBERT RAMIREZ CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|---|---|---|
| 10 24 46 AM | | WHO ELSE DID YOU C M , HE WAS NOT A FRIEND, I TOLD HIM TO GET THE THING, DO YOU KNOW OF ANYBODY HAS THAT GUN |
| 10.25 33 AM | | THERE WAS A GUY IN FRONT OF STORE OF RAGS TO RICHES I BELIEVE HE GOT THE GUN, I JUST HAD SOX AND BOXERS |
| 10.26 34 AM | | DID YOU PLAN ON KILLING MR. ROBLEDO "NO" |
| 10.27.11 AM | | WERE YOU THERE THAT DAY TO AMBUSH YOUR MOM'S BOYFRIEND "CAN I SPEAK MY MIND", IF I WANTED TO KILL MY MOM OR ROBLEDO, I COULD GO IN THERE AND GO TO MY ROOM AND GET SOMETHING TO EAT ETC |
| 10 28 14 AM | | WHEN HE TOLD YOU HE WAS GOING TO GET PISTOLA "THAT IS A PISTOL" THAT WAS NOT HIS AMMO IN GARAGE |
| 10 28.59 AM | | I KNEW HE HAD A WEAPON, I USED TO SMOKE MARIJUANA I WAS LOOKING FOR MONEY AND I SAW A GUN IN HIS DRAWER |
| 10 29.40 AM | | I THOUGHT I WAS IN DANGER |
| 10 29.53 AM | | BENCH CONFERENCE |
| 10.30 37 AM | COURT | GONNA TAKE A BREAK |
| 10 31 21 AM | | JURY EXCUSED FROM COURTROOM |
| 10.31.36 AM | OFF RECORD | |
| 11.03.22 AM | | COURT IN SESSION JURY BEING SEATED IN BOX, DFT AND ALL PARTIES PRESENT |
| 11.03 56 AM | COURT | INSTRUCTS JURORS GOING TO AN EARLY LUNCH BE BACK BY 12 45 P.M |
| 11.04 37 AM | RECESS | |
| 12.49 46 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY, DFT AND ALL PARTIES ARE PRESENT |
| 12 50 29 PM | CHANDLER | DFT PUT FORWARD THAT THE VICTIM WAS A FIRST AGRESSOR, ANY TYPE OF SPECIFIC CONDUCT |
| 12.51 31 PM | | WHAT TRAIT DO YOU THINK IS DELIBERATE AND WILLFUL MURDER |
| 12.51.52 PM | CHANDLER | RESPONDS, NOW WE HAVE AN OPPORTUNITY THAT OUR VICTIM WAS NOT THE AGRESSOR |
| 12 52 26 PM | COSBY | AS FAR AS THE SITUATION OF THE JAILER, HAD NOTHING TO DO WITH HIS CHARACTER ETC |
| 12 52 50 PM | CHANDLER | READS RULE 404-A-2 SEC B |
| 12 54 32 PM | COURT | WILL LET YOU GO AHEAD AND DO IT, BETTER WAY TO DO IT |
| 12 54 50 PM | COSBY | I WILL ASK YOU TO RE VISIT SEXUAL ISSUE |
| 12 55 21 PM | COURT | OBJECTION NOTED |
| 12 55 43 PM | DFT | COMMENTS |

ST VS ALBERT RAMIREZ  CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 12 56:09 PM | | JURY BEING SEATED IN BOX |
| 12.57 14 PM | | COURT IN SESSION , JURY DFT AND ALL PARTIES PRESENT |
| 12.57:56 PM | CHANDLER | XEX - ABOUT YOUR TIME IN SCHOOL, I DON'T KNOW JUST GOT HELD BACK |
| 12 59 19 PM | | I CANNOT ANSWER IF I DID GOOD IN SCHOOL |
| 12.59 43 PM | | YOUR DAD WOULD PROVIDE YOU $500 A MONTH TO STAY IN SCHOOL, WHEN YOU GET SOCIAL SECURITY, IT IS THE TRUTH IT WAS COMING FROM MY DAD'S MONEY |
| 1.01:03 PM | | YOU HAD A DRIVER'S LICENSE IN 2007, YOU HAD A CELLPHONE, YOU PAID THE CELLPHONE BILL AND YOU HAD A JOB AT MCDONALDS |
| 1 02 25 PM | | ONLY DID CERTAIN THINGS AT MCDONALDS |
| 1 03:05 PM | | YOU SPEAK ENGLISH AND SPANISH , I UNDERSTAND A LITTLE BIT AND CAN SPEAK A LITTLE BIT, I AM AMERICAN |
| 1 04 36 PM | | YOU FIRST MET ELADIO WHEN YOU WERE APPROX 5 OR 6 YEARS OLD |
| 1 05 36 PM | | YOU DIDN'T LIKE ELADIO ROBLEDO "THAT IS AN IMPROPER QUESTION TO ASK" I LIKE EVERYBODY I JUST DON'T LIKE SOME THINGS PEOPLE DO, THAT IS HOW IT IS SUPPOSED TO BE |
| 1 06 12 PM | | ELADIO AND YOUR MOTHER LIVED AT 512 W 6TH ST. "WHEN" JULY 2007 |
| 1 07 27 PM | | YOU HEARD THAT OFFICER AGUILAR SERVED YOU THE NO TRESPASS ORDER, "YES" |
| 1:07 44 PM | | AFTER RECEIVING THE NO TRESPASS ORDER YOU RETURNED BACK TO THE HOUSE WHERE DEBRA LIVED |
| 1 08 40 PM | | AT ONE TIME YOU BROKE OUT THE FRONT WINDOW OF YOUR MOTHER AND ELADIO'S HOUSE |
| 1 09 40 PM | | ARE YOU AWARE YOUR MOTHER CALLED THE POLICE ABOUT THAT INCIDENT "NOT AWARE, IF SHE DID OR NOT" |
| 1 10 12 PM | | YOU BROKE OUT A CAR WINDSHIELD WITH YOUR CRUTCHES, DID SHE CALL THE COPS ABOUT THAT "YES" |
| 1 10 58 PM | | YOU KNOW WHERE CROSSHAIR GUN SHOP IS IN CLOVIS "YES" |
| 1.11 15 PM | | YOU WENT IN THERE AND DEMANDING A GUN |
| 1 11 42 PM | | YOU WANTED A REVOLVER "I JUST ASKED FOR GUN" |
| 1 12 27 PM | | YOU FILLED OUT PAPERWORK TO PURCHASE GUN |
| 1.12 46 PM | | YOU DROVE A CAR TO GUN SHOP |
| 1.13 42 PM | | YOU WERE TRYING TO GET THINGS RIGHT |

ST VS ALBERT RAMIREZ CR-07-434                                    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 2.14.36 PM | COURT | HE HAS BECOME EXPLOSIVE AND SHOOTS OFF HIS MOUTH, GO TALK TO HIM AND SEE WHAT WE WILL DO, WE ARE CLOSE TO THE END |
| 2 15 25 PM | RECESS | |
| 2 36.30 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY DFT AND ALL PARTIES PRESENT |
| 2 37 06 PM | COSBY | HAVE DISCUSSED WITH MY CLIENT HIS OPTIONS HE HAS STATED HE FEELS HE NEEDS ME, I TOLD HIM EITHER I REPRESENT HIM OR HE REPRESENTS HIMSELF, I CAUTIONED HIM HE NEEDS TO OBEY COURT RULES, HE SAID HE WOULD RATHER HAVE SOMEONE ELSE BUT HE NEEDS ME, I EXPLAINED TO HIM AS FAR AS THE LAST WITNESS, THE WITNESS TELLS ME HE DOES NOT REMEMBER IN FRONT OF THE JURY, SO RATHER THAN CALL SOMEONE TO STAND THEY DON'T REMEMBER I JUST DON'T ASK THAT QUESTION, THERE ARE QUESTIONS THAT ARE NOT ASKED FOR REASONS |
| 2 39 17 PM | COURT | LET THE RECORD REFLECT THAT MR RAMIREZ HAS RETURNED TO THE COURTROOM AND MR COSBY WILL BE CONTINUING HIS REPRESENTATION, NOT ANOTHER OPPORTUNITY TO CHANGE COUNSEL |
| 2.39 55 PM | | ADVISES DFT THAT THERE IS AUTHORITY THAT ALLOW YOU TO SIT IN ANOTHER ROOM TO WATCH TRIAL IT IS AN OPTION IF YOU CONTINUE TO BE DISRUPTIVE YOU WILL SIT IN ANOTHER ROOM AND VIEW TRIAL BY VIDEO |
| 2 40 48 PM | COSBY | HE ASKED ME IF IT WAS BETTER TO SIT IN ANOTHER ROOM, I TOLD HIM IT WOULD BE AGAINST HIS INTEREST TO VIEW BY VIDEO |
| 2 41 36 PM | CHANDLER | I DON'T HAVE ANY XEX FOR MR. RAMIREZ BROTHER OF DFT |
| 2 42 28 PM | COSBY | I HAVE TOLD HER WHAT SHE CAN SAY AND CANNOT SAY |
| 2 42 40 PM | | BENCH CONFERENCE |
| 2 44 43 PM | COSBY | REGARDING PHOTO OF IVAN VASQUEZ SHOWING PHOTO OF HIM IN BOOKING, AND RECEIVED THIS LETTER |
| 2 46 00 PM | CHANDLER | RELEVENCE TO THE PICTURE, COURT WILL NOT ALLOW PHOTO |
| 2 47 19 PM | | JURY BEING BROUGHT INTO COURTROOM |
| 2 48 04 PM | | OFF RECORD |
| 2 51 51 PM | | #3 WITNESS HESIQUIA RAMIREZ CALLED BY COSBY / SWORN / DEX |
| 2 52 03 PM | | JURY BEING SEATED IN BOX |
| 2 53 09 PM | CHANDLER | MR JOSE RAMIREZ, THE STATE DOES NOT HAVE ANY QUESTIONS |

ST. VS ALBERT RAMIREZ  CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 2:54:31 PM | | SHE IS ALBERT'S OLDER SISTER |
| 2 54 44 PM | | HOW OLD WERE YOU WHEN ELADIO ROBLEDO CAME ABOUT |
| 2 55 20 PM | | SHE MOVED OUT AS SOON AS SHE WAS 18 YEARS OLD |
| 2 55 37 PM | | YOUR BROTHER LIVED WITH YOUR MOM AND MR. ROBLEDO FOR A NUMBER OF YEARS |
| 2 55 50 PM | | WERE YOU EVER AWARE OF ANY ISSUES OF YOUR BROTHER AND MR. ROBLEDO |
| 2:56 52 PM | | MY MOM WOULD LET ME KNOW EVERYTHING, BECAUSE I WOULD GO EVERYWHERE WITH MY MOM |
| 2.57 22 PM | | DID YOUR BROTHER EVER COME LIVE WITH YOU "YES BACK IN THE BEGINNING OF 2007, HE STAYED WITH ME OFF AND ON ABOUT 3 OR 4 MONTHS" |
| 2 58 04 PM | | HE JUST LEFT, HE WAS GOING THRU HIS OWN THINGS |
| 2 58 23 PM | | WERE YOU AWARE OF ANY PHYSICAL ISSUES BETWEEN ALBERT AND ROBLEDO |
| 2 58 54 PM | | HE WAS REAL JEALOUS OF MY BROTHER, HE WANTED MY MOM TO HIMSELF, HE WOULD |
| 2.59 23 PM | CHANDLER | OBJECTS RULES OF HEARSAY, VICTIM IS NOT HERE |
| 2:59 56 PM | COSBY | I WAS PRESENT SOMETIMES HOW HE WOULD TREAT HIM |
| 3.00.17 PM | | DID YOU EVER SEE ANYTHING BY ALBERT THREATENING, HE WOULD GET UPSET |
| 3 00 53 PM | | FAMILIAR WITH BROKEN WINDSHIELD, WAS NOT PRESENT WHEN IT HAPPENED |
| 3 01 37 PM | | HE WAS ON CRUTCHES FOR A WHILE |
| 3:02 24 PM | | DID YOU SEE HIM AROUND JULY 2007, HE WAS STILL LIMPING |
| 3 03 01 PM | | SHE WAS NOT LIVING IN HOUSE WITH HER MOTHER AND ROBLEDO |
| 3 03 19 PM | | DID YOU RECEIVE A PHONE CALL AND TALK TO ALBERT AFTER HIS ARREST, |
| 3:04.17 PM | | WERE YOU AWARE OF ISSUES HE WAS HAVING, HE SAID SOMEBODY WAS AFTER HIM |
| 3 04 45 PM | CHANDLER | THIS IS HEARSAY |
| 3 05.10 PM | COSBY | STATUS OF YOUR BROTHER, HE HAS ISSUES |
| 3 05 48 PM | CHANDLER | XEX - YOU SAY THE COPS WERE CALLED AND NOTHING WAS EVER DONE |
| 3 06 24 PM | | IF SOMETHING WAS DONE MAYBE IT WOULD NOT HAVE GOT THIS FAR |
| 3 06 40 PM | | THERE IS NO JUVENILE JUSTICE HERE |

ST. VS ALBERT RAMIREZ CR-07-434                    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 3 39 23 PM | | ALL YOU SAW WAS SHIRT ON CAR AND SHOES ON GROUND |
| 3 39:55 PM | | THIS CAR LOOKED LIKE IT HAD BEEN MOVED, BECAUSE IT WAS FURTHER UP |
| 3 40 30 PM | | WHEN DEBRA CAME OUT SHE WAS SITTING ON PORCH STEPS |
| 3 40 53 PM | | WITNESS EXCUSED |
| 3 41:33 PM | | #2 WITNESS GRACE FINKEY CALLED BY MORRIS / SWORN / DEX |
| 3 42 37 PM | | LIVES IN CLOVIS "HOUSEWIFE" HAS 3 BOY'S |
| 3 43 02 PM | | WHAT WERE YOU DOING ON JULY 12TH WORKED AT SUTTON'S BAKERY AND HOME CARE, |
| 3 43 41 PM | | WENT TO LUNCH AT JALISCO'S SPENT ABOUT 30 MINUTES |
| 3 44:03 PM | | GOT IN HER CAR AND WENT BACK ON 6TH STREET HEADED TOWARDS THORNTON |
| 3 45.00 PM | | SOMETHING CAUGHT HER EYE SAW TWO PEOPLE RUNNING, |
| 3 45 46 PM | | DESCRIPTION OF OLDER GUY RUNNING THINK HE HAD A HAT ON |
| 3 46.22 PM | | YOUNGER MAN RUNNING SLENDER, HE WAS WEARING SHORTS, A POLO SHIRT THINK IT HAD GREEN STRIPES THE YOUNGER ONE WAS CHASING THE OLDER ONE |
| 3 47 29 PM | | THE OLDER GUY HAD FALLEN DOWN AND YOUNGER GUY HAD HIS ARM EXTENDED |
| 3 48 40 PM | | SHE THOUGHT SHE HEARD TWO POPS |
| 3 49 00 PM | | LAST THING SHE REMEMBERS SEEING, LOOKED BACK AND OLDER ONE WAS ON GROUND |
| 3 50 10 PM | | SHE DIALED 911 WHILE ON HER WAY TO THORNTON, SHE WAS CONCERNED |
| 3 50 56 PM | | GAVE A STATEMENT TO LAW ENFORCEMENT |
| 3 51.08 PM | COSBY | XEX - DO YOU RECALL BEING INTERVIEWED ON DAY OF EVENT |
| 3 51 44 PM | | REMEMBERS DAN AGUILAR TALKING TO HER |
| 3 52.13 PM | | TOLD THE OFFICER THAT SHE REMEMBERED 3 SHOTS, YOU WERE ALSO ASKED WHAT THE PERSON LOOKED LIKE |
| 3 53 43 PM | | HE HAD A POLO SHIRT WITH GREEN STRIPES HE IS THE ONE WITH THE GUN |
| 3 54 51 PM | | THINKS THE SHORTS WERE BLUE JEAN DEMIN TYPE |
| 3 55.24 PM | | DID NOT SEE ANY SHOES, SAW THE PERSON WITH ONE ARM OUT STANDING A LITTLE TO THE SIDE |
| 3 56 28 PM | | DOES NOT REMEMBER SEEING ANYONE ELSE OUT THERE, SAW THE OLDER FELLOW FALL BACKWARD |

ST. VS ALBERT RAMIREZ CR-07-434                         COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 3 15 21 PM | CHANDLER | IF DFT TAKES STAND AND SAYS IT THEN I CAN CALL WITNESS BACK |
| 3.15 41 PM | COSBY | THAT IS WHY I AM TRYING COURT TO MAKE A RULING OUT OF HIS PRESENCE |
| 3 16 32 PM | COURT | CONCERNED THAT THE QUESTION ITSELF PRESENTS PROBLEMS THAT ARE NOT PERTINENT TO THIS CASE, WITH THESE KIND OF ALLEGATIONS I WILL NOT LET YOU ASK THAT QUESTION |
| 3 17 10 PM | COSBY | OBJECTING |
| 3 17 19 PM | COURT | BELIEVES IT IS AN INAPPROPRIATE QUESTION |
| 3 17 30 PM | RECESS | |
| 3 28 30 PM | | COURT IN SESSION JURY DFT AND ALL PARTIES PRESENT |
| 3 29.33 PM | CHANDLER | RDEX - WITNESS SAM SAIZ, DO YOU RECALL INTERIVEW WITH POLICE DEPT |
| 3 30 11 PM | | DO YOU RECALL SPEAKING TO POLICE OFFICER AT THE SCENE |
| 3 30 24 PM | | ARE YOU BEING TRUTHFUL TODAY, WERE YOU TRUTHFUL AT THE TIME OF THE INCIDENT |
| 3 30 57 PM | | WHAT DID YOU TELL POLICE OFFICER WHEN YOU RAN TO THE FRONT OF YOUR HOUSE ETC |
| 3 32 01 PM | | DOES NOT RECALL ELADIO SAYING OW |
| 3 32 53 PM | | YOU TOLD POLICE OFFICER THAT DAY ABOUT NOT SEEING GUN, |
| 3 33 50 PM | | RECALLS TELLING HIS MOM DO NOT GO OUTSIDE "YEAH BUT SHE IS STUBBORN SHE FOLLOWED ME TO MAILBOX" |
| 3 34 16 PM | | DEBRA HAD A CELLPHONE, SHE TOLD ME CALL JOE "HER OLDEST SON" |
| 3 34 43 PM | | TOLD POLICE HE WAS BLEEDING, COUGHING UP BLOOD, COMING OUT OF NOSE AND MOUTH |
| 3 35 16 PM | | TOLD THE POLICE OFFICER I SAW ONE OF HIS RED SHOES, ETC |
| 3 36 11 PM | | POLICE OFFICER SAID HE WAS WEARING A RED SHIRT RED SHOES, YOU SAID I THINK WHITE SHORTS |
| 3 36 45 PM | | DO YOU RECALL THAT HE SAID WHAT DID HIS HAIR LOOK LIKE |
| 3 37 07 PM | | RECALLS TELLING OFFICER HE'S GOT A LONG NOSE |
| 3 37 16 PM | | HOW SURE ARE YOU IT WAS ALBERT, I SAID 100%, I DID NOT SEE NOBODY ELSE |
| 3 38 00 PM | | DO YOU HAVE ANY REASON TO LIE OR POINT THE FINGER AT SOMEONE, ARE YOU TELLING ABSOLUTE TRUTH TODAY "YES SIR" |
| 3 38 18 PM | COSBY | RXEX - YOU HAVE NO REASON TO TELL ANYTHING OTHER THAN THE TRUTH, I SAW HIM WEARING A RED SHIRT |

IN THE NINTH JUDICIAL DISTRICT COURT
STATE OF NEW MEXICO
COUNTY OF CURRY

NINTH ... 'AL ...
CURR ... 'N'Y M
FLED ' 'T'E' :

?0ºº JAN 13  PM 3: 33

STATE OF NEW MEXICO,

Plaintiff,

vs.

No. D-0905-CR-0200700604
434

ALBERT RAMIREZ,

## MOTION IN LIMINE

COMES NOW the defendant, by and through his counsel of record Brett J. Carter,

District Public Defender, and hereby respectfully moves this Court for an order preventing the

State of New Mexico from introducing certain photographs of the defendant at trial and for cause

would state,

1. Counsel for defendant has reviewed the contents of the investigating officer's file
The file contains several photographs of the defendant which are prejudicial and have
no probative value The photographs could be interpreted to suggest involvement in a
gang and that inference is prejudicial to the defendant The evidence in this case does
not suggest any gang involvement and the photographs should be excluded by the
court

2 The photographs should be excluded under Rule 11-401 as they are not relevant. The
New Mexico rules of evidence define "relevant evidence" as "evidence having any
tendency to make the existence of any fact that is of consequence to the determination
of the action more probable or less probable than it would be without the evidence"
The photographs in question were not used by the witnesses to identify defendant

RP 253



The photographs do not contain any information that makes the existence of any fact that is of consequence to the determination more or less probable.

3.  The photographs should also be excluded under Rule 11-403 in that the photographs are more prejudicial than probative. The photographs (which are attached as defense exhibit A) do not have any probative value in this prosecution. The admission of the photographs is extremely prejudicial to the defendant in that they suggest involvement in a gang or other criminal activity

WHEREFORE, the defendant prays this Court issue an Order requiring the State not to present any of the above referenced photographs into evidence at trial and further relief as the Court deems just and proper

Respectfully Submitted,

HUGH W DANGLER
CHIEF PUBLIC DEFENDER

By: _____

BRETT J. CARTER
District Public Defender
Clovis District Office
800 Pile, Suite A
Clovis, NM 88101
(505) 769-1991

I HEREBY CERTIFY THAT A COPY OF THE FOREGOING WAS DELIVERED/MAILED
TO OPPOSING COUNSEL ON THE DATE OF FILING STAMPED ABOVE

_____
PUBLIC DEFENDER DEPARTMENT

RP 254

4  There is no doubt that Mr Robledo's death is due to several wounds inflicted

by a firearm.

5. The photographs have no medical value and would only serve to create

emotional feelings in the jury that would prejudice them against Mr. Ramirez

WHEREFORE, defendant Albert Ramirez requests this Court to rule pre-trial

that the State cannot offer any photographs of the deceased at trial.

Respectfully submitted,
HUGH W. DANGLER
CHIEF PUBLIC DEFENDER
By·

Brett J. Carter
District Public Defender
Clovis District Office
800 Pile, Suite A
Clovis, NM 88101
Counsel for Defendant

This will certify that a copy of the foregoing
was delivered\faxed to the District Attorney's
office on January [J^th , 2009.

Brett J. Carter
Counsel for Defendant

RP 271

IN THE NINTH JUDICIAL DISTRICT COURT
STATE OF NEW MEXICO
COUNTY OF CURRY

2009 JAN 14  AM 8: 48

STATE OF NEW MEXICO,

Plaintiff,

vs.

No. D-0905-CR-0200700604
                                              434

ALBERT RAMIREZ,

Defendant.

## MOTION IN LIMINE

COMES NOW the defendant, by and through his counsel of record Brett J. Carter,

District Public Defender, and hereby respectfully moves this Court for an order preventing the

State of New Mexico from introducing a letter the officers allege the defendant wrote and for

cause would state;

1    Counsel for defendant has reviewed the contents of the investigating officer's file

The file contains a letter that contains prejudicial comments (attached as defendant's

exhibit b). The letter looks like it is addressed to Albert and there is no evidence such

as a handwriting exemplar to prove the defendant wrote the letter  It would be

extremely prejudicial to the client to allow this information before the jury especially

if defendant didn't write the letter  The letter does not have a date and it is not known

when it was written or who wrote it  The letter contains references to "Jack yall" and

phrases such as "Ima blast yall niggaz" which a juror would take as extremely

offensive  Besides being undated, it appears the letter is addressed to Albert. The

letter does not make any mention of the deceased in this case or any references to his

or Albert's family

RP 272

2. The letter should also be excluded since a foundation can not be laid to show that the defendant wrote the letter

3. The letter should also be excluded under Rule 11-403 in that the comments in the letter are more prejudicial than probative The letter does not have any probative value in this prosecution. The admission of the letter is extremely prejudicial to the defendant due to the comments made in the letter

WHEREFORE, the defendant prays this Court issue an Order requiring the State not to present or mention any of the comments in the letter into evidence at trial and for further relief as the Court deems just and proper

Respectfully Submitted,

HUGH W. DANGLER
CHIEF PUBLIC DEFENDER

By

BRETT J. CARTER
District Public Defender
Clovis District Office
800 Pile, Suite A
Clovis, NM 88101
(505) 769-1991

I HEREBY CERTIFY THAT A COPY OF THE FOREGOING WAS DELIVERED/MAILED TO OPPOSING COUNSEL ON THE DATE OF FILING STAMPED ABOVE

PUBLIC DEFENDER DEPARTMENT

RP 273

Albuki

Bitch ass Niggaz / Imma Jack
yall pussy ass / Imma blast yall
niggaz / tryn Jack our Figgaz
But we trill as Mggaz /
So stop ma listen 2 me Inda
we grewd up screw up3 / then blew up
so shut up / bitch's get out of my Way!
for I spray no away, Ill dont play
bound ice yer taylor be 6 ft under ground

we well will be Eyes / NWA as Freelidd
Im gone Ride with my Fam
till the end time / I like to smoke Kill
And Representa the and my son natin
will get Free gut skud
my kind, Ima Shine Every time I
Dyness

Exhibit B

RP 274.

## IN THE NINTH JUDICIAL DISTRICT COURT
## STATE OF NEW MEXICO
## COUNTY OF CURRY

STATE OF NEW MEXICO,

Plaintiff,

vs.

No. D-0905-CR-0200700604

ALBERT RAMIREZ,

Child.

### MOTION IN LIMINE

COMES NOW the defendant, by and through his counsel of record Brett J Carter,

District Public Defender, and hereby respectfully moves this Court for an order preventing the

State of New Mexico from introducing the testimony of Dennis Fite at trial and for cause would

state;

1. Counsel for defendant has reviewed the contents of the investigating officer's file
   The file contains a report from Agent Mulligan involving an interview of a gun shop
   owner. Dennis Fite of Crosshairs gun shop told the agent that about three weeks prior
   to July 13, 2007 that the defendant had been in the store and attempted to purchase a
   firearm Due to defendant's age he refused to sell him a firearm and contacted law
   enforcement. This information is stale, prejudicial and has no probative value The
   attempt to purchase a firearm two to three weeks prior to the incident in question is
   not relevant and is stale. A firearm was not purchased and the statements of Mr. Fite
   are prejudicial to the defendant.

2. The attempted purchase of a firearm two to three weeks prior to this incident should
   be excluded under Rule 11-401 as they are not relevant The New Mexico rules of
   evidence define "relevant evidence" as "evidence having any tendency to make the

RP 275

existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence". The testimony of Mr Fite does not contain any information that makes the existence of any fact that is of consequence to the determination more or less probable.

3. The statements should also be excluded under Rule 11-403 in that the statements are more prejudicial than probative The admission of the statements would be extremely prejudicial to the defendant in that they suggest involvement in other criminal activities

WHEREFORE, the defendant prays this Court issue an Order requiring the State not to present any of the above referenced information from Mr. Fite into evidence at trial and further relief as the Court deems just and proper.

Respectfully Submitted,

HUGH W. DANGLER
CHIEF PUBLIC DEFENDER

By

BRETT J CARTER
District Public Defender
Clovis District Office
800 Pile, Suite A
Clovis, NM 88101
(505) 769-1991

I HEREBY CERTIFY THAT A COPY OF THE FOREGOING WAS DELIVERED/MAILED
TO OPPOSING COUNSEL ON THE DATE OF FILING STAMPED ABOVE.

RP 276

●                                    ●

**IN THE NINTH JUDICIAL DISTRICT COURT**
**STATE OF NEW MEXICO**
**COUNTY OF CURRY**

NINTH . . . CIAL DISTR . .
CURRY . . COUNTY NM
FILED · · MY OFFICE

2000 JAN 14  PM 2: 46

**STATE OF NEW MEXICO,**

     **Plaintiff,**

vs.

**No. D-0905-CR-0200700604**
434

**ALBERT RAMIREZ,**

     **Defendant.**

## MOTION IN LIMINE

COMES NOW the defendant, by and through his counsel of record Brett J Carter,

District Public Defender, and hereby respectfully moves this Court for an order preventing the

State of New Mexico from introducing into evidence any mention of a restraining order obtained

by the victim or defendant's mother and for cause would state,

1. The Clovis Police department and other witnesses have indicated that the victim
   and/or the defendant's mother had sought to obtain a restraining order preventing the
   defendant from having contact with them. Agent Mulligan of the District Attorney's
   office during his investigation of the case  contacted the District Court to inquire
   about the restraining order  The District Court Clerk indicated there were no requests
   or filings by either the victim or defendant's mother to obtain a restraining order

2. Any reference to a restraining order should be prohibited by the court until such time
   as a foundation can be laid to show that a restraining order exists

3   The admission of a restraining order between the victim, defendant's mother and
   defendant is extremely prejudicial to the defendant.

RP 279

WHEREFORE, the defendant prays this Court issue an Order requiring the State not to

mention or infer that a restraining order existed between the defendant, the victim or

defendant's mother and for further relief as the Court deems just and proper.

Respectfully Submitted,

HUGH W. DANGLER
CHIEF PUBLIC DEFENDER

By: _____

BRETT J. CARTER
District Public Defender
Clovis District Office
800 Pile, Suite A
Clovis, NM 88101
(505) 769-1991

I HEREBY CERTIFY THAT A COPY OF THE FOREGOING WAS DELIVERED/MAILED
TO OPPOSING COUNSEL ON THE DATE OF FILING STAMPED ABOVE

_____
PUBLIC DEFENDER DEPARTMENT

RP 280

Prior bad acts.
Prosecutorial
misconduct Ex. 5+

STATE v. ALBERT J. RAMIREZ    CR 07-434    CR1 CHAMBERS

| Time | Speaker | Note |
|------|---------|------|
| 3:39:27 PM | Chandler | Releveance is that it indicates he will commit murder  He expressed thoughts of murder before murder has happened   Note goes to premeditation |
| 3:40:20 PM | Carter | Note says "Albert" at the top - doesn't know if he wrote the note |
| 3:40:41 PM | Chandler | Weasel is Albert and note was found in the trunk of his car   Randy Pitcock found it in his car |
| 3:41:16 PM | Carter | Not sure it was written by Albert.  More prejudicial than probative  Eye witness testimony is fairly good. |
| 3:41:40 PM | Chandler | Thinks they have good eye witnesses  Trying to take this to first degree murder instead of second degree  Addressing contents of note  Reads note. |
| 3:43:40 PM | Chandler | Review of note.  Could make argument to the jury that this is Dft's mind set - he's not afraid to shoot someone if they mess with him  Victim served him with tresspass notice - his mindset is that he could kill him |
| 3:45:42 PM | Carter | Can't tell if the note is written by Albert - found in jeans at a car that was left at his mother's house  Nothing to indicate that the note was written by Albert  More prejudicial than probative  No effort was made to see who wrote it |
| 3:46:43 PM | Judge | Attempt to purchase a firearm |
| 3:46:54 PM | Chandler | 404b argument - probative vs  prejudicial.  Demanded to buy handgun  Manager of gun shop suspected something suspicious - doesn't sell it to him |
| 3:47:31 PM | Judge | Restraining order |
| 3:47:35 PM | Chandler | Dft served with restraining order - no tresspass order. |
| 3:47:54 PM | Carter | Officers made some mention that restraining order - no restraining order out there. |
| 3:48:35 PM | Chandler | Dft created two problems before murder - broke out victim's vehicle window and broke out his mom's house window  Filed no tresspass order and he comes back and kills him |
| 3:49:28 PM | Carter | Gun |
| 3:49:37 PM | Chandler | Witness sayd there was a hand gun with a long barrel  Albert's cousin was found with similar gun that was used in the murder |
| 3:50:26 PM | Judge | Can make rulings next week. |
| 3:50:38 PM | Carter | Motion about a statement made to Steve Hawkins |
| 3:50:51 PM | Reeb | Won't do that |
| 3:50:54 PM | Carter | Got a copy of the new autopsy |
| 3:51:05 PM | Chandler | Was amended because error was caught in the original report |
| 3:51:44 PM | Carter | Walmart employee testimony reviewed. |
| 3:52:04 PM | Reeb | Lots of witness  Lot of chain of custody witnesses  Still at 30+ witnesses |
| 3:52:28 PM | Carter | Will interview them next week |



STATE v. ALBERT J. RAMIREZ   CR 07-434                                    CR1 CHAMBERS

| Time | Speaker | Note |
|------|---------|------|
| 3 28 15 PM | Judge | Announcement of case. This is a meeting to review some of the Motions that have been filed. Counsel for defendant and state are here. Trial set for January 26 - 5 day trial. |
| 3 29.08 PM | Judge | Knows that State has not had opportunity to respond to Motions Dft. has gone through referral to restore his competency  After that he is found to be competent  September 16, 2008 - date of Order. Mr. Carter has stated that he was unable or unwilling to assist in defense. |
| 3.30:11 PM | Carter | More of an unwillingness on his part  is probably getting advice from inmates in the jail. Went to visit him today and tried to get answers from him but were unable  Is not actively cooperating Has done extensive preparation. Wants to be fully prepared for trial without his assistance |
| 3 31:28 PM | Judge | Ruled that there will be no interpreter for the family. One Motion refers to photos in file. Testimony of Dr Burness - |
| 3.32 08 PM | Carter | If there is not presentation of mental health defense, her testimony is not admissible  That's the extent of the motion |
| 3.32.31 PM | Chandler | Don't intend on putting on doctor, unless they raise that issue. |
| 3.32 55 PM | Carter | If they argue to jury on mental health, could put her on. |
| 3.33 20 PM | Chandler | Will probably not call the Las Vegas doctor. |
| 3.33 36 PM | Carter | Researched insanity defense  Would not work in this case based on facts that State has. Temporary insanity - might be closest this he suffers from - but there is no such thing as temporary insanity in this state. Some things that their witnesses will testify might be helpful to defense |
| 3 34 48 PM | Carter | Some actions that defendant did at detention center prevented them from hiring expert. Don't have an expert  Dft won't discuss the case so expert can't interview him. No experts at trial. |
| 3 35 44 PM | Judge | Photos of deceased - hasn't seen them. |
| 3.36.07 PM | Chandler | Prior to doctor testifying, will get together and go over pictures that will be introduced |
| 3:36 37 PM | Judge | If those are limited, will take care |
| 3 36 46 PM | Chandler | Handwritten note - probative vs |
| 3:37 15 PM | Chandler | Photos of defendant reviewed  Identifies some of his phone calls |
| 3 37:52 PM | Reeb | Not sure of that |
| 3:37.55 PM | Chandler | Identifies himself in the rap song  The back of the picture has the word "weasel" — gang Affiliated presential |
| 3 38 14 PM | Carter | Might need actual photo |
| 3 38 28 PM | Chandler | Might stipulate that he goes by another name. Note was found in his car. Shows Dft's state of mind at the time of offense |
| 3 39 09 PM | Judge | Inclination is that unless it is tied in better, doesn't see the relevance |

SEE comms'
In proverce
Evidence

← letter
s, 4, 4 11∩

gang Affiliated presential

see

# THIS PAGE

# INTENTIONALLY

# LEFT

# BLANK

All papers our Facts. And Exbits
Records documents . cases
Relevat to my case

E. F.

Ineffective assistance
on Haberus petition

See Her letter Saying
we did not fully meet and
She would not communicate
with me ot all. I tried
to call evvy week And She
wouldent speak to me,

Habeaus. counsel did not
argue these issues I brng
Now in my Amended
petition

If She would of I would

of Got an Evidutary

Hearing And proved

trial counseling ineffectivness

F.    INEFFECTIVE ASSISTANCE OF HABEAUS COUNSEL

# THIS PAGE

# INTENTIONALLY

# LEFT

# BLANK

HABEAUS ATTORNEYS

LIANE. E. KERR.

F. Both. AMANDA STEPUNSON

SHE failed to raise issues

that had writ and would

win.

SHE refused to propuly

assist _IN HABEAUS AMENDED

PETION. OR REQUEST FOR EXTENSION

for future investigation! Collection of

Materials is requsted.

INEFFECTIVE ASSISTANTS OF
Both HABEAUS ATTORNEYS
Amanda STEPHENSON And
LIANE 2. KERR FOR NOT
Requesting trial Closing
ARGUMENT. I Requested
Both hABEAUS ATTORNEY Failed
to provide effective
assistance in HABEAUS
proceedings And ARGUE
CERTAIN ISSUES. I
Wanted ARGUED.

AFFidavit I asked I have E. Kur
Habeaus Attorney to file 5/19/18
Issues correctly Stedicanot.

I contacted Amanda Stephenson
Several times Let her know the
deadline would be Soon to File the
Amended Habeaus Petition Each Time
She would say she would File it and
Requested the truscript From the
Court Closing And open.ly Argumate
Rebutal and of Specific witnesses
Sam saiz, Dennis Fite. Officer Howard,
Tony beaudz, Sandyloomis, dave Lee
But Never got the trascript or
discovery of My Mental Health
Records From prison NM deptcare.
To show I was Suffering From
Schizophrenia + PTSd + depression
at time of trial + possibly time
of crime I was Insane or
Incapacitated and Not competent
I was decieved by aminda
Stephenson poor collection Habeaus
Attorney she did Nothing Filed
Nothing only lied continously →
To Me. No loyaity. /→
And this caused me not
to be able to properly ⇒

5/9/18

consult with my New private
ATTORNEY Liam keel And
Also APPEIATE counsel was
INEFFECTIVE For Not claiming
INSUFFICIENT Evidence to convict
and doubie Jeoppardy on the
two courts of tempury w/
Evidence And I told him
to Check Closing Arguments
this was prosecutorial
MISCONDUCT. By calling me
a Menvace to society, liar,
Manipulator, cold blooded killer No
Evdence to Support this And
asking witness sam saiz in
direct exam all you telling the
truth and as the time of incident?
There is no reason for you to lie?
Vouch for witness. Booshy Credibility
And of exilsit 110 Letter stating
of Shooting people, jacuing sealing
deugs) Killing, was admitted read
to July Them excluded, But used
in closing Argument ⟶

Showing pictures of deceased grusome

Should of objected.

ask for Hearing of concechouge too
5/9/18

And appelate causel failed to argue
There was conflict of Interest
between myself and trial counsel
I wanted de Maxene Swartz called
as a witness to my sanity & compotary,
mental illness, and im and Enkury,
Liose and Teuthfull my creadibility
character witness.
    All this was ineffectfive
assistance of cancel.

Teal Counsel failed to Question
full Juey members, After I fell
down cand they saw my leg
Shacmes. Failed to Request a
mistrial And failled to object
in closing Argument & Rebutal
And explanation of my witnesses
I was presumred Mal
davied my Right to effectve
assistance of counsel

I was doned my due process
Rights And A fair trial ⇒

5/9/20

5ᵗʰ and 14ᵗʰ advertisement And 6th advertisement And violation of Federal law And Federal Rights and Federal and United States laws And constitution.

Between Jan. 15ᵗʰ and Feb 29ᵗʰ 2018 I had no pens And paper to write And not able to speak to my Habeas attorney have Juck I spoke to Her 10 minutes in about 8 months, we had About no time proper to File

5/9/2018

petition, research, go our witnesses

transcript, records, discovery to

Fully claim All of all claims raised.

Ineffective assistance of trial counsel
Ineffective assistance of appellate
counsel
Improper comment on silence
Improper prior Bad acts Evidence
Tampering w/Evidence double jeopardy
prosecutorial misconduct
cross examinations, direct examination,
closing Argument,
Incompetency to stand trial
revolation of competency
Insufficient evidence to convict
court improper exclusion of
Sex Abuse.
Jury SAW me Shackeld in court
and fall down.
Challenge Grand Jury Indictment

5/9/2012

Trial counsei Failed to ask For
Motion For change of venue even
though extensive News media
as alleged attacked victim on previous
occassions.
Foiled For Motion Pretrial discovery
of sive me all discovery
failed to suppress evidence,
Exibits, 110, 357 Bullets, cellphone 1/80
failed to get all physch exams.

district court abused discretion
improperly denied Motion For
extension to File Amended petition
to meet with + discuss issues
review, transcript, conduct Research
and discovery idumous, and dishonesty
disception by Amared Stephenson
I told Her to Fae it in December
She said She would and did
Nothing, no research, No request
For transcripts, no discoun
requests, only extension to
do nothing.

5/9/2018

NEWSPAPERS. Stated I threated
victim and my Mom to kill them
Both. Prejudical.
No warrant for search of
Cadillac and Room padlocked.
No objection to Hearsey
of defendants witness. Hesicum Parrez
and lupe cessillas. Incomprende

I am not and was not able
to properly File my petition
For Hubeaus Relief Bcuz I
did not have discovery, or
transcript closing opening argument
prosecutor. Al Miscanduct. also
In questioning witnesses.

Not able to Factual + Bring claims
with all I needed to show
by not allowing 60 day extension
to meet with lawyer.
liane Leel                  Sincerely C9597
                            Albert Ramirez
                            P.O Box 639
← per page              Lascruces u
                                88004

5/9/18

THIS AFFidavit is to Show I did
NOT have enough time to consult with
Licate Klerk HABEAUS Atonnmevappt.
2/38/2.8/ I AM going to do my best I
ask The district court and Federal
court to NOT deny my petition or
dismiss it bcuz I did not Say
what witnesses Would Say at an Evidentry
Hearing, or what Evidence Id Show
To Prove Im wrongfully convicted
If Id of bit a 60 day Extention
This Would of been possible
THERE will be a miscariige of
Justice by not allowing me 60
day extension and to give me an
Evidentary Hearing And properly
able to present my issues 7 evidence
documents, witnesses And discovery
and trial transcript.

State of New Mexico                Thank you very much
County of Donna Ana                Albert Ramirez

OFFICIAL SEAL          Signed and sworn before me
William Adkins         on May 10, 2018 by Alberto Ramirez
NOTARY PUBLIC
STATE OF NEW MEXICO    Notary: William Adkins
My Commission Expires  12-18-19
                       My Commission Expires 12-18-19

5/9/18

I was in an accident 2007. left me unable
to walk well without of cane, Hallucinatory, delusional,
paranoid, savry depressed teary
Several medications.

There would be a Miscarriage of
Justice to not allow me an 60
day extension to properly talk with
my Habeas lawyer and raise issues
in Fed. District Court. + I need
trial transcript, discovery to research

I am being done wrong by AmardAshphersan
and the court. I needed more time
I beieve wrongly denied.

Thank you very much
God Bless you

# LIANE E. KERR, LLC

Liane E. Kerr, Attorney at Law

April 18, 2018

Albert Ramirez, PNM 69597
c/o SNMCF
P.O. Box 639
1983 Joe R Silva Boulevard
Las Cruces, New Mexico 88004-0639

*[handwritten annotations: Denial of Effective assistance of counsel, Assistance petition, A Obvious, Did not meet my, present, Issues properly]*

RE-    *State of New Mexico v. Albert Ramirez ,D-0905-CR-2007-00434*

Dear Mr. Ramirez

Thank you for your recent letter. I agree we need more time prior to filing the Petition. We did finally get your discovery from the PD's office. I finished reviewing your notes last night  We also received a copy of your appellate file, on loan from the court  I was hoping to go through the file in its entirety before visiting with you in Las Cruces. Our Petition was due April 19, 2018

Because of the late receipt of discovery, I requested a 60 day extension (since Ms. Stephenson requested two separate 90 day extensions but filed nothing, I didn't want to push things and ask for a full 90 days). Unfortunately, the State would not agree to my request  The judge gave us only 30 days. making our new Petition due May 19, 2018

I have been working furiously to pull the Petition together so we will not miss the deadline  I sent the audio CDs to a transcriptionist to transcribe only those portions of the trial which support the habeas argument. I made reference to the transcripts by citing to the CD and counter number. Once I have the transcripts, I will replace the CD counter number with the actual transcripts as exhibits on receipt of same  Because I am still pulling together the exhibits, I have not labeled them yet  Regardless, I am providing you the Petition, together with the exhibits I do have

Consequently, you will need to review the Petition, which is included, carefully and expeditiously and give me your thoughts as soon as possible  I have made arrangements to visit with you in Las Cruces on May 10, 2018  I hope to have things finalized prior to our meeting, so please review the document prior to our upcoming meeting.

I look forward to working with you

Sincerely,

*[signature]*
LIANE E. KERR

w/Petition

- I.E A OF COUNSEL WAS INSUFFICIENT FOR RECORD NO EXPANSION OF RECORD or an EVIDENTARY HEARING.
- NO REQUEST by HABEAUS lawyer FOR transcript OF CLOSING ARGUMENT transcriBell.
- TRANSCRIPT WAS ESSENTIAL TO CLOSING ARGUMENT to REVIEW Trial COUNSEL PERFOrmance at TRIAL.
- CONStitutional ERROR. WOULD OF been FOUNd NOT GUILTY.
- Amend Resubmitting.
- FUNDAMENTAL MISCORCHrge OF JUSTICE WOULD result From FAILURE to Hold A EVIDEUTARY HEARIng.
- Demonstrating a NEED for an Evidentey Hearg
- The court must hold a Hearing for the prisoner to offER Evidence
U.S. V. Hurtado ; 516. U. S. < t / 11 28. L. col 23/
    No appearance of prisoner nEEdED.



# Law Offices of the Public Defender

**Bennett J. Baur**
**Chief Public Defender**

January 24, 2018

Alberto Ramirez
DOC #69597
Penitentiary of New Mexico
PO Box 1059
Santa Fe, NM 87504

RE:   Alberto Ramirez v. State of New Mexico
      Cause No. D-905-CR-2007-00434

Dear Mr. Ramirez,

Enclosed is a copy of the Stipulated Extension Order that was filed in your case. Also, be advised that we have copied your discovery and will be sending it back to you. It will be in 2 parts.

Please call me at (505)369-3612 to schedule an appointment if you have any questions.

Sincerely,

Amanda Stephenson
Assistant Public Defender
Post-Conviction Habeas Unit

AS/tg

Enclosure(s)

Xc: file

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

NINTH JUDICIAL
CURRY COUNTY
FILED

ALBERTO RAMIREZ,

2018 JAN 19  PM 3:??

Petitioner,

No. D-905-CR-2007-00434

vs.

STATE OF NEW MEXICO,

Respondents

## SECOND STIPULATED EXTENSION ORDER

This matter comes before the Court on the request of habeas counsel for Petitioner,

Amanda Stephenson, Assistant Public Defender, for an extension of time for the filing of an

amended Petition for Writ of Habeas Corpus or Notice of Non-Intent, and the Court being

advised that further investigation and collection of materials is required, counsel for the State

having no objection,

It is therefore ORDERED that counsel for Petitioner is allowed an additional 90 days

from the filing of this Order for the preparation of an Amended Petition.

APPROVED:

Amanda Stephenson
Counsel for Petitioner

Drew Tatum
DISTRICT JUDGE

Approved via email 1/16/18
Andrea Reeb
District Attorney



# LIANE E. KERR, LLC

Liane E. Kerr, Attorney at Law

$z \, \text{err}^{5}$

$708$

## TRANSMITTAL MEMORANDUM

DATE.    October 5, 2018

TO    Albert Ramirez, PNM 69597
c/o PNM
P.O Box 1059
Santa Fe, New Mexico 87504-1059

RE:    *State of New Mexico v. Albert Ramirez D-0905-CR-2007-00434*

*****************************************************

Enclosed please find the following

### State's Response

Please:

_____    File and return endorsed copy to this office

_____    Sign and return to this office

_____    Check in the amount of $_____ for

_____    Per your request

_X__    For your information

_____    Please contact the office to schedule an appointment.

_____    Pay vendor directly

_____    Other:

Sincerely
Yareli Ortaue
Legal Assistant to
LIANE E. KERR LLC



# Law Offices of The Public Defender

**Bennett J. Baur**
**Chief Public Defender**

February 23, 2018

**Albert Jose Ramirez**
**DOC #69597**
**Southern New Mexico Correctional Facility**
**PO Box 639**
**Las Cruces, NM 88004**

Re:   ALBERT RAMIREZ vs  State of New Mexico
      Cause No. D-905-CR-2007-00434

Dear Mr. Ramirez:

This office has recently opened a file on your habeas case, and I have determined that your case should be assigned to a contract attorney outside of this Department. If you have any questions about this issue, you may contact me to discuss it at 505-369-3611.

Your new attorney on this habeas matter is: Liane Kerr, PO Box 10491, Albuquerque, NM 87184; phone # (505) 848-9190. Please contact this lawyer regarding further proceedings in the case.

Sincerely,

*Brian Tucker*

Supervising Attorney/Post-Conviction Habeas Unit

xc: File

# STATE OF NEW MEXICO
## *Corrections Department*
## *Southern New Mexico Correctional Facility*
# MEMORANDUM

**SUSANA MARTINEZ, Governor**

David Jablonski,
Secretary of Corrections

James Mulheron
SNMCF Warden



Post Office Box 639
Las Cruces, NM 88004
Phone: (575) 523-3200
Fax Number: (575) 523-3349

TO:     Alberto Ramirez #69597
        5B-F107

FROM:   Bayela Luna
        5B Classification Officer

DATE:   3/9/18

RE:     Attorney Call

I have scheduled an attorney phone call for you with Attorney Tucker for
Wednesday, April 25, 2018 @ 10:30 am. Please ensure you are in my office 5
minutes prior to the scheduled time.



# Law Offices of the Public Defender

**Bennett J. Baur**
**Chief Public Defender**

January 19, 2018

Alberto Ramirez
DOC #69597
Penitentiary of New Mexico
PO Box 1059
Santa Fe, NM 87504

RE:    Alberto Ramirez v. State of New Mexico
       Cause No. D-905-CR-2007-00434

Dear Mr. Ramirez,

Enclosed is a copy of the Pro Se Petition for Writ of Habeas Corpus that you submitted to
the district court.

Please call me at (505)369-3612 to schedule an appointment if you have any questions.

Sincerely,

Amanda Stephenson
Amanda Stephenson
Assistant Public Defender
Post-Conviction Habeas Unit

AS/tg

Enclosure(s)

Xc: file



# Law Offices of the Public Defender

**Bennett J. Baur**
**Chief Public Defender**

January 24, 2018

Alberto Ramirez
DOC #69597
Penitentiary of New Mexico
PO Box 1059
Santa Fe, NM 87504

RE:  Alberto Ramirez v. State of New Mexico
     Cause No. D-905-CR-2007-00434

Dear Mr. Ramirez,

Enclosed is a copy of the Stipulated Extension Order that was filed in your case. Also, be advised that we have copied your discovery and will be sending it back to you. It will be in 2 parts.

Please call me at (505)369-3612 to schedule an appointment if you have any questions

Sincerely,

Amanda Stephenson
Assistant Public Defender
Post-Conviction Habeas Unit

AS/tg

Enclosure(s)

Xc. file



# Law Offices of the Public Defender

**Bennett J. Baur**
**Chief Public Defender**

January 30, 2018

Alberto Ramirez
DOC #69597
Central New Mexico Correctional Facility
PO Drawer 1328
Los Lunas, NM 87031

RE:    Alberto Ramirez v. State of New Mexico
       Cause No  D-905-CR-2007-00434

Dear Mr. Ramirez,

Enclosed is a copy of the documents our office received from the court. These are all the documents we were able to obtain from your criminal case.

Please call me at (505)369-3612 to schedule an appointment if you have any questions.

Sincerely,

Amanda Stephenson    /tg
Assistant Public Defender
Post-Conviction Habeas Unit

AS/tg

Enclosure(s)

Xc: file

# STATE OF NEW MEXICO
## Corrections Department
## Southern New Mexico Correctional Facility
# MEMORANDUM

**SUSANA MARTINEZ, Governor**

David Jablonski,
Secretary of Corrections

James Mulheron
SNMCF Warden



Post Office Box 639
Las Cruces, NM 88004
Phone: (575) 523-3200
Fax Number: (575) 523-3349

TO:      Alberto Ramirez #69597
         5B-F107

FROM:    Bayola Luna
         5B Classification Officer

DATE:    6/19/18

RE:      Attorney Call

The below attorney calls have been scheduled for you. Please ensure you are in my office 5 minutes prior to the call.

Attorney Kerr or Yaralie – Thursday, June 21, 2018 @ 12:30 pm
Attorney Tucker – Monday, June 25, 2018 @ 2:00 pm

Fonocort  4984 - 2794
1800 - 4984 - 2794



*Read - THIS*

# Law Offices of The Public Defender

Bennett J. Baur
Chief Public Defender

*Please return to this Albert Ramirez Thank you Jennifer Greenwald*

August 14, 2017

Albert Ramirez
DOC #69597
PNM
PO BOX 1059
SANTA FE, NM 87504

Re    ALBERT RAMIREZ vs. State of New Mexico
       Criminal Cause No D-905-CR-2007-00434

Dear Mr Ramirez.

The district court has appointed the Public Defender Department Post-Conviction Habeas Unit to represent you on your petition for a *writ of habeas corpus*. *Your case has been assigned to me,* and I am pleased to represent you on your *petition.*

At your earliest convenience please arrange an attorney-client phone call through your caseworker. Prior to our call, your caseworker should contact my legal assistant, Tanya, to arrange to schedule the attorney-client call. This will insure that I am in my office, have your file ready and am available to take your call. Our office will accept the charges for the call, if necessary.

Because of the number of inmates that I represent, we cannot make a written response to most letters. You can always write to me if there is an emergency or you do not have access to a scheduled attorney-client call through your caseworker.
However, if you have any important facts or legal ideas you want me to review, please either bring them up during our phone call or put them in writing.

My direct number is (505)369-3612, and my legal assistant, Tanya's direct number is (505)369-3613. Please keep me posted about your location and please send me any changes of your address.

Sincerely,

## *Amanda Stephenson*

NM Public Defender Department/Post-Conviction Habeas Unit

xc. File

505 Marquette Avenue NW, Suite 120, Albuquerque, NM 87102 (505) 369-3600, FAX (505) 796-4595

FOR lawyer to V-iew EMY

Amanda. I appreciate
your help. Thank you.
I SENT 1 L mis-dd
petition to the court
please contact
get district leu then
you will help me
do Amend petition
I've been cheated attarsed
done wrong, I shall be out
double Jeopardy - Also, How can wen
WEN My Habeaus, but file for
double Jeopardy, but by Counsel 17
If been prejudiced but In Habens
wanted corby, I dont know
said no Because other issues I will
How to win on assistance if Able
abandon Ineffective issues, file Double
to win on other issues do you?
Jeopardy motion what I mean. Give
know what I of my due
violenta process, then double
Jeopardy
-K.

SEE CCSE low- Michael brewery US: #### closed 2014 circuit 2015 ? Sheeches. 2010. US.in issues-errors St. Connecticut 2015
Dech US.in issues 2010. Sheeches. Violator SEENM users 105 irons Sheeches retunched Perocenser Inwistion Retained EMYT OF G



# LIANE E. KERR, LLC

Liane E. Kerr, Attorney at Law

$z\, \leq^{,\epsilon\eta^{r}}$

$7\,\epsilon^{\hat{c}}$

## TRANSMITTAL MEMORANDUM

DATE·      October 5, 2018

TO·       Albert Ramirez, PNM 69597
          c/o PNM
          P.O. Box 1059
          Santa Fe, New Mexico 87504-1059

RE:       *State of New Mexico v. Albert Ramirez, D-0905-CR-2007-00434*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Enclosed please find the following

### State's Response

Please

_____   File and return endorsed copy to this office

_____   Sign and return to this office.

_____   Check in the amount of $_____ for

_____   Per your request

__X__     For your information

_____   Please contact the office to schedule an appointment

_____   Pay vendor directly

_____   Other:

Sincerely
Yareli Ojinue
Legal Assistant to
LIANE E KERR LLC

STATE OF NEW MEXICO
COUNTY OF CURRY
IN THE NINTH JUDICIAL DISTRICT COURT

STATE OF NEW MEXICO,

Plaintiff,

v

**ALBERT JOSE RAMIREZ,**
DOB           88
SOC           7793
STN: 050100070340

Defendant.

No. **D-0905-CR-0200700434**

## ADDITIONAL WITNESS LIST

The prosecution notifies the opposing party that the following potential witnesses may be

called to testify at trial:

1   Officer Jonathan Howard, Clovis Police Department, Clovis, New Mexico;

2.   Officer Tim Orum, Clovis Police Department, Clovis, New Mexico

ANDREA R REEB
CHIEF DEPUTY DISTRICT ATTORNEY

I hereby certify that a copy of the
foregoing instrument was mailed/
delivered to opposing counsel on the
12 day of January, 2009

D A No 07-471
MEC/jrg

Criminal Form 9-417

State vs Albert Jose Ramirez No D-0905-CR-0200700434



STATE OF NEW MEXICO
IN THE NINTH JUDICIAL DISTRICT
COUNTY OF CURRY

2009 JAN 13 PM 2: 15

STATE OF NEW MEXICO,

Plaintiff,

v

ALBERT RAMIREZ,

No. D-0905-CR-0200700434

Defendant.

## *ADDITIONAL*
## *STATE'S WITNESS LIST*

COMES NOW the State of New Mexico by and through its attorney, and discloses that

the following is an additional witness which the Office of the District Attorney intends to call for

trial in this cause

1    Joshua Parkin, Clovis Police Department, 300 Connelly, Clovis, NM 88101.

Matthew Chandler
District Attorney

I hereby certify that I have mailed/
delivered a copy of the foregoing to
opposing counsel this ___ day of
January, 2009.

DA 07-471
MEC/jrg

RP 252

# LIANE E. KERR, LLC

Liane E. Kerr, Attorney at Law

May 14, 2018

Albert Ramirez, PNM 69597
c/o SNMCF
P O Box 639
1983 Joe R Silva Boulevard
Las Cruces, New Mexico 88004-0639

RE     *State of New Mexico v Albert Ramirez ,D-0905-CR-2007-00434*

Dear Mr Ramirez.

Having met with you recently, 1 can confirm what others have iterated about your ability to work meaningfully on your case. I do not appreciate you assuming that my meeting with you was to rehash arguments which have already been advanced by others and which I did address in the habeas petition In addition, I asked you numerous times to please provide me with your input on this petition and yet you were silent, preferring instead to accuse others of stealing your discovery and trying to undermine you. I might mention that when we met, you had in your possession, copious amounts of discovery----certainly more than I pulled together for your case and I can only assume that you have multiple copies of everything since you have made the same complaint to anyone who dared assume the task of representing you.

Although I do not think that adding issues which are not supported by the record are helpful to the habeas process, as requested I added the requested issues. I will not add your "affidavit" as it is merely argument  As I have repeated to you on multiple occasions. either I write the habeas petition and present it to the court or you do. You are no my co-counsel  I previously provided the petition and am providing the last two pages which changed due to the additional issues for which you requested "just a paragraph". Those paragraphs are added and included with this letter

I also include the actual exhibits which are attached to the habeas petition

Sincerely

LIANE E KERR

w/added pages to Petition; exhibits

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

2017 JUL 27 PM 2:17

*Sally Bouwe*
CLERK DISTRICT COURT

ALBERT JOSE RAMIREZ,

            Petitioner,

vs.                                          No.    D-0905-CR-2007-00434

STATE OF NEW MEXICO,

            Respondent.

### ORDER OF APPOINTMENT FOR HABEAS CORPUS PROCEEDINGS UNDER RULE 5-802 NMRA

THIS MATTER having come before the Court on Petitioner's pro se Petition for Writ of Habeas Corpus filed June 20, 2017 and Petitioner's pro se Petition for Writ of Habeas Corpus filed July 17, 2017 in the above referenced cause number, and the Court being fully advised of the circumstances;

THE COURT FINDS THAT:

[X] The petitioner is incarcerated.

IT IS THEREFORE ORDERED THAT:

[X] The Law Office of the Public Defender is hereby appointed to represent the Petitioner in the above-entitled cause without payment of the application fee.

[X] Petitioner's counsel shall file an amended petition or file a notice of non-intent to file an amended petition within ninety (90) days of the date of the filing of this order.

DREW D. TATUM
District Judge, Division II

# LIANE E. KERR, LLC

Liane E. Kerr, Attorney at Law

April 18, 2018

Albert Ramirez, PNM 69597
c/o SNMCF
P.O Box 639
1983 Joe R Silva Boulevard
Las Cruces, New Mexico 88004-0639

RE     *State of New Mexico v  Albert Ramirez ,D-0905-CR-2007-00434*

Dear Mr Ramirez

Thank you for your recent letter. I agree we need more time prior to filing the Petition  We did finally get your discovery from the PD's office. I finished reviewing your notes last night. We also received a copy of your appellate file, on loan from the court. I was hoping to go through the file in its entirety before visiting with you in Las Cruces. Our Petition was due April 19, 2018.

Because of the late receipt of discovery, I requested a 60 day extension (since Ms. Stephenson requested two separate 90 day extensions but filed nothing, I didn't want to push things and ask for a full 90 days). Unfortunately, the State would not agree to my request  The judge gave us only 30 days, making our new Petition due May 19, 2018.

I have been working furiously to pull the Petition together so we will not miss the deadline  I sent the audio CDs to a transcriptionist to transcribe only those portions of the trial which support the habeas argument  I made reference to the transcripts by citing to the CD and counter number. Once I have the transcripts, I will replace the CD counter number with the actual transcripts as exhibits on receipt of same.  Because I am still pulling together the exhibits, I have not labeled them yet. Regardless, I am providing you the Petition, together with the exhibits I do have

Consequently, you will need to review the Petition, which is included, carefully and expeditiously and give me your thoughts as soon as possible. I have made arrangements to visit with you in Las Cruces on May 10, 2018  I hope to have things finalized prior to our meeting, so please review the document prior to our upcoming meeting.

I look forward to working with you

Sincerely,

LIANE E. KERR

w/Petition

1    IN THE SUPREME COURT OF THE STATE OF NEW MEXICO
2                                   August 11, 2017
3
4    NO. S-1-SC-36599
5
6    ALBERTO RAMIREZ,
7
8         Petitioner,
9
10   v
11
12   GERMAN FRANCO, Warden,
13
14        Respondent
15                                  **ORDER**

16        WHEREAS, this matter came on for consideration by the Court upon petition

17   for writ of certiorari filed under Rule 12-501 NMRA, and the Court having considered

18   the petition and being sufficiently advised, Justice Petra Jimenez Maes, Justice

19   Charles W Daniels, and Justice Barbara J Vigil concurring,

20        NOW, THEREFORE, IT IS ORDERED that the petition for writ of certiorari is

21   DENIED

22        IT IS SO ORDERED

WITNESS, the Honorable Judith K Nakamura,
Chief Justice of the Supreme Court of the State of
New Mexico, and the seal of said Court this 11th
day of August, 2017

Joey D Moya, Clerk of Court
Supreme Court of New Mexico

By _Madeline Garcia_
              Chief Deputy Clerk

I CERTIFY AND ATTEST:
A true copy was served on all parties
or their counsel of record on date filed
_Madeline Garcia_
Clerk of the Supreme Court
of the State of New Mexico

23

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

ALBERT JOSE RAMIREZ,

    Petitioner,

vs

STATE OF NEW MEXICO,

    Respondent.

## DECISION AND ORDER

THIS MATTER having come before th

Habeas Corpus filed March 22, 2017 and Peti

filed April 25, 2017 (hereinafter collectively

cause number, and the Court being fully advise

This Court notes that the Petition is

Petitioner is challenging his conviction base

assistance of counsel

A review of the file shows that th

including Murder in the First Degree in Octob

New Mexico Supreme Court  The New Mexi

This case was subsequently assigned to this C

As to Petitioner's argument that there

properly supported by facts in the Petition.

relief as a matter of law in this regard.

912

e ic l

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

NINTH JUDICIAL DISTRICT
CURRY COUNTY. NM
FILED 'N MY OFFICE

2017 MAY 31  PM 12: 21

CLERK DISTRICT COURT

ALBERT JOSE RAMIREZ,

Petitioner,

vs.                                                    No.    D-0905-CR-2007-00434

STATE OF NEW MEXICO,

Respondent.

## DECISION AND ORDER OF SUMMARY DISMISSAL

THIS MATTER having come before the Court on Petitioner's pro se Petition for Writ of Habeas Corpus filed March 22, 2017 and Petitioner's pro se Petition for Writ of Habeas Corpus filed April 25, 2017 (hereinafter collectively referred to as "Petition") in the above referenced cause number, and the Court being fully advised, enters its sua sponte order and FINDS·

This Court notes that the Petition is scribbled and nearly illegible    It appears that Petitioner is challenging his conviction based upon prosecutorial misconduct and ineffective assistance of counsel.

A review of the file shows that that Petitioner was convicted of various offenses including Murder in the First Degree in October, 2013. Petitioner appealed his conviction to the New Mexico Supreme Court  The New Mexico Supreme Court affirmed Petitioner's conviction This case was subsequently assigned to this Court

As to Petitioner's argument that there was prosecutorial misconduct, this claim is not properly supported by facts in the Petition  This Court finds that Petitioner is not entitled to relief as a matter of law in this regard

As to Petitioner's argument that he was denied effective assistance of counsel in this matter, this claim is not properly supported by facts in the Petition Further, this issue was part of Petitioner's appeal and the New Mexico Supreme Court affirmed Petitioner's conviction. This Court finds that Petitioner is not entitled to relief as a matter of law in this regard.

## DECISION AND DISMISSAL

After examining the Petition, exhibits, and prior proceedings, and based on the above discussed reasons, this Court finds the Petitioner is not entitled to relief as a matter of law. Therefore, in accordance with Rule 5-802(G)(1) NMRA, the Petitioner's pro se Petition for Writ of Habeas Corpus filed March 22, 2017 and Petitioner's pro se Petition for Writ of Habeas Corpus filed April 25, 2017 are summarily dismissed. An attorney will not be appointed and a hearing will not be set.

HON DREW D. TATUM
District Judge, Division II

January 12, 2017

To: Alberto Ramirez #69,597

From: Steven J. Forsberg, Assistant Public Defender

Re: Status of your appeal

Dear Mr. Ramirez,

As we discussed on the telephone, the New Mexico Supreme Court has ruled against you on your appeal. Your direct appeal is now over. You can file a writ of habeas corpus, and I recall you said you had the package of paperwork. I cannot represent you on your habeas case, but when you file your request I advise that you ask that an attorney be appointed for you.

You mentioned that a lot of your papers were lost, so I am sending you copies of the brief-in-chief, state's answer, and reply brief in your case

As I said, I cannot write your habeas petition for you, but I'd suggest you consider adding this to it: In your Brief-in-Chief on page 17 it states that you had asked Doctor Schwartz to be called as a witness on your behalf, but she was not. This is evidence that there were witnesses you wanted called that were not.

You have my name and number if you have any further questions regarding your direct appeal.

Steven J. Forsberg, Assistant Public Defender
505 Marquette Ave. NW ste 120
Albuquerque, NM 87102
Phone: (505)796-4405

# LIANE E. KERR, LLC

Liane E. Kerr, Attorney at Law

May 14, 2018

Albert Ramirez, PNM 69597
c/o SNMCF
P.O. Box 639
1983 Joe R Silva Boulevard
Las Cruces, New Mexico 88004-0639

RE    *State of New Mexico v. Albert Ramirez , D-0905-CR-2007-00434*

Dear Mr. Ramirez:

Having met with you recently, I can confirm what others have iterated about your ability to work meaningfully on your case. I do not appreciate you assuming that my meeting with you was to rehash arguments which have already been advanced by others and which I did address in the habeas petition. In addition, I asked you numerous times to please provide me with your input on this petition and yet you were silent, preferring instead to accuse others of stealing your discovery and trying to undermine you  I might mention that when we met, you had in your possession, copious amounts of discovery----certainly more than I pulled together for your case and I can only assume that you have multiple copies of everything since you have made the same complaint to anyone who dared assume the task of representing you.

Although I do not think that adding issues which are not supported by the record are helpful to the habeas process, as requested I added the requested issues. I will not add your "affidavit" as it is merely argument. As I have repeated to you on multiple occasions, either I write the habeas petition and present it to the court or you do. You are no my co-counsel. I previously provided the petition and am providing the last two pages which changed due to the additional issues for which you requested "just a paragraph". Those paragraphs are added and included with this letter

I also include the actual exhibits which are attached to the habeas petition

Sincerely,

LIANE E. KERR

w/added pages to Petition, exhibits

Steven Frohar

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

## MANDATE NO. S-1-SC-34576

TO THE DISTRICT COURT SITTING IN AND FOR THE COUNTY OF

CURRY, GREETINGS:

WHEREAS, in causes numbered D-905-CR-2007-00434 on your criminal

docket, wherein State of New Mexico was plaintiff and Albert Jose Ramirez was

defendant, the district court entered judgment convicting defendant of willful

and deliberate first-degree murder and tampering with evidence; and

WHEREAS, the cause and judgment were afterwards brought into this

Court upon notice of appeal and statement of issues filed by defendant,

whereupon such proceedings were had that on December 1, 2016, a decision was

issued affirming defendant's conviction.

NOW, THEREFORE, this cause is remanded for further proceedings, if

any, consistent and in conformity with the judgment of this Court.

IT IS SO ORDERED.

WITNESS, Honorable Charles W. Daniels, Chief Justice
of the Supreme Court of the State of New Mexico, and
the seal of said Court this 11th day of January, 2017.

(SEAL)

Joey D. Moya, Chief Clerk of the Supreme Court
of the State of New Mexico

I did not know of the fill Dec 2016

## UNITED STATES COURT OF APPEALS
### TENTH CIRCUIT
Office of the Clerk
Byron White United States Courthouse
Denver Colorado 80257

Elisabeth A. Shumaker
Clerk of Court

Chris Wolpert
Chief Deputy Clerk

May 7, 2019

Alberto Ramirez
No. 69597
Lea County Correctional Facility
6900 West Millen Dr.
Hobbs NM 88244

Dear Mr. Ramirez

The court has received your letter asking for forms from this court. Your case is
still pending in the district court. After the district court rules, and if you file an
appeal, you will receive instructions and forms from the court at that time.

Very truly yours,

Elisabeth A. Shumaker

ELISABETH A. SHUMAKER, Clerk

/err

Supreme Court of New Mex
2/5/2019 9 48 A
Office of the Cler

Joey D ▮ oya

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**
**February 05, 2019**

**NO. S-1-SC-37501**

**ALBERT RAMIREZ,**

Petitioner,

v

**JOHN GAY, Warden,**

Respondent

**ORDER**

WHEREAS, this matter came on for consideration by the Court upon petition for writ of certiorari filed under Rule 12-501 NMRA, and the Court having considered the petition and being sufficiently advised, Chief Justice Judith K. Nakamura, Justice Barbara J Vigil, and Justice Michael E Vigil concurring,

NOW, THEREFORE, IT IS ORDERED that the petition for writ of certiorari is

DENIED

IT IS SO ORDERED.



WITNESS, the Honorable Judith K Nakamura, Chief Justice of the Supreme Court of the State of New Mexico, and the seal of said Court this 5th day of February, 2019

Joey D Moya, Clerk of Court
Supreme Court of New Mexico

I CERTIFY AND ATTEST
A true copy was served on all parties
or their counsel of record on date filed
Madeline Garcia
Clerk of the Supreme Court
of the State of New Mexico

By _Madeline Garcia_
Chief Deputy Clerk

1    **IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**
2                        **August 11, 2017**
3
4    **NO. S-1-SC-36599**
5
6    **ALBERTO RAMIREZ,**
7
8            Petitioner,
9
10   v.
11
12   **GERMAN FRANCO, Warden,**
13
14           Respondent
15                              **ORDER**

16           WHEREAS, this matter came on for consideration by the Court upon petition

17   for writ of certiorari filed under Rule 12-501 NMRA, and the Court having considered

18   the petition and being sufficiently advised, Justice Petra Jimenez Maes, Justice

19   Charles W. Daniels, and Justice Barbara J. Vigil concurring,

20           NOW, THEREFORE, IT IS ORDERED that the petition for writ of certiorari is

21   **DENIED**

22           IT IS SO ORDERED.



WITNESS, the Honorable Judith K. Nakamura,
Chief Justice of the Supreme Court of the State of
New Mexico, and the seal of said Court this 11th
day of August, 2017.

Joey D. Moya, Clerk of Court
Supreme Court of New Mexico

By _Madeline Garcia_
                Chief Deputy Clerk

I CERTIFY AND ATTEST
A true copy was served on all parties
or their counsel of record on date filed
_Madeline Garcia_
Clerk of the Supreme Court
of the State of New Mexico

23

Steven Froher

I CERTIFY AND ATTEST:
A true copy was served on all parties
or their counsel of record on date
filed.
Joey D. Moya
Chief Clerk of the Supreme Court
of the State of New Mexico

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

## MANDATE NO. S-1-SC-34576

TO THE DISTRICT COURT SITTING IN AND FOR THE COUNTY OF
CURRY, GREETINGS:

JAN 1 2 2017

WHEREAS, in causes numbered D-905-CR-2007-00434 on your criminal

docket, wherein State of New Mexico was plaintiff and Albert Jose Ramirez was

defendant, the district court entered judgment convicting defendant of willful

and deliberate first-degree murder and tampering with evidence; and

WHEREAS, the cause and judgment were afterwards brought into this

Court upon notice of appeal and statement of issues filed by defendant,

whereupon such proceedings were had that on December 1, 2016, a decision was

issued affirming defendant's conviction.

NOW, THEREFORE, this cause is remanded for further proceedings, if

any, consistent and in conformity with the judgment of this Court.

IT IS SO ORDERED.

WITNESS, Honorable Charles W. Daniels, Chief Justice
of the Supreme Court of the State of New Mexico, and
the seal of said Court this 11th day of January, 2017.

(SEAL)

Joey D. Moya, Chief Clerk of the Supreme Court
of the State of New Mexico

Filed
Supreme Court of New Mexico
2/5/2019 9 48 AM
Office of the Clerk
Joey D Moya

1    **IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**
2                              **February 05, 2019**
3
4    **NO. S-1-SC-37501**
5
6    **ALBERT RAMIREZ,**
7
8          Petitioner,
9
10   v
11
12   **JOHN GAY, Warden,**
13
14         Respondent
15                                        **ORDER**

16        WHEREAS, this matter came on for consideration by the Court upon petition for

17   writ of certiorari filed under Rule 12-501 NMRA, and the Court having considered the

18   petition and being sufficiently advised, Chief Justice Judith K. Nakamura, Justice

19   Barbara J. Vigil, and Justice Michael E Vigil concurring,

20        NOW, THEREFORE, IT IS ORDERED that the petition for writ of certiorari is

21   **DENIED**

22        IT IS SO ORDERED



WITNESS, the Honorable Judith K Nakamura, Chief
Justice of the Supreme Court of the State of New
Mexico, and the seal of said Court this 5th day of
February, 2019

Joey D Moya, Clerk of Court
Supreme Court of New Mexico

I CERTIFY AND ATTEST                    By _Madeline Garcia_
A true copy was served on all parties
or their counsel of record on date filed          Chief Deputy Clerk
_Madeline Garcia_
Clerk of the Supreme Court
of the State of New Mexico

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

ALBERTO RAMIREZ,

Petitioner,

vs.

STATE OF NEW MEXICO,

Respondents.

No. D-905-CR-2007-00434

## STIPULATED EXTENSION ORDER

This matter comes before the Court on the request of habeas counsel for Petitioner,

Amanda Stephenson, Assistant Public Defender, for an extension of time for the filing of an

amended Petition for Writ of Habeas Corpus or Notice of Non-Intent, and the Court being

advised that further investigation and collection of materials is required, counsel for the State

having no objection,

It is therefore ORDERED that counsel for Petitioner is allowed an additional 90 days

from the filing of this Order for the preparation of an Amended Petition.

Drew Tatum
DISTRICT JUDGE

APPROVED
Amanda Stephenson
Counsel for Petitioner

Approved via email 10/17/17
Andrea Reeb
District Attorney

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

NINTH JUDICIAL
CURRY CO.
FILED

ALBERTO RAMIREZ,

Petitioner,

vs.

STATE OF NEW MEXICO,

Respondents.

No. D-905-CR-2007-00434

## SECOND STIPULATED EXTENSION ORDER

This matter comes before the Court on the request of habeas counsel for Petitioner,

Amanda Stephenson, Assistant Public Defender, for an extension of time for the filing of an

amended Petition for Writ of Habeas Corpus or Notice of Non-Intent, and the Court being

advised that further investigation and collection of materials is required, counsel for the State

having no objection,

It is therefore ORDERED that counsel for Petitioner is allowed an additional 90 days

from the filing of this Order for the preparation of an Amended Petition.

APPROVED:

Amanda Stephenson
Counsel for Petitioner

Drew Tatum
DISTRICT JUDGE

Approved via email 1/16/18
Andrea Reeb
District Attorney

Amended petition by. Lique.eke.

Writ HCBeas

# THIS PAGE

# INTENTIONALLY

# LEFT

# BLANK

STATE OF NEW MEXICO
CURRY COUNTY
NINTH JUDICIAL DISTRICT COURT

ALBERT RAMIREZ,

Petitioner,

v.                                    D-0905-CR-2007-00434

JAMES MULHERON, warden

Respondent.

## AMENDED PETITION FOR WRIT OF HABEAS CORPUS

COMES NOW the Petitioner, Albert Ramirez, through his counsel Liane E. Kerr, and pursuant to NMRA Rule 5-802 and Article II, Sections 7, 12, 14, 15 and 18 of the New Mexico Constitution and the Fifth, Sixth and Fourteenth Amendments of the United States Constitution, and respectfully submits this Amended Petition for Writ of Habeas Corpus.

Mr. Ramirez respectfully requests that this Honorable Court issue a Writ of Habeas Corpus and vacate, set aside or correct Mr Ramirez's sentence and order of confinement in D-905-CR-2007-0434. Mr. Ramirez contends that he was denied his state and federal constitutional right to due process and a fair trial because the cumulative effects prevented him from proving his innocence. The following amendments have been made to the pro se petitions filed on March 22, 2017; April 25, 2017, June 20, 2017 and July 17, 2017.

1.      **Place of Confinement:** Mr Ramirez is detained by Warden James Mulheron at the Southern New Mexico Correctional Facility in Dona Ana, NM.

2.      **Nature of Proceedings Resulting in Confinement:** Petitioner was found guilty following a change of plea on the date of his jury trial on January 26, 2009 of two counts of tampering

1

with evidence and first degree murder in the first degree. Petitioner moved to withdraw his plea dn the court denied it; however, the Supreme Court remanded the matter, allowing Petitioner to withdraw his plea  Jury trial was ultimately held on October 10, 2013 and lasted four (4) days, after which Petitioner was found guilty of the murder and tampering charges.

3.      **Judgment and Sentence Resulting in Current Confinement.** Petitioner was sentenced in the Ninth Judicial District Court, Honorable Teddy L. Hartley presiding, on January 8, 2014 to a consecutive sentence on each of the counts· a period of Life on the murder count plus six (6) years for each of the tampering counts  in the New Mexico Department of Corrections

4.      **Direct Appeal.** On February 7, 2014, Petitioner appealed his original conviction to the Supreme Court of New Mexico in *State v  Ramirez*, S. Ct. No. 34,576 and a mandate affirming the trial court was issued on January 18, 2017.

5.      **Prior Petitions.** Petitioner filed a Petition for Writ of Habeas Corpus on March 22, 2017; April 25, 2017, June 20, 2017 and July 17, 2017

6.      **Habeas Representation/Timeliness of Petition:** By Order of the Court, the Public Defender, Amanda Stephenson, entered an appearance on August 27, 2017  Ms. Stephenson filed two requests for extension, one on October 23, 2017 and again on January 19, 2018, making the Petition due on or before April 19, 2018,  Due to a conflict, the Pubic Defender's Office recently reassigned the Petitioner's case to Liane E. Kerr, who requested a sixty day extension in order to fully review the case, meet with her client and file the brief  The request was opposed by the State. Consequently, this Petition is filed without fully meeting with Mr  Ramirez.

2

7.   **Relief Requested:** This petition seeks to vacate and set aside Petitioner's criminal

convictions on the grounds that he was denied his state and federal constitutional rights to due process

and denied the effective assistance of counsel.

## ISSUES PRESENTED IN THIS PETITION:

a   Whether Petitioner was denied his sixth amendment right to effective assistance of
    counsel and compulsory process when his attorney refused to call Dr. Maxann
    Shwartz to testify at either the competency hearing or at trial?

b   Whether Petitioner's criminal convictions were obtained in violation of his state and
    federal right to due process and a fair trial when prior uncharged acts were introduced
    absent a balancing analysis under Rule 11-404b?

c.   Whether Petitioner was denied his right to due process when jurors observed him
     shackled during trial?

## STATEMENT OF FACTS/PROCEDURAL HISTORY

### A.   Procedural History.

Petitioner was indicted on July 20, 2007 and charged with first degree murder and two counts

of tampering with evidence **[Exhibit A].** On January 26, 2009, the first day of his jury trial, Mr

Ramirez pled guilty to two counts of tampering with evidence and first degree murder in the first

degree, with tampering counts running concurrent to the life sentence.

Mr Ramirez moved to withdraw his plea on February 25, 2009, a motion the trial court heard

on June 25, 2009, but denied on July 29, 2009  Following an appeal of the denial to withdraw plea,

the New Mexico Supreme Court reversed the denial on July 6, 2011 and remanded for a trial on the

merits which was ultimately held on October 7-11, 2013 where jurors were instructed to find first

degree murder and Petitioner was found guilty of first degree murder. **[Exhibit B].** Although

Petitioner's plea exposed him to a life sentence only, following trial, Petitioner was sentenced to the

3

life sentence and each tampering count consecutively, earning him an additional six years for a term of life plus six years [Exhibit C].

## 1)  Facts Regarding Introduction of Prior Bad Acts Evidence

During trial, the State introduced three incidents of bad acts evidence, which Mr Ramirez maintains was error. Over objection, the State introduced evidence that Mr. Ramírez broke his mother's windshield [Exhibit D: Transcript, 10/8/13, 4:03:49-4:08:21]. Again over objection, the State introduced evidence that the victim's home had been burglarized with the implication that it was Mr. Ramirez who made the entry. [Exhibit E: Transcript, 10/8/13, 4:14:04; 10/11/13, 8:5526-8:59:31]  A final bad acts reference was introduced when the State called a firearms dealer, who testified that Mr. Ramirez sought to purchase a firearm from him. [Exhibit F: Transcript, 10/8/13, 4:15:55-4:25:21].

## 2)  Facts in Support of Prejudice from Shackles Observation

During a break, as jurors were leaving the courtroom, Mr. Ramírez tripped as a result of wearing shackles  He maintained that jurors observed him fall and saw his shackles as a result. [Exhibit G: Transcript, 10/7/13, 3:10:07-3:11:12].

## 3)  Facts Regarding Petitioner's Competency

A notice to determine competency was filed on January 14, 2008 [Exhibit H] and the defendant was evaluated by Dr Maxann Shwartz and determined incompetent. [Exhibit I][1].  On January 17, 2008, the Defendant was committed to the New Mexico Behavioral Health Institute at

---

[1]     Although confidential, Mr Ramirez disclosed Dr Shwartz' report and provided a copy attached to his pro se Petition for Habeas relief and therefore, any concerns about confidentiality are waived.

4

Las Vegas (NMBHI) for a period of three months [Exhibit J]. A hearing was held on September 15, 2008, where Dr. Burness from NMBHI testified that she believed the Petitioner was malingering. [Exhibit K, L] By Order of the Court, Petitioner was deemed competent to stand trial on September 16, 2008 [Exhibit M]. The record does not reflect that Dr. Shwartz was called to rebut the testimony of Dr. Joanne Burness at the final hearing regarding competency. The State then identified Dr Burness on its witness list and the Defense filed a Motion in Limine to address statements made to Dr. Burness. [Exhibit N].

Following the remand by the Supreme Court on the plea withdrawal issue, another Motion for Mental Evaluation was filed on September 22, 2011 [Exhibit O], an Order was entered and Petitioner was again sent to NMBHI for an evaluation [Exhibit P] In the interim, further forensic evaluation at NMBHI was ordered by the Court [Exhibit Q[ Subsequently, Mr. Ramirez was deemed competent to stand trial on March 1, 2013 [Exhibit R]

During trial, the issue of Mr. Ramirez' competency arose repeatedly. During voir dire, the defense attorney informed jurors that there were matters concerning Mr. Ramirez' mental health [Exhibit S, Transcript: 10/7/13, 12:05] The Court noted that Mr Ramirez made various statements which resulted in different transport officers being assigned during the trial. [Exhibit T, Transcript: 10/8/13, CD B 8:42:10-8:43:50]. Mid-trial, Mr Ramirez issued a rambling statement about his health and said that he heard voices and was concerned his attorney was mad at him. [Exhibit U, Transcript: 10/9/13, CD B 10:13:29-10:26:30; 10:24:04-10:25:58] Also mid-trial, the Defense reminded the Court of competency issues and alerted the Court that Mr Ramirez did not understand the proceedings and was incapable of assisting in his defense [Exhibit V, Transcript: 10/9/13, CD B 10:16:00-10:17:00; 10:25:58; 10/10/13, 3:24:59-35:25:49]. In response, the Court; however,

5

opined that Mr. Ramirez was malingering but noted he had never seen a defendant act the way Mr
Ramirez was acting.  [Exhibit W, Transcript: 10/9/13, 10:18:36-10:24:04; 10/10/13, CD B
3:45:47-3:46:20]  The Defense again asked for a review of competency  [Exhibit X, Transcript:
10/7/13, 10:13:29-10:14:51; 10/9/13 1:35:36-1:44:46]. Mr. Ramirez specifically asked that the jury
be told about his medical problems and specifically told the Court that he did not believe the trial to
be fair, as the right questions were not being asked and Dr. Shwartz' testimony was necessary to him
having a fair trial. [Exhibit Y, Transcript: 10/9/13, CD B 2:36:02-3:13:45; 10/10/13 CD B
10:40:41-10:58:56; 4:41:38-4:42:15]  Throughout, the Defense alerted the Court that Mr Ramirez
was difficult to represent. [Exhibit Z, Transcript: 10/10/13, CD B 2:06:30-2:41:36]. The Defense;
however, informed the Court and the State that it would not be submitting a competency instruction.
[Exhibit AA, Transcript: 10/10/13, 4:32:27-4:35:41}.

### B.    Facts of the Case.

Petitioner, eighteen year old Albert Ramirez, sometimes resided with his mother, Debra
Ramirez and step-father, Elado Robledo at their home in Clovis, New Mexico. Some of his
belongings remained at the residence when he was ordered to leave the home due to a disruption with
his step-father. When Albert Ramirez returned to the home to collect some of his belongings on July
12, 2007, he argued with his step-father and shot and killed Elado Robledo. This was witnessed by
neighbor Sam Saiz, Jr. and another person who was driving by at the time.

During the investigation, law enforcement located Petitioner's shoe, a pair of shorts and some
clothing in a trash dumpster several blocks from the scene. Although no firearm was located, jail
calls were intercepted where Petitioner directed his cousin to an area to remove a "ban ban",
something Petitioner admitted was a gun that he used in self-defense during the shooting

6

The State introduced prior bad acts during trial. Over objection, the State called a firearms dealer to testify that the defendant had tried to purchase a gun from him in the past to support premeditation Also over objection, the State introduced evidence that someone had broken a front window at the victim's house and this was allegedly done by the Petitioner to show motive. Yet another incident was introduced to show intent and motive, that is, that Petitioner had used his crutches to crack his mother's windshield

During his testimony, the Petitioner claimed self-defense and told jurors that the shoe and shorts were a result of his step-father's assault. He said that his step-father had a gun and he had something in his hands, causing the Petitioner to fear for his safety During cross-examination, Petitioner refused to respond to the prosecutor's questions, electing instead to chastise his defense counsel

During a break, the Petitioner tripped over a table due to the shackles on his ankles. He complained of prejudice because jurors were present in the courtroom. The trial court held that jurors could not see the shackles, as a skirt covered the trial table None of the jurors was questioned regarding the incident and what he/she saw, nor did trial counsel request a mistrial

## ARGUMENT

Petitioner, Albert Ramirez, adequately alleges claims, which entitle him to legal argument and/or an evidentiary hearing on the following grounds: Denial of his sixth amendment right to effective assistance of counsel and denial of his due process right to a representative venire panel.

I.   **PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND HIS RIGHT OF COMPULSORY PROCESS WHEN HIS ATTORNEY FAILED TO CALL DR. MAXANN SHWARTZ TO REBUT THE STATE'S MERE ASSERTIONS OF MALINGERING AND TO TESTIFY AT TRIAL ABOUT THE DEFENDANT'S STATE OF MIND.**

7

### A.   It is Ineffective Assistance of Counsel to Ignore a Defendant's Right of Compulsory Process.

The Sixth Amendment's right to counsel guarantee requires that effective assistance of counsel be given at all stages of the proceedings, and New Mexico has affirmed this right. U.S. Const. amends VI and XIV; N M Const Art. II § 14; *State v Robinson*, 99 N.M. 674, 662 P.2d 1341 (1983). Defense counsel's performance is measured against "an objective standard of reasonableness." *Strickland v Washington*, 466 U S 668, 688 (1984), *State v Orona*, 97 N M 232, 638 P.2d 1077 (1982), *State v. Dean*, 105 N M 5, 727 P.2d 944 (Ct App 1986) (standard is whether defense counsel exercised the skill, judgment, and diligence of a reasonably competent attorney).

As noted by *Strickland v Washington*, "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction...has two components:

I)   First, the defendant must show that counsel's performance was deficient..

2)   Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687.

In order to prevail on an ineffective assistance claim, the defendant must show her counsel's performance fell below the standard of a reasonably competent attorney and, due to the deficient performance, the defense was prejudiced *State v Talley*, 103 N.M. 33, 34, 702 P.2d 353, 354 (Ct App 1985). Prejudice is measured by "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland v Washington*, 466 U.S. 668, 695, 104 S Ct. 2052, 2068, 80 L. Ed 2d 674 (1984). The test for judging any claim of ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104

8

S Ct. at 2064 In reviewing an ineffectiveness claim, the entire proceedings must be considered as
a whole. *Id*, *State v Talley*, *State v Lovato*, 110 N.M. 146, 147, 793 P.2d 276, 277 (Ct. App. 1990)

In cases of egregious failure by trial counsel, defendants are relieved of the burden of
establishing prejudice due to "circumstances that are so likely to prejudice the accused that the cost
of litigating their effect in a particular case is unjustified " *United States v Cronic*, 466 U.S. 648, 659
(1984) The *Cronic* court described three such circumstances

    (1)    denial of counsel altogether;

    (2)    defense counsel's failure "to subject the prosecution's case to meaningful adversarial
testing"; and

    (3)    when the accused is "denied the right of effective cross-examination " *Id*.

This is such a case. Counsel failed to subject the prosecution's case to meaningful adversarial testing.
*State v. Aragon*, 2009-NMCA-102, ¶ 15, 147 N M. 26, 216 P.3d 276 (prima facie demonstration of
ineffective assistance where trial counsel failed to secure an expert necessary to explain the State's
evidence)

**B.    Trial Counsel Erred in Failing to Call Dr. Maxann Shwartz as a Witness to
Rebut the State's Mere Assertions of Malingering and Denied Mr. Ramirez his
Rights to Compulsory Process and Fair Trial when he Refused to Call Dr.
Shwartz to Testify Regarding Mr. Ramirez' Mens Rea.**

Mr. Ramirez was evaluated by an accredited psychologist, Dr. Maxann Shwartz, who found
him incompetent to stand trial and who did not find malingering. Dr. Shwartz was not called at the
final hearing to determine competency to testify about Mr. Ramirez' present competency and against
the state's assertion of mere malingering. As a result, the Court could only consider the findings of
Dr Burness, from NMBHI, who testified that she believed Mr Ramirez was pretending not to
understand. The Court relied on this testimony to adjudge Mr Ramirez competent to stand trial.

9

Although Mr. Ramirez requested that his attorney call Dr. Shwartz as a witness at trial to address his state of mind, his counsel refused to do so. This failure to call Dr. Shwartz to testify as to competency at the time of the event resulted in a denial of Mr Ramirez' right of compulsory process. Criminal defendants have the right to put before a jury evidence that might influence the determination of guilt.' *Taylor v. Illinois*, 108 S. Ct. 646 (1988) *citing Pennsylvania v Ritchie*, 480 U.S 39, 56 (1987)(criminal defendant's conviction reversed and remanded because he was not allowed to examine government documents that may have affected the outcome of the trial)).

The right to present a defense is "as American as apple pie" Defendants are constitutionally entitled to be heard, effectively present evidence central to their defense, call-witnesses to testify on their behalf, and rebut evidence presented by the prosecution It is well established that the Sixth Amendment guarantees the right of Confrontation. As a corollary to the right of confrontation, the Sixth Amendment guarantees defendants the right to call witnesses to testify on their own behalf and if necessary, to use the compulsory process of the judiciary to subpoena witnesses who could provide exculpatory testimony or who have other information that is favorable to the defense. *See* N M Const., Art. II, Sec 14 ("[i]u all criminal prosecutions, the accused shall have the right . . . to have compulsory process to compel the attendance of necessary witnesses in his behalf. . "); U S Const amend VI ("[i]n all criminal prosecutions, the accused shall enjoy the right . . to have compulsory process for obtaining witnesses in his favor . . . .") Without this right, Defendant asserts, his broader right to a fair trial, guaranteed by the Fourteenth Amendment to the United States Constitution and by Article II, Section 18 of the New Mexico Constitution, was imperiled *See generally* Peter Westen, *The Compulsory Process Clause*, 73 Mich L Rev 71, 166-70 (1974)

10

Few rights are more fundamental than that of an accused to present his own defense" *Taylor v. Illinois*, 108 S Ct. 646 (1988), *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)). Our United States Supreme Court has held that the right to present a defense consisted of the right to compel the attendance of witnesses and offer their testimony and that such a right "'stands on no lesser footing than other Sixth Amendment rights that we have previously held applicable to the states.'." *Taylor v Illinois*, 108 S. Ct at 652-653 (*quoting Washington v Texas*, 388 U.S. 14, 18 (1967)) Such a right "is an essential attribute of the adversary system itself." 46 *Id* (*citing United States v Nixon*, 418 U S. 683 (1974)(President's duty violated his constitutional right "to have compulsory process to compel the attendance of necessary witnesses in his behalf"). *See also* N.M. Const., Art II, § 14, *see State v Cooley*, 19 N M. 91, 140 P. 1111, 52 L R.A., N S , 230 (1914).

Mr Ramirez was charged with first degree murder—a charge that on its face requires a showing that his actions were willful and deliberate and which requires a showing of premeditation. [Exhibit B]; *See State v Montoya*, 1963, 72 N.M. 178, 381 P.2d 963, *State v Ybarra*, 1918, 24 N M. 413, 174 P 212 (essential elements of murder in the first degree include the elements of deliberation and premeditation). "An abnormal mental condition may influence the probability that a defendant premeditated and deliberated-and so be taken into account by a jury in determining whether those states of mind existed in fact (beyond a reasonable doubt)-even though it did not eliminate the capacity for premeditation." *United States v Peterson*, 509 F.2d 408, 416-17 (D.C. Cir. 1974) "[E]xpert testimony is admissible if it merely 'support[s] an inference or conclusion that the defendant did or did not have the requisite mens rea.'" *United States v Bennett*, 161 F.3d 171, 183 (3rd Cir 1998) (*quoting United States v. Morales*, 108 F.3d 1031, 1037 (9th Cir. 1997)). Dr. Shwartz' testimony was relevant, we note that New Mexico courts have long allowed such expert testimony

11

relating to a defendant's mental state at the time of the commission of the offense. *See id.; see also State v Elliot*, 96 N.M. 798, 635 P 2d 1001 (Ct. App 1981), *State v Smith*, 80 N.M. 126, 452 P 2d 195 (Ct App. 1969). Regardless, Dr Shwartz was not called at trial to testify about Mr. Ramirez' present competency and against the state's assertion of mere malingering. *State v. Balderama*, 88 P.3d 845, 135 N M. 329 (2004)

Counsel's failure to pursue a potentially meritorious defense raises substantial questions of ineffective assistance counsel. *See State v Luna*, 1979-NMCA-048, ¶27, 92 N.M. 680 (Court addressed issues relating to ineffective assistance of counsel for failure to file pre-trial motions regarding charge of conspiracy when 3 other co-defendants had that particular charge dismissed, leaving no one to conspire with). "The testing process generally will not function properly unless defense counsel has done some investigation into the prosecution's case and into various defense strategies...counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary" *Kimmelman v Morrison*, 477 U.S. 365, 384 (1986)(internal citations omitted); *see also Strickland*, 466 U.S. at 687-88.

Reasonable professional performance includes a duty to investigate all reasonable lines of defense. *Fisher v. Gibson*, 282 F.3d 1283, 1291 (10th Cir 2002), *citing Strickland*, 466 U S at 691. The failure to pursue information from a key witness regarding the basis of the accused's most important defense cannot be considered sound trial strategy *Sanders v Ratelle*, 21 F. 3d 1446, 1456 (9th Cir 1994). Counsel is ineffective if he fails to conduct an adequate investigation into the defendant's most viable theory of the defense *Bigelow v Williams*, 367 F 3d 562 (6th Cir 2004) (reasonable prudence should lead lawyer to recognize the importance of potential witness testimony).

12

The failure to pursue an adequate defense may establish grounds for finding ineffective assistance of counsel. *State v Barnett*, 1998-NMCA-105, ¶ 30, 125 N.M. 739 citing ABA Standards for Criminal Justice Pleas of Guilty, Standard 14-3.2 (2nd edition 1980)

Whether defense counsel's actions were unreasonable or caused prejudice cannot be established by the trial record; *State v. Plouse*, 2003-NMCA-048, ¶ 15, 133 N.M 495, 64 P.3d 522, rather, a habeas proceeding is the appropriate procedure, so that "the defendant may actually develop the record with respect to defense counsel's actions." *State v Arrendondo*, 2012-NMSC-013, ¶ 38. New Mexico appellate courts frequently remand claims of ineffective assistance of counsel brought on direct appeal for further evidentiary hearings. *State v. Hunter*, 2006-NMSC-043, ¶30, 140 N.M 406, 143 P.3d 168   "[H]abeas corpus proceedings are the preferred avenue for adjudicating ineffective assistance of counsel claims, because the record before the trial court may not adequately document the sort of evidence essential to a determination of trial counsel's effectiveness." Id. (internal quotation marks and citation omitted).  Thus, we have held that an evidentiary hearing in most cases "may be necessary." *Id.* (internal quotation marks and citation omitted).

Defendant's ability to confront his accuser and to obtain compulsory process, protected by the Sixth Amendment to the United States Constitution as well as Article II, Section 14 of the New Mexico Constitution, was compromised. As a result, Mr. Ramirez was denied his right of due process contrary to N.M Constitution, Art II, Sec. 18, and the U.S. Constitution, Amend. V and 14 and compulsory process as guaranteed by N M Const, Art II, Sec. 14 and U S Const. Amend VI.

"A defendant is not entitled to an attorney who will 'leave not the smallest stone unturned'

13

but when the defendant has but one stone, it should at least be nudged " *Coleman v  Brown*, 802

F.2d 1227, 1234 (10th Cir  1986)(internal citations omitted). Mr. Ramirez submits that failure to call

Dr. Shwartz as a witness, per his request, was tantamount to ignoring a boulder.

## II.    PRIOR BAD ACTS SHOULD NOT HAVE BEEN INTRODUCED AND THEIR INTRODUCTION DENIED THE PETITIONER HIS RIGHT TO A FAIR TRIAL.

A Defendant is presumed innocent and is entitled to due process and a fair trial.  U.S. Const.,

amend V., XIV; N.M. Const , art  II § 18 " *State v  Martin*, 1984-NMSC-077, ¶ 17, 101 N M. 595

(fair trial), U S  Const., amends VI and VII, and N M. Const., Art  II, sec  14 and 18 (presumption of

innocence), and N.M  Constitution, Art  II, Sec. 18, and the U.S. Constitution, Amend. V and 14 (due

process). Mr. Ramirez maintains that he was denied these rights when, over the Defense objections,

the State introduced prior bad acts during trial.

The evidence was not relevant.  It is the state's burden to establish the relevancy of the

proffered evidence *State v  Herrera*, 92 N.M. 7, 582 P.2d 384 (Ct. App.), *cert  denied*, 91 N M. 751,

580 P.2d 972 (1978)  Rule 404(B) is a specialized rule of relevancy which requires counsel to

identify the consequential fact to which the proffered evidence of other acts is directed. *State v*

*Aguayo*, 114 N.M  124, 835 P.2d 840 (Ct. App), *cert  denied*, 113 N.M. 744, 832 P.2d 1223 (1992).

It is only then, after the proponent has provided the trial court with an adequate basis, that the trial

court should decide whether the probative value of the evidence is not substantially outweighed by

the prejudicial impact. *State v. Beachum*, 96 N M. 566, 568-69, 632 P.2d 1204, 1206-07 (Ct  App

1981)(emphasis added)  Such evidence should not be received when "very probably its sole result,

or at least its overwhelming result, will be that of establishing defendant's bad character, or his

disposition or propensity to commit crime, as the basis for an inference that he committed the crime

14

with which he is charged and for which he is being tried." *State v. Mason*, 79 N M. 663, 667, 448

P 2d 175, 179 (Ct. App ), *cert denied*, 79 N M. 688, 448 P 2d 489 (1968)

As noted by the Court of Appeals in *State v. Andrade*, 1998-NMCA-031, ¶12

> [o]ur rules of evidence, following longstanding legal tradition, insist that a defendant
> not be convicted by a jury simply on evidence that the defendant is a bad person."
> *citing* Rule 11-404 NMRA ...[e]vidence of a defendant's prior misconduct ordinarily
> is not admissible to support the inference that the defendant has a propensity to
> commit unlawful acts and therefore is likely to have committed the charged act. New
> Mexico has been particularly strict in limiting evidence of prior crimes " *citing State
> v Wrighter*, 1996-NMCA-077.

Although evidence of other bad acts may be relevant, the risk that the jury will convict

because Defendant is a bad person and needs to be punished creates a prejudicial effect. Rule 11-404

(b) provides that evidence of other crimes, wrongs or acts is not admissible to prove the character of

a person in order to show action in conformity therewith or to show criminal propensity. *See State*

*v Roybal*, 115 N M. 27, 846 P.2d 333 (Ct App. 1992)("Generally, proof of other crimes has a

tendency to prejudice the minds of the trier of facts and predispose them to a belief in the accused's

guilt.").

Over objection, the State called a firearms dealer to testify that the defendant had tried to

purchase a gun from him in the past to support premeditation  Also over objection, the State

introduced evidence that someone had broken a front window at the victim's house and this was

allegedly done by the Petitioner to show motive. Yet another incident was introduced to show intent

and motive; that is, that Petitioner had used his crutches to crack his mother's windshield. The State

presumably sought protection under Rule 11-404 (b) as indicated below

The broken front window was never proven to be the Defendant  Incredibly, the State sought

introduction of this act to show motive.  The evidence was not relevant to defendant's motive to

15

commit the instant offense, as the State could not prove that it was the Defendant who broke the window and not just a random act. *See e.g. State v Ruiz*, 119 N.M. 515, 892 P.2d 962 (Ct. App. 1995); *State v. Williams*, 117 N M 551, 874 P 2d 12 (1994)(prior relationship with victim or merely enjoying sex is not sufficient to suggest that a defendant had cause to force himself on the victim). Admission of prior acts must be shown to sufficiently be similar to the charged acts to indicate they were likely done by the same person. In order for evidence to be admissible under this exception, the similarity must rise above the level of characteristics common to many incidents of the crime and must indicate a distinct pattern of conduct The incident was not so distinctive as to constitute a "unique or distinct pattern easily attributable to one person " *State v Beachum*, 96 N M 566, 568, 632 P.2d 1204, 1206 (Ct App 1981).

The firearms expert could not recall what kind of weapon Mr. Ramirez allegedly sought to purchase; he could not recall when exactly Mr. Ramirez came to his business; he did not keep a copy of the firearms application form which he claims he received from Mr. Ramirez. Although trial counsel sought to exclude the evidence, the trial court allowed the State to introduce it to support motive and premeditation This was in violation of Rule 11-404(B) which provides that evidence of a defendant's prior acts is admissible to show proof of motive. Factually similar incidents cannot, alone, prove plan, particularly when the acts are several years apart and the State must be able to prove the act was somehow part of a bigger plan *State v Montoya*, 116 N M 72, 860 P.2d 202 (Ct. App. 1993)

Finally, whether Mr. Ramirez did or did not break his mother's windshield, the evidence was neither relevant nor probative to prove that Mr. Ramirez intended harm to his step-father The evidence was admitted in violation of Rule 11-404(A) NMRA 2004 (providing that "[e]vidence of

16

a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion") *See State v. Lucero*, 114 N.M. 489, 492, 840 P 2d 1255, 1258 (Ct. App 1992); *see also State v Alberts*, 80 N.M 472, 474, 457 P 2d 991, 993 (Ct. App 1969) (finding that if the sole purpose of evidence is to demonstrate bad character, reputation, or disposition, its prejudicial effect makes it inadmissible).

On the whole, the probative value of the evidence did not outweigh the prejudicial effect for which the State introduced it. As noted in *State v Williams supra*, "[i]f evidence of prior acts is relevant and admissible for a purpose other than proving a defendant's propensity to commit a crime, the probative value of the evidence must outweigh its prejudicial effect". *Id citing State v Landers*, 115 N M. 514, 517, 853 P.3d 1270, 1273 (1993); NMRA 1999, 11-403, *State v. Beachum*, 96 N.M. 566, 567-68, 632 P 2d 1204, 1205-06 (Ct. App. 1981)

Even when admitting prior bad acts evidence under a recognized exception, the trial court must still meet the requisites of 11-403. *State v Wrighter*, 122 N.M. 200, 922 P.2d 582 (Ct. App 1996) The trial court may admit evidence under NMRA 1999, Rule 11-404(B) if the probative value of the evidence outweighs any prejudicial effect *State v Landers*, 115 N.M. at 518, 853 P.3d at 1274

There is no indication that the Court balanced the prejudicial effect of the evidence against its probative value to determine if "the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. *See Rule* 11-403, NMRA 2001. Even allowing that evidence of the defendant's prior history was admissible to establish context, *See Jones*, the trial court must engage in a balancing requirement of NMRA 1999, 11-403

17

*State v Rojo*, 1999-NMSC-001, ¶ 47, 126 N M. 438, 971 P 2d 829 ("Under Rule 11-403, "evidence

may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice "

Proof of other crimes has a tendency to prejudice the minds of the triers of fact and to

predispose them to a belief in the accused's guilt. *See State v Rowell*, 77 N.M 124, 419 P.2d 966

(1966); *State v Allen*, 91 N.M. 759, 581 P.2d 22 (Ct App. 1978).

> The real danger of admitting past conduct is that, if the jury believed the testimony,
> the jury would conclude that the Defendant acted in conformance therewith, and if he
> did so then, it is more likely he did so now One cannot ignore the long tradition of
> courts and commentators expressing fear that jurors are too likely to give undue
> weight to evidence of a defendant's prior misconduct and perhaps even to convict the
> defendant solely because of a belief that the defendant is a bad person.

*State v Lamure*, 115 N M. 61, 71, 846 P.2d 1070, 1080 (Ct App 1992), *cert. denied*, 114 N M. 720,

845 P.2d 814 (1993). Rule 404(B) is designed to prevent this kind of perception. *Id* Testimony

which amounts to evidence of a defendant's bad character, or disposition to commit the crime

charged, when not offered for a legitimate purpose, is inadmissible and unfairly prejudicial. *State v*

*Rael*, 117 N M. 539, 540, 873 P.2d 284, 286 (Ct. App. 1994).

Defendant submits that it was prejudicial error to admit evidence of prior uncharged conduct,

*State v Ross*, 88 N M. 1, 536 P 2d 265 (Ct App 1975) Any references to other offenses may be

probative, but its probative value is substantially outweighed by the prejudice to the Defendant. *State*

*v Hogervorst*, 90 N.M. 580, 566 P 2d 828 (Ct App 1977) Accordingly, Defendant's rights to fair

trial and due process were violated U S. Const., amend V , XIV; N.M Const., art. II § 18 (fair trial)

and N.M. Constitution, Art. II, Sec. 18; and the U.S. Constitution, Amend V and 14 (due process).

Mr. Ramirez maintains that he was denied these rights when, over the Defense objections, the State

introduced prior bad acts during trial.

18

## III.  THE PETITIONER WAS LIKELY PREJUDICED AND DENIED HIS RIGHT TO A FAIR TRIAL WHEN HIS FALL WAS A DIRECT RESULT OF BEING SHACKLED AND HIS ATTORNEY DID NOT SEEK TO HAVE JURORS POLLED REGARDING WHETHER THEY SAW THE SHACKLES OR NOT.

A person in custody "coming into court for trial is entitled to make his appearance free of shackles or bonds " *State v Holly*, 2009-NMSC-004, ¶ 41, 145 N M. 513, 201 P.3d 844 (internal quotation marks and citation omitted); *see also* Rule 5-115(C) NMRA ("Except by order of the court, the defendant may not appear before the jury in any visible restraint devices, including handcuffs, chains or stun belts, a visible bullet proof vest or any other item which, if visible to the jury, would prejudice the defendant in the eyes of the jury.") The record does not reflect that any order was issued by the trial court, until after the fall, whereby the shackles were removed for the remainder of the trial

Petitioner recognizes that "a defendant's right to appear free of visible restraints is not absolute", *State v Johnson*, 2010-NMSC-016, ¶ 26, 148 N M  50, 229 P.3d 523, as "it must be balanced against the state's interest in maintaining security." *State v Gomez*, 1971-NMCA-009, ¶¶ 2-7, 82 N M  333, 481 P.2d 412 (upholding the district court's denial of mistrial where jurors had viewed the defendant in handcuffs only as safety requirements demanded, "prior to the beginning of trial and during recess").  In this case, however, there were other adequate remedies to ensure the safety of the community and the integrity of security.

While a juror's "inadvertent or insignificant exposure to a defendant in shackles is not sufficiently prejudicial to merit a new trial, " *See Holly*, 2009-NMSC-004, ¶ 41, in this case, there may have been 12 jurors who observed Mr. Ramirez in shackles. In *Holly*, a single juror may have seen the defendant in handcuffs during his escort back to detention.  *Id* ¶ 40. Rather than calling

19

attention to the incident by questioning the jurors, the district court chose to remedy the situation by repeating the general jury instructions to the jurors *Id.* On appeal, our appellate court concluded that the incident did not constitute fundamental error because "it [was] unclear whether any exposure actually occurred, or if it did, that it was anything more than inadvertent or insignificant exposure." *Id.* ¶ 42. Here, there is nothing indicating that the Defense sought to question jurors regarding what they did/did not see when the defendant fell, rather, an assertion was made and the parties determined that likely none of the jurors saw anything Another difference is that the defendant in Holly was wearing handcuffs. Shackles are arguably more egregious

Given the uncertainty, the Defense should have demanded the jurors each be questioned individually and should have moved for a mistrial. In *State v. Mills*, 1980-NMCA-005, ¶ 15, 94 N.M. 17, 606 P.2d 1111, at least one juror viewed the defendant in handcuffs while a bailiff was escorting the defendant from the courtroom during a noon recess. The defendant moved for a mistrial, arguing that the incident deprived him of a fair trial *Id* The bailiff explained to the district court that he had waited with the defendant "for the time normally required for the departure of jurors," and "that the view occurred because some jurors had used the restroom before departing " *Id.* ¶ 16 The district court held that the juror's observation of defendant in handcuffs was inadvertent and denied the defendant's motion for a mistrial, reasoning that "any impropriety resulting from the view was harmless" because the evidence at trial showed that the defendant was incarcerated *Id* ¶¶ 16-17. This case differs in three respects. the observation may have been made by all of the jurors; the defendant in *Mills* was cuffed as opposed to shackled; and the evidence at trial did not show that the defendant was incarcerated.

20

Pursuant to *State v Franklin*, 78 N M  127, 428 P.2d 982 (1967) and *State v Boyer*, 103 N M

655, 712 P 2d 1 (Ct  App. 1985)(counsel should set forth contentions urged by a petitioner whether

or not counsel feels they have merit ), the Petitioner urges the Court to consider the issue of whether

the possibility of seeing him shackled resulted in prejudice to his case.

## CONCLUSION

If a petition for writ of habeas corpus demonstrates on its face that a Petitioner may have been

deprived of his constitutional rights, the court must address the issue in an evidentiary hearing unless

it plainly appears that the petitioner is not entitled to any relief as a matter of law, based on the facts

alleged in the petition, or the uncontroverted facts shown by the court record. *State v  Franklin*,

1967-NMSC-151, ¶6, 78 N.M. 127 *quoting Machibroda v  United States*, 368 U.S. 487 (1962), *see

also Duncan v. Kerry*, 1993-NMSC-011, ¶ 3, 115 N M. 344 (court must hold an evidentiary hearing

where a petition adequately alleged ineffective assistance of counsel). Habeas corpus proceedings

are the preferred method for adjudicating claims of ineffective assistance of counsel, because such

claims often cannot be considered based solely on the record before the trial court. *Duncan*,

1993-NMSC-011, ¶4. Consequently, when a petition for a writ of habeas corpus alleges particular

facts which set out a claim of inadequate representation, the petitioner is entitled to a hearing. *State

v  Moser*, 1967-NMSC-163, ¶ 6, 78 N.M. 212 (overruled on other grounds).

Respectfully submitted,

LIANE E. KERR, Esq.
PO Box 10491
Albuquerque, NM 87184-0491
(505) 848-9190

21

## **VERIFICATION**

STATE OF NEW MEXICO )
                     ) ss.
COUNTY OF DONA ANA   )

I, the undersigned, being first duly sworn upon my oath, state that I am the Petitioner in this action. I have read the foregoing petition and know and understand its contents, and the information contained therein are true and correct to the best of my knowledge, information, and belief

Albert Ramirez, PNM 69597
c/o SNMCF
P.O. Box 639
1983 Joe R. Silva Boulevard
Las Cruces, New Mexico 88004-0639

SUBSCRIBED AND SWORN TO before me this _____ day of _____, 2018,
by _____.

NOTARY PUBLIC

My Commission Expires:

_____

## **CERTIFICATE OF SERVICE**

I hereby certify that true copies of the foregoing petition were served upon the Respondent and the district attorney in the county in which the petition is filed by _____(described manner of service), this 19ᵗʰ day of May, 2018

LIANE E KERR, Esq. .

22

in *Mills* was cuffed as opposed to shackled; and the evidence at trial did not show that the defendant was incarcerated.

Pursuant to *State v Franklin*, 78 N M. 127, 428 P.2d 982 (1967) and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985)(counsel should set forth contentions urged by a petitioner whether or not counsel feels they have merit), the Petitioner urges the Court to consider the issue of whether the possibility of seeing him shackled resulted in prejudice to his case.

## IV. MR. RAMIREZ ADDITIONALLY REQUESTS THE COURT CONSIDER ADDITIONAL ISSUES WHICH WERE INHERENT IN HIS TRIAL, BUT WHICH WERE NOT RAISED BY HIS APPELLATE ATTORNEY.

Undersigned provided Mr. Ramirez with a copy of the Petition and asked that he contact her with any suggestions/changes. No contact was made; however, in meeting with Mr. Ramirez, he made requests for additional arguments and they are therefore addressed briefly. *See State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967) and *State v Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985). (counsel should set forth contentions urged by a petitioner whether or not counsel feels they have merit). Mr. Ramirez asks this Court to consider the following in the context of the entire trial:

I. **Sufficiency of the Evidence.** If the State does present evidence sufficient to support a finding of guilt beyond a reasonable doubt, the verdict violates the Due Process Clause. *See Jackson v. Virginia*, 443 U.S. 307, 317–18 (1979). Proof beyond a reasonable doubt is equivalent to proof "to a moral certainty," and refers to the highest degree of confidence with which an historical or physical fact can be known. *Victor v. Nebraska*, 511 U.S. 1, 11-12 (1994)   *See also State v Silva*, 2008-NMSC-051, ¶¶ 19-20, 144 N.M. 815, 192 P.3d 1192 (prosecution failed to present "any evidence, circumstantial or otherwise, of an overt act" by the defendant from which the jury could infer an intent to defendant), and *State v. Duran*, 2006-NMSC-035, ¶¶ 15-16, 140 N.M. 94, 140 P.3d

21

515.. 2008-NMSC-051, ¶ 19 (no evidence of any act by the defendant to destroy or hide evidence, with the only support for the tampering charge stemming from the fact that the evidence was not found).

2.    **Prosecutorial Misconduct.**  Without objection from trial counsel, the prosecutor claimed that Mr. Ramirez was a "menace to society", a liar and  during his closing argument. Prosecutorial misconduct reaches the level of fundamental error when it is egregious and so pervasive and prejudicial that the defendant was deprived of a fair trial and applies only when a defendant's conviction would shock the conscience if allowed to stand, or when an error is such that the fundamental integrity of the judicial process is implicated. *State v. Sosa*, 2009-NMSC-056, ¶35, 147 N.M 351, 223 P.3d 348   Mr. Ramirez maintains that his conviction, when viewed against the prosecutor's comments and conduct, would shock the conscience if allowed to stand.

3.    **Double jeopardy.**  Mr. Ramirez believes that being twice charged with evidence tampering was tantamount to double jeopardy. No person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V.  Imposing multiple punishments for tampering charges directed at the same item of evidence, violates the right to be free from double jeopardy. *State v. DeGraff*, 2006-NMSC-011, ¶ 34, 139 N.M. 211, 131 P.3d 61. However, Undersigned recognizes that distinct acts, separated by time and space, do not violate double jeopardy. *See State v Quick*, 2009-NMSC-015, ¶ 25 (stating that "[d]istinctness may be established by determining whether the acts constituting the two offenses [were] . . . separated by time or space").

## CONCLUSION

If a petition for writ of habeas corpus demonstrates on its face that a Petitioner may have been deprived of his constitutional rights, the court must address the issue in an evidentiary hearing unless

22

it plainly appears that the petitioner is not entitled to any relief as a matter of law, based on the facts alleged in the petition, or the uncontroverted facts shown by the court record. *State v Franklin*, 1967-NMSC-151, ¶6, 78 N.M. 127 *quoting Machibroda v. United States*, 368 U.S. 487 (1962); *see also Duncan v. Kerry*, 1993-NMSC-011, ¶3, 115 N.M. 344 (court must hold an evidentiary hearing where a petition adequately alleged ineffective assistance of counsel). Habeas corpus proceedings are the preferred method for adjudicating claims of ineffective assistance of counsel, because such claims often cannot be considered based solely on the record before the trial court. *Duncan*, 1993-NMSC-011, ¶4. Consequently, when a petition for a writ of habeas corpus alleges particular facts which set out a claim of inadequate representation, the petitioner is entitled to a hearing. *State v. Moser*, 1967-NMSC-163, ¶ 6, 78 N.M. 212 (overruled on other grounds).

Respectfully submitted,

LIANE E. KERR, Esq.
PO Box 10491
Albuquerque, NM 87184-0491
(505) 848-9190

23

STATE OF NEW ...
COUNTY OF CUR...
FILED IN

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

JUN 2 0 2017

West's New Mexico Statutes Annotated
State Court Rules
9. Criminal Forms
Article 7. Special Proceedings

Clerk District Court

NMRA, Form 9-701

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS

Currentness

[For use with District Court Criminal Rule 5-802 NMRA]

STATE OF NEW MEXICO

COUNTY OF CURRY

IN THE DISTRICT COURT

For Official Use Only

No. _____

(To be supplied by the clerk of the court)

AlBERT RAMIREZ

(Full name of prisoner)

_____ Petitioner,

v.

WARDEN GERMAN FRANCO

WestlawNext © 2015 Thomson Reuters No claim to original U.S. Government Works.

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

2018 DEC 14  AM 10: 57

CLERK DISTRICT COURT

ALBERT JOSE RAMIREZ,

    Petitioner,

vs.                                      No.    D-0905-CR-2007-00434

STATE OF NEW MEXICO,

    Respondent.

## ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS

THIS MATTER having come before the Court on Petitioner's pro se Petition for Writ of Habeas Corpus filed June 20, 2017 and Petitioner's pro se Petition for Writ of Habeas Corpus filed July 17, 2017 in the above referenced cause number, the Court having appointed the Law Office of the Public Defender to represent the Petitioner, Petitioner's Amended Petition for Writ of Habeas Corpus having been filed through Counsel on May 18, 2018, and the Court limiting its analysis to said Amended Petition, the State's Response to Defendant's Amended Petition for Writ of Habeas Corpus was timely filed on September 10, a Preliminary Disposition Hearing was held on October 29, 2018, Petitioner appeared telephonically with Petitioner's Counsel, Liane E. Kerr, Attorney at Law, the State appeared by and through Brian S. Stover, Chief Deputy District Attorney, this Court having heard argument and taking its decision under advisement, having reviewed the pleadings, researched the issues and the Court being fully advised and after due deliberation, FINDS;

1. Petitioner is represented by Liane E. Kerr, Attorney at Law. Through Counsel, Petitioner filed an Amended Petition for Writ of Habeas Corpus on May 18, 2018.

1

2  This Court notes that the New Mexico Supreme Court found that, at least to a portion of the issues raised by Petitioner, that Petitioner retained the ability to bring such a claim via a habeas corpus proceeding. *State v. Ramirez*, 2016 WL 7029226, ¶ 32.

3. This Court entered its Notice that the Court is Not Dismissing Any Portion of the Amended Petition at this Time and Order for State to Respond to Amended Petition for Writ of Habeas Corpus on June 15, 2018.

4  Per Rule 5-802(H)(3) NMRA, the Ninth Judicial District Attorney's Office was ordered to file a response to Petitioner's Amended Petition for Writ of Habeas Corpus within one-hundred and twenty (120) days from the date the Amended Petition for Writ of Habeas Corpus was filed (May 18, 2018).

5. The State's Response to Defendant's Amended Petition for Writ of Habeas Corpus was timely filed on September 10, 2018.

6. This matter was set for a Preliminary Disposition Hearing on October 29, 2018. This Court heard argument from both parties.

7. Following the Preliminary Disposition Hearing, this "court shall then determine whether an evidentiary hearing is required. If it appears that an evidentiary hearing is not required, the court shall dispose of the petition without an evidentiary hearing, but may ask for briefs and/or oral arguments on legal issues." Rule 5-802(H)(4) NMRA. This Court does hereby rule that this matter is ripe for a decision. This Court finds that an evidentiary hearing is not required and no further briefs/argument are required.

8  A review of the file shows that Petitioner was convicted of various offenses including Murder in the First Degree in October, 2013  The Honorable Judge Teddy Hartley presided over the trial in this matter.

2

9. Petitioner appealed his conviction to the New Mexico Supreme Court. The New Mexico Supreme Court affirmed Petitioner's conviction in its decision, *State v. Ramirez*, 2016 WL 7029226. Said decision is incorporated by reference herein as though fully set forth.

10. In his Amended Petition, Petitioner asks this Court to vacate and set aside Petitioner's criminal convictions on the grounds that he was denied his state and federal constitutional rights to due process and denied the effective assistance of counsel.

11. There are six issues raised in the Amended Petition: 1). Was Petitioner denied his Sixth Amendment right to effective assistance of counsel and his right of compulsory process when his trial attorney failed to call Dr. Maxann Shwartz, Ph.D (hereinafter referred to as "Dr. Shwartz") to testify at either the competency hearing or at trial?; 2). Were Petitioner's convictions obtained in violation of his state and federal right to due process and a fair trial when prior uncharged acts were introduced?; 3). Did it violate Defendant's due process rights when jurors observed him shackled during trial?; 4). Was there sufficient evidence to convict the Defendant?; 5). Was there prosecutorial misconduct during the trial in this matter?; and 6). Was Defendant's right to be free from double jeopardy violated when he was convicted of two counts of Tampering with Evidence?

12. The State's Response addressed all six issues and this Court heard argument related to all six issues at the Preliminary Hearing on October 29, 2018.

13. Petitioner's first argument is that he was denied effective assistance of counsel. This Court notes that Petitioner was originally represented by Brett Carter, Law Office of the Public Defender. Later, Petitioner was represented by Jesse Cosby, Attorney at Law.

3

14  The issue of ineffective assistance of counsel was directly considered by the Supreme
    Court. The Supreme Court ruled that "the record before us is insufficient to establish that
    defense counsel was ineffective or that the decisions made were a plausible trial tactic or
    strategy. Accordingly, we reject this claim without prejudice to Defendant's ability to
    bring such a claim via habeas corpus proceedings." *State v. Ramirez*, 2016 WL 7029226
    ¶ 32.

15. Through the above described process related to Petitioner's Petition for Writ of Habeas
    Corpus, this Court finds that Petitioner has been given the opportunity to establish his
    record related to ineffective assistance of counsel.

16  Petitioner argues that it was ineffective assistance of counsel to not call Dr. Shwartz as a
    witness at a September 15, 2008 Competency Hearing. Leading up to that hearing, Mr.
    Carter filed a Notice of Filing to Determine Competency of the Defendant to Stand Trial
    on January 14, 2008. On March 10, 2018, Petitioner was evaluated by Dr Schwartz who
    rendered an opinion that Petitioner was incompetent. The record reflects that Dr.
    Schwartz spent a matter of hours with the Petitioner during the course of one day. The
    parties then stipulated that Defendant was incompetent. An Order for Commitment to the
    New Mexico Behavioral Health Institute at Las Vegas for Treatment to Attain
    Competency to Stand Trial was entered on April 17, 2008. On June 5, 2008, Petitioner
    was admitted to the New Mexico Behavioral and Health Institute in Las Vegas, NM, for
    treatment to attain competency. Petitioner was treated by Dr. Joanne Burness, Ph D
    (hereinafter referred to as Dr. Burness). On August 18, 2008, Dr. Burness rendered an
    opinion that Petitioner was competent to stand trial. The record reflects that Petitioner
    was at the New Mexico Behavioral and Health Institute from June 5, 2008 through

4

August 19, 2008 (75 days). A Competency Hearing was held on September 15, 2008. Petitioner was represented by Brett Carter. Dr. Burness testified at length about Petitioner's competency and the process that Petitioner went through to attain competency. The Court learned that Dr. Burness evaluated Petitioner and met with him on a number of occasions. She spent additional time evaluating and observing Petitioner. She also learned additional information from others regarding the Petitioner. Amongst other details related to Petitioner's competency, Dr. Burness testified that she believed Petitioner was malingering due to his actions, statements and numerous comments made by Petitioner about getting his charges dismissed once he was found to be incompetent. Petitioner was submitted to testing related specifically to malingering and testimony related to those tests was presented to the Court. Brett Carter cross examined Dr. Burness in great detail. Mr. Carter did not call Dr. Shwartz as a witness. Following the hearing, Petitioner was deemed competent by Judge Hartley. An Order finding Petitioner competent to stand trial was entered on September 16, 2008.

17. This Court notes that Mr. Carter would have been aware that, as of the date of the competency hearing, more than six (6) months had passed since Dr. Shwartz had met with the Petitioner for a matter of hours. Further, Mr. Carter would have been aware that, since Dr. Shwartz met with Petitioner, he had spent seventy-five (75) days at the New Mexico Behavioral and Health Institute being evaluated and observed by Dr. Burness and others. Dr. Burness had spent considerably more time with Petitioner and had subjected him to additional testing/observation related to malingering, etc.

18. This Court finds that Mr. Carter's decision not call Dr Shwartz as a witness was a strategic decision.

19. After an appeal related to the withdrawal of a plea agreement, Jesse Cosby entered his appearance on behalf of the Petitioner in August, 2011.

20. Competency continued to be an issue in this matter including a request by Mr. Cosby to have Petitioner's competency reevaluated in September 22, 2011. Petitioner received further forensic evaluation and treatment at the New Mexico Behavioral and Health Institute. By the time of trial, the parties had stipulated that Petitioner was competent and a Stipulated Order on Competency was filed on March 1, 2013.

21 Trial took place from October 7, 2013 through October 11, 2013. Testimony related to Petitioner's mental health was presented during trial. Petitioner argues that it was ineffective assistance of counsel for Mr. Cosby to not call Dr. Shwartz as a witness during the trial. Some of the factors that may have went into Defense Counsel's decision to not call Dr. Shwartz at trial are reflected on the record. As part of Petitioner's defense, Mr. Cosby elicited testimony from lay witnesses about Petitioner's mental health. In the afternoon on the fourth day of trial, the State began to prepare for up to two expert rebuttal witnesses, including Dr. Burness, to testify regarding Petitioner's mental health and specifically about Petitioner's malingering. Mr. Cosby argued that, if the State called said rebuttal witnesses, it would be necessary for him to call Dr. Shwartz to give surrebuttal testimony. After extensive argument, Defense Counsel began to maneuver in such a way that he would agree not to call Dr. Shwartz if the State did not call their rebuttal witnesses. In the end, Judge Hartley ruled that there would be no rebuttal witnesses and no instruction on competency. Judge Hartley even explained this decision to Petitioner, on the record, outside the presence of the jury.

6

22. This Court notes that Mr. Cosby would have been aware that, as of the first day of trial, it had been 2,037 days since Dr. Shwartz had met with the Petitioner. Further, Mr. Cosby would have been aware that, in the intervening time since Dr. Shwartz met with Petitioner, he had spent a considerable amount of time at the New Mexico Behavioral and Health Institute being evaluated and observed. Because of this, other mental health professionals had spent considerably more time with Petitioner and had subjected him to additional testing/observation related to malingering, etc. The State argues that Dr. Shwartz's testimony would have been irrelevant.

23. This Court finds that Mr. Cosby's decision not to present Dr. Shwartz's testimony related to Petitioner's mental state at the time of the commission of the offense, malingering, etc. was a strategic decision.

24. This Court notes the record in this matter reflects a statement from Judge Hartley toward the end of the trial that Mr. Cosby had represented Petitioner expertly and that the handling of the mental health expert witnesses was done in a fair way.

25. As noted above, the decisions made by Mr. Carter and Mr. Cosby related to the testimony of Dr. Shwartz were strategic decisions. Counsel's decisions in these areas are trial tactics and counsel is afforded wide latitude as they represented the Petitioner.[1]

---

[1] Courts generally give great deference to counsel's trial decisions, and mistakes of trial strategy or tactics do not render counsel's performance ineffective. The attorney has the basic responsibility for the conduct of the trial on behalf of his client, and he is given wide latitude in the discharge of this responsibility. Effective representation does not require that the defendant prevail or that his lawyer be infallible, and the courts are loathe to judge attorneys on the basis of hindsight. Thus, the mere fact that trial counsel took an action which another attorney might not have taken, or that trial counsel failed to take some action which might have proved advantageous, does not render him incompetent or ineffective. Generally, the attorney's performance will be held ineffective only when there is no tactical or strategic justification for his conduct of the trial. *Ineffective Assistance of Counsel*, 5 Am. Jur Proof of Facts 2d 267 (Originally published in 1975; updated September, 2015).

26. A defendant is denied effective assistance of counsel only where it can be shown that defense counsel has failed to exercise the skill, judgment and diligence of a reasonably competent defense attorney. *State v. Orona*, 1982-NMSC-002. And the petitioner must also prove that the incompetent representation prejudiced the petitioner's case, rendering the trial court's results unreliable. *State v. Lopez*, 1996-NMSC-036. The main question is whether the allegedly incompetent representation prejudiced the case such that, but for counsel's error, there is a reasonable probability that the result of the conviction proceedings would have been different. *Lopez*, 1996-NMSC-036, ¶ 26. *State v. Baca*, 1997-NMSC-045 (overruled on other grounds).

27 This Court finds that Petitioner has failed to show that, but for counsel's "error," there is a reasonable probability that the result of the conviction proceedings would have been different. This Court finds that the Petitioner cannot show conduct which was not that of a reasonable, competent attorney. This Court is of the opinion that no prejudice to the Petitioner occurred in this regard. After a meaningful and thorough review, this Court finds that the record in this case does not support this claim. This Court finds that, as to this issue, the Petitioner is not entitled to the relief requested in his Amended Petition.

28. Petitioner's second issue is that the district court erred in admitting evidence of prior acts, in violation of Rule 11-402 NMRA. This issue was addressed by the New Mexico Supreme Court in *State v. Ramirez*, 2016 WL 7029226, ¶¶ 44-60. The Supreme Court ruled that Judge Hartley did not abuse his discretion in admitting the evidence of Defendant's prior acts. In his Amended Petition, Petitioner raises the same prior bad acts that were reviewed by the Supreme Court, with the addition of a claim related to the Petitioner attempting to purchase a firearm.

29. Petitioner may not seek post-conviction relief for issues raised on appeal that were decided on the merits against the Petitioner. *State v. Gomez*, 1991-NMCA-061. This is the standard rule but it has been modified to allow some leniency in allowing the issue to be brought before the Court subsequent to the appeal. However, for the Court to review the issues, the claim needs to be grounded in facts beyond the record previously presented on appeal and the petitioner must show that the additional facts are those which could not, or customarily would not, be developed in a trial on criminal charges. *Campos v. Bravo*, 2007-NMSC-021. After a thorough review, the Supreme Court affirmed Petitioner's conviction. Petitioner has failed to allege new facts that were not known at the time of trial or appeal. Petitioner has failed to ground his argument in facts beyond the record previously presented on appeal. As to the claim related to the purchase of a firearm, Petitioner has failed to show that any additional facts used to support his Petition are those which could not, or customarily would not, be developed in a trial on criminal charges. This Court finds that, due to the Supreme Court's thorough review of the issue related to Petitioner's prior bad acts, this issue cannot be collaterally attacked through a post-conviction Petition for Writ of Habeas Corpus. After a meaningful and thorough review, this Court finds that the record in this case does not support this claim. This Court finds that, as to this issue, the Petitioner is not entitled to the relief requested in his Amended Petition.

30. Petitioner's third issue is that he was prejudiced when members of the jury may have seen his leg restraints. This issue was addressed by the New Mexico Supreme Court in *State v. Ramirez*, 2016 WL 7029226, ¶¶ 39–43. The Supreme Court ruled that "Because it is unclear whether the jury saw the leg restraints and if they did, there is no evidence

9

that it was anything other than inadvertent or insignificant exposure, this case is not the exceptional type that goes to the violation of the foundation of presumption of innocence. Further, this case does not shock the conscience as Defendant's guilt is supported by substantial evidence in the record, including eyewitness testimony and evidence of Defendant's motive and a pattern of conduct toward Robledo . . Accordingly, there was no fundamental error by the district court." *Id.*, ¶43

31 Petitioner may not seek post-conviction relief for issues raised on appeal that were decided on the merits against the Petitioner. *State v. Gomez,* 1991-NMCA-061. This is the standard rule but it has been modified to allow some leniency in allowing the issue to be brought before the Court subsequent to the appeal. However, for the Court to review the issues, the claim needs to be grounded in facts beyond the record previously presented on appeal and the petitioner must show that the additional facts are those which could not, or customarily would not, be developed in a trial on criminal charges. *Campos v. Bravo,* 2007-NMSC-021. After a thorough review, the Supreme Court affirmed Petitioner's conviction. Petitioner has failed to allege new facts that were not known at the time of trial or appeal. Petitioner has failed to ground his argument in facts beyond the record previously presented on appeal. As to any additional times that the jury may have seen Petitioner's restraints, Petitioner has failed to show that any additional facts used to support his Petition are those which could not, or customarily would not, be developed in a trial on criminal charges. This Court finds that, due to the Supreme Court's thorough review of the issue related to the jury potentially seeing Petitioner's leg restraints, this issue cannot be collaterally attacked through a post-conviction Petition for

Writ of Habeas Corpus   After a meaningful and thorough review, this Court finds that, as to this issue, the Petitioner is not entitled to the relief requested in his Amended Petition.

32. Petitioner's fourth argument is that there was insufficient evidence to convict him at trial After a meaningful and thorough review, this Court finds that the record in this case does not support this claim.  There was sufficient evidence presented to support Petitioner's convictions   After a meaningful and thorough review, this Court finds that, as to this issue, the Petitioner is not entitled to the relief requested in his Amended Petition.

33. Petitioner's fifth argument is that there was prosecutorial misconduct during the trial in this matter.  Petitioner raises comments made by the State about Petitioner being a liar and a menace to society.  The Supreme Court, in *State v Ramirez*, 2016 WL 7029226, ¶ 64, addressed a similar argument raised by Petitioner.  The Supreme Court found that, "reviewing all of the comments made, in the context in which they were made, and taking into account those comments' potential effect on the jury, the questions were isolated and minor. Accordingly, the prosecutor's remarks did not deprive Defendant of a fair trial." This Court adopts the Supreme Court's finding.  The State's remarks did not deprive the Defendant of a fair trial.  After a meaningful and thorough review, this Court finds that the record in this case does not support this claim.  This Court finds that, as to this issue, the Petitioner is not entitled to the relief requested in his Amended Petition.

34. Petitioner's sixth argument is that his convictions violate double jeopardy.  Petitioner argues that it was error that he be convicted of two counts of tampering with evidence. The Double Jeopardy Clause provides that no one will be "twice put in jeopardy" for the same crime.  Principles of double jeopardy protect against both successive prosecutions and multiple punishments for the same offense. *Swafford v. State*, 1991–NMSC–043, ¶ 6.

11

Petitioner alleges that he has received multiple punishments for the same offense. If conduct is separate and distinct, there is no violation of double jeopardy and the inquiry is at an end. *See Id.* ¶ 28. Evidence in this matter showed that one count of tampering with evidence was based upon Petitioner's actions related to a firearm and the other count of tampering was based upon Petitioner's actions related to clothing. This Court finds that each count of tampering with evidence was based upon a distinct act, separated by time and space, and involved different pieces evidence. Therefore, Petitioner's convictions were not premised on unitary conduct, and no double jeopardy violation occurred. *Swafford*, 1991-NMSC-043, ¶ 28. After a meaningful and thorough review, this Court finds that the record in this case does not support this claim. This Court finds that, as to this issue, the Petitioner is not entitled to the relief requested in his Amended Petition.

## DECISION

After examining the Amended Petition, exhibits, prior proceedings, having heard argument from the parties, requiring no further hearing or briefing, and based on the above discussed reasons, this Court finds the Petitioner is not entitled to relief as a matter of law. Therefore, in accordance with Rule 5-802 NMRA, the Petitioner's Amended Petition for Writ of Habeas Corpus filed on May 18, 2018 is DENIED.

HON. DREW D. TATUM
DISTRICT JUDGE, DIVISION II

Old petition

# THIS PAGE

# INTENTIONALLY

# LEFT

# BLANK

Old petition

☐
CNMCF/CNRU/CMU
P.O. Drawer 1328
Los Lunas, NM 37031

☐
GCCF
P.O. Box 520
Santa Rosa, NM 68435

☐
LCCF
6900 W. Millen Dr
Hobbs, NM 88244

☐
PNM
P.O. Box 1059
Santa Fe, NM 87504

☐
NMCF
P.O. Box 639
Las Cruces, NM 88004

☐
SNMCF-POU
P.O. Box 20085
Las Cruces, NM 88004

☐
WNMCF
P.O. Drawer 250
Grants, NM 87020

☐
NRNMDF
115 Dexter Municipal Airport Rd
Clayton, NM 88415

Name _____
No. _____ Unit _____

START

Date _____

All these Are
PArt of old petition that
was denied and No
lawyn to assist denied.

Label
Start
I.C. Ext ABCdE
ABC

Copies of
My Other Hobias   3.22.17
                    4.25.17

were lost by prison
officials

3 copies of each page of these

add of pages

☐ CHNACNCMRLI/CMU
P.O. Supper 1338
Las Lunas, NM 87031

☐ GCCF
P.O. Box 558
Santa Rosa, NM 88435

☐ LCCF
8908 W. Millon Dr
Hobbs, NM 88244

☐ PNM
P.O. Box 1059
Santa Fe, NM 97504

☐ SNMCF
P.O. Box 639
Las Cruces, NM 88004

☐ SNMCF-POU
P.O. Box 20805
Las Cruces, NM 68004

☐ WNMCF
P.O. Drawer 250
Grants, NM 87000

☐ NENMDF
785 Daystar Marired Jenking Rd.
Clayton, NM 88415

Name _____

No. _____ Unit _____

Date. _____

✗ rousl

MR COSBY   I REused to adress Court and request a
Nistrial which if raisd issue probably start trial
over if lawyer had done a Better joe of
protecting my rights

Also witness Pricilla lopez and Ricky Twamillo
849 witnesses would of testified that I am
Rial shinny and helped prove I was the
Art being chased in yard and that dietectne
was Mis lieading witnises.

Counsel at trial failed to call de Fink as a witness
of trial as I asked. de Fink would of testified
that I was Not competent and Mentaly Ill.

I asked counsel to call de. Doay Business to
Cross examine.

I asked counsel to investigate Mental illness difuse
as I have family history of mental illness. + Intoxicated
History and drugs.

I did express disatisfaction with counsel and The
Court failed to inquire into The motive

✗ SIL
MR Cosby promised if I testified I would be
able to speak of sexual abuse by Niebor and
my moms boyfriend He lied. To incriminate me.

IF counsel did not lie I would Not have testified
and trial may have been different togather
These errors all the prejudice Id be Entitled
to a new trial.

Counsil at tried failed To give me The entire
discovery and did Not discuss any of the
case with me. Beuz I would take plea.

_____
_____
                                    C

☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐

Name _____

No _____ Unit _____

22

Date: _____

Counsel did not call TS/car nonwire who went of testified Robledo h.t nk and was video when I was 13 and He fought roxeof.

also post Kominez would testify Robledo aggressive unless + attacked him everytime He tried to go see me.

Counsel failed to get medical reports Evidence to Show I was physically injured at time of crime.

This was a complete breakdown in communication. I want the court to know I asked twice on record to speak to show I timely moved for removal of counsel. But the court refused to let me say anything about conflict between I and counsel.

I tried to put in record what trial counsel said after I tried to file him. Court refused to inquire into it. If the court had Id of got a new attorney of a mistrial I asked to represent myself.

This denied my Sixth amendment right to effective assistance of counsel.

I ask for an Evidutory Hearing to now allow me to speak on record.

Thanks Usly much

**FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701**

Old petition

(Name of warden, jailor or other person having
power to release the petitioner)

Respondent.

*Instructions — Read Carefully*

Make sure that all information provided in this form is true and correct. Make sure that all necessary documents are attached, or explain why the documents are not being included. If you are currently incarcerated, you may file the petition without payment of the filing fee. If you are not incarcerated and are seeking free process, complete Form 9-403.

Finally, you must complete the certificate of service and mail or otherwise serve copies of this petition on the respondent and the district attorney in the county in which the petition is filed. You must file the original petition and one copy with the Clerk of the District Court. You should keep a copy for your own records.

**PETITION FOR WRIT OF HABEAS CORPUS¹**

ALBERT PEREZ

PNM State of New Mexico

I. _____ (name of person in custody) is imprisoned or otherwise restrained at Penitentiary (name of facility and county of detention) by WARDEN (name and title of person having custody).
GERMAN FRENCO

2. This petition

[W] seeks to vacate, set aside or correct an illegal sentence or order of confinement (i.e., ineffective assistance of counsel, illegal search and seizure, involuntary confession, or other matters relating to the trial or sentence the confined person received).

[W] challenges confinement or conditions of confinement or matters other than the sentence or order of confinement. *(This applies only to matters arising after the confined person arrived at the institution, i.e., county jail confinement, mental hospital confinement, detention facility confinement, good time credit, misconduct report, prison due process violation or parole).*

3. State concisely the facts upon which the confined person bases the claim:

?A INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL
AND APPEALATE COUNSEL ON APPEAL →

I TRIED. to SPEAK
TO GREEK I TO NO
AVAIL, IRRECESSIBLE
COW FLICTO

**FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701**

COUNSEL MR. COSBY. BEFORE TRIAL BEGINS And AFTER I

TRIED to FIRE HIM IN FRONT OF JUCY did VEEBAILY

ASSUALT And MODE THREDS Stated. STUPO L, ITLE BITCH

I PROMISE to be INEFFECTIVE ASSISTANCE IF YOU KEEP ON

SAYING YOU WANT TO 60 TO TRIAL AS I INSIST.

I HOPE

4. State concisely the grounds and law, or other legal authorities on which the confined person bases the claim:

YOU CRET

LIFE.

(I don't KNOW WHAT THIS MEANS SIE)

ILL TRY 2 I IS A CONSTITUTIONAL RIGHT TO

EFFECTIVE ASSISTANCE AT TRIAL ON APPEAL

IVE WROTE ON EXTRA SHEETS OF PAPERS TO

EXPLAIN. SOME FACTS BE AS I CAN.

+ EXBITS = EVIDENCE ALLEGATIONS

5. Have the grounds being raised in this petition been raised previously in your direct appeal? If so, explain the result. If not, explain why not:

YES I WAS TOLD APPEAL WAS DENIED to FILE

A HABEAUS PACKET. NOW HERE IS the

HABEAUS.

6. Have the grounds raised in this petition been raised previously in another petition for a writ of habeas corpus? If so, explain the result. If not explain why not:

I RAISED THIS ISSUE IN FIRST HABEAUS

NOW THIS ONE IS TO RE Resubmit it

And FIX it.

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

7. Briefly describe the relief requested:

TO BE APPOINTED ASSISTANCE FOR
Public difencte post convction division
to assist ME TO Get AN Evidentary
Hearing to prove the Allegations are Tru

8. State the nature of the court proceeding resulting in the confinement (i.e., *criminal prosecution, civil commitment,* etc.), including:

(a) case name:

D - 0905 - CR - 2007 - 00434 IM NOT SURE

(b) docket number:

D - 0905 - CR. 2007 - 00434 Dont KNOW

(c) name of judge:

Teddy. L. HARTLEY

(d) name and location of the court in which the proceeding was held.

700. N. MainST
9th Judicial district Court

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

9. State the date of the final judgment, order or decree for confinement.

JANUARY 8th 2014.

10. Attach a copy of the judgment, order or decree. If not, describe your sentence.

Life eligibility After 30yrs plus. two 3yrs two tempering with evidence, 1st degree Murded 2 tempering evidence

11. Was the conviction the result of:

___ Guilty plea

___ No Contest plea (nolo contendere)

✓ Finding of guilty by judge or jury

12. Was the confined person represented by an attorney during the proceedings resulting in the confinement?

✓ Yes

_____ No

13 If you answered "yes" to (12), list the name and address of each attorney who represented the confined person:

JESSE, P. COSBY

P.O. Box 3330

14 Did you appeal your conviction?

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

✓ Yes (Go to 15)

___ No (Go to 16)

15. If you answered "yes" to (14), list:

(a) The name of each court to which an appeal was taken:

9th judicial district court.

New Mexico Supreme court of appeals.

(b) The case name and docket number for each appeal:

(Don't know How to do this.)

(c) The date each appeal was filed and decided: (Attach a copy of each opinion or order)

Filed Sometime Around August 2013.

Dec 1st 2016.

(d) A summary of the grounds upon which each appeal was based.

Competency Revalichons, Ineffective assistance

of cowsel, Improper comments on Silence, prosecutor

misconduct, Prior bad acts. Speedy

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

6

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

(e) The result of each appeal:

denied.

(f) The name and address of the attorney on appeal:

STEVEN J. FORSBERG

505. marquette N.W 87102

505.796.4405

16. If you answered "no" to (14), state the reasons for not appealing:

17. Apart from any appeals listed in (15), have any other post conviction applications, petitions or motions, been filed with regard to this same imprisonment or restraint?

✓ Yes (Go to 18)

___ No (Go to 19)

18. If you answered "yes" to (15), list with respect to each such petition or motion:

(a) The type of proceeding. petition Habeas, civied But I se put new motion to Recon's, ore, evidence, pev, sed. petition.

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

Petition Habieas    But This one is to
Resubmitte it to try to do it propelly

(b) The name and date of each case:

AM Judicial district court, State of v. Mex. U Asst
Service

(c) the docket number:

NOD - 090 S - CR - 2007 - 00434

(d) the court, the administrative agency, or institutional grievance committee from which relief was sought:

NA

(e) the result of each proceeding. (*Attach a copy of each decision.*)

denied,

(f) The issues raised in each proceeding:

inefFective assistence of cousel,

(g) State whether a hearing was held in connection with each of these proceedings:

NO

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

(h) State whether the confined person was represented by an attorney in each proceeding and, if so, the attorney's name and address:

NO

19. Do you seek the appointment of counsel to represent you?"

✓ Yes

___ No

### VERIFICATION

STATE OF NEW MEXICO

COUNTY OF ____ SANTA FE

I, the undersigned, being first duly sworn upon my oath, state that I am the petitioner in this action. I have read the foregoing petition and know and understand its contents, and the information contained herein is true and correct to the best of my knowledge, information and belief. On _____, ___ (date), I deposited this petition in the internal mail system of the institution in which I am confined, properly addressed with any necessary postage prepaid, for forwarding to the district court at the following address:

____ Court (name of court)
87101
____ (city), New Mexico, ___ (zip code)

( Signature ) AIBERT JOSE RAMIREZ

( Address ) P.O. BOX. 1059 SANTE FE 87501

PNM No., if applicable

WestlawNext © 2015 Thomson Reuters. No claim to original U S Government Works

Notorizey please

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

SUBSCRIBED AND SWORN TO before me this _l2_day of _June 20__ by

(Name of petitioner)

ALBERTO RAMIREZ

Notary Public

My Commission Expires: 4/23/2019

## CERTIFICATE OF SERVICE

I hereby certify that true copies of the foregoing petition were served upon the respondent and the district attorney in the county in which the petition is filed by mail (describe manner of service), this 15 day of June 7.17

Signature of petitioner ALBERTO RAMIREZ

USE NOTE

Credits

[Adopted effective Aug. 1, 1989  Amended effective May 6, 2009; Dec. 31, 2014.]

Footnotes

1

After this petition is reviewed by the Court, the Court will enter the order granting or denying the writ or ordering a response before further action. The order shall be prepared by the Court.

2

Petitioners who are incarcerated at the time of filing the petition need not file a motion for free process and may file the petition without payment of the applicable filing fee. See Rule 5-802(D)(2) NMRA.

NMRA, Form 9-701, NM R CR Form 9-701
State court rules are current with amendments received through July 1, 2015.

FORM 9-701, PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

End of Document

© 2015 Thomson Reuters. No claim to original U.S. Government Works

THE WAY TO USE THE EXIBITS with the ISSUES I claim + present. Just GO TO page and OR Exibit or Both. I am NOT A lawyer, I had NO more paper to make it Nice + NEAT. I had to Send it Out asap. + copies+ ALL. IM Being Ignored by law library IN PRISON.

PLEASE. EXCUSE MY MISTAKES. I Tried MY BEST.

Facts + transitty, r
discovery, to prove claim of counsel
INEFFECTIVENESS counsel
See Exibit 4,5

MR. COSBY COUNSEL trial DENIED
and failed to provide effective
ASSISTANCE.

A WEEK BEFORE TRIAL
I ASK TO FIRE My ATTORNEY
DURING TRIAL IN COURT I
FIRED MY ATTORNEY. EACH TIME
there NO INQUIRE INTO Why
I was Expressino dissatifaction
I WAS Told twice by MR
COSBY BEFORE TRIAL StArted
and After I TRIED to FIRE
him IN COURT DURING trial
COSBY Stated - I AM A little
Stupial Bitch and made
threats, by SAYING I Hope
you GET life, I already told
you to tAke the plur or you
WON't be provided EFFECTIVE
assistance OF COUNSEL.
I WAS NOt able to put the
allegations on Record.
But SEE Exibit's (1) page 1,2,3,4,5
(10) page 38-47

See EXIBIT
page 47 page 53, 54 55, 55.54 (page 2)
EXIBIT 13

I TRIED to address court My lawyer was
NOT Filing Any of my motions I Asked him
to. Change of venue, Even though there
was pre-trial publicity concerning the
case in small community of cbus, New
Mexico. Some of this publicity inaccuratly
described Mr remirez as having attacked
alleged victim on prior occassions, THe
publicity was in accurate and highly
prejudicial And defense cowsel should
hove at least raised the issue and
reausted a Hearing - SEE Exsit
EXBIT 3

Counsel Should hove at least Fixed a
Motion to suppress Evidence tunt 7 SE/11
was illegally Siezed + inadmissible EXIBT
page
and highly prejudicial SEE EXBIT 11 48,
or requested A Hearing on this Issue 49, 50

COUNSEL did NOT provide Me with All
discovery, would NOT discuss WHO
He Was planning to Call as Witnesses
And would Not discuss intent to see
present the defense OF INSANITY page
COUNSEL did NOT File a Notice 3,4
OF INtENt to present the defense
EXIBIT 1) page - 1, 2, 3, 4.5

page 3

Exibit 1, 3, 10 page 4, 10, 12, 13
page 47

Insanity, But Instead of adovcating
Zealously on BEHALF OF I Mr remirez
defense, Counsel Informed the
Court that HE would not be presenting
Expert psychatrist, or physician,
Because Mr. Ramirez wont discuss
the case with him and is unable
to assist in the defense.
Counsel Failed to alert the court
to important facts in arguing
the case. MR Ramirez was
Injured In an accident in 2007
which he began taking anti-
deperesant medication, & other
medications, this became severe
depression as he was unable
to walk, work, or drive, could
only walk with cructches, suffered
From psychosomatic delusions,
Hollucinotious, and counsel did not
presel evidero of the medication
Mr ramirez was xaking.
Ml Ramirez felt his lawyer was
againts him, see page 4, 10,12,13
Exibit 1, 3,

P. 4

SEE EXISIT 1, page (-), page 4, page 4
Exisit 10, page 4

COUNSEL Failed to File any
WITNESS list whatsoever in
Support of MR Ramirez's defense
OF INSANITY and lack of Capacity

SX-1,

ME Ramirez had several witnesses
He wished to present in support of
his defense, Including his Aunt,
Sister, Brothers, Friends, and
doctors who Treated him after
accidsnt.

exisit. page—

COUNSEL faild to Shoo courts Jennifer said went
I wose to cooperative I
MR. Remirez asserts that he DWESS lied said resulonts
recived ineffective assistance of liars
Counsel for various reasons that
are unfor trworthy, Not on
Record, because those mattus
were Not preserved in the record.

SX1

MR. Ramirez Request was that the
court grant him an attorney to
assist him in Nobeas proceedings
and to Hold an Evidentiary
HEARING. Onineffectuve of
Counsel.

Page 5

EXIBIT 1. 2:12 05
PM
⊗ ↓ 10/10/2013

AFTER I FIRED COUNSEL IN trial
COUNSEL VERBALLY ASSAULTED ME I
advised counsel. I did FALL down
IN Front OF Jury Because OF
The Shacllles ON my leg tied to
The table, WHEN I was told AU
rise, Shuriff called ME to door
I FELL, Jury SAW my shaclle,
while my lawyer went to talk to the
Judge The Judge, The Sherriff
docerty threatned ME and told
Me to say I did not FALL.
I was asked by Judge did you
Fall. I Said yes then no
Because Sherriff was gesturing
Me to say No. ONly d.A
nould SEE. She was shachng
Head 1 Finger and moving No.
I told my lawyer this And
ask him ⊗ why dont he say
it to the court.
He said No I Alreody Made
up my mind.

page 6

Exist 1 page 1-5

Counsel failed to Alert the court that
Todd him I did Fall, July saw
my shercules, Sherrif docelty
Manipulated me to say no. Channel
(To Go against Myself) Ask docethy. Seene!
Counsel Failed to call, dr Finn,
dr. Burkess, dr. Maxione swares
who I advised I had been
sexually abused my moms
big Friend, + Nsibor Sam Saiz
SEE Ex.8.+,24, 5 pages 6,7,8,17,13
                              17,18-27

Counsel failed to call witness, Pricilla
lopez, ricky Toromillo, to help prove
I was the one being chased in
yard. to help prove my testimony
+ truthfull,

                SEE Ex.8.+ 7,8,10

Counsel failed to investigate family
History of mental illness, God
Family witnesses to difuse of
Insanity, 4. S.
I would "I try to call him and
write to talk he ignored me or was
to busy. to. see Ex.8.+ 4,5,7,
                  page 18 to 24+ 27+30,47

SEE
                                    See page 7
              Exb.t 2                page17 of
                        Ex.8 + 4. 5   19
                                    EX.B.t page 25

Counsel Failed to keep promises
made, OF Big able to testify.
About Sexual Abuse and that he
would File motions I asked him.
to File
                                    page 47
          SEE Exibit 4, 5, 10
                    1, 1A

Counsel Failed to call my Father & Brother
who would testify Eladio Robledo
was Violent and had assaulted me
and them IN past.
My father and Brother are willing
to testify to this at Hearing.

Counsel Failed to call dr maxie
Swatts as witness who would
testify as to my Insanity defense
and sexual abuse and Incompatency
      See ex. B1+ 9, 10
      page 39 to 43 + 47
Counsel Failed to present any

defense at trial.
[struck through text]
Counsel Failed to give me advice when
I asked over I was drunk when I killed
Mustie dad. do I tell that do not He adent
                                    PEOPLE

page 8

page 8

COUNSEL Failed to GET MEDICAL
RECORDS to SHOW I WAS
on Crutches, UNAble to work or walk,

COUNSEL Failed to advise me of
The Plea did Not Explain the
Maximum & Minimum time
I was Facing Even Though I
Tried to ask, (SEE page 4) 3,6)

COUNSEL Failed to Be respectfull
Ord responsible or Full Fill his
duty of loyalty and advocate
to me his Client.

COUNSEl Failed to Argue I was
The one Being Chased by Robierdo
That I was 100 pounds and Robierdo
175 pounds, Not 145 as medical
Examiner said, page - 7-10
          SEE Exibits 2,

COUNSEl Failed to Alert court
I was hearing voices during trial.
      SEE Ex. Bit, 1,1A, 4, 5, 6

page 1 through 5 page 11

Exibit 1.

Counsel Failed to communicate
Back with Mr. Ramirez, Evan
though Mr. Ramirez tried
to no avail.

Mr Ramirez recieved Ineffective
assistance of counsel and dwed
his constitutional Rights to
effective assistance of counsel.

I Mr. ramirez ask the court
to appoint attorney to assist
with henious process.

Mr ramirez ask for an Evidentary
Hearing to devolpe the record
Nessary To prove allegations
- a dispostion Hearing Also. -
Also attached witness Statement by
my Brother Joe Ramirez who spoke
To Me cosBy and Told Me
to File my attorney.

Sincerly
A.Bsst.
RamirZ

PAGE
12

THE EXIBITS'S
ARE ONLY lABEIEd
1 to 13 and pages 1-56
I did NOt lable
1A, 1B, 1C, NO.
ONly, 1 to 13.
They are all relevANt
to Certain facts
+ allegations to
Support my ClAIM
OF. Ineffectue assistance
OF Consel triAL +
appilate attorNey.

I ask the courts
all them to Not
dismiss my ~~case~~ ~~petf~~
Habeaus Because
Im pro se, Please appoint
Me on attorney or grant
on Evidutary hearing, or
Prelimanary Hearing let me
prove my Claim I
Need A Chance.

I do have A witness my
brother who can testify
to the threats made by
Mr Cosby. Cosby told my
brother to tell me to plea
my Brother knows of the threats

COUNSEl did advice me to take
PlcA But would NOT EXPlAiN
What the PlcA WAS.

AlSO COUNSEl did NOt tell
ME the Maximum time
I was FACING
I did Not KNOW.
I Thought the most
I could get was
15yes.
I did Not KNOW
Mr. COSBy would Not
answer any of my questions
or Explain anything to me.

He was disrespectfull,
MEAN, Rude, unprofessional
and did Not Provide
effactive assistance.

COUNSEl would Not call all witness
or file motions, change venue,
for private investigator, New
compeltuy Evaluation, - See Ex. 5 + 16

Page: ____



If not for this consists
of ineffective assistance of
counsels Mr. Ponce would of
had a stronger case going
into trial. Mr. Ponce
was prejudiced by counsel
lack of effective assistance
Please I would pro se for
had I f... Attorney and
would of went to 1302 trial
counsel failed to provide
effective assistance.
This was direct ...

THIS IS TO HELP PROPERLY PRESENT PETITION FOR HABEAUS. THE FACTS IN RECORD AND OFF RECORD. THE CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL AND INEFFECTIVE ASSISTANCE OF APPEALING COUNSEL.

I AM TRYING TO SHOW I SHOULD BE GIVING AN OPPURTUNITY TO SHOW and PROVE MY CLAIM + ALLEGATIONS and TO RECIEVE ASSISTANCE FROM PUBLIC DEFENDER OFFICE. ON POST CONVICTION ASSISTANCE.

PLEASE and THANK YOU SO MUCH FOR YOUR TIME HELP KINDNESS God BLESS

IF counsel had effectivly
represented MR Ramirz. I+IS
likely that I would of had
a Stronger case going into trial
and this would have affected MR
ramirz's decision to enter into
a plea. MR Ramirz complained on
more than one Occasion to The
Judge about his Frustration with
difense counsel. MR. RAMIREZ
was denied effective assistance
of counsel.

I ask for an attorsy to
Help. Evidentary Hearing,

I ask to Resubmit My
habeaus petition this one
to Send to Supreme court.
Please Ord Thanke you For
your Tim God Bless

PO Box A18640
1059            Ramrz
Sanla fe nm 87504  69597

EX, B14

page 1

ST. VS ALBERT RAMIREZ CR-07-434                                    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 1:58:18 PM | CHANDLER | RXEX - DO YOU UNDERSTAND THE WORD PREMEDITATE, FIRST TIME YOU SHOT ELADIO WAS IN THE GARAGE, YOU PLANNED ON KILLING HIM IN THE GARAGE |
| 1:59:03 PM | COSBY | RDEX - FURTHER COMMENTS |
| 1:59:45 PM | | #2 WITNESS JOSE RAMIREZ JR. CALLED BY D / SWORN / DEX |
| 2:01:11 PM | | HOW OLD WERE YOU WHEN MR. ROBLEDO CAME INTO THE PICTURE |
| 2:01:52 PM | | DID YOU EVER BECOME AWARE OF HIM NOT LIVING IN THE HOUSE, HE CAME TO LIVE WITH ME FOR ABOUT 3 TO 4 MONTHS |
| 2:02:33 PM | | I ASKED HIM TO LEAVE AT THE END, I WAS ASKING HIM TO GO TO SCHOOL AND HE WOULD NOT FOLLOW RULES. |
| 2:03:05 PM | | DID HE HAVE ANY PROBLEMS WITH ELADIO ROBLEDO |
| 2:03:46 PM | | HE DID NOT HAVE ANY HATRED TOWARD'S HIM |
| 2:04:34 PM | | HOW YOU BECAME AWARE OF THE PROBLEM |
| 2:04:52 PM | | BENCH CONFERENCE |
| 2:06:33 PM | COSBY | WERE YOU AWARE OF ISSUES BETWEEN YOUR BROTHER AND SOME OTHER PEOPLE |
| 2:07:37 PM | | REMOVE DFT FROM COURTROOM |
| 2:07:49 PM | | JURY EXCUSED FROM COURTROOM |
| 2:08:47 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY |
| 2:08:56 PM | | THE COURT HAS ORDERED THE DFT TO THE OTHER ROOM TILL WE FIGURE OUT WHAT TO DO |
| 2:09:11 PM | CHANDLER | THERE IS CASE LAW IN NM READS IN TO RECORD |
| 2:10:59 PM | | HAVE A COPY OF CASE , ASKS COURT TO BRING HIM IN HERE AND GIVE HIM A STERN WARNING, IT WOULD BE THE STATES PREFERENCE TO REMAIN IN THE COURTROOM |
| 2:11:42 PM | COURT | WANTS TO SAY THIS ON THE RECORD MR. COSBY IS REPRESENTING THIS DFT AND IT IS DIFFICULT TO WORK WITH |
| 2:12:05 PM | COSBY | AT THIS JUNCTURE BY HIS OWN CONDUCT, HE HAS NOT FORTH TO THE JURY THAT I AM NOT REPRESENTING HIM , I KNOW THAT HE CREATED THE SITUATION, EVEN THOUGH THE COURT HAS ADMONISHED, THE FACT REMAINS HE HAS FIRED ME IN OPEN COURT, IF WE WANTS TO FIRE ME THAT IS HIS PEROGATIVE, IF THAT IS HIS DESIRE HE CAN GO FORWARD REPRESENTING HIMSELF ETC. |
| 2:14:07 PM | | IT IS HIS RIGHT TO REPRESENT HIMSELF, IF THAT IS HIS DESIRE AND HE WANTS TO REPRESENT HIMSELF |

EX, B14

10/10/2013

why

EVIBIT # 10   page 8

ST. VS ALBERT RAMIREZ  CR-07-434                    COURTROOM ONE  2

| Time | Speaker | Note |
|------|---------|------|
| 9.57.26 AM | CHANDLER | CLOSING ARGUMENT |
| 10 10 27 AM | CHANDLER | CONTINUES CLOSING ARGUMENT |
| 10.45.29 AM | | CONTINUES CLOSING ARGUMENT |
| 10.46.27 AM | COSBY | CLOSING ARGUMENT |
| 10 58 56 AM | | CONTINUES CLOSING ARGUMENT |
| 11:30 00 AM | CHANDLER | BRIEF REBUTTAL |
| 11.39.18 AM | | CONTINUES BRIEF REBUTTAL |
| 11 40 01 AM | COURT | READS INSTRUCTION 10 BEFORE DELIBERATION IS BEGUN |
| 11 41 14 AM | COURT | ANNOUNCES ALTERNATES |
| 11.42.36 AM | | JURY EXCUSED TO BEGIN DELIBERATION AND ALTERANTES EXCUSED |
| 11 43 09 AM | DFT | DFT WANTS TO SAY SOMETHING |
| 11.44 05 AM | COURT | YOU CANNOT SAY ANYTHING |
| 11.44.13 AM | OFF RECORD | |
| 3 03 40 PM | | JURY SEATED IN BOX |
| 3:04 08 PM | COURT | READS THE VERDICT GUILTY COUNT 1 1ST DEGREE MURDER |
| 3 04 45 PM | | GUILTY COUNT 2 TAMPERING WITH EVIDENCE |
| 3 04.58 PM | | GUILTY COUNT 3 TAMPERING WITH EVIDENCE |
| 3.05.14 PM | COURT | DFT WISHES TO HAVE THE JURY POLLED, JURY POLLED BY NUMBER |
| 3.06.35 PM | COURT | READS FINAL INSTRUCTION TO JURY BEFORE EXCUSED |
| 3.07 13 PM | | JURY EXCUSED FROM SERVICE |
| 3 07 51 PM | CHANDLER | STATES REQUESTS TO MOVE INTO SENTENCING |
| 3.08 07 PM | COSBY | ASKS FOR A 60 DAY EVALUATION |
| 3 08.21 PM | CHANDLER | THIS SENTENCE IS A LIFE PLUS SIX YEARS |
| 3.09.02 PM | COURT | IT IS MANDATORY TO LIFE |
| 3:09 15 PM | COSBY | HE HAS A RIGHT TO AN ALLUCITION |
| 3 09 40 PM | COURT | WE WILL SENTENCE AFTER PRESENTENCE REPORT |
| 3.09:59 PM | COSBY | REQUESTING A 60 DAY EVALUATION |
| 3 10 16 PM | COURT | ORDER THE PRE SENTENCE REPORT , |
| 3 10.31 PM | RECESS | |

EXIBIT
.6

10/11/2013

TRIED to AlERT COURT OF
CONFlICT OF INterest Between
Cowsel and I and More 3 of 3
Record. I was diviel.

**Patient:** 14154.1 - ALBERTO J. RAMIREZ

**DOB:** 88

**SSN:** 7793

Page 2

**Date:** 04/17/2007 12:15

**Provider:** KIRAN SHARMA MD

**Musculoskeletal system:**

General/bilateral ° Musculoskeletal system, normal

**Knee:**

General/bilateral • Knees showed abnormalities ° No tenderness on palpation of the knee ° No pain was elicited by motion of the knee " Knees demonstrated normal movement ° Knees demonstrated no muscle weakness

Right knee • Examined

Left knee • Examined

**ASSESSMENT**

Bilateral knee pains

**PLAN**

KIRAN SHARMA MD ordered

• Urinalysis and urine drug screen

• CBC

• A comprehensive metabolic panel

• Serum TSH level

• An X-ray of both knees

• Consultation with a physical therapist

Refer to MHR for counselling and furtehr evaluation

trying to call mom to find out more about pts mental health, unable to reach her

**KIRAN SHARMA MD**

**Entered data sealed by: KIRAN SHARMA - LCBS    Date: 04/17/2007 14:36**

**Patient:**   14154.1 - ALBERTO J. RAMIREZ          Page 2
**DOB:**         ▊88
**SSN:**         ▊793

**Date:**      04/24/2007 11:30
**Provider:**  KIRAN  SHARMA MD

Anxiety disorder NOS

**PLAN**
Motrin 600 MG TABS, SIG.tid, Qty 21, Days 7, Refills:0
Lexapro 10 MG TABS, SIG qd, Qty 30, Days.30, Refills.2
Refer to unm orthopaedics
pt has anger issues and is somatising
detailed discussion with brother about pts visits
otc knee brace, pt needs pshychiatric help
refer to MHR, pt is having paranoia


**KIRAN  SHARMA MD**

**Entered data sealed by: KIRAN SHARMA - LCBS    Date: 04/24/2007 11:14**

FV, Sit 7    2/p4e

ST. VS ALBERT RAMIREZ  CR-07-434    COURTROOM ONE

| Time | Speaker | Note |
|---|---|---|
| 3.06.50 PM | | AWARE OF BROTHER BEING PLACED IN FOSTERCARE |
| 3.07.31 PM | | GIVING STATEMENT TO DETECTIVE ON JULY 12TH THE DAY OF SHOOTING |
| 3.08.35 PM | | TOLD MEMBERS OF JURY NEVER SAW HIM ACT OUT, HE WOULD GET UPSET |
| 3.09.22 PM | | DOES NOT REMEMBER WHAT SHE TOLD DETECTIVE, NOW SHE REMEMBERS WHAT SHE TOLD DAVID LOERA |
| 3.11.35 PM | | CONTINUES TO REFER TO STATEMENT SHE MADE |
| 3.12.59 PM | | BENCH CONFERENCE |
| 3:13:50 PM | CHANDLER | CONTINUES TO REFER TO HER STATEMENT |
| 3.14.33 PM | | GO BACK TO THE PHONE CALL , HE WAS MAD AT YOU THE DAY BEFORE THE SHOOTING,"WHAT IS WRONG WITH BEING MAD EVERYBODY GETS UPSET |
| 3.15.09 PM | | I DID NOT KNOW HE WAS TRYING TO GET A GUN |
| 3.16.00 PM | | REFERS TO HER STATEMENT |
| 3.16:06 PM | COSBY | PAGE AND LINE PLEASE |
| 3:16:20 PM | | NO I DID NOT KNOW, EVERYBODY KNEW NOT TO GIVE HIM A GUN |
| 3.16.55 PM | | TRAINING , EDUCATION AND EXPERIENCE |
| 3.17.05 PM | | YOU WANTED TO KNOW WHY HE DID THAT WHEN HE CALLED FROM JAIL, NOBODY WAS THERE WHEN IT HAPPENED |
| 3.18.13 PM | | YOU DO NOT KNOW WHAT HAPPENED AT 512 W 6TH, "I WAS NOT THERE" |
| 3.19.18 PM | | YOU HAVE BEEN TALKING TO HIM EVERY NIGHT |
| 3.19.42 PM | | BENCH CONFERENCE |
| 3.20.41 PM | COSBY | RDEX - ABOUT YOUR STATEMENT ABOUT WHAT YOU ARE SAYING YOU WERE TELLING YOUR BROTHER TO APOLOGIZE TO YOUR MAMA |
| 3.21.58 PM | | NOT SURE WHY HE WAS WEARING CRUTCHES |
| 3.22.30 PM | CHANDLER | SPECULATION OBJECTION |
| 3.22.40 PM | COSBY | RESPONSE ABOUT WHO GAVE HIM THE GUN "HE WAS HAVING ISSUES ABOUT HE THOUGHT SOMEBODY WAS AFTER HIM" |
| 3.24.25 PM | | SHE ALREADY KNEW ABOUT SHOOTING BECAUSE HER MOM CALLED HIM |
| 3.24:37 PM | | SHE BARELY TALKED TO ELADIO, NEVER CLAIMED HIM AS STEP FATHER |
| 3.24.59 PM | CHANDLER | RXEX - YOUR CONCERN WAS ABOUT ALBERT'S STATE OF MIND |
| 3.25.49 PM | COSBY | OBJECTION |

27    10/10/2013

EXib.t 7

140F16
p092 31

ST VS ALBERT RAMIREZ CR-07-434                                    COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 12 56:09 PM | | JURY BEING SEATED IN BOX |
| 12.57.14 PM | | COURT IN SESSION , JURY DFT AND ALL PARTIES PRESENT |
| 12.57.56 PM | CHANDLER | XEX - ABOUT YOUR TIME IN SCHOOL, I DON'T KNOW JUST GOT HELD BACK |
| 12.59.19 PM | | I CANNOT ANSWER IF I DID GOOD IN SCHOOL |
| 12 59 43 PM | | YOUR DAD WOULD PROVIDE YOU $500 A MONTH TO STAY IN SCHOOL, WHEN YOU GET SOCIAL SECURITY, IT IS THE TRUTH IT WAS COMING FROM MY DAD'S MONEY |
| 1 01.03 PM | | YOU HAD A DRIVER'S LICENSE IN 2007, YOU HAD A CELLPHONE, YOU PAID THE CELLPHONE BILL AND YOU HAD A JOB AT MCDONALDS |
| 1:02:25 PM | | ONLY DID CERTAIN THINGS AT MCDONALDS |
| 1.03:05 PM | | YOU SPEAK ENGLISH AND SPANISH , I UNDERSTAND A LITTLE BIT AND CAN SPEAK A LITTLE BIT, I AM AMERICAN |
| 1 04 38 PM | | YOU FIRST MET ELADIO WHEN YOU WERE APPROX 5 OR 6 YEARS OLD |
| 1:05:36 PM | | YOU DIDN'T LIKE ELADIO ROBLEDO "THAT IS AN IMPROPER QUESTION TO ASK" I LIKE EVERYBODY I JUST DON'T LIKE SOME THINGS PEOPLE DO, THAT IS HOW IT IS SUPPOSED TO BE |
| 1 06 12 PM | | ELADIO AND YOUR MOTHER LIVED AT 512 W. 8TH ST, "WHEN" JULY 2007 |
| 1.07.27 PM | | YOU HEARD THAT OFFICER AGUILAR SERVED YOU THE NO TRESPASS ORDER, "YES" |
| 1 07 44 PM | | AFTER RECEIVING THE NO TRESPASS ORDER YOU RETURNED BACK TO THE HOUSE WHERE DEBRA LIVED |
| 1,08 40 PM | | AT ONE TIME YOU BROKE OUT THE FRONT WINDOW OF YOUR MOTHER AND ELADIO'S HOUSE |
| 1 09.40 PM | | ARE YOU AWARE YOUR MOTHER CALLED THE POLICE ABOUT THAT INCIDENT "NOT AWARE, IF SHE DID OR NOT" |
| 1 10 12 PM | | YOU BROKE OUT A CAR WINDSHIELD WITH YOUR CRUTCHES, DID SHE CALL THE COPS ABOUT THAT "YES" |
| 1 10.58 PM | | YOU KNOW WHERE GROSSHAIR GUN SHOP IS IN CLOVIS "YES" |
| 1:11:15 PM | | YOU WENT IN THERE AND DEMANDING A GUN |
| 1.11 42 PM | | YOU WANTED A REVOLVER "I JUST ASKED FOR GUN" |
| 1 12.27 PM | | YOU FILLED OUT PAPERWORK TO PURCHASE GUN |
| 1:12.46 PM | | YOU DROVE A CAR TO GUN SHOP |
| 1.13.42 PM | | YOU WERE TRYING TO GET THINGS RIGHT |

10/10/2013                    EXIBIT 7                    7 of 16

Exisit 8                    page 33

1  its discretion in denying a mistrial.

2  **D.      Defendant was not prejudiced by the jury seeing his leg restraints**

3  {39}      Defendant's fourth issue is that he was prejudiced when the jury saw his leg

4  restraints when he stumbled as he stood up at one point during the first day of trial.

5  However, he concedes that he did not ask the court to make a finding of prejudice or

6  declare a mistrial and asks this Court to review the possibility that the jury saw his leg

7  restraints for fundamental error. The State argues that the factual record does not

8  support Defendant's contention that the jury saw him shackled because all the parties

9  agreed that the table skirt blocked the jury's view.

10 {40}      "To preserve a question for review it must appear that a ruling or decision by

11 the district court was fairly invoked." Rule 12-216(A) NMRA. When the claim is not

12 properly preserved, we consider the claim under the fundamental error exception to

13 the preservation rule. *See State v. Holly*, 2009-NMSC-004, ¶¶ 40-42, 145 N.M. 513,

14 201 P.3d 844 (reviewing defendant's claim that a juror may have seen defendant

15 handcuffed for fundamental error because the defendant did not request a mistrial, did

16 not ask the trial court to strike the juror, or seek a finding of prejudice), *State v. Silva*,

17 2008-NMSC-051, ¶ 11, 144 N.M. 815, 192 P.3d 1192 (citing Rule 12-216(B)(2)

18 NMRA).

21



Exisit 8                    page 33

for his expert's presence if sur-rebuttal was allowed. [Supp. CD, 3:55:15 to

3:56:35, 4:02:23 to 4:02:35, 4:08:18 to 4:08:53]

Shortly thereafter, based on the defense's agreement not to pursue jury

instructions or argue competency, insanity or the inability to form specific intent

[*See* Supp. CD, 3:51:56 to 3:52:00], the prosecution announced it was forgoing

presentation of a rebuttal case and releasing its expert witnesses. [CD 10-10-13,

4:34:39 to 4:36:02] When Defendant objected to Mr. Cosby's strategy, the trial

court assured Defendant he was being well-represented and explained it would not

have approved Mr. Cosby's jury instruction decisions if doing so would deny

Defendant a fair trial. [CD 10-10-13, 4:36:02 to 4:39:12] Defendant persisted Dr.

Schwartz's testimony was essential to his having a fair trial and to his appeal. [CD

10-10-13, 4:41:38 to 4:42:15]

The trial court instructed the jury on first-degree murder, second-degree

murder and, over the prosecution's objection, voluntary manslaughter. [CD 10-11-

13, 9:01:50 to 9:03:07; *see* RP 663; RP 664; RP 665-66]

### IV.    Disposition Below

The jury deliberated approximately three hours before returning verdicts

finding Defendant guilty of first-degree murder, and the two counts of tampering

with evidence. [CD 10-11-13, 11:45:13 to 3:06:20]

Exisitg

ST. VS ALBERT RAMIREZ CR-07-434                                    CR1 CHAMBERS

| Time | Speaker | Note |
|---|---|---|
| 10:40.24 AM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY DFT AND ALL PARTIES PRESENT |
| 10.40:41 AM | COSBY | HAS ONE OTHER ISSUE, MY CLIENT HAS TOLD ME THAT HE WAS SEXUALLY ASSAULTED ETC. |
| 10.42.10 AM | | HE WANTS TO TESTIFY THAT MR. ROBLEDO AS WELL AS MR. SAIZ SEXUALLY ASSAULTED HIM |
| 10:42 26 AM | CHANDLER | THERE IS NOTHING THAT SUPPORTS THAT PARTICULAR CLAIM, IT HAS NEVER BEEN REPORTED, WHEN DID THE HAPPENED, IT IS THE TIMELINE, |
| 10 43 36 AM | COSBY | UPON ON HIS FIRST STATEMENT, WHEN MY CLIENT FIRST WENT TO HIS HOUSE MY CLIENT TOLD HIM HE HAD BEEN SEXUALLY ASSAULTED, |
| 10.44.17 AM | COURT | HERE IS THE PROBLEM WE RUN INTO, THE KIND OF THE TIMING, THE COURT IS OF THE OPINION THAT I WILL NOT ALLOW IT, THRE WAS NOTHING TO SUGGEST THAT IN HIS OPENING STATEMENT, IF THE STATE IS OF THE OPINION THAT WE CREATE AN ERROR BY EXCLUDING THIS, I WILL RULE AGAINST IT |
| 10.45.42 AM | DFT | ABOUT THIS MATTER, THE REASON I DID NOT SAY ANYTHING IN MY OPENING STATEMENT |
| 10 46.16 AM | COURT | YOUR ATTORNEY MR. COSBY IS DOING AN EXCELLENT JOB, I HAVE LET YOU TALK, THE PART I AM GOING TO RESTICT THAT WE ARE NOT GOING TO GO INTO THIS AREA |
| 10.47 12 AM | DFT | I DID NOT GET ASKED ABOUT BROKEN WINDOW, THIS IS MY LIFE, I FEEL LIKE I AM NOT HAVING A FAIR TRIAL, IF I DID NOT GET ASKED A QUESTION ABOUT SEXUAL ASSAULT |
| 10 48.25 AM | DFT | I LET MAXINE SWARTZ THAT I WAS SEXUALLY ASSAULTED, ETC |
| 10.49 11 AM | | I TRIED TO EXPLAIN TO DR. FINK, IT IS NOT FAIR I THINK IT IS RELEVENT |
| 10.49.47 AM | COSBY | THERE IS RECORD THAT HE DISCUSSED WITH PSYCOLOGIST OF SEXUAL ASSAULT, THERE IS NO EVIDENCE BEFORE THE HOMICIDE |
| 10 51:54 AM | COURT | WILL GIVE YOU FIVE MINUTES |
| 10.52.21 AM | DFT | WHEN MR. COSBY STATED THAT I WAS MELINGERING, AND PSYCHOLOGIST BELIEVED ME, ABOUT FOSTER CARE I WAS EMBARRASED MY MOTHER KNEW, EXPLAINS WHAT HAPPENED WITH ELADIO |
| 10.54 59 AM | | REGARDING SAM SAIZ HE USED TO GO OVER THERE WHEN HE WAS IN JUNIOR HIGH, ETC |
| 10.56 18 AM | COURT | I'VE GOT YOUR STORY, AFTER HEARING THE STORY IT IS NOT RELEVENT |

10/10/2013          EXIBIT    9                              2015
                    SEX ABUSE                                page 35

$Gx_18i+ 9$

Ppck

## II.   Defendant has not satisfied the requirements for consideration of a claim of ineffective assistance of counsel on direct appeal.

The facts contained in the record oif Defendant's case do not establish a prima facie case of ineffective assistance of counsel warranting remand of Defendant's case for an evidentiary hearing. *State v. Crocco*, 2014-NMSC-016, ¶ 14. If Defendant wishes to pursue his claim of ineffective assistance of counsel, he should consider pursuing a habeas corpus proceeding. *See id* ¶ 13; *see* Rule 5-802 NMRA.

When analyzing a claim of ineffective assistance, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). This Court measures a claim of ineffective assistance of counsel against *Strickland's* two-part test, which requires a defendant to show first that counsel's performance "fell below that of a reasonably competent attorney" and then that he suffered prejudice because of the deficient performance. *State v. Ortega*, 2014-NMSC-017, ¶ 55.

A counsel's performance is not deficient where "a plausible, rational strategy or tactic" could explain counsel's conduct. *Id.* To show prejudice a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*



33   $\xi x \cdot 5i + 8, 9$   $page 36$

$4 \times 19.4$ ⁹

$3$ place.

That afternoon, to demonstrate his lack of competency, Defendant described a litany of psychological ailments [CD 10-9-13, 1:37:36 to 1:38:55], and claimed he was unable to understand the proceedings. [CD 10-9-13, 1:43:46 to 1:44:11] Later, notwithstanding Mr. Cosby's expressed concern about Defendant's lack of cooperation, Defendant made statements evincing an understanding of the implications of testifying and of the jury's role in weighing the evidence. [CD 10-9-13, 2:41:00 to 2:43:54] He pointedly reminded the trial court that during his previous trial he cried hysterically and told the court he could not function properly when hysterical. [CD 10-9-13, 2:44:45 to 2:45:18]

The next day, Defendant demonstrated his continuing understanding of the process, including the value of the appellate record, by forcing creation of a record regarding Mr. Cosby's decisions about the witnesses who would testify, and by making a statement about how he had not been properly evaluated and represented, the trial court's disregard for his outwardly irrational behavior and the trial court's failure to consider how the jury might be affected by media coverage of his trial. [See, e.g., CD 10-10-13, 9:21:02 to 9:22:38, 9:23:18 to 9:25:59] Significantly, although Defendant was complaining he could not understand when people communicated with him, he recognized the court's authority by thanking it for allowing him to speak. [CD 10-10-13, 9:22:35 to 9:22:42] He telegraphed a clear understanding of the significance of the proceedings by saying he was fighting for



$30 \, \xi \, x \cdot B \, 1 \perp \, ⊞ \, 9$   page 37

EXHIBIT 4

told the court that he had been offered a plea of guilty but mentally ill. He stated "Which I was very confused of the charges I have in the first, they said it's... I have no clue what those are for or what they're about, I have no clue about the first three I just know the words, the names and the guilty but mentally I have no idea what it's about or nothing he tried to explain but like I said when they communicate it's hard for me to understand and it takes me a long time I'll read it over but also that, ..." Mr. Ramirez paused for a breath and then continued in a run-on fashion that he was told that doctors were going to be called to testify against him and that he was never notified and he was unable to call Dr. Maxann Shwartz in his defense. He also complained that he was unable to get a private investigator to call "plenty of witnesses" which affected his defense.

He also stated that he was a paranoid schizophrenic with paranoid delusions and hallucinations and never got sent for a ninety-day evaluation and was only evaluated for an hour or two, and "that's an improper evaluation in my opinion and I feel like I've been treated unfairly." Mr. Ramirez stated that "there was plenty of media this whole week" that the jury probably heard and "everybody's asking me all kinds of questions and I just say I don't know what's going on because I have no way to see newspapers or radio or anything..." Mr. Ramirez continued,

EXBIT 86

page 38

$\xi \times \beta_1 + 10$     $3\frac{9}{2}ext$

1 observations and opinions alone cannot trigger reasonable doubt about the defendant's
2 competency.").

3 {25} Here, defense counsel merely stated his beliefs that Defendant was not capable
4 of assisting in his own defense and that Defendant did not have the capacity to
5 determine whether or not to testify. In response, throughout the trial, the judge did
6 everything within his power, under the rules, to address the Defendant's concerns with
7 his physical condition and his inability to understand the proceedings, allowing a
8 nurse to examine him during the trial and consistently explaining to the Defendant
9 what was happening. Accordingly, the district court did not abuse its discretion in
10 denying Defendant's request for a forensic evaluation during trial because relying
11 only upon his own observations, defense counsel failed to substantiate his assertions.
12 {26} Further, had the district court found reasonable doubt as to Defendant's
13 competency to stand trial, Defendant would not have been entitled to a competency
14 evaluation after the commencement of trial. Once the jury is sworn, the Defendant's
15 only recourse is to request a jury instruction on the issue of competency. *See* Rule 5-
16 602(B)(2)(b). Defendant failed to preserve this issue by not submitting an instruction
17 on competency to the court or objecting to the instructions as offered. *See State v*
18 *Lujan*, 1975-NMSC-017, ¶¶ 8-9, 87 N.M. 400, 534 P.2d 1112 ("Defendant did not

14

 $\xi \times 13^1 + 10$     $page\ 35$

forestall testimony by one of the prosecution's expert witnesses (who was present in the courtroom during Mr. Ramirez's testimony). This may have been because the defense did not have any other expert witnesses at trial to testify. Not having expected that Mr. Ramirez's competency to stand trial would arise and having already foregone any defenses that would require expert testimony, defense counsel was simply attempting to keep the state from putting its witness on the stand for rebuttal. [RP 657-58. **The proceedings are summarized in the tape logs, but were in chambers and not included on the audio CD in the record proper]**

Mr. Ramirez also asserts that his counsel failed to call many witnesses he wished to have called, and also that he made promises to Mr. Ramirez if he testified that were not kept. These issues, however, are not reflected in the record. Matters not of record cannot be reviewed on appeal. *See State v. Martin*, 1984-NMSC-077, ¶ 28, 101 N.M. 595.

C.    There was improper commentary on Mr. Ramirez's right to silence

This argument is made pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127 and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655. The review of a district court's denial of a mistrial is for an abuse of discretion. *State v. O'Neal*, 2008-NMCA-022, ¶ 28, 143 N.M. 437. The legal question





38

Σ x ، S ، x      ιο

41 page

1   (citation omitted). "Generally, only an evidentiary hearing can provide a court with

2   sufficient information to make an informed determination about the effectiveness of

3   counsel." *Id.*; *see also State v. Baca*, 1997-NMSC-059, ¶ 25, 124 N.M. 333, 950 P.2d

4   776 ("A record on appeal that provides a basis for remanding to the trial court for an

5   evidentiary hearing on ineffective assistance of counsel is rare. Ordinarily, such

6   claims are heard on petition for writ of habeas corpus . . . ."); *State v. Telles*, 1999-

7   NMCA-013, ¶ 25, 126 N.M. 593, 973 P.2d 845 (stating that the "proper avenue of

8   relief [from ineffective assistance of counsel] is a post-conviction proceeding that can

9   develop a proper record").

10  {32}    Though the district court repeatedly observed that defense counsel was

11  providing excellent representation to Defendant, the court did not hold an evidentiary

12  hearing. Therefore, the record before us is insufficient to establish that defense

13  counsel was ineffective or that the decisions made were a plausible trial tactic or

14  strategy. Accordingly, we reject this claim without prejudice to Defendant's ability

15  to bring such a claim via habeas corpus proceedings.

16  **C.     The district court did not abuse its discretion denying a mistrial based on**
17  **        Deputy Loomis' commentary on Defendant's silence**

18  {33}    Defendant's third issue is that the court erred in denying his motion for a

19  mistrial based on an alleged improper comment about Defendant's silence after he had

17

 Exhibit 10

page 41

EXIBIT 1 - PWY-41

ST VS ALBERT RAMIREZ CR-07-434                              CR1 CHAMBERS

| Time | Speaker | Note |
|------|---------|------|
| 3:54:07 PM | CHANDLER | GOING TO ASK FOR A RULING FROM THIS COURT IF DEFENSE IS GOING TO ALLOW SUR REBUTTAL |
| 3:54:50 PM | COURT | YOU TAKE POSITION THAT HE IS PRECLUDED, THE COURT HAS LEE WAY |
| 3:55:42 PM | COSBY | YOU ARE CALLING THEM ON REBUTTAL |
| 3:56:04 PM | COURT | I DO NEED TO REMIND EVERYBODY THAT I EXCEPT PLEAS |
| 3:56:17 PM | MORRIS | RESPONDS |
| 3:56:36 PM | COSBY | THERE HAS BEEN NO DISCLOSURE, IF THEY CALL I WILL CALL MS SWARTZ ON SIR REBUTTAL, LAST FINDING I HAD HE WAS COMPETENT, I AM WITHDRAWING COMPETENCY, AND IF 1 |
| 3:58:39 PM | COSBY | HE NEVER EXPRESSED ANY HATRED TO PLAN A MURDER |
| 3:59:02 PM | CHANDLER | IF WE CALL OUR EXPERTS |
| 3:59:11 PM | COURT | IT IS A MATTER OF JUSTICE |
| 3:59:32 PM | COURT | WE ARE NOT IN THE KIND OF SITUATION WHERE YOU HAVE A SURPRISE |
| 3:59:55 PM | CHANDLER | WE DID NOT DROP IT JUST NOW, |
| 4:00:09 PM | COURT | THOSE REPORTS ARE AGED |
| 4:01:04 PM | CHANDLER | WHAT HE IS DOING TODAY |
| 4:01:23 PM | COSBY | WILL WITHDRAW COMPETENCY AND GUILTY BUT MENTALLY ILL |
| 4:02:03 PM | CHANDLER | HE CAN WITHDRAW BUT HIS ARGUEMTN HIS CLIENT IS SEEING THINGS AND HEARING THINGS |
| 4:02:25 PM | COURT | IF WE TAKE THIS TESTIMONY AND TAKE WILL TAKE |
| 4:03:14 PM | COSBY | MOTION AS FAR AS THE TWO COUNTS AND DOUBLE JEOPARDY ISSUES, IT WOULD BE A VIOLATION , IT WOULD BE ONE ACT OF TAMPERING WITH EVIDENCE, THE PHONE CALL WAS ATTEMPTING |
| 4:05:00 PM | CHANDLER | THE MOTION THAT MR COSBY MADE |
| 4:05:10 PM | COURT | THERE IS EVIDENCE , THAT THE PANTS AND GUN NOT FOUND WERE PLACED AT A DIFFERENCE PLACE, THE FACT THAT THE BRITCHES WERE FOUND AND NOT THE GUN DENIES THE MOTION |
| 4:05:51 PM | CHANDLER | |
| 4:05:59 PM | MORRIS | WHY DOES HE WANT TO RAISE SIR-REBUTTAL |
| 4:06:31 PM | COSBY | SIR-REBUTTAL IS MATTERS |
| 4:06:50 PM | CHANDLER | HE CHOSE NOT TO CALL WITNESS |
| 4:07:21 PM | COURT | THE RULE AGAINST 90 DAYS, NOT PREPARED RIGHT NOW TO MAKE THE RULE |
| 4:08:21 PM | CHANDLER | ALLOWS US TO PUT ON OUR REBUTTAL |
| 4:06:49 PM | COURT | COMMENTS |

10/10/2013

EXIBIT 10

$G \times 15 + 10$

$U_{p}^{2}dq^{1}$

relates that "for more than two decades, there has been the suggestion that mental health clinicians do not like patients with personality disorders..." and that "[t]hese attitudes may adversely affect delivery of health care provision and as such make it more difficult for patients with personality disorder and comorbid mental disorders to access and receive appropriate management for either disorder." Peter Tyrer, Ruger Mulder, et al, "Personality disorder: a new global perspective," World Psychiatry, Feb. 2010; 9(1):56-60, found online at

http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2816919/ .

The two cases, *Flores* and Mr. Ramirez's, have a parallel structure: The defendant was found incompetent, sent to Las Vegas and hastily treated to competency, then sat in jail (possibly decompensating) for months on end while waiting on a trial date.

In summary, there was substantial evidence that Mr. Ramirez needed to have his competency to stand trial reevaluated. His case more than meets the bar set by *Flores* for a reevaluation. The desire to move his case should not have taken precedence over Mr. Ramirez's need for a reevaluation. The failure to have him reevaluated created a substantial risk that he was tried while incompetent to stand trial, the very risk that raising competency is supposed to ameliorate.

$CX \cdot RIt 10$

page 4

35

Rule 5-602(B)(1) NMRA. Rule 5-602(B)(2)(b) states that if competency to stand trial is raised during trial, the jury "shall be instructed on the issue." In this case no such instruction was proffered or given.

An assertion of incompetency by defense counsel must be substantiated. *Flores*, 2005-NMCA-135, ¶ 20 (citation omitted). The evidence described above substantiates counsel's assertion. "[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required…" *Drope*, 420 U.S. 162, 180. "Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." *Id.* at 181.

Mr. Ramirez's case can be distinguished from the recently issued decision of this Court in *State v. Solomon*, No. 33,975 (N.M. Sup. Ct. Aug 4, 2014) (non-precedential). In *Solomon* this court found that a District Court did not abuse its discretion by not ordering a mental health evaluation to see if the defendant was competent to stand trial. In *Solomon* the defense attorney never actually made a motion for a competency evaluation. *Id.* ¶ 12.





32

$4 \times 13^{14} \times 10$

$\iota \int 4 \rho o 4$

deal with his outburst and attempt to fire his own attorney. Mr. Ramirez

needed to be able to assist his attorney. *See State v. Rotherham*, 1996-

NMSC-048, ¶ 13,122 N.M. 246. "Proper assistance encompasses more than

merely providing information but is extended to the comportment in the

courtroom before a jury." *U.S. v. Williams*, 113 F.3d 1155, 1160 (C.A.10

(N.M.) 1997) (citation and internal quotation marks omitted). As this brief

lays out in the accounts of his testimony, Mr. Ramirez lacked the ability to

comport himself during the trial. The judge, in a vast understatement, noted

that Mr. Ramirez was difficult to represent. **[10-10-13 CD B 2:07:30-**

**2:41:36]**

Earlier, outside the presence of the jury Mr. Ramirez complained that

the trial was "not fair" because he wasn't being asked questions that he

thought were necessary. He made allegations of having been sexually

assaulted by a witness. **[10-10-13 CD B 10:40:41-10:58:56]** The judge

himself stated that he had never seen a defendant act the way Mr. Ramirez

was acting. **[10-10-13 CD B 3:45:47-3:46:20]**

Defense Counsel had asserted that Mr. Ramirez was incompetent and

made a motion for a recess to allow for a reevaluation of his competency.

"The issue of a defendant's competency to stand trial may be raised by

motion, or upon the court's own motion, at any stage of the proceedings "

$4^o$

31     $\xi \eta \beta (\tau, \iota^o$     $\rho^{a4}_{y4}$

Exhibit  10    45 pm

1 representation, motions he wanted filed, and other issues he indicated that he would

2 present in his appeal.

3 {29}    Defendant then demanded to be the first defense witness so he could

4 communicate his defense. During his direct examination, Defendant refused to

5 answer many questions directly saying he wanted to "explain everything." Defendant

6 then attempted to dismiss his counsel in front of the jury, forcing the court to remove

7 the Defendant and recess the trial. Later, after the parties rested, Defendant had

8 another outburst, complaining that he had a right to know what the jury instructions

9 would be so that he could file motions. The court told Defendant that he was being

10 well-represented and the instructions were fair.

11 {30}    At Defendant's sentencing hearing, Defendant complained to the court that his

12 defense counsel had failed to effectively represent him and that he did not receive a

13 fair trial. Defendant argued that the jury would not have convicted him had it fully

14 understood that he was the victim. The district court assured Defendant that he had

15 received excellent representation and pronounced the sentence.

16 {31}    "This Court has repeatedly stated that ineffective assistance of counsel claims

17 are best served through habeas corpus proceedings so that an evidentiary hearing can

18 take place on the record." *State v. King*, 2015-NMSC-030, ¶ 33, 357 P.3d 949

Expressed to dissatisfactory
Exhibit 10
page 45

GXBIT 10

1 competency by Dr. Fink in January 2013, Defendant spoke directly to the court,

2 though he was represented by counsel, and asked for a fifth forensic evaluation to

3 determine his competency. Defendant argued that a new evaluation would show he

4 was suffering from "psychosomatic delusions and hallucinations and severe

5 depression and anxiety." The judge listened to Defendant's request and then denied

6 it.

7 {17}    This case is similar to *State v. Flores*, 2005-NMCA-135, 138 N.M. 636, 124

8 P.3d 1175. In *Flores*, the Court of Appeals addressed whether an unsupported

9 declaration against competency made prior to trial rose to the level of reasonable

10 doubt. In that case, just before trial, the defendant's counsel asked the court to find

11 that the defendant was incompetent to stand trial. *See id.* ¶ 7. The defendant's

12 counsel cited her own experience with the defendant as the basis of the request, stating

13 her belief that his condition had deteriorated because he had been held in isolation

14 since the competency hearing. *See id* ¶ 8. The Court held that while "a court may

15 consider defense counsel's observations and opinions . . . those observations and

16 opinions alone cannot trigger reasonable doubt about the defendant's competency."

17 *Id* ¶ 29. The Court also concluded that the testimony of experts is not required to

18 support a contention of incompetency, but "[i]nstead, a defendant could offer an

9

$\varepsilon_{x_1 \theta_1 +} \, | \, \overset{\circ}{0}$







1 offer an instruction on competence, nor did he object to the instructions given the jury.

2 Therefore, this issue was not properly preserved for appeal.").

3 **B.    Defendant did not receive ineffective assistance of counsel**

4 {27}    Defendant's second argument is that he was denied effective assistance of

5 counsel because defense counsel "lacked the necessary assistance of [Defendant]

6 himself"; failed to "'seek the assistance of necessary experts,' and if more money was

7 required to seek such assistance on an urgent basis counsel should have requested it"

8 (citation omitted); and failed to obtain a reevaluation and attempted to withdraw the

9 motions to determine competency, resulting in prejudice to Defendant.  Counsel has

10 abandoned the claims that trial counsel failed to call other witnesses or made promises

11 to the Defendant because these claims are unsupported by the record.  As such, we

12 decline to review these claims.

13 {28}    One week prior to trial, the district court denied Defendant's motion to appoint

14 new counsel.  Trial commenced as scheduled.  On the fourth day of trial, defense

15 counsel informed the court of his decision not to call a witness on the record, as it was

16 against Defendant's wishes.  Defendant then addressed the court, against counsel's

17 advice, about how his defense had been limited, how his mental illnesses affected him,

18 the amount of media his case was receiving, the quality of his attorney's





p⁵⁴⁷⁸

interview witnesses and other persons.

Contact was made with the 911 caller, Grace Finkey, who witnessed the incident, recognized the shooter, and contacted law enforcement. The victim, Eladio Robledo Valdez was pronounced deceased while at PRMC According to the mother of the suspect, Albert has a large blue car, containing all his personal belongings. The vehicle was broken down in front of 511 E. 6ᵗʰ Street. Officers responded to the residence and observed the silver blue Cadillac parked on the street in front of the duplex. The vehicle contains a large amount of clothing and other personal items, possibly belonging to Albert Ramirez. The duplex at 511 E. 6ᵗʰ Street is currently vacant. The front window, facing north is open and raised approximately 8". The front and back doors are locked. The window on the east side of the building is unlocked with the screen removed. There are handprints on the exterior of the glass indicating that the window was pushed up to open the window. There are two cinderblocks under the window to provide easy entry into the window. The suspect, Albert Ramirez may be hiding within the vacant duplex to avoid detection and apprehension by law enforcement.

Based on this I believe that evidence relevant to the shooting may be within the residence or the vehicle described, and located at 511 E. 6ᵗʰ Street, Clovis, Curry County, New Mexico.

*[handwritten]* HEARSAY CANT JUST SEARCH CAUSE WHAT HE BELIEVES, NU matter if he's A cop!!! might be good to try and fight whatever evidence found with the

Affiant is a full-time salaried, sworn Law Enforcement Officer currently employed with the Clovis Police Department. Affiant's current assignment is Detective with the Special Operations Unit, and member of the Major Crimes Unit.

*[handwritten]* warrant!

SUBSCRIBED AND SWORN TO BEFORE ME IN THE ABOVE NAMED COUNTY OF THE STATE OF NEW MEXICO,

THIS __12__ DAY OF __July__, 2007.

_____
JUDGE

_____
TITLE

_____
AFFIANT

_____
TITLE  #98

APPROVED BY ASSISTANT DISTRICT ATTORNEY __Matth. Chandl__ ON __Jly 12, 2007__

*[handwritten]* EXiBit 11,

*[handwritten]* ExiBit 11

44

EXHIBIT
p a4Y 8

# RETURN AND INVENTORY

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

STATE OF NEW MEXICO

-VS-

2007 JUL 13 PM 3: 30

Albert Ramirez,
D.O.B. ██ 8
SSN: ██ 7793,

D-0905- Suzanne Foot
CLERK DISTRICT COURT

511 E. 6th Street, Clovis, Curry County, New Mexico,
and a silver blue Cadillac 4-door bearing Texas license W55HHS

I received the attached Search Warrant on  07/12/07          And executed it on   07/12/07

at   2235   Hours. I searched the person or premises described in the Warrant and left a copy of the Warrant with

_____None present at scene_____
(name of the person searched or owner at the place of search)

Together with a copy of the inventory for the items seizes. The following is an inventory of the property taken pursuant to the Warrant:

- 1 photo of suspect and unknown black male (Gang Writings)
- 1 paper with writing about shooting people
- 1 letter to Albert Ramirez denying his SSI benefits

This inventory was made in the presence of        Ricky M. Smith              and         Randy Pitcock
                                                  Applicant for Search Warrant                  Owner or other witness

                                                                                      Randy Pitcock
_____                                                    _____
Signature of Officer or Detective                                                  Signature of Owner or Witness

Return made this _____ day of _____, 2007 at _____ hours.

_____
(Judge Clerk)

After a careful search, I could not find at the place, or on the person described, the property described in this Warrant.

_____                              _____
(Officer)                                                    (Date)

EV. B. + 11                                          EXHIBIT ((

page 5

$EVIBIT$ 11,

**STATE OF NEW MEXICO**
**COUNTY OF CURRY**
**IN THE DISTRICT COURT**

NINTH JUDICIAL DISTRICT
CURRY COUNTY, NM
FILED IN MY OFFICE

2007 JUL 13 PM 3: 30

*Donna Hurst*
CLERK DISTRICT COURT

STATE OF NEW MEXICO
-VS-
Albert Ramirez,
D.O.B ▦▦▦8
SSN: ▦▦793,

D-0905- _Sh_ 0200 7 00 001

and a silver blue Cadillac 4-door bearing Texas license W55HHS

# AFFIDAVIT FOR SEARCH WARRANT

I, Ricky M. Smith, being dully sworn, on my oath, state that I have reason to believe that on the premises described below, and/or on the person described above:

Residence located at 511 E. 6th Street, Clovis Curry County, New Mexico. Residence is tan stucco with white trim, single story, multi-family dwelling that sits on the south side of East 6th Street facing north, and between Wallace Street and Sheldon Street. The residence is identified with 511 E. 6th Street on a white mailbox, stenciled in black letters. The residence has white trim, with a tan composite roof. The front door is a glass and white metal screen door that faces north. The vehicle is parked on the street in front of the residence.

## IN THE STATE OF NEW MEXICO, COUNY OF CURRY THERE IS NOW BEING CONCEALED CERTAIN PROPERTY, NAMELY:

Firearms, rifles, shotguns, or pistols, ammunition for firearms, and projectiles and missiles that may have been discharged from a firearm. Blood, blood spatter, other genetic material including saliva or other secretions. Other evidence to include fingerprints, skin, hair, and fibers. Clothing, bloodied clothing, to include shoes, shoeprints, trousers, shirts, undershirts, underwear, and socks, and bloodied towels or other cloth.

Albert Ramirez, Date of Birth: ▦▦▦ Social Security Number ▦▦▦ Hispanic male, Approximately 5'5" tall, 120 lbs., black hair, brown eyes

The items listed above have been obtained or are being possessed in a manner which constitutes a criminal offense, are designed or intended for use or which have been used as a means of committing a criminal offense, and would be material evidence in a criminal prosecution. The facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows:

On Thursday, July 12, 2007, at about 1339 hours, Officers of the Clovis Police Department were dispatched to the area of 515 W. 6th Street, in Clovis, Curry County, New Mexico, in reference to a 911 call for shots fired. The caller also relayed that there was a subject on the ground and that the suspect in the shooting had run off on foot to the north using the alley. Officers arrived on scene, noted the male body on the ground. The subject on the ground was subsequently identified as Eladio Robledo Valdez. The officers checked the area for the suspect, identified as Albert Ramirez, a Hispanic male, wearing a white shirt and blue jean shorts. The victim, who resides at 512 W. 6th Street, was on the ground in front of the residence. According to preliminary information provided by the caller, the victim had been shot by the suspect, fallen to the ground, and been shot again. Ambulance personnel arrived and the victim was transported to Plains Regional Medical Center Emergency Room. The scene was secured.

The Major Crimes Unit was activated. Investigators were dispatched to the crime scene at the 512 W. 6th Street and other Investigators were dispatched to the Special Operations Unit of the Clovis Police Department, to



2

$EXB. #11$

page 49

Buy the Paper    Today's Ads    Newsletter and Text Alerts    ePaper Login    Local Business Directory    Newspaper in Education    Maps

# Free Eviction Notice Form
evictionnotice rocketlawyer com
Free Eviction Notice All States Print, Save, Download 100% Free

HOME    NEWS    SPORTS    OBITUARIES    BLOGS    CLASSIFIEDS    JUST TV    SECTIONS.    AUTOFINDER                    JUNE 13 2014

# Albert Ramirez sentenced to life in murder of mother's boyfriend

January 8, 2014

By Robin Fornoff
CMI Projects Editor
rfornoff@cnjonline.com

A sobbing Albert Ramirez pleaded for sympathy Wednesday at his sentencing for the 2007 murder of his mother's boyfriend.

District Judge Teddy Hartley responded: "It would be wrong for you to live in society," and gave Ramirez life plus six years in prison for what District Attorney Matt Chandler called the cold-blooded killing of 39-year-old Eladio Robledo of Clovis.

"You take your life now and do the best you can under the circumstances," Hartley told Ramirez. "I wish you luck."

Ramirez was convicted by jury in October after a weeklong trial peppered by his repeated outbursts forcing Hartley to remove him from the courtroom at one point. Ramirez claimed he was ill, that he couldn't comprehend what was happening and he wanted to fire his court-appointed attorney Jesse Cosby of Roswell.



CMJ staff photo: Robin Fornoff
Albert Ramirez, 25, of Clovis looks over the courtroom Wednesday while awaiting sentencing for the 2007 murder of his mother's boyfriend, Eladio Robledo. District Judge Teddy Hartley gave Ramirez the maximum sentence of life plus six years in prison.

As he did at trial, Hartley praised Cosby for "conducting trial perfectly" under circumstances Ramirez made difficult.

Chandler reminded Hartley before sentencing that evidence at trial showed Ramirez planned the murder of Robledo. It was retaliation for Robledo and Ramirez's mother obtaining a court order to force Ramirez out of their home, he said.

Chandler said Ramirez, then 18, waited outside the home the morning of July 12, 2007, with a loaded 22-caliber pistol. Robledo was confronted outside by Ramirez. There was a fight that left a blood trail from a garage at the rear of the house to the front sidewalk, where witnesses testified they saw Ramirez standing over Robledo firing the gun at his head execution style.

Chandler called the killing "premeditated ... calculated ... and cold-blooded." He noted a presentence report branded Ramirez a malingerer who blamed the system, his attorney, the police, the district attorney and the courts for problems he alone created.

At one point Ramirez's older brother, Israel Ramirez, awaiting trial on multiple felony charges unrelated to the case, was led into the courtroom in shackles and a bright orange jail jumpsuit to plead for a lighter sentence for "my little brother."

"He's a good kid," Israel Ramirez told Hartley. "If I could switch places with him I would."

Search this website    [Search]

## ADVERTISEMENT

## LOCAL WEATHER

CLOVIS
64°
Cloudy
High 84° Low 61
Wind: 8 13 mph
Humidity 60%

## ADVERTISEMENT

FARMERS
INSURANCE

Rosalind
Riley-Smith
Home • Auto • Life

Request A Quote

www.Floridainsurancerileysmith.com

## ADVERTISEMENT

Ex.B)+ 1 —

Sage

ST. VS ALBERT RAMIREZ CR-07-434                    **CR1 CHAMBERS**

| Time | Speaker | Note |
|------|---------|------|
| 10:58:56 AM | CHANDLER | ON XEX GONNA ASK THIS COURT FOR ABOUT 10 OR 15 MINUTES WOULD LIKE TO DISCUSS WITH CO COUNSEL, SAID HE HAS NOT TESTIFIED BEFORE, I RENEW MY |
| 11:00:15 AM | COSBY | IT WAS NOT A JURY TRIAL IT WAS A BENCH TRIAL, HE BATTERED A TRANSPORT OFFICER |
| 11:01:15 AM | COURT | IF XEX TRIGGERS I WILL CHANGE MY RULING |
| 11:01:44 AM | RECESS | |
| 3:44:06 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY, DFT AND ALL PARTIES PRESENT |
| 3:44:27 PM | CHANDLER | DEFENSE HAS RESTED AND HAVE GIVEN US A COUPLE OF INSTRUCTIONS GUILTY BUT MENTALLY ILL, HE IS ATTEMPTING TO RAISE COMPETENCY, OUR REBUTTAL WITNESSES ARE GOING TO TESTIFY THAT THEY HAVE EXAMINED THE DFT, ETC. |
| 3:45:47 PM | COURT | HAVE NOT SEEN A DFT THE WAY THIS TRIAL HAS UNFOLDED |
| 3:46:20 PM | CHANDLER | WE HAVE CASELAW |
| 3:46:30 PM | COSBY | I AM NOT GOING TO SUBMIT A COMPETENCY INSTRUCTION, |
| 3:46:46 PM | CHANDLER | WE ARE NOT OBJECTING, THE ONLY MENTAL ILLNESS THAT PROBABLY COULD HAVE BEEN TESTIFIED, DFT TOOK STAND AND HE DID NOT RAISE ISSUE |
| 3:47:42 PM | COSBY | THE GBMI WAS AVAILABLE, BUT THAT DOES NOT DEPRIVE HIM OF THE RIGHT TO HAVE IT SUBMITTETD, GBMI VERDICT IS NOT SOMETHING TO GIVE, HE IS ENTITLED WE HAVE TENDERED IT, |
| 3:48:58 PM | COSBY | OPPOSES TO REBUTTAL WITNESSES BEING CALLED |
| 3:49:17 PM | COURT | BASIS UPON |
| 3:49:34 PM | MORRIS | THEY WERE CALLED, THEY ALSO CAN TESTIFY AS TO THEIR OPINION |
| 3:50:52 PM | | HE LISTED BOTH OF THESE DOCTORS, HE HAS NOT LISTED DR. SWARTZ |
| 3:51:10 PM | CHANDLER | YOU CANNOT BRING IN AN EXPERT YOU HAVE NOT DISCLOSED |
| 3:51:27 PM | COURT | AS A PRACTICAL MATTER WHAT YOU DO IN YOUR INSTRUCTIONS YOU HAVE A GUILTY AND GUILTY BUT MENTALLY ILL, |
| 3:52:06 PM | COSBY | WE ARE NOT GOING TO ASK FOR SELF DEFENSE, WILL WITHDRAW BECAUSE OF MENTAL ILLNESS OR DEFECT |
| 3:52:52 PM | OFF RECORD | |

10/10/2013                    Ex:D)+ 12,

pag 51

Homicide suspect ruled competent enough to stand trial - Clovis News Journal

EXIBIT 13

Buy the Paper    Today's Ads    Newsletter and Text Alerts    ePaper Login    Local Business Directory    Newspaper In Education    Maps

You're missing the video converter tool.  **Click Here**

HOME    NEWS    SPORTS    OBITUARIES    BLOGS    CLASSIFIEDS    JUST TV    SECTIONS    AUTOFINDER                    JUNE 13, 2014

# Homicide suspect ruled competent enough to stand trial

September 17, 2008

Search this website    [Sea  r ]

ADVERTISEMENT

By Sharna Johnson: CNJ staff writer

A judge ruled Tuesday 20-year-old Albert Ramirez, accused of shooting his mother's boyfriend in 2007, is competent to stand trial

District Judge Teddy Hartley issued the ruling after hearing testimony Monday from a clinical psychologist with the New Mexico Department of Corrections who evaluated Ramirez.

No trial date has been set.

Dr. Joanne Burness told the court Ramirez is a "disturbed young man" who likely has a mood disorder but is not mentally ill, court records showed.

She said Ramirez experiences hyperactivity, is easily angered and seeks sympathy, but that he understands and can assist in his defense, according to a transcript of the hearing

Burness also told the court that during treatment, Ramirez inquired about how he could get his charges reduced and talked a lot during the three months he was there about the value of being found not competent.

Ramirez is charged with first-degree murder in the shooting death of 39-year-old Eladio Robledo.

Police said Ramirez shot Robledo outside a Sixth Street home the victim shared with Ramirez' mother.

The subsequent investigation revealed a history of violence Ramirez directed at his mother and Robledo. Prior to the shooting, Debra Ramirez had filed no trespass orders against her son and told police she was afraid of him.

At the Monday hearing, defense attorney Brett Carter asked the judge to return Ramirez to Las Vegas for further treatment.

Carter argued that Ramirez was not tested thoroughly and that he does not believe he can assist in his defense.

Ramirez was transferred in June to the Behavioral Health Institute at Las Vegas, N.M. for treatment after he was declared dangerous and incompetent.

Ramirez' criminal case had been put on hold pending the outcome of the evaluations.

**Share this post**   [ Email }   Facebook | |   Twitter ]   Google |   Reddit }

Filed Under: News    Tagged With: accused, albert, competent, mother old, ramirez, ruled, stand, suspect, trial

LUXURY Consignment
Up to 90% off.



The RealReal    SHOP NOW >

LOCAL WEATHER



CLOVIS
64°
Cloudy
High: 84° Low: 61°
Wind: 8 15 mph
Humidity: 30%

ADVERTISEMENT

FARMERS INSURANCE

Rosalind Riley-Smith
H  .  .  .  A  .  .  .  .  .

Request A Quote

www.ChristmasInsureRiley-Smith.com

ADVERTISEMENT

page 54

f/2014
Police arrest shooting suspect - Clovis News Journal

Buy the Paper · Today's Ads · Newsletter and Text Alerts · ePaper Login · Local Business Directory · Newspaper in Education · Maps

## Search Obituaries Free

+⋈ ancestry.com/Obituaries

1) Search anyone's name. 2) View their obituary instantly

HOME    NEWS    SPORTS    OBITUARIES    BLOGS    CLASSIFIEDS    JUST-TV    SECTIONS    AUTOS/MOTOR                    JUNE 13, 2014

## Police arrest shooting suspect

July 16, 2007

Search this website.    [ Search ]

ADVERTISEMENT

By Sharna Johnson: Freedom Newspapers

A tip from a citizen led to the arrest of a Clovis teen who police say shot and killed his mother's boyfriend Thursday, police said.

Albert Ramirez, 18, was arrested without incident at 713 W. 13th St around 8:30 a.m. Sunday morning, a press release from Clovis police said.

He is accused of shooting Eladio Robledo, 39, multiple times in the front yard of 512 W 6th St., a residence Robledo shared with Ramirez' mother Debra Ramirez.

Ramirez is being held at the Curry County Adult Detention Center on $100,000 bond, court records show.

Ramirez told police she was in the house and heard shots. When she looked outside, she saw her son running away carrying a handgun, an arrest affidavit filed in district court Monday said.

A neighbor across the street told investigators he heard three popping noises and went to outside where he saw Robledo laying on the sidewalk "covering his head with his hands and yelling," the affidavit said.

The affidavit said the witness saw Ramirez standing over Robledo with his hands outstretched toward the victim as if he was holding a gun and then two more shots were fired.

The man told police he went to call 911 and when he returned, Ramirez was gone. He tried to help Robledo, who was bleeding from the head and unresponsive, the affidavit said.

Robledo was pronounced dead at the hospital, the affidavit said.

Debra Ramirez told police her son made death threats against her and her boyfriend before, according to the affidavit.

June 22, about three weeks before the shooting, Albert Ramirez was placed on six months probation for smashing the windshield of Robledo's car March 31.

Ramirez admitted smashing the window out of anger, a police report said.

A judge ordered him to attend the next available session of the Alternative Sentencing Programs and Educational Networks program, or ASPEN. Court records do not indicate if he had yet completed the program.

In a separate police report filed June 19, Debra Ramirez called police and told them her son smashed the front window of her home because she wouldn't let him in the house.

She said Ramirez was banging on the door and she didn't let him in because she was afraid he would hurt her, the report said.

Ramirez was not charged in the second incident, according to court records.

Calls to Debra Ramirez seeking comment were not returned Monday

LOCAL WEATHER

CLOVIS
64°
Cloudy
High 84° Low 61°
Wind: 5 10 mph
Humidity: 69%

ADVERTISEMENT

Luxury Consignment
Up to 90% off.



The RealReal    SHOP NOW >

ADVERTISEMENT

New Mexico
a gasglance.com
Find Low Gas Prices In Your Area  Save w/ The Gas Calculator: Get App

HOME  NEWS  SPORTS  OBITUARIES  BLOGS  CLASSIFIEDS  JUST TV  SECTIONS  AUTOFINDER          JUNE 21, 2014

# Teen charged with murder has competency issues

July 16, 2008

Courtesy photo Ramirez is charged with first-degree murder in the shooting death of 39-year-old Eladio Robledo in July 2007

By Sharna Johnson: CNJ staff writer

A year after being charged in the shooting death of his mother's boyfriend, a Clovis 19-year-old's case is on hold pending psychological treatment.

Albert Ramirez is being treated at the Behavioral Health Institute at Las Vegas, N.M., after being declared in April to be incompetent and dangerous, District Judge Ted Hartley made the ruling after reviewing the results of a forensic psychological evaluation.

Ramirez is charged with first-degree murder.

District Attorney Matt Chandler said examiners believe with treatment Ramirez could be brought to a level of competency to stand trial.

Court records do not specify the nature of Ramirez' competency issues.

He is accused of shooting 39-year-old Eladio Robledo in July 2007 outside a Sixth Street home the victim shared with Ramirez' mother.

Robledo died a short time later at the hospital from multiple gunshot wounds.

A witness told police he saw Ramirez shooting at Robledo, who was laying on the sidewalk.

Debra Ramirez told police she feared her son because of his violent tendencies and made him move out when he reached 18. She filed a no-trespass order against him about four months before the shooting, records show

Debra Ramirez told police her son had been threatening her and told her, "something bad was going to happen and it was going to be her fault," according to a police report.

After the protection order was filed, Ramirez another reported her son broke a window at her home because she wouldn't let him in.

Police said Albert Ramirez also admitted on another occasion he broke the windshield of his mother's car because he "got mad."

Debra Ramirez could not be reached for comment.

According to the April order issued by Hartley, Ramirez is to undergo treatment for up to nine months until such point as he attains competency

Chandler said a defendant is found incompetent to stand trial when it is determined they cannot assist in their own defense or understand the way the judicial system works or the proceedings.

In March, Ramirez was charged with two counts of battery on a peace officer

According to an arrest affidavit filed in magistrate court, transport officers said they had to carry Ramirez into and out of the courtroom when he refused to walk during a court appearance. After

Search this website  [Search]

ADVERTISEMENT

Public Arrest Records
beenverified.com/Arrest_Records
Search Any Name for Free! Step 1) Enter Name 2) View Arrest Records

Nursing School Online
Blog Professionally
Job Openings

LOCAL WEATHER
CLOVIS 64°
Cloudy

ADVERTISEMENT
Luxury Consignment Up to 90% off.

The RealReal  SHOP NOW

ADVERTISEMENT

 You're missing the video converter tool.  **Click Here**

HOME    NEWS    SPORTS    OBITUARIES    BLOGS    CLASSIFIEDS    JUST TV    SECTIONS    AUTOFINDER    JUN. 10, 2014

## Accused killer takes witness stand

October 10, 2013

By Robin Fornoff

CMI PROJECTS EDITOR

rfornoff@cnjonline.com

Accused killer Albert Ramirez spent two hours on the witness stand — against his lawyer's advice — then was removed from the courtroom Thursday for his continued disruptions.

Ramirez took the witness stand for about two hours, telling jurors in rambling and sometimes tearful accounts that he was defending himself when he shot and killed his mother's boyfriend six years ago.

Ramirez is charged with first-degree murder, accused of lying in wait and gunning down Eladio Robledo, 39, of Clovis, in July 2007, as he left his house on west Sixth Street for work.

Ramirez faces life in prison if convicted

**Albert Ramirez**
On trial for murder

Ramirez continued his efforts that have peppered the trial since it began Monday, trying to speak to District Judge Teddy Hartley despite warnings from the judge and pleas from his defense attorney Jesse Cosby to stop.

Hartley gave Ramirez his final warning after District Attorney Matt Chandler ceased his cross examination and Cosby said he had no questions for redirect. Taking a seat next to Cosby, Ramirez said loud enough for the jury to hear, "Why didn't you ask me more questions?"

"If you don't quit talking," Hartley said, "I'm going to remove you."

Minutes later Ramirez started talking again as his brother, defense witness Jose Ramirez took the stand. An exasperated Hartley pointed toward Ramirez and ordered sheriff's deputies to "take him out of this courtroom."

Two deputies grabbed Ramirez, who shouted "he's not asking questions ... he's not representing me," as the jury watched.

Until Thursday, Ramirez's disruptions came during periods when the jury was sequestered outside the courtroom. Cosby told Hartley he was now concerned the outburst planted seeds of doubt in the minds of jurors about his representation of Ramirez

"He's fired me in open court in front of the jury," said Cosby

Hartley, noting Cosby seemed to have a calming effect on Ramirez outside the proceedings, told him to talk to his client.

After about a 40-minute break, both sides returned and Cosby said Ramirez had decided to keep him as defense attorney. Hartley then warned Ramirez if there was one more outburst or disruption, he would have Ramirez removed and proceed with the defendant watching the rest of the trial in another room by video camera.

Search this website    Search

### ADVERTISEMENT

Nursing School Online

chamberlain.edu
Earn Your RN To BSN in 3 Semesters. Online, Affordable & User Friendly!

Public Arrest Records

Search Obituaries Free

Job Openings

### LOCAL WEATHER

CLOVIS
**64°**
Cloudy
High: 84° Low: 61°
Wind: 6 16 mph
Humidity: 45%

### ADVERTISEMENT

FARMERS
INSURANCE

Rosalind
Riley-Smith
Home • Auto • Life

Request A Quote

www.OwenInsuranceRileySmith.com

### ADVERTISEMENT



Form CD-180106 1
Revised 06/16/14

## NEW MEXICO CORRECTIONS DEPARTMENT
### Treatment Plan
☒ Individual ☐ Group ☐ RDAP ☐ Other SUDs

**TREATMENT PLAN AND CONTRACT:**

| TREATMENT GOAL | Date goal set | TREATMENT Intervention and Frequency | Date Goal Met |
|---|---|---|---|
| Decrease symptoms of PTSD, i.e., flashbacks, nightmares, insomnia, numbness, sadness, anger, guilt, fear, etc. | 8/30/16 | Cognitive Behavioral Therapy at least one time per month in individual and/or group therapy to assist in identifying what triggers stressful memories and/or PTSD symptoms | |
| Increase coping skills to help deal more effectively with symptoms of PTSD | 8/30/16 | Assist in the development of positive coping skills at least one time per month in individual and/or group therapy. | |
| Reduction of the effects of traumatic memories on daily functioning. | 8/30/16 | CBT and/or Motivational Interviewing (MI) at least one time per month in individual and/or group therapy to assist in desensitization. | |
| Reduction of Intrusive Symptoms, i.e. intense or prolonged psychological distress or marked physiological reactions at/to exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event (s) | 8/30/16 | CBT, Motivational Interviewing (MI) and/or psychoanalytical therapy at least one time per month in individual therapy. | |
| Medication Compliance | 8/30/16 | Comply with medication prescribed by psychiatrist and cooperate with appropriate feedback, as indicated. | |

### CONTRACT:

1. I will attend scheduled treatment sessions unless I have a mandatory institutional appointment.
2. I will participate in the therapeutic process. There may be times when dealing with my issues may be uncomfortable or difficult.
3. I understand that there are limitations to treatment.
4. I understand that there are potential adverse outcomes to treatment.
5. I understand that I can refuse to participate in any part of this treatment plan if it adversely impacts my safety, security, or health.
6. I understand that my treatment sessions will address my treatment goals.
7. I will complete assigned treatment homework (if any is assigned by my clinician).
8. Other _____

**By signing below, I am consenting to the treatment plan and contract:**

Ramirez, Alberto
Inmate (Printed Name)

Inmate Signature #6 957 ALBERTO. JOSE. RAMIREZ    Date 8/30/16

Beatrice Narcisco, PhD, LPCC
Clinician (Printed/Typed Name)

Clinician Signature    Narcisco, PhD, LPC    Date 8/30/16

Eileen R. Missali, MA, LPCC
Behavioral Health Reviewer (Printed/Typed Name)

Reviewer Signature    Date 8/30/16

Inmate Name  Ramirez, Alberto

NMCD#. 69597
**Treatment Plan**

Facility. CNMCF/MHTC
Form CD-180108.1 (Rev 06/16/14)

Couldn't.FL

1) 3 choices Better Same or Worse
2 Take control one person 24/7
3) (Responsibility) myself.
Ability to respond
rather than react.

10:15. emotionally stopped trying
trying slips from progress.

Mental Illness is no Excuse 4 bad behavior

I'm Sorry    I take responsibility
m learning  m ability to respond.

There we about was Very inappropriate
one goal to control one's behavioral

I dont think impulsivity.
E Should be classed
twice for the Same. doubt jeopardy.
I didn't mean it in an inappropriate.

way im impulsive way.
thats what im working
on in therapy.

West's New Mexico Statutes Annotated
State Court Rules
9. Criminal Forms
Article 7. Special Proceedings

### NMRA, Form 9-702

### FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO THE DISTRICT COURT FROM DENIAL OF HABEAS CORPUS

Currentness

[For use with Appellate Rule 12-501 NMRA]

IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Alberto Ramirez

Defendant-Petitioner,              S.Ct. No. ..... ..................................

*(leave blank, court will assign)*

vs.

John Gay                           District Ct. No. ...........................  ..

*(Name of Warden)*

Respondent.

PETITION FOR WRIT OF CERTIORARI TO THE
92.      DISTRICT COURT OF NEW MEXICO

Albeto Ramiez

Defendant

Petitioner pro se
Alberto Ramirez
po Box 1059
Santa Fe N.M. 87501

WESTLAW   © 2017 Thomson Reuters. No claim to original U.S. Government Works

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

(
address information
)

## PETITION FOR WRIT OF CERTIORARI TO THE
## ___a i s___ DISTRICT COURT OF NEW MEXICO

Defendant-Petitioner, appearing pro se and pursuant to the provisions of the New
Mexico Constitution, Rule 5-802, and Rule 12-501 NMRA; petitions this Court to
issue its Writ of Certiorari to review the order in:

_____ (your name v. Warden's name), District Court No. _____ filed on

## QUESTIONS PRESENTED FOR REVIEW

Whether the district court erred in:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

B. Whether petitioners communications were obtained in violation of his federal right to due process, and a fair trial where prior uncharged acts were introduced about a handwriting analysis under Rule 11-404 3?

C. Whether being shackled during trial and jurors observed him and it denied him due process.

d. Sufficiency of Evidence?

E. Prosecutor misconduct while prosecutor called defendant purpose to society and cross examined about doing legal research, to get jury to bury his story.

f. Double Jeopardy - changed twice for same time disposition of shock and gov. deprived due process.

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

_See attached Exhibit 1. and E._

...............................................................................................................................................

_(Complete only for issues relevant to the petition. Attach additional sheets if necessary.)_

## DESCRIPTION OF THE PROCEEDINGS

1. Please list the conviction being challenged:

_1st chrg. Murder_

_2 counts of kindnaping w/ Evidence_

_life + one six yrs_

2. Please list any other petitions you have filed in the New Mexico Supreme Court challenging this conviction (_please include docket numbers and dates_):

_February 7th 2014 the supreme_

_court of New Mexico State of New_

_Mexico's Alberto Ramos S ct No_

_34,576 Issued Jul 8th 2017_

3. Tell the story of what happened in your court case:

_My attorney would not speak to_

_me, we had conflict of interest and_

_large trial and the motion for_

_change of venue even through extensed_

_motion courage_

[illegible] to [illegible] to jury because
I was scheduled to take sheriff
ordered me to say no I and [illegible]
fall [illegible] attorney said IF I
Refuse to take plea he will not
provide effective assistance.
See attached page 4

## BASIS FOR GRANTING THIS PETITION FOR WRIT OF CERTIORARI TO THE DISTRICT COURT

The decision of the district court on my petition for writ of habeas corpus, filed pro se, raises significant questions of law under state and federal constitutions: whether the errors below deprived petitioner's rights guaranteed by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments and by New Mexico Constitution, art. II, §§ 13, 14, 15, and 18.

## ARGUMENT

*(Describe your legal claim and cite the law (cases, statutes, constitutional sections) that supports your position. Use plain language.)*

POINT 1.

Petitioner was denied his 6th amendment Right to effective assistance of counsel and his right to compulsory process when his attorney failed to call Madonne Swartz to rebut to States accusations of Malingering and to testify =>

·|

prior bad Gets Evidence wrongly
committed,
   Trial lawyer refuses to call
   material witness to raise
   defense well or capacity or
   Insanity.
                  Argument.

part 1.
      petitioner was denied His 6th
   amendment Right to effective
   assistance of counsel and the
   right to compulsory process
   when His attorney failed to
   call material witness to Rebut
   to States mit assertions of
   managing and to testify of
   fra's about defendant state of mind.
   Is it ineffective assistance
   to ignore a defendant's right to
   compulsory process.

FORM 9-792. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-792

Ch nu cl Gents state of mind is . . ineffective

ass sence to issue o s. lestern o sur 1'

(or piecemy) proposel

POINT 2:

Prior bad CCIS evidence should

not been substantied Introduced

and that privladdents on actel)

The petitione his right to A

Fair trial

POINT 3:

The petitioner has likely preserved

the eleven his right to a fair trial

while his full suas a direct result

Or being shere he and his attorney

did not their jurers polled

regarding whether they saw

the sheriffs at not

see attach P 3e 456

(Attach additional sheets, if necessary.)

### REQUEST FOR RELIEF

4 Sufficiency of Evidence
Jackson v. Virginia 443. U.S.
307 - 317 18 (1979) did Not
destroy or hide Evidence

5 Prosecutor Misconduct.
State v. Sosa 2069 NMSC-
056, 35, 147, NM 851 223
P3d, 348 called reference
A menace to Society and committed
by doing illegal research to
Beat his charges.

6. double Jeopardy
State v degraff
2006, NMSC, 011, 34.139 NM
20.131 P3d 61.

FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

Defendant-petitioner requests that this Court issue its writ of certiorari to the district court, and:

(W) remand to the district court for a full hearing on the petition, OR

(W) reverse the conviction, OR

(W) remand to the district court to correct the sentence, OR

(W) (other) _____
_____

Petitioner asks this Court to grant such relief as may be appropriate. As required by Rule 12-501 NMRA, I am filing only the original copy of this petition and I have attached the following:

(W) a copy of my petition for writ of habeas corpus filed in district court, AND

(W) a copy of the state's response, if one was filed, AND

(W) a copy of the district court's order.

(W) I have not attached the required documents because

_____

and ask the Supreme Court to accept this petition without the attachments.

Respectfully submitted,
_____

Defendant-Petitioner, pro se

I hereby certify that a copy of this petition was mailed to the Attorney General's Office, P.O. Box 1508, Santa Fe, New Mexico 87504-1508 on this ___ day of _____

_____

Defendant-Petitioner, pro se

Credits
[Adopted effective Dec. 31, 2014.]

Date 08/23/2019

New Mexico Corrections Department
Inmate Trust Accounting

Page 1 of 3
gaylt073

**Account Transaction History**
From 02/01/2019 To 08/23/2019

| Offender Name | | | NMCD # Account Description 1 | | Account Number |
|---|---|---|---|---|---|
| RAMIREZ, ALBERTO JOSE | | | 69597 INMATE REGULAR SPENDING | | 43566 |
| Transaction ID | Date | Description | | Amount | Balance |
| | 02/01/2019 | Beginning Balance | | | 3,126 77 |
| 2941044 | 02/04/2019 | PNM-MP3 ORDERS (ACCESS) | | -155 35 | 2,971 42 |
| 2941331 | 02/05/2019 | PNM-POSTAGE | | -2 26 | 2,969 16 |
| 2944064 | 02/07/2019 | Commissary Purchase, Invoice 132078 | | -84.01 | 2,885 15 |
| 2950959 | 02/15/2019 | Commissary Purchase, Invoice 132646 | | -16 41 | 2,868 74 |
| 2952684 | 02/15/2019 | Cash Receipt - RAMIREZ JOSE | | 200 00 | 3 068 74 |
| 2954928 | 02/18/2019 | Commissary Return, Invoice 130009 | | 98 93 | 3,167 67 |
| 2955541 | 02/20/2019 | Commissary Purchase, Invoice 133095 | | -39 32 | 3,128 35 |
| 2956120 | 02/26/2019 | Commissary Purchase, Invoice 549511 | | -359 29 | 2,769 06 |
| 2956218 | 02/26/2019 | PNM-MISC- COPIES AND OR NOTARY | | -104 00 | 2 665 06 |
| 2956836 | 03/01/2019 | PNM-MP3 ORDERS (ACCESS) | | -200 00 | 2 465 06 |
| 2957215 | 03/04/2019 | Commissary Purchase, Invoice 550098 | | -159 43 | 2 305 63 |
| 2958127 | 03/07/2019 | LCCF POSTAGE | | -8 30 | 2 297 33 |
| 2961682 | 03/11/2019 | Commissary Purchase, Invoice 550794 | | -34 54 | 2,262 79 |
| 2965242 | 03/13/2019 | Cash Receipt  RAMIREZ JOSE | | 200 00 | 2 462 79 |
| 2970848 | 03/19/2019 | Commissary Purchase  Invoice 551635 | | -105 65 | 2,357 14 |
| 2970918 | 03/19/2019 | LCCF POSTAGE | | -1 90 | 2 355 24 |
| 2971111 | 03/19/2019 | Cash Receipt - RAMIREZ, JOSE | | 30 00 | 2,385 24 |
| 2971920 | 03/25/2019 | Commissary Purchase  Invoice 552598 | | -127 31 | 2,257 93 |
| 2973004 | 04/01/2019 | Commissary Purchase, Invoice 553320 | | -66 42 | 2,191 51 |
| 2974990 | 04/08/2019 | LCCF COPIES | | -7 35 | 2,184 16 |
| 2979843 | 04/11/2019 | Check 747932 - RAMIREZ, HESIGUIA | | -300 00 | 1,884 16 |
| 2979977 | 04/11/2019 | LCCF SECURITY PAY MA - LCCF POD DETAIL | | 10 50 | 1,894 66 |
| 2980352 | 04/11/2019 | AUTOMATIC CVR DEDUCTION | | -1 58 | 1,893 08 |
| 2980353 | 04/11/2019 | Automatic Savings Deduction | | - 53 | 1,892 55 |
| 2986113 | 04/16/2019 | Commissary Purchase, Invoice 554776 | | -169 43 | 1,723 12 |
| 2987627 | 04/22/2019 | Commissary Purchase, Invoice 555662 | | -62 07 | 1,661 05 |
| 2987841 | 04/23/2019 | LCCF TOTE | | -8 00 | 1,653 05 |
| 2988229 | 04/25/2019 | LCCF CANTEEN CREDITS | | 8 40 | 1 661 45 |
| 2988574 | 04/29/2019 | Commissary Purchase  Invoice 556502 | | -30 40 | 1 631 05 |
| 2989573 | 05/06/2019 | Cash Receipt - RAMIREZ DEBRA | | 150 00 | 1,781 05 |
| 2989638 | 05/06/2019 | Commissary Purchase, Invoice 556990 | | -52 75 | 1,728 30 |
| 2992472 | 05/13/2019 | Cash Receipt - RAMIREZ JOSE | | 100 00 | 1,828 30 |
| 2997820 | 05/15/2019 | Commissary Purchase  Invoice 557733 | | -146 50 | 1,681 80 |

Date 08/23/2019

New Mexico Corrections Department
Inmate Trust Accounting

Page 2 of 3
gaylt073

**Account Transaction History**
From 02/01/2019 To 08/23/2019

| Offender Name | | NMCD # Account Description | | Account Number |
|---|---|---|---|---|
| RAMIREZ, ALBERTO JOSE | | 69597 INMATE REGULAR SPENDING | | 43566 |
| Transaction ID | Date | Description | Amount | Balance |
| 3001704 | 05/16/2019 | LCCF APRIL PAY - LCCF POD DETAIL | 9 50 | 1,691 30 |
| 3002048 | 05/16/2019 | AUTOMATIC CVR DEDUCTION | -1 43 | 1,689 87 |
| 3002049 | 05/16/2019 | Automatic Savings Deduction | 48 | 1,689 39 |
| 3003171 | 05/20/2019 | Cash Receipt - RAMIREZ DEBRA | 150.00 | 1,839 39 |
| 3003540 | 05/21/2019 | Commissary Purchase, Invoice 558632 | -146.59 | 1 692 80 |
| 3004822 | 05/28/2019 | Commissary Purchase, Invoice 559560 | -130 96 | 1,561 84 |
| 3004838 | 05/28/2019 | PNM-REFUND FOR ALBERTO RAMIREZ #69597 MP3 ORDER | 5 36 | 1,567 20 |
| 3005435 | 05/30/2019 | Check 748165 - RAMIREZ HESIGUIA | -550 00 | 1,017 20 |
| 3005715 | 06/03/2019 | Commissary Purchase, Invoice 560243 | -68 30 | 948 90 |
| 3006724 | 06/06/2019 | Check 748187 - RAMIREZ HESIGUIA | -250 00 | 698 90 |
| 3006820 | 06/06/2019 | LCCF MAY PAY PROGRAM - LCCF QUILT TECH 1 | 46.00 | 744 90 |
| 3007126 | 06/06/2019 | AUTOMATIC CVR DEDUCTION | -6 90 | 738 00 |
| 3007127 | 06/06/2019 | Automatic Savings Deduction | -2 30 | 735 70 |
| 3008654 | 06/09/2019 | LCCF COPIES | -5 00 | 730 70 |
| 3011766 | 06/12/2019 | Commissary Purchase, Invoice 560796 | -90 32 | 640 38 |
| 3016325 | 06/14/2019 | LCCF CANTEEN CREDITS | 4 81 | 645 19 |
| 3017674 | 06/14/2019 | Check 748210 - RAMIREZ HESIGUIA | -250 00 | 395 19 |
| 3017789 | 06/14/2019 | LCCF POSTAGE (16 60 + 3 66) | -20 26 | 374 93 |
| 3018483 | 06/17/2019 | Commissary Purchase, Invoice 561666 | -74 20 | 300 73 |
| 3019742 | 06/20/2019 | Void Check 748165 - RAMIREZ, HESIGUIA | 550 00 | 850 73 |
| 3019743 | 06/20/2019 | Void Check 748210 - RAMIREZ, HESIGUIA | 250 00 | 1,100 73 |
| 3020783 | 06/25/2019 | Commissary Purchase, Invoice 562641 | -99 33 | 1,001 40 |
| 3022029 | 07/01/2019 | Commissary Purchase, Invoice 563250 | -105 94 | 895 46 |
| 3022691 | 07/03/2019 | Check 748294 - ACOSTA, ALFREDO | -850 00 | 45 46 |
| 3023219 | 07/05/2019 | LCCF PROGRAMS JUNE P - LCCF QUILT TECH 1 | 42 00 | 87 46 |
| 3023488 | 07/05/2019 | AUTOMATIC CVR DEDUCTION | -6 30 | 81 16 |
| 3023489 | 07/05/2019 | Automatic Savings Deduction | -2 10 | 79 06 |
| 3025048 | 07/08/2019 | Commissary Purchase, Invoice 563964 | -76 35 | 2 71 |
| 3036099 | 07/17/2019 | LCCF POSTAGE | -2 20 | 51 |
| 3037095 | 07/23/2019 | Commissary Purchase, Invoice 565707 | - 31 | 20 |
| 3037988 | 07/29/2019 | Cash Receipt - RAMIREZ DEBRA | 100 00 | 100 20 |
| 3038649 | 08/01/2019 | LCCF POSTAGE | -1 90 | 98 30 |
| 3040921 | 08/07/2019 | LCCF PROGRAMS JULY P - LCCF QUILT TECH 1 | 44 00 | 142 30 |

| Date 08/23/2019 | | New Mexico Corrections Department<br>Inmate Trust Accounting | | Page 3 of 3<br>gaylt073 |
|---|---|---|---|---|
| | | **Account Transaction History**<br>From 02/01/2019 To 08/23/2019 | | |

| Offender Name | | NMCD # Account Description | | Account Number |
|---|---|---|---|---|
| RAMIREZ, ALBERTO JOSE | | 69597 INMATE REGULAR SPENDING | | 43566 |
| **Transaction ID** | **Date** | **Description** | **Amount** | **Balance** |
| 3041201 | 08/07/2019 | AUTOMATIC CVR DEDUCTION | -6 60 | 135 70 |
| 3041202 | 08/07/2019 | Automatic Savings Deduction | -2 20 | 133 50 |
| 3052616 | 08/19/2019 | Commissary Purchase, Invoice 568385 | -26 34 | 107 16 |
| 3053181 | 08/21/2019 | Cash Receipt - RAMIREZ, DEBRA | 150 00 | 257 16 |
| 3053181 | 08/21/2019 | Cash Receipt - RAMIREZ, JOSE | 100 00 | 357 16 |
| | 08/23/2019 | Ending Balance | | 357 16 |

$EViBiT$ $11$,

## STATE OF NEW MEXICO
## COUNTY OF CURRY
## IN THE DISTRICT COURT

NINTH JUDICIAL DISTRICT
CURRY COUNTY NM
FILED IN MY OFFICE

2007 JUL 13  PM 3: 30

STATE OF NEW MEXICO

-VS-

Albert Ramirez,
D.O.B.     88
SSN:     793,
511 E. 6" Street, Clovis, Curry County, New Mexico,
and a silver blue Cadillac 4-door bearing Texas license W55HHS

Deonna Stunt
CLERK DISTRICT COURT

D-0505- __SW__ 0200 __7__ 00 __001__

### AFFIDAVIT FOR SEARCH WARRANT

I, Ricky M. Smith, being dully sworn, on my oath, state that I have reason to believe that on the premises described below, and/or on the person described above:

Residence located at 511 E. 6", Street, Clovis Curry County, New Mexico. **Residence is tan stucco with white trim, single story, multi-family dwelling that sits on the south side of East 6" Street facing north, and between Wallace Street and Sheldon Street. The residence is identified with 511 E. 6" Street on a white mailbox, stenciled in black letters. The residence has white trim, with a tan composite roof. The front door is a glass and white metal screen door that faces north. The vehicle is parked on the street in front of the residence.**

### IN THE STATE OF NEW MEXICO, COUNY OF CURRY THERE IS NOW BEING CONCEALED CERTAIN PROPERTY, NAMELY:

Firearms, rifles, shotguns, or pistols, ammunition for firearms, and projectiles and missiles that may have been discharged from a firearm. Blood, blood spatter, other genetic material including saliva or other secretions. Other evidence to include fingerprints, skin, hair, and fibers. Clothing, bloodied clothing, to include shoes, shoeprints, trousers, shirts, undershirts, underwear, and socks, and bloodied towels or other cloth.

Albert Ramirez, Date of Birth:     88, Social Security Number     7793, Hispanic male, Approximately 5'5" tall, 120 lbs., black hair, brown eyes

The items listed above have been obtained or are being possessed in a manner which constitutes a criminal offense, are designed or intended for use or which have been used as a means of committing a criminal offense, and would be material evidence in a criminal prosecution. The facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows:

On Thursday, July 12, 2007, at about 1339 hours, Officers of the Clovis Police Department were dispatched to the area of 515 W. 6" Street, in Clovis, Curry County, New Mexico, in reference to a 911 call for shots fired. The caller also relayed that there was a subject on the ground and that the suspect in the shooting had ran off on foot to the north using the alley. Officers arrived on scene, noted the male body on the ground. The subject on the ground was subsequently identified as Eladio Robledo Valdez. The officers checked the area for the suspect, identified as Albert Ramirez, a Hispanic male, wearing a white shirt and blue jean shorts. The victim, who resides at 512 W. 6" Street, was on the ground in front of the residence. According to preliminary information provided by the caller, the victim had been shot by the suspect, fallen to the ground, and been shot again. Ambulance personnel arrived and the victim was transported to Plains Regional Medical Center Emergency Room. The scene was secured.

The Major Crimes Unit was activated. Investigators were dispatched to the crime scene at the 512 W. 6" Street and other Investigators were dispatched to the Special Operations Unit of the Clovis Police Department, to



2

$E \times B.$ $+$ $11$

page 49

Buy the Paper   Today's Ads   Newsletter and Text Alerts   ePaper Login   Local Business Directory   Newspaper in Education   More

**Free Eviction Notice Form**
evictionnotice.rocketlawyer.com
Free Eviction Notice All States Print, Save, Download 100% Free


HOME   NEWS   SPORTS   OBITUARIES   BLOGS   CLASSIFIEDS   JUST TV   SECTIONS   AUTOFINDER          JUNE 13, 2014

# Albert Ramirez sentenced to life in murder of mother's boyfriend

January 8, 2014

**By Robin Fornoff**
CMI Projects Editor
rfornoff@cnjonline.com

A sobbing Albert Ramirez pleaded for sympathy Wednesday at his sentencing for the 2007 murder of his mother's boyfriend

District Judge Teddy Hartley responded: "It would be wrong for you to live in society," and gave Ramirez life plus six years in prison for what District Attorney Matt Chandler called the cold-blooded killing of 39-year-old Eladio Robledo of Clovis.

"You take your life now and do the best you can under the circumstances," Hartley told Ramirez. "I wish you luck."

Ramirez was convicted by jury in October after a week-long trial peppered by his repeated outbursts, forcing Hartley to remove him from the courtroom at one point. Ramirez claimed he was ill, that he couldn't comprehend what was happening and he wanted to fire his court-appointed attorney Jesse Cosby of Roswell


CNJ staff photo Robin Fornoff
Albert Ramirez, 25, of Clovis looks over the courtroom Wednesday while awaiting sentencing for the 2007 murder of his mother's boyfriend, Eladio Robledo District Judge Teddy Hartley gave Ramirez the maximum sentence of life plus six years in prison.

As he did at trial, Hartley praised Cosby for "conducting trial perfectly" under circumstances Ramirez made difficult.

Chandler reminded Hartley before sentencing that evidence at trial showed Ramirez planned the murder of Robledo It was retaliation for Robledo and Ramirez's mother obtaining a court order to force Ramirez out of their home, he said

Chandler said Ramirez, then 18, waited outside the home the morning of July 12, 2007, with a gun. Cancel print Robledo was confronted outside by Ramirez There was a fight that left a blood trail from a garage at the rear of the house to the front sidewalk, where witnesses testified they saw Ramirez standing over Robledo firing the gun at his head execution style.

Chandler called the killing "premeditated ... calculated" and cold-blooded. He noted a pre-sentence report branded Ramirez a malingerer who blamed the system, his attorney, the police, the district attorney and the courts for problems he alone created

At one point Ramirez's older brother, Israel Ramirez, awaiting trial on multiple felony charges unrelated to the case, was led into the courtroom in shackles and a bright orange jail jumpsuit to plead for a lighter sentence for "my little brother."

"He's a good kid," Israel Ramirez told Hartley "If I could switch places with him I would."

Search this website   Search

**ADVERTISEMENT**

**LOCAL WEATHER**

**CLOVIS**
**64°**
Cloudy
High, 84° Low: 61
Wind: 8 13 mph
Humidity 60%

**ADVERTISEMENT**

FARMERS INSURANCE

Rosalind Riley-Smith
Home • Auto • Life
Request A Quote
www.ClovisInsuranceRileySmith.com

**ADVERTISEMENT**

Ex.1B1+1-

ST. VS ALBERT RAMIREZ  CR-07-434                    CR1 CHAMBERS

| Time | Speaker | Note |
|------|---------|------|
| 10:58:56 AM | CHANDLER | ON XEX GONNA ASK THIS COURT FOR ABOUT 10 OR 15 MINUTES WOULD LIKE TO DISCUSS WITH CO COUNSEL, SAID HE HAS NOT TESTIFIED BEFORE, I RENEW MY |
| 11:00:15 AM | COSBY | IT WAS NOT A JURY TRIAL IT WAS A BENCH TRIAL, HE BATTERED A TRANSPORT OFFICER |
| 11:01:15 AM | COURT | IF XEX TRIGGERS I WILL CHANGE MY RULING |
| 11:01:44 AM | RECESS | |
| 3:44:06 PM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY, DFT AND ALL PARTIES PRESENT |
| 3:44:27 PM | CHANDLER | DEFENSE HAS RESTED AND HAVE GIVEN US A COUPLE OF INSTRUCTIONS GUILTY BUT MENTALLY ILL, HE IS ATTEMPTING TO RAISE COMPETENCY, OUR REBUTTAL WITNESSES ARE GOING TO TESTIFY THAT THEY HAVE EXAMINED THE DFT, ETC |
| 3:45:47 PM | COURT | HAVE NOT SEEN A DFT THE WAY THIS TRIAL HAS UNFOLDED |
| 3:46:20 PM | CHANDLER | WE HAVE CASELAW |
| 3:46:30 PM | GOSBY | I AM NOT GOING TO SUBMIT A COMPETENCY INSTRUCTION, |
| 3:46:46 PM | CHANDLER | WE ARE NOT OBJECTING, THE ONLY MENTAL ILLNESS THAT PROBABLY COULD HAVE BEEN TESTIFIED, DFT TOOK STAND AND HE DID NOT RAISE ISSUE |
| 3:47:42 PM | COSBY | THE GBMI WAS AVAILABLE, BUT THAT DOES NOT DEPRIVE HIM OF THE RIGHT TO HAVE IT SUBMITTETD, GBMI VERDICT IS NOT SOMETHING TO GIVE, HE IS ENTITLED WE HAVE TENDERED IT, |
| 3:48:56 PM | COSBY | OPPOSES TO REBUTTAL WITNESSES BEING CALLED |
| 3:49:17 PM | COURT | BASIS UPON |
| 3:49:34 PM | MORRIS | THEY WERE CALLED , THEY ALSO CAN TESTIFY AS TO THEIR OPINION |
| 3:50:52 PM | | HE LISTED BOTH OF THESE DOCTORS, HE HAS NOT LISTED DR. SWARTZ |
| 3:51:10 PM | CHANDLER | YOU CANNOT BRING IN AN EXPERT YOU HAVE NOT DISCLOSED |
| 3:51:27 PM | COURT | AS A PRACTICAL MATTER WHAT YOU DO IN YOUR INSTRUCTIONS YOU HAVE A GUILTY AND GUILTY BUT MENTALLY ILL, |
| 3:52:06 PM | COSBY | WE ARE NOT GOING TO ASK FOR SELF DEFENSE, WILL WITHDRAW BECAUSE OF MENTAL ILLNESS OR DEFECT |
| 3:52:52 PM | OFF RECORD | |

10/10/2013                    Ex.517 12,                    3 of 5



You're missing the video converter tool.    Click Here

HOME    NEWS    SPORTS    OBITUARIES    BLOGS    CLASSIFIEDS    JUST TV    SECTIONS    AUTOFINDER    JUNE 13, 2014

# Homicide suspect ruled competent enough to stand trial

September 17, 2008

By Sharna Johnson, CNJ staff writer

A judge ruled Tuesday 20-year-old Albert Ramirez, accused of shooting his mother's boyfriend in 2007, is competent to stand trial.

District Judge Teddy Hartley issued the ruling after hearing testimony Monday from a clinical psychologist with the New Mexico Department of Corrections who evaluated Ramirez

No trial date has been set.

Dr. Joanne Burness told the court Ramirez is a "disturbed young man" who likely has a mood disorder but is not mentally ill, court records showed.

She said Ramirez experiences hyperactivity, is easily angered and seeks sympathy, but that he understands and can assist in his defense, according to a transcript of the hearing.

Burness also told the court that during treatment, Ramirez inquired about how he could get his charges reduced and asked a lot during the three months he was there about the value of being found not competent.

Ramirez is charged with first-degree murder in the shooting death of 39-year-old Eladio Robledo

Police said Ramirez shot Robledo outside a Slash Street home the victim shared with Ramirez' mother.

The subsequent investigation revealed a history of violence Ramirez directed at his mother and Robledo. Prior to the shooting, Debra Ramirez had filed no trespass orders against her son and told police she was afraid of him.

At the Monday hearing, defense attorney Brett Carter asked the judge to return Ramirez to Las Vegas for further treatment.

Carter argued that Ramirez was not tested thoroughly and that he does not believe he can assist in his defense.

Ramirez was transferred in June to the Behavioral Health Institute at Las Vegas, N.M., for treatment after he was declared dangerous and incompetent.

Ramirez' criminal case had been put on hold pending the outcome of the evaluations.

Share this post:    Email |    Facebook |    Twitter |    Google |    Reddit |

Filed Under News    Tagged With: accused, albert, competent, mother, old, ramirez, ruled, stand, suspect, trial

Search this website    Search

ADVERTISEMENT

Luxury Consignment
Up to 90% off.



The RealReal    SHOP NOW >

LOCAL WEATHER



CLOVIS
64°
Cloudy
High: 84° Low: 61°
Wind: 8 W mph
Humidity: 00%

ADVERTISEMENT


FARMERS
INSURANCE

Rosalind
Riley-Smith

www.DevistammaRileySmith.com

ADVERTISEMENT

EXIBiT
13

page 54



Buy the Paper   Today's Ads   Newsletter and Text Alerts   ePaper Login   Local Business Directory   Newspaper in Education   Maps

## Search Obituaries Free

Ancestry.com/Obituaries

1) Search anyone's name. 2) View their obituary instantly.

HOME   NEWS   SPORTS   OBITUARIES   BLOGS   CLASSIFIEDS   KJST-TV   SECTIONS   AUTOFINDER        JUNE 13, 2014

## Police arrest shooting suspect

July 16, 2007

Search this website   [Search]

ADVERTISEMENT



By Sharna Johnson: Freedom Newspapers

A tip from a citizen led to the arrest of a Clovis teen who police say shot and killed his mother's boyfriend Thursday, police said.

Albert Ramirez, 18, was arrested without incident at 713 W 13th St around 8:30 a.m. Sunday morning, a press release from Clovis police said.

He is accused of shooting Eliatio Robledo, 39, multiple times in the front yard of 512 W 6th St, a residence Robledo shared with Ramirez' mother Debra Ramirez.

Ramirez is being held at the Curry County Adult Detention Center on $100,000 bond, court records show.

Ramirez told police she was in the house and heard shots. When she looked outside, she saw her son running away carrying a handgun, an arrest affidavit filed in district court Monday said.

A neighbor across the street told investigators he heard three popping noises and went housewide where he saw Robledo laying on the sidewalk "covering his head with his hands and yelling," the affidavit said.

The affidavit said the witness saw Ramirez standing over Robledo with his hands outstretched toward the victim as if he was holding a gun and then two more shots were fired.

The man told police he went to call 911 and when he returned, Ramirez was gone. He tried to help Robledo, who was bleeding from the head and unresponsive, the affidavit said.

Robledo was pronounced dead at the hospital, the affidavit said.

Debra Ramirez told police her son made death threats against her and her boyfriend before, according to the affidavit.

June 22, about three weeks before the shooting, Albert Ramirez was placed on six months probation for smashing the windshield of Robledo's car March 31.

Ramirez admitted smashing the window out of anger, a police report said.

A judge ordered him to attend the next available session of the Alternative Sentencing Programs and Educational Networks program, or ASPEN. Court records do not indicate if he had yet completed the program.

In a separate police report filed June 19, Debra Ramirez called police and told them her son smashed the front window of her home because she wouldn't let him in the house.

She said Ramirez was banging on the door and she didn't let him in because she was afraid he would hurt her, the report said.

Ramirez was not charged in the second incident, according to court records.

Calls to Debra Ramirez seeking comment were not returned Monday.

LOCAL WEATHER



CLOVIS
64°
Cloudy
High: 84° Low: 61°
Wind: 8 mph
Humidity: 39%

ADVERTISEMENT

Luxury Consignment
Up to 90% off.



The RealReal        SHOP NOW >

ADVERTISEMENT

New Mexico

gasglance.com

Find Low Gas Prices In Your Area Save w/ The Gas Calculator Get App

HOME    NEWS    SPORTS    OBITUARIES    BLOGS    CLASSIFIEDS    JUST TV    SECTIONS    AUTOFINDER    JUNE 23 2014

# Teen charged with murder has competency issues

July 16, 2008

Courtesy photo Ramirez is charged with first-degree murder in the shooting death of 39-year-old Eladio Robledo in July 2007.

By Sharna Johnson; CNJ staff writer

A year after being charged in the shooting death of his mother's boyfriend, a Clovis 19-year-old's case is on hold pending psychological treatment.

Albert Ramirez is being treated at the Behavioral Health Institute at Las Vegas, N.M., after being declared in April to be incompetent and dangerous. District Judge Ted Hartley made the ruling after reviewing the results of a forensic psychological evaluation.

Ramirez is charged with first-degree murder.

District Attorney Matt Chandler said examiners believe with treatment Ramirez could be brought to a level of competency to stand trial.

Court records do not specify the nature of Ramirez' competency issues.

He is accused of shooting 39-year-old Eladio Robledo in July 2007 outside a Sixth Street home the victim shared with Ramirez' mother.

Robledo died a short time later at the hospital from multiple gunshot wounds

A witness told police he saw Ramirez shooting at Robledo, who was laying on the sidewalk.

Debra Ramirez told police she feared her son because of his violent tendencies and made him move out when he reached 18. She filed a no-trespass order against him about four months before the shooting, records show

Debra Ramirez told police her son had been threatening her and told her, "something bad was going to happen and it was going to be her fault," according to a police report.

After the protection order was filed, Ramirez' mother reported her son broke a window at her home because she wouldn't let him in.

Police said Albert Ramirez also admitted on another occasion he broke the windshield of his mother's car because he "got mad."

Debra Ramirez could not be reached for comment.

According to the April order issued by Hartley, Ramirez is to undergo treatment for up to nine months until such point as he attains competency.

Chandler said a defendant is found incompetent to stand trial when it is determined they cannot assist in their own defense or understand the way the judicial system works or the proceedings.

In March, Ramirez was charged with two counts of battery on a peace officer

According to an arrest affidavit filed in magistrate court, transport officers said they had to carry Ramirez into and out of the courtroom when he refused to walk during a court appearance. After

Search this web site    Search

ADVERTISEMENT

Public Arrest Records

@ beenverified.com/Arrest_Records
Search Any Name for Free! Step 1) Enter Name 2) View Arrest Records

Nursing School Online    ▾

Blog Professionally    ▾

Job Openings    ●

LOCAL WEATHER

CLOVIS
64°
Cloudy
High: 84° Low: 61°
Wind: E 13 mph
Humidity: 66%

ADVERTISEMENT

Luxury Consignment
Up to 90% off.



The RealReal    SHOP NOW ►

ADVERTISEMENT



Buy the Paper    Today's Ads    Newsletter and Text Alerts    ePaper Login    Local Business Directory    Newspaper in Education    Maps


You're missing the video converter tool.    **Click Here**

HOME    NEWS    SPORTS    OBITUARIES    BLOGS    CLASSIFIEDS    JUST TV    SECTIONS    AUTOFINDER    JUNE 13 2014

# Accused killer takes witness stand

October 10, 2013

By Robin Fornoff

CMI PROJECTS EDITOR

rfornoff@cnjonline.com

Accused killer Albert Ramirez spent two hours on the witness stand — against his lawyer's advice — then was removed from the courtroom Thursday for his continued disruptions.

Ramirez took the witness stand for about two hours, telling jurors in rambling and sometimes tearful accounts that he was defending himself when he shot and killed his mother's boyfriend six years ago.

Ramirez is charged with first-degree murder, accused of lying in wait and gunning down Eladio Robledo, 39, of Clovis, in July 2007, as he left his house on west Sixth Street for work.

Ramirez faces life in prison if convicted.



Albert Ramirez
On trial for murder

Ramirez continued his efforts that have peppered the trial since it began Monday, trying to speak to District Judge Teddy Hartley despite warnings from the judge and pleas from his defense attorney Jesse Cosby to stop.

Hartley gave Ramirez his final warning after District Attorney Matt Chandler ceased his cross examination and Cosby said he had no questions for redirect. Taking a seat next to Cosby, Ramirez said loud enough for the jury to hear, "Why didn't you ask me more questions?"

"If you don't quit talking," Hartley said, "I'm going to remove you."

Minutes later, Ramirez started talking again as his brother, defense witness Jose Ramirez took the stand. An exasperated Hartley pointed toward Ramirez and ordered sheriffs deputies to "take him out of this courtroom."

Two deputies grabbed Ramirez, who shouted "he's not asking questions . . . he's not representing me," as the jury watched.

Until Thursday, Ramirez's disruptions came during periods when the jury was sequestered outside the courtroom. Cosby told Hartley he was now concerned the outburst planted seeds of doubt in the minds of jurors about his representation of Ramirez.

"He's fired me in open court in front of the jury," said Cosby.

Hartley, noting Cosby seemed to have a calming effect on Ramirez outside the proceedings, told him to talk to his client.

After about a 40-minute break, both sides returned and Cosby said Ramirez had decided to keep him as defense attorney. Hartley then warned Ramirez if there was one more outburst or disruption, he would have Ramirez removed and proceed with the defendant watching the rest of the trial in another room by video camera.

Search this website .    [Search]

ADVERTISEMENT

Nursing School Online

chamberlain.edu
Earn Your RN To BSN in 3 Semesters Online
Affordable & User Friendly*

Public Arrest Records

Search Obituaries Free

Job Openings

LOCAL WEATHER



CLOVIS
64°
Cloudy
High: 84° Low: 61°
Wind: 5 W mph
Humidity: 60%

ADVERTISEMENT

FARMERS
INSURANCE

Rosalind
Riley-Smith
Home • Auto • Life

Request A Quote

www.farmersagent.com/rileysmith

ADVERTISEMENT

$E \cdot \cap \cdot \beta \cup \frac{1}{3}$
page 55

1/3

Form CD-180106 1
Revised 06/16/14

# NEW MEXICO CORRECTIONS DEPARTMENT
## Treatment Plan
☒ Individual ☐ Group ☐ RDAP ☐ Other SUDs

## TREATMENT PLAN AND CONTRACT:

| TREATMENT GOAL | Date goal set | TREATMENT Intervention and Frequency | Date Goal Met |
|---|---|---|---|
| Decrease symptoms of PTSD, i.e., flashbacks, nightmares, insomnia, numbness, sadness, anger, guilt, fear, etc. | 8/30/16 | Cognitive Behavioral Therapy at least one time per month in individual and/or group therapy to assist in identifying what triggers stressful memories and/or PTSD symptoms | |
| Increase coping skills to help deal more effectively with symptoms of PTSD | 8/30/16 | Assist in the development of positive coping skills at least one time per month in individual and/or group therapy. | |
| Reduction of the effects of traumatic memories on daily functioning. | 8/30/16 | CBT and/or Motivational Interviewing (MI) at least one time per month in individual and/or group therapy to assist in desensitization. | |
| Reduction of Intrusive Symptoms, i.e. intense or prolonged psychological distress or marked physiological reactions at/to exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event (s) | 8/30/16 | CBT, Motivational Interviewing (MI) and/or psychoanalytical therapy at least one time per month in individual therapy. | |
| Medication Compliance | 8/30/16 | Comply with medication prescribed by psychiatrist and cooperate with appropriate feedback, as indicated. | |

## CONTRACT:
1. I will attend scheduled treatment sessions unless I have a mandatory institutional appointment.
2. I will participate in the therapeutic process. There may be times when dealing with my issues may be uncomfortable or difficult.
3. I understand that there are limitations to treatment.
4. I understand that there are potential adverse outcomes to treatment.
5. I understand that I can refuse to participate in any part of this treatment plan if it adversely impacts my safety, security, or health.
6. I understand that my treatment sessions will address my treatment goals.
7. I will complete assigned treatment homework (if any is assigned by my clinician).
8. Other _____

By signing below, I am consenting to the treatment plan and contract:

Ramirez, Alberto
Inmate (Printed Name)

Beatrice Narcisco, PhD, LPCC
Clinician (Printed/Typed Name)

Eileen R. Missall, MA, LPCC
Behavioral Health Reviewer (Printed/Typed Name)

Inmate Name: Ramirez, Alberto

NMCD# 69597
Treatment Plan

Facility: CNMCF/MHTC
Form CD-180108.1 (Rev 06/16/14)

1) 3 choices Better Same or Worse

2 Take control one prison 24/7

3) (RESPONSibility) myself.
    Ability to respond
    rather than react.

(Self Esteem Cope)

10-15 emotionally stop + think
Trying steps from praying.

Mental Illness is no Excuse 4 bad behavior

I'm Sorry   I take responsibility
in learning the ability to respond.
Think re about was very inappropriate
one good to control one behavioral

I dont think impulsivity.
    I Should be changed
twice for the Same. oh do I learning
I didnt mean it in an inappropriate.
Way im impulsive way.
    thats what im working
        on in therapy.

West's New Mexico Statutes Annotated
State Court Rules
  9. Criminal Forms
    Article 7. Special Proceedings

### NMRA, Form 9-702

## FORM 9-702. PETITION FOR WRIT OF CERTIORARI TO THE DISTRICT COURT FROM DENIAL OF HABEAS CORPUS

Currentness

[For use with Appellate Rule 12-501 NMRA]

### IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Alberto , Ramirez

Defendant-Petitioner,

S.Ct. No. ..........................................

*(leave blank, court will assign)*

vs.

Jun Gay

District Ct. No. ..............................

*(Name of Warden)*

Respondent.

PETITION FOR WRIT OF CERTIORARI TO THE
_____ 9t. _____ DISTRICT COURT OF NEW MEXICO

Albata Ramirez

Defendant

Petitioner pro se  Alberto Ramirez
........................... po box 1059 ...........................
........................... Santa Fe n m 6750 / ...........................

WESTLAW  © 2017 Thomson Reuters. No claim to original U.S. Government Works

FORM S-702. PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form S-702

(
*address information*
)

PETITION FOR WRIT OF CERTIORARI TO THE
__4)r___ DISTRICT COURT OF NEW MEXICO

Defendant-Petitioner, appearing pro se and pursuant to the provisions of the New Mexico Constitution, Rule 5-802, and Rule 12-501 NMRA; petitions this Court to issue its Writ of Certiorari to review the order in:

_____ (*your name v. Warden's name*), District Court No. _____ filed on _____

QUESTIONS PRESENTED FOR REVIEW

Whether the district court erred in:

① denying defendant his civil administrative
Rynt to Effective assistance of
counsel and compulsory process
when his attorney refused to call
all material suerte to testify on
(ight complexity hearing of trial

② whether petitives Cumul convictions
are obtained in violation of His
federal right to due process and a
fair trial when pre- lancing jual
acts were introduced as a result
a background inquiry under Rule 11  404B

Ⓑ. Weather petitioner communications
were obtained in violation of his
federal right to due process, and a
fair trial where prior uncharged
acts were intro durred about
a handwriting analysis under Rule
11-404 3"

Ⓒ Whether Bey Shackled during
trial and jurors observed
him and it denied him
due process?

Ⓓ Sufficency of Evidence?

Ⓔ Prosecutor Misconduct where
prosecutor called defendant
nervoce to society and cross
examined about doing legal
Research, to get Jury to
buy his story.

Ⓕ Double Jeopardy - charged twice
for same time chspesion of shusike
And gun. denied due process.

FORM 9-702, PETITION FOR WRIT OF CERTIORARI TO..., NM R CR Form 9-702

_[handwritten text, illegible]_

*(Complete only for issues relevant to the petition. Attach additional sheets if necessary.)*

## DESCRIPTION OF THE PROCEEDINGS

1. Please list the conviction being challenged:

_[handwritten text]_

2. Please list any other petitions you have filed in the New Mexico Supreme Court challenging this conviction *(please include docket numbers and dates)*:

_[handwritten text]_

3. Tell the story of what happened in your court case:

_[handwritten text]_

Filed
Supreme Court of New Mexico
9/13/2019 8:40 AM
Office of the Clerk
Joey D. Moya

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO
## September 13, 2019

NO. S-1-SC-37887

**ALBERT JOSE RAMIREZ,**

    Petitioner,

v.

**DWAYNE SANTISTEVAN, Warden,**

    Respondent.

### ORDER

WHEREAS, this matter came on for consideration by the Court upon petition for writ of certiorari filed under Rule 12-501 NMRA, and the Court having considered the foregoing and being sufficiently advised, Justice Barbara J. Vigil, Justice Michael E. Vigil and Justice C. Shannon Bacon concurring;

NOW, THEREFORE, IT IS ORDERED that the petition for writ of certiorari is DENIED.

IT IS SO ORDERED.



WITNESS, the Honorable Judith K. Nakamura, Chief Justice of the Supreme Court of the State of New Mexico, and the seal of said Court this 13th day of September, 2019.

Joey D. Moya, Clerk of Court
Supreme Court of New Mexico

I CERTIFY AND ATTEST:
A true copy was served on all parties
or their counsel of record on date filed.    By _Zelda Abeita_
                                           Deputy Clerk
Zelda Abeita
Clerk of the Supreme Court
of the State of New Mexico

**EXHIBIT**

GG

AMENDED
PETITION ~~~~~~~~~~~~~

9-701. Petition for writ of habeas corpus.
[For use with District Court Criminal Rule 5-802 NMRA]

STATE OF NEW MEXICO
COUNTY OF Curry
IN THE DISTRICT COURT

For *Official Use Only*
No. CR 2007 434
(*To be supplied by the*
*clerk of the court*)

2020 AUG 18 PM 2:01

Alberto Jose Ramirez,
(*Full name of prisoner*)
          Petitioner,

v.

Leon Martinez, or Hector Balderas
(*Name of warden, jailor*
*or other person having*
*power to release the petitioner*)
          Respondent.

*Instructions — Read Carefully*

        Make sure that all information provided in this form is true and correct. If more space is required, attach additional pages as needed. Make sure that all necessary documents are attached, or explain why the documents are not being included. If you are currently incarcerated, you may file the petition without payment of the filing fee. If you are not incarcerated and are seeking free process, complete Form 9-403.
        Finally, you must complete the certificate of service and mail or otherwise serve copies of this petition on the respondent and the district attorney in the county in which the petition is filed. You must file the original petition and one copy with the Clerk of the District Court. You should keep a copy for your own records.

PETITION FOR WRIT OF HABEAS CORPUS[1]

        1. Alberto Jose Ramirez (*name of person in custody*) is imprisoned or otherwise restrained at penitentiary of New Mexico (*name of facility and county of detention*) by Leon Martinez (*name and title of person having custody*).
        2.        This petition (*SELECT ONLY ONE. If you wish to raise both types of claims, you must file two separate petitions and submit each petition in the location required by Rule 5-802(E)*):

                [✓]        seeks to vacate, set aside or correct an illegal sentence or order of confinement (i.e., ineffective assistance of counsel, illegal search and seizure, involuntary confession, interpretation of the sentence by the institution or other matters relating to the trial or sentence the confined person received).
                *NOTE: If the petition seeks to vacate, set aside or correct the sentence or order of confinement, correct the Corrections Department's interpretation*

EXHIBIT
**HH**

*or application of the sentence or order of confinement, or challenge the conviction, it shall be filed in the county of the court in which the matter was adjudicated, or, if the matter has not been adjudicated, it must be filed in the county of the court that ordered the contested confinement. See Rule 5-802(E)(1) NMRA.)*

[ ]    challenges confinement or conditions of confinement or matters other than the sentence or order of confinement. (*This applies only to matters arising after the confined person arrived at the institution, i.e., county jail confinement, mental hospital confinement, detention facility confinement, good time credit, misconduct report, prison due process violation or parole.*) NOTE: *If the petition challenges conditions of confinement or matters other than challenges to the sentence or order of confinement (those set forth in the first option), it shall be filed in the county where the petitioner is confined or restrained. See Rule 5-802(E)(2) NMRA.*

3.    State concisely the facts upon which the confined person bases the claim:

SEE ATTACH PAGE. NOT ENOUGH SPACE. TO WRITE IT ALL. Iffersonsble conflict of interest Ineffective assistance of trial lawyer. Shacklke violation U.S. Constitution. State and Federal Due process. Improper comment on silence, prosecutorial misconduct, prior bad acts, challenge indictment, Ineffective assistance Habeus attorney

4.    State concisely the grounds and law, or other legal authorities on which the confined person bases the claim:

STATE and Federal Right To due process 5th and 14th amendment and violation of U.S. constitution SEE attach Page 6 it explains each ground legal authorities.

5.    Have the grounds being raised in this petition been raised previously in your direct appeal? If so, explain the result. If not, explain why not:

yes ALL have been raised, Except comment on silence by Habeus attorney grand jury indictment Ineffective assistance on Habeus collateral Review

6.    Have the grounds raised in this petition been raised previously in another petition for a writ of habeas corpus? If so, explain the result. If not explain why not:

yes all denied dismissed, Except Challenge grand Jury indictment, Silence on comments on silence. Ineffective assistance of Habeus Attorney She did NOT raise Them I asked her to

7.    Briefly describe the relief requested:

To Be appointed an attorney to assist its to complex for me to do on my own. Evidentary hearing To present what Jury actually saw and allegations to

Be proved.

State Conclusion the ...

Bases the Claim.

① IRRECONSIBLE CONFLICT Between trial counsel and defendant counsel verbally abused and racist comments and threats to not help if Mr. Ramirez did not take Plea. 10th adment ment.

② Defendant shackled in guilt phase of trial and fell down. Sheriff docerty manipulated mr, ramirez to say he did not fall down. Mr. Ramirez told trial counsel this to no avail. This violated U.S. Constitution and State and Federal Right to due process and Fair trial 14th adment ment.

③ Improper comment on Silence detective stated he attempted to interview MR. Ramirez. Violation of Right to remain silent 5th ament ment protected by 14th ament ment.

④ Numerous Instances of prosecutorial misconduct. Comment about doing legal research, ○ closing argument prior bad acts saying Mr. Ramirez head butted a police officer, Broke windows to show bad character amounted to misconduct, Also told Jury hes a liar, menace to society with no proof. Right to Fair Trial By 14th ament ment.

⑤ prior bad acts violated State and Federal Right to due process and fair trial protected by 14th ament ment.

⑥ Challenge of the grand Jury Indictment hearsay used and not allowed in trial By Jury. witnesses sam earl stated I threatened to kill victim but hearsay. inadmissible Ivan vacarry did not show up to trial and wrote affidavit Recanting all he said.

⑦ Double Jeopardy. see attached pages.

⑧ Ineffective assistance of Habeus counsel Linne.e. Kerr, on. Habeus Collateral Review, She did not argue y3d what I wanted and did not take my opinion did it on her own. only had 30 days. She Rushed to Busy, she just wanted to make quick $5,000. Not Fair.

ATR

8. State the nature of the court proceeding resulting in the confinement (*i.e., criminal prosecution, civil commitment, etc.*), including:

    (a)    case name:

D-905-CR-2007-00434

    (b)    docket number:

D-905-CR-2007-00434

    (c)    name of judge:

Teddy L. Hartley

    (d)    name and location of the court in which the proceeding was held:

700. N. Main St. 9th Ind. Cxx District Court

9. State the date of the final judgment, order or decree for confinement:

January 8th 2014

10. Attach a copy of the judgment, order or decree. If not, describe your sentence.

Life eligible parole after 30 yrs two 3 years tampering w. th evidence consecutive

11. Was the conviction the result of:

_____ Guilty plea
_____ No Contest plea (*nolo contendere*)
✓ Finding of guilty by judge or jury

12. Was the confined person represented by an attorney during the proceedings resulting in the confinement?

✓ Yes
_____ No

13. If you answered "yes" to (12), list the name and address of each attorney who represented the confined person:

Jesse. R. Cosby P.O. Box 6350 Roswell. NM 88201

14. Did you appeal your conviction?

✓ Yes (*Go to 15*)
_____ No (*Go to 16*)

15. If you answered "yes" to (14), list:

    (a)    The name of each court to which an appeal was taken:

New Mexico Supreme court

    (b)    The case name and docket number for each appeal:

Alberto Ramirez v. State of New Mexico I dont know how to fill this out

    (c)    The date each appeal was filed and decided: (*Attach a copy of each opinion or order*)

Filed around August 2013
decided december 1st 2016

4

(d)    A summary of the grounds upon which each appeal was based:

Compotency, Comment on silence, oShackles, prosecuterial Misconduct, double Jeopardy, Prior bad acts

(e)    The result of each appeal:

Denied

(f)    The name and address of the attorney on appeal:

STEVEN J. FORSBerg
505 mArquete NW
Albuquerque NM 87102

16.    If you answered "no" to (14), state the reasons for not appealing:


17.    Apart from any appeals listed in (15), have any other post conviction applications, petitions or motions, been filed with regard to this same imprisonment or restraint?

_____✓_____ Yes (Go to 18)
_____ No (Go to 19)

18.    If you answered "yes" to (15), list with respect to each such petition or motion:

(a)    The type of proceeding:

Habeus corpus appr attorney amended petition by Liane. e. Kerr denied.

(b)    The name and date of each case:

Not sure. Alberto Ramirez V.S. german Franco

(c)    The docket number:

No -0905 -CR - 2007 - 00434

(d)    The court, the administrative agency, or institutional grievance committee from which relief was sought:

Warden Franco and 9TH Judicial court.

(e)    The result of each proceeding. (Attach a copy of each decision.)

Denied

(f)    The issues raised in each proceeding:

ineffective Assistance of trial counsel, Prior bad acts, prosecutorial Misconduct, competency, double Jeopardy Shackles claim.

(g)    State whether a hearing was held in connection with each of these proceedings:

disposition yes Im not sure, But no Evidentiary Hearings.

(h)    State whether the confined person was represented by an attorney in each proceeding and, if so, the attorney's name and address:

Yes. Liane. e. Kerr. P.O. Box 10491
Albuquerque, N.M. 87184 -0491

5

19.    Do you seek the appointment of counsel to represent you?[2]

____✓____ Yes

_____ No

## VERIFICATION

STATE OF NEW MEXICO

COUNTY OF SANTA Fe

I, the undersigned, state that I am the petitioner in this action. I have read the foregoing petition and know and understand its contents, and the information contained herein is true and correct to the best of my knowledge, information and belief. I affirm under penalty of perjury under the laws of the State of New Mexico that on August 18th 2 20 (date), I deposited this petition in the internal mail system of the institution in which I am confined, properly addressed with any necessary postage prepaid, for forwarding to the district court at the following address:

9th Judicial district Court (name of court)

____Clovis____ (city), New Mexico, 88101 (zip code).

Alberto Ramirez
(Signature)

PO Box 1059
(Address)

Santa Fe NM 87504

PNM No., if applicable

## USE NOTE

1.    After this petition is reviewed by the Court, the Court will enter the order granting or denying the writ or ordering a response before further action. The order shall be prepared by the Court.

2.    Petitioners who are incarcerated at the time of filing the petition need not file a motion for free process and may file the petition without payment of the applicable filing fee. *See* Rule 5-802(D)(2) NMRA.

[Adopted, effective August 1, 1989; as amended by Supreme Court Order No. 09-8300-008, effective May 6, 2009; as amended by Supreme Court Order No. 14-8300-014, effective for all cases filed on or after December 31, 2014; as amended by Supreme Court Order No. 17-8300-025, effective for all cases pending or filed on or after December 31, 2017.]

Federal Habeus

1 of 6
7-11-20

((Affidavit))
Evidence

The merits of the factual
dispute were Not resolved in
the state hearing.
The state factual determination
is Not fairly supported by the
record as a whole.
The material facts were Not
adequatly developed at the state
court hearing for any reason it
appears that the state trier
of fact did not afford the
Habeaus applicant full and
fair hearings.
The applicant was denied due
process of law in the state
court proceedings
See Townsend v. Sain 372
U.S. 293, 309 83. S.ct. 745
9. L.Ed. 2d. 770 (1963)

TURN

See Anderson v. attorney general
of kansas, 425 F.3d. 853, 858
10th cir 2005
• The factual dispute is clear trial court
Erred. In not inquiring Id irreconsible conflict
Between lawyer and petitioner DisAtisfaction NO TRUST.

Actual Prejudice resulting From
that Failure or that a Fundametal
Miscarriage OF Justice would result
From Failure to hold a Federal
Evidentary heering

SEE. Keeney V. Tomayo - Reyes
504 U.S. 1, 11, 112 S.ct. 1715
1118 L.Ed. 2d. 318 (1992)

SEE daniels V. Woodford 428 F. 3d.
1281, 1200 (9th Cir 2005)

SEE. Andrew V. Collins. 21 F.3d 612
619 5th (Cir 1994)
what is adequate Investigate lawyer
hearing.

At Disposition hearing Not allowed
to Expond the record or testify.

MR Ramirez Did Not waive
and abandon his claim That
State Court violated his Sixth
Amendment right to Counsel by
Failing to rule on his motion
requesting Substitute Counsel. ✕

The district Judge failed to conduct a sufficient Inquiry regarding Substitute of counsel to be sufficient. The trial court Should question the attorney or defendant privately in depth. The did Not here.

MR. Ramirez Claims His Trial attorney called him a stupid Mexican and to Not get him effective assistance OF counsel iF He continued to insist on going to trial. Mr ramirez Stated he would rather represent himself to no avail

Mr. ramirez insist Counsel Said If he testified he could talk about Being Sexually abused.

Mr ramirez also asked trial counsel for motions counsel did Not Request as appilant asked For

TURN

Motion for change of venue and
thier was plenty of in accurate
evidence of prior death threats
and I claims defendant attacked
victim on other time in accuratly.

Mr. ramirz ask trial counsel
to ask for motion for mistrial
the fact Jury seen him fall
and shackled and Sheriff
docerty threatened mr ramire
to say he did not fall
Jury did not see him
Shackled manipulated by
Sheriff docerty. counsel
trial said no to late.

Habeas Attorney Licine E. Kerr
Did not let mr. ramirez
argue that in Habeas.
was denied to expand Record
with affidavit or speak at
disposition hearing
See. Case State v. Brawley
Cite as 137 A. 3d 757
(conn. 2016)

● MR. ramirez States that trial counsel did not keep him informed on the plea deals, or discuss trogedy for trial.

Mr. ● Ramirez States He expressed disatisfaction and distrust and concern to No avail.

MR. Ramirez Claims he was denied due Process to a fair trial.

Mr. ramirez claims Federal Habeaus attorney did not Fully meet with mr. ramirez to properly argue His arguments and Issues.

MR Ramirez States He tried to develope a relationship with Habeous attorney and trial Lawyer to No avail.

Mr. Ramirez States trial
Counsel stated he would
Normally get 50,000 to 100,000
a case. It was a wretse of
time.

Please I ask to Expand
the record with this
Evidence.

Thank you very much!

Sincerly

Alberto
Jose
Ramirez
109597

○ SEE ground Four. I Explained
this to 9th district court and
N.M Supreme court to No
Avail. Please allow me to
Expand Record and get hearing.

THIS is to Help properly PRESENT
Petition For Habeaus. To Give the
State Courts oppurtunity to give
a decision oF My State and Federal 14th
Right to due Process denied And U.S.
constitution violation by Jury seeing
shackles on my leg and I Fell
downs, and IN Effective Assistance
state and Federal 6th admendment Right.
Denied. Also denied effective assistance
denied by post eonviction Habeaus attorney
Lisame. e. KIFR. DiD Not Speak to Me
She was to Busy Ignored me. DiD
Not present My Claims. of Irrecon-
sible conflict resulted in denial oF
effective Assistance of counsel at
trial. I am diliguntly trying
to show I've given court in
state chance to decide Habeaus
And prove my allegation
With Evidentory hearing.
page. 5

Motion For trial transcript
To ASSIST in Filing petition,
and appeal, Facts, And Exibits
to HELP prove, And Future my
claim of ineffective assistance
of counsel. IN light of additional
Facts presented to the courts. in
Amended petition.

motion For discovery to assist in
ineffective assistance of trial
counsel.

Motion to AMENd State Habeaus
Petition. on Fact Federal Right due
Process violated by Failing and Jury
Seeing Shackles during trial. and
U.S. constitution violation. and
state due process violation.

• Motion the district state court and
N.M. Supreme court a chance to Answer
violation of due process State and
Federal. and U.S. Constitution violation
on Shackles and INeffective assistor
of trial And Habeaus attorney.

page 6

• Motion For Informa Pauper
to proceed Free OF Payment
I Am Indigent Prisoner

• Motion For appointment OF

Counsel :.

Motion For discretionary Review

Motion For COLLATERAL Review advised claims
to Exhaust Unexhausted claims - claims
and Be allowed to Properly present
claim of ineffective assistance OF
counsel on alleged claim OF verbal
abuse + threats made by defense counsel

In light OF New additional
Facts presented to the courts

Actual Facts -

TO: NEW MEXICO SUPREME COURT And 9th JUDICIAL district court, TO Federal court And to 10th CIRCUIT and United States Supreme court. TO All COURTS.
• TO whom it MAY CONCERN.

• I HAVE HAD MY PETITION DISMISSED by Judge DREW TATUM ⬛⬛⬛⬛⬛ ⬛⬛⬛⬛⬛ ⬛⬛⬛⬛.

• I ⬛⬛⬛⬛ SENT ANOTHER PETITION TO THE COURT 9th district, With Motions, to Amend, TO Reconsider, And to Fix My Problem OF Not Properly presenting Claim and inlight OF additional Facts, Ex,Bits, Facts Not Known. I have recieved No reply From 9th district court

• I NOW ASK FOR tolling of My exhausted Claims, dismissed Claims, And I AM Pursing STATE COllateral REVIEW ON Unexhausted and dismissed claims.

• I Am Physically disabled chronic hip pain, groin, back NECK, Shoulder pain., Also A Broken Knuckle ON Right hand. I AM MENTAlly iLL, PTSd, depression Anxiety, And Psychosomatic Delusionel, And Schrizophrenic.

• I Am TRYING TO Exhaust My Claims and Not have to Move Forward with Claim dismissed, Appointment of counsel denied, "I AM ASKING that counsel BE appointed, an Evidentary Hearing, drpositionary, Be granted And My WRit granted."

• I dont WANT TO be denied Requests, and PETITION dismissed, I AM NOT properly Filing petition, I am not recieving and be denied legal access to law library and Books+ Forms and copies, and No assistance AT ALL.

dismissing my petition, and denying my request for counsel would

- This would create a miscarriage of justice by not granting my writ, my request for appointment of counsel, and my request for collateral review to exhaust unexhausted claims, and to be allowed to properly present claim, on **Alleged** verbal abuse and threats by counsel.

- FACT my defense counsel has died and I was prejudiced by his performance and having to be represented by force after I fired counsel in trial, and I ask to represent myself. I had continuously objected and expressed my dissatisfaction, and when I ask to speak on record, after I fired my attorney, every time I was denied. There was no inquiry on the issue, it was not looked into why I fired my defense counsel, or to represent myself.

- The conflict defense counsel and I had, counsel, it was irreconcilable CONFLICT it affected his performance my defense, counsel did not have my best interest at heart. He had his I had my interest. He was angry.

- I was denied counsel at critical stage, by having no inquiry, and to be represented by counsel who had stated to me, "You little stupid bitch" and said "I hope you get life."

- I am doing life plus 8 yrs or 6 yrs. I did not know maximum and minimum time I was facing or I'd get if convicted, counsel would not let me know, I tried I asked to no avail.

PAGE 10

FORM 9-701

page 2

**STATE CONCISLEY THE FACTS UPON which THE CONFINED PERSON bASES THE CLAIM.**

THE JUDGE IGNORED PETITIONERS REQUESTS FOR SUBSTITUTION OF COUNSEL AND DEMANDS TO FIRE HIS ATTORNEY. TWO WEEKS BEFORE TRIAL, TWICE IN TRIAL. PETITIONER EXPRESSED DISATISFACTION, complained OF COUNSEL NOT FILING MOTIONS FOR CHANGE OF VENUE. WHEN THERE WAS INACCURATE EVIDENCE OF MR RAMEREZ ATTACKING THE VICTIM BEFORE INCIDENT. ALSO OTHER HIGHLY PREJUDICIAL INADMISSIBLE EVIDENCE. OF MR RAMIREZ breaking WINDOWS, AND ASSAULTING battery officers IN SMALL COMMUNITY OF CLOVIS, PETITIONER ALSO COMPLAINED ABOUT BEING CONFUSED OF PROCEDURES AND COUNSEL NOT EXPLAINING PROCEDURES. MR. RAMIRZ PETITIONER COMPLAINED OF A SERIOUS Breakdown IN COMMUNICATION BETWEEN COUNSEL AND PETITIONER. PETITIONER TRIED TO COMMUNICATE TO COUNSEL TO NO AVAIL. COUNSEL FAILED TO ADVISE petitioner OF PLEA DEAL OR EXPLAIN the MAXIMUM And MINIMUM TIME FACING. COUNSEL FAILED TO BE RESPECTFULL AND RESPONSIBLE AND FUFUIL HIS DUTY OF loyalty TO ADVOCATE TO PETITIONER By NOT CALLING OTHER WITNESS PETITIONER WANTED CALLED AS WITNESSES. COUNSEL THREATENED PETITIONER THAT IF HE did NOT TAKE PLEA AND KEEP ON INSISTING TO GO TO TRIAL HE WOULD NOT PROVIDE effective ASSISTANCE OF COUNSEL.

PAGE 11

Petitioner told counsel and psychiatrist and family of being sexually abused by victim as a young child.

Counsel failed to alert the court that petitioner told him he fall down July saw his shackles and he fell down. And that sheriff doggerty manipulated the threatened petitioner to say he did not fall down and that the jury did not see his shackles. Petitioner asked counsel to request a mistrial and to put this on record. Counsel refused to do it.

Counsel failed to call witness's pricilla lopez nuboc eye witness, and Ricky jaramillo eye witness to help prove I was the one being chased and I shot in fear for my life I did not chase victim.

Counsel failed to investigate family history of mental illness in family- and to defense.

Petitioner called counsel and write to him counsel would not speak to me at all, and ignored me to busy.

page 12

COUNSEl promised PETITIONER IF HE
TESTIFIED PETITIONER would be able
TO Testify OF being SEXUALLY Abused
by VICTIM And Neibor eyewitness Son said

COUNSEL Failed TO call FATHER Jose Ramire
who would OF testified victim attacked him
twice and was Aggressive,
Also BROTHER Israel Ramire was attacked by
victim to show aggression.

COUNSEl KNEW I Had been drinking alchuhol
day OF INCIDENT and TOld ME TO NOT
talk of being drunk IT would NOT
HElP.

PETITIONER Had several witnesses He wished to
call. to present in support of his defense
Aunt, SISTER, BrOTHERS, Friends. doctors who
TREATED Him after accident.
COUNSEL Failed to Alert court t important
Facts in crquing case. Detitioner was IN AN
accident IN 2007 which began taking
antideppresant Medication, & other medication
THIs Become Seure depression, He was unable to
walk only with crutches, suffered delisions
Hallucinations. ptsd.

Page 13

COUNSEL would Not discuss trial Strategy
OR Anything.

COUNSEL Told petitioner He Hoped He Got
Life.

PETITIONER Tried TO Speak ON Record
twice to put This on Record but
was denied.

PETITIONER Request that the court GRANT
Him an attorney to assist him IN
Habious proceedings And To Hold an
Evidentary Hearing ON Ineffective
assistance OF counsel Because
unfortunatly all Facts and allegations
are not on the record to properly
decide case.

Page 14

prosecutor used prior bw acts to show
character of propensity and it Amounts
to prosecutorial misconduct

* Also prosecutor cross EXAMINATION
on petitioner DOING legal research
TO Beat His CHARGES. Then asked
right after you did legal research to
Get the Jury to buy this. ITS
A COMMENT ON petitioners Right
To assist in ASSIST.


OTHER Facts OF CASE

* Habeaus COUNSEL Failed to discuss ISSUES
petitioner WANTED added, And ARGUED
Properly, 1st Habeaus lawyer
Amanda Stephenson Refused to Request
trial transcript OF closing ARGument
Had case 6 months would NOT
Request or File Anything or discuss
Case with PETITIONER,
2nd petitioner Liane KERR was
Substituted because of CONFLICT OF
INTEREST.
Habeaus ATTORNEY RUSHED Petition because
She was denied 60 day extension
Request and did Not meet fully
With ME. WAS to busy to
talk ON Phone.

Page 16

state consider the facts upon which the confined person bases the claim.

✳️ The trial court abused its discretion in denying petitioner request, demands to fire or substitute counsel

① There was no inquiry by judge

② No consideration of length of delay

③ The extent of conflict created

OTHER FACTS

✳️ Whether I believe petitioners criminal convictions were obtained in violation of his state and federal rights to due process and a fair trial, when prior charges and uncharged acts were introduced about a balancing analysis under rule 11-404.B.?

Evidence of head butted a police officer inadmissible evidence of letter exist no writings of stealing people to prove element of premeditation

✳️ Facts

Prosecutorial misconduct in closing argument say mr Ramirez petitioner is a menace to society and a liar no evidence to prove this its prosecutorial misconduct.

✳️ Also closing argument evidence on prior bad acts on inadmissible evidence of breaking windows, head butt battery on officers, and doing legal research in closing argument after judge told him to Not use this evidence.

page 15



$A^2$. Ground.

INEFFECTIVE ASSISTANCE
OF Counsel trail Court
Errectin denying Petitionor
NEW
Counsel

THIS PAGE

INTENTIONALLY

LEFT

BLANK

PAGE 17



(a) # Ground
TOGETHER PAGE 1

TRIAL COUNSEL TOLD MR. RAMIREZ THAT
HE WOULD NOT PROVIDE EFFECTIVE
ASSISTANCE OF COUNSEL IF I MR.
RAMIREZ CONTINUED TO INSIST ON
GOING TO TRIAL AND WOULD NOT
TAKE THE PLEA." ALSO TRIAL COUNSEL
DID NOT EXPLAIN THE MINIMUM AND
MAXIMUM TIME MR. RAMIREZ WAS FACING.
MR. RAMIREZ ALSO TRIED TO FIRE HIS
ATTORNEY ONCE IN FRONT OF THE
JURY IN MIDDLE OF TRIAL,
COMPLETE BREAKDOWN IN COMMUNICATION.
THE DISTRICT COURT ABUSED ITS DISCRETION
IN THE FACT THE JUDGE NEITHER QUESTION
THE TRIAL ATTORNEY OR MR. RAMIREZ
PRIVATELY NOR IN DEPTH OF TO THE
DISSATISFACTION AND OF THE COMPLAINTS
AND REQUEST TO CHANGE SUBSTITUTE
COUNSEL.
ALSO. JUDGE COURT DID NOT INQUIRY
INTO MR. RAMIREZ REQUEST.

Page 18

FACTS + transcript, newspaper clippings, discovery, to prove claim of INEFFECTIVENESS counsel

See Exibit 4,5    1,2,3

MR. COSBY COUNSEL trial DENIED and Failed to provide effective Assistance.

A WEEK BEFORE TRIAL I ASK TO FIRE My ATTORNEY DURING TRIAL IN COURT I FIRed My ATTORNEY. EACH time theRE NO INQUIRE INTO why I was Expressino dissatifaction I WAS Told twice by MR COSBY BEFORE TRIAL STARTed and after I TRIEd to FIRE hiM IN COURT DURING trIAL COSBY Stated - I AM A little Stupid Bitch and made threats, by SAYING I Hope you GET liFe, I alreidy told you to tAke the plea or you wont be provided EFFECtIve assistance OF COUNSEL.

I WAS NOt able to put the allegations on REcord.

But SEE ExiBit's (10) page 1, 2, 34,5
(10) page 38 - 47

Page 25

St v. A. Ramirez - CR07-434

COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 9:38:59 AM | DEF | I'M DISSATISFIED. THANK YOU FOR LETTING ME SPEAK. WANT TO ANNOUNCE THAT IF I COULD POSTPONE THE COURT, GET NEW ATTY. IF YOU WOULD BE WILLING TO, BUT IF NOT I WILL GO TO COURT WITH HIM. IF I LOOSE THIS CASE, DON'T WANT HIM TO BE MAD AT ME OR LOOSE CASE FOR ME, ASKING FOR NEW ATTY. NOT DOING HIS DUTIES AS ATTY. THAT IS HOW I FEEL. I SAID IT AND I JUST FEEL HE MIGHT LOOSE THIS CASE FOR ANY REASON. I DON'T HAVE A GOOD FEELING ABOUT GOING TO TRIAL. THANK YOU, THAT'S ALL I HAVE TO SAY. |
| 9:40:29 AM | CT | ANY OTHER COMMENTS - NONE. LET ME ASSURE YOU OF SOME THINGS. FILE DEMONSTRATES THAT ATTY WOULD AND SHOULD DO IN YOUR CASE, HE IS A PROFESSIONAL AND WILL WORK AS HARD AS HE CAN. HE WON'T BE MAD AT YOU FOR TRYING TO CHANGE LAWYERS. HE IS A SEASONED TRIAL LAWYER. CAN'T THINK ANYONE WHO WOULD DO YOU A BETTER JOB, YOU ARE AS WELL REPRESENTED AS YOU CAN BE. DON'T WANT YOU TO BELIEVE YOU WON'T GET A FAIR TRIAL. BASED ON THAT, COURT WON'T SUBSTITUTE COUNSEL AT THIS JUNCTURE. GO TO TRIAL |
| 9:41:52 AM | DEF | NO WAY I CAN POSTPONE COURT |
| 9:42:00 AM | CT | THE FILE IS OLD AS YOU KNOW IT. DON'T THINK WITNESSES WOULD BE SURPRISES, LEGITIMATE WITNESS WILL BE HERE FOR TRIAL. THAT WILL BE TAKEN CARE OF. DON'T BLAME YOU FOR BEING CONCERNED |
| 9:42:38 AM | DEF | ANY WAY THE DR CAN EXAMINE ME, FEEL I AM ILL. DON'T FEEL YOU WANT TO GIVE ME A CHANCE |
| 9:42:54 AM | CT | YOU HAVE BEEN EXAMINED. YOU HAVE COMPLAINTS, WE ALL HAVE THEM. THE COMPLAINTS YOU HAVE VOICED, AND DRS EXAMINED YOU SAY YOU ARE ABLE TO GO TO COURT. YOU ARE ABLE TO GO TO TRIAL AND ABLE TO PROCEED AND THAT IS WHAT WE WILL DO. |
| 9:43:32 AM | DEF | NO WAY TO POSTPONE THE COURT |
| 9:43:38 AM | CT | NO REASON TO DO THAT, ALL PREPARED. IT WILL BE ON MONDAY. |
| 9:43:50 AM | DEF | THANK YOU TO COSBY, AND DA - |
| 9:44:08 AM | CT | WHAT YOU GOT IS NOT THE WAY IT IS. SUPREME COURT HAS APPT ME TO THIS CASE. |
| 9:44:24 AM | DEF | I WANT YOU ON THIS CASE, YOU KNOW WHAT I WAS GOING THROUGH. |
| 9:44:37 AM | CT | I WAS THERE THAT WE HAD THE HEARING, THE PLEA. REMEMBER YOU WERE CRYING. |
| 9:44:52 AM | DEF | ALWAYS BEEN REMORSEFUL. WHEN BRETT CARTER GAVE ME EXTRA YEARS. I'M SORRY I WITHDREW MY PLEA. |

7/29/2013

page 2

See Exibit page 7 page 53, 54, 55, 59, 56
Exibit 13
Page 2

I TRIED to address court my lawyer was NOT Filing Any of my motions I Asked him to. Change OF VENUE, EVEN though there WAS PRE-trial publicity concerning the Case in Small community of CLOUS, NEW mexico. Some of this publicity inaccurately described Mr ramirez as having attacked Alleged victim on prior occassions, THE publicity WAS in accurate and highly prejudicial and defense Cowsel Should have at least raised the issue and reaueuted a HEARING. SEE Exisit.

Exibit 3

Cowsel Should have at least Filed a Motion to suppress Evidence that was illegauy Siezed + inadmissible and highly prejudicial See Exibit 11, or requested A HEARING on this issue

See 11 Exibit page 48 49 50

COUNSEL did NOT provide me with All discovery, would NOT discuss who He was planning to Call as witnesses And would not DISCUSS intent to present the defense OF INSANITY COUNSEL did NOT File a Notice OF INTENt to present the defense Exibit 1) page - 1, 2, 3, 4. 5

See page 3, 4

page 27

ST. VS ALBERT RAMIREZ  CR-07-434                                COURTROOM ONE

| Time | Speaker | Note |
|------|---------|------|
| 1:18:24 PM | | JURY BEING SEATED IN BOX |
| 1:19:33 PM | | #7 WITNESS ROGER GRAU LT. WITH CLOVIS POLICE DEPT. CALLED BY MORRIS / SWORN / DEX |
| 1:20:54 PM | | THE MCU WAS ACTIVATED ON JULY 12TH, MADE SURE ALL THE PEOPLE WERE IN THE RIGHT POSITIONS, AND CRIME SCENE WAS BEING HANDLED |
| 1:21:28 PM | | SEARCH ITEMS OF CLOTHING IN THE BAG, |
| 1:21:53 PM | | WHAT WAS INSIDE THE BAG, "PAIR OF SHORTS" IDENTIFICATION OF DENIM SHORTS |
| 1:23:40 PM | | WHAT DID YOU FIND WHEN YOU SEARCHED SHORTS |
| 1:24:57 PM | | IDENTIFICATION EXHIBIT 62 "BAG OF BULLETS FROM PANTS POCKET" |
| 1:25:39 PM | | OFFERS EXHIBIT 62 / ADMITTED |
| 1:27:48 PM | | IDENTIFICATION EXHIBIT 63 "PIECE OF NEWSPAPER FOR HOUSES TO RENT THAT CAME FROM BACK POCKET OF JEANS / OFFERS / ADMITTED |
| 1:28:21 PM | | IDENTIFICATION EXHIBIT 64 "WALMART RECEIPT FROM HIS PANTS" |
| 1:28:50 PM | | WHAT IS THE DATE ON RECEIPT, WHAT WAS PURCHASED 22 CAL. AMMO |
| 1:29:24 PM | | OFFERS EXHIBIT 64 / ADMITTED |
| 1:29:33 PM | | IDENTIFICATION EXHIBIT 65 "NM ID CARD FOUND IN HIS POCKET" |
| 1:29:59 PM | | OFFERS EXHIBIT 65 / ADMITTED |
| 1:30:08 PM | | IDENTIFICATION EXHIBIT 66 "FOOTLOCKER RECEIPT" |
| 1:30:56 PM | | OFFERS EXHIBITS 66 / COSBY OBJECTS / COURT |
| 1:31:31 PM | | ARE YOU AWARE OF WHAT WAS ON THERE BEFORE |
| 1:31:41 PM | COSBY | OBJECTS / COURT RECEIVES MEMORY IS SUFFICIENT |
| 1:32:01 PM | | IDENTIFICATION EXHIBIT 67 "FOOTLOCKER RECEIPT" OFFERS |
| 1:32:34 PM | COSBY | OBJECTS / COURT UNDERSTANDS OBJECTION ADMITTED |
| 1:34:30 PM | | IDENTIFICATION EXHIBIT 68 "PHOTO OF CONTENTS" OFFERS |
| 1:35:08 PM | COSBY | OBJECTS, TOOTHBRUSH NOT IN EVIDENCE" COURT OVERRULES / ADMITTED |
| 1:37:08 PM | | IDENTIFICATION OF EXHIBIT 69 "PHOTO OF SAME ITEMS" |
| 1:37:45 PM | | MOVES EXHIBIT 69 / SAME OBJECTION / ADMITTED |
| 1:37:57 PM | | IDENTIFICATION EXHIBIT 70 "PHOTO ID CARD" MOVES / ADMITTED |

10/8/2013                                                                    10 of 12

page 28

- o  Left open IAC to be addressed in habeas
- 1/18/2017- Mandate Affirmed
- 3/22/2017- 1st Habeas Petition
- 5/31/2017- Petition denied
  - o
- 6/20/17/- Current Habeas Petition
  - o  IAC of trial counsel and appellate counsel
  - o  Trial Counsel- Deceased. Jess Cosby. Petitioner tried to "fire" him before, during and after trial.
  - o  Trial counsel failed to file motions on his behalf: change of venue; motion to suppress evidence illegally seized (doesn't say what evidence).
  - o  Trial counsel withheld discovery from Petitioner. Did not discuss trail strategy or what witnesses intended to call. Failed to file notice of intent to present insanity defense.— Prior to murder charges, Petitioner was in an accident and taking numerous medications that could have affected him.
  - o  Failed to call witnesses- Aunt, Sister, Brother, Friends, and doctors who treated him after the accident.
  - o  Falling in front of Jury while wearing shackles. Case should be dismissed.
  - o  Failed to call Dr. Fink, Dr. Burness, Dr. Swartz to testify he had been sexually abused by mom's boyfriend and neighbor Sam Saiz
  - o  Failed to call witness Pricilla Lopez to help self defense claim.
  - o  Failed to say he was on crutches.
  - o  Counsel verbally assaulted him and was not respectful.
  - o  IAC of Appellate counsel- failed to argue that TC failed to call numerous witnesses and present insanity defense. Failed to state he was not given a fair sentencing hearing. Failed to raise verbal assault from TC.... Wanted to represent himself.

Discovery:

- Jess Cosby was trial counsel. Deceased and have not located trial file.
- Copied discovery that was retained by Petitioner
- Received copy of record proper from Appellate Counsel Steve Forsberg
- Copy of BIC, Reply, Answer Brief, and memo opinion from Steve Forsberg
- Obtained Audio CD's from district Court
- **Outstanding Discovery**- still have not been able to attain Mental Health Records/Prior evaluations. Evaluated by Maxanne Schwartz and NMBHI

MISC

- I have spoken with Albert numerous times. His main focus is on the shackle issue. I have tried to narrow down his other issues and discuss with him what they are (hard to read his handwriting at times). He repeatedly asks for extension on his case so he can "amend" the petition and get back to me on what those other issues may be. I have continued 2x in order to try and recreate a trial file. However, it appears the mental

Page 29

ST. VS ALBERT RAMIREZ  CR-07-434                    CR1 CHAMBERS

| Time | Speaker | Note |
|---|---|---|
| 10:40:24 AM | | COURT IN SESSION OUTSIDE PRESENCE OF JURY DFT AND ALL PARTIES PRESENT |
| 10:40:41 AM | COSBY | HAS ONE OTHER ISSUE, MY CLIENT HAS TOLD ME THAT HE WAS SEXUALLY ASSAULTED ETC. |
| 10:42:10 AM | | HE WANTS TO TESTIFY THAT MR. ROBLEDO AS WELL AS MR. SAIZ SEXUALLY ASSAULTED HIM |
| 10:42:28 AM | CHANDLER | THERE IS NOTHING THAT SUPPORTS THAT PARTICULAR CLAIM, IT HAS NEVER BEEN REPORTED, WHEN DID THE HAPPENED , IT IS THE TIMELINE, |
| 10:43:36 AM | COSBY | UPON ON HIS FIRST STATEMENT, WHEN MY CLIENT FIRST WENT TO HIS HOUSE MY CLIENT TOLD HIM HE HAD BEEN SEXUALLY ASSAULTED, |
| 10:44:17 AM | COURT | HERE IS THE PROBLEM WE RUN INTO, THE KIND OF THE TIMING, THE COURT IS OF THE OPINION THAT I WILL NOT ALLOW IT, THRE WAS NOTHING TO SUGGEST THAT IN HIS OPENING STATEMENT, IF THE STATE IS OF THE OPINION THAT WE CREATE AN ERROR BY EXCLUDING THIS, I WILL RULE AGAINST IT |
| 10:45:42 AM | DFT | ABOUT THIS MATTER, THE REASON I DID NDT SAY ANYTHING IN MY OPENING STATEMENT |
| 10:46:16 AM | COURT | YOUR ATTORNEY MR. COSBY IS DOING AN EXCELLENT JOB, I HAVE LET YOU TALK, THE PART I AM GOING TO RESTICT THAT WE ARE NOT GOING TO GO INTO THIS AREA |
| 10:47:12 AM | DFT | I DID NOT GET ASKED ABOUT BROKEN WINDOW, THIS IS MY LIFE , I FEEL LIKE I AM NOT HAVING A FAIR TRIAL, IF I DID NOT GET ASKED A QUESTION ABOUT SEXUAL ASSAULT |
| 10:48:28 AM | DFT | I LET MAXINE SWARTZ THAT I WAS SEXUALLY ASSAULTED, ETC |
| 10:49:17 AM | | I TRIED TO EXPLAIN TO DR. FINK , IT IS NOT FAIR I THINK IT IS RELEVENT |
| 10:49:4X AM | COSBY | THERE IS RECORD THAT HE DISCUSSED WITH PSYCOLOGIST OF SEXUAL ASSAULT, THERE IS NO EVIDENCE BEFORE THE HOMICIDE |
| 10:51:54 AM | COURT | WILL GIVE YOU FIVE MINUTES |
| 10:52:21 AM | DFT | WHEN MR. COSBY STATED THAT I WAS MELINGERING , AND PSYCHOLOGIST BELIEVED ME, ABOUT FOSTER CARE I WAS EMBARRASED MY MOTHER KNEW, EXPLAINS WHAT HAPPENED WITH ELADIO |
| 10:54:59 AM | | REGARDING SAM SAIZ HE USED TO GO OVER THERE WHEN HE WAS IN JUNIOR HIGH, ETC. |
| 10:58:18 AM | COURT | I'VE GOT YOUR STORY, AFTER HEARING THE STORY IT IS NOT RELEVENT |

10/10/2013                                                     2 of 5

page 30

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript



1       say and you're saying some more stuff right now that is on the record. The part that I'm gonna

2       restrict is that you're not gonna go into this area at this juncture in this trial.

3   AR:  It's-it's, uh, relevant to the case and also I didn't get asked about how, about my schooling, like I

4       thought it was maybe it was important to the Jury about how I was doing in school and before

5       how this led up to it and I didn't get asked about why I broke the window to my mom's

6       boyfriend's car, what happened that day, who was there, I didn't get asked, um, several things ...

7   DT:  See those are not relevant to the issue that we are here about.

8   AR:  How come they've used it in court? He brought it up. The prosecution said I broke a window

9       but it's not relevant? It's relevant if the prosecution used it but I can't explain why it's relevant

10      Your Honor and you all a very educated man and I'm a nobody and I'm real low, uh, low IQ but

11      I guess in my life and I feel like I'm not having a fair trial because if-if I would have known that

12      I didn't have to get asked a question about me being sexually assaulted by my neighbor and

13      (inaudible) I would have just said it myself but I just had respect for the courts and for you for

14      Matthew telling everybody I wasn't gonna just throw it out there like that.

15  DT:  You're-you're ...

16  AR:  But I don't feel it's fair.

17  DT:  You have, you've explained this issue and you've been through psychological evaluations and

18      we've had two for sure ...

19  AR:  Okay.

20  DT:  ... did you explain that to them?

21  AR:  Yes. Yes sir. Another thing, thank you for letting me speak, I greatly appreciate it and God

22      bless you all. I've let Maxine Schwartz know that I was sexually assaulted. It's on record, she

page 32

of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

| | | |
|---|---|---|
| 1 | | my defense but like I said in the past, I've asked to fire him, I've asked to get a new attorney |
| 2 | | which I can't, I can't afford it I'm poor, I have no help from my family just basically to get my |
| 3 | | hygiene and that's it and-and also I, um, I asked for a new attorney, I asked for a private |
| 4 | | investigator, I asked for a neurologist evaluation, I asked for another competency evaluation, I |
| 5 | | asked for several motions which I don't know if they were, they were even filed or if they were |
| 6 | | denied, I've asked, uh, I don't know if Mr. Cosby I just feel like maybe I-I have a big mouth and |
| 7 | | I sit to-to open my big mouth and say things and I don't know if I made him angry or upset or |
| 8 | | frustrated or what I've done but for some reason I don't know if he's gonna lose this case |
| 9 | | because it's a weak case or if it's intentionally or accidental or I'm just paranoid or ... |
| 10 | DT: | Mr. Ramirez. |
| 11 | AR: | ... but-but something Your Honor for that ... |
| 12 | DT: | The issues that you wanted to be on the record you've listed them and I think you've listed them |
| 13 | | well, uh, thank you for all the truth of the situations that-that you face, uh, and-and-and it's tough |
| 14 | | to understand everything even if you're in the system, but I think that you've made a record ... |
| 15 | AR: | Sorry Your Honor. |
| 16 | DT: | ... and the Appellate Court will see that record and-and therefore that's-that's what you needed to |
| 17 | | do and that's what you've done. |
| 18 | AR: | Okay. Thank you Your Honor I had more, uh, uh, things to say but thank you for that time I'll- |
| 19 | | I'll just say them on my appeals, I had more things that I wanted to say but thank you. |
| 20 | DT: | Okay thank you sir. Alright (9:25:58) |
| 21 | | |
| 22 | | |

page 33

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript



1      knows. I've told her what happened by my neighbor, by my mom's boyfriend, I told Maxine

2      Schwartz that's why I was hurt that I didn't get to have that as my defense today and also ...

3  DT:  And who is Maxine Schwartz.

4  JC:  She's the one, uh, the original determination wasn't competent.

5  AR:  And also ...

6  JC:  Psychologist.

7  AR:  ... Dr. Burness I'm not gonna say whether she asked me or not but like I said I was assaulted over

8      there and battered and they sent me back and found me competent which isn't, wasn't good, was

9      not prop-professional and also Dr. Fink I tried to explain this to Dr. Fink that I was sexually

10     assaulted and-and Dr. Fink stated well that doesn't have anything to do with your case. He said

11     your murdered somebody and that doesn't have nothing to do with your case and he said also he

12     said even if you were incompetent my job as working for the State of New Mexico is to find you

13     competent and whether you get to the hospital or not they're still gonna find you competent

14     because that's the job the State of New Mexico has and I said well I explained everything and I

15     was, I' not get, I'm not, it's not fair and I think it's relevant.

16  JC:  Okay there is ...

17  AR:  If your child was ever assaulted would you want ...

18  JC:  Can-can we finish please? Go ahead but there is record that you discussed with psychologists

19     something about being sexually assaulted in the report and I hesitate to have to do this but in the

20     report the psychologist says that he's malingering and fabricating and that the allegations of

21     sexual abuse is I believe that her term, highly suspect. So it was brought up, it was discussed, it

22     was not, um, commented much upon except when the report that the person said because of his

24

page 34

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1  DT:  It is highly suspect for sure in my opinion.

2  AR:  I, uh ...

3  DT:  And (inaudible) against you're done so say what you want to say.

4  AR:  Okay. Mr. Cosby stated that supposedly a psychologist/psychiatrist stated that I was malingering

5      or they didn't believe me which in my opinion when he said that, which it went against me and

6      on the record, okay if there's a psychiatrist/psychologist, Maxine Schwartz which I told and she

7      believed me, um, that would be relevant and that would help my case which would make it

8      allegedly true and what he said about somebody saying that I was malingering makes me look

9      bad but why would he say that Dr. Maxine Schwartz believed me when I told her about the

10     sexual abuse and it makes me right. And also about foster care okay I never told nobody, I was

11     embarrassed. The only person I told was my mother and about this I was about, when

12     (inaudible) done this to me he would give me beers so I started drinking with him and then later

13     on I drunk a lot of beers with him, and, um, I was 16 it was the summer time and, uh, he, uh,

14     tried to kiss me and I told him no and, uh, he got in my face and he threatened to-to punch me, he

15     threatened to hit me and I-I didn't want to get hit, I was scared. So I said okay. Then, uh, he

16     forced me to give him oral sex which I did, which only lasted maybe 2 to 3 minutes at the most

17     and then it was done, it was right in the living room, I was sitting on the couch, he was standing

18     in right in front of me and I did it and he told me not to say nothing but I told my mom and my

19     mom asked him, he denied it. Well then later om about a month later he-he did it again and I

20     told my mom and she said, uh, she was gonna call the cops and-and, um, they got in an argument

21     and I guess he unplugged the phone and they were talking and then my mom sent me to my room

page 35
27

State of New Mexico vs. Albert Ramirez
Criminal Cause No. D-905-CR 2007-00434
Excerpts from Transcript

1        and then nothing ever happened. My mom just said I talked to him, I talked to him and-and that

2        was it.

3  DT:  (inaudible)

4  AR:  And-and-and she told me that she said that she told him that if I ever said anything about him

5        hitting me or any sexual abuse that she was gonna press charges and that I was gonna give, I was

6        gonna have to tell the police and stuff, well not about that, well about Sam Size. I used to go

7        over there because he used to call me over there and when I was between junior high I used to go

8        over there and I always used to like to drink and smoke weed so in order to get beer, I would go

9        to him and I just went over there and I would drink and, um, I would get a beer or two and he'd

10       give me a beer or two and he tried to, he tried to get with me. He just asked for a hug and then

11       he grabbed my, I can't remember if he grabbed my penis and my butt or both and he tried to put

12       his lips on mine, I told him no back up, you know, and I-I ran away with the, with the beer and

13       then I-I ended up going back one more time and, um, I needed some more beers cause I was with

14       my friends and it was Sunday, I don't remember the date, it was summer time, I was 16, he gave

15       me, I went and I said hey man I-I need some beers and, um, I don't remember exactly what was

16       said but I know he gave me like 7 to 8 beers and he tried the same thing on me and he touched up

17       on me and that's assault, he grabbed my penis and my butt and everything and he always tried to

18       invite me over there but I was scared of him. The reason I was scared of Sam Size to go over

19       there was because he told me when I was a little kid, do not, he told me he said, um, cause I used

20       to hang out at the other neighbor's house and he used to just give me beer free, he wouldn't try

21       nothing on me or anything, he just gave me beer for free, just to hang out, smoke and, uh, Sam

22       told me I don't like him, you shouldn't be hanging out with him because he's always talking crap

page 30

page 3

ExiBit 1, 3, 10 page 4, 10, 12, 13
page 7

INSANITY, But INSTEAD OF advocating
ZEALOUSLY on BEHALF OF I mr ramirez
DEFENSE, COUNSEL INFORMED the
COURT that HE would NOT be presenting
EXPERT PSYCHATRIST, or physician,
BECAUSE mr. Ramirez wont discuss
the CASE with him and is unable
to assist in the defense.
COUNSEL Failed to ALERT the court
to important FACTS IN arguing
the CASE. MR RAMIREZ was
INJURED IN an accident in 2007
Which he began taking anti-
depressant Medication, & other
Medications, this Became severe
depression as he was unable
to walk, work, or drive, could
only walk with cructchis, suffered
From psychosomatic delusions,
Hallucinations, and counsel did not
present evidence of the medication
Mr ramirez was taking.
Mr. Ramirez felt his lawyer was
against him, see page 4, 10/12, 18
ExBit 1, 3,

page 37

Page 4

SEE EXISIT I, page 1-5
Exisit 10, page 41  (page 4)

COUNSEL Failed to File any
WITNESS list whatsoever IN
Support OF MR Ramirez'S defense
OF INSANITY and lack of capacity

MR Ramirez had several witnesses
He wished to present IN support of
his defense, Including his Aunt,
Sister, Brothers, friends, and
doctors who Treated him after
accident.
COUNSEL failed to Show courts JENNIFER said wENt
I wANt to cooperative
D.A. DRESS lied Send I
MR. Ramirez asserts that he      wouldN't
                                  cooperate
received INeffective assistance OF       liers
Counsel For various reasons that
are, unFortunately, NOT ON
Record, Because those MATTERS
were NOT presented IN the record.

MR. Ramirez Request that the
court grant him an attorney to
assist him IN habeas proceedings
and to Hold AN Evidentary
HEARING. ON ineffective OF
Counsel.

page 30

Page 5

Exibit 1. 2:12 05
PM
⊕ · ⊥ 10/10/2013

AFTER I Fired Counsel in trial
Counsel verbally Assaulted me I
advised counsel. I did fall down
in front of Jvey Because of
the shackles on my leg tied to
the tabil, when I was told all
rise, sheriff called me to door
I fell, Jvey Saw my shackles,
while my lawyer went to talk to the
Judge the Judge, The Sheriff
docerty threatned me and told
me to say I did not fall.
I was asked by Judge did you
Fall. I Said yes then no
Because Sheriff was gesturing
me to say no. Only D.A
Could see. She was shacking
Head & Finger and mouthing no.
I told my lawyer this and
ask him 🟦 why dont he say
it to the court. ask for mistrial. But
He Said No I Alreedy made
up my mind.

I asked Trial counsel ask for mistrial
due to jury seeing shackles in violation
of state and federal Right to Fair trial
And violation of U.S Constitution
See. Deck U. Missouri

Page 39

IneFFective assistance of
Counsel

See This
   Robedo weighed 175 pounds
In This page Ex,bit 2 A
See Exbit 2 B.
   He weighed 145 pounds
   typo messedup. Accident

Could of Argued this at
trial. 2

page 40

OUT OF HOSPITAL CARE REPORT
Clovis Fire Department

Service No  306316                                                           Unit No.  24
Incl# 07-0003238    Pt# 0001                                                 Alarm Date 07/12/2007
FDID# 09013

EXIBIT Z

### Disposition

Transported to 9 PRMC/Clovis                    Dest Determined by  06 Protocol
M   f Transport  1 Ground                        Diverted To
     y Tiered With                               Patient Disposition 01 Treated, Transported by EMS
Lights/Siren from Scene? Emergent, with lights or siren    Pulse on Transfer    2 No

### Insurance

Type              Policy #           Group #            Insured Name

### Patient Narrative

Ambulance 1 arrived at 512 West 6th with a report of a subject on the ground.  Ambulance 3, Bill Baca and myself
arrived at the same time.  Patient was lying with his head to the north on his left side in a pool of blood.  Patient
was placed on a LBS board, placed on the stretcher and taken to the ambulance where IV's, O2 and intubation was being
prepared.

EMS Personnel was asked to gown up and get ready to transport code 3.  K Buros prepared to intubate the patient.  Ben
Black was assisting with airway procedures, Chris Elam, Mike Nolen and J. Boyd, worked on IV's, Bill Baca was hooking
up the monitor, and spiking IV fluids for the lines that were being attempted.  John Bradley was handing personnel
equipment that requested additional supplies.  Suction was prepared by Bill Baca since the patients airway was full of
blood.  In trying to suction it was noted that we would get a tremendous amount of coagulated blood and mucous.  Sour
suction was not effective or were we able to get a clear site of the vocal cords.  A Combi Tube was placed and lung
sound were diminished on both sides when bagged with 100% O2.

The initial pulse was weak at the carotid, with blood and mucous streaming out the patient's mouth and nose.  Once
airway was established we felt for a pulse to find no pulse, but had an organized rhythm on the monitor.  PEA was
identified and the ACLS protocol was initialed as we arrived at PRMC..  CPR was started, and bagging with 100 % O2 was
continued.  We arrived at PRMC with patient moving the patient from the ambulance into C-2 where personnel stayed and
hel---d staff with patient care.

It  as noted that the patient was shot twice in the head, once in the chest, once in the abdomen, and once in the arm.
Pl   nt was never revived at PRMC and pronounced dead at 1405 by Dr. Patterson.

--------------------------------------------------

D - DISPATCHED;
On 07/12/2007 at 13:41:00 dispatched to 515 W 6TH ST /Clovis, NM 88101 for Shots Fired.  13:41:00 unit 24 en route.

C - CHIEF COMPLAINT;
13:43:00 unit 24 arrived to find a 39 year old Male with a weight of 79.4kg./175lbs. patient complaining of Gun Shot to
Patient.

H- HISTORY;

A - ASSESSMENT;
Ems found  Traumatic Injury during assessment.
Patient's sign and symptoms are:
Rales
Crepitus
Hemorrhage
Contusion

Look AT THIS
175 pounds

R -  .ATMENT;
The following medications, treatments, and vitals were performed on the patient:
  Time: 13:44:00  Blood Pressure: 0/Palp  Temperature: Not Assessed G Eye: 1
G   or: 1  G Verbal: 1  Gcs Total: 3  Notes: Patient was lying in a pool of





EXHIBIT

Page

07/16/2007        12:18

Page 41

G

*Exhibit 2* 

| | AUTOPSY REPORT |
|---|---|
| ROBLEDO, ELADIO | THE UNIVERSITY OF NEW MEXICO ◊ HEALTH SCIENCES CENTER |
| | OFFICE OF THE MEDICAL INVESTIGATOR |
| 2007-03764 | |
| | School of Medicine · Albuquerque, New Mexico 87131-5091 |

## POSTMORTEM EXAMINATION

An autopsy is performed on the body of Eladio Robledo at the Office of the Medical Investigator, State of New Mexico, on the 13th day of July 2007, commencing at 10:00 AM.

The examination is performed under the legal authority of the Office of the Medical Investigator of the State of New Mexico.

The body is received within a sealed body bag, with a "State of New Mexico, Office of the Chief Medical Investigator" evidence label, bearing the following printed and handwritten information: "Name of Deceased: Robledo, Eladio; Sealed by: 6.37; Date: 7-12-07".

### EXTERNAL EXAMINATION

The body is that of a well developed, well nourished, adult, Hispanic male who weighs 145 pounds, is 72 inches in length, and appears compatible with the reported age of 39 years. There are pink and green OMI identification bands around the right wrist inscribed with identifying information.

The body is received clad in a pair of white brief-style underpants, which are partially cut off the body for resuscitation. There are no accompanying personal effects.

The body is cool. Rigor mortis is fully fixed. Minimally evident, blanchable purple livor mortis extends over the posterior surfaces of the body, except in areas exposed to pressure.

The scalp hair is black, wavy, and measures up to 2 inches in length over the crown. The irides are brown. The pupils are round. The corneae are translucent. The sclerae are white and the conjunctivae are clear. No petechial hemorrhages are identified on the sclerae, bulbar conjunctivae, facial skin or oral mucosa. The nose and ears are normally formed, without pierce marks. The decedent wears trimmed mustache and beard stubble. The teeth are natural and in good condition. The neck is unremarkable.

The thorax is well developed and symmetrical. The abdomen is flat. The anus is free of lesions. The spine is normally formed and the surface of the back is free of lesions.

The external genitalia are those of a normal adult male.

The upper and lower extremities are well developed and symmetrical, without absence of digits.

No identifying marks or scars are readily apparent.

Evidence of medical intervention includes an orotracheal tube (correctly placed), seven electrocardiograph patches and two defibrillator pads over the anterior chest, a right antecubital intravenous line, a left antecubital intravenous line,

*page 42*

page 6

Exibit 1 page 1-5

Counsel Failed to Alert the court that I
Told him I did Fall, Juy Saw
my shercules, Sherriof docerty
manipulcated ng to say NO. CHANGEL
(To Go againts Myself) ASK docerty SRENEL
Counssl Failed to Call, OR FinN,
dr. Burness, dr. Maxione Swarts
Who I advised I had Been
Sexually abused My moms
big Frend, + Nsibor Sam Saiz
See Exibit, 24, S pages 6,7,8,17,13
                                    17,18-27

Counsel Failed to Call witness, Pricilly
Lopez, Ricky Joramillo, to help prove (See)
I was the one being chased in
yard. to help prove my testimony
truthfull,

          See Exibit 7, 8, 10
Counsel Failed to investigate family
History of Mental Iltness, and
family witnesses to defuse of
Insanity 4. 5,
I would 11 try to Call him and
write to tel he Ignored me or was
to busy. to. see Exibit. 4,5,7,
            page 18 to 24 + 27 + 30 + 47

page 43

# Ineffective Assistance
## of Counsel

These Two Witness
Not called by Tessie Cosby

Grace Finley says Both Thin
Build about 5'8

Ricky Jaramillo says I

was About 5'8 - See

I was The one Being

Chased - I was Not

Chasing Robocolo

X 4    X (2)

Could of Argued This
In Trial

Page 44

# ACTION SHEET

Officer/Agent __Loera__

Assignment __Priscilla Lopez Dob: ____ 67__
__4847__

Date __07-12-07__

__# 762-3471__

Time – Start __3:50__    End __4:00__

__EX. P#7__

Action Taken (narrative):

I was @ home and heard what sound
Like fireworks Going Off. I looked out
and say a Hispanic male 5'6-5'8; short hair,
med build wearing white shirt black design
cut back & blue Jean Shorts.

He was Running towards the Alley.
I Saw two other People come out (one women
& man) Then she Saw the victim Laying
On the Ground.

_White shirt_
_blue Jeans_
_5'6 or 5'8 want pan_

_Extra info_

did not see Face
Of suspect or
victim until later seen victim
on grounds

Page 45

EXHIBIT

business. You got up to look out there, no vehicles, no people behind the building. You had already heard two bangs– you thought it was maybe fireworks. Uh, you were standing at your back door of your business facing south, looked around– didn't see anything unusual, no cars. Then saw hispanic male, about five foot eight, skinny, wearing blue jeans, baggy pants, blue jean baggy pants, a white tee-shirt, pullover style, had colored stripes going across the shirt, and you didn't pay attention to his shoes.

**RICKY:** Yeah.

*√Leading*

**DAN:** Before he started running, he was tucking something in the waistband of his pants. He started jogging north up the alley, towards seventh street. He never saw me, he never looked towards me. Uh, he had black hair that was combed back. No facial hair. He looked 16-18 years old. Uh, you went back up towards the front of your business, which faces seventh street, uh, you never saw the guy outside in front– or what direction.

**RICKY:** Yes, that is correct. That's it.

**DAN:** Okay and then you saw the police arriving and you saw the ambulance putting the body inside the ambulance and then leave.

**RICKY:** Yeah, at that little house. That white house, I mean. And then of course the officer came in and gave me a statement and they taped, they yellow taped around the area. And that's all I've seen of him and that's a true statement right there.

**DAN:** Okay.

**RICKY:** The fire department was there looking on top of the building.

**DAN:** Yeah, like maybe he threw a weapon...
What I need for you to do is put your signature right down here at the bottom. Uh, today's date, which is the 12th.

**RICKY:** Okay.

**DAN:** 7-12-07 and the time is 4:00 PM.

**RICKY:** Okay.

**DAN:** Okay, uh, like I said, if I need anything at all.... um, somebody's gonna be calling you. I can guarantee you that, now, when it's gonna be... I don't know exactly.

**RICKY:** But, uh, another detective?

 page 46

**AGUILAR:** White, black, hispanic?

*[handwritten: Taller was Running in front or another]*

**GRACE:** I think hispanic.

**AGUILAR:** Okay...
Okay, um. When you say tall– I'm five foot eight.

**GRACE:** He's, he looke...

**AGUILAR:** How tall are you?

**GRACE:** I'm five foot four.

**AGUILAR:** Okay, so I'm five eight. Was the one in the front, taller? Taller than me? Or short, shorter than me?

**GRACE:** Um, I think about your height.

*[handwritten: leading]*

**AGUILAR:** Okay.

*[handwritten: 5'8]*

*[handwritten: Thats MR Ramerez? REAL thin]*

**GRACE:** He kinda looked (inaudible 21.19), real thin.

**AGUILAR:** Thin? *[handwritten: He's leading]*

**GRACE:** Thin looking guy.

**AGUILAR:** Kay....
Uh, running in front of us– was this other man a white man, black man, hispanic man?

*[handwritten: She just said the Guy I3 front real thin 5'8]*

**GRACE:** The one behind him? Or in front? (inaudible 21.42) I think hispanic.

*[handwritten: leading just Facts.]*

**AGUILAR:** Did it look like the shorter one was chasing him, or...

*[handwritten: not a accurate answer]*

**GRACE:** Yeah, he was chasing him. He was chasing him.

*[handwritten: She said yeah who was chasing who?]*

**AGUILAR:** Okay.

**GRACE:** Can't talk too long... cause my braces, they feel horrible.

**AGUILAR:** You're teeth hurt? I bet they do... my daughter, I know... I brought her some tears. When they've gotten theirs put on. I bet it does. I'll try to make this as short as I can okay?

**GRACE:** It's okay.

*[handwritten: Page 48]*

**AGUILAR:** Okay, so... you, the taller male was running in front of the shorter hispanic male; the shorter one, would you say was about how tall?

**GRACE:** Just slightly shorter than...

**AGUILAR:** Slightly shorter– so five six, five eight? Five six, five seven?

**GRACE:** I'd say five six, five seven.

**AGUILAR:** Okay... was he heavier set than the other one?

**GRACE:** I think so, because that shirt was like... ..

**AGUILAR:** Kay, so....

**GRACE:** ...flowing on him, you know?

**AGUILAR:** Kay, so, he was a thin male too, right? Thin build?

**GRACE:** Yeah.

**AGUILAR:** Okay... they run around the side of the house, to the front yard?

**GRACE:** Um hum.

**AGUILAR:** When the taller guy fell down?

**GRACE:** Yeah... kinda, kinda, kinda down– I don't know– all of a sudden– just fell back. You know, just kinda braced himself. You know– like this, kinda. You know?

**AGUILAR:** Um, kay...
But he fell to the ground, right?

**GRACE:** Yes... not like flat out, he would go...

**AGUILAR:** Right– bout half way sittin up? Did he have an arm up?

**GRACE:** Yeah, he had an arm (inaudible 24.05)... I could have sworn, you know– it looked like it had to go back cause I could've sworn a hat fell off of his head.

**AGUILAR:** Kay... You remember which arm was up?

**GRACE:** (inaudible 24.32)

**AGUILAR:** It was out like this, like....

*TO PROVE I WAS CHASED*

**GRACE:** ...and, and I was trying to....

**AGUILAR:** ... but he was going like at an **easterly** direction through the yard.

**GRACE:** I don't think... I don't think he seen me– like oblivious to...

**AGUILAR:** Um hum, and you were trying to call 911?

**GRACE:** I was trying to call 911– and I couldn't... you know? I was scared so I stepped on the gas and I was trying to dial at the same time, so... and by the time I described it to them– I look back and I (inaudible-mumbling 35.08) I was afraid to go back.

**AGUILAR:** Yeah... um,
Did um, the, the man that was on the ground, can you describe him? What he was wearing? Or?

**GRACE:** I'm pretty sure it was blue jeans... and I don't know, I see, I see brown in my head but I don't know why. But if I'm not mistaken~~somebody~~ had a moustache, I remember. I don't know if it was him or go to... I don't know. ~~I'm sorry I can't tell you better.~~

**AGUILAR:** That's all right. He had a cap on or a cowboy hat?

**GRACE:** It looked ~~like a cowboy hat~~ to me. And it fell off his head when he, when he stumbled back. Is that girl okay? ?

**AGUILAR:** No. Um..... one of the two men had a moustache you think?

**GRACE:** I think it was the guy that fell– ~~don't quite know what the other guy looked like~~... it *obnoiusly* happened so fast.

**AGUILAR:** Then, uh... you said a goatee? *leading she didn't say that*

**GRACE:** Well, kinda like– I don't know.

**AGUILAR:** Kinda like mine?

**GRACE:** Yeah.

**AGUILAR:** Kay.... Anything else? Let me, let me just go over what we've talked about... Kay, you left Taqueria Jalisco, do you remember what time that was at?

**GRACE:** No, I just know that....

**AGUILAR:** What time do you have to be at...

**GRACE:** ... we got there at 1:10– about 1:10. I'm gonna have to ask my husband, he would

*PAGE 50*

pag 1.

SEE                    See page 7
        Exibit 2    Ex.bit 4.5 page17 page
                                Ex.Bit page 25

Counsel Failed to Keep promises
made, Of Being able to testify
about Sexual Abuse and that he
would File motions I asked him.
to File Change Of venue.        page 47
            SEE Exibit 4, 5, 10

Counsel Failed to Call my Father & Brother
who would testify Eladio Fobcedo
was violent and had assaulted me
and them In past.
My Father and Brother are willing
to testify to this at Hearing.

Counsel Failed to Call dr Maxine
Swatts as witness who would
testify as to my Insanity defense
and sexual abuse and Incompitancy
        See Ex.Bit 9. 10
        page 39 to 43 + 47
Counsel Failed to Present any
defense at trial.

Counsel Failed to give me advice when
I asked over I was drunk when I killed
muster dad. do I tell that or not. He did not

page 51





COUNSEL FAILED to GET MEDICAL
RECORDS to SHOW I WAS
on Crutches, UNDBLE to WORK or WALK,

COUNSEL FAILED to advise ME of
the PLEA did NOT EXPLAIN the
MAXIMUM & MINIMUM TIME
I was FACING EVEN though I
tried to ask. (SEE PAGE 4) 3,4)

COUNSEL FAILED to Be respectFULL
and responsible and FULFILL his
duty of loyalty and advocate
to Me his client.

COUNSEL FAILED to Arque I was
The one Being chased by Robiedo
That I was 100 pounds and Robiedo
175 pounds, Not 145 as Medical
Examiner said, page — 7-10
        SEE Exibits 2,

COUNSEL FAILED to Alert court
I was hearing voices during trial.
   SEE Ex.Bit, 1,1A, 4,5, 6

page 52

page 16

page 47                                          page 10

SEE Exibit 10

Appelate cowsel Failed to cisk in
appsal for an Evidantary
Hearing on all these problems.

Cowsel Failer to argue it was
double Jeopardy to charge 47
me twice with 31 degree   page 47
tampuiny with Euiuence   ExiBit 10

The district Court Failed to
inquies into the matter
When it is on Record
MR. Ramirez Complained on
more than one Occassion
To the Judge of his frustrsion
With defense Cownsel. And
euen though mr Ramirz ask
For Substitute of cownsel
twice Befoes trial and
Fired his attorney once
in trial in Front of
Jwey. and asued to
represent his.self.
        SEE Exibit. 1, 6, 6
page 1-5 Exibit 1
        Exibit 6 - page 28,
        page 58

Page 4

page 1 through page 11
5

Exibit 1,

Counsel Failed to communicate
Back with MR. Ramirez, even
though Mr. Ramirez tried
to no avail.

Mr Ramirez recieved Ineffective
assistance of counsel and owed
his constitutional Rights to
effective assistance of counsel.

I Mr. Ramirez ask the court
to appoint attorney to assist
with hebeus process.

Mr Ramirez ask for an Evidentory
Hearing to develope the record
Nessary to prove Allegations
- a dispostion hearing Also. -
Also attached witness Statement by
my Brother Jose Ramirez who spoke
To Mr cosby and Told me
to Fire my attorney.

Sincerly
Albert
Ramirez

page 54

FILED
9th JUDICIAL DISTRICT COURT
Curry County
9/24/2020 1:06 PM
SHELLY BURGER
CLERK OF THE COURT

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

No. D-905-CR-2007-00434
(Hon. Drew Douglas Tatum)

ALBERT RAMIREZ,
                    Petitioner,
vs.

STATE OF NEW MEXICO,
LEON MARTINEZ, Warden,
                    Respondents.

## <u>NOTICE OF 5-802(H)(1) PRE-APPOINTMENT REVIEW</u>

The Post-Conviction/Habeas Unit of the Law Offices of the Public Defender provides notice

to the Court and Counsel for Respondents of its review in accordance with Rule 5-802(H)(1),

NMRA 2017 and states the following:

1) The Ninth Judicial Court Clerk filed the *pro se* Petition for Writ of Habeas Corpus on

   August 18, 2020.

2) The Law Offices of the Public Defender (LOPD) was served with the *pro se* Petition for

   Writ of Habeas Corpus by the Court Clerk on August 18, 2020.

3) Pursuant to Rule 5-802(H)(3) NMRA, this review is timely filed on or before October 2,

   2020.

4) As per, 5-802(H)(1) LOPD has reviewed the Petition and determines that it is not a

   proceeding that a reasonable person with adequate means would be willing to bring at a

   person's own expense.[1]

---

[1] Under the Indigent Defense Act, Sec. 31-16-3 (B)(3) a person has the limited right to appointed counsel representation in post-conviction matters "unless **the court ... determines that it is not a proceeding that a reasonable person with adequate means would be willing to bring at his own expense.**" (Emphasis supplied).

1

EXHIBIT

||

Procedural History:

1) Petitioner filed four previous *pro se* petitions for writ of habeas corpus in 2017, on March 22, 2017, April 25, 2017, June 20, 2017, and July 17, 2017.

2) On May 18, 2018, an Amended Petition for Writ of Habeas Corpus was filed on Petitioner's behalf by his habeas counsel, Liane Kerr.

3) The Amended Petition raised six issues:

    a. Petitioner was denied his Sixth Amendment right to effective assistance of counsel and his right to compulsory process when his trial attorney failed to call Dr. Maxann Shwartz, Ph.D to testify at either a competency hearing or at trial;

    b. Petitioner's convictions were obtained in violation of his state and federal right to due process and a fair trial when prior uncharged acts were introduced;

    c. Defendant's due process rights were violated when jurors observed him shackled and fall during trial;

    d. Sufficiency of the evidence;

    e. Prosecutorial misconduct for statements made during closing arguments; and

    f. Double jeopardy violation for being convicted of two counts of Tampering with Evidence.

4) The State filed a response to the Amended Petition on September 10, 2018.

5) A Preliminary Disposition Hearing was held on October 29, 2018.

6) On December 14, 2018, the Court issued an Order Denying Petitioner's Petition for Writ of Habeas Corpus.

7) Petitioner filed a fifth *pro se* Petition for Writ of Habeas Corpus on June 24, 2019 where he raised the issues of ineffective assistance of counsel from his trial counsel, appellate

counsel, and counsel assigned to his previous Habeas Petition; Whether the trial court abused its discretion in denying Petitioner's request and demand to fire or substitute his counsel; Whether introduction of Petitioner's prior uncharged acts at trial violated his due process rights; Whether statements made by the prosecuting attorney during closing arguments and cross examination of Petitioner constituted prosecutorial misconduct.

8) In reviewing the June 24, 2019 petition, LOPD concluded that Petitioner did not appear to assert any additional claims that he had not previously raised in prior petitions. Petitioner asserted that Ms. Kerr "failed to raise 3 or 4 issues" that Petitioner had raised in his previous pro se Petition, but it was unclear specifically which issues Petitioner believed had not been adequately addressed.

Issues and Analysis:

9) In the instant petition, Petitioner seeks appointment of a habeas attorney to "assist him in habeas proceedings, and an evidentiary hearing to present what the jury actually saw, and allegations to be proved."

10) Petitioner raises the following issues in his *pro se* petition:

    a. Irreconcilable conflict between trial counsel and Defendant and ineffective assistance of trial counsel for:

        i. Trial counsel was racist and called Petitioner a "dirty Mexican" and told him "you little stupid bitch…I hope you get life."

        ii. Failure to file motions including:

            1. Motion to suppress illegally obtained evidence;

            2. Motion for change of venue due to the incident occurring in the small town of Clovis, and media reports stating that Petitioner

3

attacked the victim on prior occasions which was highly
prejudicial;

    3. Motion for mistrial for the jury seeing Petitioner in shackles and
falling down;

iii. Failure to keep Petitioner informed of plea deals, discuss strategy, and
maximum sentences.

iv. Failure to allow Petitioner to testify that the Victim sexually abused
Petitioner, and that Petitioner was intoxicated on the date of incident.

v. Failure to call witnesses including:

    1. Pricilla Lopez (neighbor eyewitness) and Ricky Jaramillo (eye
witness) in order to prove that Petitioner was the one being chased
and shot Victim in self-defense;

    2. Petitioner's dad, Jose Ramirez to testify that Victim attacked him
on two prior occasions and was aggressive;

    3. Petitioner's aunt, sister, brothers, and friends; and

    4. Doctors who treated Petitioner after an accident which resulted in
mental illness, and Petitioner being placed on medications.

vi. Failure to investigate family history of mental illness.

vii. Failure to present insanity defense.

viii. Failure to alert the Court that Petitioner was hearing voices on the day of
trial.

ix. Failure to raise double jeopardy defense.

x. Failure to poll the jury about seeing Petitioner fall.

4

b. Due process violations for:

    i. Court not allowing substitution of counsel;

    ii. The jury witnessing Petitioner in shackles and fall down;

    iii. Evidence of prior bad acts;

    iv. Improper comment on silence;

    v. Invalid indictment because the grand jury proceedings incorporated hearsay from Ivan Vasquez who testified that Petitioner threatened to kill Victim, and this witness did not show up to trial and later wrote an affidavit recanting his statements;

    vi. Double jeopardy violation.

c. Ineffective assistance of habeas attorneys for not arguing what he wanted, not taking into consideration his opinion, filing amended petition without sufficient time, not allowing Petitioner to speak at the disposition hearing, not meeting with Petitioner, not requesting a transcript of the closing argument, not raising the issues of sufficiency of the evidence, not raising the issue of double jeopardy on the tampering charges, and not raising the issue of prosecutorial misconduct for statements made in closing.

d. Ineffective assistance of appellate attorney for not asking for an evidentiary hearing.

e. Prosecutorial Misconduct for comment on Petitioner's legal research, and statements in closing argument regarding Petitioner's prior bad acts, and that Petitioner is a "menace to society."

11) All of Petitioner's claims have been raised in either previous petitions or in his appeal in case, S-1-SC-34579. The only additional issue raised in the instant petition is regarding Petitioner's indictment.

12) "[A] defendant may not seek post-conviction relief for issues raised on direct appeal that were decided on the merits against defendant." *State v. Gomez*, 1991-NMCA-061, ¶ 5, 112 N.M. 313. Petitioner does not assert that there was an insufficient record to address the matter on appeal, which would permit further review. *Id.* Petitioner failed to address the fact that the same issues were raised and decided against him on appeal. This does not provide sufficient basis for habeas review.

13) Pursuant to Rule 5-802(l) "Second and successive petitions. If the petitioner has previously filed a petition seeking relief under this rule, the court shall have the discretion to: (1) dismiss any claim not raised in a prior petition unless fundamental error has occurred, or unless an adequate record to address the claim properly was not available at the time of the prior petition; and (2) dismiss any claim raised and rejected in a prior petition unless there has been an intervening change of law or fact or the ends of justice would otherwise be served by rehearing the claim."

14) The applicable committee commentaries for the relevant 2014 amendments are as follows: "Paragraph B(5) is amended to clarify that it applies to successive petitions for habeas relief. District courts should ordinarily dismiss petitions that do not comply with the provisions of Paragraph B(5). Paragraph H gives the district court guidance as to the handling of successive petitions for habeas relief. The standard is higher for a petitioner raising a claim rejected in a previous habeas petition than a claim rejected on direct appeal. Standard notions of claim and issue preclusion generally do not apply in habeas cases.

*Campos v. Bravo*, 2007-NMSC-021, ¶ 5, 141 N.M. 801, 161 P.3d 846. Courts have some discretionary capacity to dismiss habeas claims when a prior petition has been filed. According to *Duncan v. Kerby*, 1993-NMSC-01 1, 115 N.M. 344, 851 P.2d 466:" The rule on successive petitions focuses primarily on petitions in which the same grounds were raised and denied on the merits. See *State v. Canales*, 1967-NMSC-221, ¶10, 78 N.M. 429.

15) Petitioner raises claims of ineffective assistance of trial, appellate, and habeas counsel. The Sixth Amendment's guarantee of effective assistance of counsel applies on direct appeal as well as in the trial courts. *Welch v. Workman*, 639 F.3d 980 (10th Cir. 2011) (petitioner challenging effectiveness of counsel on appeal "must show that appellate counsel's representation fell below an objective standard of reasonableness in light of prevailing professional norms.") If appellate counsel ignores a "compelling issue" on appeal, a petitioner may prevail if, "but for counsel's unprofessional errors the result of the proceedings would have been different", i.e. the appellate proceeding. *Id.* at 1015. Petitioner must first demonstrate that counsel's performance was deficient and second that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). That is, that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

16) Regarding Petitioner's claim of an invalid indictment, pursuant to NMRA 5-302A(B): "All evidence presented shall be lawful, competent, and relevant, but the Rules of Evidence shall not apply." There is no indication that the State was aware of any false testimony at the time of the grand jury proceedings. "When the petitioner alleges that the prosecution deliberately participated in the falsification, we require the petitioner to show: (1) that the original testimony was, in fact, false; and (2) that it was knowingly,

7

wilfully and intentionally used by the prosecution to procure the conviction." *Case v. Hatch*, 144 N.M. 20, 2008-NMSC-0024 ¶8, 183 P.3d 905 (internal quotes omitted).

17) Therefore pursuant to Rule 5-802(G)(1), the Post-Conviction Habeas Unit, Law Offices of the Public Defender, <u>determines that it is not a proceeding that a reasonable person with adequate means would be willing to bring at a person's own expense and defers to the Court pertaining to further appropriate action.</u>

As per Rule 5-802(H)(1) NMRA 2017, undersigned counsel submits this review for the limited purpose of said procedural rule and is not Counsel of Record on this matter.

I hereby certify that a copy of this notice was transmitted to Petitioner and Counsel for Respondent upon filing.

Respectfully Submitted,

*/s/ Sarah Gallegos*
Sarah Gallegos
Post-Conviction Habeas Unit
Law Offices of the Public Defender
505 Marquette Ave. NW, Suite 120
Albuquerque, NM 87102
(505) 219-2884

*/s/ Sarah Gallegos*
Sarah Gallegos
LOPD Habeas

8

FILED
9th JUDICIAL DISTRICT COURT
Curry County
10/5/2020 10:25 AM
SHELLY BURGER
CLERK OF THE COURT

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

ALBERT JOSE RAMIREZ,

      Petitioner,

vs.                              No.    D-0905-CR-2007-00434

STATE OF NEW MEXICO,

      Respondent.

## DECISION AND ORDER OF SUMMARY DISMISSAL
## AND ORDER DENYING PETITIONER'S MOTION TO EXPAND RECORD

THIS MATTER having come before the Court upon the *pro se* Petition for Writ of

Habeas Corpus filed by the Petitioner on August 18, 2020 and the *pro se* Motion to Expand

Record filed on September 24, 2020, and the Court being fully advised, enters its *sua sponte*

Order and FINDS:

1. Petitioner's current Petition for Writ of Habeas Corpus was filed on August 18, 2020.

2. A copy of Petitioner's Petition was sent to the Post-Conviction Habeas Unit Law

    Offices of the Public Defender (hereinafter referred to as "LOPD").

3. LOPD timely filed a Notice of 5-802(H)(1) Pre-Appointment Review on September

    24, 2020 (hereinafter referred to as "Notice"). LOPD's Notice is incorporated by

    reference herein as though fully set forth.

4. Rule 5-802(H)(1) provides for a pre-appointment review of Petitioner's Petition by

    LOPD. LOPD may recommend that this Court order a revised petition or may

    indicate "whether the petition is a proceeding that a reasonable person of adequate

1

EXHIBIT

JJ

means would be willing to bring at a person's own expense and provide sufficient detail for further judicial review of the public defender's assessment."

5. LOPD determined that Petitioner's Petition is NOT a proceeding that a reasonable person would be willing to bring at a person's own expense.

6. In their eight (8) page Notice, LOPD notes that this is the sixth pro se petition for Writ of Habeas Corpus filed by Petitioner. Petitioner's previous petitions were filed on March 22, 2017, April 25, 2017, June 20, 2017, July 17, 2017 and June 24, 2019. Additionally, on May 18, 2018, an Amended Petition for Writ of Habeas Corpus was filed on Petitioner's behalf by his habeas counsel Liane Kerr. The State filed a Response and this Court held a hearing on this Amended Petition. A twelve (12) page Order Denying Petitioner's Petition for Writ of Habeas Corpus was entered on December 14, 2018. Said Order is incorporated by reference herein as though fully set forth. Also, as to Petitioner's Petition for Writ of Habeas Corpus filed on June 24, 2019, this Court entered a Decision and Order of Summary Dismissal on August 12, 2019 (just six days before the instant Petition was filed). Said Decision and Order of Summary Dismissal is incorporated by reference herein as though fully set forth. Moreover, Petitioner appealed his conviction. The New Mexico Supreme Court affirmed Petitioner's conviction.

7. In their Notice, LOPD addresses the numerous issues raised by Petitioner before concluding that, "All of Petitioner's claims have been raised in either previous petitions or in his appeal in case, S-1-SC-34576. The only additional issue raised in the instant petition is regarding Petitioner's indictment."

8. While addressing the applicable law related to Petitioner's indictment, LOPD determined that there is no evidence showing that the State knowingly used false testimony before the grand jury.

9. This Court finds that LOPD provided more than sufficient detail for this Court to review its assessment.

10. This Court agrees with LOPD that this is NOT a proceeding that a reasonable person would be willing to bring at a person's own expense.

11. Rule 5-802(H) NMRA states:

> H. Second and successive petitions. If the petitioner has previously filed a petition seeking relief under this rule, the court shall have the discretion to:
> (1) dismiss any claim not raised in a prior petition unless fundamental error has occurred, or unless an adequate record to address the claim properly was not available at the time of the prior petition; and
> (2) dismiss any claim raised and rejected in a prior petition unless there has been an intervening change of law or fact or the ends of justice would otherwise be served by rehearing the claim.

12. This Court finds that, in accordance with Rule 5-802(H)(1), to the extent that any new claims were raised in Petitioner's Petition for Writ of Habeas Corpus filed on August 18, 2020, that were not raised in Petitioner's prior petitions, said claims are dismissed. This Court finds that no fundamental error has occurred and that there was an adequate record available to address the claims properly at the time of the prior petitions.

13. Further, this Court finds that, in accordance with Rule 5-802(H)(2), any identical or similar claims that were raised in the Petition for Writ of Habeas Corpus filed August 18, 2020, that were previously raised and rejected in Petitioner's prior petitions, are hereby dismissed. This Court finds that there has not been an intervening change of

law or fact. This Court finds that the ends of justice would not be served by rehearing the claim.

14. Additionally, Petitioner may not seek post-conviction relief for issues raised on appeal that were decided on the merits against the Petitioner. *State v. Gomez*, 1991-NMCA-061. This is the standard rule but it has been modified to allow some leniency in allowing the issue to be brought before the Court subsequent to the appeal. However, for the Court to review the issues, the claim needs to be grounded in facts beyond the record previously presented on appeal and the petitioner must show that the additional facts are those which could not, or customarily would not, be developed in a trial on criminal charges. *Campos v. Bravo*, 2007-NMSC-021. In his current Petition, Petitioner failed to address the fact that many issues raised were the same issues decided against him on appeal and failed to provide additional, relevant facts.

15. Also, this Court finds that Petitioner's claim related to his indictment is not supported by fact or the record in this matter. Petitioner is not entitled to relief as a matter of law on such claim.

16. As noted above, Petitioner filed a Motion to Expand Record filed on September 24, 2020. This Court finds that said Motion is directly related to Petitioner's Petition for Writ of Habeas Corpus filed August 18, 2020. This Court has fully considered the additional information and requests made in said Motion. The Motion to Expand Record filed on September 24, 2020 shall be denied.

**DECISION AND DISMISSAL**

After examining the Petition, exhibits, prior proceedings, and based on the above reasons, this Court finds the Petitioner is not entitled to relief as a matter of law.

THEREFORE, in accordance with Rule 5-802(H)(1-2) NMRA and Rule 5-802(G)(1) NMRA, the Petition for Writ of Habeas Corpus filed August 18, 2020 is DISMISSED. Additionally, the Motion to Expand Record filed on September 24, 2020 is hereby DENIED.

HON. DREW D. TATUM
DISTRICT JUDGE, DIVISION II

9-702. Petition for writ of certiorari to the district court from denial of habeas corpus.

[For use with Appellate Rule 12-501 NMRA]

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

ALBERTO RAMIREZ
_____
Defendant-Petitioner,

S.Ct. No. 38539
(leave blank; court will assign)

v.

Leon Martinez
_____
(Name of Warden)

District Ct. No. D-905-CR-2007-00434

Respondent.

## PETITION FOR WRIT OF CERTIORARI
TO THE ___9th___ DISTRICT COURT OF NEW MEXICO

SUPREME COURT OF NEW MEXICO
FILED

OCT 2 6 2020

ALBERTO RAMIREZ
_____
Defendant-Petitioner pro se

P.O. Box 1059
_____
SANTA FE, NM 87504
_____
(address information)

## PETITION FOR WRIT OF CERTIORARI
TO THE ___9th___ DISTRICT COURT OF NEW MEXICO

Defendant-Petitioner, appearing pro se and pursuant to the provisions of the New Mexico Constitution, Rule 5-802, and Rule 12-501 NMRA; petitions this Court to issue its Writ of Certiorari to review the order in:

Alberto Ramirez v Leon Martinez (your name v. Warden's name),

District Court No. _____ filed on _____.

## QUESTIONS PRESENTED FOR REVIEW

Whether the district court erred in:
SEE attach pages
Explains all issues Everything

EXHIBIT
KK

_See attach pages, and my Habeus Petition to much to write, not enough spare. Issues 1 - 8_

*(Complete only for issues relevant to the petition. Attach additional sheets if necessary.)*

## DESCRIPTION OF THE PROCEEDINGS

1. Please list the conviction being challenged:

_Murder in the First Degree and two tampering w/ evidence to run concurrent_

2. Please list any other petitions you have filed in the New Mexico Supreme Court challenging this conviction (*please include docket numbers and dates*):

_In not sure. I don't know. Jerry Habeus Corpus petition and Habeus Amended petition by Lawer C. Kerr & then another Habeus/ 8-18-2020 petition_

3. Tell the story of what happened in your court case:

_I recieved on Conflicts between trial council and defendant. Trial council verbally abusive and racist comments and threat to not provide effective assistance if Mr. Finnel did not take plea. Defendant shackeled in joint phase of trial. Defendant feet chain and jury seen him shackeled and starved openly. Threatened manipulated or flawed to say it was not happen - violation of U.S. constitution, violate state & federal due process. Common or 5 live. Numerous instance of prosecutorial misconduct prior bad acts evidence, grand jury indictment, abuse secrecy, ineffective assistance of council Review See attach pages Issues 1-8 Habeas_

## BASIS FOR GRANTING THIS PETITION FOR WRIT OF CERTIORARI TO THE DISTRICT COURT

The decision of the district court on my petition for writ of habeas corpus, filed pro se, raises significant questions of law under state and federal constitutions: whether the errors below deprived petitioner's rights guaranteed by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments and by New Mexico Constitution, art. II, §§ 13, 14, 15, and 18.

## ARGUMENT

*(Describe your legal claim and cite the law (cases, statutes, constitutional sections) that supports your position. Use plain language.)*

① Irreconsiable conflict between trial counsel to counsel verbally abusiv and racst comments and threats to not help if Mr. ramirez did not take plea, 6th admendment.

② Defendant shackled in Guilt phase of trial and fell down. Sheriff deputy manipulated Mr. ramirez to say he did not fall down. Mr. ramirez told trial counsel this to no avail this violated U.S. Constitution and state and federal right to due process and fair trial 14th admendment

③ Improper comment on silence detective stated he attempted to interview Mr. ramirez, violation of right to remain silent 5th admendment protected by 14th admendment.

④ numerous instances of prosecutorial misconduct. Comment about doing legal research, ⑤ closing argument prior bad acts saying Mr. ramirez head butted a police officer, Broke windows to show bad character amounted to misconduct, also told jury Hes a liar, menace to society with bad prior. Right to fair trial by 14th admendment.

[illegible lines]

⑥ Challenge of the Grand jury indictment hersey witness Sam said could not be crossed in trial by juries witnesses sanaui stated I threatned to will victim but heresey witness. Ivan vacarey did not show up to trial and could affidavit recantly as he said.

⑦ Double Jeopardy. See attached pages

⑧ Ineffective assistance of habeous counsel Lonnie Kerr, on habeous collateral review, she did not argue what I wanted and did not take my opinion did it on her own. only had 30 days. she rushed to busy, she just wanted to make quick $5,000. Not Fair

                                                        ATP

POINT 1: SEE ATTACH PAGES ISSUES 1-8
Ineffective *assistance* of Counsel
Irreconsible conflict Between trial
counsel and defendant, Counsel verbally
Abused, and raiser curelesss and threats
to Not help Mr ramirez if he cried Not
take place. counsel failed to file motion
for change of venue and misseral sharesses errer

POINT 2: See attach pages
sharesses after Jury saw defendant
shackled and Paul county Sheriff
deputy threatened Mr ramirez to say
he did Not fair Jury did not see shackles.
Violation of State and Federal due process
violation of U.S. constitution.

POINT 3: See attach pages ③ Impropr comment
on silence ④ Numerous Instances of
prosecutorial misconduct ⑤ plea Bar arts
⑥ Challenge grand Jury indictment
⑦ dable Jeopardy ⑧ Ineffective
assistance of present counsel like S KEET
on collatera Review Sec certain pages
GO with this
*(Attach additional sheets, if necessary).* Issues 1-8.
Thank you

REQUEST FOR RELIEF

Defendant-petitioner requests that this Court issue its writ of certiorari to the district court,
and:
(✓) remand to the district court for a full hearing on the petition, OR
(✓) reverse the conviction, OR
( ) remand to the district court to correct the sentence, OR
(✓) (other) appointment of Counsel

Petitioner asks this Court to grant such relief as may be appropriate. As required by Rule 12-
501 NMRA, I am filing only the original copy of this petition and I have attached the following:
(✓) a copy of my petition for writ of habeas corpus filed in district court, AND
( ) a copy of the state's response, if one was filed, AND
( ) a copy of the district court's order.
(✓) I have not attached the required documents because
I wrote down state respons and district
Courts order. To send out ASAP.

Process claims and U.S. Constitution Prote
by 5th And 14th Amendment

① IRRECONSIBLE CONFLICT OF INTEREST BETWEEN
MR RAMIREZ AND TRIAL COUNSEL DID TRIAL COU
ABUSE its discretion to Not allowing INQUIRY I'
Disatisfaction and mr ramirez tried to Fire
or Substitute Counsel IN JUNE 2013 2 weeks
Before trial in trial asked to NO AVAIL 6th
Amendment Right to State and Federal due pro
to Fair trial and U.S. constitution to recieve
effective assistance of counsel IN trial
protected by the 14 Amendment.

② STATE AND FEDERAL Right To FAIR
TRIAL and due process and violation of
U.S constitution to BE Shackled during
E Guilt phase of trial . protection by 5th and
14th Amendment SEE DECK US MISSOURI 544
U.S 635 (1005) SEE State. VS Brawley cite as
137 A.3d 757 (CONN 2016) I ask court
to allow me to expand Record or evidentary
hearing to establish jury did in Fact observe
me in Shackles and Fall down and sherrifs
deputy threatened coerced me to say it
DID NOT happen. I Told Lawyer to No avail

page 0

Improper comment on 5.15.2013.
Deputy testified He tried to
or attempted to Get a Statement
From Him Mr ramirez. SEE deputy loomis
report Same thing says Attempted to
Get a Statement. post miranda exercise
of the 5th Amendment Right to remain
Silent is protected Against by 14th?
5th amendment due process clause U.S
Constitution. Amend V; NM constitution
art V, 14 State V. guttirrez 2007.
NM. S.C - 033. 142, N.M. 1, 162
P3d 156. State and Fedural Right
to due process.



page 1

4 Misconduct. State and Federal Right
to Fair trial due process: 14 amendment
and U.S. Constitution   5th amendment
violated

Prior Bad Acts Evidence Violated
5 State and Federal Right to due
process to A Fair trial and
U.S. Constitution  5th and 14th Amendment.

Challenge the grand jury Indictment
6 Recanted Testimony and Statements And
Hearsay in indictment.
State VS. Dominguez .115 NM. 445  & 456
853 p2d 147, 156 et APP 1993

Double Jeopardy Amend' Inpissing Multiple
7 U.S. Constitution Amend' Inpissing Multiple
punishments for tampering charges directed
at save item of evidence violations the Right to
Be Free From double Jeopardy State V. Degraf
2.co6 NMSC = 011 a 34, 159 NM 211, 131 p2d 61.

Ineffective assistance of Habeaus Couns
on Collateral Review and of Amended petition
Consequentially when a petition for writ of Habeaus corpul
Alleges particular Facts set out a claims of Inadequate
representation, petitioner is entitled to hearing. State.
V moses, 1967-NMSC- 163 6, 78 N.M. 212

and ask the Supreme Court to accept this petition without the attachments.

Respectfully submitted,

_ALBERTO Ramirez_
Defendant-Petitioner, pro se

## VERIFICATION

STATE OF NEW MEXICO
COUNTY OF ~~Curry~~ Santa Fe

    I, the undersigned, being first duly sworn upon my oath, state that I am the petitioner in this action. I have read the foregoing petition and know and understand its contents, and the information contained herein is true and correct to the best of my knowledge, information and belief. On October 16th, 2020 (date), I deposited this petition in the internal mail system of the institution in which I am confined, properly addressed with any necessary postage prepaid, for forwarding to the New Mexico Supreme Court at the following address:

New Mexico Supreme Court
P.O. Box 848
Santa Fe, New Mexico, 87504-0848.

_Alberto Ramirez_
(Signature)
_P.O. Box 1058_
(Address)
_Santa Fe, N.M. 87504_

PNM No., if applicable

SUBSCRIBED AND SWORN TO before me this ___24___ day of
___Sept.___, ___2021___, by

_Alberto Ramirez_
(Name of Petitioner)

_____
Notary Public
_8/10/24_
My Commission Expires:

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of this petition was mailed to the Attorney General's Office, P.O. Box 1508, Santa Fe, New Mexico 87504-1508 on this _October 16th_ day of _2020_.

_Alberto Ramirez_
Defendant-Petitioner, pro se

[Adopted by Supreme Court Order No. 14-8300-014, effective for all cases filed on or after December 31, 2014; as amended by Supreme Court Order No. 17-8300-025, effective for all cases pending or filed on or after December 31, 2017.]

Read Gen before Nov 4th 2020

THIS is 2nd PART    S-1-SC-38539

of Writ of Certorari

For Alberto Ramirez

I had to Send it

IN two letters Envelopes

Please help court clerk

And Judges I gave a copy
OF Everything to writ Manager

to Send it but I believe he
did Not Send it Habeaus, writ
Certorari and decision.

PS. Next week I will send

Decision and dismissal form

IN letter Free envelope.

to add to Certorari

Its not my fault    Alberto
writ MANAger didn't    Ramirez
Send it I asked him to.    69SC07

SUPREME COURT OF NEW MEXICO
FILED

NOV - 4 2020

EXHIBIT
LL

Sort before 1 ~ 9 ~ 4

SEE attach pages Issues 1~8

POINT 1: Ineffective assistance of counsel Irreconsible conflict between trial counsel and defendant, counsel verbally abused, and racist comments and threats to not help Mr Ramirez if He did not take Plea counsel Failed to File motion For change of venue and Mistrial shackles error.

POINT 2: SEE attach pages Shackles error Jury SEEN defendant Shackled and Fall down sherriff depicty threatned Mr ramirez to say He did not Fall jury did Not see shackles Violation of State and Federal due process Violation of U.S. constitution

POINT 3: see attach pages ③ Improper comment on Silence ④ Numerous Instances of prosecutorial misconduct ⑤ prior bad acts ⑥ challenge grand Jury Indictment ⑦ double Jeopardy ⑧ Ineffective assistance of Habeaus counsel (weeker on collateral Review please see attach pages

*(Attach additional sheets, if necessary).*

go with this Issues ~ 1-8 Thank you.

**REQUEST FOR RELIEF**

Defendaut-petitioner requests that this Court issue its writ of certiorari to the district court, and:

( ✓ ) remand to the district court for a full hearing on the petition, **OR**
( ✓ ) reverse the conviction, **OR**
( ) remand to the district court to correct the sentence, **OR**
( ✓ ) (other) appoinment of counsel, expand record

Petitioner asks this Court to grant such relief as may be appropriate. As required by Rule 12-501 NMRA, I am filing **only the original copy** of this petition and I have attached the following:

( ✓ ) a copy of my petition for writ of habeas corpus filed in district court, **AND**
( ) a copy of the state's response, if one was filed, **AND**
( ) a copy of the district court's order.
( ✓ ) I have not attached the required documents because → I put it in manilla envlepe I gave to unitmanager office did Not send it ALL.

NOT my fault unit managers.

I wrote down states response and district court's order to send out ASAP. Petition was denied and dismissed in 9th district court.

Process claims and u.s. constitution protected
by 5th And 14 admentment.

① Irreconsible conflict of interst
Between Mr ramirez and trial councel did trial court
Abuse its discretion to not allowing inquiry IN
Dissatsfaction and Mr Ramirez tried to Fire or
Substitute councel iN June 2013 2weeks before
trial IN trial asked to No avail
6th admendment Right to State and Federal
due process to Fair trial and u.s.
constitution to receive effective
assistance of councel in trial. protected by 14/th-
amendment
② State and Federal Right to Fair
Trial and due process and violation of
u.s constitution to be shackuled during
guilt phase of trial. protection by 5th and
14th admenment Src deck u.s. Missiwi 544 u.s.
635 (2005) see state vs. Bewley cite as
137 A 3d 757 (conn 2016) I ask court to
Allow me to Expand record or Evidentary
hearing to Establish Jusy did iN Fact
observe Me in shackles and Foul down and
Sursff do certy turestened Coerced me to
Say It did Not happen. I told
Lawyer to No avail.

Improper comment on Silence
Deputy testified He tried to
or attempted to Get a Statement
From Him Mr ramirel. SEE deputy
loomis report same thing says
attempted to Get a Statement
Post mirenda exercise of the
5th admendment Right to Remain
Silent is protected agents by 14th
and 5th admendment due process
Clause U.S. Constitution Amend
U, NM. Constitution, Art, 14
State v. guttillez 2007 NMSC —
033, 142, N.M ", 162, 23d, 56
State and federal Right to
due process.

(5)
NUMEROUS INSTANCES OF Prosecutorial
Misconduct. State and Federal Right
to Fair trial due process: 14th amendment
and U.S. Constitution 5th amendment

(5) Prior bad ACTS Evidence violated
State and Federal Right to due
Process to a Fair trial and
U.S. Constitution 5th and 14th admonent

(6) Challenge the grand Jury Indictment
Recanted testimony and statments and
Hearsay IN Indictment.
State. v. dominguez 115 N.M. 445 456
853 P2d. 147, 150 Ct. app 1993

(7) Double Jeopardy U.S. constitution amendv Imposing
multiple punishment For tampering charges directed
at Same item OF Evidence violations the Right to
Be Free From Double Jeopardy State. V. Degraff
2006 NMSC-Cll. 34, 139 N.M. 211, 131 P3d 161.

(8) Ineffective Assistance OF Habeous counsel
on collateral Review and OF Amended petition
Consequently when a petition for writ of
Habeas corpus Alliges particular facts set
out a claim of inadequate representation
Petitioner is entitled to hearing
State vs. moses 1967-NMSC-163
6,78, N.M 212.

THE ERRORS ALL
TO GETHER Added UP
to Cumalative Error
and denied petitioner
OF a fair trial
and a denial oF
due process

Request Evidentary hearing
Or to Expand Record
an public defender
to assist in Habeaus
process.

Thank you

and ask the Supreme Court to accept this petition without the attachments.

Respectfully submitted,

AIBERTO RoMiREZ

Defendant-Petitioner, pro se

**VERIFICATION**

STATE OF NEW MEXICO

COUNTY OF ~~Curry~~ Santa Fe

I, the undersigned, being first duly sworn upon my oath, state that I am the petitioner in this action. I have read the foregoing petition and know and understand its contents, and the information contained herein is true and correct to the best of my knowledge, information and belief. On October 16 , 2024 (date), I deposited this petition in the internal mail system of the institution in which I am confined, properly addressed with any necessary postage prepaid, for forwarding to the New Mexico Supreme Court at the following address:

New Mexico Supreme Court
P.O. Box 848
Santa Fe, New Mexico, 87504-0848.

Aiberto Ramirez
*(Signature)*
P.O. Box 1059
*(Address)*
Santa Fe NM. 8801
PNM No., if applicable

SUBSCRIBED AND SWORN TO before me this    24    day of
~~SEPT.~~ NOV. , 2024 , by

Alberto Ramirez
*(Name of Petitioner)*

Notary Public
8/10/24
My Commission Expires:

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this petition was mailed to the Attorney General's Office, P.O. Box 1508, Santa Fe, New Mexico 87504-1508 on this october 16 day of 2024 .

AIBErto Ramirez

Defendant-Petitioner, pro se

[Adopted by Supreme Court Order No. 14-8300-014, effective for all cases filed on or after December 31, 2014; as amended by Supreme Court Order No. 17-8300-025, effective for all cases pending or filed on or after December 31, 2017.]

Read this Important

Dear court Clerk and Judges
I sent petition for writ
of certorari with copy of
Habeaus and gave it to
unit manager to sign and
send out. I dont believe
it was so. I sent it
Again only writ No Habeaus.
Please look out I sent
it in two free envelopes.
half in one then half in other

Please know I've tried
diligently to comply with
Courts rules. I hope you
got my writ with habeaus
and courts decision and dismissed
I didert sent it again Not
enough papers.

                    Thank you

                              Sincerly
                              Alberto
I did Not sent          Ramirez
Copy of my petition for
Writ of Habeaus corpus      64587
Filed in district court because P.O. Box 1059
I gave it to unit manger Santa Fe NM
to send out I think he did not send it 87504

(margin, left side, vertical) Sent before Normal Mail 2nd

*9-702.* Petition for writ of certiorari to the district court from denial of habeas corpus.

[For use with Appellate Rule 12-501 NMRA]

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

ALBERTO RAMEREZ
_____
Defendant-Petitioner,

v.

LEON MARTINEZ
_____
*(Name of Warden)*

Respondent.

S.Ct. No._____
*(leave blank; court will assign)*

District Ct. No. _____

### PETITION FOR WRIT OF CERTIORARI
TO THE __9th__ DISTRICT COURT OF NEW MEXICO

ALBERTO Ramirez
_____
Defendant-Petitioner pro se

P.O. Box 1059
SANTA FE, NM 87504
_____
*(address information)*

### PETITION FOR WRIT OF CERTIORARI
TO THE __9th__ DISTRICT COURT OF NEW MEXICO

Defendant-Petitioner, appearing pro se and pursuant to the provisions of the New Mexico Constitution, Rule 5-802, and Rule 12-501 NMRA; petitions this Court to issue its Writ of Certiorari to review the order in:

ALBERTO Ramirez v. leon Martinez *(your name v. Warden's name),*

District Court No. _____ filed on _____.

### QUESTIONS PRESENTED FOR REVIEW

Whether the district court erred in:

SEE ATTACH PAGES
EXPLAINS All ISSUES EVERYTHING

SEE ATTACH pages And my Habens
petition to Much to write Not
Enough Space Issues 1-8

*(Complete only for issues relevant to the petition. Attach additional sheets if necessary.)*

## DESCRIPTION OF THE PROCEEDINGS

1. Please list the conviction being challenged:

Murder in The 1st degree And
two tampering w/Evidence to Run
Concurrent

2. Please list any other petitions you have filed in the New Mexico Supreme Court challenging this conviction *(please include docket numbers and dates)*:

Im Not sure I dont Know sorry
Habeaus corpus petition And Habeaus
Amended petition by Liane e Kerr
That another Habeaus 8.18.2020

3. Tell the story of what happened in your court case:

Irreconsible conflict Between trial counsel and
defendant Trial counsel verbally abusive and racist comments
and threat to Not provide effective assistance if Mr.
Ramirez did Not take plea. Defendant snickered in guilt phase
of Trial, defendant fell down and Jury seen him snickered and
sherriff docerty threatned, manipulated, Mr Ramirez to
say it did Not happen, violation of u.s constitution, violates
state and federal due process. Comment on Silence, numerous
Incidences of Prosecutional Misconduct, prior bad acts Evidence
grand Jury indictment, double Jeopardy, Ineffective assistance
of Habeaus & Collateral Review see Attach pages 1-8

## BASIS FOR GRANTING THIS PETITION FOR WRIT OF CERTIORARI TO THE ~~Issues~~ DISTRICT COURT

The decision of the district court on my petition for writ of habeas corpus, filed pro se, raises significant questions of law under state and federal constitutions: whether the errors below deprived petitioner's rights guaranteed by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments and by New Mexico Constitution, art. II, §§ 13, 14, 15, and 18.

## ARGUMENT

*(Describe your legal claim and cite the law (cases, statutes, constitutional sections) that supports your position. Use plain language.)*

State conspiracy the facts upon which the claim

#① irreconsible conflict between trial counsel and defendant counsel verbally abused and racist comments and threats to not help if Mr Ramirez did not take plea 6th admendment.

#② Defendant chuckied in guilt phase of trial and fell down Sheriff deputy manipulated mr Ramirez to say he did not Fall down. Mr Ramirez told trial counsel this to No avail THIS violated U.S. constitution and violated State and Fedral Right to due process and Fair trial 14th admendment.

#③ Improper comment ON Silence detective Stated he attempted to interview Mr Ramirez. violation of Right to remain Silent 5th admendment and 14 admendment

#④ Numerous Instances of Prosecutorial misconduct. comment about Ramirez doing legal research @ closing arguments prior bad acts Saying MR Ramirez head butted a police officer, Broke windows used to show bad character amounted to misconduct also told jury Hes a liar, menace to Society with no proof Right to Fair trial by 14 admendment.

TURN page

#5. Prior bad acts violates state and Federal Right to due process and Fair trial Protected by 14 adjustment.

#6. Challenge of the grand Jury Indictment hearsay used and Not allowed in trial By Jury. Witness Sam Saiz said I threatened to kill victim but Hearsay inadmissible also Ivan vasquez did Not show up to trial and wrote affiudavit Recanting all he said

#⑦. Double Jeopardy See attach pages

#⑧. Ineffective assistance of Habeaus counsel Liane Kellerr on Habeaus coriatral Review, She did Not arguee. What I wanted and did Not Take my opinion did it on her own. only had 30 days She Rushed to busy. she Just wanted to make quick 5,000 Not Fair

AJR

ATTACH IS COPY OF CIRC. SIGN E 10-08. SM, SMP
written by hand.

TO. NEW MEXICO Supreme Court Judges And Clerk

ALERT TO FACT Why My Habeous CORPUS.
Writ OF Certorari And copy of decision and
dismissal Was Not SENT by NOV 4th
Au 20.

THE Unit MANAGER is the only
one able to Sign off debit Memo's to
Mail out legal Mail Caught the
CoroNa virus 19 on OctoBER 13th 2020

I Believe My Copy I Tried to Send
out Was Lost by STAFF, the Unit MANager
I Gave the CIO dennis garcia ON octorber
13th to Give To the Unit MANAGer to
Sign and mail out My legal Mail.

The STAFF do Not CARE. IM Not allowed
to grievence No way to Mail legal mail
only in envelopes 7 pages at a time,
Not able to Send out in Manilla Envelope

I Just Found out Unit MANAGer has
Corona virus ON November 5th Au2a

I wrote ALL Said on the decision
and dismissal of the 9th Judicial
district court. to Help the court decider
My Certerari writ I Sent on November
2nd in two White envelopes. Thank you.

EXHIBIT
MM

SUPREME COURT OF NEW MEXICO
FILED

NOV 16 2020

Sincerly,
Alberto Ramirez
P.O. Box 1059
SANTA Fe. NM 87502

I Tried to Get copy
CF Clecsion and dismissal
But the Person who works
in legal access who mckes
copies is being lazy and
ignoring my Recuest.

I apologyze. For All This.
Thank you For you help
and time God Bress.

Ninth Judicial District Court

Filed
9th Judicial District Court
Curry County
10/5/2020 10:25AM
Shelly Burger
CLERK OF THE COURT

Albert Jose Ramirez - petitioner

vs.

State of New Mexico
Respondent

No. D-905-CR-2007-
-00434

DECISION AND ORDER OF SUMMARY DISMISSAL
AND ORDER DENYING PETITIONERS Motion to Expand Record

THIS MATTER having come before the court upon the pro se
petition for writ of Habeas Corpus filed by the petitioner on August 18, 2020
and the pro se motion to expand record filed on September 24, 2020.
and the court being fully advised, enters its sua sponte order: finds:

① petitioners current petition for writ of habeas corpus was filed on 8.18.20

② A copy of petitioner's petition was sent to the post-conviction Habeas
   unit law office of the public defender (herein after referred
   — to as "LOPD")

③ LOPD timely filed a notice of 5.802(H)(1) pre-appointment Review
   on September 24, 2020 (hereinafter referred to as "notice")
   LOPD's notice is incorporated by reference hereinafter as
   though fully set fourth.

④ Rule 5-802(H)(1) provides for a pre-appointment Review
   of petitioner's petition by LOPD. LOPD MAY recommend
   that this court order a revised petition or may indicate
   "whether the petition is a proceeding that a reasonable
   person of adequate means would be willing to bring
   at a persons own expense and provide sufficient detail for
   Further Judicial Review of the public defenders
   — assessment.

page 2

Ⓑ LOPD determined that petitioners petition is not a proceeding that a reasonable person would be willing to bring at a persons own Expense.

Ⓒ In thier Eight (8) page Notice, Lopd notes that this is the sixth pro se petition for writ of Habeaus corpus filed by petitioners. Petitioner's previous petitions were filed on March 22, 2017, April 25, 2017, June 20, 2017, July 17, 2017, June 24, 2019. Additionally, on May 18, 2018 An Amended petition for writ of habeaus corpus was filed on petitioners behalf by his habeaus counsel Liane Kerr. The State filed a response and this court held a hearing on this amended petition. A twelve (12) page order denying petitioners petition for writ of Habeaus corpus was entered on december 14, 2018. Said order is incorporated by reference herein as though fully set forth. Also as to petitioners petition for writ of Habeaus corpus filed on June 24, 2019, this court entered a decision and order of summary dismissal on august 12 2019. (Just six days before the instant petition was filed. Said decision and order of summary dismissal is incorporated by reference herein as though fully set forth. MOREOVER, petitioner appealed his conviction. The New Mexico Supreme court affirmed petitioners conviction.

7. In their Notice (LUP) the petitioners issues raised by petitioner before concluding that "all of petitioners claims have been raised in either previous petitions or in his appeal in case, S-1-SC-34570¢ THE only additional issue raised in the instant petition is regarding petitioners Indictment!!

8. While addressing the applicable law related to petitioners indictment Lopd determined that there is No Evidence showing that the State Knowingly used False testimony before the grand jury.

9. This court Finds that Lopd provided more than Sufficient detail for this court to review its assessment.

10. This court agrees with Lopd that this is not a proceeding that a reasonable person would be willing to bring at their own expense.

11. Rule 5-802 (H) NMRA States:

H. Second and Successive petitions. If the petitioner has previously filed a petition seeking relief under this rule, the court shall have
— discretion to: ① dismiss any claim not raised in a prior petition unless Fundamental error has occurred, or unless an adequate record to address the claim properly was not available at the time of prior petition; and

② dismiss any claim raised and rejected in a prior petition unless there has been an intervening change of law or fact or the Ends of Justice would otherwise be served by rehearing the claim.

page ③

PAGE 4

12. THIS COURT FINDS that, IN accordance with Rule 5-802(H)(4), to the Extent that any NEW claims were raised in petitioner's Petition For Writ of Habeas corpus Filed on august 18, 2020, that were Not raised in petitioners prior petitions, Said claims are dismissed. This court Finds that No Fundamental error has Occured and that there was an adequate record available to address the claims Properly at the time of the Prior Petitions.

13. Further, this court Finds that, IN accordance with Rule 5-802 (H)(2) any Identical or similar claims that were raised in the petition for Writ Habeas corpus Filed August 18 2020, the were previously raised and rejected in petitioner's prior petitions, are hereby dismissed This Court Finds That there has Not been an intervening Change of law or Fact. This court Finds that the Ends of ~~Justice~~ Justice would Not be
— Served by rehearing the claim.

14. Additionally, petitioner may Not seek post conviction relief For issues raised on Appeal that were decided on the merits against Petitioner/o State v. gomez, 1991 - NMSC-061 THIS IS the standard rule but it has been modified to allow Some leniency in allowing the issue to be brought before The court subsequent to the appeal. However, for the court to review the issues, the claims needs to be grounded in Facts beyond the record previously presented on appeal and the Petitioner Must show that the additional Facts are those which could Not, or customarily would not, be developed in a trial on common charges. Campos v. bravo 2007 - NMSC - 021. IN his current petition, petioner Failed to address the fact that Many Issues raised were the same issues decided against him on appeal
— and Failed to provide additional Relevant Facts.

15. Also, this court finds that petithere claim related to his indictment is not supported by fact or the record in this matter. Petitioner is not entitled to relief as a matter of law of such claim.

16. As noted above, petitioner filed motion to expand record filed on september 24, 2020. This court finds that said motion is directly related to petitioners petition for writ of habeaus corpus filed on August 18 2020, This court fully consioelered the additional information and request made in said motion. The motion to expand record filed 9.24.2020 shall be denied.

Decision and Dismissal
After examining the petition, exibits, prior proceedings and based on the above reasons, this court finds the petitioner is not entitled to relief as a matter of law

Therefore, in accordance with Rule 5-802(H)(2)(1-2) NMRA and Rule 5-802 (6)(1) NMRA, the petition for writ of habeas corpus filed August 18, 2020 is Dismissed, Additionally the motion to Expand Record filed on september 24,2020 is hereby denied.

Ho signedit
Hon Drew. D. Tatum
District Judge.
Division II

FILED
9th JUDICIAL DISTRICT COURT
Curry County
9/24/2020 1 06 PM
SHELLY BURGER
CLERK OF THE COURT

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

No D-905-CR-2007-00434
(Hon Drew Douglas Tatum)

ALBERT RAMIREZ,
      Petitioner,

vs

STATE OF NEW MEXICO,
LEON MARTINEZ, Warden,
      Respondents

# NOTICE OF 5-802(H)(1) PRE-APPOINTMENT REVIEW

The Post-Conviction/Habeas Unit of the Law Offices of the Public Defender provides notice

to the Court and Counsel for Respondents of its review in accordance with Rule 5-802(H)(1),

NMRA 2017 and states the following

1) The Ninth Judicial Court Clerk filed the *pro se* Petition for Writ of Habeas Corpus on

   August 18, 2020

2) The Law Offices of the Public Defender (LOPD) was served with the *pro se* Petition for

   Writ of Habeas Corpus by the Court Clerk on August 18, 2020

3) Pursuant to Rule 5-802(H)(3) NMRA, this review is timely filed on or before October 2,

   2020

4) As per, 5-802(H)(1) LOPD has reviewed the Petition and determines that it is not a

   proceeding that a reasonable person with adequate means would be willing to bring at a

   person's own expense [1]

---

[1] Under the Indigent Defense Act, Sec. 31-16-3 (B)(3) a person has the limited right to appointed counsel representation in post-conviction matters "unless the court ... determines that it is not a proceeding that a reasonable person with adequate means would be willing to bring at his own expense " (Emphasis supplied)

## Procedural History

1) Petitioner filed four previous *pro se* petitions for writ of habeas corpus in 2017, on March 22, 2017, April 25, 2017, June 20, 2017, and July 17, 2017

2) On May 18, 2018, an Amended Petition for Writ of Habeas Corpus was filed on Petitioner's behalf by his habeas counsel Liane Kerr

3) The Amended Petition raised six issues

   a   Petitioner was denied his Sixth Amendment right to effective assistance of counsel and his right to compulsory process when his trial attorney failed to call Dr Maxann Shwartz, Ph D to testify at either a competency hearing or at trial,

   b   Petitioner's convictions were obtained in violation of his state and federal right to due process and a fair trial when prior uncharged acts were introduced,

   c   Defendant's due process rights were violated when jurors observed him shackled and fall during trial,

   d   Sufficiency of the evidence,

   e   Prosecutorial misconduct for statements made during closing arguments, and

   f   Double jeopardy violation for being convicted of two counts of Tampering with Evidence

4) The State filed a response to the Amended Petition on September 10, 2018

5) A Preliminary Disposition Hearing was held on October 29, 2018

6) On December 14, 2018, the Court issued an Order Denying Petitioner's Petition for Writ of Habeas Corpus

7) Petitioner filed a fifth *pro se* Petition for Writ of Habeas Corpus on June 24, 2019 where he raised the issues of ineffective assistance of counsel from his trial counsel, appellate

2

counsel, and counsel assigned to his previous Habeas Petition, Whether the trial court abused its discretion in denying Petitioner's request and demand to fire or substitute his counsel, Whether introduction of Petitioner's prior uncharged acts at trial violated his due process rights, Whether statements made by the prosecuting attorney during closing arguments and cross examination of Petitioner constituted prosecutorial misconduct

8) In reviewing the June 24, 2019 petition, LOPD concluded that Petitioner did not appear to assert any additional claims that he had not previously raised in prior petitions Petitioner asserted that Ms Kerr "failed to raise 3 or 4 issues" that Petitioner had raised in his previous pro se Petition, but it was unclear specifically which issues Petitioner believed had not been adequately addressed

Issues and Analysis

9) In the instant petition, Petitioner seeks appointment of a habeas attorney to "assist him in habeas proceedings, and an evidentiary hearing to present what the jury actually saw, and allegations to be proved "

10) Petitioner raises the following issues in his *pro se* petition.

   a   Irreconcilable conflict between trial counsel and Defendant and ineffective assistance of trial counsel for

      i   Trial counsel was racist and called Petitioner a "dirty Mexican" and told him "you little stupid bitch . I hope you get life" Said I won't help you unless I took pico

      ii   Failure to file motions including:

         1   Motion to suppress illegally obtained evidence,

         2   Motion for change of venue due to the *incident* occurring in the small town of Clovis, and media reports stating that Petitioner

3

attacked the victim on prior occasions which was highly

prejudicial,

3   Motion for mistrial for the jury seeing Petitioner in shackles and
    falling down, *[handwritten annotation]*

iii   Failure to keep Petitioner informed of plea deals, discuss strategy, and

maximum sentences

iv   Failure to allow Petitioner to testify that the Victim sexually abused

Petitioner, and that Petitioner was intoxicated on the date of incident

v   Failure to call witnesses including

1   Pricilla Lopez (neighbor eyewitness) and Ricky Jaramillo (eye

witness) in order to prove that Petitioner was the one being chased

and shot Victim in self-defense,

2   Petitioner's dad, Jose Ramirez to testify that Victim attacked him

on two prior occasions and was aggressive,

3   Petitioner's aunt, sister, brothers, and friends, and

4   Doctors who treated Petitioner after an accident which resulted in

mental illness, and Petitioner being placed on medications

vi   Failure to investigate family history of mental illness

vii   Failure to present insanity defense

viii   Failure to alert the Court that Petitioner was hearing voices on the day of

trial

ix   Failure to raise double jeopardy defense

x   Failure to poll the jury about seeing Petitioner fall

4

b   Due process violations for

   i   Court not allowing substitution of counsel,

   ii   The jury witnessing Petitioner in shackles and fall down,

   iii   Evidence of prior bad acts,

   iv   Improper comment on silence,

   v   Invalid indictment because the grand jury proceedings incorporated hearsay from Ivan Vasquez who testified that Petitioner threatened to kill Victim, and this witness did not show up to trial and later wrote an affidavit recanting his statements,

   vi   Double jeopardy violation

c   Ineffective assistance of habeas attorneys for not arguing what he wanted, not taking into consideration his opinion, filing amended petition without sufficient time, not allowing Petitioner to speak at the disposition hearing, not meeting with Petitioner, not requesting a transcript of the closing argument, not raising the issues of sufficiency of the evidence, not raising the issue of double jeopardy on the tampering charges, and not raising the issue of prosecutorial misconduct for statements made in closing

d   Ineffective assistance of appellate attorney for not asking for an evidentiary hearing

e   Prosecutorial Misconduct for comment on Petitioner's legal research, and statements in closing argument regarding Petitioner's prior bad acts, *and that Petitioner is a "menace to society"*

5

11) All of Petitioner's claims have been raised in either previous petitions or in his appeal in case, S-1-SC-34579  The only additional issue raised in the instant petition is regarding Petitioner's indictment

12) "[A] defendant may not seek post-conviction relief for issues raised on direct appeal that were decided on the merits against defendant " *State v. Gomez*, 1991-NMCA-061, ¶ 5, 112 N M  313. Petitioner does not assert that there was an insufficient record to address the matter on appeal, which would permit further review  *Id.* Petitioner failed to address the fact that the same issues were raised and decided against him on appeal  This does not provide sufficient basis for habeas review

13) Pursuant to Rule 5-802(I) "Second and successive petitions  If the petitioner has previously filed a petition seeking relief under this rule, the court shall have the discretion to  (1) dismiss any claim not raised in a prior petition unless fundamental error has occurred, or unless an adequate record to address the claim properly was not available at the time of the prior petition; and (2) dismiss any claim raised and rejected in a prior petition unless there has been an intervening change of law or fact or the ends of justice would otherwise be served by rehearing the claim "

14) The applicable committee commentaries for the relevant 2014 amendments are as follows "Paragraph B(5) is amended to clarify that it applies to successive petitions for habeas relief. District courts should ordinarily dismiss petitions that do not comply with the provisions of Paragraph B(5)  Paragraph H gives the district court guidance as to the handling of successive petitions for habeas relief  The standard is higher for a petitioner raising a claim rejected in a previous habeas petition than a claim rejected on direct appeal  Standard notions of claim and issue preclusion generally do not apply in habeas cases

6

*Campos v. Bravo*, 2007-NMSC-021, ¶ 5, 141 N M 801, 161 P 3d 846 Courts have some discretionary capacity to dismiss habeas claims when a prior petition has been filed. According to *Duncan v. Kerby*, 1993-NMSC-01 1, 115 N M 344, 851 P 2d 466 " The rule on successive petitions focuses primarily on petitions in which the same grounds were raised and denied on the merits See *State v. Canales*, 1967-NMSC-221, ¶10, 78 N M 429

15) Petitioner raises claims of ineffective assistance of trial, appellate, and habeas counsel The Sixth Amendment's guarantee of effective assistance of counsel applies on direct appeal as well as in the trial courts *Welch v. Workman*, 639 F 3d 980 (10th Cir 2011) (petitioner challenging effectiveness of counsel on appeal "must show that appellate counsel's representation fell below an objective standard of reasonableness in light of prevailing professional norms ") If appellate counsel ignores a "compelling issue" on appeal, a petitioner may prevail if, "but for counsel's unprofessional errors the result of the proceedings would have been different", i e the appellate proceeding *Id* at 1015 Petitioner must first demonstrate that counsel's performance was deficient and second that the deficient performance prejudiced the defense *Strickland v. Washington*, 466 U S 668, 687 (1984) That is, that "but for counsel's unprofessional errors, the result of the proceeding would have been different " *Id.* at 694

16) Regarding Petitioner's claim of an invalid indictment, pursuant to NMRA 5-302A(B) "All evidence presented shall be lawful, competent, and relevant, but the Rules of Evidence shall not apply " There is no indication that the State was aware of any false testimony at the time of the grand jury proceedings "When the petitioner alleges that the prosecution deliberately participated in the falsification, we require the petitioner to show (1) that the original testimony was, in fact, false, and (2) that it was knowingly,

7

wilfully and intentionally used by the prosecution to procure the conviction " *Case v.*

*Hatch*, 144 N M  20, 2008-NMSC-0024 ¶8, 183 P 3d 905 (internal quotes omitted)

17) Therefore pursuant to Rule 5-802(G)(1), the Post-Conviction Habeas Unit, Law Offices

of the Public Defender, determines that it is not a proceeding that a reasonable person

with adequate means would be willing to bring at a person's own expense and defers to

the Court pertaining to further appropriate action

As per Rule 5-802(H)(1) NMRA 2017,
undersigned counsel submits this review for
the limited purpose of said procedural rule and
is not Counsel of Record on this matter

I hereby certify that a copy of this
notice was transmitted to Petitioner
and Counsel for Respondent upon
filing

Respectfully Submitted,

/s/ *Sarah Gallegos*
Sarah Gallegos
Post-Conviction Habeas Unit
Law Offices of the Public Defender
505 Marquette Ave NW, Suite 120
Albuquerque, NM 87102
(505) 219-2884

/s/ *Sarah Gallegos*
Sarah Gallegos
LOPD Habeas

THIS PAGE IS to
Be attached to petition
For writ of certorari'
Its the decision From
Habeaus corpus Filed and
deaiced. I seal it once
already with habeous with
a manilla Envelope But dont
believe Lwit manage Signed
debit memo Sent it out.
Please. Keep This add to
two other lettus. I Send
Before Nov 4th 2020.
— Aibuto Ramirez

SUPREME COURT OF NEW MEXICO
FILED
NOV 2 0 2020

EXHIBIT
NN

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

FILED
9th JUDICIAL DISTRICT COURT
Curry County
10/5/2020 10.25 AM
SHELLY BURGER
CLERK OF THE COURT

ALBERT JOSE RAMIREZ,

Petitioner,

vs.                                     No.    D-0905-CR-2007-00434

STATE OF NEW MEXICO,

Respondent.

## DECISION AND ORDER OF SUMMARY DISMISSAL
## AND ORDER DENYING PETITIONER'S MOTION TO EXPAND RECORD

THIS MATTER having come before the Court upon the *pro se* Petition for Writ of Habeas Corpus filed by the Petitioner on August 18, 2020 and the *pro se* Motion to Expand Record filed on September 24, 2020, and the Court being fully advised, enters its *sua sponte* Order and FINDS

1. Petitioner's current Petition for Writ of Habeas Corpus was filed on August 18, 2020

2. A copy of Petitioner's Petition was sent to the Post-Conviction Habeas Unit Law Offices of the Public Defender (hereinafter referred to as "LOPD").

3. LOPD timely filed a Notice of 5-802(H)(1) Pre-Appointment Review on September 24, 2020 (hereinafter referred to as "Notice")  LOPD's Notice is incorporated by reference herein as though fully set forth

4 Rule 5-802(H)(1) provides for a pre-appointment review of Petitioner's Petition by LOPD  LOPD may recommend that this Court order a revised petition or may indicate "whether the petition is a proceeding that a reasonable person of adequate

1

means would be willing to bring at a person's own expense and provide sufficient detail for further judicial review of the public defender's assessment."

5 LOPD determined that Petitioner's Petition is NOT a proceeding that a reasonable person would be willing to bring at a person's own expense.

6. In their eight (8) page Notice, LOPD notes that this is the sixth pro se petition for Writ of Habeas Corpus filed by Petitioner. Petitioner's previous petitions were filed on March 22, 2017, April 25, 2017, June 20, 2017, July 17, 2017 and June 24, 2019. Additionally, on May 18, 2018, an Amended Petition for Writ of Habeas Corpus was filed on Petitioner's behalf by his habeas counsel Liane Kerr. The State filed a Response and this Court held a hearing on this Amended Petition. A twelve (12) page Order Denying Petitioner's Petition for Writ of Habeas Corpus was entered on December 14, 2018. Said Order is incorporated by reference herein as though fully set forth. Also, as to Petitioner's Petition for Writ of Habeas Corpus filed on June 24, 2019, this Court entered a Decision and Order of Summary Dismissal on August 12, 2019 (just six days before the instant Petition was filed). Said Decision and Order of Summary Dismissal is incorporated by reference herein as though fully set forth. Moreover, Petitioner appealed his conviction. The New Mexico Supreme Court affirmed Petitioner's conviction.

7. In their Notice, LOPD addresses the numerous issues raised by Petitioner before concluding that, "All of Petitioner's claims have been raised in either previous petitions or in his appeal in case, S-1-SC-34576. The only additional issue raised in the instant petition is regarding Petitioner's indictment."

2

8   While addressing the applicable law related to Petitioner's indictment, LOPD
    determined that there is no evidence showing that the State knowingly used false
    testimony before the grand jury.

9   This Court finds that LOPD provided more than sufficient detail for this Court to
    review its assessment

10. This Court agrees with LOPD that this is NOT a proceeding that a reasonable person
    would be willing to bring at a person's own expense.

11. Rule 5-802(H) NMRA states:

    H. Second and successive petitions If the petitioner has previously filed a petition
    seeking relief under this rule, the court shall have the discretion to
        (1) dismiss any claim not raised in a prior petition unless fundamental
        error has occurred, or unless an adequate record to address the claim
        properly was not available at the time of the prior petition, and
        (2) dismiss any claim raised and rejected in a prior petition unless there
        has been an intervening change of law or fact or the ends of justice would
        otherwise be served by rehearing the claim

12. This Court finds that, in accordance with Rule 5-802(H)(1), to the extent that any new
    claims were raised in Petitioner's Petition for Writ of Habeas Corpus filed on August
    18, 2020, that were not raised in Petitioner's prior petitions, said claims are
    dismissed. This Court finds that no fundamental error has occurred and that there
    was an adequate record available to address the claims properly at the time of the
    prior petitions.

13  Further, this Court finds that, in accordance with Rule 5-802(H)(2), any identical or
    similar claims that were raised in the Petition for Writ of Habeas Corpus filed August
    18, 2020, that were previously raised and rejected in Petitioner's prior petitions, are
    hereby dismissed  This Court finds that there has not been an intervening change of

3

law or fact This Court finds that the ends of justice would not be served by rehearing the claim

14. Additionally, Petitioner may not seek post-conviction relief for issues raised on appeal that were decided on the merits against the Petitioner. *State v. Gomez*, 1991-NMCA-061 This is the standard rule but it has been modified to allow some leniency in allowing the issue to be brought before the Court subsequent to the appeal. However, for the Court to review the issues, the claim needs to be grounded in facts beyond the record previously presented on appeal and the petitioner must show that the additional facts are those which could not, or customarily would not, be developed in a trial on criminal charges *Campos v. Bravo*, 2007-NMSC-021 In his current Petition, Petitioner failed to address the fact that many issues raised were the same issues decided against him on appeal and failed to provide additional, relevant facts

15. Also, this Court finds that Petitioner's claim related to his indictment is not supported by fact or the record in this matter. Petitioner is not entitled to relief as a matter of law on such claim.

16. As noted above, Petitioner filed a Motion to Expand Record filed on September 24, 2020. This Court finds that said Motion is directly related to Petitioner's Petition for Writ of Habeas Corpus filed August 18, 2020. This Court has fully considered the additional information and requests made in said Motion The Motion to Expand Record filed on September 24, 2020 shall be denied

4

## DECISION AND DISMISSAL

After examining the Petition, exhibits, prior proceedings, and based on the above reasons, this Court finds the Petitioner is not entitled to relief as a matter of law.

THEREFORE, in accordance with Rule 5-802(H)(1-2) NMRA and Rule 5-802(G)(1) NMRA, the Petition for Writ of Habeas Corpus filed August 18, 2020 is DISMISSED. Additionally, the Motion to Expand Record filed on September 24, 2020 is hereby DENIED.

HON. DREW D. TATUM
DISTRICT JUDGE, DIVISION II

TO THE COURT CLEAR AND
JUDGES.
                ON. 10.16 2020
I SENT IN A WRIT OF
Certorari. ON MY naseaus
I DID Not Recieve a
decision From the court
could you look into this
And let me Know.
Please and thank you

                    Sincerly,

                    AlBERTo
                    Ramirec
                       69597
                    Po Box 1059
                    SANTA Fe. NM
                            87504

**EXHIBIT**

OO

SUPREME COURT OF NEW MEXICO
RECEIVED

JAN - 4 2021

I AiBELTO Ranirer Moved to seell.
Its motion To Charge
lucrativn from Leon Mountner
to Dwayne SANTistewe
Lcc. Leon County correction Facility

Sincerly

Alberto
Ranirez
6059

**EXHIBIT**

PP

SUPREME COURT OF NEW MEXICO
RECEIVED

APR - 7 2021



Alberto Ramirez Casos
600.00 Wise Milano
Hobbs NM 88247

New Mexico
227 cop Jasper AD
SANTA FE, NM 87504

87501-310199

LUBBOCK TX 794
5 APR 2021 PM 1 L

Hasler
04/05/2021
US POSTAGE $000.51º

FIRST-CLASS MAIL

ZIP 88244
011E11681499

Filed
Supreme Court of New Mexico
4/27/2021 12:57 PM
Office of the Clerk
Joey D. Moya

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

### April 27, 2021

NO. S-1-SC-38539

**ALBERTO RAMIREZ,**

    Petitioner,

v.

**LEON MARTINEZ, Warden,**

    Respondent.

### ORDER

WHEREAS, this matter came on for consideration by the Court upon petition for writ of certiorari filed under Rule 12-501 NMRA and supplemental pleadings, and the Court having considered the foregoing and being sufficiently advised, Justice Barbara J. Vigil, Justice C. Shannon Bacon and Justice David K. Thomson concurring;

NOW, THEREFORE, IT IS ORDERED that the petition for writ of certiorari is DENIED.

IT IS SO ORDERED.



WITNESS, the Honorable Michael E. Vigil, Chief Justice of the Supreme Court of the State of New Mexico, and the seal of said Court this 27th day of April, 2021.

Joey D. Moya, Clerk of Court
Supreme Court of New Mexico

By _Madeline Garcia_
         Chief Deputy Clerk

I CERTIFY AND ATTEST:
A true copy was served on all parties
or their counsel of record on date filed.
_Madeline Garcia_
Clerk of the Supreme Court
of the State of New Mexico

**EXHIBIT**

QQ

West's New Mexico Statutes Annotated
  State Court Rules
    9. Criminal Forms
      Article 7. Special Proceedings

*[handwritten: MOTION TO Amend Petition]*

## NMRA, Form 9̅-7̅0̅1̅

### FORM 9̅-7̅0̅1̅. PETITION FOR WRIT OF HABEAS CORPUS

Currentness

*[For use with District Court Criminal Rule 5–802 NMRA]*

STATE OF NEW MEXICO
COUNTY OF ....CURRY........

IN THE DISTRICT COURT

*For Official Use Only*

No.    D-905-CR-200700434

*(To be supplied by the clerk of the court)*

ALBERTO J. RAMIREZ
........................................................

*(Full name of prisoner)*

    Petitioner,

v.

MR. STEPHENSON
........................................................

*(Name of warden, jailor or other person having power to release the petitioner)*

    Respondent.

**EXHIBIT**

RR

### *Instructions -- Read Carefully*

Make sure that all information provided in this form is true and correct. Make sure that all necessary documents are attached, or explain why the documents are not

being included. If you are currently incarcerated, you may file the petition without payment of the filing fee. If you are not incarcerated and are seeking free process, complete Form 9-403.

Finally, you must complete the certificate of service and mail or otherwise serve copies of this petition on the respondent and the district attorney in the county in which the petition is filed. You must file the original petition and one copy with the Clerk of the District Court. You should keep a copy for your own records.

## PETITION FOR WRIT OF HABEAS CORPUS [1]

ALBERTO RAMIREZ

1. _____ (name of person in custody) is imprisoned or otherwise restrained at Lea county Corr. (name of facility and county of detention) by _____ (name and title of person having custody). W Arden STEPHENSON
LEA, county corr. Facility.

2. This petition

(W) seeks to vacate, set aside or correct an illegal sentence or order of confinement (i.e., ineffective assistance of counsel, illegal search and seizure, involuntary confession, or other matters relating to the trial or sentence the confined person received).

[W] challenges confinement or conditions of confinement or matters other than the sentence or order of confinement. (*This applies only to matters arising after the confined person arrived at the institution, i.e., county jail confinement, mental hospital confinement, detention facility confinement, good time credit, misconduct report, prison due process violation or parole*).

3. State concisely the facts upon which the confined person bases the claim:

SEE ATTACH PAGES. MARK PAGE
And NUMBER. And FACTS OF CASE
AT End OF THiS FORM ON PAPER
NOT ENOugh SPACE to WRite ALL.

4. State concisely the grounds and law, or other legal authorities on which the confined person bases the claim:

See attach pages at End
of this Focm thu Answer
Not ecnougn spade to write
it All down

5. Have the grounds being raised in this petition been raised previously in your direct appeal? If so, explain the result. If not, explain why not:

Some sir, Imprices Bod ncts of
battry on A peace officet and questions
Abou legal research Brosecrorial mis conduct
See pages AT End of my Form not enurn
space to write it all down sir,

6. Have the grounds raised in this petition been raised previously in another petition for a writ of habeas corpus? If so, explain the result. If not explain why not: Adeouate

YES DENIED AND NO Furdamental Error, and Adeouate
Record to develope claim IN STATE court, And the ends of
Justice would not be sicsed by cenebrng or miscarroyal
of Justice, Denied, But MR RAMIREZ DOES NOT
BELIEVE the State claim And Federm claims raised IN
Constitutomal Terms And Both state @ NMSTATE And
federal law. MR. RAMircz Properly Present thier Now
To be addressed to Exhaust Romidies - SEE ATTACH PAGE

7. Briefly describe the relief requested: SEt aside petitioners criminal
This petition seeks to vacate
Convictions on the grounds that he was denied his state
And Federal Constitutional Rights to due process
And denied effective assistance of counsel, Trial
And Appellate
Attorney.

WESTLAW © 2017 Thomson Reuters. No claim to original U.S. Government Works.

3

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

........................................................................................................

........................................................................................................

........................................................................................................

8. State the nature of the court proceeding resulting in the confinement (*i.e.,
criminal prosecution, civil commitment, etc.*), including:

2 TAMPERING W EVIDENCE] HOMICIDE 1st degree murder

(a) case name:

STATE OF NEW MEXICO V. ALBERTO RAMIREZ

S. Ct. NO 34,576

(b) docket number:

D.905 - CR - 2007 - 0434

(c) name of judge:

TEDDY . L + HARTLEY

(d) name and location of the court in which the proceeding was held:

9th JUDICIAL district court

700 N. MAIN ST CLOVIS, NM 88101

9. State the date of the final judgment, order or decree for confinement:

JAN 8th 2014. Life Plus 6 years

6 years parole if EVER paroled

IN NEW MEXICO DEPARTMENT of corrections

10. Attach a copy of the judgment, order or decree. If not, describe your sentence.

LIFE PLUS 6 yrs. ELIGIBLE AFTER 30 URS.

........................................................................................

11. Was the conviction the result of:

_____ Guilty plea

_____ No Contest plea (*nolo contendere*)

✓ Finding of guilty by judge or jury

12. Was the confined person represented by an attorney during the proceedings resulting in the confinement?

✓ Yes

_____ No

13. If you answered "yes" to (12), list the name and address of each attorney who represented the confined person:

JESSE COSBY P. O BOX. 3330 ROSWELL N.M. 88202

STEVEN. J. FORSBERG 505 Marquette AVE NW Ste 12. Albuquerque. NM 87102

AMANDA STEPHINSON Liane, c, Kerr. P. o. Box. 10491 Albuquerque. NM 87184 - 0491

14. Did you appeal your conviction?

✓ Yes *(Go to 15)*

_____ No *(Go to 16)*

15. If you answered "yes" to (14), list:

(a) The name of each court to which an appeal was taken:

SUPREME COURT OF NEW MEXICO

........................................................................................................................

(b) The case name and docket number for each appeal:

supreme court of NEW MExic

is State. v. RAMIrez S.ct. NO 34,576

(c) The date each appeal was filed and decided: (*Attach a copy of each opinion or order*)

JANUARY 18th 2017 Decided

Filed June 2014

Don't know when Filed 2014 decided 2016

(d) A summary of the grounds upon which each appeal was based: prosecutorial

INEFFective Assistance of Counsel,

MisCONduct, Prior Bad Acts, Shackles Error,

COMMENT oN Silence, Reevaloation composture

abuse discertion

(e) The result of each appeal:

AFFirMed supreme court

AFFirmed district Court

guilty.

(f) The name and address of the attorney on appeal: Marquette Ave. NW ste 120

STEVEN J. FURSBERg. 505. MArquette Ave.
Albuquerque NM. 87102

..............................................................................................................

..............................................................................................................

..............................................................................................................

16. If you answered "no" to (14), state the reasons for not appealing:

..............................................................................................................

..............................................................................................................

17. Apart from any appeals listed in (15), have any other post conviction applications, petitions or motions, been filed with regard to this same imprisonment or restraint?

___✓___ Yes *(Go to 18)*

_____ No *(Go to 19)*

18. If you answered "yes" to (15), list with respect to each such petition or motion:

(a) The type of proceeding: Wr.t of habeaus corpus on

March 12nd2017, April 25 2017, June 20 2017, July 17 2017

And 2019, motion free process, appointment counsel

disposition hearing. Expand record, Evidentary hearing.

(b) The name and date of each case:

state, v. Ramirez July 2018.

(c) the docket number:

D-905-CR-2,07-00472-1-

(d) the court, the administrative agency, or institutional grievance committee
from which relief was sought:

................................................................................................................................

(e) the result of each proceeding. (*Attach a copy of each decision.*)

DENIED AFFIRMED

DONT have all decisions, properly lost on APPELLATE attorney

Transport. 2022. Feburry 22nd

(f) The issues raised in each proceeding: INEFFective assistance of
counsel, prior bad acts, prosecutorial misconduct
yes. Liane. E Kerr  Improper grand jury
A disposition hearing  DENIED Indictment
Shackles error, comment on silence, Sufficieny of Evidence

(g) State whether a hearing was held in connection with each of these
proceedings:

yes. Liane. e. kerr. A
disposition HEAring

(h) State whether the confined person was represented by an attorney in each
proceeding and, if so, the attorney's name and address:

yes  disposition hearing. SHE did not
speak to me, or listen to me. Svid I had to pay For
Liane. e kerr. Albuqurqee. NM. Long distance caks.
P.O. BOX. 10491. 87184-0491

19. Do you seek the appointment of counsel to represent you?

✓ Yes

___ No

## VERIFICATION

**STATE OF NEW MEXICO**

**COUNTY OF** ...... _CuRRy_ .................................................................

I, the undersigned, being first duly sworn upon my oath, state that I am the petitioner in this action. I have read the foregoing petition and know and understand its contents, and the information contained herein is true and correct to the best of my knowledge, information and belief. On _9 Dec 2022_ _(date)_, I deposited this petition in the internal mail system of the institution in which I am confined, properly addressed with any necessary postage prepaid, for forwarding to the district court at the following address:

_9th Judicial court district_
___ Court _(name of court)_

_Clovis_ ___ _(city)_, New Mexico, _88101_ ___ _(zip code)._

............................................................................................

(
_Signature_    _ALBERTO JOSE RAMIREZ_
)

............................................................................................

(
_Address_    _6900. West Miller_
)         _HOBBS. NM 88244_

............................................................................................

**PNM No., if applicable**
**SUBSCRIBED AND SWORN TO before me this** _13th_ **day of** _December_ ___, _2022_ **by**

............................................................................................

_(Name of petitioner)_    _ALBERTO J. RAMIREZ_

............................................................................................

**Notary Public**

STATE OF NEW MEXICO
NOTARY PUBLIC
DEMETRIE YOUNG
COMMISSION # 1128542
EXPIRES APRIL 13, 2024

26

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

*April 13, 2024*
..............................................................................

My Commission Expires:

## CERTIFICATE OF SERVICE

I hereby certify that true copies of the foregoing petition were served upon the respondent and the district attorney in the county in which the petition is filed by *Mail* (*describe manner of service*), this 19 day of *December 2022*

..............................................................................

(
*Signature of petitioner* ALBERTO J. RAMIREZ
)

## USE NOTE

**Credits**

[Adopted effective Aug. 1, 1989. Amended effective May 6, 2009; Dec. 31, 2014.]

**Footnotes**

1    After this petition is reviewed by the Court, the Court will enter the order granting or denying the writ or ordering
     a response before further action. The order shall be prepared by the Court.

2    Petitioners who are incarcerated at the time of filing the petition need not file a motion for free process and may
     file the petition without payment of the applicable filing fee. *See* Rule 5-802(D)(2) NMRA

NMRA, Form 9-701, NM R CR Form 9-701

State court rules are current with amendments received through August 1, 2017.

End of Document                    © 2017 Thomson Reuters. No claim to original U.S. Government Works

25

Page 3 part A
Question 5

B.) MR RAMirez Recieved Insffectue
Assistance OF counsel

C) There was Improper commentary
on MR Ramirez right to silence

D) MR. RAMirez was preJudiced By
Jury seen his restrants

E) The court Abused its discretion
By not declaryng a misrial prior Bad
Acts.

F) prosecutorial misconduct

Appellate

APPELLATE ATTORNEY did not Argue convictions obtained in violation of

APPELLATE ATTORNEY Refused to Argue Prosectorial Misconduct St

In Closing Argument And Rebuttal that was Fundamental Error F

Persasive, Prejudicial, Egregious, prosecutor claimed mr Ramirez

was claimed mr. Ramirez was a LIAR, Malingers, And    3A

MANIPULATOR, And Menace to Society the Community As a whole

And Introduced Evidence comant In violation of Rule 11 404 NMR

And R. Evid Serv. 11-404 & And Rule 11-402 it was still used

Nut of Shooting Niggas And highly Prejudicial Black Juror.

Also Prior Bade Acts and uncharged Conduct d'weiied on

Amounted to prosecutocial Misconduct Habeas Attorney

Refused to Argue this or fact Sheriff Manipulated mr Ramirse

by gesturing head, Finger mouth no he did not fall when

Asked By Judge, Sheriniff doesty, Prosecutors felt this

Obstruction of Justice, In his Appeal without case law feel And STATE Feder

③ No Because Habeas Attorney Amanda Stephenson

For - 5 months and did nothing then conflict of Intrest sue

Knew I wanted to claim Ineffective assistance of Appellate

Attorney Since August 2017. Than New Habeas Attorney LIANE E. Kerr

had only one month Refused to set fowth contentions That mr. Ramirz

wanted that had Merit because she need only 3+ days And could not

fully meet with mr ramirez and was to busy PRIVATE Attorney

fled petition without Any of my Important Issues, claims, caselaw

State and Federal law and violation of due process state and Federal.

She did raise claim of Ineffective assistance of counsel I Asked

Her to, and Prosecutorial misconduct In Closing Argument And

Rebuttal, obbuction that mr. Ramirez was A LIAR And Manipulator

and malingers and menace to Society and community, None of my

State And Federal cases, or violation of my due process of right to

fair trial By prosecutor, Also did not raise Issue about Errorsly

Admitted Evidence In cross Examination of Letter Ramirez

wrote About Shooting Niggaz, Jacksy Niggaz, friend to Jurors Than

Excluded and under Rule - 403 nmRA and erously admitted under

Rule 11-404 B nmRA, R. Evid serv. 11-404 B deprived mr RAMIRZ

of fornus of Fundamental Fairness of due process state and

Federal.

⑧ ~~committee preposses ations to false records~~ of ~~these Bad acts~~,
~~correct results~~ NO OBJECTION FROM trial COUNSEL, 11A
④ Prosecutorial misconduct during cross Examination,
But NO redress And IN closing Argument But No objection
It WAS Egregious, Pervasive, And Prejudicial And Impermissible,
comment on character, And credibility, Bad acts Attack,
Excluded Evidence in violation of RULE 11-404-NMRA-R.
Evid Fed 11-404B. APPELLATE Attorney Refund to raise Issue
Said do it in Habeaus, HABEAUS Attorney had My case 5 months
Myself othr habeaus Attorney new My case 5 months
had did Nothing 2 Extensions. 90 days.
Prosecutor claimed Mr. Ramirez WAS A LIAR, MANIPULATOR,
MALINGERER, A MENACE To Society Improper characters comment,
And Improper Remark on defendants testimony And legal
Research No MR Ramirez had done Mentioned IN Cross
Examination No mistrial granted, Egregious, Pervasive,
And Prejudicial And Impermissible comment on character,
And credibility And bad Acts And uncharged conduct, And Admitted
Evidence Admitted Erously IN Cross Examination over objection
MR. Ramirez objection to Note About JACK YAN NYGAZ,
Bias YAN NYGAZ Admitted IN violation OF RULE-11-404B
And R. Evid SERV. 11-404 and Thsn Excluded AFTER Read To
Jury And Thsn Used Again By prosecutor IN closing
Argument statement MR. Ramirez wrote Note Expressed
Thoughts of murder BEFORE Murder HAPPEND. No
objection used IN violation of RULE 11-403 NMRA
And R. Evid SERV 11-404, 11-403, FundAMEntAL
Error Occured this deprived MR Ramirez of his state
And Federal due PROCESS RIGHTS TO A Fair
trial protected By 6th And 14th AmendMENT And
N.M. Act Const And. U.S. Art Const. NM STATE And
                                        FEDERAL  LAW.

(ground 5) Jury observed MR. Ramirez In shackles. DENIED APPELIATE ATTORNEY And HABEAUS ATTORNEY refused to raise issue. I fell out I was called to Sheriff docerty. I fav stayed on ground 10-15 seconds And looked at everyone the court monitor, Sheriff, And the judge And prosecuters And my layer, And leg shackled leg shackled to table to table And Jurors skeen the fall, when the Judge And the table move And the fall, when the Judge said did you fall. I said yes then no because I seen Sheriff saying No gesturing with mouth And finger, And head, my attorney said he fell, prosecter said no, MR. Ramirez was manipulated by Sheriff docerty to say no prosecutor seen her obstruction of justice Appeliate ATTORNEY nor HABEAUS Atorney argued these facts And MR Ramirez was denied his 5th And 6th And 14th Ameadment Right to fair trial In violation of State And Federal due process to a fair trial protected by 6th, 5th, 14th Ameadment. Nim, Art Const, u.s. Art Const. And New mexico And Federal Law, MR Ramirez was prejudiced his Constitutional rights violatted.

Ground 5

of N.M Art const, And u.s. Art. const.
Violated. State of And N.M. And Federal Laws
MR Ramirez Has Afforded the state court A
Fair opportunity to Apply controlling legal Law
Principles To the facts hearing upon constitutional
claims, MR. Ramirez has made Effort to Join the
claims And has presented the state court with the
operative facts And cited pertinent federal
And state cases. Hes made Effort' to Join the
two. Ineffective Assistance of trial and
appellate Attorney And shackles Error; Rebuttal.
→ No objection During closing Argument and conviction
Ground 6 Prior Bad Acts Introduced and Federal Rights
obtained IN violation of His state And Federal Rights
To due process And A fair trial protected by 6th
Amendment And 14th Amendment. And N.M. Art const,
And u.s. Art const. when Prior misconduct And
Uncharged Acts Introduced Absent A balancing Analysis
under Rule 404 (B) NMRA And R. Evid. SERV 404
And violation of Rule 11-403 NMRA, Erronous Evidence
Admission Evidence That Rendered his trial Fundamentaly
unfair Violates due process Item 302 state Exibit
110 was admitted IN violation of these Rules after Kent
Note then Excluded They used Impermissible comments of this
Evidence IN closing Argument Rebuttal IN violation of
these Rules, Resulted IN denial of constitutional
Faie Proceedings. Never mentioned By Appellate proceedings.
Attorney or Habeaus Attorney IN those proceedings.

Grounds.

⑥ Prior BAD ACTS, yes by APPELLATE ATTORNEY
And HABEAUS ATTORNEY only the SAME 3 prior
bad ACTS. NOT All the ISSUES I. Requested
which had merit. Prior bad ACTS IN
Cross Examination And closing Argument and
Rebuttal which mr. RAMIREZ believes was so
Pervasive And & persistent And SEVERE which
was Amounted to prosecutorial misconduct And
violated his state And Federal Rights to due process
And that protected by 6th Amendment
And 14th Amendment. N.M. Art const. And. U.S. Art
Act. @const. IN violation of New Mexico state
And Federal law. Evidence was errously admitted
In violation of RULE 11-403 NMRA, And RULE
11-404 NMRA. And RULE R. EViD. SERV 11-404
ITEM 302, states ExiBit 110 NOTE ABOUT Shooting Niggaz,
Jacking Niggaz, admitted over objection And Read to
Jurors then Excluded, then Impermissible used by
Prosecutor IN closing Argument said mr. RAMIREZ
wrote About Shooting people, he Expressed thoughts
of murder Before murder happend. NO OBJECTION?
By trial counsel nor argued IN Appal or HABEAUS by
HABEAUS ATTORNEY, Also IN Troduced Evidence
errously IN violation of ways. admitted RULE-11-403,
And RULE 11-404 NMRA And RULE R. EViD  NMRA
SERV. 11-404. facts.

No objection by trial Attorney
Prosecutor used prior bad acts In closing
Argument And Rebutial, photographs of JS of
deceased No probative value MANNER of death
Not IN dispute, And pictures of MR Ramirez
With Unknown Block male gang writing IN
Background And Said his NICK NAME IS WEASEL
Suggest Involument IN A gang other Criminal
Activity. Pictures Not used to Identify RAMirez
By Any witness, this photos of deceased And
RAMirez used only to prejudice the defendant
INflame Jurors prejudice Against defendant.
This deprived MR RAMirez of his State
And Federal due process And 6th Amendment
protected By 14th Amendment Right To A
fair trial. N.M Art. Const. And. US.Art Const
And New Mexico And federal laws ~~stated~~
Violated.

7 INVALId GRANd JURORS INdICtMENT NO
APPELLATE ANd HABEAUS ATTORNEYS REfUSED
TO RAISE CLAIM ~~Everything~~ EVEN though I ASKED
them to and RAISED by MR. RAMIREZ IN
HABEAUS BUT deNIED AS NOT RAISED IN
PREVIOUS PETITION.

8 COMMENT oN SILENCE YES deNIEd. BUT NOT
ARGUED it VIOLATEd STATE ANd fEDSIAL dUE PROCESS
RIGHTS TO A fAIR TRIAL ANd PROTECTED by 5th
ANd 14th AMENdMENT. dEPUTY lOOMIS STATED
I ATTEMPTEd TO gET A STATEMENT.
OBJECTION. MISTRIAL dENIED.

9 SUFFICIENCY of EVIdENCE YES, ONLY by MYSELF
ANd HABEAUS ATTORNEY ANd APPELLATE REfUSED
SAID dO it ON HABEAUS.

10 dOUBLE JEOPARDY. APPELLATE ATTORNEY REfUSED
SAID NO dO it ON HABEAUS. HABEAUS did
BUT deNIEd.

FACTS OF THE CASE

Petitioner, Eighteen years old ALBERT RAMi
Sometimes resided with his mother, Pedro
Ramirez And stepfather, Eradio Robledo
at thier Home in clovis, New mexico,
Some of his Belongs remained at the
residence when he was ordered to leave
the home due to a disruption with his
Stepfather. When about Ramirez Returned
to the home to collect some of his
belongings on July 12th 2007. He Argued
with his father and testified had been attacked
By his stepfather. He asserted the attach
was more threeting, because of his physical
Circumstances, And he was Aware deceased
owned Agun And Threatened to use it.

~~the the something the two facts~~
He had seen Something in deceased hands
At The time of Incedent and that Thier
were two distinct episodes of confrontation
as Evidence was located In Front if a ganage
And Near a car in Front of House. He
Explained his loss of his Shoes, And clothing
at the scene as the deceased's actions
in assaulting him and his efforts to
leave. And petitioner stated he
fearul For his Safety.

MR RAM

This was witnessed By Two people.

Sam Saiz JR. And Another person grace Finley.

During the INUestigation, law enforcement
located petitioners shorts, in a dumpster

several Blocks From Scene. No Fire Arm
located. Jail calls Interpress where petitioner
directed his cousin to An area to remove

BAM BAM. Something petitioner admitted
was a gun That he used IN Self defense
during the Shooting.

1b

STATEMENT OF CASE

## Procedural History

PETITIONER was INDICTED ON JULY 20, 2007 and charged with FIRST degree MURDER and two counts of tampering. Counts running concurrent to the life sentences.

MR. RAMIREZ moved to withdraw his plea on Feburary 25, 2009. A motion the trial court heard on JUNE 25th, 2009. But denied on July 29, 2009. Following AN APPEAL of the denial to withdraw plea, the New Mexico Supreme court Reversed the denial on July 6th 2011. and Remanded for a trial on the merits which was ultimely Held on OCTOBER 7-11, 2013 where jurors were INSTRUCTED to find 1st degree Murder and petitioner was found guilty of. 1st degree Murder. Although petitioner's plea Exposed him to a life sentence only, Following trial, petitioner was Sentenced to the life sentence on each tampering count consecutivly, exposing him on additional 51+ years for a term of life plus 51 years.

MR. RAMIREZ ADDITIONALLY
Request THE FOLLOWING COURT TO
CONSiDER ADDITIONAL ISSUES
WHICH WERE IN HERPENT IN HiS
TRIAL, But WHICH WERE NOT
RAiSEd BY HiS APPEALATE
ATTORNEY. OR HiS HABEAUS ATTORNEY.
SEE STATE V. FRANKLIN, 78. N.M. 127,
428 P.2d. 982 (1967) And STATE V.
BOYER, 103 N.M. 655, 712 P.2d.
1 (Cот. app 1985) COUNSEL Should
SET FOURTH contentious urged
BY petitioNER wheather or not
COUNSEL FEEls They HAVE MERit.
 MR. RAMiREZ ASKS THiS
  COURt to CONSiDER The
   FOLLUWiNG IN THe CONTEXT
   OF THe eNtire TRiAL

See MachiBroda V. UNited STAtes.
368 U.S. 487 (1962); See
Also duNCAN V. Kerry, 1993 - NMSC-
011, 83, 115 N.M. 344.



CONSEQUENTLY. when a petition
for A writ of HABEAUS corpus
Alleges PArticular facts set out
a claim of INadequate
Representation. The petitioner
is entitled to A HEARING.
STAte. V. MOSER, 1967 -
NMSC-163, 6, 78. N.M. 212.
(OVERRULED ON OTHER grounds)

14
page 8

CONCLUSION

IF a petition for writ of
HABEAUS CORPUS demonstrates on
its face that a petitioner may
HAVE BEEN deprived of his constitutional
Rights, The court must address the
issue in an evidentary hearing unless
it plainly appears that the petitioner
is not Entitled to any Relief as a
matter of law, based on facts, alleged
in the petition, or the uncontroverted
facts shown by the court Record.
STATE. v. Franklin, 1967-NMSC - 151, 6, 78, NM
127, quoting machibroda v. united states,
368 u.s. 487 (1942); see also duncan, v.
kerry, 1993 - NMSC - 011, 3, 115, NM. 344
(court must hold an Evidentory Hearing
where a petition adequately alleged Ineffective
assistance of counsel.) HABEAUS CORPUS
Proceedings are The preferred method
For Adjudicating Claims of Ineffective
assistance of counsel, because such
claims often cannot be considered
based solely on the record Before
the trial court.

page 15

> West's New Mexico Statutes Annotated    *Motion to*
>   State Court Rules                      *Amend Petition*
>     9. Criminal Forms
>       Article 7. Special Proceedings

NMRA, Form 9-701

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS

Currentness

*[For use with District Court Criminal Rule 5-802 NMRA]*

STATE OF NEW MEXICO

COUNTY OF Curry.................

IN THE DISTRICT COURT

*For Official Use Only*

No.  D-905-CR-200700434
_____

*(To be supplied by the clerk of the court)*

Alberto J. Ramirez
.................................

*(Full name of prisoner)*

Petitioner,

v.  Mr.
WARDEN STEPHENSON
.................................

*(Name of warden, jailor or other person having power to release the petitioner)*

Respondent.

*Instructions -- Read Carefully*

Make sure that all information provided in this form is true and correct. Make sure that all necessary documents are attached, or explain why the documents are not

EXHIBIT
**SS**

being included. If you are currently incarcerated, you may file the petition without payment of the filing fee. If you are not incarcerated and are seeking free process, complete Form 9-403.

Finally, you must complete the certificate of service and mail or otherwise serve copies of this petition on the respondent and the district attorney in the county in which the petition is filed. You must file the original petition and one copy with the Clerk of the District Court. You should keep a copy for your own records.

### PETITION FOR WRIT OF HABEAS CORPUS [i]

1. ALBERTO RAMIREZ _____ (*name of person in custody*) is imprisoned or otherwise restrained at LCCF _____ (*name of facility and county of detention*) by _____ (*name and title of person having custody*). LEACOUNTY CORRECTIONAL FACILITY      WARDEN STEPHENSON

2. This petition

[W] seeks to vacate, set aside or correct an illegal sentence or order of confinement (i.e., ineffective assistance of counsel, illegal search and seizure, involuntary confession, or other matters relating to the trial or sentence the confined person received).

[W] challenges confinement or conditions of confinement or matters other than the sentence or order of confinement. (*This applies only to matters arising after the confined person arrived at the institution, i.e., county jail confinement, mental hospital confinement, detention facility confinement, good time credit, misconduct report, prison due process violation or parole*).

3. State concisely the facts upon which the confined person bases the claim:

SEE ATTACh PAGES. fACTS
AT ENd oF this fORM
ON PAPER NOT ENOUGh
SPACE. TO WRITE IT ALL.

4. State concisely the grounds and law, or other legal authorities on which the confined person bases the claim:

SEE ATTACH PAGES AT END
OF this FORM FOR this ANSWER.
Not ENOUgh SPACE to WRITE
it All down.

5. Have the grounds being raised in this petition been raised previously in your direct appeal? If so, explain the result. If not, explain why not:

SOME. SIR. IMProPER bAd Acts of
BATERYON PEACE oF FICER. And question Regarding
LeGAL REAStATch ProsecutoriAL misconduct
See pages At end of this Form Not Enough
SPACE TO WRite it All down Sir.

6. Have the grounds raised in this petition been raised previously in another petition for a writ of habeas corpus? If so, explain the result. If not explain why not:

YES. SIR. I DONT UNderStand auestions. HERE
SIR I BELIEVE YES And denied. But
SEE PAGES End OF this FORM
FOR MORE detAil INFOrmATION
ABout This SIR.

7. Briefly describe the relief requested: This PETITION SEEKS TO VACATE
SET ASIDE PETITIONERS CRIMINAL
CONVICTIONS ON the grounds That HE WAS denied his StAte
And Federal ANd. U.S. And. NM CONStitutionAL Rights
TO dUE PROCESS VIOLATEd And denied SM, 6th,
14 CONST. Art. AMends. denied EFFECTIVE ASSIStANce
OF tRIAL ANd APPELLATE ATTORNEY ON APPEAL

Requested
HABEAUS ATTORNEY APPOINTED to help file
petitition correctly. DISCOVERY granted, AND
EXPAND pecord, Add Evdence, Evidentiary or hearing)
                                                                    dispostion granted,

8. State the nature of the court proceeding resulting in the confinement (i.e., criminal prosecution, civil commitment, etc.), including:

1st degree Homicide murder) 2 tAMPEring LOI
murder                              Evidence

(a) case name:

STATO OF NEW. MEXICO. V. AIBERTO J. RAMIREZ
Srct. NO 34, 576

(b) docket number:

D - 905 - CR - 2007 - 0454

(c) name of judge:

TEddy L. HARTIEY

(d) name and location of the court in which the proceeding was held:

9th JUDICIAL district court
700. N. MAIN ST. CloU9s, N. M, 88101

9. State the date of the final judgment, order or decree for confinement:

JAN 8th 2014 - LIFE Plus 6 yEARS
5YEARS PAROLE IF EVER PAROLED
IN NEW MEXICO DEPARTMENT OF corrections.

10. Attach a copy of the judgment, order or decree. If not, describe your sentence.

LIFE PLUS 6 yRS. Eiligible AFIEr 30yrs

........................................................................................................................

11. Was the conviction the result of:

___ Guilty plea

___ No Contest plea (*nolo contendere*)

_✓_ Finding of guilty by judge or jury

12. Was the confined person represented by an attorney during the proceedings resulting in the confinement?

_✓_ Yes

_____ No

13. If you answered "yes" to (12), list the name and address of each attorney who represented the confined person: P.O. BOX, 3330 ROSWELL
JESSE COSBY                                           N.M, 88202
STEVEN J. FORSBERG, 505 MARQUETTE, AVE
N.W, STE 120 Albuquerque N.M 87102
AMANDA STEPHENSON
LIANE.C.KERR, P.O. BOX, 10491, Albuquerque
14. Did you appeal your conviction?                    87184 - 0491

_✓_ Yes *(Go to 15)*

___ No *(Go to 16)*

15. If you answered "yes" to (14), list:

(a) The name of each court to which an appeal was taken:

Supreme Court OF NEW MEXICO
........................................................................................................................

(b) The case name and docket number for each appeal:

SUPREME COURT OF NEW MEXICO

IN STATE V. RAMIREZ S.CT. NO. 34,576

(c) The date each appeal was filed and decided: (*Attach a copy of each opinion or order*)

JANUARY 18th 2017 Decided

Filed June 2014

Don't know when Filed 2114 Decided ~~2016~~ 2016

(d) A summary of the grounds upon which each appeal was based:

INEFFECTIVE ASSISTANCE OF COUNSEL, Prosecutorial
misconduct, Prior BAD ACTS, SHACKLES error,
COMMENT ON SILENCE. REEVALUATION completed

(e) The result of each appeal:            N.M

AFFIRMED DENIED SUPREME COURT

Affirmed denied 9th Judicial District Court

Guilty of ALL CHARGES.

(f) The name and address of the attorney on appeal: MARQUETE. AVE. N.W
STEVEN Jo FORSBERG. 505
STE. 120. Albuquerque N.M. 87102

...................................................................................................

...................................................................................................

...................................................................................................

**16. If you answered "no" to (14), state the reasons for not appealing:**

...................................................................................................

...................................................................................................

**17. Apart from any appeals listed in (15), have any other post conviction applications, petitions or motions, been filed with regard to this same imprisonment or restraint?**

___✓___ Yes *(Go to 18)*

_____ No *(Go to 19)*

**18. If you answered "yes" to (15), list with respect to each such petition or motion:**

WRIToF HABEAUS CORPUS oP
2018,
**(a) The type of proceeding:**
3-22-17  4-29-2017, 6-20-17, 7-17-17 And 2019,
2020 And ~~couse~~ DISPOSITION hƐACING dƐNIEDo

**(b) The name and date of each case:**

STATE. V. RAMIREZ  July 2018

**(c) the docket number:**

D - 905 - CR - 2007 - 00474 -

(d) the court, the administrative agency, or institutional grievance committee from which relief was sought:

...............................................................................................

(e) the result of each proceeding. (*Attach a copy of each decision.*)

DENIED   AFFIRMed

DONT hAVE All decisions, property lost oN
tRANSPORt  2-23.22

(f) The issues raised in each proceeding:

INEFFECtiVE  ASSistANCe oF APPEllAnt ATToRNEY
TRIAL COUNSEL, HABEAUS ATtoRNEy, PriOR bad Acts,
ProsecutOriAl  MIS CONduct  INVALId grAnd JurY
INdICtMENT, ShOCKUSs errOr, COMMENt oN SILENCE, SuFFicieNcy oF
EVidence,
DOUBlE
JeopArdy.

(g) State whether a hearing was held in connection with each of these proceedings:

yes. LiANE. e. KERR

A disposition heariNg. deNied.

(h) State whether the confined person was represented by an attorney in each proceeding and, if so, the attorney's name and address:

yes disposition heariNg. she did Not SpeAk TO ME
OR listen to ME. SAid I had to pAy FoR lONg distANt CAlls.
LIANE. E. KERR.  P.O. BOX  AlbuqueRque.  N.M
87184 - 0471

19. Do you seek the appointment of counsel to represent you?[2]

✓ Yes

___ No

## VERIFICATION

**STATE OF NEW MEXICO**

COUNTY OF ...... Curry ................................................................

I, the undersigned, being first duly sworn upon my oath, state that I am the petitioner in this action. I have read the foregoing petition and know and understand its contents, and the information contained herein is true and correct to the best of my knowledge, information and belief. On 19th Dec. 2022 (*date*), I deposited this petition in the internal mail system of the institution in which I am confined, properly addressed with any necessary postage prepaid, for forwarding to the district court at the following address:

9th Judicial Court district
___ Court (*name of court*)

Clouis 88101
___ (*city*), New Mexico, ___ (*zip code*).

( Signature ) ALBERTO JOSE RAMIREZ

( Address ) 6900 West Miller
HOBBS N.M. 88244

PNM No., if applicable
SUBSCRIBED AND SWORN TO before me this 13th day of December, 2022 by

(*Name of petitioner*) ALBERTO J. RAMIREZ

Notary Public

STATE OF NEW MEXICO
NOTARY PUBLIC
DEMETRIE YOUNG
COMMISSION # 1126542
EXPIRES APRIL 13, 2024

26

FORM 9-701. PETITION FOR WRIT OF HABEAS CORPUS, NM R CR Form 9-701

*April 13, 2021*

My Commission Expires:

### CERTIFICATE OF SERVICE

I hereby certify that true copies of the foregoing petition were served upon the respondent and the district attorney in the county in which the petition is filed by ____mail____ *(describe manner of service)*, this 19 day of Deeember, 2022

(

*Signature of petitioner*   A. ALBERTO  J.  RAMIREZ

)

### USE NOTE

**Credits**

[Adopted effective Aug. 1, 1989. Amended effective May 6, 2009; Dec. 31, 2014.]

**Footnotes**

1    After this petition is reviewed by the Court, the Court will enter the order granting or denying the writ or ordering a response before further action. The order shall be prepared by the Court.

2    Petitioners who are incarcerated at the time of filing the petition need not file a motion for free process and may file the petition without payment of the applicable filing fee. *See* Rule 5-802(D)(2) NMRA

NMRA, Form 9-701, NM R CR Form 9-701

State court rules are current with amendments received through August 1, 2017.

End of Document                              © 2017 Thomson Reuters. No claim to original U.S. Government Works

25

WRIT OF HABEAS

1A

PAGE 3 PART 2

QUESTION 5 ~~No~~ only legal Argument regarding the denial of reexamination

(B) Mr. Ramirez received Ineffective assistance of counsel

(C) There was Improper commentary on Mr. Ramirez right to silence

(D) Mr. Ramirez was prejudiced by the Jury seeing his restraints

(E) The court abused its discretion by Not declaring a mistrial. Evidence of Battery on peace officer prosecutorial misconduct, broken hand witness.

Improper Au SVSC denial

If not explain why not. Mr. Ramirez additionally request place and time of appeal court to consider additional issues which were inherent in his ~~Attrial~~ Trial, But which were not raise by his appellate attorney. or his habeas attorney on collateral review.

① Ineffective assistance trial counsel did not object to Egregious, persuasive, prejudicial prosecutorial misconduct in closing argument in closing argument and rebuttal and deprived Mr. Ramirez of state and federal right to due process right to a fair trial. protected by the 14th amendment and 6th amendment right to a fair trial. N.M. and federal law and N.M. Art. const, U.S. Art. const. Trial counsel promised if Mr. Ramirez testified he would be able to speak of sex abuse and counsel failed to call witness. DR. Fink, de Burness DR. Swartz to testify of sexual abuse and failed to file a motion for change of venue and suppress evidence Item 302 Exhibit 110 note found in car, a fail motion for mistrial asked ~~him~~ 2-3 times after fell down he said to late

② Appellate counsel said I'd has to argue this on a Habeas He refused ~~Attorney~~ to argue contentions set forth contentions urged by Mr. Ramirez ~~and~~ objected to by trial counsel in cross examination Evidence ~~Erouse~~ admitted in violation of Rule 11-404 NMRA, and Evid serv Rule 404 Exhibit 110 and Item 302 Note About Shooting Niggaz And Mr. Ramirez Read Note then Excluded by Judge then used again Impermissible repeated in closing Argument & Rebuttal Judge Excluded this under Rule 11-403 NMRA. still used In closing Argument and Rebutal.

1) INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL PROMISED IF MR DAMIZER testified he would be ABLE to speak of sex abuse from stepdad AND NEITHER SAMSAIZ, Failed to CALL DR. MAXINE SWARTS, DR. FNW, DR. BURNESS TO testify of my competency, MENTAL illness, AND sexual abuse failed to File motion for change of venue where there was highly prejudicial news of MR RAMIRE Arraoning, victim OF prior Accusings, BATORY ON peace officers, AND threats to his MOM AND step father Never proven IN court, The threats. failed to File motion to suppress evidence illegally siezed from cadillac note written by Alberto RAMIRE saying I'll Blast yAk NIGGAR I'll Jack yall NIGGAR Read to JuOrs over objection then Excluded Then used IN closing Argument prosecuts said MR RAMIREL wrote letter expressed thoughts of murder Before murder happened IN violation of RULE -11-403 AND errouriy admitted IN violation of RULE 11-404 this was so extreme it deprived MR RAMIREL of a fair trial AND the fundamental unfairness of proceedings violate his STATE AND Federal Rights to due process AND protected by 6th Amendment and 14th Amendment, N M ArtConst, US ArtConst NMStATE LAW And federal law violated.

failed to file THAT MR RAMIREZ FELL DOWN After judge Asked RAMIREZ said yes then No beur sheriff doarty MANY ManiPulated Him to say No he did Not FALL DOWN = FingerNO, AND So he said No BEFORE TRIAL Ended he told Counsel this 2-3 times BEFORE TRIAL Ended his coviction was obtained IN violation of STATE AND Federal due process. proteced by 5th AND 14th Amendment.

PAGES PAGE(S) 3 PART(S) PART of 2 And 3, Find or MV
question 5 PART of ② APPEllate counsel Attorney            2 A 3 A
If not Explain why not, Mr Ramirez Additionally request
now and time of appeal court to consider Additional Issues
which were Inherent in his trial but which were not used raised
by his appellate Attorney or his habeas Attorney on collateral
Review. By raising Ineffective Assistance trial counsel did not
object to Egregious, pervasive prejudicial misconduct In closing
argument and Rebuttal and deprived Mr. Ramirez of state And federal
right to due process Right To a fair Trial, protected by the 6th And 14th
AMENDMENT Right To A Fair trial. N.M.-Art court. U.S Art court.

NO objection From Trial counsel on errously Admitted In
Violation of Rule 11-403 NMRA And Rule 11-404 NMRA And
R. Evid. SERV 11-404 OF photographs of deceased 2.5 And
Manner of death not in dispute and no probative value And
only used to prejudice the Mr. Ramirez To Inflame prejudice
of Jurors AgAINTS RAMIREZ. Highly Prejudicial Deprived of
Fundamental Fairness of proceeding violation of due process.
This was not raised or argued by APPEllate Attorney And
either HABEAUS Attorney's. Even though Mr. Ramirez
requested And these Issues have merit And may
Amount to Prosecutorial Misconduct Fundamental Error
And Miscarriage of Justice, Errors And Affected The
FAIRNESS of the Judicial proceedings. ① By Prosecutor
Both refused to raise other Bad character, acts Evidence, ① by Prosecutor
In closing Argument by Prosecutor, Mr. Ramirez punched JIM IN FACE,
② Burglarized Victims Home, verbally Abusive to his mom, stopped Mail,
③ Broke thief windows, harrased his mom and Rubbed, had A
trespass order served to him, went Back Killed victim, this was
not proven by Any FACTS In court TO INFerences
Adduced AT TRIAL. Also fact HABEAUS Attorney did not
raise issue of prosecutorial misconduct IN Cross Examination
of Ramirez doing legal Research.

⑧ Appellate Counsel said I'd have to argue this on a Habeous He Refused to argue Contentions set Fourth Contentions urged by MR Ramirez And Objected to by trial counsel IN Cross Examination Evidence erroneously Admitted IN violation of Rule - 11-404 a(B) NMRA, And ~~Quoted~~ Fed. R. Evid 11-404 Exhibit 110(Sg) Item 302. Note About Shooting people Niggaz And Mr. Ramirez Read note then Excluded by Judge Then used Again Impermissible repeated IN closing Argument & Rebuttal Judge Excluded this under Rule - 11-403 NMRA. Still used IN Closing Argument And Rebuttal.

protected by the 14th Amendment and 6th Amendment rights to fair trial N.M. and Federal law and N.M art const, U.S, art const.

1. Trial counsel promised if Mr Ramirez testified he would be able to speak of sex abuse and counsel failed to call witness. Dr. F.NM, Dr Bultess, Dr Swartz to testify of sexual abuse and failed to file motions for change of venue and suppress evidence Item 302 Exhibit 110 note found in car, fail to file motion Mr. Ramirez ask him 2 or 3 times after Mr. fell down.

2. Appellate counsel said I would have to argue this on a Habeaus. He refused Attorney did not set fourth contentions urged by petitioner which had merit.

3. No because Habeaus Attorney refused to set fourth contentions that I wanted that had merit because she only had 30 days and could not fully meet with me and was to busy and filed petition without any of my important issues, claims, to some B. prior bad acts and Sherdier Error and Ineffective assistance of counsel, and prosecutorial misconduct Brief. Insufficient evidence Brief, Double Jeoprady Barief.

4. Prosecutorial misconduct during Cross Examination, but no reversal and in closing argument but no objection. it was egregious, persuasive and prejudicial And impermissible comment in character, credibility Bad Acts, excluded Evidence Violation of rule 11-404. NMRA - R. Evid Fed 11-404.5. Appellate Attorney refused to raise issue said to do it in Habeaus, Habeaus Attorney Refused to raise issues said for me to do it myself. other Habeaus had case 5 months did

page 3,

5) NO ONLY.
   legal Argument regarding the denial of

A Reevaluation

B. MR RAMirez Recieved INEFFective
   Assistance of counsel

C) There WAS Improper commentary on MR.
   RAMirez's Right to silence

D) MR. RAMirez WAS Prejudiced by the
   INVY seeing his restraints

E) The abused its discretion in commiting
   prior bad Acts

F) The court abused its discretion by not
   declaring a mistrial.

Evidence of battery        DENied, Prosecutorial
   ON PEACE officer                    Misconduct
   IMProper. All Else denied.

IF NOT explain why Not.
MR. RAMirez Additionally Request Now And time
OF Appeal court to consider Additional ISSUES
which were INHERRENT IN his TRIAL, but
which were Not raised by his APPELIATE
ATTORNEY. or his HABEAS ATTORNEY in
COLLateral Review.
INeffective ASSISTANCE trial counsel did not
OBJECT to egregious, pisuasive PREJUDICIAL
Prosecutorial MISConduct IN closing
Argument And REBUTAL and deprived MR
RAMirez of State and FEDERAL
RIGHT TO DUE process Right to A FAIR
trial

Ground ⑥  Mr. Ramirez HAS Afforded the State court
A fair opportunity to Apply controlling law legal
principles to the facts hearing upon these constitutional
claims. Mr. Ramirez HAS made Effort to Join the
two claims or three claims together And
Has presented The state court with the operative
Facts and cited pertinent Federal And State cases.
His made effort to join the claims.

Ground ⑦  Invalid grand jury Indictment Evidence
used In grand jury Indictment Evidence would Not be
Admissive In A district court hearing, hearsay
Sam Saiz and Ivan Vasquez recanted Testimony.
Sam Saiz said Mr. Ramirez made threats to kill victim
In 2016 no Nov order. And Ivan Vasquez recanted statement
In affidavit signed by him said cops made threats And to lie
And drugs, alcohol. Mr. Ramirez Never confused anything to
him, violates the due process clause state and Federal Rights
To due process and 6th amendment and 14th Amendment Rights
To A fair trial.

Ground ⑧  comment on silence post miranda silence of Mr.
Ramirez by deputy loomis on 5th amendment Right to silence
And 6th amendment Right To fair trial And In violation of
State and Federal due process Right to fair trial, protected ?
By 14th Amendment. N.M. Art court, And u.s. Art court.
deputy loomis attempted to get A statement from Mr Ramirez!
Mr. Ramirez has Afforded the State court A fair
opportunity to apply controlling legal principles ↘

To The facts bearing upon these Constitutional claims.
MR Ramirez has made Effort to join the two claims
And has presented the state court with the opnotive facts
And cited pertinent state and federal cases. Hes
made Effort to join the claims. of comment on
Silence by deputy loomis, post Miranda, And prosecutors
Comment Remarks In Closing Argument And Cross Exam
MR. Ramirez Did legal research, mr Ramirez is A liar,
Manipulator, malinguer and Ineffective assistance of
trial and appelate Attorney not objecting or arguing this
In appeal violation of State and federal due process deprived
of fair trial.

⑨ Sufficiency of Evidence if the State does Not present
Evidence sufficient to support a finding of guilt beyond A
Reasonable doubt, The verdict violates due process clause.

⑩ Double Jeopardy. mr. Ramirez believes evidence tampering. no
person shall be for the same offense to be twice put in
a jeopardy of life or limb u.s. const Amend. n.m. const art
MR. Ramirez has Afforded the State court A fair
opportunity to apply controling legal principles to the facts
bearing upon constitutional claims.
mr. Ramirez Has made Effort to join the two claims And has
presented the State court with the opnotive facts And cited
pertinent federal and State cases. Hes made Effort to present claim

[illegible handwritten scrawl at bottom of page]

FACTS OF THE CASE

Petitioner, Eighteen year old Aibert Ramirez Sometimes resided with his mother, Debra Ramirez and stepfather, Eladio Robledo at their Home in Clovis, New Mexico. Some of his Belongs remained at the residence when he was ordered to the leave the home due to a disruption with his Stepfather. when about Ramirez returned to the home to collect some of his belongings on July 12th 2007. He Argued with his father and testified had been attacked By his stepfather. He asserted the attack was more threatng. because of his physical Circumstances, And he was Aware deceased owned A gun And threatened to use it.

He had seen something In deceased Hands At the time of Incident and that their thief were two distinct episodes of confrontation as Evidenco was located In Front of a garage and near a car in Front of House. He Explained his loss of his shoes. And clothing at the scene as the deceased's actions in assorting him and his efforts to leave. And petitioner stated he fearful For his safety.

1

MR RAMIREZ SO and killed Rubleco

This was witnessed By two people.
Sam Saiz. JR. Ant Another person grace Finney.
During The Investigation, law enforcement
located petitioners at Shorts, in a dumpster
several Blocks from Scene. No fire arm
located. Jail calls Interpret when petitioner
directed his cousin to an area to remove
BAM, BAM. Something petitioner admitted
was a gun that he used in self defense
during the Shooting.

16

STATE MEN...

procedural History

PETITIONER was Indicted on July 20.2007 and charged with First degree murder and two counts of tampering Counts running concurrent to The life sentences

MR. RAMIREZ moved to withdraw his plea on Feburary 25, 2009 A motion the trial court heard on June 25th 2009. But denied on July 29, 2009. Following AN APPEAL of the denial to withdraw plea, the New Mexico Supreme court Reversed the denial on July 6th 2011. and Remanded for a trial on the merits which was ultimely Held on october 7-11, 2013 where Jurors were INSTRUCTED to find 1st degree Murder and petitioner was Found guilty of 1st degree murder. Although petitioners plea Exposed him to A life sentence only, Following trial, petitioner was Sentenced to the life sentence on each tompering count consecutivly, easining him an additional six years for A term of like plus six years.

17

D

MR. RAMIREZ ADDITIONALLY
Request THE FOLLOWING COURT TO
CONSIDER ADDITIONAL ISSUES
WHICH WERE IN HERDENT IN HIS
TRIAL, BUT WHICH WERE NOT
RAISED BY HIS APPEALATE
ATTORNEY. OR HIS HABEAUS ATTORNEY.
SEE STATE V. FRANKLIN, 78. N.M. 127,
428 p.2d. 982 (1964) And STATE V.
BOYER, 103 N.M. 655, 712 p.2d.
1 (Ct app 1985) COUNSEL Should
SET FOURTH contentions urged
By petitioner wheather or not
COUNSEL FEELS THEY HAVE Merit.
MR. RAMIREZ ASKS THIS
COURT to consider the
FOLLOWING IN THE CONTEXT
OF THE entire TRIAL

See MachiBroda V. United States.
368 u.s. 487 (1962); See
Also duncan V. Kerry, 1993 - NMSC
011, ¶3, 115 N.M. 344.



DUNCAN, 1995

Consequently, when a petition
for a writ of Habeaus corpus
alleges particular facts set out
a claim of Inadequate
Representation, the petitioner
is entitled to a Hearing.
State. v. Moser, 1967 -
NMSC-163, 6. 78. N.M. 212.
(Overruled on other grounds)

.14
page 8

## CONCLUSION

IF a petition for writ of HABEAUS CORPUS demonstrates on its face that a petitioner may have been deprived of his constitutional rights, the court must address the issue in an evidentary hearing unless it plainly appears that the petitioner is not entitled to any relief as a matter of law, based on facts, alleged in the petition, or the uncontroverted facts shown by the court record. STATE. v. Franklin, 1967-NMSC - 151, 6, 78. NM 127. quoting machibroda v. United States, 368 U.S. 487 (1942); see Also duncan, v. Kerry, 1993 - NMSC-011, 3, 115. NM. 344 (court must hold an evidentary hearing where a petition adequately alleged ineffective assistance of counsel.) HABEAUS CORPUS proceedings are the preferred method for adjudicating claims of ineffective assistance of counsel, because such claims often cannot be considered before based solely on the record before the trial court.

page # 15

PRAYER FOR RELIEF

RELIEF: Requested

MR RAMIREZ PRAYS this court
Relief. THIS PETITIONER
SEEKS TO VACATE And SET aside
petitioners CRIMINAL CONVICTIONS
on the grounds that he WAS denied
his STATE and FEDERAL CONSTITUTIONAL
Rights to due PROCESS And denied
the effective ASSISTANCE OF counsel
At trial, And APPEALLATE ATTORNEY,
HABEAUS ATTORNEYS ON COLLATERAL
REVIEW. MR RAMIREZ ALSO ask to
SET ASIDE CONVICTIONS on the grounds
THAT he WAS denied U.S. CONSTITUTION
due process Rights, Shackless ErroR,
PROSECUTORIAL MISCONDUCT, And
That Evidence THAT WAS WAS So Extremly
UNFAIR And THAT this its admission
violates FundAMENTAL → fairness
And violated his due process
CIAUSE OF THE 14th Amendment.

MR. RAMIREZ MAINTAINS he WAS convicted, denied his STATE AND FEDERAL due PROCESS RIGHTS TO A FAIR TRIAL Also. THAt his N.M. constution And. U.S. constition Rights VIOLATED denied him A FAIR trial. Denied EFFECTIVE ASSISTANCE OF TRIAL COUNSEL, AND APPEALLATE COUNSEL, AND HABEAUS Attorney.

MR RAMiREZ MAINTAINS that He WAS convicted IN VIOLATION OF his 5th Amendment Right to Silence post Miranda, 6th AMEADMEAT Right to Counsel And FAIR TRIAL, 14th AMENDMENt N.M CONSt. U.S. const.





ALSO RELIEF REQUESTED:    ③

MR RAMIREZ Request AN ATTORNEY
TO ASSIST IN HABEAUS proceedings
And DISCOVERY provided, TO present
Certain CLAIMS, ISSUES And Arguments
MR RAMIREZ discovery post of Transport
BY Correction Officers, Because he grieaned MEM
2.23.22,

ALSO Request Expand Record, Eviantiary hearing,
And if possible Courts to promose transcript
FOR closing ARGUMENT And REBUTTAL
And hes IN seg cant Listen to cdso.
MR RAMIREZ IS CRIPPLE Arm Neck abuse
has trouble writing And Reading IN
Ceuse, Constant Chronic PAIN Extreme.

    PRAYER FOR RELIEF.
TO prove smoeuies Errors prosecutorial
misconduct Fundamenmal error occumed
IN BOTH INciaents, to prove Allisations
which unfortunatly NO2 oN the    ⑪
Record. MR RAM-RZ will take poly
    graph as this IS true. Sincerely
ALso sequem INstructions to JURY    ) Albutv Jose
    NO Curative INstructions        RAMIREZ 4

DEFENDENT, URGES THIS COURT
TO KEEP FOREMOST IN its considerations
the NEW MEXICO SUPREME COURT's
recent decrmration, " AN essential
Function OF the courts is to "SERVE
as the ultimate guardIANS OF ON
INdiGANt dEFENdANTS constitutional
Rights".... COURTS "MUST enforce the
guaranteed by the constitution and
Future the intwl of its provisions ... Statev
N. young, 172 P.3d 1138, 142 (2007)

20

Grounds 1-10

TEN Grounds

① INeffective ASSISTANCE
of trial counsel

② INeffective OF APPELATE
counsil

③ Ineffective ASSISTANCE OF
Habeus ATTORNEY

④ Prosecutorial mis conduct

⑤ Shackles error 26 pages Send BACK
of each of these Bro
Bad ACTS

⑥ PC-or INValid Grand Jury Indictment
17 pages sent BACK
1 full copy of All
these Bro
2 me

⑦ comment ON Silence

⑧ Insufficient Evidence

⑨ INSUFFICIENT Evidence

⑩ ground 10 double JeopAroly

55 pages
scratch
1 full copy

STATE OF NEW MEXICO
COUNTY OF CURRY
FILED IN MY OFFICE

JAN 09 2023
1:51 PM

Clerk District Court
KEVIN SPEARS

motion For Amend petition 24 pages

Facts of case 18 pages

motion goes on top 24pp send 1
then Facts. 18 pages Full copy
then every ground to me
1-10. In order of All
these

EXHIBIT
TT

# FACTS OF THE CASE

Petitioner, Eighteen year old Albert Ramirez
Sometimes resided with his mother. Pedro
Ramirez And stepfather, Eladio Rubiedo
at their Home in Clovis, New mexico.
Some of his Belongs remained at the
residence while he was ordered to the Leave
the home due to a disruption with his
stepfather. When albert Ramirez Returned
to the home to collect some of his
belongings on July 12th 2007. He Argued
with his Father and testified, had been attacked
By his stepfather. He asserted the attack
was more threating. because of his physical
circumstances. And he was Aware deceased
owned A gun and Threatned to use it.
He had seen something in deceased hands
At the time of Incident and that their
were two distinct episodes of confrontation
as Evidence was located in front of a garage
and near a car in front of house. He
Explained his loss of his shoes. And clothing
at the scene as the deceased's actions
in assaulting him and his efforts to
Leave. And petitioner stated he
fearful for his safety.

1

MR RAN

This was witnessed by two people.
Sam saiz. JR. And Another person grace Finney.
During the investigation, law enforcement
located petitioners shorts, in a dumpster
several blocks from scene. No firearm
located. Jail calls interprise where petitioner
directed his cousin to an area to remove
BAM, BAM. something petitioner admitted
was a gun that he used in self defense
during the shooting.



STATE. MENT OF FACTS

PROCEDURAL HISTORY

PETITIONER WAS INDICTED ON JULY 20, 2007 and CHARGED WITH First degree MURDER and two COUNTS OF tampering Counts RUNNING CONCURRENT to the life SENTENCES

MR. RAMIREZ MOVED to WITHDRAW his PLEA ON Feburary 25, 2009 A motion the trial court heard ON JUNE 25th 2009. But denied ON July 29, 2009. Following AN APPEAL of the deNIAL to WITHDRAW PLEA, the NEW mexico Supreme court Reversed the denial ON July 6th 2011. and Remanded for a trial ON the Merits which was ultimely Held ON OCTOBER 7-11, 2013 where Jurors were INSTRUCTED to find 1st degree MURDER and petitioner was found guilty of 1st degree MURDER. Although petitioner's plea Exposed him to A life SENTENCE only, Following trial, petitioner was Sentenced to the life SENTENCE and each tampering count consecutivly, earning him an additional Six years for A term of life plus Six years.

3

MR. RAMIREZ ADDITIONAlly
Request THE FollowING COURt TO
CONSidER ADDITIONAL ISSUES
which WERE IN HERDENT IN His
TRIAL, But which WERE NOT
RAISED BY His APPEALATE
ATTORNEY. OR His HABEAUS ATTORNEY.
SEE STATE V. FRANKliN, 78. N.M. 127,
428 p.2d. 982 (1964) And STATE V.
BOYER, 103 N.M. 655, 712 p.2d.
1 (Ct. App 1985) COUNSEL Should
SEt FOURTH contentions urged
By petitioNER whether or NOT
COUNSEL FEElS They HAVE MERit.
  MR. RAMIREZ ASKS This
   COURT to consideR The
   FollowING IN The CONTExT
   OF THe entire TRIAL

See MachiBrodA V. uNited STATes.
368 u.s. 487 (1962); See
Also duncAN V. Kerry, 1993. NMSC-
011, #3, 115 N.M. 344.



DUNCAN, 1995 -NN
consequently, when a petition
for a writ of HABEAUS corpus
Alleges particular facts set out
a claim of Inadequate
Representation, The petitioner
is entitled to A HERRING.
State. v. MOSER, 1967 -
NMSC-163, 6.78. N.M. 212.
(overruled on other grounds)

14+5
parc e
18

CONCLUSION

IF a petition for writ of HABEAUS CORPUS demonstrates on its face that A petitioner may HAVE BEEN deprived of his constitutional Rights, the court must address the issue in an evidentary hearing, unless It plainly appears that the petitioner is not Entitled to any relief as a matter of law, based on facts, alleged in the petition, or the uncontroverted facts shown by the court Record. STATE. v. Franklin, 1967- NMSC - 151, 6. 78. NM 127. quoting machibroda v. united states, 368 u s. 487 (1942); see also duncan, v. kerry, 1993 - NMSC - 011, 3, 115. NM. 344 (court must hold an evidentary hearing where a petition adequatly alleged ineffective assistance if counsel.) HABEAUS CORPUS proceedings are the preferred method For Adjudicating Claims of ineffective assistance of counsel, because such Claims often cannot be considered Based solely on the record Before the trial court.

page # 8

MR RAMIREZ MAINTAINS he WAS convicted, denied his STATE And FEDERAL due PROCESS RIGHTS TO A FAIR TRIAL Also. THAt his N.M. constution And. U.S. constition RIGHts VIOLATED denied him A FAIR trial. Denied EFFECTIVE ASSISTANCE OF TRIAL counsel, And APPEALLATE counsel, And HABEAUS Attorney.

MR RAMIREZ MAINTAINS that he WAS convicted IN violation OF his 5th Amendment Right to Silence post MIrANDA, 6th Amendment Right to Counsel And FAIR TRIAL, 14th Amendment N.M CONST. U.S. Const.

⑩

8

③

ALSO RELIEF REQUESTED:

MR RAMIREZ Request AN ATTORNEY
TO ASSIST IN HABEAUS proceedings
And DISCOVERY provided, To present
Certain CLAIMS, Issues And Arguments
MR Ramirez discovey lost of Transport
BY Correction officus, Because he greivansed MEM
2.23.22,

ALSO Request Expand Record, Evidentiary Hearing,
And if possible Courts to provide transcript
For closing Argument And REBUTTAL
And hes IN seg cant Listen to cds.
MR Ramirez IS CRIPPLE Arm Neck down
has trouble writing And Reading IN
Severe, Constant Chronic PAIN Extreme.

PRAYER FOR RELIEF.
TO prove Several Errors, prosecutorial
Misconduct Fundamental error occured
IN BOTh INcidents, to prove Allugations
which Unfortunatly Nu2 on the ⊕
Record, MR RAMirez will take para
graph as this IS true. Sincerly
ALSO request Instructions to Jury    Aibutv/Jose
NO Curative Instructions )    RAMIREZ 4

9

DEFENDENT, URGES THIS COURT TO KEEP FOREMOST IN ITS CONSIDERATIONS the NEW MEXICO SUPREME COURT'S recent decraration." AN essential Function OF the COURTS is to "SERVE as the ultimate guardians of an INDIGANT DEFENDANT'S constitutional Rights"....COURTS "MUST enforce the guaranteed by the constitution and Future the intent of its provisions" State v N. young, 172 P.3d 1138, 142 (2007)

10

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ALBERTO JOSE RAMIREZ,

**Petitioner,**

vs.                                                                              No. CIV-21-731 MIS/KK

ROLAND MARTINEZ, *et al.,*

**Respondents.**

## RESPONSE TO *PRO SE* PETITIONER ALBERTO JOSE RAMIREZ'S MOTION TO DISMISS [Doc. 22]

**COME NOW** Respondents, by and through counsel, Jane A. Bernstein, Assistant Attorney

General, and in response to *pro se* petitioner Alberto Jose Ramirez's motion to dismiss this federal

habeas proceeding, [see Doc. 22], notify this Court and Mr. Ramirez that Respondents do not

oppose the motion. See Fed. R. Civ. P. 41(a)(1)(A)(i).

Respectfully submitted,

HECTOR H. BALDERAS
Attorney General

Electronically filed

*[signature]*

Jane A. Bernstein
Assistant Attorney General

Attorneys for Respondents
201 Third St. NW, Suite 300
Albuquerque, NM 87102
(505) 717-3500
jbernstein@nmag.gov

FILED
9th JUDICIAL DISTRICT COURT
Curry County
10/5/2020 10:25 AM
SHELLY BURGER
CLERK OF THE COURT

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

ALBERT JOSE RAMIREZ,

      Petitioner,

vs.                         No.    D-0905-CR-2007-00434

STATE OF NEW MEXICO,

      Respondent.

## DECISION AND ORDER OF SUMMARY DISMISSAL
## AND ORDER DENYING PETITIONER'S MOTION TO EXPAND RECORD

THIS MATTER having come before the Court upon the *pro se* Petition for Writ of Habeas Corpus filed by the Petitioner on August 18, 2020 and the *pro se* Motion to Expand Record filed on September 24, 2020, and the Court being fully advised, enters its *sua sponte* Order and FINDS:

1. Petitioner's current Petition for Writ of Habeas Corpus was filed on August 18, 2020.

2. A copy of Petitioner's Petition was sent to the Post-Conviction Habeas Unit Law Offices of the Public Defender (hereinafter referred to as "LOPD").

3. LOPD timely filed a Notice of 5-802(H)(1) Pre-Appointment Review on September 24, 2020 (hereinafter referred to as "Notice"). LOPD's Notice is incorporated by reference herein as though fully set forth.

4. Rule 5-802(H)(1) provides for a pre-appointment review of Petitioner's Petition by LOPD. LOPD may recommend that this Court order a revised petition or may indicate "whether the petition is a proceeding that a reasonable person of adequate




8. While addressing the applicable law related to Petitioner's indictment, LOPD determined that there is no evidence showing that the State knowingly used false testimony before the grand jury.

9. This Court finds that LOPD provided more than sufficient detail for this Court to review its assessment.

10. This Court agrees with LOPD that this is NOT a proceeding that a reasonable person would be willing to bring at a person's own expense.

11. Rule 5-802(H) NMRA states:

> H. Second and successive petitions. If the petitioner has previously filed a petition seeking relief under this rule, the court shall have the discretion to:
> (1) dismiss any claim not raised in a prior petition unless fundamental error has occurred, or unless an adequate record to address the claim properly was not available at the time of the prior petition; and
> (2) dismiss any claim raised and rejected in a prior petition unless there has been an intervening change of law or fact or the ends of justice would otherwise be served by rehearing the claim.

12. This Court finds that, in accordance with Rule 5-802(H)(1), to the extent that any new claims were raised in Petitioner's Petition for Writ of Habeas Corpus filed on August 18, 2020, that were not raised in Petitioner's prior petitions, said claims are dismissed. This Court finds that no fundamental error has occurred and that there was an adequate record available to address the claims properly at the time of the prior petitions.

13. Further, this Court finds that, in accordance with Rule 5-802(H)(2), any identical or similar claims that were raised in the Petition for Writ of Habeas Corpus filed August 18, 2020, that were previously raised and rejected in Petitioner's prior petitions, are hereby dismissed. This Court finds that there has not been an intervening change of





13

## DECISION AND DISMISSAL

After examining the Petition, exhibits, prior proceedings, and based on the above reasons, this Court finds the Petitioner is not entitled to relief as a matter of law.

THEREFORE, in accordance with Rule 5-802(H)(1-2) NMRA and Rule 5-802(G)(1) NMRA, the Petition for Writ of Habeas Corpus filed August 18, 2020 is DISMISSED. Additionally, the Motion to Expand Record filed on September 24, 2020 is hereby DENIED.

HON. DREW D. TATUM
DISTRICT JUDGE, DIVISION II

2

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

                                                            No. D-905-CR-2007-00434
ALBERT RAMIREZ,                                 (Hon. Drew Douglas Tatum)
         Petitioner,

vs.

STATE OF NEW MEXICO,
LEON MARTINEZ, Warden,
         Respondents.

## NOTICE OF 5-802(H)(1) PRE-APPOINTMENT REVIEW

The Post-Conviction/Habeas Unit of the Law Offices of the Public Defender provides notice

to the Court and Counsel for Respondents of its review in accordance with Rule 5-802(H)(1),

NMRA 2017 and states the following:

1) The Ninth Judicial Court Clerk filed the *pro se* Petition for Writ of Habeas Corpus on

    August 18, 2020.

2) The Law Offices of the Public Defender (LOPD) was served with the *pro se* Petition for

    Writ of Habeas Corpus by the Court Clerk on August 18, 2020.

3) Pursuant to Rule 5-802(H)(3) NMRA, this review is timely filed on or before October 2,

    2020.

4) As per, 5-802(H)(1) LOPD has reviewed the Petition and determines that it is not a

    proceeding that a reasonable person with adequate means would be willing to bring at a

    person's own expense.[1]

---

[1] Under the Indigent Defense Act, Sec. 31-16-3 (B)(3) a person has the limited right to appointed counsel
representation in post-conviction matters "unless the court ... **determines that it is not a proceeding that a
reasonable person with adequate means would be willing to bring at his own expense.**" (Emphasis supplied).



14

Case 2:23-cv-01075-MV-DLM    Document 102-1    Filed 01/22/25    Page 1736 of 1863
Case 2:21-cv-00751-MIS-KK    Document 19    Filed 12/05/2022    Page 145 of 176
Case 2:21-cv-00751-MIS-KK    Document 2-1    Filed 08/11/21    Page 336 of 88

• I would obtain counsel, if I had the
  means, funds the money, the assests.
  I am poor indigent, so I get
  wrongly convicted and denied assistance
  of defence counsel, appeliate counsel,
  and in petition. "Thats unfair."
• Who would not obtain counsel, if
  in my situation, doing life + 6 years,
  and the denied, effective assistance
  in all critical stages, trial, appeal
  and habeas petition?
• Please I ask the courts, to
  not dismiss my claims, my petition,
  I ask the courts to grant my
  writ, my request for appointment
  of counsel, my motions, an on
  evidentary hearing, disposition, and
  discovery and trial transcript, to
  expand the record, to amend and
  reconsider, to do collateral review.
• I am doing my best with what I
  have, without, law library, books
  law books, forms, copies, no counsel, no
  money, no paper and pens at
  times, physical disability, mental
  illness, no knowledge or training
  in the law, not able to amend
  to properly present my claims, or
  to research it to fix problems.
• I ask the courts to at least
  allow me to file all my habeaus
  and writ, appeals, all the way up to
  the united states supreme court, and
  then, if denied, I ask all the courts
  to not deny me to file a new
  2nd petition, a new post conviction

④

page 8

dismiss of my petition, and denying my request for counsel would. This would create a miscarriage of Justice by not granting me writ, my request for appointment of counsel, and the request for collateral review to exhaust, unexhausted claims, and to be allowed to properly present claim on Alleged, verbal abuse and threats by counsel.

Fact my defense counsel has died and I was prejudiced by his performance and having to be represented by force after I fired counsel in trial, and I ask to represent myself. I had continuously objected and expressed my dissatisfaction, and when I ask to speak on record after I fired my attorney, every time I was denied. NEVER There was no inquiry on the issue, it was not looked into why I fired my defense counsel. or to represent myself.

The conflict defense counsel and I had, counsel, it was irreconcilable CONFLICT it affected his performance my defense, counsel did not have no best interest at heart. He had his I had my interest. He was angry.

I was denied counsel at critical stage. By having no Inquiry, and to be represented by counsel who had stated to me, "you little stupid bitch", and said, "I hope you get life.

I am doing life plus 8 yrs or 6 yrs. I did not know maximum and minimum time I was facing or I'd get if convicted. counsel would not let me know, I tried + I asked to no avail.

PAGE 10

16

4) Discovery procedures for pro se
petitioners. Courts consider factors
determine whether to authorize
discovery request factors
contained in paragraph A of

Rule 5-507.

MR. Ramirez does not know
what these rules mean or how
to find them.

Rule 5-507, Rule 5-503 or
Rule 5-112 NMRA

MR. Ramirez asks for motion
for state to compel discovery
please help a crippled Christian
repeater. Like John a. Sick child
needed help. please Thank you
for your time God Bless

~~Sincerely~~ Sincerely
yours truly
ALBERTO J RAMIREZ
69597
17

STATE OF NEW MEXICO
COUNTY OF CURRY
NINTH JUDICIAL DISTRICT COURT

ALBERTO RAMIREZ,                                    No. D-905-CR-2007-00434
                    Petitioner,                     (Hon. Drew Tatum)

v.

STATE OF NEW MEXICO and
SHARLENE HAGERMAN, Warden
                    Respondents.

### NOTICE OF RULE 5-802(H)(1) NMRA PRE-APPOINTMENT REVIEW

The Post-Conviction/Habeas Unit of the Law Offices of the Public Defender provides notice to the Court and Counsel for Respondents of its review in accordance with Rule 5-802(H)(1) NMRA and states the following:

**Procedural History**

1. The Ninth Judicial Court Clerk filed a *Petition for Writ of Habeas Corpus,* a *Motion to Amended* [sic] *Petition,* and a *Supplemental Petition for Writ of Habeas Corpus* ("*Petition*") for review on December 27, 2022 and January 9, 2023.

2. The Law Offices of the Public Defender (LOPD) was served with the *Petition* by the Court Clerk on December 27, 2022.

3. Pursuant to Rules 5-104 NMRA and 5-802(H)(3), this review is timely filed on or before February 10, 2023.

4. Petitioner challenges his convictions on a number of grounds.

5. The Indigent Defense Act, Section 31-16-3 (B)(3) NMRA, provides that a person has the limited right to appointed counsel representation in post-conviction matters "unless the court ... determines that it is not a proceeding that a reasonable person with adequate means would be willing to bring at his own expense."

1

EXHIBIT

UU

6. Pursuant to Rule 5-802(H)(1), LOPD has reviewed the *Petition* and <u>determines that it is not a proceeding that a reasonable person with adequate means would be willing to bring at a person's own expense.</u>

## Issues and Analysis

7. Following a jury trial in October 2013, Petitioner was convicted of one count of first degree murder and two counts of tampering with evidence and subsequently sentenced to serve a life sentence plus six years.

8. Petitioner has sought numerous post-conviction reviews include a direct appeal following the jury trial, as well as prior petitions for writ of habeas corpus filed on March 22, 2017, April 25, 2017, June 20, 2017, July 17, 2017, June 24, 2019, and August 18, 2020. Petitioner was appointed counsel on the 2017 petition who filed an amended petition and a preliminary disposition hearing was held before the petition was denied. All other petitions were summarily dismissed by the Court.

9. It also appears that Petitioner sought a federal petition for a writ of habeas corpus in cause number 2:21-cv-00731-MIS-KK following the 2020 petition. Documents attached to the *Petition* indicate that the federal litigation was withdrawn at Petitioner's request.

10. In the most current *Petition,* Petitioner challenges his convictions on a number of grounds:

   a. His trial counsel provided ineffective assistance of counsel by failing to:

   (1) Object to prosecutorial misconduct during cross examination of Petitioner and closing arguments, as well as to the introduction of prior bad acts and other attacks on Petitioner's character and credibility;

   (2) Permit Petitioner to testify about sexual abuse by the victim and call witnesses to support Petitioner's proposed testimony;

   (3) Call witnesses to support Petitioner's claim that the victim was violent;

   (4) File motions for a change of venue, to suppress evidence, and for a mistrial due to Petitioner's fall in front of the jury.

Petitioner has previously brought a claim of ineffective assistance of counsel by his trial counsel during appellate proceedings, as well as in his habeas petitions filed in June 2017, July 2017, 2019, and 2020.

b. His appellate counsel provided ineffective assistance of counsel by failing to properly argue the claims included in the *Petition*. Petitioner has previously brought a claim of ineffective assistance of counsel by his appellate counsel in habeas petitions filed in July 2017, 2019, and 2020.

c. His habeas counsel provided ineffective assistance of counsel by failing to properly argue the claims included in the *Petition*. Petitioner has previously brought a claim of ineffective assistance of counsel by his habeas counsel in habeas petitions filed in 2019 and 2020.

d. The State committed prosecutorial misconduct through its cross-examination of Petitioner, statements made during closing argument and rebuttal, and introduction of Petitioner's prior bad acts. Petitioner has previously brought a claim of prosecutorial misconduct in habeas petitions filed in July 2017, 2019, and 2020.

e. Fundamental error for an incident during trial where Petitioner fell down while shackled in front of the jury. This claim was raised during appellate proceedings, as well as in habeas petitions filed in July 2017 and 2020.

f. The trial court erred in admitting Petitioner's prior bad acts. This claim was raised during appellate proceedings, as well as in habeas petitions filed in July 2017, 2019, and 2020.

g. The grand jury indictment was based on invalid hearsay evidence and testimony from a witness that later recanted his statements. Petitioner has previously brought a claim regarding the evidence presented at his grand jury in a habeas petition filed in 2020.

h. The prosecution made an improper comment on Petitioner's right to remain silent when a witness testified that he "tried to interview the defendant" following Petitioner's arrest. This claim was raised during appellate proceedings, as well as in a habeas petition filed in 2020.

    i.  There was insufficient evidence to support his convictions. This claim was raised during appellate proceedings, as well as in a habeas petition filed in July 2017.

    j.  His convictions for tampering with evidence were obtained in violation of his protections against double jeopardy. According to the *Jury Instructions*, the conviction in Count 2 was based on Petitioner hiding or placing a firearm, while the conviction in Count 3 was based on Petitioner hiding or placing clothing in a dumpster. Petitioner has previously brought a claim of double jeopardy for these convictions in habeas petitions filed in July 2017 and 2020.

11. "[A] defendant may not seek post-conviction relief for issues raised on direct appeal that were decided on the merits against defendant." *State v. Gomez*, 1991-NMCA-061, ¶ 5, 112 N.M. 313. Petitioner does not assert that there was an insufficient record to address the matter on appeal, which would permit further review. *Id*. Additionally, Petitioner failed to address the fact that the same issues were raised and decided against him on appeal.  This does not provide sufficient basis for habeas review.

12. Additionally, pursuant to Rule 5-802(B)(6) NMRA, "[i]f the Petitioner has previously filed a petition seeking relief under this rule, a statement explaining why the petition should not be dismissed" shall be included. "If the petitioner has previously filed a petition seeking relief under this rule, the court shall have the discretion to…dismiss any claim raised and rejected in a prior petition unless there has been an intervening change of law or fact or the ends of justice would otherwise be served by rehearing the claim." Rule 5-802(I).

13. The applicable committee commentaries for the relevant 2014 amendments states:

> Paragraph B(5) is amended to clarify that it applies to successive petitions for habeas relief. District courts should ordinarily dismiss petitions that do not comply with the provisions of Paragraph B(5).… Paragraph H gives the district court guidance as to the handling of successive petitions for habeas relief. The standard is higher for a petitioner raising a claim rejected in a previous habeas petition than a claim rejected on direct appeal. Standard notions of claim and issue preclusion generally do not apply in habeas cases. *Campos v. Bravo*, 2007-NMSC-021, ¶ 5, 141 N.M. 801. Courts have some discretionary capacity to dismiss habeas claims when a prior petition has been filed. According to *Duncan v. Kerby*, 1993-NMSC-01 1, 115 N.M. 344, 851 P.2d 466: The successive-writ petitioner has already enjoyed the

opportunity to fully explore his constitutional claims in the postconviction setting, whereas the petitioner who makes his initial claim on direct appeal has not, and consequently, the successive writ petitioner is in a weaker position to argue that equity confers yet another postconviction opportunity to make his claim.

14. All of the claims brought in the current *Petition* have been raised multiple times previously during appellate proceedings and/or previous habeas petitions. It does not appear that there has been any intervening change of law or fact since the previous petitions were reviewed by the Court.

## **Conclusion**

15. Therefore, pursuant to Rule 5-802(H)(1), the Post-Conviction Habeas Unit of the Law Offices of the Public Defender has reviewed the *Petition* and <u>determines that it is not a proceeding that a reasonable person with adequate means would be willing to bring at a person's own expense.</u>

I hereby certify that a copy of this notice was transmitted to Petitioner and Counsel for Respondent upon filing.

*Sarah Plazola*
Sarah Plazola
LOPD Habeas

As per Rule 5-802(H)(1) NMRA 2017, undersigned counsel submits this review for the limited purpose of said procedural rule and is not Counsel of Record on this matter.

Respectfully Submitted,

*Sarah Plazola*
Sarah Plazola
Post-Conviction Habeas Unit
Law Offices of the Public Defender
505 Marquette Ave. NW, Suite 120
Albuquerque, NM 87102
(505) 369-3587

NINTH JUDICIAL DISTRICT COURT
Curry County
2/10/2023 2:04 PM
KEVIN SPEARS
CLERK OF THE COURT

**NINTH JUDICIAL DISTRICT COURT**
**COUNTY OF ROOSEVELT**
**STATE OF NEW MEXICO**

**ALBERTO RAMIREZ,**
      Petitioner,

vs.                                                         No. D-0905-CR-2007-00434

**STATE OF NEW MEXICO and**
**SHARLENE HAGERMAN, Warden,**
      Respondents.

<u>**DECISION AND ORDER OF SUMMARY DISMISSAL**</u>

THIS MATTER having come before this Court by Petitioner's Petition for Writ of Habeas Corpus filed on December 27, 2022 and Supplemental Petitioner for Writ of Habeas Corpus (hereinafter referred to as "Petition") filed on January 9, 2023 and this Court having reviewed this matter and being fully advised, FINDS:

1.    A review of the file shows that Petitioner was convicted, following a jury trial in October, 2013, of one count of first degree murder and two counts of tampering with evidence and subsequently sentenced to serve a life sentence plus six years.

2.    Petitioner has sought numerous post-conviction reviews. Petitioner filed a direct appeal following his conviction and sentence in February, 2014. Petitioner's conviction was affirmed in January, 2017. Petitioner filed several prior petitions for writ of habeas corpus in March, 2017, April, 2017, June, 2017, June, 2019 and August, 2020. Petitioner was appointed counsel on the June, 2017 petition, who filed an amended petition and a hearing was held before the petition was denied. All other prior petitions were summarily dismissed by the Court.

3.    In his Petition, Petitioner raises several issues related to his conviction.

**EXHIBIT**

VV

4.     A copy of Petitioner's Petition was sent to the Post-Conviction Habeas Unit Law Offices of the Public Defender (hereinafter referred to as "LOPD").

5.     LOPD filed a Notice of 5-802(H)(I) Pre-Appointment Review on February 8, 2023 (hereinafter referred to as "Notice"). LOPD's Notice is incorporated by reference herein as through fully set forth.

6.     Rule 5-802 (H)(I) NMRA provides for a pre-appointment review of Petitioner's Petition by LOPD. LOPD would recommend that this Court order a revised petition or may indicate "whether the petition is a proceeding that a reasonable person of adequate means would be willing to bring at a person's own expense and provide sufficient detail for further judicial review of the public defender's assessment".

7.     LOPD addressed the issues raised by Petitioner in its five (5) page Notice. This Court finds that LOPD provided sufficient detail for this Court to review its assessment.

8.     LOPD reviewed the Petition and "determines that is it not a proceeding that a reasonable person with adequate means would be willing to bring at a person's own expense".

9.     After a meaningful and thorough review, this Court finds that this is NOT a proceeding that a reasonable person would be willing to bring at a person's own expense.

10.    This Court finds that is plainly appears from the face of the Petition that the Petitioner is not entitled to relief as a matter of law. Rule 5-802 (H)(2)(b) NMRA. A revised petition, and/or submission of supporting documentation, is unnecessary.

## <u>DECISION AND DISMISSAL</u>

After examining the Petitioner's Petition filed on December 27, 2022 and Supplement

Petition filed on January 9, 2023, the prior proceedings in this case, and LOPD's Notice, filed

on February 8, 2023, this Court finds that it appears from the face of the Petition that the

Petitioner is not entitled to relief as a matter of law. Therefore, in accordance with Rule 5-

802(H)(2)(b) NMRA, the Petitioner's Petition for Writ of Habeas Corpus filed on December

27, 2022, Motion to Amended Petition filed on December 27, 2022 and Supplemental Petition

filed on January 9, 2023 are SUMMARILY DISMISSED. Counsel will not be appointed, no

Response is required from the State and a hearing will not be set.


HON. DREW D. TATUM
DISTRICT JUDGE, DIVISION II

NINTH JUDICIAL DISTRICT COURT
Curry County
07/06/2023 11:37:42
KEVIN SPEARS
CLERK OF THE COURT

**9-701. Petition for writ of habeas corpus.**
[For use with District Court Criminal Rule 5-802 NMRA]

STATE OF NEW MEXICO
COUNTY OF CURRY
IN THE DISTRICT COURT

*For Official Use Only*
No. D905CR200700434
*(To be supplied by the clerk of the court)*

Alberto Jose Ramirez
*(Full name of prisoner)*
    Petitioner,

v.

Nisili
*(Name of warden, jailor or other person having power to release the petitioner)*
    Respondent.

*Instructions — Read Carefully*

    Make sure that all information provided in this form is true and correct. If more space is required, attach additional pages as needed. Make sure that all necessary documents are attached, or explain why the documents are not being included. If you are currently incarcerated, you may file the petition without payment of the filing fee. If you are not incarcerated and are seeking free process, complete Form 9-403.

    Finally, you must complete the certificate of service and mail or otherwise serve copies of this petition on the respondent and the district attorney in the county in which the petition is filed. You must file the original petition and one copy with the Clerk of the District Court. You should keep a copy for your own records.

**PETITION FOR WRIT OF HABEAS CORPUS**[1]
    1.    Alberto Jose Ramirez *(name of person in custody)* is imprisoned or otherwise restrained at Central New Mexico Corr. Facility *(name of facility and county of detention)* by Warden Nisili *(name and title of person having custody).*
    2.    This petition *(SELECT ONLY ONE. If you wish to raise both types of claims, you must file two separate petitions and submit each petition in the location required by Rule 5-802(E))*:

        [✓]    seeks to vacate, set aside or correct an illegal sentence or order of confinement (i.e., ineffective assistance of counsel, illegal search and seizure, involuntary confession, interpretation of the sentence by the institution or other matters relating to the trial or sentence the confined person received). *NOTE: If the petition seeks to vacate, set aside or correct the sentence or order of confinement, correct the Corrections Department's interpretation*

**EXHIBIT**

WW

COMES NOW the petitioner, Alberto RAMIREZ, PROSE pursuant to NMRA Rule 5-802 and Article II, Sections 7,12,14,15,18 of The New Mexico constitution And The Fifth And Sixth And fourteenth Amendments of the New Mexico constitutions, And The United States constitution; And Respectfully Submits this petition For writ of habeas corpus.

MR. RAMIREZ Respectfully Request that this Honorable court Issue a writ of habeas corpus and vacate, set aside or correct MR. RAmirez's sentence and order of confinement, N D-905-CR-2007-0434. MR RAmirez contends that he was denied his State And federal ~~amendmentenstitutional rights~~ ~~the~~ And United States constitutional Eight to due process and A fair trial because The cumulative effects prevented him ~~pounding~~ proving his Innicense. The following Amendments have been made to the prose petitions filed IN past And present Now.

① PLACE OF CONFINEMENT ⇒ MR RAMIREZ IS detained
by WARDEN ___Nisili___                    AT the
prison. of central New mexico corr. facility MHTC

② NATURE OF proceedings RESULTING IN CONF. nxment
MR. RAMIREZ petitioner was Found guilty ~~~and~~~ following
change OF plea ON the date of his trial Jan 26th
2009 of two counts OF tampering with Evidence
and First degree murder IN the first degree.
Petitioner moved to withdraw his plea The
court denied - it, however, The supreme court
remanded the matter, allowing petitioner to
withdraw his plea. Jury trial was ultimately
had ON OCTOBER 10th 2013, and lasted 4
days, after which petitioner was Found of
the murder And tampering charges.

③ The Judgement & sentence Resulting IN current conf. nement;
petitioner was sentenced IN the 9th Judicial district court,
Honorable Teddy L. Hartley. ON Jan 8th 2014 TO consecutive
sentence on each OF the counts: a period of Life IN
The murder count plus 6 years (6) ~~&~~ For each of the
tampering w/ Evidence counts, IN the New
mexico department OF corrections.

④ Direct appeal on Febuary 7th 2014 petitioner appealed his original conviction to the Supreme court OF New mexico in State v. Ramirez, S, ct. No. 34, 576 and a mandate Affirming the trial court was Issued on January 18th 2017.

⑤ prior previous petitioner's Re filed a petition of writ of habeas corpus 2.22.17, 4.25.17, 6.20.17, 7.17.17, 4.18.2018, 8.70.20 12.26.22. 1.6.23

⑥ Habeas representation /timelines of petition: by order of the court, the public defender, Amanda Stephenson, Entered appearance of on August 27th 2017. Ms Stephenson filed two request for Extentsions one on october 23, 2017, and again on January 19th 2017. ~~Ms Stephen was withdraw~~ ~~making~~ did not do anything besides that on purpose. making the petition due on or before April 19th 2018 ~~due to a conflict~~ Due to a conflict ~~of~~ the public defender's office recently reassigned the petitioners case to Liane. Exell, who requested a sixty day Extention in order to Fully review the case, meer with her client and File The Brief. The request was opposed by the state. Consequently, that petition was filed without Fully meeting with Ramirez.

(7) RELIEF REQUESTED. THE petitioner
SEEKS TO VACATE AND SET ASIDE
Petitioners CRIMINAL CONVICTIONS ON
The grounds that He was denied his
STATE AND Federal Rights to due process
Right To A Fair tRiAL.

AISO denied his united States
Rights To due process clause
Right to A Fair tRiAL.

5TH CONSt ARt Amend, 6th CONSt ARt
AMEND AND 14TH CONSt ARt Amend.

*or application of the sentence or order of confinement, or challenge the conviction, it shall be filed in the county of the court in which the matter was adjudicated, or, if the matter has not been adjudicated, it must be filed in the county of the court that ordered the contested confinement. See Rule 5-802(E)(1) NMRA.)*

[ ] challenges confinement or conditions of confinement or matters other than the sentence or order of confinement. (*This applies only to matters arising after the confined person arrived at the institution, i.e., county jail confinement, mental hospital confinement, detention facility confinement, good time credit, misconduct report, prison due process violation or parole.*) *NOTE: If the petition challenges conditions of confinement or matters other than challenges to the sentence or order of confinement (those set forth in the first option), it shall be filed in the county where the petitioner is confined or restrained. See Rule 5-802(E)(2) NMRA.*

3.    State concisely the facts upon which the confined person bases the claim:

SEE attach pAges IN order  1-9

4.    State concisely the grounds and law, or other legal authorities on which the confined person bases the claim:

See attach pages IN order ~ 1-9

5.    Have the grounds being raised in this petition been raised previously in your direct appeal? If so, explain the result. If not, explain why not:    1-9

See attach pages IN order

6.    Have the grounds raised in this petition been raised previously in another petition for a writ of habeas corpus? If so, explain the result. If not explain why not:  ~ 1-9

See attach pages IN order

7.    Briefly describe the relief requested:

See attach pages IN order. ~ 1-9

3. State consisting the facts upon which the person basis the claims.

See attach paper on habeaus corpus petition For facts upon which all the basis of the claims.

Please and thank you to much to write my peel.

God bless you all

Sincerly

Alberto Jose

Ramirez 69597

I am innocent.
Please help me thank you
very much.

State concisely the grounds and laws on which the confined person basic the claim

(1) ground (1) → Actual Innocense claim Defense of self defense. A defendant is presumed innocent and is entitled to due process and a fair trial. U.S. const., amend V..., x IV; N.M. const..., Art II B18." State v. Martin, 1984-NMSC-077, # 17, 101 N.M. 595 (fair trial); U.S. const., amends VI, and VII, and N.M. const.., Art II, Sec. 14 and 18 (presumption of innocense; and N.M. constitution; ART. II, Sec - 18; and the U.S. constitution, amend. V and 14 (due process. Mr Ramirez maintains that he was denied these rights.

... with without these rights Mr. Ramirez asserts his broader right to a fair trial, guaranteed by the 14th amendment to the united states constitution and by Article II section 18 of the New Mexico constitution was imperiled.

These Rights & guaranteed and protected by the N.M. const. Art Amend. and U.S. const. Art amend.

Protected by the 6th Const Art Amend State and due process and fair Right to a fair trial and 14th const Art Amend United States due process clause Right to a fair trial.

S. Ct. at 2064. IN Reviewing an Ineffectivess claim
The entire proceedings must be considered as a
whole. Id. state v. Talley, State v. Ionato,
110 N.M. 146, 147, 793 P.2d. 276, 277
(Ct. app. 1990)

Ground 2 and ground 3
     Ineffective assistance of trial
     Counsel and appellate counsel.

Ground 4. Prior bad ACTS.

Prior bad ACTS should NoT have been Introduced
And Their Introduction denied MR RAMIREZ A
Fair TRIAL.

MR. RAMIREZ is presumed INNOCENT And is entitled
ENTITLED to due Process And A Fair TRIAL,
U.S. CONST., AMEND V.., XIV; N.M. CONST.., ART
II 8 18; and the U.S. CONST.tution, AMEND, V and 14 (due
Process. MR RAMIREZ MAINTAINS that he WAS denied
these Rights when he Objections, the STATE INTRODUCTION
Prior bad ACTS during TRIAL.

MR. RAMIREZ Rights to A Fair trial and due Process
Were violated o U.S. CONST.., AMEND V., XIV; N.M
CONST.., ART II 18 (Fair TRIAL) and NEW MEXICO
CONSTitution, ARTo II, Sec.8; and the U.S.
CONStitution, AMEND. V and 14 (due Process)

MR. RAMIREZ MAINTAINTS he was denied
these Rights.

ground 5)

Prosecutorial misconduct and is entitled

A DEFENDANT is presumed innocent and is entitled
to due process and a fair trial. U.S. Const.,
Amend V.o.; XIV; N.M. const., Art I §18.
State v. Martin, 1984-NMSC-077, 17, 101 N.M. 595
(fair trial); U.S. Const., Art Amends VI and VII,
And N.M. constitution., Art II, Sec 14 and 18
(presumption of innocence; and N.M. constitution.
Art. II, Sec -18; and the U.S. Const, Amend V and
14 due process. Mr Ramirez maintains these rights
were violated. without these rights Mr. Ramirez
asserts, his broader right to a fair trial, guaranteed
by the 14th amendment to the united states constitution
and by Article I Section 18 of The New Mexico
constitution was imperiled

The 6th amend Art Const, State and federal
due process Right to a fair trial
and the 14th const Art Amend of the
United States due process claus Right
to a fair trial.

Also comment-on post miranda silence by
prosecutor in closing Argument. Exercise of 5th amendment
Right to Remain silent is protected by the
14th Amendment Due process clause of the
U.S. Const. Art Amend

ground 6)                                                    689

Comment on Silence

Post Miranda Silence Exercise of the 5th and 6th
Amendment Ah const. of. N.M. And Right
to Remain Silent is protected by the 6th. and
14th Amendment Due process clause of the
U.S. const Art. Amend. State And Federal (due process
Right to a Fair trial.

ground 7) shackles Error is protected by the
State And Federal ~~Amendment~~ due process
Right to a Fair trial. And

ground 7) shackless Error. Is protected by the 6th
Amendment, 5th Amendment and 14th Amendment of the
N.M. Const. Art ~~And~~ Amendment And the U.S.
Const. Art Amend. State And Federal Right to
due process Right to a Fair trial. protected by
the U.S. 14th Const. Art Amend. due process
Clause Right to due process.
Also The 5th amendment ~~clause~~ Art const
Right to due process clause of the
United States Const. Right to a
Fair trial.

(5) Have the grounds being raised in this petition been raised previously In your direct appeal? if so explain result. IF NOT Explain why NOT.

All grounds have been raised IN appeal. 2, 4, 5, 6, 7, . Except grounds ① Claim of actual INNOCENSE. And ground ③ claim INEFFECTIVE Assistance of APPELLATE ATTORNEY.

① Claim of actual INNOCENSE discovered AFTER APPEAL, AS WELL as ground 3. INEFFECTIVE Assistance of APPELLATE ATTORNEY

⑯                                                                    854

have the grounds raised IN this petition
been previously raised in another petition FoR
writ of habeas corpus? IF so explain the
Result. IF Not explain why not.
all grounds have been raised IN previously
habeaus corpus petition. Denied 2,3,4 5, 6, and 7
only two Not raised IN previous habeaus
corpus petition was actual claim of Innocence
self than DEFENSE.
explain why not.
MR Ramirez was IN lea county correctional
Facility IN Dec 2022 he was denied legal
Books post conviction Remedy Books because
of the coronavirus, No legal Access,
was From February 2022 to Dec 10th ~~2022~~
MR Ramirez would of sent off petition supplemental
~~Remove~~ Amended petition before decided on ~~than~~
February 10th 2023 But MR Ramirez was moved
to penitentary of New Mexico Level south
And security threw Away his pens he did Not
get No pens ● from Jan 5th till January
26th. Well on January 27th 2023
Inmates drugged his food And MR Ramirez
Asked security for help and medical help
Inmates told him they put pee, poop

sperm, semen, trazadone and LSD. And he was placed on suicide watch for From 1.29.23 to 2.1.23. Mental health said Ramirez was paranoid, psychiatry said he was manic because he was yelling for help, he could not swallow, torn, dizzy, chest pain, scared to sleep scared he would die in his sleep, dehydrated, and no help. Then on 2.1.23 Ramirez was sent to mental health treatment center CNMCF. In Los Lunas prison, he was denied legal materials from 2.1.23 to 4.5.23 and in acute care unit and even in B pod got legal materials, while in A pod ACU. Mr. Ramirez got letter saying he had 30 days to send petition for writ of certorari to New Mexico supreme court. Well Mr. Ramirez sent his petition for writ of certorari to his brother to sen with a copy of state habeaus corpus petition by march 10th. Brother sent it to CYM Judicial district court, well Mr. Ramirez found this out in may 20th 2023 Brother sent it to wrong place, plus, security staff threw away Mr. Ramirez copy of his state habeaus corpus and took his phone for 8 months legal materials confiscated. in retaliation for reporting PREA and filing complaints and grievances on prisons

1084

At PNM South level 4 and NMTC. Well Mr Ramirez Discovery papers thrown away and now Mr. Ramirez just filed petition with claim of defense of Claim actual Innocence Self defense, these more details but this is all for now, briefly described details of why not filed sooner. Just discovered claim of actual Innocence Self defense on Dec 12th 2022. See Case U.S. V. McAtee, 481 F.3d 1099, 1103 (8th cir 2007) Explaining that Indicator of the affiants credibility. This is detailed and all grounds are part of affidavit statement.

Also while at CNMCF/NMTC. Mr Ramirez was denied Manila envelopes and debit memos and his legal materials IN Aou 2-1-23 to 4.5.23 B pod and then he found out security had confiscated his legal materials then on 4.5.23 his legal materials stacknoreals, and he was not able to get them his family would not ship. The 9th Judicial district Said they would not Send them to me Even if I purchased them from habeus corpus filed on Jan 6th 2023.

MR. RAMIREZ IS TRYING TO SHOW EXCUSABLE NEGLECT AND CIRCUMSTANCES WERE BEYOND THE CONTROL OF MR RAMIREZ.

MR. RAMIREZ CLAIMS ACTUAL ACTUAL CLAIM OF INNOCENSE SELF DEFENSE.

See MILLER. V. MARR, 141 F.3d. 976. 978 (10th Cir.) 1998) where petitioner claims ACTUAL INNOCENSE the limitations period raises serious constitutional questions.

See. CASE V. HATCH, 731 F.3d. 105 (E.B 2013) Satisfied 2244 (b)(2)(b) (:11) ACTUAL INNOCENSE claim. Requirement, met by MR RAMIREZ—

See, McCLESKY V. ZANT, 499 U.S. 467, 487, 111 S.Ct. 1454, 113 J L.Ed. 2d. 517 (MARCH 1991) claim could of been raised IN FIRST PETITION due to deliberate Abandonment of INEXCUSABLE NEGLECT.

MR RAMIREZ IS INNOCENT AND has SHOWN WHY he WAS UNABLE TO RAISE ISSUE IN JANUARY 2023. because confiscation of legal materials by prison STAFF corruption illegal bad Evil people.

① Briefly describe the relief requested: (9 A)

① Appoint new appellate attorney or habeaus attorney to assist. ② Provide discovery to help prove claims and produce evidence on claims of actual innocense.
③ As my discovery thrown away by prison staff.
④ Dispisition hearing. ⑤ Expand record ⑥ Evidentialy hearing. ⑦ Provide trial transcript to prove claims and arguments to add evidence to grounds actual claim of innosense self defense and prosecutrial misconduct and comment on. Ginneva. Post Miranda silence.
And ⑧ for courts to intervene to prevent a miscarriage of justice.
⑨ Reverse and remand for a new trial.

8.    State the nature of the court proceeding resulting in the confinement (*i.e.*, *criminal prosecution*, civil commitment, etc.), including:

(a)    case name:
STATE OF NEW MEXICO V. AIBRTO JOCE RAMIRTZ

(b)    docket number:
D-905-CR-2007-0434

(c)    name of judge:
TEDDY L. HARTLEY

(d)    name and location of the court in which the proceeding was held:
9TH JUDICIAL DISTRICT COURT 700 N, MAIN ST
CLOVIS NM, 88101

9.    State the date of the final judgment, order or decree for confinement:
JANUARY 8TH 2014

10.    Attach a copy of the judgment, order or decree. If not, describe your sentence.
LIFE MURDERONE. AND two tampering w/ evidence
6 years TOTAL. Life plus 6 years

11.    Was the conviction the result of:
_____ Guilty plea
_____ No Contest plea (*nolo contendere*)
___✓___ Finding of guilty by judge or jury

12.    Was the confined person represented by an attorney during the proceedings resulting in the confinement?
___✓___ Yes
_____ No

13.    If you answered "yes" to (12), list the name and address of each attorney who represented the confined person:
JESSE R COSBY P.O. BOX 330 ROSWELL NM 88203

14.    Did you appeal your conviction?
___✓___ Yes (*Go to 15*)
_____ No (*Go to 16*)

15.    If you answered "yes" to (14), list:
(a)    The name of each court to which an appeal was taken:
NEW MEXICO SUPREME COURT OF APPEALS
P.O.BOX 848 SANTA FE, NM 87504

(b)    The case name and docket number for each appeal:
STATE OF NEW MEXICO V. AIBERO JOCE RAMIREZ
NO. S-1-SC-34576

(c)    The date each appeal was filed and decided: (*Attach a copy of each opinion or order*)
August 12th 2014. Decided Dec 1st 2016.

(d)    A summary of the grounds upon which each appeal was based:

Commission silence, Shackled error, prior bad acts
prosecutorial misconduct

(e)    The result of each appeal:

Denied

(f)    The name and address of the attorney on appeal:

Steven J. Forsberg
505 Marquette Ave N.W. ste 120
Albuquerque. NM 87102

16.    If you answered "no" to (14), state the reasons for not appealing:

17.    Apart from any appeals listed in (15), have any other post conviction applications, petitions or motions, been filed with regard to this same imprisonment or restraint?

_____✓_____ Yes (Go to 18)
_____ No (Go to 19)

18.    If you answered "yes" to (15), list with respect to each such petition or motion:

(a)    The type of proceeding:

Habeas corpus petition , petition of certiorari,

(b)    The name and date of each case:

State of New Mexico v. Abouto Joe Revize

(c)    The docket number:

(d)    The court, the administrative agency, or institutional grievance committee from which relief was sought:

9th Judical district court 700. N. Monsterclous rm 5-0.1)

(e)    The result of each proceeding. (Attach a copy of each decision.)

Decnied

(f)    The issues raised in each proceeding:

commend on silence, shackles error, prior bad acts
prosecutorial misconduct

(g)    State whether a hearing was held in connection with each of these proceedings:

disposition hearing

(h)    State whether the confined person was represented by an attorney in each proceeding and, if so, the attorney's name and address:

Liane E. Kerr. P.O Box 10491
Albuquerque. NM 87184 - 0491

19.    Do you seek the appointment of counsel to represent you?[2]

_____✓_____ Yes

_____ No

## VERIFICATION

STATE OF NEW MEXICO

COUNTY OF Curry

I, the undersigned, state that I am the petitioner in this action. I have read the foregoing petition and know and understand its contents, and the information contained herein is true and correct to the best of my knowledge, information and belief. I affirm under penalty of perjury under the laws of the State of New Mexico that on June 30th, 2023 (date); I deposited this petition in the internal mail system of the institution in which I am confined, properly addressed with any necessary postage prepaid, for forwarding to the district court at the following address:

9th Judicial District Court (name of court)

Clovis (city), New Mexico, 88101 (zip code).

Alberto Jose Ramirez

(Signature)

P.o. Drawer 1328

(Address) 105 lupus NM 87031

PNM No., if applicable

## USE NOTE

1.    After this petition is reviewed by the Court, the Court will enter the order granting or denying the writ or ordering a response before further action. The order shall be prepared by the Court.

2.    Petitioners who are incarcerated at the time of filing the petition need not file a motion for free process and may file the petition without payment of the applicable filing fee. *See* Rule 5-802(D)(2) NMRA.

[Adopted, effective August 1, 1989; as amended by Supreme Court Order No. 09-8300-008, effective May 6, 2009; as amended by Supreme Court Order No. 14-8300-014, effective for all cases filed on or after December 31, 2014; as amended by Supreme Court Order No. 17-8300-025, effective for all cases pending or filed on or after December 31, 2017.]

Motion For transcript
Of trial proceedings Closing argument and
Rebutton - it is needed For effective
defense , habeaus corpus petition
petition for writ of certorar.
federal habeaus petition.
Britt V North carolina , 404 U.S.
266, 227, 92 S.ct. 431, 30 , L=d. 2d
400 (1971)

Motion for transcript under 2550
753  28. U.S.C.A.
Transcript Of closing Argument and
Rebuttal would aid The courts
and nelp Ramirz prove his claims.

Motion to appoint attorney to assist in proceedings.

Motion to proceed Informa paumpuis I am an Indigent prisoner.

Motion for discovery to aid in proving my claims.

Motion For Expansion of the Record
transcript could yield Evidence in
enabling. MR RAMIREZ to Prevail
on his claims
It would aid the district court

Motion For Evidentary hearing
See. Duncan V. Kerry, 1993 - NMSC -811, 3,
115. N.M. 344 (court must hold an Evidentary hearing
where petitioner adequatly alleged Ineffective assistance
of counsel, consequently, when a petitioner for
writ of heams corpus alleges particular Facts
which set out a claim of inadequate represantation;
The petitioner is entitled to A hearing
State. V. Mosel. 1967, NMSC - 1963; 6, 78. N.M.
212, overrulled on other grounds.

Motion For evidentary hearing on all
other claims as well.

equitable 10
TOlling

Extra ordinary
Circumstances
beyond mr. Ramirez
controll. To file
Petition timely.

Locked up at mental health
treatment center Hospital in
prison CNMCF.

10

(1)

ACTUAL INNOCENSE CIaim DEFENSE OF SEIF DEFENSE....

Several witnesses and Evidence, Exibits, transcript to prove this claim, me Ramire Claimed Self defense and Prosecutor commented on mr Ramirez poss miranda silence i caned him a peace to security, Liar malingerer and manipulator and said this was the First time anyone heard of that story.

This Attack on mr Ramirez Character and credibility destroyed any chance Ramirz had to have Jury believe him Also, mr Ramirez asued For all maxum Swors to testify in his defense and was denid This Right to asset in his detive, Self defense.

ISSUESS PRESENTED IN ②
This Petition.

①. WHETHER petitioner WAS denied
his Sixth amendment Right to
EFFECTIVE ASSISTANCE OF COUNSEL
during guilt PHASE OF tRIAL of COMPULSURY
PROCESS when his ATTORNEY Refused to
CALL DR. MAXANN SWARTZ to testify
AT TRIAL ABOUT RAMIREZ STATE OF Minds?
AISO OTHER WITNESSES TO his DEFENSE
OF SEIF DEFENSE.?

Ricky JARAM.IIO, Priscillia LOPEZ,    AllWitness
                                       STATEMENT
And Recall Grace Finky And SAM Said   INTERVIEWS
TO ASK Questions OF MR RAMIIEZ:       Deceased,
Height And Weight TO Show MR
  RAMIIEZ was the One being Chased And
RAMIIEZ Shot IN SEIF DEFENSE.

2

MR RAMIREZ WAS denied EFFECTIVE ASSISTANCE OF COUNSEL during Phase TRIAL By his COUNSEL REFUSAL TO Argue DEFENSE OF SELF DEFENSE MR Request HOWEVER COUNSEL REFUSED.

2 ③ → MR RAMIREZ WAS denied EFFECTIVE ASSISTANCE OF COUNSEL during guilt phase closing Argument Of TRIAL, COUNSEL Failed did NOT OBJECT ONCE to NUMEROUS INSTANCES OF PROSECUTORIAL MISCONDUCT.

2 ④ MR. RAMIREZ WAS denied EFFECTIVE ASSISTANCE OF COUNSEL during Closing Argument IMProper ATTACK ON credibility. and Character ATTACK ON MR. RAMIREZ.

② MR Ramirez Requested to Call Dr Fink to testify IN his defense as well to No Avail

Also witnesses Clovis Fire department

Disposition.

EMS, personnal Karen Buens,

Chris Elum, Mike Nolan,

Chief complaint 18:43:00 unit 24 arrived
to find 39 yr old male with weight of
79.4 kg / 175. lbs. patient complaining
If gunshot patient.

To prove Ramirez was being chased
And shot In self defense.

Mr Ramirez was not chasing deceased.

Also witness Kiran Sharma Doctor medical
Said mr Ramirez was paranoid and
needs psychatric help. Referred to lwm orthopedics.

Also DR. Finks Assesment Testimony About
Mr. Ramirez state of mind. for his defense
of self defense.

5

WHETHER PETITIONER → ③ 
MR. RAMIREZ WAS denied EFFECTIVE
ASSISTANCE OF APPELLATE ATTORNEY ON
APPEAL?

① BY APPELATE ATTORNEY Failure to
Argue defense counsels Failure to
Object to Closing Argument and Prejudial
Prosecutorial Misconduct. which created
Fundamental Error and Miscarriage of Justice?

② Whether APPELLATE ATTORNEY REFUSAL to
Argue Trial counsels Failure to give AN
INSTRUCTION ON competency and self defense
INSTRUCTION.?



WHETHER PETITIONERS CONVICTIONS WERE OBTAINED IN VIOLATION OF HIS STATE AND FEDERAL RIGHT TO DUE PROCESS AND A FAIR TRIAL WHEN PRIOR UNCHARGED ACTS WERE INTRODUCED ABSENT A BALENCING ANALYSIS UNDER RULE 11-401 A AND NMSA 2004 RULE 11-404 NMRA 2004 AND ADMITTED IN VIOLATION OF RULE 11-403 NMRA 1998?

DURING direct EXAMINATION, And CROSS EXAMINATION AND CLOSING ARGUMENT AND REBUTTAL.

WHETHER ~~preliminary~~ The Court and Prosecutor
Committed NUMEROUS INSTANCES OF
PROSECUTORIAL?

DURING CROSS Examination And
CIOSing Argument And REBUTTAL?
No objection
COMMENT ON SILENCE, CALLED RAMIREZ A
LIAR, MALINGER, MANIPULATOR, A MENACE
To SOCIETY, IMPERMISSIBLE COMMENT ON
RAMIREZ CHARACTER USE OF EXIBIT 110
RAP SONG admitted OVER OBJECTION And
Read to JURORS by MR RAMIREZ THEN
Excluded And STILL USED IN CLOSING
Argument And REBUTTAL...

9

6. WHETHER PETITIONER WAS denied his zignt TO STATE And Federal Right to due process to A fair trial?

WHETHER Petitioner WAS denied his United States due process Clause Right TO A fair trial, WHEN Jurors observed him IN Shackles And Seen him Fall and moved The table Shackled to during TRIAL?

8

Q. 7

THERE WAS IMPROPER COMMENTARY ON MR RAMIREZ RIGHT TO SILENCE... DURING direct Examination of deputy loomis And during closing Argument And REBUTTAL...

WHETHER COMMENT ON SILENCE DENIED A FAIR TRIAL? OFFICER loomis ATTEMPTED to INTERVIEW MR RAMIRI. THE DEFENSE objected And MOVED for a mistrial for commentary ON INVOCATION OF RIGHTS. THE COURT denied THE MOTION.

#1

Equittable tolling
Extraordinary Circumstance
beyond ML RAMIREZ's Abuto's
Controll, to File petitions
Timely.
See affidavit sworn statement
32 pages Front only

See U.S. V. Galvadon, 552 F.3d
1121, 1124-27 (10th Cir 2008)

The petitioner demonstrated that he was entitled
to equitable tolling where prison staff had
confiscated all his legal materials just weeks
before expiration of the limitations period
petitioner filed his federal petition 22 days
after his legal materials were returned to him
The court held that petitioner exercised diligence both
in pursuing his claims and in attempting to
retrieve his seized materials. The court rejected
the state's argument that petitioner was
ineligible for tolling equitable tolling simply
bcuz he waited until late in the limitation
period to file federal hausesus petitions

This is similar to Alberto Ramirz case

See Espinoza-Matthews v. California,
432 F.3d 1021, 1023, 1024, 9th Cir 2005
Remanding for further fact-finding where a prisoner
was denied access to his legal files during two
temporary transfers lasted 82 days.

MR. Garbadon, also Argued actual Factual
Innocense is a ground for equitable
Tolling.
Gibson v. Klinger 232 F.3d 299,
808 (10th cir 2000)
Mr. Ramirez Similar to Garbadon
argues implicate legal o Innocense
Not Factual Innocense.

See. Valverde v. Stinston 224 F.3d
129, 133 (2d. cir 2000) The 2d circuit
held that the confiscation of a prisoners
Legal papers by a corr. officer shortly
before filing deadline may justify equitable
tolling permit the filing of a petition after
the statute of limitations ordinary would
have run. The court Noted The
Intentional confiscation of a prisoners
habeous corpus petition related legal
papers by correctional officers ⟶

extraordinary matter of law and a person is plainly prevented from filing a pleading for some period of time if he is deprived of the sole copy of that pleading something that the petitioner asserts happened to him HERE.

Mr. Ramirez Case is similar.

Free standing.

Extraordinary circumstance : Claim actual Innocence

"Affidavit" MR. Ramirez Jose Alberto

FOR explaning specific details IN Affidavit

AS AN INDICATOR of AFFIANTS credibility

See. U.S. V. McATEE, 481 f. 3d 1099, 1103

(8th cir 2007)

IN MR RAMIREZ ALBERTO TRIAL ON

OCTOBER 8th 2013. to OCTOBER 13th 2013

This IS mostly During Trial and direct

Examnation, cross Exminvation, And

closing Arguments And Rebuttal and

Sentencing And ON Appeal And After

when MR Ramirez had habeans Attorney

And After he tried to File habeans on

his own within ~~[struck through]~~

Timely. 1 year statute of limitations

HABEANS CORPUS should be timely IN

state and federal court.

"Comment on"
"Silence"

ON DIRECT EXAMINATION DEPUTY SANDY LOOMIS

ISSUED, UNSOLICITED COMMENT that he tried

to INTERVIEW RAMIREZ did constitute prohibited

commentary on defendants fifth amendment
protected by 14 amendments due process clause

RIGHT TO Remain Silent. [BIC 38-39; SEE CD 10-8-

13, 2:12:15 to 2:12:29] INAPPROPRIATE comment on

RAMIREZ fifth amendment RIGHT TO Remain Silent.

[See cd 10-8-13 2:14:18 to 2:14:84] see. U.S const., Amend V

("NO PERSON... SHALL BE COMPELLED IN ANY CASE to BE A

WITNESS AGAINST himself.") post miranda statement.

"IN CLOSING ARGUMENT AND REBUTTAL The prosecutor

Said MR RAMIREZ IS A LIAR A MANIPULATOR

A MALINGER. This IS the First time I have heard

this story. The first time ANYONE has heard this

STORY. This was comment ON previous post

Miranda silence-" SEE U.S. V. AVEWOH, 627 F.3d 914

923 (1st cir 2010) cert denied, 132 S.ct. 141. 181. L.E.d

60 (2011) First we conduct A de novo review to determine

whether the prosecutors comments improperly called attention

to petitioners Failure TO TESTIFY constituted evidence OF guilt.

See U.S. V. JACKSON 540. F.3d 578, 597, 77 Fed. R.

EVID. SERV. 437 (7th cir. 2008) "where as here defendants

defendants Failed to OBJECT to the allegedly Improper

→

comment made, this court reviews the comments

for plain error.

See U.S. v. Olano, 507 U.S. 725, 732-34, 113 S.Ct.

1770, 1777, 123 L.Ed. 2d. 508 (1998)

See U.S. v Carson, 560 F.3d 566, 574 (6th Cir 2007),

cert. denied, 130 S.Ct. 1048, 175 L.Ed. 2d 891 (2010)

To establish plain error, defendant must show that

(1) an error occurred in the district court; (2) the

error was obvious or clear (3) the error affected

defendants substantial Rights; (4) this adverse

impact seriously offected the fairness, integrity

or public Reputation of the Judicial proceedings.

See State v degroff. 2006-NMSC-011, 12, 139, N.M. 211.

A prosecutor is not permitted to elicit statements from

a witness that the defendant invoked his right to

remain silent.

see; State v. wildgrube, 2003-NMCA-108, 23-24

134 N.M. 262 (holding that when a police officer

made an unsolicited comment Regarding the defendants

post miranda silence the prosecutor did not exploit

the reference by asking related questions or referring

to it in closing argument, there was no prosecutorial

misconduct requiring Reversal.

The prosecutor did refer to the post miranda

silence in closing argument and Rebuttal

There was prosecutorial misconduct requiring

Reversal.

Also "prior bad Acts" Evidence Should NOT have been Introduced and thier Introduction Denied the Petitioner his Right TO A Fair tRial.

prior bad Acts. Ramirez went to fire Arms dealer to purchase Agun did not Remember, anew, or did Not have Application, And Police Officer testified so application did Not find Mr Ramirez

Also witnesses testified Bloke window to the house Also witnesses said Mr Ramirez broke car window (Exibit 110)

Also, Letter RAP Song Ramirez wrote RAP song About Shouting people with AKA 47 And blast y'all Niggaz frfree y'all Niggaz Excluded AKA Read to Jurers.

Also, questions About beet butt of a police Officer. dicect Exam of Ramirez.

All this was Introduced was in violation OF Rule 11-404(B)

The promotive value did Not out wash the prejudicial effect for which the State Introduced it.

All this evidence was Introduced in closing Argument and Rebuttal.

Ineffective Assistance of trial counsel

Trial counsel did not object to none
of the prosecutorial misconduct in closing
argument and rebuttal. comment on
Silence, prior bad Acts, and improper
character and credibility attack, and
Impermissible comment on Evid't 110 Rapsing
Excluded evidence. during cross exam of Examine.

Did not give Instructions on self defense
to place the burden of proving
absence of self defense on the prosecution.
See reasons, it explains it all.

INEFFECTIVE ASSISTANCE OF APPELLATE ATTORNEY
TRIAL COUNSEL DID NOT OBJECT I LET APPELLATE ATTORNEY KNOW
I LET him STEVEN J FORSBERG KNOW OF EXHIBIT
110 RAP SING was OBJECTED to READ to JURORS and
TURN EXCUSED BUT IMPOSSIBLY STILL USED IN
CLOSING ARGUMENT And REBUTTAL
I ALSO TOLD APPELLATE ATTORNEY THE FACT That I
WOOD BURIED A POLICE OFFICER WAS USED IN CLOSING
ARGUMENT and REBUTTAL. PROSECUTOR SAID ITS NOTHING FOR
RAMIREZ to be IN ABSTENTIONS.
ALSO REFERENCE to DEPUTY loomis TRIED to INTERVIEW
RAMIREZ the PROSECUTOR IN CLOSING ARGUMENT
AND REBUTTAL. CALLED MR. RAMIREZ A LIAR,
MALINGERER AND MANIPULATOR And SAID THIS IS the
FIRST TIME ANYONE has HEARD THIS STORY.
COMMENT ON POST MIRANDA SILENCE.
ALSO ON MR. RAMIREZ DURING LEGAL RESEARCH CALLED
MR. RAMIREZ A MANIPULATOR.
ALSO CALL MR. RAMIREZ A MENACE to SOCIETY
IN CLOSING ARGUMENT AND REBUTTAL I LET
APPELLATE ATTORNEY KNOW ALL THIS BEFORE
he FILED MY APPEAL And I ASKED him
to LISTEN to CLOSING ARGUMENT AND
he SAID NO, do IT A HABEOUS CORPUS
YOURSELF. I ASKED APPELLATE ATTORNEY to
GET TRANSCRIPT FOR CLOSING ARGUMENT IT WAS
ESSENTIAL TO EFFECTIVE APPEAL TO NO AVAIL

INEFFective Assistance of various Attorneys
Amanda Stephenson And Lione.e.uer.
I Told both of them To Roauest for closing
Argument And Rebuttal transcript it WAS
Essential to my habiaus corpus to no Avail
I let both of them know of Exibit 110
RAP Song Admitteed Read to Juers And etc
Then Excuded over objectional.
Still Impermissible used IN closing Argument
And Rebuttal
I Also Told them Both of Reference of deputy
Lewis tried to Interview defendant by prosecutor
In closing Argument And rebuttal called MR.
Ramirz a liar, meurguer, And manipulator
Said This is the first time anyone has heard
this story. its my first Time And called King Ramirez
a manipulator, For doing legal Research to
Assist IN his defense. defense of self defense.
called MR. Ramirez A menace To society
Told Juers MR Ramirez head butted a police
officer its natural for him To be in
altercatoins. I lef then Both know to no
Avail. they Both said do it yourself
Im not Ginna do it. file your own habeaus

Shackless error I fell down after called
to walk to sheriff docety, leg was swearied
to table, Everyone seen me fall down And
my leg shackled over table move, and prosecutor
Lied said I did Not Fall then My lawyer said I
fell and then judge said did you fall I said yes
then I said No I tripped because
Sheriff docesy was shaking head and finger
No and mouthing No gestures, So I said No.
Prosecutor seen this.

This combined with all prosecutorial misconduct
cleared a violation of due process And
miscarriage of Justice and fundamental error.

Im INNOCent and the government leaves
INNOcent people wrongly convicted
IN prison or what? where is the
Justice? violation of the 14th and
5th and 6th and 8th amendments! No one CARES.

EXTRAORDINARY CIRCUMSTANCE

U.S. V. McAtEE, 481 F.3d 1099, 1103, 8th Cir 2007

Explaining the CO INCLUSION of specific details
IN an affidavit was AN INDICATOR of
affidavits credibility.

U.S. V. Gabladon, 552 F.3d 1121, 1124 - 27 (10th
Cir 2008)

The petitioner demonstrated he was entitled to
equitable tolling where prison staff had confiscated
all his legal materials just weeks before
Expiration of the limitations period. petitioner
filed his federal petition 22 days after his
legal materials were returned to him.
The court held petitioner Exhibited due diligence
both IN pursing his legal claims and IN
attempting to Retrieve his seized materials.
The court Rejected the states argument that petitioner
was in error for tolling simple Because he
waited waited late. IN the limitations period.

ON Dec 6th MR. RAMIREZ Filed A motion
to dismiss Federal Petition without PREJUDICE
MR. RAMIREZ KNEW he had 80 days to go
BACK to State court And get back TO
Federal court before the 1 year Stature of
Limitations RAN OUT.

MR. Ramirez Filed A NEW habeas corpus petition
IN 9th Judicial district court on Dec. 21st 2022
Then a supplemental on Jan 6th 2023.

MR. Ramirez was transferred From Lea
County correctional Facility to penitentary
Of New Mexico PNM lV 4. Run South on
Jan. 5th 2023. When he arrived he
was Not able to send off his other
petition habeas corpus on claim OF actual
INNOCENCE because Security Threw away
all of his writing Files pens.

On or around 1. 25. 23 he recieved
his order for commissary he bought
Pens, But on or around date →

1. 24. 23    Mr. Ramirez went to go see Nurse practioner Michele Citrugino and was being Verbally Nausive and Angry And to Nurse Ms. Martinez. Because They were Forcing Ramirez to speak of Sexual Abuse in Front of Correctional Officers And They were part of PREA.

Prison rape examination act. Well on his way back to his pod C/O Visel told Ramirez he reported False Prea And disrespected Female he would handle it. Mr. Ramirez knew Clos Cut PNM Level 4 South were bring in Cigarotes, Suboxin For Inmates to Yurt other Inmates So he stayed Real tag

5 days later after 1.24.23 on 1.29.23 Inmates asked Ramirez to make A spread some food together then after he ate it They told him that we would be on a LSD trip →

They put pee, poop, semen, sperm, drugs in his food, at 12 am he had sores in his mouth and a semi erection.

At 2 am he called security for help and for medical help.

But before before that at 7pm he asked to report plea. Security said no wait till 2morrow. Mr. Ramirez told all staff in Santa Fe, he would have his case reversed on prosecutorial misconduct and bar to retrial double jeopardy, because of miscarriage of justice and fundamental error, and jurors seen him shackled and fall and prosecutor Sean Sheriff doorely fell him with gestures to say he did not fall.

Ms. Marvo,
Mr. Ramirez said this to mental health, Warden Banguez, Security And, Medical, Psychiatry, Michell. A. Thus.

Well me Ramirez asked for help and was placed
on suicide watch, and he had a fast heart beat,
dizzy, could not speak or swallow, could not walk,
was dehydrated and was scared to fall asleep
because his brother in law died of a o heroin
overdose in July 2022. Mr Ramirez did
lunges, would lift his arms, was scared
to fall asleep, mesterberved 2am to 10am
had an erection 2am to Sometime next day
mental health Margo said he was paranoid
and then warden and security mental health
said lie to State police and Ramirez
would be put in another pod and
given all his property and commissary
he lied, then left on Suicide watch
then 00.21.23 Sent to MATC
Central New mexico correctional Facility
mental health treatment center.

placed on suicide watch till Feb 21st 2023
From 1.29.23 to 2.21.23.

Then Ramirez got A letter from the
Public defenders office saying he had 30 days
to send off a petition for writ of
certiorari and was on watch. once
let off watch security Refused to give
him envelopes or pens to send off the
petition for writ of certiorari and would
Not give him his legal materials,
petitions, Exhibits, transcript, Indictment,
Mr. Ramirez was denied his legal materials
Due to This Extraordinary Circumstance
was unable to file his petition for
habeus corpus with actual Innocence
Sooner, and Not Able to file his
petition for writ of certiorari or
Continue to Federal habeus corpus.

MR. RAMIREZ Asked IN writing Request
VERBAL Request For his legal materials
or for security to write a sworn
statement That that wont give him
his legal materials until June 6th
2023. While IN a care care unit,
Apod, And Bpod smu, until he was
IN continuing care unit population.

ITs illegal thats why they wont admit
Becuz ramirez would be able to sue.
Anyways. when Ramirez Arrived Ramirez
went to see The treatment team
told Them his story and said he
was supposbly going to get out
mental health , security, medical, and
psychaiery all knew.
they did all they could to stop
him from getting out of prison.

Mr. Ramirez asked to report Prea on an officer and security retaliated on him took his phone to stop him from calling his family for help or a A Lawyer to sue, and his family to fire the petitions at mental wealth treatment center. All treatment team voted to leave him IN A pod and B pod for 4 months. From 2.1.23 to 6-9-2023.

Mr. RAMIREZ Just Send out the New haberus petitioner COrpus, with claim of actual INNOcense.

Mr. RAMIREZ IS INNOCent And should be eligible For equitable tolling. OL leave on Innoces person IN Prison.

Legal access. and Security Refused to Sue him debit memos, manilla Folders, and Notorization and did late. to late. Its so much to Explain Not Able to on Appeal. Please Grant me equitable tolling IN My ~~Eccctte~~ circumstance that was beyond My control. I am Innocent and should be allowed to File my original hasenus as iF it was Never Late.

Mr. Ramirez was not able to send it out sooner due to him needed notorizations. And notory person who does notory was in vacations. From 6-19-23 to 6.24.23.

Mr Ramirez knows for a fact if given a new trial he would only be convicted of Manslaughter or 2nd degree.

Mr Ramirez told this to all staff medical, Mental health, Security, Psychiatry at PNM South Lv. 4. and current MHTC

This was corruption by alot of people to prevent me from getting out of Prison.

THIS IS A STATEMENT UNDER PENALTY OF PERJURY STATEMENT TO THE COURTS.

I PUT MANY WRITTEN REQUEST, MADE SEVERAL VERBAL REQUEST, FOR MY legal WORK, CONTAINING MY PETITIONS, EXIBITS CASE LAW, TRANSCRIPT. & INDICTMENT, RELEVANT DOCUMENTS. despite MY REQUEST, MY PROPUTY ~~containing~~ CONTAINING THE INFORMATION WAS NOT ISSUED to ME FROM THE TIME I WAS PUT ON SUICIDE WATCH IN SANTA Fe, PENITENTIARY OF NEW MEXICO lRULL4 PNM SOUTH 1·29·23 AND SENT TO Los LUNAS, NM, CNMCF, MHTC, MENTAL Health TREATMENT CENTER NOT given to ME TILL ~~June~~ June 19th 2023.

I WAS placed ON SUICIDE WATCH at PNM LEVEL 4 SOUTH, BECAUSE INMATES

PUT SEMEN, SPERM, Pee. Poop, at Rugged poisoned
Me I dont KNOW WITH WhaT. I WAS
Scarred I asked FoR help To Medical, And
Security at 2am. Placed on suicide water
Sent to MHTC. I TOld ALL STAFF AT
PNM Lu. 4 South medical, mental health,
Security, Psychaitry my case was going to
be reversed on prosecutoral misconduct
Numerous INSTANCES And I was trying
to Send another habeaus corpus to
district court for my free standing claim
of actual INNOCENCE. I would of had
My case Reversed. Robbed Released on
double JeopArdy. This IS to show
I was in a circumstance I had
No controll over to file my habeaus
corpus, And petition FoR writ of
certorari and Fedural habeaus TIMEly.

While At CNMCF/MHTC They Refused to give me Any Envilopes or pens. To write TO family For Help or to A lawyer, And Faisly wrote me up and continued Putting me on Suicide Watch when I was Not Suicidal, homicidal, A Threat to myself Nor Anyone Else.

I Alweto RAMIREZ did Not Pecieve No Request back From Unit Manager phillip de herrera, Nor warden Nisili Nor Rivera asking for my legal materials, Because I would be Able To Sue them For this. The Prison Staff continue to Refuse To admit this IN writting.

I was disrespectful to Staff verbal Abuse So They did they to Not let me Get out of Prison. All Staff New At MHTC Psuchatry, medical, mental health, Security, New my case would be reversed prosecutorial misconduct, double Jeoparddy.

I am Innocent of my crime.

MIGUEL MINERO, #72339, asked my brother

Jose RAMIREZ to send me A copy of

my state habeaus petition and trial transcript

of cross exam, direct examination, To NO

Avail the mail gets sent to florida address

C/O see was digital mail center Named

Po. Box 25397 Tampa FL. 33622,

They would send the habeaus back to

my Family and transscript.

UNTILL sent to him by Federal court

copy, Because almost All his legal

mervoails were lost by security, habeaus

petitions, transscript, Indictment,

and last his criming to.

I MR RAMIREZ Alberto. have tried to get copies of my medical Records, psychiatric Records, And Mental health Reords to show when I was placed on Suicide watch And when I was Sent to CNMCF MHTC Feb 1st 2.23 and left IN A pod And B pod untill sent to population general four months later, my diagnosis And ALL that. to Prove I have diligently Pursued my Clams And to retreive My legal materials. From Security STAFF And The extraordinary circumstance beyond MR Ramirez controll to timly File petitions.



A prisoner may not get his Records only with an attorney So I was not Able to Show that as evidence. But I have wrote All this IN A Sworn Stolemat Affidavit, to the courts. to prove my INNocence.

IF NOT for being shipped out to MHTC CNMCFI from PNM South Level 4. I would of filed my petitions on time and it would of been timely. I would of filed within 1 year statute of limitations, due to the extraordinary circumstance beyond MR RAMIREZ controll he was unable to file timely. MR RAMIREZ had 60 days Remaining on 1.29.23 to go to N.M. Supreme court petition for writ of certorari and then to go to fedral court it was ALL Filled our Ready But denied his legal work from 1.29.23 to . June.19th 2023.

I would of been found INNocent Not guilty if I would Have been allowed to present Expert testimony or. Maeann Swarts And dr Fink. IN trial it's linked to Exculpatory Evidence of being Sexually Assaulted by deceased And Neibor And why RAMIRZ Feared him. deceased.

Also to show he was Incompetent to stand trial And his State of mind when he shot to assist IN SEIF defence, defense at trial. MR RAMIRZ claimed SEIf defense.

See. Fairman. V. ANdERSON 1188 F.3d 635 644-45 5th cir 1999) considering Evidence of self defense to Estanish Actual INNocense claims

MR. RAMIREZ would have been Found INnocent and only guilty of 2nd degree murder or MANSLAUGHTER. with violation of his constitutional Rights To A Fair trial.

I Alberto Jose Ramirez 69597 while I
was in ACU And B pod segregation Like
environment or mental health treatment center
would ask for my legal work I asked every
time people came by, warden Nesili, and Rivera,
Captain Garley, Major Jaramillo, Unit manager
Phillip Herrera, LT. dela cruz and griego
And sgts baca Rios, And was Ignored all
my request in writing Ignored or verbal
Ignored, security wont Admit this
because id be Able to Sue for money,
So I get Screwed in my legal
case and in civil case.
This is wesair I am Innocent
wrongly convicted, and Innocent self
defense. what about Justice For All?



From 2014 JUNE I WAS IN Level 4
Now State case law and only fedral case
law and then IN 2019. The CORONAVIRUS
coronavirus, I was not Allowed to
do legal Research if I could I would
NOT KNOW HOW.
I've been level 4 SINCE 2019.
No legal access to State law
or Any legal Research.
I am not a lawyer I don't
Know how to do this legal
STUFF. I need help. A
Lawyer. please. Thanks

Extraordinary circumstances beyond Mr. Ramirez controll for all of Mr Ramirez claims, a miscarriage of justice will occure if the courts fail to entertain the claim, its fundamental Errors prior bad Acts, prosecutorial misconduct, Shecklress error, counsel on silence, actual Innocence claim.

Alberto Ramirez 69887

I AFFIRM I diligently tried to get back my legal materials confiscated by prison officials on ~~May~~ Jun 29th 2023 TO ^ June 19th 2023 To ~~My~~ File my habeas corpus petitions, certorari of Petition For writ and federal habeas corpus.

My confiscated materials, Transcript, my petitions, Exibits, case law, Indictment, Relevant documents and my property mentioned was Not Issued to me until June 19th 2023

For this reason my petitions habeas corpus And State petition For writ of certorari and Federal habeas corpus documents were ~~now~~ filed LATE.

I AFFIRM UNDER PENALTY of PERJURY UNDER
the laws of the State of New Mexico that on
June 30th 2023

I deposited this IN The Mail and the
INFORMATION contained herein is true
And correct to the best of MY knowledge
INFORMATION And BELIEF.

Signature Address
PNM No

Alberto jose Ramirez 69597 June 21st 2.25

Subscribed and sworn To before me this day
OF 21ST June 2023                              by

NAME OF positioner Alberto Ramirez .

NOTARY OF public

MY COMMISSION Expires, May. 17, 2025

STATE OF NEW MEXICO
NOTARY PUBLIC
AARON MONTOYA
COMMISSION # 1133486
EXPIRES MAY 17, 2025

Alberto Jose Ramirez was not allowed or materials.

This is to show you. He was Not

Allowed to have legal materials

IN A cu or B pod At mental health

treatment center. Central New Mexico Corr Fac..

I was Not allowed to my property

from Feb 1st 2023 to June 9th 2023

while IN Acu A pod.

Signed by prisoner officer

that this is true.

I affirm under the penalty of

perjury under laws of the State of

New mexico the Information contained

here in is true and correct to the best

OF My Knowledge INformation! Belief.

Signature

Signed by Laitoux delacruz officer at Icmmf

mental health treatment center to prove my

The Following PAPER was to show the Courts

Alberto Jose Ramirez was denied his legal

materials to file his State habeas corpus, and

petition for writ of certiorari and federal habeas corpus

The Staff will Not give a memorandum of this

Because I would be Able to file law suit,

only the lieutenant de lacruz signed his

Signature to show I have diligently ~~gone~~

pursued my claims And an extraordinary

Circumstance ~~was~~ out of my control occurred.

This IS a sworn statement under penalty

of perjury statement to the courts. I affirm

the Information IS true to the best of my

Knowledge Information and belief.

Signature

Alberto Jose Ramirez 69597 June 21st 2023

Subscribed before me this day of

by

NAME OF prisoner Alberto Ramirez

Name of public

My commission expires. May 17. 2025

STATE OF NEW MEXICO
NOTARY PUBLIC
AARON MONTOYA
COMMISSION # 1133486
EXPIRES MAY 17, 2025

I ___ Miguel Almanza   # 72339   date 6.19.23

CAlled asked Alberto Jose Ramirez basar his
brother Jose Ramirez to send A
Copy of His State habeaus petition and
trial Transcript of cross exam and
direct Examination, To No Avail
The mail Gets Sent to CIO Securus
digital Mail mail CenteR Named
P.O. Box 25397 Tampa FL. 33622.
They would send it Back to his brother
Until he sent it to Federall court and
the send it to him.
Because Almost all his legal materials
were lost by security and clothing.

Alberto

MR RAMIREZ  DID Request his legal

materials and was denied by Security
 From: 3·10·2023 to JUNE 19th 2023 Im aware of
While IN Central New mexico correctional

facinty, mental health tREctment centeRs.
while he was IN Acute core unit
And SMU. B pod, and Just Recieved
legal materials when he was moved
to population C pod Continuing
care unit in MHTC. geveral popmiction
Signed by NAME, Inmate Number and date
                                                    6-19-23
      _____  #-72339

I was IN Acu, B pod Smu
And ████ CCU. With Alberto Ramirez
while at MHTC (CNMCF.

I was AN INMATE housed with
Alberto Jose Ramirez at MHTC.
     A pod. B pod, and C pod population.

This IS A sworn statement
under penalty of perjury statement
to the courts.

I affirm the information contained
here is true and correct to the
best of my knowledge information
and belief.                    Signature address p-n no.

_____miguel minero 72339_____

Subscribed and sworn to before me this
day of _21st June 2023_____ by

Name of ~~prisoner~~ PRISONER  Miguel Minero
_____

Notary of public    Aaron Montoya
_____

my commission expires, May 17, 2025

STATE OF NEW MEXICO
NOTARY PUBLIC
AARON MONTOYA
COMMISSION # 1133486
EXPIRES MAY 17, 2025

NINTH JUDICIAL DISTRICT COURT
Curry County
8/21/2023 9:54 PM
KEVIN SPEARS
CLERK OF THE COURT

**NINTH JUDICIAL DISTRICT COURT**
**COUNTY OF CURRY**
**STATE OF NEW MEXICO**

No. D-905-CR-2007-00434
(Hon. Drew Douglas Tatum)

**ALBERT RAMIREZ,**
                    **Petitioner,**

vs.

**STATE OF NEW MEXICO,**
**JESSICA VIGIL-RICHARDS, Warden,**
                    **Respondents.**

## NOTICE OF 5-802(H)(1) PRE-APPOINTMENT REVIEW

The Post-Conviction/Habeas Unit of the Law Offices of the Public Defender provides notice

to the Court and Counsel for Respondents of its review in accordance with Rule 5-802(H)(1),

NMRA 2017 and states the following:

1) The Ninth Judicial Court Clerk filed the *pro se* Petition for Writ of Habeas Corpus on

   July 6, 2023.

2) Pursuant to Rule 5-802(H)(3) NMRA, this review is timely filed on or before August 21,

   2023.

3) Per Rule 5-802(H)(1) NMRA, LOPD has reviewed the Petition and determines <u>that it is</u>

   <u>not a proceeding that a reasonable person with adequate means would be willing to bring</u>

   <u>at a person's own expense.</u>[1]

Procedural History:

1) Petitioner filed four previous *pro se* petitions in 2017, on March 22, 2017, April 25, 2017,

   June 20, 2017, and July 17, 2017.

---

[1] Under the Indigent Defense Act, Sec. 31-16-3 (B)(3) a person has the limited right to appointed counsel representation in post-conviction matters "unless **the court ... determines that it is not a proceeding that a reasonable person with adequate means would be willing to bring at his own expense.**" (Emphasis supplied).

1

```
EXHIBIT
___XX___
```

2) On May 18, 2018, an Amended Petition for Writ of Habeas Corpus was filed on Petitioner's behalf by his habeas counsel Liane Kerr.

3) Petitioner filed a fifth *pro se* Petition for Writ of Habeas Corpus on June 24, 2019 and an amended *pro se* Petition on August 18, 2020.

4) Petitioner filed his sixth *pro se* Petition for Writ of Habeas Corpus on January 9, 2023.

5) All prior petitions were denied.

6) In the instant petition, Petitioner seeks to vacate his convictions on the following grounds:

    a. Actual innocence because the prosecutor unfairly attacked the Petitioner's credibility and Dr. Schwartz did not testify on his behalf, which ruined Petitioner's testimony that he acted upon the provocation of the victim;

    b. Ineffective assistance of trial counsel for failing to make objections, effectively argue self-defense by presenting medical and lay witnesses such as Ricky Jaramillo, Priscilla Lopez, and his family members;

    c. Ineffective assistance of appellate counsel for failing to argue effectively that the prosecutor unfairly attacked the Petitioner during closing and that his counsel's failure to ask for competency or self-defense instructions;

    d. Introduction of uncharged prior bad acts at trial;

    e. Prosecutorial misconduct for calling Petitioner a liar and a manipulator;

    f. Due process violations for allowing the jury to see Petitioner in shackles;

    g. Improper commentary on silence by the prosecution.

7) Petitioner notes that almost all of Petitioner's claims have been raised and denied in either his previous petitions or in the appeal of this case, Case No. S-1-SC-34579. Per

2

the Petitioner, the issue raised in the instant petition that has not been previously addressed is his "actual innocence" claim.

8) An "actual innocence" claim requires a Petitioner to point to newly discovered, material evidence that is not "merely impeaching or contradictory." This new evidence must be strong enough to "probably" cause an acquittal if a new trial is granted. *See Montoya v. Ulibarri*, 2007-NMSC-035, ¶31, 142 N.M. 89; U.S. Const. Amends. VIII & XIV; N.M. Const. Art. II, §§13, 18.

9) In this case, the Petitioner states that he recently learned of this new claim. However, he does not point to any recently discovered material evidence. Rather, Petitioner's claim of actual innocence appears to be that the jury would have believed his testimony that he acted in self-defense, or at least upon sufficient provocation, if (1) Dr. Schwartz and other witnesses known at the time of the trial testified,[2] and (2) the prosecutor had been barred from referring to the Petitioner as a liar, commenting on his silence, and mentioning other bad acts.

10) In other words, Petitioner is reframing the ineffective assistance of counsel and prosecutorial misconduct claims denied in his prior petitions and appeal as "actual

---

[2]    Namely, the Petitioner believes that the testimony of witnesses, including Mr. Jaramillo and Ms. Lopez, regarding the heights and weights of him and the victim would have been helpful to cast doubt on the testimony of Grace Finkey. From the audio log of the trial, it appears that Ms. Finkey testified that she saw an older man fall down, saw a younger man extend his arm towards the older man, and then heard "pops."

In her prior statement to the police, she stated that the "taller man" being chased was the man who fell down. She stated both men were thin. Mr. Ramirez appears to argue that he was taller and thinner than Mr. Robledo, so that witnesses to the fact that he was taller and thinner could have been used to discredit Mrs. Finkey's trial testimony that Mr. Robledo was being chased. *But see Montoya,* 2007-NMSC-035, ¶31 (requiring more than impeachment or contradictory evidence to support an actual innocence claim).

innocence." This Court and Supreme Court have already found that these alleged errors either (1) were not errors or (2) did not have a material effect on the trial. *See e.g. State v. Ramirez*, Case No. S-1-SC-34576, Dec. at ¶¶27-64 (N.M. Dec. 1, 2016).

11) Pursuant to Rule 5-802(I) NMRA, "If the petitioner has previously filed a petition seeking relief under this rule, the court shall have the discretion to: (1) dismiss any claim not raised in a prior petition unless fundamental error has occurred, or unless an adequate record to address the claim properly was not available at the time of the prior petition; and (2) dismiss any claim raised and rejected in a prior petition unless there has been an intervening change of law or fact or the ends of justice would otherwise be served by rehearing the claim." *See also State v. Gomez*, 1991-NMCA-061, ¶ 5, 112 N.M. 313.

12) Petitioner has not asserted an intervening change in law or facts since the prior decisions by the courts.

13) It also appears that Petitioner may be arguing it was fundamental error for defense counsel to present a voluntary manslaughter defense – *i.e.*, "imperfect self-defense" – rather than a complete self-defense.

14) Per the court logs, trial counsel made a conscious decision not to pursue a self-defense instruction. He stated so on the record. Witness Ms. Finkey testified that Mr. Robledo was shot by Petitioner after Mr. Robledo fell to the ground. It also appears that Mr. Ramirez testified that he shot Mr. Robledo at least once after Mr. Robledo had fallen over, but this occurred after a physical confrontation.

15) Based on those facts, it may not have been unreasonable to pursue the more easily attainable "sufficient provocation" defense rather than total self-defense. *See State v. Chavez*, 2022-NMCA-007, ¶¶24-25, 504 P.3d 541 (noting that a step-down instruction

for voluntary manslaughter may be appropriate when the defendant was in fear of imminent danger but that a reasonable person may not have reacted in the same way); *see also Strickland v. Washington*, 466 U.S. 668, 695–98 (1984).

16) Regardless, at this point, to prevail on a jury instruction error, the defendant must prove that the error made his "guilt… so doubtful that it would shock the judicial conscience to allow the conviction to stand." *See State v. Cunningham*, 2000-NMSC-009, ¶ 13, 998 P.2d 176 (defining fundamental error).  In this case, that may be difficult.  The jury was presented with an instruction that Mr. Ramirez was sufficiently provoked into the murder. The jury rejected that defense theory of provocation.  Self-defense is essentially a more specific, harder-to-prove form of provocation.  *See Chavez*, 2022-NMCA-007, ¶¶24-25.

17) Therefore pursuant to Rule 5-802(G)(1), the Post-Conviction Habeas Unit, Law Offices of the Public Defender, <u>determines that it is not a proceeding that a reasonable person with adequate means would be willing to bring at a person's own expense and defers to the Court pertaining to further appropriate action.</u>

| | |
|---|---|
| I hereby certify that a copy of this notice was transmitted to Petitioner and Counsel for Respondent upon filing. | As per Rule 5-802(H)(1) NMRA 2017, undersigned counsel submits this review for the limited purpose of said procedural rule and is not Counsel of Record on this matter. |
| | Respectfully Submitted, |
| /s/ MATTHEW O'GORMAN<br>Matthew O'Gorman<br>LOPD Habeas | /s/ MATTHEW O'GORMAN<br>Matthew O'Gorman<br>Post-Conviction Habeas Unit<br>Law Offices of the Public Defender<br>505 Marquette Ave. NW, Suite 120<br>Albuquerque, NM 87102<br>(505) 369-3588 |

NINTH JUDICIAL DISTRICT COURT
Curry County
8/28/2023 2:43 PM
KEVIN SPEARS
CLERK OF THE COURT

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

ALBERT JOSE RAMIREZ,

     Petitioner,

vs.                                                    No.    D-0905-CR-2007-00434

STATE OF NEW MEXICO,

     Respondent.

## DECISION AND ORDER OF SUMMARY DISMISSAL
## AND ORDER DENYING PETITIONER'S MOTION TO EXPAND RECORD

THIS MATTER having come before the Court upon the *pro se* Petition for Writ of Habeas Corpus filed by the Petitioner on July 6, 2023, and the Court being fully advised, enters its *sua sponte* Order and FINDS:

1.  Petitioner's current Petition for Writ of Habeas Corpus was filed on July 6, 2023.

2.  A copy of Petitioner's Petition was sent to the Post-Conviction Habeas Unit Law Offices of the Public Defender (hereinafter referred to as "LOPD").

3.  LOPD timely filed a Notice of 5-802(H)(1) Pre-Appointment Review on August 21, 2023 (hereinafter referred to as "Notice"). LOPD's Notice is incorporated by reference herein as though fully set forth.

4.  Rule 5-802(H)(1) provides for a pre-appointment review of Petitioner's Petition by LOPD. LOPD may recommend that this Court order a revised petition or may indicate "whether the petition is a proceeding that a reasonable person of adequate means would

1

EXHIBIT
YY

be willing to bring at a person's own expense and provide sufficient detail for further judicial review of the public defender's assessment."

5. LOPD determined that Petitioner's Petition is NOT a proceeding that a reasonable person would be willing to bring at a person's own expense.

6. In their five (5) page Notice, LOPD notes that Petitioner has filed numerous pro se Petitions for Writ of Habeas Corpus filed by Petitioner. Petitioner's previous petitions were filed on March 22, 2017, April 25, 2017, June 20, 2017, July 17, 2017, June 24, 2019 and August 18, 2020. Additionally, on May 18, 2018, an Amended Petition for Writ of Habeas Corpus was filed on Petitioner's behalf by his habeas counsel Liane Kerr. The State filed a Response and this Court held a hearing on this Amended Petition. A twelve (12) page Order Denying Petitioner's Petition for Writ of Habeas Corpus was entered on December 14, 2018. Said Order is incorporated by reference herein as though fully set forth. Also, as to Petitioner's Petition for Writ of Habeas Corpus filed on June 24, 2019, this Court entered a Decision and Order of Summary Dismissal on August 12, 2019 (just six days before the instant Petition was filed). Said Decision and Order of Summary Dismissal is incorporated by reference herein as though fully set forth. Moreover, Petitioner appealed his conviction. The New Mexico Supreme Court affirmed Petitioner's conviction.

7. In their Notice, LOPD addresses the numerous issues raised by Petitioner before concluding that, "All of Petitioner's claims have been raised in either previous petitions or in his appeal in case, S-1-SC-34576. The only additional issue raised in the instant petition is regarding actual innocence."

2

8. While addressing the applicable law related to Petitioner's indictment, LOPD determined the Petitioner failed to point out any recently discovered material evidence to support his claim of actual innocence and he is "reframing ineffective assistance of counsel and prosecutorial misconduct claims denied in his prior petitions and appeal as 'actual innocence'".

9. This Court finds that LOPD provided more than sufficient detail for this Court to review its assessment.

10. This Court agrees with LOPD that this is NOT a proceeding that a reasonable person would be willing to bring at a person's own expense.

11. Rule 5-802(H) NMRA states:

> H. Second and successive petitions. If the petitioner has previously filed a petition seeking relief under this rule, the court shall have the discretion to:
>> (1) dismiss any claim not raised in a prior petition unless fundamental error has occurred, or unless an adequate record to address the claim properly was not available at the time of the prior petition; and
>> (2) dismiss any claim raised and rejected in a prior petition unless there has been an intervening change of law or fact or the ends of justice would otherwise be served by rehearing the claim.

12. This Court finds that, in accordance with Rule 5-802(H)(1), to the extent that any new claims were raised in Petitioner's Petition for Writ of Habeas Corpus filed on August 18, 2020, that were not raised in Petitioner's prior petitions, said claims are dismissed. This Court finds that no fundamental error has occurred and that there was an adequate record available to address the claims properly at the time of the prior petitions.

13. Further, this Court finds that, in accordance with Rule 5-802(H)(2), any identical or similar claims that were raised in the Petition for Writ of Habeas Corpus filed July 6, 2023, that were previously raised and rejected in Petitioner's prior petitions, are hereby dismissed. This Court finds that there has not been an intervening change of law or

fact. This Court finds that the ends of justice would not be served by rehearing the claim.

14. Additionally, Petitioner may not seek post-conviction relief for issues raised on appeal that were decided on the merits against the Petitioner. *State v. Gomez*, 1991-NMCA-061. This is the standard rule but it has been modified to allow some leniency in allowing the issue to be brought before the Court subsequent to the appeal. However, for the Court to review the issues, the claim needs to be grounded in facts beyond the record previously presented on appeal and the petitioner must show that the additional facts are those which could not, or customarily would not, be developed in a trial on criminal charges. *Campos v. Bravo*, 2007-NMSC-021. In his current Petition, Petitioner failed to address the fact that many issues raised were the same issues decided against him on appeal and failed to provide additional, relevant facts.

15. Also, this Court finds that Petitioner's claim related to his indictment is not supported by fact or the record in this matter. Petitioner is not entitled to relief as a matter of law on such claim.

## DECISION AND DISMISSAL

After examining the Petition, exhibits, prior proceedings, and based on the above reasons, this Court finds the Petitioner is not entitled to relief as a matter of law.

THEREFORE, in accordance with Rule 5-802(H)(1-2) NMRA and Rule 5-802(G)(1) NMRA, the Petition for Writ of Habeas Corpus filed July 6, 2023 is DISMISSED.

HON. DREW D. TATUM
DISTRICT JUDGE, DIVISION II

4

To NEW Mexico Supreme court clerk.

S-1-SC-40134

ATTENTION:

I am at mental health treatment Facility

IN los Lunas, NM, 87031

I am not allowed to set my property
or legal materials to mail out my
Petition For writ or certorai IN time
And mail is slow being sent out.
I write to say my petition of writ of
certorai attacked my habeaus petition
is being held in property. So this is
circumstaves beyond my control I
ask the court to extend the time to
file my petition For a period not to
extend 30 days From expiration of time
otherwise provided by this rule.

**SUPREME COURT OF NEW MEXICO**
**FILED**

SEP 22 2023

EXHIBIT

ZZ

Elizabeth A. Garcia, Chief Clerk of the Supreme Court
of the State of New Mexico

If I have it signed And sent out before deadline 2-21-24 still want Mail it w/ time because these people dont send legal mail out ASAP.

Please let the court know of my circumstances And situation.

I was on Suicide watch just got off last week and recived my legal materials violation of my 14th Amendment Rights.

I am sorry. This should be good cause shown to Extend the time for Filing petition.

for petition for writ of certorario

_____

Sincerly

Aniceto RAMIREZ
484642
PO Drawer 1328
Los Lunas, NM 87031

I Alberto Ramirez 459642 did not get the order and decision or know of me 30 days to File petition For certorari untill wednesday Night 9:30 PM Sept 6th 2023.

I've been asking security gots Refuse to give me my property to mail out my legal mail my petition of writ of certorari already filled out.

Also, The unit manager refuses to come Right away to sign the desis memo to send out my legal mail And it May not be timely. So I am asking For 30 days extention on Filing deadline. Because of circumstances beyond Mr Ramirez controll.

Thank you for your time God Bless.

Sincery
Alberto
Ramirez
459642

9th JUDICIAL DISTRICT COURT
Curry County
8/28/2023 2:43 PM
KEVIN SPEARS
CLERK OF THE COURT

NINTH JUDICIAL DISTRICT COURT
COUNTY OF CURRY
STATE OF NEW MEXICO

ALBERT JOSE RAMIREZ,

        Petitioner,

vs.                        No.    D-0905-CR-2007-00434

STATE OF NEW MEXICO,

        Respondent.

## DECISION AND ORDER OF SUMMARY DISMISSAL
## AND ORDER DENYING PETITIONER'S MOTION TO EXPAND RECORD

THIS MATTER having come before the Court upon the *pro se* Petition for Writ of Habeas Corpus filed by the Petitioner on July 6, 2023, and the Court being fully advised, enters its *sua sponte* Order and FINDS:

1. Petitioner's current Petition for Writ of Habeas Corpus was filed on July 6, 2023.

2. A copy of Petitioner's Petition was sent to the Post-Conviction Habeas Unit Law Offices of the Public Defender (hereinafter referred to as "LOPD").

3. LOPD timely filed a Notice of 5-802(H)(1) Pre-Appointment Review on August 21, 2023 (hereinafter referred to as "Notice"). LOPD's Notice is incorporated by reference herein as though fully set forth.

4. Rule 5-802(H)(1) provides for a pre-appointment review of Petitioner's Petition by LOPD. LOPD may recommend that this Court order a revised petition or may indicate "whether the petition is a proceeding that a reasonable person of adequate means would

1

be willing to bring at a person's own expense and provide sufficient detail for further judicial review of the public defender's assessment."

5.  LOPD determined that Petitioner's Petition is NOT a proceeding that a reasonable person would be willing to bring at a person's own expense.

6.  In their five (5) page Notice, LOPD notes that Petitioner has filed numerous pro se Petitions for Writ of Habeas Corpus filed by Petitioner. Petitioner's previous petitions were filed on March 22, 2017, April 25, 2017, June 20, 2017, July 17, 2017, June 24, 2019 and August 18, 2020. Additionally, on May 18, 2018, an Amended Petition for Writ of Habeas Corpus was filed on Petitioner's behalf by his habeas counsel Liane Kerr. The State filed a Response and this Court held a hearing on this Amended Petition. A twelve (12) page Order Denying Petitioner's Petition for Writ of Habeas Corpus was entered on December 14, 2018. Said Order is incorporated by reference herein as though fully set forth. Also, as to Petitioner's Petition for Writ of Habeas Corpus filed on June 24, 2019, this Court entered a Decision and Order of Summary Dismissal on August 12, 2019 (just six days before the instant Petition was filed). Said Decision and Order of Summary Dismissal is incorporated by reference herein as though fully set forth. Moreover, Petitioner appealed his conviction. The New Mexico Supreme Court affirmed Petitioner's conviction.

7.  In their Notice, LOPD addresses the numerous issues raised by Petitioner before concluding that, "All of Petitioner's claims have been raised in either previous petitions or in his appeal in case, S-1-SC-34576. The only additional issue raised in the instant petition is regarding actual innocence."

2

8. While addressing the applicable law related to Petitioner's indictment, LOPD determined the Petitioner failed to point out any recently discovered material evidence to support his claim of actual innocence and he is "reframing ineffective assistance of counsel and prosecutorial misconduct claims denied in his prior petitions and appeal as 'actual innocence'".

9. This Court finds that LOPD provided more than sufficient detail for this Court to review its assessment.

10. This Court agrees with LOPD that this is NOT a proceeding that a reasonable person would be willing to bring at a person's own expense.

11. Rule 5-802(H) NMRA states:

> H. Second and successive petitions. If the petitioner has previously filed a petition seeking relief under this rule, the court shall have the discretion to:
> (1) dismiss any claim not raised in a prior petition unless fundamental error has occurred, or unless an adequate record to address the claim properly was not available at the time of the prior petition; and
> (2) dismiss any claim raised and rejected in a prior petition unless there has been an intervening change of law or fact or the ends of justice would otherwise be served by rehearing the claim.

12. This Court finds that, in accordance with Rule 5-802(H)(1), to the extent that any new claims were raised in Petitioner's Petition for Writ of Habeas Corpus filed on August 18, 2020, that were not raised in Petitioner's prior petitions, said claims are dismissed. This Court finds that no fundamental error has occurred and that there was an adequate record available to address the claims properly at the time of the prior petitions.

13. Further, this Court finds that, in accordance with Rule 5-802(H)(2), any identical or similar claims that were raised in the Petition for Writ of Habeas Corpus filed July 6, 2023, that were previously raised and rejected in Petitioner's prior petitions, are hereby dismissed. This Court finds that there has not been an intervening change of law or

3

fact. This Court finds that the ends of justice would not be served by rehearing the claim.

14. Additionally, Petitioner may not seek post-conviction relief for issues raised on appeal that were decided on the merits against the Petitioner. *State v. Gomez*, 1991-NMCA-061. This is the standard rule but it has been modified to allow some leniency in allowing the issue to be brought before the Court subsequent to the appeal. However, for the Court to review the issues, the claim needs to be grounded in facts beyond the record previously presented on appeal and the petitioner must show that the additional facts are those which could not, or customarily would not, be developed in a trial on criminal charges. *Campos v. Bravo*, 2007-NMSC-021. In his current Petition, Petitioner failed to address the fact that many issues raised were the same issues decided against him on appeal and failed to provide additional, relevant facts.

15. Also, this Court finds that Petitioner's claim related to his indictment is not supported by fact or the record in this matter. Petitioner is not entitled to relief as a matter of law on such claim.

## DECISION AND DISMISSAL

After examining the Petition, exhibits, prior proceedings, and based on the above reasons, this Court finds the Petitioner is not entitled to relief as a matter of law.

THEREFORE, in accordance with Rule 5-802(H)(1-2) NMRA and Rule 5-802(G)(1) NMRA, the Petition for Writ of Habeas Corpus filed July 6, 2023 is DISMISSED.

HON. DREW D. TATUM
DISTRICT JUDGE, DIVISION II

4

Inmate Name __Alverto Ramirez__

Inmate Number __45C1642__

CNMCF/CMRU/Unit# __MATC__

P.O. Drawer 1328

Los Lunas, NM 87031

Legal
mail

New Mex...

P.O. B...

SAn...

87504$0848  B006

Inmate Name Alberto Gomirz

Inmate Number 450642

CNMCF/CMRU/Unit# Mate

P.O. Drawer 1328

Los Lunas, NM 87031



Legal
mail

New Mexico Supreme Court Clerk

P.O. Box 848

Santa Fe, NM 87504-
0848

87504$0848 8006

1 7

9-702. Petition for writ of certiorari to the district court from denial of habeas corpus.

[For use with Appellate Rule 12-501 NMRA]

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Alberto Jose Ramirez
_____
Defendant-Petitioner,

S.Ct. No. **S-1-SC-40134**

*(leave blank; court will assign)*

v.

Jessica Virgil Richards
_____
*(Name of Warden)*

District Ct. No. _____

Respondent.

### PETITION FOR WRIT OF CERTIORARI
TO THE ___9th___ DISTRICT COURT OF NEW MEXICO

**SUPREME COURT OF NEW MEXICO
FILED**

Alberto Jose Ramirez
_____
Defendant-Petitioner pro se
MDC
P.O. Drawer 1328
Los Lunas, NM 87031
_____
*(address information)*

SEP 2 9 2023

*Elizabeth A. Garcia*
Elizabeth A. Garcia, Chief Clerk of the Supreme Court
of the State of New Mexico

### PETITION FOR WRIT OF CERTIORARI
TO THE ___9th___ DISTRICT COURT OF NEW MEXICO

Defendant-Petitioner, appearing pro se and pursuant to the provisions of the New Mexico Constitution, Rule 5-802, and Rule 12-501 NMRA; petitions this Court to issue its Writ of Certiorari to review the order in:

Alberto Ramirez v. Jessica Virgil Richards
_____ *(your name v. Warden's name)*,

District Court No. ___9th___ filed on ___Dont know___

```
+-------------------+
|     EXHIBIT       |
|                   |
|      AAA          |
|   _____     |
+-------------------+
```

### QUESTIONS PRESENTED FOR REVIEW

Whether the district court erred in:
Admitting prior bad acts over objection by trial counsel. Allowing cross examination and direct examination. See action habeas corpus petition.

WHETHER THE COURT ERRED ON MOVING RAMIREZ SHACKLED DURING GUILT PHASE OF TRIAL, RAMIREZ FELL DOWN JURORS SAW LEGS SHACKLES

WHETHER DISTRICT COURT ERRED WHEN IT REFUSED TO ALLOW MR RAMIREZ TO TESTIFY OF SEXUAL ASSAULT HE DECEASED AND HIS WITNESS SAM SAIZ AT AGE 10yrs OLD. WAS THIS EVIDENCE ERRONEOUSLY EXCLUDED.

DID DISTRICT COURT ERR? SAYING EVIDENCE WAS IRRELEVANT AND NEVER SEEING PSYCHIATRIST WHO EXAMINED HIM HELPED AND TO PRESENT FULL DEFENSE AND STATE OF MIND AT TIME OF (Complete only for issues relevant to the petition. Attach additional sheets if necessary.)

ARGUMENT H.M., INCUDED

## DESCRIPTION OF THE PROCEEDINGS

I.   Please list the conviction being challenged:
MURDER MURDERED IN THE FIRST DEGREE LIFE

TAMPERING WITH EVIDENCE TWO COUNTS 6yrs.

2.   Please list any other petitions you have filed in the New Mexico Supreme Court challenging this conviction (please include docket numbers and dates):
STATE HABEAS CORPUS PETITIONS, Filed 3.22.17, 4.26.17, 6.20.17, 7.7.17,
6.24.2019, 8.30-10   9.18.2017, 2.37.22, JUN 6 M 2023.
DOCKET # D-905-CR-  2007-0434
PETITION FOR CERTIORARI   2.5.14, NO S-1-SC- 37362, 9-13.19   NO S-1-
SC-37867.  DO-> HAS ANY OTHER CONSIDERED MY SECURITY PASS IN
STATE HABEAS DESTROYED.

3.   Tell the story of what happened in your court case:
I CLAIMED SELF DEFENCE. THE DAY HE SHOT DECEASED HE CAME TO HIS MILLS HOUSE WE COULD? THEY JUST WENT TO BACK OF HOUSE ARGUED WITH DECEASED. RAMIREZ CLAIMED HE WAS STRUCK by RUSSELL, RAMIREZ DID NOT PRIOR TO HIS PROPERTY. IT JUST HAPPENED WHILE DEFENDING HISSELF FROM CRACK. FAMILY SAW STANDING IN R.SIDE HANDS AT TIME OF INCIDENT. RAMIREZ LOST HIS SLICES AND SHOT ITS A RESULT OF RUSSELL ASSAULTING HIM. 2FED FELT PULLED AGAIN. AT TRIAL MR RAMIREZ RIGHTS VIOLATED, 5TH MILLION COURT. ART. AMENDMENTS AND PROTECTED BY 14 U.S. COURT, 4th AMEND. DUE PROCESS CLAUSE TO FOR TRIAL, STATE AND FEDERAL DUE PROCESS RIGHT TO FAIR TRIAL

## BASIS FOR GRANTING THIS PETITION FOR WRIT OF CERTIORARI TO THE DISTRICT COURT

VIOLATED, DENIED OF MUSIC RIGHTS IN GUILT PHASE OF TRIAL

The decision of the district court on my petition for writ of habeas corpus, filed pro se, raises significant questions of law under state and federal constitutions: whether the errors below deprived petitioner's rights guaranteed by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments and by New Mexico Constitution, art. II, §§ 13, 14, 15, and 18.

## ARGUMENT

(Describe your legal claim and cite the law (cases, statutes, constitutional sections) that supports your position. Use plain language.)

31

POINT 8  Please see Attach pages on State Habeus Corpus

petition.    on claims And Cited law, Cases, Statutes
Constitution Sections that Suppis My

Position on All grounds claims Raised
① Equitable tolling Extraordinary Circumstance.
POINT 9  ① Claim of actual Innocense Defense of Evid

Defense Claimed of guilt pleas of trial.

② Ineffective assistance of trial counsel

③ Ineffective assistance of appelate attorney.

④ prior bad Acts
POINT 10  ⑤ Prosecutorial misconduct

⑥ Comment on Silence Post Miranda Silence

⑦ Shackles Error.

Please see Attached pages.
⑧ Extraordinary Circumstance, Equitable Tolling

(Attach additional sheets, if necessary).

## REQUEST FOR RELIEF

Defendant-petitioner requests that this Court issue its writ of certiorari to the district court,

and:

(✓)    remand to the district court for a full hearing on the petition, OR
(✓)    reverse the conviction, OR
(  )    remand to the district court to correct the sentence, OR
(  )    (other) Appoint habeas or appelate Attorney ① and provide
trial closing Argument and Rebuttal transcript, provide discovery.
Petitioner asks this Court to grant such relief as may be appropriate. As required by Rule 12-
501 NMRA, I am filing only the original copy of this petition and I have attached the following:

(✓)    a copy of my petition for writ of habeas corpus filed in district court, AND
(✓)    a copy of the state's response, if one was filed, AND
(✓)    a copy of the district court's order.
(✓)    I have not attached the required documents because
I will send them once I make copies or I did
Not Have Them to Send them.

4 1

and ask the Supreme Court to accept this petition without the attachments.

Respectfully submitted,

_Alberto Jose Ramirez_
Defendant-Petitioner, pro se

## VERIFICATION

STATE OF NEW MEXICO
COUNTY OF ___Curry___

I, the undersigned, being first duly sworn upon my oath, state that I am the petitioner in this action. I have read the foregoing petition and know and understand its contents, and the information contained herein is true and correct to the best of my knowledge, information and belief. On Sept 15th ~~June 9th~~, 20 23 (date), I deposited this petition in the internal mail system of the institution in which I am confined, properly addressed with any necessary postage prepaid, for forwarding to the New Mexico Supreme Court at the following address:

New Mexico Supreme Court
P.O. Box 848
Santa Fe, New Mexico, 87504-0848.

_Alberto Jose Ramirez_
(Signature)
_PC Drawer 1300_
(Address) Las Cruces, NM 87051

PNM No., if applicable

SUBSCRIBED AND SWORN TO before me this __2/51__ day of
__June__, __2023__, by

_Alberto Ramirez_
(Name of petitioner)
_Aaron Montoya_
Notary Public _May 17, 2025_
My Commission Expires

<table>
<tr><td>STATE OF NEW MEXICO<br>NOTARY PUBLIC<br>AARON MONTOYA<br>COMMISSION # 1133486<br>EXPIRES MAY 17, 2025</td></tr>
</table>

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this petition was mailed to the Attorney General's Office, P.O. Box 1508, Santa Fe, New Mexico 87504-1508 on this __15th__ day of __September__, 2623.

_Alberto Ramirez_
Defendant-Petitioner, pro se

[Adopted by Supreme Court Order No. 14-8300-014, effective for all cases filed on or after December 31, 2014; as amended by Supreme Court Order No. 17-8300-025, effective for all cases pending or filed on or after December 31, 2017.]

Filed
Supreme Court of New Mexico
11/20/2023 12:44 PM
Office of the Clerk

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**November 20, 2023**

NO. S-1-SC-40134

**ALBERTO JOSE RAMIREZ,**

　Petitioner,

v.

**JESSICA VIGIL RICHARDS, Warden,**

　Respondent.

## ORDER

WHEREAS, this matter came on for consideration by the Court upon petition for writ of certiorari filed under Rule 12-501 NMRA, and the Court having considered the petition and being sufficiently advised, Justice Michael E. Vigil, Justice David K. Thomson, and Justice Julie J. Vargas concurring;

NOW, THEREFORE, IT IS ORDERED that the petition for writ of certiorari is DENIED.

IT IS SO ORDERED.



WITNESS, the Honorable C. Shannon Bacon, Chief Justice of the Supreme Court of the State of New Mexico, and the seal of said Court this 20th day of November, 2023.

Elizabeth A. Garcia, Clerk of Court
Supreme Court of New Mexico

I CERTIFY AND ATTEST:
A true copy was served on all parties
or their counsel of record on date filed.　*Zelda Abeita*
Zelda Abeita　　　　　　　　　　　Deputy Clerk
Clerk of the Supreme Court
of the State of New Mexico

**EXHIBIT**

BBB

Skip to Main Content  Logout  My Account  Search Menu  Search  Refine Search  Back                    Location : All Courts    Images

# REGISTER OF ACTIONS

## CASE No. D-905-CR-2007-00434

| STATE OF NEW MEXICO (DA) v. Albert Ramirez | § | | Case Type: | **Felony Homicide** |
|---|---|---|---|---|
| | § | | Date Filed: | **07/20/2007** |
| | § | | Location: | |
| | § | | Judicial Officer: | **Tatum, Drew D.** |
| | § | | | |
| | § | | | |
| | § | | | |

---

### RELATED CASE INFORMATION

**Related Cases**
S-1-SC-34576 (Appealed - District Court)
S-1-SC-36599 (Appealed - District Court)
S-1-SC-37501 (Appealed - District Court)
S-1-SC-37887 (Appealed - District Court)
S-1-SC-38539 (Habeas - Appealed)
S-1-SC-40134 (Appealed - District Court)
D-506-CV-2024-01141 (Same Party)

---

### PARTY INFORMATION

| | | | **Attorneys** |
|---|---|---|---|
| **Defendant** | **Ramirez, Albert** | Male ███████ B <br> 4' 2", 77 lbs | **Matthew J. O'Gorman** <br> *Public Defender* <br> 505-835-2113(W) |
| | Alberto Ramirez <br> C/O Lea County Correctional Facility <br> 6900 W. Miller Dr. <br> Hobbs, NM 88244 <br> DL: NM505115058 | | ~~Pro Se~~Amanda Marie ~~Stephenson~~ <br> *~~Retained~~* <br> ~~(505) 369-3612(W)~~ |
| | | | ~~Jesse R. Cosby~~ <br> *~~Court Appointed~~* <br> ~~575-208-1655 x10704(W)~~ |
| | | | ~~Liane E. Kerr~~ <br> *~~Court Appointed~~* <br> ~~505-848-9190(W)~~ |
| | | | ~~Matthias Swonger~~ <br> *~~Public Defender~~* <br> ~~505-369-3581(W)~~ |
| | | | ~~Sarah G. Gallegos~~ <br> *~~Public Defender~~* <br> ~~505-219-2884(W)~~ |
| | | | ~~Sarah Plazola~~ <br> *~~Public Defender~~* <br> ~~505-767-6118(W)~~ |
| **Plaintiff** | **STATE OF NEW MEXICO (DA)** | | **Andrea Rowley Reeb** <br> ~~(575) 219-9687(W)~~ |
| | CLOVIS NM 88101 | | ~~Matthew E. Chandler~~ <br> ~~(806) 368-8712(W)~~ |

---

### CHARGE INFORMATION

**Charges: Ramirez, Albert**

| | | Statute | Level | Date |
|---|---|---|---|---|
| 1. | MURDER IN THE FIRST DEGREE (WILLFUL & DELIBERATE) | 30-2-1(A)(1) | Capital Felony | 07/12/2007 |
| 2. | TAMPERING WITH EVIDENCE | 30-22-5 | 3rd Degree Felony | 07/12/2007 |
| 3. | TAMPERING WITH EVIDENCE | 30-22-5 | 3rd Degree Felony | 07/12/2007 |

```
┌─────────────────────────┐
│       EXHIBIT           │
│                         │
│         DS1             │
└─────────────────────────┘
```

| | EVENTS & ORDERS OF THE COURT |
|---|---|

**DISPOSITIONS**

| | |
|---|---|
| 01/26/2009 | **Disposition** (Judicial Officer: Hartley, Teddy L.)<br>　　1. MURDER IN THE FIRST DEGREE (WILLFUL & DELIBERATE)<br>　　　　CRB: GUILTY/NO CONTEST PLEA |
| 01/26/2009 | **Disposition** (Judicial Officer: Hartley, Teddy L.)<br>　　2. TAMPERING WITH EVIDENCE<br>　　　　CRB: DISMISS BY JUDGE/NOT RULE |
| 01/26/2009 | **Disposition** (Judicial Officer: Hartley, Teddy L.)<br>　　3. TAMPERING WITH EVIDENCE<br>　　　　CRB: DISMISS BY JUDGE/NOT RULE |
| 01/26/2009 | **Plea** (Judicial Officer: Hartley, Teddy L.)<br>　　1. MURDER IN THE FIRST DEGREE (WILLFUL & DELIBERATE)<br>　　　　Guilty |
| 01/26/2009 | **Sentenced** (Judicial Officer: Hartley, Teddy L.)<br>　　1. MURDER IN THE FIRST DEGREE (WILLFUL & DELIBERATE)<br>　　　　Converted Disposition:<br>　　　　　　DNA Identification Fee 0.00 Sentenced on 02-03-2009 Count 1-1 Non-Collectable. Sentenced: $100.00 ASM: DV<br>　　　　　　TREATMENT FEE 5.00 Sentenced on 02-03-2009 Count 1-1 Sentenced: $5.00 |
| 01/08/2014 | **Plea** (Judicial Officer: Hartley, Teddy L.)<br>　　2. TAMPERING WITH EVIDENCE<br>　　　　Guilty<br>　　3. TAMPERING WITH EVIDENCE<br>　　　　Guilty |
| 01/08/2014 | **Amended Plea** (Judicial Officer: Hartley, Teddy L.) Reason: Charges Refiled<br>　　1. MURDER IN THE FIRST DEGREE (WILLFUL & DELIBERATE)<br>　　　　Guilty |
| 01/08/2014 | **Amended Disposition** (Judicial Officer: Hartley, Teddy L.) Reason: Remanded<br>　　1. MURDER IN THE FIRST DEGREE (WILLFUL & DELIBERATE)<br>　　　　Conviction |
| 01/08/2014 | **Amended Disposition** (Judicial Officer: Hartley, Teddy L.) Reason: Remanded<br>　　2. TAMPERING WITH EVIDENCE<br>　　　　Conviction |
| 01/08/2014 | **Amended Disposition** (Judicial Officer: Hartley, Teddy L.) Reason: Remanded<br>　　3. TAMPERING WITH EVIDENCE<br>　　　　Conviction |
| 01/08/2014 | **Amended Sentenced** (Judicial Officer: Hartley, Teddy L.) Reason: Remanded<br>　　1. MURDER IN THE FIRST DEGREE (WILLFUL & DELIBERATE)<br>　　　　Converted Disposition:<br>　　　　　　DNA Identification Fee 0.00 Sentenced on 02-03-2009 Count 1-1 Non-Collectable. Sentenced: $100.00 ASM: DV<br>　　　　　　TREATMENT FEE 5.00 Sentenced on 02-03-2009 Count 1-1 Sentenced: $5.00<br>　　　　Condition - Adult:<br>　　　　　　1. Other, Mental and Physical health as available. 01/08/2014, Active 01/08/2014 |
| 01/08/2014 | **Sentenced** (Judicial Officer: Hartley, Teddy L.)<br>　　2. TAMPERING WITH EVIDENCE |
| 01/08/2014 | **Sentenced** (Judicial Officer: Hartley, Teddy L.)<br>　　3. TAMPERING WITH EVIDENCE |

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 07/20/2007 | **OPN: GRAND JURY INDICTMENT** (Judicial Officer: Hartley, Teddy L. )<br>　　*MAGISTRATE COURT NUMBER M-12-FR-200700389* |
| 07/20/2007 | **NTC: HEARING (ARRAIGNMENT)**<br>　　*ARRAIGNMENT JULY 30, 2007 @ 10:45 AM HARTLEY* |
| 07/30/2007 | **TAP: ARRAIGNMENT**<br>　　*COURTROOM 1 CD 10:48:56 ARRAIGNMENT 07/30/07 RODRIGUEZ/HARTLEY* |
| 07/30/2007 | **Arraignment/Plea Hearing** (9:00 AM) (Judicial Officer Hartley, Teddy L.)<br>　　*CD 10:48:56 CTRM1 ARRAIGNMENT RODRIGUEZ/HARTLEY*<br>Result: Held |
| 07/31/2007 | **MEMORANDUM OF ARRAIGNMENT** (Judicial Officer: Hartley, Teddy L. )<br>　　*ORDER ON ARRAIGNMENT AND ORDER SETTING CONDITIONS OF RELEASE NO BOND PRETRIAL: 12/10/07 @ 1:30 PM JURY TRIAL:*<br>　　*1/7/08 @ 9:00 AM* |
| 08/14/2007 | **ENTRY OF APPEARANCE** (Judicial Officer: Hartley, Teddy L. )<br>　　*AND SPEEDY TRIAL DEMAND [PUBLIC DEFENDER DEPARTMENT ENTERS APPEARANCE]* |
| 08/14/2007 | **MTN: TO RECONSIDER/ REVIEW** (Judicial Officer: Hartley, Teddy L. )<br>　　*TO REVIEW CONDITIONS OF RELEASE* |
| 08/27/2007 | **DISCOVERY** (Judicial Officer: Hartley, Teddy L. )<br>　　*NOTICE OF DISCLOSURE CERTIFICATE OF DISCLOSURE OF INFORMATION DEMAND FOR NOTICE OF ALIBI* |
| 08/27/2007 | **WITNESS LIST**<br>　　*STATE'S* |
| 08/27/2007 | **NTC: OF INTENT** (Judicial Officer: Hartley, Teddy L. )<br>　　*TO SEEK FIREARM ENHANCEMENT* |

08/27/2007 **NTC: OF INTENT** (Judicial Officer: Hartley, Teddy L. )
*TO SEEK AGGRAVATION OF SENTENCE*
08/28/2007 **NTC: HEARING (PRETRIAL CONFERENCE)**
*PRETRIAL CONFERENCE 12/10/07 @ 1:30 PM HARTLEY*
08/28/2007 **NTC: HEARING (JURY TRIAL)** (Judicial Officer: Hartley, Teddy L. )
*JURY TRIAL JANUARY 7-11, 2008 @ 9:00 AM HARTLEY*
08/31/2007 **SUBPOENA RETURNED**
*SECRETARY FOR WALDO CASAREZ SERVED 08/29/07*
08/31/2007 **SUBPOENA RETURNED**
*SECRETARY FOR DEPUTY SANDY LOOMIS SERVED 08/29/07*
09/05/2007 **SUBPOENA RETURNED**
*SAM SAIZ SERVED 9/3/07*
09/05/2007 **SUBPOENA RETURNED**
*DEBRA RAMIREZ SERVED 9/3/07*
09/05/2007 **SUBPOENA RETURNED**
*BRENT AGUILAR (CPD) SERVED 8/31/07*
09/05/2007 **SUBPOENA RETURNED**
*LT ROGER GRAH (CPD) SERVED 8/31/07*
09/05/2007 **SUBPOENA RETURNED**
*DETECTIVE MAX STANSELL (CPD) SERVED 8/31/07*
10/09/2007 **MTN: TO RECONSIDER/ REVIEW** (Judicial Officer: Hartley, Teddy L. )
*MOTION TO REVIEW CONDITIONS OF RELEASE*
10/11/2007 **MTN: FOR CONTINUANCE** (Judicial Officer: Hartley, Teddy L. )
10/11/2007 **MTN: MOTION/ PETITION TO EXTEND TIME**
10/16/2007 **ORD: OF CONTINUANCE** (Judicial Officer: Hartley, Teddy L. )
*JURY TRIAL SET JANUARY 7 - 11, 2008 SHALL BE CONTINUED*
10/23/2007 **ORD: DISTRICT COURT EXTENSION GRANTED** (Judicial Officer: Hartley, Teddy L. )
*TO INCLUDE 07/30/07*
10/25/2007 **NTC: HEARING (JURY TRIAL)** (Judicial Officer: Hartley, Teddy L. )
*AMENDED MARCH 10 - 14, 2008 @ 9:00 AM*
10/29/2007 **WITNESS LIST**
*AMENDED WITNESS LIST*
11/05/2007 **SUBPOENA RETURNED**
*KEVIN STREINE SERVED 11/05/07*
11/05/2007 **SUBPOENA RETURNED**
*SPECIAL AGENT DAVID LOERA SERVED 10/05/07*
11/05/2007 **SUBPOENA RETURNED**
*WALDO CASAREZ SERVED 11/02/07*
11/05/2007 **SUBPOENA RETURNED**
*DEPUTY SANDY LOOMIS SERVED 11/02/07*
11/05/2007 **SUBPOENA RETURNED**
*KEITH BESSETTE SERVED 11/02/07*
11/06/2007 **SUBPOENA RETURNED**
*DAN AGUILAR SERVED 11/6/07*
11/08/2007 **SUBPOENA RETURNED**
*KAREN CASILLAS SERVED 11/04/07*
11/08/2007 **SUBPOENA RETURNED**
*MONA GONZALES SERVED 11/07/07*
11/08/2007 **SUBPOENA RETURNED**
*SANDY KIRBY OR DESIGNEE SERVED 11/07/07*
11/14/2007 **SUBPOENA RETURNED**
*CPD FOR ROBBIE TELLES SERVED 11/06/07*
11/14/2007 **SUBPOENA RETURNED**
*CPD FOR DETECTIVE MAX STANSELL SERVED 11/06/07*
11/14/2007 **SUBPOENA RETURNED**
*CPD FOR RAFAEL AGUILAR SERVED 11/06/07*
11/14/2007 **SUBPOENA RETURNED**
*CPD FOR BRENT AGUILAR SERVED 11/06/07*
11/14/2007 **SUBPOENA RETURNED**
*CPD FOR DALE RICE SERVED 11/06/07*
11/14/2007 **SUBPOENA RETURNED**
*CPD FOR WAYLON RAINS SERVED 11/06/07*
11/14/2007 **SUBPOENA RETURNED**
*CPD FOR RANDY PITCOCK SERVED 11/06/07*
11/14/2007 **SUBPOENA RETURNED**
*CPD FOR OFFICER ERIC MULLER SERVED 11/06/07*
11/14/2007 **SUBPOENA RETURNED**
*CPD FOR JAY LONGLEY SERVED 11/06/07*
11/14/2007 **SUBPOENA RETURNED**
*CPD FOR LT RON HUTCHISON SERVED 11/06/07*
11/14/2007 **SUBPOENA RETURNED**
*CPD FOR LT ROGER GRAH SERVED 11/06/07*
11/14/2007 **SUBPOENA RETURNED**
*CPD FOR BRIAN ENCINIAS SERVED 11/06/07*
11/14/2007 **SUBPOENA RETURNED**
*CPD FOR ROBERT DENNEY SERVED 11/06/07*
11/14/2007 **SUBPOENA RETURNED**
*CPD FOR TONY BOSQUE SERVED 11/06/07*
11/14/2007 **SUBPOENA RETURNED**
*CPD FOR CHARLIE AGUIRRE SERVED 1/06/07*
11/14/2007 **SUBPOENA RETURNED**
*CPD FOR RICKY SMITH SERVED 11/06/07*
11/14/2007 **SUBPOENA RETURNED**
*JERRY WIKE (CPD) SERVED 11/6/07*

| | |
|---|---|
| 11/14/2007 | **SUBPOENA RETURNED**<br>*STEVEN WRIGHT (CPD) SERVED 11/6/07* |
| 11/14/2007 | **SUBPOENA RETURNED**<br>*EMT KAREN BURNS (CFD) SERVED 11/6/07* |
| 11/14/2007 | **SUBPOENA RETURNED**<br>*WENDALL BLAIR (CPD) SERVED 11/6/07* |
| 11/14/2007 | **SUBPOENA RETURNED**<br>*OFFICER DAVID WETMORE (CPD) SERVED 11/6/07* |
| 11/16/2007 | **SUBPOENA RETURNED**<br>*GRACE FINKEY SERVED 11/10/07* |
| 11/26/2007 | **SUBPOENA RETURNED**<br>*GLORIA MASSEY SERVED 11/25/07* |
| 12/04/2007 | **SUBPOENA RETURNED**<br>*PRISCILLA LOPEZ SERVED 11/29/07* |
| 12/04/2007 | **SUBPOENA RETURNED**<br>*SENOVIA SAIZ SERVED 11/29/07* |
| 12/04/2007 | **SUBPOENA RETURNED**<br>*DEBRA RAMIREZ SERVED 11/29/07* |
| 12/04/2007 | **SUBPOENA RETURNED**<br>*SAM SAIZ SERVED 11/29/07* |
| 12/06/2007 | **SUBPOENA RETURNED**<br>*PLATEAU RECORDS GUARDIAN SERVED 12/4/07* |
| 12/10/2007 | **TAP: PRETRIAL**<br>*CD 1:28:47 CTRM1 PRETRIAL CONFERENCE RODRIGUEZ/HARTELY* |
| 12/10/2007 | **ORD: ORDER** (Judicial Officer: Hartley, Teddy L. )<br>*CCDC DISPOSITION SHEET* |
| 12/10/2007 | **Pretrial Conference/Plea Hearing/Docket Call**  (9:00 AM) (Judicial Officer Hartley, Teddy L.)<br>Result: Held |
| 12/11/2007 | **ORD: PRETRIAL HEARING SCHEDULED** (Judicial Officer: Hartley, Teddy L. )<br>*ORDER ON PRETRIAL CONFERENCE PRETRIAL SET FOR 2/6/08 TRIAL SET FOR 3/10-14/08 NO BOND* |
| 12/11/2007 | **SUBPOENA RETURNED**<br>*VICTOR CANSINO SERVED VIA FAX 12/11/07* |
| 12/13/2007 | **SUBPOENA RETURNED**<br>*DENNIS FITE SERVED 12/11/07* |
| 12/19/2007 | **NTC: HEARING (PRETRIAL CONFERENCE)**<br>*PRETRIAL CONFERENCE 1/25/08 @ 10:30 AM HARTLEY* |
| 12/27/2007 | **NTC: HEARING (JURY TRIAL)** (Judicial Officer: Hartley, Teddy L. )<br>*AMENDED NOTICE MARCH 10 - 14, 2008 @ 9:00 AM* |
| 12/28/2007 | **NTC: NOTICE**<br>*NOTICE OF DEFENSE* |
| 01/02/2008 | **WITNESS LIST**<br>*SECOND AMENDED STATE'S* |
| 01/02/2008 | **SUBPOENA RETURNED**<br>*DR ROSS REICHARD SERVED VIA FAX 12/27/07* |
| 01/04/2008 | **MTN: MOTION** (Judicial Officer: Hartley, Teddy L. )<br>*MOTION TO EXCLUDE DEFENSE FOR UNTIMELY FILING ON NOTICE* |
| 01/07/2008 | **Jury Trial**  (9:00 AM) (Judicial Officer Hartley, Teddy L.)<br>Result: Continued |
| 01/14/2008 | **RESPONSE** (Judicial Officer: Hartley, Teddy L. )<br>*RESPONSE TO STATE'S RESPONSE TO NOTICE OF DEFENSE* |
| 01/14/2008 | **NTC: OF FILING**<br>*NOTICE OF FILING TO DETERMINE COMPETENCY OF THE DEFENDANT TO STAND TRIAL* |
| 01/24/2008 | **SUBPOENA RETURNED**<br>*JAMES PATTERSON SERVED 1/18/08* |
| 01/25/2008 | **TAP: PRETRIAL**<br>*1/25/08 CD 10:32:58 CTRM1 PRETRIAL RODRIGUEZ/HARTLEY* |
| 01/28/2008 | **ORD: PRETRIAL HEARING SCHEDULED** (Judicial Officer: Hartley, Teddy L. )<br>*ORDER ON PRETRIAL CONFERENCE TRIAL: 3/10/08* |
| 01/31/2008 | **NTC: HEARING (CRIMINAL)**<br>*STATUS HEARING 2/27/08 @ 9:00 AM HARTLEY* |
| 02/27/2008 | **TAP: STATUS CONFERENCE**<br>*COURTROOM 1 CD 8:58:50 STATUS HEARING 02/27/08 RODRIGUEZ/HARTLEY* |
| 02/27/2008 | **Status Hearing/ Conference**  (9:00 AM) (Judicial Officer Hartley, Teddy L.)<br>*STATUS HEARING FEBRUARY 27, 2008 @ 9:00 AM*<br>Result: Held |
| 03/10/2008 | **Jury Trial**  (9:00 AM) (Judicial Officer Hartley, Teddy L.)<br>*MARCH 10 - 14, 2008 @ 9:00 AM*<br>Result: Continued |
| 04/10/2008 | **REQUEST FOR HEARING/ SETTING** (Judicial Officer: Hartley, Teddy L. )<br>*REQUEST FOR COMPETENCY HEARING* |
| 04/17/2008 | **ORD: ORDER** (Judicial Officer: Hartley, Teddy L. )<br>*ORDER FOR COMMITMENT TO THE NEW MEXICO BEHAVIORAL HEALTH INSTITUTE AT LAS VEGAS FOR TREATMENT TO ATTAIN COMPETENCY TO STAND TRIAL* |
| 08/28/2008 | **SUBPOENA RETURNED**<br>*DR JOANNE BURNESS SERVED 8/27/08* |
| 08/29/2008 | **NTC: HEARING (CRIMINAL)**<br>*COMPETENCY HEARING SEPTEMBER 15, 2008 @ 1:30 PM HARTLEY* |
| 09/15/2008 | **TAP: HEARING**<br>*COURTROOM 1 CD 1:36:52 COMPETENCY HEARING 09/15/08 HILL/HARTLEY* |
| 09/15/2008 | **EXHIBIT RECEIPT** (Judicial Officer: Hartley, Teddy L. ) |
| 09/15/2008 | **Competency Hearing**  (9:00 AM) (Judicial Officer Hartley, Teddy L.)<br>*SEPTEMBER 15, 2008 @ 1:30 PM HARTLEY*<br>Result: Held |
| 09/16/2008 | **ORD: COMPETENT** (Judicial Officer: Hartley, Teddy L. )<br>*DEFENDANT IS NOW COMPETENT TO STAND TRIAL SHALL BE HELD IN CCDC WITHOUT BOND PENDING TRIAL* |

| 09/23/2008 | **SUBPOENA RETURNED** |
| | *CCADC SERVED 9/19/08* |
| 09/23/2008 | **NTC: HEARING (PRETRIAL CONFERENCE)** |
| | *PRETRIAL CONFERENCE 12/1/08 @ 1:30 PM HARTLEY* |
| 09/23/2008 | **NTC: HEARING (JURY TRIAL)** (Judicial Officer: Hartley, Teddy L. ) |
| | *JURY TRIAL JANUARY 26-30, 2009 @ 8:30 AM HARTLEY* |
| 11/17/2008 | **WITNESS LIST** |
| | *STATE'S 3RD ADDITIONAL* |
| 11/20/2008 | **WITNESS LIST** |
| | *AMENDED STATE'S* |
| 11/24/2008 | **SUBPOENA RETURNED** |
| | *ROGER GRAH SERVED 11/24/08* |
| 11/24/2008 | **SUBPOENA RETURNED** |
| | *LYNDELL STANSELL SERVED 11/24/08* |
| 11/24/2008 | **SUBPOENA RETURNED** |
| | *WENDALL BLAIR SERVED 11/24/08* |
| 11/24/2008 | **SUBPOENA RETURNED** |
| | *ROBERT DENNEY SERVED 11/24/08* |
| 11/24/2008 | **SUBPOENA RETURNED** |
| | *CHARLIE AGUIRRE SERVED 11/24/08* |
| 11/24/2008 | **SUBPOENA RETURNED** |
| | *RAFAEL AGUILAR SERVED 11/24/08* |
| 11/24/2008 | **SUBPOENA RETURNED** |
| | *BRENT AGUILAR SERVED 11/24/08* |
| 11/24/2008 | **SUBPOENA RETURNED** |
| | *RANDY PITCOCK SERVED 11/24/08* |
| 11/24/2008 | **SUBPOENA RETURNED** |
| | *JOHNNY ZAMORA SERVED 11/24/08* |
| 11/24/2008 | **SUBPOENA RETURNED** |
| | *SAM SAIZ SERVED 11/24/08* |
| 11/24/2008 | **SUBPOENA RETURNED** |
| | *PLATEAU RECORDS CUSTODIAN SERVED 11/24/08* |
| 11/24/2008 | **SUBPOENA RETURNED** |
| | *GLORIA MASSEY SERVED 11/24/08* |
| 11/24/2008 | **SUBPOENA RETURNED** |
| | *MONICA PROVOLT SERVED 11/24/08* |
| 11/24/2008 | **SUBPOENA RETURNED** |
| | *JAMES PROVOLT SERVED 11/24/08* |
| 11/24/2008 | **SUBPOENA RETURNED** |
| | *VICKY TUBBS SERVED 11/24/08* |
| 11/24/2008 | **SUBPOENA RETURNED** |
| | *RAYMOND ATCHLEY SERVED 11/24/08* |
| 11/24/2008 | **SUBPOENA RETURNED** |
| | *JANICE DAVIS SERVED 11/24/08* |
| 11/24/2008 | **SUBPOENA RETURNED** |
| | *VICTOR CANSINO SERVED 11/24/08* |
| 11/24/2008 | **SUBPOENA RETURNED** |
| | *KEVIN STREINE SERVED 11/24/08* |
| 11/24/2008 | **SUBPOENA RETURNED** |
| | *ROSS REICHARD SERVED 11/21/08* |
| 11/24/2008 | **SUBPOENA RETURNED** |
| | *JOANNE BURNESS SERVED 11/21/08* |
| 11/24/2008 | **SUBPOENA RETURNED** |
| | *DAVID LOERA SERVED 11/24/08* |
| 11/24/2008 | **SUBPOENA RETURNED** |
| | *DAN AGUILAR SERVED 11/24/08* |
| 11/24/2008 | **SUBPOENA RETURNED** |
| | *SANDY KIRBY SERVED 11/24/08* |
| 11/24/2008 | **SUBPOENA RETURNED** |
| | *THERESA LEVACY SERVED 11/24/08* |
| 11/24/2008 | **SUBPOENA RETURNED** |
| | *MONA GONZALES SERVED 11/24/08* |
| 11/25/2008 | **ORD: ORDER** (Judicial Officer: Hartley, Teddy L. ) |
| | *ORDER FOR GRAND JURY TAPES FROM 07/20/07* |
| 11/25/2008 | **SUBPOENA RETURNED** |
| | *DENNIS FATE SERVED 11/24/08* |
| 11/25/2008 | **SUBPOENA RETURNED** |
| | *SANDY LOOMIS SERVED 11/24/08* |
| 11/25/2008 | **SUBPOENA RETURNED** |
| | *WALDO CASAREZ SERVED 11/24/08* |
| 11/26/2008 | **WITNESS LIST** |
| | *AMENDED STATE'S* |
| 11/26/2008 | **SUBPOENA RETURNED** |
| | *PRISCILLA LOPEZ SERVED 11/25/08* |
| 12/01/2008 | **TAP: PRETRIAL** |
| | *12/1/08 CD 1:30:35 CTRM1 PRETRIAL CONFERENCE & PENDING MOTIONS HARTLEY/RODRIGUEZ* |
| 12/01/2008 | **ORD: PRETRIAL HEARING SCHEDULED** (Judicial Officer: Hartley, Teddy L. ) |
| 12/01/2008 | **Pretrial Conference/Plea Hearing/Docket Call**  (9:00 AM) (Judicial Officer Hartley, Teddy L.) |
| | *PRETRIAL CONFERENCE 12/1/08 @ 1:30 PM HARTLEY* |
| | Result: Held |
| 12/08/2008 | **SUBPOENA RETURNED** |
| | *CRIMSON MAES SERVED 12/05/08* |
| 12/08/2008 | **ORD: ORDER** (Judicial Officer: Hartley, Teddy L. ) |
| | *ON DISCOVERY* |

| | |
|---|---|
| 12/08/2008 | **SUBPOENA RETURNED** |
| | *DALE RICE SERVED 12/5/08* |
| 12/08/2008 | **SUBPOENA RETURNED** |
| | *KAREN CASILLAS SERVED 12/5/08* |
| 12/08/2008 | **SUBPOENA RETURNED** |
| | *RICKY JARAMILLO SERVED 12/5/08* |
| 12/08/2008 | **SUBPOENA RETURNED** |
| | *HESIQUIA RARMIEZ SERVED 12/5/08* |
| 12/08/2008 | **SUBPOENA RETURNED** |
| | *GRACE FINKEY SERVED 12/4/08* |
| 01/12/2009 | **SUBPOENA RETURNED** |
| | *JOE RAMIREZ SERVED 1/10/09* |
| 01/12/2009 | **SUBPOENA RETURNED** |
| | *DEBRA RAMIREZ SERVED 1/10/09* |
| 01/12/2009 | **ORD: TO TRANSPORT** (Judicial Officer: Hartley, Teddy L. ) |
| 01/12/2009 | **SUBPOENA RETURNED** |
| | *IVA VASQUEZ SERVED 1/12/09* |
| 01/12/2009 | **WITNESS LIST** |
| | *ADDITIONAL* |
| 01/13/2009 | **WITNESS LIST** |
| | *ADDITIONAL* |
| 01/13/2009 | **MTN: IN LIMINE** (Judicial Officer: Hartley, Teddy L. ) |
| 01/13/2009 | **MTN: IN LIMINE** (Judicial Officer: Hartley, Teddy L. ) |
| 01/13/2009 | **MTN: MOTION** (Judicial Officer: Hartley, Teddy L. ) |
| | *DEFENDANT'S MOTION TO EXCLUDE THE INTRODUCTION OF ALL PHOTOGRAPHS OF THE DECEASED AT TRIAL* |
| 01/14/2009 | **MTN: IN LIMINE** (Judicial Officer: Hartley, Teddy L. ) |
| 01/14/2009 | **MTN: IN LIMINE** (Judicial Officer: Hartley, Teddy L. ) |
| 01/14/2009 | **MTN: IN LIMINE** (Judicial Officer: Hartley, Teddy L. ) |
| 01/14/2009 | **MTN: IN LIMINE** (Judicial Officer: Hartley, Teddy L. ) |
| 01/14/2009 | **MTN: IN LIMINE** (Judicial Officer: Hartley, Teddy L. ) |
| 01/14/2009 | **MTN: IN LIMINE** (Judicial Officer: Hartley, Teddy L. ) |
| 01/14/2009 | **MTN: IN LIMINE** (Judicial Officer: Hartley, Teddy L. ) |
| 01/15/2009 | **WITNESS LIST** |
| | *ADDITIONAL* |
| 01/15/2009 | **TAP: REVIEW** |
| | *COURTROOM 1 CHAMBERS CD 3:28:15 PRE-TRIAL REVIEW HEARING 01/15/09 @ 4:15 PM HILL/HARTLEY* |
| 01/26/2009 | **TAP: JURY TRIAL** |
| | *1/26/09 CD 8:56:07 CTRM1 (CHAMBERS) PEREMPTORY CHALLENGES/PLEA & DISPOSITION HARTLEY/RODRIGUEZ* |
| 01/26/2009 | **TAP: JURY TRIAL** |
| | *1/26/09 CD 9:06:26 CTRM1 JURY TRIAL HARTLEY/RODRIGUEZ* |
| 01/26/2009 | **PLEA & DISPOSITION AGREEMENT** (Judicial Officer: Hartley, Teddy L. ) |
| | *Guilty plea* |
| 01/26/2009 | **Jury Trial** (9:00 AM) (Judicial Officer, Hartley, Teddy L.) |
| | *JURY TRIAL JANUARY 26-30, 2009 @ 8:30 AM HARTLEY* |
| | Result: Settled Plea/ During Trial |
| 02/03/2009 | **CLS: GUILTY PLEA/ JUDGMENT** (Judicial Officer: Hartley, Teddy L. ) |
| 02/03/2009 | **NTC: ENTRY OF JUDGMENT** |
| 02/25/2009 | **MTN: TO WITHDRAW** (Judicial Officer: Hartley, Teddy L. ) |
| | *MOTION TO WITHDRAW PLEA OF GUILTY* |
| 03/02/2009 | **NTC: HEARING (CRIMINAL)** |
| | *NOTICE OF HEARING FRIDAY 04/24/2009 10:30 AM MOTION TO WITHDRAW PLEA* |
| 03/16/2009 | **ORD: TO TRANSPORT** (Judicial Officer: Hartley, Teddy L. ) |
| 03/16/2009 | **ORD: TO TRANSPORT** (Judicial Officer: Hartley, Teddy L. ) |
| | *ORDER TO TRANSPORT DEFENDANT* |
| 04/24/2009 | **Motion Hearing** (9:00 AM) (Judicial Officer Hartley, Teddy L.) |
| | *FRIDAY 04/24/2009 10:30 AM MOTION TO WITHDRAW PLEA* |
| | Result: Continued |
| 05/26/2009 | **NTC: HEARING (CRIMINAL)** |
| | *NOTICE OF HEARING ON MOTION TO WITHDRAW PLEA; HEARING SET FOR 06/25/09 @ 10:30 AM JUDGE HARTLEY* |
| 05/28/2009 | **ORD: TO TRANSPORT** (Judicial Officer: Hartley, Teddy L. ) |
| | *ORDER TO TRANSPORT DEFENDANT* |
| 06/25/2009 | **TAP: MOTION** |
| | *COURTROOM 2 6-25-09 AT 10:39:14AM MOTION TO WITHDRAW PLEA HARTLEY/RODRIGUEZ* |
| 06/25/2009 | **Motion Hearing** (9:00 AM) (Judicial Officer Hartley, Teddy L.) |
| | *RE;NOTICE OF HEARING FILED 05/26/09; MOTION TO WITHDRAW PLEA 06/25/09 @ 10:30 PM JUDGE HARTLEY* |
| | Result: Held |
| 07/29/2009 | **ORD: ORDER** (Judicial Officer: Hartley, Teddy L. ) |
| | *ORDER ON MOTION TO WITHDRAW PLEA OF GUILTY THEREFORE ORDERED THAT DEFENSE'S MOTION TO WITHDRAW PLEA OF GUILTY IS DENIED.* |
| 08/07/2009 | **MTN: MOTION/APPLICATION FOR FREE PROCESS** (Judicial Officer: Hartley, Teddy L. ) |
| | *MOTION FOR APPOINTMENT OF COUNSEL AND FREE PROCESS* |
| 08/07/2009 | **ORD: FOR FREE PROCESS** (Judicial Officer: Hartley, Teddy L. ) |
| | *ORDER APPOINTING COUNSEL & ALLOWING FREE PROCESS APPOINTMENT OF OFFICE OF PUBLIC DEFENDER* |
| 08/07/2009 | **NTC: OF APPEAL TO COURT OF APPEALS/ SUPREME COURT** |
| | *NOTICE OF APPEAL FILED BY BRETT CARTER* |
| 10/02/2009 | **DOCKETING STATEMENT / COURT OF APPEALS** |
| | *DOCKETING STATEMENT FILED BY PUBLIC DEFENDER* |
| 10/14/2009 | **CERTIFICATE** |
| | *CLERK'S CERTIFICATE* |
| 10/26/2009 | **APPEAL CALENDAR NOTICE** |
| | *GENERAL CALENDAR NOTICE* |
| 10/30/2009 | **EXHIBIT DESIGNATION** (Judicial Officer: Hartley, Teddy L. ) |
| | *DESIGNATION OF DOCUMENTS ON APPEAL FILED BY BRETT CARTER* |

| | |
|---|---|
| 07/06/2011 | **RPN: MANDATE/REOPEN** (Judicial Officer: Hartley, Teddy L. )<br>*DEFENDANT'S PLEA WAS NOT KNOWING, INTELLIGENT, AND VOLUNTARY AND THAT THE DISTRICT COURT ABUSED ITS DISCRETION*<br>*BY DENYING DEFENDANT'S MOTION TO WITHDRAW HIS PLEA WE REVERSE AND REMAND FOR PROCEEDINGS CONSISTENT WITH*<br>*THIS OPINION* |
| 08/10/2011 | **NTC: HEARING (CRIMINAL)**<br>*STATUS HEARING AUG 18, 2011 @ 10:00 AM HARTLEY* |
| 08/11/2011 | **ORD: TO TRANSPORT** (Judicial Officer: Hartley, Teddy L. ) |
| 08/18/2011 | **TAP: STATUS CONFERENCE**<br>*COURTROOM 1 CD 9:59:50 STATUS CONF 08/18/11 RODRIGUEZ/HARTLEY* |
| 08/18/2011 | **Status Hearing/ Conference** (9:00 AM) (Judicial Officer Hartley, Teddy L.)<br>*AUG 18, 2011 @ 10:00 AM HARTLEY*<br>Result: Held |
| 08/25/2011 | **ORD: WITHDRAWAL/ SUBSTITUTION OF COUNSEL**<br>*BRETT CARTER WITHDRAWS JESSE COSBY SUBSTITUTES AS COUNSEL FOR DEFENDANT* |
| 08/25/2011 | **NTC: REQUEST/ DEMAND FOR DISCOVERY** (Judicial Officer: Hartley, Teddy L. ) |
| 08/25/2011 | **DEMAND FOR SPEEDY TRIAL** |
| 08/30/2011 | **NTC: HEARING (CRIMINAL)**<br>*STATUS HEARING 9-12-11 AT 10:45AM HARTLEY* |
| 09/06/2011 | ORD: ORDER (Judicial Officer: Hartley, Teddy L. )<br>*DEFENDANT IS ALLOWED TO WITHDRAW FROM THE PLEA* |
| 09/12/2011 | TAP: STATUS CONFERENCE<br>*COURTROOM 1 CD 10:48:22 STATUS CONF 09/12/11 RODRIGUEZ/HARTLEY* |
| 09/12/2011 | **Status Hearing/ Conference** (9:00 AM) (Judicial Officer Hartley, Teddy L.)<br>*10:45AM HARTLEY*<br>Result: Held |
| 09/22/2011 | **MTN: PSYCHIATRIC/DIAGNOSTIC EVAL** (Judicial Officer: Hartley, Teddy L. )<br>*MTN FOR MENTAL EVALUATION* |
| 09/26/2011 | **ORD: PSYCHIATRIC/ DIAGNOSTIC EVALUATION** (Judicial Officer: Hartley, Teddy L. )<br>*EX PARTE* |
| 12/21/2011 | **ORD: TO TRANSPORT** (Judicial Officer: Hartley, Teddy L. ) |
| 01/06/2012 | **MTN: MOTION** (Judicial Officer: Hartley, Teddy L. )<br>*STATE'S MOTION TO RECONSIDER TRANSPORT ORDER AND REQUEST FOR COMPLIANCE WITH RULES 5-120 AND 5-121* |
| 01/11/2012 | **ORD: ORDER** (Judicial Officer: Hartley, Teddy L. )<br>*TRANSPORT ORDER FILED DECEMBER 21, 2011 IS HEREBY WITHDRAWN AND WILL BE RECONSIDERED AT A LATER DATE* |
| 03/05/2012 | **NTC: HEARING (CRIMINAL)**<br>*STATUS HEARING MARCH 9, 2012 (TRAILING) 10:45 AM 15 MIN HARTLEY* |
| 03/09/2012 | **TAP: STATUS CONFERENCE**<br>*COURTROOM ONE 3-9-12 AT 10:47:57AM STATUS HARTLEY/RODRIGUEZ* |
| 03/09/2012 | **Status Hearing/ Conference** (9:00 AM) (Judicial Officer Hartley, Teddy L.)<br>*STATUS HEARING MARCH 9, 2012 (TRAILING) 10:45 AM 15 MIN HARTLEY*<br>Result: Held |
| 03/15/2012 | **ORD: PSYCHIATRIC/ DIAGNOSTIC EVALUATION** (Judicial Officer: Hartley, Teddy L. ) |
| 03/15/2012 | **ORD: TO TRANSPORT** (Judicial Officer: Hartley, Teddy L. ) |
| 05/30/2012 | **NTC: HEARING (CRIMINAL)**<br>*STATUS JUN 25, 2012 @ 2:30 PM HARTLEY* |
| 06/25/2012 | **TAP: STATUS CONFERENCE**<br>*COURTROOM 1 6-25-12 AT 2:39:30PM STATUS HARTLEY/RODRIGUEZ* |
| 06/25/2012 | **Status Hearing/ Conference** (9:00 AM) (Judicial Officer Hartley, Teddy L.)<br>*STATUS JUN 25, 2012 @ 2:30 PM HARTLEY*<br>Result: Held |
| 07/06/2012 | **ORD: TO TRANSPORT** (Judicial Officer: Hartley, Teddy L. )<br>*AMENDED* |
| 07/06/2012 | **NTC: HEARING (CRIMINAL)**<br>*STATUS AUG 31, 2012 @ 10:00 AM HARTLEY* |
| 08/29/2012 | **NTC: HEARING (CRIMINAL)**<br>*COMPETENCY HEARING 10-9-12 AT 9AM HARTLEY* |
| 08/30/2012 | **SUBPOENA RETURNED**<br>*DOUGLAS DAVIS SERVED 08/29/12* |
| 08/31/2012 | **Status Hearing/ Conference** (9:00 AM) (Judicial Officer Hartley, Teddy L.)<br>*AUG 31, 2012 @ 10:00 AM HARTLEY* |
| 09/27/2012 | NTC: HEARING<br>*Competencing hearing Dec 3, 2012 @ 2:30 pm Hartley* |
| 10/09/2012 | *CANCELED* **Competency Hearing** (1:00 PM) (Judicial Officer Hartley, Teddy L.)<br>*Scheduling Error*<br>*Scheduled for morning only*<br>*10/09/2012 Reset by Court to 10/09/2012* |
| 10/15/2012 | ORD: TO TRANSPORT |
| 11/26/2012 | MTN: FOR CONTINUANCE |
| 11/27/2012 | ORD: OF CONTINUANCE<br>*12-3-12 competency hearing continued* |
| 12/03/2012 | *CANCELED* **Competency Hearing** (2:30 PM) (Judicial Officer Hartley, Teddy L.)<br>*Continuance Granted* |
| 02/01/2013 | NTC: HEARING<br>*Status Conference - March 29, 2013 at 1:30pm Hartley* |
| 02/11/2013 | ORD: TO TRANSPORT (Judicial Officer: Hartley, Teddy L. ) |
| 03/01/2013 | ORD: COMPETENT (Judicial Officer: Hartley, Teddy L. ) |
| 03/04/2013 | REQUEST FOR HEARING/ SETTING |
| 03/29/2013 | *CANCELED* **Status Conference** (1:30 PM) (Judicial Officer Hartley, Teddy L.)<br>*Other- Comments Required*<br>*competency stipulated - set for trial* |
| 03/29/2013 | **Status Conference** (10:15 AM) (Judicial Officer Hartley, Teddy L.)<br>*Trailing - Setting Jury Trial Dates*<br>Parties Present<br>Result: Held |

| 03/29/2013 | **TAP: STATUS CONFERENCE** |
| | *Courtroom 1 - 3/29/13 at 9:57:29am - Status - Hartley/Rodriguez* |
| 04/11/2013 | **NTC: HEARING (JURY TRIAL)** |
| | *Aug 5-9, 2013 @ 8:30 am Hartley* |
| 06/21/2013 | **SUBPOENA RETURNED** |
| | *Raymond Atchley served 06/21/13* |
| 06/21/2013 | **SUBPOENA RETURNED** |
| | *Joanne Burness served 06/21/13* |
| 06/21/2013 | **SUBPOENA RETURNED** |
| | *Douglas Davis served 06/21/13* |
| 06/21/2013 | **SUBPOENA RETURNED** |
| | *Ross Reichard served 06/21/13* |
| 06/21/2013 | **SUBPOENA RETURNED** |
| | *Johnny Zamora served 06/21/13* |
| 06/21/2013 | **SUBPOENA RETURNED** |
| | *Victor Cansino served 06/21/13* |
| 06/21/2013 | **SUBPOENA RETURNED** |
| | *Kevin Streine served 06/21/13* |
| 06/24/2013 | **SUBPOENA RETURNED** |
| | *Monica Provolt served 06/21/13* |
| 06/24/2013 | **SUBPOENA RETURNED** |
| | *James Provolt served 06/21/13* |
| 06/24/2013 | **SUBPOENA RETURNED** |
| | *Waldo Casarez served 06/21/13* |
| 06/24/2013 | **SUBPOENA RETURNED** |
| | *Gloria Massey served 06/21/13* |
| 06/24/2013 | **SUBPOENA RETURNED** |
| | *Hesiquia Ramirez served 06/21/13* |
| 06/24/2013 | **SUBPOENA RETURNED** |
| | *Sam Saiz served 06/21/13* |
| 06/24/2013 | **SUBPOENA RETURNED** |
| | *Debra Ramirez served06/21/13* |
| 06/24/2013 | **SUBPOENA RETURNED** |
| | *Sandy Loomis served 06/21/13* |
| 06/24/2013 | **SUBPOENA RETURNED** |
| | *Dale Rice served 06/21/13* |
| 06/24/2013 | **SUBPOENA RETURNED** |
| | *Randy Pitcock served 06/21/13* |
| 06/24/2013 | **SUBPOENA RETURNED** |
| | *Jonathan Howard served 06/21/13* |
| 06/24/2013 | **SUBPOENA RETURNED** |
| | *Roger Grah served 06/21/13* |
| 06/24/2013 | **SUBPOENA RETURNED** |
| | *Wendall Blair served 06/21/13* |
| 06/24/2013 | **SUBPOENA RETURNED** |
| | *Charlie Aguirre served 06/21/13* |
| 06/24/2013 | **SUBPOENA RETURNED** |
| | *Rafaeil Aguilar served 06/21/13* |
| 06/24/2013 | **SUBPOENA RETURNED** |
| | *Brent Aguilar served 06/21/13* |
| 06/24/2013 | **SUBPOENA RETURNED** |
| | *Dennis Fite served 06/21/13* |
| 06/24/2013 | **SUBPOENA RETURNED** |
| | *US Postal Worker served 06/24/13* |
| 06/25/2013 | **ORD: TO TRANSPORT** (Judicial Officer: Hartley, Teddy L. ) |
| 06/25/2013 | **SUBPOENA RETURNED** |
| | *Victor Cansino served 06/24/13* |
| 06/25/2013 | **SUBPOENA RETURNED** |
| | *Joshua Parkin served 06/24/13* |
| 07/03/2013 | **ORD: ORDER** |
| | *from Supreme Court of NM; Judge Hartley is to preside over this cause* |
| 07/03/2013 | **SUBPOENA RETURNED** |
| | *Johnny Zamora served 07/03/13* |
| 07/08/2013 | **MTN: MOTION** |
| | *for certificate and subpoena to compel the attendance of witness from another state* |
| 07/08/2013 | **CERTIFICATE** |
| | *of judge of the requesting-state for out-of-state witness* |
| 07/16/2013 | **WITNESS LIST** |
| | *Additional* |
| 07/17/2013 | **MTN: MOTION** |
| | *for certificate and subpoena to compel the attendance of witness from anther state* |
| 07/17/2013 | **CERTIFICATE** |
| | *of judge of the requesting state for out of state witness* |
| 07/17/2013 | **SUBPOENA RETURNED** |
| | *Vicky Tubbs, ADC Medical Staff 7-16-13* |
| 07/17/2013 | **SUBPOENA RETURNED** |
| | *Served on Plateau Records Custodian - Lana Waller 7-16-13* |
| 07/17/2013 | **SUBPOENA RETURNED** |
| | *Served on Mona Gonzales, Wal-Mart 7-16-13* |
| 07/17/2013 | **SUBPOENA RETURNED** |
| | *Served on Theresa Levacy - Walmart 7-16-13* |
| 07/18/2013 | **WITNESS LIST** |
| | *Additional* |
| 07/22/2013 | **WITNESS/ EXHIBIT DISCLOSURE** |

**Case 2:23-cv-01075-MV-DLM     Document 102-1     Filed 01/22/25     Page 1853 of 1863**

| | |
|---|---|
| 07/22/2013 | **SUBPOENA RETURNED** |
| | *Robert Telles served 07/18/13* |
| 07/22/2013 | **SUBPOENA RETURNED** |
| | *James Patterson served 07/19/13* |
| 07/22/2013 | **SUBPOENA RETURNED** |
| | *Donna Thibodeau served 07/19/13* |
| 07/24/2013 | **ADDENDUM** |
| | *to defendant's witness disclosure* |
| 07/25/2013 | **ORD: TO TRANSPORT** (Judicial Officer: Tatum, Drew D. ) |
| 07/25/2013 | **ORD: TO TRANSPORT** (Judicial Officer: Tatum, Drew D. ) |
| 07/26/2013 | **SUBPOENA RETURNED** |
| | *Grace Finkley served on 7/25/13* |
| 07/29/2013 | **Status Conference** (9:30 AM) (Judicial Officer Hartley, Teddy L.) |
| | **Parties Present** |
| | Result: Held |
| 07/29/2013 | **TAP: STATUS CONFERENCE** |
| | *Courtroom 1 cd 9:32:20 Status conf 07/29/13 Richardson/Hartley* |
| 08/01/2013 | **RESPONSE** |
| | *to defendant's motion to continue* |
| 08/01/2013 | **ORD: OF CONTINUANCE** |
| | *CONTINUING JURY TRIAL OF 08/05 THRU 08/09/2013* |
| 08/05/2013 | *CANCELED* **Jury Trial** (8:30 AM) (Judicial Officer Hartley, Teddy L.) |
| | *Continuance Granted* |
| | *Day 1 of 5* |
| 08/06/2013 | *CANCELED* **Jury Trial** (8:30 AM) (Judicial Officer Hartley, Teddy L.) |
| | *Continuance Granted* |
| | *Day 2 of 5* |
| 08/07/2013 | *CANCELED* **Jury Trial** (8:30 AM) (Judicial Officer Hartley, Teddy L.) |
| | *Continuance Granted* |
| | *Day 3 of 5* |
| 08/08/2013 | *CANCELED* **Jury Trial** (8:30 AM) (Judicial Officer Hartley, Teddy L.) |
| | *Continuance Granted* |
| | *Day 4 of 5* |
| 08/09/2013 | *CANCELED* **Jury Trial** (8:30 AM) (Judicial Officer Hartley, Teddy L.) |
| | *Continuance Granted* |
| | *Day 5 of 5* |
| 08/16/2013 | **REQUEST FOR HEARING/ SETTING** |
| | *Jury Trial* |
| 08/27/2013 | **EXHIBIT RECEIPT** |
| 08/29/2013 | **NTC: HEARING (JURY TRIAL)** |
| | *October 7-11, 2013 at 8:30am Hartley* |
| 08/30/2013 | **SUBPOENA RETURNED** |
| | *Served on Johnny Zamora 8-30-13* |
| 08/30/2013 | **SUBPOENA RETURNED** |
| | *Served on Dr. Ross Reichard, Mayo Clinic 8-30-13* |
| 08/30/2013 | **SUBPOENA RETURNED** |
| | *Served on Kevin Streine, NMDPS 8/30/13* |
| 08/30/2013 | **SUBPOENA RETURNED** |
| | *Served on Victory Cansino, Texas DPS 8-30-13* |
| 08/30/2013 | **SUBPOENA RETURNED** |
| | *Served on Dr. Douglas F. Davis, Ph.D. 8-30-13* |
| 08/30/2013 | **SUBPOENA RETURNED** |
| | *Served on Raymond Atchley, COMPAS Coordinator, NMDOC 8-30-13* |
| 08/30/2013 | **SUBPOENA RETURNED** |
| | *Served on Vicky Tubbs 8-30-13* |
| 09/04/2013 | **SUBPOENA RETURNED** |
| | *Sandy Loomis 08/30/13* |
| 09/04/2013 | **SUBPOENA RETURNED** |
| | *Hesiquia Ramirez served 09/03/13* |
| 09/04/2013 | **SUBPOENA RETURNED** |
| | *Debra Ramirez served 09/03/13* |
| 09/04/2013 | **SUBPOENA RETURNED** |
| | *Crimson Maes served 09/03/13* |
| 09/04/2013 | **SUBPOENA RETURNED** |
| | *James Patterson served 09/03/13* |
| 09/04/2013 | **SUBPOENA RETURNED** |
| | *Sam Saiz served 09/03/13* |
| 09/05/2013 | **SUBPOENA RETURNED** |
| | *Randy Pitcock served on 9/3/13* |
| 09/05/2013 | **SUBPOENA RETURNED** |
| | *Dale Rice (CPD) served on 9/3/13* |
| 09/05/2013 | **SUBPOENA RETURNED** |
| | *Waldo Casarez served on 9/3/13* |
| 09/05/2013 | **SUBPOENA RETURNED** |
| | *Lt. Roger Grah served 9/3/13* |
| 09/05/2013 | **SUBPOENA RETURNED** |
| | *Brent Aguilar (CPD) served on 9/3/13* |
| 09/05/2013 | **SUBPOENA RETURNED** |
| | *Charlie Aguirre (CPD) served on 9/3/13* |
| 09/05/2013 | **SUBPOENA RETURNED** |
| | *Dennis Fite served on 9/3/13* |
| 09/05/2013 | **SUBPOENA RETURNED** |
| | *Mona Gonzales served on 9/3/13* |

| | |
|---|---|
| 09/05/2013 | **SUBPOENA RETURNED** |
| | *US Postal Worker served on 9/3/13* |
| 09/05/2013 | **ORD: TO TRANSPORT** |
| 09/05/2013 | **SUBPOENA RETURNED** |
| | *Rafael Aguilar (CPD) served on 9/3/13* |
| 09/06/2013 | **SUBPOENA RETURNED** |
| | *Plateau records served 09/04/13* |
| 09/06/2013 | **SUBPOENA RETURNED** |
| | *Grace Finkey served 09/05/13* |
| 09/27/2013 | **SUBPOENA RETURNED** |
| | *Theresa Levacy served 09/24/13* |
| 10/02/2013 | **SUBPOENA RETURNED** |
| | *Mona Gonzales served 10/02/13* |
| 10/02/2013 | **SUBPOENA RETURNED** |
| | *Vicky Tubbs served 10/01/13* |
| 10/02/2013 | **SUBPOENA RETURNED** |
| | *Vicky Tubbs served 10/01/13* |
| 10/07/2013 | **Jury Trial** (8:30 AM) (Judicial Officer Hartley, Teddy L.) |
| | *Day 1 of 5* |
| | **Parties Present** |
| | Result: Held |
| 10/07/2013 | **AFFIDAVIT FOR ARREST WARRANT** |
| | *for material witness warrant for Debra Ramirez* |
| 10/07/2013 | **COURT MINUTE** |
| | *Clerk's* |
| 10/07/2013 | **TAP: JURY TRIAL** |
| | *Courtroom 1 cd 8:40:40 - 8:58:09; 10:38:07 - 12:11:16 Jury Trial/Chambers 10/07/13 Rodriguez/Hartley* |
| 10/07/2013 | **TAP: JURY TRIAL** |
| | *Courtroom 1 cd 9:00:23 - 10:19:18; 12:13:12 - 5:20:41 Jury Trial 10/07/13 Rodriguez/Hartley* |
| 10/07/2013 | **WAR: ARREST WARRANT ISSUED** |
| 10/08/2013 | **Jury Trial** (8:30 AM) (Judicial Officer Hartley, Teddy L.) |
| | *Day 2 of 5* |
| | **Parties Present** |
| | Result: Held |
| 10/08/2013 | **TAP: JURY TRIAL** |
| | *Courtroom 1 cd 8:41:35 Jury trial Day 2 10/08/13 Rodriguez/Hartley* |
| 10/09/2013 | **Jury Trial** (8:30 AM) (Judicial Officer Hartley, Teddy L.) |
| | *Day 3 of 5* |
| | **Parties Present** |
| | Result: Held |
| 10/09/2013 | **TAP: JURY TRIAL** |
| | *Courtroom 1 cd 8:30:14 Jury trial Day 3 10/09/13 Rodriguez/Hartley* |
| 10/09/2013 | **SUBPOENA RETURNED** |
| | *Josie Casillas served 10/04/13* |
| 10/09/2013 | **SUBPOENA RETURNED** |
| | *Lupita Casillas served 10/04/13* |
| 10/09/2013 | **SUBPOENA RETURNED** |
| | *Lupe Casillas served 10/04/13* |
| 10/09/2013 | **SUBPOENA RETURNED** |
| | *Jose Carmello Ramirez served 10/04/13* |
| 10/10/2013 | **Jury Trial** (8:30 AM) (Judicial Officer Hartley, Teddy L.) |
| | *Day 4 of 5* |
| | **Parties Present** |
| | Result: Held |
| 10/10/2013 | **TAP: JURY TRIAL** |
| | *Courtroom 1 cd 9:18:10 - 10:31:36; 11:03:22 - 4:44:18 Jury trial Day 4 10/10/13 Rodriguez/Hartley* |
| 10/10/2013 | **TAP: JURY TRIAL** |
| | *Courtroom 1 cd 10:40:24 - 11:01:44; 3:44:27 - 4:09:42 Jury trial Day 4 Chambers 10/10/13 Rodriguez/Hartley* |
| 10/11/2013 | **Jury Trial** (8:30 AM) (Judicial Officer Hartley, Teddy L.) |
| | *Day 5 of 5* |
| | **Parties Present** |
| | Result: Verdict |
| 10/11/2013 | **JURY INSTRUCTIONS** |
| | *As Given* |
| 10/11/2013 | **MISCELLANEOUS ENTRY** |
| | *Judge's memo's (SEALED)* |
| 10/11/2013 | **VERDICT GUILTY** |
| | *Count 1: First Degree Murder* |
| 10/11/2013 | **SPECIAL VERDICT** |
| | *Firearm was used in the commission of the murder as charged in Count 1* |
| 10/11/2013 | **VERDICT GUILTY** |
| | *Count 2: Tampering with evidence* |
| 10/11/2013 | **VERDICT GUILTY** |
| | *Count 3: Tampering with evidence* |
| 10/11/2013 | **TAP: JURY TRIAL** |
| | *Courtroom 1 cd 8:50:52 Jury trial Day 5 10/11/13 Rodriguez/Hartley* |
| 10/11/2013 | **EXHIBIT RECEIPT** |
| | *(recv'd 10/29/13)* |
| 10/23/2013 | **ORD: PRE-SENTENCE REPORT** (Judicial Officer: Hartley, Teddy L. ) |
| 11/08/2013 | **ORD: TO QUASH (NON-WARRANT)** (Judicial Officer: Hartley, Teddy L. ) |
| | *Bench warrant issued for witness 10/07/13 is quashed* |
| 11/08/2013 | **WAR: ORDER QUASHING WARRANT** |

| | |
|---|---|
| 12/09/2013 | REQUEST FOR HEARING/ SETTING |
| 12/10/2013 | NTC: Hearing (Sentencing) |
| | *Jan 8, 2014 @ 10:00 am Hartley* |
| 12/12/2013 | ORD: TO SHOW CAUSE |
| 12/30/2013 | ORD: TO TRANSPORT |
| 01/06/2014 | ORD: TO TRANSPORT |
| | *Judge Hartley* |
| 01/08/2014 | **Sentencing Hearing** (10:00 AM) (Judicial Officer Hartley, Teddy L.) |
| | Parties Present |
| | Result: Held |
| 01/08/2014 | TAP: SENTENCE |
| | *Courtroom 1 - 1/8/14 at 10:05:02am - Sentencing - Hartley/Hill* |
| 01/08/2014 | CLS: JUDGMENT/ SENTENCE/ COMMITMENT (Judicial Officer: Judge, Division III ) |
| | *2nd Judgement due to remand from Supreme Court (Judge Hartley)* |
| 02/07/2014 | NTC: OF APPEAL TO COURT OF APPEALS/ SUPREME COURT |
| 03/03/2014 | ORD: FOR FREE PROCESS |
| 03/12/2014 | DOCKETING STATEMENT / COURT OF APPEALS |
| 03/18/2014 | CERTIFICATE |
| | *Clerk's* |
| 03/21/2014 | APPEAL GENERAL CALENDAR |
| 04/14/2014 | EXHIBIT DESIGNATION |
| 09/17/2014 | ORD: ORDER |
| | *Supreme Court Order to forward exhibits to Supreme Court* |
| 09/17/2014 | AFFIDAVIT |
| 09/22/2014 | CERTIFICATE/ PROOF OF MAILING |
| 12/09/2014 | MTN: MOTION |
| | *to Supplement the Record with a Transcript of Proceedings Occuring in Chambers on October 10, 2013 and for a 30-day Extension of Time to File Answer Brief* |
| 12/09/2014 | ORD: ORDER |
| | *to Supplement the Record with a Transcript of Proceedings Occuring in Chambers on October 10, 2013 and for a 30-day Extension of Time to File Answer Brief* |
| 12/10/2014 | CERTIFICATE/ PROOF OF MAILING |
| | *Supplement Record of CD/Tape Logs sent 12/10/14* |
| 04/15/2015 | ORD: ORDER DENYING |
| | *Petition for writ of certiorari is denied* |
| 01/18/2017 | MANDATE/AFFIRMED |
| | *Dec 1, 2016, a decision was issued affirming Defendant's conviction* |
| 03/22/2017 | RPN: HABEAS CORPUS PETITION |
| | *Petition for Writ of Habeas Corpus* |
| 04/25/2017 | PETITION (NON-OPENING) |
| | *Petition for writ of Habeas Corpus* |
| 05/31/2017 | CLS: ORDER, APPLICATION, PETITION OR MOTION DENIED (Judicial Officer: Tatum, Drew D. ) |
| | *Court finds that Petitioner is not entitled to relief as a matter of law in this regard* |
| 06/20/2017 | RPN: HABEAS CORPUS PETITION |
| | *Petition for Writ of Habeas Corpus* |
| 07/17/2017 | PETITION (NON-OPENING) |
| | *Petition for writ of Habeas Corpus* |
| 07/27/2017 | ORD: APPOINTING ATTORNEY (Judicial Officer: Tatum, Drew D. ) |
| | *Public Defender appt.* |
| 08/15/2017 | NCJ: DISPOSITION ORDER |
| | *Supreme Court Order: Petition for Writ of Certiorari is denied* |
| 08/21/2017 | ENTRY OF APPEARANCE |
| 10/23/2017 | ORD: DISTRICT COURT EXTENSION GRANTED (Judicial Officer: Tatum, Drew D. ) |
| | *Petitioner is allowed an additional 90 days from the filing of this Order for the preperation of an Amended Petition for Writ of Habeas* |
| 01/19/2018 | ORD: DISTRICT COURT EXTENSION GRANTED (Judicial Officer: Tatum, Drew D. ) |
| | *Petitioner is allowed an additional 90 days for preparation of an Amended Petition* |
| 04/13/2018 | MTN: MOTION/ PETITION TO EXTEND TIME |
| | *to file Habeas Corpus* |
| 04/13/2018 | ENTRY OF APPEARANCE |
| | *by Liane Kerr* |
| 04/17/2018 | ORD: DISTRICT COURT EXTENSION GRANTED (Judicial Officer: Tatum, Drew D. ) |
| | *30 day extention is granted* |
| 05/18/2018 | AMENDED/MODIFIED |
| | *Petition for Writ of Habeas Corpus* |
| 06/15/2018 | ORD: ORDER (Judicial Officer: Tatum, Drew D. ) |
| | *Notice that the Court is Not Dismissing any Portion of the Amended Petition at this Time and Order for State to Respond to Amended Petition for Writ of Habeas Corpus* |
| 09/10/2018 | RESPONSE |
| | *to Defendant's Amended Petition for Writ of Habeas Corpus* |
| 09/28/2018 | NTC: HEARING |
| | *Preliminary Hearing on Writ of Habeas Corpus 10-29-18 at 2:30pm - Tatum* |
| 10/29/2018 | **Preliminary Hearing** (2:30 PM) (Judicial Officer Tatum, Drew D.) |
| | *Def appear tele* |
| | Parties Present |
| | Result: Held |
| 10/29/2018 | AUDIO LOG NOTES |
| | *Courtroom 1 - 10-29-18 at 2:32:51pm - Preliminary Hearing - Tatum/Casaus* |
| 12/14/2018 | CLS: ORDER, APPLICATION, PETITION OR MOTION DENIED (Judicial Officer: Tatum, Drew D. ) |
| | *Petitioner's petition for writ of habeas corpus is denied* |
| 02/13/2019 | ORD: ORDER DENYING (Judicial Officer: Nakamura, Judith K. ) |
| | *Petition for writ of certiorari is denied* |
| 06/24/2019 | RPN: HABEAS CORPUS PETITION |
| 07/31/2019 | NTC: NOTICE |
| | *of 5-802(G)(1) initial review* |

| 08/12/2019 | **CLS: ORDER, APPLICATION, PETITION OR MOTION DENIED** (Judicial Officer: Tatum, Drew D. ) |
| | *Writ of Habeas is dismissed* |
| 08/18/2020 | **RPN: HABEAS CORPUS PETITION** |
| | *Amended Petition* |
| 09/24/2020 | **NTC: NOTICE** |
| | *of 5-802(H)(1) pre-appointment review* |
| 09/24/2020 | **MTN: MOTION** |
| | *to expand record* |
| 10/05/2020 | **CLS: ORDER WRIT OF HABEAS CORPUS** (Judicial Officer: Tatum, Drew D. ) |
| | *Order of Summary Dismissal and Order Denying Motion to Expand Record* |
| 12/27/2022 | **RPN: HABEAS CORPUS PETITION** |
| | *Motion to amend Habeas Corpus petition* |
| 12/27/2022 | **MTN: MOTION TO AMEND/ MODIFY** |
| | *(Second Motion mailed - not exact copies)* |
| 01/09/2023 | **PETITION (NON-OPENING)** |
| | *3rd Habeas Corpus petition (Supplemental)* |
| 02/08/2023 | **NTC: NOTICE** |
| | *of Rule 5-802(H)(1) NMRA Pre-Appointment Review* |
| 02/10/2023 | **CLS: ORDER WRIT OF HABEAS CORPUS** (Judicial Officer: Tatum, Drew D. ) |
| | *Decision and Order of Summary Dismissal* |
| 07/06/2023 | **RPN: HABEAS CORPUS PETITION** |
| 08/21/2023 | **NTC: NOTICE** |
| | *of 5-802(H)(1) Pre-Appointment review* |
| 08/28/2023 | **CLS: ORDER, APPLICATION, PETITION OR MOTION DENIED** (Judicial Officer: Tatum, Drew D. ) |
| | *Decision and Order of Summary Dismissal and Order Denying Petitioner's Moiton to Expand Record* |

Skip to Main Content  Logout  My Account  Search Menu  Search  Refine Search  Back                    Location : All Courts   Images

# REGISTER OF ACTIONS
## CASE NO. S-1-SC-34576

| STATE V RAMIREZ | § § § § § | Case Type: | **Criminal - Capital Appeal** |
|---|---|---|---|
| | | Date Filed: | **03/07/2014** |
| | | Location: | |

---

### RELATED CASE INFORMATION

**Related Cases**
  D-905-CR-2007-00434 (Appealed - District Court)

---

### PARTY INFORMATION

| | | **Attorneys** |
|---|---|---|
| **Defendant - Appellant** | **RAMIREZ, ALBERT JOSE**  *Prisoner ID*  **69597** | **Steven James Forsberg** |
| | #69597 | *Retained* |
| | P.O. BOX 639 | 505-796-4405(W) |
| | LAS CRUCES, NM 88004 | |
| | | |
| **Plaintiff - Appellee** | **STATE OF NEW MEXICO** | **Yvonne Marie Chicoine** |
| | | *Retained* |
| | | (505) 235-6155(W) |
| | | |
| | | **Jane A. Bernstein** |
| | | *Retained* |
| | | (505) 717-3500(W) |

---

### EVENTS & ORDERS OF THE COURT

| | |
|---|---|
| | **DISPOSITIONS** |
| 12/01/2016 | **Decision - Affirm** |
| | |
| | **OTHER EVENTS AND HEARINGS** |
| 03/07/2014 | **FN: Free Process** |
| 03/07/2014 | **OPN: Statement of Issues** |
| | *CERTIFICATE OF MAILING* |
| | *APPEAL FROM THE DISTRICT COURT* |
| | *CURRY COUNTY - (CR-07-434)* |
| | *JUDGMENT, SENTENCE AND COMMITMENT - 1/8/14* |
| | *NOTICE OF APPEAL 2/7/14* |
| | *TEDDY L. HARTLEY, DJ* |
| 03/19/2014 | **Record Proper Filed** |
| | *TRANSCRIPT OF RECORD PROPER (2 VOLS.)* |
| 03/19/2014 | **NTC: General Calendar Assignment** |
| 04/14/2014 | **Audio Transcript Filed** |
| | *3 CD'S (ORIG. + 2 COPIES - 2 CD'S PER SET)* |
| 04/14/2014 | **NTC: Transcript Filed** |
| 04/14/2014 | **NTC: Notice** |
| | *DESIGNATION OF EXHIBITS FILED IN DISTRICT COURT* |
| 07/01/2014 | **Sealed Pleading** |
| | *1 SMALL ENV (JURY TRIAL JUDGE'S NOTES)* |
| 07/01/2014 | **NTC: Notice** |
| | *NOTICE OF SEALED PLEADING* |
| 08/12/2014 | **Brief In Chief** |
| | *HAND DELIVERY* |
| 08/26/2014 | **MTN: Motion to Supplement the Record on Appeal** |
| | *HAND DELIVERY* |
| | *MTN TO SUPPLEMENT THE RECORD WITH EXHIBITS AS* |
| | *DESCRIBED IN THE MTN* |
| 08/27/2014 | **ORD: Order Requesting Exhibits** |
| | |
| | *MOTION TO SUPPLEMENT RECORD WITH EXHIBITS GRANTED.* |
| | *DISTRICT COURT CLERK TO FORWARD STATE'S EXHIBITS 1-110* |
| | *AND ANY EXHIBITS OFFERED OR ADMITTED AT 9/15/08 HEARING OR* |
| | *ASSOCIATED WITH ORDER FILED 3/1/13 IF MADE PART OF RECORD* |
| | |
| | *DISTRICT COURT CLERK ALSO TO CLARIFY WHETHER PAGES 255-264* |
| | *ARE MISSING FROM RECORD PROPER OR JUST A NUMBERING ERROR* |
| 09/19/2014 | **Affidavit** |
| | *AFFIDAVIT FROM DC HEREBY CERTIFY THAT THERE ARE NO* |
| | *MISSING PAGES IN RECORD PROPER* |

EXHIBIT

DS2
_____

| | |
|---|---|
| 09/26/2014 | **Exhibits Filed**<br>*1 LARGE ENV CONTAINS*<br><br>*EXHIBITS 1 THROUGH 30*<br>*EXHIBIT 35*<br>*EXHIBITS 56 THROUGH 60*<br>*EXHIBITS 68 THROUGH 71*<br>*EXHIBITS 73 THROUGH 84*<br>*EXHIBITS 87 THROUGH 101*<br>*EXHIBIT 105*<br>*EXHIBITS 107 THROUGH 110*<br><br>*EXHIBIT 1 SEPTEMBER 15, 2008 COMPETENCY REPORT* |
| 10/07/2014 | **NTC: Exhibits Filed** |
| 12/01/2014 | **MTN: Motion to Supplement the Record on Appeal**<br>*HAND DELIVERY*<br>*MTN TO SUPPLEMENT THE RECORD WITH TRANSCRIPT OF PROCEEDINGS*<br>*DATED 10/10/13 AND*<br>*MTN TO EXT ANSWER BRIEF TO 1/9/15* |
| 12/08/2014 | **ORD: Order Granting Motion**<br>*MOTION TO SUPPLEMENT RECORD WITH TRANSCRIPT OF IN-CHAMBERS*<br>*PROCEEDINGS ON OCTOBER 10, 2013, IS GRANTED, AND TIME*<br>*FOR FILING ANSWER BRIEF IS EXTENDED TO JANUARY 9, 2015.* |
| 12/15/2014 | **Audio Transcript Filed**<br>*3 CD'S - (ORIG. + 2 COPIES - 1 CD PER SET)*<br>*SUPPLEMENTAL RECORD PROPER - 10/10/13* |
| 12/15/2014 | **NTC: Transcript Filed** |
| 01/09/2015 | **Answer Brief**<br>*HAND DELIVERY* |
| 01/09/2015 | **MTN: Request for Oral Argument**<br>*HAND DELIVERY*<br>*(APPELLEE)* |
| 01/20/2015 | **Reply Brief**<br>*HAND DELIVERY* |
| 01/22/2015 | **NTC: Case Submitted to Oral Argument/Briefs Only Calendar**<br>*ORAL ARGUMENT SET FOR WEDNESDAY FEBRUARY 25TH AT 9:00 AM* |
| 12/01/2016 | **Majority - Author** (Judicial Officer: Maes, Justice Petra Jimenez ) |
| 12/01/2016 | **Majority - Participant** (Judicial Officer: Daniels, Chief Justice Charles W. ) |
| 12/01/2016 | **Majority - Participant** (Judicial Officer: Chavez, Justice Edward L. ) |
| 12/01/2016 | **Majority - Participant** (Judicial Officer: Vigil, Justice Barbara J. ) |
| 12/01/2016 | **Majority - Participant** (Judicial Officer: Nakamura, Justice Judith K. ) |
| 01/11/2017 | **CLS: Mandate** |
| 09/07/2022 | **Entry of Appearance** |

Skip to Main Content  Logout  My Account  Search Menu  Search  Refine Search  Back                    Location : All Courts    Images

# REGISTER OF ACTIONS

## CASE NO. S-1-SC-36599

| Ramirez v. Franco | § | Case Type: | **Rule 12-501 Certiorari Proceeding - Habeas Corpus** |
|---|---|---|---|
| | § | Date Filed: | **06/27/2017** |
| | § | Location: | |
| | § | | |
| | § | | |

---

### RELATED CASE INFORMATION

**Related Cases**
D-905-CR-2007-00434 (Appealed - District Court)
D-506-CV-2024-01141 (Same Party)

---

### PARTY INFORMATION

| | | | | Attorneys |
|---|---|---|---|---|
| **Petitioner** | **Ramirez, Albert J.  *Prisoner ID*  #69597** | | Male Unavailable | **Pro Se** |
| | #69597 | | | |
| | P.O. Box1059 | | | |
| | Santa Fe, NM 87504 | | | |
| | DL: NM505115058 | | | |
| | | | | |
| **Respondent** | **FRANCO, GERMAN** | | Male | **Martha Anne Kelly** |
| | | | | *Retained* |
| | 224 MULE DEER DRIVE | | | 505-250-3302(W) |
| | LAS CRUCES, NM 88005 | | | |
| | DL: NM054664630 | | | |
| | | | | Hector H. Balderas |
| | | | | *Retained* |
| | | | | 505-490-4824(W) |

---

### EVENTS & ORDERS OF THE COURT

| | |
|---|---|
| | **DISPOSITIONS** |
| 08/11/2017 | **Order - Denied** |
| | |
| | **OTHER EVENTS AND HEARINGS** |
| 06/27/2017 | **OPN: Petition** |
| 06/27/2017 | **Exhibits Filed** |
| | *Attached to Petition* |
| 06/27/2017 | **District Court Order Denying Habeas Corpus** |
| 08/11/2017 | **CLS: Order Denying Petition** |

---

### FINANCIAL INFORMATION

| | | |
|---|---|---|
| | **Petitioner** Ramirez, Albert J. | |
| | Total Financial Assessment | 125.00 |
| | Total Payments and Credits | 125.00 |
| | **Balance Due as of 12/06/2024** | **0.00** |
| | | |
| 08/08/2017 | Transaction Assessment | 125.00 |
| 08/08/2017 | Indigency | (125.00) |

---

## EXHIBIT

### DS3

_____

# REGISTER OF ACTIONS

## CASE NO. S-1-SC-37501

| | | |
|---|---|---|
| **Ramirez v. Gay** | §<br>§<br>§<br>§<br>§ | Case Type: **Rule 12-501 Certiorari Proceeding - Habeas Corpus**<br>Date Filed: **01/28/2019**<br>Location: |

---

### RELATED CASE INFORMATION

**Related Cases**
  D-905-CR-2007-00434 (Appealed - District Court)
  D-506-CV-2024-01141 (Same Party)

---

### PARTY INFORMATION

| | | | |
|---|---|---|---|
| **Petitioner** | **Ramirez, Albert J.  *Prisoner ID*  #69597**<br>#69597<br>P.O. Box 1059<br>Santa Fe, NM 87504<br>DL: NM505115058 | Male Unavailable<br>███████████████ | **Attorneys**<br>**Pro Se** |
| **Respondent** | **GAY, JOHN** | | **Martha Anne Kelly**<br>*Retained*<br>505-250-3302(W)<br><br>**Hector H. Balderas**<br>*Retained*<br>505-490-4824(W) |

---

### EVENTS & ORDERS OF THE COURT

| | |
|---|---|
| | **DISPOSITIONS** |
| 02/05/2019 | **Order - Denied** |
| | **OTHER EVENTS AND HEARINGS** |
| 01/28/2019 | **OPN: Petition** |
| 01/28/2019 | **District Court Order Denying Habeas Corpus** |
| 01/28/2019 | **Exhibits Filed** |
| 02/05/2019 | **CLS: Order Denying Petition** |

---

### FINANCIAL INFORMATION

| | | |
|---|---|---|
| | **Petitioner** Ramirez, Albert J. | |
| | Total Financial Assessment | 125.00 |
| | Total Payments and Credits | 125.00 |
| | **Balance Due as of 12/06/2024** | **0.00** |
| 01/29/2019 | Transaction Assessment | 125.00 |
| 01/29/2019 | Indigency | (125.00) |

---

**EXHIBIT**

DS4

Skip to Main Content  Logout  My Account  Search Menu  Search  Refine Search  Back

Location : All Courts   Images

# REGISTER OF ACTIONS
## CASE NO. S-1-SC-37887

| Ramirez v. Santistevan | §<br>§<br>§<br>§<br>§ | Case Type:<br>Date Filed:<br>Location: | **Rule 12-501 Certiorari**<br>**Proceeding - Habeas Corpus**<br>**09/03/2019** |

---

### RELATED CASE INFORMATION

**Related Cases**
D-905-CR-2007-00434 (Appealed - District Court)
D-506-CV-2024-01141 (Same Party)

---

### PARTY INFORMATION

| | | | Attorneys |
|---|---|---|---|
| Petitioner | Ramirez, Albert J.  *Prisoner ID*  #69597<br>#69597<br>6900 W. Millen Drive<br>Hobbs, NM 88244<br>DL: NM505115058 | Male Unavailable<br>████████████<br>██████ | **Pro Se** |
| Respondent | **SANTISTEVAN, DWAYNE** | | **Martha Anne Kelly**<br>*Retained*<br>505-250-3302(W)<br><br>**Hector H. Balderas**<br>*Retained*<br>505-490-4824(W) |

---

### EVENTS & ORDERS OF THE COURT

| | |
|---|---|
| | **DISPOSITIONS** |
| 09/13/2019 | **Order - Denied** |
| | **OTHER EVENTS AND HEARINGS** |
| 09/03/2019 | **OPN: Petition** |
| 09/03/2019 | **District Court Order Denying Habeas Corpus** |
| 09/03/2019 | **Exhibits Filed** |
| | *Attached to Petition* |
| 09/13/2019 | **CLS: Order Denying Petition** |

---

### FINANCIAL INFORMATION

| | | |
|---|---|---|
| | **Petitioner** Ramirez, Albert J. | |
| | Total Financial Assessment | 125.00 |
| | Total Payments and Credits | 125.00 |
| | **Balance Due as of 12/06/2024** | **0.00** |
| 09/05/2019 | Transaction Assessment | 125.00 |
| 09/05/2019 | Indigency | (125.00) |

**EXHIBIT**

DS5

Skip to Main Content   Logout   My Account   Search Menu   Search   Refine Search   Back       Location : All Courts   Images

# REGISTER OF ACTIONS

## CASE NO. S-1-SC-38539

| Ramirez v. Martinez | § | | |
| | § | Case Type: | **Rule 12-501 Certiorari** |
| | § | | **Proceeding - Habeas Corpus** |
| | § | Date Filed: | **10/26/2020** |
| | § | Location: | |

---

### RELATED CASE INFORMATION

**Related Cases**
D-905-CR-2007-00434 (Habeas - Appealed)
D-506-CV-2024-01141 (Same Party)

---

### PARTY INFORMATION

| | | | **Attorneys** |
|---|---|---|---|
| **Petitioner** | **Ramirez, Alberto** *Prisoner ID* **#69597** *Also Known As* **Ramirez, Albert** *Also Known As* **Ramirez, Albert J.** *Also Known As* **Ramirez, Albert Jose** *Also Known As* **Ramirez, Alberto Jose** #69597 P.O. Box 1059 Santa Fe, NM 87502-1059 DL: NM505115058 | Male Unavailable ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇ | **Pro Se** |
| **Respondent** | **MARTINEZ, LEON** | | John Kloss *Retained* 505-379-4611(W) |
| | | | Hector H. Balderas *Retained* 505-490-4824(W) |
| | | | ~~Martha Anne Kelly~~ *~~Retained~~* ~~505-250-3302(W)~~ |

---

### EVENTS & ORDERS OF THE COURT

**DISPOSITIONS**

| 04/27/2021 | **Order - Denied** |
|---|---|

**OTHER EVENTS AND HEARINGS**

| 10/26/2020 | **OPN: Petition** |
|---|---|
| 10/26/2020 | **District Court Order Denying Habeas Corpus** |
| 10/26/2020 | **Exhibits Filed** |
| | *attached to petition* |
| 11/04/2020 | **Supplemental Pleading** |
| 11/16/2020 | **Supplemental Pleading** |
| 11/20/2020 | **Correspondence** |
| 01/04/2021 | **Correspondence** |
| 04/07/2021 | **Correspondence** |
| 04/27/2021 | **CLS: Order Denying Petition** |

---

### FINANCIAL INFORMATION

| | **Petitioner** Ramirez, Alberto | |
|---|---|---|
| | Total Financial Assessment | 125.00 |
| | Total Payments and Credits | 125.00 |
| | **Balance Due as of 12/06/2024** | **0.00** |
| 10/26/2020 | Transaction Assessment | 125.00 |
| 10/26/2020 | Indigency | (125.00) |

**EXHIBIT**

DS6

# REGISTER OF ACTIONS

## CASE NO. S-1-SC-40134

| | | | |
|---|---|---|---|
| **Ramirez v. Vigil Richards** | | § § § § § | Case Type: **Rule 12-501 Certiorari Proceeding - Habeas Corpus** <br> Date Filed: **10/05/2023** <br> Location: |

---

### RELATED CASE INFORMATION

**Related Cases**
  D-905-CR-2007-00434 (Appealed - District Court)
  D-506-CV-2024-01141 (Same Party)

---

### PARTY INFORMATION

| | | | |
|---|---|---|---|
| **Petitioner** | **Ramirez, Alberto Jose** *Prisoner ID* **#459692** <br> P.O. Box 639 <br> Las Cruces, NM 88004 <br> DL: NM505115058 | Male Unavailable <br> ████████████ <br> ████████ | **Attorneys** <br> **Pro Se** |
| **Respondent** | **Vigil Richards, Jessica** | | **Aletheia Vadin Pamela Allen** <br> *Retained* <br> 505-527-2776(W) |

---

### EVENTS & ORDERS OF THE COURT

| | |
|---|---|
| | **DISPOSITIONS** |
| 11/20/2023 | **Order - Denied** |
| | **OTHER EVENTS AND HEARINGS** |
| 09/22/2023 | **OPN: Motion for Extension of Time to File Petition** |
| 09/28/2023 | **Non-Opening Pleading** |
| | *12-501 Petition* |
| 09/28/2023 | **District Court Order Denying Habeas Corpus** |
| 09/28/2023 | **Exhibits Filed** |
| | *attached to the Petition* |
| 10/05/2023 | **ORD: Order Granting Motion** |
| | *to accept petition* |
| 10/12/2023 | **Miscellaneous Pleading** |
| 10/19/2023 | **Notice of Change of Address** |
| | *P.O. Box 639, Las Cruces, NM 88004* |
| 11/20/2023 | **CLS: Order Denying Petition** |

---

### FINANCIAL INFORMATION

| | | |
|---|---|---|
| | **Petitioner** Ramirez, Alberto Jose | |
| | Total Financial Assessment | 125.00 |
| | Total Payments and Credits | 125.00 |
| | **Balance Due as of 12/06/2024** | **0.00** |
| 10/05/2023 | Transaction Assessment | 125.00 |
| 10/05/2023 | Indigency | (125.00) |

**EXHIBIT**

DS7