IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| ALBERTO JOSE RAMIREZ, § | |
|    Petitioner, § | |
| § | |
| vs. § | CAUSE NO. 23-CV-1075-MV-DLM |
| § | |
| ATTORNEY GENERAL OF THE § | |
| STATE OF NEW MEXICO, § | |
|    Defendant. § | |

## PETITIONER'S REPLY TO ATTORNEY GENERAL'S ANSWER

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

      Comes now Petitioner Alberto Jose Ramirez submits this Reply to the Attorney General's Answer pursuant to the Court's Order to Answer. Respondent urges the Court to dismiss the petition as untimely under 28 U.S.C. § 2244(d), to deny equitable tolling, to reject Petitioner's actual-innocence gateway showing, and to uphold the state courts' rejection of Petitioner's constitutional claims. The Exhibits (as used herein, "Exhibits" refers to those attached to the Response) and governing law compel a different conclusion.

      The record before this Court—including the extensive forensic evidence, competency-hearing transcripts, and trial-phase observations reproduced in the Exhibits—establishes that Petitioner suffered from chronic, severe psychosis throughout the relevant AEDPA period. This includes a formal adjudication of incompetence, institutionalization for treatment, diagnoses of schizophrenia and schizoaffective disorder, and repeated manifestations of hallucinations, disorganized thinking, paranoia, and impaired cognition. These profound impairments prevented Petitioner from meaningfully pursuing habeas relief and satisfy the equitable-tolling standard set forth in *Holland v. Florida*, 560 U.S. 631 (2010), and its Tenth Circuit progeny. Alternatively, Petitioner has demonstrated actual innocence under *Schlup v. Delo*, 513 U.S. 298 (1995), and

*McQuiggin v. Perkins*, 569 U.S. 383 (2013), through new, reliable psychiatric evidence—never presented to the jury—that fundamentally undermines the *mens rea* element of first-degree murder.

On the merits, Petitioner's claims reveal multiple, compounding constitutional violations. Trial counsel failed to present the only available expert mental-health evaluation capable of rebutting the State's theory of deliberate, premeditated killing. The jury heard an impermissible comment on Petitioner's post-arrest silence in violation of *Doyle v. Ohio*, 426 U.S. 610 (1976). Jurors also witnessed Petitioner fall while shackled, contrary to *Deck v. Missouri*, 544 U.S. 622 (2005), without any judicial findings or curative measures. These errors, individually and cumulatively, deprived Petitioner of a fair trial.

For these reasons, and as set forth more fully below, the Court should reject Respondent's timeliness defense and reach the merits of Petitioner's constitutional claims, and grant relief.

## I. The Exhibits Demonstrate Continuous, Severe Mental-Health Impairment Throughout the AEDPA Limitation Period

Under 28 U.S.C. § 2244(d), the statute of limitations is subject to equitable tolling when a petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010). Mental illness can constitute such an "extraordinary circumstance" when it renders a prisoner incapable of timely pursuing federal habeas relief. The Tenth Circuit has articulated that tolling may be appropriate where there is a "severe or profound mental impairment, such as that resulting in institutionalization or adjudged mental incompetence," and where the impairment is the but-for cause of the late filing. *Del Rantz v. Hartley*, 577 F. App'x 805, 810 (10th Cir. 2014); *United States v. Barger*, 784 F. App'x 605, 607 (10th Cir. 2019). At

the same time, *Holland* cautions against rigid rules that defeat equity, requiring a flexible, case-specific analysis. 560 U.S. at 649–50.

Here, the state-court record and federal Exhibits satisfy even the Tenth Circuit's exceptionally demanding standard. The Exhibits establish: (1) formal adjudications of incompetence and institutionalization for treatment; (2) a chronic psychotic illness, repeatedly documented by forensic specialists; and (3) persistent symptoms—hallucinations, disorganized thinking, depersonalization, and severely impaired cognition—throughout the period in which AEDPA's one-year clock was running. The same materials also show that Petitioner's mental condition was not a transient or episodic problem but a chronic psychotic disorder that repeatedly disabled his ability to understand, monitor, or litigate federal habeas rights.

First, the Exhibits document a formal incompetency adjudication and commitment to the New Mexico Behavioral Health Institute in Las Vegas, New Mexico. The April 17, 2008 order found Petitioner "currently incompetent to stand trial" and committed him for treatment. Dr. Maxann Shwartz's forensic neuropsychological evaluation—conducted while Petitioner was in custody and forming the basis of that incompetency determination—diagnosed him with Schizophrenia, Paranoid Type; Schizoaffective Disorder, Bipolar Type; and chronic Posttraumatic Stress Disorder. ECF No. 102-1 at p. 303-05. Her evaluation notes "grossly disorganized behaviors consistent with a psychotic disorder," including disorganized thinking, rambling and nonsensical speech, paranoia, depersonalization, reports of auditory hallucinations, inappropriate affect, loose associations, and "poor reality testing." *Id.* She administered the Mini-Mental Status Examination, on which Petitioner scored 16/30, placing him in the "severely impaired range" and "due to the presence of a functional psychosis." *Id.* at 306. Dr. Shwartz concluded that "because of his current mental state, he was unable to complete a formal

evaluation." *Id*. at 308. These findings are not mere labels; they meet precisely the sort of "severe or profound" impairment the Tenth Circuit has said might justify tolling, and they are anchored in institutionalization and a court's adjudication of incompetence. *Del Rantz*, 577 F. App'x at 81*0*; *Reupert v. Workman*, 45 F. App'x 852, 854 (10th Cir. 2002).

Second, the Exhibits show that Petitioner's illness was chronic and disabling, not an isolated episode that later resolved. ECF No. 102-1 at p. 303-08. Dr. Shwartz's behavioral observations describe a 19-year-old who could not perform even simple, goal-directed tasks, maintained minimal eye contact, and experienced uncontrollable crying and shaking throughout the evaluation. She needed to use food from McDonald's as a reinforcer "to calm him down." *Id*. Even then, Petitioner could only intermittently answer questions; "the majority of his responses" were "I don't know" or "that's all I know," after which he would again become hysterical. *Id*.

Third, subsequent state-court proceedings and the trial transcripts show that Petitioner's profound psychosis did not abate. After the court vacated his initial guilty plea, it again referred Petitioner for evaluation at NMBHI in 2011–12, and the parties ultimately stipulated to competency in 2013 for retrial only after further forensic treatment and a new report. ECF No. 102-1 at p. 514. Even then, the trial record shows that during the October 2013 jury trial Petitioner repeatedly decompensated in open court. Mid-trial, defense counsel advised the court that Petitioner "did not understand" the proceedings, "did not know how to behave," and "was not capable" of assisting in his defense, expressly invoking his prior incompetency history. *Id.* at 83-89. Petitioner himself then made a rambling statement describing hearing voices, suffering from "psychosomatic delusions," believing he was disabled from the neck down, and reporting that he was "chronically depressed." *Id*. The trial judge acknowledged that Petitioner's behavior was so extreme that he had "never seen a defendant act the way Mr. Ramirez was acting," even

as he characterized the behavior as malingering. *Id.* at 102. That combination—undisputedly bizarre, psychotic behavior on the record, discounted as "malingering"—corroborates the diagnosis of psychosis and dissociation that Dr. Shwartz had rendered years earlier.

Fourth, the federal docket that Respondent cites does not undermine, but rather underscores, the conclusion that Petitioner's mental condition rendered him incapable of managing habeas litigation. Judge Vázquez's November 2024 order directing an Answer recognized that Petitioner had filed "numerous documents" seeking tolling based on placement in mental health wards for mental health treatment and appointment of a mental health treatment guardian. ECF No. 60. Respondent's Answer similarly acknowledges that Petitioner has been under a treatment-guardian order and has spent extended periods housed in mental-health units. Those facts align with the original forensic finding of chronic psychotic illness and with the trial-phase observations of hallucinations and disorganized thought. They differ sharply from cases like *Alvarado v. Smith*, 713 F. App'x 739 (10th Cir. 2017), where the Tenth Circuit denied tolling despite extensive diagnoses in part because the petitioner "had not been judged incompetent" and was not institutionalized during the limitations period. Id. at 742–43. Here, by contrast, Petitioner has both an incompetency adjudication and chronic institutional treatment.

Fifth, the record demonstrates that Petitioner's psychosis was the but-for cause of his failure to meet the AEDPA deadline. During the period when the one-year clock was running, Petitioner was: (1) a chronic inpatient or mental-health prisoner with a documented psychotic disorder; (2) experiencing hallucinations and disorganized thinking, as reflected in his trial transcript; and (3) under a treatment-guardian order and repeatedly placed in mental-health wards, impairing his ability to access the law library, maintain legal materials, or communicate coherently with counsel. Nothing in the record suggests that he enjoyed any sustained period of

cognitive stability during which he could realistically research AEDPA, track the intricate interplay between direct appeal, state post-conviction filings, and federal tolling, and then prepare and file a coherent § 2254 petition. Rather, the "lucid" moments that the State points to—such as sporadic, often incoherent pro se pleadings many years after conviction—are fully consistent with a severely mentally ill prisoner whose psychosis occasionally permits bursts of disorganized litigation, but not sustained, timely pursuit of federal remedies.

Finally, *Holland* makes clear that equitable tolling cannot be cabined by categorical rules hostile to entire classes of petitioners. 560 U.S. at 649–50. Here, Petitioner satisfies both the Supreme Court's flexible equitable-tolling framework and the Tenth Circuit's more restrictive gloss.

## II. Petitioner Satisfies the Actual-Innocence Gateway: The Exhibits Contain New, Previously Unheard Expert Evidence That Satisfies the *Schlup* Actual-Innocence Standard

A credible actual-innocence gateway claim requires a showing that, in light of "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—no reasonable juror would have found the petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). This standard "does not require absolute certainty about the petitioner's guilt or innocence," but requires the petitioner to demonstrate that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty." *House v. Bell*, 547 U.S. 518, 538 (2006). The Supreme Court has held that this gateway applies not only to procedural default but also to the AEDPA statute of limitations. *McQuiggin v. Perkins*, 569 U.S. 383, 386–87 (2013). The determination is holistic: a court must consider "all the evidence, old and new, incriminating and exculpatory." *House*, 547

U.S. at 538. Under that standard, the new expert evidence contained in the Exhibits—never presented to Petitioner's jury—establishes a compelling Schlup claim.

Dr. Maxann Shwartz's forensic neuropsychological evaluation constitutes precisely the kind of "new reliable evidence" contemplated by *Schlup*. Her report was not presented at trial; the jury never heard her findings, her diagnoses, or her professional conclusions regarding Petitioner's mental state at the time of the offense. As the Exhibits demonstrate, Dr. Shwartz diagnosed Petitioner with Schizophrenia, Paranoid Type; Schizoaffective Disorder, Bipolar Type; and chronic Posttraumatic Stress Disorder. ECF No. 102-1 at p. 238. Her detailed behavioral observations describe a young man exhibiting "grossly disorganized behaviors consistent with a psychotic disorder," including disorganized thinking, rambling and nonsensical speech, depersonalization, paranoia, reports of auditory hallucinations, loose associations, inappropriate affect, and poor reality testing. *Id.* at 305. She further documented that Petitioner scored 16 out of 30 on the Mini-Mental Status Examination—falling within the "severely impaired" range—due to "functional psychosis." *Id.* at 306. She concluded unequivocally that Petitioner was too psychiatrically disorganized to complete a formal evaluation. *Id.* at 306. None of this evidence reached the jury.

The governing question under *Schlup* and *McQuiggin* is not whether the evidence existed somewhere in the state's or defense's files, but whether the jury heard it. See *Griffin v. Johnson, 350 F.3d 956, 963–64 (9th Cir. 2003)* (holding evidence is "new" if it was not presented to the jury, even if available earlier). The record is unambiguous: Dr. Shwartz did not testify at all during the 2013 trial. Her report was not offered, her diagnoses were not disclosed, and the jurors were left with no professional psychiatric evidence explaining Petitioner's mental state at the time of the offense. Under *Schlup*, therefore, her evaluation is "new."

The evidence is not "irrelevant" to guilt. New psychological evidence can establish actual innocence when it bears directly on the capacity to form the *mens rea* required for the offense. The Supreme Court in *House* endorsed the use of scientific evidence to undermine confidence in the verdict. Under New Mexico law, first-degree murder requires proof of a "willful, deliberate and premeditated killing." NMSA 1978, § 30-2-1(A)(1). A defendant experiencing hallucinations, paranoia, and disorganized thinking—hallmarks of psychosis—cannot form such deliberation. The omitted psychiatric evidence therefore goes to the core of the *mens rea* element.

Petitioner's psychosis was not confined to the period of Dr. Shwartz's evaluation but persisted through the date of the offense and beyond. Trial transcripts show Petitioner experiencing hallucinations, disorganized thought, and delusional beliefs during the 2013 proceedings. For example, he told the trial court he "heard voices," believed he suffered from psychosomatic conditions that rendered him disabled, and struggled to understand the proceedings. ECF No. 102-1 at p. 514-515. Defense counsel repeatedly advised the court that Petitioner could not understand the trial, did not know how to behave, and could not rationally assist in his defense. *Id*. The trial judge himself remarked that Petitioner was acting in a manner he had "never seen" from a defendant. *Id*. These trial-phase manifestations of psychosis corroborate the reliability of Dr. Shwartz's findings and demonstrate that the omitted evidence was both credible and contemporaneous.

Respondent's argument that the evaluation was "stale" fails under *Schlup*. The Supreme Court has never required that new evidence be temporally proximate to the offense; it must simply bear on the reliability of the verdict. *Schlup*, 513 U.S. at 324. Because the Exhibits show

that Petitioner's psychosis manifested at the time of the offense, persisted through forensic evaluation, and remained active during trial, this evidence is not stale—it is longitudinal.

Finally, the Exhibits reference a second psychologist, Dr. Richard Fink, whose views were also never presented to the jury. Respondent acknowledges that Dr. Fink believed Petitioner was sexually abused and mentally ill at the time of the offense. ECF No. 102-1 at p. 988. The jury did not hear this corroborating expert testimony, nor did it receive any instruction or guidance concerning the impact of psychosis on Petitioner's ability to form deliberate intent.

In sum, the Exhibits contain new, reliable psychiatric evidence that fundamentally alters the evidentiary landscape. No reasonable juror—presented with evidence of chronic schizophrenia, hallucinations, disorganized thought, paranoia, impaired cognition, and contemporaneous trial-phase psychosis—would conclude beyond a reasonable doubt that Petitioner acted with willfulness, deliberation, and premeditation. Because this evidence was never presented to the jury and bears directly on the *mens rea* element of first-degree murder, Petitioner satisfies the *Schlup* gateway, and the Court must reach the merits of his constitutional claims.

## III. Reply to Merits

 A. *Ineffective Assistance of Counsel for Failing to Present Critical Mental-Health Expert Evidence*

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that counsel's performance was constitutionally deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668 (1984). Counsel performs deficiently when his representation falls below an objective standard of reasonableness, measured under prevailing professional norms. Id. at 688. Prejudice is established when there

exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," meaning a probability sufficient to undermine confidence in the outcome. Id. at 694. The Supreme Court has repeatedly held that counsel's failure to investigate, develop, and present available mental-health evidence may constitute deficient performance where such evidence is central to the defense or the defendant's mental state is in question. *See, e.g.*, Wiggins v. Smith, 539 U.S. 510, 533–34 (2003).

Counsel's failure to present the testimony and findings of Dr. Maxann Shwartz—who diagnosed Petitioner with Schizophrenia, Paranoid Type; Schizoaffective Disorder, Bipolar Type; and chronic Posttraumatic Stress Disorder—was objectively unreasonable under *Strickland*. As the Exhibits show, Dr. Shwartz documented profound psychosis, including auditory hallucinations, disorganized and nonsensical speech, paranoia, depersonalization, inappropriate affect, loose associations, poor reality testing, and an MMSE score reflecting severely impaired cognition. She concluded that Petitioner's mental disorder was so severe that he was "unable to complete a formal evaluation." ECF No. 102-1 at p. 306. This was not marginal or ambiguous evidence: it constituted the only professional, forensic evaluation of Petitioner's mental state near the time of the offense, prepared by an independent expert, grounded in clinical testing, and consistent with Petitioner's chronic psychiatric history. None of this evidence reached the jury.

Counsel's stated reasons for withholding this testimony—namely, the fear that calling Dr. Shwartz would allow the State to call Dr. Burness in rebuttal—do not render the omission reasonable. Strategic decisions are reasonable only insofar as they are a "thorough investigation of law and facts relevant to plausible options." Wiggins, 539 U.S. at 521. Choosing not to present the only available expert evidence bearing directly on the central issue of specific intent cannot be deemed strategic when the alternative was to proceed without any expert testimony at all,

leaving the jury with no basis to understand Petitioner's profound mental illness or its impact on his ability to form "willful, deliberate and premeditated" intent under NMSA § 30-2-1(A)(1). The failure to present mental-health experts constitutes deficient performance.

Moreover, the Exhibits reveal that counsel was aware of the relevance and importance of Dr. Shwartz's testimony. During trial, counsel expressly argued that if the State were permitted to call its rebuttal experts, he would need to call Dr. Shwartz to explain Petitioner's mental state and address accusations of malingering. Counsel therefore understood that Dr. Shwartz's testimony was directly probative of Petitioner's mental condition and credibility. Counsel further acknowledged that the forensic evaluations and mental-health evidence were essential to explaining Petitioner's actions and behavior. Yet despite this recognition, counsel ultimately presented no expert evidence at all, relying instead on lay testimony about Petitioner's mental instability. That is not strategic advocacy—it is constitutionally deficient performance.

The prejudice flowing from this failure is substantial. Without expert testimony, the jury was left with a stark choice between the State's narrative of a calculated, premeditated killing and Petitioner's disorganized, internally inconsistent testimony—testimony that itself reflected the psychotic symptoms documented by Dr. Shwartz. Jurors were never told that Petitioner's disorganized thought, hallucinations, and erratic behavior were symptoms of a chronic psychotic disorder rather than evidence of guilt or fabrication. Nor were they informed that Petitioner's mental illness impaired his ability to recall events, respond coherently to questions, or understand the gravity of his actions. As a result, the jury was deprived of the only expert evidence capable of contextualizing Petitioner's conduct and rebutting the State's theory of deliberation.

A reasonable probability of a different outcome exists when omitted expert evidence would have undermined the mental-state element of the charged offense. Numerous courts have recognized prejudice where mental-health testimony could have altered the jury's assessment of specific intent or culpability. *See, e.g.*, Pavel, 261 F.3d at 223–25 (reasonable probability of lesser conviction had expert testified regarding mental illness). Under New Mexico law, where first-degree murder requires deliberation, expert mental-health evidence that calls that deliberation into question is quintessential mitigating evidence. The omission of such evidence, when it was readily available and would have directly undermined the State's case, satisfies Strickland's prejudice prong.

This prejudice is further magnified by the trial transcript excerpts demonstrating that Petitioner was actively symptomatic during trial. He reported hearing voices, expressed paranoid fears and psychosomatic delusions, and displayed disorganized thinking and emotional dysregulation. These manifestations mirrored the symptoms documented by Dr. Shwartz, providing powerful, independent corroboration of her findings. Had the jury heard expert testimony explaining these symptoms as manifestations of schizophrenia and psychosis, the inference that Petitioner acted with premeditated intent would have been sharply undermined.

In sum, counsel's failure to present Dr. Shwartz's testimony fell far below the standard of reasonable professional assistance and deprived Petitioner of the only available expert evidence capable of refuting the State's theory of deliberate, premeditated killing. Given the centrality of mental state to the charged offense and the compelling nature of the omitted evidence, there is at least a reasonable probability that the outcome would have been different. Accordingly, the state court's rejection of this claim was contrary to, or an unreasonable application of, *Strickland*, and federal habeas relief is warranted.

B. *Deputy Loomis's Comment on Petitioner's Silence Violated Doyle and Constituted Constitutional Error*

Deputy Loomis's testimony that he "tried to interview" Petitioner after his arrest—testimony elicited in the presence of the jury—constituted an unconstitutional comment on Petitioner's post-arrest silence in violation of *Doyle v. Ohio*, 426 U.S. 610 (1976). Under *Doyle*, due process prohibits the State from using a defendant's silence following Miranda warnings to impeach the defendant's exculpatory testimony or otherwise to suggest guilt. *Id*. at 618-19. The rule rests on the fundamental principle that post-Miranda silence is "insolubly ambiguous" and that Miranda warnings implicitly assure the accused that such silence will not be penalized. Id. at 617–18.

The record here shows precisely such an inference. During the State's case-in-chief, Deputy Loomis testified that, after Petitioner's arrest, he "tried to interview him" but then proceeded to search the residence instead. ECF No. 102-1 at p. 77-78. Defense counsel immediately objected, correctly arguing that the testimony impermissibly informed the jury that Petitioner had declined to speak with law enforcement. *Id*. Counsel moved for a mistrial on that basis. *Id*. Although the trial court denied the motion and offered a curative instruction, defense counsel declined the instruction because it would have highlighted the very constitutional violation that had just occurred. *Id*. The testimony therefore remained uncorrected before the jury.

The trial record demonstrates the prejudicial nature of the violation. The State's theory of the case relied heavily on attacking Petitioner's credibility and portraying his self-defense testimony as fabricated. By informing the jury—subtly but unmistakably—that Petitioner had declined to speak with police, the State bolstered its narrative that Petitioner was evasive,

deceptive, and unwilling to account for his actions. The prosecution then argued that Petitioner had engaged in calculated behavior after the offense, including efforts to evade law enforcement. Against that backdrop, a comment on silence is uniquely damaging.

For these reasons, Deputy Loomis's testimony constituted a clear *Doyle* violation. It infringed Petitioner's right to due process, prejudiced the central issue of credibility, and occurred in a trial already marred by unaddressed competency concerns and the absence of critical expert mental-health evidence. The state court's rejection of this claim was contrary to or an unreasonable application of *Doyle* and its progeny, and habeas relief is warranted.

C. *The Visible Shackling of Petitioner Constituted Structural Error and Independently Violated Due Process*

The record establishes that jurors observed Petitioner fall while wearing shackles as he was escorted from the courtroom during a break in the proceedings. This accident exposed the restraints to the jury and thereby violated Petitioner's constitutional right to a fair trial. The Supreme Court has long held that the routine use or inadvertent display of physical restraints before a jury is inherently prejudicial and permissible only upon specific, on-the-record findings of necessity. *Deck v. Missouri*, 544 U.S. 622 (2005). Visible shackling undermines the presumption of innocence, interferes with a defendant's ability to communicate with counsel, and offends the dignity and decorum of judicial proceedings. *Id*. Because of these grave harms, shackling is unconstitutional unless the trial court makes an individualized determination that restraints are justified by specific security needs. Id. No such findings appear in the record here.

None of these safeguards were met. The Exhibits show that during a break in the proceedings, Petitioner tripped because of his leg restraints, fell in view of jurors, and revealed the shackles affixed to his ankles. Nothing in the record indicates that the trial court made any

individualized finding that restraints were necessary, nor did the court hold a hearing to address the incident after jurors witnessed the fall. The court did not admonish the jury, issue a curative instruction, or inquire whether jurors had seen the restraints. The absence of any remedial action is contrary to *Deck*, which requires trial courts to take affirmative steps to ensure the fairness of the proceedings when restraints become visible.

Moreover, the prejudice caused by the exposure was especially acute given the prosecution's theory of the case. The State emphasized Petitioner's alleged dangerousness and violent disposition, invoking past altercations and arguing that Petitioner acted with deliberate aggression. Visible shackles served only to reinforce the prosecution's narrative, impermissibly suggesting to jurors that Petitioner posed a threat or required heightened security. Courts have consistently held that such inference-building is precisely the harm *Deck* is intended to prevent. *Id*.

*Deck* held that visible shackling is "inherently prejudicial" and constitutes a structural defect unless the State meets the burden of showing harmlessness beyond a reasonable doubt. 544 U.S. at 635. That is a demanding standard. Here, the State cannot carry it. The jury witnessed Petitioner tripping and falling due to his shackles—a moment that unquestionably draws attention to the restraints and invites speculation about their purpose. Unlike cases where a juror glimpses a defendant in shackles in a hallway or while being transported, this incident occurred in the courtroom itself, during the trial, in direct proximity to the jurors, and under circumstances likely to elicit heightened focus. The Supreme Court has distinguished such in-court exposure as particularly damaging. See *Holbrook*, 475 U.S. at 568.

The lack of curative action further distinguishes this case from those in which courts have found harmlessness. Courts finding harmless error typically rely on immediate and thorough

judicial intervention—voir dire of jurors, limiting instructions, or findings that restraints were not seen. See, e.g., *United States v. Miller*, 531 F.3d 340, 346–47 (6th Cir. 2008). Here, none of those safeguards were employed. The exposure went unaddressed.

Finally, the shackling error must be evaluated cumulatively with the other constitutional errors that occurred at trial, including the *Doyle* violation, the failure to present critical mental-health expert evidence, and the court's refusal to reevaluate competency mid-trial. In a case where the jury's assessment of Petitioner's mental condition and credibility was central to the verdict, visible shackling significantly distorted the fact-finding process. Even if not structural, it was prejudicial under *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993), because it "had substantial and injurious effect or influence in determining the jury's verdict."

For these reasons, the shackling incident violated Petitioner's right to due process under *Deck* and its progeny. The state court's rejection of this claim was contrary to, or involved an unreasonable application of, clearly established federal law. Federal habeas relief is warranted.

## CONCLUSION

For the reasons set forth above, Petitioner respectfully submits that the Attorney General's timeliness argument fails as a matter of law and fact. The Exhibits conclusively demonstrate that Petitioner suffered from chronic, severe psychosis throughout the AEDPA limitation period, rendering him incapable of pursuing federal habeas relief and satisfying the standard for equitable tolling under *Holland v. Florida*, 560 U.S. 631 (2010), and controlling Tenth Circuit precedent. Independently, Petitioner has presented new, reliable psychiatric evidence—never heard by the jury—that fundamentally alters the evidentiary landscape and satisfies the *Schlup* actual-innocence gateway, requiring this Court to consider the merits of his constitutional claims.

On the merits, Petitioner has shown that trial counsel rendered constitutionally deficient performance by failing to present the only available expert mental-health evidence capable of refuting the State's theory of premeditation. Counsel's omissions deprived the jury of critical information regarding Petitioner's schizophrenia, schizoaffective disorder, hallucinations, disorganized thought, and impaired cognition—evidence that, under *Strickland v. Washington*, 466 U.S. 668 (1984), raises a reasonable probability of a different outcome. The constitutional violations did not end there. Deputy Loomis's testimony that he attempted to interview Petitioner constituted an impermissible comment on post-Miranda silence in violation of *Doyle v. Ohio*, 426 U.S. 610 (1976), directly impacting the jury's assessment of credibility. The jury also witnessed Petitioner fall while shackled, in violation of *Deck v. Missouri*, 544 U.S. 622 (2005), an error that is inherently prejudicial and was left wholly unremedied. These errors—each independently warranting relief—also operated cumulatively, compounding their prejudicial effect in a trial already marred by unresolved competency concerns and the absence of critical psychiatric evidence.

Under any applicable standard—equitable tolling, actual innocence, *Strickland*, *Doyle*, *Deck*, or the cumulative error doctrine—the state court's rejection of Petitioner's claims was contrary to, or involved an unreasonable application of, clearly established federal law, and was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Petitioner therefore respectfully requests that the Court: (1) reject Respondent's statute-of-limitations defense; (2) hold that equitable tolling applies or, alternatively, that Petitioner satisfies the *Schlup* gateway; (3) reach the merits of Petitioner's constitutional claims; and (4) grant the writ or, at a minimum, order an evidentiary hearing to resolve the substantial

factual questions concerning Petitioner's mental illness, competency, counsel's performance, and the constitutional errors that occurred at trial.

For all the foregoing reasons, Petitioner respectfully asks this Court to issue an order granting habeas relief.

                                                            Respectfully submitted,

                                                            Valenzuela Law Firm
                                                            701 Magoffin Avenue
                                                            El Paso, Texas 79930
                                                            (915) 209-2719
                                                            (915) 493-2404 fax
                      By:    /s/ Felix Valenzuela
                                                            State Bar No. 24076745
                                                           felix@valenzuela-law.com

                                                           Attorney for Petitioner

**CERTIFICATE OF SERVICE**

      I hereby certify that, on December 5, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which shall send notification of such filing to all parties.

                                                    /s/ Felix Valenzuela