**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

ALBERTO JOSE RAMIREZ,

        Petitioner,

v.                                    No. 2:23-cv-1075 MV/DLM

ATTORNEY GENERAL OF THE
STATE OF NEW MEXICO,

        Respondent.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION RECOMMENDING DISMISSING PETITIONER'S CLAIMS, OR ALTERNATIVELY, DENYING PETITIONER'S CLAIMS

**THIS MATTER** is before the Court on Petitioner Alberto Jose Ramirez's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, filed December 4, 2023 (Doc. 1), and his Amended Petition, filed on July 11, 2024 (Doc. 21). Ramirez challenges his state court convictions for first-degree murder and tampering with evidence based on allegations of ineffective assistance of trial and appellate counsel, trial court errors, prosecutorial misconduct, and actual innocence. Ramirez's convictions arise from the July 12, 2007 killing of his mother's boyfriend.

When Ramirez filed his Petition and Amended Petition,[1] he was proceeding pro se. Respondent, the Attorney General of the State of New Mexico, filed an Answer to Ramirez's Petition and Amended Petition on January 22, 2025. (Doc. 102.) While pro se, Ramirez filed no less than 70 motions in this case, several of which sought appointment of counsel and asserted that he was mentally impaired or mentally ill. (*See* Docs. 116–17; 119.) The Court appointed Ramirez counsel for the limited purpose of filing a reply brief to Respondent's Answer. (*See* Doc. 123.)

---

[1] Ramirez previously filed a motion seeking to withdraw the Amended Petition, stating that he wanted to leave the original Petition because it had a claim of actual innocence. (Doc. 79.) The Court denied his motion as moot, as Respondent had already been ordered to answer both Petitions. (*See* Doc. 90 at 2 (citing Doc. 67 at 2).)

Ramirez's counsel filed the reply on December 5, 2025. (Doc. 139.) Thus, Ramirez's § 2254 Petition is fully briefed.

Senior United States District Judge Martha Vázquez referred the case to the undersigned to make proposed findings and a recommended disposition. (Doc. 86.) After careful review and consideration of the filings, I find that Ramirez's claims are untimely and that there are no exceptions to the procedural bar. Even if his claims were not time-barred, they fail on the merits. Thus, I recommend dismissing Ramirez's petitions or alternatively denying Ramirez's petitions.

## I.       Factual and Procedural Background[2]

On July 20, 2007, the State of New Mexico charged Ramirez with one count of first-degree murder and two counts of tampering with evidence by disposing of a firearm and clothing. (Doc. 102-1 at 1–3.) In April 2008, Dr. Maxann Shwartz found Ramirez incompetent to stand trial, and he was committed to the Las Vegas Medical Center for three months of treatment. (*Id.* at 12; 550–60.) "After being initially determined incompetent to stand trial, the district court adjudged that Defendant was restored to competency following approximately three months of treatment and evaluation at the New Mexico Behavioral Health Institute . . . in Las Vegas." *State v. Ramirez (Ramirez I)*, 254 P.3d 649, 650 (N.M. 2011).

After jury selection began in January 2009, "the parties informed the district court that a plea agreement had been reached in which Defendant pled guilty to three charges, including first

---

[2] The Court's citations are primarily to the record attached to Respondent's Answer. *See* Doc. 102-1. The Court also references several New Mexico Supreme Court decisions. *State v. Ramirez (Ramirez I)*, 254 P.3d 649 (N.M. 2011); *State v. Ramirez (Ramirez II)*, No. S-1-SC-34576, 2016 WL 7029226 (N.M. Dec. 1, 2016). In addition, the Court took judicial notice of Ramirez's state court criminal dockets. Case Nos. D-905-CR-2007-434, S-1-SC-34576, S-1-SC-36599, S-1-SC-37501, S-1-SC-37887, S-1-SC-38539, and S-1-SC-40134. *See United States v. Smalls*, 605 F.3d 765, 768 n.2 (10th Cir. 2010) (recognizing a court may take judicial notice of docket information from another court).

degree premeditated murder." *Id.* (*See also* Doc. 102-1 at 4–11.) Approximately one month after entering into the plea agreement, Ramirez filed a motion to withdraw it, which the trial court denied. *See Ramirez I*, 254 P.3d at 651.

Ramirez then appealed to the New Mexico Supreme Court, arguing that his plea was not "knowingly, intelligently, and voluntarily entered into . . . with the State." *Id.* at 650. The New Mexico Supreme Court concluded that his "plea was not knowing, intelligent, and voluntary, and that the district court abused its discretion by denying [Ramirez's] motion to withdraw his plea." *Id.* at 654. The case was then remanded back to district court. *Id.* at 654–55.

Following remand, "the district court ordered [Ramirez] to undergo a third confidential forensic evaluation to determine his competency to stand trial." *State v. Ramirez* (*Ramirez II*), No. S-1-SC-34576, 2016 WL 7029226, at *1 (N.M. Dec. 1, 2016). Dr. Richard T. Fink, the forensic evaluator, was unable to render an opinion because Ramirez "refused to communicate with him." *Id.* A fourth evaluation was then conducted, and Dr. Fink "determined that [Ramirez] was competent to stand trial." *Id.*

A jury trial began in October 2013. *Id.* at *2. The New Mexico Supreme Court set forth the following facts:

> [Ramirez] went to his mother's house on July 12, 2007, after calling the house 30 to 40 times with no answer. [Ramirez] believed that his mother's live-in boyfriend, Eladio Robledo, was preventing [Ramirez's] mother from helping [Ramirez] because Robledo "liked to see [Ramirez] suffering." After checking the front door and not getting an answer, [Ramirez] went to the back of the house and followed Robledo as he left the house and entered the garage.
>
> After an argument ensued between the two men, [Ramirez] shot Robledo and chased him to the front of the house. When Robledo fell, [Ramirez] stepped over him and shot him twice in the head. Sam Saiz, a neighbor, and Grace Finkey, a passing motorist, both witnessed [Ramirez] shoot Robledo. [Ramirez] then disposed of his gun and the denim shorts he was wearing in a dumpster.

3

*Id.* at \*1.

At the conclusion of the trial, the jury found Ramirez guilty of first-degree murder and two counts of tampering with evidence. *See id.* (*See also* Doc. 1 at 1, 17–20.) The state court sentenced him to life imprisonment plus six years. *Ramirez II*, 2016 WL 7029226, at \*1.

Ramirez filed a direct appeal to the New Mexico Supreme Court (NMSC) (*See* Doc. 102-1 at 66–118.) He argued that (1) the district court erred in denying a competency re-evaluation; (2) he received ineffective assistance of counsel; (3) there was improper commentary on his right to silence; (4) he was prejudiced by the jury observing his leg restraints; (5) the court erred in admitting prior bad acts; and (6) the court erred in not declaring a mistrial because of prosecutorial misconduct. (*See id.*) The NMSC affirmed the conviction on December 1, 2016. *Ramirez II*, 2016 WL 7029226. (*See also* Doc. 102-1 at 183–217.)

Ramirez did not file a petition for a writ of certiorari to the United States Supreme Court, so the judgment became final no later than March 2, 2017, the first business day following the expiration of the 90-day cert period. *See Hall v. Ward*, 117 F. App'x 18, 20 (10th Cir. 2004) (recognizing a conviction becomes final after the period for filing a petition for a writ of certiorari in the United States Supreme Court has lapsed).

### State Petitions

The Court will set forth the procedural history of Ramirez's state petitions in accordance with the exhibits attached to the State's response.[3] (*See* Doc. 102-1.)

---

[3] In the Court's June 20, 2024 Order, it set forth a slightly different timeframe based on state court docket activity. (*See* Doc. 11 at 2–3, 5–6.) The Court now adopts the timeframe set forth by the State in its Answer, as that timeframe is supported by the State's exhibits.

March 2, 2017: The Judgment becomes final.

> **– Time starts running; 20 days run before Ramirez files his first state habeas petition; 345 days remaining to file federal habeas petition.**

March 22, 2017: Ramirez files his first state habeas petition. (*See id.* at 219–41.)

April 25, 2017: Ramirez files his second state habeas petition. (*Id.* at 242–56.)

May 31, 2017: The trial court denies the first and second habeas petitions. (*Id.* at 257–58.)

June 20, 2017: Ramirez files his third state habeas petition. (*Id.* at 259–355.)

June 27, 2017: Ramirez files his first petition for writ of certiorari to the New Mexico Supreme Court. (*Id.* at 356–65.)

July 17, 2017: Ramirez files his fourth state habeas petition. (*Id.* at 479–507.)[4]

August 11, 2017: The New Mexico Supreme Court denies Ramirez's first cert. petition. (*Id.* at 509.)

May 18, 2018: Ramirez's appointed habeas counsel files an amended state habeas petition. (*Id.* at 510–35.)

December 14, 2018: The trial court references Ramirez's pro se third and fourth state petitions, addresses counsel's amended petition, and denies the amended petition. (*Id.* at 674–85.)

> **– Time runs for 14 days (because Ramirez does not file his cert. petition by January 14, 2019—30 days from the trial court's denial);[5] 331 days now remaining to file federal habeas petition.**

January 28, 2019: Ramirez files his second cert. petition. (*Id.* at 686–94.)

February 5, 2019: The New Mexico Supreme Court denies the second cert. petition. (*Id.* at 892.)

---

[4] This petition is entitled "Petition for Writ of Certiorari to the District Court from Denial of Habeas Corpus." (Doc. 102-1 at 479.) However, District Judge Drew D. Tatum appointed counsel for Ramirez on two of his habeas petitions and noted that the July 17, 2017 filing was a "pro se Petition for Writ of Habeas Corpus." (*Id.* at 508.)

[5] The days between December 14, 2018 and January 14, 2019 do not count as Ramirez had that time to file his cert. petition. However, because nothing was pending before the NMSC for the 14 days between the petition's due date (January 14, 2019) and the date it was filed (January 28, 2019), these dates count against Ramirez.

5

**– Time runs for 104 days (time started running on February 21, 2019—allowing fifteen days from February 5, 2019, for Ramirez to file a motion for reconsideration); 227 days now remaining to file federal habeas petition.**

June 5, 2019:[6] Ramirez files his fifth state habeas petition. (*Id.* at 893–916.)

August 12, 2019: The trial court dismisses the fifth habeas petition. (*Id.* at 1224–26.)

September 3, 2019: Ramirez files his third cert. petition. (*Id.* at 1551–54.)

September 13, 2019: The New Mexico Supreme Court denies the third cert. petition. (*Id.* at 1555.)

**– The remaining 227 days expire on May 15, 2020.[7] Time started running on October 1, 2019—allowing 15 days from September 13, 2019, for Ramirez to file a motion for reconsideration.**

August 18, 2020: Ramirez files his sixth state habeas petition. (*Id.* at 1556–1608.)

October 5, 2020: The trial court dismisses the sixth habeas petition. (*Id.* at 1617–21.)

December 27, 2022: Ramirez files his seventh and eighth state habeas petitions. (*Id.* at 1669–1702.)

January 9, 2023: Ramirez files his ninth state habeas petition. (*Id.* at 1721–30.)

February 10, 2023: The trial court dismisses the seventh, eighth, and ninth petitions. (*Id.* at 1744–46.)

July 6, 2023: Ramirez files his tenth (final) state habeas petition. (*Id.* at 1747–67.)

August 28, 2023: The trial court dismisses the tenth petition. (*Id.* at 1827–30.)

### *Federal Petitions*

Prior to filing the present action, Ramirez filed seven federal § 2254 petitions that he

---

[6] Ramirez's fifth state habeas petition was filed on June 24, 2019, but the State demonstrates that Ramirez's petition was deposited for mailing on June 5, 2019. (Doc. 102-1 at 915.) Thus, the Court will use June 5, 2019 as the date Ramirez filed the petition.

[7] As will be noted and discussed below, Ramirez did file a federal petition by this date (May 15, 2020). Indeed, he filed two, but he voluntarily dismissed both of these petitions.

subsequently dismissed.

| Case No. | Date Opened | Date Dismissed | Note |
|---|---|---|---|
| 2:19-cv-0202 MV/CG | March 11, 2019 (Doc. 1.) | November 18, 2019 (Doc. 6) | Voluntary dismissal granted[8] |
| 2:19-cv-0671 KWR/LF | July 22, 2019 (Doc. 1.) | March 19, 2021 (Doc. 33) | Voluntary withdrawal granted |
| 2:21-cv-0731 MIS/KK | August 4, 2021 (Doc. 1.) | December 9, 2022 (Doc. 24.) | Voluntary dismissal granted |
| 2:22-cv-0585 DHU/KK | August 5, 2022 (Doc. 1.) | January 12, 2023 (Doc. 14.) | Voluntary dismissal granted |
| 1:23-cv-0232 KWR/SCY | March 17, 2023 (Doc. 1.) | April 4, 2023 (Doc. 5.) | Voluntary dismissal granted |
| 1:23-cv-0381 DHU/SCY | May 3, 2023 (Doc. 1.) | June 5, 2023 (Doc. 6.) | Voluntary dismissal granted |
| 1:23-cv-0519 MV/GJF | June 15, 2023 (Doc. 1.) | July 7, 2023 (Doc. 4.) | Voluntary dismissal granted |

Ramirez filed his eighth § 2254 Petition, the one currently before the Court, on December 4, 2023.[9] In this Petition, he argues that he is entitled to relief because: (1) his right to effective

---

[8] In most cases, Ramirez stated that he sought dismissal of the federal action because he had a pending matter in state court and sought to return to the New Mexico State Court. (*See, e.g.*, No. 2:19-cv-0202 (Doc. 4); No. 2:19-cv-0671 (Doc. 32); No. 2:21-cv-0731 (Doc. 22); No. 2:22-cv-0585 (Docs. 6–7; 9; 11); No. 1:23-cv-0232 (Docs. 3–4); No. 1:23-cv-0381 (Docs. 3; 5); and No. 1:23-cv-0519 (Doc. 3).)

[9] Although this is Ramirez's eighth federal § 2254 Petition, it is not a second or successive petition because there were no dispositive rulings on his previous petitions as Ramirez continually asked for the petitions to be dismissed so he

7

assistance of counsel was violated at trial and on appeal; (2) there was a due process violation by the introduction of prior bad acts evidence and a shackles error; (3) prosecutorial misconduct deprived him of a fair trial; (4) improper comment on his right to remain silent; and (5) he is actually innocent based on a theory of self-defense. (Docs. 1; 21.)

After reviewing Ramirez's Petition, the Court ordered Ramirez to show cause as to why the Petition should not be dismissed as untimely. (Doc. 11 at 6.) Ramirez filed numerous motions seeking tolling based on his mental health, and the Court ordered the State to answer Ramirez's Petition/Amended Petition to address the merits of Ramirez's § 2254 claims and to address whether Ramirez establishes grounds to toll the habeas limitations period. (Doc. 60 at 1–2.) The State argues that the Petition is untimely and that no exception applies. (Doc. 102.) Alternatively, the State contends that Ramirez's claims fail on the merits. (*Id.*) After Ramirez continued to file numerous motions and letters, the Court appointed Ramirez counsel for the limited purpose of filing a reply brief. (Doc. 123.) Ramirez's counsel filed a reply brief and subsequently withdrew as counsel. (Docs. 139–41.) The matter is now fully briefed.

## II.   Timeliness of Ramirez's § 2254 Petition

Petitions for a writ of habeas corpus by a person in state custody must generally be filed within one year after the criminal judgment becomes final. 28 U.S.C. § 2244(d)(1)(A). The one-year limitation period may be extended:

> (1)   While a state habeas petition is pending, § 2244(d)(2);
>
> (2)   Where unconstitutional state action has impeded the filing of a federal habeas petition, § 2244(d)(1)(B);

---

could exhaust his claims in state court. *See Slack v. McDaniel*, 529 U.S. 473, 488 (2000) (finding that if a previous petition was dismissed for failure to exhaust state remedies, the filing of the federal petition after those claims were exhausted in state court is not a second or successive § 2254 petition).

(3)    Where a new constitutional right has been recognized by the Supreme Court, § 2244(d)(1)(C); or

(4)    Where the factual basis for the claim could not have been discovered until later, § 2244(d)(1)(D).

Because the limitation period is not jurisdictional, it can also be extended through equitable tolling. *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000).

Here, Ramirez's criminal judgment became final—and the one-year period started running—no later than March 2, 2017, the first business day after the 90-day period for seeking certiorari in the United States Supreme Court expired. *See Hall*, 117 F. App'x at 20 (recognizing a conviction becomes final after the period for filing a petition for a writ of certiorari in the United States Supreme Court has lapsed).

In this case, Ramirez filed numerous state habeas petitions, which tolled the limitations period at various points. Twenty days elapsed between March 2 and March 22, 2017, when Ramirez filed his first state habeas petition, which stopped the clock pursuant to § 2244(d)(2). The clock resumed briefly between January 14, 2019 and January 28, 2019 (14 days) because Ramirez did not timely file a petition for certiorari. Thus, at that point, 34 days had passed.

When Ramirez filed his petition for certiorari on January 28, 2019, the clock stopped again and did not resume until February 21, 2019, 15 days after the New Mexico Supreme Court denied certiorari on the second state habeas petition. *See Lawrence v. Florida*, 549 U.S. 327, 332 (2007) (for purposes of § 2244(d)(2), a state habeas proceeding remains pending until "the State's highest court has issued its mandate or denied review"); *Serrano v. Williams*, 383 F.3d 1181, 1185 (10th Cir. 2004) (stating that the AEDPA limitation period is tolled during the 15 days in which the petitioner could have filed a motion for rehearing from the denial of certiorari).

9

Ramirez filed his fifth state habeas petition on June 5, 2019—104 days after February 21, 2019. Again, the clock stopped running. At that point, 138 total days had elapsed,[10] leaving 227 days remaining on the clock.

On September 13, 2019, the New Mexico Supreme Court denied Ramirez's third certiorari petition. Thus, on October 1, 2019, the clock started running again. Ramirez did not file another state court habeas petition until August 18, 2020—323 days later. Because Ramirez only had 227 days remaining, the clock expired on May 15, 2020.

Ramirez was required to file his § 2254 by May 15, 2020. As noted above, he filed two § 2254 petitions before this date. However, he dismissed those petitions, and those petitions are not before the Court. The petition currently before the Court was filed on December 4, 2023, more than three years after the deadline expired.

Accordingly, the Petition is untimely unless Ramirez establishes any grounds to toll or extend the habeas limitations period.

### A.  Statutory Tolling

The Court liberally construes Ramirez's filings as seeking statutory tolling under 28 U.S.C. § 2244(d)(1)(B). He appears to make two arguments: (1) prison officials created an impediment to filing because he lacked access to legal materials (*see, e.g.*, Docs. 23; 25; 29); and (2) the time he spent in federal court litigating his previous § 2254 petitions does not count against him (*see* Docs. 25; 29–30; 32; 36). Neither argument has merit.

---

[10]  20 days + 14 days + 104 days = 138 days.

As to Ramirez's first contention, the Tenth Circuit has declined to apply statutory tolling under § 2244(d)(1)(B) where the petitioner allegedly lacked access to "adequate research" when he prepared his state and federal petitions." *Garcia v. Hatch*, 343 F. App'x 316, 318–19 (10th Cir. 2009). The Tenth Circuit noted that "[i]n order to establish a constitutional violation of this right of access [to the courts], an inmate must 'demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.'" *Id.* at 318 (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). In *Garcia*, the Tenth Circuit explained that "[w]hile the quality of [the § 2254] petition might have been improved with greater legal assistance," the petitioner failed to show that he was actually "incapable of filing a timely habeas petition given the resources available . . . ." *Id.* at 319; *see also Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998) (rejecting claim to statutory tolling under § 2244(d)(1)(B) and noting "[i]t is not enough to say that the . . . facility lacked all relevant statutes and case law or that the procedure to request specific materials was inadequate").

Ramirez's allegations as to the denial of legal access appear to relate to 2023. (*See* Doc. 23 at 2 (stating in February 2023, he was "denied legal access to research library office.")) By 2023, however, there was no time left to toll as Ramirez's filing deadline expired three years earlier on May 15, 2020. Accordingly, Ramirez's contention that prison officials created an impediment to filing because he lacked access to legal materials is unavailing.

Ramirez's argument that his federal § 2254 petitions tolled the time limit also fails. "'[S]tatutory tolling' is not available . . . during the time period a prior *federal* habeas proceeding is pending." *York v. Galetka*, 314 F.3d 522, 524 (10th Cir. 2003) (citing *Duncan v. Walker*, 533 U.S. 167, 172–82 (2001)); *see also* 28 U.S.C. § 2244(d)(2) ("The time during which a properly

11

filed application for *State* post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.") (emphasis added). Thus, to the extent Ramirez relies on his previous federal petitions to toll or extend his timeframe for this Petition, he cannot do so.

Furthermore, to the extent Ramirez may believe that any state court habeas petitions filed *after* May 15, 2020, restarted the clock or otherwise impacted the limitations period,[11] he is incorrect because the limitations period had already expired at that point. *See Gunderson v. Abbott*, 172 F. App'x 806, 809 (10th Cir. 2006) ("A state court filing submitted after the AEDPA deadline does not toll the limitations period.") (citing *Fisher v. Gibson,* 262 F.3d 1135, 1142–43 (10th Cir. 2001)). Accordingly, Ramirez cannot establish any basis for statutory tolling of the time period.

### B.   Equitable Tolling

Ramirez's primary argument for tolling the limitations period is that he had a continuous, severe mental-health impairment throughout the AEDPA limitation period, and thus the timeframe should be equitably tolled. (*See, e.g.*, Docs. 23; 25; 29; 32; 36; 72; 80; 139.) Equitable tolling, however, is "a rare remedy to be applied in unusual circumstances." *Al-Yousif v. Trani*, 779 F.3d 1173, 1179 (10th Cir. 2015) (quoting *Yang v. Archuleta*, 525 F.3d 925, 929 (10th Cir. 2008)). The doctrine only applies if some extraordinary circumstance outside of the petitioner's control prevented him from timely filing. *See Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016); *Lawrence v. Florida*, 549 U.S. 327, 336 (2007). "[A]n inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances." *Yang*, 525 F.3d at 928 (citations omitted). He must also separately describe "'the steps he took to diligently pursue

---

[11]  Ramirez filed five state habeas petitions after May 15, 2020.

his federal claims' while those circumstances existed." *Pena-Gonzales v. State*, No. 21-3174, 2022 WL 214747, at *1 (10th Cir. Jan. 25, 2022) (noting that *Yang* requires both extraordinary circumstances and due diligence); *see also Sigala v. Bravo*, 656 F.3d 1125, 1128 (10th Cir. 2011) (a habeas petitioner "seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way") (quotation omitted). Stated differently, the petitioner must provide "specificity regarding the alleged lack of access and the steps he took to diligently pursue his federal" petition. *Miller*, 141 F.3d at 978 (citation omitted).

Ramirez contends that his severe mental health impairment is a chronic psychotic disorder that repeatedly impeded his ability to understand, monitor, or litigate his federal habeas rights. (*See* Doc. 139.) He points to prior adjudications of incompetence and institutionalization for treatment; a chronic psychotic illness; and persistent symptoms of severely impaired cognition throughout the period in which AEDPA's one-year clock was running. (*See id.*)

The one-year period began on March 2, 2017, and he filed the current habeas petition on December 4, 2023. The one-year limitation period for filing his § 2254 is complicated due to the sheer number of state habeas motions Ramirez filed during this period, which repeatedly started and stopped the clock. Indeed, he filed ten state habeas petitions (five before his timeframe had run and five after his timeframe had run).

The record demonstrates that Ramirez appears to suffer from a mental impairment. Ramirez was originally adjudged incompetent to stand trial, and he was committed for treatment. *See Ramirez I*, 254 P.3d at 650. After being found competent to stand trial, Ramirez's mental state

13

continued to be an issue during the trial. (*See* 10/09/2013 JT at 2:38:42-2:40:03[12] (Ramirez's counsel seeking a continuance for re-evaluation of his competency); 3:11:44-3:13:27 (the trial judge's summary of Ramirez's competency and finding that he was competent).) Subsequent to Ramirez's conviction, he states that he was held in various mental health wards from August 2016 to December 2016; November 2019 to February 2021; and August 2021 to December 2021. (Doc. 23 at 2.) In addition, the record indicates that he was placed under the care of a treatment guardian in 2023, and that care was extended in May 2024. (Doc. 36 at 4–8, 10.)

Ramirez also appeared to pursue his rights diligently. The pertinent question, however, is whether an extraordinary circumstance, *i.e.* his mental illness, stood in his way. Although Ramirez may have been institutionalized and/or adjudged mentally incompetent for a period of time, the institutionalization was not for the entire limitations period. Instead, it was for a relatively short period of time, and the longer institutionalization (in 2023 and 2024) occurred well after the limitations period had expired.

But importantly, to establish equitable tolling, a petitioner must show that he was unable to timely file during the limitations period because of extraordinary circumstances beyond his control. *Marsh*, 223 F.3d at 1220. Here, Ramirez cannot demonstrate that his mental illness made him *unable* to timely file because he, in fact, continually filed petitions during the timeframe. *See Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1268 (10th Cir. 1996) (noting that at that time the Tenth Circuit had "never held that mental incapacity tolls the statute of limitations" and declining to equitably toll statute of limitations when "the evidence demonstrates that, in spite of

---

[12] The Court cites to the jury trial audio that was provided to the Court by the State. The audio recording supports the State's contentions, however, the timestamps did not show up on the Court's end. Nevertheless, the Court cites to the specific timing of the audio as referenced in the State's answer. (*See* Doc. 102 at 6–7.)

his mental condition, [the plaintiff] was capable of pursuing his own claim" during the relevant time period).

As noted above, Ramirez was able to file a federal habeas petition during at least one of the time periods he states that he was in a mental health treatment center. Furthermore, he filed his first federal habeas petition within the one-year habeas time period because he filed it on March 11, 2019. (No. 2:19-cv-0202 (Doc. 1).) Ramirez, however, voluntarily dismissed the petition without a decision on the merits. (*Id.* (Doc. 4).) In addition, he was able to file a (second) federal petition after the treatment guardianship had been established on April 17, 2023.[13] (No. 1:23-cv-0381 (Doc. 1).) And as noted above, he filed numerous state habeas petitions over the course of six years.

Accordingly, although it appears that Ramirez suffers from a mental condition, Ramirez does not demonstrate that his mental health issues or mental health treatment rendered him unable to file, or actually prevented him from filing a § 2254 petition, during the one-year limitations period. Thus, equitable tolling does not apply.

### C.  Actual Innocence

Ramirez also argues that an exception to the one-year bar exists because he is, he alleges, actually innocent. Although statutory and equitable tolling extend an expired limitations period, an "actual innocence" claim is "an equitable *exception* to § 2244(d)(1), not an extension of the time statutorily prescribed." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (citation omitted). "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar [or] . . . expiration of the statute of limitations." *Id.* at 386. In this context, "'actual innocence' means factual innocence, not mere legal sufficiency." *Bousley v.*

---

[13] The Court notes that at this time, the one-year limitation period had already expired.

15

*United States*, 523 U.S. 614, 623–24 (1998) (citation omitted). "Th[e] actual innocence exception is rare and will only be applied in the extraordinary case." *Lopez v. Trani*, 628 F.3d 1228, 1231 (10th Cir. 2010) (quotation marks and citation omitted). This is because the actual innocence exception exists to remedy "the conviction of one who is actually innocent." *Bousley*, 523 U.S. at 623 (quotation omitted).

To invoke this exception. a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). This new evidence must be sufficient to "show that it is more likely than not that no reasonable juror would have convicted [the petitioner] in the light of the new evidence." *Id.* at 327; *see also House v. Bell*, 547 U.S. 518, 536–37 (2006) (discussing the showing necessary under the "actual innocence" exception). "Simply maintaining one's innocence" or "casting some doubt on witness credibility" does not establish actual innocence. *Frost v. Pryor*, 749 F.3d 1212, 1232 (10th Cir. 2014) (citations omitted).

Ramirez contends that he has two new reliable pieces of evidence: (1) Dr. Maxann Shwartz's forensic neuropsychological evaluation, in which she gave an opinion on Ramirez's mental state at the time of the offense and found that he presented with symptoms of a significant mental illness and that he was not competent to stand trial (*see* Docs. 139 at 6–9; 30 at 5; 69 at 19; 102-1 at 550–56); and (2) Dr. Richard Fink's psychological opinion regarding Ramirez's history of sexual abuse (*see* Docs. 139 at 6–9; 102-1 at 1811). Ramirez argues that this evidence related to his psychological well-being and bears directly on the *mens rea* element of first-degree murder. (*See* Docs. 1 at 15–17; 139 at 7–9.) He contends that if this evidence was presented to the jury, no

juror would have concluded beyond a reasonable doubt that he was capable of first-degree murder. (*See* Doc. 139 at 7–9.) He further argues that he is actually innocent because he acted in self-defense. (*See* Docs. 1 at 15–17; 69 at 11, 13, 15–17.)

Ramirez does not satisfy the demanding actual-innocence standard. *Fontentot v. Crow*, 4 F.4th 982, 1031 (10th Cir. 2021) (citations omitted). This exception is meant to remedy "the conviction of one who is actually innocent." *Bousely*, 523 U.S. at 623 (quotation omitted). Ramirez's arguments supporting his actual innocence claim challenge the legal sufficiency of his convictions. Ramirez admits to killing Robledo, and he only contests the *mens rea* element. "[A]rguments [that] go to legal innocence, as opposed to factual innocence[,]" are insufficient to support a claim for actual innocence. *See Beavers v. Saffle*, 216 F.3d 918, 923 (10th Cir. 2000) (noting that the defendant's argument that he was "not guilty of first degree murder because he was intoxicated and acted in self defense" was directed to legal innocence instead of factual innocence) (citations omitted). "Because [Ramirez] admits his actions caused [Robledo's] death, he is not factually innocent." *See Long v. Peterson*, 291 F. App'x 209, 213 (10th Cir. 2008) (citing *Beavers*, 216 F.3d at 923). Thus, Ramirez cannot satisfy the actual innocence exception.

### D.    Summary

In sum, Ramirez cannot establish that statutory or equitable tolling is applicable. Nor does he meet the actual innocence exception. Thus, Ramirez's petition is untimely and subject to dismissal on that basis. Nevertheless, due to the myriad issues surrounding Ramirez's mental illness in relation to his numerous filings in both the state and federal courts, the Court will briefly address the substance of Ramirez's claims.

### III.    Exhaustion of State Court Remedies

"A state prisoner generally may not raise a claim for federal habeas corpus relief unless he 'has exhausted the remedies available in the courts of the State.'" *Selsor v. Workman*, 644 F.3d 984, 1026 (10th Cir. 2011) (quoting 28 U.S.C. § 2254(b)(1)(A)). Exhaustion requires that a state prisoner pursue his claims "through 'one complete round of the State's established appellate review process,' giving the state courts a 'full and fair opportunity' to correct alleged constitutional errors." *Id.* (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). In other words, "a state prisoner seeking federal habeas relief generally must have first submitted each of his claims to the State's highest court." *Jernigan v. Jaramillo*, 436 F. App'x 852, 855 (10th Cir. 2011) (citing *O'Sullivan*, 526 U.S. at 845; 2 Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 23.3 [b], at 1205–06 (6th ed. 2011) ("[T]he petitioner satisfies [his] exhaustion burden by raising a claim at all stages of the state's appellate review process (including discretionary state appeals).").

Federal courts normally will not consider unexhausted claims "unless exhaustion would have been futile because either 'there is an absence of available State corrective process' or 'circumstances exist that render such process ineffective to protect the rights of the applicant.'" *Selsor*, 644 F.3d at 1026 (quoting 28 U.S.C. §§ 2254(b)(1)(B)(i), (ii)). "The state prisoner bears the burden of proving that he exhausted state court remedies[] or that exhaustion would have been futile." *Id.* (citations omitted).

However, 28 U.S.C. § 2254(b)(2) provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." In addition, the Tenth Circuit has stated a court may "bypass

18

complex issues of exhaustion . . . to reject the claim on the merits . . . ." *Revilla v. Gibson*, 283 F.3d 1203, 1210–11 (10th Cir. 2002) (citations omitted).

The State asserts that "[g]iven the size of the state-court record, the number of state habeas petitions that Mr. Ramirez has filed, and the subtle tweaking of claims between state filings, it is difficult to tell if he has properly exhausted available state-court remedies." (Doc. 102 at 17.) In addition, the State contends that the exhaustion inquiry is further complicated by the subclaims and substantial overlap between claims. (*Id.*) Thus, the State suggests, without waiving the exhaustion requirement, that the Court take the approach of considering the merits of Ramirez's arguments rather than discussing whether Ramirez exhausted all his claims. (*Id.*)

Because of the complicated issues of exhaustion and the fact that the State addresses the merits of each of Ramirez's grounds for relief, the Court will bypass the exhaustion analysis and proceed to the merits of Ramirez's claims.

## IV. Ramirez's Claims for Relief

### A. 28 U.S.C. § 2254 Standard

A prisoner in state custody seeking federal habeas corpus relief under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), faces "a formidable barrier to [obtaining] federal habeas relief . . . ." *Burt v. Titlow*, 571 U.S. 12, 19 (2013) (explaining that AEDPA's amendments create a high threshold for relief because "state courts have the solemn responsibility equally with the federal courts to safeguard constitutional rights" and are "presumptively competent" to do so) (quotation marks and citations omitted). Indeed, the Supreme Court has stated repeatedly that the standard by which federal courts are to review state court rulings is a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521

19

U.S. 320, 333 n.7 (1997); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (quoting *Lindh*, 521 U.S. at 333, n.7).

To carry his burden under that exacting standard, a prisoner's habeas corpus petition must show that the state court decision "(1) was contrary to, or involved an unreasonable application of, clearly established federal law or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding." *Cortez-Lazcano v. Whitten*, 81 F.4th 1074, 1082 (10th Cir. 2023) (quoting 28 U.S.C. § 2254(d)) (quotation marks and brackets omitted).

"Clearly established law" refers to Supreme Court holdings at the time of the state-court decision. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is contrary to, or involves an unreasonable application of, clearly established law if it applies a rule that contradicts Supreme Court precedent or if it is faced with a set of facts "materially indistinguishable from" facts the Supreme Court has previously considered but arrives at a different conclusion than the Supreme Court. *See id.* at 405–06.

To highlight the deference owed to state court decisions, the Supreme Court has stated that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Williams*, 529 U.S. at 410). In other words, to establish an *unreasonable* application of federal law, a petitioner must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Burt*, 571 U.S. at 19–20 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). Thus, a federal court may not grant a § 2254 petition simply because it "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Torres v. Mullin*,

20

317 F.3d 1145, 1151 (10th Cir. 2003) (quoting *Williams*, 529 U.S. at 411). Indeed, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102 (citation omitted). "If this standard is difficult to meet, that is because it was meant to be." *Id.* "As amended by AEDPA, § 2254(d) . . . preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no further." *Id.* (citation omitted) (emphasis added).

The standard of review for reviewing a state court's factual determinations mirrors the standard for analyzing the application of federal law. A federal court may not "conclude a state court's factual findings are unreasonable 'merely because [it] would have reached a different conclusion in the first instance.'" *Smith v. Duckworth*, 824 F.3d 1233, 1241 (10th Cir. 2016) (quoting *Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015)). "Rather, [a federal court] must defer to the state court's factual determinations so long as 'reasonable minds reviewing the record might disagree about the finding in question.'" *Id.* (quoting *Brumfield*, 576 U.S. at 313–14). "Accordingly, a state court's factual findings are presumed correct, and the petitioner bears the burden of rebutting that presumption by 'clear and convincing evidence.'" *Id.* (quoting 22 U.S.C. § 2254(e)(1)). However, if a petitioner shows that the state court plainly misapprehended or misstated a material factual issue that is central to his claim, the fact-finding process is fatally undermined and that finding of fact is unreasonable. *Id.* (discussing *Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 739 (10th Cir. 2016)).

### B. Analysis

Ramirez sets forth seven different grounds for relief: (1) ineffective assistance of trial

counsel; (2) ineffective assistance of appellate counsel; (3) a due process violation resulting from the introduction of prior bad acts evidence; (4) prosecutorial misconduct; (5) improper comment on his right to remain silent; (6) a due process violation from a "shackles" error; and (7) actual innocence. The Court will address each contention.

### 1.    Ineffective Assistance of Trial Counsel

Ramirez first argues that his trial counsel was ineffective because (1) counsel promised that Ramirez would be permitted to testify about Robledo's and Sam Saiz's alleged sexual assault, and (2) counsel failed to object to the prosecutor's misconduct during closing and rebuttal. (Docs. 1 at 5; 21 at 5.) In Ramirez's reply, his appointed counsel also asserts that Ramirez's trial counsel was ineffective for failing to present the testimony and findings of Dr. Maxann Shwartz who had diagnosed Ramirez with Schizophrenia, Paranoid Type; Schizoaffective Disorder, Bipolar Type; and chronic Posttraumatic Stress Disorder. (Doc. 139 at 10–12.)

To succeed on an ineffective assistance of counsel claim, Ramirez must show that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "the deficient performance prejudiced the defense." *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). "If [Ramirez] is unable to show either 'deficient performance' or 'sufficient prejudice,' his claim of ineffective assistance necessarily fails." *See Hooks v. Workman*, 606 F.3d 715, 724 (10th Cir. 2010) (quotation omitted).

Ramirez is entitled to relief only if he can show "that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error beyond any possibility for fairminded disagreement." *Ryder*, 810 F.3d at 739 (quoting *Burt*, 571 U.S. at 16). "[R]eview of a state court's factual determinations under § 2254(d)(2) is even narrower. 'We may

not characterize these state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance.'" *Id.* (quoting *Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015)). On an ineffective assistance of counsel claim, there is an "extra layer of AEDPA deference," and Ramirez "must show that 'the state court's application of the *Strickland* standard was unreasonable.'" *Id.* at 741 (quoting *Richter*, 562 U.S. at 101).

As to Ramirez's first point of error, he asserts that his trial counsel was ineffective because counsel told him that he could testify as to the alleged sexual assaults. (*See* Docs. 1 at 5; 21 at 5.) The State first contends that this issue is procedurally barred. (Doc. 102 at 36.) In Ramirez's direct appeal, the NMSC declined to address the issue noting that "[c]ounsel has abandoned the claims that trial counsel failed to call other witnesses or made promises to [Ramirez] because these claims are unsupported by the record." *Ramirez II*, 2016 WL 7029226, at *5. (*See also* Doc. 102-1 at 109 (Ramirez's appellate counsel stating that Ramirez's contention that his counsel "made promises to Mr. Ramirez . . . [were] not reflected in the record.").) The Tenth Circuit has stated that "New Mexico courts have consistently and even handedly applied the rule waiving issues not raised on direct appeal for purposes of post-conviction relief." *Jackson v. Shanks*, 143 F.3d 1313, 1318 (10th Cir. 1998) (gathering cases). Thus, this issue is procedurally barred.

Even if the issue were not procedurally barred, Ramirez is not entitled to relief. The record reflects that Ramirez's counsel made a tender of the allegations that Ramirez sought to testify. (10/10/2013 JT at 10:40:40-10:42:21; *see also* Doc. 102 at 37.) The trial court, however, disallowed the testimony, finding that the timing of bringing up the sexual assaults was suspect. (10/10/2013 JT at 10:44:13-10:44:50; *see also* Doc. 102 at 37.) Thus, the record reflects that the trial court—not counsel—prevented the testimony, and Ramirez cannot show deficient performance.

23

Ramirez next argues that he received ineffective assistance of counsel because his counsel failed to object to the prosecutor's "extensive, repetitive, egregious, prejudicial, severe, [and] pervasive" misconduct. (Docs. 1 at 5; 21 at 5.) Ramirez does not elaborate on how his counsel was ineffective or how he was prejudiced by his counsel's conduct. Furthermore, Ramirez's prosecutorial misconduct claim is addressed below in Section B(4), and because the prosecutor's comments did not deprive Ramirez of a fair trial, counsel's alleged failure to object to those comments also is not prejudicial. Thus, Ramirez is not entitled to relief on this contention.

Finally, Ramirez contends that his counsel was ineffective for failing to present the testimony and findings of Dr. Shwartz, including her determination that Ramirez's mental disorder was so severe that he was "unable to complete a formal evaluation." (Doc. 139 at 10 (quoting Doc. 102-1 at 306).)[14] Ramirez does not address the state habeas court's ruling on this issue, but the Court owes deference to that ruling and will address it.

In Ramirez's state habeas petitions, he asserted that he received ineffective assistance of counsel because his counsel failed to call Dr. Shwartz as a witness to testify about Ramirez's state of mind. (Doc. 102-1 at 517–23.)[15] The state habeas court set forth the factual and procedural history of the case regarding Ramirez's competency and the questions surrounding whether he was malingering or incompetent. (Doc. 102-1 at 677–78.) After setting forth this history, the state habeas court determined that Ramirez's counsel's decision to not call Dr. Shwartz was a strategic

---

[14] The State did not address this contention as it was asserted in Ramirez's reply brief for the first time. Ordinarily, an issue raised for the first time in a reply brief is deemed waived. *United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011). The Court, however, appointed Ramirez counsel for the limited purpose of filing the reply brief. (Doc. 123.) Accordingly, the Court will address this contention.

[15] Ramirez asserted this claim in several of his state habeas petitions, but he had appointed counsel for only one of his state habeas petitions. (*See* Doc. 102-1 at 508, 510–33.) The Court will address this state habeas petition as the state habeas court addressed the issue in this order. (*Id.* at 674–85.)

24

decision. (*Id.* at 678–80.) The court noted that the record reflected a statement by the trial court judge "toward the end of the trial that [counsel] had represented [Ramirez] expertly and that the handling of the mental health expert witnesses was done in a fair way." (*Id.* at 680.) The court further found that Ramirez could not demonstrate that his counsel was unreasonable or incompetent and that it was "of the opinion that no prejudice to the Petitioner occurred in this regard." (*Id.* at 681.)

The state habeas court addressed Ramirez's claim under the rubric of whether Ramirez was denied his Sixth Amendment right to effective assistance of counsel. (*Id.* at 676.) Although the state habeas court did not resolve Ramirez's claim under the *Strickland* standard, its factual determinations are presumed correct. *See Hooks*, 689 F.3d at 1163 (stating that the "factual findings of the state court are presumed correct unless the applicant rebuts that presumption by 'clear and convincing evidence.'") (quoting 28 U.S.C. § 2254(e)(1))). Ramirez does not argue nor demonstrate that the state habeas court made an unreasonable finding of fact in denying his claim. Furthermore, Ramirez fails to meet the *Strickland* standard as well. He cannot demonstrate that his counsel's performance fell below an objective standard of reasonableness as the state habeas court specifically determined that Ramirez's counsel represented him "expertly." (Doc. 102-1 at 680.) Nor can Ramirez demonstrate prejudice. Thus, the Court finds that he is not entitled to federal habeas relief on this ground.

In sum, Ramirez's ineffective assistance of trial counsel claim fails.

### 2.    Ineffective Assistance of Appellate Counsel

Ramirez next argues that his appellate counsel was ineffective for failing to raise issues that he requested such as (1) prosecutorial misconduct during closing and rebuttal (Docs. 1 at 7; 21 at

25

7), and (2) the admission of prior bad acts evidence (Docs. 1 at 9; 21 at 7).

The *Strickland* standard is also applicable to claims of ineffective assistance of appellate counsel. *Milton v. Miller*, 744 F.3d 660, 669 (10th Cir. 2014). As to the first prong, to demonstrate that appellate counsel's performance was deficient, the defendant must show "that appellate counsel unreasonably failed to discover a nonfrivolous issue and to file a merits brief raising it." *Id.* (quoting *Smith v. Robbins*, 528 U.S. 259, 285 (2000)) (cleaned up). Next, "the defendant 'must show a reasonable probability that, but for his counsel's unreasonable failure to' raise a particular nonfrivolous issue, 'he would have prevailed on his appeal.'" *Id.* (quoting *Smith*, 528 U.S. at 285).

The record forecloses Ramirez's claim. The evidence demonstrates that Ramirez's counsel raised both the prior bad acts and prosecutorial misconduct on appeal. (Doc. 102-1 at 111–17.) *See also Ramirez II*, 2016 WL 7029226 at *2, 8–12 (noting that Ramirez's fifth and sixth issues on appeal were that "the court abused its discretion in admitting prior bad acts" and "not declaring a mistrial" based on the prosecution's cross-examination of Ramirez.)) The NMSC rejected Ramirez's appellate counsel's arguments, finding that the district court did not abuse its discretion in admitting evidence of Ramirez's prior bad acts[16] or by not declaring a mistrial based on the prosecutor's cross-examination of Ramirez. *Ramirez II*, 2016 WL 7029226, at *8–12. Thus, Ramirez's contention that he received ineffective assistance of appellate counsel for failure to raise these issues is contradicted by the record and fails.

### 3.    Due Process Violation from the Introduction of Prior Bad Acts Evidence

Next, Ramirez contends that he was denied due process when the State introduced evidence

---

[16] The Court will discuss the prior bad acts evidence in Section IV(B)(3) of this Order.

of prior bad acts, including (1) head-butting a peace officer, (2) breaking a window and windshield, (3) a no-trespass order against him, (4) verbal abuse of his mother, (5) punching a woman, and (6) composing a rap song about shooting people. (Docs. 1 at 8; 21 at 8.) As to the first three acts, Ramirez raised these issues in his direct appeal, arguing that the district court abused its discretion in admitting prior bad acts. (Doc. 102-1 at 111–15.) As to the other three acts, it appears that Ramirez raises them for the first time here.

Generally, "'[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.'" *United States v. Commanche*, 577 F.3d 1261, 1266 (10th Cir. 2009) (quoting Fed. R. Evid. 404(b)). "Federal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights." *Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999) (citation omitted). The inquiry is whether the admission of the disputed evidence "rendered the proceedings fundamentally unfair." *Id.* The petitioner must demonstrate that the error was so fundamentally unfair "so as to constitute a denial of due process of law." *Jackson v. Shanks*, 143 F.3d 1313, 1322 (10th Cir. 1998) (citations omitted).

In this case, the NMSC addressed and rejected Ramirez's argument as to evidence of the first three bad acts. *See Ramirez II*, 2016 WL 7029226, at *8–11.[17] The court found that although it was error to admit the evidence of Ramirez's prior act of head-butting, in the context of all the evidence, the "isolated error was harmless and had no effect on the conviction." *Id.* at *11. As to

---

[17] The state habeas court also addressed the bad acts issue in its order when it stated that Ramirez could not collaterally attack the NMSC's decision because Ramirez could not "seek post-conviction relief for issues raised on appeal that were decided on the merits against [Ramirez]." (Doc. 102-1 at 681–82.)

admitting the evidence of property damage and the police report, the NMSC determined that it "was consequential to the determination of whether [Ramirez] had the intent to kill Robledo, an essential element of first-degree murder." *Id.* at *10. Thus, it determined that there was no error in admitting the evidence. *Id.* Although the NMSC did not resolve the admittance of these three prior bad acts on constitutional grounds, its factual determinations are presumed correct. *See Hooks*, 689 F.3d at 1163 (stating that the "factual findings of the state court are presumed correct unless the applicant rebuts that presumption by 'clear and convincing evidence'") (quoting 28 U.S.C. § 2254(e)(1)) (subsequent citation omitted). Accordingly, Ramirez cannot demonstrate error as to these three acts.

As to Ramirez's argument on the other three bad acts, they do not rise to a due process violation. With regard to the fourth act, verbal abuse of his mother, Ramirez does not expand on this argument and does not state what evidence was admitted.[18] As to the fifth and sixth acts— evidence of Ramirez punching a woman and his rap song about shooting people—Ramirez opened the door to this evidence. (*See* 10/10/2013 JT at 1:54:44-1:56:19; 10/10/2013 JT at 1:42:40-1:45:05; *see also* Doc. 102 at 10.) He cannot now complain about the admittance of such evidence. *See United States v. McBride*, 94 F.4th 1036, 1041 (10th Cir. 2024) (noting that "the invited-error doctrine precludes a party from arguing that the district court erred in adopting a proposition that the party had urged the district court to adopt") (quoting *United States v. Deberry*, 430 F.3d 1294, 1302 (10th Cir. 2005)). Thus, the introduction of these three prior acts does not rise to the level of

---

[18]  The State says that Ramirez's sister stated on cross-examination that the day before Robledo's murder, Ramirez had called their mother "just a bitch and . . . all kinds of names." (Doc. 102 at 40 (citing 10/10/2013 JT at 3:12:51-3:13:08)). Ramirez does not direct the Court to this evidence, but to the extent Ramirez would rely on this testimony as the trial court allowing evidence of prior bad acts, it does not appear to rise to the level of a due process violation.

a due process violation.

In sum, the NMSC addressed three of the issues, and Ramirez cannot demonstrate that its factual determinations were wrong or contrary to law. As to the three issues that the NMSC did not address, the Court finds that the admittance of these prior bad acts does not rise to the level of a due process violation. Accordingly, Ramirez's third ground fails.

### 4.    Prosecutorial Misconduct

In Ramirez's fourth ground for relief, he asserts that the prosecutor engaged in misconduct during cross examination, direct examination, and closing argument/rebuttal by (1) questioning Ramirez on his use of legal research, (2) improperly commenting on his character, and (3) introducing evidence of prior bad acts. (Docs. 1 at 10; 21 at 10.)

"Generally, a prosecutor's improper remarks require reversal of a state conviction only if the remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 645 (1974)). "Inquiry into fundamental fairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner, both as to guilt at that stage of the trial and as to moral culpability at the sentencing phase." *Id.* (citations omitted). "The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutor's conduct." *Bland v. Sirmons*, 459 F.3d 999, 1024 (10th Cir. 2006).

Here, the NMSC addressed Ramirez's contention that the prosecutor prejudiced him by inquiring about his legal research. *Ramirez II*, 2016 WL 7029226, at *11–12. The prosecutor twice asked Ramirez about the legal research he performed. *Id.* at *12. The trial court sustained Ramirez's counsel's objection and denied the request for a mistrial. *See id.* The NMSC determined that

29

"[r]eviewing all of the comments made, in the context in which they were made, and taking into account those comments' potential effect on the jury, the questions were isolated and minor. Accordingly, the prosecutor's remarks did not deprive [Ramirez] of a fair trial." *Id.* Ramirez does not demonstrate that the NMSC unreasonably applied clearly established law or unreasonably reached this conclusion.

As to Ramirez's complaints about the prosecutor improperly commenting on his character, he does not develop this argument.[19] Moreover, it is sometimes "permissible for the prosecution to comment on the veracity of a defendant's story." *Bland*, 459 F.3d at 1025 (citing *United States v. Hernandez-Munis*, 170 F.3d 1007, 1012 (10th Cir. 1999)). Finally, as noted above, Ramirez fails to show a constitutional violation concerning admission of prior bad acts. To the extent the prosecutor made comments about his character with respect to prior acts, Ramirez also fails to show legal error.

Thus, Ramirez does not demonstrate error with respect to his prosecutorial misconduct claim.

### 5.    Alleged Improper Comments on Ramirez's Right to Remain Silent

Ramirez next asserts that Deputy Loomis improperly commented on his post-arrest silence. (*See* Docs. 1 at 12; 21 at 12.). He states that Deputy Loomis "testified when he arrested Mr. Ramirez [that] he tried to interview Mr. Ramirez." (Doc. 21 at 12.) He also claims that no curative instruction was given. (*Id.*) Although Ramirez now contends that the court erred by not giving a curative instruction, Ramirez refused to have a curative jury instruction given at trial. *See Ramirez II*, 2016

---

[19] The state habeas court noted that Ramirez raised "comments made by the State about [Ramirez] being a liar and a menace to society[,]" but it concluded that the NMSC "addressed a similar argument" and adopted the NMSC's finding that "[t]he State's remarks did not deprive [Ramirez] of a fair trial." (Doc. 102-1 at 684.)

WL 7029226, at *6. Thus, the Court will only address whether Deputy Loomis's comments amounted to a due-process violation.

Generally, commenting on a defendant's silence after arrest violates due process. *Doyle v. Ohio*, 426 U.S. 610, 618–19 (1976) (citing *United States v. Hale*, 422 U.S. 171, 182–83 (1975)). When determining "whether there has been an impermissible comment on a defendant's right to remain silent at the time of his arrest," the court considers "'whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the defendant's right to remain silent.'" *United States v. Romero*, No. 1:99-cv-0279 JC/JHG, 2000 WL 36739773, at *3 (D.N.M. July 31, 2000) (quoting *United States v. Toro-Pelaez*, 107 F.3d 819, 826–27 (10th Cir. 1997)).

Ramirez raised this issue on appeal. The NMSC reviewed Deputy Loomis's testimony and found that "[t]he deputy did not mention that his attempt to interview [Ramirez] had failed because [Ramirez] invoked his right to remain silent, but simply described how he completed his follow-up investigation." *Ramirez II*, 2016 WL 7029226, at *7. The court also noted that "the officer's comments were incorporated within his testimony establishing his connection to the case and his reliability as a witness." *Id.* Because the record did "not demonstrate an intent by the deputy to comment specifically on [Ramirez's] silence," the NMSC determined that there was no error. *Id.*

Here, Ramirez does not demonstrate that the state court's decision was wrong or contrary to law. In context, Deputy Loomis's testimony could not naturally or necessarily be taken as a comment on Ramirez's invocation of his right to remain silent. Thus, Ramirez cannot demonstrate a due process violation, and his fifth ground fails.

31

**6.      Due Process Violation From "Shackles Error"**

In Ramirez's sixth ground for relief, he states that there was a "shackles error" because he tripped while shackled to the table and the jurors observed him falling and heard the shackles. (Docs. 1 at 14;. 12 at 14.)

"[T]he Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck v. Missouri*, 544 U.S. 622, 629 (2005). However, "[i]n itself, a juror's brief view of a defendant in shackles does not qualify as a due process violation worthy of a new trial." *United States v. Jones*, 468 F.3d 704, 709 (10th Cir. 2006) (citations omitted). Instead, if such an incident occurs, the burden is on the defendant to show that he was prejudiced by the incident. *Id.*

The NMSC already addressed this issue and determined that no fundamental error occurred. The court stated:

> [D]efense counsel concedes that a black skirt on the table shielded the jury's view of [Ramirez's] shackles and that he did not ask the court to make a finding of prejudice or declare a mistrial. Because it is unclear whether the jury saw the leg restraints and if they did, there is no evidence that it was anything other than inadvertent or insignificant exposure, this case is not the exceptional type that goes to the violation of the foundation of presumption of innocence. Further, this case does not shock the conscience as [Ramirez's] guilt is supported by substantial evidence in the record, including eyewitness testimony and evidence of [Ramirez's] motive and a pattern of conduct toward Robledo.

*Ramirez II*, 2016 WL 7029226, at *8.

Although the NMSC was reviewing Ramirez's claim for fundamental error instead of a due process violation, its determination that the brief shackles exposure (if it occurred) did not violate Ramirez's presumption of innocence is presumed correct. Ramirez simply does not demonstrate

that the state court's decision was wrong.[20] In addition, Ramirez does not meet his burden in demonstrating that he was prejudiced by any shackles exposure. Accordingly, Ramirez's sixth ground fails.

### 7.    Actual Innocence

Finally, Ramirez asserts a claim for actual innocence, arguing that he killed Robledo in self-defense and that Dr. Shwartz's testimony regarding his psychological state of mind would have supported that theory. (Doc. 1 at 15–17.) Actual innocence, however, is not a stand-alone constitutional claim. *Sellers v. Langford*, No. 22-3056, 2023 WL 6939686, at *6 (10th Cir. 2023) ("Actual innocence is simply a means to avoid the statute-of-limitations procedural bar, not a stand-alone constitutional claim.") (citing *Herrera v. Collins*, 506 U.S. 390, 404 (1993)). Thus, this claim fails. Furthermore, as set forth above, Ramirez cannot establish a credible claim of actual innocence because he cannot demonstrate factual innocence. He admits to killing Robledo and challenges only his mental state and legal culpability—arguments that do not satisfy the actual innocence standard. Accordingly, Ramirez does not demonstrate that he is entitled to federal habeas relief.

### 8.    Evidentiary Hearing

To the extent Ramirez requests an evidentiary hearing, (Doc. 1 at 24), the Court recommends denying that request. "Federal courts are required to take AEDPA's deferential standards into account when deciding whether to hold an evidentiary hearing." *Sanchez v. Brown*, No. 2:13-cv-0988 LH/WPL, 2014 WL 12796825, at *7 (D.N.M. April 3, 2014) (citing *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)). "A federal district court may not conduct 'an evidentiary

---

[20] The state habeas court also addressed this issue and found that Ramirez could "not seek post-conviction relief for issues raised on appeal that were decided on the merits against [Ramirez]." (Doc. 102-1 at 682–83.)

hearing on a habeas claim that [the] petitioner failed to develop in state court." *Id.* (quoting *Young v. Sirmons*, 486 F.3d 655, 679 (10th Cir. 2007)). In addition, "if the state court adjudicated a claim on the merits, review under § 2254(d)(1) is limited to the state court record." *Ervin v. Santistevan*, No. 2:19-cv-1218 KG/JHR, 2021 WL 4988464, at *4 (D.N.M. Oct. 27, 2021) (citing *Cullen*, 563 U.S. at 181). "If, under those circumstances, the state court record precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.* (citing *Cullen*, 563 U.S. at 183).

Here, any procedurally defaulted claims do not warrant an evidentiary hearing, and the claims adjudicated on the merits do not warrant one because the state-court record precludes relief. Accordingly, I recommend that Ramirez's request for an evidentiary hearing be denied.

## VI.    Conclusion and Recommendations

I recommend dismissing Ramirez's claims. I find that they are untimely, and Ramirez cannot meet any exceptions to the time bar. In addition, alternatively, Ramirez's claims fail on the merits. The standard for a petitioner to demonstrate that he is entitled to federal habeas relief requires a federal court to do more than disagree with a state court decision or even find that the state court's decision was incorrect. A federal court must determine "that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Burt*, 571 U.S. at 19–20 (quotation omitted). Ramirez fails to satisfy that standard in the arguments he made in support of his seven grounds for relief. The Court is not persuaded that the state courts' decisions were wrong, let alone that they applied clearly established federal law unreasonably.

Accordingly, for the reasons stated above, I recommend **DISMISSING**, or alternatively, **DENYING** the Petition and Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus

by a Person in State Custody. (Docs. 1; 21.)

I further recommend that a certificate of appealability be denied. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (noting that a certificate of appealability shall only be granted when a petitioner demonstrates "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (quotation marks and citation omitted).

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE